## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
In re:                                        :    Chapter 11
                                              :
QUIKSILVER, INC., *et al.*,                   :    Case No. 15-11880 (___)
                                              :
                          Debtors.[1]         :    (Joint Administration Pending)
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEBTORS' APPLICATION FOR ENTRY OF ORDER PURSUANT TO SECTION 156(c) OF TITLE 28 OF THE UNITED STATES CODE, BANKRUPTCY CODE SECTION 105(a), BANKRUPTCY RULE 2002, AND LOCAL BANKRUPTCY RULE 2002-1(f) AUTHORIZING DEBTORS TO EMPLOY AND RETAIN KURTZMAN CARSON CONSULTANTS LLC AS CLAIMS AND NOTICING AGENT *NUNC PRO TUNC* TO THE PETITION DATE

Quiksilver, Inc. ("ZQK") and certain of its affiliates, the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors" and, together with their non-Debtor affiliates, "Quiksilver" or the "Company"), hereby apply (the "Application") to this Court for entry of an order pursuant to section 156(c) of title 28 of the United States Code, section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2002-1(f) of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") authorizing the Debtors' employment and retention of Kurtzman Carson Consultants LLC ("KCC") as claims and noticing agent (the "Claims and Noticing Agent") in connection with the Debtors' Chapter 11 Cases. In support of the Application, the Debtors rely upon and

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

incorporate by reference the Declaration of Andrew Bruenjes, Americas Chief Financial Officer of Quiksilver, Inc. (the "First Day Declaration"),[2] filed with the Court concurrently herewith, and the Affidavit of Evan Gershbein, Vice President of KCC (the "Gershbein Affidavit").  In further support of the Application, the Debtors, by and through their proposed undersigned counsel, respectfully represent:

## JURISDICTION AND VENUE

1.        This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.        The statutory predicates for the relief requested herein are Section 156(c) of Title 28 of the United States Code and Bankruptcy Code section 105(a).  Such relief is also warranted under Bankruptcy Rule 2002 and Local Bankruptcy Rule 2002-1(f).

3.        Pursuant to Local Bankruptcy Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that Court would lack Article III jurisdiction to enter such final order or judgment absent the consent of the parties.

## BACKGROUND

4.        On September 9, 2015 (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").  The Debtors have requested that the Chapter 11 Cases be jointly administered.

---

[2]        Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

5.      The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      To date, no creditors' committee has been appointed in these Chapter 11 Cases by the Office of the United States Trustee for the District of Delaware (the "United States Trustee").  No trustee or examiner has been appointed in the Debtors' Chapter 11 Cases.

7.      Quiksilver is one of the world's leading outdoor sports lifestyle companies.  The Company designs, develops and distributes branded apparel, footwear, accessories and related products.  The Company began operations in 1976 making boardshorts for surfers in the United States under a license agreement with the *Quiksilver* brand founders in Australia.  Today, the Company's business is rooted in the strong heritage and authenticity of its core brands, *Quiksilver*, *Roxy*, and *DC*, each of which caters to the casual, outdoor lifestyle associated with surfing, skateboarding, snowboarding, BMX, and motocross, among other activities.  The Company's products are sold in over 115 countries through a wide range of distribution points, including wholesale accounts (surf shops, skate shops, snow shops, sporting goods stores, discount centers, specialty stores, select department stores, and licensed stores), Company-owned retail stores, and its e-commerce websites.  The Debtors comprise each of the Company's U.S. entities, including parent, ZQK, as well as QS Wholesale, Inc., QS Retail, Inc., DC Shoes, Inc. and seven inactive entities.

8.      Additional factual background information regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to these Chapter 11 Cases, is set forth in detail in the First Day Declaration.

**RELIEF REQUESTED**

9.        By this Application, the Debtors request an order appointing KCC to act as the claims and noticing agent of the Court (the "Claims and Noticing Agent"), in order to assume full responsibility for the distribution of notices and the maintenance, processing, and docketing of proofs of claim filed in these Chapter 11 Cases.  The Debtors request that KCC's appointment be effective nunc pro tunc to the Petition Date, subject to that certain agreement for services, dated as of August 30, 2015 by and between KCC and the Debtors (such agreement together with all amendments, modifications, renewals thereof and all documents ancillary thereto or otherwise entered into in connection therewith, are collectively referred to herein as the "Services Agreement"), a copy of which is attached hereto as Exhibit A and incorporated by reference herein.  Prior to selecting KCC to act as Claims and Noticing Agent, the Debtors obtained and reviewed engagement proposals from at least two (2) other court-approved claims and noticing agents to ensure selection from a competitive process.  The Debtors submit, based on all engagement proposals obtained and reviewed, that KCC's rates are competitive and reasonable given KCC's quality of service and expertise.  Accordingly, the Debtors' selection of KCC as Claims and Noticing Agent satisfies the Court's Protocol For The Employment Of Claims And Noticing Agents Under 28 U.S.C. § 156(c).[3]  For the reasons set forth below, the Debtors submit that the relief requested herein is in the best interest of the Debtors, their estates, creditors, stakeholders, and other parties in interest and therefore should be granted.

---

[3]        By a separate, forthcoming  application, the Debtors will also seek entry of an order authorizing the employment and retention of KCC to provide certain administrative services to the Debtors pursuant to sections 105(a), 327(a), 328, and 1107(b) of the Bankruptcy Code and Bankruptcy Rules 2014 and 2016 and Local Rule 2014-1 in accordance with the Court's Protocol For The Employment Of Claims And Noticing Agents Under 28 U.S.C. § 156(c).

## KCC'S QUALIFICATIONS

10.    As described in the First Day Declaration, the Debtors have thousands of potential creditors.  In addition to these creditors, there are thousands of other parties in interest in the Chapter 11 Cases.  Although the office of the Clerk of the United States Bankruptcy Court for the District of Delaware (the "Clerk's Office") ordinarily would serve notices on the Debtors' creditors and other parties in interest and administer claims against the Debtors, the Clerk's Office may not have the resources to undertake such tasks, especially in light of the magnitude of the Debtors' creditor body and the tight timelines that frequently arise in chapter 11 cases.

11.    Accordingly, the Debtors propose to engage KCC to act as the Debtors' Claims and Noticing Agent.  This retention is the most effective and efficient manner of noticing the thousands of creditors and parties in interest of the filing of the Chapter 11 Cases and other developments in the Chapter 11 Cases.  In that capacity, KCC will transmit, receive, docket, and maintain proofs of claim filed in connection with the Chapter 11 Cases.

12.    KCC is a bankruptcy administrator that specializes in providing comprehensive chapter 11 administrative services including noticing, claims processing, and other related services critical to the effective administration of chapter 11 cases.  Indeed, KCC has developed efficient and cost-effective methods to properly handle the voluminous mailings associated with the noticing and claims processing of chapter 11 cases to ensure the orderly and fair treatment of creditors, equity security holders, and all parties in interest.  Further, KCC will work with the Clerk's Office to ensure that such methodology conforms with all of the Court's procedures, the Local Bankruptcy Rules, and the provisions of any orders entered by this Court.

