**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In re:                                        :    Chapter 11
:
QUIKSILVER, INC., *et al.*,                   :    Case No. 15-11880 (___)
:
Debtors.[1]                        :    (Joint Administration Pending)
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEBTORS' MOTION FOR ORDER AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION TAXES AND RELATED OBLIGATIONS PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a), 363(b), 507(a), 541, 1107(a) AND 1108, AND BANKRUPTCY RULES 6003 AND 6004**

Quiksilver, Inc. ("ZQK") and certain of its affiliates, the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors" and, together with their non-Debtor affiliates, "Quiksilver" or the "Company"), hereby move (the "Motion") the Court for entry of an order, pursuant to sections 105(a), 363(b), 507(a), 541, 1107(a) and 1108 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing, but not directing, the Debtors to pay, in the ordinary course of business, certain prepetition taxes and related obligations and (ii) authorizing and directing the Debtors' banks and financial institutions to receive, process, honor and pay all checks, drafts, transfers or other forms of payment drawn or issued on the Debtors' bank accounts prior to the Petition Date in respect of the foregoing. In support of the Motion, the Debtors rely upon and incorporate by reference the Declaration of

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

Andrew Bruenjes, Americas Chief Financial Officer of Quiksilver, Inc., in Support of Chapter 11 Petitions and First Day Pleadings (the "First Day Declaration"),[2] filed with the Court concurrently herewith. In further support of the Motion, the Debtors, by and through their undersigned proposed counsel, respectfully represent as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are 105(a), 363(b), 507(a), 541, 1107(a) and 1108 of the Bankruptcy Code, and Bankruptcy Rules 6003 and 6004.

3. Pursuant to Rule 9013-1(f) of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that Court would lack Article III jurisdiction to enter such final order or judgment absent the consent of the parties.

## BACKGROUND

4. On September 9, 2015 (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Debtors have requested that the Chapter 11 Cases be jointly administered.

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

5. The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. To date, no creditors' committee has been appointed in these Chapter 11 Cases by the Office of the United States Trustee for the District of Delaware (the "United States Trustee"). No trustee or examiner has been appointed in the Debtors' Chapter 11 Cases.

7. Quiksilver is one of the world's leading outdoor sports lifestyle companies. The Company designs, develops and distributes branded apparel, footwear, accessories and related products. The Company began operations in 1976 making boardshorts for surfers in the United States under a license agreement with the *Quiksilver* brand founders in Australia. Today, the Company's business is rooted in the strong heritage and authenticity of its core brands, *Quiksilver*, *Roxy*, and *DC*, each of which caters to the casual, outdoor lifestyle associated with surfing, skateboarding, snowboarding, and motocross, among other activities. The Company's products are sold in over 115 countries through a wide range of distribution points, including wholesale accounts (surf shops, skate shops, snow shops, sporting goods stores, discount centers, specialty stores, select department stores, and licensed stores), Company-owned retail stores, and its e-commerce websites. The Debtors comprise each of the Company's U.S. entities, including parent, ZQK, as well as QS Wholesale, Inc., QS Retail, Inc., DC Shoes, Inc. and seven inactive entities.

8. Additional factual background information regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to these Chapter 11 Cases, is set forth in detail in the First Day Declaration.

## RELIEF REQUESTED

9. By this Motion, the Debtors request entry of an order, pursuant to sections 105(a), 363, 507(a), 541, 1107(a) and 1108 of the Bankruptcy Code, and Bankruptcy Rules 6003 and 6004, authorizing, but not directing, them to pay, in the ordinary course of business, certain prepetition sales and use taxes; income and franchise taxes; property taxes; gross receipts and business and occupation taxes; regulatory and licensing fees; business license fees, annual report taxes, and other taxes and fees; and all other similar obligations (collectively, the "Taxes") due and owing to various federal, state and local taxing and licensing authorities (the "Taxing Authorities").

10. In addition, the Debtors request entry of orders (a) authorizing all applicable banks and other financial institutions (collectively, the "Banks"), when requested by the Debtors in their sole discretion, to receive, process, honor, and pay any and all checks, drafts, and other forms of payment, including fund transfers, on account of the Taxes, whether such checks or other requests were submitted before, on, or after the Petition Date; (b) authorizing the Banks to rely on the representations of the Debtors as to which checks are subject to this Motion, provided that any such Bank shall not have any liability to any party for relying on such direction and representations by the Debtors; (c) providing that the Banks shall, at the direction of the Debtors, receive, process, honor, and pay all prepetition and pospetition checks and fund transfers on account of the Taxes that had not been honored and paid as of the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments and that any such Bank shall not have any liability to any party for relying on such direction by the Debtors; and (d) authorizing the Debtors to issue new postpetition checks or effect new

postpetition fund transfers to replace any checks, drafts and other forms of payment which may be inadvertently dishonored or rejected.

