## **EXHIBIT 1**

**Store Closing Agreement**

 

September 4, 2015

*VIA EMAIL*
QS RETAIL, INC.
Attn:  General Counsel
5600 Argosy Ave. Bldg 100
Huntington Beach, Ca 92649
Phone:  (714) 889-2200

Re:     **Letter Agreement Governing Inventory Disposition**

Dear Steve:

This letter shall serve as an agreement ("Agreement") between Hilco Merchant Resources, LLC and Gordon Brothers Retail Partners, LLC, on the one hand (collectively, "Agent" or a "Party"), and QS RETAIL, Inc., on the other hand ("Merchant" or a "Party" and together with the Agent, the "Parties"), under which Agent shall act as the exclusive agent for the purpose of conducting a "store closing" or other mutually agreed upon sale at Merchant's retail stores identified on Exhibit A (each a "Store" and collectively, the "Stores") in the United States (the "Sale").

**A.      Intentionally Left Blank.**

**B.      Sale Term**

For each Store, the Sale shall commence on September 6, 2015 (the "Sale Commencement Date") and conclude on respective dates to be mutually agreed to by Agent and Merchant; provided however, that the Sale shall conclude at all Stores no later than December 31, 2015(the "Sale Termination Date").  The period between the Sale Commencement Date and the Sale Termination Date shall be referred to as the "Sale Term."

**C.      Project Management**

(i)      Agent's Undertakings

Agent shall, in collaboration with Merchant, (a) provide qualified supervisors (the "Supervisors") engaged by Agent to oversee the management of the Stores; (b) determine appropriate point-of-sale and internal and external advertising strategies for the Stores, recommend and assist Merchant with advertising, and create signage for the Stores, all at Merchant's cost and expense and approved in advance by Merchant; (c) determine appropriate discounts of Merchandise (as defined below) approved in advance by Merchant; (d) recommend staffing levels for the Stores and appropriate bonus and incentive programs, if any, for the Stores' employees; (e) oversee display of Merchandise for the Stores; (f) to the extent that information is available, evaluate sales of Merchandise by category and sales reporting and monitor expenses; (g) maintain the confidentiality of all proprietary or non-public information regarding Merchant in accordance with the provisions of the confidentiality agreement signed by the Parties; (h) assist Merchant in connection with managing and controlling loss prevention and employee relations matters; (i) provide support in

obtaining appropriate authorization and permits to conduct the Sale from state and local authorities (if applicable) by (i) advising Merchant of the applicable waiting period under such laws, and/or (ii) preparing (in Merchant's name and for Merchant's signature) all permitting paperwork as may be necessary under such laws, delivering all such paperwork to Merchant, and filing on behalf of Merchant, all such paperwork where necessary, and/or (iii) advising Merchant where permitting paperwork and/or waiting periods do not apply; (j) assist Merchant in creating a customer transition program to transition customers from the Stores to Merchant's other retail channels; and (k) provide such other related services deemed necessary or appropriate by Merchant and Agent.

At the conclusion of the Sale, Agent shall surrender the premises for each Store to Merchant in broom clean condition; provided, however, Merchant shall bear all costs and expenses associated with surrendering the premises in accordance with the lease requirements for such premises according to a budget mutually agreed to between the Agent and Merchant. At the conclusion of the Sale at each Store, Agent shall photographically document the condition of each such Store.

The Parties expressly acknowledge and agree that Merchant shall have no liability to the Supervisors for wages, benefits, severance pay, termination pay, vacation pay, pay in lieu of notice of termination or any other liability arising from Agent's hiring or engagement of the Supervisors, and the Supervisors shall not be considered employees of Merchant.

(ii)    Merchant's Undertakings

During the Sale Term, Merchant shall (at no cost or expense to Agent): (a) be the employer of the Stores' employees (other than the Supervisors) or, to the extent Merchant elects, utilize the services of a third party employment agency recommended by Agent, for purposes of engaging temporary staff for the Stores; (b) pay all taxes, costs, expenses, accounts payable, and other liabilities relating to the Stores, the Stores' employees (other than the Supervisors) and other representatives of Merchant; (c) prepare and process all tax forms and other documentation; (d) collect all sales taxes and pay them to the appropriate taxing authorities for the Stores; (e) use reasonable efforts to cause Merchant's employees to cooperate with Agent and the Supervisors; (f) execute all agreements mutually determined by the Merchant and Agent to be necessary or desirable for the operation of the Stores during the Sale; (g) provide, and arrange for the ordinary maintenance of, all point-of-sale and all other Store-level equipment required for the Stores; (h) ensure that Agent has quiet use and enjoyment of the Stores for the Sale Term in order to perform its obligations under this Agreement; and (i) identify the Merchandise for the Sale, with Agent's assistance allocate and balance the Merchandise among the Stores, and ship and distribute the Merchandise to the Stores.

