## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| QUIKSILVER, INC., *et al.*, | : | Case No. 15-11880 (BLS) |
| | : | |
| Debtors.[1] | : | Jointly Administered |
| | : | |
| | : | **Hrg. Date: Oct. 6, 2015 at 10:00 a.m. (Eastern)** |
| | : | **Obj. Due: Sept. 29, 2015 at 4:00 p.m. (Eastern)** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x   **Related Docket Nos. 11, 64**

### NOTICE OF ENTRY OF INTERIM ORDER AND FINAL HEARING

PLEASE TAKE NOTICE that on September 9, 2015, the debtors and debtors-in-possession in the above-captioned jointly administered bankruptcy cases (collectively, the "Debtors") filed the Debtors' Motion For Interim and Final Orders Pursuant to Bankruptcy Code Sections 105(a), 363, 507(a), 1107(a) and 1108 And Bankruptcy Rule 6003, Authorizing Debtors To Pay Prepetition Wages, Compensation, And Employee Benefits (Docket No. 11) (the "Motion").[2]  A copy of the Motion is attached hereto as Exhibit A.

PLEASE TAKE FURTHER NOTICE that on September 10, 2015, the Bankruptcy Court (defined below) entered an order (Docket No. 64) (the "Interim Order") granting the Motion on an interim basis.  A copy of the Interim Order is attached hereto as Exhibit B.

---

[1]   The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599).  The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

[2]   Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

PLEASE TAKE FURTHER NOTICE that the final hearing on the Motion (the "Final Hearing") will be held on **October 6, 2015 at 10:00 a.m. (Eastern)** before the Honorable Brendan L. Shannon, United States Bankruptcy Judge for the District of Delaware, in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), 6th Floor, Courtroom 1, 824 Market Street, Wilmington, Delaware 19801.  At the Final Hearing the Debtors will seek approval of the Motion on a final basis and entry of a final order.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion or the relief requested therein must be made in writing, filed with the Bankruptcy Court, 824 Market Street, Wilmington, Delaware 19801, and served so as to be received by the following parties no later than **September 29, 2015 at 4:00 p.m. (Eastern)**:

(i) proposed counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 300 South Grand Avenue, Suite 3400, Los Angeles, California 90071, Attn:  Van C. Durrer, II, Esq. (Van.Durrer@skadden.com), and 155 North Wacker Drive, Chicago, Illinois 60606, Attn: John K. Lyons, Esq. (John.Lyons@skadden.com);

(ii) counsel to the agent for the Debtors' postpetition term loan facility, Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, Attn: Patrick J. Nash, Jr. (patrick.nash@kirkland.com), and Morris Nichols Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington, Delaware 19899-1347, Attn: Robert J. Dehney, Esq. (rdehney@mnat.com);

(iii) counsel to the agent for the Debtors' prepetition and postpetition secured ABL facilities, Reimer & Braunstein LLP, Three Center Plaza, Boston, Massachusetts 02108, Attn: David S. Berman, Esq. (dberman@riemerlaw.com), and Times Square Tower, Seven Times Square, Suite 2506, New York, New York 10036, Steven E. Fox, Esq. (sfox@riemerlaw.com), and Womble Carlyle Sandridge & Rice, LLP, 222 Delaware Avenue, Suite 1501, Wilmington, Delaware 19801, Attn: Steven K. Kortanek, Esq. (skortanek@wcsr.com);

(iv) the agent for the Debtors' prepetition senior secured notes and prepetition senior unsecured notes, U.S. Bank National Association , Global Corporate Trust Services, 100 Wall Street, New York, New York 10005, Attn: Justin L. Shearer, Vice President (justin.shearer@usbank.com);

(v)  the Debtors' consolidated list of thirty largest unsecured creditors listed on its bankruptcy petitions, or if any official committee of unsecured creditors has been appointed, counsel to such committee; and

(vi) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attention: Mark Kenney, Esq. (fax: (302) 573-6497)).

**PLEASE TAKE FURTHER NOTICE THAT IF NO OBJECTIONS TO APPROVAL OF THE MOTION ON A FINAL BASIS ARE TIMELY FILED AND RECEIVED IN ACCORDANCE WITH THE ABOVE PROCEDURES, THE FINAL ORDER MAY BE ENTERED GRANTING THE RELIEF REQUESTED IN THE MOTION ON A FINAL BASIS WITHOUT FURTHER NOTICE OR A HEARING.**

Dated:    Wilmington, Delaware
          September 11, 2015

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

*/s/ Van C. Durrer, II*
Van C. Durrer, II (I.D. No. 3827)
Annie Z. Li
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071
Telephone: (213) 687-5000
Fax: (213) 687-5600

- and -

John K. Lyons
Jessica S. Kumar
155 N. Wacker Dr.
Chicago, Illinois 60606
Telephone: (312) 407-0700
Fax: (312) 407-0411

*Proposed Counsel for Debtors and Debtors in Possession*

**EXHIBIT A**
**MOTION**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                              :
In re:                                                        :    Chapter 11
                                                              :
QUIKSILVER, INC., *et al.*,                                   :    Case No. 15-11880 (___)
                                                              :
                                  Debtors.[1]                 :    (Joint Administration Pending)
                                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS PURSUANT TO
BANKRUPTCY CODE SECTIONS 105(a), 363, 541, 507(a), 1107(a) AND 1108 AND
BANKRUPTCY RULE  6003, AUTHORIZING DEBTORS TO PAY PREPETITION
WAGES, COMPENSATION, AND EMPLOYEE BENEFITS**

Quiksilver, Inc. and certain of its affiliates, the debtors and debtors in possession

in the above-captioned cases (collectively, the "Debtors" and, together with their non-Debtor

affiliates, "Quiksilver" or the "Company"), hereby move (this "Motion") this Court for entry of

an  interim order (the "Interim Order") and final order  (the "Final Order"), under sections 105,

363(b), 507(a), 541, 1107(a), and 1108 of title 11 of the United States Code (the "Bankruptcy

Code") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

(i) authorizing, but not directing, the Debtors, inter alia, to pay prepetition wages, salaries,

commissions, and employee benefits, (ii) authorizing, but not directing, the Debtors to continue

the maintenance of all employee benefit programs in the ordinary course, (iii) authorizing

financial institutions to receive, process, honor and pay all checks, drafts and other forms of

payment, including fund transfers, used by the Debtors relating to the foregoing, and (iv)

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:
Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc.
(8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505),
Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599).  The address of the Debtors'
corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

granting related relief as further described herein.   In support of the Motion, the Debtors rely

upon and incorporate by reference the Declaration of Andrew Bruenjes, Americas Chief

Financial Officer of Quiksilver, Inc., in Support of Chapter 11 Petitions and First Day Pleadings

(the "First Day Declaration"),[2] filed with the Court concurrently herewith.   In further support of

the Motion, the Debtors, by and through their undersigned proposed counsel, respectfully

represent as follows:

## JURISDICTION AND VENUE

1.       This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and

1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion

in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.       The statutory predicates for the relief requested herein are Bankruptcy Code

sections 105, 363(b), 507(a), 541, 1107(a), and 1008.  Such relief is also warranted under

Bankruptcy Rule 6003.

3.       Pursuant to Rule 9013-1(f) of the Local Rules for the United States Bankruptcy

Court for the District of Delaware, the Debtors consent to the entry of a final judgment or order

with respect to this Motion if it is determined that Court would lack Article III jurisdiction to

enter such final order or judgment absent the consent of the parties.

## BACKGROUND

4.       On September 9, 2015 (the "Petition Date"), the Debtors each commenced a case

by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter

11 Cases").  The Debtors have requested that the Chapter 11 Cases be jointly administered.

---

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the First Day
Declaration.

5.      The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      To date, no creditors' committee has been appointed in these Chapter 11 Cases by the Office of the United States Trustee for the District of Delaware (the "United States Trustee"). No trustee or examiner has been appointed in the Debtors' Chapter 11 Cases.

7.      Quiksilver is one of the world's leading outdoor sports lifestyle companies.  The Company designs, develops and distributes branded apparel, footwear, accessories and related products.  The Company began operations in 1976 making boardshorts for surfers in the United States under a license agreement with the *Quiksilver* brand founders in Australia. Today, the Company's business is rooted in the strong heritage and authenticity of its core brands, *Quiksilver*, *Roxy*, and *DC*, each of which caters to the casual, outdoor lifestyle associated with surfing, skateboarding, snowboarding, and motocross, among other activities. The Company's products are sold in over 115 countries through a wide range of distribution points, including wholesale accounts (surf shops, skate shops, snow shops, sporting goods stores, discount centers, specialty stores, select department stores, and licensed stores), Company-owned retail stores, and its e-commerce websites.  The Debtors comprise each of the Company's U.S. entities, including parent, ZQK, as well as QS Wholesale, Inc., QS Retail, Inc., DC Shoes, Inc. and seven inactive entities.

8.      Additional factual background information regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to these Chapter 11 Cases, is set forth in detail in the First Day Declaration.

