## EXHIBIT A
### AMENDED ORDER

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In re:                                                  :       Chapter 11
:
QUIKSILVER, INC., *et al.*,                             :       Case No. 15-11880 (BLS)
:
                                    Debtors.[1]          :       (Jointly Administered)
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x       **Related Docket No. 16, 74**

**AMENDED ORDER GRANTING DEBTORS' MOTION FOR ORDER PURSUANT TO
BANKRUPTCY CODE SECTIONS 105(a), 345(b), 363, AND 503(b), BANKRUPTCY
RULES 6003 AND 6004 AND LOCAL BANKRUPTCY RULE 2015-2 (I) AUTHORIZING
CONTINUED MAINTENANCE OF PREPETITION BANK ACCOUNTS AND
PAYMENT OF RELATED PREPETITION OBLIGATIONS, (II) AUTHORIZING
CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM, (III)
AUTHORIZING CONTINUED USE OF EXISTING BUSINESS FORMS, AND
(IV) AUTHORIZING THE CONTINUATION OF, AND ACCORDANCE OF
ADMINISTRATIVE EXPENSE PRIORITY STATUS TO,
INTERCOMPANY TRANSACTIONS**

Upon the motion (the "Motion")[2] of the Debtors for an order, pursuant to sections

105(a), 345(b), 363, and 503(b) of title 11 of the United States Code (the "Bankruptcy Code"),

Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

and Local Bankruptcy Rule 2015-2 (i) authorizing, but not directing, the Debtors to continue to

maintain existing bank accounts, authorizing a waiver of certain operating guidelines relating to

bank accounts, and authorizing, but not directing, the payment of related prepetition obligations;

(ii) authorizing, but not directing, the Debtors to continue to use their existing Cash Management

System; (iii) authorizing, but not directing, the Debtors to continue to use existing Business

---

[1]     The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:
        Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc.
        (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505),
        Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599).  The address of the Debtors'
        corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

[2]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

Forms; and (iv) authorizing the continuation of certain Intercompany Transactions, and accordance of administrative expense priority status to related postpetition Intercompany Claims; and upon the First Day Declaration; and due and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and it appearing that the relief requested by the Motion is in the best interests of the Debtors, their estates, their creditors, their stakeholders, and other parties in interest; and after due deliberation thereon, and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED AND DECREED that:**

1.      The Motion is GRANTED as set forth herein.

2.      Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors, in their discretion, are authorized, but not directed, to (i) designate, maintain, and continue to use any and all of their Bank Accounts in existence as of the Petition Date, with the same account numbers, including the accounts identified in <u>Exhibit B</u> annexed to the Motion, and need not comply with certain operating guidelines relating to bank accounts set forth in the U.S. Trustee Guidelines, including but not limited to section 2(a) of the U.S. Trustee Guidelines; (ii) close existing accounts, including, without limitation, any inactive accounts; and (iii) treat the Bank Accounts for all purposes as accounts of the Debtors in their capacity as debtors in possession; <u>provided</u>, <u>however</u>, that the Debtors are only authorized to open new bank accounts (a) after providing prompt notice to any official committee appointed in these Chapter 11 Cases and the agents for the Debtors' postpetition secured financing facilities (the "<u>DIP Facilities</u>" and such agents, the "<u>DIP Agents</u>"); (b) with a bank that (x) is organized under the laws of the United States of America or any state therein, (y) is insured by the FDIC, and (z) has executed, or is willing to immediately execute, a Uniform Depository Agreement with the Office of the

United States Trustee for the District of Delaware; (c) that are designated "Debtor in Possession" accounts by the relevant bank, and (d) in accordance with the DIP Facilities.

3.    The relief granted in this order is extended to any new bank account opened by the Debtors after the date hereof, which account shall be deemed a Bank Account, and to the bank at which such account is opened.  To the extent the Debtors open or close bank accounts, they shall provide notice within ten (10) business days of opening or closing such bank accounts to the United States Trustee, any official committee appointed in these Chapter 11 Cases, and DIP Agents.

4.    Within two (2) days from the date of entry of this order, the Debtors shall (a) contact the Banks; (b) provide the Banks with each of the Debtors' employer identification numbers; and (c) identify each of their accounts held at the Banks as being held by a debtor in possession.

5.    The requirements of the U.S. Trustee Guidelines that the Debtors close all existing bank accounts and open new debtor-in-possession accounts are hereby waived.  Further, the requirements of the U.S. Trustee Guidelines that the Debtors establish specific bank accounts for tax payments are hereby waived.

6.    The Bank Accounts are deemed debtor in possession accounts.  The Debtors are authorized, but not directed, to maintain and use the Bank Accounts in the same manner and with the same account numbers, styles, and document forms as those employed prior to the Petition Date, including, without limitation:  (a) to deposit funds in, and withdraw funds from, the Bank Accounts by all usual means, including checks, wire transfers, automated clearinghouse ("ACH") transfers, drafts, electronic fund transfers, and other debits or items presented issues or drawn on the Bank Accounts, (b) to pay postpetition ordinary course bank

fees and service fees in connection with the Bank Accounts, (c) to perform their obligations under the documents and agreements governing the Bank Accounts, including without limitation, any prepetition cash management agreements or treasury services agreements (d) to treat the Bank Accounts for all purposes as accounts of the Debtors in their capacities as debtors in possession.

