IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In re: : Chapter 11
:
QUIKSILVER, INC., *et al.*, : Case No. 15-11880 (BLS)
:
Debtors.[1] : Jointly Administered
:
:
: Hrg. Date: Oct. 6, 2015 at 10:00 a.m. (Eastern)
: Obj. Due: Sept. 29, 2015 at 4:00 p.m. (Eastern)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEBTORS' APPLICATION FOR ENTRY OF ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 327(a), 328, AND 1107(b), BANKRUPTCY RULE 2014, AND LOCAL BANKRUPTCY RULE 2014-1 AUTHORIZING DEBTORS TO EMPLOY AND RETAIN KURTZMAN CARSON CONSULTANTS LLC TO PROVIDE ADMINISTRATIVE SERVICES NUNC PRO TUNC TO THE PETITION DATE**

Quiksilver, Inc. ("ZQK") and certain of its affiliates, the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors" and, together with their non-Debtor affiliates, "Quiksilver" or the "Company"), hereby apply (the "Application") to this Court for entry of an order (the "Order") pursuant to sections 327(a), 328, and 1107(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), authorizing the Debtors' employment and retention of Kurtzman Carson Consultants LLC ("KCC") to provide certain administrative services in connection with the Debtors' Chapter 11 Cases (as defined below). In support of the Application, the Debtors rely

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

upon and incorporate by reference the Affidavit of Albert Kass, Executive Vice President of KCC (the "Kass Affidavit"), attached hereto as Exhibit B, and the Declaration of Andrew Bruenjes, Americas Chief Financial Officer of Quiksilver, Inc., In Support Of Chapter 11 Petitions And First Day Pleadings [Docket No. 20] (the "First Day Declaration"). In further support of the Motion, the Debtors, by and through their proposed undersigned counsel, respectfully represent:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 327(a), 328, and 1107(b) of the Bankruptcy Code. Such relief is also warranted under Bankruptcy Rule 2014. and Local Bankruptcy Rule 2014-1.

3. Pursuant to Rule 9013-1(f) of the Local Bankruptcy Rules, the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that Court would lack Article III jurisdiction to enter such final order or judgment absent the consent of the parties.

## BACKGROUND

4. On September 9, 2015 (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). These Chapter 11 Cases are jointly administered.

5. The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. To date, no creditors' committee has been appointed in these Chapter 11 Cases by the Office of the United States Trustee for the District of Delaware (the "<u>United States Trustee</u>"). No trustee or examiner has been appointed in the Debtors' Chapter 11 Cases.

7. Quiksilver is one of the world's leading outdoor sports lifestyle companies. The Company designs, develops and distributes branded apparel, footwear, accessories and related products. The Company began operations in 1976 making boardshorts for surfers in the United States under a license agreement with the *Quiksilver* brand founders in Australia. Today, the Company's business is rooted in the strong heritage and authenticity of its core brands, *Quiksilver*, *Roxy*, and *DC*, each of which caters to the casual, outdoor lifestyle associated with surfing, skateboarding, snowboarding, BMX, and motocross, among other activities. The Company's products are sold in over 115 countries through a wide range of distribution points, including wholesale accounts (surf shops, skate shops, snow shops, sporting goods stores, discount centers, specialty stores, select department stores, and licensed stores), Company-owned retail stores, and its e-commerce websites. The Debtors comprise each of the Company's U.S. entities, including parent, ZQK, as well as QS Wholesale, Inc., QS Retail, Inc., DC Shoes, Inc. and seven inactive entities.

8. Additional factual background information regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to these Chapter 11 Cases, is set forth in detail in the First Day Declaration.

**RELIEF REQUESTED**

9. By this Application, the Debtors request an order authorizing the employment and retention of KCC to provide certain administrative services (the "Administrative Services"), effective as of the Petition Date, subject to that certain agreement for services, dated as of August 30, 2015, by and between KCC and the Debtors (such agreement together with all amendments, modifications, renewals thereof and all documents ancillary thereto or otherwise entered into in connection therewith, are collectively referred to herein as the "Services Agreement"), a copy of which is attached hereto as Exhibit A and incorporated by reference herein.[2] Prior to selecting KCC to act in this capacity, the Debtors obtained and reviewed engagement proposals from at least two other qualified firms to ensure selection from a competitive process. The Debtors submit, based on the three engagement proposals obtained and reviewed, that KCC's rates are competitive and reasonable given KCC's quality of service and expertise. For the reasons set forth below, the Debtors submit that the relief requested herein is in the best interests of the Debtors, their estates, creditors, stakeholders, and other parties in interest, and therefore, should be granted.

