**EXHIBIT A**

**SERVICES AGREEMENT**



# KCC AGREEMENT FOR SERVICES

This Agreement is entered into as of the 30th day of August, 2015, between Quiksilver, Inc. (the "Company"),[1] and Kurtzman Carson Consultants LLC (together with its affiliates and subcontractors, "KCC").

In consideration of the premises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

<u>**Terms and Conditions**</u>

I.    SERVICES

A.    KCC agrees to provide the Company with consulting services regarding noticing, claims management and reconciliation, plan solicitation, balloting, disbursements and any other services agreed upon by the parties or otherwise required by applicable law, government regulations or court rules or orders.

B.    KCC further agrees to provide (i) computer software support and training in the use of the support software, (ii) KCC's standard reports as well as consulting and programming support for the Company requested reports, (iii) program modifications, (iv) data base modifications, and/or (v) other features and services in accordance with the fees outlined in a pricing schedule provided to the Company (the "KCC Fee Structure").

C.    Without limiting the generality of the foregoing, KCC may, upon request by the Company, (i) provide a communications plan including, but not limited to, preparation of communications materials, dissemination of information and a call center staffed by KCC and/or (ii) provide confidential on-line workspaces or virtual data rooms and publish documents to such workspaces or data rooms (which publication shall not be deemed to violate the confidentiality provisions of this Agreement).

D.    The price listed for each service in the KCC Fee Structure represents a bona fide proposal for such services, which may be accepted in whole or in part.  Services will be provided when requested by the Company or required by applicable law, government regulations or court rules or orders.  Services are mutually exclusive and are deemed delivered and accepted by the Company when provided by KCC.

E.    The Company acknowledges and agrees that KCC will often take direction from the Company's authorized representatives, employees, agents and/or professionals (collectively, the "Company Parties") with respect to the services being provided under this Agreement.  The parties agree that KCC may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.  The Company agrees and understands that KCC shall not provide the Company or any other party with any legal advice.

---

[1] The term Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in its chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.



# KCC AGREEMENT FOR SERVICES

II.     PRICES, CHARGES AND PAYMENT

A.      KCC agrees to charge and the Company agrees to pay KCC for its services, expenses and supplies at the rates or prices set by KCC and in effect as of the date of this Agreement in accordance with the KCC Fee Structure. KCC's prices are generally adjusted periodically to reflect changes in the business and economic environment. KCC reserves the right to reasonably increase its prices, charges and rates annually. If any price increases exceed 10%, KCC will give thirty (30) days written notice to the Company.

B.      The Company agrees to pay the reasonable, documented out of pocket expenses incurred by KCC in connection with services provided under this Agreement, including but not limited to, transportation, lodging, and meals.

C.      In addition to all fees for services and expenses hereunder, the Company shall pay to KCC [(i) any fees and expenses related to, arising out of, or as a result of any error or omission made by the Company or the Company Parties, as mutually determined by KCC and the Company, and] (ii) all taxes that are applicable to this Agreement or that are measured by payments made under this Agreement and are required to be collected by KCC or paid by KCC to a taxing authority.

D.      Where the Company requires services that are unusual or beyond the normal business practices of KCC, or are otherwise not provided for in the KCC Fee Structure, the cost of such services shall be charged to the Company at a competitive rate to be mutually agreed to by KCC and the Company.

E.      KCC agrees to submit its invoices to the Company monthly and the Company agrees that the amount invoiced is due and payable upon the Company's receipt of the invoice. However, where total fees and expenses are expected to exceed $10,000 in any single month, KCC may require advance payment from the Company due and payable upon demand and prior to the performance of services hereunder. If any amount is unpaid as of thirty (30) days from the receipt of the invoice, the Company further agrees to pay a late charge, calculated as one and one-half percent (1-1/2%) of the total amount unpaid every thirty (30) days. In the case of a dispute in the invoice amount, the Company shall give written notice to KCC within ten (10) days of receipt of the invoice by the Company. The undisputed portion of the invoice will remain due and payable immediately upon receipt of the invoice. Late charges shall not accrue on any amounts in dispute. Unless otherwise agreed to in writing, the fees for print notice and media publication (including commissions) as well as certain expenses associated therewith must be paid at least three (3) days in advance of those fees and expenses being incurred.

