### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :   Chapter 11
In re:                                  :
                                        :   Case No. 15-11880 (BLS)
QUIKSILVER, INC., et al.,               :
                                        :   Jointly Administered
                        Debtors.¹       :
                                        :   Hrg. Date: Oct. 6, 2015 at 10:00 a.m. (Eastern)
                                        :   Obj. Due: Sept. 29, 2015 at 4:00 p.m. (Eastern)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

### DEBTORS' MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a), 327, 330 AND 331 AUTHORIZING DEBTORS TO EMPLOY AND PAY PROFESSIONALS UTILIZED IN THE ORDINARY COURSE OF BUSINESS

Quiksilver, Inc. ("ZQK") and certain of its affiliates, the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors" and, together with their non-Debtor affiliates, "Quiksilver" or the "Company"), hereby move (the "Motion") the Court for entry of an order, under sections 105(a), 327, 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), authorizing, but not directing, the retention and payment of professionals utilized by the Debtors in the ordinary course of business.  In support of the Motion, the Debtors, by and through their undersigned proposed counsel, respectfully represent as follows:

#### JURISDICTION

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

---

¹    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599).  The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

2.      The statutory predicates for the relief requested herein are Bankruptcy Code sections 105(a), 327, 330 and 331.

3.      Pursuant to Rule 9013-1(f) of the Local Rules for the United States Bankruptcy Court for the District of Delaware, the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that Court would lack Article III jurisdiction to enter such final order or judgment absent the consent of the parties.

## BACKGROUND

4.      On September 9, 2015 (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). These Chapter 11 Cases are jointly administered.

5.      The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      To date, no creditors' committee has been appointed in these Chapter 11 Cases by the Office of the United States Trustee for the District of Delaware (the "United States Trustee"). No trustee or examiner has been appointed in the Debtors' Chapter 11 Cases.

7.      Quiksilver is one of the world's leading outdoor sports lifestyle companies. The Company designs, develops and distributes branded apparel, footwear, accessories and related products. The Company began operations in 1976 making boardshorts for surfers in the United States under a license agreement with the *Quiksilver* brand founders in Australia. Today, the Company's business is rooted in the strong heritage and authenticity of its core brands, *Quiksilver*, *Roxy*, and *DC*, each of which caters to the casual, outdoor lifestyle associated with surfing, skateboarding, snowboarding, and motocross, among other activities.

2

The Company's products are sold in over 115 countries through a wide range of distribution points, including wholesale accounts (surf shops, skate shops, snow shops, sporting goods stores, discount centers, specialty stores, select department stores, and licensed stores), Company-owned retail stores, and its e-commerce websites.  The Debtors comprise each of the Company's U.S. entities, including parent, ZQK, as well as QS Wholesale, Inc., QS Retail, Inc., DC Shoes, Inc., and seven inactive entities.

8.      Additional factual background information regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to these Chapter 11 Cases, is set forth in detail in the Declaration of Andrew Bruenjes, Americas Chief Financial Officer of Quiksilver, Inc., in Support of Chapter 11 Petitions and First Day Pleadings [Docket No. 20], filed with the Court on the Petition Date.

## RELIEF REQUESTED

9.      The Debtors customarily retain the services of various attorneys, accountants, auditors, consultants, public relations specialists, and other professionals to represent them in matters arising in the ordinary course of their businesses, unrelated to these Chapter 11 Cases (the "Ordinary Course Professionals").  A list of the Debtors' current Ordinary Course Professionals is attached to the proposed Order as Exhibit 1.  As discussed more fully below, the Debtors reserve the right to supplement such list in the future.

