**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| In re: | : Chapter 11 |
|  | : |
| QUIKSILVER, INC., *et al.*, | : Case No. 15-11880 (BLS) |
|  | : |
| Debtors.[1] | : Jointly Administered |
|  | : |
|  | : **Hearing Date: Oct. 6, 2015 at 10:00 a.m. (EST)** |
|  | **Obj. Deadline: Sept. 29, 2015 at 4:00 p.m. (EST)** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEBTORS' APPLICATION PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a), 327(a), AND 328(a), BANKRUPTCY RULES 2014 AND 2016, AND LOCAL BANKRUPTCY RULES 2014-1 AND 2016-2 (A) AUTHORIZING EMPLOYMENT AND RETENTION OF PETER J. SOLOMON COMPANY AS INVESTMENT BANKER FOR THE DEBTORS AND DEBTORS IN POSSESSION, *NUNC PRO TUNC* TO THE PETITION DATE, (B) WAIVING CERTAIN TIMEKEEPING REQUIREMENTS PURSUANT TO LOCAL BANKRUPTCY RULE 2016-2(h), <u>AND (C) GRANTING RELATED RELIEF</u>**

Quiksilver, Inc. ("<u>ZQK</u>") and certain of its affiliates, the debtors and debtors in possession in the above-captioned cases (collectively, the "<u>Debtors</u>" and, together with their non-Debtor affiliates, "<u>Quiksilver</u>" or the "<u>Company</u>") hereby apply (the "<u>Application</u>") to the Court for entry of an order, under sections 105(a), 327(a), and 328(a) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rules 2014-1 and 2016-2 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "<u>Local Bankruptcy Rules</u>"), (a) authorizing the Debtors to employ and retain Peter J. Solomon Company, L.P. and/or its affiliate Peter J. Solomon Securities Company, LLC (collectively, "<u>PJSC</u>") as the Debtors' investment banker, *nunc pro tunc* to the Petition Date (as defined below), in accordance with the terms and

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599).  The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

conditions set forth in the Engagement Letter (as defined below), (b) approving the provisions of the Engagement Letter, including, but not limited to, the proposed compensation arrangement and the indemnification, contribution, and reimbursement provisions set forth in the Engagement Letter, under section 328(a) of the Bankruptcy Code, (c) waiving certain timekeeping requirements pursuant to Local Bankruptcy Rule 2016-2(h), and (d) granting related relief.  In support of this Application, the Debtors rely upon and incorporate by reference the Declaration of Durc A. Savini, a Managing Director and Head of the Restructuring and Recapitalization Group of PJSC, in Support of the Application (the "Savini Declaration"), which is attached hereto as Exhibit A.  In further support of this Application, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Application under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Application in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are sections 105(a), 327(a), 328(a), and 1107(b) of the Bankruptcy Code.  Such relief is also warranted under Bankruptcy Rules 2014 and 2016 and Local Bankruptcy Rules 2014-1 and 2016-2(h).

3.      Pursuant to Local Bankruptcy Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to this Application if it is determined that Court would lack Article III jurisdiction to enter such final order or judgment absent the consent of the parties.

**BACKGROUND**

4.        On September 9, 2015 (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").  These Chapter 11 Cases are jointly administered.

5.        The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.        To date, no creditors' committee has been appointed in these Chapter 11 Cases by the Office of the United States Trustee for the District of Delaware (the "United States Trustee").  No trustee or examiner has been appointed in the Debtors' Chapter 11 Cases.

7.        Quiksilver is one of the world's leading outdoor sports lifestyle companies.  The Company designs, develops and distributes branded apparel, footwear, accessories and related products.  The Company began operations in 1976 making boardshorts for surfers in the United States under a license agreement with the *Quiksilver* brand founders in Australia. Today, the Company's business is rooted in the strong heritage and authenticity of its core brands, *Quiksilver*, *Roxy*, and *DC*, each of which caters to the casual, outdoor lifestyle associated with surfing, skateboarding, snowboarding, BMX, and motocross, among other activities. The Company's products are sold in over 115 countries through a wide range of distribution points, including wholesale accounts (surf shops, skate shops, snow shops, sporting goods stores, discount centers, specialty stores, select department stores, and licensed stores), Company-owned retail stores, and its e-commerce websites.  The Debtors comprise each of the Company's U.S. entities, including parent, ZQK, as well as QS Wholesale, Inc., QS Retail, Inc., DC Shoes, Inc. and seven inactive entities.

