<u>**EXHIBIT A**</u>

**Savini Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
: 
In re:                                                         :        Chapter 11
                                                               :
QUIKSILVER, INC., *et al.*,                                    :        Case No. 15-11880 (BLS)
                                                               :
                                          Debtors.[1]          :        Jointly Administered
                                                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DECLARATION OF DURC A. SAVINI, A MANAGING DIRECTOR AND HEAD
OF THE RESTRUCTURING AND RECAPITALIZATION GROUP OF PJSC, IN
SUPPORT OF DEBTORS' APPLICATION PURSUANT TO BANKRUPTCY CODE
SECTIONS 105(a), 327(a), AND 328(a), BANKRUPTCY RULES 2014 AND 2016, AND
LOCAL BANKRUPTCY RULES 2014-1 AND 2016-2 (A) AUTHORIZING
EMPLOYMENT AND RETENTION OF PETER J. SOLOMON COMPANY AS
INVESTMENT BANKER FOR THE DEBTORS AND DEBTORS IN POSSESSION,
*NUNC PRO TUNC* TO THE PETITION DATE, (B) WAIVING CERTAIN
TIMEKEEPING REQUIREMENTS PURSUANT TO LOCAL BANKRUPTCY
RULE 2016-2(h), AND (C) GRANTING RELATED RELIEF**

I, Durc A. Savini, declare under penalty of perjury and pursuant to 28 U.S.C.

§ 1746 that the following is true and correct to the best of my knowledge and belief:

1.      I am a Managing Director and Head of the Restructuring and

Recapitalization Group of Peter J. Solomon Company, L.P. and Peter J. Solomon Securities

Company, LLC (collectively, "PJSC"), an investment banking firm with its principal office

located at 1345 Avenue of the Americas, New York, New York, 10105.

2.      I am duly authorized to make and submit this declaration (this

"Declaration") on behalf of PJSC in support of the Debtors' Application Pursuant to Bankruptcy

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:
Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc.
(8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505),
Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599).   The address of the Debtors'
corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

Code Sections 105(a), 327(a), and 328(a), Bankruptcy Rules 2014 and 2016, and Local

Bankruptcy Rules 2014-1 and 2016-2 (A) Authorizing Employment and Retention of Peter J.

Solomon Company as Investment Banker for the Debtors and Debtors in Possession, *Nunc Pro*

*Tunc* to the Petition Date, (B) Waiving Certain Timekeeping Requirements Pursuant to Local

Bankruptcy Rule 2016-2(h), and (C) Granting Related Relief (the "Application"),[2] filed

contemporaneously herewith by the above-captioned debtors and debtors in possession

(collectively, the "Debtors").  Except as otherwise noted, I have personal knowledge of the

matters set forth herein.

## PJSC's QUALIFICATIONS

3.      PJSC is a leading independent investment banking firm that provides

strategic and financial advisory services, including advisory services in connection with mid- to

large-scale corporate restructuring transactions.  PJSC is principally owned and controlled by

Peter J. Solomon, the firm's chairman.  PJSC currently has approximately 80 employees.  PJSC's

professionals have extensive experience in providing financial advisory and investment banking

services to companies across a range of industries as well as to financially distressed companies

and creditors, equity holders, and other constituencies in reorganization proceedings and

complex financial restructurings, both in and out of court.

4.      PJSC and/or certain of its professionals have been actively involved in

major chapter 11 cases and have represented debtors in many cases, including, among others:  In

re The Dolan Company, Case No. 14-10614 (BLS) (Bankr. D. Del. Apr. 15, 2014); In re MES

Int'l, Inc., Case No. 09-14109 (Bankr. D. Del. Feb. 26, 2010); In re CD Liquidation Co., LLC,

Case No. 09-13038 (Bankr. D. Del. Sept. 15, 2009); In re Lear Corp., Case No. 09-14326

---

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

(Bankr. S.D.N.Y. Aug. 25, 2009); In re Building Materials Holding Corp., Case No. 09-12074

(Bankr. D. Del. July 16, 2009); In re Eddie Bauer Holdings, Inc., Case No. 09-12099 (Bankr. D.

Del. July 7, 2009); In re Polaroid Corp., Case No. 08-46617. (Bankr. D. Minn. Feb. 9, 2009); In

re Tweeter Home Entm't Grp., Inc., Case No. 07-10787 (Bankr. D. Del. July 13, 2007); In re M.

Fabrikant & Sons, Inc., Case No. 06-12737 (Bankr. S.D.N.Y. May 25, 2007); In re Dura Auto.

Sys., Inc., Case No. 06-11202 (Bankr. D. Del. Dec. 6, 2006); In re Dana Corp., Case No. 06-

10354 (Bankr. S.D.N.Y. March 9, 2006); In re J.L. French Auto. Castings, Inc., Case No. 06-

10119 (Bankr. D. Del. March 22, 2006); In re AI Realty Marketing of New York, Inc., Case No.

01-40252 (Bankr. S.D.N.Y. Sept. 11, 2002).

     5.    The Debtors have selected PJSC as their financial advisor and investment

banker based upon, among other things:  (a) the Debtors' need to retain a skilled financial

advisory firm to provide advice with respect to the Debtors' complex restructuring activities;

(b) PJSC's extensive experience and excellent reputation in providing investment banking

services in complex chapter 11 cases such as these; and (c) PJSC's extensive knowledge of the

Debtors, as described below.  In light of the size and complexity of these Chapter 11 Cases, I

believe that PJSC's resources, capabilities, and experience are crucial to the Debtors' successful

restructuring.  An experienced investment banker and financial advisor such as PJSC fulfills a

critical need that complements the services provided by the Debtors' other restructuring

professionals.  Accordingly, I believe that PJSC and the professionals it employs are uniquely

qualified to advise the Debtors on the matters for which PJSC is proposed to be employed in a

cost effective, efficient, and timely manner.

     6.    Additional information about PJSC's qualifications and the background

leading to the Debtors' engagement of PJSC is set forth in the Declaration of Durc A. Savini in

Support of (A) Debtors' Application for Entry of Interim and Final Orders Pursuant to Sections

105, 361, 362, 363 and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014

(I) Authorizing Postpetition Financing, (II) Granting Priming Liens and Providing Superpriority

Administrative Expense Claims, (III) Authorizing Use of Cash Collateral, (IV) Providing for

Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Scheduling a Final Hearing;

and (B) Debtors' Application for Entry of an Order Authorizing and Approving (I) the Debtors'

Assumption of the Plan Sponsor Agreement; and (II) the Payment of the Break-Up Fee and

Related Transaction Expenses (the "Savini DIP Declaration") [Docket No. 19], filed with the

Court.

## PJSC'S PREPETITION SERVICES

7.      On June 1, 2015, the Company retained PJSC as investment banker to

explore and advise the Company with respect to a range of strategic alternatives.  PJSC has

rendered investment banking services to the Debtors in connection with the evaluation of a range

of strategic alternatives, including strategic sale transactions and refinancing and other capital

raising transactions aimed at improving the Company's liquidity and overall financial condition.

8.      Among other things, following preliminary due diligence, and given

PJSC's deep familiarity with the Company in connection with prior engagements, PJSC

recommended that the Company explore a global refinancing of its existing indebtedness.  In

mid-August 2015, as described in the Savini DIP Declaration, due to a lack of viable out-of-court

alternatives, the Company and its advisors pivoted to evaluating a restructuring transaction in the

context of a chapter 11 case, as a continuation of the parallel contingency planning efforts that

the Company had begun in the June/July 2015 timeframe.  Accordingly, PJSC entered into an

amended engagement letter, as restated on September 4, 2015 (the "Engagement Letter"), a copy

of which is attached hereto as <u>Exhibit 1</u>, to provide financial advisory and investment banking services in connection with the Debtors' potential restructuring.

9.      PJSC has been extensively involved in the Company's restructuring and reorganization efforts.  PJSC has worked closely with the Debtors' management and other professionals retained by the Debtors with respect to these Chapter 11 Cases and has become well-acquainted with the Debtors' capital structure, liquidity needs, and business operations. PJSC was active in the negotiations of the restructuring framework outlined in the plan support agreement.  In addition, PJSC participated in numerous meetings of the Company's Board of Directors during the period leading up to the Petition Date.  Accordingly, I believe that PJSC has the necessary background to deal effectively and efficiently with many financial issues and problems that may arise in the context of these Chapter 11 cases.

10.     As a result of the prepetition work performed by PJSC on behalf of the Company, PJSC has acquired significant knowledge of the Company's financial situation, business operations, capital structure, key stakeholders, financing documents, and other related material information.  During PJSC's engagement, PJSC has provided the following services, among others, to the Debtors in connection with their restructuring efforts:

- familiarized itself with the Debtors' assets and operations;

- analyzed the Debtors' liquidity and projected cash flows;

- examined and sought to implement potential strategic alternatives to deleverage the Debtors' balance sheet;

- assisted the Debtors in evaluating M&A alternatives;

- assisted the Debtors in evaluating financing alternatives;

- assisted the Debtors in facilitating extensive diligence for interested parties;

- assisted management in analyzing and negotiating various restructuring proposals;

- assisted the Debtors in negotiating material terms of a plan support agreement and the restructuring transactions contemplated therein; and

- provided additional investment banking services in preparation for the Debtors' chapter 11 filing.

11.     In providing these prepetition services to the Debtors, PJSC has committed significant effort and resources towards analyzing the Debtors' businesses, financial affairs, capital structure, operations, management, and related matters, and assisting the Debtors with their potential restructuring.  Therefore, I believe that PJSC is both well qualified and uniquely able to represent the Debtors in these Chapter 11 Cases in an efficient and timely manner.

**SERVICES TO BE PROVIDED**

12.     As further set forth in the Engagement Letter, the Debtors have requested that PJSC serve as investment banker and financial advisor during the Chapter 11 Cases to perform a broad range of services (the "Services") on behalf of the Debtors, which include, to the extent requested by the Debtors, each of the following, which will be undertaken at the request of the Debtors:[3]

a.     General Financial Advisory and Investment Banking Services.  PJSC will:

(i)     to the extent reasonably appropriate to the services contemplated by the Engagement Letter and feasible, familiarize itself with the business, operations, properties, financial condition and prospects of the Company; and

(ii)     if the Company determines to undertake a Restructuring, Financing and/or Sale advise and assist the Company in structuring and effecting the financial aspects of such a transaction or transactions, subject to the terms and conditions of the Engagement Letter.

