IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------x
In re:                                : Chapter 11
                                      :
QUICKSILVER, INC., *et al.*,[1]       : Case No. 15-11880 (BLS)
                                      :
      Debtors.                      : (Jointly Administered)
                                      :
                                      : Hearing Date: October 6, 2015 at 10:00 a.m. ET
                                      : Objection Deadline: Sept. 29, 2015 at 4:00 p.m. ET
                                      : Related to Docket No. 26
---------------------------------------------------------x

**OBJECTION OF FEDERAL REALTY INVESTMENT TRUST AND
GGP LIMITED PARTNERSHIP TO DEBTORS' MOTION FOR ORDER
PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 365(a) AND 554,
BANKRUPTCY RULES 6006 AND 9014, AND LOCAL BANKRUPTCY RULE
9013-1 AUTHORIZING AND APPROVING PROCEDURES FOR REJECTION
OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

TO THE HONORABLE BRENDAN LINEHAN SHANNON,
CHIEF UNITED STATES BANKRUPTCY COURT JUDGE:

      Federal Realty Investment Trust ("Federal") and GGP Limited Partnership ("GGP" and together with Federal, the "Landlords" and each a "Landlord"), by and through their undersigned attorneys, hereby make this objection (the "Objection") to the Debtors' Motion for Order Pursuant to Bankruptcy Code Sections 105, 365(a) and 554, Bankruptcy Rules 6006 and 9014, and Local Bankruptcy Rule 9013-1 Authorizing and Approving Procedures for Rejection of Executory Contracts and Unexpired Leases [D.I. 26] (the "Motion"), and in support thereof, states as follows:

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

DMEAST #22892856 v1

1.      Landlords are the owners or agents for the owners of those certain properties listed on Schedule A hereto in which Debtors operate retail stores (the "Premises") pursuant to written unexpired lease or license agreements of nonresidential real property (the "Leases" and each a "Lease"), which are affected by the relief sought in the Motion.

2.      The Leases are leases "of real property in a shopping center" as that term is used in Section 365(b)(3).  *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990).

3.      By the Motion, Debtors seek approval of procedures whereby they may reject one or more leases, including the Leases, without further order of court, as well as procedures for the abandonment of certain property located at Debtors' leaseholds (the "Rejection Procedures").

## Effective Date of Lease Rejection

4.      Landlords do not challenge the Debtors' business judgment in determining whether it should reject various leases.  However, Landlords do challenge Debtors' attempt to set the date for the rejection of the Lease as a date other than the later of the date when Debtors have (i) unequivocally relinquished possession of the premises, (ii) returned same to the Landlord free of any interests or property of any other parties and (iii) either (a) the date an order approving the rejection has been entered or (b) the date the time to object to the rejection of a lease has expired with no objections having been filed.

5.      Section 365(a) of the Bankruptcy Code provides that a debtor-in-possession may, subject to court approval, assume or reject its leases.  Bankruptcy Rule 6006 provides that a proceeding to assume or reject an unexpired lease is governed by Bankruptcy Rule 9014 (Contested Matters), and requires notice and a hearing.

6.      In this matter, Debtors propose that the rejection of a Real Property Lease become effective upon the <u>earlier of</u> the date of filing of the Rejection Notice and the date Debtors vacate the premises and turn over keys, key codes, and security codes, if any, to the affected Landlord.  *See* Motion, ¶ 10(a).  However, the Debtors do <u>not</u> allege that they will have vacated the premises and/or removed or abandoned their property as of the date of issuance of the Rejection Notice.  Indeed, if the Debtors vacate the Premises and notify the Landlord while at the same time filing the Rejection Notice, the Debtors would have the Lease rejected that very same day even though the Landlord had no prior notice and there was still a period following that date when objections to the rejection could be filed, and/or property could be removed.

7.      Further, the Debtors have reserved the opportunity to withdraw a Rejection Notice and/or to re-enter the premises after the Rejection Notice is filed to remove personal property located at any of the Premises prior to the expiration of the period within which a party must file and serve a written objection to the Rejection Notice.

8.      Similarly, in the event of an objection to the rejection, the Debtors seek to relate the effective date of rejection of such Lease back to the Rejection Date, if such objection is overruled or withdrawn.  The effective date should not be retroactive to the date of filing and service of the Rejection Notice.  This creates a discrepancy between the time of rejection and the date that the Landlord has unequivocal possession and control over the Premises.  One of the lynchpins to rejection procedure orders which allow rejection upon notice from the debtors, without further order of the court, is the fact that the rejection notice is <u>unequivocal</u> such that the landlord will know that once the date for rejection is announced, the landlord is free to commence reletting activities.  Here, there is no such certainty.

