# EXHIBIT A

# LEASE

APPROVED
LEGAL  DCL/KP
LEASING AGENT
VP OF LEASING

---
"QS RETAIL, INC."
## TENANT

---
"QUIKSILVER FACTORY STORE"
## TRADE NAME

---
NONE
## GUARANTOR

# GREAT LAKES CROSSING OUTLETS

A SuperValue Regional Retail Development

CITY OF AUBURN HILLS
STATE OF MICHIGAN

presently occupied by another entity, then the foregoing eighteen (18) month period under this Section 5.03 (and the four (4) year period set forth in Section 5.04) shall be modified to commence as of (i) the currently projected date of such initial opening, or (ii) the currently projected date of Landlord's repossession of the Leased Premises from such present entity, as applicable.

### SECTION 5.04     ULTIMATE COMMENCEMENT DATE

Notwithstanding anything to the contrary contained herein, if for any reason whatsoever (including without limitation, excusable delay) the term of this Lease shall not have commenced prior to such date as shall be four (4) years from the date of this Lease (subject to extension as set forth in Section 5.03), then this Lease shall be automatically terminated without further act of either party hereto, and the parties hereto shall be released from all obligations hereunder.

## ARTICLE VI.
## ALTERATIONS, CHANGES AND ADDITIONS

### SECTION 6.01     INSTALLATION BY TENANT

Tenant shall not make or cause to be made any alterations, additions or improvements to the Leased Premises (for example, but without limiting the generality of the foregoing, Tenant shall not install or cause to be installed any signs, floor covering, interior or exterior lighting, plumbing fixtures, shades, canopies or awnings, electronic detection devices, antennas, mechanical, electrical or sprinkler systems, or make any changes to the storefront) without the prior written approval of Landlord in each instance. Tenant shall present to Landlord plans and specifications for such work at the time approval is sought, in accordance with criteria and procedures as provided in Exhibit B. Notwithstanding anything to the contrary contained in this Section, Tenant shall have the right to make non-structural alterations, changes and additions to the interior of the Leased Premises costing in the aggregate not in excess of $50,000.00 in any twelve (12) calendar month period without the prior written consent of Landlord, provided that Tenant furnishes to Landlord, at least ten (10) days prior to commencing such alterations, changes or additions, documents substantiating the proposed alterations, changes or additions and the costs thereof, and provided further that such alterations, changes and additions are consistent with the Working Drawings and Specifications, do not change the storefront or overall appearance of the Leased Premises, as originally approved by Landlord, do not affect any utility system (including, but not limited to, the air conditioning and fire protection systems), do not result in roof or deck penetrations, and are installed only after Tenant has obtained the necessary governmental permits for the work; all other alterations shall require Landlord's consent. Within ten days following the completion of any alterations, changes or additions, Tenant shall furnish Landlord with a detailed breakdown of the final and total construction and other costs thereof.

