## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------x

| | |
|---|---|
| In re: | :     Chapter 11 |
| | : |
| QUIKSILVER, INC., *et al*. | :     Case No. 15-11880 (BLS) |
| | : |
| | :     (Jointly Administered) |
| Debtors.[1] | : |
| | :     **Hrg. Date: Oct. 6, 2015 at 10:00 a.m. (Eastern)** |
| | : |

-------------------------------------------------------------x    **Related Docket No. 27**

### OBJECTION TO TO DEBTOR'S FIRST OMNIBUS MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(A) AND 365(A) AND BANKRUPTCY RULES 6006 AND 9014 AUTHORIZING REJECTION OF CERTAIN EXECUTORY CONTRACTS

      Nicholas Drake, on his own behalf and on behalf of all similarly-situated terminated employees that are affected counterparties to those separation agreements ("**Class Claimants**") of the above-captioned debtor, Quiksilver, Inc. (the "**Debtor**"), hereby submit their Objection ("**Objection**") to the Debtor's First Omnibus Motion For Order Pursuant To Bankruptcy Code Sections 105(A) and 365(A) And Bankruptcy Rules 6006 and 9014 Authorizing Rejection Of Certain Executory Contracts (the "**Motion**"), Dkt. No. 27. In support of the Objection, Class Claimants submit the Declarations of Nicholas Drake ("**Drake Decl.**"), and respectfully state as follows:

### PRELIMINARY STATEMENT

      1.     Through the Motion, the Debtor seeks authority to reject all separation agreements between the Debtor and former employees of the Debtor, the Class Claimants (collectively, the "**Separation Agreements**") pursuant to Section 365 of the Bankruptcy Code.

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

2.      Class Claimants object to the relief requested in the Motion, insofar as it pertains to the Separation Agreements of former Debtor employees, because (i) the Separation Agreements are not executory contracts amenable to rejection or assumption, (ii) assuming *per arguendo* that the Separation Agreements are executory contracts, the Motion fails to establish that the benefit to the estate far outweighs harm to the affected Class Claimants in rejecting the Separation Agreements, nor does the Motion demonstrate that the Debtor has exercised reasonable business judgment in rejecting the Separation Agreements less than one month into the Bankruptcy proceedings; (iii) the proposed order permitting the assertion of rejection damages violates Class Claimants' right to request an administrative claim pursuant to Section 503 of the Bankruptcy Code; (iv) The Motion violates Class Claimants' due process rights because it does not permit Class Claimants a sufficient time to discover relevant information that has a bearing on this contested matter.

3.      For all the foregoing reasons, Class Claimants request that the Motion be denied.

## FACTUAL BACKGROUND

A.      **Debtor Terminates Class Claimants And In Consideration For Many Concessions Made By Class Claimants, Debtor Agrees To Make Separation Payments  To Class Claimants Through March of 2016**

4.      On or around 2014, and thereafter, the Debtor terminated Class Claimants. On or around October of 2014, Mr. Drake and the Debtor, through Executive Vice President Carol E. Scherman, executed a separation agreement (the "Drake SA").  (Drake Decl., ¶ 2, Ex. "A").

5.      The Drake SA provides that the Debtor would pay "severance pay in the total amount of $750,000…as follows: Eighteen (18) monthly checks, each in the amount of $41,666.67…." (Drake SA, ¶ 2.A).  Payments were to commence to Mr. Drake on October of 2014.  (*Id.*)   The Drake SA further provides: "You [Drake] will not be required to perform any duties following the Separation Date [September 30, 2014] or during the Severance Pay Period."   (Drake SA, ¶ 2.B). Mr. Drake provided Debtor a "release", a relinquishment of certain stock rights, and other valuable concessions.  The Drake SA provides for an arbitration clause in the event of the dispute to be decided by JAMS in Orange County, California.   (Drake SA, ¶ 10).  The Debtor has not availed itself of arbitration.

**B.      Debtor Fails To Live Up To Its End Of The Bargain With Mr. Drake After Inducing Him To Accept Separation Payments Over An Extended Payment Term;  Debtor Owes Drake A Substantial Administrative Claim Of At Least $291,666.69**

6.      The Debtor made payments to Drake through the first half of August 2015.   The Debtor has breached the Drake SA by failing to make the first post-petition payment due to Mr. Drake under the Drake SA.  The Drake SA does not provide for a liquidated damage clause, or a clause providing for a "total amount due and owing clause" upon breach.  Therefore, each missed payment constitutes a separate breach of the Drake SA.

