**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| QUIKSILVER, INC., *et al.*, | Case No. 15-11880 (BLS) |
| Debtors.[1] | Jointly Administered |
| | **Related Docket No. 36** |

**DECLARATION OF ANDREW BRUENJES IN SUPPORT OF DEBTORS' APPLICATION FOR ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 327(a) AND 329, BANKRUPTCY RULES 2014 AND 2016, AND LOCAL BANKRUPTCY RULES 2014-1 AND 2016-1 AUTHORIZING EMPLOYMENT AND RETENTION OF SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP AND AFFILIATES AS BANKRUPTCY COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE AS OF THE PETITION DATE**

I, Andrew Bruenjes, hereby declare that the following is true and correct to the best of my knowledge, information, and belief:

1. I am the Chief Financial Officer of the Americas Division of Quiksilver, Inc. ("ZQK"), the ultimate parent of the other debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") and certain other affiliates of the Debtors (the "Non-Debtor Affiliates" and, together with the Debtors, "Quiksilver" or the "Company"). I have been a member of the Quiksilver team for over 12 years. In 2002, I served as controller for the Asia Pacific ("APAC") region and later served as Finance Director and then CFO of the APAC region. Earlier this year, I was appointed CFO of the Americas region. As a result of my

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

extensive tenure with the Company, I am familiar with the day-to-day operations, business affairs, and financial affairs of the Debtors.

2. I submit this declaration in support of the Debtors' Application for Order Under Bankruptcy Code Sections 327(a) and 329, Bankruptcy Rules 2014 and 2016, and Local Bankruptcy Rules 2014-1 and 2016-1 Authorizing Employment and Retention of Skadden, Arps, Slate, Meagher & Flom LLP and Affiliates as Bankruptcy Counsel to the Debtors and Debtors in Possession Effective as of the Petition Date (the "Application") [Docket No. 36],[2] filed with the Court. Except as otherwise indicated herein, I have personal knowledge of the matters set forth herein and, if called as a witness, would testify competently thereto.

## THE DEBTORS' SELECTION OF SKADDEN

3. Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden" or the "Firm") is proposed to serve as primary bankruptcy counsel to the Debtors, with Pachulski Stang Ziehl & Jones LLP ("PSZ&J") as co-counsel. The Debtors recognize that a careful selection should be made when selecting and managing chapter 11 counsel to ensure that bankruptcy professionals are subject to the same client-driven market forces, scrutiny, and accountability as professionals in non-bankruptcy engagements.

4. To that end, in selecting counsel to represent the Debtors in a potential restructuring, the Debtors considered potential counsel based on their expertise in the relevant legal issues and in similar proceedings, and, in particular, their familiarity with the Debtors and with restructurings in the retail industry. Using this criteria, the Debtors decided to retain Skadden because of the Firm's decade-long representation of the Company, which enabled Skadden to become uniquely familiar with the Debtors' business affairs and many of the potential legal issues that could arise in the context of these Chapter 11 Cases, as well as the

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Application.

Firm's extensive experience in corporate reorganizations, both out-of-court and under chapter 11 of the Bankruptcy Code. Accordingly, the Debtors' board of directors ultimately recommended that the Debtors retain Skadden to serve as primary bankruptcy counsel, with PSZ&J as co-counsel, in these Chapter 11 Cases.

5. Skadden has represented ZQK, one of the Debtors and the ultimate parent of the other Debtors in these Chapter 11 Cases, since November 2004 in connection with various general corporate matters. Skadden and ZQK memorialized Skadden's representation pursuant to an engagement letter dated November 2, 2004. Thereafter, ZQK expanded Skadden's representation to include various general corporate governance, transactional, and regulatory matters.

6. In July 2015, at the Debtors' request, Skadden began representing the Debtors in connection with potential restructuring matters and consideration of strategic alternatives. An amended and restated engagement letter was entered into as of July 27, 2015 (the "Engagement Agreement") and is attached as Exhibit 1 to the Declaration of Van C. Durrer, II in Support of Debtors' Application for Order Under Bankruptcy Code Sections 327(a) and 329, Bankruptcy Rules 2014 and 2016, and Local Bankruptcy Rules 2014-1 and 2016-1 Authorizing Employment and Retention of Skadden, Arps, Slate, Meagher & Flom LLP as Bankruptcy Counsel to the Debtors and Debtors In Possession Effective as of the Petition Date (the "Durrer Declaration"), filed as Exhibit A to the Application. Pursuant thereto, the Debtors confirmed their retention of Skadden to represent the Company in its efforts to work out its financial circumstances, including restructuring its financial affairs and capital structure. To this end, at the Company's request, Skadden assisted the Company in its exploration of various

strategic alternatives while simultaneously assisting the Debtors in preparing for the possibility of commencing these Chapter 11 Cases to preserve and maximize value.

