**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| QUIKSILVER, INC., *et al.*, | : | Case No. 15-11880 (BLS) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |
| | : | **Hrg. Date: Oct. 6, 2015 at 10:00 a.m. (ET)** |
| | : | **Object. Due: Oct. 1, 2015 at 4:00 p.m. (ET)** |
| | : | |
| | : | **Related to Docket # 17, 76** |
| | : | |

**LIMITED OBJECTION OF THE MACERICH COMPANY AND BOULEVARD
INVEST, LLC TO DEBTORS' MOTION FOR ENTRY OF INTERIM AND
FINAL ORDERS PURSUANT TO SECTIONS 105, 361, 362, 363, AND 364
OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 4001
AND 9014 (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POST-PETITION
FINANCING ON A SUPERPRIORITY, SENIOR SECURED BASIS AND (B)
USE CASH COLLATERAL, (II) GRANTING (A) LIENS AND SUPER-PRIORITY
CLAIMS AND (B) ADEQUATE PROTECTION TO CERTAIN LENDERS,
(III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A
FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

The Macerich Company and Boulevard Invest, LLC (hereinafter, "Landlords"), by and through their undersigned counsel, hereby file this limited objection (the "Limited Objection") to the Debtors' Motion for Entry of Interim and Final Orders Pursuant to Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014 (I) Authorizing the Debtors to (A) Obtain Post-Petition Financing on a Superpriority, Senior Secured Basis and (B) Use Cash Collateral, (II) Granting (A) Liens and Super-Priority Claims and (B) Adequate Protection to Certain Lenders, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief (the "Financing Motion"),[1] and respectfully represent as follows:

**I.    BACKGROUND FACTS**

1.    Quiksilver, Inc., and its affiliated co-debtors (collectively, the "Debtors"), filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code on

---

[1]  Terms not otherwise defined herein shall have the meanings ascribed to them in the Financing Motion and accompanying documents.

September 9, 2015.  The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[2]

2.    The Debtors lease retail space (the "Premises") from the Landlords pursuant to unexpired leases of nonresidential real property (individually, a "Lease," and collectively, the "Leases") at the locations (the "Centers") set forth on the attached Schedule A.

3.    The Leases are leases "of real property in a shopping center" as that term is used in Section 365(b)(3).  See In re Joshua Slocum, Ltd., 922 F.2d 1081, 1086-87 (3d Cir. 1990).

4.    On September 9, 2015, the Debtors filed the Financing Motion.  After first day hearings, the Court entered an interim order approving the Financing Motion as to the DIP Lenders (the "Interim Order"), which deferred to the final hearing issues relating to liens on Landlords' non-residential real property leases and access rights to the Premises.  The Financing Motion and proposed order seek to grant DIP Lenders "a first priority lien on and security interest in all unencumbered assets of the Debtors," without excluding leases.  See Interim Order at ¶ 6.  Separately, the Interim Order makes access to premises by the Prepetition Secured Parties, DIP Agents, and DIP Lenders, upon default, subject to any Separate Agreement in writing by the applicable landlord.  See Interim Order at ¶¶ 33, 51.

5.    Landlords object to any proposed final order that seeks authority to grant DIP Lenders any lien directly on the Leases.  Landlords further object to the extent that the proposed final order does not contain the language from the Interim Order making access to the Premises subject to Separate Agreement with Landlords.

## II.    ARGUMENT

### A.    The Bankruptcy Code does not authorize invalidating lease provisions that prohibit or restrict liening, pledging, encumbering or otherwise hypothecating the Leases.

6.    The Financing Motion seeks authority to encumber substantially all of the Debtors' assets.  While Landlords do not object to having liens attach to the proceeds of any

---

[2]  Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

disposition of the Leases, or granting liens to the extent permitted by the Leases, any lien must be subject to the specific terms of the Leases.  The Bankruptcy Code does not create an independent right to grant a lien against the Leases, and it does not authorize rendering lease provisions unenforceable in connection with the Debtors' request for financing.  The Debtors seek to provide the DIP Lenders a first priority security interest on all of its unencumbered assets, without exclusions for leasehold interests, but do not indicate which provisions of the Bankruptcy Code provide authority for such relief.  That is because there are no such provisions.

