IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
In re:                                  :    Chapter 11
                                        :
QUIKSILVER, INC., et al.,               :    Case No. 15-11880 (BLS)
                                        :
              Debtors.¹                 :    Jointly Administered
                                        :
                                        :    Hrg. Date: 10/6/15 at 10:00 a.m. (Eastern)
                                        :    Related Docket Nos: 7, 186
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

**DEBTORS' REPLY TO THE LIMITED OBJECTION OF THE TAUBMAN LANDLORDS TO THE MOTION FOR INTERIM AND FINAL ORDERS PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 363, 365, AND 554 AND BANKRUPTCY RULES 6003 AND 6004 (I) AUTHORIZING THE DEBTORS TO ASSUME THE AGREEMENTS; (II) AUTHORIZING AND APPROVING THE CONDUCT OF STORE CLOSING OR SIMILAR THEMED SALES, WITH SUCH SALES TO BE FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES; AND (III) AUTHORIZING CUSTOMARY BONUSES TO EMPLOYEES OF CLOSING BUSINESS LOCATIONS**

Quiksilver, Inc. and certain of its affiliates, the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") hereby submit this reply (the "Reply") in support of the Debtors' Motion For Order Under Bankruptcy Code Sections 105, 363, 365 And 554 And Bankruptcy Rules 6003 And 6004 (I) Authorizing The Debtors To Assume The Agreements; (II) Authorizing And Approving The Conduct Of Store Closing Or Similar Themed Sales, With Such Sales To Be Free And Clear Of All Liens, Claims, and Encumbrances; And (III) Authorizing Customary Bonuses To Employees of Closing Business Locations [Docket No.

---

¹ The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

7] (the "Motion")² and in response to the Limited Objection Of The Taubman Landlords To Debtors' Motion For Order Under Bankruptcy Code Sections 105, 363, 365 And 554 And Bankruptcy Rules 6003 And 6004 (I) Authorizing The Debtors To Assume The Agreements; (II) Authorizing And Approving The Conduct Of Store Closing Or Similar Themed Sales, With Such Sales To Be Free And Clear Of All Liens, Claims, and Encumbrances; And (III) Authorizing Customary Bonuses To Employees of Closing Business Locations [Docket No. 186] (the "Objection").  In support of the Motion and this Reply, the Debtors, by and through their undersigned counsel, respectfully represent as follows:

**PRELIMINARY STATEMENT**

1. The Objection mischaracterizes a lease provision regarding "trade fixtures" as authorization for the landlord to keep the Debtors' FF&E at the conclusion of the lease.  As discussed in more detail below, this position is clearly contradicted by the law and the objection should be overruled and the Debtors permitted to sell their FF&E through the Store Closing Sales.

**BACKGROUND**

2. On September 9, 2015 (the "Petition Date"), the Debtors filed the Motion, seeking, among other things, authority to conduct store closing sales (the "Store Closing Sales") at certain of its store locations (the "Store Closing Locations") subject to the agreement, dated as of September 4, 2015, by and between QS Retail, Inc., on the one hand, and Hilco Merchant Resources, LLC and Gordon Brothers Retail Partners, LLC (the "Agent"), on the other hand (the "Store Closing Agreement") pursuant to the sale guidelines (the "Sale Guidelines") attached to the proposed orders. The Store Closing Sales include the sale of certain inventory, along with

---

² Any capitalized term used herein, but not defined herein, shall have the meaning set forth in the Motion.

certain furniture, fixtures, and equipment ("FF&E").  As listed in Exhibit A to the Store Closing Agreement, the Store Closing Locations include, among others, Store 861, located at the Dolphin Mall in Miami, FL (the "Dolphin Mall Location") and Store 876, located at the Great Lakes Crossing Outlets in Auburn Hills, MI (the "Great Lakes Location" and together with the Dolphin Mall Location, the "Taubman Stores").

3. On September 10, 2015, this Court entered an interim order granting the Motion [Docket No. 72] (the "Interim Order"). The Interim Order authorizes, among other things, the Agent, along with landlords of the Store Closing Locations, to enter into agreements modifying the Sale Guidelines and provides that such agreements are binding as to the parties thereto.

4. On September 28, 2015, the landlords for the Taubman Stores (the "Taubman Landlords") entered into an agreement with the Agent modifying the Sale Guidelines (the "Side Letter").

5. On September 29, 2015, the landlords for the Dolphin Mall Location and the Great Lakes Location (the "Taubman Landlords") filed the Objection. The Objection raises three issues that were not resolved by the Side Letter,[3] all of which are discussed in detail below.

## REPLY

**A.    The Debtors May Sell FF&E Through The Store Closing Sales**

6. The Taubman Landlords' principal assertion is that, pursuant to the Taubman Leases, any furniture, fixtures and equipment ("FF&E") become property of the Taubman Landlords and object to any attempts by the Debtors to sell FF&E. The Objection

---

[3]  All issues raised in the Objection that are not addressed in this Reply were resolved by the Side Letter. If the Taubman Landlords disagree with the foregoing, the Debtors reserve all rights to respond to such issues at the final hearing on the Motion.

