## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:

QUIKSILVER, INC., *et al.*,

                    Debtors.[1]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

: Chapter 11
:
:
: Case No. 15-11880 (BLS)
:
: Jointly Administered
:
: **Hrg. Date: 10/6/15 at 10:00 a.m. (Eastern)**
: **Related Docket No.: 27, 195**

## DEBTORS' REPLY TO OBJECTION TO DEBTORS' FIRST OMNIBUS MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(A) AND 365(A) AND BANKRUPTCY RULES 6006 AND 9014 AUTHORIZING REJECTION OF CERTAIN EXECUTORY CONTRACTS

        Quiksilver, Inc. ("ZQK") and certain of its affiliates, the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors" and, together with their non-Debtor affiliates, "Quiksilver" or the "Company"), by and through their undersigned counsel, hereby submit this reply (the "Reply") in support of the Debtors' First Omnibus Motion for Order Pursuant to Bankruptcy Code Sections 105(a) and 365(a) and Bankruptcy Rules 6006 and 9014 Authorizing Rejection of Certain Executory Contracts [Docket No. 27] (the "Motion").[2]  In support of this Reply, the Debtors, by and through their undersigned proposed counsel, respectfully represent as follows:

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599).  The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed thereto in the Motion.

**REPLY**

1.        The Objection[3] should be overruled for two simple reasons: first, the Separation

Agreements, and specifically the Separation Agreement between the Debtors and Nicholas Drake

(the "Drake Agreement") are executory, as performance remains due from both parties to the

agreement.  Second, the Separation Agreements purport to impose substantial continuing

payment obligations upon the Debtors, notwithstanding the fact that the counterparties to the

Separation Agreements no longer provide any services to the Debtors, and therefore rejection of

the Separation Agreements and termination of these payment obligations will clearly benefit the

Debtors and their estates.  Mr. Drake and the other counterparties to such Separation Agreements

are free to submit proofs of claim seeking recovery for their rejection damage claims,

2.        The Debtors maintain that this Court should overrule the Objection on the merits

and permit the Debtors to reject the Separation Agreements, including the Drake Agreement, as

executory contracts pursuant to section 365 of the Bankruptcy Code.

**A.        The Objection Does Not Meet the Requirements of Bankruptcy Rule 7023**

3.        Other than merely invoking the words "class claimants" and including vague and

patently insufficient allegations "upon information and belief," the Objection is devoid of any

discussions of the factors required under the applicable rules of bankruptcy and civil procedure

in order to certify a class of claimants.  Although Mr. Drake purports to bring the Objection "on

his own behalf and on behalf of all similarly-situated terminated employees," there is no factual

---

3        "Objection" means that certain Objection to Debtor's [sic] First Omnibus Motion for Order Pursuant to
Bankruptcy Code Sections 105(a) and 365(a) and Bankruptcy Rules 6004 and 9014 Authorizing Rejection of
Certain Executory Contracts [Docket No. 195].  The Objection was not timely filed, despite the fact that Mr.
Drake received adequate notice of the Motion and the relief sought therein.  Pursuant to the Affidavit of Service
[Docket No. 37] filed with this Court on September 9, 2015, Mr. Drake was served with the Motion and
accompanying exhibits on September 9, 2015.  Despite ample notice of the September 29 objection deadline,
the Objection was untimely filed, and counsel for Mr. Drake did not request any extension of the objection
deadline from counsel to the Debtors.  The Debtors submit this reply to the late-filed Objection and will reflect
this Reply on an amended agenda.

or legal basis presented to certify a class of claimants, nor does the Objection even attempt to comply with the basic requirements of the Federal Rules of Bankruptcy Procedure or the Federal Rules of Civil Procedure.

4.      Federal Rule of Civil Procedure 23, made applicable herein by Bankruptcy Rule 7023, sets forth a number of requirements which a class representative must satisfy in order to proceed in such capacity.  Specifically, Civil Rule 23(a) contains the following prerequisites: that the class is so numerous that joinder of all members is impracticable, that there are questions of law or fact common to the class, that the claims or defenses of the representative parties are typical of the claims or defenses of the class, and that the representative parties will fairly and adequately protect the interests of the class.

