# **Exhibit A**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| QUIKSILVER, INC., *et al.*, | : | Case No. 15-11880 (BLS) |
|  | : |  |
| Debtors[1]. | : | (Jointly Administered) |
|  | : |  |
|  | x | **Hrg. Date: October 14, 2015 at 1:00 p.m. EST** |
|  |  | **Obj. Due: October 14, 2015 at 1:00 p.m. EST** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### DEBTORS' MOTION FOR ENTRY OF AN ORDER
### PROVIDING FOR LIMITED RELIEF FROM THE AUTOMATIC STAY *NUNC PRO TUNC* TO THE PETITION DATE FOR THE SOLE PURPOSE OF PERMITTING BOARDRIDERS S.A., TO DECELERATE ITS OBLIGATIONS UNDER THE NOTES

The above-captioned debtors and debtors in possession (collectively, the "Debtors" or the "Company") file this motion (this "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), (a) annulling the automatic stay under section 362(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") effective *nunc pro tunc* to the Petition Date (as defined herein below), for the limited purpose of permitting Boardriders S.A. ("Boardriders") and Deutsche Trustee Company Limited, as Trustee (the "Indenture Trustee") to decelerate its obligations under the Notes (as defined herein below). The Debtors, Boardriders, and the Indenture Trustee have agreed to the relief requested herein. In support of the Motion, the Debtors respectfully state as follows:

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and  Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

**Jurisdiction**

1.      The United States Bankruptcy Court for the District of Delaware (the "Court")
has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended
Standing Order of Reference* from the United States District Court for the District of Delaware,
dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C.
§ 157(b)(2), and the Court may enter a final order consistent with Article III of the United States
Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are section 362(a) of the
Bankruptcy Code, Rules 4001(a) and 9014 of the Federal Rules of Bankruptcy Procedure
(the "Bankruptcy Rules"), and Rule 4001-1 of the Local Rules of Bankruptcy Practice and
Procedure of the United States Bankruptcy Court for the District of Delaware
(the "Local Rules").

**Relief Requested**

4.      By this Motion, the Debtors seek entry of an Order annulling the automatic stay
under section 362(a) of the Bankruptcy Code effective *nunc pro tunc* to the Petition Date, for the
limited purpose of permitting Boardriders and Deutsche Bank, as Indenture Trustee and
Common Depository (as defined herein below), to decelerate the obligations under the Notes and
for such other and further relief as is just and proper.

**Background**

5.      On September 9, 2015, the Debtors each commenced a case by filing a petition
for relief under Chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").
These cases are being jointly administered.

6.     The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.     On September 22, 2015, the United States Trustee appointed a Creditors' Committee [D.I. 129].  On September 28, 2015, the United States Trustee filed an Amended Notice of Appointment of Creditors' Committee [D.I. 163].

8.     Quiksilver is one of the world's leading outdoor sports lifestyle companies.  The Company designs, develops and distributes branded apparel, footwear, accessories and related products.  The Company began operations in 1976 making boardshorts for surfers in the United States under a license agreement with the Quiksilver brand founders in Australia. Today, the Company's business is rooted in the strong heritage and authenticity of its core brands, Quiksilver, Roxy, and DC, each of which caters to the casual, outdoor lifestyle associated with surfing, skateboarding, snowboarding, and motocross, among other activities. The Company's products are sold in over 115 countries through a wide range of distribution points, including wholesale accounts (surf shops, skate shops, snow shops, sporting goods stores, discount centers, specialty stores, select department stores, and licensed stores), Company-owned retail stores, and its e-commerce websites.  The Debtors comprise each of the Company's U.S. entities, including parent, Quiksilver, Inc. ("ZQK"), as well as QS Wholesale, Inc., QS Retail, Inc., DC Shoes, Inc., and seven inactive entities.

9.     Additional factual background information regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to these Chapter 11 Cases, is set forth in detail in the *Declaration of Andrew Bruenjes, Americas Chief Financial Officer of Quiksilver, Inc., in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 20].

### The Notes

10.     Boardriders issued €200 million aggregate principal amount of 8.875% senior notes with a maturity date of December 15, 2017 (the "Notes") pursuant to an indenture dated December 10, 2010 (the "Indenture" and, together with all related agreements and documents executed in connection with the Indenture, the "Notes Documents").  The proceeds from the Notes offering were used to refinance approximately €190 million of existing European term debt and to pay related fees and expenses. The obligations of Boardriders S.A. under the Euro Notes are guaranteed by the Debtors and certain non-Debtor affiliates (together, the "Guarantors" and such guaranty obligations, the "Notes Guaranty Claims"). For a detailed description of Boardriders and their relationship to the Debtors *see* the *Declaration of Andrew Bruenjes, Americas Chief Financial Officer of Quiksilver, Inc., in Support of Chapter 11 Petitions and First Day Pleadings* and the Organizational Chart attached to the Declaration as Exhibit A [D.I. 20].

11.     Boardriders issued the Notes pursuant to the Indenture among Boardriders, as Issuer, ZQK, as Guarantor, the Subsidiary Guarantors (as defined below), the Indenture Trustee, Deutsche Bank Luxembourg S.A., as Registrar and Transfer Agent, and Deutsche Bank AG, London Branch, as Principal Paying Agent and as the "Common Depositary."  A true and correct copy of the Indenture is annexed hereto as Exhibit B.

12.     As of the Petition Date, the Notes had an outstanding principal balance of approximately $221 million.

13.     Pursuant to the terms of the Indenture, the "Subsidiary Guarantors" include (i) Debtors QS Wholesale, Inc., DC Shoes, Inc., Hawk Designs, Inc., and QS Retail, Inc., and (ii) non-Debtor affiliates Mountain and Wave SARL (Luxembourg), Biarritz Holdings SARL

(Luxembourg), 54th Street Holdings SARL (Luxembourg), Quiksilver Deluxe SARL (Luxembourg), Na Pali SAS (France), QS Retail (NZ) Limited (New Zealand), Ug Mfg. Co. (NZ) Ltd. (New Zealand), QSJ Holdings Pty. Ltd. (Australia), Quiksilver Aus. Pty. Ltd. (Australia), Quiksilver Intl Pty. Ltd. (Australia), QS Retail Pty. Ltd. (Australia), and DC Shoes Australia Pty. Ltd. (Australia).

14.     In general, the Guarantors (*i.e.*, ZQK and the Subsidiary Guarantors), jointly and severally, guaranteed all payments due under the Notes and all obligations of Boardriders, as issuer, under the Indenture.

15.     Because many of the Debtors are Subsidiary Guarantors (and ZQK itself is a Guarantor), these Chapter 11 Cases give rise to an acceleration of the Notes under the terms of the Indenture.  Acceleration is automatic under the terms of the Indenture.  One of the key assets of the Debtors is the residual equity value of its foreign subsidiaries, which would be placed in substantial jeopardy and impairment upon a default of the Notes.  Accordingly, prior to the Petition Date, the Company entered into certain waiver documentation with holders of over 50% of the aggregate outstanding principal amount of the Notes, which demonstrates the support of these holders for deceleration of the obligations owed under the Notes.  In addition to the rescission of the acceleration of the Notes, the beneficial owners of the Notes waived the related events of default and compliance with the change of control covenant as a result of the Chapter 11 Cases and the debt incurrence and lien covenants in respect of the debtor-in-possession credit facilities. Under the Indenture, the Common Depositary is the only registered holder of the Notes, holding a global note in which the beneficial owners of the Notes own an interest, including those beneficial owners that delivered the waivers in connection with the Chapter 11 Cases.  Accordingly, for purposes of having the waivers become effective, the beneficial owners,

owning more than 50% of the aggregate principal amount of the Notes, are requesting the Common Depositary to deliver documentation evidencing the waivers to the Indenture Trustee.

**Basis for Relief Requested**

**I.      Boardriders is Entitled to Limited Relief from the Automatic Stay**

16.      Section 362(d)(1) of the Bankruptcy Code provides that the automatic stay may be lifted for cause by motion after notice and a hearing.  See 11 U.S.C. § 362(d)(1).  "Cause" can be a flexible standard, taking into account the particular facts and circumstances of the particular issue before the Court.  See Baldino v. Wilson (In re Wilson), 116 F.3d 87, 90 (3d Cir. 1997) (noting that section 362(d)(1) "does not define 'cause,' leaving courts to consider what constitutes cause based on the totality of the circumstances in each particular case.").

17.      Cause exists here to grant Boardriders the limited relief from the automatic stay requested by this Motion *nunc pro tunc* to the Petition Date.  The automatic stay will be annulled solely for the purpose of permitting Boardriders to decelerate its obligations under the Notes and for no other purpose.  *Nunc pro tunc* relief is required to ensure that there is no violation of the automatic stay for any deceleration which has occurred since the Petition Date.

18.      The Debtors and their stakeholders will suffer no prejudice if the stay is lifted for this limited purpose; in fact, given that residual value of the equity interests in the Subsidiary Guarantors inures to the benefit of ZQK, the Debtors and their stakeholders will benefit from the deceleration.  The Debtors have worked cooperatively with their creditors and parties in interest, including Boardriders, to build the consensus necessary to successfully reorganize in a way that maximizes the value of the Debtors' estates towards a resolution of these Chapter 11 Cases.  Toward that end, the Debtors have agreed with Boardriders to allow Boardriders to decelerate the obligations owed under the Notes.

19.     Although deceleration would not cause any harm to the Debtors or their stakeholders, recent caselaw in this district has suggested that deceleration by an indenture trustee requires relief from the automatic stay similar to the relief sought herein.  Delaware Trust Co. v. Energy Future Intermediate Holding Co. LLC (In re Energy Future Holdings Corp.), Adv. P. No. 14-50363 (CSS) (Bankr. D. Del. Mar. 26, 2015) (holding that the automatic stay bars an indenture trustee from deceleration through service of a notice of rescission upon the debtors). The Indenture Trustee is prepared to decelerate the obligations under the Notes consistent with the waivers; however, given such recent caselaw, the Indenture Trustee is concerned about the impact of the automatic stay upon the proposed deceleration.  In contrast with the facts presented in the Energy Future Holdings case, here deceleration would greatly benefit the Debtors and their stakeholders.  Cf. Delaware Trust Co., Adv. P. No. 14-50363 (CSS) (Bankr. D. Del. July 8, 2015) ("It is clear that, should the automatic stay be lifted, the Notes decelerated, and the Trustee's requested make-whole claim be paid, that such payment would substantially reduce the value of other EFIH stakeholder recoveries").  Accordingly, cause exists to annul the automatic stay to permit deceleration of the Notes.

20.     Denial of the relief would cause immediate and irreparable injury to the Debtors by jeopardizing the residual value of their equity interests in the Subsidiary Guarantors and impairing their ability, as debtors in possession, to operate their business, administer these Chapter 11 Cases, and confirm a plan of reorganization that maximizes the value of the Debtors' estates for the benefit of creditors.

## Notice

21.     Notice of this Motion shall be given to (a) the United States Trustee; (b) counsel to both agents for the Debtors' separate postpetition secured loan facilities; (c) counsel to the

agent for the Debtors' prepetition revolving loan facility; (d) the agent for the Debtors' prepetition senior secured notes; (e) the agent for the Debtors' prepetition senior unsecured notes; and (f) the Unsecured Creditors Committee.  The Debtors submit that no other or further notice need be provided.

## No Prior Request

22.     No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as Exhibit A, granting the relief requested herein and such other and further relief as the Court deems appropriate.

Dated: October 5, 2015
      Wilmington, Delaware

/s/ Laura Davis Jones

Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Jeffrey N. Pomerantz (*admitted pro hac vice*)
John A. Morris (*admitted pro hac vice*)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:     (302) 652-4100
Facsimile:     (302) 652-4400
Email:          ljones@pszjlaw.com
                joneill@pszjlaw.com

*Co-Counsel for the Debtors and Debtors in Possession*

Case 15-11880-BLS    Doc 228-1    Filed 10/06/15    Page 1 of 12

# **EXHIBIT A**

## **Proposed Order**

KE 29199943

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| QUIKSILVER, INC., *et al.*, | : | Case No. 15-11880 (BLS) |
|  | : |  |
| Debtors[2]. | : | (Jointly Administered) |
|  | : |  |
|  | x |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**ORDER GRANTING DEBTORS' MOTION AN ORDER
PROVIDING FOR LIMITED RELIEF FROM THE AUTOMATIC STAY N*UNC PRO
TUNC* TO THE PETITION DATE TO BOARDRIDERS S.A, SOLELY FOR THE
PURPOSE OF ALLOWING DECELERATION OF THE OBLIGATIONS UNDER THE
NOTES**

Upon the motion (the "Motion")[3] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") and upon consideration of the *Motion of the Debtors for and Order Granting Limited Relief from the Automatic Stay Nunc Pro Tunc to the Petition Date Solely for the Purpose of Allowing Deceleration of the Obligations Under the Notes* (the "Motion"), a copy of which is attached to this Order as Exhibit 1, as agreed to by and between Quiksilver, Inc. and Boardriders S.A.," (("Boardriders") and together with Quiksilver, Inc., the Indenture Trustee, and the Common Depository, the "Parties"), it is HEREBY ORDERED THAT:

1.      The Motion is GRANTED.

---

[2]   The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and  Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

[3]   Capitalized terms used but not defined herein shall have the meanings assigned to such terms in the Motion.

Case 15-11880-BLS    Doc 248-1    Filed 10/06/15    Page 12 of 12

2.      Boardriders, the Indenture Trustee, and the Common Depository are granted limited relief from the automatic stay of § 362(a) of the Bankruptcy Code *nunc pro tunc* to the Petition Date solely for the purpose of decelerating the obligations under the Notes.

3.      The Parties are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

4.      Notwithstanding any of the Federal Rules of Bankruptcy Procedure to the contrary, this Order shall take effect immediately upon entry.

5.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.


Dated: _____

        Wilmington, Delaware

_____

The Honorable Brendan L. Shannon
Chief United States Bankruptcy Judge

Case 15-11880-BLS    Doc 223-1    Filed 10/06/15    Page 4 of 12

## Exhibit 1

**The Motion**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| QUIKSILVER, INC., *et al.*, | : | Case No. 15-11880 (BLS) |
| | : | |
| Debtors[1]. | : | (Jointly Administered) |
| | : | |
| | x | **Hrg. Date: October 14, 2015 at 1:00 p.m. EST** |
| | | **Obj. Due: October 14, 2015 at 1:00 p.m. EST** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## DEBTORS' MOTION FOR ENTRY OF AN ORDER PROVIDING FOR LIMITED RELIEF FROM THE AUTOMATIC STAY *NUNC PRO TUNC* TO THE PETITION DATE FOR THE SOLE PURPOSE OF PERMITTING BOARDRIDERS S.A., TO DECELERATE ITS OBLIGATIONS UNDER THE NOTES

The above-captioned debtors and debtors in possession (collectively, the "Debtors" or the "Company") file this motion (this "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), (a) annulling the automatic stay under section 362(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") effective *nunc pro tunc* to the Petition Date (as defined herein below), for the limited purpose of permitting Boardriders S.A. ("Boardriders") and Deutsche Trustee Company Limited, as Trustee (the "Indenture Trustee") to decelerate its obligations under the Notes (as defined herein below). The Debtors, Boardriders, and the Indenture Trustee have agreed to the relief requested herein. In support of the Motion, the Debtors respectfully state as follows:

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

## Jurisdiction

1.      The United States Bankruptcy Court for the District of Delaware (the "Court")

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended*

*Standing Order of Reference* from the United States District Court for the District of Delaware,

dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C.

§ 157(b)(2), and the Court may enter a final order consistent with Article III of the United States

Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are section 362(a) of the

Bankruptcy Code, Rules 4001(a) and 9014 of the Federal Rules of Bankruptcy Procedure

(the "Bankruptcy Rules"), and Rule 4001-1 of the Local Rules of Bankruptcy Practice and

Procedure of the United States Bankruptcy Court for the District of Delaware

(the "Local Rules").

## Relief Requested

4.      By this Motion, the Debtors seek entry of an Order annulling the automatic stay

under section 362(a) of the Bankruptcy Code effective *nunc pro tunc* to the Petition Date, for the

limited purpose of permitting Boardriders and Deutsche Bank, as Indenture Trustee and

Common Depository (as defined herein below), to decelerate the obligations under the Notes and

for such other and further relief as is just and proper.

## Background

5.      On September 9, 2015, the Debtors each commenced a case by filing a petition

for relief under Chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").

These cases are being jointly administered.

Case 15-11880-BLS    Doc 243-1    Filed 10/08/15    Page 16 of 92

6.      The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      On September 22, 2015, the United States Trustee appointed a Creditors' Committee [D.I. 129].  On September 28, 2015, the United States Trustee filed an Amended Notice of Appointment of Creditors' Committee [D.I. 163].

8.      Quiksilver is one of the world's leading outdoor sports lifestyle companies.  The Company designs, develops and distributes branded apparel, footwear, accessories and related products.  The Company began operations in 1976 making boardshorts for surfers in the United States under a license agreement with the Quiksilver brand founders in Australia. Today, the Company's business is rooted in the strong heritage and authenticity of its core brands, Quiksilver, Roxy, and DC, each of which caters to the casual, outdoor lifestyle associated with surfing, skateboarding, snowboarding, and motocross, among other activities. The Company's products are sold in over 115 countries through a wide range of distribution points, including wholesale accounts (surf shops, skate shops, snow shops, sporting goods stores, discount centers, specialty stores, select department stores, and licensed stores), Company-owned retail stores, and its e-commerce websites.  The Debtors comprise each of the Company's U.S. entities, including parent, Quiksilver, Inc. ("ZQK"), as well as QS Wholesale, Inc., QS Retail, Inc., DC Shoes, Inc., and seven inactive entities.

9.      Additional factual background information regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to these Chapter 11 Cases, is set forth in detail in the *Declaration of Andrew Bruenjes, Americas Chief Financial Officer of Quiksilver, Inc., in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 20].

## The Notes

10.    Boardriders issued €200 million aggregate principal amount of 8.875% senior notes with a maturity date of December 15, 2017 (the "Notes") pursuant to an indenture dated December 10, 2010 (the "Indenture" and, together with all related agreements and documents executed in connection with the Indenture, the "Notes Documents").  The proceeds from the Notes offering were used to refinance approximately €190 million of existing European term debt and to pay related fees and expenses. The obligations of Boardriders S.A. under the Euro Notes are guaranteed by the Debtors and certain non-Debtor affiliates (together, the "Guarantors" and such guaranty obligations, the "Notes Guaranty Claims"). For a detailed description of Boardriders and their relationship to the Debtors *see* the *Declaration of Andrew Bruenjes, Americas Chief Financial Officer of Quiksilver, Inc., in Support of Chapter 11 Petitions and First Day Pleadings* and the Organizational Chart attached to the Declaration as Exhibit A [D.I. 20].

11.    Boardriders issued the Notes pursuant to the Indenture among Boardriders, as Issuer, ZQK, as Guarantor, the Subsidiary Guarantors (as defined below), the Indenture Trustee, Deutsche Bank Luxembourg S.A., as Registrar and Transfer Agent, and Deutsche Bank AG, London Branch, as Principal Paying Agent and as the "Common Depositary."  A true and correct copy of the Indenture is annexed hereto as Exhibit B.

12.    As of the Petition Date, the Notes had an outstanding principal balance of approximately $221 million.

13.    Pursuant to the terms of the Indenture, the "Subsidiary Guarantors" include (i) Debtors QS Wholesale, Inc., DC Shoes, Inc., Hawk Designs, Inc., and QS Retail, Inc., and (ii) non-Debtor affiliates Mountain and Wave SARL (Luxembourg), Biarritz Holdings SARL

(Luxembourg), 54th Street Holdings SARL (Luxembourg), Quiksilver Deluxe SARL (Luxembourg), Na Pali SAS (France), QS Retail (NZ) Limited (New Zealand), Ug Mfg. Co. (NZ) Ltd. (New Zealand), QSJ Holdings Pty. Ltd. (Australia), Quiksilver Aus. Pty. Ltd. (Australia), Quiksilver Intl Pty. Ltd. (Australia), QS Retail Pty. Ltd. (Australia), and DC Shoes Australia Pty. Ltd. (Australia).

14.    In general, the Guarantors (*i.e.*, ZQK and the Subsidiary Guarantors), jointly and severally, guaranteed all payments due under the Notes and all obligations of Boardriders, as issuer, under the Indenture.

15.    Because many of the Debtors are Subsidiary Guarantors (and ZQK itself is a Guarantor), these Chapter 11 Cases give rise to an acceleration of the Notes under the terms of the Indenture.  Acceleration is automatic under the terms of the Indenture.  One of the key assets of the Debtors is the residual equity value of its foreign subsidiaries, which would be placed in substantial jeopardy and impairment upon a default of the Notes.  Accordingly, prior to the Petition Date, the Company entered into certain waiver documentation with holders of over 50% of the aggregate outstanding principal amount of the Notes, which demonstrates the support of these holders for deceleration of the obligations owed under the Notes.  In addition to the rescission of the acceleration of the Notes, the beneficial owners of the Notes waived the related events of default and compliance with the change of control covenant as a result of the Chapter 11 Cases and the debt incurrence and lien covenants in respect of the debtor-in-possession credit facilities. Under the Indenture, the Common Depositary is the only registered holder of the Notes, holding a global note in which the beneficial owners of the Notes own an interest, including those beneficial owners that delivered the waivers in connection with the Chapter 11 Cases.  Accordingly, for purposes of having the waivers become effective, the beneficial owners,

owning more than 50% of the aggregate principal amount of the Notes, are requesting the Common Depositary to deliver documentation evidencing the waivers to the Indenture Trustee.

**Basis for Relief Requested**

**I.      Boardriders is Entitled to Limited Relief from the Automatic Stay**

16.      Section 362(d)(1) of the Bankruptcy Code provides that the automatic stay may be lifted for cause by motion after notice and a hearing.  See 11 U.S.C. § 362(d)(1).  "Cause" can be a flexible standard, taking into account the particular facts and circumstances of the particular issue before the Court.  See Baldino v. Wilson (In re Wilson), 116 F.3d 87, 90 (3d Cir. 1997) (noting that section 362(d)(1) "does not define 'cause,' leaving courts to consider what constitutes cause based on the totality of the circumstances in each particular case.").

17.      Cause exists here to grant Boardriders the limited relief from the automatic stay requested by this Motion *nunc pro tunc* to the Petition Date.  The automatic stay will be annulled solely for the purpose of permitting Boardriders to decelerate its obligations under the Notes and for no other purpose.  *Nunc pro tunc* relief is required to ensure that there is no violation of the automatic stay for any deceleration which has occurred since the Petition Date.

18.      The Debtors and their stakeholders will suffer no prejudice if the stay is lifted for this limited purpose; in fact, given that residual value of the equity interests in the Subsidiary Guarantors inures to the benefit of ZQK, the Debtors and their stakeholders will benefit from the deceleration.  The Debtors have worked cooperatively with their creditors and parties in interest, including Boardriders, to build the consensus necessary to successfully reorganize in a way that maximizes the value of the Debtors' estates towards a resolution of these Chapter 11 Cases.  Toward that end, the Debtors have agreed with Boardriders to allow Boardriders to decelerate the obligations owed under the Notes.

19.     Although deceleration would not cause any harm to the Debtors or their stakeholders, recent caselaw in this district has suggested that deceleration by an indenture trustee requires relief from the automatic stay similar to the relief sought herein.  Delaware Trust Co. v. Energy Future Intermediate Holding Co. LLC (In re Energy Future Holdings Corp.), Adv. P. No. 14-50363 (CSS) (Bankr. D. Del. Mar. 26, 2015) (holding that the automatic stay bars an indenture trustee from deceleration through service of a notice of rescission upon the debtors). The Indenture Trustee is prepared to decelerate the obligations under the Notes consistent with the waivers; however, given such recent caselaw, the Indenture Trustee is concerned about the impact of the automatic stay upon the proposed deceleration.  In contrast with the facts presented in the Energy Future Holdings case, here deceleration would greatly benefit the Debtors and their stakeholders.  Cf. Delaware Trust Co., Adv. P. No. 14-50363 (CSS) (Bankr. D. Del. July 8, 2015) ("It is clear that, should the automatic stay be lifted, the Notes decelerated, and the Trustee's requested make-whole claim be paid, that such payment would substantially reduce the value of other EFIH stakeholder recoveries").  Accordingly, cause exists to annul the automatic stay to permit deceleration of the Notes.

