Annie Li
Aug 25, 2015 21:20

Capital Stock or assets of the Issuer or such Restricted Subsidiary (or the property or assets that are subject to such restriction) pending the closing of such sale or disposition, subject to, in the case of the Issuer, compliance with the provisions of Section 4.1(a); (ix) any customary provisions in joint venture agreements and other similar agreements entered into in the ordinary course of business; (x) net worth provisions or other customary provisions in leases or subleases and other agreements entered into by the Company or any Restricted Subsidiary in the ordinary course of business; (xi) encumbrances or restrictions arising or existing by reason of applicable law or any applicable rule, regulation or order; (xii) customary restrictions contained in licenses or sublicenses related to, copyrights, patents, trademarks or other intellectual property and other agreements entered into in the ordinary course of business; and (xiii) any encumbrance or restriction existing under, by reason of or with respect to Indebtedness of the Issuer, the Company or any Restricted Subsidiary not prohibited to be incurred under this Indenture; provided that the encumbrances and restrictions are, in the good faith judgment of the Company, no more restrictive in any material respect than the encumbrances and restrictions contained in the agreements referred to in clause (i) of this Section 3.6(b).

SECTION 3.7.    Limitation on Sales of Assets and Subsidiary Stock.  (a) The Issuer and the Company shall not, and the Company shall not permit any of its Restricted Subsidiaries to, make any Asset Disposition unless: (1) the Issuer, the Company or such Restricted Subsidiary, as the case may be, receives consideration at the time of such Asset Disposition at least equal to the fair market value (such fair market value to be determined on the date of contractually agreeing to such Asset Disposition), as determined in good faith by the Company (including as to the value of all non-cash consideration), of the shares and assets subject to such Asset Disposition; (2) except in the case of Permitted Asset Swaps, at least 75% of the consideration from such Asset Disposition received by the Issuer, the Company or such Restricted Subsidiary, as the case may be, is in the form of cash or Cash Equivalents; and (3) an amount equal to 100% of the Net Available Cash from such Asset Disposition is applied by the Issuer, the Company or such Restricted Subsidiary, as the case may be: (a) first, to the extent the Issuer, the Company or any Restricted Subsidiary, as the case may be, elects (or is required by the terms of any Indebtedness of the Issuer, the Company or any Restricted Subsidiary), to prepay, repay or purchase Indebtedness of the Issuer (other than Disqualified Stock or Subordinated Obligations) or Indebtedness of the Company or a Wholly Owned Subsidiary (other than any Disqualified Stock or Guarantor Subordinated Obligations of a Wholly Owned Subsidiary) (in each case other than Indebtedness owed to the Company or an Affiliate of the Company) within 360 days from the later of the date of such Asset Disposition or the receipt of such Net Available Cash; provided, however, that, in connection with any prepayment, repayment or purchase of Indebtedness pursuant to this clause (a), the Issuer, the Company or such Restricted Subsidiary shall retire such Indebtedness and shall cause the related commitment (if any) to be permanently reduced in an amount equal to the principal amount so prepaid, repaid or purchased; and (b) second, to the extent of the balance of such Net Available Cash after application in accordance with clause (a), to the extent the Issuer, the Company or such Restricted Subsidiary elects, to acquire Additional Assets or make capital expenditures within 360 days from the later of the date of such Asset Disposition or the receipt of such Net Available Cash; provided that pending the final application of any such Net Available Cash in accordance with clause (a) or clause (b) above, the Issuer, the Company and its Restricted Subsidiaries may temporarily reduce Indebtedness or otherwise invest such Net Available Cash in any manner not prohibited by this Indenture; provided further that the Issuer and the Company will be deemed to have complied with the provision described

- 63 -

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

in clause (b) above if, and to the extent that, within 360 days after the Asset Disposition that generated the Net Available Cash, the Issuer, the Company or any Restricted Subsidiary has entered into and not abandoned or rejected a binding agreement to acquire Additional Assets or make such capital expenditures, and that acquisition is thereafter completed or the capital expenditures thereafter made within 180 days after the end of such 360-day period.

(b)        Any Net Available Cash from Asset Dispositions that are not applied or invested as provided in the preceding paragraph (a) shall be deemed to constitute "Excess Proceeds." On the 361st day after an Asset Disposition (or as extended pursuant to the proviso in Section 3.7(a)), if the aggregate amount of Excess Proceeds exceeds $25,000,000 (or its equivalent in another currency), the Issuer (with respect to the Notes) and the Issuer or the Company (with respect to any Pari Passu Notes (as defined below), as required by such Pari Passu Notes) shall be required to make an offer ("Asset Disposition Offer") to all Holders and to the extent required by the terms of other Pari Passu Indebtedness, to all holders of other Pari Passu Indebtedness outstanding with similar provisions requiring the Issuer or the Company to make an offer to purchase such Pari Passu Indebtedness with the proceeds from any Asset Disposition ("Pari Passu Notes"), to purchase the maximum principal amount of Notes and any such Pari Passu Notes to which the Asset Disposition Offer applies that may be purchased out of the Excess Proceeds, at an offer price in cash in an amount equal to 100% of the principal amount of the Notes and Pari Passu Notes plus accrued and unpaid interest to but not including the date of purchase, in accordance with the procedures set forth in this Indenture or the agreements governing the Pari Passu Notes, as applicable, in each case in minimum denominations of €100,000 (or $100,000 if such Pari Passu Notes are dollar denominated) and in integral multiples of €100,000 (or $1,000 if such Pari Passu Notes are dollar denominated) in excess thereof.  To the extent that the aggregate amount of Notes and Pari Passu Notes so validly tendered and not properly withdrawn pursuant to an Asset Disposition Offer is less than the Excess Proceeds, the Company may use any remaining Excess Proceeds for general corporate purposes, subject to the other covenants contained in this Indenture.  If the aggregate principal amount of Notes surrendered by Holders thereof and other Pari Passu Notes surrendered by holders or lenders, collectively, exceeds the amount of Excess Proceeds, the Notes and the Pari Passu Notes will be purchased on a pro rata basis based on the aggregate principal amount of tendered Notes and Pari Passu Notes. Upon completion of such Asset Disposition Offer, the amount of Excess Proceeds shall be reset to zero.

(c)        The Asset Disposition Offer shall remain open for a period of 20 Business Days following its commencement, except to the extent that a longer period is required by applicable law (the "Asset Disposition Offer Period").  No later than five Business Days after the termination of the Asset Disposition Offer Period (the "Asset Disposition Purchase Date"), the Issuer shall purchase the principal amount of Notes and the Issuer or the Company, as the case may be, will purchase the principal amount of Pari Passu Notes required to be purchased pursuant to this Section 3.7 (the "Asset Disposition Offer Amount") or, if less than the Asset Disposition Offer Amount has been so validly tendered, all Notes and Pari Passu Notes validly tendered in response to the Asset Disposition Offer.

(d)        If the Asset Disposition Purchase Date is on or after an interest record date and on or before the related interest payment date, any accrued and unpaid interest shall be paid to the Person in whose name a Note is registered at the close of business on such record date, and

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

no additional interest shall be payable to Holders who tender Notes pursuant to the Asset Disposition Offer.

      (e)      On or before the Asset Disposition Purchase Date, the Issuer or the Company, as the case may be, shall, to the extent lawful, accept for payment, on a pro rata basis to the extent necessary, the Asset Disposition Offer Amount of Notes and Pari Passu Notes or portions of Notes and Pari Passu Notes so validly tendered and not properly withdrawn pursuant to the Asset Disposition Offer, or if less than the Asset Disposition Offer Amount has been validly tendered and not properly withdrawn, all Notes and Pari Passu Notes so validly tendered and not properly withdrawn, in each case in minimum denominations of €100,000 (or $100,000 if such Pari Passu Notes are dollar denominated) and in integral multiples of €100,000 (or $1,000 if such Pari Passu Notes are dollar denominated) in excess thereof. The Issuer shall deliver to the Trustee an Officer's Certificate stating that such Notes or portions thereof were accepted for payment by the Issuer in accordance with the terms of this Section 3.7 and, in addition, either the Issuer or the Company shall deliver all certificates and notes required, if any, by the agreements governing the Pari Passu Notes. The Issuer, the Company or the Paying Agent, as the case may be, shall promptly (but in any case not later than five Business Days after termination of the Asset Disposition Offer Period) mail or deliver to each tendering Holder or holder or lender of Pari Passu Notes, as the case may be, an amount equal to the purchase price of the Notes or Pari Passu Notes so validly tendered and not properly withdrawn by such holder or lender, as the case may be, and accepted by the Issuer or the Company, as the case may be, for purchase, and the Issuer shall promptly issue a new Note, and the Trustee, upon delivery of an Officer's Certificate from the Issuer, shall authenticate and mail or deliver such new Note to such holder, in a principal amount equal to any unpurchased portion of the Note surrendered; provided that each such new Note shall be in a principal amount of €100,000 or an integral multiple of €1,000 in excess thereof. In addition, the Issuer or the Company, as the case may be, shall take any and all other actions, if any, required by the agreements governing the Pari Passu Notes. Any Note not so accepted shall be promptly mailed or delivered by the Issuer to the holder thereof. The Issuer shall publicly announce the results of the Asset Disposition Offer on the Asset Disposition Purchase Date.

      (f)      For the purposes of this Section 3.7, the following shall be deemed to be cash: (x) the assumption by the transferee of Indebtedness (other than Subordinated Obligations or Disqualified Stock) of the Issuer or Indebtedness of the Company or a Wholly Owned Subsidiary (other than Guarantor Subordinated Obligations or Disqualified Stock of any Wholly Owned Subsidiary that is a Subsidiary Guarantor) and the release of the Issuer, the Company or such Restricted Subsidiary from all liability on such Indebtedness in connection with such Asset Disposition (in which case the Issuer shall, without further action, be deemed to have applied such deemed cash to Indebtedness in accordance with clause (a) of Section 3.7 above); (y) securities, notes or other obligations or assets received by the Issuer, the Company or any Restricted Subsidiary of the Company from the transferee that are converted by the Issuer, the Company or such Restricted Subsidiary into cash or Cash Equivalents within 180 days after receipt; and (z) any Designated Non-cash Consideration received by the Issuer, the Company or any Restricted Subsidiary in such Asset Disposition having an aggregate fair market value (as determined in good faith by the Company), taken together with all other Designated Non-cash Consideration received pursuant to this clause (z) that is at that time outstanding, not to exceed the greater of (i) $25.0 million and (ii) 2.0% of the Company's Consolidated Tangible Assets at

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

the time of receipt of such Designated Non-cash Consideration, with the fair market value of each item of Designated Non-cash Consideration being measured at the time received and without giving effect to subsequent changes in value.

(g)    The Issuer shall comply, to the extent applicable, with the requirements of Section 14(e) of the Exchange Act and any other securities laws or regulations in connection with the repurchase of Notes pursuant to this Section 3.7. To the extent that the provisions of any securities laws or regulations conflict with provisions of this Section 3.7, the Issuer shall comply with the applicable securities laws and regulations and shall not be deemed to have breached its obligations under this Indenture by virtue of any conflict.

(h)    For the purposes of this Section 3.7, Holders electing to have a Note purchased shall be required to surrender the Note, with an appropriate form duly completed, to the Issuer at the address specified in the notice at least three Business Days prior to the purchase date. Each Holder shall be entitled to withdraw its election if the Issuer receives, not later than one Business Day prior to the purchase date, a telegram, telex, facsimile transmission or letter from such Holder setting forth the name of such Holder, the principal amount of the Note or Notes which were delivered for purchase by such Holder and a statement that such Holder is withdrawing his election to have such Note or Notes purchased.

SECTION 3.8.    Limitation on Transactions with Affiliates. (a) The Issuer and the Company shall not, and the Company shall not permit any of its Restricted Subsidiaries to, directly or indirectly, enter into or conduct any transaction (including the purchase, sale, lease or exchange of any property or the rendering of any service) with any Affiliate of the Company (an "Affiliate Transaction") unless: (1) the terms of such Affiliate Transaction are no less favorable to the Issuer, the Company or such Restricted Subsidiary, as the case may be, than those that could be obtained in a comparable transaction at the time of such transaction in arm's-length dealings with a Person who is not such an Affiliate; (2) in the event such Affiliate Transaction involves an aggregate consideration in excess of $10,000,000, the terms of such transaction have been approved by a majority of the members of the Board of Directors of the Company and by a majority of the members of such Board having no personal stake in such transaction, if any (and such majority or majorities, as the case may be, determines that such Affiliate Transaction satisfies the criteria in clause (1) above); and (3) in the event such Affiliate Transaction involves an aggregate consideration in excess of $20,000,000 the Company has received a written opinion from an independent investment banking, accounting, valuation or appraisal firm of nationally recognized standing in the United States that such Affiliate Transaction is fair, from a financial point of view, to the Issuer, the Company or such Restricted Subsidiary.

(b)    The provisions of paragraph (a) of this Section 3.9 shall not apply to: (1) any Restricted Payment (other than a Restricted Investment) permitted to be made pursuant to Section 3.4; (2) any issuance of securities, or other payments, awards or grants in cash, securities or otherwise pursuant to, or the funding of, employment agreements and other compensation arrangements, options to purchase Capital Stock of the Company, restricted stock plans, long-term incentive plans, stock appreciation rights plans, participation plans or similar employee benefits plans and/or indemnity provided on behalf of officers and employees approved by the Board of Directors of the Company; (3) to the extent permitted by law, loans or advances to employees or directors in the ordinary course of business of the Issuer, the Company or any of its

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

Restricted Subsidiaries but in any event not to exceed $5,000,000 in the aggregate outstanding at any one time with respect to all loans or advances made since the Issue Date; (4) any transaction between the Issuer and the Company, between the Issuer and a Restricted Subsidiary (other than a Receivables Entity), between the Company and a Restricted Subsidiary (other than a Receivables Entity) or between Restricted Subsidiaries (other than a Receivables Entity or Receivables Entities); (5) Guarantees issued by the Issuer, the Company or a Restricted Subsidiary for the benefit of the Issuer, the Company or a Restricted Subsidiary, as the case may be, in accordance with Section 3.3; (6) the payment of reasonable and customary fees paid to, and indemnity provided on behalf of, employees, officers or directors of the Issuer, the Company or any Restricted Subsidiary of the Company in connection with providing services to the Issuer, the Company or any Restricted Subsidiary of the Company; (7) the performance of obligations of the Issuer, the Company or any of its Restricted Subsidiaries under the terms of any agreement to which the Issuer, the Company or any of its Restricted Subsidiaries is a party as of or on the Issue Date, as these agreements may be amended, modified, supplemented, extended or renewed from time to time; provided, however, that any future amendment, modification, supplement, extension or renewal entered into after the Issue Date shall be permitted to the extent that its terms, taken as a whole, are not materially more disadvantageous to the Holders than the terms of the agreements in effect on the Issue Date; (8) sales or other transfers or dispositions of accounts receivable and other related assets customarily transferred in an asset securitization transaction involving accounts receivable to a Receivables Entity in a Qualified Receivables Transaction, and acquisitions of Permitted Investments in connection with a Qualified Receivables Transaction; and (9) any transaction with a customer or supplier of the Issuer, the Company or a Restricted Subsidiary so long as such transaction is in the ordinary course of business and the terms of such transaction are no less favorable (as determined in good faith by the Company) to the Issuer, the Company or such Restricted Subsidiary, as the case may be, than those that could be obtained in a comparable transaction at the time of such transaction in arm's-length dealings with a Person who is not an Affiliate; provided that, if such transaction or a series of related transactions exceeds $5,000,000, the terms of such transaction must be approved by a majority of the members of the Board of Directors of the Company and by a majority of the members of such Board having no personal stake in such transaction.

SECTION 3.9.    Change of Control.  (a) If a Change of Control occurs, each Holder shall have the right to require the Issuer to repurchase all or any part (equal to €100,000 or an integral multiple of €1,000 in excess thereof) of such Holder's Notes at a purchase price in cash equal to 101% of the principal amount of the Notes, plus accrued and unpaid interest and additional interest, if any, to the date of purchase (subject to the right of Holders of record on the relevant record date to receive interest due on the relevant interest payment date); provided, however that notwithstanding the foregoing, the Issuer shall not be obligated to repurchase Notes pursuant to this Section 3.9 if the Issuer has previously exercised its right to redeem Notes pursuant to Section 5.1.

(b)    Within 30 days following any Change of Control, the Issuer shall mail a notice (the "Change of Control Offer") to each Holder (with a copy to the Trustee) describing the transaction or transactions that constitute the Change of Control and offering to repurchase Notes on the Change of Control payment date specified in the notice, and such notice shall otherwise include:

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

(1)     that a Change of Control has occurred and that such Holder has the right to require the Issuer to purchase such Holder's Notes at a purchase price in cash equal to 101 % of the principal amount of such Notes plus accrued and unpaid interest, if any, to the date of purchase (subject to the right of Holders of record on a record date to receive interest on the relevant interest payment date) (the "Change of Control Payment");

(2)     the circumstances and relevant facts and financial information regarding such Change of Control;

(3)     the repurchase date (which shall be no earlier than 30 days nor later than 60 days from the date such notice is mailed) (the "Change of Control Payment Date");

(4)     that any Note not tendered shall continue to accrue interest pursuant to its terms;

(5)     that, unless the Issuer defaults in the payment of the purchase price, any Note accepted for payment pursuant to the Change of Control Offer shall cease to accrue interest on and after the Change of Control Payment Date; and

(6)     the procedures determined by the Issuer, consistent with this Section 3.9, that a Holder must follow in order to have its Notes repurchased or to cancel such order of purchase.

(c)     Holders electing to have a Note purchased shall be required to surrender the Note, with an appropriate form duly completed, to the Issuer at the address specified in the notice at least three Business Days prior to the purchase date. Each Holder shall be entitled to withdraw its election if the Issuer receives, not later than one Business Day prior to the purchase date, a telegram, telex, facsimile transmission or letter from such Holder setting forth the name of such Holder, the principal amount of the Note or Notes which were delivered for purchase by such Holder and a statement that such Holder is withdrawing his election to have such Note or Notes purchased.

(d)     On the Change of Control Payment Date, the Issuer shall, to the extent lawful: (i) accept for payment all Notes or portions of Notes (equal to €100,000 or an integral multiple of €1,000 in excess thereof) properly tendered pursuant to the Change of Control Offer; (ii) deposit with the Paying Agent an amount equal to the Change of Control Payment in respect of all Notes or portions of Notes so tendered; and (iii) deliver or cause to be delivered to the Trustee the Notes so accepted together with an Officer's Certificate specifying the Notes or portions thereof accepted for payment by the Issuer. The Paying Agent shall promptly mail, to the Holders of Notes so accepted, payment in an amount equal to the purchase price, and the Trustee shall promptly authenticate and deliver (or cause to be transferred by book entry) to such Holders a new Note equal in principal amount to any unpurchased portion of the Notes surrendered; provided that each Note purchased and each new Note issued shall be in a principal amount of €100,000 or an integral multiple of €1,000 in excess thereof.

- 68 -

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

(e)     If the Change of Control Payment Date is on or after an interest record date and on or before the related interest payment date, any accrued and unpaid interest, if any, shall be paid to the Person in whose name a Note is registered at the close of business on such record date, and no additional interest shall be payable to Holders who tender pursuant to the Change of Control Offer.

(f)     The Issuer shall publicly announce the results of the Change of Control Offer on or as soon as practicable after the Change of Control Payment Date.

(g)     The Issuer shall not be required to make a Change of Control Offer upon a Change of Control if a third party makes the Change of Control Offer in the manner, at the times and otherwise in compliance with the requirements set forth in this Indenture applicable to a Change of Control Offer made by the Issuer and purchases all Notes validly tendered and not properly withdrawn under such Change of Control Offer.

(h)     Notwithstanding anything to the contrary contained herein, a Change of Control Offer may be made in advance of a Change of Control, conditional upon such Change of Control, if a definitive agreement is in place for the Change of Control at the time of making the Change of Control Offer.

(i)     The Issuer shall comply, to the extent applicable, with the requirements of Section 14(e) of the Exchange Act and any other securities laws or regulations in connection with the repurchase of Notes pursuant to this Section 3.9. To the extent that the provisions of any securities laws or regulations conflict with provisions of this Section 3.9, the Issuer shall comply with the applicable securities laws and regulations and shall not be deemed to have breached its obligations under this Indenture by virtue of the conflict.

