IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------- x
                                   :
In re:                             :   Chapter 11
                                   :
QUIKSILVER, INC., *et al.*,        :   Case No. 15-11880 (BLS)
                                   :
                  Debtors.[1]      :   Jointly Administered
                                   :
---------------------------------- x   Related Docket No. 7, 79, 186, 209, 213, 214, 248

**FINAL ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 363, 365, AND 554 AND BANKRUPTCY RULE 6004 (I) AUTHORIZING THE DEBTORS TO ASSUME THE AGREEMENTS; (II) AUTHORIZING AND APPROVING THE CONDUCT OF STORE CLOSING OR SIMILAR THEMED SALES, WITH SUCH SALES TO BE FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES; AND (III) AUTHORIZING CUSTOMARY BONUSES TO EMPLOYEES OF CLOSING BUSINESS LOCATIONS**

Upon the motion (the "Motion")[2] of the Debtors for the entry of a final order (the "Final Order"), pursuant to Bankruptcy Code sections 105, 363, 365, and 554 and Bankruptcy Rule 6004; (i) authorizing the Debtors to assume (a) the agreement dated as of September 4, 2015, by and between QS Retail, Inc. ("QS Retail"), on the one hand, and Hilco Merchant Resources, LLC and Gordon Brothers Retail Partners, LLC (the "Agent"), on the other hand (the "Store Closing Agreement"), a copy of which is attached as Exhibit 1 to this Final Order and (b) the agreement dated as of June 8, 2015 by and between QS Retail, on the one hand, and the Agent on the other hand (the "Pop Up Store Agreement," a copy of which is attached as Exhibit 2 to this Final Order, and together with the Store Closing Agreement, the "Agreements"); (ii) authorizing the Debtors to conduct (a) store closing sales (collectively, the "Store Closing Sales")

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

[2] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

at the locations subject to the Store Closing Agreement (the "Closing Locations")[3] in accordance with the terms or the sale guidelines (the "Sale Guidelines") attached as Exhibit 3 to this Final Order, with such sales to be free and clear of all liens, claims, encumbrances, and interests (collectively, the "Encumbrances") and (b) sales of certain merchandise (collectively, the "Pop Up Sales," and together with the Store Closing Sales, the "Sales") at the locations subject to the Pop Up Store Agreement (the "Pop Up Stores,"[4] and together with the Closing Locations, the "Stores"), in accordance with the Sale Guidelines, with such sales to be free and clear of all Encumbrances; (iii) authorizing, but not directing, the Debtors to pay customary retention bonuses to the store-level and certain field employees at the Stores; (iv) authorizing the protections and dispute resolution procedures contained in the Interim and Final Orders; and (v) granting certain related relief; and the Court having reviewed the Motion and the Declarations and having considered the statements of counsel and the evidence adduced with respect to the Motion at the hearings before the Court on September 10, 2015 (the "Interim Hearing") and October 6, 2015 (the "Final Hearing," and together with the Interim Hearing, the "Hearings"); the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334, (ii) venue is proper in this District pursuant to 28 U.S.C. § 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (iv) the notice of the Motion and the Hearings was sufficient under the circumstances, and (v) there is good cause to waive the stay of Bankruptcy Rule 6004(h); and due and sufficient notice of the Motion having been given under the particular circumstances and it appearing that no other or further notice is necessary; after due deliberation determined that the relief requested in the Motion is necessary and essential for the Debtors' reorganization and such relief is in the best interests of the Debtors,

---

[3] A list of Closing Locations is attached as Exhibit A to the Store Closing Agency Agreement.

[4] A list of Pop Up Store is attached to as Exhibit 4 to this Final Order.

their estates, their creditors, and other parties in interest; and upon the record herein; and after due deliberation thereon; and good and sufficient cause have been shown; it is hereby:

**FOUND, CONCLUDED AND DETERMINED that:[5]**

A. The Debtors have advanced sound business reasons for entering into the Agreements, as set forth in the Motion and at the Hearings, and entering into the Agreements is a reasonable exercise of the Debtors' business judgment and in the best interests of the Debtors and their estates.

B. The conduct of the Sales will provide an efficient means for the Debtors to dispose of the Store Closure Assets.

C. The Agreements were negotiated, proposed, and entered into by the Agent and the Debtors without collusion, in good faith and from arm's length bargaining positions.