13.    KCC has substantial experience in matters of this size and complexity and has acted as the official Claims and Noticing Agent in many large bankruptcy cases in this

5

District and other jurisdictions.  In re Cal Dive Int'l, Inc., No. 15-10458 (CSS) (Bankr. D. Del.

Mar. 3, 2015); In re FCC Holdings, Inc., No. 14-11987 (CSS) (Bankr. D. Del. Aug. 25, 2014);

In re Source Home Entm't, LLC, No. 14-11553 (KG) (Bankr. D. Del. June 24, 2014); In re

Dolan Co., No. 14-10614 (BLS) (Bankr. D. Del. Mar. 25, 2014); In re Sorenson Commc'ns,

Inc., No. 14-10454 (BLS) (Bankr. D. Del. Mar. 4, 2014); In re Physiotherapy Holdings, Inc.,

No. 13-12965 (KG) (Bankr. D. Del. Nov. 14, 2013); In re Synagro Techs. Inc., No. 13-11041

(BLS) (Bankr. D. Del. Apr. 24, 2013); In re Otelco Inc., No. 13-10593 (MFW) (Bankr. D. Del.

Mar. 26, 2013); In re Ormet Corp., No. 13-10334 (MFW) (Bankr. D. Del. Feb. 27, 2013).[4]

14.     By appointing KCC as the Claims and Noticing Agent in these cases, the

distribution of notices and the processing of claims will be expedited, and the Clerk's Office will

be relieved of the administrative burden of processing what may be an overwhelming number of

claims.  In further support of this Application, the Debtors submit the Gershbein Affidavit,

attached hereto as Exhibit B.

**SERVICES TO BE PROVIDED**

15.     This Application pertains only to the work to be performed by the Claims

and Noticing Agent under the delegation of duties of the Clerk's Office permitted by 28 U.S.C. §

156(c) and Local Rule 2002-1(f), and any work to be performed by the Claims and Noticing

Agent outside of this scope is not covered by this Application or by any Order granting approval

hereof and will be the subject of a separate application by the Debtors.  Specifically, KCC will

perform the following tasks in its role as Claims and Noticing Agent, as well as all quality

control relating thereto:

---

[4]    Because of the voluminous nature of the orders cited herein, they are not attached to the Application.  Copies of these orders, however, are available on request.

(a)     Prepare and serve required notices and documents in the Chapter 11 Cases in accordance with the Bankruptcy Code and Bankruptcy Rules in the form and manner directed by the Debtors and/or the Court, including:

> (i)     notice of the commencement of the Chapter 11 Cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code;
>
> (ii)    notice of any claims bar date;
>
> (iii)   notices of transfers of claims;
>
> (iv)    notices of objections to claims and objections to transfers of claims;
>
> (v)     notices of any hearings on a disclosure statement and confirmation of a plan or plans of reorganization, including under Bankruptcy Rule 3017(d);
>
> (vi)    notice of the effective date of any plan; and
>
> (vii)   all other notices, orders, pleadings, publications and other documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of the cases.

(b)     Maintain an official copy of the Debtors' schedules of assets and liabilities and statement of financial affairs (collectively, "Schedules"), listing the Debtors' known creditors and the amounts owed thereto;

(c)     Maintain (i) a list of all potential creditors, equity holders and other parties-in-interest; and (ii) a "core" mailing list consisting of all parties described in sections 2002(i), (j) and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update said lists and make said lists available upon request by a party-in-interest or the Clerk;

(d)     Furnish a notice to all potential creditors of the last date for the filing of proofs of claim and a form for the filing of a proof of claim, after such notice and form are approved by this Court, and notify said potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt is due to the subject party) on a customized proof of claim form provided to potential creditors;

(e)     Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

(f)     For all notices, motions, orders, or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (i) either a copy of the notice served or the docket numbers(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

(g)     Process all proofs of claim received, including those received by the Clerk's Office, and check said processing for accuracy, and maintain the original proofs of claim in a secure area;

(h)     Maintain the official claims register for each Debtor (the "Claims Registers") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers; and specify in the Claims Registers the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, *etc.*), (vi) the applicable Debtor, and (vii) any disposition of the claim;

(i)     Implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

(j)     Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

(k)     Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Claims and Noticing Agent, not less than weekly;

(l)     Upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the claims register for the Clerk's review (upon the Clerk's request);

(m)    Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the claims register;

(n)     Assist in the dissemination of information to the public and respond to requests for administrative information regarding the case as directed by the Debtors or the Court, including through the use of a case website and/or call center;

(o)     If the case is converted to chapter 7, contact the Clerk's Office within three (3) days of the notice to Claims and Noticing Agent of entry of the order converting the case;

(p)     Thirty (30) days prior to the close of these cases, to the extent practicable, request that the Debtors submit to the Court a proposed Order dismissing the Claims and Noticing Agent and terminating the services of such agent upon completion of its duties and responsibilities and upon the closing of these cases;

(q)     Within seven (7) days of notice to Claims and Noticing Agent of entry of an order closing the chapter 11 cases, provide to the Court the final version of the claims register as of the date immediately before the close of the cases; and

(r)     At the close of these cases, box and transport all original documents, in proper format, as provided by the Clerk's Office, to (i) the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, MO 64064 or (ii) any other location requested by the Clerk's Office.

16.    KCC will follow notice and claim procedures that conform to the guidelines promulgated by the Clerk of the Court and the Judicial Conference of the United States and as may be entered by the Court's orders.

17.    The Claims Registers shall be opened to the public for examination without charge during regular business hours and on a case-specific website maintained by KCC.

## COMPENSATION

18.    The fees to be charged by KCC in connection with these Chapter 11 Cases are set forth in the Services Agreement.  The Debtors propose that the cost of KCC's services be paid from the Debtors' estates as provided by 28 U.S.C. § 156(c) and 11 U.S.C. § 503(b)(1)(A). The Debtors further propose that the cost of KCC's services be paid in the ordinary course of business without further application to or order of the Court.  KCC agrees to maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and to serve monthly invoices on the Debtors, the office of the United States Trustee, counsel for the Debtors, counsel for any official committee appointed in these Chapter 11 Cases, and any party-in-interest who specifically requests service of the monthly invoices.

19.    The Debtors obtained and reviewed proposals from two (2) other court-approved claims and noticing agents, and as such, the Debtors respectfully submit that KCC's rates for its services in connection with the notice and claims processing services are competitive and comparable to the rates charged by their competitors for similar services.  Prior to the Petition Date, the Debtors paid KCC an initial retainer of $30,000.  KCC seeks to first apply the retainer to all prepetition invoices, and thereafter to have the retainer replenished to the original retainer amount, and thereafter to hold the retainer under the Engagement Agreement during the cases as security for the payment of fees and expenses incurred under the Services Agreement.