11. The relief requested herein should not (a) be construed as a request to assume, or for authority to assume, any executory contract under section 365 of the Bankruptcy Code or otherwise, (b) waive, affect, or impair any of the Debtors' rights, claims, or defenses, including, but not limited to, those arising from section 365 of the Bankruptcy Code, other applicable law, or any agreement, (c) grant third-party beneficiary status or bestow any additional rights on any third party, (d) be otherwise enforceable by any third party other than the Banks, or (e) impair the Debtors' ability to contest or object to any claims, including Taxes, asserted against the Debtors on any ground permitted by applicable law.

12. For the reasons set forth herein, the Debtors submit that the relief requested herein is in the best interest of the Debtors, their estates, creditors, stakeholders and other parties in interest, and therefore, should be granted.

**BASIS FOR RELIEF**

13. The Debtors, in the ordinary course of their business, incur various tax liabilities and have generally paid such tax liabilities as they became due. The Debtors' books and records reflect that, to the Debtors' knowledge, they are substantially current on all Taxes, not otherwise subject to dispute, which were due and owing prior to the Petition Date. However, certain Taxes attributable to the prepetition period have accrued and are not yet due and owing. Specifically, the Debtors estimate that certain Taxes relating to the prepetition period will become due and owing to the Taxing Authorities in the ordinary course of business following the

Petition Date.  As of the Petition Date, the Debtors estimate that approximately $2,125,000[3] in prepetition Taxes have accrued.[4]

        14.      The Debtors are subject to the following Taxes:

            (1)      <u>Sales and Use Taxes</u>. In the normal course of business, the Debtors collect and remit to certain taxing authorities (the "<u>Taxing Authorities</u>") a variety of sales, local gross receipts and other similar taxes in connection with the sale of merchandise to their customers (collectively, the "<u>Sales Taxes</u>").  As retailers, the Debtors pay significant Sales Taxes in the ordinary course. The Debtors also incur and pay a variety of use taxes (the "<u>Use Taxes</u>" and, together with the Sales Taxes, the "<u>Sales and Use Taxes</u>"). The Debtors incur liability for Use Taxes when (i) the Debtors purchase of taxable fixed assets without sales tax and (ii) the Debtors purchase of taxable supplies or services without sales tax. Purchases without sales tax often occur when property or services are purchased from vendors that have no nexus to the resident state of the Debtors. Such vendors are not obligated to charge or remit sales taxes for sales to parties outside the state of the vendor's operations. Nevertheless, purchasers, such as the Debtors, are obligated to self-assess and pay Use Taxes, when applicable, to the states in which the purchasers operate. Jurisdictions differ with regard to frequency of payments of Use Taxes, with payments ranging from monthly to quarterly to annually.  As of the Petition Date, the Debtors estimate that the aggregate amount of accrued Sales and Use Taxes is approximately $1,300,000.

            (2)      <u>Income and Franchise Taxes</u>. The Debtors pay certain taxes based on their income (the "<u>Income Taxes</u>"). The Debtors typically pay Income Taxes annually in the ordinary course of business. The Debtors must also pay franchise taxes (the "<u>Franchise Taxes</u>" and, together with the Income Taxes, the "<u>Income and Franchise Taxes</u>") to certain of the Taxing Authorities so that the Debtors can operate their business in the applicable taxing jurisdiction. Some states assess a flat Franchise Tax on all businesses and other states assess a Franchise Tax based upon some measure of income, gross receipts, net worth or other measure of value. The Franchise Taxes

---

[3]  Contemporaneous with filing this Motion the Debtors have filed their Shipping Motion (as defined in the First Day Declaration).  As further set forth therein, the Debtors also pay duties and Taxes in the ordinary course, among other things, in connection with the import and export of goods (collectively, the "<u>Import Taxes</u>").

[4]  In addition to the estimated amounts set forth herein, certain Taxing Authorities have asserted disputed Taxes of roughly €127,000.

are typically paid annually to the applicable Taxing Authorities. As of the Petition Date, the Debtors estimate that the aggregate amount of accrued Income and Franchise Taxes is approximately $300,000.