To assist with the Sale, Merchant shall provide throughout the Sale Term (at no cost or expense to Agent) central administrative services necessary for the Sale, including (without limitation) customary POS administration, sales audit, cash reconciliation, accounting, and payroll processing, all at no cost to Agent.

The Parties expressly acknowledge and agree that Agent shall have no liability to Merchant's employees for wages, benefits, severance pay, termination pay, vacation pay, pay in lieu of notice of termination or any other liability arising from Merchant's employment, hiring or retention of its employees, and such employees shall not be considered employees of Agent.

2

D.    **The Sale**

All sales of Merchandise shall be made on behalf of Merchant.  Agent does not have, nor shall it have, any right, title or interest in the Merchandise.  All sales of Merchandise shall be by cash, gift card, gift certificate, merchandise credit, or credit card, and shall be "final" with no returns accepted or allowed, except as authorized by Merchant.

E.    **Agent Fee and Expenses in Connection with the Sale**

As used in this Agreement, the following terms shall have the following meanings:

(i)    "Gross Proceeds" shall mean the sum of (i) the gross proceeds of all sales of Merchandise made in the Store during the Sale Term, net only of sales taxes.

(ii)    "Merchandise" shall mean all merchandise sold in the Store during the Sale Term comprised of such merchandise in the Stores as of the Sale Commencement Date, plus such other merchandise included in the Stores during the Sale Term; subject in the case of such other merchandise to: (a) Agent's and Merchant's mutual agreement of the composition of such merchandise and the timing of receipt in the Stores, (b) compliance with applicable law, and (c) Agent's and Merchant's subsequent mutual agreement of such other adjustments (if any) to provisions of this Agreement as may be required to reflect the inclusion of such other merchandise in the Sale as Merchandise.

(iii)    "Recovery Percentage" shall mean the Gross Proceeds divided by the Cost Value of the Merchandise.

(iv)    "Cost Value" with respect to each item of Merchandise shall be determined with reference to the Merchant's books and records maintained in the ordinary course consistent with past periods and practices.

Merchant shall pay Agent an "Incentive Fee" of <u>one</u> of the following (e.g., back to first dollar) based upon the following "Recovery Performance hurdles/Incentive Fee" formulations:

| Recovery Percentage | Agent Incentive Fee |
| --- | --- |
| Less than 155.00% | 1.00% of Gross Proceeds |
| 155.00% - 159.99% | 1.50% of Gross Proceeds |
| 160.00% - 169.99% | 1.75% of Gross Proceeds |
| 170.00% and Above | 2.00% of Gross Proceeds |

On a weekly basis as part of the weekly reconciliations contemplated below, Merchant shall pay Agent an advance on account of the Incentive Fee in the amount of 1.00% of Gross Proceeds for the prior week (or partial week in the case of the first and last weeks).  The Recovery Percentage shall be determined in connection with the Final Reconciliation, and once determined, the parties (as part of the Final Reconciliation) shall determine the actual amount of the Incentive Fee. Merchant shall pay Agent any remaining balance due on account of the Incentive Fee (if any) in

3

connection with the Final Reconciliation, and, with Agent's consent, Merchant may offset against such remaining balance amounts (if any) Agent owes to Merchant.