**RELIEF REQUESTED**

9.      By this Motion, the Debtors request that the Court enter an Interim Order and Final Order, under Bankruptcy Code sections 105(a), 363(b), 507(a), 541, 1107(a) and

3

1108, authorizing, but not directing, the Debtors, to: (a) pay and/or perform, as applicable, prepetition obligations to current employees and independent contractors (collectively, the "Employees"), including accrued prepetition wages, salaries, commissions, other cash and non-cash compensation claims (and to honor previously issued gift cards), and amounts owed to staffing agencies, except as otherwise set forth herein (collectively, the "Employee Claims"); (b) honor and continue in the ordinary course of business until further notice (but not assume) and pay any prepetition amounts associated with the Debtors' vacation, sick time and holiday time policies, workers' compensation, and employee benefit plans and programs, the most significant of which are described below and to pay all fees and costs in connection therewith, except as otherwise set forth herein (collectively, the "Employee Benefit Obligations"); (c) reimburse Employees for prepetition expenses that Employees incurred on behalf of the Debtors in the ordinary course of business (the "Employee Expense Obligations"); (d) pay over to the appropriate parties all prepetition withholdings from Employees and payroll-related taxes associated with the Employee Claims and the Employee Benefit Obligations (the "Employee Withholdings" and, together with the Employee Claims, the Employee Benefit Obligations, and the Employee Expense Obligations collectively, the "Prepetition Employee Obligations"). Following entry of the requested Interim Order and prior to the entry of the Final Order (the "Interim Period"), none of the Debtors' employees will receive payments in amounts in excess of the limits provided for by Bankruptcy Code sections 507(a)(4) or 507(a)(5), as applicable.

10.     In addition, the Debtors request entry of orders (a) authorizing all applicable banks and other financial institutions (collectively, the "Banks"), when requested by the Debtors in their sole discretion, to receive, process, honor, and pay any and all checks, drafts, and other forms of payment, including fund transfers, on account of the Prepetition Employee Obligations,

4

whether such checks or other requests were submitted before, on, or after the Petition Date; (b) authorizing the Banks to rely on the representations of the Debtors as to which checks are subject to this Motion, provided that any such Bank shall not have any liability to any party for relying on such direction and representations by the Debtors; (c) providing that the Banks shall, at the direction of the Debtors, receive, process, honor, and pay all prepetition and postpetition checks and fund transfers on account of the Prepetition Employee Obligations that had not been honored and paid as of the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments and that any such Bank shall not have any liability to any party for relying on such direction by the Debtors; and (d) authorizing the Debtors to issue new postpetition checks or effect new postpetition fund transfers to replace any checks, drafts and other forms of payment which may be inadvertently dishonored or rejected.

11.     Finally, the Debtors request an Interim Order and Final Order authorizing, but not directing, the Debtors to continue their ordinary course Employee compensation, benefits and related programs described in this Motion during the postpetition reorganization process.

12.     The relief requested herein should not (a) be construed as a request to assume, or for authority to assume, any executory contract under section 365 of the Bankruptcy Code or otherwise, (b) waive, affect, or impair any of the Debtors' rights, claims, or defenses, including, but not limited to, those arising from section 365 of the Bankruptcy Code, other applicable law, or any agreement, (c) grant third-party beneficiary status or bestow any additional rights on any third party, (d) be otherwise enforceable by any third party other than the Banks, or (e) impair the Debtors' ability to contest or object to any claims, including the Prepetition Employee Obligations, asserted against the Debtors on any ground permitted by applicable law.

13.     The Debtors propose to serve a copy of any interim order granting this Motion within three (3) business days after entry thereof.  The Debtors further request that the Court (a) set a deadline for filing objections to the Motion and entry of the Final Order, (b) set a final hearing on the Motion, and (c) enter the Final Order on this Motion at or after such final hearing.

14.     For the reasons set forth herein, the Debtors submit that the relief requested herein is in the best interest of the Debtors, their estates, creditors, stakeholders and other parties in interest, and therefore, should be granted.

<div align="center">**BASIS FOR RELIEF**</div>

**A.      Wages, Salaries and Commissions**

15.     The Debtors employ approximately 711 full time Employees and 843 part time Employees in their corporate offices, retail facilities, and other facilities.  These Employees perform a wide array of vital tasks relating to the management and day-to-day operations of the Company, including the general administrative functions, wholesale sales and design operations, product supply and shipment operations, and retail sales of the Company's products.

16.     Of these 1,554 Employees, approximately 418 are salaried ("Salaried Employees"), and 1136 are hourly ("Hourly Employees").  The Debtors also have approximately 10 independent contractors (the "Contractors").  The Debtors do not have any unionized employees.

17.     The Debtors employ 424 Employees at their corporate headquarters in Huntington Beach, California, and an additional 1,130 at other locations, including retail and other facilities such as showrooms and offices.  The majority of the Employees are employed by QS Retail, Inc. (approximately 1,141), and a large number are employed by QS Wholesale, Inc. (approximately 411).  In addition, approximately 10 of the Debtors' Employees are employed through a contract staffing agency or other outside firm, such as 24 Seven, Decton, and The Tico Group, LLC

<div align="center">6</div>

("Tico") also engages approximately 150 temporary employees to staff specified projects on behalf of the Debtors (the "Temporary Employees").  The Debtors believe that as of the Petition Date, they do not have any accrued and unpaid obligations for Temporary Employees or for Contractors.

18.    Finally, the Debtors employ approximately 40 independent sales representatives (the "Sales Representatives"), who work solely in sales and are primarily compensated on a commission structure.   The Debtors' estimated accrued and unpaid obligations for Sales Representatives as of the Petition Date are set forth in paragraph 21 below.

19.    The average monthly payroll for the Debtors' Employees is approximately $5,093,000, including payroll taxes.[3]  Many of the Debtors' payroll functions are administered internally; however, payroll check printing, imaging, and processing, the payment of payroll taxes to the relevant government agencies and certain other payroll related services are outsourced to ADP.

20.    The Debtors' pay schedule for its Employees varies between Salaried Employees and Hourly Employees.  Salaried Employees are paid semi-monthly, and their payroll obligations are current on each pay date.  Hourly Employees are paid every other Friday, and their payroll obligations are 7 days in arrears on each pay date.

21.    Certain Employees in the Debtors' sales division and the Sales Representatives (collectively, the "Commissioned Employees"), receive commissions, which are paid on a monthly basis.  Commissions are processed at the end of the each month for the previously concluded month.  The commissions generally represent a percentage of the value of new product orders sold by a Commissioned Employee, although certain of the Commissioned

---

[3]    This amount excludes payroll for Temporary Employees, Contractors, and Sales Representatives.

Employees are paid monthly flat commissions.  For the year 2014, the Debtors paid

approximately $6.7 million in commissions. As of the Petition Date, the Debtors estimate that

approximately $404,160.63 exists in accrued but unpaid commissions for Commissioned

Employees.  Because these commissions represent compensation for services provided over a

monthly, instead of a biweekly period, the commissions amount may exceed the $12,475 priority

cap set forth in Bankruptcy Code sections 507(a)(4) and 507(a)(5) (the "Priority Cap").  In

particular, at the end of September, the Debtors are scheduled to pay to their Commissioned

Employees amounts earned in commissions for the month of August, which will cause 8 of the

Commissioned Employees to be owed amounts in excess of the Priority Cap.  The Debtors seek

authority to pay Commissioned Employees up to, but not in excess of, the Priority Cap during

the Interim Period.  The Debtors further request authorization pursuant to the Final Order to

exceed the Priority Cap to pay these Commissioned Employees commission amounts owed for

August 2015 and September 2015 to the extent accrued prepetition.

    22.    In addition, in the ordinary course of business, the Debtors offer certain incentive

plans to selected groups of employees.  First, the Debtors provide bonuses to certain members of

their management team who are generally director-level or above in the management hierarchy,

although in some cases manager-level team members may be eligible as well (the "Management

Bonuses").  Approximately 100 members of the Debtors' management have been historically

eligible for such bonuses based upon their hierarchy position, and while a few bonuses are

guaranteed to various management members, the majority of the bonuses are awarded based

solely upon the achievement of certain financial metrics, including EBITDA measures and free

cash flow.  These management bonuses are paid in December of each year, and for the year

2014, the Debtors paid approximately $725,000 in management bonuses.  Based on the

8

applicable financial metrics achieved to date, the Debtors anticipate incurring up to $1.1 million

in management bonuses for the year 2015; however, such bonuses are not incurred and payable

until the Debtors have determined a) whether the recipient achieves target financial metrics

through the end of the year, and b) whether the recipient remains employed with the Debtors

upon the date of payment of the bonus.  Furthermore, the majority of such proposed management

bonuses are only payable subject to the Debtors' discretion.  Historically, the Debtors have also

offered special bonuses on an ad hoc basis to employees for exceptional performance.  No

special bonuses have been accrued or are outstanding as of the Petition Date.

23.    The Debtors also offer cash bonuses at the store and district management levels

(the "Retail Bonuses"), which are awarded based upon certain fiscal and operational metrics,

including sales, payroll, and shrink.  Based upon the same metrics, individual stores may also

earn team incentive awards (which are included in Retail Bonuses), including gift cards, which

may be utilized at the discretion of the store manager.  Cash Retail Bonuses are paid on a

quarterly basis, on the first available payroll following the close of each fiscal quarter and

completion of the Debtors' calculations of applicable Retail Bonuses.  On September 4, 2015,

the Debtors paid approximately $10,620 in Retail Bonuses for the fiscal quarter which ended on

July 31, 2015.  The Debtors estimate that the outstanding balance of gift cards issued to store

employees total approximately $16,000.