7.      The Banks are authorized without the need for further order of this Court to:  (a) continue to administer, service, and maintain, the Bank Accounts as such accounts were administered, serviced, and maintained prior to the Petition Date, without interruption and in the ordinary course, (b) receive, process, honor, and pay any and all checks, drafts, wires, ACH transfers, electronic fund transfers, or other items presented, issued, or drawn on the Bank Accounts (collectively, the "Disbursements") on account of a claim, and (c) debit the Bank Accounts for all undisputed prepetition bank and service fees outstanding as of the date hereof, if any, owed to the Banks; provided, however, that no checks, drafts, wires, or electronic fund transfers (excluding any electronic fund transfers that the Banks are obligated to settle), or other items presented, issued, or drawn on the Bank Accounts prior to the Petition Date shall be honored, unless (i) authorized by order of this Court; (ii) not otherwise prohibited by a "stop payment" request received by the Banks from the Debtors; and (iii) supported by sufficient funds in the Bank Account in question.

8.      Subject to the provisions of this Order, the Banks are authorized to and shall rely on the representations of the Debtors as to which Disbursements are authorized to be honored or dishonored, whether or not such Disbursements are dated prior to, on, or subsequent to the Petition Date, and whether or not the Banks believe the payment is authorized by an order of the Court.  The Banks shall not be deemed in violation of this Order and shall have no liability

4

for honoring any Disbursement that is subject to this Order either (a) at the direction of the

Debtors to honor such prepetition Disbursement, (b) in the good faith belief that the Court has

authorized such prepetition Disbursement to be honored, or (c) as a result of an innocent mistake.

To the extent that the Debtors direct that any Disbursement be dishonored or the Banks

inadvertently dishonor any Disbursements, the Debtors may issue replacement Disbursements

consistent with the orders of this Court.

9.      The Banks are further authorized to (a) honor the Debtors' directions with

respect to the opening or closing of any Bank Account and (b) accept and hold, or invest, the

Debtors' funds in accordance with the Debtors' instructions, and the Banks shall have no liability

to any party for relying on such representations or instructions.

10.     To the extent any other order is entered by this Court authorizing the

Banks to honor checks, drafts, automated clearing house transfers, or other electronic funds

transfers or any other withdrawals made, drawn, or issued in payment of prepetition claims, the

obligation to honor such items shall be subject to this Order.

11.     Notwithstanding anything to the contrary contained herein, any payment

to be made, or authorization contained, hereunder shall be subject to the requirements imposed

on the Debtors under any approved order regarding the use of cash collateral or postpetition

financing and any budget in connection therewith.

12.     The Debtors shall serve a copy of this order on the Banks within two (2)

business days of the entry of this Order, and upon any bank at which the Debtors open a new

bank account, immediately upon the opening of such new account.

13.     The Debtors are authorized to continue to use their existing Cash

Management System.  The Debtors may transfer funds into, out of, and through the Cash

Management System, using ordinary transfer methods in accordance with the Debtors'
prepetition practice.  In connection with the ongoing utilization of their Cash Management
System, the Debtors shall continue to maintain records with respect to all transfers of cash so that
all transactions may be readily ascertained, traced, and recorded properly.  Except as otherwise
set forth herein, the Debtors are further authorized to implement any changes to the Cash
Management System that they deem appropriate in their sole discretion, including, without
limitation, closing Bank Accounts or opening new bank accounts as set forth herein.

14.     The Debtors are authorized, but not directed, to pay and/or reimburse their
Banks and service providers in the ordinary course of business for any Cash Management Claims
arising prior to or after the Petition Date.  The Cash Management Claims shall be granted
administrative expense priority status pursuant to section 503(b) of the Bankruptcy Code;
provided, however, that to the extent that any order approving entry into the DIP Facilities
provides otherwise, such order shall govern.

15.     The Debtors are authorized, but not directed, to continue to use their
existing Business Forms without alteration or change and without the designation "Debtor in
Possession" imprinted upon them; provided, however, that, within thirty (30) days following the
Petition Date, subsequently issued checks bear the designation "Debtor in Possession" and their
joint case number; provided further that the foregoing shall be without prejudice to the Debtors'
right to seek further relief from this requirement or additional time to comply.

16.     The Debtors are authorized to continue engaging in Intercompany
Transactions in the ordinary course of business, including transferring funds to non-Debtor
subsidiaries through the Cash Management System.  The Intercompany Claims arising
postpetition relating to the Intercompany Transactions shall have administrative expense priority

status pursuant to section 503(b) of the Bankruptcy Code (or such greater priority as may be granted in connection with the DIP ABL Facility).

17.     Notwithstanding the Debtors' use of a consolidated cash management system, the Debtors shall calculate quarterly fees payable under 28 U.S.C. § 1930(a)(6) based on the disbursements of (or on behalf of) each Debtor regardless of which entity actually makes such disbursements.

18.     Notwithstanding anything to the contrary contained herein, the relief granted in this order and any payment to be made hereunder shall be subject to the terms of any orders approving entry into debtor in possession financing and authorizing the use of cash collateral approved by this Court in these Chapter 11 Cases (including with respect to any budgets or other covenants governing or relating to such debtor in possession financing and/or use of cash collateral), and to the extent there is any inconsistency between the terms of such orders and any action taken or proposed to be taken hereunder, the terms of such orders shall control.

19.     To the extent applicable, the Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested is necessary to avoid immediate and irreparable harm.

20.     Notwithstanding Bankruptcy Rule 6004(h), this order shall be effective and enforceable immediately upon entry hereof.

21.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this order.

Dated:  Wilmington, Delaware
        _____, 2015


_____
HONORABLE BRENDAN L. SHANNON
CHIEF UNITED STATES BANKRUPTCY JUDGE