**KCC'S QUALIFICATIONS**

10. KCC has substantial experience in matters of this size and complexity and has significant experience in noticing, claims administration, solicitation, balloting and facilitating other administrative aspects of chapter 11 cases. Indeed, KCC has substantial experience in many large bankruptcy cases in this District and other jurisdictions. See, e.g., In re

---

[2] By a separate application filed September 9, 2015, the Debtors sought and received entry of an order authorizing the employment and retention of KCC to provide certain claims and noticing services to the Debtors pursuant to section 156(c) of title 28 of the United States Code, section 105(a) of the Bankruptcy Code, Bankruptcy Rule 2002(f) and Local Bankruptcy Rule 2002-1 in accordance with the Protocol for the Employment of Claims and Noticing Agents Under 28 U.S.C. § 156(c) of the United States Bankruptcy Court for the District of Delaware.

Haggen Holdings, LLC, No. 15-11874 (KG) (Bankr. D. Del. Sept. 8, 2015); In re Cal Dive Int'l, Inc., No. 15-10458 (CSS) (Bankr. D. Del. Mar. 3, 2015); In re FCC Holdings, Inc., No. 14-11987 (CSS) (Bankr. D. Del. Aug. 25, 2014); In re Source Home Entm't, LLC, No. 14-11553 (KG) (Bankr. D. Del. June 24, 2014); In re Dolan Co., No. 14-10614 (BLS) (Bankr. D. Del. Mar. 25, 2014); In re Sorenson Commc'ns, Inc., No. 14-10454 (BLS) (Bankr. D. Del. Mar. 4, 2014); In re Physiotherapy Holdings, Inc., No. 13-12965 (KG) (Bankr. D. Del. Nov. 14, 2013); In re Synagro Techs. Inc., No. 13-11041 (BLS) (Bankr. D. Del. Apr. 24, 2013); In re Otelco Inc., No. 13-10593 (MFW) (Bankr. D. Del. Mar. 26, 2013); In re Ormet Corp., No. 13-10334 (MFW) (Bankr. D. Del. Feb. 27, 2013).[3]

## SERVICES TO BE PROVIDED[4]

11. The Debtors seek to retain KCC to provide the following Administrative Services, among others, if and to the extent requested:

(a) assist with the preparation and filing of the Debtors' schedules of assets and liabilities and statements of financial affairs;

(b) collect and tabulate votes in connection with any plan filed by the Debtors and provide ballot reports to the Debtors and their professionals;

(c) generate an official ballot certification and testify, if necessary, in support of the ballot tabulation results;

(d) manage any distributions made pursuant to a confirmed plan; and

(e) perform such other administrative services as may be requested by the Debtors that are not otherwise allowed under the order approving the 156(c) Application [Docket No. 69].

---

[3] Because of the voluminous nature of the orders cited herein, they are not attached to the Application. Copies of these orders, however, are available on request.

[4] The following shall serve only as a summary of the services to be provided by KCC. If there are any discrepancies between this Administrative Services Application and the Services Agreement, the Services Agreement shall govern.

12. KCC's appointment as administrative agent will provide the Debtors experienced professionals and services that are essential to a successful reorganization. KCC will also coordinate with the Debtors' professionals in these Chapter 11 Cases to avoid any unnecessary duplication of services. Accordingly, the relief requested in this Application is in the best interests of the Debtors' estates and all parties in interests.

## COMPENSATION

13. KCC will apply to the Court for allowance of compensation and reimbursement of out-of-pocket expenses incurred after the Petition Date in connection with the performance of Administrative Services in these Chapter 11 Cases, in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the guidelines established by the U.S. Trustee and further orders of this Court.

14. KCC has informed the Debtors that, subject to Court approval, it will bill at its standard hourly rates, which are set forth in the Services Agreement.

15. The Debtors believe these rates are consistent with market rates for comparable services. KCC will maintain detailed records of actual and necessary costs and expenses incurred in connection with the Administrative Services described above.

16. Prior to the Petition Date, the Debtors paid KCC an initial retainer of $30,000. KCC seeks to first apply the retainer to all prepetition invoices, and thereafter to have the retainer replenished to the original retainer amount, and thereafter to hold the retainer under the Services Agreement during the Chapter 11 Cases as security for the payment of fees and expenses incurred under the Services Agreement.