F.      In the event that the Company files for protection pursuant to chapter 11 of the United States Bankruptcy Code (a "Chapter 11 Filing"), the parties intend that KCC shall be employed pursuant to 28 U.S.C. § 156(c) ("Section 156(c)") and that all fees and expenses due under this Agreement shall be paid as administrative expenses of the Company's chapter 11 estate. As soon as practicable following a Chapter 11 Filing (and otherwise in accordance with applicable law and rules and orders of the Bankruptcy Court), the Company shall cause a motion to be filed with the Bankruptcy Court seeking entry of an order pursuant to Section 156(c) approving this Agreement in its entirety (the "Section 156(c) Order"). The form and substance of the motion and the Section 156(c) Order shall be reasonably acceptable to KCC. If any Company chapter 11



# KCC AGREEMENT FOR SERVICES

case converts to a case under chapter 7 of the Bankruptcy Code, KCC will continue to be paid for its services in accordance with Section 156(c) and under the terms of this Agreement.

G. To the extent permitted by applicable law, KCC shall receive a retainer in the amount of $30,000 (the "Retainer") that may be held by KCC as security for the Company's payment obligations under the Agreement. The Retainer is due upon execution of this Agreement. KCC shall be entitled to hold the Retainer until the termination of the Agreement. Following termination of the Agreement, KCC shall return to the Company any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

III. RIGHTS OF OWNERSHIP

A. The parties understand that the software programs and other materials furnished by KCC pursuant to this Agreement and/or developed during the course of this Agreement by KCC are the sole property of KCC. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, and documentation. The Company agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished pursuant to this Agreement.

B. The Company further agrees that any ideas, concepts, know-how or techniques relating to data processing or KCC's performance of its services developed or utilized during the term of this Agreement by KCC shall be the exclusive property of KCC. Fees and expenses paid by the Company do not vest in the Company any rights in such property, it being understood that such property is only being made available for the Company's use during and in connection with the services provided by KCC under this Agreement.

IV. NON-SOLICITATION

Each of KCC and the Company agree that neither it nor its subsidiaries or other affiliated companies shall directly or indirectly solicit for employment, employ or otherwise retain employees of the other during the term of this Agreement and for a period of twelve (12) months after termination of this Agreement unless KCC or the Company, as applicable, provides prior written consent to such solicitation or retention.

V. CONFIDENTIALITY

Each of KCC and the Company, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep strictly confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the services provided under this Agreement ("Confidential Information"), and to use such Confidential information solely for the purpose of providing or receiving the services under this Agreement; provided, however, that if either party reasonably believes upon advice of counsel that it is required to produce any such information by order of any governmental agency or other regulatory body, such party agrees, to the extent permitted by law, to (a) promptly notify the other party of the existence, terms and circumstances surrounding such order in order to enable the other party to seek an appropriate protective order or other remedy or waive compliance, in whole or part, with the confidentiality terms of this Agreement as to such required disclosure and (b) reasonably consult and cooperate with the other party with respect to taking legally available steps to resist or narrow such request and exercise its best efforts to pursue any such steps at the



## KCC AGREEMENT FOR SERVICES

other party's request. If a protective order is not timely sought or obtained, the party subject to such order may disclose the Confidential Information so required, provided, that such party agrees to (i) disclose only such portion of the Confidential Information that such party is advised by its counsel is required to be disclosed, and (ii) exercise its reasonable efforts to obtain reliable assurance that confidential treatment will be accorded to such portion of the Confidential Information. In any event, neither party will oppose action by the other party to obtain a protective order or other reliable assurance that confidential treatment will be accorded to such portion of the Confidential Information to be disclosed.

VI.     SUSPENSION OF SERVICE AND TERMINATION

A.      This Agreement shall remain in force until terminated or suspended by either party (i) upon thirty (30) days' written notice to the other party or (ii) immediately upon written notice for Cause (defined herein). As used herein, the term "Cause" means (i) gross negligence or willful misconduct of KCC that causes serious harm to the Company's reorganization under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay KCC invoices for more than sixty (60) days from the date of invoice, or (iii) the accrual of invoices or unpaid services in excess of the retainer held by KCC where KCC reasonably believes it will not be paid.