10.      By this Motion, the Debtors seek authorization (a) to retain the Ordinary Course Professionals under Bankruptcy Code sections 105(a) and 327 without the necessity of a separate, formal retention application approved by this Court for each Ordinary Course Professional; and (b) to pay the Ordinary Course Professionals under Bankruptcy Code sections

330 and 331 for postpetition services rendered and expenses incurred, subject to certain limits set forth below, without the necessity of additional Court approval.[2]

11.     Although the Debtors believe that certain of the Ordinary Course Professionals are not "professional persons" as contemplated by Bankruptcy Code section 327 and, thus, that no retention or payment authorization is necessary, out of an abundance of caution, the Debtors seek an order authorizing the retention and payment of all Ordinary Course Professionals.

12.     Although certain of the Ordinary Course Professionals may hold unsecured claims against the Debtors, the Debtors do not believe that any of the Ordinary Course Professionals has an interest materially adverse to the Debtors, their estates, creditors, or shareholders, with respect to the matters on which they are retained.

13.     For the reasons set forth herein, the Debtors submit that the relief requested is in the best interest of the Debtors, their estates, creditors, stakeholders and other parties in interest, and therefore, should be granted.

**BASIS FOR RELIEF**

14.     The Debtors desire to continue to employ and retain the services of the Ordinary Course Professionals while operating as debtors in possession under the Bankruptcy Code, in order to enable them to continue normal business activities that are essential to their restructuring efforts.  Moreover, the Ordinary Course Professionals provide services such as legal, accounting, tax, consulting, and public relations support, which are critical to the successful operations of the Debtors' businesses during the pendency of the Chapter 11 Cases.

---

[2]     In contrast, individual retention applications will be filed for professionals that the Debtors have employed in connection with the conduct of these Chapter 11 Cases or in connection with special matters not appropriate for ordinary course treatment (the "Chapter 11 Professionals").  The Chapter 11 Professionals will be permitted to be compensated and reimbursed only in accordance with procedures approved by this Court.

Any disruption would be harmful to the Debtors' businesses and detrimental to the Debtors' estates.  Thus, the Debtors believe that the work of the Ordinary Course Professionals is directly related to the preservation of the value of the Debtors' estates and that the value of such services substantially outweighs the amount of fees and expenses incurred by the Ordinary Course Professionals.

15.    Given the number of Ordinary Course Professionals and the importance of their services to the daily operations of the Debtors' business, it would hinder the administration of the Debtors' Chapter 11 Cases if the Debtors were required (a) to submit to the Court an application, affidavit and proposed retention order for each Ordinary Course Professional; (b) to wait until such order is approved before such Ordinary Course Professional continues to render services; and (c) to withhold payment of the normal fees and expenses of the Ordinary Course Professionals until they comply with the compensation and reimbursement procedures applicable to Chapter 11 Professionals.

16.    Moreover, requiring the Ordinary Course Professionals to file retention pleadings and participate in the payment approval process along with the Chapter 11 Professionals would unnecessarily burden the Court and the U.S. Trustee, while adding significantly to the administrative costs of these cases without any corresponding benefit to the Debtors' estates.  Accordingly, the Debtors request that they be permitted to employ and retain the Ordinary Course Professionals on terms substantially similar to those in effect prior to the Petition Date, but subject to the procedures described below.

## PROPOSED RETENTION PROCEDURE

17.    By this Motion, the Debtors request that they be permitted to employ and retain the Ordinary Course Professionals without submitting separate applications for, and

obtaining separate orders approving, retention of each of the professionals.  The Debtors

recognize, however, the importance of providing information regarding Ordinary Course

Professionals to the Court and the U.S. Trustee.  Accordingly, the Debtors propose the following

procedures for retention of the Ordinary Course Professionals.

## A.      Submission of OCP Declarations

18.      The Debtors propose that they be permitted to continue to employ and

retain all Ordinary Course Professionals identified on Exhibit 1.