8.      Additional factual background information regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to these Chapter 11 Cases, is set forth in detail in the Declaration of Andrew Bruenjes, Americas Chief Financial Officer of Quiksilver, Inc., in Support of Chapter 11 Petitions and First Day Pleadings [Docket No. 20], filed with the Court.

## RELIEF REQUESTED

9.      By this Application, the Debtors seek entry of an order (a) authorizing the Debtors to employ and retain PJSC as their investment banker, *nunc pro tunc* to the Petition Date, in accordance with the terms and conditions of the Engagement Letter (defined below), (b) approving the provisions of the Engagement Letter, including, but not limited to, the proposed compensation arrangement and the indemnification, contribution, and reimbursement provisions set forth in the Engagement Letter, under section 328(a) of the Bankruptcy Code, (c) waiving certain timekeeping requirements pursuant to Local Bankruptcy Rule 2016-2(h), and (d) granting related relief, as more fully described below.

## PJSC'S QUALIFICATIONS

10.      PJSC is a leading independent investment banking firm that provides strategic and financial advisory services, including advisory services in connection with mid- to large-scale corporate restructuring transactions.  PJSC is principally owned and controlled by Peter J. Solomon, the firm's chairman.  PJSC currently has approximately 80 employees.  PJSC's professionals have extensive experience in providing financial advisory and investment banking services to companies across a range of industries as well as to financially distressed companies and creditors, equity holders, and other constituencies in reorganization proceedings and complex financial restructurings, both in and out of court.

11.     PJSC and/or certain of its professionals have been actively involved in major chapter 11 cases and have represented debtors in many cases, including, among others:  In re The Dolan Company, Case No. 14-10614 (BLS) (Bankr. D. Del. Apr. 15, 2014); In re MES Int'l, Inc., Case No. 09-14109 (Bankr. D. Del. Feb. 26, 2010); In re CD Liquidation Co., LLC, Case No. 09-13038 (Bankr. D. Del. Sept. 15, 2009); In re Lear Corp., Case No. 09-14326 (Bankr. S.D.N.Y. Aug. 25, 2009); In re Building Materials Holding Corp., Case No. 09-12074 (Bankr. D. Del. July 16, 2009); In re Eddie Bauer Holdings, Inc., Case No. 09-12099 (Bankr. D. Del. July 7, 2009); In re Polaroid Corp., Case No. 08-46617. (Bankr. D. Minn. Feb. 9, 2009); In re Tweeter Home Entm't Grp., Inc., Case No. 07-10787 (Bankr. D. Del. July 13, 2007); In re M. Fabrikant & Sons, Inc., Case No. 06-12737 (Bankr. S.D.N.Y. May 25, 2007); In re Dura Auto. Sys., Inc., Case No. 06-11202 (Bankr. D. Del. Dec. 6, 2006); In re Dana Corp., Case No. 06-10354 (Bankr. S.D.N.Y. March 9, 2006); In re J.L. French Auto. Castings, Inc., Case No. 06-10119 (Bankr. D. Del. March 22, 2006); In re AI Realty Marketing of New York, Inc., Case No. 01-40252 (Bankr. S.D.N.Y. Sept. 11, 2002).

12.     The Debtors have selected PJSC as their financial advisor and investment banker based upon, among other things:  (a) the Debtors' need to retain a skilled financial advisory firm to provide advice with respect to the Debtors' complex restructuring activities; (b) PJSC's extensive experience and excellent reputation in providing investment banking services in complex chapter 11 cases such as these; and (c) PJSC's extensive knowledge of the Debtors, as described below.  In light of the size and complexity of these Chapter 11 Cases, PJSC's resources, capabilities, and experience are crucial to the Debtors' successful restructuring.  An experienced investment banker and financial advisor such as PJSC fulfills a critical need that complements the services provided by the Debtors' other restructuring

professionals.  For these reasons, the Debtors require the services of a capable and experienced investment banker and financial advisor such as PJSC.

13.     Additional information about PJSC's qualifications and the background leading to the Debtors' engagement of PJSC is set forth in the Declaration of Durc A. Savini in Support of (A) Debtors' Application for Entry of Interim and Final Orders Pursuant to Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014 (I) Authorizing Postpetition Financing, (II) Granting Priming Liens and Providing Superpriority Administrative Expense Claims, (III) Authorizing Use of Cash Collateral, (IV) Providing for Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Scheduling a Final Hearing; and (B) Debtors' Application for Entry of an Order Authorizing and Approving (I) the Debtors' Assumption of the Plan Sponsor Agreement; and (II) the Payment of the Break-Up Fee and Related Transaction Expenses (the "Savini DIP Declaration") [Docket No. 19], filed with the Court.