---

[3]     The summary provided herein is for illustrative purposes only and is subject to the Engagement Letter in all respects.  In the event of any inconsistency between the summary of Services as set forth herein and the Engagement Letter, the Engagement Letter will control.  Capitalized terms used but not otherwise defined in this summary shall have the meanings ascribed to them in the Engagement Letter.

b.      <u>Restructuring Services</u>.  If the Company pursues a Restructuring, PJSC will:

(i)     provide financial advice and assistance to the Company in developing and seeking approval of a Restructuring plan (as the same may be modified from time to time, a "<u>Plan</u>"), which may be a plan under chapter 11 of the Bankruptcy Code;

(ii)    if requested by the Company, in connection therewith, provide financial advice and assistance to the Company in structuring any new securities to be issued under the Plan;

(iii)   if requested by the Company, advise and assist the Company in negotiations with entities or groups affected by the Plan; and

(iv)    if requested by the Company, participate in hearings before the Bankruptcy Court with respect to the matters upon which PJSC has provided advice, including, as relevant, coordinating with the Company's counsel with respect to testimony in connection therewith.

c.      <u>Financing Services</u>.  If the Company pursues a Financing, PJSC will:

(i)     provide financial advice and assistance to the Company in structuring and effecting a Financing, identify potential Investors (as defined below) and, at the Company's request, contact such Investors;

(ii)    if PJSC and the Company deem it advisable, assist the Company in developing and preparing a memorandum to be used in soliciting potential Investors; and

(iii)   if requested by the Company, advise and assist the Company in negotiations with potential Investors.

d.      <u>Sale Services</u>.  If the Company pursues a Sale, PJSC will:

(i)     provide financial advice and assistance to the Company in connection with a Sale, identify potential acquirers and, at the Company's request, contact such potential acquirers;

(ii)    at the Company's request, assist the Company in preparing a memorandum to be used in soliciting potential acquirers; and

(iii)   if requested by the Company, advise and assist the Company in negotiations with potential acquirers.

13.     As discussed above, PJSC has obtained valuable institutional knowledge of the Debtors' businesses and financial affairs as a result of providing prepetition services to the Debtors.  Thus, PJSC is both well-qualified and uniquely able to perform these Services and assist the Debtors in these Chapter 11 Cases.  Moreover, I believe that the Services are necessary to enable the Debtors to maximize the value of their estates.  I further believe that PJSC's Services, which will be undertaken at the request of the Debtors, will assist the Debtors in a successful outcome of these Chapter 11 Cases.

## PROFESSIONAL COMPENSATION

14.     Investment bankers such as PJSC do not typically charge for their services on an hourly basis.  Instead, they customarily charge a monthly advisory fee plus an additional fee that is contingent upon the occurrence of a specified type of transaction.  The Engagement Letter follows this custom in the investment banking industry and sets forth the monthly and transaction-based fees that are to be payable to PJSC.

15.     Subject to the Court's approval, the Debtors will compensate PJSC in accordance with the terms and conditions and at the times set forth in the Engagement Letter, which provides in relevant part for the following compensation structure (the "Fee Structure"):[4]

a.      A monthly financial advisory fee of $150,000 (the "Monthly Advisory Fee"), payable in advance by the Company.  Fifty percent (50%) of the amount of any Monthly Advisory Fees paid to PJSC prior to the closing of any Restructuring or Sale will be credited against any Restructuring Transaction Fee or Sale Transaction Fee, as the case may be, payable under, and as defined in, subparagraph 15(b) or 15(c) below.

b.      If at any time during the term of this engagement or within the twelve full months following the termination of this engagement (including the term of this engagement, the "Fee Period"), (x) any Restructuring is

---

[4]     The summary provided herein is for illustrative purposes only and is subject to the Engagement Letter in all respects.  In the event of any inconsistency between the Fee Structure as set forth herein and the Engagement Letter, the Engagement Letter will control.  Capitalized terms used but not otherwise defined in this summary shall have the meanings ascribed to them in the Engagement Letter.

consummated or (y)(1) an agreement in principle, definitive agreement or Plan to effect a Restructuring is entered into and (2) concurrently therewith or at any time thereafter (including following the expiration of the Fee Period), any Restructuring is consummated, PJSC shall be entitled to receive a transaction fee (a "<u>Restructuring Transaction Fee</u>"), contingent upon the consummation of a Restructuring and payable at the closing thereof, equal to $7,500,000.

c.      If at any time during the Fee Period, (x) any Sale is consummated or (y)(1) an agreement in principle or definitive agreement to effect a Sale is entered into, and (2) concurrently therewith or at any time thereafter (including following the expiration of the Fee Period) any Sale is consummated, PJSC shall be entitled to receive a transaction fee (a "<u>Sale Transaction Fee</u>"), contingent upon the consummation of a Sale and payable at the closing thereof, which shall be equal to the lesser of $7,500,000 or 1.50% of the total consideration received or realized by the Company in connection with such Sale, including but not limited to any credit bid of secured indebtedness or express assumption of liabilities. Notwithstanding anything to the contrary in the Engagement Letter, only one fee under subparagraph 15(b) or 15(c) hereof shall be payable under the Engagement Letter.

d.      In addition to any Restructuring Transaction Fee or Sale Transaction Fee that may become due under the Engagement Letter, if at any time during the Fee Period, the Company (x) consummates any Financing or (y)(1) the Company receives and accepts written commitments for one or more Financings (the execution by a potential financing source and the Company of a commitment letter or securities purchase agreement or other definitive documentation shall be deemed to be the receipt and acceptance of such written commitment) and (2) concurrently therewith or at any time thereafter (including following the expiration of the Fee Period) any Financing is consummated, the Company will pay to PJSC the following fees:

(i)      1.00% of the gross proceeds of any indebtedness issued in connection with a Financing that is secured by a first lien, including, without limitation, any DIP Financing;

(ii)     3.00% of the gross proceeds of any indebtedness issued in connection with a Financing that (x) is secured by a second or more junior lien, (y) is unsecured and/or (z) is subordinated or unitranche debt (i.e., combining different types of debt, such as senior and subordinated, into one instrument); and

(iii)    5.00% of the gross proceeds of any equity or equity-linked securities or obligations issued in connection with a Financing.

9

It is understood and agreed that if the proceeds of any such Financing are to be funded in more than one stage, PJSC shall be entitled to its applicable compensation hereunder upon the closing date of each stage even if one or more of such stages is consummated after the expiration of the Fee Period, so long as one or more of such stages is consummated during the Fee Period.

Notwithstanding anything to the contrary in this subparagraph 15(d), any Restructuring Transaction Fee or Sale Transaction Fee shall be reduced (but not below zero) by any DIP Financing fee paid by the Company to PJSC prior to the closing of a Restructuring or Sale, as the case may be, in the event that a provider of the DIP Financing associated with such DIP Financing fee is a sponsor of such Restructuring or an acquirer at such Sale, as the case may be.

16.    In addition to any fees payable by the Company to PJSC, the Company shall reimburse PJSC on a monthly basis for its reasonable out-of-pocket expenses incurred in performing the Services, including all reasonable fees, disbursements and other charges of counsel to be retained by PJSC (without the requirement that the retention of such counsel be approved by the Bankruptcy Court) and of other consultants and advisors retained by PJSC with the Company's consent.  The aggregate amount of expenses subject to reimbursement under the Engagement Letter shall not exceed $100,000 without the prior written consent of the Company, which is not to be unreasonably withheld.

17.    The Company shall also reimburse PJSC, at such times as PJSC shall request, for any sales, use or similar taxes (including additions to such taxes, if any) arising in connection with any matter referred to or contemplated by, the Engagement Letter and actually paid by PJSC.

18.    I believe that the Fee Structure is comparable to compensation generally charged by investment banking firms of similar stature to PJSC for comparable engagements, both in and out of bankruptcy.  Furthermore, the Fee Structure is consistent with PJSC's normal and customary billing practices for cases of comparable size and complexity that require the level and scope of services to be provided in these Chapter 11 Cases.  Moreover, the Fee

10

Structure has been agreed upon by the Debtors and PJSC in anticipation that a substantial

commitment of professional time and effort will be required of PJSC and that the actual time and

commitment required of PJSC and its professionals to perform its services hereunder may vary

substantially from week to week or month to month, creating "peak load" issues for PJSC.

       19.    PJSC's restructuring expertise, as well as its capital markets knowledge,

financing skills, and mergers and acquisitions capabilities, some or all of which may be required

by the Debtors during the term of PJSC's engagement hereunder, were important factors in

determining the Fee Structure.  I believe that the ultimate benefit of PJSC's services hereunder

could not be measured merely by reference to the number of hours to be expended by PJSC's

professionals in the performance of such services.  Accordingly, I believe that the Fee Structure

is fair, reasonable, and market-based under the standards set forth in section 328(a) of the

Bankruptcy Code given (i) the numerous issues that PJSC may have to address in performing its

services for the Debtors, (ii) PJSC's commitment to the variable level of time and effort

necessary to address all such issues as they arise, and (iii) the market prices for PJSC's services

for engagements of this nature, both out-of-court and in a chapter 11 context.

       20.    PJSC will apply for compensation for professional services rendered and

reimbursement of expenses incurred in connection with these Chapter 11 Cases, subject to the

Court's approval and in accordance with the procedures set forth in the applicable provisions of

the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, as those

procedures may be modified or supplemented by order of this Court, including any order

granting this Application (to the extent compliance is not waived).  I believe that the Court

should approve PJSC's retention subject to the standard of review set forth in section 328(a) of

the Bankruptcy Code and that PJSC's compensation should not be subject to any additional

standard of review under section 330 of the Bankruptcy Code.

21.     Other than as set forth above, there is no proposed arrangement between

the Debtors and PJSC for compensation to be paid in these Chapter 11 Cases.

## RECORD KEEPING AND APPLICATIONS FOR COMPENSATION

22.     I believe that there exists cause to waive the information requirements

imposed by Local Bankruptcy Rule 2016-2(d) with respect to PJSC's compensation requests and

record keeping.  It is not the general practice of investment banking firms, including PJSC, to

keep detailed time records similar to those customarily kept by attorneys and required under

Local Bankruptcy Rule 2016-2(d).  PJSC does not ordinarily maintain contemporaneous time

records in in one-tenth hour increments, provide or conform to a schedule of hourly rates for its

professionals, or maintain records on a "project category" basis.  Therefore, I believe there exists

cause to excuse PJSC from compliance with such information requirements relating to PJSC's

compensation requests, as it would be unduly burdensome and time-consuming for PJSC's

restructuring personnel to record their activities in compliance with the requirements set forth in

Local Bankruptcy Rule 2016-2(d).  PJSC requests authority to maintain time records in one-half

hour increments setting forth, in a summary format, a description of the services rendered by

each professional and the amount of time spent on each date by each such individual in rendering

services on behalf of the Debtors.