DMEAST #22892856 v1

9. First, the Debtors have asked for a Rejection Date which could easily be prior to the rejection Objection deadline, leaving the landlord in limbo for the entire objection period. Moreover, the proposed Rejection Date may still be the date of filing of the Rejection Notice even if a non-landlord objection has been filed, unless the Court orders to the contrary or the Debtors and the Counterparty(s) have agreed.

10. Second, retroactive rejection presents a risk of loss to the Landlords. Once the Lease is rejected, the Debtors no longer have an insurable interest in the Lease or the Premises, making the Landlord subject to uninsurable claims from third parties that enter onto the Premises after the effective date of rejection. This shifts all the risk of loss for this period to the Landlord. This is not supported by the Bankruptcy Code and is contrary to the policy of Section 365.

11. Certainty in the stated date for lease rejection is not the only fact necessary for the establishment of the rejection date. As numerous rejection procedure orders approved by this Court, and elsewhere, provide, the rejection date is normally the <u>later</u> of the date when the time to object to the rejection has expired; or the date the debtor actually turns over possession to the landlord by delivery of the premises, and the keys therefor, in "broom clean" condition with all property removed and/or abandoned pursuant to an order of court.

12. Landlords further object to the proposed Rejection Date where an objection is interposed by a party other than the landlord and said objection is overruled. As noted, the Debtors request that the Lease be rejected the earlier of (i) the date of the filing of the Rejection Notice, and (ii) the date the Debtors vacate the Premises. A landlord must not be prejudiced with regard to objections filed by other parties in interest. Where the landlord of the Premises did not interpose the objection, there is no certainty as to when the Lease will be

4

rejected, and the Landlord must not be punished with a retroactive rejection. The Landlords have no ability to release, or otherwise deal with, the Premises while the Rejection Notice is being litigated before the Court. Rejection in such circumstances, therefore, must not be prior to the Debtors' unequivocal surrender of the Premises and a Court's Order overruling the objection, or as otherwise determined by the Court.

13.     For the reasons set forth above, Debtors' proposed rejection procedures should not be approved to the extent that they provide for rejection prior to the <u>later</u> of (a) the expiration of the objection period; (b) the date set forth in the Rejection Notice; (c) the date the Debtors have unequivocally surrendered the premises to the landlord with all property removed or abandoned free of any interests in property of other parties; or (d) as otherwise ordered by the Court. The Debtors are rejecting the Leases, and it is their burden to be out of the Premises prior to the rejection. The current procedures proposed by the Debtors inappropriately shifts the burden to the Landlords and are not consistent with other procedures orders previously approved by this Court.

**Rejection Notice**

14.     Debtors propose to serve the Rejection Notice by overnight delivery upon the counterparties to the Leases at the "last known address available to the Debtors." In many instances, the Debtors use the mailing address used for the payment of rent, which results in the Rejection Notice being sent to a lock box maintained by a bank for the collection of rents, and are rarely received by the Landlords themselves. Any Order approving Rejection Procedures, therefore, should require that the notices be sent to the notice address set forth in the Leases (not the payment addresses), unless those notice addresses have been modified in accordance with the terms of the Leases. While this may require that the Debtors actually check their files for current

5

addresses, it is the only way to assure that the Rejection Notice will likely be received by the Landlords.

### Objection Procedures

15. Should a party in interest object to the proposed rejection, the Debtors propose that such Objection be served upon a burdensome list of Objection Notice Parties at the expense of the objector. The Court should limit service of an Objection only upon (i) counsel for the Debtors, (ii) counsel to the Committee, (iii) the Office of the United States Trustee, and (iv) in the case of an Objection by a party other than the Counterparty to the affected Contract or Lease, the affected Counterparty.

### Abandonment of Property

16. The Motion does not adequately protect the Landlords with respect to property that may remain at the Premises. By the Motion, the Debtors seek the right to abandon any Remaining Property on the Premises upon the Rejection Date. The abandonment of property can result in significant costs to Landlords as debtors typically leave vacated spaces cluttered with inventory, supplies, and FF&E. This burdens Landlords with the task of cleaning up the Premises, removing and/or storing remaining property, and potentially dealing with any unknown third party security interests that may exist with respect to the abandoned property. Resolving this issue at the outset will benefit Debtors and assist in minimizing administrative rent exposure. *In re Pacific-Atlantic Trading Co.*, 27 F.3d 401 (9th Cir. 1994).