### SECTION 6.02     REMOVAL BY TENANT

All alterations, decorations, additions, trade fixtures and improvements ("Tenant Improvements") made by Tenant shall be deemed to have attached to the leasehold and to have become the property of Landlord upon such attachment. Upon expiration or earlier termination of the term of this Lease, Tenant shall not remove any of such ~~alterations, decorations, additions, trade fixtures or improvements~~ Tenant Improvements. However, Landlord may, ~~however,~~ designate by written notice to Tenant ~~those alterations, decorations, additions, improvements, or trade fixtures~~ at the time such Tenant Improvements are made (assuming Landlord receives prior notice thereof) those Tenant Improvements which shall be removed by Tenant at the expiration or earlier termination of the Lease, and Tenant shall promptly remove the same and repair any damage to the Leased Premises caused by such removal. Landlord shall have the right to padlock or otherwise secure the Leased Premises upon the expiration or earlier termination of the term of the Lease when Landlord obtains lawful possession. Landlord shall also have the right, following written notice to Tenant and Tenant's continued failure to correct the problem for more than ten (10) days after receipt of such notice, at any time during the term of this Lease, and upon expiration or earlier termination of the term of this Lease (assuming Landlord has obtained lawful permission), to immediately enter the Leased Premises in order to remove any items which shall be determined by Landlord to be a violation of existing health, safety, security or other similar codes or regulations affecting or applicable to the Leased Premises or the regional retail development. Landlord shall attempt to provide prior notification to Tenant of such removal, subject to the then existing circumstances. At the expiration or earlier termination of this lease, Tenant need not demolish (or restore) the Leased Premises so long as Tenant's improvements to the Leased Premises are typical for a retail store. If Tenant proposes to construct any non-typical features in the Leased Premises, Landlord may, at time of submission of plans for such features to Landlord for approval, notify Tenant in writing that Tenant must remove such features within fifteen (15) days after the expiration or any earlier termination of this lease. In the event that Tenant elects to proceed with such non-typical features after notice from Landlord or proceeds with such features without requesting approval by Landlord, Tenant shall, at Tenant's cost (and upon notice from Landlord pursuant to Section 6.02 of this Lease as to non-typical features not submitted to Landlord for approval) remove the same upon the expiration or earlier termination of this Lease.

### SECTION 6.03     CHANGES AND ADDITIONS

Landlord, for itself and for the underlying lessor, if any, hereby reserves the right at any time, and from time to time, to make alterations to, and to build additional stories on the building in which the Leased Premises are located, and to construct other buildings and improvements in the regional retail development, including any modifications of

the Common Areas in connection therewith, to enlarge or reduce the Shopping Center or the regional retail development, to add decks or elevated parking facilities, and to sell or lease any part of the land comprising the regional retail development, as shown on the site plan attached hereto as Exhibit A, for the construction thereon of a building(s) to be occupied by an Anchor Store(s) which may or may not be part of the regional retail development. Landlord also reserves for itself and for the underlying lessor, if any, the right at any time, and from time to time, to change, modify, or abolish any temporary off-site utility or any storm sewer or retention pond system (if applicable) serving the regional retail development. The purpose of Exhibit A is to show the approximate location of the Leased Premises within the Shopping Center and Landlord reserves for itself and for the underlying lessor, if any, the right at any time to relocate, enlarge, or reconfigure the various buildings, parking areas and other Common Areas on said site plan. Tenant hereby consents to the exercise by Landlord of the rights set forth in this Section 6.03 and agrees that the exercise of such rights by Landlord or by the underlying lessor, if any, shall not diminish Tenant's obligations under this Lease. **Notwithstanding anything to the contrary contained in this Section, in exercising its rights under this Section, Landlord shall not materially adversely alter the visibility of or access to the Leased Premises from the Mall. If, while exercising its rights under this Section, Landlord prevents Tenant from operating its business in the Leased Premises and Tenant actual closes for three (3) or more consecutive business days (or ten (10) days in any Lease Year) due to no fault of Tenant, then commencing with the expiration of such three (3) day period or such ten (10) day period, as applicable, and continuing until Landlord's activities have ceased to the point where Tenant is able to reopen, minimum rent shall be abated as Tenant's sole remedy, provided if Landlord's activities prevent Tenant from operating its business for ten (10) or more consecutive business days due to no fault of Tenant, then commencing with the expiration of such ten (10) day period, and continuing until Landlord's activities have ceased to the point where Tenant is able to reopen, all other rent and charges payable by Tenant to Landlord hereunder (along with the minimum rent) shall be abated as Tenant's sole remedy.**

## ARTICLE VII.
## CONDUCT OF BUSINESS BY TENANT

### SECTION 7.01    USE OF PREMISES

Tenant shall continuously use and occupy the entire Leased Premises during the term of this Lease, which use and occupancy shall be solely for the purpose of conducting the business specifically set forth in the Data Sheet and for no other purpose or purposes. It is agreed that the use specified in the Data Sheet has been, and is, a material inducement to Landlord in entering into this Lease with Tenant, and that Landlord would not enter into this Lease without this inducement. If any governmental license or permit shall be required for the proper and lawful conduct of Tenant's business or other activity carried on in the Leased Premises or if a failure to procure such a license or permit might or would in any way affect Landlord or the Shopping Center, then Tenant, at Tenant's expense, shall duly procure and thereafter maintain such license or permit and submit the same for inspection by Landlord. Tenant, at Tenant's expense, shall, at all times, comply with the requirements of each such license or permit.