7.      On September 9, 2015, the Debtor filed its chapter 11 Petition.  Payments under the Drake SA have accrued post petition for the months of September 2015 and will continue to accrue through March 2016, entitling Mr. Drake to an administrative claim in the amount of $291,666.69. Mr. Drake is further entitled to a priority claim pursuant to 11 U.S.C. Section 507(a)(4) in the amount of $12,475.00.   These are the claims that the Debtor attempts to avoid by virtue of its vague and unclear "rejection" Motion.

**C.      The Similarly Situated Class Claimants Are Owed A Substantial Administrative Claim That The Motion To Reject Is Subtly Aimed To Disallow Through These Rejection Proceedings**

8.      The Motion fails to identify the amounts remaining to be paid under the Separation Agreements, which alone necessitates that the Motion be denied.

9.      Upon information and belief, all Separation Agreements were executed by the affected former employee of Debtor and Debtor, through Executive Vice President Carol E. Scherman.  Upon information and belief, each Separation Agreement is substantially similar in form to the Drake SA.

10.      Upon information and belief, on or about August of 2015, the Debtor ceased making payments to all Class Claimants under the Separation Agreements, as it did to Drake.

11.      The Debtor has breached each of the Separation Agreements by failing to make the first post-petition payment due under each of the Separation Agreements to the Class Claimants. The Separation Agreements do not provide for a liquidated damage clause, nor a clause indicating

that "total amount due and owing clause" upon breach.  Therefore, each missed payment constitutes a separate breach of each of the Separation Agreements.

<u>ARGUMENT</u>

**A.  Because Class Claimants Have No Material Obligations Under the Separation Agreements, The Separation Agreements Are Not Executory Contracts, And May Not Be Rejected**

12.    "State law controls both the question of breach and construction of a contract." *In re Qintex Entertainment, Inc.*, 950 F.2d 1492, 1496-97 (9th Cir.1991) (citations omitted) (license agreement was not executory); *BNY, Capital Funding LLC v. U.S. Airways Inc.*, 345 B.R. 549, 552 (E.D. Va. 2006) (option contract was not executory).

13.    In evaluating a California contract, the 9th Circuit in *Qintex* affirmed the District Court, that found where a contracting party had no remaining duties, the related contract could not be considered "executory," even where the contract required certain restrictions on the contracting party.

> At the time of the bankruptcy filing, Scott had finished acting for the four television contracts. Campbell and Scott, like the authors in Learning Publications and Stein and Day, **had substantially completed their duties** under the contracts. The four television contracts contain no substantial unperformed duties owed by Scott and Campbell to Qintex. *See In re Munple*, 868 F.2d 1129 at 1130-31 (9th Cir.1989) (services rendered after the signing of a commission agreement by a brokerage firm were not essential to the contract and therefore did not render contract executory). The record supports the district court's order that the Scott contracts were not executory….

*Id.* (emphasis added);  *See also In Re Spectrum Information Technologies, Inc.*, 193 B.R. 400 (Bankr. E.D.N.Y. 1996) (executive's employment agreement was not executory where debtors fired executives before moving to reject agreement.  After termination, executive owed no further material obligations to debtors, and two-year noninterference clause was contingent, nonmaterial obligation); *In re U.S. Metalsource Corp.*, 163 B.R. 260 (W.D. Pa. 1993) (requirement to make severance payments was not the contractual obligation needed to render contracts "executory");  *In Re Wang Laboratories, Inc.*, 154 B.R. 389 (Bankr. D. Mass. 1993) (employment agreement was not an

executory contract subject to rejection by Chapter 11 debtor-employer where employee was no longer required to perform services, and all that remained was severance pay.)

14.     As in *Qintex*, Class Claimants here who were parties to the Separation Agreements, had no remaining work duties pursuant to the Separation Agreements by explicit agreement between the parties.  (*See* SA, ¶ 2.B).  Further, similar to *Qintex,* provisions about confidentiality cannot be deemed as material provisions to cause such contracts to arise to the level of executoriness.  Finally, the Separation Agreements here were California contracts, similar to the applicable state law analyzed in *Qintex*.   Given Class Claimants had no materials duties left to perform under the Separation Agreements, the Separation Agreements are not "executory," and such contracts are not amenable to rejection by the Debtor.