7. Skadden has worked closely with the Debtors with respect to their restructuring efforts and exploration of various strategic alternatives to address their financial circumstances. As a result of this work and Skadden's decade-long history with the Debtors, I believe that Skadden has become uniquely familiar with the Debtors' business affairs and many of the potential legal issues that may arise in the context of these Chapter 11 Cases. Indeed, except for those issues requiring the retention of PSZ&J, Skadden has provided advice and assisted the Debtors in all aspects of their restructuring efforts and the preparation of these Chapter 11 Cases. For instance, the Debtors received assistance from Skadden in (i) negotiations with Oaktree, the proposed plan sponsor, with respect to the Plan Sponsor Agreement ("PSA"), (ii) negotiations with the DIP Lenders and other key constituencies, (iii) preparing for and drafting pleadings filed in these Chapter 11 Cases, and (iv) drafting and negotiating the terms of the DIP Credit Agreement. I believe that Skadden has rendered its services through a highly qualified team of professionals and paraprofessionals with extensive experience in corporate restructuring, M&A, and related matters.

8. Accordingly, due to Skadden's experience and knowledge in the field of debtors' and creditors' rights and business reorganizations under chapter 11 of the Bankruptcy Code, and due to Skadden's working history with the Debtors, I believe that Skadden is well qualified and uniquely able to act on the Debtors' behalf and guide them through these Chapter 11 Cases in an efficient and timely manner. Thus, subject to this Court's approval of the Application, the Debtors have decided to continue their retention of Skadden as the Debtors' primary bankruptcy counsel during the Chapter 11 Cases.

**RATE STRUCTURE**

9. In my capacity as CFO, I am responsible for supervising outside counsel retained by the Debtors in the ordinary course of business. Skadden has provided and will be providing professional services to the Debtors under its standard rate structure and pursuant to the terms of the Engagement Agreement, which includes a description of the Firm's standard rate structure. Additionally, Skadden has informed the Debtors that it will continue to honor its courtesy discount, which Skadden has historically made to the Debtors, of 10% off the governing hourly rates under the Firm's standard rate structure. Skadden has also informed the Debtors that the rates under its standard rate structure are consistent among bankruptcy representations undertaken under the standard rate structure, including related transactional and litigation services. Skadden has further informed the Debtors that the rates and terms under its standard rate structure for non-bankruptcy engagements are the same as the rates and the terms for the Debtors' engagement of Skadden.

10. Skadden has informed the Debtors that, consistent with the Firm's policy with respect to its other clients, Skadden will continue to charge the Debtors for all other services provided and for other charges and disbursements incurred in the rendition of services, which charges and disbursements include, among other things, costs for telephone charges, photocopying, travel, business meals, computerized research, messengers, couriers, postage, witness fees, and other fees related to trials and hearings. The Debtors and Skadden have agreed that such charges and disbursements will continue to be invoiced pursuant to Skadden's Policy Statement Concerning Charges and Disbursements Under Standard Bundled Rate Structure, which is attached as Annex A-II to the Engagement Agreement, except that with respect to the postpetition period, Skadden shall bill non-working travel time at half of the otherwise applicable

5

hourly rate, and Skadden will not charge for disbursements that are not otherwise compensable under sections 330 and 331 of the Bankruptcy Code.

11. I am also responsible for reviewing the invoices regularly submitted by Skadden and, other than as described above, can confirm that the rates Skadden charged the Debtors in the prepetition period are the same as the rates Skadden will charge the Debtors in the postpetition period, based on the terms of the Engagement Agreement. Skadden has advised the Debtors that the Firm's standard hourly rates are subject to periodic increases in the normal course of the Firm's business but that Skadden will provide notice of any rate increases to the Debtors, as well as to the United States Trustee and the Court.

## COST SUPERVISION

12. The Debtors have approved a budget and staffing plan for Skadden's legal services for the first four months of these Chapter 11 Cases. The Debtors recognize that in the course of the Chapter 11 Cases, there may be unforeseeable fees and expenses that will need to be addressed by the Debtors and Skadden. Therefore, the Debtors recognize that it is their responsibility to closely monitor the billing practices of their counsel to ensure that the fees and expenses paid by the estate remain consistent with the Debtors' expectations and the exigencies of the Chapter 11 Cases. The Debtors will continue to review the invoices regularly submitted by Skadden, and, together with Skadden, may periodically amend the budget and staffing plan as the Chapter 11 Cases develop to reflect changed circumstances or unanticipated developments.

13. As they did prepetition, the Debtors will endeavor to bring discipline, predictability, client involvement, and accountability to the fees and expenses reimbursement process. While every chapter 11 case is unique, the budgets will provide guidance on the periods of time involved and the level of the attorneys and professionals that will work on various

matters, as well as projections of average hourly rates for the attorneys and professionals for various matters.

14. The Debtors and Skadden have discussed the division of responsibilities between Skadden and the Debtors' other proposed professionals, and Skadden has informed the Debtors that it will take all appropriate steps to avoid unnecessary and wasteful duplication of efforts by any other professionals retained in these Chapter 11 Cases.

**[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]**

I declare under penalty of perjury under the laws of the United States of America that, to the best of my knowledge, information, and belief, and after reasonable inquiry, the foregoing is true and correct.

Dated:    September 30, 2015
              Huntington Beach, California

QUIKSILVER, INC.
(on behalf of itself and the other Debtors)

By:   */s/ Andrew Bruenjes*
Name:  Andrew Bruenjes
Title:  Americas Chief Financial Officer

8