7.     Neither the Bankruptcy Code generally, nor Section 364 specifically, authorize Debtors to violate the Leases in connection with their post-petition financing.  The United States Supreme Court consistently upholds the position that bankruptcy courts are to uphold nonbankruptcy rights unless a specific bankruptcy provision or policy requires differently. Butner v. United States, 440 U.S. 48, 55 (1979).  "'Property rights are created and defined by state law,' and '[u]nless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.'" Stern v. Marshall, 131 S. Ct. 2594, 2616 (2011), quoting Travelers Cas. & Sur. Co. of America v. Pacific Gas & Elec. Co., 549 U.S. 443, 451 (2007), quoting Butner, 440 U.S. at 55. The burden to demonstrate that bankruptcy law overrides applicable state law falls on the party making that assertion.  See Raleigh v. Illinois Dept. of Revenue, 530 U.S. 15, 25 (2000); Butner, 440 U.S. at 55.  Therefore, a lease provision that is enforceable under applicable state law, is enforceable in a bankruptcy proceeding, absent a specific bankruptcy provision or policy that requires differently. In these cases, there is no applicable bankruptcy law that overrides state law or the terms of the Leases, and as set forth below, there is no need for the DIP Lenders to take a direct lien on the Leases.

8.     Section 364 authorizes Debtors to obtain financing.  It does not authorize Debtors to alter lease provisions, and or preempt Section 365 or the rights granted landlords therein. More specifically, Section 364 does not authorize Debtors, for the benefit of a non-debtor party, to render any provision of a lease unenforceable.  If Congress intended to such authority in

3

connection with a request for financing, Congress would have included a provision in Section 364 that is similar to those set forth below. Congress did not provide such language in connection with obtaining financing pursuant to Section 364.

9.     There are two statutory instances where the Bankruptcy Code potentially authorizes rendering a lease provision unenforceable for a limited time, neither of which apply here. The first is a provision termed an "ipso facto" clause. This is a provision that would cause a default or termination based upon the: (i) insolvency or financing condition of the debtor; (ii) the commencement of a bankruptcy case; or (iii) the appointment of a trustee or custodian in a bankruptcy case. The Bankruptcy Code provides such a provision is unenforceable. See 11 U.S.C. § 365(e)(1). This section is inapplicable to a debtor's financing request.

10.    The second is where a provision prohibits assignment of a lease. Section 365(f)(1) authorizes a debtor to assign an executory contact or unexpired lease (subject to complying with Sections 365(b) and (c)), notwithstanding that such contract or lease prohibits assignment. Section 365(f)(1) applies only in the context of a motion to assume and assign a lease, and only upon compliance with the requirements of Sections 365(b) and (c). See 11 U.S.C. § 365(f)(1). There is no corresponding provision in Section 364.

11.    Provisions that restrict the ability to encumber leases are critical to Landlords' ability to (a) control their properties, (b) preserve clear title to their Leases, (c) comply with their own financing and investment requirements, and (d) effectively market their properties. Even where Leases may permit liens, such rights may be subordinate to Landlords' own financing. A financing order should not be used to render such lease provisions unenforceable. Landlords object to any pledge, encumbrance, lien, hypothecation or other pledge of the Leases that violates any term of the Leases, and any language in the order that seeks to render provisions of the Leases unenforceable.

**B.**    **Section 365 requires the Debtors to comply with the terms of the Leases, including provisions that prohibit or restrict liens.**

12.    Section 365 mandates that Debtors "timely perform all of the obligations" under the Leases until such time that the Debtors assume or reject the Leases, and provides:

> The trustee shall timely perform all of the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title.

See 11 U.S.C. § 365(d)(3).  The plain language of Section 365(d)(3) and the relevant case law clearly require the Debtors to perform their obligations under the Leases and comply with the terms of the Leases, including with respect to any rights Landlords have with respect to encumbrances, hypothecations, mortgages, or other liens against Leases. Moreover, the Leases may have provisions that subordinate any liens by a tenant to liens Landlords have granted or may grant to their own lenders. These provisions are enforceable, and the Debtors must perform in accordance with these provisions pursuant to Section 365.