3

purports to extend the Taubman Landlords' ownership interests beyond the scope of what is intended by the Taubman Leases to traditional FF&E that is clearly personal property of the Debtors, including unattached furniture, clothing racks, display tables, and similar items, purchased by the Debtors, the removal of which will not cause damage to the leased premises.

7. In support of their assertion, the Taubman Landlords cite to sections 6.02 of the Taubman Leases, which specify that all "alterations, decorations, additions, trade fixtures and improvements" made by the tenant shall be deemed to have attached to the leasehold and to have become the property of landlord upon such attachment.

8. While the leases do not define the "alterations, decorations, additions, trade fixtures and improvements" which purportedly become property of the landlord, the Debtors submit that such terms do not encompass easily removable items purchased by the Debtors, such as the clothing racks, tables, and similar display racks, and furniture utilized in the store for the display of merchandise and the operation of the business. Such items are clearly property of the Debtors' estates, the sale of which will provide a benefit to creditors, and should not be deemed forfeited.

9. In particular, trade fixtures are "articles or appliances which are in some manner or to some degree annexed to or connected with the realty by the tenant for the purpose of carrying on the particular trade or business for which the premises were demised to him by the landlord." State v. Fisher, 1997 WL 127004 at *3 (Del. Super. Jan. 27, 1997). "Courts have found that ventilation equipment, cooking and refrigeration equipment, sinks, hoods, soda fountains, air conditioners, electric ovens, walk-in refrigerators, and stoves are all trade fixtures." Id. (citations omitted). Thus, the case law indicates that "trade fixtures" are items which are in some way "annexed to or connected with the realty" and, as such, do not include unattached

furniture. Indeed, section 6.02 of the Taubman Leases, which the Taubman Landlords cite, states that the landlords may request that the tenant remove any such alterations, decorations, additions, trade fixtures and improvements and repair any resulting damage – indicating that the focus of the section is on fixtures which have been physically attached to the leased premises in some way, such that the removal will cause damage.

10. Accordingly, as set forth above, the property the Debtors intend to sell includes clothing racks, tables, shelves, and similar items, which are not the types of items typically described as "trade fixtures." The Debtors submit that, in light of the foregoing, the Objection should be resolved as to the Debtors' sale of FF&E. To the extent the Taubman Landlords disagree, the Debtors respectfully request that the Objection be overruled.

**B.    The Debtors Will Continue to Furnish to the Taubman Landlords Reports Regarding Gross Sales**

11. In paragraph 15(a) of their Objection, the Taubman Landlords assert that the Agent should be required to submit gross sales reports directly to the landlords.

12. The Debtors understand that a portion of the rent under the Taubman Leases – referred to as "percentage rent" – is based, in part, on the gross sales in the Taubman Stores. Prior to the Petition Date, the Debtors' lease administration firm furnished reports showing gross sales at each of the Taubman Stores to the Taubman Landlords. Postpetition and unless and until the Taubman Leases are rejected, the lease administration firm will continue to perform such services in the ordinary course, and the Debtors will work with the lease administration firm and the Agent in connection therewith. Accordingly, the Debtors submit that the Objection should be overruled.

**C.    The Debtors Do Not Seek to Alter Rights that the Landlord May Have With Respect to Claims for or Payment of Rent for the Taubman Stores**

13.    In paragraph 15(a) of their Objection, the Taubman Landlords assert that percentage rent, if any becomes due, should be calculated and paid by the Debtors on a monthly basis as an administrative expense.

14.    Pursuant to the relief sought in the Motion, the Debtors do not seek to alter or impinge upon any rights that the Taubman Landlords may have with regards to claims for or payment of rent under the Taubman Leases. Accordingly, the Debtors submit that the Objection should be overruled.

**RESERVATION OF RIGHTS**

15.    Nothing contained herein is or should be construed as: (a) an admission as to the validity of any claim of the Taubman Landlords against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim of the Taubman Landlords on any grounds; (c) a promise to pay any claim to the Taubman Landlords; (d) an assumption or rejection of the Taubman Leases pursuant to Bankruptcy Code section 365; or (e) otherwise affect the Debtors' rights under Bankruptcy Code section 365 to assume or reject any executory contract with the Taubman Landlords.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court overrule the Objection and enter an order granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: Wilmington, Delaware
October 1, 2015

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

*/s/ Van C. Durrer, II*
Van C. Durrer, II (I.D. No. 3827)
Annie Li (*admitted pro hac vice*)
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071
Telephone: (213) 687-5000
Fax: (213) 687-5600

- and -

Mark S. Chehi, Esq. (I.D. No. 2855)
Robert A. Weber (I.D. No. 4013)
Dain A. De Souza (I.D. No. 5737)
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
Telephone: (302) 651-3000
Fax: (302) 651-3001

- and -

John K. Lyons
Jessica Kumar
155 N. Wacker Dr.
Chicago, Illinois 60606
Telephone: (312) 407-0700
Fax: (312) 407-0411

*Proposed Counsel for Debtors and Debtors in Possession*