5.      This preliminary showing appears nowhere in the objection or in the attached declaration.  First, there is no statement regarding the numerosity of the alleged class, nor is there any claim that joinder of all class members is impracticable.  The Objection fails to specify facts and legal theories common to the class, and only relies upon vague statements purporting to identify commonalities "upon information and belief."  Objection, ¶¶ 9, 10.  The Objection fails to specify how Mr. Drake's claims and defenses are typical of the claims or defenses of the class, and finally, the Objection fails to show, or even to assert, that Mr. Drake will fairly and adequately protect the interests of the class.

6.      Second, Bankruptcy Rule 7023 states that Civil Rule 23, which governs class action suits, "applies in adversary proceedings."  No attempt has been made by the objectors to commence an adversary proceeding in this case, and the Debtors reserve their rights to respond if and when such a proceeding is properly commenced.  Furthermore, the Objection similarly fails to even request that the Bankruptcy Court apply Civil Rule 23 to this contested matter, and the

Debtors similarly reserve their rights to oppose such a request, if one is made.

**B.      The Separation Agreements Are Executory Contracts**

7.      It should be noted that the Drake Agreement does not contain a choice-of-law clause.  However, even assuming that the Drake Agreement is governed by California law, as asserted in the Objection, caselaw in this Circuit makes clear that the issue of whether a contract is executory is a matter of Third Circuit law.  In re Exide Tech., 607 F.3d 957, 962 (3d Cir. 2010) (applying Third Circuit law to evaluate whether a contract is executory).  Under applicable Third Circuit law, "an executory contract is a contract under which the obligation of both the bankrupt and the other party to the contract are so far underperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other."  Id. Applicable nonbankruptcy law is then reviewed for the purpose of determining "whether the Agreement, on [the Petition Date], contained at least one obligation for both [parties] that would constitute a material breach" under applicable nonbankruptcy law if not performed.  Id.

8.      The California case cited by the Objectors is distinguishable for an additional reason – namely, it deals with a license agreement, not an employment agreement or a severance agreement, and the opinion does not specifically address whether the employment agreements contain any continuing obligations.  In re Qintex Entertainment, Inc., 950 F.2d 1492 (9th Cir. 1991).  Furthermore, the other cases cited in the Objection deal with contracts with either no continuing obligations other than the payment of funds by the debtor (In re U.S. Metalsource Corp., 163 B.R. 260 (W.D. Pa. 1993); In re Wang Laboratories, Inc., 154 B.R. 389 (Bankr. D. Mass. 1993)), or only a single continuing obligation (In re Spectrum Information Tech., Inc., 193 B.R. 400 (Bankr. E.D.N.Y. 1996)).  By contrast, the Separation Agreements do contain continuing obligations, and therefore constitute executory contracts capable of being rejected

pursuant to section 365 of the Bankruptcy Code.

C.     **Rejection of the Separation Agreements Is A Valid Exercise of the Debtors' Business Judgment and Will Benefit the Debtors' Estates**

9.     As set forth in the Motion and the First Day Declaration, the Separation Agreements are financially burdensome to the Debtors and are also no longer necessary to the Debtors' continuing operations.  The Objection specifically asserts that Mr. Drake is owed $304,141.69[4] under the Separation Agreement, and while the Debtors do not concede that this estimate is accurate, the Debtors do contend that Mr. Drake's assertion merely proves their point: the Separation Agreements impose substantial financial obligations upon the Debtors.  In fact, the Debtors' preliminary analysis estimates that the aggregate monthly cost of the Separation Agreements is between $980,000 and $1,000,000.00.  As such, Mr. Drake's assertion that there is no benefit to the Debtors' estate is patently false.