20.     Denial of the relief would cause immediate and irreparable injury to the Debtors by jeopardizing the residual value of their equity interests in the Subsidiary Guarantors and impairing their ability, as debtors in possession, to operate their business, administer these Chapter 11 Cases, and confirm a plan of reorganization that maximizes the value of the Debtors' estates for the benefit of creditors.

### Notice

21.     Notice of this Motion shall be given to (a) the United States Trustee; (b) counsel to both agents for the Debtors' separate postpetition secured loan facilities; (c) counsel to the

agent for the Debtors' prepetition revolving loan facility; (d) the agent for the Debtors' prepetition senior secured notes; (e) the agent for the Debtors' prepetition senior unsecured notes; and (f) the Unsecured Creditors Committee.  The Debtors submit that no other or further notice need be provided.

### No Prior Request

22.    No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as <u>Exhibit A</u>, granting the relief requested herein and such other and further relief as the Court deems appropriate.

Dated: October 5, 2015    */s/ Laura Davis Jones*
       Wilmington, Delaware    Laura Davis Jones (DE Bar No. 2436)
                                James E. O'Neill (DE Bar No. 4042)
                                Jeffrey N. Pomerantz (*admitted pro hac vice*)
                                John A. Morris (*admitted pro hac vice*)
                                **PACHULSKI STANG ZIEHL & JONES LLP**
                                919 North Market Street, 17th Floor
                                P.O. Box 8705
                                Wilmington, Delaware 19899-8705 (Courier 19801)
                                Telephone:    (302) 652-4100
                                Facsimile:    (302) 652-4400
                                Email:        ljones@pszjlaw.com
                                              joneill@pszjlaw.com

                                *Co-Counsel for the Debtors and Debtors in Possession*

# **EXHIBIT B**

**Indenture Agreement**

confidential
Annie Li
Aug 25, 2015 21:20

EXECUTION COPY

BOARDRIDERS S.A.,
as Issuer,

QUIKSILVER, INC.,
as Guarantor,

THE SUBSIDIARY GUARANTORS PARTIES
HERETO,

DEUTSCHE TRUSTEE COMPANY LIMITED,
as Trustee,

DEUTSCHE BANK LUXEMBOURG S.A.,
as Registrar and Transfer Agent,

and

DEUTSCHE BANK AG, LONDON BRANCH,
as Principal Paying Agent and Common Depositary

8.875% Senior Notes due 2017

INDENTURE

Dated as of December 10, 2010

confidential
Annie Li
Aug 25, 2015 21:20

us\WONGJA\7929518.7

confidential
Annie Li
Aug 25, 2015 21:20

## TABLE OF CONTENTS

**Page**

ARTICLE I Definitions and Incorporation by Reference ................................................. 1

    SECTION 1.1.   Definitions .................................................................................... 1

    SECTION 1.2.   Rules of Construction ................................................................. 34

ARTICLE II The Notes ........................................................................................................ 35

    SECTION 2.1.   Form, Dating and Terms ........................................................... 35

    SECTION 2.2.   Execution and Authentication ................................................... 40

    SECTION 2.3.   Registrar and Paying Agent ...................................................... 41

    SECTION 2.4.   Paying Agent To Hold Money in Trust ..................................... 42

    SECTION 2.5.   Transfer and Exchange .............................................................. 42

    SECTION 2.6.   Form of Certificate to be Delivered in Connection with Transfers Pursuant to Regulation S ...................................................... 45

    SECTION 2.7.   Mutilated, Destroyed, Lost or Stolen Notes .............................. 46

    SECTION 2.8.   Outstanding Notes ..................................................................... 47

    SECTION 2.9.   Temporary Notes ....................................................................... 47

    SECTION 2.10.  Cancellation .............................................................................. 47

    SECTION 2.11.  Payment of Interest; Defaulted Interest ................................... 48

    SECTION 2.12.  Computation of Interest ............................................................ 49

    SECTION 2.13.  Common Code and ISINs .......................................................... 49

    SECTION 2.14.  Judgment Currency .................................................................. 49

ARTICLE III Covenants ...................................................................................................... 50

    SECTION 3.1.   Payment of Notes ..................................................................... 50

    SECTION 3.2.   SEC Reports .............................................................................. 50

us\WONGJA\7929518.7

confidential
Annie Li
Aug 25, 2015 21:20

confidential
Annie Li
Aug 25, 2015 21:20

SECTION 3.3.    Limitation on Indebtedness ........................................50

SECTION 3.4.    Limitation on Restricted Payments ........................56

SECTION 3.5.    Limitation on Liens ...................................................61

SECTION 3.6.    Limitation on Restrictions on
Distributions from Restricted Subsidiaries ...............61

SECTION 3.7.    Limitation on Sales of Assets and
Subsidiary Stock ........................................................63

SECTION 3.8.    Limitation on Transactions with Affiliates ...........66

SECTION 3.9.    Change of Control ....................................................67

SECTION 3.10.   Future Subsidiary Guarantors ...............................69

SECTION 3.11.   Effectiveness of Covenants ....................................70

SECTION 3.12.   Additional Amounts ...............................................71

SECTION 3.13.   Maintenance of Office or Agency ..........................73

SECTION 3.14.   Money for Note Payments to Be Held in
Trust ...........................................................................74

SECTION 3.15.   Corporate Existence ...............................................75

SECTION 3.16.   Payment of Taxes and Other Claims......................75

SECTION 3.17.   Maintenance of Properties .....................................75

SECTION 3.18.   Compliance with Laws............................................76

SECTION 3.19.   Compliance Certificate ..........................................76

ARTICLE IV Successor Company and Successor Subsidiary Guarantor ...............76

SECTION 4.1.    Merger and Consolidation.......................................76

ARTICLE V Redemption of Notes ...........................................................79

SECTION 5.1.    Optional Redemption ..............................................79

SECTION 5.2.    Applicability of Article ...........................................79

SECTION 5.3.    Election to Redeem; Notice to Trustee and
Agents ..........................................................................79

confidential
Annie Li
Aug 25, 2015 21:20

confidential
Annie Li
Aug 25, 2015 21:20

SECTION 5.4.   Selection by Trustee of Notes to Be
Redeemed.................................................................79

SECTION 5.5.   Notice of Redemption .........................................80

SECTION 5.6.   Deposit of Redemption Price .................................81

SECTION 5.7.   Notes Payable on Redemption Date............................81

SECTION 5.8.   Notes Redeemed in Part........................................81

ARTICLE VI Defaults and Remedies ...............................................82

SECTION 6.1.   Events of Default ..............................................82

SECTION 6.2.   Acceleration ...................................................84

SECTION 6.3.   Other Remedies.................................................84

SECTION 6.4.   Waiver of Past Defaults .......................................85

SECTION 6.5.   Control by Majority ...........................................85

SECTION 6.6.   Limitation on Suits............................................85

SECTION 6.7.   Rights of Holders to Receive Payment .........................86

SECTION 6.8.   Collection Suit by Trustee.....................................86

SECTION 6.9.   Trustee May File Proofs of Claim..............................86

SECTION 6.10.   Priorities ....................................................87

SECTION 6.11.   Undertaking for Costs ........................................87

ARTICLE VII Trustee and Agents..................................................87

SECTION 7.1.   Duties of Trustee..............................................87

SECTION 7.2.   Rights of Trustee..............................................88

SECTION 7.3.   Individual Rights of Trustee ..................................90

SECTION 7.4.   Trustee's Disclaimer ..........................................90

SECTION 7.5.   Notice of Defaults ............................................90

SECTION 7.6.   Notice of Listing .............................................90

SECTION 7.7.   Compensation and Indemnity ....................................90

us\WONGJA\7929518.7

confidential
Annie Li
Aug 25, 2015 21:20

confidential
Annie Li
Aug 25, 2015 21:20

SECTION 7.8.    Replacement of Trustee or Agents ........................................... 91

SECTION 7.9.    Successor Trustee by Merger ................................................. 92

ARTICLE VIII Discharge of Indenture; Defeasance ........................................ 92

SECTION 8.1.    Satisfaction and Discharge .................................................. 92

SECTION 8.2.    Conditions to Defeasance ..................................................... 94

SECTION 8.3.    Application of Trust Money .................................................. 95

SECTION 8.4.    Repayment to the Issuer ...................................................... 96

SECTION 8.5.    Indemnity for Government Obligations .................................. 96

SECTION 8.6.    Reinstatement ....................................................................... 96

ARTICLE IX Amendments ............................................................................. 96

SECTION 9.1.    Without Consent of Holders ................................................ 96

SECTION 9.2.    With Consent of Holders ..................................................... 97

SECTION 9.3.    Revocation and Effect of Consents and
                Waivers ............................................................................ 98

SECTION 9.4.    Notation on or Exchange of Notes ...................................... 99

SECTION 9.5.    Trustee To Sign Amendments .............................................. 99

ARTICLE X Guarantees ................................................................................. 99

SECTION 10.1.    Guarantees ......................................................................... 99

SECTION 10.2.    Limitation on Liability; Termination,
                 Release and Discharge ..................................................... 101

SECTION 10.3.    Right of Contribution ....................................................... 102

SECTION 10.4.    No Subrogation ................................................................ 102

SECTION 10.5.    Execution and Delivery of Notes
                 Guarantee ........................................................................ 103

ARTICLE XI Miscellaneous ........................................................................... 103

SECTION 11.1.    Notices ............................................................................... 103

confidential
Annie Li
Aug 25, 2015 21:20

confidential
Annie Li
Aug 25, 2015 21:20

SECTION 11.2.   Certificate and Opinion as to Conditions
                Precedent ................................................................. 104

SECTION 11.3.   Statements Required in Certificate or
                Opinion ..................................................................... 105

SECTION 11.4.   When Notes Disregarded ................................................ 105

SECTION 11.5.   Rules by Trustee, Paying Agent and
                Registrar .................................................................. 105

SECTION 11.6.   Legal Holidays ........................................................... 105

SECTION 11.7.   Governing Law ........................................................... 106

SECTION 11.8.   Consent to Jurisdiction and Service .................................. 108

SECTION 11.9.   No Recourse Against Others ........................................... 106

SECTION 11.10.  Successors ............................................................... 106

SECTION 11.11.  Multiple Originals ...................................................... 106

SECTION 11.12.  Variable Provisions ..................................................... 107

SECTION 11.13.  Table of Contents; Headings .......................................... 107

EXHIBITS

| EXHIBIT A | Form of the Note |
|---|---|
| EXHIBIT B | Form of Notation of Guarantee |
| EXHIBIT C | Form of Indenture Supplement to Add Subsidiary Guarantors |
| EXHIBIT D | Form of Power of Attorney |

confidential
Annie Li
Aug 25, 2015 21:20

confidential
Annie Li
Aug 25, 2015 21:20

INDENTURE dated as of December 10, 2010 among Boardriders S.A., a public limited liability company (*société anonyme*) incorporated under the laws of the Grand Duchy of Luxembourg and registered with the Luxembourg Trade and Companies Register under number B 156999 (the "Issuer"), Quiksilver, Inc., a Delaware corporation (the "Company"), the Subsidiary Guarantors (as defined herein), Deutsche Trustee Company Limited, as trustee (the "Trustee"), Deutsche Bank Luxembourg S.A., as Registrar and Transfer Agent (as defined herein), and Deutsche Bank AG, London Branch, as Principal Paying Agent and Common Depositary (as defined herein).

Recitals Of The Issuer

The Issuer has duly authorized the execution and delivery of this Indenture to provide for the issuance of (i) the Issuer's 8.875% Senior Notes due 2017, issued on the Issue Date (the "Initial Notes") and the guarantee thereof by the Company and the Subsidiary Guarantors and (ii) if and when issued, an unlimited principal amount of additional 8.875% Senior Notes due 2017 that may be offered from time to time subsequent to the Issue Date in a non-registered offering (the "Additional Notes" and, together with the Initial Notes, the "Notes") and the guarantee thereof by the Company and certain of the Company's Subsidiaries. €200,000,000 in aggregate principal amount of Initial Notes shall be initially issued on the date hereof.

Each party agrees as follows for the benefit of the other parties and for the equal and ratable benefit of the Holders:

## ARTICLE I

### Definitions and Incorporation by Reference

SECTION 1.1.    Definitions.

"Acquired Indebtedness" means Indebtedness (i) of a Person or any of its Subsidiaries existing at the time such Person becomes a Restricted Subsidiary or (ii) assumed in connection with the acquisition of assets from such Person, in each case whether or not Incurred by such Person in connection with, or in anticipation or contemplation of, such Person becoming a Restricted Subsidiary or such acquisition. Acquired Indebtedness shall be deemed to have been Incurred, with respect to clause (i) of the preceding sentence, on the date such Person becomes a Restricted Subsidiary and, with respect to clause (ii) of the preceding sentence, on the date of consummation of such acquisition of assets.

"Additional Assets" means (i) any property, long-term assets (other than Indebtedness and Capital Stock) or all or substantially all of a company, division, operating unit, segment, business or line of business to be used by the Issuer, the Company or a Restricted Subsidiary in a Related Business; (ii) the Capital Stock of a Person that becomes a Restricted Subsidiary as a result of the acquisition of such Capital Stock by the Issuer, the Company or a Restricted Subsidiary; or (iii) Capital Stock constituting a minority interest in any Person that at such time is a Restricted Subsidiary; provided, however, that, in the case of clauses (ii) and (iii), such Restricted Subsidiary is primarily engaged in a Related Business.

- 1 -

confidential
Annie Li
Aug 25, 2015 21:20

confidential
Annie Li
Aug 25, 2015 21:20

"Affiliate" of any specified Person means any other Person, directly or indirectly, controlling or controlled by or under direct or indirect common control with such specified Person.  For the purposes of this definition, "control" when used with respect to any Person means the power to direct the management and policies of such Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

"Agents" means the Registrar or Transfer Agent and the Paying Agent.

"Applicable Premium" means, with respect to a Note on any Redemption Date, the excess of (i) the present value on such Redemption Date of (A) the redemption price of such Note on December 15, 2014 (such redemption price being that specified in paragraph 5 of the form of Notes set forth in Exhibit A hereto), plus (B) all required remaining scheduled interest payments due on such Note through December 15, 2014, computed using a discount rate equal to the Bund Rate plus 50 basis points, over (ii) the then outstanding principal amount of such Note.  Calculation of the Applicable Premium will not be a duty or obligation of the Trustee or Paying Agent.

"Asset Disposition" means any direct or indirect sale, lease (other than an operating lease entered into in the ordinary course of business), transfer, issuance or other disposition, or a series of related sales, leases, transfers, issuances or dispositions that are part of a common plan, of shares of Capital Stock of a Subsidiary (other than directors' qualifying shares), property or other assets (each referred to for the purposes of this definition as a "disposition") by the Issuer, the Company or any of its Restricted Subsidiaries, including any disposition by means of a merger, consolidation or similar transaction.

Notwithstanding the preceding, the following items shall not be deemed to be Asset Dispositions: (i) a disposition by a Restricted Subsidiary to the Issuer or the Company, by the Issuer to the Company, by the Company to the Issuer or by the Issuer, the Company or a Restricted Subsidiary to a Restricted Subsidiary (other than a Receivables Entity); provided that in the case of a sale by a Restricted Subsidiary to another Restricted Subsidiary, the Company directly or indirectly owns an equal or greater percentage of the Common Stock of the transferee than of the transferor; (ii) the sale of cash or Cash Equivalents in the ordinary course of business; (iii) a disposition of inventory in the ordinary course of business; (iv) a disposition of obsolete or worn out equipment or equipment that is no longer useful in the conduct of the Issuer's, the Company's and/or its Restricted Subsidiaries' business and that is disposed of in each case in the ordinary course of business; (v) transactions permitted under Article IV; (vi) an issuance of Capital Stock by a Restricted Subsidiary of the Company to the Issuer, to the Company or to a Wholly Owned Subsidiary (other than a Receivables Entity); (vii) for purposes of Section 3.7 only, the making of a Permitted Investment or a disposition permitted under Section 3.4; (viii) sales or transfers of accounts receivable and related assets or an interest therein of the type specified in the definition of "Qualified Receivables Transaction" to a Receivables Entity, or in connection with other types of receivables financing (including the sale or transfer to a financial institution of accounts receivable and related assets); (ix) dispositions of assets in a single transaction or series of related transactions with an aggregate fair market value (as determined in good faith by the Company) of less than $5,000,000; (x) dispositions in connection with Permitted Liens; (xi) dispositions of receivables in connection with the compromise, settlement

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

or collection thereof in the ordinary course of business or in bankruptcy or similar proceedings and exclusive of factoring or similar arrangements; (xii) the licensing or sublicensing of intellectual property or other general intangibles and licenses, leases or subleases of other property in the ordinary course of business, which do not materially interfere with the business of the Issuer, the Company and its Restricted Subsidiaries; (xiii) foreclosure on assets; and (xiv) any release of claims or rights in the ordinary course of business in connection with the loss or settlement of a bona fide lawsuit, dispute or controversy.

"Attributable Indebtedness" in respect of a Sale/Leaseback Transaction means, as at the time of determination, the present value (discounted at the interest rate borne by the Notes, compounded semi-annually) of the total obligations of the lessee for rental payments during the remaining term of the lease included in such Sale/Leaseback Transaction (including any period for which such lease has been extended).

"Average Life" means, as of the date of determination, with respect to any Indebtedness or Preferred Stock, the quotient obtained by dividing (i) the sum of the products of the numbers of years from the date of determination to the dates of each successive scheduled principal payment of such Indebtedness or redemption or similar payment with respect to such Preferred Stock multiplied by the amount of such payment by (ii) the sum of all such payments.

"Banking Services Obligations" means any and all obligations of the Issuer, the Company and the Subsidiary Guarantors, whether absolute or contingent and howsoever and whensoever created, arising, evidenced or acquired (including all renewals, extensions and modifications thereof and substitutions therefor) in connection with any of the following bank services provided to the Issuer, the Company or any Subsidiary Guarantor pursuant to a Credit Facility: (a) commercial credit cards, (b) stored value cards and (c) treasury management services (including, without limitation, controlled disbursement, automated clearinghouse transactions, return items, overdrafts and interstate depository network services).

"Bankruptcy Law" means Title 11 of the United States Code, Book VI of the French Commercial Code, Book III of the Luxembourg Commercial Code or any similar federal, state or national law for the relief of debtors.

"Board of Directors" means, as to any Person, the board of directors, managers or trustees thereof (or persons performing similar functions) of such Person or any duly authorized committee thereof.

"Board Resolution" means a copy of a resolution certified by the Secretary or an Assistant Secretary of a company to have been duly adopted by the Board of Directors of such company and to be in full force and effect on the date of such certification, and delivered to the Trustee.

"Borrowing Base" means, as of the date of determination, an amount equal to the sum, without duplication of (i) 85% of the net book value of the Issuer's, the Company's and its Restricted Subsidiaries' accounts receivable at such date and (ii) 75% of the net book value of the Issuer's, the Company's and its Restricted Subsidiaries' inventories at such date. Net book value shall be determined in accordance with GAAP and shall be that reflected on the most

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

recent available balance sheet (it being understood that the accounts receivable and inventories of an acquired business or Person may be included if such acquisition has been completed on or prior to the date of determination).

"Bund Rate" means with respect to the Notes, as of the applicable Redemption Date, the yield to maturity as of such Redemption Date of direct obligations of the Federal Republic of Germany (Bund or Bundesanleihen) with a constant maturity (as officially compiled and published in the most recent financial statistics that have become publicly available at least two Business Days (but not more than five Business Days) prior to the Redemption Date (or, if such financial statistics are not so published or available, any publicly available source of similar market data selected by the Issuer in good faith)) most nearly equal to the period from the Redemption Date to December 15, 2014; provided, however that if the period from the redemption date to December 15, 2014 is not equal to the constant maturity of the direct obligations of the Federal Republic of Germany for which a weekly average yield is given, the Bund Rate shall be obtained by linear interpolation (calculated to the nearest one-twelfth of a year) from the weekly average yields of direct obligations of the Federal Republic of Germany for which such yields are given, except that if the period from such Redemption Date to December 15, 2014 is less than one year, the weekly average yield on actually traded direct obligations of the Federal Republic of Germany adjusted to a constant maturity of one year shall be used.

"Business Day" means each day that is not a Saturday, Sunday or other day on which commercial banking institutions in New York City, London or a place in which the Paying Agent has its specified office or in which Notes may be presented for payment are closed for business.

"Capital Stock" of any Person means any and all shares, interests, rights to purchase, warrants, options, participations or other equivalents of or interests in (however designated) equity of such Person, including any Preferred Stock, partnership interests and limited liability company membership interests, but excluding any debt securities convertible into such equity.

"Capitalized Lease Obligations" means an obligation that is required to be classified and accounted for as a capitalized lease for financial reporting purposes in accordance with GAAP, and the amount of Indebtedness represented by such obligation shall be the capitalized amount of such obligation at the time any determination thereof is to be made as determined in accordance with GAAP, and the Stated Maturity thereof shall be the date of the last payment of rent or any other amount due under such lease prior to the first date such lease may be terminated without penalty.

"Cash Equivalents" means: (i) U.S. dollars, pounds sterling, Euros, or, in the case of the Issuer, the Company or any Restricted Subsidiary, such local currencies held by it from time to time in the ordinary course of business; (ii) securities issued or directly and fully guaranteed or insured by any country that is a Member State or the U.S. government or any agency or instrumentality thereof (provided that the full faith and credit of such Member State or the United States is pledged in support thereof), having maturities of not more than one year from the date of acquisition; (iii) marketable general obligations issued by any state of the United States of America or any political subdivision of any such state or any public instrumentality thereof maturing within one year from the date of acquisition (provided that the full faith and

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

credit of the United States is pledged in support thereof) and, at the time of acquisition, having a credit rating of "A" or better from either S&P or Moody's; (iv) certificates of deposit, time deposits, Eurodollar time deposits, overnight bank deposits or bankers' acceptances having maturities of not more than one year from the date of acquisition thereof issued by any commercial bank the long-term debt of which is rated at the time of acquisition thereof at least "A" or the equivalent thereof by S&P, or "A" or the equivalent thereof by Moody's, and having combined capital and surplus in excess of $250,000,000 (or the foreign currency equivalent thereof); (v) repurchase obligations for underlying securities of the types described in clauses (ii), (iii) and (iv) entered into with any bank meeting the qualifications specified in clause (iv) above; (vi) commercial paper rated at the time of acquisition thereof at least "A-2" or the equivalent thereof by S&P or "P-2" or the equivalent thereof by Moody's, or carrying an equivalent rating by a Nationally Recognized Statistical Rating Organization, if both of the two named rating agencies cease publishing ratings of investments, and in any case maturing within one year after the date of acquisition thereof; (vii) interests in any investment company or money market fund which invests substantially all of its assets in instruments of the type specified in clauses (i) through (vi) above; (viii) credit card receivables and debit card receivables so long as such are considered cash equivalents under GAAP and are so reflected on the Company's balance sheet; (ix) Indebtedness or Preferred Stock issued by Persons with a rating, at the time of acquisition thereof, of "A" or higher from S&P or "A-2" or higher from Moody's with maturities of 24 months or less from the date of acquisition; (x) Investments with average maturities of 12 months or less from the date of acquisition in money market funds rated, at the time of acquisition thereof, "AAA-" (or the equivalent thereof) or better by S&P or "Aaa3" (or the equivalent thereof) or better by Moody's; and (xi) non-U.S. equivalents of the items described in clauses (ii) through (x) above.

"Change of Control" means:

(a)     any "person" or "group" of related persons (as such terms are used in Sections 13(d) and 14(d) of the Exchange Act) is or becomes the beneficial owner (as defined in Rules 13d-3 and 13d-5 under the Exchange Act), directly or indirectly, of more than 50% of the total voting power of the Voting Stock of the Company (or its successor by merger, consolidation or purchase of all or substantially all of its assets) (for the purposes of this clause, such person or group shall be deemed to beneficially own any Voting Stock of the Company held by a parent entity, if such person or group "beneficially owns" (as defined above), directly or indirectly, more than 50% of the voting power of the Voting Stock of such parent entity); or

(b)     the first day on which a majority of the members of the Board of Directors of the Company (excluding any committee thereof) are not Continuing Directors; or

(c)     the sale, lease, transfer, conveyance or other disposition (other than by way of merger or consolidation), in one or a series of related transactions, of all or substantially all of the assets of the Company

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

and its Restricted Subsidiaries taken as a whole to any "person" (as such term is used in Sections 13(d) and 14(d) of the Exchange Act); or

(d)    the adoption by the stockholders of the Company of a plan or proposal for the liquidation or dissolution of the Company.