SECTION 3.10.    Future Subsidiary Guarantors. (a) The Company shall not permit any of its current or future Subsidiaries to either (1) Guarantee the payment of any Indebtedness of the Issuer, the Company or any other Restricted Subsidiary or (2) otherwise become an obligor, including as a co-borrower, under a Credit Facility Incurred pursuant to Section 3.3(b)(1), unless (i) such Subsidiary simultaneously executes and delivers a supplemental indenture to this Indenture, substantially in the form attached as Exhibit C hereto, providing for a Notes Guarantee of such Subsidiary pursuant to which such Subsidiary shall unconditionally Guarantee, on a joint and several basis, all of the obligations of the Issuer, the Company and the other Subsidiary Guarantors under this Indenture, including the full and prompt payment of the principal of, premium and additional amounts, if any, and interest on the Notes on a senior basis and all other obligations under this Indenture; provided that if such Indebtedness is by its express terms subordinated in right of payment to the Notes or the Notes Guarantees, as the case may be, any such Guarantee of such Subsidiary with respect to such Indebtedness shall be subordinated in right of payment to such Subsidiary's Notes Guarantee substantially to the same extent as such Indebtedness is subordinated to the Notes; (ii) such Subsidiary waives and shall not in any manner whatsoever claim or take the benefit or advantage of, any rights of reimbursement, indemnity or subrogation or any other rights against the Issuer, the Company or any other Restricted Subsidiary as a result of any payment by such Subsidiary under its Notes Guarantee so long as any of the Notes remain outstanding; and (iii) such Subsidiary shall deliver to the Trustee an Opinion of Counsel with respect to corporate matters in connection with its Notes Guarantee,

- 69 -

confidential
Annie Li
Aug 25, 2015 21:20

us\WONGJA\7929518.7

Annie Li
Aug 25, 2015 21:20

in form and substance reasonably satisfactory to the Trustee; provided, however, that the Company shall not be obligated to cause any of its Subsidiaries to Guarantee any of the obligations of the Issuer, the Company or any Subsidiary Guarantors under this Indenture, or the Company shall be entitled to limit the value of any such Notes Guarantee to the extent that such Notes Guarantee could reasonably be expected to give rise to or result in (now or in the future): (1) any violation of applicable law, including without limitation restrictions on the provision of financial assistance; or (2) any personal or criminal liability for the officers, directors or direct or indirect shareholders of such Subsidiary; which in the case of each of clauses (1) and (2) cannot be avoided or otherwise prevented through measures reasonably available to the Company and its Subsidiaries.

(b)     The foregoing notwithstanding, in the event a Subsidiary Guarantor is released and discharged from all of its obligations (other than contingent indemnification obligations) (1) under Guarantees of Indebtedness and other obligations under a Credit Facility and all other Indebtedness of the Issuer, the Company and its Restricted Subsidiaries, and (2) as an obligor, including as a co-borrower, under a Credit Facility, then the Notes Guarantee of such Subsidiary Guarantor shall be automatically and unconditionally released and discharged.

SECTION 3.11.  Effectiveness of Covenants.  Following the first Business Day on which:

(a) the Notes have an Investment Grade Rating;

(b) no Default has occurred and is continuing under this Indenture; and

(c) the Company has delivered an Officer's Certificate to the Trustee,

the Issuer, the Company and its Restricted Subsidiaries shall not be subject to the provisions of this Indenture described in Sections 3.3, 3.4, 3.6, 3.7, 3.8, 4.1(a)(iii) and 4.1(b)(iii) (collectively, the "Suspended Covenants"). In the event that the Issuer, the Company and its Restricted Subsidiaries are not subject to the Suspended Covenants for any period of time as a result of the preceding sentence and, subsequently, one or both of S&P and Moody's withdraws its ratings or downgrades the ratings assigned to the Notes below the required Investment Grade Ratings or a Default or Event of Default occurs and is continuing, then the Issuer, the Company and its Restricted Subsidiaries will thereafter again be subject to the Suspended Covenants for all periods after that withdrawal, downgrade, Default or Event of Default and, furthermore, compliance with the provisions of Section 3.4 with respect to Restricted Payments made after the time of the withdrawal, downgrade, Default or Event of Default will be calculated in accordance with the terms of that covenant as though that covenant had been in effect during the entire period of time from the Issue Date, provided that there will not be deemed to have occurred a Default or Event of Default with respect to that covenant during the time that the Issuer, the Company and its Restricted Subsidiaries were not subject to the Suspended Covenants (or after that time based solely on events that occurred during that time).  At the time of any such withdrawal, downgrade, Default or Event of Default described in the immediately preceding sentence, all Indebtedness Incurred during the time that the Issuer, the Company and its Restricted Subsidiaries were not subject to the Suspended Covenants will be deemed to have

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

been outstanding on the Issue Date, so that it is classified as permitted under clause (4) of Section 3.3(b).

SECTION 3.12.    Additional Amounts.  (a)  All payments made by the Issuer under or with respect to the Notes (whether or not in the form of Definitive Notes) or by the Company or any Subsidiary Guarantor under or with respect to the Notes Guarantees will be made free and clear of and without withholding or deduction for, or on account of, any present or future tax, duty, levy, impost, assessment or other governmental charge of whatever nature imposed or levied, including penalties, interest and other liabilities related thereto (collectively, "Taxes") unless the withholding or deduction of such Taxes is then required by law.  If any deduction or withholding for, or on account of, any Taxes imposed or levied by or on behalf of any jurisdiction in which the Issuer, the Company or any Subsidiary Guarantor (including any Successor Issuer, Successor Company or a resulting, surviving or transferee Person to a Subsidiary Guarantor), is then incorporated, carrying on a business (directly or indirectly), resident for tax purposes or generally subject to tax on a net income basis or any political subdivision thereof or therein or any jurisdiction by or through which payment is made (each, a "Tax Jurisdiction"), will at any time be required to be made from any payments made by the Issuer under or with respect to the Notes or by the Company or any Subsidiary Guarantor under or with respect to the Notes Guarantees, including payments of principal, redemption price, purchase price, interest or premium, the Issuer, the Company or such Subsidiary Guarantor (as the case may be) will pay such additional amounts (the "additional amounts") as may be necessary in order that the net amounts received in respect of such payments by each holder and beneficial owner of the Notes (including additional amounts) after such withholding or deduction will equal the respective amounts which would have been received in respect of such payments in the absence of such withholding or deduction; provided, however, that additional amounts will not be payable to a holder or beneficial owner of a Note with respect to:

(1)    any Taxes which would not have been imposed but for the existence of any present or former connection between such holder or the beneficial owner of such Note and the relevant Tax Jurisdiction (including being a citizen, resident or national of, incorporated in, or carrying on a business or maintaining a permanent establishment in, or being physically present in, the relevant Tax Jurisdiction) in which such Taxes are imposed, other than the mere receipt of such payment or holding of such Note, enforcement of, or exercise of rights under, such Note, the Notes Guarantees or this Indenture or any other connection with respect to such Note;

(2)    any Taxes that are imposed or withheld as a result of the failure of such holder or beneficial owner of such Note to comply with any written request, made to such holder or beneficial owner in writing at least 90 days before any such withholding or deduction would be payable, by the Issuer (i) to provide timely or accurate information concerning the nationality, residence or identity of such Holder or beneficial owner or (ii) to make any valid or timely declaration or similar claim for exemption to which such Holder or beneficial owner is legally entitled or satisfy any certification requirement which such holder or beneficial owner is legally able to satisfy, which in the case of clause (i) or (ii), as applicable, is required or imposed by a statute, treaty, regulation or administrative

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

practice of the relevant Tax Jurisdiction as a precondition to exemption from all or part of such Taxes;

(3)     any Note presented for payment (where Notes are in the form of Definitive Notes and presentation is required) more than 30 days after the relevant payment is first made available for payment to the holder (except to the extent that the holder would have been entitled to additional amounts had the Note been presented on the last day of such 30 day period);

(4)     any estate, inheritance, gift, sale, transfer, personal property or similar tax or assessment;

(5)     any Taxes withheld, deducted or imposed on a payment to an individual and which are required to be made pursuant to European Union Council Directive 2003/48/EC or any other directive implementing the conclusions of the ECOFIN Council meeting of November 26-27, 2000 on the taxation of savings income or any law implementing or complying with or introduced in order to conform to, such Directive;

(6)     any Note presented for payment by or on behalf of a Holder who would have been able to avoid such withholding or deduction by presenting the relevant Note to another paying agent in any country that is a Member State; or

(7)     any combination of items (1) through (6) above.

(b)     In addition to the foregoing, additional amounts will not be payable if the beneficial owner of a Note had been the Holder of such Note and such beneficial owner would not be entitled to the payment of additional amounts by reasons of items (1) through (7) above. Further, additional amounts will not be payable with respect to any Tax which is payable other than by withholding from payments under or with respect to the Notes or the Notes Guarantees.

(c)     In addition to the foregoing, the Issuer will also pay and indemnify the Holders and beneficial owners of the Notes for any present or future stamp, issue, registration, transfer, court or documentary taxes, or any other excise or property taxes, charges or similar levies or Taxes which are levied by any jurisdiction in respect of or in connection with the execution, delivery, issue, redemption, retirement, enforcement or registration of any of the Notes, this Indenture or the Notes Guarantees, or any other document or instrument referred to therein, or the receipt of any payments under or with respect to the Notes or the Notes Guarantees.

(d)     If the Issuer becomes aware that the Issuer, the Company or any Subsidiary Guarantor will be obligated to pay additional amounts with respect to any payment under or with respect to the Notes or the Notes Guarantees, the Issuer will deliver to the Trustee on a date which is at least 30 days prior to the date of that payment (unless the obligation to pay additional amounts arises after the 30th day prior to that payment date, in which case the Issuer shall notify the Trustee promptly thereafter) an Officer's Certificate stating the fact that additional amounts will be payable and the amount estimated to be so payable. The Officer's Certificate must also

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

set forth any other information reasonably necessary to enable the Paying Agent to pay additional amounts to Holders on the relevant payment date. The Issuer will provide the Trustee with documentation reasonably satisfactory to the Trustee evidencing the payment of additional amounts.

(e)    The Issuer, the Company or the relevant Subsidiary Guarantor will make all withholdings and deductions required by law and will remit the full amount deducted or withheld to the relevant Tax authority in accordance with applicable law. The Issuer, the Company or the relevant Subsidiary Guarantor will use its reasonable efforts to obtain Tax receipts from each Tax authority evidencing the payment of any Taxes so deducted or withheld. The Issuer will furnish to the Trustee, within 60 days after the date the payment of any Taxes so deducted or withheld is made, certified copies of Tax receipts evidencing payment by the Issuer, the Company or the relevant Subsidiary Guarantor or if, notwithstanding the Issuer's, the Company's or such Subsidiary Guarantor's efforts to obtain receipts, receipts are not obtained, other evidence of payments by such entity. The Issuer shall attach to each certified copy or other evidence, as applicable, a certificate stating (x) that the amount of Tax evidenced by the certified copy was paid in connection with payments under or with respect to the Notes then outstanding upon which such Taxes were due and (y) the amount of such withholding tax paid per €1,000 of principal amount of the Notes.

(f)    Whenever in this Indenture there is mentioned, in any context, the payment of amounts based upon the principal amount of the Notes or of principal, interest or of any other amount payable under, or with respect to, any of the Notes or the Notes Guarantees, such mention shall be deemed to include mention of the payment of additional amounts to the extent that, in such context, additional amounts are, were or would be payable in respect thereof.

(g)    The foregoing obligations relating to additional amounts shall survive any termination, defeasance or discharge of this Indenture and shall apply *mutatis mutandis* to any Tax Jurisdiction with respect to any Successor Issuer, Successor Company or a resulting, surviving or transferee Person to a Subsidiary Guarantor.

SECTION 3.13.  Maintenance of Office or Agency.  The Issuer shall maintain in London, United Kingdom or in Luxembourg, as the case may be, an office or agency where the Notes may be presented or surrendered for payment and/or, where, if applicable and as the case may be, the Notes may be surrendered for registration of transfer or exchange and where notices and demands to or upon the Issuer in respect of the Notes and this Indenture may be served. The office of the Trustee, at Winchester House, 1 Great Winchester Street, London EC2N 2DB, United Kingdom, shall be such offices or agency of the Issuer for payment, unless the Issuer shall designate and maintain some other office or agency for one or more of such purposes. The Issuer shall give prompt written notice to the Trustee of any change in the location of any such office or agency. If at any time the Issuer shall fail to maintain any such required office or agency or shall fail to furnish the Trustee with the address thereof, such presentations, surrenders, notices and demands may be made or served at the Corporate Trust Office of the Trustee, and the Issuer hereby appoints the Trustee as its agent to receive all such presentations, surrenders, notices and demands.

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

The Issuer may also from time to time designate one or more other offices or agencies (in or outside of London, United Kingdom) where the Notes may be presented or surrendered for any or all such purposes and may from time to time rescind any such designation; provided, however, that no such designation or rescission shall in any manner relieve the Issuer of its obligation to maintain an office or agency in London, United Kingdom for such purposes. The Issuer shall give prompt written notice to the Trustee of any such designation or rescission and any change in the location of any such other office or agency.

SECTION 3.14.   Money for Note Payments to Be Held in Trust.   If the Issuer shall at any time act as its own Paying Agent, it shall, on or before each due date of the principal of (or premium, if any) or interest on any of the Notes, segregate and hold in trust for the benefit of the Persons entitled thereto a sum sufficient to pay the principal of (or premium or additional amounts, if any) or interest so becoming due until such sums shall be paid to such Persons or otherwise disposed of as herein provided and shall promptly notify the Trustee in writing of its action or failure to so act.

Whenever the Issuer shall have one or more Paying Agents for the Notes, it shall, on or before each due date of the principal of (or premium and additional amounts, if any) or interest on any Notes, deposit with any Paying Agent a sum in same day funds that shall be available to the Trustee by 12:00 p.m. London time one Business Day prior to the due date sufficient to pay the principal (and premium and additional amounts, if any) or interest so becoming due, such sum to be held in trust for the benefit of the Persons entitled to such principal, premium, additional amounts or interest, and (unless such Paying Agent is the Trustee) the Issuer shall promptly notify the Trustee in writing of such action or any failure to so act.

The Issuer shall cause each Paying Agent (other than the Trustee) to execute and deliver to the Trustee an instrument in which such Paying Agent shall agree with the Trustee, subject to the provisions of this Section, that such Paying Agent shall:

(a) hold all sums held by it for the payment of the principal of (and premium or additional amounts, if any) or interest on Notes in trust for the benefit of the Persons entitled thereto until such sums shall be paid to such Persons or otherwise disposed of as herein provided;

(b) give the Trustee prompt written notice of any default by the Company (or any other obligor upon the Notes) in the making of any payment of principal (and premium and additional amounts, if any) or interest; and

(c) at any time during the continuance of any such default, upon the written request of the Trustee, forthwith pay to the Trustee all sums so held in trust by such Paying Agent.

The Issuer may at any time, for the purpose of obtaining the satisfaction and discharge of this Indenture or for any other purpose, pay, or by Issuer Order direct any Paying Agent to pay, to the Trustee all sums held in trust by the Issuer or such Paying Agent, such sums to be held by the Trustee upon the same trusts as those upon which such sums were held by the Issuer or such Paying Agent; and, upon such payment by any Paying Agent to the Trustee, such Paying Agent shall be released from all further liability with respect to such sums.

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

Any money deposited with the Trustee or any Paying Agent, or then held by the Issuer, in trust for the payment of the principal of (or premium or additional amounts, if any) or interest on any Note and remaining unclaimed for two years after such principal, premium or interest has become due and payable shall be paid to the Issuer on Issuer Order, or (if then held by the Issuer) shall be discharged from such trust; and the Holder of such Note shall thereafter, as an unsecured general creditor, look only to the Issuer for payment thereof, and all liability of the Trustee or such Paying Agent with respect to such trust money, and all liability of the Issuer as trustee thereof, shall thereupon cease; provided, however, that the Trustee or such Paying Agent, before being required to make any such repayment to the Issuer, shall at the expense of the Issuer cause to be published once, in a leading daily newspaper (if practicable, The Wall Street Journal) printed in the English language and of general circulation in New York City, notice that such money remains unclaimed and that, after a date specified therein, which shall not be less than 30 days from the date of such publication nor shall it be later than two years after such principal (or premium or additional amounts, if any) or interest shall have become due and payable, any unclaimed balance of such money then remaining shall be repaid to the Issuer.

SECTION 3.15.  Corporate Existence.  Subject to Article IV, each of the Issuer and the Company shall do or cause to be done all things necessary to preserve and keep in full force and effect its corporate existence and that of each Restricted Subsidiary and the corporate rights (charter and statutory) licenses and franchises of the Issuer, the Company and each Restricted Subsidiary; provided, however, that neither the Issuer nor the Company shall be required to preserve any such existence (except the Issuer or the Company), right, license or franchise if the Board of Directors of the Company shall determine that the preservation thereof is no longer desirable in the conduct of the business of the Company and each of its Restricted Subsidiaries, taken as a whole, and that the loss thereof is not, and shall not be, disadvantageous in any material respect to the Holders.

SECTION 3.16.  Payment of Taxes and Other Claims.  The Issuer shall pay or discharge or cause to be paid or discharged, before the same shall become delinquent, (i) all material taxes, assessments and governmental charges levied or imposed upon the Company or any Subsidiary or upon the income, profits or property of the Issuer, the Company or any Subsidiary and (ii) all lawful claims for labor, materials and supplies, which, if unpaid, might by law become a material liability or lien upon the property of the Issuer, the Company or any Subsidiary; provided, however, that the Company shall not be required to pay or discharge or cause to be paid or discharged any such tax, assessment, charge or claim whose amount, applicability or validity is being contested in good faith by appropriate proceedings and for which appropriate reserves, if necessary (in the good faith judgment of the Company) are being maintained in accordance with GAAP.

SECTION 3.17.  Maintenance of Properties.  The Issuer and the Company shall cause all material properties owned by the Issuer, the Company or any Restricted Subsidiary or used or held for use in the conduct of its business or the business of any Restricted Subsidiary to be maintained and kept in normal condition, repair and working order and shall cause to be made all necessary repairs, renewals, replacements, betterments and improvements thereof, all as in the judgment of the Company may be necessary so that the business carried on in connection therewith may be properly conducted at all times; provided, however, that nothing in this Section shall prevent the Issuer, the Company or any of its Restricted Subsidiaries from discontinuing the

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

maintenance of any of such properties if such discontinuance is, in the judgment of the Company, desirable in the conduct of its business or the business of any Restricted Subsidiary and not adverse in any material respect to the Holders.

SECTION 3.18. Compliance with Laws. The Issuer and the Company shall comply, and the Company shall cause each of the Company's Restricted Subsidiaries to comply, with all applicable statutes, rules, regulations, orders and restrictions of the United States of America, all states and municipalities thereof, the Grand Duchy of Luxembourg, the respective jurisdictions of incorporation or organization of the Restricted Subsidiaries and of any governmental regulatory authority, in respect of the conduct of their respective businesses and the ownership of their respective properties, except for such noncompliances as would not in the aggregate have a material adverse effect on the financial condition or results of operations of the Issuer, the Company and its Restricted Subsidiaries, taken as a whole.

SECTION 3.19. Compliance Certificate. The Issuer shall deliver to the Trustee within 120 days after the end of each Fiscal Year of the Issuer a certificate executed by an Officer of the Issuer stating that in the course of the performance by the signer of his or her duties as such officer he or she would normally have knowledge of any Default or Event of Default and whether or not the signer knows of any Default or Event of Default that occurred during such period. If he or she does, the certificate shall describe the Default or Event of Default, its status and what action the Issuer is taking or proposes to take with respect thereto. An Officer's Certificate shall also notify the Trustee should the then current Fiscal Year be changed to end on any date other than on the date as herein defined.

## ARTICLE IV

### Successor Company and Successor Subsidiary Guarantor

SECTION 4.1. Merger and Consolidation. (a) The Issuer will not consolidate with or merge with or into, or convey, transfer or lease all or substantially all of its assets to, any Person, unless:

(i) the resulting, surviving or transferee Person (the "Successor Issuer") will be a corporation organized and existing under the laws of any country that is a Member State, the United States of America, any State of the United States or the District of Columbia and the Successor Issuer (if not the Issuer) will expressly assume, by supplemental indenture, executed and delivered to the Trustee, in form and substance reasonably satisfactory to the Trustee, all the obligations of the Issuer under the Notes and this Indenture;

(ii) immediately after giving effect to such transaction (and treating any Indebtedness that becomes an obligation of the Successor Issuer or any Subsidiary of the Successor Issuer as a result of such transaction as having been Incurred by the Successor Issuer or such Subsidiary at the time of such transaction), no Default or Event of Default shall have occurred and be continuing;

confidential
Annie Li
Aug 25, 2015 21:20

confidential
Annie Li
Aug 25, 2015 21:20

(iii)   immediately after giving effect to such transaction, (a) the Successor Issuer would be able to Incur at least an additional $1.00 of Indebtedness pursuant to Section 3.3(a) or (b) the Consolidated Coverage Ratio for the Successor Issuer would not be less than immediately prior to such transaction;

(iv)   the Company and each Subsidiary Guarantor (unless it is the other party to the transactions above, in which case clause (i) of this subsection shall apply) shall have by supplemental indenture confirmed that its Notes Guarantee shall apply to such Person's obligations in respect of this Indenture and the Notes shall continue to be in effect; and

(v)   the Issuer shall have delivered to the Trustee an Officer's Certificate and an Opinion of Counsel, each stating that such consolidation, merger, transfer or lease and such supplemental indenture (if any) comply with this Indenture.