D. The assumption of the Agreements is a sound exercise of the Debtors' business judgment.

E. The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the relief approved herein.

F. The Sales are in the best interest of the Debtors' estates.

G. The Debtors have represented that they are neither selling nor leasing personally identifiable information pursuant to the Motion, although the Agent will be authorized to distribute emails and promotional materials to the Debtors' customers consistent with the Debtors' existing policies on the use of consumer information.

---

[5] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

H.  The Agent has filed one or more declarations identifying the Agent's connections to the Debtors and the creditors and other parties in interest identified in such declaration(s).

I.  The entry of this Final Order is in the best interest of the Debtors and their estates, creditors, and interest holders and all other parties in interest herein; and now therefore it is hereby.

**ORDERED, ADJUDGED AND DECREED THAT:**

1.  The Motion is GRANTED on a final basis as provided herein.

2.  The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order. The failure to include specifically any particular provision of the Agreements in this Final Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Agreements and all of their provisions, payments and transactions, be and hereby are authorized and approved on a final basis.

3.  To the extent of any conflict between this Final Order, the Sale Guidelines, and the Agreements, the terms of this Final Order shall control over all other documents, and the Sale Guidelines shall control over the Agreements.

4.  Notwithstanding Bankruptcy Rule 6004(h), this Final Order shall take effect immediately upon its entry.

**A.  Assumption Of The Agreements**

5.  The Office of the United States Trustee's (the "U.S. Trustee") objection to the Motion is resolved as provided in paragraphs 5(a), (b) and (c) of this Order.

(a)  The (i) Store Closing Agreement, a copy of which is attached to this Final Order as Exhibit 1, and (ii) Pop Up Store Agreement, a copy of which is attached to this Final Order as Exhibit 2, are hereby assumed pursuant to section 365 of the Bankruptcy Code. The

4

Debtors are authorized to act and perform in accordance with the terms of the Agreements, including, making payments required by the Agreements to the Agent without the need for any application of the Agent or a further order of the Court, subject to the Objection Rights (as defined below). Within thirty (30) days of the conclusion of the Store Closing Sales process, the Debtors shall file a summary report of such process that will include (a) the stores closed, (b) gross revenue from Merchandise sold, and (c) gross revenue from FF&E sold and also provide U.S. Trustee, the Official Committee of Unsecured Creditors (the "Committee"), the agent for the Debtors' postpetition term loan facility (the "DIP Term Lender"), and the agent for the Debtors' prepetition and postpetition secured ABL facilities (together with the DIP Term Lender, the "DIP Lenders"), with (1) the calculation of and compensation paid to the Agent and (2) expenses reimbursed to the Agent; provided, further, that, only the U.S. Trustee, the Committee, and the DIP Lenders, may, within twenty (20) days after such report is filed and information is provided, object to the compensation paid or expenses reimbursed to the Agent only as to and on the following grounds: (i) that the calculation of the compensation paid to the Agent pursuant to the compensation structure contemplated by the Agreements as of the date of this Order was not performed correctly; (ii) the calculation and reasonableness of any compensation paid to the Agent pursuant to a compensation structure other than as reflected in the Agreements as of the date of this Order; and (iii) the reasonableness of any expenses reimbursed by the Debtors to the Agent that were in excess of the expense budget(s) filed with the court prior to the Final Hearing ((i)-(iii), the "Objection Rights"). Notwithstanding this or any other provision of this Order, nothing shall prevent or be construed to prevent the Agent (individually, as part of a joint venture, or otherwise) or any of its affiliates from (x) guaranteeing a recovery on or otherwise acquiring Merchandise or FF&E that may not be sold during the Sale, subject to reaching an agreement

with the Debtors with respect to such guarantee or other acquisition and providing notice as would be reasonable under the circumstances (including the remaining Sale Term and time within which such Merchandise or FF&E must be removed) of such agreement to the U.S. Trustee and counsel to the Committee and the DIP Lenders and not receiving an objection therefrom; or (y)(1) bidding on the Debtors' assets not subject to the Agreements pursuant to an agency agreement or otherwise and (2) the Agent is hereby authorized to bid on and guarantee or otherwise acquire such assets notwithstanding anything to the contrary in the Bankruptcy Code or other applicable law, provided that such guarantee, transaction or acquisition is approved by separate order of this Court. The resolution of the U.S. Trustee's objection to the relief requested in the Motion and memorialized in this Order is not binding on the Agent or the U.S. Trustee in subsequent cases;