## INDEMNIFICATION

20.     As part of the overall compensation payable to KCC under the terms of the Services Agreement, subject to the limitations described below, the Debtors have agreed to indemnify and hold harmless KCC, its affiliates, members, directors, officers, employees, consultants, subcontractors, and agents for any and all losses, claims, damages, judgments, liabilities, and expenses (collectively, "Losses") resulting from, arising out of or relating to KCC's performance under the Services Agreement.

21.     The Debtors shall have no obligation to indemnify any person, or provide contribution or reimbursement to any person, for any claim or expense that is either (i) judicially determined (the determination having become final) to have arisen from that person's gross negligence or willful misconduct; (ii) for a contractual dispute in which the Debtors allege breach of the KCC's contractual obligations under the Services Agreement unless the Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to In re United Artists Theatre Co., 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to that person's gross negligence or willful misconduct, but determined by this Court, after notice and a hearing, to be a claim or expense for which that person should not receive indemnity, contribution, or reimbursement under the terms of the Services Agreement as modified by the Application and Order.

22.     If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in this case (that order having become a final order no longer subject to appeal); and (ii) the entry of an order closing these Chapter 11 Cases, KCC believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Services Agreement (as modified by this Application

Order), including without limitation the advancement of defense costs, KCC must file an application before this Court, and the Debtors may not pay any such amounts before the entry of an order by this Court approving the payment.  This paragraph 22 is intended only to specify the period of time under which the court shall have jurisdiction over any request for fees and expenses for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify KCC.

### KCC'S DISINTERESTEDNESS

23.     The Debtors have many creditors, and accordingly, KCC may have rendered and may continue to render services to certain of these creditors.  KCC has not and will not represent the separate interests of any such creditor in these cases.  Additionally, KCC employees may, in the ordinary course of their personal affairs, have relationships with certain creditors of the Debtors.  Except as may be disclosed in the Gershbein Affidavit, KCC has represented that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed and that it is a "disinterested person," as referenced in Bankruptcy Code section 327(a) and as defined in Bankruptcy Code section 101(14), as modified by the Bankruptcy Code § 1107(b).  If any new facts or relationships are discovered regarding KCC' s relationships with parties in interest in these cases, the Debtors understand that KCC will file a supplemental disclosure with the Court.

24.     KCC represents, among other things, that:

(a)     It will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as claims and noticing agent;

(b)     By accepting employment in this bankruptcy case, KCC waives any rights to receive compensation from the United States government in connection with this case;

(c)    In its capacity as claims and noticing agent, KCC will not be an agent of the United States and will not act on behalf of the United States;

(d)    It shall not employ any past or present employee of the Debtors for work that involves the Debtors' bankruptcy cases; and

(e)    It is a "disinterested person" as that term is defined in Bankruptcy Code section 101(14) with respect to the matters upon which it is engaged.

25.    Should KCC discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, KCC will use reasonable efforts to file promptly a supplemental affidavit.

## NOTICE

26.    Notice of this Motion shall be given to (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the agent for the Debtors' postpetition secured loan facilities; (c) counsel to the agent for the Debtors' prepetition revolving loan facility; (d) the agent for the Debtors' prepetition senior secured notes; (e) the agent for the Debtors' prepetition senior unsecured notes; (f) the parties listed in the consolidated list of thirty (30) largest unsecured creditors filed by the Debtors in these Chapter 11 Cases; and (g) any such other party entitled to notice pursuant to Local Bankruptcy Rule 9013-1(m).  The Debtors submit that no other or further notice need be provided.

## NO PRIOR REQUEST

27.    No previous request for the relief sought herein has been made to this Court or any other court.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

## CONCLUSION

WHEREFORE, the Debtors respectfully request that this Court enter an order, substantially in the form annexed hereto, granting the relief sought herein and granting such other and further relief as may be just and proper.

Dated:    Wilmington, Delaware
          September 9**,** 2015

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

*/s/ Van C. Durrer, II*
Van C. Durrer, II (I.D. No. 3827)
Annie Z. Li (*pro hac vice admission pending*)
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071
Telephone: (213) 687-5000
Fax: (213) 687-5600

- and -

John K. Lyons (*pro hac vice admission pending*)
Jessica S. Kumar (*pro hac vice admission pending*)
155 N. Wacker Dr.
Chicago, Illinois 60606
Telephone: (312) 407-0700
Fax: (312) 407-0411

*Proposed Counsel for Debtors and Debtors in Possession*

13

# EXHIBIT A

**Services Agreement**



# KCC AGREEMENT FOR SERVICES

This Agreement is entered into as of the 30th day of August, 2015, between Quiksilver, Inc. (the "Company"),[1] and Kurtzman Carson Consultants LLC (together with its affiliates and subcontractors, "KCC").

In consideration of the premises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

**Terms and Conditions**

I.      SERVICES

A.      KCC agrees to provide the Company with consulting services regarding noticing, claims management and reconciliation, plan solicitation, balloting, disbursements and any other services agreed upon by the parties or otherwise required by applicable law, government regulations or court rules or orders.

B.      KCC further agrees to provide (i) computer software support and training in the use of the support software, (ii) KCC's standard reports as well as consulting and programming support for the Company requested reports, (iii) program modifications, (iv) data base modifications, and/or (v) other features and services in accordance with the fees outlined in a pricing schedule provided to the Company (the "KCC Fee Structure").

C.      Without limiting the generality of the foregoing, KCC may, upon request by the Company, (i) provide a communications plan including, but not limited to, preparation of communications materials, dissemination of information and a call center staffed by KCC and/or (ii) provide confidential on-line workspaces or virtual data rooms and publish documents to such workspaces or data rooms (which publication shall not be deemed to violate the confidentiality provisions of this Agreement).

D.      The price listed for each service in the KCC Fee Structure represents a bona fide proposal for such services, which may be accepted in whole or in part.  Services will be provided when requested by the Company or required by applicable law, government regulations or court rules or orders.  Services are mutually exclusive and are deemed delivered and accepted by the Company when provided by KCC.

E.      The Company acknowledges and agrees that KCC will often take direction from the Company's authorized representatives, employees, agents and/or professionals (collectively, the "Company Parties") with respect to the services being provided under this Agreement.  The parties agree that KCC may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.  The Company agrees and understands that KCC shall not provide the Company or any other party with any legal advice.

---

[1] The term Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in its chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.



# KCC AGREEMENT FOR SERVICES

II.       PRICES, CHARGES AND PAYMENT

A.       KCC agrees to charge and the Company agrees to pay KCC for its services, expenses and supplies at the rates or prices set by KCC and in effect as of the date of this Agreement in accordance with the KCC Fee Structure.  KCC's prices are generally adjusted periodically to reflect changes in the business and economic environment.  KCC reserves the right to reasonably increase its prices, charges and rates annually.  If any price increases exceed 10%, KCC will give thirty (30) days written notice to the Company.