(3) <u>Property Taxes</u>. Various state and local governments in jurisdictions where the Debtors' operations are located have the authority to levy property taxes against the Debtors' leased and owned real and personal property (the "<u>Property Taxes</u>"). The timing of payment of the Property Taxes varies by jurisdiction, but in most jurisdictions the Debtors pay Property Taxes annually or bi-annually depending on how the relevant tax is assessed. As of the Petition Date, the Debtors estimate that the aggregate amount of accrued Property Taxes is approximately $400,000.

(4) <u>Gross Receipts and Business and Occupation Taxes</u>. Several Taxing Authorities require that the Debtors pay a tax on total gross revenues (the "<u>Gross Receipts Taxes</u>"). In certain jurisdictions in which the Debtors operate, this form of tax is referred to as a business and occupation tax (the "<u>Business and Occupation Taxes</u>"). The frequency of payments differs by jurisdiction. As of the Petition Date, the Debtors estimate that the aggregate amount of accrued Business and Occupation Taxes is approximately $50,000.

(5) <u>Business License Fees, Annual Report Taxes, and Other Taxes and Fees</u>. Some local governments require the Debtors to obtain a business license and pay fees associated with such license (the "<u>Business License Fees</u>"). The requirements for a company to obtain a business license and the manner in which the fees are computed vary according to the laws of the applicable jurisdiction. Various Taxing Authorities also require the Debtors to pay annual report taxes (the "<u>Annual Report Taxes</u>") in order to be in good standing for purposes of conducting business within the state. In addition to the Business License Fees and Annual Report Taxes, the Debtors also pay certain other taxes and fees, such as certain filing fees, in the ordinary course of business (the "<u>Other Taxes and Fees</u>"). As of the Petition Date, the Debtors estimate that the aggregate amount of accrued Business License Fees, Annual Report Taxes, and Other Taxes and Fees is approximately $75,000.

15. The continued payment of the Taxes on their normal due dates will ultimately preserve the resources of the Debtors' estates, thereby promoting the Debtors' prospects for a successful restructuring. If such obligations are not timely paid, the Debtors will

7

be required to expend time and money to resolve a multitude of issues related to such obligations, each turning on the particular terms of each Taxing Authority's applicable laws, including (a) whether the obligations are priority, secured or unsecured in nature, (b) whether they are proratable or fully prepetition or postpetition obligations, and (c) whether penalties, interest, and attorneys' fees and costs can continue to accrue on a postpetition basis, and if so, whether such penalties, interest, and attorneys' fees and costs are priority, secured or unsecured in nature. The Debtors desire to avoid unnecessary disputes with the Taxing Authorities – and expenditures of time and money resulting from such disputes – over a myriad of issues that are typically raised by such entities as they attempt to enforce their rights to collect taxes.

16. The Debtors may suffer clear and irreparable harm if the prepetition Taxes are not paid when they become due and payable. Additionally, the Taxing Authorities may cause the Debtors to be audited if Taxes are not paid immediately. Such audits will unnecessarily divert the Debtors' attention away from their efforts to maximize value. If the Debtors do not pay such amounts in a timely manner, the Taxing Authorities may attempt to revoke the Debtors' licenses, suspend the Debtors' operations and pursue other remedies that will harm the estates. In all cases, the Debtors' failure to pay Taxes could have a material adverse impact on their ability to operate in the ordinary course of business. Any disputes that could impact their ability to conduct business in a particular jurisdiction could have a wide-ranging and adverse effect on the Debtors' operations as a whole.

17. Moreover, the federal government and many states in which the Debtors operate have laws providing that the Debtors' officers, directors or other responsible employees could, under certain circumstances, be held personally liable for the payment of certain Taxes. To the extent any accrued Taxes of the Debtors were unpaid as of the Petition Date in these

jurisdictions, the Debtors' officers and directors could be subject to lawsuits during the pendency of the Chapter 11 Cases. In such event, collection efforts by the Taxing Authorities would be extremely distracting for the Debtors and their directors and officers in their efforts to bring the Chapter 11 Cases to an expeditious conclusion.