Merchant shall be responsible for all expenses of the Sale, including (without limitation) all Store level operating expenses, all costs and expenses related to Merchant's other retail store operations, and Agent's reasonable, documented and preapproved out of pocket expenses. To control expenses of the Sale, Merchant and Agent have established a budget (the "Expense Budget") of certain delineated expenses within the control of Agent, including (without limitation) payment of the costs of supervision (including (without limitation) Supervisors' wages, fees, travel, and deferred compensation), advertising costs, and Agent's legal and miscellaneous expenses. The Expense Budget for the Sale shall be (i) $98,400 for the first week of the Sale (covering for example start-up expenses, initial signage and supervision travel); and (ii) $31,550 per week thereafter (covering for example weekly supervision compensation/deferred compensation and fees, advertising, and miscellaneous expenses, including without limitation Agent's reasonable and documented legal expenses associated with a bankruptcy filing). The Expense Budget does not include costs, and instead reflects cost savings, associated with supervision because Agent and Merchant have agreed to utilize "Supervisors" (as defined in certain letter agreement dated June 4, 2015 by and among the Agent and Merchant (the "Pop Up Stores Agreement")) associated with the "pop up stores" as Supervisors for the Stores in addition to such Supervisors' responsibilities under the Pop Up Stores Agreement. The Expense Budget shall be increased if the "Supervisors" under the Pop Stores Agreement are not utilized in connection with the Sale to take into account additional costs of supervision that will be necessary for Agent to perform its responsibilities under this Agreement and properly conduct the Sale. The Expense Budget may only be modified by mutual agreement of Agent and Merchant. Merchant shall have no responsibility for costs and expenses in excess of the Expense Budget, unless Agent has obtained Merchant's prior written (including email) consent pursuant to an amendment to the Expense Budget.

All accounting matters (including, without limitation, all fees, expenses, advances, or other amounts reimbursable or payable to Agent) shall be reconciled by mutual agreement of Agent and Merchant on every Wednesday for the prior week and, unless disputed by either Party, shall be paid within seven (7) days after each such weekly reconciliation. The Parties shall complete a final reconciliation and settlement of all amounts payable to Agent and contemplated by this Agreement (including, without limitation, Expense Budget items, and fees earned hereunder) ("Final Reconciliation") no later than forty five (45) days following the Sale Termination Date for the last Store.

## F.    **Indemnification**

### (i)    Merchant's Indemnification

Merchant shall indemnify, defend, and hold Agent and its consultants, members, managers, partners, officers, directors, employees, attorneys, advisors, representatives, lenders, potential co-investors, principals, affiliates, and Supervisors (collectively, "Agent Indemnified Parties") harmless from and against all liabilities, claims, demands, damages, costs and expenses (including reasonable attorneys' fees) arising from or related to: (a) the willful or negligent acts or omissions of Merchant or the Merchant Indemnified Parties (as defined below); (b) the material breach of any provision of this Agreement by Merchant; (c) product liability claims, except claims arising from Agent's negligence, willful misconduct or unlawful behavior, (d) claims asserted by any Store

employees employed by Merchant (under a collective bargaining agreement or otherwise), relating to such employment against Agent or an Agent Indemnified Party, except claims arising from Agent's negligence, willful misconduct or unlawful behavior; (d) any harassment, discrimination or violation of any laws or regulations by Merchant or any of the Merchant Indemnified Parties; and (e) Merchant's failure to pay over to the appropriate taxing authority any taxes required to be paid by Merchant during the Sale Term in accordance with applicable law.

    (ii)    Agent's Indemnification

Hilco Merchant Resources, LLC and Gordon Brothers Retail Partners, LLC shall, jointly and severally, indemnify, defend and hold Merchant and its consultants, members, managers, partners, officers, directors, employees, attorneys, advisors, representatives, lenders, potential co-investors, principals, and affiliates (other than the Agent or the Agent Indemnified Parties) (collectively, "Merchant Indemnified Parties") harmless from and against all liabilities, claims, demands, damages, costs and expenses (including reasonable attorneys' fees) arising from or related to (a) the willful or negligent acts or omissions of Agent or the Agent Indemnified Parties; (b) the breach of any provision of, or the failure to perform any obligation under, this Agreement by Agent; (c) any liability or other claims made by an Agent Indemnified Parties or any other person (excluding Merchant Indemnified Parties) against a Merchant Indemnified Party arising out of or related to Agent's conduct of the Sale, except claims arising from Merchant's negligence, willful misconduct, or unlawful behavior; (d) any harassment, discrimination or violation of any laws or regulations by Agent or any of the Agent Indemnified Parties and (e) any claims made by any party engaged by Agent as an employee, agent, representative or independent contractor arising out of such engagement.