24.    Finally, on September 4, 2015 the Debtors conducted a reduction in force at their

Huntington Beach headquarters, which resulted in the layoff of 75 former employees, including

59 Salaried Employees and 16 Hourly Employees.  Pursuant to the Worker Adjustment and

Retraining Notification Act (the "WARN Act"), the Debtors incurred certain monetary

obligations (the "WARN Obligations") in connection with the reduction in force.  The Debtors

estimate that the WARN Obligations total approximately $862,893.53.  The Debtors seek authority to pay former employees up to, but not in excess of, the Priority Cap during the Interim Period (and continuing thereafter).

25.      As of the Petition Date, the Debtors estimate that approximately $2,404,438.59 including wages, salaries, commissions and bonuses, and related payroll taxes and withholdings, exists in accrued but unpaid payroll for Employees.  Pursuant to this Motion, the Debtors seek to pay the outstanding amounts owed as of the Petition Date for accrued and unpaid wages, salaries, and commissions to Employees (and to honor previously issued gift cards), including amounts that the Debtors are required by law to withhold from Employee payroll checks in respect of federal, state and local income taxes, garnishment contributions, social security and Medicare taxes.  The Debtors also seek authorization to pay accrued priority claims to former employees pursuant to sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, including the WARN Obligations.  For the avoidance of doubt, the Debtors are not seeking any relief with respect to the management bonuses during the Interim Period.

**B.      Other Compensation:  Vacation, Holiday, and Sick Time, Business Expenses**

26.      The Debtors offer their Employees other forms of compensation, including vacation time, overtime pay, paid holidays, other earned time off, severance packages, and reimbursement of certain business expenses.  These forms of compensation are usual, customary and necessary if the Debtors are to retain qualified Employees during the reorganization process.

27.      **Vacation, Holiday, and Sick Time**.  Certain of the Debtors' Employees are eligible to receive paid vacation time, holiday time, and sick time.  The precise amount of paid vacation time, holiday time, and sick time depends on whether the Employee is full- or part-time. The Debtors have vacation time, holiday time, and sick time policies for eligible Employees.

28.     Vacation time ("Vacation Time") accrues each pay period up to 160 hours total

for full-time Employees.  Employees with less than five years of service will accrue 80 hours per

year, and Employees with five years of service or more will accrue 120 hours per year.[4]  There is

no cash payout of Vacation Time at calendar year-end.  Vacation Time may be rolled over to the

next calendar year, so long as the maximum Vacation Time outstanding is 160 hours or less.  If

an Employee is terminated, unused accrued Vacation Time is paid concurrently with the

Employee's final paycheck, as required by law.

29.     At any point in time, Vacation Time is accruing or being used by Employees,

making it difficult to quantify the cost of accrued Vacation Time as of the Petition Date.

However, prior to the Petition Date, the Debtors' estimate that the Debtors' Employees had

accrued approximately $1.9 million of Vacation Time.

30.     Holiday time ("Holiday Time") is provided to full-time Employees in accordance

with the Company's approved holiday schedule.  Twelve days of paid Holiday Time are

designated per year for the majority of Employees, but the retail locations only designate three

days of Holiday Time per year.  No floating holidays are offered, and there is no accrual of

Holiday Time.

31.     The Debtors also provide Employees with sick time ("Sick Time").  Employees

are entitled to six annual days of Sick Time, and no cash payouts are offered at year-end for

unused Sick Time.  Salaried Employees receive 48 hours, or six days, of Sick Time each year,

which are available for use as of January 1.  Hourly Employees accrue one hour of Sick Time for

each 30 hours worked, up to a maximum of 48 hours, or six days, of Sick Time each year.  Sick

---

[4]     Employees with a rank of vice-president and above do not accrue Vacation Time; instead, they take time off as
        appropriate.  Upon promotion to the rank of vice-president, promoted Employees retain their accrued Vacation
        Time.

Time may be rolled over to the next calendar year, so long as the maximum Sick Time outstanding is 48 hours or less.

32.    By this Motion, the Debtors seek authority to honor all prepetition liabilities to their Employees, except as otherwise indicated herein, with respect to the Debtors' vacation, holiday, and sick time-off policies.  The Debtors anticipate that their Employees will utilize any accrued Vacation Time, Holiday Time, or Sick Time in the ordinary course of business without resulting in any material cash flow requirements beyond the Debtors' normal payroll obligations.  Use of Employee Vacation Time, Holiday Time, or Sick Time remains subject to ordinary course restrictions.

33.    **Expense Reimbursement**.  The Debtors routinely reimburse Employees for certain expenses incurred within the scope of their employment, including expenses for travel, lodging, ground transportation, meals, supplies, and miscellaneous business expenses (collectively, the "Reimbursable Expenses").  Employees who make frequent and/or large purchases for business purposes are provided with corporate credit cards to pay for these expenses.  The Debtors currently have corporate card programs through Bank of America, N.A.  Each corporate credit card is issued in the name of the Employee holder, and bills for each corporate credit card are mailed directly to the holder Employee, who then seeks reimbursement for the Reimbursable Expenses from the Debtors through an internal processing and approval system.  Following internal processing and approval of the expense reimbursement request, payment is provided to the relevant Employee through a direct deposit system.  The Debtors also have a corporate credit card through Bank of America, N.A. specifically designated for booking travel for Employees, which is billed directly to, and paid directly by, the Debtors.

12

34.     Employees who do not have corporate credit cards and incur out-of-pocket, non-corporate card Reimbursable Expenses seek reimbursement for their Reimbursable Expenses from the Debtors through the same internal processing and approval system.  Once an expense reimbursement form is processed and approved internally, Employees are reimbursed via direct deposit.  As of the Petition Date, the Debtors estimate that their accrued and unpaid obligations for Reimbursable Expenses, including amounts outstanding on the corporate credit cards, are approximately $175,000.

35.     Certain of the Debtors' Employees travel by car and truck in the performance of their job duties, such as traveling to the Debtors' various retail stores and non-retail facilities. Depending on the nature of the Employee's work, the Debtors provide either (i) a company-owned vehicle or company-leased vehicle, or (ii) reimbursement for mileage for all non-commuting business travel miles at a rate of $0.41 per mile (collectively, the "Vehicle Expenses").  The Debtors currently provide approximately 19 company cars to their Employees. The Debtors estimate that approximately $3,500.00 worth of Vehicle Expenses due to or on behalf of Employees are accrued and unpaid as of the Petition Date.

36.     The Debtors also provide housing benefits for certain Employees who have relocated on account of their employment with the Company, including Employees who completed international relocations from Australia, France, and other foreign countries.  The Debtors pay approximately $40,000 in net payments each month (the "Housing Expenses") directly to residential landlords for the accommodations rented for the benefit of the relocated Employees.  As of the Petition Date, the Debtors estimate that all Housing Expenses are paid current.  Finally, the Debtors provide mobile phone allowances to certain of their Employees in order to reimburse those Employees for mobile phones used in the fulfillment of their job duties.

The Debtors reimburse various Employees approximately $1,325 each month (the "Mobile Expenses") in connection with these mobile phones, and estimate that as of the Petition Date, the Debtors estimate that approximately $350 of Mobile Expenses are accrued and unpaid.

37.     By this Motion, the Debtors seek authority to pay all Reimbursable Expenses, including, among other things, the Vehicle Expenses, Housing Expenses, and Mobile Expenses accrued and outstanding as of the Petition Date.  The Debtors intend to continue paying postpetition Reimbursable Expenses in the ordinary course of business.

**C.    Employee Benefit Plans**

38.     The Debtors provide separate benefit packages to full-time Employees (as well as eligible part-time Employees in certain jurisdictions) depending upon the location of their workplace. Specifically, the Debtors provide one benefit package to full-time Employees in California locations, another package to full-time Employees in Hawaii locations, and a third package to full-time Employees in U.S. locations outside of California and Hawaii.  The overview below will provide a comprehensive summary of all benefit plans offered across all U.S. locations.

39.     **Medical Plans**.  The Debtors provide their full-time Employees with medical benefits pursuant to four different preferred provider medical plans (collectively, the "Medical Plans") through Aetna ("Aetna") and Kaiser ("Kaiser"), offering varying levels of coverage.  In addition, the Debtors offer their Employees the use of flexible spending accounts for domestic care and various medical claims not otherwise covered or payable by the Medical Plans.  The flexible spending benefits are administered by Conexis.  As of the Petition Date, approximately 306 Employees have elected individual coverage under the Medical Plans, 34 Employees have elected to cover themselves and one additional person under the Medical Plans, and 222 Employees have elected family coverage under the Medical Plans.

14

40.     The Medical Plans are funded through Employee contributions by participating Employees and by the Debtors.  Approximately 73% of the cost of the Medical Plans is borne by the Debtors, and Employees contribute to the Medical Plans through payroll deductions to pay for the balance.[5]  Employee contributions are deducted from Employees' paychecks 24 times per year.  Thus, payments to the Medical Plans consist of both trust fund payments (i.e., Employee contributions) and contributions from the Debtors.  Total annualized spend related to the Medical Plans, based on the Debtors' most up-do-date enrollment data, is approximately $2.6 million.

41.     Claims under the Medical Plan are paid without regard to the current employment status of the Employee who incurred (or whose covered family member incurred) a medical expense for which payment is sought, provided that the Employee was covered under the Medical Plans on the date of service, i.e. the medical expense in question was incurred.  Claims are also paid if the Employee incurred the expense while enrolled in COBRA.