17. As part of the overall compensation payable to KCC under the terms of the Services Agreement, the Debtors have agreed to certain indemnification obligations. The

Services Agreement provides that the Debtors will indemnify and hold harmless KCC and certain related parties under certain circumstances specified in the Services Agreement, except in cases of gross negligence or willful misconduct of the indemnified party, and subject to the customary limitations on indemnity in Delaware, which are reflected in the attached proposed order granting the Application.  Both the Debtors and KCC believe that such provisions are customary and reasonable for firms providing Administrative Services in chapter 11 cases.

## KCC'S DISINTERESTEDNESS

18. The Debtors have many creditors, and accordingly, KCC may have rendered and may continue to render services to certain of these creditors.  KCC has not and will not represent the separate interests of any such creditor in these cases.  Additionally, KCC's employees may, in the ordinary course of their personal affairs, have relationships with certain creditors of the Debtors.  Except as may be disclosed in the Kass Affidavit, KCC has represented that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed and that it is a "disinterested person," as referenced in Bankruptcy Code section 327(a) and as defined in Bankruptcy Code section 101(14), as modified by the Bankruptcy Code section 1107(b).

19. Should KCC discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, KCC will use reasonable efforts to file promptly a supplemental affidavit.

## BASIS FOR RELIEF

20. The Debtors submit that the retention of KCC to provide Administrative Services is appropriate under sections 327(a), 328, and 1107 of the Bankruptcy Code.  Section 327(a) of the Bankruptcy Code empowers a trustee (or debtor-in-possession in a chapter 11

case), with the court's approval, to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a). Section 101(14) of the Bankruptcy Code defines "disinterested person" as a person that:

(a) is not a creditor, an equity security holder, or an insider;

(b) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

(c) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14).

21.  Further, section 1107(b) of the Bankruptcy Code provides that "a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b). As set forth above, except as may be disclosed in the Kass Affidavit, KCC has represented that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed and that it is a "disinterested person," as referenced in section 327(a) and as defined in section 101(14) of the Bankruptcy Code, as modified section by 1107(b).

22.  In addition, section 328(a) of the Bankruptcy Code authorizes the employment of a professional person "on any reasonable terms and conditions of employment, including on a retainer." 11 U.S.C. § 328(a). The Debtors may require KCC to render extensive Administrative Services, the cost of which may not be estimable. Accordingly, it is necessary and essential for the Debtors, as debtors in possession, to employ KCC to provide Administrative Services under a general retainer to render the foregoing services.

23. Finally, Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).

24. In light of the size and complexity of these Chapter 11 Cases, the Debtors respectfully submit that KCC's retention and employment pursuant to the terms of the Services Agreement is necessary and in the best interest of the Debtors' estates and all parties in interest to these Chapter 11 Cases. The Debtors also believe that the terms and conditions of the Services Agreement are reasonable in light of the anticipated high volume of creditors, equity security holders, and other parties in interest that will be involved in these cases.

25. Accordingly, to help manage administrative tasks with respect to the thousands of creditors and other parties in interest that are expected to be involved in the Debtors' Chapter 11 Cases, and the complexity of such cases, the Debtors respectfully request the Court enter an order authorizing the Debtors to retain and employ KCC to provide Administrative Services in these Chapter 11 Cases pursuant to sections 327(a), 328, and 1107(b) of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Bankruptcy Rule 2014-1.

**NOTICE**

26. Notice of this Motion shall be given to (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the agent for the Debtors' postpetition secured loan facilities; (c) counsel to the agent for the Debtors' prepetition revolving loan facility; (d) the agent for the Debtors' prepetition senior secured notes; (e) the agent for the

Debtors' prepetition senior unsecured notes; and (f) the parties listed in the consolidated list of thirty (30) largest unsecured creditors filed by the Debtors in these Chapter 11 Cases. The Debtors submit that no other or further notice need be provided.

## NO PRIOR REQUEST

27. No previous request for the relief sought herein has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that this Court enter an order, substantially in the form annexed hereto, granting the relief requested in the Application and granting such other and further relief as may be just and proper.

Dated:   September 15, 2015

QUIKSILVER, INC.

(on behalf of itself and the other Debtors)

By:   */s/ Andrew Bruenjes*
Name: Andrew Bruenjes
Title:  Americas Chief Financial Officer