B.      In the event that this contract is terminated, regardless of the reason for such termination, KCC shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions and KCC shall provide all necessary staff, services and assistance required for an orderly transfer. The Company agrees to pay for such services in accordance with KCC's then existing prices for such services. If such termination occurs following entry of the Section 156(c) Order, the Company shall immediately seek entry of an order (in form and substance reasonably acceptable to KCC) that discharges KCC from service and responsibility under Section 156(c) and this Agreement.

C.      Any data, programs, storage media or other materials furnished by the Company to KCC or received by KCC in connection with the services provided under the terms of this Agreement may be retained by KCC until the services provided are paid for, or until this Agreement is terminated with the services paid in full. The Company shall remain liable for all fees and expenses imposed under this Agreement as a result of data or physical media maintained or stored by KCC. KCC shall dispose of the data and media in the manner requested by the Company. The Company agrees to pay KCC for reasonable expenses incurred as a result of the disposition of data or media. Notwithstanding any term herein to the contrary, following entry of the Section 156(c) Order, the disposition of any data or media by KCC shall be in accordance with any applicable instructions from the clerk of the Bankruptcy Court, local Bankruptcy Court rules and orders of the Bankruptcy Court.

VII.    SYSTEM IMPROVEMENTS

KCC strives to provide continuous improvements in the quality of service to its clients. KCC, therefore, reserves the right to make changes in operating procedure, operating systems, programming languages, general purpose library programs, application programs, time period of accessibility, types of terminal and other equipment and the KCC data center serving the Company, so long as any such changes do not materially interfere with ongoing services provided to the Company in connection with the Company's chapter 11 case.



## KCC AGREEMENT FOR SERVICES

VIII.  BANK ACCOUNTS

At the Company's request, KCC shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company. To the extent that certain financial products are provided to the Company pursuant to KCC's agreement with financial institutions, KCC may receive compensation from such financial institutions for the services KCC provides pursuant to such agreement.

IX.  LIMITATIONS OF LIABILITY AND INDEMNIFICATION

A.  The Company shall indemnify and hold KCC, its affiliates, members, directors, officers, employees, consultants, subcontractors and agents (collectively, the "KCC Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, judgments, liabilities and expenses (including reasonable counsel fees and expenses) (collectively, "Losses") resulting from, arising out of or related to KCC's performance under this Agreement. Such indemnification shall exclude Losses resulting from KCC's gross negligence or willful misconduct. KCC shall indemnify and hold the Company, its affiliates, members, directors, officers, employees, consultants, subcontractors and agents (collectively, the "Company Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all Losses resulting from, arising out of or related to KCC's gross negligence or willful misconduct. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third-parties against any Indemnified Party. Each party shall notify the other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that the indemnifying party becomes aware of with respect to the services provided by KCC under this Agreement. The indemnifying party shall have control of the defense of any claim, action, investigation or proceeding, provided, that the applicable indemnifying party shall obtain the written consent of indemnified party prior to entering into any settlement or compromise that involves remedies other than the payment of damages (such consent not to be unreasonably withheld or delayed). No Indemnified Party shall not make any admission of liability, agreement or compromise with any person, body or authority in relation to any third party claim without prior consultation with, and agreement of, the indemnifying party, which agreement shall not be unreasonably withheld or delayed. The Indemnified Party shall, at the indemnifying party's reasonable expense, provide all reasonable assistance in defending any claim, action, investigation or proceeding. Each party's indemnification obligations hereunder shall survive the termination of this Agreement.

B.  Except as provided herein, KCC's liability to the Company or any person making a claim through or under the Company for any Losses of any kind, even if KCC has been advised of the possibility of such Losses, whether direct or indirect and unless due to gross negligence or willful misconduct of KCC, shall be limited to the total amount billed or billable to the Company. In no event shall KCC's liability to the Company for any Losses, whether direct or indirect, arising out of this Agreement exceed the total amount billed to the Company and actually paid to KCC for the services contemplated under the Agreement. In no event shall either party be liable for any indirect, special or consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of this Agreement.

C.  The Company is responsible for the accuracy of the programs, data and information it or any Company Party submits for processing to KCC and for the output of such information. KCC

5



## KCC AGREEMENT FOR SERVICES

does not verify information provided by the Company and, with respect to the preparation of schedules and statements, all decisions are at the sole discretion and direction of the Company. The Company reviews and approves all schedules and statements filed on behalf of, or by, the Company; except to the extent that KCC alters any such schedule or statements, KCC bears no responsibility for the accuracy or contents therein. The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs and data submitted by the Company to KCC.