19.      Within one business day after the date of entry of the an order granting

this Motion (the "Order") or as soon as practicable thereafter, the Debtors shall serve the Order

via email upon each initial Ordinary Course Professional.  Thereafter, no later than two weeks

after the date of entry of the Order, each initial Ordinary Course Professional shall be required to

provide to the Debtors and Debtors' counsel, for filing with the Court and service upon (a)

United States Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801, Attn: Mark

Kenney, Esq.; (b) counsel to the agent for the Debtors' postpetition secured loan facilities (the

"DIP Agents"):  (i) Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois, 60654,

Attn: Patrick J. Nash, Jr., Ross M. Kwasteniet, and William A. Guerrieri, (ii) Riemer &

Braunstein, Three Center Plaza, Boston, Massachusetts 02108, Attn: Steven Fox, Esq., (iii)

Womble Carlyle Sandridge & Rice, LLP, 222 Delaware Ave., Suite 1501, Wilmington,

Delaware 19801, Attn: Steven Kortanek, Esq.; (c)  agent for the Debtors' prepetition senior

secured notes and prepetition senior unsecured notes, U.S. Bank National Association, Global

Corporate Trust Services, Mailcode: EP-MN-WS3C, 60 Livingston Ave., St. Paul, MN 55107-

2292, Attn: Rich Prokosch, Vice President, Account Manager; (d) counsel to any official

committee appointed in these Chapter 11 Cases (each, a "Committee"); and (e) the undersigned

counsel for the Debtors (collectively, the "Notice Parties"), a completed declaration (an "OCP Declaration") substantially in the form attached to the Order as Exhibit 2.

20.     The Debtors further request that upon service of the OCP Declaration, the Notice Parties will have fourteen (14) days (the "Objection Deadline") to object to the retention of the Ordinary Course Professional in question.  Any such objection must be filed with the Court and served upon (a) the Ordinary Course Professional, and (b) the Notice Parties, on or before the Objection Deadline.  If any such objection cannot be resolved and withdrawn within fourteen (14) days after service, the matter will be scheduled for hearing before the Court on the next regularly scheduled hearing date or other date otherwise agreeable to the Ordinary Course Professional, the Debtors, and the objecting party.  If no objection is received by the Objection Deadline, or if an objection is withdrawn, the Debtors will be authorized to retain the Ordinary Course Professional as a final matter without further order of the Court, *nunc pro tunc* to the Petition Date or, if later, the date of engagement.

**B.      Additional Ordinary Course Professionals**

21.     The Debtors request that they be authorized to employ and retain additional Ordinary Course Professionals, not currently listed on Exhibit 1, as future circumstances require (the "Additional Ordinary Course Professionals"), without the need to file individual retention applications or provide further hearing or notice to any party, by filing with the Court a supplement to Exhibit 1 (a "Supplement") and serving a copy of the Supplement upon the Notice Parties.

22.     The Debtors propose that, as with the Ordinary Course Professionals, each Additional Ordinary Course Professional be required to file and serve an OCP Declaration within two weeks after the filing of the Supplement.  The Notice Parties then would be given fourteen (14) days after service of the OCP Declaration to object to the retention of the Additional

Ordinary Course Professional in question.  Any objection would be handled as set forth above. If no objection is submitted, or the objection is withdrawn, the Debtors would be authorized to retain the Additional Ordinary Course Professional as a final matter without further order of the Court, *nunc pro tunc* to the Petition Date or, if later, the date of engagement.

**PROPOSED PAYMENT PROCEDURE**

23.    The Debtors seek authority to pay, without formal application to and order from the Court, the fees and expenses of each Ordinary Course Professional upon submission to, and approval by, the Debtors of an appropriate invoice setting forth in reasonable detail the nature of the postpetition services rendered and expenses incurred.  The Debtors, however, recognize that bills exceeding certain dollar amounts should be subject to the approval procedures otherwise applicable to Chapter 11 Professionals.  Accordingly, the Debtors propose the following procedures for payment of the Ordinary Course Professionals.