## PJSC'S PREPETITION SERVICES

14.     On June 1, 2015, the Company retained PJSC as investment banker to explore and advise the Company with respect to a range of strategic alternatives.  PJSC has rendered investment banking services to the Debtors in connection with the evaluation of a range of strategic alternatives, including strategic sale transactions and refinancing and other capital raising transactions aimed at improving the Company's liquidity and overall financial condition.

15.     Among other things, following preliminary due diligence, and given PJSC's deep familiarity with the Company in connection with prior engagements, PJSC recommended that the Company explore a global refinancing of its existing indebtedness.  In mid-August 2015, as described in the Savini DIP Declaration, due to a lack of viable out-of-court alternatives, the Company and its advisors pivoted to evaluating a restructuring transaction in the

context of a chapter 11 case, as a continuation of the parallel contingency planning efforts that the Company had begun in the June/July 2015 timeframe. Accordingly, PJSC entered into an amended engagement letter, as restated on September 4, 2015 (the "Engagement Letter"), a copy of which is attached to the Savini Declaration as Exhibit 1, to provide financial advisory and investment banking services in connection with the Debtors' potential restructuring.

16.    PJSC has been extensively involved in the Company's restructuring and reorganization efforts. PJSC has worked closely with the Debtors' management and other professionals retained by the Debtors with respect to these Chapter 11 Cases and has become well-acquainted with the Debtors' capital structure, liquidity needs, and business operations. PJSC was active in the negotiations of the restructuring framework outlined in the plan support agreement. In addition, PJSC participated in numerous meetings of the Company's Board of Directors during the period leading up to the Petition Date. Accordingly, PJSC has the necessary background to deal effectively and efficiently with many financial issues and problems that may arise in the context of the Debtors' Chapter 11 Cases.

17.    As a result of the prepetition work performed by PJSC on behalf of the Company, PJSC has acquired significant knowledge of the Company's financial situation, business operations, capital structure, key stakeholders, financing documents, and other related material information. During PJSC's engagement, PJSC has provided the following services, among others, to the Debtors in connection with their restructuring efforts:

- familiarized itself with the Debtors' assets and operations;

- analyzed the Debtors' liquidity and projected cash flows;

- examined and sought to implement potential strategic alternatives to deleverage the Debtors' balance sheet;

- assisted the Debtors in evaluating M&A alternatives;

- assisted the Debtors in evaluating financing alternatives;

- assisted the Debtors in facilitating extensive diligence for interested parties;

- assisted management in analyzing and negotiating various restructuring proposals;

- assisted the Debtors in negotiating material terms of a plan support agreement and the restructuring transactions contemplated therein; and

- provided additional investment banking services in preparation for the Debtors' chapter 11 filing.

18.    In providing these prepetition services to the Debtors, PJSC has committed significant effort and resources towards analyzing the Debtors' businesses, financial affairs, capital structure, operations, management, and related matters, and assisting the Debtors with their potential restructuring.  The Debtors therefore believe that PJSC is both well qualified and uniquely able to represent them in these Chapter 11 Cases in an efficient and timely manner.  Accordingly, the Debtors respectfully submit that the retention of PJSC as financial advisor and investment banker is in the best interests of the Debtors, their creditors, and all parties in interest.

## SERVICES TO BE PROVIDED

19.    As further set forth in the Engagement Letter, the Debtors have requested that PJSC serve as investment banker and financial advisor during the Chapter 11 Cases to perform a broad range of services (the "Services") on behalf of the Debtors, which include, to the extent requested by the Debtors, each of the following:[2]

a.    General Financial Advisory and Investment Banking Services.  PJSC will:

(i)    to the extent reasonably appropriate to the services contemplated by the Engagement Letter and feasible, familiarize itself with the

---

[2]    The summary provided herein is for illustrative purposes only and is subject to the Engagement Letter in all respects.  In the event of any inconsistency between the summary of Services as set forth herein and the Engagement Letter, the Engagement Letter shall control.  Capitalized terms used but not otherwise defined in this summary shall have the meanings ascribed to them in the Engagement Letter.

business, operations, properties, financial condition and prospects of the Company; and

(ii) if the Company determines to undertake a Restructuring, Financing and/or Sale advise and assist the Company in structuring and effecting the financial aspects of such a transaction or transactions, subject to the terms and conditions of the Engagement Letter.

b. <u>Restructuring Services</u>.  If the Company pursues a Restructuring, PJSC will:

(i) provide financial advice and assistance to the Company in developing and seeking approval of a Restructuring plan (as the same may be modified from time to time, a "<u>Plan</u>"), which may be a plan under chapter 11 of the Bankruptcy Code;

(ii) if requested by the Company, in connection therewith, provide financial advice and assistance to the Company in structuring any new securities to be issued under the Plan;

(iii) if requested by the Company, advise and assist the Company in negotiations with entities or groups affected by the Plan; and

(iv) if requested by the Company, participate in hearings before the Bankruptcy Court with respect to the matters upon which PJSC has provided advice, including, as relevant, coordinating with the Company's counsel with respect to testimony in connection therewith.

c. <u>Financing Services</u>.  If the Company pursues a Financing, PJSC will:

(i) provide financial advice and assistance to the Company in structuring and effecting a Financing, identify potential Investors (as defined below) and, at the Company's request, contact such Investors;

(ii) if PJSC and the Company deem it advisable, assist the Company in developing and preparing a memorandum to be used in soliciting potential Investors; and

(iii) if requested by the Company, advise and assist the Company in negotiations with potential Investors.

d. <u>Sale Services</u>.  If the Company pursues a Sale, PJSC will:

(i) provide financial advice and assistance to the Company in connection with a Sale, identify potential acquirers and, at the Company's request, contact such potential acquirers;

        (ii)     at the Company's request, assist the Company in preparing a memorandum to be used in soliciting potential acquirers; and

        (iii)    if requested by the Company, advise and assist the Company in negotiations with potential acquirers.

20.     The Services are necessary to enable the Debtors to maximize the value of their estates.  All of the Services will be undertaken at the request of the Debtors.

## PROFESSIONAL COMPENSATION

21.     PJSC's decision to advise and assist the Debtors in connection with these Chapter 11 Cases is subject to its ability to be retained in accordance with the terms of the Engagement Letter pursuant to section 328(a), and not section 330, of the Bankruptcy Code.

22.     Investment bankers such as PJSC do not typically charge for their services on an hourly basis.  Instead, they customarily charge a monthly advisory fee plus an additional fee that is contingent upon the occurrence of a specified type of transaction.  The Engagement Letter follows this custom in the investment banking industry and sets forth the monthly and transaction-based fees that are to be payable to PJSC.

23.     Subject to the Court's approval, the Debtors will compensate PJSC in accordance with the terms and conditions and at the times set forth in the Engagement Letter, which provides in relevant part for the following compensation structure (the "Fee Structure"):[3]

        a.     A monthly financial advisory fee of $150,000 (the "Monthly Advisory Fee"), payable in advance by the Company.  Fifty percent (50%) of the amount of any Monthly Advisory Fees paid to PJSC prior to the closing of any Restructuring or Sale will be credited against any Restructuring Transaction Fee or Sale Transaction Fee, as the case may be, payable under, and as defined in, subparagraph 23(b) or 23(c) below.

---

[3]   The summary provided herein is for illustrative purposes only and is subject to the Engagement Letter in all respects.  In the event of any inconsistency between the Fee Structure as set forth herein and the Engagement Letter, the Engagement Letter will control.  Capitalized terms used but not otherwise defined in this summary shall have the meanings ascribed to them in the Engagement Letter.

b.      If at any time during the term of this engagement or within the twelve full months following the termination of this engagement (including the term of this engagement, the "Fee Period"), (x) any Restructuring is consummated or (y)(1) an agreement in principle, definitive agreement or Plan to effect a Restructuring is entered into and (2) concurrently therewith or at any time thereafter (including following the expiration of the Fee Period), any Restructuring is consummated, PJSC shall be entitled to receive a transaction fee (a "Restructuring Transaction Fee"), contingent upon the consummation of a Restructuring and payable at the closing thereof, equal to $7,500,000.

c.      If at any time during the Fee Period, (x) any Sale is consummated or (y)(1) an agreement in principle or definitive agreement to effect a Sale is entered into, and (2) concurrently therewith or at any time thereafter (including following the expiration of the Fee Period) any Sale is consummated, PJSC shall be entitled to receive a transaction fee (a "Sale Transaction Fee"), contingent upon the consummation of a Sale and payable at the closing thereof, which shall be equal to the lesser of $7,500,000 or 1.50% of the total consideration received or realized by the Company in connection with such Sale, including but not limited to any credit bid of secured indebtedness or express assumption of liabilities. Notwithstanding anything to the contrary in the Engagement Letter, only one fee under subparagraph 23(b) or 23(c) hereof shall be payable under the Engagement Letter, and if both of such fees becomes payable to PJSC hereunder, the higher of such fees shall be paid to PJSC.