## INDEMNIFICATION

23.     The Engagement Letter provides that the Debtors owe certain

indemnification, contribution, and reimbursement obligations to PJSC, its affiliates and their

respective directors, officers, agents, and employees (collectively, the "Indemnified Parties").

The provisions governing the Debtors' and PJSC's indemnification, contribution, and

12

reimbursement rights and obligations (the "Indemnification Provisions") are attached to and

made a part of the Engagement Letter.  The Indemnification Provisions were fully negotiated

between the Debtors and PJSC at arm's length.  I believe that, subject to the modifications set

forth in the Order, the Indemnification Provisions are customary and reasonable for investment

banking engagements, both in chapter 11 cases and outside chapter 11, and reflect the

qualifications and limitations on indemnification provisions that are customary in this district and

other jurisdictions.

### DISCLOSURES CONCERNING CONNECTIONS WITH THE DEBTORS AND PARTIES IN INTEREST

24.    The Debtors have numerous creditors, equity holders, and other parties

with whom they maintain business relationships.  In connection with its proposed retention by

the Debtors in these Chapter 11 Cases, PJSC undertook to determine whether it had any conflicts

or other relationships that might cause it not to be disinterested or to hold or represent an interest

adverse to the Debtors.  Specifically, PJSC obtained from the Debtors and their representatives

the names of individuals and entities that may be parties in interest in these Chapter 11 Cases

(the "Potential Parties in Interest"), and such parties are listed on Schedule 1 attached hereto.  To

the extent that I have been able to ascertain to date that PJSC has been engaged within the last

two years or is currently engaged by any of the Potential Parties in Interest (or their affiliates, as

the case may be) in matters unrelated to these cases, such facts are disclosed on Schedule 2

attached hereto.  Schedule 2 also sets forth certain other relationships or connections that PJSC

has with certain Potential Parties in Interest.

25.    To the best of my knowledge and belief, PJSC has not represented any

Potential Parties in Interest in connection with matters relating to the Debtors, their estates,

assets, or businesses and will not represent other entities that are creditors of, or have other

13

relationships to, the Debtors in matters relating to these Chapter 11 Cases except as set forth herein.

26.     To the best of my knowledge and belief, insofar as I have been able to ascertain after reasonable inquiry, neither I, nor PJSC, nor any of its professional employees has any connection with the Debtors, their creditors, the United States Trustee, or any other Potential Parties in Interest in these Chapter 11 Cases or their respective attorneys or accounts, except as set forth on Schedule 2 and as follows:

- PJSC has rendered investment banking services to the Debtors since June 2015.  PJSC's records indicate that it is not owed any amounts for prepetition services provided to the Debtors, but the Debtors understand and have agreed to certain reconciliation procedures, set forth in paragraph 32 below, through which PJSC shall reconcile any unpaid prepetition fees and charges with any remaining prepetition retainer amounts.

- PJSC is a large investment banking firm and has likely provided services unrelated to the Debtors for companies and individuals that have conducted business in the past and/or currently conduct business with the Debtors, and who may be creditors of the Debtors.  To the best of my knowledge, information, and belief, PJSC's services to these parties were and are wholly unrelated to the Debtors, their estates or these Chapter 11 Cases.

- As part of its diverse activities, PJSC is involved in numerous cases, proceedings, and transactions involving many different professionals, including Skadden, Arps, Slate, Meagher & Flom LLP and Pachulski Stang Ziehl & Jones LLP (which are proposed counsel to the Debtors), some of whom may represent claimants and parties in interest in these Chapter 11 Cases.  Further, PJSC has in the past, and may in the future, be represented by several attorneys and law firms, some of whom may be involved in these Chapter 11 Cases.  Finally, PJSC has in the past, and will likely in the future, be working with or against other professionals involved in these Chapter 11 Cases in matters wholly unrelated to these Chapter 11 Cases.  Based upon my current knowledge of the professionals involved in these Chapter 11 Cases and to the best of my knowledge, none of these business relationships constitute interests adverse to the estates in matters upon which PJSC is to be employed and none are in connection with these Chapter 11 Cases.

- In addition, a member of the PJSC transaction team, Chris Moynihan, is the son of Brian Moynihan, the current Chairman and CEO of Bank of America, which is a current creditor of the Debtors.  PJSC and I do not believe that Mr.

Moynihan's familial relationship presents a conflict in these Chapter 11 Cases but have disclosed it out of an abundance of caution.

- PJSC has indirect affiliate relationships with numerous investment banking institutions located worldwide (the "Affiliated Entities"). However, none of the Affiliated Entities is being retained in connection with this engagement and none of the professionals or employees of the Affiliated Entities will provide services to the Debtor in connection with this engagement. None of the professionals or employees of PJSC has discussed or will discuss the Debtors' cases with any professional or employee of the Affiliated Entities. Thus, there has not been and will not be any flow of information between PJSC and any Affiliated Entity with respect to any matter pertaining to the Debtors or these Chapter 11 Cases. PJSC can make no representation as to the disinterestedness of the professionals or employees of the Affiliated Entities in respect of the Debtors' Chapter 11 Cases.

27.     To the best of my knowledge, information, and belief, insofar as I have been able to ascertain after reasonable inquiry, PJSC has not been retained to assist any entity or person other than the Debtors on matters relating to, or in direct connection with, these Chapter 11 Cases, except as otherwise disclosed herein. If PJSC's proposed retention by the Debtors is approved by this Court, PJSC will not accept any engagement or perform any service for any entity or person other than the Debtors in these Chapter 11 Cases. PJSC will, however, continue to provide professional service to entities or persons that may be creditors of the Debtors or parties in interest in these Chapter 11 Cases, provided that such services do not relate to, or have any direct connection with, these Chapter 11 Cases or the Debtors.

28.     I am not related or connected to and, to the best of my knowledge after reasonable inquiry, no other professional of PJSC who will work on this engagement is related or connected to, any United States Bankruptcy Judge for the District of Delaware, any of the District Judges for the District of Delaware, the United States Trustee for the District of Delaware, or any employee in the Office of the United States Trustee for the District of Delaware.

29.     To the best of my knowledge and belief, insofar as I have been able to ascertain after reasonable inquiry, none of the employees of PJSC working on this engagement on the Debtors' behalf has had, or will have in the future, direct contact concerning these Chapter 11 Cases with the Debtors' creditors, other Potential Parties in Interest, the United States Trustee, or anyone employed in the Office of the United States Trustee for the District of Delaware other than in connection with performing financial advisory and investment banking services on behalf of the Debtors, except as otherwise disclosed herein.

30.     Accordingly, except as otherwise set forth herein, and insofar as I have been able to determine after reasonable inquiry, none of PJSC, I, nor any employee of PJSC who will work on this engagement holds or represents any interest adverse to the Debtors or their estates, and PJSC is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code (as modified by section 1107(b) of the Bankruptcy Code), in that PJSC, its professionals and employees:

a.      are not creditors, equity security holders, or insiders of the Debtors;

b.      were not, within two years before the date of filing of the Debtors' chapter 11 petitions, a director, officer, or employee of the Debtors; and

c.      do not have an interest materially adverse to the Debtors, their respective estates or any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in the Debtors, or for any other reason.

31.     Given the large number of parties in interest in these Chapter 11 Cases, despite the efforts to identify and disclose PJSC's relationships with parties in interest in these Chapter 11 Cases, I am unable to state with absolute certainty that every client relationship or other connection has been disclosed herein.  Therefore, PJSC has informed the Debtors that it will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new material facts or relationships are discovered or arise

16

during the pendency of these Chapter 11 Cases, PJSC will promptly file a supplemental

declaration with the Court as required by Local Bankruptcy Rule 2014-1(a).

32.    In the 90-day period prior to the Petition Date, PJSC received from the

Debtors a $300,000 prepetition retainer, $250,000 in monthly advisory fees, and $91,519 on

account of expense reimbursements.  Although PJSC's records indicate that it is not owed any

amounts in respect of prepetition services provided to the Debtors, PJSC's prepetition fees and

expenses for the billing period preceding the Petition Date may not have been fully accounted for

as of the date hereof, despite being reimbursable under the terms of the Engagement Letter.

PJSC has informed the Debtors that as promptly as practicable after all fees and charges accrued

prior to the Petition Date have finally been posted, PJSC will issue a final prepetition bill

statement for any unpaid fees and charges for the period prior to the Petition Date (the "Final

Prepetition Bill Amount").  Subject to any orders of the Court, PJSC will reconcile the Final

Prepetition Bill Amount with any remaining prepetition retainer amounts to pay its prepetition

invoices.  To the extent that reconciliation of the amount of the prepetition invoices (the

"Reconciliation Amount") is less than the remaining retainer, the Debtors and PJSC have agreed

that PJSC will hold the full amount of the difference as a postpetition retainer to be applied

against postpetition expenses.  In the event that the Final Prepetition Bill Amount exceeds the

remaining retainer amounts, PJSC has agreed to waive any resulting prepetition claim against the

Debtors for payment with respect to the amount by which the Reconciliation Amount exceeds

the retainer.

33.    To the extent any additional prepetition amounts are owed by the Debtors

under the Engagement Letter or otherwise, PJSC shall waive such claims against the Debtors as a

condition to being retained pursuant to the Application.

34.     PJSC has no agreement with any other entity to share with such entity any compensation received by PJSC in connection with the Debtors' bankruptcy cases.

**<u>Efforts to Avoid Duplication of Services</u>**

35.     PJSC believes that its services will be complementary rather than duplicative of the services to be performed by other professionals.  PJSC will carry out unique functions and will use reasonable efforts to coordinate with the Debtors and their professionals retained in these Chapter 11 Cases to avoid the unnecessary duplication of services.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

I declare under penalty of perjury under the laws of the United States of America that, to the best of my knowledge, information, and belief, and after reasonable inquiry, the foregoing is true and correct.