17. Landlords do not object to the abandonment of property pursuant to Section 554, so long as the order provides that upon the effective date of rejection of the Leases, the Landlords may dispose of any remaining property without further notice, and free and clear

of all liens, claims, encumbrances, interests and/or other rights of the Debtors <u>or third parties</u>, and without any liability to the Debtors <u>or any third party</u>.  Because Debtors have specifically indicated that leased property belonging to third parties may be present at the Premises, any abandonment should be free and clear of the interest of any such third parties as well.

18.     Landlords understand that the Debtors will have advised all parties of their right to retrieve such property as of the filing of the Rejection Notice, but also understand that such time may not have passed until the date when objections to the rejection could be filed. Therefore, Landlords should not bear the risk on this issue, and Landlords must have clarity that it may dispose of any remaining property at the Premises, without exception, and without the potential of Landlords facing liability from such third parties.  If leased property remains that Landlords are not free to dispose of without liability, the effective date of rejection should not occur until such property is removed from the Premises by the Debtors or affected third party. Section 365 does not contemplate an effective rejection until the Premises is fully turned over to the Landlord, such that it has complete control of the Premises (without the additional burden of storing property for a third party).

19.     It does not serve the purposes of the Bankruptcy Code to shift the risks of damage to the Premises, storage, or other issues attendant to rejection to the Landlords.  The Debtors control the timing of the rejection of the Leases, not the Landlords.  If Debtors seek to reject the Leases, Debtors must: (a) remove of all property as required by the Leases; (b) include procedures to adequately protect Landlords' rights and interests; or (c) agree that the costs arising from removal, storage, or potential liability for dealing with third party security interests or equipment leases shall be an administrative expense of the bankruptcy estate.  The Debtors are responsible for Landlords' legitimate claims arising from the removal and disposal of such

property, as well as costs associated with the restoration of the Premises to the condition required under the Leases.

20. Any order approving rejection, therefore, should clearly provide that no rejection shall take effect until all property is removed from the Premises, or that any property left at the Premises is abandoned to Landlords free and clear of all liens, claims, encumbrances, and rights of Debtors or any third party, and that Landlords may dispose of such abandoned property in its sole discretion, and without further notice or liability to the Debtors <u>or any third party</u>.

### Proposed Rejection Order

21. Pursuant to the proposed Order attached to the Motion, the Debtors do not require the attachment of a proposed Rejection Order to the Rejection Notice. The Rejection Notice should include the proposed Rejection Order to ensure the Debtors compliance with the approved Rejection Procedures and to give notice to the Notice Parties of the relief sought by the Rejection Notice. This is typical practice in this jurisdiction and prevents unnecessary objections to the form of order filed with the Court following the expiration of the objection period where the Landlord does not otherwise object.

### Joinder in Other Objections

22. Landlords hereby join in the objections filed by Debtors' other landlords, to the extent not inconsistent herewith.

WHEREFORE, Landlords respectfully request that the Bankruptcy Court modify any order approving the Rejection Procedures consistent with the foregoing objections; and grant such other and further relief as may be just and required under all of the circumstances.

| | |
|---|---|
| Dated: September 29, 2015<br>Wilmington, Delaware | */s/ Leslie C. Heilman*<br>Matthew G. Summers, Esquire (No. 5533)<br>Leslie C. Heilman, Esquire (No. 4716)<br>BALLARD SPAHR LLP<br>919 North Market Street, 11th Floor<br>Wilmington, Delaware 19801<br>Telephone: (302) 252-4465<br>Facsimile: (302) 252-4466<br>E-mail: summersm@ballardspahr.com<br>          heilmanl@ballardspahr.com<br><br>and<br><br>David L. Pollack, Esquire<br>BALLARD SPAHR LLP<br>1735 Market Street, 51st Floor<br>Philadelphia, PA 19103<br>Telephone: (215) 864-8325<br>Facsimile: (215) 864-8999<br>E-mail: pollack@ballardspahr.com<br><br>*Counsel for Federal Realty Investment Trust and GGP Limited Partnership* |