### SECTION 7.02    OPERATION OF BUSINESS

Tenant shall be open for business and operate continuously, during all days and hours established by Landlord, in all of the Leased Premises during the entire term of this Lease, and shall conduct its business at all times in a first class and reputable manner, maintaining at all times ~~a full~~ an adequate staff of employees and ~~a full and complete~~ an adequate stock of merchandise **provided Tenant shall be obligated to open and operate only during those days and hours during which at least sixty-five percent (65%) (by number) of the other tenants in the Shopping Center (excluding banks and financial institutions, food purveyors, beauty salons, theaters, travel agencies and other service uses) are similarly obligated or are open**. However, the Leased Premises may be closed on account of the order of any duly constituted authority, or for up to five (5) days during each Lease Year for holidays, conducting a physical inventory and the like (and in the event of such closing for taking of inventory Tenant shall notify Landlord in writing at least ten (10) days prior to such closing), or for the purpose of making repairs or improvements, or during the period of strikes, lockouts, emergencies or other causes beyond Tenant's control. Failure by Tenant so to be open for business and to operate shall entitle Landlord, in addition to other remedies provided in this Lease, to mandatory injunctive relief~~, and shall give Landlord the right to erect a storefront barricade in front of the leased premises at Tenant's expense, which barricade shall not be removed except upon Landlord's prior written consent and with Tenant paying the cost of such removal. The erection of such a barricade by Landlord shall not be construed as a re-entry by Landlord into the leased premises or as an acceptance by Landlord of any surrender of possession of the leased premises by Tenant~~. In the event the maximum hours during which the Shopping Center (or any separate part thereof) is legally permitted to be open to the public are regulated by any lawful authority, then Landlord shall be the sole judge of which days and hours shall be Shopping Center business days and hours (and the days and hours applicable to any such separate part). Tenant shall install and maintain at all times a display of merchandise in the display windows, if any, of the Leased Premises and shall keep the same well lighted during such hours as Landlord shall designate. Tenant, at Tenant's expense, shall promptly comply with all present and future laws, ordinances, orders, rules, regulations and requirements of all governmental authorities having jurisdiction, affecting or applicable to the Leased Premises or the cleanliness, safety, occupancy and use of the same, whether or not any such law, ordinance, order, rule, regulation or requirement is substantial, or foreseen or unforeseen, or ordinary or extraordinary, or shall necessitate structural changes or improvements (**excluding structural changes or improvements to the roof, foundation or support structures of the Shopping Center buildings or to common area facilities, which are Landlord's obligation to maintain under this Lease, provided Tenant shall be**