**B.**     **The Motion Fails To Establish Any Benefit To The Estate, Nor That The Claimed Benefit To The Estate Outweighs The Harm To The Affected Employees**

15.     Under the "business judgment" standard, motions to reject contracts under Section 365(a) of the Bankruptcy Code must undergo review to ensure that it will in fact be in the best interests of the unsecured creditors, and will not result in disproportionate harm to the non-debtor party to the contract.  *See, e.g., The Monarch Tool & Mfg. Co. v. Monarch Prod. Sales Corp. (In re Monarch Tool & Mfg. Co.)*, 114 B.R. 134, 137 (Bankr. S.D. Ohio 1990).  "A Chapter 11 debtor's right to reject executory contracts is not unlimited. Disproportionate damage to the other party to the contract provides a ground for disapproving rejection (internal citations omitted)."  *In re Petur U.S.A. Inst. Co., Inc.*, 35 B.R. 561, 563-64 (Bankr. W.D. Wash. 1983).

16.     In addition, the cost-benefits must be analyzed as to each contract.  "The Bankruptcy Court must also reconsider its ruling that rejection is in the best interests of the debtor's estate, and **analyze separately** whether rejection is in the best interests of the debtor's estate, and **analyze separately** whether rejection of the Lease or the oral contract for sale meets the standard of the business judgment rule." (emphasis added) (aff'd in *In re Nickels Midway Pier, LLC*, 255 F.3d. Apps. 633, 636-37 (3d Cir. 2007).

17.    Judicial approval of contract rejection is not a "rubber stamp," and where a rejection of a contract does not benefit the debtor's unsecured creditors and has "mortally wounded" a counterparty, rejection must be denied.  *In re Midwest Polychem, Ltd.*, 61 B.R. 559, 562 (Bankr. N.D. Ill. 1986).  Indeed even where the general unsecured creditors are benefitted, the Court must not authorize rejection where the non-debtor would be damaged disproportionately to the benefit to be derived by the general creditors.  *Robertson v. Pierce (In re Chi-Feng Huang)*, 23 B.R. 798, 801 (B.A.P. 9th Cir. 1982); *See Also Infosystems Tech., Inc. v. Logical Software, Inc.*, C.A. No. 87-0042, 1987 U.S. Dist. LEXIS 6285, at 2-4 (D. Mass. Jun. 25, 1987).

18.    Debtor's sole "business" justification for the Motion is that the Debtor has determined that the Contracts are burdensome to the estate.

19.    Debtor's stated purpose lacks evidence, lacks specificity, is vague, and fails to apprise contracting parties to the Separation Agreements of their rights.  Further the Motion fails to indicate the amount of payments that are due to each of the counterparties to the Separation Agreement.  For example, the Debtor is required to pay all priority wage claims pursuant to 11 U.S.C. § 1129(a)(9) on the Effective Date, if it intends to confirm a Plan over Class Claimant's objection.  Likewise, Debtor must pay all administrative separation payment claims on the Effective Date pursuant to 11 § 1129.  Therefore, without specific articulation, the Debtor's justification cannot be sound because whether Employees' claims are *administrative or priority*, they must be paid in cash, in full, on the Effective Date of the Plan.

20.    Since the Debtor has not established that rejection of contracts will benefit the Estate here, as opposed to the Debtor, the standard for rejection under 365 of the bankruptcy code has not been met.  *See Dunes Hotel Assoc. v. Hyatt Corp. (In re Dunes Hotel Assoc.)*, 194 B.R. 967 (Bankr. D.S.C. 1995).  Without Debtor articulating any "cost-benefit" analysis, parties in interest and the Court are completely deprived of the net-effects of rejection, and how the estate is impacted.  Debtor's failure to conduct the analysis is a basis to deny the Motion.

21.    In addition, Class Claimants have provided significant services to the Debtor to help it operate as a going concern and entered into the Separation Agreements with the expectation of receiving severance payments.  The Debtor failed to perform, and did not fulfill the separation

payments. It is disproportionately damaging to attempt to reject a contract of individuals, many of whom require the separation for sustenance. Based on the facts that exist here, it would be inequitable to deem the rejection date, *nunc pro tunc,* to the filing of the Motion to Reject, and there are no special circumstances justifying such relief here.

      C.    **An Order Finding That Employees Are Entitled To Their Rejection Damages Is An Attempt To End-Run Around Employees' Rights To Seek An Administrative Claim**

      22.    The relief requested improperly attempts to abrogate Employees' right to pursue their claims under 11 U.S.C. §503. Employees object to the proposed order that limits their right to file a claim for "rejection damages," implicitly referring to 11 U.S.C. § 502(b)(7).

      23.    After notice and hearing, "administrative" expenses should be allowed pursuant to 11 U.S.C. § 503(b). Allowing the claims resolution process to be circumvented, which is implied in the proposed order, would deny Employees their rights under 11 U.S.C. § 503(b). Declaring the breach to permit "rejection damages" seemingly is aimed to circumvent this right.