13.    Given the sweeping remedies granted under the financing documents in the event Debtors default, a grant of a security interest in the Leases, and any attendant exercise of remedies following a default, creates a de facto assignment of the Leases.  There is no authority to permit such an assignment (under the guise of pledging the Leases as collateral), independent of the safeguards of Sections 365(b)(3) and (f)(2).[3]  Therefore, no such liens should be granted that would give the DIP Lenders the ability to potentially circumvent Section 365.

14.    Any final order should provide that liens only attach to the proceeds of a disposition of the Leases, or at a maximum, only allow liens to the extent permitted under the Leases. Such order should not authorize any violation of the terms of the Leases.  In addition,

---

[3] Because the Leases are shopping center leases, Debtors must comply with the heightened protections granted to shopping center landlords in connection with any such transfer of an interest in the Leases.  Therefore, section 365(b)(3) (applicable to an assignment of a lease through Section 365(f)) applies, and any assignment of the Leases require compliance with the special adequate assurance of future performance protections set forth in Sections 365(b)(3)(A) - (D).  See 11 U.S.C. § 365(b)(3).

nothing in the grant of any lien should compromise Landlords' rights under Section 365, and Landlords request that any final order specifically include language to that effect.

**C.    The DIP Lenders do not need a security interest in the Leases.**

15.    Granting a direct lien on the Leases is unnecessary to protect the DIP Lenders, as any disposition of the collateral is already controlled by the Bankruptcy Court.   The Debtors are currently conducting a liquidation at certain of their stores pursuant to the order of this Court. Where leases are assumed and assigned, the DIP Lenders should retain only a lien on the proceeds generated by such assignment, and in the event of liquidation sales, the DIP Lenders' liens should attach only to the proceeds of those sales.  At the end of the sale process, set to close for stores by end of December, 2015 and pop-up stores by end of January 2016, there will only be proceeds remaining.  Those proceeds should be the only value that DIP Lenders receive from leasehold interests.  During this short liquidation process, the Bankruptcy Court and state law remedies preserve the DIP Lenders' rights to realize upon the Debtors' assets, and there is no need to cloud title to the Leases.

16.    Landlords, not Debtors, own the Premises and Centers.  There is no need to force Landlords to accept a cloud to their title to the Leases.  The value in the Leases to Debtors and DIP Lenders is the value that will be realized in a sales process.  Granting a security interest in the Leases serves no economic purpose, and it is unnecessary.

**D.    The Court should limit any remedies that DIP Lenders may exercise with respect to the Collateral at the Premises in accordance with the protections provided to Landlords in the Leases and the Bankruptcy Code.**

17.    Any final order should limit any DIP Lenders' access to the Premises to that provided  by applicable non-bankruptcy law, by the terms of the Lease or Separate Agreement of Landlords and DIP Lenders, and as ordered by this Court after the filing of a motion and appropriate opportunity for Landlords to object and be heard.  The Interim Order does this by limiting access to premises "subject to any separate agreement" with the landlords, and this language should be clarified in the final order to limit any DIP Lenders' access to the Premises to that provided by applicable non-bankruptcy law, by the terms of the Lease or separate agreement

of Landlords and DIP Lenders, and as ordered by this Court after the filing of a motion and appropriate opportunity for Landlords to object and be heard..

18.     Without these limitations, DIP Lenders receive unfettered access and occupancy rights with respect to the Premises to liquidate the collateral and conduct going out-of-business sales.  The granting of such rights though a financing order is excessive and inappropriate, and there is already a store closing procedures in place to control such a process.  To the extent that a liquidation of the collateral would include any attempt to conduct any sale at the Premises, such sales will be governed by the existing procedures, the agreements between Landlords and the liquidator, and the Leases.  The parties are otherwise bound by the terms of the Leases.  See 11 U.S.C. §§ 365(b)(3) and (d)(3).  There is no basis to exempt DIP Lenders from the restrictions in the Leases, or the explicit requirements of the Bankruptcy Code.