10.     Furthermore, the Separation Agreements are not necessary for the Debtors' business operations.  The Drake Agreement and the Objection both note that Mr. Drake stopped providing services to the Debtors when his employment terminated almost exactly one year ago.  Objection, ¶ 5 ("You [Drake] will not be required to perform any duties following the Separation Date [September 30, 2014]") (quoting Drake Agreement, ¶ 2B).

11.     The Objection concedes that the Drake Agreement and the other Separation Agreements impose substantial financial obligations upon the Debtors, and that Mr. Drake and the other contract counterparties no longer provide any services to the Debtors.  Mr. Drake simply cannot have it both ways.  He cannot both argue that he is entitled to substantial continuing payments under the Separation Agreement, and yet simultaneously argue that the

---

[4]     The Debtors do not concede that this claimed value represents any asserted remaining payment obligation under the Drake Contract.

cessation of such payment obligations would afford the Debtors and their estates no benefit.  In addition, as noted above, the Debtors and their estates will save nearly $1 million a month in aggregate severance payments under the Separation Agreements.  The Debtors submit that, under these facts, the rejection of the Drake Agreements and the Separation Agreements clearly meets the business judgment standard of review and furthermore, rejection of the Drake Agreements and the Separation Agreements will clearly benefit the Debtors and their estates.

12.     In addition, the Objection misstates the law in this district regarding the focus of the rejection analysis by asserting that this Court must deny rejection where a counterparty would be harmed by such rejection.  Objection, ¶¶ 15-17.  However, courts in this jurisdiction have clearly held that the potential burden imposed on a nondebtor counterparty is an inquiry which is "irrelevant and unnecessary" and that the balancing test proposed in the Objection is "inconsistent with the reported decisions in this Circuit … and the long standing position of this Court that in a rejection motion determination the focus is the benefit to the debtor's estate." In re Trans World Airlines, Inc., et al., 261 B.R. 103, 123 (Bankr. D. Del. 2001).  As discussed above, the rejection of the Separation Agreements will result in significant benefit to the Debtors' estates given the substantial monetary burden which the Separation Agreements impose upon the Debtors and their estates.  Accordingly, rejection is undeniably within the sound business judgment of the Debtors.

**D.     Counterparties to the Separation Agreements Are Not Entitled to Priority Claims or to Administrative Expense Claims[5]**

13.     Even assuming that the Drake Agreement and the Separation Agreements are not executory, the Debtors' nonpayment under the agreements is a breach which gives rise to a pre-

---

[5]     The Debtors continue to reserve all rights to object or otherwise respond to any claim submitted by Mr. Drake and other counterparties to the Separation Agreements.

petition claim, and such claim not entitled to administrative or priority treatment under the clear language of the Bankruptcy Code.

14.     The Objection erroneously states that "whether Employees' claims are *administrative or priority*, they must be paid in cash, in full, on the Effective Date of the Plan." Objection, ¶ 19 (emphasis in original).  This error is predicated in part on a misreading of section 507(a)(4): under section 507(a)(4), only the amount of an employee's severance claim which is "earned within 180 days before the date of the filing of the petition" is eligible for priority treatment.  Courts have held that severance claims are "earned" on the date upon which the employee "becomes entitled to receive such compensation" for the purposes of 507(a)(4) priority determinations.  Matson v. Alarcon, 651 F.3d 404, 409 (4th Cir. 2011) (holding that severance pay was "earned" upon the date of an employee's termination or execution of a severance agreement, even where severance payments were paid over time). By the clear terms of the Separation Agreement, Mr. Drake became entitled to receive severance compensation on the date his employment terminated—that is, September 30, 2014.  This clearly puts Mr. Drake's claim outside the 180 day pre-petition period, and accordingly Mr. Drake is not entitled to priority treatment for any portion of his claim arising from the Separation Agreement.