"Clearstream" means Clearstream Banking, *société anonyme*, or any successor securities clearing agency.

"Code" means the Internal Revenue Code of 1986, as amended.

"Commodity Agreement" means in respect of a Person any forward contract, commodity swap agreement, commodity option agreement or other similar agreement relating to, or the value of which is dependent upon, fluctuations in commodity prices as to which such Person is a party or a beneficiary.

"Common Depositary" means Deutsche Bank AG, London Branch, its nominees and their respective successors and assigns, or such other depository institution hereinafter appointed by the Issuer.

"Common Stock" means with respect to any Person, any and all shares, interests or other participations in, and other equivalents (however designated and whether voting or nonvoting) of such Person's common stock whether or not outstanding on the Issue Date, and includes, without limitation, all series and classes of such common stock.

"Consolidated Coverage Ratio" means as of any date of determination, with respect to any Person, the ratio of (x) the Consolidated EBITDA for the period of the most recent four consecutive fiscal quarters ending prior to the date of such determination for which financial statements are in existence to (y) Consolidated Interest Expense for such four fiscal quarters, provided, however, that:

(1)    if the Issuer, the Company or any Restricted Subsidiary:

(a)    has Incurred any Indebtedness since the beginning of such period that remains outstanding on such date of determination or if the transaction giving rise to the need to calculate the Consolidated Coverage Ratio is an Incurrence of Indebtedness, or both, Consolidated EBITDA and Consolidated Interest Expense for such period shall be calculated after giving effect on a pro forma basis to such Indebtedness as if such Indebtedness had been Incurred on the first day of such period (except that in making such computation, the amount of Indebtedness under any revolving credit facility outstanding on the date of such calculation shall be computed based on (i) the average daily balance of such Indebtedness during such four fiscal quarters or such shorter period for which such facility was outstanding or (ii) if such facility was created after the end of such four fiscal quarters, the average daily balance of such Indebtedness during the period from the date of creation of such facility to the date of such calculation) and the discharge of any other Indebtedness repaid,

- 6 -

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

repurchased, defeased or otherwise discharged with the proceeds of such new Indebtedness as if such discharge had occurred on the first day of such period; or

(b)    has repaid, repurchased, defeased or otherwise discharged any Indebtedness since the beginning of the period that is no longer outstanding on such date of determination or if the transaction giving rise to the need to calculate the Consolidated Coverage Ratio involves a discharge of Indebtedness (in each case other than Indebtedness Incurred under any revolving credit facility unless such Indebtedness has been permanently repaid and the related commitment terminated), Consolidated EBITDA and Consolidated Interest Expense for such period shall be calculated after giving effect on a pro forma basis to such discharge of such Indebtedness, including with the proceeds of such new Indebtedness, as if such discharge had occurred on the first day of such period;

(2)    if since the beginning of such period the Issuer, the Company or any Restricted Subsidiary shall have made any Asset Disposition or disposed of any company, division, operating unit, segment, business, group of related assets or line of business or if the transaction giving rise to the need to calculate the Consolidated Coverage Ratio is an Asset Disposition:

(a)    the Consolidated EBITDA for such period shall be reduced by an amount equal to the Consolidated EBITDA (if positive) directly attributable to the assets which are the subject of such Asset Disposition for such period or increased by an amount equal to the Consolidated EBITDA (if negative) directly attributable thereto for such period; and

(b)    Consolidated Interest Expense for such period shall be reduced by an amount equal to the Consolidated Interest Expense directly attributable to any Indebtedness of the Issuer, the Company or any Restricted Subsidiary repaid, repurchased, defeased or otherwise discharged with respect to the Issuer, the Company and its continuing Restricted Subsidiaries in connection with such Asset Disposition for such period (or, if the Capital Stock of any Restricted Subsidiary is sold, the Consolidated Interest Expense for such period directly attributable to the Indebtedness of such Restricted Subsidiary to the extent the Issuer, the Company and its continuing Restricted Subsidiaries are no longer liable for such Indebtedness after such sale);

(3)    if since the beginning of such period the Issuer, the Company or any Restricted Subsidiary (by merger or otherwise) shall have made an Investment in any Restricted Subsidiary (or any Person which becomes a Restricted Subsidiary or is merged with or into the Company) or an acquisition of assets, including any acquisition of assets occurring in connection with a transaction causing a calculation to be made hereunder, which constitutes all or substantially all of a company, division, operating unit, segment, business, group

- 7 -

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

of related assets or line of business, Consolidated EBITDA and Consolidated Interest Expense for such period shall be calculated after giving pro forma effect thereto (including the Incurrence of any Indebtedness) as if such Investment or acquisition occurred on the first day of such period; and

(4)    if since the beginning of such period any Person (that subsequently became a Restricted Subsidiary or was merged with or into the Issuer, the Company or any Restricted Subsidiary since the beginning of such period) shall have Incurred any Indebtedness or discharged any Indebtedness, made any disposition or Asset Disposition or any Investment or acquisition of assets that would have required an adjustment pursuant to clause (2) or (3) above if made by the Issuer, the Company or a Restricted Subsidiary during such period, Consolidated EBITDA and Consolidated Interest Expense for such period shall be calculated after giving pro forma effect thereto as if such Incurrence, discharge, disposition, Asset Disposition, Investment or acquisition of assets occurred on the first day of such period.

For purposes of this definition, whenever pro forma effect is to be given to any calculation under this definition, the pro forma calculations shall be determined in good faith by a responsible financial or accounting officer of the Company (including any pro forma expense and cost reductions and related adjustments calculated on a basis consistent with Regulation S-X under the Securities Act). If any Indebtedness bears a floating rate of interest and is being given pro forma effect, the interest expense on such Indebtedness shall be calculated as if the rate in effect on the date of determination had been the applicable rate for the entire period (taking into account any Interest Rate Agreement applicable to such Indebtedness if such Interest Rate Agreement has a remaining term in excess of 12 months). If any Indebtedness that is being given pro forma effect bears an interest rate at the option of the Company, the interest rate shall be calculated by applying such optional rate chosen by the Company.

"Consolidated EBITDA" for any period means, without duplication, the Consolidated Net Income for such period, plus the following to the extent deducted in calculating such Consolidated Net Income:

(1)    Consolidated Interest Expense;

(2)    Consolidated Income Taxes;

(3)    consolidated depreciation expense;

(4)    consolidated amortization expense or impairment charges recorded in connection with the application of Financial Accounting Standard No. 142 "Goodwill and Other Intangibles" or Financial Accounting Standard No. 144 "Accounting for the Impairment or Disposal of Long-Lived Assets;"

(5)    other non-cash items reducing Consolidated Net Income (excluding any such non-cash charge to the extent it represents an accrual of or reserve for cash charges in any future period or amortization of a prepaid cash expense that was paid in a prior period not included in the calculation); and

confidential
Annie Li
Aug 25, 2015 21:20

us\WONGJA\7929518.7

confidential
Annie Li
Aug 25, 2015 21:20

(6)     severance costs, restructuring charges or relocations costs, not to exceed $10,000,000 in any one period.

Notwithstanding the preceding sentence, clauses (2) through (5) relating to amounts of a Restricted Subsidiary of a Person shall be added to Consolidated Net Income to compute Consolidated EBITDA of such Person only to the extent (and in the same proportion) that the net income (loss) of such Restricted Subsidiary was included in calculating the Consolidated Net Income of such Person and, to the extent the amounts set forth in clauses (2) through (5) are in excess of those necessary to offset a net loss of such Restricted Subsidiary or if such Restricted Subsidiary has net income for such period included in Consolidated Net Income, only if a corresponding amount would be permitted at the date of determination to be dividended to the Company by such Restricted Subsidiary without prior approval (that has not been obtained), pursuant to the terms of its charter and all agreements, instruments, judgments, decrees, orders, statutes, rules and governmental regulations applicable to that Restricted Subsidiary or its stockholders.

"Consolidated Income Taxes" means, with respect to any Person for any period, taxes imposed upon such Person or other payments required to be made by such Person by any governmental authority which taxes or other payments are calculated by reference to the income or profits of such Person or such Person and its Restricted Subsidiaries (to the extent such income or profits were included in computing Consolidated Net Income for such period), regardless of whether such taxes or payments are required to be remitted to any governmental authority.

"Consolidated Interest Expense" means, for any period, the total interest expense of the Issuer, the Company and its consolidated Restricted Subsidiaries, whether paid or accrued, plus, to the extent not included in such interest expense:

(1)     interest expense attributable to Capitalized Lease Obligations and the interest portion of rent expense associated with Attributable Indebtedness in respect of the relevant lease giving rise thereto, determined as if such lease were a capitalized lease in accordance with GAAP and the interest component of any deferred payment obligations;

(2)     amortization of debt discount (provided that any amortization of bond premium shall be credited to reduce Consolidated Interest Expense unless, pursuant to GAAP, such amortization of bond premium has otherwise reduced Consolidated Interest Expense);

(3)     non-cash interest expense;

(4)     commissions, discounts and other fees and charges owed with respect to letters of credit (to the extent not included in the cost of goods sold in the Company's consolidated financial statements in accordance with GAAP) and bankers' acceptance financing;

(5)     the interest expense on Indebtedness of another Person that is Guaranteed by the Issuer, the Company or a Restricted Subsidiary of the

confidential
Annie Li
Aug 25, 2015 21:20

confidential
Annie Li
Aug 25, 2015 21:20

Company or secured by a Lien on assets of the Issuer, the Company or one of its Restricted Subsidiaries if such Person is not current in the payment of principal, interest or premium on such Indebtedness;

(6)      net cash costs associated with Hedging Obligations (including amortization of fees) provided, however, that if Hedging Obligations result in net cash benefits rather than costs, such net cash benefits shall be credited to reduce Consolidated Interest Expense unless, pursuant to GAAP, such net cash benefits are otherwise reflected in Consolidated Net Income;

(7)      the consolidated interest expense of such Person and its Restricted Subsidiaries that was capitalized during such period;

(8)      the product of (a) all dividends paid or payable, in cash, Cash Equivalents or Indebtedness or accrued during such period on any series of Disqualified Stock of such Person or on Preferred Stock of its Restricted Subsidiaries payable to a party other than the Issuer, the Company or a Wholly Owned Subsidiary, times (b) a fraction, the numerator of which is one and the denominator of which is one minus the then current combined U.S. federal, state, provincial and local statutory tax rate of such Person, expressed as a decimal, in each case, on a consolidated basis and in accordance with GAAP;

(9)      Receivable Fees; and

(10)      the cash contributions to any employee stock ownership plan or similar trust to the extent such contributions are used by such plan or trust to pay interest or fees to any Person (other than the Issuer, the Company or any Restricted Subsidiary of the Company) in connection with Indebtedness Incurred by such plan or trust; less

(11)      interest income for such period.

Any such interest expense of any Unrestricted Subsidiary of the Company to the extent the related Indebtedness that is Guaranteed by or paid by the Issuer, the Company or any Restricted Subsidiary of the Company shall be included in the definition of "Consolidated Interest Expense."

For the purpose of calculating the Consolidated Coverage Ratio in connection with the Incurrence of any Indebtedness described in the final paragraph of the definition of "Indebtedness", the calculation of Consolidated Interest Expense shall include all interest expense (including any amounts described in clauses (1) through (10) above) relating to any Indebtedness of the Issuer, the Company or any Restricted Subsidiary described in the final paragraph of the definition of "Indebtedness."

For purposes of the foregoing, total interest expense shall be determined (i) after giving effect to any net payments made or received by the Issuer, the Company and its Subsidiaries with respect to Interest Rate Agreements and (ii) exclusive of amounts classified as other comprehensive income in the balance sheet of the Company. Notwithstanding anything to the

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

contrary contained herein, commissions, discounts, yield and other fees and charges Incurred in connection with any transaction pursuant to which the Issuer, the Company or any of its Restricted Subsidiaries may sell, convey or otherwise transfer or grant a security interest in any accounts receivable or related assets shall be included in Consolidated Interest Expense.

"Consolidated Net Income" means, for any period, the net income (loss) of the Issuer, the Company and its consolidated Restricted Subsidiaries determined in accordance with GAAP; provided, however, that there shall not be included in such Consolidated Net Income:

(1)     any net income (loss) of any Person if such Person is not a Restricted Subsidiary, except that:

(a)     subject to the limitations contained in clauses (3), (4) and (5) below, the Company's equity in the net income of any such Person for such period shall be included in such Consolidated Net Income up to the aggregate amount of cash actually distributed by such Person during such period to the Issuer, the Company or a Restricted Subsidiary as a dividend or other distribution (subject, in the case of a dividend or other distribution to a Restricted Subsidiary, to the limitations contained in clause (2) below); and

(b)     the Company's equity in a net loss of any such Person (other than an Unrestricted Subsidiary) for such period shall be included in determining such Consolidated Net Income to the extent such loss has been funded with cash from the Issuer, the Company or a Restricted Subsidiary;

(2)     any net income (but not loss) of any Restricted Subsidiary if such Subsidiary is subject to restrictions, directly or indirectly, on the payment of dividends or the making of distributions by such Restricted Subsidiary, directly or indirectly, to the Company, except that:

(a)     subject to the limitations contained in clauses (3), (4) and (5) below, the Company's equity in the net income of any such Restricted Subsidiary for such period shall be included in such Consolidated Net Income up to the aggregate amount of cash that could have been distributed by such Restricted Subsidiary during such period to the Issuer, the Company or another Restricted Subsidiary as a dividend (subject, in the case of a dividend to another Restricted Subsidiary, to the limitation contained in this clause); and

(b)     the Company's equity in a net loss of any such Restricted Subsidiary for such period shall be included in determining such Consolidated Net Income;

(3)     any gain (loss) realized upon the sale or other disposition of any property, plant or equipment of the Issuer, the Company or its consolidated Restricted Subsidiaries (including pursuant to any Sale/Leaseback Transaction)

- 11 -

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

which is not sold or otherwise disposed of in the ordinary course of business and any gain (loss) realized upon the sale or other disposition of any Capital Stock of any Person;

(4)     any extraordinary, non-recurring or unusual gain or loss or expense, together with any related provision for taxes;

(5)     the cumulative effect of a change in accounting principles;

(6)     any non-cash asset impairment charge or goodwill impairment charge;

(7)     any non-cash charge related to employee benefit or management compensation plans of the Company, the Issuer or any Restricted Subsidiary or any non-cash compensation charge arising from any grant of stock, stock options or other equity-based awards for the benefit of the members of the Board of Directors of the Company or employees of the Company, the Issuer and its Restricted Subsidiaries (other than in each case any non-cash charge to the extent that it represents an accrual of or reserve for cash expenses in any future period or amortization of a prepaid cash expense incurred in a prior period);

(8)     any gain or loss, together with any related provision for taxes on such gain or loss, realized in connection with the extinguishment of any Indebtedness or Hedging Obligations or other derivative instruments of the Company, the Issuer or any of its Restricted Subsidiaries; and

(9)     any non-cash impact attributable to the application of the purchase method of accounting in accordance with GAAP.

"Consolidated Tangible Assets" of any Person as of any date means the total amount of assets of such Person and its Restricted Subsidiaries (less applicable reserves) on a consolidated basis at the end of the fiscal quarter immediately preceding such date, as determined in accordance with GAAP, less (1) Intangible Assets and (2) appropriate adjustments on account of minority interests of other Persons holding equity investments in Restricted Subsidiaries.

"Continuing Directors" means, as of any date of determination, any member of the Board of Directors of the Company who: (1) was a member of such Board of Directors on the date of this Indenture; or (2) was nominated for election or elected to such Board of Directors with the approval of a majority of the Continuing Directors who were members of such Board of Directors at the time of such nomination or election.

"Corporate Trust Office" means the principal office of the Trustee at which at any time its corporate trust business shall be administered, which office at the date hereof is located at Winchester House, 1 Great Winchester Street, London EC2N 2DB, United Kingdom, or such other address as the Trustee may designate from time to time by notice to the Holders and the Company, or the principal corporate trust office of any successor Trustee (or such other address as such successor Trustee may designate from time to time by notice to the Holders and the Company).

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

"Credit Facility" means one or more debt facilities (including, without limitation, the Revolving Credit Facility), commercial paper facilities or indentures with banks or other institutional lenders or investors providing for revolving credit loans, term loans, receivables financing (including through the sale of receivables to such lenders or to special purpose entities formed to borrow from such lenders against such receivables), letters of credit, debt securities or other forms of debt financing (including convertible or exchangeable debt instruments or bank guarantees or bankers' acceptances), or instruments or agreements evidencing any other Indebtedness, in each case, as amended, supplemented, restated, modified, renewed, restructured, refunded, replaced, refinanced or otherwise modified in whole or in part from time to time (and whether or not with the original administrative agent and lenders or another administrative agent or agents or other lenders and whether provided under the original Revolving Credit Facility or any other credit or other agreement or indenture).

"Currency Agreement" means in respect of a Person any foreign exchange contract, currency swap agreement, futures contract, option contract or other similar agreement as to which such Person is a party or a beneficiary.

"Custodian" means any receiver, trustee, assignee, liquidator, custodian or similar official under any Bankruptcy Law.

"Default" means any event which is, or after notice or passage of time or both would be, an Event of Default.

"Defaulted Interest" shall have the meaning set forth in Section 2.11.

"Definitive Notes" means certificated securities.

"Depositary" means any of Euroclear or Clearstream and their respective nominees and successors, acting through itself or the Common Depositary.

"Designated Non-cash Consideration" means the fair market value (as determined in good faith by the Company) of non-cash consideration received by the Issuer, the Company or any Restricted Subsidiary in connection with an Asset Disposition that is so designated as Designated Non-cash Consideration pursuant to an Officer's Certificate, setting forth the basis for such valuation, less the amount of cash or Cash Equivalents received in connection with a subsequent sale of or collection on such Designated Non-cash Consideration.

"Disqualified Stock" means, with respect to any Person, any Capital Stock of such Person which by its terms (or by the terms of any security into which it is convertible or for which it is exchangeable) or upon the happening of any event: (1) matures or is mandatorily redeemable pursuant to a sinking fund obligation or otherwise, (2) is convertible or exchangeable for Indebtedness or Disqualified Stock (excluding Capital Stock which is convertible or exchangeable solely at the option of the Company or a Restricted Subsidiary), or (3) is redeemable at the option of the holder of the Capital Stock in whole or in part; in each case on or prior to the date that is 91 days after the earlier of the date (a) of the Stated Maturity of the Notes or (b) on which there are no Notes outstanding, provided that only the portion of Capital Stock which so matures or is mandatorily redeemable, is so convertible or exchangeable or is so redeemable at the option of the holder thereof prior to such date shall be deemed to be

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

Disqualified Stock; provided, further that any Capital Stock that would constitute Disqualified Stock solely because the holders thereof have the right to require the Issuer or the Company to repurchase such Capital Stock upon the occurrence of a change of control or asset disposition (each defined in a substantially consistent manner to the corresponding definitions in this Indenture) shall not constitute Disqualified Stock if the terms of such Capital Stock (and all such securities into which it is convertible or for which it is ratable or exchangeable) provide that the Company may not repurchase or redeem any such Capital Stock (and all such securities into which it is convertible or for which it is ratable or exchangeable) pursuant to such provision prior to compliance by the Issuer and the Company with the provisions contained in Sections 3.7 and 3.9 of this Indenture and such repurchase or redemption complies with Section 3.4 of this Indenture.

"Equity Offering" means (i) a public offering for cash by the Company of its Capital Stock (other than Disqualified Stock), or options, warrants or rights with respect to its Capital Stock (other than Disqualified Stock), made pursuant to a registration statement that has been declared effective by the SEC, other than public offerings with respect to the Company's Capital Stock (other than Disqualified Stock), or options, warrants or rights, registered on Form S-4 or S-8 or (ii) a private offering for cash by the Company of its Capital Stock (other than Disqualified Stock), or options, warrants or rights with respect to its Capital Stock (other than Disqualified Stock).

"Euroclear" means Euroclear Bank S.A./N.V. or any successor securities clearing agency.

"Exchange Act" means the Securities Exchange Act of 1934, as amended.

"Existing Notes" means the Company's 6 7/8% Senior Notes due 2015.

"Fiscal Year" means the fiscal year of the Company ending October 31 of each year or such other fiscal year as may be determined by the Company and the Board of Directors and of which the Trustee shall receive written notice pursuant to Section 3.19 hereof.

"GAAP" means generally accepted accounting principles in the United States of America as in effect as of the date of this Indenture, including those set forth in the opinions and pronouncements of the Accounting Principles Board of the American Institute of Certified Public Accountants and statements and pronouncements of the Financial Accounting Standards Board or in such other statements by such other entity as approved by a significant segment of the accounting profession. All ratios and computations based on GAAP contained in this Indenture shall be computed in conformity with GAAP.

"Government Obligations" means securities that are (a) direct obligations of the United States of America or any country that is a Member State for the timely payment of which its full faith and credit is pledged or (b) obligations of a Person controlled or supervised by and acting as an agency or instrumentality of the United States of America or any country that is a Member State the timely payment of which is unconditionally guaranteed as a full faith and credit obligation of the United States of America or any country that is a Member State, as the case may be, which, in the case of (a) or (b), are not callable or redeemable at the option of the issuer

confidential
Annie Li
Aug 25, 2015 21:20

confidential
Annie Li
Aug 25, 2015 21:20

thereof, and shall also include a depositary receipt issued by a bank (as defined in Section 3(a)(2) of the Securities Act), or an equivalent financial institution in a Member State as custodian with respect to any such Government Obligations or a specific payment of principal of or interest on any such Government Obligations held by such custodian for the account of the holder of such depositary receipt; provided that (except as required by law) such custodian is not authorized to make any deduction from the amount payable to the holder of such depositary receipt from any amount received by the custodian in respect of the Government Obligations or the specific payment of principal of or interest on the Government Obligations evidenced by such depositary receipt.

"Guarantee" means any obligation, contingent or otherwise, of any Person directly or indirectly guaranteeing any Indebtedness of any other Person and any obligation, direct or indirect, contingent or otherwise, of such Person:

      (1)    to purchase or pay (or advance or supply funds for the purchase or payment of) such Indebtedness of such other Person (whether arising by virtue of partnership arrangements, or by agreement to keep-well, to purchase assets, goods, securities or services, to take-or-pay, or to maintain financial statement conditions or otherwise); or

      (2)    entered into for purposes of assuring in any other manner the obligee of such Indebtedness of the payment thereof or to protect such obligee against loss in respect thereof (in whole or in part);

provided, however, that the term "Guarantee" shall not include endorsements for collection or deposit in the ordinary course of business. The term "Guarantee" used as a verb has a corresponding meaning.

"Guarantor Subordinated Obligation" means, with respect to the Company or a Subsidiary Guarantor, any Indebtedness of the Company or such Subsidiary Guarantor, as the case may be (whether outstanding on the Issue Date or thereafter Incurred), that is expressly subordinate in right of payment to the obligations of the Company or such Subsidiary Guarantor under its Notes Guarantee pursuant to a written agreement.

"Guarantors" means the Company and the Subsidiary Guarantors.

"Hedging Obligations" of any Person means the obligations of such Person pursuant to any Interest Rate Agreement, Currency Agreement (to the extent such Currency Agreement relates to interest on Indebtedness for borrowed money) or Commodity Agreement.

"Holder" means a Person in whose name a Note is registered on the Registrar's books.

"Incur" means issue, create, assume, Guarantee, incur or otherwise become liable for; provided, however, that any Indebtedness or Capital Stock of a Person existing at the time such Person becomes a Restricted Subsidiary (whether by merger, consolidation, acquisition or otherwise) shall be deemed to be Incurred by such Restricted Subsidiary at the time it becomes a Restricted Subsidiary; and the terms "Incurred" and "Incurrence" have meanings correlative to the foregoing.