(b)   The Company shall not consolidate with or merge with or into, or convey, transfer or lease all or substantially all its assets to, any Person, unless:

(i)   the resulting, surviving or transferee Person (the "Successor Company") shall be a corporation organized and existing under the laws of the United States of America, any State of the United States or the District of Columbia and the Successor Company ((if not the Issuer, the Company or any Subsidiary Guarantor) will expressly assume, by supplemental indenture, executed and delivered to the Trustee, in form and substance reasonably satisfactory to the Trustee, all the obligations of the Company under the Notes Guarantee and this Indenture;

(ii)   immediately after giving effect to such transaction (and treating any Indebtedness that becomes an obligation of the Successor Company or any Subsidiary of the Successor Company as a result of such transaction as having been Incurred by the Successor Company or such Subsidiary at the time of such transaction), no Default or Event of Default shall have occurred and be continuing;

(iii)   immediately after giving effect to such transaction, (a) the Successor Company would be able to Incur at least an additional $1.00 of Indebtedness pursuant to Section 3.3(a) or (b) the Consolidated Coverage Ratio for the Successor Company would not be less than immediately prior to such transaction;

(iv)   each Subsidiary Guarantor (unless it is the other party to the transactions above, in which case clause (i) shall apply) shall have by supplemental indenture confirmed that its Notes Guarantee shall apply to such Person's obligations in respect of this Indenture and the Notes; and

(v)   the Issuer shall have delivered to the Trustee an Officer's Certificate and an Opinion of Counsel, each stating that such consolidation, merger, transfer or lease and such supplemental indenture (if any) comply with this Indenture.

For purposes of this Article IV, the sale, lease, conveyance, assignment, transfer, or other disposition of all or substantially all of the properties and assets of one or more Subsidiaries of

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

the Issuer or the Company, which properties and assets, if held by the Issuer or the Company, as the case may be, instead of such Subsidiaries, would constitute all or substantially all of the properties and assets of the Issuer or the Company, as the case may be, on a consolidated basis, shall be deemed to be the transfer of all or substantially all of the properties and assets of the Issuer or the Company, as the case may be.

The Successor Issuer will succeed to, and be substituted for, and may exercise every right and power of, the Issuer under this Indenture, but, in the case of a lease of all or substantially all its assets, the predecessor Issuer will not be released from the obligation to pay the principal of and interest on the Notes.

The Successor Company shall succeed to, and be substituted for, and may exercise every right and power of, the Company under this Indenture, but, in the case of a lease of all or substantially all its assets, the predecessor Company shall not be released from the obligations under its Notes Guarantees.

Notwithstanding Section 4.1(a)(iii) and 4.1(b)(iii), (x) any Restricted Subsidiary of the Company may consolidate with, merge into or transfer all or part of its properties and assets to the Issuer or the Company and (y) the Issuer or the Company may merge with an Affiliate incorporated solely for the purpose of reincorporating the Issuer or the Company, as the case may be, in another jurisdiction to realize tax or other benefits; provided that, in the case of a Restricted Subsidiary that merges into the Issuer or the Company, the Issuer shall not be required to comply with Section 4.1(a)(v) and 4.1(b)(v), respectively.

In addition, the Company shall not permit any Subsidiary Guarantor to consolidate with or merge with or into any Person (other than the Issuer, the Company or another Subsidiary Guarantor) and shall not permit the conveyance, transfer or lease of all or substantially all of the assets of any Subsidiary Guarantor to any Person (other than to the Issuer, the Company or another Subsidiary Guarantor) unless: (i) (a) the resulting, surviving or transferee Person shall be a corporation, partnership, trust or limited liability company organized and existing under the laws of any country that is a Member State, the United States, any State of the United States, the District of Columbia or the jurisdiction in which such Subsidiary Guarantor was incorporated as of the Issue Date or the date it became a Subsidiary Guarantor and, in each case, such Person (if not such Subsidiary Guarantor) shall expressly assume, by supplemental indenture, executed and delivered to the Trustee, in form and substance reasonably satisfactory to the Trustee, all the obligations of such Subsidiary Guarantor under its Notes Guarantees; (b) immediately after giving effect to such transaction (and treating any Indebtedness that becomes an obligation of the resulting, surviving or transferee Person or any Restricted Subsidiary of such Person as a result of such transaction as having been Incurred by such Person or such Restricted Subsidiary at the time of such transaction), no Default of Event of Default shall have occurred and be continuing; and (c) the Issuer shall have delivered to the Trustee an Officer's Certificate and an Opinion of Counsel, each stating that such consolidation, merger or transfer and such supplemental indenture (if any) comply with this Indenture; or (ii) the transaction is made in compliance with Section 3.7.

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

## ARTICLE V

### Redemption of Notes

SECTION 5.1.    Optional Redemption.  The Notes may be redeemed, as a whole or from time to time in part, subject to the conditions and at the redemption prices specified in paragraph 5 of the form of Notes set forth in Exhibit A hereto, which are hereby incorporated by reference and made a part of this Indenture, together with accrued and unpaid interest to the Redemption Date (as defined below).

SECTION 5.2.    Applicability of Article.  Redemption of Notes at the election of the Issuer or otherwise, as permitted or required by any provision of this Indenture, shall be made in accordance with such provision and this Article.

SECTION 5.3.    Election to Redeem; Notice to Trustee and Agents.  The election of the Issuer to redeem any Notes pursuant to Section 5.1 shall be evidenced by a Board Resolution.  In case of any redemption at the election of the Issuer, the Issuer shall, upon not later than the earlier of the date that is 45 days prior to the redemption date (the "Redemption Date") fixed by the Issuer or 15 days prior to the date on which notice is given to the Holders (except as provided in Section 5.5 or unless a shorter notice shall be satisfactory to the Trustee), notify the Trustee and Agents of such Redemption Date and of the principal amount of Notes to be redeemed and shall deliver to the Trustee such documentation and records as shall enable the Trustee to select the Notes to be redeemed pursuant to Section 5.4.  Any such notice may be cancelled at any time prior to notice of such redemption being mailed to any Holder and shall thereby be void and of no effect.

SECTION 5.4.    Selection by Trustee of Notes to Be Redeemed.  If less than all the Notes are to be redeemed at any time pursuant to an optional redemption, the particular Notes to be redeemed shall be selected not more than 60 days prior to the Redemption Date by the Trustee, from the outstanding Notes not previously called for redemption, in compliance with the requirements of the principal securities exchange, if any, on which such Notes are listed, or, if such Notes are not so listed, and the requirements of any Common Depositary holding the Global Notes or if the Notes are not so listed or such exchange prescribes no method of selection and the Notes are not held through a Common Depositary or such Common Depositary prescribes no method of selection, then on a pro rata basis, by lot or by such other method as the Trustee, in its sole discretion shall deem fair and appropriate (and in such manner as complies with applicable legal requirements) and which may provide for the selection for redemption of portions of the principal of the Notes; provided, however, such redemption equals €100,000 or an integral multiple of €1,000 in excess thereof.  No Notes of €100,000 or less will be redeemed in part and no redemption will result in a Holder holding a Note of less than €100,000.  If any Note is to be redeemed in part only, the notice of redemption relating to such Note will state the portion of the principal amount thereof to be redeemed.  A new Note in principal amount equal to the unredeemed portion thereof will be issued in the name of the Holder thereof upon cancellation of the original Note.

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

The Trustee shall promptly notify the Issuer in writing of the Notes selected for redemption and, in the case of any Notes selected for partial redemption, the method it has chosen for the selection of Notes and the principal amount thereof to be redeemed.

Notices of any redemption upon any Equity Offering may be given prior to the completion thereof, and any redemption or notice may, at the Issuer's discretion, be subject to one or more conditions precedent, including, but not limited to, completion of the Equity Offering.

For all purposes of this Indenture, unless the context otherwise requires, all provisions relating to redemption of Notes shall relate, in the case of any Note redeemed or to be redeemed only in part, to the portion of the principal amount of such Note which has been or is to be redeemed.

SECTION 5.5.    Notice of Redemption.  Notice of redemption shall be given in the manner provided for in Section 11.2 not less than 30 nor more than 60 days prior to the Redemption Date, to each Holder of Notes to be redeemed.  At the Issuer's request, the Trustee shall give notice of redemption in the Issuer's name and at the Issuer's expense; provided, however, that the Issuer shall deliver to the Trustee, at least 35 days (or such shorter period of time as shall be satisfactory to the Trustee) prior to the Redemption Date, an Officer's Certificate requesting that the Trustee give such notice at the Issuer's expense and setting forth the information to be stated in such notice as provided in the following items.

All notices of redemption shall state:

(i)    the Redemption Date,

(ii)    the redemption price and the amount of accrued and unpaid interest and additional amounts, if any, to the Redemption Date payable as provided in Section 5.7, if any,

(iii)    if less than all outstanding Notes are to be redeemed, the method for selecting the Notes to be redeemed, as well as the aggregate principal amount of Notes to be redeemed and the aggregate principal amount of Notes to be outstanding after such partial redemption,

(iv)    in case any Note is to be redeemed in part only, the notice which relates to such Note shall state that on and after the Redemption Date, upon surrender of such Note, the Holder shall receive, without charge, a new Note or Notes of authorized denominations for the principal amount thereof remaining unredeemed,

(v)    that on the Redemption Date the redemption price (and accrued interest, if any, to the Redemption Date payable as provided in Section 5.7) shall become due and payable upon each such Note, or the portion thereof, to be redeemed, and, unless the Issuer defaults in making the redemption payment, that interest on Notes called for redemption (or the portion thereof) shall cease to accrue on and after said date,

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

(vi)    the place or places where such Notes are to be surrendered for payment of the redemption price and accrued and unpaid interest, if any,

(vii)    the name and address of the Paying Agent,

(viii)    that Notes called for redemption must be surrendered to the Paying Agent to collect the redemption price,

(ix)    the Common Code/ISIN numbers, that no representation is made as to the accuracy or correctness of the Common Code/ISIN numbers, if any, listed in such notice or printed on the Notes, and any redemption shall not be affected by any defect in such Common Code/ISIN numbers, and

(x)    the paragraph of the Notes pursuant to which the Notes are to be redeemed.

SECTION 5.6.    Deposit of Redemption Price. Prior to 12:00 p.m., London time, one Business Day prior to any Redemption Date, the Issuer shall deposit with the Paying Agent (or, if the Issuer, the Company or a Wholly Owned Subsidiary is a Paying Agent, shall segregate and hold in trust as provided in Section 2.4) an amount of money sufficient to pay the redemption price of, and accrued and unpaid interest on, all the Notes which are to be redeemed on that date other than Notes or portions of Notes called for redemption that are beneficially owned by the Issuer or the Company and have been delivered by the Issuer or the Company to the Trustee for cancellation.

SECTION 5.7.    Notes Payable on Redemption Date. Notice of redemption having been given as aforesaid, the Notes or portions of Notes so to be redeemed shall, on the Redemption Date, become due and payable at the redemption price therein specified (together with accrued and unpaid interest, if any, to the Redemption Date), and from and after such date (unless the Issuer shall default in the payment of the redemption price and accrued and unpaid interest) such Notes shall cease to bear interest. Upon surrender of any such Note for redemption in accordance with said notice, such Note shall be paid by the Issuer at the redemption price, together with accrued and unpaid interest, if any, to the Redemption Date (subject to the rights of Holders of record on the relevant record date to receive interest due on the relevant interest payment date).

If any Note called for redemption shall not be so paid upon surrender thereof for redemption, the principal (and premium and additional amounts, if any) shall, until paid, bear interest from the Redemption Date at the rate borne by the Notes.

SECTION 5.8.    Notes Redeemed in Part. Any Note which is to be redeemed only in part (pursuant to the provisions of this Article) shall be surrendered at the office or agency of the Issuer maintained for such purpose pursuant to Section 3.13 (with, if the Issuer or the Trustee so requires, due endorsement by, or a written instrument of transfer in form satisfactory to the Issuer and the Trustee duly executed by, the Holder thereof or such Holder's attorney duly authorized in writing), and the Issuer shall execute, and the Trustee shall authenticate and make available for delivery to the Holder of such Note at the expense of the Issuer, a new Note or Notes, of any authorized denomination as requested by such Holder, in an aggregate principal

- 81 -

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

amount equal to and in exchange for the unredeemed portion of the principal of the Note so surrendered, provided, that each such new Note will be issued in denominations of €100,000 or an integral multiple of €1,000 in excess thereof.

## ARTICLE VI

### Defaults and Remedies

SECTION 6.1.    Events of Default.  Each of the following is an "Event of Default":

(1)    default in any payment of interest or additional amounts, if any, on any Note when due, continued for 30 days;

(2)    default in the payment of principal of or premium, if any, on any Note when due at its Stated Maturity, upon optional redemption, upon required repurchase, upon acceleration or otherwise;

(3)    failure by the Issuer, the Company or any Subsidiary Guarantor to comply for 60 days after receipt of written notice given by the Trustee or the Holders of 25% in principal amount of the outstanding Notes of default under any of the obligations, covenants, or agreements of the Issuer, the Company or such Subsidiary Guarantor, as applicable, contained in this Indenture or the Notes;

(4)    default under any mortgage, indenture or instrument under which there may be issued or by which there may be secured or evidenced any Indebtedness for money borrowed by the Issuer, the Company or any of its Restricted Subsidiaries (or the payment of which is Guaranteed by the Issuer, the Company or any of its Restricted Subsidiaries), other than Indebtedness owed to the Issuer, the Company or a Restricted Subsidiary, whether such Indebtedness or Guarantee now exists, or is created after the date of this Indenture, which default:

(a) is caused by a failure to pay at the final Stated Maturity the stated principal amount of, or interest or premium, if any, on such Indebtedness (after giving effect to any applicable grace periods) ("payment default") or

(b) results in the acceleration of such Indebtedness prior to its maturity (the "cross acceleration provision");

and, in each case, the principal amount of any such Indebtedness, together with the principal amount of any other such Indebtedness under which there bas been a payment default or the maturity of which has been so accelerated, aggregates $25,000,000 or more;

(5)    the Company, the Issuer or a Significant Subsidiary or a group of Restricted Subsidiaries that, taken together (as of the latest audited consolidated financial statements for the Company and its Restricted Subsidiaries) would constitute a Significant Subsidiary pursuant to or within the meaning of any Bankruptcy Law:

(A) commences a voluntary case or proceeding;

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

(B) consents to the entry of a judgment, decree or order for relief against it in an involuntary case or proceeding;

(C) consents to the appointment of a Custodian of it or for any substantial part of its property;

(D) makes a general assignment for the benefit of its creditors;

(E) consents to or acquiesces in the institution of a bankruptcy or an insolvency proceeding against it;

(F) takes any corporate action to authorize or effect any of the foregoing; or

(G) takes any comparable action under any foreign laws relating to insolvency;

(6)      a court of competent jurisdiction enters an order or decree under any Bankruptcy Law that:

(A) is for relief in an involuntary case against the Issuer, the Company or any Significant Subsidiary or a group of Restricted Subsidiaries that, taken together (as of the latest audited consolidated financial statements for the Company and its Restricted Subsidiaries), would constitute a Significant Subsidiary pursuant to or within the meaning of the Bankruptcy Law;

(B) appoints a Custodian for all or substantially all of the property of the Issuer, the Company or any Significant Subsidiary or a group of Restricted Subsidiaries that, taken together (as of the latest audited consolidated financial statements for the Company and its Restricted Subsidiaries) would constitute a Significant Subsidiary pursuant to or within the meaning of the Bankruptcy Law;

(C) orders the winding up or liquidation of the Issuer, the Company or any Significant Subsidiary or a group of Restricted Subsidiaries that, taken together (as of the latest audited consolidated financial statements for the Company and its Restricted Subsidiaries) would constitute a Significant Subsidiary pursuant to or within the meaning of the Bankruptcy Law; and

(D) in each case, the order, decree or relief remains unstayed and in effect for 60 days;

(7)      failure by the Issuer, the Company or any Significant Subsidiary or group of Restricted Subsidiaries that, taken together (as of the latest audited consolidated financial statements for the Company and its Restricted Subsidiaries), would constitute a Significant Subsidiary to pay final judgments aggregating in excess of $25,000,000 (net of any amounts that a reputable and creditworthy insurance company has acknowledged liability for in writing), which judgments are not paid, discharged or stayed for a period of 60 days (the "judgment default provision"); or

(8)      any Notes Guarantee of the Company, a Significant Subsidiary or group of Restricted Subsidiaries that, taken together as of the latest audited consolidated financial

- 83 -

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

statements for the Company and its Restricted Subsidiaries would constitute a Significant Subsidiary ceases to be in full force and effect (except as contemplated by the terms of this Indenture) or is declared null and void in a judicial proceeding or the Company or any Subsidiary Guarantor denies or disaffirms its obligations under this Indenture or its Notes Guarantee.

The foregoing shall constitute Events of Default whatever the reason for any such Event of Default and whether it is voluntary or involuntary or is effected by operation of law or pursuant to any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body.

The Issuer shall deliver to the Trustee, promptly, but in no event later than 30 days after, an Officer of the Issuer becomes aware of any events which would constitute an Event of Default under clauses (3), (4), (5), (6), (7) or (8) of this Section 6.1 in the form of an Officer's Certificate, which Officer's Certificate shall provide their status and what action the Issuer is taking or proposing to take in respect thereof.

SECTION 6.2.    Acceleration.  If an Event of Default (other than an Event of Default described in clauses (5) and (6) of Section 6.1) occurs and is continuing, the Trustee by notice to the Issuer, or the Holders of at least 25% in principal amount of the outstanding Notes by written notice to the Issuer and the Trustee, may, and the Trustee at the request of such Holders shall, declare the principal of, premium, if any, and accrued and unpaid interest and additional amounts, if any, on all the Notes to be due and payable.  Upon such a declaration, such principal, premium and accrued and unpaid interest and additional amounts shall be due and payable immediately.

In the event of a declaration of acceleration of the Notes because an Event of Default described in clause (4) of Section 6.1 has occurred and is continuing, the declaration of acceleration of the Notes shall be automatically annulled if the event of default or payment default triggering such Event of Default pursuant to clause (4) of Section 6.1 shall be remedied or cured by the Issuer, the Company or a Restricted Subsidiary or waived by the holders of the relevant Indebtedness within 20 days after the declaration of acceleration with respect thereto and if (1) the annulment of the acceleration of the Notes would not conflict with any judgment or decree of a court of competent jurisdiction and (2) all existing Events of Default, except nonpayment of principal, premium, interest, or additional amounts on the Notes that became due solely because of the acceleration of the Notes, have been cured or waived.

If an Event of Default described in clauses (5) and (6) of Section 6.1 occurs and is continuing, the principal of, premium, if any, and accrued and unpaid interest and additional amounts on all the Notes shall become and be immediately due and payable without any declaration or other act on the part of the Trustee or any Holders.

SECTION 6.3.    Other Remedies.  If an Event of Default occurs and is continuing, the Trustee may pursue any available remedy by proceeding at law or in equity to collect the payment of principal of (or premium, if any) or interest on the Notes or to enforce the performance of any provision of the Notes or this Indenture.

confidential
Annie Li
Aug 25, 2015 21:20

us\WONGJA\7929518.7

Annie Li
Aug 25, 2015 21:20

The Trustee may maintain a proceeding even if it does not possess any of the Notes or does not produce any of them in the proceeding. A delay or omission by the Trustee or any Holder in exercising any right or remedy accruing upon an Event of Default shall not impair the right or remedy or constitute a waiver of or acquiescence in the Event of Default. No remedy is exclusive of any other remedy. All available remedies are cumulative.

SECTION 6.4.    Waiver of Past Defaults. The Holders of a majority in principal amount of the outstanding Notes by notice to the Trustee may waive (including, without limitation, consents obtained in connection with a purchase of, or tender offer or exchange offer for, Notes) an existing Default or Event of Default and rescind any such acceleration with respect to the Notes and its consequences except (i) a Default or Event of Default in the payment of the principal, premium, interest or additional amounts on the Notes or (ii) a Default or Event of Default in respect of a provision that under Section 9.2 cannot be amended without the consent of each Holder affected, if (1) recission would not conflict with any judgment or decree of a court of competent jurisdiction and (2) all existing Events of Default, other than the nonpayment of the principal of, premium and additional amounts, if any, and interest on the Notes that have become due solely by such declaration of acceleration, have been cured or waived. When a Default or Event of Default is waived, it is deemed cured, but no such waiver shall extend to any subsequent or other Default or Event of Default or impair any consequent right.

SECTION 6.5.    Control by Majority. The Holders of a majority in principal amount of the outstanding Notes may direct the time, method and place of conducting any proceeding for any remedy available to the Trustee or of exercising any trust or power conferred on the Trustee. However, the Trustee may refuse to follow any direction that conflicts with law or this Indenture or, subject to Sections 7.1 and 7.2, that the Trustee determines is unduly prejudicial to the rights of other Holders or would involve the Trustee in personal liability; provided, however, that the Trustee may take any other action deemed proper by the Trustee that is not inconsistent with such direction. Prior to taking any action hereunder, the Trustee shall be entitled to indemnification satisfactory to it in its sole discretion against all losses and expenses caused by taking or not taking such action.