(b)     Nothing in this Order is intended to affect any rights of any Governmental Unit (as defined below) to enforce any law affecting the Debtors' conduct of the sale prior to the Petition Date; and

(c)     On a confidential basis and for professionals' "eyes only," and upon the written (including email) request of the U.S. Trustee, the Committee, and the DIP Lenders, the Debtors shall provide such requesting party (if any) with copies of periodic reports concerning the Sale that are prepared by the Debtors, their professionals, or the Agent; provided, however, that the foregoing shall not require the Debtors, their professionals, or the Agent to prepare or undertake to prepare any additional or new reporting not otherwise being prepared by the Debtors, their professionals, or the Agent in connection with the Sale.

6.     Subject to the restrictions set forth in this Final Order and the Sale Guidelines, the Debtors and the Agent hereby are authorized to take any and all actions as may

be necessary or desirable to implement the Agreements and the Sales; and each of the transactions contemplated by the Agreements, and any actions taken by the Debtors and the Agent necessary or desirable to implement the Agreements and/or the Sales prior to the date of this Final Order, hereby are approved and ratified.

**B.   Authority To Engage In Sales**

7. The Debtors are authorized, pursuant to 105(a) and 363(b)(1) of the Bankruptcy Code, to continue and conduct Sales at the Stores in accordance with this Final Order, the Sale Guidelines and the Agreements.

8. The Sale Guidelines are approved in their entireties.

9. The Debtors are authorized to discontinue operations at the Stores in accordance with this Final Order and the Sale Guidelines.

10. All entities that are presently in possession of some or all of the Merchandise or FF&E in which the Debtors hold an interest that are or may be subject to the Agreements or this Final Order hereby are directed to surrender possession of such Merchandise or FF&E to the Debtors or the Agent.

11. Subject to the provisions herein in paragraphs 13, 15, 16, and 26, neither the Debtors nor the Agent nor any of their officers, employees, or agents shall be required to obtain the approval of any third party, including (without limitation) any Governmental Unit (as defined in Bankruptcy Code section 101(27)), landlord, or licensor, to conduct the Sales and to take the related actions authorized herein.

**C.   Conduct Of The Sales**

12. All newspapers and other advertising media in which the Sales may be advertised and all landlords and licensors, as applicable, of the Stores are directed to accept this Final Order as binding authority so as to authorize the Debtors and the Agent to conduct the

Sales and the sale of Merchandise and FF&E pursuant to the Agreements, including, without limitation, to conduct and advertise the sale of the Merchandise and FF&E in the manner contemplated by and in accordance with this Final Order, the Sale Guidelines, and the Agreements.

13. Nothing in this Final Order or the Agreements releases, nullifies, or enjoins the enforcement of any liability to a Governmental Unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) that any entity would be subject to as the owner, lessor, lessee, or operator of the property after the date of entry of this Final Order. Nothing contained in this Final Order or in the Agreements shall in any way (i) diminish the obligation of any entity to comply with environmental laws, or (ii) diminish the obligations of the Debtors to comply with environmental laws consistent with their rights and obligations as debtors in possession under the Bankruptcy Code. Nothing herein shall be construed to be a determination that the Agent is an operator with respect to any environmental law or regulation. Moreover, the sale of the Merchandise and FF&E shall not be exempt from, and the Agent shall be required to comply with, laws of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "General Laws"). Nothing in this Final Order shall alter or affect the Debtors' and Agent's obligations to comply with all applicable federal safety laws and regulations. Nothing in this Final Order shall be deemed to bar any Governmental Unit from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtors' or the Agent's right to assert in that forum or before this Court that any such laws are not in fact General Laws or that such enforcement is

impermissible under the Bankruptcy Code, this Final Order, or otherwise, pursuant to Paragraph 26 hereunder. Notwithstanding any other provision in this Final Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Final Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code. Nothing in this Final Order shall be deemed to have made any rulings on any such issues.

14. Except to the extent of the reserved rights of Governmental Units expressly granted elsewhere in this Final Order, during the Sales, the Debtors and Agent are hereby authorized to take such actions as may be necessary and appropriate to implement the Agreements and to conduct the sale without necessity of further order of this Court as provided in the Agreements or the Sale Guidelines, including, but not limited to, advertising the sale as a "store closing sale", "sale on everything", "everything must go", or similar-themed sales through the posting of signs (including the use of exterior banners at non-enclosed mall Stores, and at enclosed mall Stores to the extent the applicable Stores entrance does not require entry into the enclosed mall common area), use of signwalkers and street signage.