B.       The Company agrees to pay the reasonable, documented out of pocket expenses incurred by KCC in connection with services provided under this Agreement, including but not limited to, transportation, lodging, and meals.

C.       In addition to all fees for services and expenses hereunder, the Company shall pay to KCC [(i) any fees and expenses related to, arising out of, or as a result of any error or omission made by the Company or the Company Parties, as mutually determined by KCC and the Company, and] (ii) all taxes that are applicable to this Agreement or that are measured by payments made under this Agreement and are required to be collected by KCC or paid by KCC to a taxing authority.

D.       Where the Company requires services that are unusual or beyond the normal business practices of KCC, or are otherwise not provided for in the KCC Fee Structure, the cost of such services shall be charged to the Company at a competitive rate to be mutually agreed to by KCC and the Company.

E.       KCC agrees to submit its invoices to the Company monthly and the Company agrees that the amount invoiced is due and payable upon the Company's receipt of the invoice. However, where total fees and expenses are expected to exceed $10,000 in any single month, KCC may require advance payment from the Company due and payable upon demand and prior to the performance of services hereunder.  If any amount is unpaid as of thirty (30) days from the receipt of the invoice, the Company further agrees to pay a late charge, calculated as one and one-half percent (1-1/2%) of the total amount unpaid every thirty (30) days.  In the case of a dispute in the invoice amount, the Company shall give written notice to KCC within ten (10) days of receipt of the invoice by the Company.  The undisputed portion of the invoice will remain due and payable immediately upon receipt of the invoice.  Late charges shall not accrue on any amounts in dispute.  Unless otherwise agreed to in writing, the fees for print notice and media publication (including commissions) as well as certain expenses associated therewith must be paid at least three (3) days in advance of those fees and expenses being incurred.

F.       In the event that the Company files for protection pursuant to chapter 11 of the United States Bankruptcy Code (a "Chapter 11 Filing"), the parties intend that KCC shall be employed pursuant to 28 U.S.C. § 156(c) ("Section 156(c)") and that all fees and expenses due under this Agreement shall be paid as administrative expenses of the Company's chapter 11 estate.  As soon as practicable following a Chapter 11 Filing (and otherwise in accordance with applicable law and rules and orders of the Bankruptcy Court), the Company shall cause a motion to be filed with the Bankruptcy Court seeking entry of an order pursuant to Section 156(c) approving this Agreement in its entirety (the "Section 156(c) Order").  The form and substance of the motion and the Section 156(c) Order shall be reasonably acceptable to KCC.  If any Company chapter 11

2



# KCC AGREEMENT FOR SERVICES

case converts to a case under chapter 7 of the Bankruptcy Code, KCC will continue to be paid for its services in accordance with Section 156(c) and under the terms of this Agreement.

G.      To the extent permitted by applicable law, KCC shall receive a retainer in the amount of $30,000 (the "Retainer") that may be held by KCC as security for the Company's payment obligations under the Agreement.  The Retainer is due upon execution of this Agreement.  KCC shall be entitled to hold the Retainer until the termination of the Agreement.  Following termination of the Agreement, KCC shall return to the Company any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

## III.     RIGHTS OF OWNERSHIP

A.      The parties understand that the software programs and other materials furnished by KCC pursuant to this Agreement and/or developed during the course of this Agreement by KCC are the sole property of KCC.  The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, and documentation.  The Company agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished pursuant to this Agreement.

B.      The Company further agrees that any ideas, concepts, know-how or techniques relating to data processing or KCC's performance of its services developed or utilized during the term of this Agreement by KCC shall be the exclusive property of KCC.  Fees and expenses paid by the Company do not vest in the Company any rights in such property, it being understood that such property is only being made available for the Company's use during and in connection with the services provided by KCC under this Agreement.

## IV.     NON-SOLICITATION

Each of KCC and the Company agree that neither it nor its subsidiaries or other affiliated companies shall directly or indirectly solicit for employment, employ or otherwise retain employees of the other during the term of this Agreement and for a period of twelve (12) months after termination of this Agreement unless KCC or the Company, as applicable, provides prior written consent to such solicitation or retention.

## V.      CONFIDENTIALITY

Each of KCC and the Company, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep strictly confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the services provided under this Agreement ("Confidential Information"), and to use such Confidential information solely for the purpose of providing or receiving the services under this Agreement; provided, however, that if either party reasonably believes upon advice of counsel that it is required to produce any such information by order of any governmental agency or other regulatory body, such party agrees, to the extent permitted by law, to (a) promptly notify the other party of the existence, terms and circumstances surrounding such order in order to enable the other party to seek an appropriate protective order or other remedy or waive compliance, in whole or part, with the confidentiality terms of this Agreement as to such required disclosure and (b) reasonably consult and cooperate with the other party with respect to taking legally available steps to resist or narrow such request and exercise its best efforts to pursue any such steps at the



# KCC AGREEMENT FOR SERVICES

other party's request. If a protective order is not timely sought or obtained, the party subject to such order may disclose the Confidential Information so required, provided, that such party agrees to (i) disclose only such portion of the Confidential Information that such party is advised by its counsel is required to be disclosed, and (ii) exercise its reasonable efforts to obtain reliable assurance that confidential treatment will be accorded to such portion of the Confidential Information. In any event, neither party will oppose action by the other party to obtain a protective order or other reliable assurance that confidential treatment will be accorded to such portion of the Confidential Information to be disclosed.

VI.    SUSPENSION OF SERVICE AND TERMINATION

A.    This Agreement shall remain in force until terminated or suspended by either party (i) upon thirty (30) days' written notice to the other party or (ii) immediately upon written notice for Cause (defined herein). As used herein, the term "Cause" means (i) gross negligence or willful misconduct of KCC that causes serious harm to the Company's reorganization under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay KCC invoices for more than sixty (60) days from the date of invoice, or (iii) the accrual of invoices or unpaid services in excess of the retainer held by KCC where KCC reasonably believes it will not be paid.

B.    In the event that this contract is terminated, regardless of the reason for such termination, KCC shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions and KCC shall provide all necessary staff, services and assistance required for an orderly transfer. The Company agrees to pay for such services in accordance with KCC's then existing prices for such services. If such termination occurs following entry of the Section 156(c) Order, the Company shall immediately seek entry of an order (in form and substance reasonably acceptable to KCC) that discharges KCC from service and responsibility under Section 156(c) and this Agreement.

C.    Any data, programs, storage media or other materials furnished by the Company to KCC or received by KCC in connection with the services provided under the terms of this Agreement may be retained by KCC until the services provided are paid for, or until this Agreement is terminated with the services paid in full. The Company shall remain liable for all fees and expenses imposed under this Agreement as a result of data or physical media maintained or stored by KCC. KCC shall dispose of the data and media in the manner requested by the Company. The Company agrees to pay KCC for reasonable expenses incurred as a result of the disposition of data or media. Notwithstanding any term herein to the contrary, following entry of the Section 156(c) Order, the disposition of any data or media by KCC shall be in accordance with any applicable instructions from the clerk of the Bankruptcy Court, local Bankruptcy Court rules and orders of the Bankruptcy Court.