**APPLICABLE AUTHORITY**

**A.     Payment Of Certain Taxes Is Authorized Under Section 541 Of The Bankruptcy Code.**

18.     Although the Debtors have not conducted an exhaustive survey of all states in which the Taxes are due, the Debtors believe that some of the Taxes constitute so-called "trust fund" obligations that are required to be collected from third parties and held in trust for payment to the Taxing Authorities. See, e.g., Official Comm. of Unsecured Creditors of the Columbia Gas Transmission Corp. v. Columbia Gas Sys. Inc. (In re Columbia Gas Sys. Inc.), 997 F.2d 1039, 1051 (3d Cir. 1993) (refunds required to be collected by federal law created trust fund that was not property of debtor's estate); Shank v. Wash. State Dep't of Revenue (In re Shank), 792 F.2d 829, 830 (9th Cir. 1986) (same).

19.     Consequently, the funds that would be used to pay the trust fund taxes are not property of the Debtors' estates within the meaning of section 541 of the Bankruptcy Code. See Begier v. IRS, 496 U.S. 53, 55-67 (1990) (taxes such as excise taxes, FICA taxes and withholding taxes are property held by debtor in trust for another and, as such, do not constitute property of estate); In re Am. Int'l Airways, Inc., 70 B.R. 102, 103 (Bankr. E.D. Pa. 1987) (funds held in trust for federal excise and withholding taxes are not property of debtor's estate and, therefore, not available for distribution to creditors); Shipley Co. v. Darr (In re Tap, Inc.), 52 B.R. 271, 278 (Bankr. D. Mass. 1985) (funds paid by employer to debtor for payment of employer's federal taxes were returnable to employer and not part of debtor's estate).

**B.     Payment Of The Taxes Is Appropriate Under Section 507(a)(8) Of The Bankruptcy Code.**

20.     Payment of the Taxes deemed priority claims under section 507(a)(8) of the Bankruptcy Code should be authorized on the basis that they are required to be paid in full in any event as a condition to satisfying the plan confirmation requirements contained in section 1129 of the Bankruptcy Code. Thus, the Debtors' payment of such Taxes now will affect only the timing of the payments and not the amounts to be received by the Taxing Authorities.

21.     Moreover, to the extent that the Taxes are entitled to priority treatment under Bankruptcy Code section 507(a)(8), the governmental units may attempt to assess interest and penalties on their tax claims from the time they are due until they are paid. See 11 U.S.C. § 507(a)(8)(G) (granting priority status to a "penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss"). To the extent the Debtors pay the Taxes in the ordinary course of business, the Debtors will avoid the cost of paying interest and penalties to which the Taxing Authorities may be entitled.

22.     Further, even if certain Taxes are not entitled to priority status under Bankruptcy Code section 507(a)(8), the Debtors believe that such amounts should be paid as a use of estate property outside the ordinary course of business on the grounds that the payments are necessary to preserve the value of the Debtors' estates.

**C.     Payment Of The Taxes Is Also Appropriate Under Sections 105(a) And 363 Of The Bankruptcy Code And The Doctrine Of Necessity.**

23.     Section 363(c)(1) of the Bankruptcy Code expressly grants the Debtors the authority to "enter into transactions . . . in the ordinary course of business" and "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The Debtors respectfully submit that paying the taxes is in the ordinary course of their business.

24. To the extent payment of the Taxes arguably involves the use of assets outside of the ordinary course of business, the Debtors submit that section 363(b)(1), operating in conjunction with section 105(a) of the Bankruptcy Code and the judicially created "necessity of payment doctrine," support the proposed payment of the Taxes. Section 363(b)(1) of the Bankruptcy Code provides: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1).

25. Under the "necessity of payment doctrine" and section 105(a) of the Bankruptcy Code, courts have consistently permitted immediate payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. See, e.g., Miltenberger v. Logansport Ry. Co., 106 U.S. 286, 309 (1882). The modern application of the doctrine of necessity is largely unchanged from the Court's reasoning in Miltenberger. See In re Lehigh & New Eng. Ry. Co., 657 F.2d 570, 581-82 (3d Cir. 1981) ("[I]n order to justify payment under the 'necessity of payment' rule, a real and immediate threat must exist that failure to pay will place the continued operation of the [debtor] in serious jeopardy."); see also In re Just for Feet, Inc., 242 B.R. 821, 825 (Bankr. D. Del. 1999) ("The Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11."); In re Columbia Gas Sys., Inc., 171 B.R. 189, 191-92 (Bankr. D. Del. 1994).