**G.**    **Insurance**

    (i)    Merchant's Insurance Obligations

Merchant shall maintain throughout the Sale Term, liability insurance policies (including, without limitation, products liability (to the extent currently provided), comprehensive public liability insurance and auto liability insurance) covering injuries to persons and property in or in connection with the Stores, and shall cause Agent to be named an additional insured with respect to all such policies. At Agent's request, Merchant shall provide Agent with a certificate or certificates evidencing the insurance coverage required hereunder and that Agent is an additional insured thereunder. In addition, Merchant shall maintain throughout the Sale Term, in such amounts as it currently has in effect, workers compensation insurance in compliance with all statutory requirements.

    (ii)    Agent's Insurance Obligations

As an expense of the Sale, Agent shall maintain throughout the Sale Term, liability insurance policies (including, without limitation, products liability/completed operations, contractual liability, comprehensive public liability and auto liability insurance) on an occurrence basis in an amount of at least Two Million dollars ($2,000,000) and an aggregate basis of at least five million dollars ($5,000,000) covering injuries to persons and property in or in connection with Agent's provision of services at the Stores. Agent shall name Merchant as an additional insured and loss payee under such policy, and upon execution of this Agreement provide Merchant with a

certificate or certificates evidencing the insurance coverage required hereunder. In addition, Agent shall maintain throughout the Sale Term, workers compensation insurance compliance with all statutory requirements. Further, should Agent employ or engage third parties to perform any of Agent's undertakings with regard to this Agreement, Agent will ensure that such third parties are covered by Agent's insurance or maintain all of the same insurance as Agent is required to maintain pursuant to this paragraph and name Merchant as an additional insured and loss payee under the policy for each such insurance.

      (iii)    <u>Certain Agreements</u>

Notwithstanding any other provision of this Agreement, Merchant and Agent agree that Agent shall not be deemed to be in possession or control of the Stores, or the Merchandise or other assets located therein or associated therewith, or of Merchant's employees located at the Stores.

**H.**    <u>Representations, Warranties, Covenants and Agreements</u>

      (i)    Merchant warrants, represents, covenants and agrees that (a) Merchant is a corporation duly organized, validly existing and in good standing under the laws of its state of organization, with full power and authority to execute and deliver this Agreement and to perform its obligations hereunder, and maintains its principal executive office at the address set forth herein, (b) the execution, delivery and performance of this Agreement has been duly authorized by all necessary actions of Merchant and this Agreement constitutes a valid and binding obligation of Merchant enforceable against Merchant in accordance with its terms and conditions, and the consent of no other entity or person is required for Merchant to fully perform all of its obligations herein (other than as set forth in Section A), (c) all ticketing of Merchandise at the Stores has been and will be done in accordance with Merchant's customary ticketing practices; and (d) to the extent within the control of Merchant, the Stores will be operated in the ordinary course of business in all respects, other than those expressly agreed to by Merchant and Agent.

      (ii)    Agent warrants, represents, covenants and agrees that (a) each entity comprising Agent is a limited liability company duly organized, validly existing and in good standing under the laws of state of the Delaware, with full power and authority to execute and deliver this Agreement and to perform the Agent's obligations hereunder, and maintains its principal executive office at the addresses set forth herein, (b) the execution, delivery and performance of this Agreement has been duly authorized by all necessary actions of Agent and this Agreement constitutes a valid and binding obligation of Agent enforceable against Agent in accordance with its terms and conditions, and the consent of no other entity or person is required for Agent to fully perform all of its obligations herein, (c) Agent shall comply with and act in accordance with any and all applicable state and local laws, rules, and regulations, and other legal obligations of all governmental authorities, (d) no non-emergency repairs or maintenance in the Stores will be conducted without Merchant's prior written consent, (e) Agent will not take any disciplinary action against any employee of Merchant.

**I.**    <u>Furniture, Fixtures and Equipment</u>

Agent shall sell the FF&E in each such Store from the Store themselves. Agent shall dispose of any unsold FF&E at the conclusion of the Sale in a manner to be approved by Merchant; <u>provided however</u>, that at Agent's election, Agent shall have the right to abandon in-place in a neat

and orderly manner, all unsold FF&E (and all FF&E that Merchant requested that Agent not sell). Merchant shall be responsible for all reasonable costs and expenses incurred by Agent in connection with the sale or other disposition of FF&E, which costs and expenses shall be incurred pursuant to a budget or budgets to be established from time to time by mutual agreement of the Parties.