42.     On average, the Medical Plans, including premiums, cost the Debtors approximately $250,000 each month, though this amount can fluctuate based upon the number of Employees enrolled during any given period.  As of the Petition Date, the Debtors estimate the total unpaid premiums under the Medical Plans at approximately $131,000.  By this Motion, the Debtors request authority to make all payments and remittances related to the prepetition Medical Plan expenses in the ordinary course of business.

43.     **Dental Plan**.  The Debtors also offer certain of their Employees dental benefits (the "Dental Plan") through Cigna.  Full-time Employees (other than Employees in Hawaii locations) are eligible to receive benefits under the Dental Plan.  As of the Petition Date,

---

[5]     The Debtors provide fewer than 50 former Employees COBRA health, dental and/or vision coverage.

approximately 261 Employees have elected individual coverage, 97 Employees have elected to cover themselves and an additional person, and 169 Employees have elected family coverage.

44.     The Dental Plan is funded through contributions by participating Employees and by the Debtors.  Approximately 50% of the cost of the Dental Plan is borne by the Debtors, and the remainder is paid through Employee contributions, which are deducted from Employees' paychecks 24 times per year.  Total annualized spend related to the Dental Plan, based on the Debtors' most up-do-date enrollment data, is approximately $105,000.  As of the Petition Date, approximately $31,000 of premiums remain outstanding under the Dental Plan.  By this Motion, the Debtors request authority to make all payments and remittances related to the prepetition Dental Plan expenses in the ordinary course of business.

45.     **Vision Plan.**  The Debtors also offer their Employees vision benefits (the "Vision Plan") through Vision Service Plan.  Full-time Employees are eligible to receive benefits under the Vision Plan.  As of the Petition Date, approximately 248 Employees have elected individual coverage, 97 Employees have elected to cover themselves and an additional person, and 125 Employees have elected family coverage.

46.     The Vision Plan is funded through contributions by participating Employees.  The cost of the Vision Plan is borne solely by the Employees.  Employee contributions are deducted from Employees' paychecks 24 times per year.   The Debtors do not believe that there are any Employee contributions outstanding under the Vision Plan as of the Petition Date.  Nonetheless, out of an abundance of caution, the Debtors request authority to make all remittances related to any prepetition Vision Plan expenses in the ordinary course of business.

47.     **Life, AD&D, and Long-Term Disability Insurance**.  The Debtors' Employees also have the option to purchase, and in some cases the Debtors provide for Employees, life,

16

accidental death and dismemberment, supplemental life, long-term disability insurance, and related programs (collectively, the "Life Insurance Plans") pursuant to policies issued by Cigna ("Cigna").

48.     The Debtors pay premiums for all full-time Employees to receive at least $50,000 in basic term life and accidental death and dismemberment insurance ("Basic Life Insurance"). Full-time Employees receive Basic Life Insurance coverage equal to one times annual earnings, capped at a maximum of $500,000 for Vice-President and Senior Vice-President level Employees, and may obtain supplemental Basic Life Insurance coverage at their own expense. Executive Vice-President and President level Employees receive Basic Life Insurance coverage of $2 million.

49.     The Debtors pay for all full-time Employees to receive long term disability coverage ("Long Term Disability") through Cigna.  Such coverage provides 60% of the Employee's weekly gross up to a monthly maximum of $15,000.  The Long Term Disability Plan also offers a rehabilitation and return to work assistance benefits.

50.     In connection with the Life Insurance Plans, the Debtors also offer additional related benefits to Employees, including the Cigna Behavioral Life Assistance Program (the "LAP") and the Cigna Secure Travel program ("Secure Travel").  The LAP offers Employees the ability to access licensed counselors on a variety of topics via unlimited telephonic and Internet access, and up to three face-to-face sessions per incident per year.  Secure Travel provides Employees and their families access to a comprehensive range of professional, 24-hour medical and travel assistance information, including referral and coordination services.  LAP and Secure Travel are included with all group life insurance policies, so neither the Debtors nor the Employees pay any additional monthly charge to Cigna on account of these programs.

17

51.     The Life Insurance Plans are paid primarily through employer contributions, with the Debtors bearing approximately 100% of the aggregate cost, excluding any amounts that Employees may pay for supplemental Basic Life Insurance coverage.  The Debtors pay approximately $21,000 per month to Cigna on account of the Life Insurance Plans, excluding Employee contributions.  As of the Petition Date, the Debtors have approximately $21,000 in obligations outstanding under the Life Insurance Plans, inclusive of amounts withheld from Employees.  By this Motion, the Debtors seek authority to pay all prepetition amounts due on account of the Life Insurance Plans.

**D.     Savings and Retirement Plans**

52.     The Debtors offer certain Employees a savings and retirement plan through which they can accumulate savings.  Specifically, eligible Employees each year may contribute pre-tax or post-tax compensation, consistent with IRS regulations, for investment in a 401(k) plan (the "401(k) Plan").  The Debtors' annual company 401(k) match is discretionary and based on the Company's fiscal year financial performance.  The Debtors do not anticipate paying any matching contributions to the 401(k) Plan for the 2015 fiscal year.

53.     On average, the Debtors withhold approximately $245,000 every month for Employees participating in the 401(k) Plan.  As of the Petition Date, approximately $25,000 is outstanding under the 401(k) Plan.  By this Motion, the Debtors seek authority during the Interim Period to remit all amounts that are related to the 401(k) Plan, including any administration fees in connection with the 401(k) Plan, on a go-forward basis, and to continue the 401(k) Plan in the ordinary course. The Debtors request authority pursuant to the Final Order to remit all amounts related to the 401(k) Plan that arose prior to the Petition Date in the ordinary course of the Debtors' business including any administration fees in connection with the 401(k) Plan.

E.      **Workers' Compensation**

54.      The Debtors provide workers' compensation benefits to all Employees.  These benefits are covered primarily under the Debtors' workers' compensation insurance program (the "Workers' Compensation Insurance") administered jointly by the Debtors and their insurance carrier, ACE USA ("ACE").  The Debtors paid ACE approximately $350,000 in premiums for workers' compensation insurance for the 2014-2015 plan year, and have posted letters of credit in favor of ACE in the aggregate amount of approximately $6 million, of which approximately $424,000 is on deposit.  Certain states also self-fund workers' compensation insurance programs, and the Debtors are in compliance with all relevant payment obligations under such programs.

55.      As of the Petition Date, approximately 110 workers' compensation claims were pending against the Debtors, and the Debtors had reserved approximately $2.95 million for potential liability.

56.      Failure to maintain the Workers' Compensation Insurance could result in administrative or legal proceedings against the Debtors and their officers and directors.  The average cost incurred by the Debtors on a monthly basis in connection with the Workers' Compensation Insurance is approximately $125,000 to $200,000 per month.  The Debtors have a high-deductible plan, and fund up to $500,000 per claim before funds are provided by the Workers' Compensation Insurance.  Amounts owed for Workers Compensation Insurance premiums for November 1, 2014 through October 31, 2015 have been paid in full.  By this Motion, the Debtors seek authority to continue paying and/or contesting in good faith, as appropriate in the Debtors' business judgment, all amounts related to the Workers' Compensation Insurance that arose prior to the Petition Date as they become due in the ordinary course of the Debtors' business.

**F.      Social Security, Income Taxes, and Other Withholding**

57.      The Debtors routinely withhold from Employee paychecks amounts that the

Debtors are required to transmit to third parties.  Examples of such withholding include Social

Security, FICA, federal and state income taxes, garnishments, charitable donations, health care

payments, other insurance payments, 401(k) contributions, and certain other voluntary payroll

deductions.  The Debtors believe that such withheld funds, to the extent that they remain in the

Debtors' possession, constitute monies held in trust and therefore are not property of the

Debtors' bankruptcy estates.  Thus, the Debtors believe that they have authority to direct such

funds to the appropriate parties in the ordinary course of business.  Nonetheless, out of an

abundance of caution, the Debtors request authority to direct such trust funds to the appropriate

parties.

**G.      Direction to Banks**

58.      In addition, the Debtors request entry of orders (a) authorizing all applicable

banks and other financial institutions (collectively, the "Banks"), when requested by the Debtors

in their sole discretion, to receive, process, honor, and pay any and all checks, drafts, and other

forms of payment, including fund transfers, on account of the Prepetition Employee Obligations,

whether such checks or other requests were submitted before, on, or after the Petition Date; (b)

authorizing the Banks to rely on the representations of the Debtors as to which checks are subject

to this Motion, provided that any such Bank shall not have any liability to any party for relying

on such direction and representations by the Debtors; (c) providing that the Banks shall, at the

direction of the Debtors, receive, process, honor, and pay all prepetition and postpetition checks

and fund transfers on account of the Prepetition Employee Obligations that had not been honored

and paid as of the Petition Date, provided that sufficient funds are on deposit in the applicable

accounts to cover such payments and that any such Bank shall not have any liability to any party

20

for relying on such direction by the Debtors; and (d) authorizing the Debtors to issue new

postpetition checks or effect new postpetition fund transfers to replace any checks, drafts and

other forms of payment which may be inadvertently dishonored or rejected.

**H.      Postpetition Continuation of Ordinary Course Employee Programs**

59.      Finally, the Debtors seek an order authorizing, but not obligating, the Debtors to

continue their ordinary course Employee compensation (including, without limitation, wages,

salaries, commissions, and bonuses), paid time off, benefits (including, without limitation,

insurance), expense reimbursement, corporate credit cards, workers compensation, and related

programs during the postpetition reorganization process.  Though the Debtors believe that such

programs constitute ordinary course of business expenses authorized under the Bankruptcy Code

and applicable law, out of an abundance of caution, the Debtors seek authorization to continue

such programs during the pendency of these Chapter 11 Cases.