D.      The Company agrees that except as expressly set forth herein, KCC makes no representations or warranties, express or implied, including, but not limited to, any implied or express warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

X.      FORCE MAJEURE

Whenever performance by KCC or the Company of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, strike, lock-out or other industrial or transportation disturbance, fire, lack of materials, law, regulation or ordinance, war or war condition, or by reason of any other matter beyond such party's reasonable control, then such performance shall be excused and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

XI.     INDEPENDENT CONTRACTORS

KCC is and shall be an independent contractor of the Company and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of this Agreement.

XII.    NOTICES

All notices and requests in connection with this Agreement shall be given or made upon the respective parties in writing and shall be deemed as given as of the third day following the day it is deposited in the U.S. Mail, postage pre-paid or on the day it is given if sent by facsimile or electronic mail or on the day after the day it is sent if sent by overnight courier to the appropriate address set forth below:

Kurtzman Carson Consultants LLC  
2335 Alaska Ave.  
El Segundo, CA  90245  
Attn:  Drake D. Foster  
Tel: (310) 823-9000  
Fax: (310) 823-9133  
E-Mail: dfoster@kccllc.com  

Quiksilver, Inc.  
5600 Argosy Circle, #100  
Huntington Beach, CA 92649  
Attn: General Counsel  
Tel: (714) 889-2200  
Fax:

Or to such other address as the party to receive the notice or request so designates by written notice to the other.



# KCC AGREEMENT FOR SERVICES

XIII.    APPLICABLE LAW

The validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of Delaware.

XIV.    ENTIRE AGREEMENT/ MODIFICATIONS

Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, other agreements, and communications oral and written between the parties relating to the subject matter of this Agreement.  The Company represents that it has the authority to enter into this Agreement.  If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.  This Agreement may be modified only by a written instrument duly executed by an authorized representative of the Company and an officer of KCC.

XV.    COUNTERPARTS; EFFECTIVENESS

This Agreement may be executed in two or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other parties, which delivery may be made by exchange of copies of the signature page by facsimile or electronic mail.

XVI.    ASSIGNMENT

This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other, with the exception that this Agreement can be assigned without written consent by either party to a wholly-owned subsidiary or affiliate of such party.

XVIII.    ATTORNEYS' FEES

In the event that any legal action, including an action for declaratory relief, is brought to enforce the performance or interpret the provisions of this Agreement, the parties agree to reimburse the prevailing party's reasonable attorneys' fees, court costs, and all other related expenses, which may be set by the court in the same action or in a separate action brought for that purpose, in addition to any other relief to which the prevailing party may be entitled.

[SIGNATURE PAGE FOLLOWS]



## KCC AGREEMENT FOR SERVICES

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the first date mentioned above.

Kurtzman Carson Consultants LLC

BY: Evan Gershbein          DATE: 8/31/15
TITLE: Senior Vice President, Corporate Restructuring Services


Quiksilver, Inc.

BY: Greg Healy          DATE: 8/31/2015
TITLE: President



**KCC CORPORATE RESTRUCTURING
FEE STRUCTURE**

| Consulting Services & Rates[1] | |
|---|---|
| **Position** | **Hourly Rate** |
| *Executive Vice President* | *Waived* |
| The Executive Vice President oversees and manages KCC's Restructuring group. | |
| *Director/Senior Managing Consultant* | *$180* |
| The Director/Senior Managing Consultant is the primary contact for the company, counsel and other professionals and oversees and supports the entirety of an engagement. KCC's Directors and SMCs average over seven years of experience and are generally former practitioners. | |
| *Consultant/Senior Consultant* | *$75-$165* |
| The Senior Consultant manages the various data collection processes required by the Chapter 11 process. This includes, among other things, compiling the creditor matrix and Schedules/SOFAs (and generating drafts of same for counsel and advisors), reviewing and processing claims, overseeing contract review, overseeing all mailings and generating custom claim and ballot reports. KCC's Senior Consultants average over five years of experience.<br><br>The Consultant is the day-to-day contact for mailings, including the preparation and filing of affidavits of service (a critical due process component). He/she also responds to creditor and counsel inquiries, maintains the public access website, identifies actionable pleadings (i.e., claims objections, notices of transfer, withdrawals, etc.) and updates the official claims register.  KCC's Consultants average over five years of experience. | |
| *Technology/Programming Consultant* | *$35-$70* |
| The Technology/Programming Consultant assists with complex system requests, including unique claim/ballot reporting and custom website updates. | |
| *Clerical* | *$30-$50* |
| The Clerical role will process incoming mail, including proofs of claim, ballots, creditor correspondence and returned mail. Also assists with the generation of mailing services. | |
| *Weekend, holidays and overtime* | *Waived* |