**A.    Monthly Payment Caps**

24.    The Debtors propose that they be permitted to pay, without formal application to the Court by any Ordinary Course Professional, fees and expenses not exceeding a total of $100,000.00 per month for each Ordinary Course Professional, or $400,000.00 in any given month on an aggregate basis, unless additional payments are authorized for any month by agreement of the U.S. Trustee, any Committee, and the DIP Agents.  The Debtors propose to except from such monthly limitations any contingent fee amounts received by Ordinary Course Professionals from recoveries realized on the Debtors' behalf.  Thus, the limitations would apply only to direct disbursements by the Debtors.

25.    The Debtors will carefully review all bills received from the Ordinary Course Professionals to ensure that the fees charged are reasonable and that the expenses

8

incurred are necessary and provide copies of such bills to the U.S. Trustee, any Committee, and the DIP Agent.  This type of review, coupled with the proposed monthly payment caps, will protect the Debtors' estates against excessive and improper billings.

**B.    Periodic Statements Of Payments Made**

26.    The Debtors further propose to file with the Court and serve upon the Notice Parties a periodic payment summary, including the following information for each Ordinary Course Professional: (a) the name of the Ordinary Course Professional; (b) the aggregate amounts paid as compensation for services rendered and reimbursement of expenses incurred by such Ordinary Course Professional during the statement period; and (c) a general description of the services rendered by such Ordinary Course Professional.  Each such payment summary would cover a three-month period and would be filed and served by the last day of the month following the end of each such three-month period.  The first payment summary shall cover the period from the Petition Date through November 30, 2015.

### APPLICABLE AUTHORITY

27.    The Debtors do not believe that the Ordinary Course Professionals are "professionals" within the meaning of Bankruptcy Code section 327 because the Ordinary Course Professionals' employment relates only indirectly to the Debtors' status as debtors in possession.  Specifically, the Ordinary Course Professionals will not be involved in administering these Chapter 11 Cases and, therefore, retention does not require court approval. See In re Am. Tissue, Inc., 331 B.R. 169, 173 (Bankr. D. Del 2005) (discussing the factors to consider when determining whether an entity or person is a "professional"); In re First Merchs. Acceptance Corp., Case No. 97-1500, 1997 WL 873551, at *3 (D. Del. Dec. 15, 1997) (discussing the factors to be considered in determining whether a person is a professional under Bankruptcy Code section 327); Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-

Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 619 (Bankr. S.D.N.Y. 1986) (finding

that "professional persons" as used in Bankruptcy Code section 327(a) "is a term of art reserved

for those persons who play an intimate role in the reorganization of a debtor's estate"); In re

Seatrain Lines, Inc., 13 B.R. 980, 981 (Bankr. S.D.N.Y. 1981) (finding that "professional

person" as used in Bankruptcy Code section 327(a) refers only to "persons in those occupations

which play a central role in the administration of the debtor proceeding"); Elstead v. Nolden (In

re That's Entm't Mktg. Grp., Inc.), 168 B.R. 226, 230-31 (N.D. Cal. 1994) (only retention of

professionals whose duties are central to administration of estate requires prior court approval

under Bankruptcy Code section 327); In re Madison Mgmt. Group, Inc., 137 B.R. 275, 283

(Bankr. N.D. Ill. 1992) (same) (citations omitted); In re D'Lites of Am., Inc., 108 B.R. 352, 355

(Bankr. N.D. Ga. 1989) (Bankruptcy Code section 327 approval not necessary for one who

provides services to debtor that are necessary regardless of whether petition was filed).

   28. Nevertheless, out of an abundance of caution, the Debtors seek the relief

requested in this Motion to avoid any later controversy about the Debtors' employing and paying

the Ordinary Course Professionals during the pendency of these Chapter 11 Cases.  As noted

above, the Debtors will seek specific court authority under Bankruptcy Code section 327 to

employ the Chapter 11 Professionals involved in the actual administration of these Chapter 11

Cases.