d.      In addition to any Restructuring Transaction Fee or Sale Transaction Fee that may become due under the Engagement Letter, if at any time during the Fee Period, the Company (x) consummates any Financing or (y)(1) the Company receives and accepts written commitments for one or more Financings (the execution by a potential financing source and the Company of a commitment letter or securities purchase agreement or other definitive documentation shall be deemed to be the receipt and acceptance of such written commitment) and (2) concurrently therewith or at any time thereafter (including following the expiration of the Fee Period) any Financing is consummated, the Company will pay to PJSC the following fees:

(i)     1.00% of the gross proceeds of any indebtedness issued in connection with a Financing that is secured by a first lien, including, without limitation, any DIP Financing;

(ii)    3.00% of the gross proceeds of any indebtedness issued in connection with a Financing that (x) is secured by a second or more junior lien, (y) is unsecured and/or (z) is subordinated or unitranche debt (i.e., combining different types of debt, such as senior and subordinated, into one instrument); and

(iii)    5.00% of the gross proceeds of any equity or equity-linked securities or obligations issued in connection with a Financing.

It is understood and agreed that if the proceeds of any such Financing are to be funded in more than one stage, PJSC shall be entitled to its applicable compensation hereunder upon the closing date of each stage even if one or more of such stages is consummated after the expiration of the Fee Period, so long as one or more of such stages is consummated during the Fee Period.

Notwithstanding anything to the contrary in this subparagraph 23(d), any Restructuring Transaction Fee or Sale Transaction Fee shall be reduced (but not below zero) by any DIP Financing fee paid by the Company to PJSC prior to the closing of a Restructuring or Sale, as the case may be, in the event that a provider of the DIP Financing associated with such DIP Financing fee is a sponsor of such Restructuring or an acquirer at such Sale, as the case may be.

24.    In addition to any fees payable by the Company to PJSC, the Company will reimburse PJSC on a monthly basis for its reasonable out-of-pocket expenses incurred in performing the Services, including all reasonable fees, disbursements and other charges of counsel to be retained by PJSC (without the requirement that the retention of such counsel be approved by the Bankruptcy Court) and of other consultants and advisors retained by PJSC with the Company's consent.  The aggregate amount of expenses subject to reimbursement under the Engagement Letter shall not exceed $100,000 without the prior written consent of the Company, which is not to be unreasonably withheld.

25.    The Company shall also reimburse PJSC, at such times as PJSC shall request, for any sales, use or similar taxes (including additions to such taxes, if any) arising in connection with any matter referred to or contemplated by, the Engagement Letter and actually paid by PJSC.

26.    The Debtors believe that the Fee Structure is comparable to compensation generally charged by investment banking firms of similar stature to PJSC for comparable engagements, both in and out of bankruptcy.  Furthermore, the Debtors believe that the Fee Structure is consistent with PJSC's normal and customary billing practices for cases of

comparable size and complexity that require the level and scope of services to be provided in

these Chapter 11 Cases.  Moreover, the Fee Structure has been agreed upon by the Debtors and

PJSC in anticipation that a substantial commitment of professional time and effort will be

required of PJSC and that the actual time and commitment required of PJSC and its professionals

to perform its services hereunder may vary substantially from week to week or month to month,

creating "peak load" issues for PJSC.

   27. PJSC's restructuring expertise, as well as its capital markets knowledge,

financing skills, and mergers and acquisitions capabilities, some or all of which may be required

by the Debtors during the term of PJSC's engagement hereunder, were important factors in

determining the Fee Structure.  The Debtors believe that the ultimate benefit of PJSC's services

hereunder could not be measured merely by reference to the number of hours to be expended by

PJSC's professionals in the performance of such services.  The Debtors believe that the Fee

Structure is fair, reasonable, and market-based under the standards set forth in section 328(a) of

the Bankruptcy Code given (i) the numerous issues that PJSC may have to address in performing

its services for the Debtors, (ii) PJSC's commitment to the variable level of time and effort

necessary to address all such issues as they arise, and (iii) the market prices for PJSC's services

for engagements of this nature, both out-of-court and in a chapter 11 context.