Dated:  September 17, 2015
       New York, New York

PETER J. SOLOMON COMPANY

*/s/ Durc A. Savini*
Durc A. Savini
Managing Director and Head of the Restructuring and
Recapitalization Group
Peter J. Solomon Company, L.P. and
Peter J. Solomon Securities Company, LLC
1345 Avenue of the Americas
New York, NY  10105

## EXHIBIT 1

**Engagement Letter**

# PETER J SOLOMON COMPANY

1345 Avenue of the Americas
New York, New York 10105

Tel: 212.508.1600
Fax: 212.508.1633

info@pjsc.com

September 4, 2015

Quiksilver, Inc.
15202 Graham St.
Huntington Beach, CA 92649

Attention:  Pierre Agnes
            Chief Executive Officer

Ladies and Gentlemen:

This letter agreement confirms the terms under which Quiksilver, Inc. (the "Company")
has engaged Peter J. Solomon Company, L.P. and/or its affiliate Peter J. Solomon
Securities Company, LLC (collectively, "PJSC") on an exclusive basis as its financial
advisor and investment banker with respect to a possible Restructuring, Financing and/or
Sale (each as defined below) and with respect to such other financial matters as to which
the Company and PJSC may agree in writing during the term of this engagement.  For
purposes hereof, the term "Company" includes affiliates of the Company and any entity
that the Company or its affiliates may form or invest in to consummate a Restructuring,
Financing and/or Sale, and shall also include any successor to or assignee of all or a
portion of the assets and/or businesses of the Company whether pursuant to a Plan (as
defined below) or otherwise, in each instance subject to the terms of any applicable
Bankruptcy Court (as defined below) orders.

1.   PJSC will perform the following financial advisory and investment banking
     services:

     a.   General Financial Advisory and Investment Banking Services.  PJSC will:

          i.   to the extent reasonably appropriate to the services contemplated
               by this agreement and feasible, familiarize itself with the business,
               operations, properties, financial condition and prospects of the
               Company; and

          ii.  if the Company determines to undertake a Restructuring, Financing
               and/or Sale advise and assist the Company in structuring and
               effecting the financial aspects of such a transaction or transactions,
               subject to the terms and conditions of this agreement.

     b.   Restructuring Services.  If the Company pursues a Restructuring, PJSC
          will:

i.      provide financial advice and assistance to the Company in developing and seeking approval of a Restructuring plan (as the same may be modified from time to time, a "Plan"), which may be a plan under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code");

ii.     if requested by the Company, in connection therewith, provide financial advice and assistance to the Company in structuring any new securities to be issued under the Plan;

iii.    if requested by the Company, advise and assist the Company in negotiations with entities or groups affected by the Plan; and

iv.     if requested by the Company, participate in hearings before the Bankruptcy Court with respect to the matters upon which PJSC has provided advice, including, as relevant, coordinating with the Company's counsel with respect to testimony in connection therewith.

For purposes of this agreement, the term "Restructuring" shall mean any recapitalization or restructuring (including, without limitation, through any exchange, conversion, cancellation, forgiveness, retirement and/or a material modification or amendment to the terms, conditions or covenants thereof) of the Company's preferred equity and/or debt securities and/or other indebtedness, obligations or liabilities (including preferred stock, unfunded pension and retiree medical liabilities, partnership interests, lease obligations, trade credit facilities and/or contract or tort obligations), including pursuant to a repurchase or an exchange transaction, a Plan or a solicitation of consents, waivers, acceptances or authorizations.

c.      Financing Services.  If the Company pursues a Financing, PJSC will:

i.      provide financial advice and assistance to the Company in structuring and effecting a Financing, identify potential Investors (as defined below) and, at the Company's request, contact such Investors;

ii.     if PJSC and the Company deem it advisable, assist the Company in developing and preparing a memorandum (with any amendments or supplements thereto, the "Financing Offering Memorandum") to be used in soliciting potential Investors, it being agreed that (A) the Financing Offering Memorandum shall be based entirely upon information supplied by the Company, (B) the Company shall be

solely responsible for the accuracy and completeness of the Financing Offering Memorandum, and (C) other than as contemplated by this subparagraph (c)(ii), the Financing Offering Memorandum shall not be used, reproduced, disseminated, quoted or referred to at any time in any way, except with PJSC's prior written consent; and

iii.    if requested by the Company, advise and assist the Company in negotiations with potential Investors.

For purposes of this agreement, the term "Financing" shall mean a private issuance, sale or placement of new equity, equity-linked or debt securities, instruments or obligations of the Company with one or more lenders and/or investors, or any new loan or other new financing, including, without limitation, any "debtor in possession financing" ("DIP Financing") or "exit financing" in connection with a case under the Bankruptcy Code or a rights offering (each such lender or investor, an "Investor"). For the avoidance of doubt, "Financing" excludes any equity, securities, instruments, obligations, loans, or financings issued on account of or in exchange for existing equity or debt of the Company.

It is understood and agreed that nothing contained herein shall constitute an expressed or implied commitment by PJSC to act in any capacity or to underwrite, place or purchase any financing or securities.

d.    Sale Services.  If the Company pursues a Sale, PJSC will:

i.    provide financial advice and assistance to the Company in connection with a Sale, identify potential acquirers and, at the Company's request, contact such potential acquirers;

ii.    at the Company's request, assist the Company in preparing a memorandum (with any amendments or supplements thereto, the "Sale Memorandum") to be used in soliciting potential acquirers, it being agreed that (A) the Sale Memorandum shall be based entirely upon information supplied by the Company, (B) the Company shall be solely responsible for the accuracy and completeness of the Sale Memorandum, and (C) other than as contemplated by this subparagraph (d)(ii), the Sale Memorandum shall not be used, reproduced, disseminated, quoted or referred to at any time in any way, except with PJSC's prior written consent; and

iii.    if requested by the Company, advise and assist the Company in negotiations with potential acquirers.

For purposes of this agreement, the term "Sale" shall mean the disposition to one or more third parties in one or a series of related transactions of (x) all or a material portion of the equity securities of the Company by the security holders of the Company or (y) all or a material portion of the assets (including the assignment of any executory contracts) or businesses of the Company or its subsidiaries, in either case, including through a sale or exchange of capital stock, options or assets, a lease of assets with or without a purchase option, a merger, consolidation or other business combination, an exchange or tender offer, a recapitalization, the formation of a joint venture, partnership or similar entity, or any similar transaction.

In rendering its services to the Company hereunder, PJSC is not assuming any responsibility for the Company's underlying business decision to pursue any business strategy or to effect any Restructuring, Financing, and/or Sale or other transaction. The Company agrees that PJSC shall not have any obligation or responsibility to provide accounting, audit, "crisis management," or business consultant services for the Company and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements, or to provide any fairness or valuation opinions or any advice or opinions with respect to solvency in connection with any transaction. The Company confirms that it will rely on its own counsel, accountants and similar expert advisors for legal, accounting, tax and other similar advice.

In order to coordinate effectively the Company's and PJSC's activities to effect a Restructuring, Financing or Sale, the Company will promptly inform PJSC of any discussions, negotiations or inquiries regarding a possible Restructuring, Financing or Sale (including any such discussions, negotiations or inquiries that have occurred in the six month period prior to, or at any time on or after, the date of this agreement).

The Company shall make available to PJSC all information concerning the business, assets, operations, financial condition and prospects of the Company that PJSC reasonably requests in connection with the services to be performed for the Company hereunder and shall provide PJSC with reasonable access to the Company's officers, directors, employees, independent accountants and other advisors and agents as PJSC shall deem appropriate. With respect to any financial forecasts (including cost savings and synergies) that may be furnished to or discussed with PJSC by the Company or any other party, PJSC will assume that they have been reasonably prepared and reflect the best then currently available

5

estimates and judgment of the Company's or such other party's management.  The Company represents that all information furnished by it or on its behalf to PJSC (including information contained in any Financing Offering Memorandum and/or Sale Memorandum), when delivered, will be true and correct in all material respects, will be prepared in good faith, and will not contain any material misstatement of fact or omit to state any material fact necessary to make the statements contained therein not misleading.   The Company recognizes and confirms that in advising the Company and completing its engagement hereunder, PJSC will be using and relying on publicly available information and on data, material and other information furnished to PJSC by the Company and other parties.  It is understood that in performing under this engagement PJSC may assume and rely upon the accuracy and completeness of, and is not assuming any responsibility for independent verification of, such publicly available information and the other information so furnished.  The Company will promptly notify PJSC if the Company learns of any material inaccuracy or misstatement in, or any material omission from, any such information furnished by the Company or any other party to PJSC or any such publicly available information.

2.   PJSC's compensation for services rendered under this agreement will consist of the following cash fees:

   a.   A monthly financial advisory fee of $150,000 (the "Monthly Advisory Fee"), which shall be due and paid in advance by the Company beginning on the date hereof and thereafter on each monthly anniversary thereof during the term of this engagement.  Fifty percent (50%) of the amount of any Monthly Advisory Fees paid to PJSC prior to the closing of any Restructuring or Sale will be credited against any Restructuring Transaction Fee or Sale Transaction Fee, as the case may be, payable under, and as defined in, subparagraph 2(b) or 2(c) below.

   b.   If at any time during the term of this engagement or within the twelve full months following the termination of this engagement (including the term of this engagement, the "Fee Period"), (x) any Restructuring is consummated or (y)(1) an agreement in principle, definitive agreement or Plan to effect a Restructuring is entered into and (2) concurrently therewith or at any time thereafter (including following the expiration of the Fee Period), any Restructuring is consummated, PJSC shall be entitled to receive a transaction fee (a "Restructuring Transaction Fee"), contingent upon the consummation of a Restructuring and payable at the closing thereof, equal to $7,500,000.

   c.   If at any time during the Fee Period, (x) any Sale is consummated or (y)(1) an agreement in principle or definitive agreement to effect a Sale is

entered into, and (2) concurrently therewith or at any time thereafter (including following the expiration of the Fee Period) any Sale is consummated, PJSC shall be entitled to receive a transaction fee (a "Sale Transaction Fee"), contingent upon the consummation of a Sale and payable at the closing thereof, which shall be equal to the lesser of $7,500,000 or 1.50% of the total consideration received or realized by the Company in connection with such Sale, including but not limited to any credit bid of secured indebtedness or express assumption of liabilities. Notwithstanding anything to the contrary herein, only one fee under subparagraph 2(b) or 2(c) hereof shall be payable under this agreement, and if both of such fees becomes payable to PJSC hereunder, the higher of such fees shall be paid to PJSC.

d.   In addition to any Restructuring Transaction Fee or Sale Transaction Fee that may become due under this agreement, if at any time during the Fee Period, the Company (x) consummates any Financing or (y)(1) the Company receives and accepts written commitments for one or more Financings (the execution by a potential financing source and the Company of a commitment letter or securities purchase agreement or other definitive documentation shall be deemed to be the receipt and acceptance of such written commitment) and (2) concurrently therewith or at any time thereafter (including following the expiration of the Fee Period) any Financing is consummated, the Company will pay to PJSC the following fees:

i.   1.00% of the gross proceeds of any indebtedness issued in connection with a Financing that is secured by a first lien, including, without limitation, any DIP Financing;

ii.   3.00% of the gross proceeds of any indebtedness issued in connection with a Financing that (x) is secured by a second or more junior lien, (y) is unsecured and/or (z) is subordinated or unitranche debt (*i.e.*, combining different types of debt, such as senior and subordinated, into one instrument); and

iii.   5.00% of the gross proceeds of any equity or equity-linked securities or obligations issued in connection with a Financing.