obligated for the full cost of same if same are necessitated by Tenant's particular manner of use of or alteration of the Leased Premises or by the acts or negligence of Tenant, its agents, employees or contractors) or interfere with the use and enjoyment of the Leased Premises. Tenant shall not do or permit anything to be done in or about the Leased Premises, or bring anything therein, which will in any way conflict with any such law, ordinance, order, rule, regulation or requirement affecting the occupancy or use of the Leased Premises or the regional retail development which is or may hereafter be enacted or promulgated by governmental authorities, or in any way obstruct or interfere with the rights of others, nor shall Tenant use or allow the premises to be used for any improper, immoral or objectionable purposes as determined by Landlord. Tenant shall not cause or permit the use, generation, storage or disposal in or about the Leased Premises or the regional retail development of any substances, materials or wastes subject to regulation under any federal or state or local laws from time to time in effect concerning hazardous, toxic or radioactive materials unless Tenant shall have received Landlord's prior written consent, which Landlord may withhold or at any time revoke in its sole discretion. The foregoing restriction shall not extend to hazardous substances typically found or used in stores within first class enclosed regional Shopping Centers so long as (i) such substances and any equipment which generates such substances are maintained only in such quantities as are reasonably necessary for Tenant's operations in the Leased Premises, (ii) such substances are used strictly in accordance with the manufacturers' instructions therefor, (iii) such substances are not disposed of in or about the Shopping Center in a manner which would constitute a release or discharge thereof, (iv) all such substances and any equipment which generates such substances are removed from the Shopping Center by Tenant upon the expiration or earlier termination of this lease, and (v) any use, storage, generation, disposal, release or discharge by Tenant of hazardous materials in or about the Shopping Center as is permitted pursuant hereto shall be carried out in compliance with all applicable federal, state and local laws, ordinances, rules and regulations and the requirements of Landlord's insurance carriers and mortgagees; Tenant's covenants set forth in this paragraph shall survive expiration of the lease term or sooner termination of the Lease. Tenant shall comply with all federal, state and local laws in effect from time to time prohibiting discrimination or segregation by reason of race, color, creed, age, religion, sex or national origin. No auction, liquidation, going out of business, fire or bankruptcy sales may be conducted or advertised by sign or otherwise in the Leased Premises. Tenant shall display and sell only better-quality, ~~current-season~~ merchandise and Tenant's sales practices shall be in accord with standards and practices generally acceptable in enclosed high-quality, value-oriented regional shopping centers. Tenant shall be obligated to permit returns of merchandise and shall allow cash refunds or store credits on such returns, except in connection with special sales and close outs and except where the merchandise was damaged by the customer or returned more than thirty (30) days after purchase. Tenant shall not offer any goods or services which ~~landlord determines, in its sole discretion, to be~~ are inconsistent with the image of a high-quality, family-oriented regional retail development, nor shall Tenant display or sell any goods containing portrayals which Landlord determines, in its sole but good faith discretion, to be lewd, graphically violent or pornographic. Tenant agrees that it will conduct its business in good faith, and will not do any act tending to injure the reputation of the Shopping Center (or any part thereof) as determined by Landlord. Tenant shall not sell or display any paraphernalia used in the preparation or consumption of controlled substances. In the event Landlord has approved Tenant's remaining open for business after normal Shopping Center hours (and/or any hours applicable to that part of the Shopping Center containing the Leased Premises), then such approval shall be conditioned upon Tenant's paying for all additional costs incurred by Landlord as a result thereof. Tenant shall not permit noise or odors in the Leased Premises which are objected to by Landlord and, upon written notice from Landlord, Tenant shall immediately cease and desist from causing such noise or odor, and failing of which Landlord may deem the same a material breach of this Lease. Tenant shall not permit the operation of any coin operated or vending machines or pay telephones on the Leased Premises, other than in the areas reserved solely for the use of Tenant's employees. Tenant shall not sell or display any merchandise within ~~five feet (5')~~ three feet (3') of the storefront leaseline or opening unless such sale or display shall be expressly approved on the Store Design Drawings or otherwise approved by Landlord, in writing, except that Tenant shall be permitted to display merchandise in the display windows, if any. Tenant shall not use the areas adjacent to the Leased Premises for business purposes. Tenant shall not store anything in service or exit corridors. Tenant agrees that all receiving and delivery of goods and merchandise, and all removal of merchandise, supplies, equipment, trash and garbage, and all storage of trash and garbage, shall be made only by way of or in the areas provided therefor by Landlord. Tenant shall not use or permit the use of any portion of the Leased Premises as sleeping quarters, lodging rooms, or for any unlawful purposes. Tenant shall not install any radio or television or other similar device exterior to the Leased Premises and shall not erect any aerial on the roof or exterior walls of any building within the regional retail development. Landlord may direct the use of all pest extermination contractors at the sole cost and expense of Tenant and at such intervals as Landlord may require. The rates charged by such contractors shall be competitive with those charged by other pest extermination contractors doing business in the vicinity of the Shopping Center. Failure of Tenant to employ the pest extermination contractor designated by Landlord shall entitle Landlord to employ such contractor with respect to Tenant's premises and Tenant shall reimburse Landlord for the cost thereof. Landlord shall have the option to provide pest extermination services for the Shopping Center or the regional retail development or any part thereof, in which event Tenant shall pay to Landlord Tenant's proportionate share of the cost of such service, with such proportionate share to be calculated in the manner provided in Section 2.05 of this Lease. In the event that Tenant is permitted pursuant to this Lease to engage in the sale of food and beverages from the Leased Premises, then Tenant shall: (i) offer such food and beverages only pursuant to a menu approved by Landlord, which shall not be changed without Landlord's prior written consent (which consent Landlord may grant or withhold in its sole and absolute discretion), (ii) serve its customers in containers or dishes and with utensils to be approved by Landlord, subject to change by Landlord from time to time, (iii) be solely responsible for prompt disposal within the premises of all trash, garbage and debris, and (iv) inspect and maintain all grease traps, pans and hood ventilators in good order, condition and repair, and shall contract for same if and as required by Landlord. The covenants of Tenant