      24.    In addition, when it comes to severance, to the extent such payments vest post-petition, such payments can be deemed administrative claims under Section 503. Under *Reading Co. v. Brown*, 391 U.S. 471, 484 (1968), claims "arising from acts committed by the debtor in possession which give rise to tort liability are accorded administrative expense status." *Houbigant, Inc. v. ACB Mercantile (In re Houbigant, Inc.)*, 188 B.R. 347, 356-57 (Bankr. S.D.N.Y. 1995). Here, the Debtro continues to breach the Separation Agreements in each month during the post-petition period that it fails to pay separation. Courts have held that even if the separation did not accrue post-petition (which is the case here), and separation was due and paid pre-petition, the claimant could still be afforded administrative priority. *In the Matter of Straus-Duparquet, Inc.,* 386 F.2d 649 (2nd Cir.1967); *In re W.T. Grant Co.,* 620 F.2d 319 (2nd Cir.1980); *Trustees of the Amalgamated Insurance Fund v. McFarlin's, Inc.,* 789 F.2d 98 (2nd Cir.1986).

      25.    A debtor-in-possession's violation of a statutory employer duties under state law is a tort that creates an administrative claim. Finally, while Mr. Drake and Class Claimants admittedly did not provide any services to the Debtor post-petition, the status of their claims based on the terms

of the Separation Agreement afford him an administrative status claim pursuant to Section 503(b)(1)(A)(ii) because payments under the Separation Agreement are "attributable to any period of time occurring after commencement of the case" pursuant to Section 503(b)(1)(ii). *See e.g. In re Powermater Holding Corporation*, 394 B.R. 765 (Bankr. D. Del. 2008) (No requirement that employees' services must be rendered during the post-petition period- reading 503(b)(1) in the disjunctive); *In re Philadelphia Newspapers, LLC*, 433 B.R. 164 (Bankr. E.D. Pa. 2010) (same).

26.     In short, the determination as to whether Class Claimants have an administrative claim should not be decided in a summary "rejection" proceeding permitting them only to later assert "rejection" damages, and Class Claimants must be entitled to notice and hearing as to the status of their administrative claims.

### D.  Class Claimants Should Be Afforded The Opportunity To Conduct Discovery As To Class Members' Claims

27.     Employees have a right to discovery in the context of this Motion, and request the opportunity to better understand the costs and benefits of rejection, the Debtor's business justification, and all amounts owed under the Separation Agreements of the class members. *In re La Sierra Fin. Servs., Inc.*, 290 B.R. 718, 732-33 (9th Cir. B.A.P. 2002) (recognizing that due process "requires more than simply that the parties be aware of the litigation, but also they have the opportunity to prepare adequately for an impending hearing") (citations omitted); *In re Timely Secretarial Serv., Inc.*, 987 F.2d 1167, 1171 (5th Cir. 1993) ("Basic principles of due process required the bankruptcy court to give General Electric reasonable notice . . . . Indeed, the Supreme Court has recognized that 'an elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'") (citations omitted); *In re Indesco Int'l, Inc.*, 2005 Bankr. LEXIS 458, at *35-36 (Bankr. S.D.N.Y. Mar. 25, 2005) ("In the interests of . . . due process . . . the Court will afford AFA notice and opportunity to be heard with respect to the merits, and reasonable discovery in connection therewith . . . . The Court will then need to have an evidentiary hearing . . ").

**WHEREFORE**, the Class Claimants respectfully request that the Court (a) sustain the Objections, deny the Motion, and (b) grant such other further relief as the Court deems just and proper.

Dated: September 30, 2015                          GELLERT SCALI BUSENKELL & BROWN, LLC

*/s/ Michael Busenkell*
Michael Busenkell (DE 3933)
913 N. Market Street, 10th Floor
Wilmington, DE 19801
Telephone:  302-425-5812
Email: mbusenkell@gsbblaw.com

-and-

Blake J. Lindemann – Cal. Bar #255747
   (*pro hac vice application pending*)
Lindemann Law Firm
433 N. Camden Drive, 4th Floor
Beverly Hills, CA 90210
Telephone: 310-279-5269
Facsimile:  310-300-0267
E-mail: blake@lawbl.com

-and-

Daren M. Schlecter – Cal. Bar #259537
   (*pro hac vice application pending*)
Law Office of Daren M. Schlecter, A Prof. Corp.
1925 Century Park East, Suite 830
Los Angeles, CA 90067
Telephone: 310-553-5747
Facsimile:  310-553-5487
E-mail:      daren@schlecterlaw.com

Counsel To Interested Party
*Nicholas Drake on behalf of himself and all others similarly situated*