19.     Any request for authority to enter onto the Centers without proper protections in place, is also unduly prejudicial and exposes the Landlords and the Centers to unnecessary risk of loss.  The DIP Agent and DIP Lenders are not a party to the Leases and have no right to occupy and use Landlords' property.  If this Court is inclined to grant any ability to enter onto the Premises, it should specifically circumscribe such access as follows:

- Only after ten (10) days written notice to the Landlords;
- For the limited purpose of collecting and removing DIP Lenders' collateral (and with no ability to conduct any sale, auction or fire sale at the Premises or the Centers);
- Pursuant to a written agreement on terms acceptable to the Landlords and in accordance with the Leases;
- DIP Lenders are responsible for the charges coming due under the Leases, monthly in advance, for any period of occupancy;
- DIP Lenders, their agents, or any entering party must provide Landlords with a certificate of insurance with respect to such entry, which certificate shall list the Landlords as an additional named insured, and which insurance covers both personal injury and property damage;
- DIP Lenders are subject to any provision of the Leases regarding re-imbursement and/or indemnification of the Landlords; and
- Access to the Premises shall be limited to a period not to exceed thirty (30) days.

20.     As stated above, Debtors do not own the Premises and the Leases explicitly prohibit the usurpation of Landlords' property rights.  Landlords provide Debtors a right to occupy certain space in the Centers, as set forth by the terms of the Leases.  Debtors possess no right to use the Premises beyond those rights granted within the Leases, and the Bankruptcy Code does not expand those rights.  The DIP Lenders are not a party to the Leases and have no contractual or possessory right to enter the Centers or the Premises.

21.     Finally, if DIP Lenders seek to enter onto the Centers or Premises, DIP Lenders must bear full financial responsibility, not only for all charges arising under the Leases going forward, but also for prior unpaid rent or other charges that arise.  To the extent the DIP Lenders seek authority to essentially step into the shoes of the Debtors following a default, there is no reason to allow them to exercise rights which the Leases otherwise prohibit and "assume" the Leases for an indeterminate period of time, without being required to cure outstanding post-petition defaults.  The DIP Lenders should not, on the one hand, receive a superpriority administrative claim, and on the other hand be relieved from liability for the Debtors' failure to remain current on post-petition rent obligations while the DIP Lenders attempt to realize upon their collateral.  This result compels Landlords to continue to suffer as involuntary post-petition creditors, the very result that Section 365(d)(3) was intended to counteract.  See In re Warehouse Club, Inc., 184 B.R. 316, 318 (Bankr. N.D. Ill. 1994).

## III.    JOINDER IN OTHER LANDLORD OBJECTIONS

22.     In addition to the foregoing, and to the extent not inconsistent with the relief sought herein, Landlords also join in the objection(s) of other real property lessors to the relief proposed by the Financing Motion, and any final financing order.

## IV.    CONCLUSION

In order to protect Landlords rights under the Leases and the Bankruptcy Code, the Court should (a) limit any lien with respect to the Leases to a lien only against the proceeds that may result from the sale or other disposition of the Leases where the Leases prohibit or restrict such liens, (b) strike any language from a final order that renders provisions of the Leases

unenforceable, (c) limit access to the Premises to that allowed under applicable non-bankruptcy law, as provided by the lease or agreement of the parties, or as allowed by the Bankruptcy Court after appropriate notice and opportunity to object, and (d) grant such other and further relief that it deems just and proper.

Dated:  October 1 2015
Wilmington, Delaware

Respectfully submitted,

*/s/ Leslie C. Heilman*
Leslie C. Heilman, Esquire (No. 4716)
Matthew G. Summers, Esquire (No. 5533)
BALLARD SPAHR LLP
919 Market Street, 11th Floor
Wilmington, DE  19801
Telephone: (302) 252-4465
Facsimile: (302) 252-4466
E-mail:  heilmanl@ballardspahr.com
               summersm@ballardspahr.com

               and

KATTEN MUCHIN ROSENMAN LLP
Dustin P. Branch (SBN:  174909)
Jessica Mickelsen Simon (SBN: 277581)
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone: (310) 788-4400
Facsimile: (310) 788-4471
E-mail:  dustin.branch@kattenlaw.com
               jessica.mickelsensimon@kattenlaw.com

Attorneys for The Macerich Company and
Boulevard Invest, LLC