15.     The Objection also alleges that Mr. Drake and the other contract counterparties are entitled to administrative priority for their claims.  However, this assertion is once again premised on a misreading of the Bankruptcy Code.  The provision cited by Mr. Drake, Bankruptcy Code section 503(b)(1)(A)(ii), is clearly inapplicable here, as the subsection is narrowly tailored to "wages and benefits awarded *pursuant to a judicial proceeding or a proceeding of the National Labor Relations Board* as *back pay* attributable to any period of time occurring after commencement of the case under this title…" (emphasis added).  The payments

owing to Mr. Drake are severance payments, not back pay.  There is no award, no judicial proceeding, and no proceeding of the National Labor Relations Board.  Despite the Objection's highly selective quotation, no portion of Mr. Drake's alleged claim is entitled to administrative priority under section 503(b)(1)(A)(ii).

16.     For the avoidance of doubt, Mr. Drake's alleged claim is also ineligible for administrative priority treatment under any provision of section 503(b)(1)(A) which generally applies to "the actual, necessary costs and expenses of preserving the estate," including subsection (i), which reserves administrative priority treatment for "wages, salaries, and commissions for services rendered after the commencement of the case."  The Objection concedes that Mr. Drake and the counterparties have not provided post-petition services to the Debtor, and as noted above, caselaw in this jurisdiction clearly precludes administrative priority treatment.  Objection, ¶ 25 ("Mr. Drake and Class Claimants admittedly did not provide any services to the Debtor post-petition").

17.     In fact, one of the cases cited in the Objection in support of Mr. Drake's novel theory that he is entitled to administrative claim status clearly states that "[i]n terms of priority, a claim for severance pay will only have administrative priority *to the extent that it is based on post-petition services…* a claim for severance pay for a pre-petition termination *does not receive* administrative expense status." In re Powermate Holding Corp., 349 B.R. 765, 775-76 (Bankr. D. Del. 2008) (emphasis added).   Furthermore, the additional cases cited in paragraph 24 of the Objection are inapposite, are not binding upon this Court, do not address the relevant provisions of the Bankruptcy Code as subsequently amended, and, most importantly, do not support the arguments presented in the Objection. Straus-Duparquet, Inc. v. Local Union No. 3 Int'l Brotherhood of Electrical Workers A F of L, CIO, 386 F.2d 649 (2nd Cir. 1967) (granting

administrative priority to severance pay for employees terminated postpetition); Rodman v. Rinier (In re W.T. Grant Co.), 620 F.2d 319 (2d Cir. 1980) (noting that the debtor "received benefits … by permitting the workers to continue in its employ after it entered Chapter XI" and affirming Straus-Duparquet); Trustees of the Amalgamated Ins. Fund v. McFarlin's, Inc., 789 F.2d 98, 104 (2d Cir. 1986) (stating the general Second Circuit rule that "a bankrupt's obligation to pay severance pay, *which arises out of the termination of an employee during bankruptcy*, is an administrative expense entitled to priority") (emphasis added).  The cases cited in the Objection do not support the proposition that an employee terminated pre-petition is entitled to administrative priority of its severance claim, for a single, simple reason: such treatment has no foundation in the clear language of section 503(b).

## RESERVATION OF RIGHTS

18.    Nothing contained herein is or should be construed as: (a) an admission as to the validity of any claim of any counterparty to a Separation Agreement against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim of such counterparties on any grounds; or (c) a promise to pay any claim to any counterparty.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that this Court (i) overrule the

Objection; (ii) grant the Motion and enter the proposed order; and (iii) grant such further relief as

is just and proper.

Dated:    Wilmington, Delaware
          October 2, 2015

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

*/s/ Van C. Durrer, II*
Van C. Durrer, II (I.D. No. 3827)
Annie Li
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071
Telephone: (213) 687-5000
Fax: (213) 687-5600

- and -

Mark S. Chehi, Esq. (I.D. No. 2855)
Dain A. De Souza (I.D. No. 5737)
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
Telephone: (302) 651-3000
Fax: (302) 651-3001

- and -

John K. Lyons
Jessica Kumar
155 N. Wacker Dr.
Chicago, Illinois 60606
Telephone: (312) 407-0700
Fax: (312) 407-0411

*Proposed Counsel for Debtors and Debtors in Possession*

10