- 15 -

confidential
Annie Li
Aug 25, 2015 21:20

confidential
Annie Li
Aug 25, 2015 21:20

"Indebtedness" means, with respect to any Person on any date of determination (without duplication): (i) the principal of and premium (if any) in respect of indebtedness of such Person for borrowed money; (ii) the principal of and premium (if any) in respect of obligations of such Person evidenced by bonds, debentures, notes or other similar instruments; (iii) the principal component of all obligations of such Person in respect of letters of credit, bankers' acceptances or other similar instruments (including reimbursement obligations with respect thereto except to the extent such reimbursement obligation relates to a trade payable and such obligation is satisfied within 30 days of Incurrence); (iv) the principal component of all obligations of such Person to pay the deferred and unpaid purchase price of property (except trade payables), which purchase price is due more than six months after the date of placing such property in service or taking delivery and title thereto; (v) Capitalized Lease Obligations and all Attributable Indebtedness of such Person; (vi) the principal component or liquidation preference of all obligations of such Person with respect to the redemption, repayment or other repurchase of any Disqualified Stock or, with respect to any Subsidiary that is not a Subsidiary Guarantor, any Preferred Stock (but excluding, in each case, any accrued dividends; (vii) the principal component of all Indebtedness of other Persons secured by a Lien on any asset of such Person, whether or not such Indebtedness is assumed by such Person; provided, however, that the amount of such Indebtedness shall be the lesser of (A) the fair market value (as determined in good faith by the Company) of such asset at such date of determination and (B) the amount of such Indebtedness of such other Persons; (viii) the principal component of Indebtedness of other Persons to the extent Guaranteed by such Person; (ix) to the extent not otherwise included in this definition, net obligations of such Person under Currency Agreements, Interest Rate Agreements and Commodity Agreements (the amount of any such obligations to be equal at any time of determination to the termination value of such agreement or arrangement giving rise to such obligation that would be payable by such Person at such time) and (x) to the extent not otherwise included in this definition, the amount then outstanding (i.e., advanced, and received by, and available for use by such Person) under any receivables financing (as set forth in the books and records of such Person and confirmed by the agent, trustee or other representative of the institution or group providing such receivables financing).

The amount of Indebtedness of any Person at any date shall be the outstanding balance at such date of all unconditional obligations as described above and the maximum liability at such date, upon the occurrence of the contingency giving rise to the obligation, of any contingent obligations at such date.

In addition, "Indebtedness" of any Person shall include Indebtedness described in the preceding paragraph that would not appear as a liability on the balance sheet of such Person if:

> (1)   such Indebtedness is the obligation of a Joint Venture that is not a Restricted Subsidiary;

> (2)   such Person or a Restricted Subsidiary of such Person is a general partner of the Joint Venture (a "General Partner"); and

> (3)   there is recourse, by contract or operation of law, with respect to the payment of such Indebtedness to property or assets of such Person or a

- 16 -

confidential
Annie Li
Aug 25, 2015 21:20

confidential
Annie Li
Aug 25, 2015 21:20

Restricted Subsidiary of such Person; and then such Indebtedness shall be included in an amount not to exceed:

> (a)    the lesser of (i) the net assets of the General Partner and (ii) the amount of such obligations to the extent that there is recourse, by contract or operation of law, to the property or assets of such Person or a Restricted Subsidiary of such Person; or

> (b)    if less than the amount determined pursuant to clause (a) immediately above, the actual amount of such Indebtedness that is recourse to such Person or a Restricted Subsidiary of such Person, if the Indebtedness is evidenced by a writing and is for a determinable amount and the related interest expense shall be included in Consolidated Interest Expense to the extent actually paid by the Issuer, the Company or its Restricted Subsidiaries.

"Indenture" means this Indenture, as amended or supplemented from time to time.

"Intangible Assets" means, with respect to any Person, all unamortized debt discount and expense, unamortized deferred charges, goodwill, patents, trademarks, service marks, trade names, copyrights, write-ups of assets over their carrying value at the Issue Date or the date of acquisition, if acquired subsequent thereto, and all other items which would be treated as intangibles on the consolidated balance sheet of such Person and its Restricted Subsidiaries prepared in accordance with GAAP.

"Interest Rate Agreement" means, with respect to any Person, any interest rate protection agreement, interest rate future agreement, interest rate option agreement, interest rate swap agreement, interest rate cap agreement, interest rate collar agreement, interest rate hedge agreement or other similar agreement or arrangement as to which such Person is party or a beneficiary.

"Investment" means, with respect to any Person, all investments by such Person in other Persons (including Affiliates) in the form of any direct or indirect advance, loan (other than advances or extensions of credit to customers in the ordinary course of business) or other extensions of credit (including by way of Guarantee or similar arrangement, but excluding any debt or extension of credit represented by a bank deposit other than a time deposit) or capital contribution to (by means of any transfer of cash or other property to others or any payment for property or services for the account or use of others), or any purchase or acquisition of Capital Stock, Indebtedness or other similar instruments issued by, such Person and all other items that are or would be classified as investments on a balance sheet prepared in accordance with GAAP; provided that none of the following shall be deemed to be an Investment:

> (1)    Hedging Obligations, Currency Agreements and Commodity Agreements entered into in the ordinary course of business and in compliance with this Indenture;

> (2)    endorsements of negotiable instruments and documents in the ordinary course of business; and

- 17 -

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

(3)    an acquisition of assets, Capital Stock or other securities by the Company or a Subsidiary for consideration to the extent such consideration consists of Capital Stock (other than Disqualified Stock) of the Company.

For purposes of Section 3.4, (i) "Investment" shall include the portion (proportionate to the Company's equity interest in a Restricted Subsidiary to be designated as an Unrestricted Subsidiary) of the fair market value (as determined in good faith by the Company) of the net assets of such Restricted Subsidiary at the time that such Restricted Subsidiary is designated an Unrestricted Subsidiary; provided, however, that upon a redesignation of such Subsidiary as a Restricted Subsidiary, the Company shall be deemed to continue to have a permanent "Investment" in an Unrestricted Subsidiary in an amount (if positive) equal to (a) the Company's "Investment" in such Subsidiary at the time of such redesignation less (b) the portion (proportionate to the Company's equity interest in such Subsidiary) of the fair market value of the net assets (as determined by the Company in good faith) of such Subsidiary at the time that such Subsidiary is so redesignated a Restricted Subsidiary; and (ii) any property transferred to or from an Unrestricted Subsidiary shall be valued at its fair market value at the time of such transfer, in each case as determined in good faith by the Company.  If the Company or any Restricted Subsidiary of the Company sells or otherwise disposes of any Voting Stock of any Restricted Subsidiary of the Company such that, after giving effect to any such sale or disposition, such entity is no longer a Subsidiary of the Company, the Company shall be deemed to have made an Investment on the date of any such sale or disposition equal to the fair market value (as determined in good faith by the Company) of the Capital Stock of such Subsidiary not sold or disposed of.

"Investment Grade Rating" means a rating equal to or higher than "Baa3" by Moody's and "BBB-" by S&P and, in the case of a rating of "Baa3" by Moody's and "BBB-" by S&P, at least a stable outlook; provided, however, that if (a) either Moody's or S&P changes its rating system, such ratings shall be the equivalent ratings after such changes or (b) if S&P or Moody's or both shall not make a rating of the Notes publicly available, the references above to S&P or Moody's or both, as the case may be, shall be to one or more Nationally Recognized Statistical Rating Organizations, as the case may be, selected by the Company and the references to the ratings categories above shall be to the corresponding rating categories of such Nationally Recognized Statistical Rating Organization(s), as the case may be.

"Issue Date" means December 10, 2010.

"Joint Venture" means any joint venture entity, whether a company, unincorporated firm, association, partnership or any other entity which, in each case, is not a Subsidiary of the Issuer, the Company or any of its Restricted Subsidiaries but in which the Issuer, the Company or a Restricted Subsidiary has a direct or indirect equity or similar interest.

"Legal Holiday" has the meaning ascribed to it in Section 11.6.

"Lien" means any mortgage, pledge, security interest, encumbrance, lien or charge of any kind (including any conditional sale or other title retention agreement or lease in the nature thereof).

confidential
Annie Li
Aug 25, 2015 21:20

confidential
Annie Li
Aug 25, 2015 21:20

"Member State" means any country that was a member of the European Union as of December 10, 2010.

"Moody's" means Moody's Investors Service, Inc. and its successors.

"Nationally Recognized Statistical Rating Organization" means any "nationally recognized statistical rating organization" registered as such pursuant to Section 15E of the Exchange Act and Rule 17g thereunder.

"Net Available Cash" from an Asset Disposition means cash payments received by the Issuer, the Company or any Restricted Subsidiary of the Company (including any cash payments received by way of deferred payment of principal pursuant to a note or installment receivable or otherwise and any cash received upon the sale or other disposition of any Designated Non-cash Consideration received in such Asset Disposition, but only as and when received, but excluding any other consideration received in the form of assumption by the acquiring person of Indebtedness or other obligations relating to the properties or assets that are the subject of such Asset Disposition or received in any other non-cash form) therefrom, in each case net of:

> (1)    all legal, accounting, investment banking, title and recording tax expenses, commissions and other fees and expenses Incurred, and all U.S. federal, state, provincial, foreign and local taxes required to be paid or accrued as a liability under GAAP (after taking into account any available tax credits or deductions and any tax sharing agreements), as a consequence of such Asset Disposition;

> (2)    all payments made on any Indebtedness which is secured by any assets subject to such Asset Disposition, in accordance with the terms of any Lien upon such assets, or which must by its terms, or in order to obtain a necessary consent to such Asset Disposition, or by applicable law be repaid out of the proceeds from such Asset Disposition;

> (3)    all distributions and other payments required to be made to minority interest holders in Subsidiaries or Joint Ventures as a result of such Asset Disposition; and

> (4)    the deduction of appropriate amounts (as determined or reasonably estimated by the seller thereof) to be provided by the seller as a reserve, in accordance with GAAP, against any liabilities associated with the assets disposed of in such Asset Disposition and retained by the Company or any Restricted Subsidiary after such Asset Disposition.

"Net Cash Proceeds" with respect to any issuance or sale of Capital Stock or in respect of any capital contribution, means the cash proceeds of such issuance, sale or capital contribution net of attorneys' fees, accountants' fees, underwriters' or placement agents' fees, listing fees, discounts or commissions and brokerage, consultant and other fees and charges actually Incurred in connection with such issuance, sale or capital contribution and net of taxes paid or payable as a result of such issuance, sale or capital contribution (after taking into account any available tax credit or deductions and any tax sharing arrangements).

us\WONGJA\7929518.7

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

"Non-Guarantor Subsidiary" means any Restricted Subsidiary that is not a Subsidiary Guarantor.

"Non-Recourse Debt" means Indebtedness:

> (1)     as to which none of the Issuer, the Company or any of its Restricted Subsidiaries (a) provides any Guarantee or credit support of any kind (including any undertaking, guarantee, indemnity, agreement or instrument that would constitute Indebtedness) or (b) is directly or indirectly liable (as a guarantor or otherwise);

> (2)     no default with respect to which (including any rights that the holders thereof may have to take enforcement action against an Unrestricted Subsidiary) would permit (upon notice, lapse of time or both) any holder of any other Indebtedness of the Issuer, the Company or any of its Restricted Subsidiaries to declare a default on such other Indebtedness or cause the payment thereof to be accelerated or payable prior to its stated maturity; and

> (3)     the explicit terms of which provide that there is no recourse against any of the assets of the Company or any of its Restricted Subsidiaries, except that Standard Securitization Undertakings shall not be considered recourse.

"Non-U.S. Subsidiary" means any Restricted Subsidiary of the Company that is not a U.S. Subsidiary.

"Note Register" means the register of Notes, maintained by the Registrar, pursuant to Section 2.3.

"Notes" means the Notes issued under this Indenture.

"Notes Guarantee" means, with respect to the Company and any Subsidiary Guarantor, any Guarantee of payment of the Notes by the Company or such Subsidiary Guarantor, as the case may be, pursuant to the terms of this Indenture and any supplemental indenture thereto, and, collectively, all such Guarantees. Each such Notes Guarantee shall be executed and delivered pursuant to the terms of this Indenture and any supplemental indenture (including pursuant to Exhibit C).

"Offering Memorandum" means the Offering Memorandum for the Issuer's 8.875% Senior Notes due 2017 dated December 3, 2010.

"Officer" means any director of the Issuer, and "Officer", with respect to the Company or any Subsidiary Guarantor, means the Chairman of the Board, the Chief Executive Officer, the President, the Chief Financial Officer or the Secretary (or persons performing similar functions).

"Officer's Certificate" means a certificate signed by an Officer of the Issuer.

"Opinion of Counsel" means a written opinion from legal counsel who may be an employee of or counsel to the Issuer, the Company or the Trustee.

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

"Pari Passu Indebtedness" means Indebtedness that ranks equally in right of payment to the Notes.

"Permitted Asset Swap" means the purchase and sale or exchange (within a 180-day period) of Related Business Assets or a combination of Related Business Assets and cash or Cash Equivalents between the Issuer, the Company or any of the Restricted Subsidiaries of the Company and another Person; provided that any cash or Cash Equivalents received must be applied in accordance with Section 3.7 hereof.

"Permitted Investment" means an Investment by the Issuer, the Company or any Restricted Subsidiary in:

  (1) the Issuer or a Restricted Subsidiary (other than a Receivables Entity) or a Person which shall, upon the making of such Investment, become a Restricted Subsidiary (other than a Receivables Entity); provided, however, that the primary business of such Restricted Subsidiary is a Related Business;

  (2) another Person if as a result of such Investment such other Person is merged or consolidated with or into, or transfers or conveys all or substantially all its assets to, the Issuer, the Company or a Restricted Subsidiary (other than a Receivables Entity); provided, however, that such Person's primary business is a Related Business;

  (3) cash and Cash Equivalents;

  (4) receivables owing to the Issuer, the Company or any Restricted Subsidiary created or acquired in the ordinary course of business and payable or dischargeable in accordance with customary trade terms; provided, however, that such trade terms may include such concessionary trade terms as the Issuer, the Company or any such Restricted Subsidiary deems reasonable under the circumstances;

  (5) payroll, travel, moving and similar advances to cover matters that are expected at the time of such advances ultimately to be treated as expenses for accounting purposes and that are made in the ordinary course of business;

  (6) to the extent permitted by law, loans or advances to employees (other than executive officers) made in the ordinary course of business consistent with past practices of the Issuer, the Company or such Restricted Subsidiary;

  (7) Capital Stock, obligations or securities received in settlement of debts created in the ordinary course of business and owing to the Issuer, the Company or any Restricted Subsidiary or in satisfaction of judgments or pursuant to any plan of reorganization or similar arrangement upon the bankruptcy or insolvency of a debtor;

- 21 -

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

(8)      Investments made as a result of the receipt of non-cash consideration from an Asset Disposition that was made pursuant to and in compliance with Section 3.7;

(9)      (i) Investments in existence on the Issue Date or (ii) made pursuant to legally binding commitments in existence on the Issue Date as described in the Offering Memorandum;

(10)     Currency Agreements, Interest Rate Agreements, Commodity Agreements and related Hedging Obligations, which transactions or obligations are Incurred in compliance with Section 3.3;

(11)     Investments by the Issuer, the Company or any of its Restricted Subsidiaries, together with all other Investments pursuant to this clause (11), in an aggregate amount at the time of such Investment not to exceed $40,000,000 outstanding at any one time (with the fair market value (as determined in good faith by the Company) of such Investment being measured at the time made and without giving effect to subsequent changes in value);

(12)     Guarantees issued in accordance with Section 3.3;

(13)     Investments constituting prepayments or credits made to customers or suppliers in the ordinary course of business and consistent with past practice;

(14)     Investments by the Issuer, the Company or a Restricted Subsidiary of the Company in a Receivables Entity or any Investment by a Receivables Entity in any other Person, in each case, in connection with a Qualified Receivables Transaction, provided, however, that any Investment in any such Person is in the form of a Purchase Money Note, or any equity interest or interests in Receivables and related assets generated by the Issuer, the Company or a Restricted Subsidiary and transferred to any Person in connection with a Qualified Receivables Transaction or any such Person owning such Receivables;

(15)     Investments in Joint Ventures in an aggregate principal amount not to exceed the greater of 3.25% of the Company's Consolidated Tangible Assets and $40,000,000 outstanding at any one time;

(16)     Investments to the extent acquired in exchange for the issuance of Capital Stock of the Issuer or the Company (other than Disqualified Stock);

(17)     Investments in and repurchases of the Notes;

(18)     Investments consisting of licensing or contribution of intellectual property pursuant to joint marketing arrangements with other Persons; and

(19)     Investments consisting of purchases and acquisitions of inventory, supplies, materials or equipment.

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

"Permitted Liens" means, with respect to any Person:

    (1)    Liens securing Indebtedness and other obligations under a Credit Facility, including under the Revolving Credit Facility, and related Hedging Obligations and Banking Services Obligations and Liens on assets of the Company, the Issuer and Subsidiary Guarantors securing Guarantees of Indebtedness and other obligations under a Credit Facility, including under the Revolving Credit Facility, and related Hedging Obligations and such Banking Services Obligations, in each case, to the extent the Indebtedness is permitted to be Incurred under clause (1) of Section 3.3(b);

    (2)    Liens securing Indebtedness and related Hedging Obligations of Non-Guarantor Subsidiaries in an aggregate principal amount not to exceed the greater of 4.0% of the Company's Consolidated Tangible Assets and $50,000,000 outstanding at any one time;

    (3)    pledges or deposits by such Person under workmen's compensation laws, unemployment insurance laws or similar legislation, or good faith deposits in connection with bids, tenders, contracts (other than for the payment of Indebtedness) or leases to which such Person is a party, or deposits to secure public or statutory obligations of such Person or deposits of cash or Government Obligations to secure surety or appeal bonds to which such Person is a party, or deposits as security for contested taxes or import or customs duties or for the payment of rent, in each case Incurred in the ordinary course of business;

    (4)    Liens imposed by law, including carriers', warehousemen's and mechanics' Liens in each case for sums not yet due or being contested in good faith by appropriate proceedings if a reserve or other appropriate provisions, if any, as shall be required by GAAP shall have been made in respect thereof;

    (5)    Liens for taxes, assessments or other governmental charges not yet subject to penalties for non-payment or which are being contested in good faith by appropriate proceedings provided appropriate reserves required pursuant to GAAP have been made in respect thereof;

    (6)    Liens in favor of issuers of surety or performance bonds or letters of credit or bankers' acceptances issued pursuant to the request of and for the account of such Person in the ordinary course of its business; provided, however, that such letters of credit do not constitute Indebtedness;

    (7)    encumbrances, ground leases, easements or reservations of, or rights of others for, licenses, rights of way, sewers, electric lines, telegraph and telephone lines and other similar purposes, or zoning, building codes or other restrictions (including, without limitation, minor defects or irregularities in title and similar encumbrances) as to the use of real properties or liens incidental to the conduct of the business of such Person or to the ownership of its properties which

- 23 -

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

do not in the aggregate materially adversely affect the value of said properties or materially impair their use in the operation of the business of such Person;

(8)    Liens securing Hedging Obligations so long as the related Indebtedness is, and is permitted to be under this Indenture, secured by a Lien on the same property securing such Hedging Obligation;

(9)    leases, licenses, subleases and sublicenses of assets (including, without limitation, real property and intellectual property rights) which do not materially interfere with the ordinary conduct of the business of the Issuer, the Company or any of its Restricted Subsidiaries;

(10)    judgment Liens not giving rise to an Event of Default so long as such Lien is adequately bonded and any appropriate legal proceedings which may have been duly initiated for the review of such judgment have not been finally terminated or the period within which such proceedings may be initiated has not expired;

(11)    Liens for the purpose of securing the payment (or the refinancing of the payment) of all or a part of the purchase price of, or Capitalized Lease Obligations, purchase money obligations or other payments Incurred to finance the acquisition, improvement or construction of, assets or property acquired or constructed in the ordinary course of business provided that:

(a)    the aggregate principal amount of Indebtedness secured by such Liens is otherwise permitted to be Incurred under this Indenture and does not exceed the cost of the assets or property acquired or constructed; and

(b)    such Liens are created within 180 days of construction or acquisition of such assets or property and do not encumber any other assets or property of the Issuer, the Company or any Restricted Subsidiary other than such assets or property and assets affixed or appurtenant thereto;

(12)    Liens arising solely by virtue of any statutory or common law provision relating to banker's Liens, rights of set-off or similar rights and remedies as to deposit accounts or other funds maintained with a depositary institution; provided that:

(a)    such deposit account is not a dedicated cash collateral account and is not subject to restrictions against access by the Company in excess of those set forth by regulations promulgated by the U.S. Federal Reserve Board; and

(b)    such deposit account is not intended by the Issuer, the Company or any Restricted Subsidiary to provide collateral to the depository institution;

- 24 -

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

(13)    Liens arising from Uniform Commercial Code financing statement filings or other methods of protection of interests regarding operating leases entered into by the Issuer, the Company and its Restricted Subsidiaries in the ordinary course of business;

(14)    Liens existing on the Issue Date;

(15)    Liens on property or shares of stock of a Person at the time such Person becomes a Restricted Subsidiary; provided, however, that such Liens are not created, Incurred or assumed in connection with, or in contemplation of, such other Person becoming a Restricted Subsidiary; provided further, however, that any such Lien may not extend to any other property owned by the Issuer, the Company or any other Restricted Subsidiary;

(16)    Liens on property at the time the Issuer, the Company or a Restricted Subsidiary acquired the property, including any acquisition by means of a merger or consolidation with or into the Issuer, the Company or any Restricted Subsidiary; provided, however, that such Liens are not created, Incurred or assumed in connection with, or in contemplation of, such acquisition; provided further, however, that such Liens may not extend to any other property owned by the Issuer, the Company or any other Restricted Subsidiary;

(17)    Liens securing Indebtedness or other obligations of a Restricted Subsidiary owing to the Issuer, the Company or another Restricted Subsidiary (other than a Receivables Entity);

(18)    Liens securing the Notes and Notes Guarantees;

(19)    Liens securing Refinancing Indebtedness Incurred to refinance Indebtedness that was previously so secured, provided that any such Lien is limited to all or part of the same property or assets (plus improvements, accessions, proceeds or dividends or distributions in respect thereof) that secured (or, under the written arrangements under which the original Lien arose, could secure) the Indebtedness being refinanced or is in respect of property that is the security for a Permitted Lien hereunder;

(20)    Liens in favor of customs and revenue authorities to secure payment of customs duties in connection with the importation of goods;

(21)    Liens securing Indebtedness in an aggregate principal amount outstanding at any one time not to exceed $10,000,000;

(22)    any interest or title of a lessor under any Capitalized Lease Obligation or operating lease;

(23)    Liens on assets transferred to a Receivables Entity or on assets of a Receivables Entity or on assets of another Restricted Subsidiary, in each case Incurred in connection with a Qualified Receivables Transaction;

confidential
Annie Li
Aug 25, 2015 21:20

us\WONGJA\7929518.7

confidential
Annie Li
Aug 25, 2015 21:20

(24)    Liens securing Indebtedness represented by Capitalized Lease Obligations, mortgage financings or purchase money obligations with respect to assets other than Capital Stock or other Investments to the extent the Indebtedness is permitted to be Incurred under Section 3.3(b)(7) hereof; and

(25)    Liens securing Indebtedness of the Issuer, the Company and the Subsidiary Guarantors in an aggregate principal amount outstanding at any one time not to exceed 1.0 times the Consolidated EBITDA of the Company and its subsidiaries for the immediately preceding four consecutive completed fiscal quarters for which financial statements of the Company prepared in accordance with GAAP are available

"Person" means any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization, limited liability company, government or any agency or political subdivision thereof or any other entity.

"Preferred Stock," as applied to the Capital Stock of any corporation, means Capital Stock of any class or classes (however designated) which is preferred as to the payment of dividends, or as to the distribution of assets upon any voluntary or involuntary liquidation or dissolution of such corporation, over shares of Capital Stock of any other class of such corporation.