SECTION 6.6.    Limitation on Suits. Subject to the provisions of this Indenture relating to the duties of the Trustee, if an Event of Default occurs and is continuing, the Trustee shall be under no obligation to exercise any of the rights or powers under this Indenture at the request or direction of any of the Holders unless such Holders have offered to the Trustee indemnity or security against any loss, liability or expense. Except to enforce the right to receive payment of principal, premium and additional amounts, if any, or interest when due, no Holder may pursue any remedy with respect to this Indenture or the Notes unless:

(1)    such Holder has previously given the Trustee notice that an Event of Default is continuing;

(2)    Holders of at least 25% in principal amount of the outstanding Notes have requested the Trustee to pursue the remedy;

(3)    such Holders have offered the Trustee security or indemnity against any loss, liability or expense;

- 85 -

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

(4)    the Trustee has not complied with such request within 60 days after the receipt of the request and the offer of security or indemnity; and

(5)    the Holders of a majority in principal amount of the outstanding Notes have not given the Trustee a direction that, in the opinion of the Trustee, is inconsistent with such request within such 60-day period.

A Holder may not use this Indenture to prejudice the rights of another Holder or to obtain a preference or priority over another Holder.

SECTION 6.7.    Rights of Holders to Receive Payment.  Notwithstanding any other provision of this Indenture (including, without limitation, Section 6.6), the right of any Holder to receive payment of principal of, premium and additional amounts, if any, or interest on the Notes held by such Holder, on or after the respective due dates expressed in the Notes, or to bring suit for the enforcement of any such payment on or after such respective dates, shall not be impaired or affected without the consent of such Holder.

SECTION 6.8.    Collection Suit by Trustee.  If an Event of Default specified in clauses (1) or (2) of Section 6.1 occurs and is continuing, the Trustee may recover judgment in its own name and as trustee of an express trust against the Issuer for the whole amount then due and owing (together with interest on any unpaid interest to the extent lawful) and the amounts provided for in Section 7.7.

SECTION 6.9.    Trustee May File Proofs of Claim.  The Trustee may file such proofs of claim and other papers or documents as may be necessary or advisable in order to have the claims of the Trustee (including any claim for the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and counsel) and the Holders allowed in any judicial proceedings (including, in particular, any insolvency proceedings pursuant to any Bankruptcy Law) relative to the Issuer, the Company, the Subsidiaries or its or their respective creditors or properties and, unless prohibited by law or applicable regulations, may be entitled and empowered to participate as a member of any official committee of creditors appointed in such matter and may vote on behalf of the Holders in any election of a trustee in bankruptcy or other Person performing similar functions, and any Custodian in any such judicial proceeding is hereby authorized by each Holder to make payments to the Trustee and, in the event that the Trustee shall consent to the making of such payments directly to the Holders, to pay to the Trustee any amount due it, its agents and its counsel pursuant to Section 7.7 and any other amounts due the Trustee hereunder.  In the event of the opening in France of any insolvency proceeding pursuant to any Bankruptcy Law (*redressement judiciaire* or *liquidation judiciaire* under Articles L.631-1 *et seq*. and L.640-1 et seq. of the French Commercial Code or *sauvegarde* under Articles L.620-1 *et seq*. of the French Commercial Code) relative to the Issuer, the Company, or any Subsidiary Guarantors or other obligor upon the Notes, if and so long as the Notes are represented by one or more Global Notes, the Common Depositary, as absolute owner of the Global Notes, shall reiterate this power of attorney by delivering an *ad litem* power of attorney substantially in the form of Exhibit D hereto (an "*Ad Litem Power*") in favor of the Trustee. If Definitive Notes are issued, any Holder of a Definitive Note shall also, within fifteen (15) Business Days of the publication in the BODACC (*Bulletin Officiel des Annonces Civiles et Commerciales*) of the judgment opening the relevant insolvency proceeding, deliver an *Ad Litem*

- 86 -

confidential
Annie Li
Aug 25, 2015 21:20

confidential
Annie Li
Aug 25, 2015 21:20

Power substantially in the form of Exhibit D hereto in favor of the Trustee to file such proofs of claim and other papers or documents as may be necessary or advisable in order to have the claims of the Definitive Note allowed in such proceedings. Nothing herein contained shall be deemed to authorize the Trustee to authorize or consent to or accept or adopt on behalf of any Holder any plan of reorganization, arrangement, adjustment or composition affecting the Notes or the rights of any Holder thereof, or to authorize the Trustee to vote in respect of the claim of any Holder in any such proceeding.

SECTION 6.10.  Priorities.  If the Trustee collects any money or property pursuant to this Article VI, it shall pay out the money or property in the following order:

First: to the Trustee for amounts due under Section 7.7;

Second: to Holders for amounts due and unpaid on the Notes for principal and interest, ratably, without preference or priority of any kind, according to the amounts due and payable on the Notes for principal and interest, respectively; and

Third: to the Issuer.

The Trustee may fix a record date and payment date for any payment to Holders pursuant to this Section.  At least 15 days before such record date, the Issuer shall mail to each Holder and the Trustee a notice that states the record date, the payment date and amount to be paid.

SECTION 6.11.  Undertaking for Costs.  In any suit for the enforcement of any right or remedy under this Indenture or in any suit against the Trustee for any action taken or omitted by it as Trustee, a court in its discretion may require the filing by any party litigant in the suit of an undertaking to pay the costs of the suit, and the court in its discretion may assess reasonable costs, including reasonable attorneys' fees and expenses, against any party litigant in the suit, having due regard to the merits and good faith of the claims or defenses made by the party litigant.  This Section does not apply to a suit by the Trustee, a suit by the Issuer, a suit by a Holder pursuant to Section 6.7 or a suit by Holders of more than 10% in outstanding principal amount of the Notes.

## ARTICLE VII

### Trustee and Agents

SECTION 7.1.    Duties of Trustee.  (a) If an Event of Default has occurred and is continuing, the Trustee shall exercise the rights and powers vested in it by this Indenture and use the same degree of care and skill in their exercise as a prudent Person would exercise or use under the circumstances in the conduct of such Person's own affairs; provided that if an Event of Default occurs and is continuing, the Trustee shall be under no obligation to exercise any of the rights or powers under this Indenture at the request or direction of any of the Holders unless such Holders have offered the Trustee indemnity or security satisfactory to the Trustee in its sole discretion against loss, liability or expense.

(b)      Except during the continuance of an Event of Default:

confidential
Annie Li
Aug 25, 2015 21:20

us\WONGJA\7929518.7

Annie Li
Aug 25, 2015 21:20

(1)     the Trustee undertakes to perform such duties and only such duties as are specifically set forth in this Indenture and no implied covenants or obligations shall be read into this Indenture against the Trustee; and

(2)     in the absence of bad faith on its part, the Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon certificates or opinions furnished to the Trustee and conforming to the requirements of this Indenture.  However, in the case of any such certificates or opinions which by any provisions hereof are specifically required to be furnished to the Trustee, the Trustee shall examine such certificates and opinions to determine whether or not they conform to the requirements of this Indenture (but need not confirm or investigate the accuracy of mathematical calculations or otherwise verify the contents thereof).

(c)     The Trustee may not be relieved from liability for its own negligent action, its own negligent failure to act or its own willful misconduct, except that:

(1)     this paragraph does not limit the effect of paragraph (b) of this Section;

(2)     the Trustee shall not be liable for any error of judgment made in good faith by a Responsible Officer unless it is proved that the Trustee was negligent in ascertaining the pertinent facts; and

(3)     the Trustee shall not be liable with respect to any action it takes or omits to take in good faith in accordance with a direction received by it pursuant to Section 6.5 or Section 6.6.

(d)     The Trustee and Agents shall not be liable for interest on any money received by it except as the Trustee may agree in writing with the Issuer.

(e)     Money held in trust by the Trustee and Agents need not be segregated from other funds except to the extent required by law.

(f)     No provision of this Indenture shall require the Trustee or Agents to expend or risk its own funds or otherwise incur any liability in the performance of any of its duties hereunder or in the exercise of any of its rights or powers, if it shall have reasonable grounds to believe that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it.

(g)     The Trustee shall be under no obligation to exercise any of the rights or powers vested in it by this Indenture at the request or direction of any of the Holders unless such Holders shall have offered to the Trustee security or indemnity satisfactory to it against the costs, expenses (including reasonable attorneys' fees and expenses) and liabilities that might be incurred by it in compliance with such request or direction.

SECTION 7.2.    Rights of Trustee. (a) The Trustee and Agents may conclusively rely and shall be protected in acting or refraining from acting upon any paper or document believed

- 88 -

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

by it to be genuine and to have been signed or presented by the proper Person or Persons. The Trustee need not investigate any fact or matter stated in the document.

(b)    Before the Trustee acts or refrains from acting, it may require an Officer's Certificate or an Opinion of Counsel or both. The Trustee shall not be liable for any action it takes or omits to take in good faith in reliance on the Officer's Certificate or Opinion of Counsel.

(c)    The Trustee may act through its attorneys and agents and shall not be responsible for the misconduct or negligence of any attorney or agent appointed with due care.

(d)    The Trustee shall not be liable for any action it takes or omits to take in good faith which it believes to be authorized or within its rights or powers; provided, however, that the Trustee's conduct does not constitute willful misconduct or negligence.

(e)    The Trustee may consult with counsel of its selection, and the advice or opinion of counsel with respect to legal matters relating to this Indenture and the Notes shall be full and complete authorization and protection from liability in respect to any action taken, omitted or suffered by it hereunder in good faith and in accordance with the advice or opinion of such counsel.

(f)    The Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, notice, request, direction, consent, order, bond or other paper or document; but the Trustee may make such further inquiry or investigation into such facts or matters as it may see fit and, if the Trustee shall determine to make such further inquiry or investigation, it shall be entitled to examine the books, records and premises of the Issuer, the Company and its Subsidiaries at reasonable times and in a reasonable manner, personally or by agent or attorney at the sole cost of the Issuer and shall incur no liability or additional liability of any kind by reason of such inquiry or investigation.

(g)    The Trustee shall not be deemed to have knowledge of any Default or Event of Default except (i), during any period it is serving as Registrar and Paying Agent for the Notes, any Event of Default occurring pursuant to Section 6.1(1) and 6.1(2), or (ii) any Default or Event of Default of which a Responsible Officer shall have received written notification or obtained "actual knowledge." "Actual knowledge" shall mean the actual fact or statement of knowing by a Responsible Officer without independent investigation with respect thereto.

(h)    Delivery of the reports, information and documents to the Trustee pursuant to Section 3.2 is for informational purposes only and the Trustee's receipt of such shall not constitute constructive notice of any information contained therein or determinable from information contained therein, including the Issuer's compliance with any of its covenants hereunder (as to which the Trustee is entitled to rely exclusively on Officer's Certificates).

(i)    In no event shall the Trustee or any Agent be responsible or liable for special, indirect, or consequential loss or damage of any kind whatsoever (including, but not limited to, loss of profit) irrespective of whether the Trustee has been advised of the likelihood of such loss or damage and regardless of the form of action.

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

(j)     The rights, privileges, protections, immunities and benefits given to the Trustee, including, without limitation, its right to be indemnified, are extended to, and shall be enforceable by, the Trustee in each of its capacities hereunder, and each agent, custodian and other Person employed to act hereunder.

(k)     The Trustee may request that the Issuer deliver an Officer's Certificate setting forth the names of individuals and/or titles of officers authorized at such time to take specified actions pursuant to this Indenture, which Officer's Certificate may be signed by any person authorized to sign an Officer's Certificate, including any person specified as so authorized in any such certificate previously delivered and not superseded.

SECTION 7.3.    Individual Rights of Trustee. The Trustee in its individual or any other capacity may become the owner or pledgee of Notes and may otherwise deal with the Issuer or its Affiliates with the same rights it would have if it were not Trustee. Any Paying Agent, Registrar or co-paying agent may do the same with like rights. In addition, the Trustee shall be permitted to engage in transactions with the Issuer; provided, however, that if the Trustee acquires any conflicting interest the Trustee must (i) eliminate such conflict within 90 days of acquiring such conflicting interest, (ii) apply to the SEC for permission to continue acting as Trustee or (iii) resign.

SECTION 7.4.    Trustee's Disclaimer. The Trustee shall not be responsible for and makes no representation as to the validity or adequacy of this Indenture or the Notes, it shall not be accountable for the Issuer's use of the Notes or the proceeds from the Notes, and it shall not be responsible for any statement of the Issuer, the Company or the Subsidiary Guarantors in this Indenture or in any document issued in connection with the sale of the Notes or in the Notes other than the Trustee's certificate of authentication or for the use or application of any funds received by any Paying Agent other than the Trustee.

SECTION 7.5.    Notice of Defaults. If a Default or Event of Default occurs and is continuing and if a Responsible Officer has actual knowledge thereof, the Trustee shall mail to each Holder notice of the Default or Event of Default within 90 days after it occurs. Except in the case of a Default or Event of Default in payment of principal of, premium and additional amounts (if any), or interest on any Note (including payments pursuant to the required repurchase provisions of such Note, if any), the Trustee may withhold the notice if and so long as its board of directors, a committee of its board of directors or a committee of its Responsible Officers and/or a Responsible Officer in good faith determines that withholding the notice is in the interests of Holders.

SECTION 7.6.    Notice of Listing. The Issuer agrees to notify promptly the Trustee in writing whenever the Notes become listed on any stock exchange and of any delisting thereof.

SECTION 7.7.    Compensation and Indemnity. The Issuer, the Company and the Subsidiary Guarantors, jointly and severally, shall pay to the Trustee and Agents from time to time such compensation for its services as the parties shall agree in writing from time to time. The Trustee's and Agents' compensation shall not be limited by any law on compensation of a trustee of an express trust. The Issuer, the Company and the Subsidiary Guarantors, jointly and severally, shall reimburse the Trustee and Agents upon request for all reasonable out-of-pocket

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

expenses, disbursements and advances incurred or made by it, including, but not limited to, costs of collection, costs of preparing and reviewing reports, certificates and other documents, costs of preparation and mailing of notices to Holders and reasonable costs of counsel retained by the Trustee or Agents in connection with the delivery of an Opinion of Counsel or otherwise, in addition to the compensation for its services. Such expenses shall include the reasonable compensation and expenses, disbursements and advances of the Trustee's agents, counsel, accountants and experts. The Issuer, the Company and the Subsidiary Guarantors, jointly and severally, shall indemnify the Trustee or Agents, and each of its officers, directors, counsel and agents, against any and all loss, liability or expense (including, but not limited to, reasonable attorneys' fees and expenses) incurred by it in connection with the acceptance or administration of this trust and the performance of its duties hereunder, including the costs and expenses of enforcing this Indenture (including this Section 7.7) and the Notes and of defending itself against any claims (whether asserted by any Holder, the Issuer or otherwise). The Trustee or Agents shall notify the Issuer promptly of any claim for which it may seek indemnity. Failure by the Trustee or Agents to so notify the Issuer shall not relieve the Issuer of its obligations hereunder. The Issuer shall defend the claim and the Trustee or Agents may have separate counsel and the Issuer shall pay the fees and expenses of such counsel. The Issuer, the Company and the Subsidiary Guarantors need not reimburse any expense or indemnify against any loss, liability or expense incurred by the Trustee through the Trustee's own willful misconduct, negligence or bad faith, subject to the exceptions contained in Section 7.1(c) hereof.

To secure the Issuer's, the Company's and the Subsidiary Guarantors' payment obligations in this Section, the Trustee shall have a lien prior to the Notes on all money or property held or collected by the Trustee other than money or property held in trust to pay principal of and interest on particular Notes. The Trustee's and Agents' right to receive payment of any amounts due under this Section 7.7 shall not be subordinate to any other liability or indebtedness of the Issuer, the Company or the Subsidiary Guarantors.

The Issuer's payment obligations pursuant to this Section and any lien arising hereunder shall survive the discharge of this Indenture and the resignation or removal of the Trustee or Agents. When the Trustee incurs expenses after the occurrence of a Default specified in Sections 6.1(5) or 6.1(6), the expenses are intended to constitute expenses of administration under any Bankruptcy Law.

SECTION 7.8.    Replacement of Trustee or Agents. The Trustee or an Agent may resign at any time by so notifying the Issuer. The Holders of a majority in principal amount of the Notes may remove the Trustee or an Agent by so notifying the Issuer and the Trustee or such Agent, as the case may be, in writing and may appoint a successor Trustee or Agent, as the case may be. The Issuer shall remove the Trustee if:

(1) the Trustee or Agent is adjudged bankrupt or insolvent;

(2) a receiver or other public officer takes charge of the Trustee, an Agent or their respective property; or

(3) the Trustee or an Agent otherwise becomes incapable of acting.

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

If the Trustee or an Agent resigns or is removed by the Issuer or by the Holders of a majority in principal amount of the Notes and such Holders do not reasonably promptly appoint a successor Trustee or Agent, as the case may be, or if a vacancy exists in the office of Trustee or Agent for any reason (the Trustee or Agent in such event being referred to herein as the retiring Trustee or Agent, respectively), the Issuer shall promptly appoint a successor Trustee or Agent, as the case may be.

A successor Trustee or Agent shall deliver a written acceptance of its appointment to the retiring Trustee or Agent, as the case may be, and to the Issuer.  Thereupon the resignation or removal of the retiring Trustee or Agent shall become effective, and the successor Trustee or Agent shall have all the rights, powers and duties of the Trustee or Agent under this Indenture.  The successor Trustee or Agent shall mail a notice of its succession to Holders.  The retiring Trustee or Agent shall promptly transfer all property held by it as Trustee or Agent to the successor Trustee or Agent, provided that all sums owing to the Trustee or Agent hereunder have been paid and subject to the lien provided for in Section 7.7.

If a successor Trustee or Agent does not take office within 60 days after the retiring Trustee or Agent resigns or is removed, the retiring Trustee or Agent, as the case may be, or the Holders of 10% in principal amount of the Notes may petition, at the expense of the Issuer, any court of competent jurisdiction for the appointment of a successor Trustee or Agent, as the case may be.

Notwithstanding the replacement of the Trustee or Agent pursuant to this Section 7.8, the Issuer's obligations under Section 7.7 shall continue for the benefit of the retiring Trustee or Agent.

SECTION 7.9.    Successor Trustee by Merger.  If the Trustee or Agent consolidates with, merges or converts into, or transfers all or substantially all its corporate trust business or assets to, another corporation, banking association or other entity, the resulting, surviving or transferee entity without any further act shall be the successor Trustee or Agent.

In case at the time such successor or successors by merger, conversion or consolidation to the Trustee shall succeed to the trusts created by this Indenture, any of the Notes shall have been authenticated but not delivered, any such successor to the Trustee may adopt the certificate of authentication of any predecessor trustee, and deliver such Notes so authenticated; and in case at that time any of the Notes shall not have been authenticated, any successor to the Trustee may authenticate such Notes either in the name of any predecessor hereunder or in the name of the successor to the Trustee; and in all such cases such certificates shall have the full force which it is anywhere in the Notes or in this Indenture provided that the certificate of the Trustee shall have.

# ARTICLE VIII

## Discharge of Indenture; Defeasance

SECTION 8.1.    Satisfaction and Discharge.  (a) Subject to Section 8.1(c), this Indenture will be discharged and will cease to be of further effect as to all Notes issued hereunder when (i)

- 92 -

confidential
Annie Li
Aug 25, 2015 21:20

confidential
Annie Li
Aug 25, 2015 21:20

either (x) all Notes that have been authenticated (except lost, stolen or destroyed Notes that have been replaced or paid and Notes for whose payment money has been deposited in trust or segregated and held in trust by the Issuer and thereafter repaid to the Issuer or discharged from such trust) have been delivered to the Trustee for cancellation; or (y) all Notes that have not been delivered to the Trustee for cancellation have become due and payable by reason of the mailing of a notice of redemption or otherwise will become due and payable within one year or are to be called for redemption within one year under arrangements satisfactory to the Trustee for the giving of notice of redemption by the Trustee pursuant to Article V hereof in the name, and at the expense, of the Issuer, and the Issuer, the Company or any Subsidiary Guarantor has irrevocably deposited or caused to be deposited with the Trustee as trust funds in trust solely for the benefit of the Holders cash in Euro, non-callable Government Obligations, or a combination thereof, in such amounts as will be sufficient, without consideration of any reinvestment of interest, to pay and discharge the entire Indebtedness on the Notes not delivered to the Trustee for cancellation for principal, premium and additional amounts, if any, and accrued interest to the date of maturity or redemption; (ii) no Default or Event of Default has occurred and is continuing on the date of the deposit (other than a Default or Event of Default resulting from the borrowing of funds to be applied to such deposit and the granting of Liens in connection therewith) and the deposit will not result in a breach or violation of, or constitute a default under, any other instrument to which the Issuer, the Company or any Subsidiary Guarantor is bound; (iii) the Issuer, the Company or any Subsidiary Guarantor has paid or caused to be paid all sums payable by it under this Indenture and not provided for by the deposit required by Section 8.1(a)(i)(y) hereof ; and (iv) the Issuer has delivered irrevocable instructions to the Trustee under this Indenture to apply the deposited money toward the payment of the Notes at maturity or on the Redemption Date, as the case may be.

In addition, the Issuer shall deliver an Officer's Certificate and an Opinion of Counsel to the Trustee stating that all conditions precedent to satisfaction and discharge have been satisfied.