15. Notwithstanding anything herein to the contrary, and in view of the importance of the use of sign-walkers, banners, and other advertising to the sale of the Merchandise and FF&E, to the extent that disputes arise during the course of such sale regarding laws regulating the use of sign-walkers, banners or other advertising and the Debtors and the Agent are unable to resolve the matter consensually with a Governmental Unit, any party may request an immediate telephonic hearing with this Court pursuant to these provisions. Such hearing will, to the extent practicable, be scheduled no later than the earlier of two business days

of such request. This scheduling shall not be deemed to preclude additional hearings for the presentation of evidence or arguments as necessary.

16. Except as expressly provided in the Agreements, the sale of the Merchandise and FF&E shall be conducted by the Debtors and the Agent notwithstanding any restrictive provision of any lease, sublease, license or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Sales, the rejection of leases or licenses, abandonment of assets, or "going dark" provisions. The Debtors, the Agent, along with landlords and licensors, as applicable, of the Stores are authorized to enter into agreements ("Side Letters") between themselves regarding the Sales and related matters without further order of the Court, and such Side Letters shall be binding as among the Debtors, the Agent and any such landlords or licensors, as applicable, of the Stores, provided that nothing in such Side Letters affects the provisions of Paragraphs 13, 15, 16 and 26 of this Final Order. In the event of any conflict between the Sale Guidelines and any Side Letter, the terms of such Side Letter shall control.

17. Except as expressly provided for herein or in the Sale Guidelines, and except with respect to any Governmental Unit (as to which Paragraphs 13, 15, 16 and 26 of this Final Order shall apply), no person or entity, including, but not limited to, any landlord, licensor, service providers, utilities, and creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Sales or the sale of Merchandise or FF&E, or the advertising and promotion (including the posting of signs and exterior banners or the use of signwalkers) of such sales, and all such parties and persons of every nature and description, including, but not limited to, any landlord, licensor, service providers, utilities, and creditor and all those acting for or on behalf of such parties, are prohibited and enjoined from (i)

interfering in any way with, obstructing, or otherwise impeding, the conduct of the Sales and/or (ii) instituting any action or proceeding in any court (other than in the Bankruptcy Court) or administrative body seeking an order or judgment against, among others, the Debtors, the Agent, or the landlords or licensors, as applicable, at the Stores that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Sales or sale of the Merchandise or FF&E or other liquidation sales at the Stores and/or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease, license, or contract based upon any relief authorized herein.

18. In accordance with and subject to the terms and conditions of the Agreements, the Agent shall have the right to use the Stores and all related Store services, furniture, fixtures, equipment and other assets of the Debtors for the purpose of conducting the Sales, free of any interference from any entity or person, subject to compliance with the Sale Guidelines and this Final Order and subject to Paragraphs 13, 15, 16 and 26 of this Final Order.

19. The Agent shall accept the Debtors' validly-issued Gift Cards (as defined in the Customer Programs Motion[6]) that were issued by the Debtors prior to the applicable Sale Commencement Date (as defined in the Agreements) in accordance with the Debtors' Gift Card policies and procedures as they existed on the Petition Date, as described in the Customer Programs Motion, and accept returns of merchandise sold by the Debtors prior to the applicable Sale Commencement Date, provided that such return is otherwise in compliance with the Refund and Exchange Program (as defined in the Customer Programs Motion) as they existed on the Petition Date, as described in the Customer Programs Motion.

---

[6] As used herein, the "Customer Programs Motion" shall mean the *Debtors' Motion for Order Pursuant to Bankruptcy Code Sections 105(a) and Bankruptcy Rules 6003 and 6004 Authorizing the Debtors to (I) Maintain Customer Programs and (II) Honor or Pay Related Prepetition Obligations*, filed concurrently herewith.

20. All sales of Store Closure Assets shall be "as is" and final. However, as to the Stores, all state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales." Further, as to the Stores only, the Debtors and/or the Agent shall accept return of any goods purchased during the Sales that contain a defect which the lay consumer could not reasonably determine was defective by visual inspection prior to purchase for a full refund, provided that the consumer must return the merchandise within seven days of purchase, the consumer must provide a receipt, and the asserted defect must in fact be a "latent" defect. Signs stating that "[r]efunds may be made only for merchandise having a latent defect, when returned with a receipt within 7 days of purchase" will be posted at the cash register areas of the Stores. Returns, if permitted, related to the purchase of Store Closure Assets shall not be accepted at stores that are not participating in the Sales, except in the situation where a customer experiences a latent defect and returns the Merchandise within the seven day time period and provides information that the point of purchase store has closed in the meantime. Information on stores remaining open will be maintained on the Debtors' website through the end of the Sales.