VII.    SYSTEM IMPROVEMENTS

KCC strives to provide continuous improvements in the quality of service to its clients. KCC, therefore, reserves the right to make changes in operating procedure, operating systems, programming languages, general purpose library programs, application programs, time period of accessibility, types of terminal and other equipment and the KCC data center serving the Company, so long as any such changes do not materially interfere with ongoing services provided to the Company in connection with the Company's chapter 11 case.



# KCC AGREEMENT FOR SERVICES

VIII.    BANK ACCOUNTS

At the Company's request, KCC shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company.  To the extent that certain financial products are provided to the Company pursuant to KCC's agreement with financial institutions, KCC may receive compensation from such financial institutions for the services KCC provides pursuant to such agreement.

IX.    LIMITATIONS OF LIABILITY AND INDEMNIFICATION

A.    The Company shall indemnify and hold KCC, its affiliates, members, directors, officers, employees, consultants, subcontractors and agents (collectively, the "KCC Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, judgments, liabilities and expenses (including reasonable counsel fees and expenses) (collectively, "Losses") resulting from, arising out of or related to KCC's performance under this Agreement. Such indemnification shall exclude Losses resulting from KCC's gross negligence or willful misconduct.  KCC shall indemnify and hold the Company, its affiliates, members, directors, officers, employees, consultants, subcontractors and agents (collectively, the "Company Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all Losses resulting from, arising out of or related to KCC's gross negligence or willful misconduct. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third-parties against any Indemnified Party.  Each party shall notify the other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that the indemnifying party becomes aware of with respect to the services provided by KCC under this Agreement. The indemnifying party shall have control of the defense of any claim, action, investigation or proceeding, provided, that the applicable indemnifying party shall obtain the written consent of indemnified party prior to entering into any settlement or compromise that involves remedies other than the payment of damages (such consent not to be unreasonably withheld or delayed).  No Indemnified Party shall make any admission of liability, agreement or compromise with any person, body or authority in relation to any third party claim without prior consultation with, and agreement of, the indemnifying party, which agreement shall not be unreasonably withheld or delayed.  The Indemnified Party shall, at the indemnifying party's reasonable expense, provide all reasonable assistance in defending any claim, action, investigation or proceeding. Each party's indemnification obligations hereunder shall survive the termination of this Agreement.

B.    Except as provided herein, KCC's liability to the Company or any person making a claim through or under the Company for any Losses of any kind, even if KCC has been advised of the possibility of such Losses, whether direct or indirect and unless due to gross negligence or willful misconduct of KCC, shall be limited to the total amount billed or billable to the Company.  In no event shall KCC's liability to the Company for any Losses, whether direct or indirect, arising out of this Agreement exceed the total amount billed to the Company and actually paid to KCC for the services contemplated under the Agreement.  In no event shall either party be liable for any indirect, special or consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of this Agreement.

C.    The Company is responsible for the accuracy of the programs, data and information it or any Company Party submits for processing to KCC and for the output of such information.  KCC



# KCC AGREEMENT FOR SERVICES

does not verify information provided by the Company and, with respect to the preparation of schedules and statements, all decisions are at the sole discretion and direction of the Company. The Company reviews and approves all schedules and statements filed on behalf of, or by, the Company; except to the extent that KCC alters any such schedule or statements, KCC bears no responsibility for the accuracy or contents therein.  The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs and data submitted by the Company to KCC.

D.      The Company agrees that except as expressly set forth herein, KCC makes no representations or warranties, express or implied, including, but not limited to, any implied or express warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

X.      FORCE MAJEURE

Whenever performance by KCC or the Company of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, strike, lock-out or other industrial or transportation disturbance, fire, lack of materials, law, regulation or ordinance, war or war condition, or by reason of any other matter beyond such party's reasonable control, then such performance shall be excused and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

XI.     INDEPENDENT CONTRACTORS

KCC is and shall be an independent contractor of the Company and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of this Agreement.

XII.    NOTICES

All notices and requests in connection with this Agreement shall be given or made upon the respective parties in writing and shall be deemed as given as of the third day following the day it is deposited in the U.S. Mail, postage pre-paid or on the day it is given if sent by facsimile or electronic mail or on the day after the day it is sent if sent by overnight courier to the appropriate address set forth below:

| | |
|---|---|
| Kurtzman Carson Consultants LLC | Quiksilver, Inc. |
| 2335 Alaska Ave. | 5600 Argosy Circle, #100 |
| El Segundo, CA  90245 | Huntington Beach, CA 92649 |
| Attn:  Drake D. Foster | Attn: General Counsel |
| Tel: (310) 823-9000 | Tel: (714) 889-2200 |
| Fax: (310) 823-9133 | Fax: |
| E-Mail: dfoster@kccllc.com | |

Or to such other address as the party to receive the notice or request so designates by written notice to the other.



# KCC AGREEMENT FOR SERVICES

XIII.    APPLICABLE LAW

The validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of Delaware.

XIV.    ENTIRE AGREEMENT/ MODIFICATIONS

Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, other agreements, and communications oral and written between the parties relating to the subject matter of this Agreement.  The Company represents that it has the authority to enter into this Agreement.  If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.  This Agreement may be modified only by a written instrument duly executed by an authorized representative of the Company and an officer of KCC.

XV.    COUNTERPARTS; EFFECTIVENESS

This Agreement may be executed in two or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other parties, which delivery may be made by exchange of copies of the signature page by facsimile or electronic mail.

XVI.    ASSIGNMENT

This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other, with the exception that this Agreement can be assigned without written consent by either party to a wholly-owned subsidiary or affiliate of such party.

XVIII.    ATTORNEYS' FEES

In the event that any legal action, including an action for declaratory relief, is brought to enforce the performance or interpret the provisions of this Agreement, the parties agree to reimburse the prevailing party's reasonable attorneys' fees, court costs, and all other related expenses, which may be set by the court in the same action or in a separate action brought for that purpose, in addition to any other relief to which the prevailing party may be entitled.

[SIGNATURE PAGE FOLLOWS]



## KCC AGREEMENT FOR SERVICES

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the first date mentioned above.

Kurtzman Carson Consultants LLC

BY: Evan Gershbein                    DATE: 8/31/15
TITLE: Senior Vice President, Corporate Restructuring Services


Quiksilver, Inc.

                                      8/31/2015
BY: Greg Healy                        DATE:
TITLE: President

8



## KCC CORPORATE RESTRUCTURING
## FEE STRUCTURE

| **Consulting Services & Rates**[1] | |
| --- | --- |
| **Position** | **Hourly Rate** |

*Executive Vice President* — *Waived*

The Executive Vice President oversees and manages KCC's Restructuring group.