26. Failure to timely pay the Taxes may cause Taxing Authorities to take precipitous action, including a flurry of lien filings and a marked increase in audits (which would unnecessarily divert the Debtors' attention from the chapter 11 process to the detriment of all parties-in-interest). Prompt and regular payment of the Taxes would avoid any such unnecessary

11

governmental action. In some cases, prepayment of such Taxes may actually reduce the amounts ultimately paid to the Taxing Authorities because penalties and interest will be avoided by prompt payment. Moreover, it is in the best interests of the Debtors' estates and consistent with the policy of the Bankruptcy Code to eliminate the possibility that officers and directors will become subject to time consuming litigation pursuant to laws providing for personal liability in the event of nonpayment of the Taxes. Certain of the Taxes may be considered to be trust funds that are not property of the Debtors' estates and/or taxes as to which the Debtors' officers and directors may be held personally liable in the event of nonpayment. In such event, collection efforts by the Taxing Authorities would provide distractions to the Debtors and their officers and directors in their efforts to bring the Chapter 11 Cases to an expeditious conclusion.

27.  The relief requested in this Motion has been granted in comparable chapter 11 cases in this jurisdiction. See, e.g., In re Dendreon Corporation, Case No. 14-12515 (PJW) (Bankr. D. Del. Nov. 12, 2014); In re Savient Pharms., Inc., Case No. 13-12680 (MFW) (Bankr. D. Del. Oct. 16. 2013); In re Exide Techs., Case No. 13-11482 (KJC) (Bankr. D. Del. June 11, 2013); In re ICL Holding Co., Inc., Case No. 12-13319 (KG) (Bankr. D. Del. Dec. 13, 2012).[5]

28.  The Debtors respectfully submit that the present circumstances warrant similar relief in the Chapter 11 Cases.

## IMMEDIATE RELIEF IS NECESSARY TO AVOID IMMEDIATE AND IRREPARABLE HARM

29.  Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R.

---

[5] Because of the voluminous nature of the orders cited herein, they are not attached to this Motion. Copies of these orders, however, are available on request.

Bankr. P. 6003; see also In re First NLC Fin. Servs., LLC, 382 B.R. 547, 549 (Bankr. S.D. Fla. 2008) (holding that Rule 6003 permits entry of retention orders on an interim basis to avoid irreparable harm).  The Third Circuit has interpreted the language "immediate and irreparable harm" in the context of preliminary injunctions.  In that context, the court has instructed that irreparable harm is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.  See, e.g., Norfolk S. Ry. Co. v. City of Pittsburgh, 235 Fed. App'x 907, 910 (3d Cir. 2007) (citing Glasco v. Hills, 558 F.2d 179, 181 (3d Cir. 1977)).  Furthermore, the harm must be shown to be actual and imminent, not speculative or unsubstantiated.  See, e.g., Acierno v. New Castle County, 40 F.3d 645, 653-55 (3d Cir. 1994).  The Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors.

### WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)

30.    The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate without interruption and to preserve value for their estates. Accordingly, the Debtors respectfully request that the Court waive the fourteen day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## RESERVATION OF RIGHTS

31. Nothing contained herein is or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an assumption or rejection of any executory contract or unexpired lease pursuant to Bankruptcy Code section 365; or (e) otherwise affect the Debtors' rights under Bankruptcy Code section 365 to assume or reject any executory contract with any party subject to this Motion.

## NOTICE

32. Notice of this Motion shall be given to (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the agent for the Debtors' postpetition secured loan facilities; (c) counsel to the agent for the Debtors' prepetition revolving loan facility; (d) the agent for the Debtors' prepetition senior secured notes; (e) the agent for the Debtors' prepetition senior unsecured notes; (f) the parties listed in the consolidated list of thirty (30) largest unsecured creditors filed by the Debtors in these Chapter 11 Cases; and (g) any such other party entitled to notice pursuant to Local Bankruptcy Rule 9013-1(m).  The Debtors submit that no other or further notice need be provided.  The Debtors submit that no other or further notice need be provided.

## NO PRIOR REQUEST

33. No previous request for the relief sought herein has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that this Court enter an order, substantially in the form annexed hereto, granting the relief sought herein and granting such other and further relief as may be just and proper.