In consideration for providing the services set forth in this Section I, Agent shall be entitled to a commission from the sale of the FF&E equal to twenty percent (20%) of the gross proceeds (net only of sales taxes to the extent applicable) of the sale of the FF&E.

Agent shall remit to Merchant all such gross proceeds, and during each weekly reconciliation described in Section E above, Agent's FF&E fee shall be calculated, and Agent's calculated and agreed upon FF&E fee and all FF&E costs and expenses then incurred within an agreed upon budget shall paid within seven (7) days after each such weekly reconciliation.

## J.    **Termination**

The following shall constitute "Termination Events" hereunder:

(a)    Merchant's or Agent's failure to perform any of their respective material obligations hereunder, which failure shall continue uncured five (5) days after receipt of written notice thereof to the defaulting Party; or

(b)    The failure of any representation or warranty made by Merchant or Agent to be true in any material respect as of the date made or at any time and throughout the Sale Term, which failure shall continue uncured five (5) days after receipt of written notice thereof to the defaulting Party.

If a Termination Event occurs, the non-defaulting Party  may, in its discretion, elect to terminate this Agreement by providing seven (7) business days' written notice thereof to the other Party and, in addition to terminating this Agreement, pursue any and all rights and remedies and damages resulting from such default; provided, that in no event shall either Party be liable to the other for any punitive, exemplary, consequential, incidental, indirect or special damages, including, without limitation, lost profits.  If this Agreement is terminated other than as a result of a default by Agent, Merchant shall be obligated to pay Agent all amounts due under this Agreement through and including the termination date.

## K.    **Notices**

All notices, certificates, approvals, and payments provided for herein shall be sent by fax or by recognized overnight delivery service as follows:  (a) To Merchant: Quiksilver, Inc., 5600 Argosy Circle, #100, Huntington Beach, CA 92649, Attn: Retail Department; with a copy to: Legal Department; (b) To Agent: c/o Hilco Merchant Resources, LLC, One Northbrook Place, 5 Revere Drive, Suite 206, Northbrook, IL 60062, Fax:  847- 897-0859, Attn: Ian S. Fredericks; and c/o Gordon Brothers Retail Partners, LLC, 800 Boylston Street, 27th Floor, Boston, MA 02199, Fax: 617-531-7906, Attention, Michael Chartock; or (c) such other address as may be designated in writing by Merchant or Agent.

**L.     Independent Consultant**

Agent's relationship to Merchant is that of an independent contractor without the capacity to bind Merchant in any respect.  No employer/employee, principal/agent, joint venture or other such relationship is created by this Agreement.  Merchant shall have no control over the hours that Agent or its employees or assistants or the Supervisors work or the means or manner in which the services that will be provided are performed and Agent is not authorized to enter into any contracts or agreements on behalf of Merchant or to otherwise create any obligations of Merchant to third parties, unless authorized in writing to do so by Merchant.

**M.     Non-Assignment**

Neither this Agreement nor any of the rights hereunder may be transferred or assigned by either Party without the prior written consent of the other Party; provided that either Party may assign this Agreement without the consent of the other Party in the event of a merger, reorganization, consolidation or other change in control transaction, or in connection with the sale of all or substantially all of such Party's assets.  No modification, amendment or waiver of any of the provisions contained in this Agreement, or any future representation, promise or condition in connection with the subject matter of this Agreement, shall be binding upon any Party to this Agreement unless made in writing and signed by a duly authorized representative or agent of such Party.  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, legal representatives, successors and permitted assigns.

**N.     Severability**

If any term or provision of this Agreement, as applied to either Party or any circumstance, for any reason shall be declared by a court of competent jurisdiction to be invalid, illegal, unenforceable, inoperative or otherwise ineffective, that provision shall be limited or eliminated to the minimum extent necessary so that this Agreement shall otherwise remain in full force and effect and enforceable.    If the surviving portions of the Agreement fail to retain the essential understanding of the Parties, the Agreement may be terminated by mutual consent of the Parties.