<div align="center">

**APPLICABLE AUTHORITY**

</div>

60.      As a result of the commencement of these Chapter 11 Cases and in the absence of

an order of the Court providing otherwise, the Debtors will be prohibited from paying or

otherwise satisfying their Prepetition Employee Obligations, and the checks, wire transfers and

direct deposit transfers issued in respect of the Prepetition Employee Obligations will be

dishonored.  Failing to honor these obligations would have devastating consequences for the

Debtors' ability to operate their business during these Chapter 11 Cases and, thus, the Debtors'

reorganization.  Authorization to pay the  Prepetition Employee Obligations is, therefore,

necessary to maximize the value of the Debtors' estates for all creditors and stakeholders.

61.      Accordingly, pursuant to sections 1107(a), 1108, 363, 105(a), and 507 of the

Bankruptcy Code and the "necessity of payment" doctrine, the Debtors seek authority to: (i) pay

their outstanding Prepetition Employee Obligations, including all Employee Benefit Obligations,

<div align="center">21</div>

Employee Expense Obligations, and Employee Withholding; and (ii) continue their employment practices, benefits, programs and policies in effect as of the Petition Date.  The Debtors further request that the Court authorize and direct the bank(s) at which the Debtors maintain the account(s) from which the Debtors' payroll obligations are disbursed, to honor and pay all prepetition and postpetition checks issued to or to be issued and fund transfers requested or to be requested, by the Debtors in respect of the Prepetition Employee Obligations.  The Debtors also seek authority to issue new postpetition checks or fund transfer requests with respect to such prepetition obligations that may have been dishonored.  The relief requested herein is essential and necessary to the Debtors' continued operations in chapter 11 and to an effective reorganization of the Debtors' business.

A.      **Payment of the Prepetition Employee Obligations is Authorized Under Bankruptcy Code Sections 1107(a) and 1108**

62.      The Debtors, operating their businesses as debtors in possession under Bankruptcy Code sections 1107(a) and 1108, are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." In re CoServ, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  Implicit in the duties of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." Id.

63.      Courts have noted that there are instances in which a debtor in possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." Id.; see also In re Mirant Corp., 296 B.R. 427, 429-30 (Bankr. N.D. Tex. 2003) (allowing debtors to pay claims "reasonably believe[d]" to be authorized under the CoServ test or whose payment was necessary "in the exercise of their business judgment . . . in order for [the d]ebtors to continue their respective businesses").  The CoServ court specifically noted that preplan satisfaction of

22

prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is

the only means to effect a substantial enhancement of the estate." CoServ, 273 B.R. at 497.  The

court formulated a three-pronged test for determining whether a preplan payment on account of a

prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant.  Second, unless it
> deals with the claimant, the debtor risks the probability of harm, or, alternatively,
> loss of economic advantage to the estate or the debtor's going concern value,
> which is disproportionate to the amount of the claimant's prepetition claim.
> Third, there is no practical or legal alternative by which the debtor can deal with
> the claimant other than by payment of the claim.

Id. at 498.

64.     Payment of the Prepetition Employee Obligations meets the CoServ test. The

Debtors' operations are complex, and rely on the skill and expertise of its Employees. Without

the ability to pay Employees, the Debtors' ability to continue operations, and thus maximize the

value of the estate, would be severely limited. Many of the Employees possess knowledge

unique to the Debtors' operations that would be virtually irreplaceable should the Debtors' be

unable to pay their obligations. Accordingly, to meet their fiduciary duties as debtors in

possession under Bankruptcy Code sections 1107(a) and 1108, the Debtors must be authorized,

but not directed, to pay all Prepetition Employee Obligations.

## B.     Payments of Prepetition Employee Obligations is Warranted Under Bankruptcy Code Section 363

65.     Under section 363 of the Bankruptcy Code, a bankruptcy court is empowered to

authorize a chapter 11 debtor to expend funds in the bankruptcy court's discretion outside the

ordinary course of business.  See 11 U.S.C. § 363.  In order to obtain approval for the use of

estate assets outside the ordinary course of business, the debtor must articulate a valid business

justification for the requested use.  See In re Ionosphere Clubs, Inc., 98 B.R. 174, 176 (Bankr.

S.D.N.Y. 1985).  Payment of prepetition wage and salary claims to preserve and protect a

debtor's business and to ultimately reorganize, retain their currently working employees, and maintain positive employee morale, even if such payment were deemed to be outside the ordinary course of business, is a sufficient business justification for such an authorization.  See Id. at 175.  Accordingly, this Court should grant the requested relief under section 363 of the Bankruptcy Code.

**C.     Bankruptcy Code Section 105 and the Doctrine of Necessity Support Payment of the Prepetition Employee Obligations.**

66.     The Debtors' proposed payment of Prepetition Employee Obligations should be authorized pursuant to section 105 of the Bankruptcy Code and under the "doctrine of necessity."

67.     Section 105(a) of the Bankruptcy Code authorizes a bankruptcy court to enter any order "necessary or appropriate" to carry out the provisions of the Bankruptcy Code.  11 U.S.C. § 105(a).  For the reasons set forth herein, and in light of the critical need for the Debtors to preserve the going concern value of their businesses in order to effect a successful reorganization through, among other things, continuing the orderly day-to-day operations of the Debtors' business, payment of the Prepetition Employee Obligations as requested herein is proper in accordance with section 105 of the Bankruptcy Code.

68.     Payment of the Prepetition Employee Obligations is further supported by the doctrine of necessity.  The doctrine of necessity is a well-settled doctrine that permits a bankruptcy court to authorize payment of certain prepetition claims prior to the completion of the reorganization process where the payment of such claims is necessary to the reorganization.  See In re Just for Feet, Inc., 242 B.R. 821, 826 (D. Del. 1999) (stating that where the debtor "cannot survive" absent payment of certain prepetition claims, the doctrine of necessity should be invoked to permit payment); see also In re NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("[T]he court can permit the pre-plan payment of a prepetition obligation when essential to the

continued operation of the debtor."); In re Eagle-Picher Indus., Inc., 124 B.R. 1021, 1023

(Bankr. S.D. Ohio 1991) ("[T]o justify payment of a prepetition unsecured creditor, a debtor

must show that the payment is necessary to avert a serious threat to the chapter 11 process.").

69.     The United States Supreme Court first articulated the doctrine of necessity over a

century ago in Miltenberger v. Logansport Railway, 106 U.S. 286 (1882), in affirming the

authorization by the lower court of the use of receivership funds to pay pre-receivership debts

owed to employees, vendors and suppliers, among others, when such payments were necessary

to preserve the receivership property and the integrity of the business in receivership.  See id. at

309-14.  The doctrine, largely unchanged from the Court's reasoning in Miltenberger, is a widely

accepted component of modern bankruptcy jurisprudence.  See Just For Feet, 242 B.R. at 826

(approving payment of key inventory suppliers' prepetition claims when such suppliers could

destroy debtor's business by refusing to deliver new inventory on eve of debtor's key sales

season); In re Payless Cashways, Inc., 268 B.R. 543, 546-47 (Bankr. W.D. Mo. 2001)

(authorizing payment of critical prepetition suppliers' claims when such suppliers agree to

provide postpetition trade credit); see also In re Columbia Gas Sys., Inc., 171 B.R. 189, 191-92

(Bankr. D. Del. 1994); In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).

70.     The Debtors' ability to maximize value depends, in large part, upon the retention

and motivation of the Employees whose efforts will be critical to the successful reorganization

process.  Employees will be required to commit much of their time and energy to the Debtors'

reorganization efforts.  Any disruption from Employee resignations or lack of morale could have

devastating effects on the Debtors' reorganization efforts.  Most of the Debtors' Employees (and

their families) are dependent upon the wages, salaries, reimbursements and other benefits they

receive from the Debtors. For the overall benefit of the Debtors and their Employees, payment of the Prepetition Employee Obligations will ensure maximum value for all interested parties.

71.     If amounts owed are not received, insurance reimbursements are not made, or other benefits delayed, the Employees may suffer extensive personal hardship and in some cases will be unable to meet their "basic living" needs, causing harm to them and their families and potentially making it difficult or impossible for them to continue working for the Debtors.  The Debtors believe that in order to avoid Employee resignations and to maintain Employee morale, it is critical that they be authorized to pay each of their Employees all compensation amounts that have been earned under the Debtors' prepetition contractual obligations or practices, subject to the limitations described herein.