---

[1] Please note that additional professional services not covered by this proposal will be charged at hourly rates, including any outsourced services performed under our supervision and control.



**KCC CORPORATE RESTRUCTURING
FEE STRUCTURE**

| Public Securities[2] & Solicitation Services | |
|---|---|
| **Position** | **Hourly Rate** |
| *Solicitation Lead/Securities Director* | *$215* |
| The Solicitation Lead/Securities Director oversees all activities of the group and provides counsel with respect to solicitation and noticing events ensuring that processes employed are effective and practical for securities depositories, bank, brokers, nominees and their agents. In addition, this position oversees and provides counsel on all rights offerings, exchange offers and complex plan distributions to ensure accuracy and efficiency. | |
| *Securities Senior Consultant* | *$200* |
| The Securities Senior Consultant is the day-to-day contact and acts as advisor on transactions including balloting with treatment election, rights offers, exchange offers and complex plan distributions. This position handles service of related materials to banks, brokers and agents and manages tabulation and audit processes, preparing detailed reporting of results. | |

- Voting Event - Mailing ballots to security holders and tabulating their votes on a plan of reorganization, including competing plan and pre-packaged plan voting, if applicable.

- Corporate Action Event - Mailing election forms to security holders and tabulating the results, e.g., rights offering elections, if applicable.

- NOL Motion – Review of motion and procedures and coordinate noticing to equity holders, if applicable.

| Printing Services | |
|---|---|
| Printing and photocopies | $0.10 per image (volume discounts apply) |
| Labels | Waived |
| Document folding and inserting | Waived |
| Envelopes | Varies by size |

| Noticing Services[3] | |
|---|---|
| Electronic noticing (email) | Waived[4] |
| Electronic noticing (domestic facsimile) | $0.08 per page |
| Claims Acknowledgement Card | Waived |
| Insert creditor information into customized documents | Waived |
| Newspaper/Legal notice publishing | Quote prior to publishing |

---

[2] Certain events fees may be applicable.
[3] Expenses shall be consistent with the general practice procedures authorized in the District of Delaware.
[4] A set-up fee for email services larger than 500 parties may apply. This set-up fee varies depending on the total number of parties.



# KCC CORPORATE RESTRUCTURING
# FEE STRUCTURE

| Claims Administration & Management Expenses | |
|---|---|
| Database and System Access (unlimited users) | Waived |
| Custom client reports | Waived |
| License fee and data storage | $0.10 per creditor per month |
| Case-specific public website hosting | Waived |

| KCC eServices | |
|---|---|
| Online claims filing (ePOC) | Waived |

| KCC CaseView | |
|---|---|
| Access to KCC CaseView | Waived |

- Proprietary, secured, password protected portal for unlimited users
- Comprehensive case data, including extensive real time analytics on claim, solicitation and processing information
- Functionality to run or request customized reports summarizing case analytics

| Document Management/Imaging | |
|---|---|
| Electronic imaging (scanning & bar coding) | $0.12 per imaged page |
| Virtual Data Room | Quote prior to VDR set-up |
| CD-ROMS (mass document storage) | Varies upon requirements |

| Call Center Support Services | |
|---|---|
| Case-specific voice-mail box for creditors | Waived |
| Interactive Voice Response ("IVR") | Set-up and per minute fee waived |
| Monthly maintenance charge | Waived |
| Management of Call Center | Standard hourly rates |
| Call Center Operator | $55 - $75 |

| Disbursements | |
|---|---|
| Check issuance | Quote prior to printing |
| W-9 mailing and maintenance of TIN database | See hourly rates and noticing charges |