   29. The relief requested herein is commonly granted in this District.  See, e.g.,

In re Dendreon Corp., Case No. 14-12515 (PJW) (Bankr. D. Del. Dec. 9, 2014); In re Synagro

Tech., Inc., Case No. 13-11041 (BLS) (Bankr. D. Del. May 28, 2013); In re Pemco World Air

Servs., Inc., Case No. 12-10799 (MFW) (Bankr. D. Del. Apr. 3, 2012); In re Buffets Rests.

Holdings, Inc., Case No. 12-10237 (MFW) (Bankr. D. Del. Feb. 14, 2012); In re Lee Enters.,

Inc., Case No. 11-13918 (KG) (Bankr. D. Del. Jan. 12, 2012).[3]

### IMMEDIATE RELIEF IS NECESSARY TO AVOID IMMEDIATE AND IRREPARABLE HARM

30.     Bankruptcy Rule 6003 provides that the relief requested in this Motion

may be granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R.

Bankr. P. 6003; see also In re First NLC Fin. Servs., LLC, 382 B.R. 547, 549 (Bankr. S.D. Fla.

2008) (holding that Rule 6003 permits entry of retention orders on an interim basis to avoid

irreparable harm). The Third Circuit has interpreted the language "immediate and irreparable

harm" in the context of preliminary injunctions. In that context, the court has instructed that

irreparable harm is a continuing harm which cannot be adequately redressed by final relief on the

merits and for which money damages cannot provide adequate compensation. See, e.g., Norfolk

S. Ry. Co. v. City of Pittsburgh, 235 Fed. App'x 907, 910 (3d Cir. 2007) (citing Glasco v. Hills,

558 F.2d 179, 181 (3d Cir. 1977)). Furthermore, the harm must be shown to be actual and

imminent, not speculative or unsubstantiated. See, e.g., Acierno v. New Castle County, 40 F.3d

645, 653-55 (3d Cir. 1994). The Debtors submit that for the reasons already set forth herein, the

relief requested in this Motion is necessary to avoid immediate and irreparable harm to the

Debtors.

### WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)

31.     The Debtors also request that the Court waive the stay imposed by

Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of

property other than cash collateral is stayed until the expiration of 14 days after entry of the

order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the

---

[3]     Because of the voluminous nature of the orders cited herein, they are not attached to the Motion. Copies of these orders, however, are available on request.

relief that the Debtors seek in this Motion is necessary for the Debtors to operate without interruption and to preserve value for their estates. Accordingly, the Debtors respectfully request that the Court waive the fourteen day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## RESERVATION OF RIGHTS

32.    Nothing contained herein is or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an assumption or rejection of any executory contract or unexpired lease pursuant to Bankruptcy Code section 365; or (e) otherwise affect the Debtors' rights under Bankruptcy Code section 365 to assume or reject any executory contract with any party subject to this Motion.

## NOTICE

33.    Notice of this Motion shall be given to (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the agent for the Debtors' postpetition secured loan facilities; (c) counsel to the agent for the Debtors' prepetition revolving loan facility; (d) the agent for the Debtors' prepetition senior secured notes; (e) the agent for the Debtors' prepetition senior unsecured notes; and (f) the parties listed in the consolidated list of thirty (30) largest unsecured creditors filed by the Debtors in these Chapter 11 Cases.  The Debtors submit that no other or further notice need be provided.

## NO PRIOR REQUEST

34.    No previous request for the relief sought herein has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated:    Wilmington, Delaware
          September 17, 2015

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

*/s/ Van C. Durrer, II*
Van C. Durrer, II (I.D. No. 3827)
Annie Z. Li
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071
Telephone: (213) 687-5000
Fax: (213) 687-5600

- and -

John K. Lyons
Jessica S. Kumar
155 N. Wacker Dr.
Chicago, Illinois 60606
Telephone: (312) 407-0700
Fax: (312) 407-0411

*Proposed Counsel for Debtors and Debtors in Possession*