   28. Notwithstanding approval of the Engagement Letter under section 328(a)

of the Bankruptcy Code, PJSC will apply to the Court for allowance of compensation for

professional services rendered and reimbursement of expenses incurred in connection with these

Chapter 11 Cases, subject to the Court's approval and in accordance with the procedures set forth

in the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local

Bankruptcy Rules, as those procedures may be modified or supplemented by order of this Court,

including any order granting this Application (to the extent compliance is not waived).  As more

fully described below, the Debtors believe that the Court should approve PJSC's retention

subject to the standard of review set forth in section 328(a) of the Bankruptcy Code and that

PJSC's compensation should not be subject to any additional standard of review under section

330 of the Bankruptcy Code.

### RECORD KEEPING AND APPLICATIONS FOR COMPENSATION

29.    Local Bankruptcy Rule 2016-2(d) imposes certain information

requirements on professionals' compensation requests, including that professionals report their

billed activities in one-tenth of an hour increments, that all activity descriptions be divided into

general project categories, that each activity include a time allotment, and certain billing

requirements tied to an assumed schedule of hourly rates, among others.  Local Bankruptcy Rule

2016-2(h), however, provides that "[a]n employed professional person or entity within the scope

of this Local Rule may request that the Court waive, for cause, one or more of the information

requirements of this Local Rule" in the motion seeking to court approval for the retention of such

professional entity.

30.    The Debtors and PJSC submit that there exists cause to waive the

information requirements imposed by Local Bankruptcy Rule 2016-2(d) with respect to PJSC's

compensation requests and record keeping.  It is not the general practice of investment banking

firms, including PJSC, to keep detailed time records similar to those customarily kept by

attorneys and required by Local Bankruptcy Rule 2016-2(d).  PJSC does not ordinarily maintain

contemporaneous time records in in one-tenth hour increments, provide or conform to a schedule

of hourly rates for its professionals, or maintain records on a "project category" basis.  Therefore,

pursuant to Local Bankruptcy Rule 2016-2(h), PJSC is seeking to be excused from compliance

with such information requirements set forth in Local Bankruptcy Rule 2016-2(d) in relation to

its compensation requests.  As set forth in the Savini Declaration, PJSC believes that it would be

unduly burdensome and time-consuming for PJSC's restructuring personnel to record their

activities in compliance with the information requirements set forth in Local Bankruptcy Rule

2016-2(d).  PJSC requests authority to maintain time records in one-half hour increments setting

forth, in a summary format, a description of the services rendered by each professional and the

amount of time spent on each date by each such individual in rendering services on behalf of the

Debtors.

### REQUEST FOR APPROVAL OF PJSC'S RETENTION
### *NUNC PRO TUNC* AS OF THE PETITION DATE

31.     Additionally, by this Application, the Debtors request approval of the

retention and employment of PJSC *nunc pro tunc* to the Petition Date.  Such relief is warranted

by the extraordinary circumstances presented by these cases.  The Third Circuit has identified

"time pressure to begin service" and absence of prejudice as factors favoring *nunc pro tunc*

retention.  See Matter of Arkansas Co., 798 F.2d 645, 650 (3d Cir. 1986); see also In re Indian

River Homes, Inc., 108 B.R. 46, 52 (D. Del. 1989).  The complexity, intense activity, and speed

that have characterized these cases has necessitated that PJSC focus its immediate attention on

time-sensitive matters and promptly devote substantial resources to the affairs of the Debtors

pending submission and approval of this Application.

### INDEMNIFICATION PROVISIONS

32.     The Engagement Letter provides that the Debtors owe certain

indemnification, contribution, and reimbursement obligations to PJSC, its affiliates and their

respective directors, officers, agents, and employees (collectively, the "Indemnified Parties").

The provisions governing the Debtors' and PJSC's indemnification, contribution, and

reimbursement rights and obligations (the "Indemnification Provisions") are attached to and

made a part of the Engagement Letter.  The Indemnification Provisions were fully negotiated

between the Debtors and PJSC at arm's length.  The Debtors and PJSC believe that, subject to

the modifications set forth in the Order, the Indemnification Provisions are customary and

reasonable for investment banking engagements, both in chapter 11 cases and outside chapter 11,

and reflect the qualifications and limitations on indemnification provisions that are customary in

this district.  See, e.g., In re The Dolan Company, Case No. 14-10614 (BLS) (Bankr. D. Del.