It is understood and agreed that if the proceeds of any such Financing are to be funded in more than one stage, PJSC shall be entitled to its applicable compensation hereunder upon the closing date of each stage even if one or more of such stages is consummated after the expiration of

the Fee Period, so long as one or more of such stages is consummated during the Fee Period.

Notwithstanding anything to the contrary in this subparagraph 2(d), any Restructuring Transaction Fee or Sale Transaction Fee shall be reduced (but not below zero) by any DIP Financing fee paid by the Company to PJSC prior to the closing of a Restructuring or Sale, as the case may be, in the event that a provider of the DIP Financing associated with such DIP Financing fee is a sponsor of such Restructuring or an acquirer at such Sale, as the case may be.

Each party hereto acknowledges and agrees that PJSC's restructuring expertise as well as its capital markets knowledge, financing skills and mergers and acquisitions capabilities, some or all of which may be required during the term of PJSC's engagement hereunder, were important factors in determining the amount of the various fees set forth herein, and that the ultimate benefit of PJSC's services hereunder could not be measured merely by reference to the number of hours to be expended by PJSC's professionals in the performance of such services. Each party hereto also acknowledges and agrees that the various fees set forth herein have been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of PJSC and that the actual time and commitment required of PJSC and its professionals to perform its services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for PJSC. In addition, given the numerous issues with PJSC's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for PJSC's services for engagements of this nature in an out-of-court context, each party hereto agrees that the fee and expense arrangements hereunder are reasonable under all applicable legal standards.

3.  In addition to any fees payable by the Company to PJSC hereunder and without in any way reducing or affecting the provisions of Exhibit A hereto, the Company shall, whether or not any transaction contemplated by this agreement shall be proposed or consummated, reimburse PJSC on a monthly basis for its reasonable out-of-pocket expenses (including, without limitation, travel and lodging, data processing and communication charges, research and courier services) incurred in connection with, or arising out of, PJSC's activities under or contemplated by this engagement or in the enforcement of PJSC's rights hereunder, including all reasonable fees, disbursements and other charges of counsel to be retained by PJSC (without the requirement that the retention of such counsel be approved by the Bankruptcy Court) and of other consultants and advisors retained by PJSC with the Company's consent.    The aggregate amount of expenses subject to reimbursement under this paragraph 3 shall not exceed $100,000 without the prior

written consent of the Company, not to be unreasonably withheld. The Company shall also reimburse PJSC, at such times as PJSC shall request, for any sales, use or similar taxes (including additions to such taxes, if any) arising in connection with any matter referred to or contemplated by, this engagement and actually paid by PJSC. Such reimbursements shall be made promptly upon submission by PJSC of statements for such expenses.

4. The Company agrees to the provisions of Exhibit A hereto, which is an integral part of this agreement and the terms of which are incorporated by reference herein. Such Exhibit A shall survive any termination, expiration or completion of PJSC's engagement hereunder.

5. This agreement and PJSC's engagement hereunder may be terminated by either the Company or PJSC at any time, upon prior written notice thereof to the other party; provided, however, that (a) termination of PJSC's engagement hereunder shall not affect the Company's continuing obligations and agreements under paragraphs 4 through 12 and Exhibit A hereof, (b) notwithstanding any such termination, PJSC shall be entitled to the full fees in the amounts and at the times provided for in paragraph 2 hereof and (c) any termination of PJSC's engagement hereunder shall not affect the Company's obligation to reimburse expenses accruing prior to such termination to the extent provided in paragraph 3 hereof.

6. Notwithstanding anything to the contrary in this agreement, the Company shall not have any obligation to (A) enter into any transaction, and shall have the right to reject any transaction or to terminate negotiations with respect to any transaction at any time, or (B) to take any action that would be inconsistent with its fiduciary obligations under applicable law.

7. Except as contemplated by the terms hereof or as required by applicable law or regulation or by any regulatory or self-regulatory organization or body, PJSC shall keep confidential all information provided to it by the Company, unless publicly available or otherwise available to PJSC without restriction or breach of any confidentiality agreement, and shall not disclose such information to any third party, other than in confidence to PJSC's officers, directors, employees, limited and general partners, members, agents, representatives and advisors, without the Company's prior approval.

8. The advice and the work product produced by PJSC, and any communications with the Company's counsel, pursuant to or in connection with this agreement, is for the purpose of facilitating the rendering by the Company's counsel of legal advice to the Company in connection with one or more transactions (as well as in connection with any potential action or proceeding covered by Exhibit A hereto) and is intended to and shall be protected by the work-product doctrine, the

attorney-client privilege, and other applicable privileges and protections. PJSC shall not disclose the same to any other person except as requested by such counsel or the Company or as required by applicable law or regulation or by any regulatory or self-regulatory organization or body.

9.      PJSC has been retained under this agreement as an independent contractor with no agency relationship to the Company or to any other party, it being understood that PJSC shall have no authority to bind, represent or otherwise act as agent, executor, administrator, trustee, lawyer or guardian for the Company, nor shall PJSC have the authority to manage money or property of the Company. The advice (oral or written) rendered by PJSC pursuant to this agreement is intended solely for the benefit and use of the Board of Directors of the Company in considering the matters to which this agreement relates, and the Company agrees that such advice may not be relied upon by any other person or entity, used for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner for any purpose, nor shall any public references to PJSC be made by the Company, without the prior written consent of PJSC.

10.     The Company agrees that PJSC shall have the right to place advertisements in financial and other newspapers and journals at its own expense describing its services to the Company hereunder; provided that PJSC will submit a copy of any such advertisement to the Company for its approval, which approval shall not be unreasonably withheld or delayed.

11.     This agreement shall be deemed to be made in New York, New York. This agreement and all controversies arising from or relating to performance of this agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to such state's rules concerning conflicts of laws that might provide for any other choice of law. The Company and PJSC hereby irrevocably consent to personal jurisdiction in the Supreme Court of the State of New York in New York County, Commercial Part, or any Federal court sitting in the Southern District of New York for the purposes of any suit, action or other proceeding arising out of this agreement or any of the agreements or transactions contemplated hereby, which is brought by or against the Company or PJSC, hereby waive any objection to venue with respect thereto, and hereby agree that all claims in respect of any such suit, action or proceeding shall be heard and determined in any such court, and that such courts shall have exclusive jurisdiction over any claims arising out of or relating to such agreements or transactions; provided that in the event that the Company becomes a debtor under chapter 11 of the Bankruptcy Code, during any such case, any such claims may also be heard and determined in the Bankruptcy Court. ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM OR ACTION ARISING

OUT OF THIS AGREEMENT OR CONDUCT IN CONNECTION WITH PJSC'S ENGAGEMENT IS HEREBY WAIVED BY THE COMPANY AND BY PJSC.

12. This agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same instrument. This agreement shall be binding upon PJSC and the Company and their respective successors and assigns (including, in the case of the Company, subject to the terms of any applicable Bankruptcy Court orders, any successor to all or a portion of the assets and/or the businesses of the Company under a Plan). This agreement is not intended to confer any rights upon any shareholder, creditor, owner, member or partner of the Company, or any other person or entity not a party hereto other than the Indemnified Parties referenced in Exhibit A hereof. If any provision of this agreement is determined to be invalid or unenforceable in any respect, such determination will not affect the agreement in any other respect, which will remain in full force and effect. No waiver, amendment or other modification of this agreement shall be effective unless in writing and signed by each party to be bound thereby.

13. To the best of the Company's knowledge, the Company does not appear on the Specially Designated Nationals and Blocked Persons List of the Office of Foreign Assets Control of the United States Department of the Treasury, nor is it a prohibited party according to other U.S. government regulatory or enforcement agencies.

14. In the event that the Company becomes a debtor under chapter 11 of the Bankruptcy Code, the Company shall apply promptly (but not necessarily on the "first day" of the bankruptcy case) to the bankruptcy court having jurisdiction over the chapter 11 case or cases (the "Bankruptcy Court") for the approval pursuant to sections 327(a) and 328(a) of the Bankruptcy Code of this agreement and PJSC's retention by the Company under the terms of this agreement, subject only to the standard of review provided for in Section 328(a) of the Bankruptcy Code, and not subject to the standard of review under section 330 of the Bankruptcy Code or any other standard of review, and shall use its best efforts to obtain Bankruptcy Court authorization thereof. The Company shall supply PJSC and its counsel with a draft of such application and the proposed order authorizing PJSC's retention that is proposed to be submitted to the Bankruptcy Court sufficiently in advance of the filing of such application or the submission of such order, as the case may be, to enable PJSC and its counsel to review and comment thereon. PJSC shall have no obligation to provide any services under this agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless PJSC's retention under the terms of this agreement is approved under Section 328(a) of the Bankruptcy Code by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is

acceptable to PJSC in all respects. PJSC acknowledges that, notwithstanding anything to the contrary in this agreement, this agreement will be subject to Bankruptcy Court approval if the Company commences a bankruptcy case and that, in the event that the Bankruptcy Court approves its retention by the Company pursuant to the application process described in this paragraph, payment of PJSC's fees and expenses shall be subject to, among other things, (i) the jurisdiction and approval of the Bankruptcy Court under section 328(a) of the Bankruptcy Code and any order approving PJSC's retention, (ii) any applicable fee and expense guidelines and/or orders and (iii) any requirements governing interim and final fee applications. Although the Company will request that PJSC be excused from certain requirements relating to the maintenance of detailed time records of time spent working on this assignment, PJSC will nonetheless maintain daily records, in summary format, which shall indicate the total hours incurred by each professional for each day, in half hour (.5) increments, and a brief description of the nature of the work performed, which records shall be available for submission to the Bankruptcy Court subject to appropriate redactions to preserve confidential or sensitive information. Although PJSC is providing such records, it, as an investment bank, does not have hourly rates for its professionals. PJSC will make every effort to coordinate with the other professionals retained by the Company in this bankruptcy in order to eliminate unnecessary duplication or overlap of work. In the event that the Company becomes a debtor under the Bankruptcy Code and PJSC's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and reasonable expenses of PJSC hereunder (including, without limitation, the reasonable fees and expenses of PJSC's counsel) as promptly as reasonably practicable in accordance with the terms hereof. Prior to commencing a chapter 11 case, the Company shall pay all undisputed amounts theretofore due and payable to PJSC in cash.