regarding hazardous, toxic or radioactive materials, as set forth in this Lease, shall survive the expiration or earlier termination of the term of this Lease. Without limiting any of the foregoing provisions, Tenant also shall be required to maintain, at all times, a minimum staff of two (2) employees for operation of the Leased Premises, and Tenant shall not permit the Leased Premises to be left unattended at any time. ~~In the event that the leased premises, at any time, shall not be staffed by at least two (2) employees, or shall be left unattended, then, in addition to all other remedies available to Landlord, Landlord shall have the right to terminate this Lease upon ten (10) days' prior written notice to Tenant, in which event this Lease shall terminate on the date specified in such notice, but Tenant shall remain liable for all obligations arising during the original stated term as provided in this Lease. If Landlord shall exercise such termination right, Tenant shall have the right to vitiate such termination by written agreement (entered into within such ten (10) day period) to increase the minimum rent set forth in Section 3.01 hereof (as increased pursuant to other provisions of this Lease) to three (3) times the amount otherwise required. In the event of such vitiation, such increased rent shall become effective immediately and shall continue in effect for the remaining term of the Lease (subject to further increase pursuant hereto and pursuant to the other provisions of this Lease), and Tenant shall continue to be obligated to operate with a minimum staff of two (2) employees and shall not permit the leased premises to be left unattended. To the extent that Tenant shall accept payment by credit card for goods or services offered from the Leased Premises, Tenant shall be obligated to comply with the "point of purchase" display requirements of its merchant agreement with the credit card company designated in writing by Landlord from time to time. If Landlord has not designated a particular credit card company, then the provisions of this paragraph shall not apply. Likewise, if Tenant does not have a merchant agreement with the credit card company designated by Landlord, the provisions of this paragraph shall not apply.~~