"Purchase Money Note" means a promissory note of a Receivables Entity evidencing the deferred purchase price of Receivables (and related assets) and/or a line of credit, which may be irrevocable, from the Issuer, the Company or any Restricted Subsidiary of the Company in connection with a Qualified Receivables Transaction with a Receivables Entity, which deferred purchase price or line is repayable from cash available to the Receivables Entity, other than amounts required to be established as reserves pursuant to agreements, amounts paid to investors in respect of interest, principal and other amounts owing to such investors and amounts owing to such investors and amounts paid in connection with the purchase of newly generated Receivables.

"QIB" means any "qualified institutional buyer" (as defined in Rule 144A under the Securities Act).

"Qualified Receivables Transaction" means any transaction or series of transactions that may be entered into by the Issuer, the Company or any of its Restricted Subsidiaries pursuant to which the Issuer, the Company or any of its Restricted Subsidiaries may sell, convey or otherwise transfer to (1) a Receivables Entity (in the case of a transfer by the Issuer, the Company or any of its Restricted Subsidiaries) and (2) any other Person, or may grant a security interest in, any Receivables (whether now existing or arising in the future) of the Issuer, the Company or any of its Restricted Subsidiaries, and any assets related thereto including, without limitation, all collateral securing such Receivables, all contracts and all guarantees or other obligations in respect of such accounts receivable, the proceeds of such Receivables and other assets which are customarily transferred, or in respect of which security interests are customarily granted, in connection with asset securitization involving Receivables.

confidential
Annie Li
Aug 25, 2015 21:20

us\WONGJA\7929518.7

confidential
Annie Li
Aug 25, 2015 21:20

"Receivable" means a right to receive payment arising from a sale or lease of goods or the performance of services by a Person pursuant to an arrangement with another Person pursuant to which such other Person is obligated to pay for goods or services under terms that permit the purchase of such goods and services on credit and shall include, in any event, any items of property that would be classified as an "account," "chattel paper," "payment intangible" or "instrument" under the Uniform Commercial Code as in effect in the State of New York and any "supporting obligations" as so defined.

"Receivables Entity" means a Wholly Owned Subsidiary (or another Person in which the Issuer, the Company or any Restricted Subsidiary of the Company makes an Investment and to which the Issuer, the Company or any Restricted Subsidiary of the Company transfers Receivables and related assets) which engages in no activities other than in connection with the financing of Receivables and which is designated by the Board of Directors of the Company (as provided below) as a Receivables Entity:

    (1)    no portion of the Indebtedness or any other obligations (contingent or otherwise) of which:

    (a)    is guaranteed by the Issuer, the Company or any Restricted Subsidiary of the Company (excluding guarantees of obligations (other than the principal of, and interest on, Indebtedness) pursuant to Standard Securitization Undertakings);

    (b)    is recourse to or obligates the Issuer, the Company or any Restricted Subsidiary in any way other than pursuant to Standard Securitization Undertakings; or

    (c)    subjects any property or asset of the Issuer, the Company or any Restricted Subsidiary, directly or indirectly, contingently or otherwise, to the satisfaction thereof, other than pursuant to Standard Securitization Undertakings;

    (2)    with which none of the Issuer, the Company or any Restricted Subsidiary has any material contract, agreement, arrangement or understanding (except in connection with a Purchase Money Note or Qualified Receivables Transaction) other than on terms no less favorable to the Issuer, the Company or such Restricted Subsidiary than those that might be obtained at the time from Persons that are not Affiliates of the Company, other than fees payable in the ordinary course of business in connection with servicing Receivables; and

    (3)    to which none of the Issuer, the Company or any Restricted Subsidiary has any obligation to maintain or preserve such entity's financial condition or cause such entity to achieve certain levels of operating results.

Any such designation by the Board of Directors of the Company shall be evidenced to the Trustee by filing with the Trustee a certified copy of the resolution of the Board of Directors of the Company giving effect to such designation and an Officer's Certificate certifying that such designation complied with the foregoing conditions.

confidential
Annie Li
Aug 25, 2015 21:20

confidential
Annie Li
Aug 25, 2015 21:20

"Receivables Fees" means any fees or interest paid to purchasers or lenders providing the financing in connection with a Qualified Receivables Transaction, factoring agreement or other similar agreement, including any such amounts paid by discounting the face amount of Receivables or participations therein transferred in connection with a Qualified Receivables Transaction, factoring agreement or other similar arrangement, regardless of whether any such transaction is structured as on-balance sheet or off-balance sheet or through a Restricted Subsidiary or an Unrestricted Subsidiary.

"Refinancing Indebtedness" means Indebtedness that is Incurred to refund, refinance, replace, exchange, renew, repay or extend (including pursuant to any defeasance or discharge mechanism) (collectively, "refinance," "refinances," and "refinanced" shall have a correlative meaning) any Indebtedness existing on the Issue Date (including any commitments to provide Indebtedness on the Issue Date) or Incurred in compliance with this Indenture (including Indebtedness of the Issuer or the Company that refinances Indebtedness of any Restricted Subsidiary and Indebtedness of any Restricted Subsidiary that refinances Indebtedness of another Restricted Subsidiary) including Indebtedness that refinances Refinancing Indebtedness, provided, however, that:

     (1)    (a) if the Stated Maturity of the Indebtedness being refinanced is earlier than the Stated Maturity of the Notes, the Refinancing Indebtedness has a Stated Maturity no earlier than the Stated Maturity of the Indebtedness being refinanced or (b) if the Stated Maturity of the Indebtedness being refinanced is later than the Stated Maturity of the Notes, the Refinancing Indebtedness has a Stated Maturity at least 91 days later than the Stated Maturity of the Notes;

     (2)    the Refinancing Indebtedness has an Average Life at the time such Refinancing Indebtedness is Incurred that is equal to or greater than the Average Life of the Indebtedness being refinanced;

     (3)    such Refinancing Indebtedness is Incurred in an aggregate principal amount (or if issued with original issue discount, an aggregate issue price) that is equal to or less than the sum of the aggregate principal amount (or if issued with original issue discount, the aggregate accreted value) then outstanding of the Indebtedness being refinanced (plus, without duplication, any additional Indebtedness Incurred to pay interest or premiums required by the instruments governing such existing Indebtedness and fees Incurred in connection therewith); and

     (4)    if the Indebtedness being extended, refinanced, replaced, defeased or refunded is subordinated in right of payment to the Notes or the Notes Guarantees, such Refinancing Indebtedness is subordinated in right of payment to the Notes or the Notes Guarantees on terms at least as favorable to the Holders as those contained in the documentation governing the Indebtedness being extended, refinanced, renewed, replaced, defeased or refunded.

"Regulation S" means Regulation S promulgated under the U.S. Securities Act.

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

"Regulation S Definitive Note" means a Definitive Note sold in reliance on Regulation S.

"Regulation S Global Note" means a Global Note substantially in the form of Exhibit A hereto bearing the appropriate legends as set forth in Section 2.1(d) hereof and deposited with or on behalf of and registered in the name of the Depositary or its nominee, issued in a denomination equal to the outstanding principal amount of the Notes sold in reliance on Rule 903 of Regulation S.

"Regulation S Note" means a Regulation S Definitive Note or a Regulation S Global Note, as applicable.

"Related Business Assets" means assets (other than cash or Cash Equivalents) used or useful in the business of the Issuer, the Company or any of the Restricted Subsidiaries of the Company; provided that any assets received by the Issuer, the Company or a Restricted Subsidiary in exchange for assets transferred by the Issuer, the Company or a Restricted Subsidiary will not be deemed to be Related Business Assets if they consist of securities of a Person, unless upon receipt of the securities of such Person, such Person would become a Restricted Subsidiary.

"Related Business" means any business that is conducted or proposed to be conducted by the Company and the Restricted Subsidiaries on the Issue Date or any business that is a reasonable extension, development or expansion of any of the foregoing or is similar, reasonably related, incidental or ancillary thereto, in each case as determined in good faith by the Company.

"Responsible Officer" shall mean, when used with respect to the Trustee, any officer within the corporate trust department of the Trustee, including any vice president, assistant vice president, assistant secretary, assistant treasurer, trust officer or any other officer of the Trustee who customarily performs functions similar to those performed by the persons who at the time shall be such officers, respectively, or to whom any corporate trust matter is referred because of such person's knowledge of and familiarity with the particular subject and who shall have direct responsibility for the administration of this Indenture.

"Restricted Investment" means any Investment other than a Permitted Investment.

"Restricted Note" means a Note that constitutes a "restricted security" within the meaning of Rule 144(a)(3) under the Securities Act; provided, however, that the Trustee shall be entitled to request and conclusively rely on an opinion of counsel with respect to whether any Note constitutes a Restricted Note.

"Restricted Notes Legend" means the legend set forth in clause (A) of Section 2.1(d).

"Restricted Period" means, in relation to the Initial Notes, the 40 consecutive days beginning on and including the later of (A) the day on which the Initial Notes are offered to persons other than distributors (as defined in Regulation S under the Securities Act) and (B) the Issue Date and, in relation to any Additional Notes that are Restricted Notes, it means the comparable period of 40 consecutive days.

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

"Restricted Subsidiary" means any Subsidiary of the Company other than the Issuer and an Unrestricted Subsidiary.

"Revolving Credit Facility" means the Credit Agreement by and among Quiksilver Americas, Inc., Bank of America, N.A., Banc of America Securities LLC, General Electric Capital Corporation and GE Capital Markets, Inc. dated July 31, 2009, as amended, supplemented, restated, modified, renewed, restructured, refunded, replaced, refinanced or otherwise modified in whole or in part from time to time (and whether or not with the original administrative agent and lenders or another administrative agent or agents or other lenders and whether provided under the original Credit Agreement or any other credit or other agreement or indenture).

"Rule 144" means Rule 144 promulgated under the U.S. Securities Act.

"Rule 144A" means Rule 144A promulgated under the U.S. Securities Act.

"Rule 144A Definitive Note" means a Definitive Note sold in reliance on Rule 144A.

"Rule 144A Global Note" means a Global Note substantially in the form of Exhibit A hereto bearing the appropriate legends as set forth in Section 2.1(d) hereof and deposited with or on behalf of, and registered in the name of, the Depositary or its nominee that will be issued in a denomination equal to the outstanding principal amount of the Notes sold in reliance on Rule 144A.

"Rule 144A Note" means a Rule 144A Definitive Note or a Rule 144A Global Note, as applicable.

"Sale/Leaseback Transaction" means an arrangement relating to property now owned or hereafter acquired by the Issuer, the Company or a Restricted Subsidiary of the Company whereby the Issuer, the Company or such Restricted Subsidiary transfers such property to a Person and the Issuer, the Company or such Restricted Subsidiary leases it from such Person.

"S&P" shall mean Standard & Poor's Ratings Services, a division of The McGraw-Hill Companies, Inc., and its successors.

"SEC" means the U.S. Securities and Exchange Commission.

"Securities Act" means the Securities Act of 1933, as amended.

"SGX-ST" means the Singapore Exchange Securities Trading Limited.

"Significant Subsidiary" means any Restricted Subsidiary that would be a "Significant Subsidiary" of the Company within the meaning of Rule 1-02 under Regulation S-X promulgated by the SEC.

"Standard Securitization Undertakings" means representations, warranties, covenants and indemnities entered into by the Issuer, the Company or any Restricted Subsidiary of the Company that are reasonably customary in securitization of Receivables transactions.

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

"Stated Maturity" means, with respect to any Indebtedness, the date specified in such Indebtedness as the fixed date on which the payment of principal of such Indebtedness is due and payable, including pursuant to any mandatory redemption provision, but shall not include any contingent obligations to repay, redeem or repurchase any such principal prior to the date originally scheduled for the payment thereof.

"Subordinated Obligation" means any Indebtedness of the Issuer (whether outstanding on the Issue Date or thereafter Incurred) that is subordinate or junior in right of payment to the Notes pursuant to a written agreement.

"Subsidiary" of any Person means (a) any corporation, association or other business entity (other than a partnership, joint venture, limited liability company or similar entity) of which more than 50% of the total ordinary voting power of shares of Capital Stock entitled (without regard to the occurrence of any contingency) to vote in the election of directors, managers or trustees thereof (or persons performing similar functions) or (b) any partnership, joint venture, limited liability company or similar entity of which more than 50% of the capital accounts, distribution rights, total equity and voting interests or general or limited partnership interests, as applicable, is, in the case of clauses (a) and (b), at the time owned or controlled, directly or indirectly, by (1) such Person, (2) such Person and one or more Subsidiaries of such Person or (3) one or more Subsidiaries of such Person. Unless otherwise specified herein, each reference to a Subsidiary shall refer to a Subsidiary of the Company.

"Subsidiary Guarantor" means (i) Quiksilver Americas, Inc., Hawk Designs, Inc., Mervin Manufacturing, Inc., QS Retail, Inc., DC Shoes, Inc., QS Wholesale, Inc., QSJ Holdings Pty Ltd., Quiksilver Australia Pty Ltd., Quiksilver International Pty Ltd., Ug Manufacturing Co. Pty Ltd., DC Shoes Australia Pty Ltd., QS Retail Pty Ltd., Quiksilver Canada Corp., QS Retail Canada Corp., Na Pali S.A.S., Quiksilver Japan K.K., QS Holdings S.à r.l., Biarritz Holdings S.à r.l., 54th Street Holdings S.à r.l., Quiksilver Deluxe S.à r.l., QS Finance Luxembourg S.A., QS Retail (NZ) Limited and Ug Manufacturing Co. (NZ) Pty Ltd., unless such Subsidiary Guarantor is released and discharged from the obligations under its Notes Guarantee pursuant to the provisions under Article X and under the last paragraph under Section 4.1 hereof, as the case may be, and (ii) each current or future Non-U.S. Subsidiary or U.S. Subsidiary that (a) Guarantees any Indebtedness of the Issuer, the Company or any other Restricted Subsidiary or (b) is an obligor under a Credit Facility Incurred pursuant to Section 3.3(b)(1).

"Successor Company" shall have the meaning assigned thereto in clause (b)(i) of Section 4.1.

"Successor Issuer" shall have the meaning assigned thereto in clause (a)(i) of Section 4.1.

"TIA" means the Trust Indenture Act of 1939 (15 U.S.C. Sections 7aaa-7bbb), as in effect from time to time.

"Trustee" means the party named as such in this Indenture until a successor replaces it and, thereafter, means such successor.

"Uniform Commercial Code" means the New York Uniform Commercial Code as in effect from time to time.

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

"Unrestricted Subsidiary" means:

    (1)    any Subsidiary of the Company that at the time of determination shall be designated an Unrestricted Subsidiary by the Board of Directors of the Company in the manner provided below; and

    (2)    any Subsidiary of an Unrestricted Subsidiary.

The Board of Directors of the Company may designate any Subsidiary of the Company (including any newly acquired or newly formed Subsidiary or a Person becoming a Subsidiary through merger or consolidation or Investment therein) to be an Unrestricted Subsidiary only if:

    (1)    such Subsidiary or any of its Subsidiaries does not own any Capital Stock or Indebtedness of or have any Investment in, or own or hold any Lien on any property of, any other Subsidiary of the Company which is not a Subsidiary of the Subsidiary to be so designated or otherwise an Unrestricted Subsidiary;

    (2)    all the Indebtedness of such Subsidiary and its Subsidiaries shall, at the date of designation, and shall at all times thereafter, consist of Non-Recourse Debt;

    (3)    such designation and the Investment of the Company in such Subsidiary complies with Section 3.4;

    (4)    such Subsidiary, either alone or in the aggregate with all other Unrestricted Subsidiaries, does not operate, directly or indirectly, all or substantially all of the business of the Company and its Subsidiaries;

    (5)    such Subsidiary is a Person with respect to which neither the Issuer, the Company nor any of its Restricted Subsidiaries has any direct or indirect obligation:

        (a)    to subscribe for additional Capital Stock of such Person; or

        (b)    to maintain or preserve such Person's financial condition or to cause such Person to achieve any specified levels of operating results; and

    (6)    on the date such Subsidiary is designated an Unrestricted Subsidiary, such Subsidiary is not a party to any agreement, contract, arrangement or understanding with the Issuer, the Company or any Restricted Subsidiary with terms substantially less favorable to the Company than those that might have been obtained from Persons who are not Affiliates of the Company.

Any such designation by the Board of Directors of the Company shall be evidenced to the Trustee by filing with the Trustee a resolution of the Board of Directors of the Company giving effect to such designation and an Officer's Certificate certifying that such designation complies with the foregoing conditions. If, at any time, any Unrestricted Subsidiary would fail to meet the

- 32 -

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

foregoing requirements as an Unrestricted Subsidiary, it shall thereafter cease to be an Unrestricted Subsidiary for purposes of this Indenture and any Indebtedness of such Subsidiary shall be deemed to be Incurred as of such date.

The Board of Directors of the Company may designate any Unrestricted Subsidiary to be a Restricted Subsidiary; provided that immediately after giving effect to such designation, no Default or Event of Default shall have occurred and be continuing or would occur as a consequence thereof and the Company could Incur at least $1.00 of additional Indebtedness under the first paragraph of Section 3.3 on a pro forma basis taking into account such designation.

"U.S. Subsidiary" means any Restricted Subsidiary of the Company that is organized under the laws of the United States of America or any state thereof or the District of Columbia.

"Voting Stock" of any Person as of any date means the Capital Stock of such Person that is at the time entitled to vote in the election of the Board of Directors of such Person.

"Wholly Owned Subsidiary" means a Restricted Subsidiary, all of the Capital Stock of which (other than directors' qualifying shares and shares issued to foreign nationals as required under applicable law) is owned by the Company or another Wholly Owned Subsidiary.

Other Definitions.

| Defined in Term | Section |
| --- | --- |
| "additional amounts" | 3.12 |
| "Additional Interest Notice" | 3.19 |
| "Additional Notes" | Recitals |
| "Affiliate Transaction" | 3.8(a) |
| "Asset Disposition Offer" | 3.7(b) |
| "Asset Disposition Offer Amount" | 3.7(c) |
| "Asset Disposition Offer Period" | 3.7(c) |
| "Asset Disposition Purchase Date" | 3.7(c) |
| "Authenticating Agent" | 2.2 |
| "Change of Control Offer" | 3.9(b) |
| "Change of Control Payment" | 3.9(b) |
| "Change of Control Payment Date" | 3.9(b) |
| "covenant defeasance option" | 8.1(b) |
| "cross acceleration provision" | 6.1 |
| "Event of Default" | 6.1 |
| "Excess Proceeds" | 3.7(b) |
| "French Guarantor" | 10.2(c) |
| "Global Notes" | 2.1(b) |
| "Initial Notes" | Recitals |
| "Issuer Order" | 2.2 |
| "Judgment Currency" | 2.14 |
| "judgment default provision" | 6.1 |
| "legal defeasance option" | 8.1(b) |

- 33 -

confidential
Annie Li
Aug 25, 2015 21:20

confidential
Annie Li
Aug 25, 2015 21:20

"Obligations" ................................................................................. 10.1
"Pari Passu Notes" ........................................................................ 3.7(b)
"Notes" ......................................................................................... Recitals
"Paying Agent" ............................................................................. 2.3
"payment default" ........................................................................ 6.1
"Redemption Date" ....................................................................... 5.3
"Registrar" .................................................................................... 2.3
"Required Currency" ..................................................................... 2.14
"Resale Restriction Termination Date" ........................................ 2.5(a)
"Restricted Payment" .................................................................... 3.4(a)
"Special Interest Payment Date" ................................................... 2.11(a)
"Special Record Date" ................................................................... 2.11(a)
"Suspended Covenants" ................................................................. 3.11
"Tax Jurisdiction" .......................................................................... 3.12
"Taxes" .......................................................................................... 3.12
"Transfer Agent" ........................................................................... 2.3

SECTION 1.2.    Rules of Construction.  Unless the context otherwise requires:

(1)    a term has the meaning assigned to it;

(2)    an accounting term not otherwise defined has the meaning assigned to it in accordance with GAAP;

(3)    "or" is not exclusive;

(4)    "including" means including without limitation;

(5)    words in the singular include the plural and words in the plural include the singular;

(6)    unsecured Indebtedness shall not be deemed to be subordinate or junior to secured Indebtedness merely by virtue of its nature as unsecured Indebtedness;

(7)    the principal amount of any noninterest bearing or other discount security at any date shall be the principal amount thereof that would be shown on a balance sheet of the issuer dated such date prepared in accordance with GAAP;

(8)    the principal amount of any Preferred Stock shall be (i) the maximum liquidation value of such Preferred Stock or (ii) the maximum mandatory redemption or mandatory repurchase price with respect to such Preferred Stock, whichever is greater;

(9)    "$" and "U.S. dollars" each refer to United States dollars, or such other money of the United States of America that at the time of payment is legal tender for payment of public and private debts; and

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

(10)    "€" and "Euro" each refer to Euros, or such other money of the European Monetary Union that at the time of payment is legal tender for payment of public and private debts.

## ARTICLE II

### The Notes

SECTION 2.1.    Form, Dating and Terms.  (a)  The aggregate principal amount of Notes that may be authenticated and delivered under this Indenture is unlimited.  The Initial Notes issued on the date hereof will be in an aggregate principal amount of €200,000,000.  In addition, the Issuer may issue, from time to time in accordance with the provisions of this Indenture, including, without limitation, Section 3.3(a) hereof, Additional Notes.  Furthermore, Notes may be authenticated and delivered upon registration or transfer, or in lieu of, other Notes pursuant to Section 2.5, 2.7, 2.9 or 9.5 or in connection with an Asset Disposition Offer pursuant to Section 3.7 or a Change of Control Offer pursuant to Section 3.9.

The Notes shall be known and designated as "8.875% Senior Notes" of the Issuer.

With respect to any Additional Notes, the Issuer shall set forth in (a) a Board Resolution and (b)(i) an Officer's Certificate or (ii) one or more indentures supplemental hereto, the following information:

(i)    the aggregate principal amount of such Additional Notes to be authenticated and delivered pursuant to this Indenture; and

(ii)    the issue price and the issue date of such Additional Notes.

The Initial Notes and the Additional Notes shall be considered collectively as a single class for all purposes under this Indenture.  Holders of the Initial Notes and the Additional Notes shall vote and consent together on all matters to which such Holders are entitled to vote or consent as one class, and none of the Holders of the Initial Notes or the Additional Notes shall have the right to vote or consent as a separate class on any matter to which such Holders are entitled to vote or consent.

(b)    The Initial Notes are being offered and sold by the Issuer pursuant to a Purchase Agreement, dated December 3, 2010, among the Issuer, the Company, the Subsidiary Guarantors, and Merrill Lynch International and UBS Limited, as representatives of the Initial Purchasers named therein.  The Notes shall be resold initially only to (A) QIBs and (B) Persons other than U.S. Persons (as defined in Regulation S) in reliance on Regulation S.  Such Notes may thereafter be transferred to, among others, QIBs and purchasers in reliance on Regulation S in accordance with the procedure described herein.  Additional Notes offered after the date hereof may be offered and sold by the Issuer from time to time pursuant to one or more purchase agreements in accordance with applicable law.

Notes offered and sold to QIBs in the United States of America in reliance on Rule 144A shall be issued initially in the form of the Rule 144A Global Note, duly executed by the Issuer and authenticated by the Trustee as hereinafter provided.  The Rule 144A Global Note may be

us\WONGJA\7929518.7

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

represented by more than one certificate, if so required by the Common Depositary's rules regarding the maximum principal amount to be represented by a single certificate. The aggregate principal amount of the Rule 144A Global Note may from time to time be increased or decreased by adjustments made on the records of the Registrar and the Depositary or its nominee, as hereinafter provided.

Notes offered and sold outside the United States of America in reliance on Regulation S shall be issued initially in the form of a Regulation S Global Note, duly executed by the Issuer and authenticated by the Trustee as hereinafter provided. The Regulation S Global Note may be represented by more than one certificate, if so required by the Depositary's rules regarding the maximum principal amount to be represented by a single certificate. The aggregate principal amount of the Regulation S Global Note may from time to time be increased or decreased by adjustments made on the records of the Registrar and the Depositary or its nominee, as hereinafter provided.

The Rule 144A Global Note and the Regulation S Global Note are sometimes collectively herein referred to as the "Global Notes."