(b)     Subject to Sections 8.1(c) and 8.2, the Issuer at its option and at any time may terminate (i) all the obligations of the Issuer, the Company and any Subsidiary Guarantor under the Notes, the Notes Guarantees and this Indenture ("legal defeasance option"), and after giving effect to such legal defeasance, any omission to comply with such obligations shall no longer constitute a Default or Event of Default or (ii) the obligations of the Issuer, the Company and any Subsidiary Guarantor under Sections 3.2, 3.3, 3.4, 3.5, 3.6, 3.7, 3.8, 3.9 and 4.1 (iii) and the Issuer and the Company may omit to comply with and shall have no liability in respect of any term, condition or limitation set forth in any such covenant or provision, whether directly or indirectly, by reason of any reference elsewhere herein to any such covenant or provision or by reason of any reference in any such covenant to any other provision herein or in any other document and such omission to comply with such covenants or provisions shall no longer constitute a Default or an Event of Default under Sections 6.1(3) , 6.1(4), 6.1(5), (but only with respect to a Significant Subsidiary or a group of Restricted Subsidiaries that would constitute a Significant Subsidiary), 6.1(6) (but only with respect to a Significant Subsidiary or group of Restricted Subsidiaries that would constitute a Significant Subsidiary), 6.1(7) and 6.1(8) ("covenant defeasance option"), but except as specified above, the remainder of this Indenture and the Notes shall be unaffected thereby. The Issuer may exercise its legal defeasance option notwithstanding its prior exercise of its covenant defeasance option.

confidential
Annie Li
Aug 25, 2015 21:20

us\WONGJA\7929518.7

Annie Li
Aug 25, 2015 21:20

If the Issuer exercises its legal defeasance option, payment of the Notes may not be accelerated because of an Event of Default, and the Notes Guarantees in effect at such time shall terminate. If the Issuer exercises its covenant defeasance option, payment of the Notes may not be accelerated because of an Event of Default specified in Sections 6.1(3) (but only as it relates to an Event of Default as a result of a default under Section 4.1(a)(iii) or Section 4.1(b)(iii)), Sections 3.2, 3.3, 3.4, 3.5, 3.6, 3.7, 3.8, and 3.9), 6.1(4), 6.1(5) (but only with respect to a Significant Subsidiary or a group of Restricted Subsidiaries that would constitute a Significant Subsidiary), 6.1(6) (but only with respect to a Significant Subsidiary or a group of Restricted Subsidiaries that would constitute a Significant Subsidiary), 6.1(7) and 6.1(8) or because of the failure to comply with clauses (a)(iii) or (b)(iii) of Article IV.

Upon satisfaction of the conditions set forth herein and upon request of the Issuer, the Trustee shall acknowledge in writing the discharge of those obligations that the Issuer terminates.

(c) Notwithstanding the provisions of Sections 8.1(a) and (b), the Company's obligations in Sections 2.3, 2.4, 2.5, 2.6, 7.1, 7.2, 7.7, 7.8, 8.4, 8.5 and 8.6 shall survive until the Notes have been paid in full. Thereafter, the Company's and the Subsidiary Guarantors' obligations in Sections 7.7, 8.4 and 8.5 shall survive.

SECTION 8.2. Conditions to Defeasance. The Issuer may exercise its legal defeasance option or its covenant defeasance option only if:

(1) the Issuer shall irrevocably deposit in trust (the "defeasance trust") with the Trustee for the benefit of the Holders money in Euro or Euro-denominated Government Obligations or a combination thereof the principal of and interest (without reinvestment) on which shall be sufficient, or a combination thereof sufficient, for the payment of principal, premium and additional amounts, if any, and interest on the Notes to redemption or maturity, as the case may be;

(2) the Issuer shall deliver to the Trustee a certificate from a nationally recognized firm of independent accountants expressing their opinion that the payments of principal and interest when due and without reinvestment on the deposited Euro-denominated Government Obligations plus any deposited money without investment shall provide cash at such times and in such amounts as shall be sufficient to pay principal, premium and additional amounts, if any, and interest when due on all the Notes to redemption or maturity;

(3) no Default or Event of Default shall have occurred and be continuing on the date of such deposit (other than a Default or Event of Default with respect to this Indenture resulting from the incurrence of Indebtedness, all or a portion of which shall be used to defease the Notes concurrently with such incurrence);

(4) such legal defeasance or covenant defeasance shall not result in a breach or violation of, or constitute a Default under this Indenture or any other material agreement or instrument to which the Issuer, the Company or any of its Subsidiaries is a party or by which the Issuer, the Company or any of its Subsidiaries is bound;

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

(5)    the Issuer shall have delivered to the Trustee an Opinion of Counsel to the effect that (A) the Notes and (B) assuming no intervening bankruptcy of the Issuer between the date of deposit and the 91st day following the deposit and that no Holder is an insider of the Issuer, after the 91st day following the deposit, the trust funds shall not be subject to the effect of any applicable bankruptcy, insolvency, reorganization or similar laws affecting creditors' right generally;

(6)    the deposit does not constitute a default under any other agreement binding on the Issuer;

(7)    the Issuer delivers to the Trustee an Opinion of Counsel to the effect that the trust resulting from the deposit does not constitute, or is qualified as, a regulated investment company under the Investment Company Act of 1940;

(8)    in the case of the legal defeasance option, the Issuer shall have delivered to the Trustee (a) an Opinion of Counsel in the United States stating that (i) the Issuer has received from, or there has been published by, the Internal Revenue Service a ruling, or (ii) since the date of this Indenture there has been a change in the applicable federal income tax law, in either case to the effect that, and based thereon such Opinion of Counsel shall confirm that, Holders and beneficial owners of the Notes will not recognize income, gain or loss for U.S. federal income tax purposes as a result of such legal defeasance and will be subject to U.S. federal income tax on the same amounts and in the same manner and at the same times as would have been the case if such deposit and legal defeasance had not occurred; and (b) an Opinion of Counsel in the Tax Jurisdiction(s) of the Issuer (including any Successor Issuer) to the effect that Holders and beneficial owners of the Notes will not recognize income, gain or loss for the income tax purposes of such Tax Jurisdiction(s) as a result of such deposit and defeasance and will be subject to income tax on the same amounts, in the same manner and at the same times as would have been the case if such defeasance had not occurred;

(9)    in the case of the covenant defeasance option, the Issuer shall have delivered to the Trustee (a) an Opinion of Counsel in the United States to the effect that the Holders and beneficial owners of the Notes will not recognize income, gain or loss for U.S. federal income tax purposes as a result of such deposit and covenant defeasance and shall be subject to U.S. federal income tax on the same amounts, in the same manner and at the same times as would have been the case if such deposit and covenant defeasance had not occurred and (b) an Opinion of Counsel in the Tax Jurisdiction(s) of the Issuer (including any Successor Issuer) to the effect that Holders and beneficial owners of the Notes will not recognize income, gain or loss for the income tax purposes of such Tax Jurisdiction(s) as a result of such deposit and defeasance and will be subject to income tax on the same amounts, in the same manner and at the same times as would have been the case if such defeasance had not occurred; and

(10)    the Issuer delivers to the Trustee an Officer's Certificate and an Opinion of Counsel, each stating that all conditions precedent to the defeasance and discharge of the Notes and this Indenture as contemplated by this Article VIII have been complied with.

SECTION 8.3.    Application of Trust Money.  The Trustee shall hold in trust money or Government Obligations deposited with it pursuant to this Article VIII.  It shall apply the

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

deposited money and the money from Government Obligations through the Paying Agent and in accordance with this Indenture to the payment of principal of and interest on the Notes.

SECTION 8.4.    Repayment to the Issuer.  Anything herein to the contrary notwithstanding, the Trustee shall deliver or pay to the Issuer from time to time upon Issuer Order any money or Government Obligations held by it as provided in this Article VIII which, in the opinion of a nationally recognized firm of independent public accountants expressed in a written certification thereof delivered to the Trustee, are in excess of the amount thereof which would then be required to be deposited to effect legal defeasance or covenant defeasance, as applicable, provided that the Trustee shall not be required to liquidate any Government Obligations in order to comply with the provisions of this paragraph.

Subject to any applicable abandoned property law, the Trustee and the Paying Agent shall pay to the Issuer upon written request any money held by them for the payment of principal of or interest on the Notes that remains unclaimed for two years, and, thereafter, Holders entitled to the money must look to the Issuer for payment as general creditors.

SECTION 8.5.    Indemnity for Government Obligations.  The Issuer shall pay and shall indemnify the Trustee against any tax, fee or other charge imposed on or assessed against deposited Government Obligations or the principal and interest received on such Government Obligations.

SECTION 8.6.    Reinstatement.  If the Trustee or Paying Agent is unable to apply any money or Government Obligations in accordance with this Article VIII by reason of any legal proceeding or by reason of any order or judgment of any court or governmental authority enjoining, restraining or otherwise prohibiting such application, the obligations of the Issuer under this Indenture and the Notes shall be revived and reinstated as though no deposit had occurred pursuant to this Article VIII until such time as the Trustee or Paying Agent is permitted to apply all such money or Government Obligations in accordance with this Article VII; provided, however, that, if the Issuer has made any payment of interest on or principal of any Notes because of the reinstatement of its obligations, the Issuer shall be subrogated to the rights of the Holders of such Notes to receive such payment from the money or Government Obligations held by the Trustee or Paying Agent.

## ARTICLE IX

### Amendments

SECTION 9.1.    Without Consent of Holders.  The Issuer, the Company, the Guarantors and the Trustee may amend or supplement this Indenture, a Notes Guarantee or the Notes without notice to or consent of any Holder to:

(1)    cure any ambiguity, omission, defect or inconsistency; provided that such modification or amendment does not adversely affect the interests of the Holders in any material respect; provided, further, that any amendment made solely to conform the provisions of this Indenture to the description of the Notes contained in the Offering Memorandum will not be deemed to adversely affect the interests of the Holders;

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

(2)     provide for the assumption by a successor corporation of the obligations of the Issuer, the Company or any Subsidiary Guarantor under this Indenture;

(3)     provide for uncertificated Notes in addition to or in place of certificated Notes (provided, that the uncertificated Notes are issued in registered form for purposes of Section 163(f) of the Code, or in a manner such that the uncertificated Notes are described in Section 163(f)(2)(B) of the Code);

(4)     add Guarantees with respect to the Notes or release a Subsidiary Guarantor in accordance with the terms of this Indenture or upon its designation as an Unrestricted Subsidiary; provided, however, that the designation is in accord with the applicable provisions of this Indenture;

(5)     secure the Notes;

(6)     evidence and provide for successor trustees;

(7)     add to the covenants of the Issuer or the Company for the benefit of the Holders or surrender any right or power conferred upon the Issuer or the Company;

(8)     make any change that does not adversely affect the rights of any Holder;

(9)     comply with any requirement of the SEC in connection with the qualification of this Indenture under the TIA;

(10)    provide for a reduction in the minimum denominations of the Notes; or

(11)    provide for the issuance of Additional Notes.

After an amendment or supplement under this Section becomes effective, the Issuer shall mail to Holders a notice briefly describing such amendment or supplement.  The failure to give such notice to all Holders, or any defect therein, shall not impair or affect the validity of an amendment or supplement under this Section.

For the avoidance of doubt, the provisions of articles 86 to 94-8 of the Luxembourg act dated August 10, 1915 on commercial companies, as amended, will not apply to the Notes.

SECTION 9.2.     With Consent of Holders.  The Issuer, the Company, the Subsidiary Guarantors and the Trustee may amend or supplement this Indenture, a Notes Guarantee or the Notes without notice to any Holder but with the written consent of the Holders of a majority in principal amount of the Notes then outstanding (including, without limitation, consents obtained in connection with a purchase of, or tender offer or exchange offer for, Notes).  Any past default or non-compliance with any provision of this Indenture, a Notes Guarantee or the Notes may be waived with the consent of the Holders of a majority in principal amount of the Notes then outstanding (including, without limitation, consents obtained in connection with a purchase of, or tender offer or exchange offer for, Notes).  However, without the consent of each Holder affected, an amendment, supplement or waiver may not (with respect to any Notes held by a non-consenting Holder):

- 97 -

confidential
Annie Li
Aug 25, 2015 21:20

confidential
Annie Li
Aug 25, 2015 21:20

(1)    reduce the principal amount of Notes outstanding whose Holders must consent to an amendment;

(2)    reduce the stated rate of or extend the stated time for payment of interest on any Note;

(3)    reduce the principal of or extend the Stated Maturity of any Note;

(4)    reduce the premium payable upon the redemption or repurchase of any Note or change the time at which any Note may or shall be redeemed or repurchased as described under Section 3.7, Section 3.9 or Article V or any similar provision, whether through an amendment or waiver of Section 3.7, Section 3.9 or Article V, related definitions or otherwise;

(5)    make any Note payable in a currency other than that stated in the Note;

(6)    impair the right of any Holder to receive payment of, premium and additional amounts, if any, principal of and interest on such Holder's Notes on or after the due dates therefor or to institute suit for the enforcement of any payment on or with respect to such Holder's Notes;

(7)    make any change in the amendment provisions which require each Holder's consent or in the waiver provisions;

(8)    except in compliance with the terms thereof, modify the Notes Guarantees in any manner adverse to the Holders, or release any Guarantor from any of its obligations under its Notes Guarantee or this Indenture; or

(9)    change any obligation to pay additional amounts as set forth in Section 3.12 hereof.

It shall not be necessary for the consent of the Holders under this Section to approve the particular form of any proposed amendment, but it shall be sufficient if such consent approves the substance thereof.  A consent to any amendment or waiver under this Indenture by any Holder given in connection with a tender of such Holder's Notes will not be rendered invalid by such tender. After an amendment under this Section becomes effective, the Issuer shall mail to Holders a notice briefly describing such amendment.  The failure to give such notice to all Holders, or any defect therein, shall not impair or affect the validity of an amendment under this Section.

SECTION 9.3.    Revocation and Effect of Consents and Waivers.  A consent to an amendment, supplement or a waiver by a Holder of a Note shall bind the Holder and every subsequent Holder of that Note or portion of the Note that evidences the same debt as the consenting Holder's Note, even if notation of the consent or waiver is not made on the Note. Any such Holder or subsequent Holder may revoke the consent or waiver as to such Holder's Note or portion of the Note if the Trustee receives the notice of revocation before the date the amendment, supplement or waiver becomes effective or otherwise in accordance with any

- 98 -

confidential
Annie Li
Aug 25, 2015 21:20

confidential
Annie Li
Aug 25, 2015 21:20

related solicitation documents.  After an amendment, supplement or waiver becomes effective, it shall bind every Holder unless it makes a change described in any of clauses (1) through (9) of Section 9.2, in which case the amendment, supplement, waiver or other action shall bind each Holder who has consented to it and every subsequent Holder of the Note(s) that evidence(s) the same debt as the consenting Holder's Note(s).  An amendment, supplement or waiver shall become effective upon receipt by the Trustee of the requisite number of written consents under Section 9.1 or 9.2 as applicable.

The Issuer may, but shall not be obligated to, fix a record date for the purpose of determining the Holders entitled to give their consent or take any other action described above or required or permitted to be taken pursuant to this Indenture.  If a record date is fixed, then notwithstanding the immediately preceding paragraph, those Persons who were Holders at such record date (or their duly designated proxies), and only those Persons, shall be entitled to give such consent or to revoke any consent previously given or to take any such action, whether or not such Persons continue to be Holders after such record date.  No such consent shall become valid or effective more than 120 days after such record date.

SECTION 9.4.    Notation on or Exchange of Notes.  If an amendment, supplement or waiver changes the terms of a Note, the Trustee may require the Holder of the Note to deliver it to the Trustee.  The Trustee may place an appropriate notation on the Note regarding the changed terms and return it to the Holder.  Alternatively, if the Issuer or the Trustee so determine, the Issuer in exchange for the Note shall issue and the Trustee shall authenticate a new Note that reflects the changed terms.  Failure to make the appropriate notation or to issue a new Note shall not affect the validity of such amendment.

SECTION 9.5.    Trustee To Sign Amendments.  The Trustee shall sign any amendment, supplement or waiver authorized pursuant to this Article IX if the amendment, supplement or waiver does not adversely affect the rights, duties, liabilities or immunities of the Trustee.  If it does, the Trustee may but need not sign it.  In signing any amendment, supplement or waiver the Trustee shall be entitled to receive indemnity reasonably satisfactory to it and to receive, and (subject to Sections 7.1 and 7.2) shall be fully protected in relying upon an Officer's Certificate and an Opinion of Counsel stating that such amendment, supplement or waiver is authorized or permitted by this Indenture and that such amendment, supplement or waiver is the legal, valid and binding obligation of the Issuer and any Guarantors, enforceable against them in accordance with its terms, subject to customary exceptions, and complies with the provisions hereof (including Section 9.3).

## ARTICLE X

### Guarantees

SECTION 10.1.  Guarantees.  The Guarantors hereby unconditionally guarantee, on a senior unsecured basis and as primary obligor and not merely as surety, jointly and severally with each other Guarantor, to each Holder and the Trustee the full and punctual payment when due, whether at maturity, by acceleration, by redemption or otherwise, of the principal of, premium and additional amounts, if any, and interest on the Notes and all other obligations and liabilities of the Issuer under this Indenture (including without limitation interest accruing after

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

the filing of any petition in bankruptcy, or the commencement of any insolvency, reorganization or like proceeding, relating to the Issuer, the Company or any Subsidiary Guarantor whether or not a claim for post-filing or post-petition interest is allowed in such proceeding) (all the foregoing being hereinafter collectively called the "Obligations"). The Obligations of each of the Guarantors under the Notes Guarantees shall rank equally in right of payment with other Indebtedness of each such Guarantor, except to the extent such other Indebtedness is expressly subordinate to the obligations arising under the Notes Guarantee. Each Guarantor further agrees (to the extent permitted by law) that the Obligations may be extended or renewed, in whole or in part, without notice or further assent from it, and that it shall remain bound under this Article X notwithstanding any extension or renewal of any Obligation.

Each Guarantor waives presentation to, demand of payment from and protest to the Issuer of any of the Obligations and also waives notice of protest for nonpayment. Each Guarantor waives notice of any default under the Notes or the Obligations. The obligations of each Guarantor hereunder shall not be affected by (a) the failure of any Holder to assert any claim or demand or to enforce any right or remedy against the Issuer or any other person under this Indenture, the Notes or any other agreement or otherwise; (b) any extension or renewal of any thereof; (c) any rescission, waiver, amendment or modification of any of the terms or provisions of this Indenture, the Notes or any other agreement; (d) the release of any security held by any Holder or the Trustee for the Obligations or any of them; (e) the failure of any Holder to exercise any right or remedy against any other Guarantor; or (f) any change in the ownership of the Issuer or the Company. Each Guarantor further agrees that its Guarantee herein constitutes a Guarantee of payment when due (and not a Guarantee of collection) and waives any right to require that any resort be had by any Holder to any security held for payment of the Obligations.

The obligations of each Guarantor hereunder shall not be subject to any reduction, limitation, impairment or termination for any reason (other than payment of the Obligations in full), including any claim of waiver, release, surrender, alteration or compromise, and shall not be subject to any defense of setoff, counterclaim, recoupment or termination whatsoever or by reason of the invalidity, illegality or unenforceability of the Obligations or otherwise. Without limiting the generality of the foregoing, the obligations of each Guarantor herein shall not be discharged or impaired or otherwise affected by the failure of any Holder to assert any claim or demand or to enforce any remedy under this Indenture, the Notes or any other agreement, by any waiver or modification of any thereof, by any default, failure or delay, willful or otherwise, in the performance of the Obligations, or by any other act or thing or omission or delay to do any other act or thing which may or might in any manner or to any extent vary the risk of any Guarantor or would otherwise operate as a discharge of such Guarantor as a matter of law or equity.

Each Guarantor agrees that its Guarantee herein shall remain in full force and effect until payment in full of all the Obligations or such Guarantor is released from its Guarantee upon the merger, amalgamation or the sale of all the Capital Stock or all or substantially all of the assets of the Guarantor in compliance with Section 10.2 or otherwise in accordance with the terms of this Indenture. Each Guarantor further agrees that its Guarantee herein shall continue to be effective or be reinstated, as the case may be, if at any time payment, or any part thereof, of principal of or interest on any of the Obligations is rescinded or must otherwise be restored by any Holder upon the bankruptcy or reorganization of the Issuer or otherwise.

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

In furtherance of the foregoing and not in limitation of any other right which any Holder has at law or in equity against any Guarantor by virtue hereof, upon the failure of the Issuer to pay any of the Obligations when and as the same shall become due, whether at maturity, by acceleration, by redemption or otherwise, each Guarantor hereby promises to and shall, upon receipt of written demand by the Trustee, forthwith pay, or cause to be paid, in cash, to the Holders an amount equal to the sum of (i) the unpaid amount of such Obligations then due and owing and (ii) accrued and unpaid interest on such Obligations then due and owing (but only to the extent not prohibited by law).

Each Guarantor further agrees that, as between such Guarantor, on the one hand, and the Holders, on the other hand, (x) the maturity of the Obligations guaranteed hereby may be accelerated as provided in this Indenture for the purposes of its Guarantee herein, notwithstanding any stay, injunction or other prohibition preventing such acceleration in respect of the Obligations guaranteed hereby and (y) in the event of any such declaration of acceleration of such Obligations, such Obligations (whether or not due and payable) shall forthwith become due and payable by the Guarantor for the purposes of this Guarantee.

Each Guarantor also agrees to pay any and all reasonable costs and expenses (including reasonable attorneys' fees) incurred by the Trustee or the Holders in enforcing any rights under this Section.