21. The Agent shall not be liable for sales taxes except as expressly provided in the Agreements and the payment of any and all sales taxes is the responsibility of the Debtors. The Debtors are directed to remit all taxes arising from the Sales to the applicable Governmental Units as and when due, provided that in the case of a bona fide dispute the Debtors are only directed to pay such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit. For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the applicable Governmental Unit for which the sales taxes are collected. The Agent

shall collect, remit to the Debtors and account for sales taxes as and to the extent provided in the Agreements. This Final Order does not enjoin, suspend or restrain the assessment, levy or collection of any tax under state law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under state law.

22. Pursuant to section 363(f) of the Bankruptcy Code, the Agent, on behalf of the Debtors, is authorized to sell and all sales of Merchandise or FF&E (each as defined in the Agreements) pursuant to the Sales, whether by the Agent or the Debtors, shall be free and clear of any and all Encumbrances; <u>provided, however</u>, that any such Encumbrances shall attach to the proceeds of the Sales with the same validity, in the amount, with the same priority as, and to the same extent that any such liens, claims, and encumbrances have with respect to the Merchandise and FF&E, subject to any claims and defenses that the Debtors may possess with respect thereto and the Agent's fees and expenses (as provided in the Agreements).

23. To the extent that the Debtors propose to sell or abandon FF&E which may contain personal and/or confidential information about the Debtors' employees and/or customers (the "<u>Confidential Information</u>"), the Debtors shall remove the Confidential Information from such items of FF&E before such sale or abandonment.

24. The Debtors and/or the Agent (as the case may be) are authorized and empowered to transfer Merchandise and FF&E among the Stores. The Agent is authorized to sell the Debtors' FF&E and abandon the same, in each case, as provided for and in accordance with the terms of the Agreements.

**D.  Dispute Resolution Procedures With Governmental Units**

25. To the extent that the sale of Merchandise or FF&E is subject to any federal, state or local statute, ordinance, or rule, or licensing requirement directed at regulating "going out of business," "store closing," similar inventory liquidation sales, or bulk sale laws

(each a "GOB Law," and collectively, the "GOB Laws"), including laws restricting safe, professional and non-deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-walkers in connection with the sale and including ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions that would otherwise apply solely to the sale of the Store Closure Assets (collectively, including the GOB Laws, the "Liquidation Sale Laws"), the dispute resolution procedures in this section shall apply.

26. Provided that the Sales and the sale of Merchandise and FF&E are conducted in accordance with the terms of this Final Order, the Agreements and the Sale Guidelines, and in light of the provisions in the laws of many Governmental Units that exempt court-ordered sales from their provisions, the Debtors shall be presumed to be in compliance with any Liquidation Sale Laws and, subject to Paragraphs 13, 15, 16 and 25 herein, are authorized to conduct the Sales in accordance with the terms of this Final Order and the Sale Guidelines without the necessity of further showing compliance with any such Liquidation Sale Laws. However, to the extent there is a dispute arising from or relating to the Sales, this Final Order, the Agreements, or the Sale Guidelines, which dispute relates to any Liquidation Sale Laws (a "Reserved Dispute"), the following procedures shall apply:

   a. Except as otherwise provided in paragraph 15, the Court shall retain exclusive jurisdiction to resolve the Reserved Dispute. Any time within 14 days following service of this Final Order, any Governmental Unit may assert that a Reserved Dispute exists by serving written notice of such Reserved Dispute on the following parties so as to ensure delivery thereof within 1 business day thereafter: (i) Skadden, Arps, Slate, Meagher & Flom LLP, 300 South Grand Avenue, Suite 3400, Los Angeles, CA 90071 (Attn: Van Durrer), van.durrer@skadden.com; (ii) Skadden, Arps, Slate, Meagher & Flom LLP, 155 N. Wacker Drive, Suite 2700, Chicago, IL 60606 (Attn: John K. Lyons), john.lyons@skadden.com; and (ii) Hilco Merchant Resources, LLC, 5 Revere Drive, Suite 206, Northbrook, IL 60062 (Attn: Ian Fredericks), ifredericks@hilcoglobal.com.

    b.  If the Debtors, the Agent and the Governmental Unit are unable to resolve the Reserved Dispute within 14 days of service of the notice, the aggrieved party may file a motion with this Court requesting that this Court resolve the Reserved Dispute (a "<u>Dispute Resolution Motion</u>").

    c.  Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of this Final Order or to limit or interfere with the Debtors' or the Agent's ability to conduct or to continue to conduct the Sales pursuant to this Final Order and the Agreements, absent further order of this Court.