---

*Director/Senior Managing Consultant* — *$180*

The Director/Senior Managing Consultant is the primary contact for the company, counsel and other professionals and oversees and supports the entirety of an engagement. KCC's Directors and SMCs average over seven years of experience and are generally former practitioners.

---

*Consultant/Senior Consultant* — *$75-$165*

The Senior Consultant manages the various data collection processes required by the Chapter 11 process. This includes, among other things, compiling the creditor matrix and Schedules/SOFAs (and generating drafts of same for counsel and advisors), reviewing and processing claims, overseeing contract review, overseeing all mailings and generating custom claim and ballot reports. KCC's Senior Consultants average over five years of experience.

The Consultant is the day-to-day contact for mailings, including the preparation and filing of affidavits of service (a critical due process component). He/she also responds to creditor and counsel inquiries, maintains the public access website, identifies actionable pleadings (i.e., claims objections, notices of transfer, withdrawals, etc.) and updates the official claims register.  KCC's Consultants average over five years of experience.

---

*Technology/Programming Consultant* — *$35-$70*

The Technology/Programming Consultant assists with complex system requests, including unique claim/ballot reporting and custom website updates.

---

*Clerical* — *$30-$50*

The Clerical role will process incoming mail, including proofs of claim, ballots, creditor correspondence and returned mail. Also assists with the generation of mailing services.

---

*Weekend, holidays and overtime* — *Waived*

---

[1] Please note that additional professional services not covered by this proposal will be charged at hourly rates, including any outsourced services performed under our supervision and control.



## KCC CORPORATE RESTRUCTURING
## FEE STRUCTURE

| **Public Securities[2] & Solicitation Services** | |
| --- | --- |
| **Position** | **Hourly Rate** |
| *Solicitation Lead/Securities Director* | *$215* |

The Solicitation Lead/Securities Director oversees all activities of the group and provides counsel with respect to solicitation and noticing events ensuring that processes employed are effective and practical for securities depositories, bank, brokers, nominees and their agents. In addition, this position oversees and provides counsel on all rights offerings, exchange offers and complex plan distributions to ensure accuracy and efficiency.

| | |
| --- | --- |
| *Securities Senior Consultant* | *$200* |

The Securities Senior Consultant is the day-to-day contact and acts as advisor on transactions including balloting with treatment election, rights offers, exchange offers and complex plan distributions. This position handles service of related materials to banks, brokers and agents and manages tabulation and audit processes, preparing detailed reporting of results.

- Voting Event - Mailing ballots to security holders and tabulating their votes on a plan of reorganization, including competing plan and pre-packaged plan voting, if applicable.

- Corporate Action Event - Mailing election forms to security holders and tabulating the results, e.g., rights offering elections, if applicable.

- NOL Motion – Review of motion and procedures and coordinate noticing to equity holders, if applicable.

| **Printing Services** | |
| --- | --- |
| Printing and photocopies | $0.10 per image (volume discounts apply) |
| Labels | Waived |
| Document folding and inserting | Waived |
| Envelopes | Varies by size |

| **Noticing Services[3]** | |
| --- | --- |
| Electronic noticing (email) | Waived[4] |
| Electronic noticing (domestic facsimile) | $0.08 per page |
| Claims Acknowledgement Card | Waived |
| Insert creditor information into customized documents | Waived |
| Newspaper/Legal notice publishing | Quote prior to publishing |

---

[2] Certain events fees may be applicable.

[3] Expenses shall be consistent with the general practice procedures authorized in the District of Delaware.

[4] A set-up fee for email services larger than 500 parties may apply. This set-up fee varies depending on the total number of parties.



## KCC CORPORATE RESTRUCTURING
## FEE STRUCTURE

| **Claims Administration & Management Expenses** | |
| --- | --- |
| Database and System Access (unlimited users) | Waived |
| Custom client reports | Waived |
| License fee and data storage | $0.10 per creditor per month |
| Case-specific public website hosting | Waived |

| **KCC eServices** | |
| --- | --- |
| Online claims filing (ePOC) | Waived |

| **KCC CaseView** | |
| --- | --- |
| Access to KCC CaseView | Waived |

- Proprietary, secured, password protected portal for unlimited users
- Comprehensive case data, including extensive real time analytics on claim, solicitation and processing information
- Functionality to run or request customized reports summarizing case analytics

| **Document Management/Imaging** | |
| --- | --- |
| Electronic imaging (scanning & bar coding) | $0.12 per imaged page |
| Virtual Data Room | Quote prior to VDR set-up |
| CD-ROMS (mass document storage) | Varies upon requirements |

| **Call Center Support Services** | |
| --- | --- |
| Case-specific voice-mail box for creditors | Waived |
| Interactive Voice Response ("IVR") | Set-up and per minute fee waived |
| Monthly maintenance charge | Waived |
| Management of Call Center | Standard hourly rates |
| Call Center Operator | $55 - $75 |

| **Disbursements** | |
| --- | --- |
| Check issuance | Quote prior to printing |
| W-9 mailing and maintenance of TIN database | See hourly rates and noticing charges |

**<u>EXHIBIT B</u>**

**Gershbein Affidavit**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                            :
In re:                                      :      Chapter 11
                                            :
QUIKSILVER, INC., *et al.*,                 :      Case No. 15-11880 (___)
                                            :
                        Debtors.[1]         :      (Joint Administration Pending)
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**AFFIDAVIT OF EVAN GERSHBEIN IN SUPPORT OF DEBTORS' APPLICATION
FOR ENTRY OF ORDER PURSUANT TO SECTION 156(c) OF TITLE 28 OF THE
UNITED STATES CODE, BANKRUPTCY CODE SECTION 105(a), BANKRUPTCY
RULE 2002, AND LOCAL BANKRUPTCY RULE 2002-1(f) AUTHORIZING DEBTORS
TO EMPLOY AND RETAIN KURTZMAN CARSON CONSULTANTS LLC AS
CLAIMS AND NOTICING AGENT *NUNC PRO TUNC* TO THE PETITION DATE**

STATE OF CALIFORNIA          )
                             )  ss.
COUNTY OF LOS ANGELES        )

     I, Evan Gershbein, being duly sworn, state the following under penalty of perjury:

     1.     I am the Vice President of Corporate Restructuring Services of

Kurtzman Carson Consultants LLC ("KCC"), whose offices are located at 2335 Alaska Avenue,

El Segundo, California 90245, telephone number (310) 823-9000.  The matters set forth herein

are made of my own personal knowledge and, if called and sworn as a witness, I could and

would testify competently thereto.