Dated:   Wilmington, Delaware
         September 9, 2015

        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

        */s/      Van C. Durrer, II*
        Van C. Durrer, II (I.D. No. 3827)
        Annie Z. Li (*pro hac vice admission pending*)
        300 South Grand Avenue, Suite 3400
        Los Angeles, California 90071
        Telephone: (213) 687-5000
        Fax: (213) 687-5600

        - and -

        John K. Lyons (*pro hac vice admission pending*)
        Jessica S. Kumar (*pro hac vice admission pending*)
        155 N. Wacker Dr.
        Chicago, Illinois 60606
        Telephone: (312) 407-0700
        Fax: (312) 407-0411

        *Proposed Counsel for Debtors and Debtors in Possession*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| QUIKSILVER, INC., *et al.*, | Case No. 15-11880 (___) |
| Debtors.[1] | (Jointly Administered) |
|  | **Related Docket No.** __ |

## ORDER AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION TAXES AND RELATED OBLIGATIONS PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a), 363(b), 507(a), 541, 1107(a) AND 1108, AND BANKRUPTCY RULES 6003 AND 6004

Upon the motion (the "Motion")[2] of the Debtors for an order (the "Order"), pursuant to Bankruptcy Code sections 105(a), 363(b), 507(a), 541, 1107(a) and 1108, and Bankruptcy Rules 6003 and 6004, (i) authorizing, but not directing, the Debtors to pay, in the ordinary course of business, certain prepetition taxes and related obligations and (ii) authorizing and directing the Debtors' banks and financial institutions to receive, process, honor and pay all checks, drafts, transfers or other forms of payment drawn or issued on the Debtors' bank accounts prior to the Petition Date in respect of the foregoing; and upon consideration of the First Day Declaration; and due and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice is necessary; and it

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599).  The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or the First Day Declaration.

appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED AND DECREED that:**

1. The Motion is GRANTED as set forth herein.

2. The Debtors are hereby authorized, but not directed, to pay all Taxes owing to the Taxing Authorities in the ordinary course of their businesses, whether arising or accrued prior to or after the Petition Date.

3. All applicable banks and other financial institutions are hereby authorized, when requested by the Debtors in their sole discretion, to receive, process, honor and pay all prepetition and postpetition checks, drafts and other forms of payment, including fund transfers, on account of the Taxes, whether such checks or other requests were submitted prior to or after the Petition Date.

4. The Debtors' banks and other financial institutions shall rely on the direction and representations of the Debtors as to which checks and fund transfers should be honored and paid pursuant to this order, and any such bank shall not have any liability to any party for relying on such direction and representations by the Debtors as provided for in this Order or for inadvertently honoring or dishonoring any check or fund transfer.

5. The Debtors' banks shall, at the direction of the Debtors, receive, process, honor, and pay all prepetition and postpetition checks and fund transfers on account of the Taxes that had not been honored and paid as of the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments and any such bank shall not have any

liability to any party for relying on such direction by the Debtors as provided for in this order or for inadvertently failing to follow such direction.

6.  To the extent the Debtors have not yet sought to remit payment on account of the Taxes, the Debtors are authorized, but not directed, to issue checks or provide for other means of payment of the Taxes.

7.  The Debtors shall be and hereby are authorized to issue new postpetition checks or effect new postpetition fund transfers on account of the Taxes to replace any prepetition checks or fund transfer requests that may be dishonored or rejected.

8.  Notwithstanding the relief granted herein and any actions taken hereunder, nothing herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any Taxing Authority.

9.  Nothing in the Motion or the Order shall be construed as impairing the Debtors' right to contest the validity, priority or amount of any Taxes allegedly due or owing to any Taxing Authority, and all of the Debtors' rights with respect thereto are hereby reserved.

10. Notwithstanding anything to the contrary contained herein, the relief granted in this Order and any payment to be made hereunder shall be subject to the terms of any orders approving entry into debtor-in-possession financing and authorizing the use of cash collateral approved by this Court in these chapter 11 cases (including with respect to any budgets or other covenants governing or relating to such debtor-in-possession financing and/or use of cash collateral), and to the extent there is any inconsistency between the terms of such orders and any action taken or proposed to be taken hereunder, the terms of such orders shall control.

4

11. The Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested is necessary to avoid immediate and irreparable harm.

12. Notwithstanding Bankruptcy Rule 6004(h), the Order shall be effective and enforceable immediately upon entry hereof.

13. The requirements set forth in Local Bankruptcy Rule 9013-1(b) are satisfied by the contents of the Motion.

14. The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

15. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: Wilmington, Delaware

_____, 2015

_____
UNITED STATES BANKRUPTCY JUDGE