**O.     Governing Law, Venue, Jurisdiction and Jury Waiver**

This Agreement, and its validity, construction and effect, shall be governed by and enforced in accordance with the internal laws of the State of California (without reference to the conflicts of laws provisions therein).  Any legal action, suit or proceeding arising in connection with this Agreement shall be submitted to the exclusive jurisdiction of the Orange County, California courts and each Party hereby waives any defenses or objections based on lack of jurisdiction, improper venue, and/or forum non conveniens. Merchant and Agent waive their respective rights to trial by jury of any cause of action, claim, counterclaim or cross-complaint in any action, proceeding and/or hearing brought by either Agent against Merchant or Merchant against Agent on any matter whatsoever arising out of, or in any way connected with, this Agreement, the relationship between Merchant and Agent, any claim of injury or damage or the enforcement of any remedy under any law, statute or regulation, emergency or otherwise, now or hereafter in effect.  If either Party commences any legal action, suit or proceeding to enforce or interpret this Agreement or any of the terms or provisions hereof, then in addition to any damages or remedies that may be awarded to the prevailing party therein, the prevailing party will be entitled to have and recover from the losing

8

party the prevailing party's reasonable outside attorneys' fees and costs incurred in connection therewith.

If Merchant commences a case under Chapter 11 of Bankruptcy Code with a bankruptcy court (the "Bankruptcy Court"), Merchant shall promptly file a motion to assume both this Agreement and the Pop Up Store Agreement under section 365 of the Bankruptcy Code, and utilize its best efforts to ensure that such motion is approved by an order, in form and substance reasonably acceptable to the Agent and Merchant, that provides, among other things, as follows: (i) the payment of all fees and reimbursement of expenses hereunder and under the Pop Up Store Agreement to Agent is approved without further order of the court and shall be free and clear of all liens, claims and encumbrances; (ii) all such payments of fees and reimbursement of expenses shall be made on a weekly basis without further order of the Bankruptcy Court and otherwise in accordance with this Agreement and the Pop Up Store Agreement (as the case may be); (iii) approval of the transaction contemplated hereby and by the Pop Up Store Agreement; (iv) authorizing the Sale without the necessity of complying with state and local rules, laws, ordinances and regulations, including, without limitation, permitting and licensing requirements, that could otherwise govern the Sale; (v) authorizing the Sale notwithstanding restrictions in leases, reciprocal easement agreements or other contracts that purport to restrict the Sale or the necessity of obtaining any third party consents; and (vi) take all further actions as are necessary or appropriate to carry out the terms and conditions of this Agreement.  In such event, then notwithstanding the provisions of the second sentence of the first paragraph of this Section O, any legal action, suit or proceeding arising in connection with this Agreement shall be submitted to the exclusive jurisdiction of the Bankruptcy Court having jurisdiction over Merchant, and each Party hereby waives any defenses or objections based on lack of jurisdiction, improper venue, and/or forum non conveniens.

**P.    Entire Agreement**

This Agreement, together with all additional schedules and exhibits attached hereto, and, the Pop Up Stores Agreement, constitutes a single, integrated written contract expressing the entire agreement of the Parties concerning the subject matter hereof.  No covenants, agreements, representations or warranties of any kind whatsoever have been made by any Party except as specifically set forth in this Agreement.  Except with respect to the Pop Up Stores Agreement, all prior agreements, discussions and negotiations are entirely superseded by this Agreement.

**Q.    Execution**

This Agreement may be executed simultaneously in counterparts (including by means of electronic mail, facsimile or portable document format (pdf) signature pages), any one of which need not contain the signatures of more than one party, but all such counterparts taken together shall constitute one and the same instrument. This Agreement, and any amendments hereto, to the extent signed and delivered by means of electronic mail, a facsimile machine or electronic transmission in portable document format (pdf), shall be treated in all manner and respects as an original thereof and shall be considered to have the same binding legal effects as if it were the original signed version thereof delivered in person.

\*          \*          \*

9

If this Agreement is acceptable to you, kindly execute a copy in the space provided, and return a countersigned version to the undersigned. Thank you again for this opportunity -- we look forward to working with you.

Very truly yours,

HILCO MERCHANT RESOURCES, LLC

By: Ian S. Fredericks
Its: SVP & CLO

GORDON BROTHERS RETAIL PARTNERS, LLC

By: Robert Grosskopf
Its: Co-President

**AGREED AND ACCEPTED as of the 4th day of September, 2015:**

QS RETAIL, INC.