**D.     Bankruptcy Code Sections 507(a)(4) and 507(a)(5) Authorize Payment of Prepetition Employee Obligations**

72.     The Debtors estimate that a substantial portion of the amounts they seek to pay herein are entitled to priority under sections 507(a)(4) and (a)(5) of the Bankruptcy Code. Section 507(a)(4) of the Bankruptcy Code grants priority to employee claims for "wages, salaries, or commissions, including vacation, severance and sick leave pay" earned within 180 days before the filing of the applicable petition up to $12,475 per employee.  11 U.S.C.  § 507(a)(4).  Similarly, section 507(a)(5) of the Bankruptcy Code provides the claims for contributions to certain employee benefit plans are also afforded priority treatment to the extent of the number of employees covered by each plan multiplied by $12,475, less any amounts paid pursuant to section 507(a)(4) of the Bankruptcy Code.  11 U.S.C.  § 507(a)(5).  Because of the number of Employees working for the Debtors, and because some amounts are unknown pending submission of claims, the Debtors do not know the exact amount due each Employee for the prepetition period.  However, an overwhelming majority of the Debtors' Employees are owed

26

amounts under the $12,475 cap of sections 507(a)(4) and 507(a)(5).  The Debtors know of only approximately 8 individual Employees owed sums that exceed the priority cap of sections 507(a)(4) and 507(a)(5).  In each case, these amounts represent reasonable compensation for an extended period of time.  By this Motion, Debtors seek authority to pay the Prepetition Employee Obligations up to $12,475 per Employee and, pursuant to the Final Order, authority to pay amounts that exceed the cap to those Commissioned Employees described herein.

73.    Thus, granting the relief sought herein will result in of payment of the Prepetition Employee Obligations as priority claims to the extent they constitute priority claims.

**E.    Bankruptcy Code Sections 541 Authorizes Payment of Employee Withholdings**

74.    A portion of the Prepetition Employee Obligations constitutes funds held in trust for payment to third parties.  The payment of the Employee Withholdings will not prejudice the Debtors' estates because such withholdings are held in trust for the benefit of the related payees and, thus, do not constitute property of the Debtors' estates under Bankruptcy Code section 541. See 11 U.S.C. § 541(d); Begier v.  IRS, 496 U.S.  53 (1990).  Indeed, failure to pay these amounts could subject the Debtors and their officers and directors to liability.  See, e.g., John F. Olsen, et. al., Director & Officer Liability: Indemnification and Insurance § 3:21 (2003) ("[S]ome states hold corporate officers personally liable for any sales tax and penalty owed and not paid by the corporation regardless of cause").  Moreover, payments which are critical to the retention and morale of the Debtors' workforce actually add value to the estates because an unplanned reduction in Employee retention or productivity could have disastrous effects on recoveries to creditors and stakeholders.

75.    The relief requested herein is commonly granted in this District.  See, e.g., In re Synagro Techs., Inc., Case No. 13-11041 (BLS) (Bankr. D. Del. Apr. 24, 2013); In re Exide Techs., Case No. 13-11482 (KJC) (Bankr. D. Del. June 10, 2013); In re Dendreon Corp., Case

27

No. 14-12515 (LSS) (Bankr. D. Del. Nov. 10, 2014); In re CHL, Ltd., Case No. 12-12437 (KJC)

(Bankr. D. Del. Aug. 31, 2012) (granting interim relief) and (Bankr. D. Del. Sept. 24, 2012)

(granting final relief for payments in excess of the section 504(a)(4) priority cap); In re WP Steel

Venture LLC, Case No. 12-11661 (KJC) (Bankr. D. Del. June 1, 2012); In re Contract Research

Solutions, Inc. et al., Case No. 12-11004 (KG) (Bankr. D. Del. Mar. 27, 2012); In re Friendly Ice

Cream, Corp., No. 11-13167 (KG) (Bankr. D. Del. Oct. 6, 2011);  In re DSI Holdings, Inc. et al.,

Case No. 11-11941 (KJC) (Bankr. D. Del. June 28, 2011).[6]

76.     For the reasons set forth above, the Debtors submit that the relief requested herein

is in the best interest of the Debtors, their estates, creditors, stakeholders, and other parties in

interest, and therefore, should be granted.

77.     As a precaution, the proposed Interim and Final Orders provides that the relief

granted therein shall not constitute or be deemed an assumption of any of the employment and

service agreements to which the Debtors are a party or any of the Debtors' Employee benefit

policies, plans, programs, practices and procedures under Bankruptcy Code section 365.

## RESERVATION OF RIGHTS

78.     Nothing contained herein is or should be construed as: (a) an admission as to the

validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim

on any grounds; (c) a promise to pay any claim; (d) an assumption or rejection of any executory

contract or unexpired lease pursuant to Bankruptcy Code section 365; or (e) otherwise affect the

Debtors' rights under Bankruptcy Code section 365 to assume or reject any executory contract

with any party subject to this Motion.

---

[6]     Because of the voluminous nature of the orders cited herein, they are not attached to the Motion.  Copies of these orders, however, are available on request.

## IMMEDIATE RELIEF IS NECESSARY TO AVOID IMMEDIATE AND IRREPARABLE HARM

79.     Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003; see also In re First NLC Fin. Servs., LLC, 382 B.R. 547, 549 (Bankr. S.D. Fla. 2008) (holding that Rule 6003 permits entry of retention orders on an interim basis to avoid irreparable harm).  The Third Circuit has interpreted the language "immediate and irreparable harm" in the context of preliminary injunctions.  In that context, the court has instructed that irreparable harm is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.  See, e.g., Norfolk S. Ry. Co. v. City of Pittsburgh, 235 Fed. App'x 907, 910 (3d Cir. 2007) (citing Glasco v. Hills, 558 F.2d 179, 181 (3d Cir. 1977)).  Furthermore, the harm must be shown to be actual and imminent, not speculative or unsubstantiated.  See, e.g., Acierno v. New Castle County, 40 F.3d 645, 653-55 (3d Cir. 1994).  The Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors.

### WAIVER OF ANY APPLICABLE STAY

80.     The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate without interruption and to preserve value for their estates. Accordingly, the Debtors respectfully request that the Court waive the fourteen day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## NOTICE

81.     Notice of this Motion shall be given to (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the agent for the Debtors' postpetition secured loan facilities; (c) counsel to the agent for the Debtors' prepetition revolving loan facility; (d) the agent for the Debtors' prepetition senior secured notes; (e) the agent for the Debtors' prepetition senior unsecured notes; (f) the parties listed in the consolidated list of thirty (30) largest unsecured creditors filed by the Debtors in these Chapter 11 Cases; and (g) any such other party entitled to notice pursuant to Local Bankruptcy Rule 9013-1(m).  The Debtors submit that no other or further notice need be provided.

## NO PRIOR RELIEF

82.     No previous request for the relief sought herein has been made to this Court or any other court.


**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an Interim Order and Final Order, substantially in the form annexed hereto, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated:    Wilmington, Delaware
          September 9, 2015

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

/s/      Van C. Durrer, II
Van C. Durrer, II (I.D. No. 3827)
Annie Li (*pro hac vice admission pending*)
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071
Telephone: (213) 687-5000
Fax: (213) 687-5600

- and -

John K. Lyons (*pro hac vice admission pending*)
Jessica Kumar (*pro hac vice admission pending*)
155 N. Wacker Dr.
Chicago, Illinois 60606
Telephone: (312) 407-0700
Fax: (312) 407-0411

*Proposed Counsel for Debtors and Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                            :
In re:                                                      :      Chapter 11
                                                            :
QUIKSILVER, INC., *et al.*,                                 :      Case No. 15-11890 (___)
                                                            :
                              Debtors.[1]                   :      (Jointly Administered)
                                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x      **Related Docket No. __**

**INTERIM ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a), 363,
507(a), 1107(a) AND 1108 AND BANKRUPTCY RULE 6003, AUTHORIZING DEBTORS
TO PAY PREPETITION WAGES, COMPENSATION,
AND EMPLOYEE BENEFITS**

Upon consideration of the motion (the "<u>Motion</u>")[2] of the above captioned debtors

and debtors in possession (collectively, the "<u>Debtors</u>") for entry of an Interim Order and Final

Order, under Bankruptcy Code sections under sections 105, 363(b), 507(a), 541, 1107(a), and

1108 and Bankruptcy Rule 6003, (i) authorizing, but not directing, the Debtors, <u>inter alia</u>, to pay

prepetition wages, salaries, commissions, and employee benefits, (ii) authorizing, but not

directing, the Debtors to continue the maintenance of all employee benefit programs in the

ordinary course, (iii) authorizing financial institutions to receive, process, honor and pay all

checks, drafts and other forms of payment, including fund transfers, used by the Debtors relating

to the foregoing, and (iv) granting related relief as further described herein; and upon

consideration of the First Day Declaration; and due and sufficient notice of the Motion having

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:
       Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc.
       (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505),
       Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599).  The address of the Debtors'
       corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

been given under the particular circumstances; and it appearing that no other or further notice is

necessary; and it appearing that the relief requested in the Motion is in the best interests of the

Debtors, their estates, their creditors, and other parties in interest; and after due deliberation

thereon; and good and sufficient cause appearing therefor; it is hereby,

**ORDERED, ADJUDGED AND DECREED that:**

1.      The Motion is GRANTED as set forth herein.

2.      The final hearing on the Motion is set for _____ ___, 2015 at

__:___ a.m./p.m. (prevailing Eastern time). Any objections or responses to the entry of the

proposed Final Order shall be filed and served upon counsel for the Debtors so as to be received

by 4:00 p.m. (prevailing Eastern Time) on or before seven (7) days before the final hearing.

3.      The Debtors are authorized, but not directed, to pay and/or honor, in their

sole discretion, the Prepetition Employee Obligations as and when such obligations are due;

provided however, that, prior to the entry of a Final Order granting the relief requested in the

Motion, no Employee may receive payment of amounts in excess of the limits provided for by

Bankruptcy Code sections 507(a)(4) or 507(a)(5) pursuant to this Interim Order; and provided

further, however, that prior to the entry of a Final Order granting the relief requested in the

Motion, the Debtors are not authorized to pay and/or honor the Management Bonuses.