Apr. 14, 2014) (approving indemnification provisions as part of retention of an investment

banker); In re Physiotherapy Holdings, Inc., Case. No. 13-12965 (KG) (Bankr. D. Del. Dec. 18,

2013); In re Longview Power, LLC, No. 13-12211 (BLS) (Bankr. D. Del. Sept. 24, 2013)

(same); In re Exide Technologies, Inc., Case No. 13-11482 (Bankr. D. Del. July 10, 2013)

(same); In re Geokinetics, Inc., Case No. 13-10472 (KJC) (Bankr. D. Del. Apr. 2, 2013) (same);

In re Vertis Holdings, Inc., No. 12-12821 (Bankr. D. Del. Nov. 20, 2012) (same).[4]

## EFFORTS TO AVOID DUPLICATION OF SERVICES

33.    The Debtors believe that the services PJSC will provide will be

complementary, rather than duplicative, of the services to be performed by other professionals in

these Chapter 11 Cases.  The Debtors will coordinate with PJSC and the Debtors' other

professionals to minimize unnecessary duplication of effort among the Debtors' professionals.

## PJSC'S DISINTERESTEDNESS

34.    PJSC has reviewed the list of parties in interest provided by the Debtors.

To the best of the Debtors' knowledge, information, and belief, and except to the extent

disclosed herein and in the Savini Declaration, PJSC:  (a) does not hold any interest materially

adverse to the Debtors' estates; (b) has no connection with the Debtors, their creditors, equity

---

[4]    Because of the voluminous nature of the orders cited herein, they are not attached to this Application.  Copies of
these orders, however, are available on request.

security holders, or related parties herein; and (c) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code (as modified by section 1107(b) of the Bankruptcy Code).  The Debtors' knowledge, information, and belief regarding the matters set forth herein are based, and made in reliance, upon the Savini Declaration.

35.    Given the large number of parties in interest in these Chapter 11 Cases, despite the efforts to identify and disclose PJSC's relationships with parties in interest in these Chapter 11 Cases, PJSC is unable to state with certainty that every client relationship or other connection has been disclosed in the Savini Declaration.  The Debtors have been informed that PJSC will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new material facts or relationships are discovered or arise, PJSC will promptly inform the Court as required by Local Bankruptcy Rule 2014-1(a).

36.    In the 90-day period prior to the Petition Date, PJSC received from the Debtors a $300,000 prepetition retainer, $250,000 in monthly advisory fees, and $91,519 on account of expense reimbursements.  Although PJSC's records indicate that it is not owed any amounts in respect of prepetition services provided to the Debtors, the Debtors understand that PJSC's prepetition fees and expenses for the billing period preceding the Petition Date may not have been fully accounted for as of the date hereof.  PJSC has informed the Debtors that as promptly as practicable after all fees and charges accrued prior to the Petition Date have finally been posted, PJSC will issue a final prepetition bill statement for any unpaid fees and charges for the period prior to the Petition Date (the "Final Prepetition Bill Amount").  Subject to any orders of the Court, PJSC will reconcile the Final Prepetition Bill Amount with any remaining prepetition retainer amounts to pay PJSC's prepetition invoices.  To the extent that reconciliation of the amount of the prepetition invoices (the "Reconciliation Amount") is less than the

remaining retainer, the Debtors and PJSC have agreed that PJSC will hold the full amount of the difference as a postpetition retainer to be applied against postpetition expenses.  In the event that the Final Prepetition Bill Amount exceeds the remaining retainer amounts, PJSC has agreed to waive any resulting prepetition claim against the Debtors for payment with respect to the amount by which the Reconciliation Amount exceeds the retainer.

37.     As set forth in the Savini Declaration, PJSC has not shared or agreed to share any of its compensation from the Debtors with any other person except as permitted by section 504 of the Bankruptcy Code.

**BASIS FOR RELIEF**

38.     The Debtors seek authority to employ and retain PJSC as their investment banker under section 327(a) of the Bankruptcy Code, which provides that a debtor, subject to court approval, "[m]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist . . . in carrying out . . . duties under [the Bankruptcy Code]."  11 U.S.C. § 327(a).  Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code in cases under chapter 11 of the Bankruptcy Code and provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case."  11 U.S.C. § 1107(b).

39.     In addition, the Debtors seek approval of the Engagement Letter (including its Indemnification Provisions as well as all compensation as set forth in the Engagement Letter, including, without limitation, the Monthly Advisory Fee, the Restructuring Transaction Fee, the Sale Transaction Fee, and the Financing fees) pursuant to section 328(a) of

the Bankruptcy Code, which provides, in relevant part, that the Debtors "with the court's

approval, may employ or authorize the employment of a professional person under section

327…on any reasonable terms and conditions of employment, including on retainer, on an

hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis" subject to later re-

evaluation by the Court.  11 U.S.C. § 328(a).  Accordingly, section 328 of the Bankruptcy Code

permits the compensation of professionals, including investment bankers, on more flexible terms

that reflect the nature of their services and market conditions.  As the United States Court of

Appeals for the Fifth Circuit recognized in Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l

Gypsum (In re Nat'l Gypsum Co.):

> Prior to 1978 the most able professionals were often unwilling to work for
> bankruptcy estates where their compensation would be subject to the uncertainties
> of what a judge thought the work was worth after it had been done.  That
> uncertainty continues under the present § 330 of the Bankruptcy Code, which
> provides that the court award to professional consultants "reasonable
> compensation" based on relevant factors of time and comparable costs, etc.
> Under present § 328 the professional may avoid that uncertainty by obtaining
> court approval of compensation agreed to with the trustee (or debtor or
> committee).