In any such chapter 11 case or cases, the Company agrees that PJSC's post-petition compensation as set forth herein and payments made pursuant to the expense reimbursement and other provisions of this agreement, including, without limitation, Exhibit A, shall be entitled to priority as expenses of administration under sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code and shall further be entitled to the benefits of any "carve-outs" for professional fees and expenses in effect in such cases pursuant to one or more financing orders entered by the Bankruptcy Court. The Company shall use reasonable efforts to ensure that the carve-outs are adequate to enable the Company to pay PJSC the compensation and expense reimbursement as contemplated hereby, taking into account the Company's obligations to other professionals entitled to the benefit of the carve-outs. The Company shall use reasonable efforts to ensure that any cash collateral order, debtor-in-possession financing order and/or similar order entered in such chapter 11 case or cases (a) permits the use of cash collateral and financing proceeds for the full and prompt payment of all of PJSC's fees and reasonable

expenses contemplated hereby (including, without limitation, all fees contingent upon the occurrence of transactions), and (b) contains the agreements by the lenders (or parties whose cash collateral is being used) that PJSC's fees and reasonable expenses shall be paid at the times and from the sources specified herein.

15.    This agreement (including Exhibit A) embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof, including, without limitation, the letter agreement, dated June 1, 2015, between the Company and PJSC (the "Previous Letter"), provided, however, that the provisions of Section 5 and Exhibit A of the Previous Letter will continue in full force and effect in accordance with their terms as they apply to PJSC's engagement under the Previous Letter.

*        *        *

We are pleased to accept this engagement and look forward to working with the Company. Please confirm that the foregoing is in accordance with your understanding by signing and returning to us the enclosed duplicate of this letter, which shall thereupon constitute a binding agreement between PJSC and the Company.

Very truly yours,

PETER J. SOLOMON COMPANY, L.P.

By:    Peter J. Solomon Company Limited
       General Partner

By: _____
       Durc A. Savini
       Managing Director

PETER J. SOLOMON SECURITIES
COMPANY, LLC

By: _____
       Durc A. Savini
       Managing Director

Accepted and Agreed to:

QUIKSILVER, INC.

By: _____
       Name:    AGNES Pierre
       Title:   CEO

Exhibit A

The Company shall indemnify and hold harmless PJSC and its affiliates, and the respective directors, officers, members, partners, controlling persons, agents and employees of each of the foregoing (PJSC and all of such other persons collectively, the "Indemnified Parties"), from and against any losses, claims or proceedings including stockholder actions, damages, judgments, assessments, investigation costs, settlement costs, fines, penalties, arbitration awards, other liabilities, costs, fees and expenses (collectively, "Losses") (i) related to or arising out of (A) oral or written information provided by the Company, the Company's employees or other agents, which either the Company or PJSC provides to any persons, or (B) other action or failure to act by the Company, the Company's employees or other agents or PJSC at the Company's request or with the Company's consent, or (ii) otherwise related to or arising out of the engagement of PJSC under this letter agreement or the Previous Letter or any transaction or conduct in connection herewith or therewith, provided that this clause (ii) shall not apply if it is finally judicially determined by a court of competent jurisdiction that such Losses arose primarily out of the gross negligence, bad faith, or willful misconduct of such Indemnified Party.

The Company shall further reimburse any Indemnified Party promptly for, or at the Indemnified Party's option advance amounts sufficient to cover, any legal or other fees or expenses, which fees and expenses must be reasonable, as they are incurred (i) in investigating, preparing or pursuing any action or other proceeding (whether formal or informal) or threat thereof, relating to or arising out of the engagement of PJSC under this letter agreement or any transaction or conduct in connection therewith, whether or not in connection with pending or threatened litigation or arbitration and whether or not any Indemnified Party is a party (an "Action") and (ii) in connection with enforcing such Indemnified Party's rights under this letter agreement (including, without limitation, its rights under this Exhibit A); provided, however, that such Indemnified Party will promptly remit to the Company amounts reimbursed or advanced under this paragraph if it is finally judicially determined by a court of competent jurisdiction that the Losses of such Indemnified Party arose primarily out of the gross negligence, bad faith, or willful misconduct of such Indemnified Party.

Each Indemnified Party shall provide the Company with prompt written notice of the commencement of any action or proceeding of which it has actual notice with respect to which indemnification or contribution or other rights will be sought hereunder, provided that the failure to provide such notice will not relieve the Company from any liability hereunder except to the extent the Company is materially prejudiced thereby.

The Company may, in its sole discretion, elect to assume the defense of any such Action including the employment of counsel reasonably satisfactory to PJSC and will not settle, compromise, consent or otherwise resolve or seek to terminate any pending or threatened Action (whether or not any Indemnified Party is a party thereto) unless it obtains the prior written consent of PJSC or an express, unconditional release of each Indemnified Party from all liability relating to such Action and the engagement of PJSC under this letter agreement. No Indemnified Party seeking indemnification, reimbursement or contribution under this letter agreement shall, without the Company's prior written consent, settle, compromise, consent or otherwise resolve or seek to terminate any pending or threatened litigation or arbitration. Any Indemnified Party shall be entitled to retain separate counsel of its choice and participate in the defense of any Action in connection with any of the matters to which this Exhibit A relates, but the fees and expenses, which must be reasonable, of such counsel shall be at the expense of such Indemnified Party unless: (i) the Company has failed promptly to assume, or has elected not to assume, the defense and employ counsel or (ii) the named parties to any such Action (including any impleaded parties) include such Indemnified Party and the Company, and such Indemnified Party shall have been advised by counsel that there may be one or more legal defenses available to it which are different from or in addition to those available to the Company; provided that the Company shall not in such event be responsible under this Exhibit A for the fees and expenses of more than one firm of separate counsel (in addition to local counsel) in connection with any such Action in the same jurisdiction.

The Company agrees that if any right of any Indemnified Party set forth in the preceding paragraphs is finally judicially determined to be unavailable (except by reason of the gross negligence, bad faith, or willful misconduct of such Indemnified Party), or is insufficient to hold such Indemnified Party harmless against such Losses as contemplated herein, then the Company shall contribute to such Losses (i) in such proportion as is appropriate to reflect the relative benefits received by the Company and its stockholders, on the one hand, and such Indemnified Party, on the other hand, in connection with the transactions contemplated hereby, and (ii) if (and only if) the allocation provided in clause (i) is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i) but also the relative fault of the Company and such Indemnified Party; provided, however, that in no event shall the amount, if any, to be contributed by all Indemnified Parties exceed the amount of the fees actually received by PJSC hereunder. Benefits received (or anticipated to be received) by the Company and its stockholders shall be deemed to be equal to the aggregate cash consideration and value of securities or any other property payable, exchangeable or transferable in any proposed or potential transactions within the scope of this letter agreement, and benefits received by PJSC shall be deemed to be equal

to the compensation payable by the Company to PJSC in connection with this letter agreement. Relative fault shall be determined by reference to, among other things, whether any alleged untrue statement or omission or any other alleged conduct relates to information provided by the Company or other conduct by the Company (or the Company's employees or other agents) on the one hand or by PJSC on the other hand. The parties hereto agree that it would not be just and equitable if contribution were determined by pro rata allocation or by any other method of allocation that does not take into account the equitable considerations referred to above.

The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with advice or services rendered or to be rendered by any Indemnified Party pursuant to this letter agreement or the Previous Letter, the transactions contemplated hereby or thereby or any Indemnified Party's actions or inactions in connection with any such advice, services or transactions except for Losses of the Company that are finally judicially determined by a court of competent jurisdiction to have arisen primarily out of the gross negligence, bad faith, or willful misconduct of such Indemnified Party in connection with any such advice, actions, inactions or services.

The rights of the Indemnified Parties hereunder shall be in addition to any other rights that any Indemnified Party may have at common law, by statute or otherwise. The reimbursement, indemnity and contribution obligations of the Company set forth herein shall apply to any modification of this letter agreement and shall remain in full force and effect regardless of any termination of, or the completion of any Indemnified Party's services under or in connection with, this letter agreement.

# <u>SCHEDULE 1</u>

**Potential Parties in Interest**

**POTENTIAL PARTIES IN INTEREST**

**(1) Debtors and affiliates**

Debtors
DC Direct, Inc.
DC Shoes, Inc.
Fidra, Inc.
Hawk Designs, Inc.
Mt. Waimea, Inc.
QS Optics, Inc.
QS Retail, Inc.
QS Wholesale, Inc.
Quiksilver Entertainment, Inc.
Quiksilver Wetsuits, Inc.
Quiksilver, Inc.

Non-Debtor Affiliates
54th Street Holdings SARL
Biarritz Holdings SARL
Boardrider S.A.
Boardriders Club Bratislava s.r.o.
Caribbean Pty. Ltd.
Caribo SARL
Chloelys Investment Ltd.
DC (Shanghai) Commercial Co. Ltd.
DC Shoes (Hong Kong) Ltd.
DC Shoes (NZ) Limited
DC Shoes Australia Pty. Ltd.
Distribution s.r.o.
Drop In SARL
Emerald Coast
Fistral Oy
Haapiti SRL
Hanalei NV
Kauai GmbH
Kokolo SARL
Lanai, Ltd.
Main Bridge
Meribel SAS
Molokai Ltd.
Mountain & Wave SARL
Na Pali SAS
Na Pall Europe SARL
Namotu, Ltd
New Pier Trading Ltd.