### SECTION 7.03    RADIUS

During the term of this Lease, in the event Tenant, its parent corporation or subsidiary corporation, or its franchisor or franchisee, or its licensor or licensee, or any person, firm, corporation or other entity who or which controls or is controlled by Tenant, or by any person, firm, corporation or other entity which directly or indirectly controls or is controlled by Tenant, shall, directly or indirectly, either individually or as a partner or stockholder or otherwise, own, operate or become financially interested in any retail outlet business similar to or in competition with the business of Tenant described in Section 7.01 **which is operating under a name under which Tenant is permitted to operate pursuant to the terms of Section 16.01** hereof (or any name which includes all or any portion of such name or is similar thereto) within the radius area from the Leased Premises which is set forth in Section 7.03 of the Data Sheet, then the Gross Sales (as defined in this Lease) of any such business or businesses within said radius shall be included in the Gross Sales made from the Leased Premises and the percentage rent hereunder shall be computed upon the aggregate of the Gross Sales made from the Leased Premises and by any such other business or businesses then conducted within said radius and Tenant shall report and maintain records of such sales in the manner provided in Article III hereof. This Section 7.03 shall not apply to any such business or businesses open and being operated by Tenant within said radius as of the date of this Lease as long as such business or businesses shall continue to be operated in the same location(s) existing as of said date, nor shall this Section apply to a store **which is not selling any of the merchandise sold at the Leased Premises. In addition, a shop-in-shop (i.e., a department in a department store operated under the name of or bearing signage with the name of Tenant) shall not violate this Section so long as such department is not operated by Tenant or any parent, subsidiary, affiliate, franchisee, licensee or concessionaire of Tenant and Tenant does no more then sell merchandise at wholesale to the operator of the store.** If Tenant fails to make payments required pursuant to this Section 7.03, Landlord or Landlord's authorized representative or agent shall have the right at all reasonable times during the term hereof and for a period of at least ~~four (4)~~three (3) years after the expiration of the term of this Lease, to inspect, audit, copy and/or make extracts of the books, source documents, records and accounts pertaining to such other business or businesses conducted within said radius, in accordance with the provisions of Article IV hereof, for the purpose of determining or verifying the additional rents due to Landlord pursuant to this Section. Moreover, in the event Tenant fails to supply to Landlord sales records with respect to any such similar or competing business, Landlord shall have the right to estimate the sales for such businesses based upon Tenant's Gross Sales in the Leased Premises, and the additional percentage rent generated from the inclusion of such estimated sales and Tenant's Gross Sales shall be deemed additional rent to be paid by Tenant in accordance with the provisions of Section 2.02 and 2.06 of this Lease.

### SECTION 7.04    STORAGE, OFFICE SPACE

Tenant shall warehouse, store and/or stock in the Leased Premises only such goods, wares and merchandise as Tenant intends to offer for sale at retail at, in, from or upon the Leased Premises. This shall not preclude occasional emergency transfers of merchandise from the other stores of Tenant, if any, not located in the Shopping Center. Tenant shall use for office, clerical or other non-selling purposes only such space in the Leased Premises as is from time to time reasonably required for Tenant's business in the Leased Premises.

### SECTION 7.05    CARE OF PREMISES

Tenant, at Tenant's expense, shall at all times keep the Leased Premises (including the service areas adjacent to the Leased Premises, display windows and signs) orderly, neat, safe, clean and free from rubbish and dirt, and vermin, and shall store all trash, garbage and other solid waste within the Leased Premises. Tenant shall not burn any trash or garbage at any time in or about the regional retail development. Landlord may direct the use by Tenant at Tenant's expense of all solid waste disposal contractors at such intervals as Landlord may require. **The rates charged *by* such contractors shall be competitive with those charged by other solid waste disposal contractors doing business in the vicinity of the Shopping Center.** If Landlord shall provide or contract for any services or facilities for solid

SECTION 8.03    COMMON AREA USE RENT AND CENTER PROMOTION

Tenant shall pay to Landlord common area use rent equal to the amount set forth in Section 8.03 of the Data Sheet (payable monthly, in advance, on the first day of each month), and, as payment to Landlord for promoting the Shopping Center, ~~an initial promotion charge,~~ and an annual promotion charge (payable monthly, in advance, on the first day of each month), in the amounts also set forth in the Data Sheet, provided such common area use rent and annual promotion charge amounts apply only until expiration of the "Reference Year" set forth in Section 8.03 of the Data Sheet, and the common area use rent and annual promotion charge shall both be increased on each January 1st following expiration of the Reference Year by a percentage equal to five percent (5%) of the amount for the prior calendar year. The common area use rent payable by Tenant to Landlord under this Section shall be deemed rent for Tenant's use and occupancy of the Common Areas as described in this Article VIII and shall not be reimbursement to Landlord for any maintenance, repair or replacement costs, nor for management or operational services or otherwise. The promotion charges payable by Tenant to Landlord shall be deemed additional rent and shall not be reimbursement to Landlord for promotion expenditures, promotion services or otherwise. Nothing contained herein shall prohibit Landlord from allocating all or any portion of the foregoing common area use rent and promotion charges towards any charges or expenses paid or incurred by Landlord in connection with the regional retail development if Landlord so elects.