The principal of (and premium and additional amounts, if any) and interest on the Notes shall be payable at the office or agency of the Principal Paying Agent, or at such other office or agency of the Issuer as may be maintained for such purpose pursuant to Section 2.3; provided, however, that, at the option of the Issuer, each installment of interest on the Notes may be paid by (i) check mailed to addresses of the Persons entitled thereto as such addresses shall appear on the Note Register or (ii) wire transfer or to an account located in the United States or a Member State maintained by the payee. Payments in respect of Notes represented by a Global Note (including principal, premium, additional amounts and interest) shall be made by wire transfer of immediately available funds to the accounts specified by the Common Depositary. Payments in respect of Notes represented by Definitive Notes (including principal, premium and additional amounts, if any, and interest) held by a Holder of at least €1,000,000 aggregate principal amount of Notes represented by Definitive Notes shall be made by wire transfer to a Euro account maintained by the payee with a bank in the United States or a Member State if such Holder elects payment by wire transfer by giving written notice to the Trustee or the Paying Agent to such effect designating such account no later than 15 days immediately preceding the relevant due date for payment (or such other date as the Trustee may accept).

The Notes may have notations, legends or endorsements required by law, stock exchange rule or usage, in addition to those set forth on Exhibit A and in Section 2.1(d). The Issuer shall approve the forms of the Notes and any notation, endorsement or legend on them. Any such notation, endorsement or legend shall be furnished to the Trustee in writing. Each Note shall be dated the date of its authentication. The terms of the Notes set forth in Exhibit A are part of the terms of this Indenture and, to the extent applicable, the Issuer and the Trustee, by their execution and delivery of this Indenture, expressly agree to be bound by such terms. However, to the extent any provision of any Note conflicts with the express provisions of this Indenture, the provisions of this Indenture shall govern and be controlling.

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

(c)    Denominations.  The Notes shall be issuable only in fully registered form, without coupons, and only in denominations of €100,000 or an integral multiple of €1,000 in excess thereof.

(d)    Restrictive Legends.

(A)    The following Restricted Note Legend shall appear on the face of all Notes issued under this Indenture, unless the Issuer determines otherwise in compliance with applicable law:

"THIS NOTE (OR ITS PREDECESSOR) WAS ORIGINALLY ISSUED IN A TRANSACTION EXEMPT FROM REGISTRATION UNDER THE U.S. SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT") AND THIS NOTE MAY NOT BE OFFERED, SOLD OR OTHERWISE TRANSFERRED WITHIN THE UNITED STATES OR TO, OR FOR THE ACCOUNT OR BENEFIT OF, U.S. PERSONS (AS DEFINED IN REGULATION S UNDER THE SECURITIES ACT) EXCEPT (A) TO QUALIFIED INSTITUTIONAL BUYERS IN RELIANCE ON THE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT PROVIDED BY RULE 144A, (B) TO NON-U.S. PERSONS IN OFFSHORE TRANSACTIONS IN RELIANCE ON REGULATION S, (C) TO THE ISSUER, (D) PURSUANT TO A REGISTRATION STATEMENT THAT HAS BEEN DECLARED EFFECTIVE UNDER THE SECURITIES ACT OR (E) PURSUANT TO ANOTHER AVAILABLE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT, SUBJECT TO THE ISSUER'S AND THE TRUSTEE'S RIGHT PRIOR TO ANY SUCH OFFER, SALE OR TRANSFER PURSUANT TO CLAUSES (B) OR (E) TO REQUIRE THE DELIVERY OF AN OPINION OF COUNSEL, CERTIFICATION AND/OR OTHER INFORMATION SATISFACTORY TO EACH OF THEM. EACH PURCHASER OF THIS NOTE IS HEREBY NOTIFIED THAT THE SELLER OF THIS NOTE MAY BE RELYING ON THE EXEMPTION FROM THE PROVISIONS OF SECTION 5 OF THE SECURITIES ACT PROVIDED BY RULE 144A THEREUNDER.

THE HOLDER OF THIS NOTE AGREES FOR THE BENEFIT OF THE ISSUER THAT (A) THIS NOTE MAY BE OFFERED, RESOLD, PLEDGED OR OTHERWISE TRANSFERRED, ONLY (I) IN THE UNITED STATES TO A PERSON WHOM THE SELLER REASONABLY BELIEVES IS A QUALIFIED INSTITUTIONAL BUYER (AS DEFINED IN RULE 144A UNDER THE SECURITIES ACT) IN A TRANSACTION MEETING THE REQUIREMENTS OF RULE 144A OR (II) OUTSIDE THE UNITED STATES IN AN OFFSHORE TRANSACTION IN ACCORDANCE WITH RULE 904 UNDER THE SECURITIES ACT, IN EACH CASE IN ACCORDANCE WITH ANY APPLICABLE SECURITIES LAWS OF ANY STATE OF THE UNITED STATES, AND (B) THE HOLDER WILL, AND EACH SUBSEQUENT HOLDER IS REQUIRED TO, NOTIFY ANY PURCHASER OF THIS NOTE FROM IT OF THE RESALE RESTRICTIONS REFERRED TO IN (A) ABOVE.

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

BY ITS ACQUISITION OF THIS SECURITY, THE HOLDER HEREOF WILL BE DEEMED TO HAVE REPRESENTED AND WARRANTED THAT EITHER (I) NO PORTION OF THE ASSETS USED BY SUCH HOLDER TO ACQUIRE AND HOLD THIS SECURITY CONSTITUTES THE ASSETS OF AN EMPLOYEE BENEFIT PLAN THAT IS SUBJECT TO TITLE I OF THE U.S. EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED ("ERISA"), PLAN, ACCOUNT OR OTHER ARRANGEMENT THAT IS SUBJECT TO SECTION 4975 OF THE U.S. INTERNAL REVENUE CODE OF 1986, AS AMENDED (THE "CODE"), OR PROVISIONS UNDER ANY FEDERAL, STATE, LOCAL, NON-U.S. OR OTHER LAWS OR REGULATIONS THAT ARE SIMILAR TO SUCH PROVISIONS OF ERISA OR THE CODE ("SIMILAR LAWS"), OR OF ANY ENTITY WHOSE UNDERLYING ASSETS ARE CONSIDERED TO INCLUDE "PLAN ASSETS" OF ANY SUCH PLAN, ACCOUNT OR ARRANGEMENT, OR (II) THE ACQUISITION AND HOLDING OF THE SECURITY WILL NOT CONSTITUTE A NON-EXEMPT PROHIBITED TRANSACTION UNDER SECTION 406 OF ERISA OR SECTION 4975 OF THE CODE OR A VIOLATION UNDER ANY APPLICABLE SIMILAR LAW."

(B)  Each Global Note, whether or not an Initial Note, shall bear the following legend on the face thereof:

"THIS GLOBAL NOTE IS HELD BY THE COMMON DEPOSITARY (AS DEFINED IN THE INDENTURE GOVERNING THIS NOTE) OR ITS NOMINEE IN CUSTODY FOR THE BENEFIT OF THE BENEFICIAL OWNERS HEREOF, AND IS NOT TRANSFERABLE TO ANY PERSON UNDER ANY CIRCUMSTANCES EXCEPT THAT (I) THIS GLOBAL NOTE MAY BE EXCHANGED IN WHOLE BUT NOT IN PART PURSUANT TO SECTION 2.1(f) OF THE INDENTURE; AND (II) THIS GLOBAL NOTE MAY BE DELIVERED IN ACCORDANCE WITH SECTION 2.1(e)(vi) OF THE INDENTURE TO THE REGISTRAR FOR CANCELLATION PURSUANT TO SECTION 2.10 OF THE INDENTURE."

(e)     Book-Entry Provisions.  (i)  This Section 2.1(e) shall apply only to Global Notes deposited with the Common Depositary.

(ii)     Each Global Note initially shall (x) be registered in the name of the Common Depositary for such Global Note, or the nominee of the Common Depositary, for Euroclear and Clearstream, (y) be delivered to the Registrar for such Common Depositary and (z) bear legends as set forth in Section 2.1(d).

(iii)     Members of, or participants in, Euroclear or Clearstream ("Agent Members") and Persons who hold beneficial interests in a Global Note through an Agent Member shall have no rights under this Indenture with respect to any Global Note held on their behalf by the Common Depositary, for Euroclear and Clearstream, and the Common Depositary may be treated by the Issuer, the Trustee, the Paying Agent, the Registrar and any agent of the foregoing as the absolute owner of such Global Note for all purposes

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

whatsoever. Notwithstanding the foregoing, nothing herein shall prevent the Issuer, the Trustee, the Paying Agent, the Registrar and any agent of the foregoing from giving effect to any written certification, proxy or other authorization furnished by the Common Depositary or impair, as between Euroclear or Clearstream, as the case may be, and their respective Agent Members, the operation of customary practices governing the exercise of the rights of a Holder of a beneficial interest in any Global Note.

(iv)    The registered Holder of a Global Note may grant proxies and otherwise authorize any person, including Agent Members and persons that may hold interests through Agent Members, to take any action which a Holder is entitled to take under this Indenture or the Notes.

(v)    In connection with any transfer of a portion of the beneficial interest in a Global Note pursuant to subsection (f) of this Section 2.1 to beneficial owners who are required to hold Definitive Notes, the Registrar shall reflect on its books and records the date and a decrease in the principal amount of such Global Note in an amount equal to the principal amount of the beneficial interest in the Global Note to be transferred, and the Issuer shall execute, and the Trustee shall authenticate and deliver, one or more Definitive Notes of like tenor and amount.

(vi)    In connection with the transfer of an entire Global Note to beneficial owners pursuant to subsection (f) of this Section 2.1, such Global Note shall be deemed to be surrendered to the Principal Paying Agent for cancellation, and the Issuer shall execute, and the Trustee shall authenticate and deliver, to each beneficial owner identified by the Common Depositary in exchange for its beneficial interest in such Global Note, an equal aggregate principal amount of Definitive Notes of authorized denominations.

(vii)    Any Holder of a Global Note shall, by acceptance of such Global Note, agree that transfers of beneficial interests in such Global Note may be effected only through the Common Depositary, in accordance with this Indenture and the procedures therefor of the Common Depositary, Euroclear or Clearstream, as the case may be.

(f)    Definitive Notes. (i) Except as provided below, owners of beneficial interests in Global Notes shall not be entitled to receive Definitive Notes. If required to do so pursuant to any applicable law or regulation, beneficial owners may obtain Definitive Notes in exchange for their beneficial interests in a Global Note upon written request in accordance with the Common Depositary's and the Registrar's procedures. In addition, Definitive Notes shall be delivered to all beneficial owners in exchange for their beneficial interests in a Global Note (A) if either Depositary notifies the Issuer that it is unwilling or unable to continue to act as depositary and a successor depositary is not appointed by the Issuer within 120 days of such notice, or (B) in whole, but not in part, if either Depositary so requests following an Event of Default.

(ii)    Any Definitive Note delivered in exchange for an interest in a Global Note pursuant to Section 2.1(e)(v) or (vi) shall, except as otherwise provided by

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

paragraph (c) of Section 2.5, bear the applicable legend regarding transfer restrictions applicable to the Definitive Note set forth in Section 2.1(d).

(iii)     In connection with the exchange of a portion of a Definitive Note for a beneficial interest in a Global Note, the Trustee shall cancel such Definitive Note, and the Issuer shall execute, and the Trustee shall authenticate and deliver, to the transferring Holder a new Definitive Note representing the principal amount not so transferred and the relevant Global Note shall be increased by an adjustment made on the records of Registrar and the Depositary.

SECTION 2.2.    Execution and Authentication.  An Officer shall sign the Notes for the Issuer by manual or facsimile signature.  If an Officer whose signature is on a Note no longer holds that office at the time the Trustee authenticates the Note, the Note shall be valid nevertheless.

A Note shall not be valid until an authorized signatory of the Trustee manually authenticates the Note.  The signature of the Trustee on a Note shall be conclusive evidence that such Note has been duly and validly authenticated and issued under this Indenture.  A Note shall be dated the date of its authentication.

At any time and from time to time after the execution and delivery of this Indenture, the Trustee shall authenticate and make available for delivery: (1) Initial Notes for original issue on the Issue Date in an aggregate principal amount of €200,000,000 and (2) subject to the terms of this Indenture, Additional Notes for original issue in an unlimited principal amount, in each case upon a written order of the Issuer signed by an Officer of the Issuer (the "Issuer Order").  Such Issuer Order shall specify the amount of the Notes to be authenticated and the date on which the original issue of Notes is to be authenticated and whether the Notes are to be Initial Notes or Additional Notes.

The Trustee may (at the expense of the Issuer) appoint an agent (the "Authenticating Agent") reasonably acceptable to the Issuer to authenticate the Notes.  Unless limited by the terms of such appointment, any such Authenticating Agent may authenticate Notes whenever the Trustee may do so.  Each reference in this Indenture to authentication by the Trustee includes authentication by such agent.

In case the Issuer, pursuant to Article IV shall be consolidated or merged with or into any other Person or shall convey, transfer, lease or otherwise dispose of its properties and assets substantially as an entirety to any Person, and the successor Person resulting from such consolidation, or surviving such merger, or into which the Issuer shall have been merged, or the Person which shall have received a conveyance, transfer, lease or other disposition as aforesaid, shall have executed an indenture supplemental hereto with the Trustee pursuant to Article IV, any of the Notes authenticated or delivered prior to such consolidation, merger, conveyance, transfer, lease or other disposition may, from time to time, at the request of the successor Person, be exchanged for other Notes executed in the name of the successor Person with such changes in phraseology and form as may be appropriate, but otherwise in substance of like tenor as the Notes surrendered for such exchange and of like principal amount; and the Trustee, upon Issuer Order of the successor Person, shall authenticate and deliver Notes as specified in such order for

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

the purpose of such exchange. If Notes shall at any time be authenticated and delivered in any new name of a successor Person pursuant to this Section 2.2 in exchange or substitution for or upon registration of transfer of any Notes, such successor Person, at the option of the Holders but without expense to them, shall provide for the exchange of all Notes at the time outstanding for Notes authenticated and delivered in such new name.

SECTION 2.3.    Registrar and Paying Agent.  The Issuer shall maintain an office or agency where Notes may be presented for registration of transfer or for exchange (the "Registrar" or the "Transfer Agent") and an office or agency where Notes may be presented for payment (the "Paying Agent"). The Registrar shall keep a register of the Notes and of their transfer and exchange (the "Note Register"). The Issuer will also maintain a register of the Notes at its registered office, which in the case of discrepancy, shall prevail over the register maintained by the Registrar and references to the Note Register shall mean the register of notes maintained by the Issuer. The Issuer may have one registrar and one or more additional paying agents. The term "Paying Agent" includes any additional paying agent. The term "Transfer Agent" includes any additional transfer agent. The obligations of the Agents are several and not joint. The Agents act solely as agents of the Issuer.

The Issuer shall notify the Trustee in writing of the name and address of each such agent. If the Issuer fails to maintain a Registrar or Paying Agent, the Trustee may act as such and shall be entitled to appropriate compensation therefor pursuant to Section 7.7. The Issuer, the Company or any of its Wholly Owned Subsidiaries may act as Paying Agent, Registrar or Transfer Agent. The Issuer initially appoints Deutsche Bank AG, London Branch, as Principal Paying Agent and Common Depositary with respect to the Notes, and Deutsche Bank Luxembourg S.A., as Registrar and Transfer Agent with respect to the Notes. As long as the Notes remain outstanding, the Issuer shall, to the extent reasonably practicable and permitted as a matter of law, ensure that there is a Paying Agent in any country that is a Member State (if such a state exists) that will not be obliged to withhold or deduct tax (1) pursuant to U.S. law in the event Definitive Notes are issued or (2) pursuant to any European Union Directive (including Council Directive 2003/48/EC on the taxation of savings income) or any law implementing or complying with or introduced in order to conform to any such Directive. For the purpose of Luxembourg law, the Issuer will maintain the Note Register at its registered office, which in the case of discrepancy, shall prevail over the register maintained by the Registrar. In addition, for so long as the Notes are listed on the SGX-ST, or any other securities exchange, the Issuer will satisfy any requirement of such securities exchange as to paying agents. The Issuer may remove any Common Depositary, Registrar, Transfer Agent or Paying Agent upon written notice to such Common Depositary, Registrar, Transfer Agent or Paying Agent and to the Trustee; provided, however, that no such removal shall become effective until (i) acceptance of any appointment by a successor as evidenced by an appropriate agreement entered into by the Issuer and such successor Common Depositary, Registrar or Paying Agent, as the case may be, and delivered to the Trustee or (ii) notification to the Trustee that the Trustee shall serve as Common Depositary, Registrar, Transfer Agent or Paying Agent until the appointment of a successor in accordance with clause (i) above. The Common Depositary, Registrar, Transfer Agent or Paying Agent may resign at any time upon written notice to the Issuer and the Trustee. The Agents shall only be obliged to perform the duties set forth in this Indenture and shall have no implied duties.

confidential
Annie Li
Aug 25, 2015 21:20

confidential
Annie Li
Aug 25, 2015 21:20

SECTION 2.4.    Paying Agent To Hold Money in Trust.  By at least 12:00 p.m. (London time) one Business Day prior to the date on which any principal of (premium or additional amounts, if any) or interest on any Note is due and payable, the Issuer shall irrevocably deposit with the Paying Agent a sum sufficient in immediately available funds to pay such principal (premium or additional amounts, if any) or interest when due.  The Issuer shall require each Paying Agent (other than the Trustee) to agree in writing that such Paying Agent shall hold in trust for the benefit of the Holders or the Trustee all money held by such Paying Agent for the payment of principal of or interest on the Notes and shall notify the Trustee in writing of any default by the Issuer, the Company or any Subsidiary Guarantor in making any such payment.  If the Issuer, the Company or a Subsidiary acts as Paying Agent, it shall segregate the money held by it as Paying Agent and hold it as a separate trust fund.  The Issuer at any time may require a Paying Agent (other than the Trustee) to pay all money held by it to the Trustee and to account for any funds disbursed by such Paying Agent.  Upon complying with this Section, the Paying Agent (if other than the Issuer, the Company or a Subsidiary) shall have no further liability for the money delivered to the Trustee.  Upon any bankruptcy, reorganization or similar proceeding with respect to the Issuer, the Trustee shall serve as Paying Agent for the Notes.  However, no Agent shall be obliged to make payments to Holders until such time as it has received funds and has been able to identify or confirm receipt of funds.

SECTION 2.5.    Transfer and Exchange.

(a)    The following provisions shall apply with respect to any proposed transfer of a Rule 144A Note prior to the date which is one year after the later of the date of its original issue and the last date on which the Issuer or any Affiliate of the Issuer was the owner of such Notes (or any predecessor thereto) (the "Resale Restriction Termination Date"):

(i)    a transfer of a Rule 144A Note or a beneficial interest therein to a QIB shall be made upon the representation of the transferee in the form as set forth on the reverse of the Note that it is purchasing the Note for its own account or an account with respect to which it exercises sole investment discretion and that it and any such account is a "qualified institutional buyer" within the meaning of Rule 144A, and is aware that the sale to it is being made in reliance on Rule 144A and acknowledges that it has received such information regarding the Company and the Issuer as it has requested pursuant to Rule 144A or has determined not to request such information and that it is aware that the transferor is relying upon its foregoing representations in order to claim the exemption from registration provided by Rule 144A; and

(ii)    a transfer of a Rule 144A Note or a beneficial interest therein to a Non-U.S. Person shall be made upon receipt by the Trustee or its agent of a certificate substantially in the form set forth in Section 2.6 hereof from the proposed transferee and, if requested by the Company or the Trustee, the delivery of an opinion of counsel, certification and/or other information satisfactory to each of them.

(b)    The following provisions shall apply with respect to any proposed transfer of a Regulation S Note prior to the expiration of the Restricted Period:

confidential
Annie Li
Aug 25, 2015 21:20

us\WONGJA\7929518.7

Annie Li
Aug 25, 2015 21:20

(i)       a transfer of a Regulation S Note or a beneficial interest therein to a QIB shall be made upon the representation of the transferee, in the form of assignment on the reverse of the certificate, that it is purchasing the Note for its own account or an account with respect to which it exercises sole investment discretion and that it and any such account is a "qualified institutional buyer" within the meaning of Rule 144A, and is aware that the sale to it is being made in reliance on Rule 144A and acknowledges that it has received such information regarding the Company and the Issuer as the undersigned has requested pursuant to Rule 144A or has determined not to request such information and that it is aware that the transferor is relying upon its foregoing representations in order to claim the exemption from registration provided by Rule 144A; and

(ii)      transfer of a Regulation S Note or a beneficial interest therein to a Non-U.S. Person shall be made upon receipt by the Trustee or its agent of a certificate substantially in the form set forth in Section 2.6 hereof from the proposed transferee and, if requested by the Issuer or the Trustee, receipt by the Trustee or its agent of an opinion of counsel, certification and/or other information satisfactory to each of them.

After the expiration of the Restricted Period, interests in the Regulation S Note may be transferred in accordance with applicable law without requiring the certification set forth in Section 2.6 or any additional certification.

(c)       Restricted Notes Legend.  Upon the transfer, exchange or replacement of Notes not bearing a Restricted Notes Legend, the Registrar shall deliver Notes that do not bear a Restricted Notes Legend.  Upon the transfer, exchange or replacement of Notes bearing a Restricted Notes Legend, the Registrar shall deliver only Notes that bear such Restricted Notes Legend unless (i) an Initial Note is being transferred pursuant to an effective registration statement or (ii) there is delivered to the Registrar an Opinion of Counsel to the effect that neither such legend nor the related restrictions on transfer are required in order to maintain compliance with the provisions of the Securities Act.  Any Additional Notes sold in a registered offering shall not be required to bear the Restricted Notes Legend.

(d)       The Registrar shall retain copies of all letters, notices and other written communications received pursuant to Section 2.1 or this Section 2.5 in accordance with its records retention policy.  The Issuer shall have the right to inspect and make copies of all such letters, notices or other written communications at any reasonable time upon the giving of reasonable written notice to the Registrar.

(e)       Obligations with Respect to Transfers and Exchanges of Notes.

(i)       To permit registrations of transfers and exchanges, the Issuer shall, subject to the other terms and conditions of this Article II, execute and the Trustee shall authenticate Definitive Notes and Global Notes at the Registrar's request.

(ii)      No service charge shall be made to a Holder for any registration of transfer or exchange, but the Issuer may require payment of a sum sufficient to cover any transfer tax, assessments, or similar governmental charge payable in connection therewith

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

(other than any such transfer taxes, assessments or similar governmental charges payable upon exchange or transfer pursuant to Sections 3.7, 3.9 or 9.5).

(iii)    The Registrar shall not be required to register the transfer of or exchange of any Note for a period beginning (1) 15 Business Days before the mailing of a notice of an offer to repurchase Notes and ending at the close of business on the day of such mailing or (2) 15 Business Days before an interest payment date and ending on such interest payment date.

(iv)    Prior to the due presentation for registration of transfer of any Note, the Issuer, the Trustee, the Paying Agent, the Transfer Agent or the Registrar may deem and treat the Person in whose name a Note is registered as the absolute owner of such Note for the purpose of receiving payment of principal of (premium, if any) and interest on such Note and for all other purposes whatsoever, whether or not such Note is overdue, and none of the Issuer, the Trustee, the Paying Agent, the Transfer Agent or the Registrar shall be affected by notice to the contrary.

(v)    All Notes issued upon any transfer or exchange pursuant to the terms of this Indenture shall evidence the same debt and shall be entitled to the same benefits under this Indenture as the Notes surrendered upon such transfer or exchange.

(f)    No Obligation of the Trustee. (i) The Trustee shall have no responsibility or obligation to any beneficial owner of a Global Note, a member of, or a participant in, the Common Depositary, Euroclear, Clearstream or other Person with respect to the accuracy of the records of the Common Depositary, Euroclear, Clearstream or their nominee or of any participant or member thereof, with respect to any ownership interest in the Notes or with respect to the delivery to any participant, member, beneficial owner or other Person (other than the Common Depositary) of any notice or the payment of any amount or delivery of any Notes (or other security or property) under or with respect to such Notes. All notices and communications to be given to the Holders and all payments to be made to Holders in respect of the Notes shall be given or made only to or upon the order of the registered Holders (which shall be the Common Depositary, or its nominee, for Euroclear and Clearstream in the case of a Global Note). The rights of beneficial owners in any Global Note shall be exercised only through the Common Depositary subject to the applicable rules and procedures of the Common Depositary, Euroclear or Clearstream, as the case may be. The Trustee may rely and shall be fully protected in relying upon information furnished by the Common Depositary with respect to its members, participants and any beneficial owners.