SECTION 10.2.   Limitation on Liability; Termination, Release and Discharge.

(a)      The obligations of each Guarantor hereunder shall be limited to the maximum amount as shall, after giving effect to all other contingent and fixed liabilities of such Guarantor (including, without limitation, any guarantees under the Revolving Credit Facility) and after giving effect to any collections from or payments made by or on behalf of any other Guarantor in respect of the obligations of such other Guarantor under its Notes Guarantee or pursuant to its contribution obligations under this Indenture, result in the obligations of such Guarantor under its Notes Guarantee not constituting a fraudulent conveyance or fraudulent transfer, voidable preference, a transaction under value or unlawful financial assistance under applicable law or to otherwise cause the Guarantor to be insolvent or in breach of applicable capital preservation rules under relevant law or cause such Notes Guarantee to be void, unenforceable or *ultra vires* or cause the directors of such Guarantor to be in breach of applicable corporate or commercial law for providing such Notes Guarantee.

(b)      In the event a Guarantor is sold or disposed of (whether by merger, amalgamation, consolidation, the sale of its Capital Stock or the sale of all or substantially all of its assets (other than by lease)) and whether or not the Guarantor is the surviving corporation in such transaction to a Person which is not the Issuer, the Company or a Restricted Subsidiary of the Company (other than a Receivables Entity), such Guarantor shall be released (without any further action on the part of any Person) from its obligations under this Indenture and its Notes Guarantee if: (1) the sale or other disposition is in compliance with this Indenture, including Section 3.7 (it being understood that only such portion of the Net Available Cash as is required to be applied on or before the date of such sale or other disposition in accordance with the terms of this Indenture needs to be applied in accordance therewith at such time) and Section 3.10; and (2) all the obligations of such Guarantor under all Credit Facilities and related documentation

- 101 -

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

and any other agreements relating to any other Indebtedness of the Issuer, the Company or any Restricted Subsidiary terminate upon consummation of such transaction.

(c)      The obligations and liabilities of any Subsidiary Guarantor incorporated in the Republic of France (a "French Guarantor") under this Indenture will not include any obligation or liability which if incurred would constitute prohibited financial assistance within the meaning of Article L. 225-216 of the French *Code de commerce* and/or would cause the infringement of Article L. 241-3 or L. 242-6 of the French *Code de commerce* or any other law or regulations having the same effect, as interpreted by French courts.

(d)      The obligations and liabilities of any French Guarantor under this Indenture will be limited, at any time, to an amount equal to the aggregate of all amounts made available under the Notes and the Indenture to the Issuer to the extent directly or indirectly on-lent to such French Guarantor under intercompany loan arrangements (including, for the avoidance of doubt, any cash-pooling arrangements) and outstanding on the date its guarantee is called, and any payment made by such French Guarantor under its guarantee will reduce pro tanto the outstanding amount of the intercompany loans due by such French Guarantor under the relevant intercompany loan arrangements referred to above.

(e)      No French Guarantor will be required to guarantee the obligations and liabilities of another guarantor that is a Subsidiary of Quiksilver, Inc.

(f)      Each Guarantor shall be deemed released from all its obligations under this Indenture and its Notes Guarantee, and such Notes Guarantee shall terminate upon the legal defeasance or covenant defeasance of the Notes pursuant to the provisions of Article VIII hereof.

(g)      A Guarantor shall be deemed released from all of its obligations under this Indenture and its Notes Guarantee, and such Notes Guarantee shall terminate if (1) such Guarantor is released from its Guarantees of, and all pledges and security interests granted in connection with, a Credit Facility and any other Indebtedness of the Issuer, the Company or any Restricted Subsidiary or (2) the Issuer and the Company designates such Guarantor as an Unrestricted Subsidiary and such designation complies with the applicable provisions of this Indenture.

SECTION 10.3.   Right of Contribution.   Each Guarantor hereby agrees that to the extent that any Guarantor shall have paid more than its proportionate share of any payment made on the obligations under the Notes Guarantees, such Guarantor shall be entitled to seek and receive contribution from and against the Issuer or any other Guarantor who has not paid its proportionate share of such payment.   The provisions of this Section 10.3 shall in no respect limit the obligations and liabilities of each Guarantor to the Trustee and the Holders, and each Guarantor shall remain liable to the Trustee and the Holders for the full amount guaranteed by such Guarantor hereunder.

SECTION 10.4.   No Subrogation.   Notwithstanding any payment or payments made by each Guarantor hereunder, no Guarantor shall be entitled to be subrogated to any of the rights of the Trustee or any Holder against the Issuer or any other Guarantor or any collateral security or guarantee or right of offset held by the Trustee or any Holder for the payment of the Obligations,

confidential
Annie Li
Aug 25, 2015 21:20

us\WONGJA\7929518.7

confidential
Annie Li
Aug 25, 2015 21:20

nor shall any Guarantor seek or be entitled to seek any contribution or reimbursement from the Issuer or any other Guarantor in respect of payments made by such Guarantor hereunder, until all amounts owing to the Trustee and the Holders by the Issuer on account of the Obligations are paid in full.  If any amount shall be paid to any Guarantor on account of such subrogation rights at any time when all of the Obligations shall not have been paid in full, such amount shall be held by such Guarantor in trust for the Trustee and the Holders, segregated from other funds of such Guarantor, and shall, forthwith upon receipt by such Guarantor, be turned over to the Trustee in the exact form received by such Guarantor (duly indorsed by such Guarantor to the Trustee, if required), to be applied against the Obligations.

SECTION 10.5.  Execution and Delivery of Notes Guarantee.  To evidence its Notes Guarantee set forth in Section 10.1, each Guarantor hereby agrees that a notation of such Notes Guarantee substantially in the form included in Exhibit B shall be endorsed by an Officer of such Guarantor on each Note authenticated and delivered by the Trustee and that this Indenture shall be executed on behalf of such Guarantor by an Officer.

Each Guarantor hereby agrees that its Notes Guarantee set forth in Section 10.1 shall remain in full force and effect notwithstanding any failure to endorse on each Note a notation of such Notes Guarantee.

If an Officer whose signature is on this Indenture or on the Notes Guarantee no longer holds that office at the time the Trustee authenticates the Note on which a Notes Guarantee is endorsed, the Notes Guarantee shall be valid nevertheless.

The delivery of any Note by the Trustee, after the authentication thereof hereunder, shall constitute due delivery of the Notes Guarantee set forth in this Indenture on behalf of the Guarantors.

## ARTICLE XI

### Miscellaneous

SECTION 11.1.  Notices.  Any notice or communication shall be in writing and delivered in person or mailed by first-class mail addressed as follows:

if to the Issuer:

Boardriders S.A.
c/o Quiksilver, Inc.
15202 Graham Street
Huntington Beach, California  92649
Attention:  Chief Financial Officer
Facsimile No.: (714) 889-2322

if to the Trustee:

Deutsche Trustee Company Limited
Winchester House

- 103 -

confidential
Annie Li
Aug 25, 2015 21:20

us\WONGJA\7929518.7

confidential
Annie Li
Aug 25, 2015 21:20

1 Great Winchester Street
London EC2N 2DB
United Kingdom
Attention: Managing Director

if to the Paying Agent and Common Depositary:

Deutsche Bank AG, London Branch
Winchester House
1 Great Winchester Street
London EC2N 2DB
United Kingdom
Attention: Trust and Securities Services

if to the Registrar and Transfer Agent:

Deutsche Bank Luxembourg S.A.
2 boulevard Konrad Adenauer
L-115 Luxembourg
Grand Duchy of Luxembourg
Attention: Coupon Paying Department

The Issuer or the Trustee by notice to the other may designate additional or different addresses for subsequent notices or communications.

Any notice or communication mailed to a Holder shall be mailed to the Holder at the Holder's address as it appears on the Note Register.

Failure to mail a notice or communication to a Holder or any defect in it shall not affect its sufficiency with respect to other Holders. If a notice or communication is mailed in the manner provided above, it is duly given, whether or not the addressee receives it.

Notices regarding the Notes will be (a) so long as Notes are listed on the SGX-ST and the rules of the SGX-ST shall so require, disclosed to SGX-ST via SGXNET and published in a leading newspaper having general circulation in Singapore (which is expected to be The Business Times); and (b) sent to the Trustee. If and so long as such Notes are listed on any other securities exchange, notices will also be given in accordance with any applicable requirements of such securities exchange. If and so long as any Notes are represented by one or more Global Notes and ownership of book-entry interests therein are shown on the records of Euroclear, Clearstream or any successor clearing agency appointed by the Common Depositary of Euroclear and Clearstream at the request of the Issuer, notices will be delivered to such clearing agency for communication to the owners of such book-entry interests. Notices given by publication will be deemed given on the first date on which publication is made and notices given by first-class mail, postage prepaid, will be deemed given five calendar days after mailing.

SECTION 11.2.   Certificate and Opinion as to Conditions Precedent.  Upon any request or application by the Issuer to the Trustee to take or refrain from taking any action under this

- 104 -

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

Indenture, except upon the initial issuance of Notes hereunder, the Issuer shall furnish to the Trustee:

> (1)     an Officer's Certificate in form and substance reasonably satisfactory to the Trustee stating that, in the opinion of the signers, all conditions precedent, if any, provided for in this Indenture relating to the proposed action have been complied with; and

> (2)     an Opinion of Counsel in form and substance reasonably satisfactory to the Trustee stating that, in the opinion of such counsel, all such conditions precedent have been complied with.

SECTION 11.3.   Statements Required in Certificate or Opinion.   Each certificate or opinion with respect to compliance with a covenant or condition provided for in this Indenture shall include:

> (1)     a statement that the individual making such certificate or opinion has read such covenant or condition;

> (2)     a brief statement as to the nature and scope of the examination or investigation upon which the statements or opinions contained in such certificate or opinion are based;

> (3)     a statement that, in the opinion of such individual, he has made such examination or investigation as is necessary to enable him to express an informed opinion as to whether or not such covenant or condition has been complied with; and

> (4)     a statement as to whether or not, in the opinion of such individual, such covenant or condition has been complied with.

In giving such Opinion of Counsel, counsel may rely as to factual matters on an Officer's Certificate or on certificates of public officials.

SECTION 11.4.   When Notes Disregarded.   In determining whether the Holders of the required principal amount of Notes have concurred in any direction, waiver or consent, Notes owned by the Company or by any of its Affiliates (except that, for the purpose of determining whether the Trustee shall be protected in relying on any such direction, waiver or consent, only Notes which a Responsible Officer of the Trustee actually knows are so owned) shall be so disregarded. Also, subject to the foregoing, only Notes outstanding at the time shall be considered in any such determination.

SECTION 11.5.   Rules by Trustee, Paying Agent and Registrar.   The Trustee may make reasonable rules for action by, or a meeting of, Holders. The Registrar and the Paying Agent may make reasonable rules for their functions.

SECTION 11.6.   Legal Holidays.   A "Legal Holiday" is a Saturday, a Sunday or other day on which commercial banking institutions in New York City, London or a place in which the Paying Agent has its specified office or in which Notes may be presented for payment are closed

- 105 -

confidential
Annie Li
Aug 25, 2015 21:20

confidential
Annie Li
Aug 25, 2015 21:20

for business. If a payment date is a Legal Holiday, payment shall be made on the next succeeding day that is not a Legal Holiday, and no interest shall accrue for the intervening period. If a regular record date is a Legal Holiday, the record date shall not be affected.

SECTION 11.7.   Governing Law.   This Indenture, the Guarantees and the Notes shall be governed by, and construed in accordance with, the laws of the State of New York and for the avoidance of doubt, the applicability of articles 86 to 94-8 of the Luxembourg Act dated 10 August 1915 on commercial companies, as amended, will be expressly excluded.

SECTION 11.8.   Consent to Jurisdiction and Service.   Each of the Issuer, the Company and the Subsidiary Guarantors consents and irrevocably submits to the jurisdiction of any New York state or U.S. federal court located in The Borough of Manhattan, City of New York, County of New York, State of New York in relation to any legal action or proceeding (i) arising out of, relating to or in connection with this Indenture, the Notes, the Notes Guarantees and any related documents and/or (ii) arising under any U.S. federal or U.S. state securities laws in respect of the Notes, the Notes Guarantees and any securities issued pursuant to the terms of this Indenture. Each of the Issuer, the Company and the Subsidiary Guarantors waives any objection to proceedings in any such courts, whether on the ground of venue or on the ground that the proceedings have been brought in an inconvenient forum. Each of the Issuer, the Company and the Subsidiary Guarantors will appoint Corporation Service Company, 1133 Avenue of the Americas, Suite 3100, New York, New York 10036-6710, United States of America, as its agent for service of process in any such action or proceeding and agrees that service of process upon said authorized agent shall be deemed in every respect effective service of process upon it in any such suit, action or proceeding. Each of the Issuer, the Company and the Subsidiary Guarantors agrees to deliver, upon the execution and delivery of this Indenture, a written acceptance by such agent of its appointment as such agent. Each of the Issuer, the Company and the Subsidiary Guarantors further agrees to take any and all action, including the filing of any and all such documents and instruments, as may be reasonably necessary to continue such designation and appointment of Corporation Service Company in full force and effect for so long as any Notes remain outstanding or this Indenture remains in force.

SECTION 11.9.   No Recourse Against Others.   An incorporator, director, officer, employee, stockholder or controlling person, as such, of the Issuer, the Company or any of the Subsidiary Guarantors shall not have any liability for any obligations of the Issuer, the Company or the Subsidiary Guarantors under the Notes or the Guarantees, as the case may be, or this Indenture or for any claim based on, in respect of or by reason of such obligations or their creation. By accepting a Note, each Holder shall waive and release all such liability. The waiver and release shall be part of the consideration for the issue of the Notes.

SECTION 11.10. Successors.   All agreements of the Issuer, the Company and the Subsidiary Guarantors in this Indenture and the Notes shall bind their respective successors. All agreements of the Trustee in this Indenture shall bind its successors.

SECTION 11.11. Multiple Originals.   The parties may sign any number of copies of this Indenture. Each signed copy shall be an original, but all of them together represent the same agreement. One signed copy is enough to prove this Indenture.

confidential
Annie Li
Aug 25, 2015 21:20

us\WONGJA\7929518.7

Annie Li
Aug 25, 2015 21:20

SECTION 11.12. Variable Provisions.  The Issuer initially appoints Deutsche Bank AG, London Branch, as Paying Agent and Common Depositary, and Deutsche Bank Luxembourg S.A., as Registrar and Transfer Agent with respect to any Global Notes.

SECTION 11.13. Table of Contents; Headings.  The table of contents, cross-reference sheet and headings of the Articles and Sections of this Indenture have been inserted for convenience of reference only, are not intended to be considered a part hereof and shall not modify or restrict any of the terms or provisions hereof.

IN WITNESS WHEREOF, the parties have caused this Indenture to be duly executed as of the date first written above.

*[Signature Pages Follow]*

confidential
Annie Li
Aug 25, 2015 21:20

confidential
Annie Li
Aug 25, 2015 21:20

IN WITNESS WHEREOF, the parties have caused this Indenture to be duly executed as of the date first written above.

BOARDRIDERS S.A.

By: _____
Name: Charles S. Exon
Title:

QUIKSILVER, INC.,
as Guarantor

By: _____
Name: Charles S. Exon
Title:

QUIKSILVER AMERICAS, INC.,
as Guarantor

By: _____
Name: Charles S. Exon
Title:

DC SHOES, INC.,
as Guarantor

By: _____
Name: Charles S. Exon
Title:

HAWK DESIGNS, INC.,
as Guarantor Charles S. Exon

By: _____
Name: Charles S. Exon
Title:

[Signature Pages to Indenture]

confidential
Annie Li
Aug 25, 2015 21:20

confidential
Annie Li
Aug 25, 2015 21:20

MERVIN MANUFACTURING, INC.,
as Guarantor

By _____

Name: Charles S. Exon
Title:

QS WHOLESALE, INC.,
as Guarantor

By _____

Name: Charles S. Exon
Title:

QS RETAIL, INC.,
as Guarantor

By _____

Name: Charles S. Exon
Title:

MOUNTAIN & WAVE S.À R.L.,
as Guarantor

By _____

Name: Charles S. Exon
Title:

QS HOLDINGS S.À R.L.,
as Guarantor

By _____

Name: Charles S. Exon
Title:

BIARRITZ HOLDINGS S.À R.L.
as Guarantor

By _____

Name: Charles S. Exon
Title:

[Signature Pages to Indenture]

confidential
Annie Li
Aug 25, 2015 21:20

confidential
Annie Li
Aug 25, 2015 21:20

NA PALI S.A.S.,
as Guarantor

By: _____
Name: Charles S. Exon
Title:

QS FINANCE LUXEMBOURG S.A.,
as Guarantor

By: _____
Name: Charles S. Exon
Title:

54TH STREET HOLDINGS S.À R.L.,
as Guarantor

By: _____
Name: Charles S. Exon
Title:

QUIKSILVER DELUXE S.À R.L.,
as Guarantor

By: _____
Name: Charles S. Exon
Title:

QUIKSILVER CANADA CORP.,
as Guarantor

By: _____
Name: Charles S. Exon
Title:

QS RETAIL CANADA CORP.,
as Guarantor

By: _____
Name: Charles S. Exon
Title:

[Signature Pages to Indenture]

confidential
Annie Li
Aug 25, 2015 21:20

confidential
Annie Li
Aug 25, 2015 21:20

QUIKSILVER AUSTRALIA PTY LTD.,
as Guarantor

Signed for QUIKSILVER AUSTRALIA
PTY LTD. by its attorney under power of
attorney in the presence of:

_____
Signature of witness

_____
Name of witness (print)
Lynney Workman

_____
Signature of attorney

Charles S. Exon
_____
Name of attorney (print)


DC SHOES AUSTRALIA PTY LTD.,
as Guarantor

Signed for DC SHOES AUSTRALIA PTY
LTD. by its attorney under power of attorney
in the presence of:

_____
Signature of witness

_____
Name of witness (print)
Lynney Workman

_____
Signature of attorney

Charles S. Exon
_____
Name of attorney (print)


QS RETAIL PTY LTD.,
as Guarantor

Signed for QS RETAIL PTY LTD. by its
attorney under power of attorney in the
presence of:

_____
Signature of witness

_____
Name of witness (print)
Lynney Workman

_____
Signature of attorney

Charles S. Exon
_____
Name of attorney (print)


[Signature Pages to Indenture]

confidential
Annie Li
Aug 25, 2015 21:20

QS RETAIL (NZ) LIMITED,
as Guarantor

By: _____
Name: Charles S. Exon
Title:

QUIKSILVER JAPAN Co., Ltd.,
as Guarantor

By: _____
Name: Charles S. Exon
Title:

QSJ HOLDINGS PTY LTD.,
as Guarantor

---

Signed for QSJ HOLDINGS PTY LTD. by
its attorney under power of attorney in the
presence of:

_____
Signature of witness

_____
Signature of attorney

Lynsey Workman
Name of witness (print)

Charles S. Exon
Name of attorney (print)

[Signature Pages to Indenture]

confidential
Annie Li
Aug 25, 2015 21:20

confidential
Annie Li
Aug 25, 2015 21:20

QUIKSILVER INTERNATIONAL PTY LTD.,
as Guarantor

Signed for QUIKSILVER
INTERNATIONAL PTY LTD. by its
attorney under power of attorney in the
presence of:

Signature of witness

Linsey Workman
Name of witness (print)

Signature of attorney

Charles S. Exon
Name of attorney (print)

UG MANUFACTURING CO. PTY LTD.,
as Guarantor

Signed for UG MANUFACTURING CO.
PTY LTD. by its attorney under power of
attorney in the presence of:

Signature of witness

Linsey Workman
Name of witness (print)

Signature of attorney

Charles S. Exon
Name of attorney (print)

UG MANUFACTURING CO. (NZ) PTY
LIMITED, as Guarantor

By:
Name: Charles S. Exon
Title:

[Signature Pages to Indenture]

confidential
Annie Li
Aug 25, 2015 21:20

**DEUTSCHE TRUSTEE COMPANY
LIMITED,
as Trustee**

By: _____

Name: S. HARDING

Title: ASSOCIATE
DIRECTOR

R. ACBB
ASSOCIATE DIRECTOR

**DEUTSCHE BANK LUXEMBOURG S.A.,
as Registrar and Transfer Agent**

By: _____

Name: S. HARDING

Title: ATTORNEY

S. Duncan
ATTORNEY

**DEUTSCHE BANK AG, LONDON BRANCH,
as Principal Paying Agent and Common
Depositary**

By: _____

Name: S. HARDING

Title: VICE
PRESIDENT

R. STBB

VP

[Signature Pages to Indenture]

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

**EXHIBIT A**

[FORM OF FACE OF 8.875% SENIOR NOTE DUE 2017]

[Restricted Note Legend, if applicable]
[Depositary Legend, if applicable]

confidential
Annie Li
Aug 25, 2015 21:20

confidential
Annie Li
Aug 25, 2015 21:20

No. [_____]                          Principal Amount €[_____],
                                as revised by the Schedule of Increases
                              and Decreases in the Global Note attached hereto

|                   | Rule 144A    | Regulation S |
|-------------------|--------------|--------------|
| Common Code:      | 056538496    | 056538470    |
| ISIN No.          | XS0565384962 | XS0565384707 |

8.875% Senior Note due 2017

Boardriders S.A., a Luxembourg public limited liability company (*société anonyme*), promises to pay to the Common Depositary, or registered assigns, the principal sum of €[_____], as revised by the Schedule of Increases and Decreases in the Global Note attached hereto, on December 15, 2017.