  27.  Within three business days of entry of this Final Order, the Debtors shall serve copies of this Final Order, the Agreements and the Sale Guidelines via e-mail, facsimile or regular mail, on: (i) the Attorney General's office for each state where the Sales are being held, (ii) the county consumer protection agency or similar agency for each county where the Sales are being held, (iii) the division of consumer protection for each state where the Sales are being held; (iv) the chief legal counsel for the local jurisdiction; (v) the Debtors' landlords of the Closing Stores, and (vi) the licensors of the Pop Up Stores.

**E. Store Closing Bonuses**

  28.  The Debtors shall have the authority, but not the obligation, to pay store closing bonuses (the "<u>Store Closing Bonuses</u>") to store-level and certain field employees who remain in the employ of the Debtors during the Sales. The Debtors shall have the authority to determine the individual amounts of each Store Closing Bonus, except that the total aggregate cost of the Store Closing Bonus program will not exceed 10% of the base payroll, including taxes and typical benefits, for all employees working at the Stores.

**F. Section 363(m)**

  29.  The Agent shall be afforded the protections of section 363(m) of the Bankruptcy Code as to all aspects of the transactions under and pursuant to the Agreements if this Final Order or any authorization contained herein is reversed or modified on appeal.

## G. Other Provisions.

30. Notwithstanding anything to the contrary contained herein, the relief granted in this Final Order and any payment to be made hereunder shall be subject to the terms of any orders approving entry into debtor in possession financing and authorizing the use of cash collateral approved by this Court in these Chapter 11 Cases (including with respect to any budgets or other covenants governing or relating to such debtor in possession financing and/or use of cash collateral), and to the extent there is any inconsistency between the terms of such orders and any action taken or proposed to be taken hereunder, the terms of such orders shall control.

31. Except with respect to the Agreements, nothing in this Final Order or the Motion shall be deemed to constitute postpetition assumption or adoption of any agreement under Bankruptcy Code section 365.

32. The Agreements and related documents may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of this Court.

33. The Agent shall not be liable for any claims against the Debtors, and the Debtors shall not be liable for any claims against Agent, in each case, other than as expressly provided for in the Agreements.

34. Notwithstanding anything to the contrary contained herein, the objection contained in the limited objection of Dolphin Mall Associates LLC and Taubman Auburn Hills Associates Limited Partnership (together, the "Taubman Landlords"), filed at Docket No. 186, that the FF&E at (1) Store 861, located at the Dolphin Mall in Miami, FL and (2) Store 876, located at the Great Lakes Crossing Outlets in Auburn Hills, MI, may not be sold by the Debtors or the Agent, is hereby preserved, and all related rights of the Taubman Landlords and the

Debtors are hereby reserved, pending resolution of the objection by this Court or consensually with the Debtors.

35. Except with respect to any Governmental Unit (as to which the provisions of Paragraphs 13, 15, 16 and 26 of this Final Order shall apply), this Court shall retain exclusive jurisdiction with regard to all issues or disputes arising from or relating to the implementation, interpretation, or enforcement of this Final Order or the Agreements, including, but not limited to, (i) any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit banner and signwalker advertising, including with respect to any allegations that such advertising is not being conducted in a safe, professional and non-deceptive manner, (ii) any claim of the Debtors, the landlords, the licensors and/or the Agent for protection from interference with the Sales, (iii) any other disputes related to the Sales, and (iv) to protect the Debtors and/or the Agent against any assertions of Encumbrances. No such parties or person shall take any action against the Debtors, the Agent, the landlords, the licensors, or the Sales until this Court has resolved such dispute. This Court shall hear the request of such parties or persons with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

Dated: Wilmington, Delaware

Oct 7, 2015

_____
HONORABLE BRENDAN L. SHANNON
CHIEF UNITED STATES BANKRUPTCY JUDGE