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), Quiksilver Wetsuits, Inc. (9599).  The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

2.      This Affidavit is made in support of the Debtors' application for entry of

an order pursuant to section 156(c) of title 28 of the United States Code, section 105(a) of title 11

of the United States Code (the "Bankruptcy Code"), Rule 2002 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2002-1(f) of the Local Rules of

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware (the "Local Bankruptcy Rules"), for entry of an order authorizing the Debtors'

employment and retention of KCC as claims and noticing agent (the "Claims and Noticing

Agent") in connection with the Debtors' Chapter 11 Cases (the "Application") effective as of the

Petition Date and on the terms and conditions set forth in the Services Agreement attached to the

Application as Exhibit A.[2]

3.      As agent and custodian of the Court records pursuant to title 28 of the

United States Code, section 156(c), KCC will perform at the request of the Office of the Clerk of

the Court (the "Clerk's Office") the noticing and claims related services specified in the

Application.  In addition, at the Debtors' request, KCC will perform such other noticing, claims,

technical, administrative and support services specified in the Application.

4.      KCC is a bankruptcy administrator that specializes in providing

comprehensive chapter 11 administrative services including noticing, claims processing,

balloting and other related services critical to the effective administration of chapter 11 cases.

Indeed, KCC has developed efficient and cost-effective methods to handle properly the

voluminous mailings associated with the noticing and claims processing of chapter 11 cases to

ensure the orderly and fair treatment of creditors, equity security holders and all parties in

interest.  Further, KCC will work with the Clerk's Office to ensure that such methodology

---

[2]    Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Application.

conforms with all of the Court's procedures, the Local Bankruptcy Rules and the provisions of any orders entered by this Court.

5.       KCC has substantial experience in matters of this size and complexity and has acted as the official notice, claims and solicitation agent in many large bankruptcy cases in this District and other jurisdictions.  In re Cal Dive Int'l, Inc., No. 15-10458 (CSS) (Bankr. D. Del. Mar. 3, 2015); In re FCC Holdings, Inc., No. 14-11987 (CSS) (Bankr. D. Del. Aug. 25, 2014); In re Source Home Entm't, LLC, No. 14-11553 (KG) (Bankr. D. Del. June 24, 2014); In re Dolan Co., No. 14-10614 (BLS) (Bankr. D. Del. Mar. 25, 2014); In re Sorenson Commc'ns, Inc., No. 14-10454 (BLS) (Bankr. D. Del. Mar. 4, 2014); In re Physiotherapy Holdings, Inc., No. 13-12965 (KG) (Bankr. D. Del. Nov. 14, 2013); In re Synagro Techs. Inc., No. 13-11041 (BLS) (Bankr. D. Del. Apr. 24, 2013); In re Otelco Inc., No. 13-10593 (MFW) (Bankr. D. Del. Mar. 26, 2013); In re Ormet Corp., No. 13-10334 (MFW) (Bankr. D. Del. Feb. 27, 2013).[3]

6.       KCC represents, among other things, the following:

(a)       KCC is not a creditor of the Debtors;

(b)       KCC will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the claims and noticing agent in the Chapter 11 Cases;

(c)       By accepting employment in the Chapter 11 Cases, KCC waives any rights to receive compensation from the United States government as claims and noticing agent;

(d)       In its capacity as the claims and noticing agent in the Chapter 11 Cases, KCC will not be an agent of the United States and will not act on behalf of the United States;

(e)       KCC will not employ any past or present employees of the Debtors in connection with its work as the claims and noticing agent in the Chapter 11 Cases;

---

[3]    Because of the voluminous nature of the orders cited herein, they are not attached hereto.  Copies of these orders, however, are available on request.

(f)    In its capacity as claims and noticing agent in the Chapter 11 Cases, KCC will not intentionally misrepresent any fact to any person;

(g)    KCC shall be under the supervision and control of the Clerk's Office with respect to the receipt and recordation of claims and claim transfers; and

(h)    None of the services provided by KCC as claims and noticing agent shall be at the expense of the Clerk's Office.

7.    The Debtors have many creditors, and accordingly, KCC may have rendered and may continue to render services to certain of these creditors in matters unrelated to these cases, either as vendors or in cases where KCC serves in a neutral capacity as a bankruptcy claims and noticing agent or class action settlement administrator.  KCC has not and will not represent the separate interests of any such creditor in these cases.  To the best of my knowledge, neither KCC, nor any of its professional personnel, have any relationship with the Debtors that would impair KCC's ability to serve as claims and noticing agent or administrative agent.  KCC has working relationships with certain of the professionals retained by the Debtors and other parties herein, but such relationships are completely unrelated to the Debtors' cases.  Francine Gordon Durrer, a senior director of corporate restructuring services at KCC, is married to Van C. Durrer, II, a partner with the law firm of Skadden, Arps, Slate, Meagher & Flom LLP, proposed counsel to the Debtors.  In addition, KCC personnel may have relationships with some of the Debtors' creditors.  Such relationships are, however, of a personal, financial nature and are wholly unrelated to the Debtors' cases.  KCC has and will continue to represent clients in matters unrelated to the Debtors' cases and has had and will continue to have relationships in the ordinary course of its business with certain vendors and professionals in connection with matters unrelated to these cases.

8.    KCC is an indirect subsidiary of Computershare Limited.  Computershare Limited is a financial services and technologies provider for the global securities industry.

Within the Computershare corporate structure, KCC operates as a separate, segregated business unit. As such, any relationships that Computershare Limited and its affiliates maintain do not create an interest of KCC that would be materially adverse to the Debtors' estates or any class of creditors or equity security holders.

9.     To the best of my knowledge and except as disclosed herein, KCC neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed and that it is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code as referred to in section 327(a) of the Bankruptcy Code. KCC will supplement its disclosure to the Court if any facts or circumstances are discovered that would require disclosure.

10.    In performing the services of notice and claims agent, KCC will charge the Debtors the rates set forth in the Services Agreement.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 4, 2015

By: _____
Evan Gershbein
Senior Vice President of Corporate
Restructuring Services

6

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Los Angeles

Subscribed and sworn to before me on this 4th day of September, 2015, by Evan Gershbein, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

WITNESS my hand and official seal.

Signature

Commission #   2120119

My Comm. Expires

ROSE ARDELL ROBERSON
Commission # 2120119
Notary Public - California
Los Angeles County
My Comm. Expires Aug 15, 2019

7

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
|  | : |  |
| --- | --- | --- |
| In re: | : | Chapter 11 |
|  | : |  |
| QUIKSILVER, INC., *et al.*, | : | Case No. 15-11880 (___) |
|  | : |  |
| Debtors.[1] | : | (Joint Administration Pending) |
|  | : |  |
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x    **Related Docket No. __**

**ORDER GRANTING DEBTORS' APPLICATION FOR ENTRY OF ORDER
PURSUANT TO SECTION 156(c) OF TITLE 28 OF THE UNITED STATES CODE,
BANKRUPTCY CODE SECTION 105(a), BANKRUPTCY RULE 2002, AND LOCAL
BANKRUPTCY RULE 2002-1(f) AUTHORIZING DEBTORS TO EMPLOY AND
RETAIN KURTZMAN CARSON CONSULTANTS LLC AS CLAIMS AND NOTICING
AGENT NUNC PRO TUNC TO THE PETITION DATE**