By:
Its:

10

If this Agreement is acceptable to you, kindly execute a copy in the space provided, and return a countersigned version to the undersigned. Thank you again for this opportunity -- we look forward to working with you.

Very truly yours,

HILCO MERCHANT RESOURCES, LLC

By: _____
Its:

GORDON BROTHERS RETAIL PARTNERS, LLC

By: _____
Its:

**AGREED AND ACCEPTED as of the** 4th **day of September, 2015:**

QS RETAIL, INC.

By: _____ Lindsey Caya
Its: President

11

**Gordon Brothers Group**
—EST. 1903—

Exhibit A

| Store # | Brand | Store Name | City | State | Sq Ft | Property Management Co. |
|---|---|---|---|---|---|---|
| 27 | QS | QUIKSILVER- UNIVERSAL CITYWALK | Universal City | CA | 2493 | Universal City Walk |
| 29 | QS | QUIKSILVER - SOUTH COAST PLAZA | Costa Mesa | CA | 2167 | South Coast Plaza |
| 50 | QS | QUIKSILVER - TIMES SQUARE | New York | NY | 3033 | Rudin Management Company, Inc. |
| 58 | QS | QUIKSILVER - HOLLYWOOD, FL | Hollywood | FL | 3040 | Seminole Properties Retail |
| 103 | DC | DC - IRVINE SPECTRUM | Irvine | CA | 2305 | The Irvine Company |
| 111 | QS | QUIKSILVER – SEATTLE | Seattle | WA | 6187 | First & Lenora LLC |
| 114 | RX | ROXY - FASHION ISLAND | Newport Beach | CA | 1386 | The Irvine Company |
| 119 | TRI | QUIKSILVER - DEL AMO | Torrance | CA | 5,820 | |
| 120 | WA | WATERMAN - WAIKIKI BEACH WALK | Honolulu | HI | 1,261 | |
| 123 | TRI | QUIKSILVER GLENDALE | Glendale | CA | 2997 | |
| 124 | BR | BOARDRIDERS MEATPACKING | New York | NY | 4262 | |
| 125 | BR | BOARDRIDERS PASADENA | Pasadena | CA | 5000 | |
| 834 | QS | QUIKSILVER OUTLET – LAKEWOOD | Lakewood | CO | 2500 | Simon Property Group |
| 838 | DC | DC OUTLET - PISMO | Pismo Beach | CA | 2405 | Simon Property Group |
| 850 | DC | DC OUTLET - EL PASO | Canutillo | TX | 2625 | Horizon Group Properties |
| 852 | DC | DC OUTLET – GILROY | Gilroy | CA | 2722 | Simon Property Group |
| 859 | DC | DC OUTLET – LAUGHLIN | Laughlin | NV | 2624 | |
| 861 | DC | DC OUTLET - DOLPHIN MALL | Miami | FL | 3052 | Taubman |
| 865 | DC | DC OUTLET - KATY MILLS | Katy | TX | 2050 | Simon Property Group |
| 869 | TRI | QUIKSILVER OUTLET – MIROMAR | Estero | FL | 2270 | Miromar Outlets |
| 872 | TRI | QUIKSILVER OUTLET – CHICAGO | Rosemont | IL | 4000 | Macerich |
| 874 | TRI | QUIKSILVER OUTLET - SILVER SANDS | Destin | FL | 3000 | Silver Sands GL I, LLC |
| 876 | TRI | QUIKSILVER  OUTLET - GREAT LAKES | Auburn Hills | MI | 5576 | Taubman Management |
| 879 | QS | QUIKSILVER OUTLET – ANNAPOLIS | Annapolis | MD | 3500 | Westfield Shoppingtown- Annapolis Mall, Owner LLC |
| 883 | QS | QUIKSILVER OUTLET - CHARLOTTE | Charlotte | NC | 2944 | |
| 885 | TRI | QUIKSILVER OUTLET - WOODBURY COMMONS | Central Valley | NY | 5000 | |
| 887 | TRI | QUIKSILVER OUTLET - NORTH GEORGIA PREMIUM OUTLETS | Dawsonville | GA | 4262 | |