4.      The Debtors are authorized, but not directed, in their sole discretion, to

honor the Employee Benefit Obligations and Employee Expense Obligations that were in effect

as of the Petition Date, including, but not limited to, Vacation Time, Holiday Time, Sick Time,

Medical Plans, Dental Plan, Vision Plan, Life Insurance Plans, 401(k) Plan, Reimbursable

Expenses, Vehicle Expenses, and Workers' Compensation Insurance, and to continue such

programs in the ordinary course; provided however, that no Employee may receive payment of

amounts in excess of the limits provided for by Bankruptcy Code sections 507(a)(4) or 507(a)(5) pursuant to this Interim Order; provided, further, however, that such relief shall not constitute or be deemed an assumption or an authorization to assume any of such Employee Benefit Obligations, including, policies, plans, programs, practices, and procedures, under section 365(a) of the Bankruptcy Code.

5.      The Debtors are authorized, but not directed, in their sole discretion, to pay all Employee Withholdings as and when such obligations are due.  The Debtors may remit any and all amounts withheld from Employees, including social security, federal and state income taxes, garnishments, health care payments, other insurance premiums, retirement fund withholding, and other types of withholding, whether these amounts relate to the period prior to the date of the Debtors' chapter 11 filings or subsequent thereto.

6.      To the extent the Debtors elect to make payments pursuant to the self-insured Medical Plans, such payments shall be made without regard to the current employment status of the Employee who incurred (or whose covered family member incurred) a medical expense for which payment is sought, provided that the medical expenses for which the payments are sought are otherwise eligible for payment under the applicable terms of the Medical Plans.

7.      All applicable banks and other financial institutions are hereby authorized, when requested by the Debtors in their sole discretion, to receive, process, honor and pay all prepetition and postpetition checks, drafts and other forms of payment, including fund transfers, on account of the Prepetition Employee Obligations, whether such checks or other requests were submitted prior to or after the Petition Date.

8.      The Debtors' banks and other financial institutions shall rely on the

3

direction and representations of the Debtors as to which checks and fund transfers should be honored and paid pursuant to this order, and any such bank shall not have any liability to any party for relying on such direction and representations by the Debtors as provided for in this order or for inadvertently honoring or dishonoring any check or fund transfer.

9.      The Debtors' banks are authorized, at the direction of the Debtors, to receive, process, honor and pay all prepetition and postpetition checks and fund transfers on account of the Prepetition Employee Obligations that had not been honored and paid as of the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments and any such bank shall not have any liability to any party for relying on such direction by the Debtors as provided for in this order or for inadvertently failing to follow such direction.

10.      The Debtors' banks shall not attempt  to reverse or place a hold on any automatic transfers to any account that the Debtors inform the Debtors' banks are an account of a party for the Prepetition Employee Obligations. The Debtors shall be and hereby are authorized to issue new postpetition checks or effect new postpetition fund transfers on account of the Prepetition Employee Obligations to replace any prepetition checks or fund transfer requests that may be dishonored or rejected.

11.      To the extent the Debtors have not yet sought to remit payment on account of the Prepetition Employee Obligations, the Debtors are authorized, but not directed, to issue checks or provide for other means of payment of the Prepetition Employee Obligations

12.      Notwithstanding the relief granted herein and any actions taken hereunder, nothing herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any Employee or other third party.

4

13.     Nothing in the Motion or this order shall be construed as impairing the Debtors' right to contest the validity, priority, or amount of any Prepetition Employee Obligations allegedly due or owing, and all of the Debtors' rights with respect thereto are hereby reserved.

14.     Any party receiving payment from the Debtors is authorized and directed to rely upon the representations of the Debtors as to which payments are authorized by this order.

15.     Nothing in the Motion or this order or the relief granted (including any actions taken or payments made by the Debtors pursuant to the relief) shall (a) be construed as a request for authority to assume any executory contract under Bankruptcy Code section 365; (b) waive, affect or impair any of the Debtors' rights, claims or defenses, including, but not limited to, those arising from Bankruptcy Code section 365, other applicable law and any agreement; (c) grant third-party beneficiary status or bestow any additional rights on any third party; or (d) be otherwise enforceable by any third party.

16.     No provision of this order shall be construed as authority to make any payment which is subject to the provisions of Bankruptcy Code section 503(c).

17.     The Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested is necessary to avoid immediate and irreparable harm.

18.     Notwithstanding Bankruptcy Rule 6004(h), this order shall be effective and enforceable immediately upon entry hereof.

19.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

20.     This Court shall retain jurisdiction with respect to all matters arising from

5

or related to the implementation, interpretation, or enforcement of this Order.

Dated:  Wilmington, Delaware
           _____, 2015


                              _____
                              UNITED STATES BANKRUPTCY JUDGE

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In re:                                             :    Chapter 11
:
QUIKSILVER, INC., *et al.*,                         :    Case No. 15-11890 (___)
:
Debtors.[1]                        :    (Jointly Administered)
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x    **Related Docket No. __**

**FINAL ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a), 363, 507(a),**
**1107(a) AND 1108 AND BANKRUPTCY RULE 6003, AUTHORIZING DEBTORS TO**
**PAY PREPETITION WAGES, COMPENSATION,**
**AND EMPLOYEE BENEFITS**

Upon consideration of the motion (the "Motion")[2] of the above captioned debtors

and debtors in possession (collectively, the "Debtors") for entry of an Interim Order and Final

Order, under Bankruptcy Code sections under sections 105, 363(b), 507(a), 541, 1107(a), and

1108 and Bankruptcy Rule 6003, (i) authorizing, but not directing, the Debtors, inter alia, to pay

prepetition wages, salaries, commissions, and employee benefits, (ii) authorizing, but not

directing, the Debtors to continue the maintenance of all employee benefit programs in the

ordinary course, (iii) authorizing financial institutions to receive, process, honor and pay all

checks, drafts and other forms of payment, including fund transfers, used by the Debtors relating

to the foregoing, and (iv) granting related relief as further described herein; and upon

consideration of the First Day Declaration; and due and sufficient notice of the Motion having

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:
Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc.
(8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505),
Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599).  The address of the Debtors'
corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

been given under the particular circumstances; and it appearing that no other or further notice is necessary; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and after due deliberation thereon; and good and sufficient cause appearing therefor; it is hereby,

**ORDERED, ADJUDGED AND DECREED that:**

1. The Motion is GRANTED as set forth herein.

2. The Debtors are authorized, but not directed, to pay and/or honor, in their sole discretion, the Prepetition Employee Obligations as and when such obligations are due. The Debtors are authorized, but not directed, in their sole discretion, to honor the Employee Benefit Obligations and Employee Expense Obligations that were in effect as of the Petition Date, including, but not limited to, Vacation Time, Holiday Time, Sick Time, Medical Plans, Dental Plan, Vision Plan, Life Insurance Plans, 401(k) Plan, Reimbursable Expenses, Vehicle Expenses, and Workers' Compensation Insurance, and to continue such programs in the ordinary course; provided, however, that such relief shall not constitute or be deemed an assumption or an authorization to assume any of such Employee Benefit Obligations, including, policies, plans, programs, practices, and procedures, under section 365(a) of the Bankruptcy Code.

3. The Debtors are authorized, but not directed, in their sole discretion, to pay all Employee Withholdings and Pension Obligations as and when such obligations are due. The Debtors may remit any and all amounts withheld from Employees, including social security, FICA, federal and state income taxes, garnishments, health care payments, other insurance premiums, retirement fund withholding, and other types of withholding, whether these amounts relate to the period prior to the date of the Debtors' chapter 11 filings or subsequent thereto.

4. To the extent the Debtors elect to make payments pursuant to the self-

insured Medical Plans, such payments shall be made without regard to the current employment status of the Employee who incurred (or whose covered family member incurred) a medical expense for which payment is sought, provided that the medical expenses for which the payments are sought are otherwise eligible for payment under the applicable terms of the Medical Plans.

5.      All applicable banks and other financial institutions are hereby authorized, when requested by the Debtors in their sole discretion, to receive, process, honor and pay all prepetition and postpetition checks, drafts and other forms of payment, including fund transfers, on account of the Prepetition Employee Obligations, whether such checks or other requests were submitted prior to or after the Petition Date.

6.      The Debtors' banks and other financial institutions shall rely on the direction and representations of the Debtors as to which checks and fund transfers should be honored and paid pursuant to this order, and any such bank shall not have any liability to any party for relying on such direction and representations by the Debtors as provided for in this order or for inadvertently honoring or dishonoring any check or fund transfer.

7.      The Debtors' banks are authorized, at the direction of the Debtors, receive, process, honor and pay all prepetition and postpetition checks and fund transfers on account of the Prepetition Employee Obligations that had not been honored and paid as of the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments and any such bank shall not have any liability to any party for relying on such direction by the Debtors as provided for in this order or for inadvertently failing to follow such direction.

8.      The Debtors' banks shall not attempt to reverse or place a hold on any automatic transfers to any account that the Debtors inform the Debtors' banks are an account of a

party for the Prepetition Employee Obligations. The Debtors shall be and hereby are authorized to issue new postpetition checks or effect new postpetition fund transfers on account of the Prepetition Employee Obligations to replace any prepetition checks or fund transfer requests that may be dishonored or rejected.