123 F.3d 861, 862 (5th Cir. 1997) (internal citations and emphasis omitted), cited in Riker,

Danzig, Scherer, Hyland & Perretti LLP v. Official Comm. of Unsecured Creditors (In re Smart

World Techs. LLC), 383 B.R. 869, 874 (S.D.N.Y. 2008).

40.     Bankruptcy Rule 2014 requires that an application for retention include

"specific facts showing the necessity for the employment, the name of the [firm] to be employed,

the reasons for the selection, the professional services to be rendered, any proposed arrangement

for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections

with the debtor, creditors, any other party in interest, their respective attorneys and accountants,

the United States trustee, or any person employed in the office of the United States trustee."  Fed.

R. Bankr. P. 2014.  The Debtors respectfully submit that this Application, the Savini Declaration, and the Engagement Letter set forth the information required under Bankruptcy Rule 2014.

41.    The Debtors respectfully submit that they should be authorized to retain and employ PJSC in accordance with the terms and conditions of the Engagement Letter.  First, as discussed above and in the Savini Declaration, PJSC satisfies the disinterestedness standard in section 327(a) of the Bankruptcy Code.  Moreover, during the course of its months-long engagement, PJSC has become familiar with the Debtors' business operations, capital structure, financing documents, and other material information, and has already committed a significant amount of time and effort with respect to the transactions contemplated under the plan support agreement.  PJSC's services are needed postpetition to continue to assist with negotiations, as necessary, to provide expert advice and testimony regarding financial matters related to the proposed transactions, and to enable the Debtors to discharge their duties as debtors and debtors in possession.  PJSC has extensive experience and an excellent reputation in providing high-quality investment banking services to debtors and creditors in bankruptcy reorganizations and other restructurings.  The Debtors believe that PJSC is well-qualified to provide its services to the Debtors in a cost-effective, efficient, and timely manner.

42.    Additionally, given the numerous issues that PJSC may be required to address in the performance of its services for the Debtors, under the Engagement Letter, PJSC's commitment to the variable level of time and effort necessary to address all such issues as they arise and the market prices for PJSC's services for engagements of this nature, the Debtors believe that the terms and conditions of the Engagement Letter are fair, reasonable, and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

43.     The Company believes that the Fee Structure appropriately reflects the nature and scope of services to be provided by PJSC, PJSC's substantial experience with respect to investment banking services, and the fee and expense structures typically utilized by PJSC and other leading investment banks that do not bill their clients on an hourly basis.  In particular, the Debtors believe the Fee Structure creates a proper balance between fixed, monthly fees, and contingency fees based on transactions in these Chapter 11 Cases.

44.     The Debtors submit that the employment and retention of PJSC, *nunc pro tunc* to the Petition Date and on the terms and conditions set forth herein and in the Engagement Letter, is in the best interest of the Debtors, their estates, creditors, stakeholders and other parties in interest, and therefore, should be approved.

## NOTICE

45.     Notice of this Application shall be given to (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the agent for the Debtors' postpetition secured loan facilities; (c) counsel to the agent for the Debtors' prepetition revolving loan facility; (d) the agent for the Debtors' prepetition senior secured notes; (e) the agent for the Debtors' prepetition senior unsecured notes; and (f) the parties listed in the consolidated list of thirty (30) largest unsecured creditors filed by the Debtors in these Chapter 11 Cases.  The Debtors submit that no other or further notice need be provided.

## NO PRIOR REQUEST

46.     No previous request for the relief sought herein has been made to this Court or any other court.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that this Court enter an order, substantially in the form annexed hereto, granting the relief sought herein and granting such other and further relief as may be just and proper.

Dated:    September 17, 2015
             Huntington Beach, California

                            QUIKSILVER, INC.
                            (on behalf of itself and the other Debtors)

                            By:    */s/ Andrew Bruenjes*
                            Name: Andrew Bruenjes
                            Title:   Americas Chief Financial Officer