Pavilion Prod. Pty. Ltd.
Pilot SAS
PT Quiksilver
Pukalani BV
QS Holdings SARL
QS Retail (NZ) Limited
QS Retail (Taiwan) Ltd.
QS Retail (Thailand) Ltd.
QS Retail, Pty. Ltd.
QSBR Inudstria e Comerico de Artigos Esportivos Ltda.
QSJ Holdings Pty. Ltd.
Quiksilver Asia Sourcing Co Ltd.
Quiksilver Asia Sourcing Ltd.
Quiksilver Aus. Pty. Ltd.
Quiksilver Canada Corp.
Quiksilver Deluxe SARL
Quiksilver Do Brasil Franqueadora Ltda.
Quiksilver Foundation Australia Pt. Ltd.
Quiksilver Glorious Ltd.
Quiksilver Glorious Sun Apparels Ltd.
Quiksilver Glorious Sun JV Ltd.
Quiksilver Glorious Sun Licensing Ltd.
Quiksilver Glorious Sun Trading
Quiksilver Greater China Ltd.
Quiksilver Intl. Pty. Ltd
Quiksilver Japan K.K.
Quiksilver Roxy Korea Ltd.
Quiksilver Singapore Ltd
Quiksilver Travel
Rawaki sp. Zoo
Santocha Ltd.
Sumbawa SL
Sunshine Diffusion SA
Tarawa Lda.
Tavarua SCI
Uf Mfg. Co. (NZ) Ltd.
Ug Mfg. Co. Pty. Ltd.
Uluwatu Arps
UMTT Pty. Ltd.
Vanuatu GmbH

(2) **Directors and officers of the debtors and affiliates (current and previous two years)**

<u>Directors</u>:
Andrew Sweet
Joseph Berardino
Michael Clarke
Pierre Agnes
Robert McKnight
Steven Langman
William Barnum

<u>Former Directors (3 years)</u>:
Andrew Sweet
Bernd Beetz
Brad Holman
Charles Exon
Elizabeth Dolan
James Ellis
Paul Speaker
Richard Shields
Robert Mettler

<u>Officers and Managers</u>:
Andrew Bruejnes
Barbara McAndrews
Craig Johnson
Greg Healy
Linnsey Caya
Pierre Agnes
Thomas Chambolle

<u>Former Officers (1 year)</u>:
Alan Vickers
Andrew Mooney
Charles Exon
Richard Shields

(3) **Agent and all current members of any bank or other lending group**

<u>Global ABL</u>:
Bank of America, N.A.
Bank of America, National Association

GE Capital Finance Pty Ltd
GE Capital Markets
General Electric Capital Corporation
Merrill Lynch, Pierce, Fenner & Smith Incorporated
Wells Fargo Bank, National Association
Wells Fargo Capital Finance Corporation Canada

<u>US Secured Notes</u>:
AllianceBerstein LP
Arden Asset Management
Bank of Montreal
BofA Merrill Lynch
Credit Agricole
Danke Bank
Guggenheim Funds Distributors
Hancock Bank Trust Department
Harris Associates LP
Hotchkis & Wiley Capital Management
ING International Advisory SA
Janus Capital Management
Manulife Asset Management
Morgan Stanley
Morgan Stanley Dean Witter Advisors Inc
Permal Asset Management LLC
Pimco Canada Corp
Schroder Investment Management
Smith Barney Consulting Group
Stone Harbor Investment
TD Asset Management
U.S. Bank, N.A.
Wells Fargo Securities

<u>US Unsecured Notes</u>:
Advanced Series Trust
Allianz SE
Danske Bank A/S
Harris Associates LP
Hotchkis & Wiley Capital Management
ING Groep NV
ING International Advisory SA
Janus Capital Management LLC
Manulife Asset Management
Pinebridge Investments EUrope

Prudential Retirement Insurance and
Annuity
Skandia Investment Management
Smith Barney Consulting Group
Stone Harbor Investment Part
Sun America Asset Management
T Rowe Price Associates
TD Asset Management Inc
U.S. Bank, N.A.
Valic Co I
Wells Fargo Bank, National Association

*Euro Notes*:
Alliance Bernstein LP
Allianz Global Investment of America LP
Alps Advisors Inc
Arden Asset Management
AXA
BPI Financial Corp
Danske Bank
Deustche Bank AG, London Branch
Deutsche Bank Luxembourg S.A.
Deutsche Trustee Company Limited
Efigest Asset Management
ING Groep NV
ING International Advisory SA
Janus Capital Trust Mgmt Ltd
Morgan Stanley Investment Management
Permal Asset Management LLC
SCOR Global Investments SE
Societe Generale Corporate & Investment
Banking
Stone Harbor Investment Partners
SydInvest International
UBS Investment Bank
Union Investment GMBH

**(4) Holders of the 30 largest unsecured claims**

3 Times Square Associates, LLC
404 West LLC
Andrew P. Mooney
C & K Trading Co., Ltd.
Carmichael International Service

Coins International Co. Ltd.
CPG Partners, LP
Deltina Trading Pty Ltd
Dragon Crowd Garment Inc
Dubhe Corporation
Eastman Exports Global Clothing
Full Creative Co., Ltd
Hong Kong Hesheng Intl
Merry Link Development
Newtimes Far East
Ningbo Isun Fashion Co Ltd
Northstar Sourcing Group HK Ltd
O'Melveny & Myers LLP
Original JY&T Co Ltd
Putian Xinxiesheng Footwear Co. Ltd
QTNP Apparels JSC
Robert McKnight
Samil Tong Sang Co.
Srinivasa Fashions Pvt Ltd
Sumec Textile and Light Industry Co.
U.S. Bank NA
Weihai Textile Import and Export Co
World Marketing, Inc.
Xiamen C&D Light Industry Co., Ltd
Zhejiang Xishi Jiafang Textile Co. Ltd.

**(5) Equity holders (holding stake of 5% or more)**

Invesco Ltd
Offshore Exploration and Production, LLC
PRIMECAP Management Company
Rhone Capital III
T Rowe Price Associates

**(6) Cash Management Banks (other than Lenders)**

Bank of America, N.A.

**(7) Hedge Counterparties**
None

3

(8) **JV Counterparties**

Charles Young
Glorious Sun Overseas Company Limited

(9) **Professionals to be employed in the case by the debtor, lenders, purchaser/sponsor, committees, or other key parties**

FTI Consulting, Inc.
Houlihan Lokey Capital Inc.
Kirkland & Ellis
Kurtzman Carson Consultants
Pachulski Stang Ziehl and Jones, LLP
Peter J. Solomon
Riemer & Braunstein, LLP

(10) **Possible purchasers/investors and liquidators**

Gordon Brothers Retail Partners, LLC
Hilco Merchant Resources, LLC
Oaktree Capital Management

(11) **Landlords of the debtors**

1021 Lincoln Road, Ltd
1955 South Casino Drive Holdings LLC
3 Times Square Associates, LLC
404 West LLC
570 Main Street, LLC
740 Associates Ltd
ABW Holdings LLC
Alfred A. Hunt Trusts
Americredit Financial Services
Andrew T Varlow
Annapolis Mall Limited Partnership
Aventura Mall Venture (Turnberry)
Banc of America Leasing Commercial
Baruch LLC
Boulevard Invest LLC

Boulevard Invest LLC
C&K Broadway 519 LLC
Calvin Felder
Canyon Crossing Dunhill LLC
Charlotte Outlets LLC
Chelsea Las Vegas Holdings LLC
Colorado Mills Mall Limited Partnership
Comtrans LTD
CP Deerfield LLC
CPG Houston Holdings
CPG Mercedes LP
CPG Partners, LP
Craig Realty Group Citadel LLC
Craig Realty Group Woodburn LLC
Del Amo Fashion Center Operating
Company
Destiny USA Holdings, LLC
Disneyland Resort
Dolphin Mall Associates
El Paso Outlet Center LLC
Entertainment Center Development LLC
F.J. Felder
F/C Gilroy Development LLC
Fashion Outlet of Las Vegas, LLC
Fashion Outlets of Chicago, LLC
First & Lenora LLC
First Queensborough Shopping Centres Ltd.
Florida Mall Assoc. LTD
G&S Realty I, LLC
Gaslamp Phase One, LLC
Genevieve S. Felder
Glendale Galleria Mall
Glimcher Malibu, LLC
Gulf Coast Factory Shops Limited
Partnership
Halele'a Family Limited Partnership
Halelea Family Limited Partnership
Hilco Real Estate LLC
Horizon Group Properties
Industrial Property Fund VII, LLC
Ivanhoe Cambridge II Inc.
Ivanhoe Cambridge Inc.
Jersey Shore Premium Outlets, LLC
JG Elizabeth, LLC
Katy Mills Mall Limited Partnership
Laguna Beach Center LLC

4

Lahain Waterfront LLC
Le Carrefour Laval Leaseholds, Inc
(Cadillac Fairview)
Loma Alta Corporation
Macerich Oaks LLC
Milen, LLC
Miromar Outlet East, LLC
Ontario Mills Limited Partnership
Ontrea, Inc (Cadillac Fairview)
Orlando Outlet Owner LLC
Oswald M. Treutler Holding LTD
Outlets at Traverse Mountain, LLC
Outrigger Hotel and Resorts
Outrigger Hotels Hawaii
Paragon Outlets Livermore Valley LLC
Peschke Realty Associates LLC
Phoenix Premium Outlets Exchange, LLC
Pinewood Palm Beach Retail LLC
Prime Outlets at Pismo Beach LLC
Principle Life Insurance Co
Prospect Development LP
Queen Emma Land Company
Queens Market LLC
Quiksilver Home Base
Rossland Ten Corporation
Rouse F.S. LLC
RPAI Southwest Management LLC
Samis Foundation
Second Horizon Group Limited Partnership
Seminole Properties, LLC
Silver Sands GL I LLC
Simon/Chelsea Vegas Development
Simon/Premium
South Coast Plaza
Sunrise Mills Limited Partnership
Tampa Westshore Associates LP
Tanger Properties Limited Partnership
Taubman Auburn Hills Associated Limited
Partnership
Taubman Realty Group LP
The Irvine Company LLC
The Outlet Collection (Niagara) Ltd.
The Shops at Wailea, LP
TSLV LLC
Universal CityWalk Hollywood
Universal Studios LLC

Villa San Clemente LLC
Walt Disney World Co
West County Commerce Realty Holding Co
LLC
West County Commerce, LLC
WV Sub, LLC

*Pop-Up Stores:*
Columbia Retail Dulles LLC
Federal Realty Investment Trust
FR Crow Canyon, LLC
FW CA-Bay Hill Shopping Center LLC
Hoadley Regency LLC
Lakeland Square Mall LLC
MCD-RC CA-El Cerrito LLC
Mt Shasta Mall
NewPark Mall, LP
RCFL Anatasia LLC
Regency Centers, LP
Regency Petaluma LLC
REQ8 Tassajara Crossing LLC
Rouse Properties, Inc.
RPI Chesterfield LLC
RW VA-Greenbriar Town Center LLC
Spring Hill Mall LLC
Tracy Mall Partners LP
Woodholme Properties Limited Partnership


(12) **Major customers of the debtors**

Amazon
Comercial Madison SA
Famous Footwear
Genesco
Journey's
Macys
MARMAXX
Ross Stores, Inc.
Shoe Carnival Inc.
Sport Chek International
Winners Apparel Ltd.