If Landlord pays or incurs amounts to make homeland security related changes to the Shopping Center or regional retail development in any year which are:

(1)    required by law or governmental order; or

(2)    required by its insurance carrier as a condition of maintaining then current coverages at rates that are no more than one hundred five percent (105%) of those then current; or

(3)    recommended by a recognized homeland security expert as part of a plan to defend the Shopping Center from potential acts of violence and cost more than Two Hundred Fifty Thousand and 00/100ths Dollars ($250,000.00) (the "Threshold Amount") in a single calendar year,

then the common area use rent shall be increased for such year by an amount equal to Tenant's proportionate share (as such term is defined in Section 2.05) of the costs and expenses paid or incurred by Landlord for such homeland security related changes; provided that, in the calculation of such increase, costs and expenses incurred under subparagraph (3) up to the Threshold Amount under subparagraph (3) shall be excluded.

## ARTICLE IX.
## SIGNS

SECTION 9.01    SIGNS

Tenant shall affix a sign to the exterior surface of the storefront of the Leased Premises fronting on the enclosed Mall and shall maintain said sign in good condition and repair during the entire term of this Lease. Said sign shall conform to the criteria for signs contained in Exhibit B, and the size, content, design and location thereof shall be subject to the prior written approval of Landlord. Except as hereinabove mentioned, Tenant shall not place or cause to be placed, erected or maintained on any exterior door, wall, window or the roof of the Leased Premises, or on the glass of any window or door of the Leased Premises, or on any sidewalk or other location outside the Leased Premises, or within any display window space in the Leased Premises, or within three (3) feet of the front of the storefront leaseline or opening, whether or not there is a display window space in the Leased Premises, or within any entrance to the Leased Premises, or otherwise visible from the Mall, any sign (flashing, moving, hanging, handwritten, or otherwise), decal, placard, decoration, flashing, moving or hanging lights, lettering, or any other advertising matter of any kind or description. Moreover, Tenant is prohibited from utilizing any displays which are not part of the fixture plan approved in writing by Landlord for the Leased Premises. If Tenant places or causes to be placed or maintained any of the foregoing, the same may be removed by Landlord or Landlord's representative without notice and without such removal constituting a breach of this Lease or entitling Tenant to claim damages on account thereof. No symbol, design, name, mark or insignia adopted by Landlord for the Shopping Center shall be used without the prior written consent of Landlord. No illuminated sign located in the interior of the Leased Premises and which is visible from the outside thereof shall be permitted without the prior written approval of Landlord. All signs located in the interior of the Leased Premises shall be in good taste and professionally printed so as not to detract from the general appearance of the Leased Premises and the Shopping Center.

## ARTICLE X.
## MAINTENANCE

SECTION 10.01    LANDLORD'S OBLIGATIONS FOR MAINTENANCE

In addition to its obligations under Section 8.01 hereof, Landlord shall keep and maintain the roof, roof drainage system, building systems and equipment, foundations, support structures and exterior surfaces of the exterior walls of the building in which the Leased Premises are located (exclusive of doors, door frames, door checks, other entrances, windows and window frames which are not part of common areas, and storefronts) in good condition and repair, except that Landlord shall not be called upon to make any such repairs occasioned by the wrongful act or negligence of Tenant, its agents, employees, invitees, licensees or contractors. Landlord shall not be called upon to make any other improvements or repairs of any kind upon the Leased Premises and appurtenances, except as may be