(ii)    The Trustee shall have no obligation or duty to monitor, determine or inquire as to compliance with any restrictions on transfer imposed under this Indenture or under applicable law with respect to any transfer of any interest in any Note (including any transfers between or among Common Depositary participants, members or beneficial owners in any Global Note) other than, if the Trustee has received prior notice of a transfer, to require delivery of such certificates and other documentation or evidence as are expressly required by, and to do so if and when expressly required by, the terms of this Indenture, and to examine the same to determine substantial compliance as to form with the express requirements hereof.

- 44 -

confidential
Annie Li
Aug 25, 2015 21:20

confidential
Annie Li
Aug 25, 2015 21:20

SECTION 2.6.    Form of Certificate to be Delivered in Connection with Transfers Pursuant to Regulation S.

[Date]

Boardriders S.A.
9-11 rue Louvigny
L-1946 Luxembourg
Grand Duchy of Luxembourg
Attention: Board of Directors

and

Quiksilver, Inc.
15202 Graham Street
Huntington Beach, CA 92649
Attention: Chief Financial Officer

and

Deutsche Bank Luxembourg S.A.
2 boulevard Konrad Adenauer
L-115 Luxembourg
Grand Duchy of Luxembourg
Attention: Managing Director

> Re:    Boardriders S.A. (the "Issuer")
> 8.875% Senior Notes due 2017 (the "Notes")

Ladies and Gentlemen:

In connection with our proposed sale of €_____ aggregate principal amount of the Notes, we confirm that such sale has been effected pursuant to and in accordance with Regulation S under the United States Securities Act of 1933, as amended (the "Securities Act"), and, accordingly, we represent that:

(a)    the offer of the Notes was not made to a person in the United States;

(b)    either (i) at the time the buy order was originated, the transferee was outside the United States or we and any person acting on our behalf reasonably believed that the transferee was outside the United States or (ii) the transaction was executed in, on or through the facilities of a designated off-shore securities market and neither we nor any person acting on our behalf knows that the transaction has been pre-arranged with a buyer in the United States;

(c)    no directed selling efforts have been made in the United States in contravention of the requirements of Rule 903(a)(2) or Rule 904(a)(2) of Regulation S, as applicable; and

confidential
Annie Li
Aug 25, 2015 21:20

us\WONGJA\7929518.7

Annie Li
Aug 25, 2015 21:20

(d)    the transaction is not part of a plan or scheme to evade the registration requirements of the Securities Act.

In addition, if the sale is made during a restricted period and the provisions of Rule 903(b)(2) or Rule 904(b)(1) of Regulation S are applicable thereto, we confirm that such sale has been made in accordance with the applicable provisions of Rule 903(b)(2) or Rule 904(b)(1), as the case may be. You and the Issuer are entitled to rely upon this letter and are irrevocably authorized to produce this letter or a copy hereof to any interested party in any administrative or legal proceedings or official inquiry with respect to the matters covered hereby. Terms used in this certificate have the meanings set forth in Regulation S.

Very truly yours,

[Name of Transferor]

By: _____

Authorized Signature

SECTION 2.7.    Mutilated, Destroyed, Lost or Stolen Notes. If a mutilated Note is surrendered to the Registrar or if the Holder of a Note claims that the Note has been lost, destroyed or wrongfully taken, the Issuer shall issue and the Trustee, upon Issuer Order, shall authenticate a replacement Note. The Holder shall meet the requirements of Section 8-405 of the Uniform Commercial Code, such that the Holder (a) notifies the Issuer and the Trustee within a reasonable time after such Holder has notice of such loss, destruction or wrongful taking and the Registrar has not registered a transfer prior to receiving such notification, (b) makes such request to the Issuer prior to the Issuer having notice that the Note has been acquired by a protected purchaser as defined in Section 8-303 of the Uniform Commercial Code (a "protected purchaser") and (c) satisfies any other reasonable requirements of the Issuer and the Trustee. If required by the Issuer or the Trustee, such Holder shall furnish an indemnity bond sufficient in the judgment of the Issuer and the Trustee to protect the Issuer, the Trustee, the Paying Agent and the Registrar from any loss which any of them may suffer. If a Note is replaced, then, in the absence of notice to the Issuer, the Company, any Subsidiary Guarantor or the Trustee that such Note has been acquired by a protected purchaser, the Issuer shall execute and upon Issuer Order the Trustee shall authenticate and deliver, in exchange for any such mutilated Note or in lieu of any such destroyed, lost or stolen Note, a new Note of like tenor and principal amount, bearing a number not contemporaneously outstanding.

In case any such mutilated, destroyed, lost or stolen Note has become or is about to become due and payable, or is about to be redeemed or purchased by the Issuer pursuant to the terms of this Indenture, the Issuer in its discretion may, instead of issuing a new Note, pay, redeem or purchase such Note, as the case may be.

Upon the issuance of any new Note under this Section, the Issuer may require the payment of a sum sufficient to cover any tax or other governmental charge that may be imposed

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

in relation thereto and any other expenses (including the fees and expenses of the Trustee) in connection therewith.

Every new Note issued pursuant to this Section in lieu of any mutilated, destroyed, lost or stolen Note shall constitute an original additional contractual obligation of the Issuer, the Company, any Subsidiary Guarantor and any other obligor upon the Notes, whether or not the mutilated, destroyed, lost or stolen Note shall be at any time enforceable by anyone, and shall be entitled to all benefits of this Indenture equally and proportionately with any and all other Notes duly issued hereunder. The provisions of this Section are exclusive and shall preclude (to the extent lawful) all other rights and remedies with respect to the replacement or payment of mutilated, destroyed, lost or stolen Notes.

SECTION 2.8.    Outstanding Notes.  Notes outstanding at any time are all Notes authenticated by the Trustee except for those canceled by it, those paid pursuant to Section 2.7, those delivered to it for cancellation and those described in this Section as not outstanding.  A Note does not cease to be outstanding in the event the Issuer or an Affiliate of the Issuer holds the Note except that the Issuer or an Affiliate of the Issuer shall not obtain voting rights with respect to such Note.

If a Note is replaced pursuant to Section 2.7, it ceases to be outstanding unless the Trustee and the Issuer receive proof satisfactory to them that the replaced Note is held by a bona fide purchaser.

If the Paying Agent segregates and holds in trust, in accordance with this Indenture, on a maturity date money sufficient to pay all principal and interest payable on that date with respect to the Notes maturing and the Paying Agent is not prohibited from paying such money to the Holders on that date pursuant to the terms of this Indenture, then on and after that date such Notes cease to be outstanding and interest on them ceases to accrue.

SECTION 2.9.    Temporary Notes.  In the event that Definitive Notes are to be issued under the terms of this Indenture, until such Definitive Notes are ready for delivery, the Issuer may prepare and the Trustee shall authenticate temporary Notes.  Temporary Notes shall be substantially in the form of Definitive Notes but may have variations that the Issuer considers appropriate for temporary Notes.  Without unreasonable delay, the Issuer shall prepare and the Trustee shall authenticate Definitive Notes.  After the preparation of Definitive Notes, the temporary Notes shall be exchangeable for Definitive Notes upon surrender of the temporary Notes at any office or agency maintained by the Issuer for that purpose and such exchange shall be without charge to the Holder.  Upon surrender for cancellation of any one or more temporary Notes, the Issuer shall execute, and the Trustee shall authenticate and make available for delivery in exchange therefor, one or more Definitive Notes representing an equal principal amount of Notes.  Until so exchanged, the Holder of temporary Notes shall in all respects be entitled to the same benefits under this Indenture as a Holder of Definitive Notes.

SECTION 2.10.    Cancellation.  The Issuer at any time may deliver Notes to the Principal Paying Agent on behalf of the Trustee for cancellation.  The Registrar and the Paying Agent shall forward to the Trustee any Notes surrendered to them for registration of transfer, exchange or payment.  The Principal Paying Agent on behalf of the Trustee and no one else shall cancel

- 47 -

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

and return to the Issuer all Notes surrendered for registration of transfer, exchange, payment or cancellation. The Issuer may not issue new Notes to replace Notes it has paid or delivered to the Trustee for cancellation.

At such time as all beneficial interests in a Global Note have either been exchanged for Definitive Notes, transferred, redeemed, repurchased or canceled, such Global Note shall be returned by the Common Depositary to the Trustee for cancellation or retained and canceled by the Principal Paying Agent on behalf of the Trustee. At any time prior to such cancellation, if any beneficial interest in a Global Note is exchanged for Definitive Notes, transferred in exchange for an interest in another Global Note, redeemed, repurchased or canceled, the principal amount of Notes represented by such Global Note shall be reduced and an adjustment shall be made on the Global Note and on the books and records of the Principal Paying Agent (if it is then the Common Depositary for such Global Note) with respect to such Global Note, by the Trustee or the Common Depositary, to reflect such reduction.

SECTION 2.11. Payment of Interest; Defaulted Interest. Interest on any Note which is payable, and is punctually paid or duly provided for, on any interest payment date shall be paid to the Person in whose name such Note (or one or more predecessor Notes) is registered at the close of business on the regular record date for such interest at the office or agency of the Issuer maintained for such purpose pursuant to Section 2.3.

Any interest on any Note which is payable, but is not paid when the same becomes due and payable and such nonpayment continues for a period of 30 days shall forthwith cease to be payable to the Holder on the regular record date by virtue of having been such Holder, and such defaulted interest and (to the extent lawful) interest on such defaulted interest at the rate borne by the Notes (such defaulted interest and interest thereon herein collectively called "Defaulted Interest") shall be paid by the Issuer, at its election in each case, as provided in clause (a) or (b) below:

(a)      The Issuer may elect to make payment of any Defaulted Interest to the Persons in whose names the Notes (or their respective predecessor Notes) are registered at the close of business on a Special Record Date (as defined below) for the payment of such Defaulted Interest, which shall be fixed in the following manner. The Issuer shall notify the Trustee in writing of the amount of Defaulted Interest proposed to be paid on each Note and the date (not less than 30 days after such notice) of the proposed payment (the "Special Interest Payment Date"), and at the same time the Issuer shall deposit with the Trustee an amount of money equal to the aggregate amount proposed to be paid in respect of such Defaulted Interest or shall make arrangements satisfactory to the Trustee for such deposit prior to the date of the proposed payment, such money when deposited to be held in trust for the benefit of the Persons entitled to such Defaulted Interest as in this clause provided. Thereupon, the Trustee shall fix a record date (the "Special Record Date") for the payment of such Defaulted Interest, which shall be not more than 15 days and not less than 10 days prior to the Special Interest Payment Date and not less than 10 days after the receipt by the Trustee of the notice of the

- 48 -

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

proposed payment. The Trustee shall promptly notify the Issuer of such Special Record Date, and in the name and at the expense of the Issuer, shall cause notice of the proposed payment of such Defaulted Interest and the Special Record Date and Special Interest Payment Date therefor to be given in the manner provided for in Section 11.2, not less than 10 days prior to such Special Record Date. Notice of the proposed payment of such Defaulted Interest and the Special Record Date and Special Interest Payment Date therefor having been so given, such Defaulted Interest shall be paid on the Special Interest Payment Date to the Persons in whose names the Notes (or their respective predecessor Notes) are registered at the close of business on such Special Record Date and shall no longer be payable pursuant to the following clause (b).

(b)     The Issuer may make payment of any Defaulted Interest in any other lawful manner not inconsistent with the requirements of any securities exchange on which the Notes may be listed, and upon such notice as may be required by such exchange, if, after notice given by the Issuer to the Trustee of the proposed payment pursuant to this clause, such manner of payment shall be deemed practicable by the Trustee.

Subject to the foregoing provisions of this Section, each Note delivered under this Indenture upon registration of transfer of or in exchange for or in lieu of any other Note shall carry the rights to interest accrued and unpaid, and to accrue, which were carried by such other Note.

SECTION 2.12.   Computation of Interest. Interest on the Notes shall be computed on the basis of a 360-day year of twelve 30-day months.

SECTION 2.13.   Common Code and ISINs. The Issuer in issuing the Notes may use "Common Code" or "ISIN" numbers (if then generally in use). The Trustee shall not be responsible for the use of Common Code or ISIN numbers and neither the Trustee nor the Agents makes any representation as to their correctness as printed on any Note or notice to Holders and that reliance may be placed only on the other identification numbers printed on the Notes, and any redemption shall not be affected by any defect in or omission of such Common Code or ISIN numbers. The Issuer shall promptly notify the Trustee and the Agents in writing of any change in the Common Code or ISIN numbers.

SECTION 2.14.   Judgment Currency. Any payment on account of an amount that is payable in Euros (the "Required Currency") which is made to or for the account of any Holder or the Trustee in the lawful currency of any other jurisdiction (the "Judgment Currency"), whether as a result of any judgment or order or the enforcement thereof or the liquidation of the Issuer, shall constitute a discharge of the Issuer's obligation under this Indenture or the Notes, as the case may be, only to the extent of the amount of the Required Currency which such Holder or the Trustee, as the case maybe, could purchase in the London foreign exchange markets with the amount of the Judgment Currency in accordance with normal banking procedures at the rate of exchange prevailing on the first Business Day following receipt of the payment in the Judgment Currency. If the amount of the Required Currency that could be so purchased is less than the

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

amount of the Required Currency originally due to such Holder or the Trustee, as the case may be, and the Issuer shall indemnify and hold harmless the Holder or the Trustee, as the case may be, from and against all loss or damage arising out of, or as a result of, such deficiency. This indemnity shall constitute an obligation separate and independent from the other obligations contained in this Indenture or the Notes, and shall give rise to a separate and independent cause of action, shall apply irrespective of any waiver granted by any Holder or the Trustee from time to time and shall continue in full force and effect notwithstanding any judgment or order for a liquidated sum in respect of an amount due hereunder or under any judgment or order.

## ARTICLE III

### Covenants

SECTION 3.1.    Payment of Notes. The Issuer shall promptly pay the principal of and interest on the Notes on the dates and in the manner provided in the Notes and in this Indenture. Principal and interest shall be considered paid on the date due if on such date the Trustee or the Paying Agent holds in accordance with this Indenture money sufficient to pay all principal and interest then due and the Trustee or the Paying Agent, as the case may be, is not prohibited from paying such money to the Holders on that date pursuant to the terms of this Indenture.

The Issuer shall pay interest on overdue principal at the rate specified therefor in the Notes, and it shall pay interest on overdue installments of interest at the same rate to the extent lawful.

SECTION 3.2.    SEC Reports. Notwithstanding that the Company may not be subject to the reporting requirements of Section 13 or 15(d) of the Exchange Act, to the extent permitted by the Exchange Act, the Company shall file with the SEC, and make available to the Trustee and the Holders, the annual reports and the information, documents and other reports (or copies of such portions of any of the foregoing as the SEC may by rules and regulations prescribe) that are specified in Sections 13 and 15(d) of the Exchange Act within the time periods specified therein. In the event that the Company is not permitted to file such reports, documents and information with the SEC pursuant to the Exchange Act, the Company shall nevertheless make available such Exchange Act information to the Trustee and the Holders as if the Company were subject to the reporting requirements of Section 13 or 15(d) of the Exchange Act within the time periods specified therein.

If the Company has designated any of its Subsidiaries as Unrestricted Subsidiaries, then the quarterly and annual financial information required by the preceding paragraph shall include a reasonably detailed presentation, either on the face of the financial statements or in the footnotes to the financial statements and in Management's Discussion and Analysis of Results of Operations and Financial Condition, of the financial condition and results of operations of the Company and its Restricted Subsidiaries.

SECTION 3.3.    Limitation on Indebtedness. (a) The Issuer and the Company shall not, and the Company shall not permit any of its Restricted Subsidiaries to, Incur any Indebtedness (including Acquired Indebtedness); provided, however, that the Issuer, the Company or any Subsidiary Guarantor may Incur Indebtedness if on the date thereof:

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

(1)    the Consolidated Coverage Ratio for the Issuer, the Company and its Restricted Subsidiaries is at least 2.0 to 1.0; and

(2)    no Default or Event of Default shall have occurred or be continuing or shall occur as a consequence of Incurring the Indebtedness or transactions relating to such Incurrence.

(b)    The foregoing paragraph (a) shall not prohibit the Incurrence of the following Indebtedness:

(1)    Indebtedness of the Issuer, the Company or any Subsidiary Guarantor Incurred pursuant to a Credit Facility, together with the principal component of amounts outstanding under Qualified Receivables Transactions, in an aggregate amount up to the greater of (a) the Borrowing Base, less the aggregate principal amount of Indebtedness outstanding at any one time under clause (11), and (b) $300,000,000, in each case, less the aggregate principal amount of repayments with the proceeds from Asset Dispositions that are required under this Indenture to reduce permanently the revolving commitments under a Credit Facility and Guarantees of Restricted Subsidiaries in respect of the Indebtedness Incurred pursuant to a Credit Facility under this clause (1);

(2)    Guarantees by the Issuer, the Company or any Subsidiary Guarantor of Indebtedness Incurred in accordance with the provisions of this Indenture; provided that in the event such Indebtedness that is being Guaranteed is a Subordinated Obligation or a Guarantor Subordinated Obligation, then the related Guarantee shall be subordinated in right of payment to the Notes or the Notes Guarantee, as the case may be;

(3)    Indebtedness of the Issuer owing to and held by the Company or any Restricted Subsidiary (other than a Receivables Entity), Indebtedness of the Company owing to and held by the Issuer or any Restricted Subsidiary (other than a Receivables Entity) and Indebtedness of a Restricted Subsidiary owing to and held by the Issuer, the Company or any other Restricted Subsidiary (other than a Receivables Entity); provided, however,

(a)    if the Issuer is the obligor on such Indebtedness and the Company or a Subsidiary Guarantor is not the obligee, such Indebtedness is expressly subordinated to the prior payment in full in cash of all obligations with respect to the Notes;

(b)    if the Company or a Subsidiary Guarantor is the obligor on such Indebtedness and the Issuer, the Company or a Subsidiary Guarantor is not the obligee, such Indebtedness constitutes a Guarantor Subordinated Obligation; and

(c)    (i) any subsequent issuance or transfer of Capital Stock or any other event which results in any such Indebtedness being beneficially held by a Person other than the Issuer, the Company or a

- 51 -

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

Restricted Subsidiary (other than a Receivables Entity) of the Company; and

(ii)    any sale or other transfer of any such Indebtedness to a Person other than the Issuer, the Company or a Restricted Subsidiary (other than a Receivables Entity) of the Company shall be deemed, in each case, to constitute an Incurrence of such Indebtedness by the Issuer, the Company or such Subsidiary, as the case may be.

(4)    (a) Indebtedness represented by the Notes on the Issue Date and the related Notes Guarantees, (b) any Indebtedness (other than the Indebtedness described in clauses (1), (2), (3), (6), (8), (9), (10) and (11)) outstanding on the Issue Date, (c) any Indebtedness Incurred with respect to a Qualified Receivables Transaction outstanding on the Issue Date and (d) any Refinancing Indebtedness Incurred in respect of any Indebtedness described in this clause (4) or clause (5) or Incurred pursuant to Section 3.3(a);

(5)    Indebtedness of a Subsidiary Guarantor Incurred and outstanding on the date on which such Subsidiary Guarantor was acquired directly or indirectly by the Issuer, the Company or a Restricted Subsidiary and Indebtedness of a Non-Guarantor Subsidiary Incurred and outstanding on the date on which such Non-Guarantor Subsidiary was acquired directly or indirectly by the Issuer, the Company or a Restricted Subsidiary (other than Indebtedness Incurred (a) to provide all or any portion of the funds utilized to consummate the transaction or series of related transactions pursuant to which such Subsidiary Guarantor or Non-Guarantor Subsidiary, as the case may be, became a Subsidiary Guarantor or Non-Guarantor Subsidiary, as the case may be, or was otherwise acquired by the Issuer or the Company or (b) otherwise in connection with, or in contemplation of, such acquisition); provided, however, that at the time such Subsidiary Guarantor is acquired by the Issuer, the Company or such Restricted Subsidiary, the Company would have been able to Incur $1.00 of additional Indebtedness pursuant to Section 3.3(a) after giving effect to the Incurrence of such Indebtedness pursuant to this clause (5) or, in the case of an acquisition of a Non-Guarantor Subsidiary, such Non-Guarantor Subsidiary would have been able to Incur $1.00 of additional Indebtedness pursuant to clause (11) after giving effect to the Incurrence of such Indebtedness pursuant to this clause (5);

(6)    Indebtedness under Currency Agreements, Interest Rate Agreements and Commodity Agreements; provided, however, that (i) in the case of Currency Agreements and Commodity Agreements, such Currency Agreements and Commodity Agreements are related to business transactions of the Issuer, the Company or its Restricted Subsidiaries entered into in the ordinary course of business or (ii) in the case of Currency Agreements, Interest Rate Agreements and Commodity Agreements, such Currency Agreements, Interest Rate Agreements and Commodity Agreements are entered into for bona fide hedging purposes of the Issuer, the Company or its Restricted Subsidiaries (as determined in good faith by the Company) and substantially correspond in terms of notional amount, duration, currencies and interest rates, as applicable, to Indebtedness of

- 52 -

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

the Issuer, the Company or its Restricted Subsidiaries permitted to be Incurred without violation of this Indenture;

(7)    the Incurrence by the Issuer, the Company or any Subsidiary Guarantor of Indebtedness represented by Capitalized Lease Obligations, mortgage financings or purchase money obligations with respect to assets other than Capital Stock or other Investments, in each case Incurred for the purpose of financing all or any part of the purchase price or cost of construction or improvements of property used in the business of the Issuer, the Company or such Subsidiary Guarantor, in an aggregate principal amount not to exceed the greater of 4.0% of the Company's Consolidated Tangible Assets and $50,000,000 outstanding at any one time;

(8)    Indebtedness Incurred in respect of workers' compensation claims, self-insurance obligations, performance, surety and similar bonds and completion guarantees provided by the Issuer, the Company or a Restricted Subsidiary in the ordinary course of business;

(9)    Indebtedness arising from agreements of the Issuer, the Company or a Restricted Subsidiary providing for indemnification, adjustment of purchase price, deferred purchase price (to the extent not reflected as a liability on the consolidated financial statements of the Company in accordance with GAAP) or similar obligations, in each case, Incurred or assumed in connection with the acquisition or disposition of any business, assets or Capital Stock of a Restricted Subsidiary in accordance with the terms of this Indenture, other than Guarantees by the Issuer, the Company or any Restricted Subsidiary of Indebtedness Incurred by any Person acquiring all or any portion of such business, assets or a Subsidiary of the Company for the purpose of financing such acquisition, provided that, in the case of a disposition, the maximum aggregate liability in respect of all such Indebtedness shall at no time exceed the gross proceeds (including all cash and non-cash proceeds (the fair market value of which shall be determined in good faith by the Company)) actually received by the Issuer, the Company and its Restricted Subsidiaries in connection with such disposition;

(10)    Indebtedness arising from the honoring by a bank or other financial institution of a check, draft or similar instrument (except in the case of daylight overdrafts) drawn against insufficient funds in the ordinary course of business, provided, however, that such Indebtedness is extinguished within seven Business Days of Incurrence;

(11)    Indebtedness of Non-Guarantor Subsidiaries in an amount which, when taken together with the principal amount of all other Indebtedness Incurred pursuant to this clause (11) and then outstanding, does not exceed the greater of 4.0% of the Company's Consolidated Tangible Assets and $50,000,000 outstanding at any one time, in each case, less the aggregate principal amount of Indebtedness of a Non-Guarantor Subsidiary Incurred (x) pursuant to clause (5) of this Section 3.3(b) and (y) pursuant to clause (4) of this Section 3.3(b) to refinance Indebtedness Incurred pursuant to clause (5) of this Section 3.3(b);

- 53 -

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

(12)    Indebtedness of the Issuer, the Company or any Restricted Subsidiary to the extent that the net proceeds thereof are used substantially contemporaneously (i) to redeem the Notes (and any Additional Notes, if any) in full or (ii) to defease or discharge the Notes (and any Additional Notes, if any) in full, in each case in accordance with the terms of this Indenture;

(13)    Indebtedness of the Issuer, the Company or a Subsidiary Guarantor incurred to finance an acquisition, provided that, after giving effect to the Incurrence of such Indebtedness pursuant to this clause (13), either (a) the Issuer, the Company or such Restricted Subsidiary would have been able to Incur $1.00 of additional Indebtedness pursuant to Section 3.3(a) or (b) the Consolidated Coverage Ratio for the Issuer, the Company and its Restricted Subsidiaries would not be less than immediately prior to such transaction; and

(14)    in addition to the items referred to in clauses (1) through (13) above, Indebtedness of the Issuer, the Company or any Subsidiary Guarantor Incurred after the Issue Date in an aggregate outstanding principal amount which, when taken together with the principal amount of all other Indebtedness Incurred pursuant to this clause (14) and then outstanding, shall not exceed the greater of 4.0% of the Company's Consolidated Tangible Assets and $50,000,000 outstanding at any one time.