Interest Payment Dates: June 15 and December 15, commencing on June 15, 2011.

Record Dates: June 1 and December 1.

Additional provisions of this Note are set forth on the other side of this Note.

BOARDRIDERS S.A.

By:_____
        Name:
        Title:

AUTHENTICATION AGENT'S CERTIFICATE OF
  AUTHENTICATION
Dated:

DEUTSCHE BANK LUXEMBOURG S.A.

as Authentication Agent, certifies that this is one of
the Notes referred to in the Indenture.

By_____
    Authorized Signatory

A-2

confidential
Annie Li
Aug 25, 2015 21:20

confidential
Annie Li
Aug 25, 2015 21:20

[FORM OF REVERSE SIDE OF 8.875% SENIOR NOTE]

8.875% Senior Note, due 2017

1     Interest

Boardriders S.A., a Luxembourg public limited liability company (*société anonyme*) (such public limited liability company, and its successors and assigns under the Indenture hereinafter referred to, being herein called the "Issuer"), promises to pay interest on the principal amount of this Note at the rate per annum shown above.

The Issuer shall pay interest semiannually on June 15 and December 15 of each year, beginning on June 15, 2011. Interest on the Notes shall accrue from the most recent date to which interest has been paid on the Notes or, if no interest has been paid, from December 10, 2010. The Issuer shall pay interest on overdue principal or premium, if any (plus interest on such interest to the extent lawful), at the rate borne by the Notes to the extent lawful. Interest shall be computed on the basis of a 360-day year of twelve 30-day months.

2     Method of Payment

By no later than 12:00 p.m. (London time) one Business Day prior to the date on which any principal of (premium or additional amounts, if any) or interest on any Note is due and payable, the Issuer shall irrevocably deposit with the Trustee or the Paying Agent money sufficient to pay such principal, premium or additional amounts, if any, and/or interest. The Issuer shall pay interest (except Defaulted Interest) to the Persons who are registered Holders at the close of business on the June 1 and December 1 next preceding the interest payment date even if Notes are cancelled or repurchased after the record date and on or before the interest payment date. Holders must surrender Notes to a Paying Agent to collect principal payments. The Issuer shall pay principal, premium and additional amounts, if any, and interest in money of the European Monetary Union that at the time of payment is legal tender for payment of public and private debts. Payments in respect of Notes represented by a Global Note (including principal, premium, if any, and interest) shall be made by the transfer of immediately available funds to the accounts specified by the Common Depositary. The Issuer shall make all payments in respect of a Definitive Note (including principal, premium and additional amounts, if any, and interest) by mailing a check to the registered address of each Holder thereof as such address shall appear on the Note Register; provided, however, that payments on the Notes represented by Definitive Notes may also be made, in the case of a Holder of at least €1,000,000 aggregate principal amount of Notes represented by Definitive Notes, by wire transfer to a Euro-denominated account maintained by the payee with a bank in the United States or a Member State if such Holder elects payment by wire transfer by giving written notice to the Trustee or the Paying Agent to such effect designating such account no later than 15 days immediately preceding the relevant due date for payment (or such other date as the Trustee may accept).

3     Paying Agent and Registrar

Initially, Deutsche Bank AG, London Branch, the Common Depositary under the Indenture ("the Common Depositary"), shall act as Principal Paying Agent, and Deutsche Bank

A-3

confidential
Annie Li
Aug 25, 2015 21:20

confidential
Annie Li
Aug 25, 2015 21:20

Luxembourg S.A. shall act as Registrar and Transfer Agent.  The Issuer may appoint and change any Paying Agent or Registrar without notice to any Holder.  The Issuer or any Wholly Owned Subsidiary may act as Paying Agent or Registrar.

4       Indenture

The Issuer issued the Notes under an Indenture dated as of December 10, 2010 (as it may be amended or supplemented from time to time in accordance with the terms thereof, the "Indenture"), among the Issuer, Quiksilver, Inc., the Subsidiary Guarantors and the Trustee.  The terms of the Notes include those stated in the Indenture Capitalized terms used herein and not defined herein have the meanings ascribed thereto in the Indenture.  The Notes are subject to all such terms, and Holders are referred to the Indenture for a statement of those terms.

The Notes are general unsecured senior obligations of the Issuer.  The aggregate principal amount of Notes which may be authenticated and delivered under the Indenture is unlimited.  The Notes will be limited to an aggregate principal amount of €200,000,000 (herein called "Initial Notes"), subject to the Issuer's ability to issue additional 8.875% Senior Notes due 2017 of the Issuer that may be issued from time to time under the Indenture subsequent to December 10, 2010 (herein called "Additional Notes").  The Initial Notes and Additional Notes are treated as a single class of securities under the Indenture.  The Indenture imposes, among other things, certain limitations on the Incurrence of Indebtedness by the Issuer, the Company and its Restricted Subsidiaries, the payment of dividends and other distributions on the purchase or redemption of Capital Stock of the Issuer, the Company and its Subsidiaries, certain purchases or redemptions of Subordinated Obligations, the sale or transfer of assets and Capital Stock of Subsidiaries, the incurrence of certain Liens, transactions with Affiliates, mergers and consolidations, investments of the Issuer, the Company and its Subsidiaries, and the sale of Capital Stock of Restricted Subsidiaries, provided, however, certain of such limitations shall be suspended if the Notes attain an Investment Grade Rating.  In addition, the Indenture limits the ability of the Issuer, the Company and its Subsidiaries to enter into agreements that restrict distributions and dividends from Subsidiaries and requires the Company to make available SEC information to the Holders as well as requiring certain Restricted Subsidiaries to guarantee the obligations under the Notes and the Indenture.

5       Redemption

Except as described below, the Notes are not redeemable until December 15, 2014.  On and after December 15, 2014, the Issuer may redeem all or, from time to time, a part of the Notes upon not less than 30 nor more than 60 days' notice, at the following redemption prices (expressed as a percentage of principal amount) plus accrued and unpaid interest on the Notes, if any, to the applicable Redemption Date (subject to the right of Holders of record on the relevant record date to receive interest due on the relevant interest payment date), if redeemed during the twelve-month period beginning on December 15 of the years indicated below:

| YEAR | PERCENTAGE |
| --- | --- |
| 2014 | 104.438% |
| 2015 | 102.219% |

A-4

confidential
Annie Li
Aug 25, 2015 21:20

confidential
Annie Li
Aug 25, 2015 21:20

2016 and thereafter                 100.000%

Prior to December 15, 2013, the Issuer may on any one or more occasions redeem up to 35% of the original principal amount of the Notes (calculated after giving effect to any issuance of Additional Notes) with the Net Cash Proceeds of one or more Equity Offerings at a redemption price of 108.875% of the principal amount thereof, plus accrued and unpaid interest, if any, to, but excluding the Redemption Date (subject to the right of Holders of record on the relevant record date to receive interest due on the relevant interest payment date); provided that:

(1)    at least 65% of the original principal amount of the Notes (calculated after giving effect to any issuance of Additional Notes) remains outstanding after each such redemption; and

(2)    the redemption occurs within 90 days after the closing of such Equity Offering.

Prior to December 15, 2014, the Issuer may redeem the Notes, at its option, in whole at any time or in part from time to time, upon not less than 30 nor more than 60 days' notice, at a redemption price equal to 100% of the principal amount of the Notes redeemed, plus the Applicable Premium as of, and accrued and unpaid interest, if any, to, but not including, the Redemption Date (subject to the right of Holders of record on the relevant record date to receive interest due on the relevant interest payment date).

The Issuer may redeem the Notes, in whole but not in part, at any time upon giving not less than 30 nor more than 60 days' prior notice to the holders, at a redemption price equal to the principal amount thereof, together with accrued and unpaid interest, if any, to the date fixed by the Issuer for redemption (a "Tax Redemption Date") and all additional amounts (if any) then due and which will become due on the Tax Redemption Date as a result of the redemption or otherwise (subject to the right of holders on the relevant record date to receive interest due on the relevant interest payment date and additional amounts, if any, in respect thereof), if on the next date on which any amount would be payable in respect of the Notes, the Issuer has or would be required to pay additional amounts which are more than a de minimis amount, and the Issuer determines in good faith that such obligation to pay additional amounts cannot be avoided by the use of reasonable measures (for the avoidance of doubt, other than effectuating a change in Tax Jurisdiction) available to it, as a result of:

(1)    any change in, or amendment to, the laws (or any regulations, or rulings promulgated thereunder) of the relevant Tax Jurisdiction affecting taxation which change or amendment has not been publicly announced as formally proposed before and which becomes effective on or after the date of the Indenture (or, if the relevant Tax Jurisdiction has changed since the date of the Indenture, the date on which the then current Tax Jurisdiction became a relevant Tax Jurisdiction under the Indenture); or

(2)    any change in, or amendment to, the existing official position or the introduction of an official position regarding the application, administration or interpretation of such laws, regulations or rulings (including a holding, judgment or order by a court of competent jurisdiction or a change in published practice), which change,

A-5

confidential
Annie Li
Aug 25, 2015 21:20

confidential
Annie Li
Aug 25, 2015 21:20

amendment, application or interpretation has not been publicly announced as formally proposed before and becomes effective on or after the date of the Indenture (or, if the relevant Tax Jurisdiction has changed since the date of the Indenture, the date on which the then current Tax Jurisdiction became a relevant Tax Jurisdiction under the Indenture).

The Issuer will give any such notice of redemption no earlier than 90 days prior to the earliest date on which the Issuer would be obligated to make such payment or withholding if a payment under or with respect to the Notes were then due.

Prior to the publication or, where relevant, mailing of any notice of redemption of the Notes pursuant to the foregoing, the Issuer will deliver to the Trustee an Opinion of Counsel to the effect that there has been such change or amendment which would entitle the Issuer to redeem the Notes hereunder and the obligation to pay such additional amounts cannot be avoided by the use of reasonable measures available to it.

For the avoidance of doubt, the implementation of European Union Council Directive 2003/48/EC or any other directive implementing the conclusions of the European Council of Economics and Finance Ministers Council (or ECOFIN) meeting of November 26-27, 2000 on the taxation of savings income or any law implementing or complying with or introduced in order to conform to, such directive will not be a change or amendment for such purposes.

If the optional Redemption Date is on or after a record date and on or before the related interest payment date, the accrued and unpaid interest, if any, shall be paid to the Person in whose name the Note is registered at the close of business, on such record date, and no additional interest shall be payable to Holders whose Notes shall be subject to redemption by the Issuer.

In the case of any partial redemption, selection of the Notes for redemption shall be made by the Trustee in compliance with the requirements of the principal securities exchange, if any, on which the Notes are listed and the requirements of any Common Depositary holding the Global Notes or if the Notes are not so listed or such exchange prescribes no method of selection and the Notes are not held through a Common Depositary or such Common Depositary prescribes no method of selection, then on a pro rata basis, by lot or by such other method as the Trustee in its sole discretion will deem to be fair and appropriate, provided that with respect to any Note, such redemption equals €100,000 or an integral multiple of €1,000 in excess thereof. No Notes of €100,000 or less will be redeemed in part and no redemption will result in a Holder holding a Note of less than €100,000. If any Note is to be redeemed in part only, the notice of redemption relating to such Note shall state the portion of the principal amount thereof to be redeemed. A new Note in principal amount equal to the unredeemed portion thereof shall be issued in the name of the Holder thereof upon cancellation of the original Note.

Notices of any redemption upon any Equity Offering may be given prior to the completion thereof, and any redemption or notice may, at the Issuer's discretion, be subject to one or more conditions precedent, including, but not limited to, completion of the Equity Offering.

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

Neither the Issuer nor the Company is required to make mandatory redemption payments or sinking fund payments with respect to the Notes. Either the Issuer or the company may at any time and from time to time purchase Notes through open market purchases, negotiated purchases, tender offers or otherwise.

6       Put Provisions

Upon the occurrence of a Change of Control, any Holder shall have the right to require the Issuer to repurchase all or any part of the Notes of such Holder at a purchase price in cash equal to 101% of the principal amount thereof, plus accrued and unpaid interest, if any, to the date of repurchase (subject to the right of Holders of record on the relevant record date to receive interest due on the relevant interest payment date) as provided in, and subject to the terms of, the Indenture. The Issuer shall be required to make an Asset Disposition Offer in certain circumstances described in the Indenture.

7       Denominations; Transfer; Exchange

The Notes are in registered form without coupons in denominations of principal amount of €100,000 or an integral multiple of €1,000 in excess thereof. A Holder may transfer or exchange Notes in accordance with the Indenture. The Registrar may require a Holder, among other things, to furnish appropriate endorsements or transfer documents and to pay any taxes and fees required by law or permitted by the Indenture. The Registrar need not register the transfer of or exchange any Notes for a period beginning (1) 15 Business Days before the mailing of a notice of an offer to repurchase Notes and ending at the close of business on the day of such mailing, or (2) 15 days before an interest payment date and ending on such interest payment date.

8       Persons Deemed Owners

The registered Holder of this Note may be treated as the owner of it for all purposes.

9       Unclaimed Money

If money for the payment of the principal of or premium, if any, or interest remains unclaimed for two years, the Trustee or Paying Agent shall pay the money back to the Issuer at its written request unless an abandoned property law designates another person. After any such payment, Holders entitled to the money must look only to the Issuer and not to the Trustee for payment.

10      Defeasance

Subject to certain conditions set forth in the Indenture, the Issuer at any time may terminate some or all of its obligations under the Notes and the Indenture if the Issuer deposits with the Trustee money or Government Obligations for the payment of principal and interest on the Notes to maturity.

11      Amendment, Waiver

A-7

confidential
Annie Li
Aug 25, 2015 21:20

confidential
Annie Li
Aug 25, 2015 21:20

Subject to certain exceptions set forth in the Indenture, (i) the Indenture, a Notes Guarantee, and the Notes may be amended with the written consent of the Holders of a majority in principal amount of the then outstanding Notes (including, without limitation, consents obtained in connection with a purchase of, or tender offer or exchange offer for, Notes) and (ii) subject to certain exceptions, any past default (other than with respect to nonpayment) or noncompliance with any provision may be waived with the written consent of the Holders of a majority in principal amount of the then outstanding Notes (including, without limitation, consents obtained in connection with a purchase of, or tender offer or exchange offer for, Notes). Subject to certain exceptions set forth in the Indenture, without the consent of any Holder, the Issuer, the Company, the Subsidiary Guarantors and the Trustee may amend the Indenture or the Notes to cure any ambiguity, omission, defect or inconsistency, to comply with Article IV or Article X in respect of the assumption by the Successor Issuer or a Successor Company of an obligation of the Issuer or the Company, respectively or any Subsidiary Guarantor under the Indenture, to provide for uncertificated Notes in addition to or in place of certificated Notes, to add Guarantees with respect to the Notes or release a Subsidiary Guarantor upon its designation as an Unrestricted Subsidiary or otherwise in accordance with the Indenture, to secure the Notes, to make any change that would provide any additional rights or benefits to the Holders or that does not materially adversely affect the legal rights under the Indenture of any such Holder; to comply with any requirement of the SEC in order to effect or maintain the qualification of the Indenture under the TIA, or to provide for successor trustees.

12    Defaults and Remedies

Under the Indenture, Events of Default include (each of which are more specifically described in the Indenture) (i) default for 30 days in payment of interest or additional amounts when due on the Notes; (ii) default in payment of principal or premium, if any, on the Notes at Stated Maturity, upon required repurchase or upon optional redemption pursuant to paragraph 5 hereof, upon acceleration or otherwise; (iii) the failure by the Issuer, the Company or any Subsidiary Guarantor to comply for 60 days after receipt of written notice given by the Trustee or the holders of 25% in principal amount of the outstanding Notes of default under any of the obligations, covenants, or agreements of the Issuer, the Company or such Subsidiary Guarantor, as applicable, contained in the Indenture or the Notes; (iv) default under any mortgage, indenture or instrument under which there may be issued or by which there may be secured or evidenced any Indebtedness for money borrowed by the Issuer, the Company or any of its Restricted Subsidiaries (or the payment of which is guaranteed by the Issuer, the Company or any of its Restricted Subsidiaries or is recourse to the Issuer, the Company or its Restricted Subsidiaries, by contract or operation of law), other than Indebtedness owed to the Issuer, the Company or a Restricted Subsidiary, whether such Indebtedness or guarantee now exists, or is created after the date of the Indenture, which default (a) is caused by a failure to pay at the final Stated Maturity the stated principal amount or to pay principal of, or interest or premium, if any, on such Indebtedness prior to the expiration of the grace period provided in such Indebtedness ("payment default") or (b) results in the acceleration of such Indebtedness prior to its final maturity (the "cross acceleration provision") and, in each case, the principal amount of any such Indebtedness, together with the principal amount of any other such Indebtedness under which there has been a payment default or the maturity of which has been so accelerated, aggregates $25,000,000 or more; (v) certain events of bankruptcy, insolvency or reorganization of the Issuer, the Company or a Significant Subsidiary or group of Restricted Subsidiaries that, taken together (as of the

A-8

confidential
Annie Li
Aug 25, 2015 21:20

confidential
Annie Li
Aug 25, 2015 21:20

latest audited consolidated financial statements for the Company and its Restricted Subsidiaries), would constitute a Significant Subsidiary pursuant to or within the meaning of any Bankruptcy Law (the "bankruptcy provisions"); (vi) failure by the Issuer, the Company or any Significant Subsidiary or group of Restricted Subsidiaries that, taken together (as of the latest audited consolidated financial statements for the Company and its Restricted Subsidiaries), would constitute a Significant Subsidiary to pay final judgments aggregating in excess of $25,000,000 (net of any amounts that a reputable and creditworthy insurance company has acknowledged liability for in writing), which judgments are not paid, discharged, waived or stayed for a period of 60 days (the "judgment default provision"); or (vii) any Notes Guarantee of a Significant Subsidiary or group of Restricted Subsidiaries that, taken together (as of the latest audited consolidated financial statements for the Company and its Restricted Subsidiaries), would constitute a Significant Subsidiary ceases to be in full force and effect (except as contemplated by the terms of the Indenture) or is declared null and void in a judicial proceeding or any Subsidiary Guarantor denies or disaffirms its obligations under the Indenture or its Notes Guarantee. However, a default under clause (iii) will not constitute an Event of Default until the Trustee or the Holders of at least 25% in principal amount of the outstanding Notes notify the Issuer of the default and the Issuer does not cure such default within the time specified in clause (iii) hereof after receipt of such notice. If an Event of Default (other than an Event of Default described in (v) hereof) occurs and is continuing, the Trustee by notice to the Issuer or the Holders of at least 25% in principal amount of the outstanding Notes may declare all the Notes to be due and payable immediately. If an Event of Default described in (v) hereof occurs and is continuing, the principal of, premium, if any, and accrued and unpaid interest on all the Notes will become and be immediately due and payable without any declaration or other act on the part of the Trustee or any Holders. Holders may not enforce the Indenture or the Notes except as provided in the Indenture. The Trustee may refuse to enforce the Indenture or the Notes unless it receives indemnity or security satisfactory to it. Subject to certain limitations, Holders of a majority in principal amount of the Notes may direct the Trustee in its exercise of any trust or power. The Trustee may withhold from Holders notice of any continuing Default or Event of Default (except a Default or Event of Default in payment of principal or interest) if it determines that withholding notice is in their interest.

13     Trustee Dealings with the Issuer

Subject to certain limitations set forth in the Indenture, the Trustee under the Indenture, in its individual or any other capacity, may become the owner or pledgee of Notes and may otherwise deal with and collect obligations owed to it by the Issuer or its Affiliates and may otherwise deal with the Issuer or its Affiliates with the same rights it would have if it were not Trustee.

14     No Recourse Against Others

Except as noted in the paragraph below, no director, officer, employee or stockholder of the Issuer, the Company or any of the Subsidiary Guarantors shall have any liability for any obligations of the Issuer, the Company or any of the Subsidiary Guarantors under the Notes or the Indenture or the Notes Guarantee or for any claim based on, in respect of or by reason of such obligations or their creation. By accepting a Note, each Holder waives and releases all such liability. The waiver and release are part of the consideration for the issue of the Notes.

A-9

confidential
Annie Li
Aug 25, 2015 21:20

confidential
Annie Li
Aug 25, 2015 21:20

Quiksilver Canada Corp. and QS Retail Canada Corp. are unlimited liability companies governed by the Companies Act (Nova Scotia). In the event of a liquidation of these companies, under Nova Scotia laws their respective members (i.e., shareholders) both present and past, would be statutorily liable to contribute to the assets of these companies to an amount sufficient for the payment of their respective debts and liabilities including the costs, charges and expenses of liquidation, and for the adjustments of the rights of contributories among themselves, subject to certain qualifications set out in the Companies Act (Nova Scotia).

15   Authentication

This Note shall not be valid until an authorized signatory of the Trustee (or an authenticating agent acting on its behalf) manually signs the certificate of authentication on the other side of this Note.