Upon the application (the "<u>Application</u>")[2] of the Debtors for entry of order (this
"<u>Order</u>") pursuant to 28 U.S.C. § 156(c), Bankruptcy Code Section 105(a) Bankruptcy Rule
2002, and Local Bankruptcy Rule 2002-1(f), authorizing Debtors to employ and retain Kurtzman
Carson Consultants LLC ("<u>KCC</u>") as Claims and Noticing Agent *nunc pro tunc* to the petition
date, all as more fully set forth in the Application; and upon the First Day Declaration; and upon
the Gershbein Affidavit; and due and sufficient notice of the Application having been given
under the particular circumstances; and it appearing that no other or further notice need be
provided; and it appearing that the relief requested by the Application is in the best interests of

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:
Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc.
(8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505),
Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599).  The address of the Debtors'
corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the
Application.

the Debtors, their estates, their creditors, their stakeholders, and other parties in interest; and after

due deliberation thereon, and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED AND DECREED that:**

1.       The Application is GRANTED as set forth herein.

2.       The Debtors are authorized to employ and retain KCC as Claims and

Noticing Agent, effective as of the Petition Date, in accordance with the terms and conditions set

forth in the Application and the Services Agreement.

3.       KCC is authorized and directed to perform noticing services and to

receive, maintain, record, and otherwise administer the proofs of claim filed in these Chapter 11

Cases, and all related tasks, in each case as described in the Application and the Services

Agreement.

4.       KCC shall serve as the custodian of court records and shall be designated

as the authorized repository for all proofs of claim filed in these cases and is authorized and

directed to maintain official claims registers for each of the Debtors and to provide the Clerk's

Office with a certified duplicate thereof upon the request of the Clerk's Office.

5.       KCC is authorized to take such other action to comply with all duties set

forth in the Application and the Services Agreement.

6.       The Debtors are authorized to compensate KCC, subject to compliance

with any order of this Court approving the Debtors' (i) entry into their postpetition financing and

(ii) use of cash collateral (each a "Financing Order") and any budget approved thereunder (the

"Budget"),  in accordance with the terms of the Services Agreement upon the receipt of

reasonably detailed invoices setting forth the services provided by KCC and the rates charged for

each, and to reimburse KCC for all reasonable and necessary expenses it may incur, upon the

presentation of appropriate documentation, without the need for KCC to file fee applications or

otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

7.    KCC shall maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices for services rendered by KCC in its capacity as Claims and Noticing Agent on the Debtors, the office of the United States Trustee, counsel for the Debtors, counsel for any official committee appointed in these cases, counsel to the agent under the Debtors' prepetition revolving loan facility and postpetition debtor-in-possession revolving loan facility (the "DIP ABL Facility"), and any party who specifically requests service of the monthly invoices.

8.    Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of KCC under this Order shall be administrative expenses of the Debtors' estates.

9.    KCC may apply its retainer to all prepetition invoices, which retainer shall be replenished to the original retainer amount, and thereafter KCC may hold its retainer under the Services Agreement during the chapter 11 cases as security for the payment of fees and expenses incurred under the Services Agreement.

10.    Notwithstanding any provision in the Services Agreement, the Debtors shall indemnify KCC solely to the extent set forth below:

    (i)    Subject to the provisions of subparagraphs (iii) and (iv) below, the Debtors shall indemnify KCC for any Losses arising from, related to or in connection with their performance of the services described in the Services Agreement;

    (ii)    KCC shall not be entitled to indemnification, contribution, or reimbursement for services other than the services to be provided under the Services Agreement, unless such services and the indemnification, contribution, or reimbursement therefore are approved by the Court;

(iii)    Notwithstanding anything to the contrary in the Services Agreement, the Debtors shall have no obligation to indemnify any person, or provide contribution or reimbursement to any person, for any claim or expense that is either (a) judicially determined (the determination having become final) to have arisen from that person's gross negligence or willful misconduct; (b) for a contractual dispute in which the Debtors allege breach of KCC's contractual obligations under the Services Agreement unless the Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to In re United Artists Theatre Co., 315 F.3d 217 (3d Cir. 2003); or (c) settled prior to a judicial determination as to that person's gross negligence or willful misconduct, but determined by this Court, after notice and a hearing, to be a claim or expense for which that person should not receive indemnity, contribution, or reimbursement under the terms of the Services Agreement as modified by the Application and Order;

(iv)    If, before the earlier of (a) the entry of an order confirming a chapter 11 plan in this case (that order having become a final order no longer subject to appeal) and (b) the entry of an order closing this chapter 11 case, KCC believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Indemnification Agreement (as modified by this Order), including without limitation the advancement of defense costs, KCC must file an application before this Court, and the Debtors may not pay any such amounts before the entry of an order by this Court approving the payment.  This subparagraph (iv) is intended only to specify the period of time under which the court shall have jurisdiction over any request for fees and expenses for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify KCC.  All parties in interest shall retain the right to object to any demand by KCC for indemnification, contribution or reimbursement.  For the avoidance of doubt, payment on account of any such indemnification, contribution or reimbursement shall be subject to any Financing Order and the Budget.

11.    Notwithstanding anything in the Services Agreement to the contrary, KCC's liability shall not be limited to (i) the total amount billed or billable to the Debtors for the portion of the particular work which gave rise to the loss or damage, nor (ii) the total amount

4

billed to the Debtors and paid to KCC for the services contemplated under the Services Agreement.

12.     The parties shall meet and confer in an attempt to resolve any dispute which may arise relating to the Services Agreement or monthly invoices, and the parties may seek resolution of the matter from the Court if resolution is not achieved.

13.     In the event KCC is unable to provide the claims and noticing services set forth in this order, KCC will immediately notify the Clerk's Office and Debtors' attorney and cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk's Office and Debtors' attorney.

14.     The Debtors and Claims and Noticing Agent are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

15.     KCC shall not cease providing claims processing services during the Chapter 11 Cases for any reason, including nonpayment, without an order of the Court; provided, however, that KCC may seek such an order on expedited notice by filing a request with the Court with notice of such request to be served on the Debtors, the Office of the United States Trustee, counsel to the agent under the DIP ABL Facility, and any official committee of creditors appointed in these cases by facsimile or overnight delivery.

16.     Notwithstanding anything to the contrary contained herein, any payment to be made or authorization contained hereunder shall be subject to the same limitations and restrictions as are provided for under any Financing Order and the Budget.  To the extent there is

any conflict between this Order and any Financing Order or the Budget, the terms of such

Financing Order or the Budget shall control.

17.      In the event of any inconsistency between the Services Agreement, the

Application and the Order, the Order shall govern.

18.      The Debtors are authorized and empowered to take all actions necessary to

implement the relief granted in this Order.

19.      This Court shall retain jurisdiction with respect to all matters arising from

or related to the implementation or interpretation of this order.

Dated: Wilmington, Delaware

_____, 2015


_____
UNITED STATES BANKRUPTCY JUDGE