9.      The Debtors shall be and hereby are authorized to issue new postpetition checks or effect new postpetition fund transfers on account of the Prepetition Employee Obligations to replace any prepetition checks or fund transfer requests that may be dishonored or rejected.

10.      Notwithstanding the relief granted herein and any actions taken hereunder, nothing herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any Employee or other third party.

11.      Nothing in the Motion or this order shall be construed as impairing the Debtors' right to contest the validity, priority, or amount of any Prepetition Employee Obligations allegedly due or owing, and all of the Debtors' rights with respect thereto are hereby reserved.

12.      Any party receiving payment from the Debtors is authorized and directed to rely upon the representations of the Debtors as to which payments are authorized by this order.

13.      Nothing in the Motion or this order or the relief granted (including any actions taken or payments made by the Debtors pursuant to the relief) shall (a) be construed as a request for authority to assume any executory contract under Bankruptcy Code section 365; (b) waive, affect or impair any of the Debtors' rights, claims or defenses, including, but not limited to, those arising from Bankruptcy Code section 365, other applicable law and any agreement; (c) grant third-party beneficiary status or bestow any additional rights on any third

4

party; or (d) be otherwise enforceable by any third party.

14.     No provision of this order shall be construed as authority to make any payment which is subject to the provisions of Bankruptcy Code section 503(c).

15.     The Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested is necessary to avoid immediate and irreparable harm.

16.     Notwithstanding Bankruptcy Rule 6004(h), this order shall be effective and enforceable immediately upon entry hereof.

17.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

18.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated:  Wilmington, Delaware
               _____, 2015


_____
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT B**
**<u>SIGNED INTERIM ORDER</u>**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In re:                                              :        Chapter 11
                                                    :
QUIKSILVER, INC., *et al.*,                         :        Case No. 15-11880 (BLS)
                                                    :
                         Debtors.[1]                :        (Jointly Administered)
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x    **Related Docket No. 11**

## INTERIM ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a), 363, 507(a), 1107(a) AND 1108 AND BANKRUPTCY RULE 6003, AUTHORIZING DEBTORS TO PAY PREPETITION WAGES, COMPENSATION, AND EMPLOYEE BENEFITS

Upon consideration of the motion (the "Motion")[2] of the above captioned debtors

and debtors in possession (collectively, the "Debtors") for entry of an Interim Order and Final

Order, under Bankruptcy Code sections under sections 105, 363(b), 507(a), 541, 1107(a), and

1108 and Bankruptcy Rule 6003, (i) authorizing, but not directing, the Debtors, inter alia, to pay

prepetition wages, salaries, commissions, and employee benefits, (ii) authorizing, but not

directing, the Debtors to continue the maintenance of all employee benefit programs in the

ordinary course, (iii) authorizing financial institutions to receive, process, honor and pay all

checks, drafts and other forms of payment, including fund transfers, used by the Debtors relating

to the foregoing, and (iv) granting related relief as further described herein; and upon

consideration of the First Day Declaration; and due and sufficient notice of the Motion having

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599).  The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

been given under the particular circumstances; and it appearing that no other or further notice is

necessary; and it appearing that the relief requested in the Motion is in the best interests of the

Debtors, their estates, their creditors, and other parties in interest; and after due deliberation

thereon; and good and sufficient cause appearing therefor; it is hereby,

### ORDERED, ADJUDGED AND DECREED that:

1.    The Motion is GRANTED as set forth herein.

2.    The final hearing on the Motion is set for October 6, 2015 at

10:00 a.m./p.m. (prevailing Eastern time). Any objections or responses to the entry of the

proposed Final Order shall be filed and served upon counsel for the Debtors so as to be received

by 4:00 p.m. (prevailing Eastern Time) on or before seven (7) days before the final hearing.

3.    The Debtors are authorized, but not directed, to pay and/or honor, in their

sole discretion, the Prepetition Employee Obligations as and when such obligations are due;

provided however, that, prior to the entry of a Final Order granting the relief requested in the

Motion, no Employee may receive payment of amounts in excess of the limits provided for by

Bankruptcy Code sections 507(a)(4) or 507(a)(5) pursuant to this Interim Order; and provided

further, however, that prior to the entry of a Final Order granting the relief requested in the

Motion, the Debtors are not authorized to pay and/or honor the Management Bonuses.

4.    The Debtors are authorized, but not directed, in their sole discretion, to

honor the Employee Benefit Obligations and Employee Expense Obligations that were in effect

as of the Petition Date, including, but not limited to, Vacation Time, Holiday Time, Sick Time,

Medical Plans, Dental Plan, Vision Plan, Life Insurance Plans, 401(k) Plan, Reimbursable

Expenses, Vehicle Expenses, and Workers' Compensation Insurance, and to continue such

programs in the ordinary course; provided however, that no Employee may receive payment of

2

amounts in excess of the limits provided for by Bankruptcy Code sections 507(a)(4) or 507(a)(5) pursuant to this Interim Order; provided, further, however, that such relief shall not constitute or be deemed an assumption or an authorization to assume any of such Employee Benefit Obligations, including, policies, plans, programs, practices, and procedures, under section 365(a) of the Bankruptcy Code.

5.    The Debtors are authorized, but not directed, in their sole discretion, to pay all Employee Withholdings as and when such obligations are due. The Debtors may remit any and all amounts withheld from Employees, including social security, federal and state income taxes, garnishments, health care payments, other insurance premiums, retirement fund withholding, and other types of withholding, whether these amounts relate to the period prior to the date of the Debtors' chapter 11 filings or subsequent thereto.

6.    To the extent the Debtors elect to make payments pursuant to the self-insured Medical Plans, such payments shall be made without regard to the current employment status of the Employee who incurred (or whose covered family member incurred) a medical expense for which payment is sought, provided that the medical expenses for which the payments are sought are otherwise eligible for payment under the applicable terms of the Medical Plans.

7.    Notwithstanding anything to the contrary contained herein, the relief granted in this Interim Order and any payment to be made hereunder shall be subject to the terms of any orders approving entry into debtor-in-possession financing and authorizing the use of cash collateral approved by this Court in these Chapter 11 Cases (including with respect to any budgets or other covenants governing or relating to such debtor-in-possession financing and/or use of cash collateral), and to the extent there is any inconsistency between the terms of such

3

orders and any action taken or proposed to be taken hereunder, the terms of such orders shall control.

8.    All applicable banks and other financial institutions are hereby authorized, when requested by the Debtors in their sole discretion, to receive, process, honor and pay all prepetition and postpetition checks, drafts and other forms of payment, including fund transfers, on account of the Prepetition Employee Obligations, whether such checks or other requests were submitted prior to or after the Petition Date.

9.    The Debtors' banks and other financial institutions shall rely on the direction and representations of the Debtors as to which checks and fund transfers should be honored and paid pursuant to this order, and any such bank shall not have any liability to any party for relying on such direction and representations by the Debtors as provided for in this order or for inadvertently honoring or dishonoring any check or fund transfer.

10.    The Debtors' banks are authorized, at the direction of the Debtors, to receive, process, honor and pay all prepetition and postpetition checks and fund transfers on account of the Prepetition Employee Obligations that had not been honored and paid as of the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments and any such bank shall not have any liability to any party for relying on such direction by the Debtors as provided for in this order or for inadvertently failing to follow such direction.

11.    The Debtors' banks shall not attempt to reverse or place a hold on any automatic transfers to any account that the Debtors inform the Debtors' banks are an account of a party for the Prepetition Employee Obligations. The Debtors shall be and hereby are authorized to issue new postpetition checks or effect new postpetition fund transfers on account of the

4

Prepetition Employee Obligations to replace any prepetition checks or fund transfer requests that may be dishonored or rejected.

        12.     To the extent the Debtors have not yet sought to remit payment on account of the Prepetition Employee Obligations, the Debtors are authorized, but not directed, to issue checks or provide for other means of payment of the Prepetition Employee Obligations

        13.     Notwithstanding the relief granted herein and any actions taken hereunder, nothing herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any Employee or other third party.

        14.     Nothing in the Motion or this order shall be construed as impairing the Debtors' right to contest the validity, priority, or amount of any Prepetition Employee Obligations allegedly due or owing, and all of the Debtors' rights with respect thereto are hereby reserved.

        15.     Any party receiving payment from the Debtors is authorized and directed to rely upon the representations of the Debtors as to which payments are authorized by this order.

        16.     Nothing in the Motion or this order or the relief granted (including any actions taken or payments made by the Debtors pursuant to the relief) shall (a) be construed as a request for authority to assume any executory contract under Bankruptcy Code section 365; (b) waive, affect or impair any of the Debtors' rights, claims or defenses, including, but not limited to, those arising from Bankruptcy Code section 365, other applicable law and any agreement; (c) grant third-party beneficiary status or bestow any additional rights on any third party; or (d) be otherwise enforceable by any third party.

        17.     No provision of this order shall be construed as authority to make any payment which is subject to the provisions of Bankruptcy Code section 503(c).

18.    The Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested is necessary to avoid immediate and irreparable harm.

19.    Notwithstanding Bankruptcy Rule 6004(h), this order shall be effective and enforceable immediately upon entry hereof.

20.    The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

21.    This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: Wilmington, Delaware
       Sept 10, 2015

                    _____
                    HONORABLE BRENDAN L. SHANNON
                    CHIEF UNITED STATES BANKRUPTCY JUDGE

6