**(13) Major/critical vendors of the debtors (over $100k)**

Adrem
AIT Freight Systems Inc
Anhui Z and A Import and Export Co
Aptos, Inc.
Asian Sourcing International Ltd
Aspiration Clothing
Bolar Hirsch & Jennings LLP
C & K Trading Co. Ltd.
Carmichael International Service
CCH Incorporated
China Smart Garment Limited
Ching Kung Him Wo Garment
Coins International Co. Ltd.
Comptroller of Maryland
Cores Accessories Ltd
Corporation Service Company
Dalian Utec Dress Co
Dane Reynolds Inc
Deloitte & Touche Products Company
Deloitte Tax LLP
Deltina Trading Pty Ltd
Diversified Distribution Systems
Domex Co. Ltd
Dragon Crowd Garment Inc
Dubhe Corporation
Duff & Phelps LLC
Dydrek Enterprises
East End Apparels
Eastman Exports Global Clothing
Everglory Int Grp App Inc
Federal Express Corp
Full Creative Co., Ltd
Fun Tees
Golden Bond Inc. Limited
GST Global Sports Tech
Hong Kong Hesheng Intl
J.A. Stowell Construction, Inc.
Jade Kingdom International Ltd
Jingzhou Mountain Leave Group
Kapilla Clothing Corp
KHQ Investment LLC
King Graphics
La Luminarc International Company

LEED Advisors, Inc.
Mailroom Finance, Inc
Massive Prints
Merry Link Development
Min Heng Apparel Ltd
Newtimes Far East
Ningbo Isun Fashion Co Ltd
Ningbo Seduno Import & Export Company, Ltd
Northstar Sourcing Group HK Ltd
O'Melveny & Myers LLP
Original JY&T Co Ltd
Owens Sportswear Co Ltd
Parigi Group Ltd – Roxy Girls
PT Busana Prima Global
PT Tyfountex Indonesia
Putian Xinxiesheng Footwear Co. Ltd
QTNP Apparels JSC
Samil Tong Sang Co.
SAP Industries, Inc.
Sheico (Thailand) Co. Ltd.
Srinivasa Fashions Pvt Ltd
Tanya Impex
Tex Ray Industrial Co Ltd
Thomson Reuters
US Customs & Border Protection
Vertex, Inc.
Victory Footwear Co
Weihai Textile Import and Export Co
Xiamen C&D Light Industry Co., Ltd

**(14) Insurance Carriers, Insurance Brokers, and Premium Finance Parties**

ACE American Insurance Company
Affiliated FM Insurance Company
Allied World Assurance Company (U.S.) Inc.
Arthur J Gallagher & Co Insurance
Computershare Technology Services
Continental Casualty Company
Endurance Risk Solutions Assurance Co.
Expeditors Intl
Federal Insurance Company
Great Northern Insurance Company

Lloyd's of London
National Union Fire Insurance Company of
Pittsburgh
Propel Insurance
RSUI Indemnity Company
Starr
U.S. Specialty Insurance Company
Willis Insurance Services
Willis Insurance Services of CA
Willis of New York, Inc
XL Insurance America, Inc.

**(15) Major Utility providers of the debtor**

Arakelian Enterprises, Inc.
AT&T
BGE
Brighthouse Network
Central Hudson Gas & Electric Corp
Charleston Water System
Cisco WebEx, LLC
City of Miami Beach
City of Pasadena
City of Santa Monica
Comed
Consolidated Communications
Consolidated Edison, Inc.
Constellation New Energy, Inc.
CR&R Inc
Duke Energy Florida Inc
E.J. Harrison & Sons
Eastern Municipal Water District
Florida Power & Light Company
Gila River Telecommunications
Granite Telecommunications, LLC
Gulf Power Company
Hawaiian Electric Co, Inc.
Hawaiian Telecom Inc
IESI NY Corporation
Industrial Retail Group (IRG)
Internatigonal Environmental
Jersey Central Power & Light (JCP&L)
JT Tech
Kaua'i Island Utility Cooperative
Keter Environmental Services, Inc

Lehi City Utilities
Level 3 Communications, LLC
Los Angeles Department of Water
Maui Disposal
Meco
MegaPath Inc.
Mesa Water District
Nevada Power Company
NexEra Energy
NJ Natural Gas Co
Northwest Natural Gas Company
Orange & Rockland Utilities Inc
Orlando Utilities Commission (OUC)
Pacific Gas and Electric Company
PacifiCorp
PAETEC (Windstream Corporation)
Park City Municipal Corp.
PG&E
Premiere Global Services, Inc. (PGi)
Puget Sound Energy
Questar Gas
Rainbow Environmental Services
Recology Golden Gate
Republic Silver State Disposal Serv
Royal Waste Services, Inc
Salish Network Inc
San Diego Gas & Electric (SDG&E)
San Francisco Public Utilities
Sawnee Electric Membership Corp
SCE&G
Seattle City Light
SMUD
Snohomish County PUD No 1
Snyderville Basin Water Reclamation
District
South Walton Utility Co., Inc
Southern California Edison Co
Southern California Gas Company
Southwest Gas Corporation
Sprint
Sustainable Solutions Group
Telecheck Services, Inc.
Time Warner Cable
T-Mobile
Trico Disposal, Inc.
Verizon California

Verizon New York
Verizon Wireless Services, LLC
Waste Management Inc of Florida
Waste Management of California, Inc.
Waste Management of NW Florida


**(15) Local, State and Federal Taxing
Authorities**

Anne Arundel County
Arizona Department of Revenue
Broward County Revenue Collector
California State Board of Equalization
California State Controller's Office
Charleston County Treasurer
City of Auburn Hills
City of Charleston
City of Elizabeth
City of Huntington Beach
City of Katy
City of Lakewood
City of Las Vegas
City of Los Angeles
City of Orlando
City of Pasadena
City of Philadelphia
City of Richmond
City of Santa Monica
City of Seattle
City of Sunrise
City of Sweetwater
City of Torrance
City of Winnipeg
Clark County Assessor
Clark County Department of Business
Colorado Department of Revenue
Commissioner of Revenue Services
Commonwealth of Virginia
County of Orange
County of Santa Clara
County of Ventura
CT Corporation System
David Piwonka, RTA Cypress
Delaware Secretary of State
Dept. of Financial Services State of Florida

Federal Wage & Labor Law Institute
Florida Department of Revenue
Fort Bend County Tax
Georgia Department of Revenue
Gila River Indian Community
Harris County
Harris-Fort Bend M.U.D. #4
Hawaii Department of Tax
Hawaii State Tax Collector
Hays County Tax Office
HSF Program
Illinois Department of Revenue
Internal Revenue Service
Jefferson County Treasurer
Kentucky State Treasurer
King County Treasury
Lee County Tax Collector
Los Angeles County Tax Collector
Massachusetts Department of Revenue
McInnes Cooper
Miami Dade County
Miami Dade Fire Rescue Department
Minister of Finance (Manitoba)
Minister of Revenue of Quebec
Ministry of Finance of Quebec
Nebraska Department of Revenue
Nevada Department of Taxation
New Jersey Division of Revenue
New York City Department of Finance
New York Department of Taxation
New York State Comptroller
New York State Sales Tax
North Carolina Department of Revenue
North Carolina Department of Revenue
Office of Finance, City of Los Angeles
Ohio Department of Taxation
Oklamhoma Tax Commission
Orange County Tax Collector
Orange County Treasurer
Park City Municipal Corp.
Party City Municipal Corp
Pennsylvania Department of Revenue
Pitkin County Treasurer
Receiver General - GST
Rhonda Skipper, Tax Collector
Richardson Kontogouris Emerson LLP

8

Riverside County Assessor
Sacramento County
San Bernardino County
San Diego County
San Luis Obispo County Tax Collector
South Carolina Department of Revenue
State Comptroller
State of California
State of Michigan
State of Minnesota Department of Revenue
State of New Jersey
Summit County Treasurer
Texas Comptroller of Public Accounts
Texas State Comptroller
Treasurer of Virginia
Utah County Treasurer
Utah State Tax Commission
Washington State

**(16) Other parties in interest not otherwise listed, e.g., material contract, lease, or license counterparties, potential litigation parties**

Litigation:
1st Place Team Sales, Inc.
Geotag
Glorious Sun Licensing Limited

Live Nation Merchandise Inc
Patricia Stockman-Sann
Rox Volleyball, Inc.
Temeka Inc
World Marketing, Inc.
Yusef Onder Erin

**(17) Judges and Trustees**

Benjamin Hackman Trial Attorney
Chief Judge Brendan L. Shannon
David Buchbinder Trial Attorney
Hannah M. McCollum Trial Attorney
Jane Leamy Trial Attorney
Judge Christopher S. Sontchi
Judge Kevin Gross
Judge Kevin J. Carey
Judge Laurie Selber Silverstein
Judge Mary F. Walrath
Juliet Sarkessian Trial Attorney
Linda Casey Trial Attorney
Mark Kenney Trial Attorney
Natalie Cox Trial Attorney
Richard Schepacarter Trial Attorney
T. Patrick Tinker Assistant U.S. Trustee
Tiiara Patton Trial Attorney
Timothy J. Fox, Jr. Trial Attorney

## SCHEDULE 2

**Connections to Potential Parties in Interest**

**CONNECTIONS TO POTENTIAL PARTIES IN INTEREST**

1.	PJSC was engaged within the last two years by the following Potential Parties in Interest (or one or more of their affiliates, as the case may be) in matters unrelated to these Chapter 11 Cases:  Genesco.

2.	PJSC has had extensive dealings with the following companies, which appear on the Debtors' Potential Parties in Interest list in Schedule 1, in matters unrelated to the Debtors and these Chapter 11 Cases:

	•	Bank of America and its affiliates
	•	General Electric Capital Corporation and its affiliates
	•	Wells Fargo and its affiliates

3.	A member of the PJSC transaction team, Chris Moynihan, is the son of Brian Moynihan, the current Chairman and CEO of Bank of America, which is a current creditor of the Debtors.  PJSC does not believe that Mr. Moynihan's familial relationship presents a conflict in these Chapter 11 Cases but has disclosed it out of an abundance of caution.