(c)    The Issuer shall not Incur any Indebtedness under the preceding paragraph if the proceeds thereof are used, directly or indirectly, to refinance any Subordinated Obligations of the Issuer unless such Indebtedness shall be subordinated to the Notes to at least the same extent as such Subordinated Obligations. Neither the Company nor any Subsidiary Guarantor shall Incur any Indebtedness under Section 3.3(b) if the proceeds thereof are used, directly or indirectly, to refinance any Guarantor Subordinated Obligations of the Company or such Subsidiary Guarantor, as the case may be, unless such Indebtedness shall be subordinated to the obligations of the Company or such Subsidiary Guarantor, as the case may be, under its Notes Guarantee to at least the same extent as such Guarantor Subordinated Obligations. No Restricted Subsidiary that is not a Subsidiary Guarantor may Incur any Indebtedness if the proceeds are used to refinance Indebtedness of the Issuer, the Company or any Subsidiary Guarantor.

(d)    The Issuer and the Company shall not, directly or indirectly, Incur, or permit any Subsidiary Guarantor to Incur, any Indebtedness which by its terms (or by the terms of any agreement governing such Indebtedness) is expressly subordinated in right of payment to any other Indebtedness of the Issuer, the Company or such Subsidiary Guarantor, as the case may be, unless such Indebtedness is also by its terms (or the by the terms of any agreement governing such Indebtedness) made expressly subordinate to the Notes, in the case of the Issuer, or the Notes Guarantees, in the case of the Company or a Subsidiary Guarantor, to the same extent and the same manner as such Indebtedness is subordinated to other Indebtedness of the Issuer, the Company or such Subsidiary Guarantor. For purposes of the foregoing, no Indebtedness shall be deemed to be subordinated in right of payment to any other Indebtedness solely by virtue of such Indebtedness being unsecured or by virtue of the fact that the holders of such Indebtedness have entered into one or more intercreditor agreements giving one or more of such holders priority over the other holders in the collateral held by them.

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

(e)     For purposes of determining compliance with, and the outstanding principal amount of any particular Indebtedness Incurred pursuant to and in compliance with, this Section 3.3:

(1)     in the event that Indebtedness meets the criteria of more than one of the types of Indebtedness described in paragraphs (a) and (b) of this Section 3.3, the Issuer, in its sole discretion, may classify such item of Indebtedness on the date of Incurrence and only be required to include the amount and type of such Indebtedness in one of such paragraphs, or later classify or reclassify all or a portion of such Indebtedness, in any manner that complies with this Section 3.3; provided that, the Issuer shall not be able to reclassify Indebtedness Incurred under clause (1) of paragraph (b) of this Section 3.3;

(2)     all Indebtedness outstanding on the date of this Indenture under the Revolving Credit Facility shall be deemed initially Incurred on the Issue Date under clause (1) of paragraph (b) of this Section 3.3 and not paragraph (a) or clause (4) of paragraph (b) of this Section 3.3;

(3)     Guarantees of, or obligations in respect of letters of credit relating to, Indebtedness which is otherwise included in the determination of a particular amount of Indebtedness shall not be included;

(4)     if obligations in respect of letters of credit are Incurred pursuant to a Credit Facility and are being treated as Incurred pursuant to clause (1) of paragraph (b) of this Section 3.3 and the letters of credit relate to other Indebtedness, then such other Indebtedness shall not be included;

(5)     the principal amount of any Disqualified Stock of the Issuer, the Company or a Restricted Subsidiary, or Preferred Stock of a Restricted Subsidiary that is not a Subsidiary Guarantor, shall be equal to the greater of the maximum mandatory redemption or repurchase price (not including, in either case, any redemption or repurchase premium) or the liquidation preference thereof;

(6)     Indebtedness permitted by this Section 3.3 need not be permitted solely by reference to one provision permitting such Indebtedness but may be permitted in part by one such provision and in part by one or more other provisions of this Section 3.3 permitting such Indebtedness; and

(7)     the amount of Indebtedness issued at a price that is less than the principal amount thereof shall be equal to the amount of the liability in respect thereof determined in accordance with GAAP.

(f)     Accrual of interest, accrual of dividends, the accretion of accreted value, the payment of interest in the form of additional Indebtedness and the payment of dividends in the form of additional shares of Preferred Stock or Disqualified Stock shall not be deemed to be an Incurrence of Indebtedness for purposes of this Section 3.3. The amount of any Indebtedness outstanding as of any date shall be (i) the accreted value thereof in the case of any Indebtedness issued with original issue discount and (ii) the principal amount or liquidation preference thereof,

- 55 -

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

together with any interest thereon that is more than 30 days past due, in the case of any other Indebtedness.

(g)     In addition, the Company shall not permit any of its Unrestricted Subsidiaries to Incur any Indebtedness or issue any shares of Disqualified Stock, other than Non-Recourse Debt.  If at any time an Unrestricted Subsidiary becomes a Restricted Subsidiary, any Indebtedness of such Subsidiary shall be deemed to be Incurred by a Restricted Subsidiary of the Company as of such date (and, if such Indebtedness is not permitted to be Incurred as of such date under this Section 3.3, the Company shall be in Default of this Section 3.3).

(h)     For purposes of determining compliance with any U.S. dollar-denominated restriction on the Incurrence of Indebtedness, the U.S. dollar-equivalent principal amount of Indebtedness denominated in a foreign currency shall be calculated based on the relevant currency exchange rate in effect on the date such Indebtedness was Incurred, in the case of term Indebtedness, or first committed, in the case of revolving credit Indebtedness; provided that if such Indebtedness is Incurred to refinance other Indebtedness denominated in a foreign currency, and such refinancing would cause the applicable U.S. dollar-dominated restriction to be exceeded if calculated at the relevant currency exchange rate in effect on the date of such refinancing, such U.S. dollar-dominated restriction shall be deemed not to have been exceeded so long as the principal amount of such refinancing Indebtedness does not exceed the principal amount of such Indebtedness being refinanced.  Notwithstanding any other provision of this Section 3.3, the maximum amount of Indebtedness that the Issuer, the Company or a Restricted Subsidiary may Incur pursuant to this Section 3.3 shall not be deemed to be exceeded solely as a result of fluctuations in the exchange rate of currencies.  The principal amount of any Indebtedness Incurred to refinance other Indebtedness, if Incurred in a different currency from the Indebtedness being refinanced, shall be calculated based on the currency exchange rate applicable to the currencies in which such Refinancing Indebtedness is denominated that is in effect on the date of such refinancing.

SECTION 3.4.    Limitation on Restricted Payments.  (a) The Issuer and the Company shall not, and the Company shall not permit any of its Restricted Subsidiaries, directly or indirectly, to:

(1)     declare or pay any dividend or make any distribution on or in respect of its Capital Stock (including any payment in connection with any merger or consolidation involving the Issuer, the Company or any of its Restricted Subsidiaries) except:

(a) dividends or distributions payable solely in the Capital Stock of the Company (other than Disqualified Stock) or in options, warrants or other rights to purchase such Capital Stock of the Company; and

(b) dividends or distributions payable to the Issuer, the Company or a Restricted Subsidiary of the Company (and if such Restricted Subsidiary is not a Wholly Owned Subsidiary, to its other holders of Capital Stock on a pro rata basis);

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

(2)     purchase, redeem, retire or otherwise acquire for value any Capital Stock of the Company or any direct or indirect parent of the Company held by Persons other than the Issuer, the Company or a Restricted Subsidiary of the Company (other than in exchange for Capital Stock of the Company (other than Disqualified Stock));

(3)     purchase, repurchase, redeem, defease or otherwise acquire or retire for value, prior to scheduled maturity, scheduled repayment or scheduled sinking fund payment, any Subordinated Obligations or Guarantor Subordinated Obligations (other than the purchase, repurchase, redemption, defeasance or other acquisition or retirement of Subordinated Obligations or Guarantor Subordinated Obligations purchased in anticipation of satisfying a sinking fund obligation, principal installment or final maturity, in each case due within one year of the date of purchase, repurchase, redemption, defeasance or other acquisition or retirement); or

(4) make any Restricted Investment in any Person;

(any such dividend, distribution, purchase, redemption, repurchase, defeasance, other acquisition, retirement or Restricted Investment referred to in clauses (1) through (4) shall be referred to herein as a "Restricted Payment"), if at the time the Company or such Restricted Subsidiary makes such Restricted Payment:

(a)     a Default shall have occurred and be continuing (or would result therefrom); or

(b)     the Company is not able to Incur an additional $1.00 of Indebtedness pursuant to paragraph (a) of Section 3.3 after giving effect, on a pro forma basis, to such Restricted Payment; or

(c)     the aggregate amount of such Restricted Payment and all other Restricted Payments declared or made subsequent to the Issue Date would exceed the sum of:

(i)     50% of the Consolidated Net Income for the period (treated as one accounting period) beginning November 1, 2010 to the end of the most recent fiscal quarter ending prior to the date of such Restricted Payment for which financial statements are in existence (or, in case such Consolidated Net Income is a deficit, minus 100% of such deficit);

(ii)     100% of the aggregate Net Cash Proceeds and the fair market value (as determined in good faith by the Company) of non-cash consideration received by the Company from the issue or sale of its Capital Stock (other than Disqualified Stock) or other capital contributions subsequent to the Issue Date (other than Net Cash Proceeds received from an issuance or sale of such Capital Stock to a Subsidiary of the Company or an employee stock ownership plan, option plan or similar trust to the extent such sale to an employee stock ownership plan or similar trust is financed by loans from or Guaranteed by the Issuer, the Company or any Restricted Subsidiary unless such loans have been repaid with cash on or prior to the date of determination);

- 57 -

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

(iii)      the amount by which Indebtedness of the Issuer, the Company or its Restricted Subsidiaries is reduced on the Company's balance sheet upon the conversion or exchange (other than by a Subsidiary of the Company) subsequent to the Issue Date of any Indebtedness of the Issuer, the Company or its Restricted Subsidiaries convertible or exchangeable for Capital Stock (other than Disqualified Stock) of the Company (less the amount of any cash, or the fair market value (as determined in good faith by the Company) of any other property, distributed by the Company upon such conversion or exchange); and

(iv)      the amount equal to the net reduction in Restricted Investments made by the Issuer, the Company or any of its Restricted Subsidiaries in any Person resulting from:

> (A) repurchases or redemptions of such Restricted Investments by such Person, proceeds realized upon the sale of such Restricted Investment to an unaffiliated purchaser, repayments of loans or advances or other transfers of assets (including by way of dividend or distribution) by such Person to the Issuer, the Company or any Restricted Subsidiary; or

> (B) the redesignation of Unrestricted Subsidiaries as Restricted Subsidiaries (valued, in each case, as provided in the definition of "Investment") not to exceed, in the case of any Unrestricted Subsidiary, the amount of Investments previously made by the Issuer, the Company or any Restricted Subsidiary in such Unrestricted Subsidiary, which amount in each case under this clause (iv) was included in the calculation of the amount of Restricted Payments; provided, however, that no amount shall be included under this clause (iv) to the extent it is already included in Consolidated Net Income.

The provisions of the preceding paragraph shall not prohibit:

(1)      any purchase, repurchase, redemption, defeasance or other acquisition or retirement of Capital Stock or Disqualified Stock of the Company, or Subordinated Obligations of the Issuer or Guarantor Subordinated Obligations of the Company or any Subsidiary Guarantor made by exchange for, or out of the proceeds of the sale of, Capital Stock of the Company (other than Disqualified Stock and other than Capital Stock issued or sold to a Subsidiary or an employee stock ownership plan or similar trust to the extent such sale to an employee stock ownership plan or similar trust is financed by loans from or Guaranteed by the Issuer, the Company or any Restricted Subsidiary unless such loans have been repaid with cash on or prior to the date of determination) within 60 days of such sale; provided, however, that (a) such purchase, repurchase, redemption, defeasance, acquisition or retirement shall be excluded in subsequent calculations of the amount of Restricted Payments and (b) the Net Cash Proceeds from such

- 58 -

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

sale of Capital Stock shall be excluded from clause (c)(ii) of the preceding paragraph;

(2)  any purchase, repurchase, redemption, defeasance or other acquisition or retirement of Subordinated Obligations of the Issuer or Guarantor Subordinated Obligations of the Company or any Subsidiary Guarantor made by exchange for, or out of the proceeds of the sale of, Subordinated Obligations of the Issuer within 60 days of such sale or any purchase, repurchase, redemption, defeasance or other acquisition or retirement of Guarantor Subordinated Obligations made by exchange for or out of the proceeds of the sale of Guarantor Subordinated Obligations within 60 days of such sale that, in each case, is permitted to be Incurred pursuant to Section 3.3 and that in each case constitutes Refinancing Indebtedness; provided, however, that such purchase, repurchase, redemption, defeasance, acquisition or retirement shall be excluded in subsequent calculations of the amount of Restricted Payments;

(3)  any purchase, repurchase, redemption, defeasance or other acquisition or retirement of Disqualified Stock of the Issuer, the Company or a Restricted Subsidiary made by exchange for or out of the proceeds of the sale of Disqualified Stock of the Issuer, the Company or such Restricted Subsidiary, as the case may be, within 60 days of such sale that, in each case, is permitted to be Incurred pursuant to Section 3.3 and that in each case constitutes Refinancing Indebtedness; provided, however, that such purchase, repurchase, redemption, defeasance, acquisition or retirement shall be excluded in subsequent calculations of the amount of Restricted Payments;

(4)  so long as no Default or Event of Default has occurred and is continuing, any purchase or redemption of Subordinated Obligations or Guarantor Subordinated Obligations of the Company or a Subsidiary Guarantor from Net Available Cash to the extent permitted under Section 3.7; provided, however, that such purchase or redemption shall be excluded in subsequent calculations of the amount of Restricted Payments;

(5)  dividends paid within 60 days after the date of declaration if at such date of declaration such dividends would have complied with this provision; provided, however, that such dividends shall be included in subsequent calculations of the amount of Restricted Payments;

(6)  so long as no Default or Event of Default has occurred and is continuing,

(a)  the purchase, redemption or other acquisition, cancellation or retirement for value of Capital Stock, or options, warrants, equity appreciation rights or other rights to purchase or acquire Capital Stock of the Issuer, the Company or any Restricted Subsidiary of the Company or any parent of the Company held by any existing or former employees or management of the Company or any Subsidiary of the Company or their

confidential
Annie Li
Aug 25, 2015 21:20

confidential
Annie Li
Aug 25, 2015 21:20

assigns, estates or heirs, in each case in connection with the repurchase provisions under employee stock option or stock purchase agreements or other agreements to compensate management employees; provided that such redemptions or repurchases pursuant to this clause shall not exceed $5,000,000 in the aggregate during any calendar year and $20,000,000 in the aggregate for all such redemptions and repurchases; provided, however, that the amount of any such repurchase or redemption shall be included in subsequent calculations of the amount of Restricted Payments; and

(b)      to the extent permitted by law, loans or advances to employees of the Company or any Subsidiary of the Company the proceeds of which are used to purchase Capital Stock of the Company (other than Disqualified Stock), in an aggregate amount not in excess of $5,000,000 at any one time outstanding; provided, however, that the amount of such loans and advances shall be included in subsequent calculations of the amount of Restricted Payments;

(7)      so long as no Default or Event of Default has occurred and is continuing, the declaration and payment of dividends to holders of any class or series of Disqualified Stock of the Company issued in accordance with the terms of this Indenture to the extent such dividends are included in the definition of "Consolidated Interest Expense"; provided that the payment of such dividends shall be excluded in subsequent calculations of the amount of Restricted Payments;

(8)      repurchases of Capital Stock deemed to occur upon the exercise of stock options, warrants or other convertible securities if such Capital Stock represents a portion of the exercise price thereof; provided, however, that such repurchases shall be excluded from subsequent calculations of the amount of Restricted Payments;

(9)      the purchase, repurchase, redemption, defeasance or other acquisition or retirement for value of any Subordinated Obligation (i) at a purchase price not greater than 101% of the principal amount of such Subordinated Obligation in the event of a Change of Control in accordance with provisions similar to Section 3.9 or (ii) at a purchase price not greater than 100% of the principal amount thereof in accordance with provisions similar to Section 3.7; provided that, prior to or simultaneously with such purchase, repurchase, redemption, defeasance or other acquisition or retirement, the Issuer has made the Change of Control Offer or Asset Disposition Offer, as applicable, as provided in Section 3.9 or Section 3.7, respectively, with respect to the Notes and has completed the repurchase or redemption of all Notes validly tendered for payment in connection with such Change of Control Offer or Asset Disposition Offer; provided, however, that such payment shall be included in subsequent calculations of the amount of Restricted Payments;

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

(10)    the distribution or payment of Receivables Fees; and

(11)    Restricted Payments in an amount not to exceed $25,000,000; provided that the amount of such Restricted Payments shall be excluded in subsequent calculations of the amount of Restricted Payments.

The amount of all Restricted Payments (other than cash) shall be the fair market value on the date of such Restricted Payment of the asset(s) or securities proposed to be paid, transferred or issued by the Issuer, the Company or such Restricted Subsidiary, as the case may be, pursuant to such Restricted Payment. The fair market value of any cash Restricted Payment shall be its face amount and the fair market value of any non-cash Restricted Payment shall be determined by the Company in good faith, such determination to be based upon an opinion or appraisal issued by an accounting, appraisal or investment banking firm of national standing in the United States if such fair market value is estimated in good faith by the Company to exceed $25,000,000. Not later than the date of making any Restricted Payment in excess of $10,000,000, the Issuer shall deliver to the Trustee an Officer's Certificate stating that such Restricted Payment is permitted and setting forth the basis upon which the calculations required by Section 3.4 were computed, together with a copy of any fairness opinion or appraisal required by this Indenture.

SECTION 3.5.    Limitation on Liens. The Issuer and the Company shall not, and the Company shall not permit any of its Restricted Subsidiaries to, directly or indirectly, create, Incur or permit to exist any Lien (other than Permitted Liens) upon any of its property or assets (including Capital Stock of the Issuer and Restricted Subsidiaries), whether owned on the date of this Indenture or acquired after that date, which Lien secures any Indebtedness, unless contemporaneously with the Incurrence of such Liens effective provision is made to secure the obligations under this Indenture and Indebtedness represented by the Notes or, in respect of Liens on the Company's or any Restricted Subsidiary's property or assets, any Notes Guarantee of the Company or such Restricted Subsidiary, as the case may be, equally and ratably with (or prior to in the case of Liens with respect to Subordinated Obligations or Guarantor Subordinated Obligations, as the case may be) the Indebtedness secured by such Lien for so long as such Indebtedness is so secured. For the avoidance of doubt, any Lien created for the benefit of the holders of the Notes pursuant to this covenant shall be deemed automatically and unconditionally released and discharged upon the release and discharge of the Lien which led to such creation.

SECTION 3.6.    Limitation on Restrictions on Distributions from Restricted Subsidiaries. (a) The Issuer and the Company shall not, and the Company shall not permit any of its Restricted Subsidiaries to, create or otherwise cause or permit to exist or become effective any consensual encumbrance or consensual restriction on the ability of the Issuer or any Restricted Subsidiary to: (1) pay dividends or make any other distributions on its Capital Stock or pay any Indebtedness or other obligation owed to the Issuer, the Company or any Restricted Subsidiary (it being understood that the priority of any Preferred Stock in receiving dividends or liquidating distributions prior to dividends or liquidating distributions being paid on Common Stock shall not be deemed a restriction on the ability to make distributions on Capital Stock); (2) make any loans or advances to the Issuer, the Company or any Restricted Subsidiary (it being understood that the subordination of loans or advances made to the Issuer, the Company or any Restricted Subsidiary to other Indebtedness Incurred by the Issuer, the Company or any Restricted Subsidiary shall not be deemed a restriction on the ability to make loans or advances);

- 61 -

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

or (3) transfer any of its property or assets to the Issuer, the Company or any Restricted Subsidiary.

(b)     The provisions of paragraph (a) of this Section 3.6 shall not prohibit: (i) any encumbrance or restriction pursuant to an agreement in effect at or entered into on the date of this Indenture, including, without limitation, this Indenture, the indenture governing the Existing Notes and the Revolving Credit Facility and any related documentation and Hedging Obligations; (ii) any encumbrance or restriction with respect to a Non-Guarantor Subsidiary pursuant to any agreement relating to Indebtedness Incurred by such Non-Guarantor Subsidiary under clause (11) of paragraph (b) of Section 3.3; (iii) any encumbrance or restriction with respect to a Restricted Subsidiary pursuant to an agreement relating to any Capital Stock or Indebtedness Incurred by such Restricted Subsidiary on or before the date on which such Restricted Subsidiary was acquired directly or indirectly by the Company (other than Capital Stock or Indebtedness Incurred as consideration in, or to provide all or any portion of the funds or credit support utilized to consummate, the transaction or series of related transactions pursuant to which such Restricted Subsidiary became a Restricted Subsidiary of the Company or was acquired directly or indirectly by the Company or in contemplation of the transaction) and outstanding on such date, provided, that any such encumbrance or restriction shall not extend to any assets or property of the Issuer, the Company or any other Restricted Subsidiary other than the assets and property so acquired; (iv) any encumbrance or restriction with respect to the Issuer or a Restricted Subsidiary pursuant to an agreement effecting a refunding, replacement or refinancing of Indebtedness Incurred pursuant to an agreement referred to in clause (i), (ii) or (iii) of this paragraph or this clause (iv) or contained in any amendment to an agreement referred to in clause (i), (ii) or (iii) of this paragraph or this clause (iv); provided, however, that the encumbrances and restrictions with respect to such Restricted Subsidiary contained in any such agreement or amendment are, in the good faith judgment of the Company, no more restrictive in any material respect than the encumbrances and restrictions with respect to the Issuer or such Restricted Subsidiary contained in such agreements referred to in clauses (i), (ii) or (iii) of this paragraph on the Issue Date or the date such Restricted Subsidiary became a Restricted Subsidiary, whichever is applicable; (v) in the case of clause (3) of Section 3.6(a), any encumbrance or restriction: (a) that restricts in a customary manner the subletting, assignment or transfer of any property or asset that is subject to a lease, license or similar contract, or the assignment or transfer of any such lease, license or other contract; (b) contained in mortgages, pledges or other security agreements permitted under this Indenture securing Indebtedness of the Issuer, the Company or a Restricted Subsidiary to the extent such encumbrances or restrictions restrict the transfer of the property subject to such mortgages, pledges or other security agreements; or (c) pursuant to customary provisions restricting dispositions of real property interests set forth in any reciprocal easement agreements of the Issuer, the Company or any Restricted Subsidiary; (vi) (a) purchase money obligations for property acquired in the ordinary course of business and (b) Capitalized Lease Obligations permitted under this Indenture, in each case, that impose encumbrances or restrictions of the nature described in clause (3) of Section 3.6(a) on the property so acquired; (vii) any Purchase Money Note or other Indebtedness or contractual requirements Incurred with respect to a Qualified Receivables Transaction relating exclusively to a Receivables Entity that, in the good faith determination of the Company, are necessary to effect such Qualified Receivables Transaction; (viii) any restriction with respect to the Issuer or a Restricted Subsidiary (or any of its property or assets) imposed pursuant to an agreement entered into for the direct or indirect sale or disposition of all or substantially all the

confidential
Annie Li
Aug 25, 2015 21:20