16   Abbreviations

Customary abbreviations may be used in the name of a Holder or an assignee, such as TEN COM (=tenants in common), TEN ENT (=tenants by the entirety), JT TEN (=joint tenants with rights of survivorship and not as tenants in common), CUST (=custodian) and U/G/M/A (=Uniform Gift to Minors Act).

17   Common Codes and ISIN Numbers

The Issuer in issuing the Notes may use Common Codes and ISIN Numbers and the Trustee may use Common Codes and ISIN Numbers in notices of redemption as a convenience to Holders. No representation is made as to the accuracy of such numbers as printed on the Notes or as contained in any notice of redemption and reliance may be placed only on the other identification numbers placed thereon.

18   Defined Terms

As used in this Note, terms defined in the Indenture are used herein as therein defined.

19   Governing Law

This Note shall be governed by, and construed in accordance with, the laws of the State of New York and for the avoidance of doubt, the applicability of articles 86 to 94-8 of the Luxembourg Act dated 10 August 1915 on commercial companies, as amended, will be expressly excluded.

The Issuer shall furnish to any Holder upon written request and without charge to the Holder a copy of the Indenture, which has in it the text of this Note in larger type. Requests may be made to:

A-10

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

Boardriders S.A.
c/o Quiksilver, Inc.
15202 Graham Street
Huntington Beach, CA 92649
Attention:  Chief Financial Officer
Facsimile No.:  (714) 889-2322

A-11

confidential
Annie Li
Aug 25, 2015 21:20

us\WONGJA\7929518.7

confidential
Annie Li
Aug 25, 2015 21:20

## ASSIGNMENT FORM

To assign this Note, fill in the form below:

I or we assign and transfer this Note to

_____

(Print or type assignee's name, address and zip code)

_____

(Insert assignee's soc. sec. or tax I.D. No.)

and irrevocably appoint _____ agent to transfer this Note on the books of the Issuer. The agent may substitute another to act for him.

_____

Date:_____              Your Signature:_____

Signature Guarantee:_____

(Signature must be guaranteed)

_____

Sign exactly as your name appears on the other side of this Note.

The signature(s) should be guaranteed by an eligible guarantor institution (banks, stockbrokers, savings and loan associations and credit unions with membership in an approved signature guarantee medallion program), pursuant to S.E.C. Rule 17Ad-15.

In connection with any transfer or exchange of any of the Notes evidenced by this certificate occurring prior to the date that is two years after the later of the date of original issuance of such Notes and the last date, if any, on which such Notes were owned by the Company or any Affiliate of the Company, the undersigned confirms that such Notes are being:

CHECK ONE BOX BELOW:

1    [ ] acquired for the undersigned's own account, without transfer; or

2    [ ] transferred to the Issuer; or

3    [ ] transferred pursuant to and in compliance with Rule 144A under the Securities Act of 1933, as amended (the "Securities Act"); or

4    [ ] transferred pursuant to an effective registration statement under the Securities Act; or

5    [ ] transferred pursuant to and in compliance with Regulation S under the Securities Act; or

6    [ ] transferred pursuant to another available exemption from the registration requirements of the Securities Act of 1933.

A-12

confidential
Annie Li
Aug 25, 2015 21:20

confidential
Annie Li
Aug 25, 2015 21:20

Unless one of the boxes is checked, the Trustee shall refuse to register any of the Notes evidenced by this certificate in the name of any person other than the registered Holder thereof; provided, however, that if box (5) or (6) is checked, the Trustee or the Company may require, prior to registering any such transfer of the Notes, in their sole discretion, such legal opinions, certifications and other information as the Trustee or the Company may reasonably request to confirm that such transfer is being made pursuant to an exemption from, or in a transaction not subject to, the registration requirements of the Securities Act, such as the exemption provided by Rule 144 under such Act.

Signature

Signature Guarantee:

(Signature must be guaranteed)   Signature

The signature(s) should be guaranteed by an eligible guarantor institution (banks, stockbrokers, savings and loan associations and credit unions with membership in an approved signature guarantee medallion program), pursuant to S.E.C. Rule 17Ad-15.

TO BE COMPLETED BY PURCHASER IF (1) OR (3) ABOVE IS CHECKED.

The undersigned represents and warrants that it is purchasing this Note for its own account or an account with respect to which it exercises sole investment discretion and that it and any such account is a "qualified institutional buyer" within the meaning of Rule 144A under the Securities Act, as amended, and is aware that the sale to it is being made in reliance on Rule 144A and acknowledges that it has received such information regarding the Company as the undersigned has requested pursuant to Rule 144A or has determined not to request such information and that it is aware that the transferor is relying upon the undersigned's foregoing representations in order to claim the exemption from registration provided by Rule 144A.

Dated:                              NOTICE: To be executed by an executive officer

A-13

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

[TO BE ATTACHED TO GLOBAL NOTES]

SCHEDULE OF INCREASES OR DECREASES IN GLOBAL NOTE

The following increases or decreases in this Global Note have been made:

| Date of Exchange | Amount of decrease in Principal Amount of this Global Note | Amount of Increase in Principal Amount of this Global Note | Principal Amount of this Global Note following such decrease or increase | Signature of authorized signatory of Trustee or Notes Custodian |
|---|---|---|---|---|
|  |  |  |  |  |

A-14

confidential
Annie Li
Aug 25, 2015 21:20

confidential
Annie Li
Aug 25, 2015 21:20

## OPTION OF HOLDER TO ELECT PURCHASE

If you want to elect to have this Note purchased by the Issuer pursuant to Section 3.7 or 3.9 of the Indenture, check the box:

[ ]

If you want to elect to have only part of this Note purchased by the Issuer pursuant to Section 3.7 or 3.9 of the Indenture, state the amount in principal amount (must be denominations of €100,000 or an integral multiple of €1,000 in excess thereof): €

Date: _____         Your Signature: _____
                              (Sign exactly as your name appears on the other side of the Note)

Signature Guarantee: _____
                     (Signature must be guaranteed)

The signature(s) should be guaranteed by an eligible guarantor institution (banks, stockbrokers, savings and loan associations and credit unions with membership in an approved signature guarantee medallion program), pursuant to S.E.C.  Rule 17Ad-15.

A-15

confidential
Annie Li
Aug 25, 2015 21:20

confidential
Annie Li
Aug 25, 2015 21:20

**EXHIBIT B**

FORM OF NOTATION OF GUARANTEE

For value received, each Guarantor (which term includes any successor Person under the Indenture) has, jointly and severally, unconditionally guaranteed, to the extent set forth in the Indenture and subject to the provisions in the Indenture dated as of December 10, 2010 (the "Indenture") among Boardriders S.A., Quiksilver, Inc., the Subsidiary Guarantors listed on the signature pages thereto and Deutsche Trustee Company Limited, as trustee (the "Trustee"), (a) the full and punctual payment when due, whether at maturity, by acceleration, by redemption or otherwise, of the principal of, premium, if any, and interest on the Notes and all other obligations and liabilities of the Issuer to the Holders or the Trustee under the Indenture (including without limitation interest accruing after the filing of any petition in bankruptcy, or the commencement of any insolvency, reorganization or like proceedings, relating to the Issuer or any Guarantor whether or not a claim for post-filing or post-petition interest is allowed in such proceeding). The obligations of the Guarantors to the Holders and to the Trustee pursuant to the Notes Guarantee and the Indenture are expressly set forth in Article X of the Indenture and reference is hereby made to the Indenture for the precise terms of the Notes Guarantee, which terms are incorporated herein by reference.

[Guarantor]

By:_____

      Name:
      Title:

confidential
Annie Li
Aug 25, 2015 21:20

us\WONGJA\7929518.7

Annie Li
Aug 25, 2015 21:20

**EXHIBIT C**

FORM OF INDENTURE SUPPLEMENT TO
ADD SUBSIDIARY GUARANTORS TO GUARANTEE NOTES

This Supplemental Indenture and Notes Guarantee, dated as of [_____], 20__ (this "Supplemental Indenture" or "Guarantee"), among [name of future Subsidiary Guarantor] (the "New Subsidiary Guarantor"), Boardriders S.A. (together with its successors and assigns, the "Issuer"), Quiksilver, Inc. (together with its successors and assigns, the "Company"), each other then existing Subsidiary Guarantor under the Indenture referred to below (the "Subsidiary Guarantors"), and Deutsche Trustee Company Limited, as Trustee under the Indenture referred to below.

W I T N E S S E T H :

WHEREAS, the Issuer, the Company, the Subsidiary Guarantors and the Trustee have heretofore executed and delivered an Indenture, dated as of December 10, 2010 (as amended, supplemented, waived or otherwise modified, the "Indenture"), providing for the issuance of an unlimited aggregate principal amount of 8.875% Senior Notes due 2017 of the Issuer (the "Notes");

WHEREAS, Section 3.10 of the Indenture provides that the Company is required to cause each Subsidiary created or acquired by the Company or one or more of its Restricted Subsidiaries that either (1) guarantees the payment of any Indebtedness of the Issuer, the Company or any other Restricted Subsidiary or (2) otherwise becomes an obligor, including as a co-borrower, under a Credit Facility incurred pursuant to Section 3.3(b)(1) under the Indenture, to execute and deliver to the Trustee a Notes Guarantee pursuant to which such Subsidiary Guarantor shall unconditionally Guarantee, on a joint and several basis, the full and prompt payment of the principal of, premium, if any and interest on the Notes and all sums due and owing to the Trustee on a senior basis; and

WHEREAS, pursuant to Section 9.1 of the Indenture, the Trustee, the Company, the Issuer and the Subsidiary Guarantors are authorized to execute and deliver this Supplemental Indenture to amend the Indenture, without the consent of any Holder;

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt of which is hereby acknowledged, the Subsidiary Guarantors, the Issuer, the Company, the Trustee and the New Subsidiary Guarantor mutually covenant and agree for the equal and ratable benefit of the Holders as follows:

ARTICLE I

Definitions

SECTION 1.1  Defined Terms.  As used in this Supplemental Indenture, terms defined in the Indenture or in the preamble or recital hereto are used herein as therein defined, except that the term "Holders" in this Guarantee shall refer to the term "Holders" as defined in the Indenture and the Trustee acting on behalf or for the benefit of such Holders.  The words "herein,"

C-1

confidential
Annie Li
Aug 25, 2015 21:20

confidential
Annie Li
Aug 25, 2015 21:20

"hereof" and "hereby" and other words of similar import used in this Supplemental Indenture refer to this Supplemental Indenture as a whole and not to any particular section hereof.

## ARTICLE II

### Agreement to be Bound; Guarantee

SECTION 2.1 Agreement to be Bound. The New Subsidiary Guarantor hereby becomes a party to the Indenture as a Subsidiary Guarantor and as such shall have all of the rights and be subject to all of the obligations and agreements of a Subsidiary Guarantor under the Indenture. The New Subsidiary Guarantor agrees to be bound by all of the provisions of the Indenture applicable to a Subsidiary Guarantor and to perform all of the obligations and agreements of a Subsidiary Guarantor under the Indenture.

SECTION 2.2 Guarantee. The New Subsidiary Guarantor hereby fully, unconditionally and irrevocably guarantees, as primary obligor and not merely as a surety, jointly and severally with each other Subsidiary Guarantor, to each Holder and the Trustee, the full and punctual payment when due, whether at maturity, by acceleration, by redemption or otherwise, of the Obligations pursuant to Article X of the Indenture.

## ARTICLE III

### Miscellaneous

SECTION 3.1 Notices. All notices and other communications to the New Subsidiary Guarantor shall be given as provided in the Indenture to the New Subsidiary Guarantor, at its address set forth below, with a copy to the Issuer as provided in the Indenture for notices to the Issuer.

[Name of future New Subsidiary Guarantor]
[                    ]
[                    ]
[Attention:                    ]
[Facsimile No.: (   ) -      ]

SECTION 3.2 Parties. Nothing expressed or mentioned herein is intended or shall be construed to give any Person, firm or corporation, other than the Holders and the Trustee, any legal or equitable right, remedy or claim under or in respect of this Supplemental Indenture or the Indenture or any provision herein or therein contained.

SECTION 3.3 Governing Law. This Supplemental Indenture shall be governed by, and construed in accordance with, the laws of the State of New York and for the avoidance of doubt, the applicability of articles 86 to 94-8 of the Luxembourg Act dated 10 August 1915 on commercial companies, as amended, will be expressly excluded.

SECTION 3.4 Severability Clause. In case any provision in this Supplemental Indenture shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining

C-2

confidential
Annie Li
Aug 25, 2015 21:20

Annie Li
Aug 25, 2015 21:20

provisions shall not in any way be affected or impaired thereby and such provision shall be ineffective only to the extent of such invalidity, illegality or unenforceability.

SECTION 3.5  Ratification of Indenture; Supplemental Indentures Part of Indenture. Except as expressly amended hereby, the Indenture is in all respects ratified and confirmed and all the terms, conditions and provisions thereof shall remain in full force and effect.  This Supplemental Indenture shall form a part of the Indenture for all purposes, and every Holder heretofore or hereafter authenticated and delivered shall be bound hereby.  The Trustee makes no representation or warranty as to the validity or sufficiency of this Supplemental Indenture.

SECTION 3.6  Counterparts.  The parties hereto may sign one or more copies of this Supplemental Indenture in counterparts, all of which together shall constitute one and the same agreement.

SECTION 3.7  Headings.  The headings of the Articles and the sections in this Supplemental Indenture are for convenience of reference only and shall not be deemed to alter or affect the meaning or interpretation of any provisions hereof.

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture to be duly executed as of the date first above written.

[NEW SUBSIDIARY GUARANTOR],
as a Subsidiary Guarantor

By:_____
    Name:
    Title:

DEUTSCHE TRUSTEE COMPANY LIMITED, as Trustee

By:_____
    Name:
    Title:

DEUTSCHE BANK LUXEMBOURG S.A., as Registrar and Transfer Agent

By:_____
    Name:
    Title:

DEUTSCHE BANK AG, LONDON BRANCH, as Principal Paying Agent and Common Depositary

By:_____
    Name:

C-3

confidential
Annie Li
Aug 25, 2015 21:20

confidential
Annie Li
Aug 25, 2015 21:20

Title:

BOARDRIDERS S.A.

By:_____

    Name:
    Title:

QUIKSILVER, INC.

By:_____

    Name:
    Title:

C-4

confidential
Annie Li
Aug 25, 2015 21:20

confidential
Annie Li
Aug 25, 2015 21:20

[OTHER SUBSIDIARY GUARANTORS]

By:_____

    Name:
    Title:

confidential
Annie Li
Aug 25, 2015 21:20

us\WONGJA\7929518.7

Daniel E. Lungu
Annie Li
Aug 25, 2015 21:20

**EXHIBIT D**

Merci de compléter les champs entre crochets avec les informations manquantes

Please fill spaces into brackets with appropriate information

<table>
<tr><td>

## MANDAT *AD LITEM*

</td><td>

## *AD LITEM* POWER OF ATTORNEY

</td></tr>
<tr><td>

Le présent Mandat *Ad Litem* est consenti par: ____, société de droit ____ dont le siège social est situé _, immatriculé sous le numéro __ (l' «**Obligataire** ») détenteur de ___ [INDIQUER LE NOMBRE ET LE MONTANT EN PRINCIPAL DES NOTES DETENUES] 8,875% *Notes* Senior à échéance 2017 (les « ***Notes*** » ou les « ***Obligations*** »), émises le 10 Décembre 2010 par Boardriders S.A., société de droit luxembourgeois (l' « **Emetteur** »), dont les termes et conditions sont notamment régis par un contrat d'émission de droit new-yorkais conclu, notamment, avec l'Emetteur, les Garants (*Guarantors*, tel que ce terme est défini dans le Contrat d'Emission) et le *Trustee* (tel que ce terme est défini ci-après), en date du ___ (le « **Contrat d'Emission** »). Cette délégation de pouvoir est effectuée dans le cadre de l'ouverture, par jugement du tribunal de commerce de __ en date du __, d'une procédure de ____ [INDIQUER LE TYPE DE PROCEDURE COLLECTIVE OUVERTE EN FRANCE] relative à __ [INDIQUER LE NOM DE L'ENTITE SOUMISE À LA PROCEDURE COLLECTIVE OUVERTE EN FRANCE] (la « **Procédure Collective Française** »).

Conformément à l'article 6.9 du Contrat d'Emission, le *Trustee* est autorisé, notamment, à procéder à toutes déclarations de créances et à enregistrer tout document qui s'avérerait nécessaire ou utile afin que les créances du *Trustee* (en ce compris toute créance due au titre des rémunérations raisonables et des remboursements des frais et débours du *Trustee* et de ses agents et conseils) et des Obligataires soient admises dans le cadre de toute procédure judiciaire (en ce compris, en particulier, toute procédure collective en France) relative à l'Emetteur (ou à n'importe quel Garant ou autre débiteur en vertu des *Notes*) et à collecter, recevoir et distribuer toute somme d'argent ou autre actif exigible pour le remboursement de chacune de ces créances (le « **Mandat Spécial** »).

Par les présentes, et à toutes fins utiles, l'Obligataire réitère les termes du Mandat Spécial et donne mandat *ad litem* à:

</td><td>

This *Ad Litem* Power of Attorney is granted by: ____, a company governed by the laws of ____ whose registered office is located at ____ and registered with ____ under trade number ___ (the « **Noteholder** ») registered holder of ___ [INSERT THE NUMBER AND PRINCIPAL AMOUNT OF THE NOTES HELD] 8,875% Senior Notes due 2017 (the "**Notes**"), issued on December 10, 2010 by Boardriders S.A., a Luxembourg company (the "**Issuer**"), whose terms and conditions are in particular governed by an indenture governed by New-York law, entered into by, among others, the Issuer, the Guarantors (as such term is defined in the Indenture) and the Trustee (as such term is defined below), dated ___ (the "**Indenture**"). This *Ad Litem* Power of Attorney is made in connection with the opening, by judgment of the ____ Commercial Court dated ____, of the ____ [INSERT TYPE OF PROCEEDING OPENED IN FRANCE] related to ____ [INSERT NAME OF ENTITY SUBJECT TO FRENCH PROCEEDING] (the "**French Bankruptcy Proceeding**").

Pursuant to section 6.9 of the Indenture, the Trustee is authorized to, among other actions, file such proofs of claim and other papers or documents as may be necessary or advisable in order to have the claims of the Trustee (including any claim for the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and counsel) and the Holders allowed in any judicial proceedings (including, in particular, any insolvency proceedings in France) relative to the Issuer (or any Guarantor or other obligor upon the Notes) and to collect, receive and distribute any money or other property payable or deliverable on any such claims (the "**Special P.O.A.**").

The Noteholder, to the extent necessary, hereby reiterates the Special P.O.A. and gives power to:

Deutsche Trustee Company Limited, a british

</td></tr>
</table>

D-1

confidential
Annie Li
Aug 25, 2015 21:20

confidential
Annie Li
Aug 25, 2015 21:20

Deutsche Trustee Company Limited, société de droit anglais dont le siège social est situé à Winchester House, 1 Great Winchester Street, Londres EC2N 2DB, immatriculé sous le numéro __, en sa capacité de *Trustee* en vertu du Contrat d'Emission (le « *Trustee* »), afin d'agir en son nom et pour son compte pour tous les besoins liés à la Procédure Collective Française et l'autorise expressément à déclarer toute créance ou à enregistrer tout document utile afin que toute créance qu'il détient au titre des *Notes* et du Contrat d'Emission soit admise dans le cadre de la Procédure Collective Française, le tout avec faculté de subdélégation à l'avocat de son choix.

Ce Mandat *Ad Litem* sera valide pour toutes les instances futures liées à la Procédure Collective Française et s'étendra aux procédures auxiliaires et consécutives de tout genre, en ce compris toutes voies de recours.

Par les présentes, l'Obligataire ratifie et autorise tout acte qui sera effectué légalement par le *Trustee* conformément à ce Mandat *Ad Litem*.

Fait à ...................., le ....................

....................................
(Signature) *

company, whose registered office is located at Winchester House, 1 Great Winchester Street, London EC2N 2DB and registered with ____ under trade number ____, in its capacity as Trustee under the Indenture (the "**Trustee**"), to act on its behalf in relation to the French Bankruptcy Proceeding and expressly authorizes the Trustee to, among other actions, file any proofs of claims or documents as may be necessary in order to have its claims under the Notes and the Indenture allowed in the French Bankruptcy Proceeding, with the right to delegate such power to any lawyer of its choice.

This *Ad Litem* Power of Attorney shall be valid for any future legal proceeding in relation to the French Bankruptcy Proceeding and shall extend to any ancillary proceeding in connection therewith, including any appeals.

The Noteholder hereby ratifies and approves any act which will lawfully be done by the Trustee in furtherance of this *Ad Litem* Power of Attorney.

Executed in ..............., on ....................

....................................
(Signature) *

* Faire précéder la signature de la mention manuscrite :
« Bon pour pouvoir d'agir et faire agir en justice »

* Please provide your signature with the handwritten mention
« Bon pour pouvoir d'agir et faire agir en justice »

D-2

confidential
Annie Li
Aug 25, 2015 21:20

us\WONGJA\7929518.7