# EXHIBIT A

**Superior DIP Proposal**

October 7, 2015

Quiksilver, Inc.
5600 Argosy Circle
Huntington Beach, CA 92649

QS Wholesale, Inc.
5600 Argosy Circle
Huntington Beach, CA 92649

COMMITMENT LETTER

Ladies and Gentlemen:

We are pleased to commit to provide a superpriority priming term loan facility in an aggregate principal amount of up to $115,000,000 (the "DIP Term Facility"), in accordance with and subject to the terms and conditions set forth herein and in the term sheet attached hereto as Exhibit A (the "DIP Term Sheet"), to Quiksilver, Inc. and QS Wholesale, Inc. (collectively, "you") and certain of their affiliates, as debtors and debtors-in-possession, in Case No. 15-11880 (BLS) (Jointly Administered), pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The parties listed on the signature pages hereto are referred to as the "Commitment Parties", "us" or "we", and each individually, a "Commitment Party". This letter, together with the DIP Term Sheet, is referred to as the "Commitment Letter". Capitalized terms used in this letter without definition have the meanings assigned to them in the DIP Term Sheet.

As used herein, the term "Transactions" means, collectively, the entering into the DIP Term Facility, the funding of the DIP Term Loans and all other related transactions, including, without limitation, the payment of fees and expenses in connection therewith. The date on which the DIP Term Facility becomes effective and the initial term loans are funded is referred to as the "Closing Date". The provisions of this Commitment Letter shall be subject to entry of the Final Order.

1. Commitments

In order to facilitate the Transactions, the Commitment Parties are pleased to advise you of their several, and not joint, commitment to provide, through one or more funds managed or advised by the Commitment Parties, the aggregate principal amount of the DIP Term Facility in the respective amounts set forth on Schedule I attached hereto (each, a "Commitment"), upon the terms and conditions set forth in this Commitment Letter.

53103869_5

2.  Conditions Precedent

Each Commitment Party's commitments and agreements hereunder are subject only to (x) the execution and delivery by the parties thereto of the DIP Term Documents, and (y) the satisfaction of the conditions precedent set forth in the DIP Term Sheet under the heading "Conditions Precedent to Initial Term Loans".

3.  Miscellaneous

This Commitment Letter shall not be assignable by you without the prior written consent of each Commitment Party (and any purported assignment without such consent shall be null and void *ab initio*), is intended to be solely for the benefit of the parties hereto and the indemnified persons and is not intended to and does not confer any benefits upon, or create any rights in favor of, any person other than the parties hereto and the indemnified persons to the extent expressly set forth herein.  Each Commitment Party may assign all or a portion of its Commitment to other banks, financial institutions, or institutional lenders and investors upon prior written notice to you.  This Commitment Letter may not be amended or waived except by an instrument in writing signed by you and each Commitment Party.  This Commitment Letter may be executed in any number of counterparts, each of which shall be an original, and all of which, when taken together, shall constitute one agreement.  Delivery of an executed signature page of this Commitment Letter by facsimile or electronic transmission (e.g., "pdf" or "tif") shall be effective as delivery of a manually executed counterpart hereof.  This Commitment Letter shall be governed by, and construed and interpreted in accordance with, the laws of the State of New York.

You and we hereby irrevocably and unconditionally submit to the exclusive jurisdiction of the Bankruptcy Court or, if such court does not have (or abstains from) jurisdiction, any state or Federal court sitting in the Borough of Manhattan in the City of New York over any suit, action or proceeding arising out of or relating to this Commitment Letter or the Transactions.  You and we agree that service of any process, summons, notice or document by registered mail addressed to you or us shall be effective service of process for any suit, action or proceeding brought in any such court.  You and we hereby irrevocably and unconditionally waive any objection to the laying of venue of any such suit, action or proceeding brought in any such court and any claim that any such suit, action or proceeding has been brought in any inconvenient forum.  You and we hereby irrevocably agree to waive trial by jury in any suit, action, proceeding, claim or counterclaim brought by or on behalf of any party related to or arising out of this Commitment Letter or the Transactions.

This offer and the commitments of the Commitment Parties hereunder shall also automatically terminate at 5:00 p.m., New York City time, on October 16, 2015, if the Bankruptcy Court shall not have entered the Final Order.  In the event that (i) the Final Order has not been entered by October 16, 2015, or (ii) the Closing Date has not occurred by October 19, 2015, then this Commitment Letter and the commitments hereunder shall automatically terminate unless we agree, in our sole discretion, to an extension.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

We are pleased to assist you in connection with this important financing.

Very truly yours,

Brigade Capital Management, LP,
as Investment Manager,
on behalf of each entity listed in Schedule II

By: _____
Name: Raymond Luis
Title: CFO

CVI OPPORTUNITIES FUND I, LLLP

By: Susquehanna Advisors Group, Inc.,
    its authorized agent

By: _____
    Name: Ted Bryce
    Title: Assistant Vice President

[DIP Commitment Letter]

## SCHEDULE I TO COMMITMENT LETTER

| Commitment Party | Commitment Amount |
|---|---|
| Brigade Capital Management, LP, as Investment Manager, on behalf of each entity listed in Schedule II | $100,000,000 |
| CVI Opportunities Fund I, LLLP | $15,000,000 |

## SCHEDULE II TO COMMITMENT LETTER

| Legal Entity Name | Commitment |
|---|---|
| Big River Group Fund SPC Limited - Bond Segregated Portfolio | 775,570.52 |
| Brigade Credit Fund II Ltd. | 24,159,059.55 |
| Brigade Distressed Value Master Fund Ltd. | 4,000,000.00 |
| Brigade Leveraged Capital Structures Fund Ltd. | 20,000,000.00 |
| Brigade Opportunistic Credit Fund - ICIP, Ltd. | 1,225,651.25 |
| Brigade Opportunistic Credit Fund 16 LLC | 1,847,965.56 |
| Brigade Opportunistic Credit Fund- ICL LP | 2,472,166.64 |
| Brigade Structured Credit Fund Ltd. | 15,000,000.00 |
| Citigroup Pension Plan | 515,613.10 |
| Delta Master Trust | 2,435,792.58 |
| FedEx Corporation Employees' Pension Trust | 2,551,319.41 |
| FirstEnergy System Master Retirement Trust | 2,304,563.88 |
| Future Directions Credit Opportunities Fund | 937,927.46 |
| JPMorgan Chase Retirement Plan Brigade Bank Loan | 2,695,927.65 |
| Los Angeles County Employees Retirement Association | 5,560,224.66 |
| OCA Brigade Credit Fund II LLC | 782,928.16 |
| SC Credit Opportunities Mandate LLC | 1,526,739.01 |
| Tasman Fund LP | 8,000,000.00 |
| The Coca-Cola Company Master Retirement Trust | 3,208,550.57 |
| **Total** | **100,000,000.00** |

## E<small>XHIBIT</small> A T<small>O</small> C<small>OMMITMENT</small> L<small>ETTER</small>

**DIP Term Sheet**

# SENIOR SECURED SUPERPRIORITY DEBTOR-IN-POSSESSION FACILITY
# SUMMARY OF PRINCIPAL TERMS AND CONDITIONS

*The terms and conditions for the extension of credit described herein are dependent upon the approval of the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>") in the chapter 11 cases (the "<u>Cases</u>") of Quiksilver, Inc. and its domestic subsidiaries (collectively, the "<u>Debtors</u>"). Such terms and conditions are mutually dependent on each other and the DIP Term Lenders (as defined below) shall not be obligated to extend credit unless the approval of the Bankruptcy Court is obtained with respect to such terms and conditions as a whole. Upon the acceptance of this term sheet by the Debtors, the Debtors and the DIP Term Lenders shall negotiate in good faith definitive documentation incorporating the terms and conditions set forth herein (the "<u>Definitive Documentation</u>"), which shall supersede and replace this term sheet in its entirety upon the closing of the DIP Term Facility (as defined below).*

*Except as otherwise stated herein, the Definitive Documentation shall be substantially similar to the Senior Secured Super-Priority Debtor-in-Possession Credit Agreement, dated as of September 10, 2015, among the Debtors, the lenders party thereto, and OCM FIE, LLC, as Administrative Agent (the "<u>Oaktree Facility Agreement</u>") and the other definitive documentation executed and/or delivered in connection with the debtor-in-possession term loan facility described therein (such facility, the "<u>Oaktree Facility</u>"), with such modifications as may be required to incorporate the terms set forth herein and otherwise as may be mutually agreed between the Required Lenders (as defined below) and the Debtors.*

*References to the "<u>Interim Order</u>" shall mean the Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing on a Super-Priority Senior Secured Basis and (B) Use Cash Collateral, (II) Granting (A) Liens and Super-Priority Claims and (B Adequate Protection to Certain Prepetition Lenders, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief [Docket No. 76].*

| | |
|---|---|
| **DIP Term Borrower:** | QS Wholesale, Inc., as debtor and debtor-in-possession |
| **DIP Term Guarantors:** | Each of the Debtors (other than the DIP Term Borrower), as debtors and debtors-in-possession |
| **DIP Term Agent:** | Wilmington Trust, National Association |

53071346_9

| **DIP Term Lenders:** | The entities listed on Exhibit A attached hereto (the "Initial DIP Lenders") and such other entities as may be party from time to time as lenders |
|---|---|
| **Type and Amount of DIP Facility:** | A superpriority, priming term loan facility in an aggregate principal amount of up to $115,000,000 (the "DIP Term Facility"). Amounts repaid under the DIP Term Facility may not be reborrowed. All loans advanced under the DIP Term Facility shall be referred to herein as the "DIP Term Loans." |
| **Original Issue Discount:** | $1,150,000 (1%), which shall be deducted upon the initial draw of the DIP Term Loans. |
| **Interest Rate:** | 10.5% per annum |
| **Default Interest Rate:** | 2% per annum. |
| **Interest Payment Date:** | Payable on the last business day of each calendar month, calculated on the basis of the actual number of days elapsed in a year of 360 days. |
| **Availability:** | The full $115 million DIP shall be available to be borrowed upon (i) the entry of an order of the Bankruptcy Court approving the DIP Term Facility on a final basis and not subject to a stay, in form and substance reasonably satisfactory to the Required Lenders (the "Final Order"), (ii) execution and delivery of the Definitive Documentation, consistent with this term sheet and otherwise in form and substance reasonably satisfactory to the Required Lenders (collectively, the "DIP Term Documents"), and (iii) satisfaction or waiver of all relevant conditions precedent under the DIP Term Documents. The DIP Term Borrower may borrow available amounts under the DIP Term Facility from time to time in a manner consistent with the Budget (as defined below).<br><br>The "Budget" shall mean a thirteen-week cash flow budget prepared and filed by the Debtors and updated from time to time in accordance with the DIP Term Documents, which shall be reasonably satisfactory to the Required Lenders. The Required Lenders agree that the budget attached to the Oaktree Facility Agreement, with modifications to increase the budgeted fees and expenses for retained professionals to the Official Committee of Unsecured Creditors (the "Committee") in an amount to be agreed between the DIP Term Lenders and the Committee and such other modifications as required to incorporate the terms set forth herein, shall be satisfactory to them as the initial Budget. |

2

| | |
|---|---|
| **Use of Proceeds:** | The DIP Term Facility shall be used: (i) to pay all outstanding amounts under the Oaktree Facility; (ii) to finance transaction fees, costs, and expenses related to the DIP Term Facility, (iii) to finance ongoing debtor-in-possession working capital purposes consistent with the Budget (as defined below) within Permitted Variances (as defined below), (iv) to make adequate protection payments required under the Final Order, (v) to make intercompany loans to and other investments in the DIP Term Guarantors and their subsidiaries, to the extent permitted under the DIP Term Documents, and (vi) in accordance with the terms of the Final Order, for other general corporate purposes of the Debtors, in each case to the extent not prohibited under applicable law and the DIP Term Documents (including, without limitation, Bankruptcy Court-approved professional fees and other administrative fees arising in the Cases). |
| **Termination Date:** | The DIP Term Facility shall terminate on the earliest of (a) March 15, 2016, (b) acceleration of the obligations under the DIP Term Facility due to the occurrence of an Event of Default, (c) conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code, (d) dismissal of any of the Cases, (e) the effective date of any Debtor's plan of reorganization confirmed in the Cases by an order of the Bankruptcy Court, (f) repayment in full in cash of the DIP Term Facility and the termination of the commitments thereunder, (g) the termination of the DIP ABL Facility, and (h) a sale of all or substantially all of the Debtors' assets under section 363 of the Bankruptcy Code (the "Termination Date").<br><br>On the Termination Date, the Debtors shall indefeasibly repay all obligations under the DIP Term Facility in full in cash. |
| **Termination Fee:** | None. |
| **DIP Liens:** | As security for the full and timely payment of all obligations of the Debtors under the DIP Term Documents, each of the Debtors shall grant to the DIP Term Agent (for its benefit and the benefit of the DIP Term Lenders):<br><br>(i) pursuant to section 364(c)(2) of the Bankruptcy Code, a first priority lien on and security interest in all unencumbered assets of the Debtors other than assets constituting Revolving Credit Priority Collateral (as defined below) (now or hereafter acquired and all proceeds thereof);<br><br>(ii) pursuant to section 364(c)(3) of the Bankruptcy Code, junior liens on and security interests in the Revolving Credit Priority Collateral (now or hereafter acquired and all proceeds thereof); provided, that such liens on the Revolving Credit Priority Collateral shall be junior in priority and subordinate to the DIP ABL Liens (as defined below) and the liens of the ABL Agent (as defined in the Interim Order), and senior in priority to any other lien on the Revolving Credit Priority Collateral (including, without limitation, the liens of the Secured |

3

53071346_9

| | |
|---|---|
| | Notes Agent (as defined in the Interim Order)) securing any other indebtedness of the Debtors; and |
| | (iii) pursuant to section 364(d) of the Bankruptcy Code, subject and subordinate only to the DIP ABL Liens and the liens of the ABL Agent, in each case, solely with respect to the Revolving Credit Priority Collateral (as defined below) (now or hereafter acquired and all proceeds thereof), first priority priming liens on and security interests in the Revolving Credit Priority Collateral and the Term Loan Priority Collateral (as defined below) (in each case, now or hereafter acquired and all proceeds thereof), which liens shall be senior in priority to any other lien on such assets securing any other indebtedness of the Debtors (including, without limitation, senior in priority to the liens of the Secured Notes Agent); |
| | provided, however, that, the DIP Term Liens shall not attach to or encumber (i) the proceeds from the claims and causes of action under chapter 5 of the Bankruptcy Code and similar laws (collectively, the "Avoidance Actions"), including property received by judgment, settlement or otherwise, or (ii) 35% of the equity interests in any foreign direct subsidiary held by any Debtor (collectively, the "Unencumbered Foreign Equity"). The collateral to which such DIP Term Liens attach is referred to herein as the "DIP Term Collateral." |
| | The terms "DIP ABL Liens" and the "DIP ABL Collateral" shall be defined as set forth in the Interim Order; provided, however, that the DIP ABL Collateral shall not include, and the DIP ABL Liens shall not attach to or encumber, the Unencumbered Foreign Equity. |
| | The terms "Revolving Credit Priority Collateral" and "Term Loan Priority Collateral" shall be defined as set forth in the Intercreditor Agreement, dated as of September 10, 2015 (the "Existing Postpetition Intercreditor Agreement"), between Bank of America, N.A., as Revolving Agent, and OCM FIE, LLC, as Term Loan Agent. |
| **DIP Superpriority Claim:** | In addition to the liens and security interests granted to the DIP Term Agent on its behalf and on behalf of the DIP Term Lenders pursuant to the Final Order, subject and subordinate to the Carve-Out (as defined in the Interim Order) and in accordance with sections 364(c)(1), 503 and 507 of the Bankruptcy Code, all of the obligations under the DIP Term Facility shall constitute allowed superpriority administrative expense claims (the "DIP Term Superpriority Claim") with priority over any and all administrative expenses of the Debtors, whether heretofore or hereafter incurred, of the kind specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 364, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113, 1114 or any other provisions of the Bankruptcy Code; provided, that (i) the DIP Term Superpriority Claim and the DIP ABL Superpriority Claim (as defined below) shall rank equally in priority and share on a *pro rata* basis (other than with respect to proceeds of Avoidance Actions) (based on the outstanding principal amount of the DIP Term Facility, on the one hand, and the DIP ABL Facility (as defined in |

4

| | |
|---|---|
| | the Interim Order), on the other hand) with respect to all amounts payable in respect of such superpriority administrative expense claims and (ii) the DIP Term Superpriority Claim shall <u>not</u> attach to the proceeds of Avoidance Actions or the Unencumbered Foreign Equity.<br><br>The superpriority administrative expense claim granted in respect of the DIP ABL Facility (the "<u>DIP ABL Superpriority Claim</u>") shall be the same as the DIP Term Superpriority Claim, except that such claim <u>shall</u> attach to the proceeds of Avoidance Actions. |
| **Priority of DIP Liens:** | The DIP Term Liens shall only subject only to: (x) (i) the DIP Term Documents, and (ii) the terms and provisions of a postpetition intercreditor agreement substantially similar to the Existing Postpetition Intercreditor Agreement and otherwise in form and substance satisfactory to the Required Lenders (the "<u>New Postpetition Intercreditor Agreement</u>") and (y) (i) the Carve-Out, and (ii) any Priority Permitted Encumbrances (to be defined substantially similarly to the definition in the Oaktree Facility Agreement). The DIP Term Liens shall secure all obligations under the DIP Term Facility and the proceeds of the DIP Term Collateral shall be applied in the order and priority set forth in the DIP Term Documents and the Final Order, subject to the New Postpetition Intercreditor Agreement. Except as otherwise provided in the Final Order, the DIP Term Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in the Cases. |
| **Conditions Precedent to Initial Term Loans:** | The obligations of the DIP Term Lenders to make the initial term loan at closing (in an amount to be determined by the DIP Term Borrower and the DIP Term Lenders) shall be subject to the satisfaction or waiver of the following conditions precedent:<br><br>(i) the execution and/or delivery (as applicable) of the DIP Term Documents, together with opinions, closing certificates, lien and other searches, and other customary documents with respect to the DIP Term Facility, in each case, satisfactory to DIP Term Agent and Required Lenders in their reasonable discretion;<br><br>(ii) the appointment and continued employment of a chief restructuring officer acceptable to the Required Lenders (it being agreed that FTI Consulting, Inc. is acceptable);<br><br>(iii) the waiver and support agreements executed by certain holders of the 8.875% Senior Unsecured Notes due December 15, 2017, issued by Boardriders S.A. (the "<u>Boardriders Waiver</u>") shall remain in full force and effect;<br><br>(iv) the Debtors shall have paid all reasonable and documented costs, fees, disbursements, and expenses of the DIP Term Agent (including fees, costs, disbursements, and expenses of counsel); |

5

|  |  |  |
|---|---|---|
|  | (v) | confirmation of the outstanding amounts under the Oaktree Facility and evidence satisfactory to the DIP Term Agent and DIP Term Lenders that all such outstanding amounts shall be repaid in full from the proceeds of the Initial Term Loans and all liens and security interests in respect of the Oaktree Facility shall be released upon repayment in full of the Oaktree Facility; |
|  | (vi) | the Final Order shall have been entered and not subject to a stay, and shall provide for the DIP Term Liens and the DIP Term Superpriority Claim with the priority as set forth herein; |
|  | (vii) | the DIP Term Lenders shall have received the Budget, which shall be in form and substance reasonably satisfactory to the Required Lenders; and |
|  | (viii) | other conditions precedent substantially similar to those set forth in the Oaktree Facility Agreement, with such modifications as may be required to incorporate the terms described herein and otherwise as may be mutually agreed between the Required Lenders and the Debtors. |
| **Conditions Precedent to Additional Term Loans:** | Following the closing, the obligations of the DIP Term Lenders to make additional term loans under the DIP Term Facility shall be subject to the satisfaction or waiver of the following conditions precedent: | |
|  | (i) | the DIP Term Agent shall have received a request for such additional term loans in a form to be mutually agreed; |
|  | (ii) | the representations and warranties of the DIP Term Borrower and the DIP Term Guarantors shall be true and correct in all material respects; |
|  | (iii) | no default or Event of Default (as defined below) shall exist or would result from the proposed additional term loans or from the application of the proceeds thereof; |
|  | (iv) | the DIP ABL Facility shall be in full force and effect; |
|  | (v) | no material adverse effect shall have occurred; |
|  | (vi) | the proposed additional term loans shall be consistent with the Budget (within Permitted Variances); |
|  | (vii) | the aggregate principal amount of all DIP Term Loans advanced under the DIP Term Documents shall not exceed $115,000,000; and |
|  | (viii) | the Boardriders Waiver shall be in full force and effect. |

| | |
|---|---|
| **Prepayments:** | The Debtors may, upon irrevocable notice to the DIP Term Agent, at any time or from time to time, voluntarily prepay DIP Term Loans, in whole or in part, without premium or penalty.<br><br>The DIP Term Documents shall contain provisions regarding mandatory prepayments substantially similar to those set forth in the Oaktree Facility Agreement, with such modifications as may be required to incorporate the terms set forth herein and otherwise as may be mutually agreed between the Required Lenders and the Debtors. |
| **Representations and Warranties:** | The DIP Term Documents shall contain representations and warranties substantially similar to those set forth in the Oaktree Facility Agreement, with such modifications as may be required to incorporate the terms set forth herein and otherwise as may be mutually agreed between the Required Lenders and the Debtors. |
| **Covenants:** | The DIP Term Documents shall contain affirmative and negative covenants substantially similar to those set forth in the Oaktree Facility Agreement, with such modifications as may be required to incorporate the terms set forth herein and otherwise as may be mutually agreed between the Required Lenders and the Debtors. |
| **Compliance with Budget:** | The DIP Term Documents shall contain a covenant on compliance with the Budget substantially similar to that set forth in the Oaktree Facility Agreement, with the modification to the definition of "Permitted Variance" set forth below and such other modifications as may be required to incorporate the terms set forth herein and otherwise as may be mutually agreed between the Required Lenders and the Debtors.<br><br>"Permitted Variance" shall mean a Variance from the Budget on a cumulative basis tested on a weekly basis (the "Testing Period") commencing with the Petition Date, which Variance (i) is not more than 15% with respect to cumulative total operating receipts to the Budget for such Testing Period and (ii) is not more than 15% more than the cumulative Total Disbursements in the Budget for such Testing Period (without giving effect to the making of the DIP Term Loans or loans under the DIP ABL Facility or the repayments or prepayments of the DIP Term Loans or the loans under the DIP ABL Facility) on a cumulative basis to the Budget. |
| **Milestones:** | The Debtors will be required to meet the following milestones:<br><br>(i)    the Debtors shall file a motion seeking approval for bidding procedures and the sale of substantially all of the assets of the Debtors pursuant to section 363 of the Bankruptcy Code (a "Sale") on or before October 30, |

|  |  |
|---|---|
|  | 2015; |
|  | (ii) the order approving the bidding procedures for the Sale, in form and substance reasonably satisfactory to the Required Lenders, shall have been entered on or before November 24, 2015; |
|  | (iii) the auction for the Sale shall been held on or before March 4, 2016; |
|  | (iv) the order approving the Sale, in form and substance reasonably satisfactory to the Required Lenders, shall have been entered on or before March 7, 2016; and |
|  | (v) the Sale shall have closed on or before March 14, 2016; |
|  | (collectively, the "Sale Milestones"). In addition, the DIP Term Documents shall permit reasonable milestones for a plan process substantially consistent with the Sale Milestones (such milestones, collectively with the Sale Milestones, the "New Milestones"). |
| **Events of Default:** | The DIP Term Documents shall contain Events of Default substantially similar to those set forth in the Oaktree Facility Agreement, with the modifications set forth below and such other modifications as may be required to incorporate the terms set forth herein and otherwise as may be mutually agreed between the Required Lenders and the Debtors. |
|  | (A) The following Events of Default shall be removed: |
|  | (i) the filing by any Debtor of a plan of reorganization other than a Sponsored Plan (as defined in the Oaktree Facility Agreement); |
|  | (ii) the filing by any Debtor of any motion or pleading that is inconsistent with the prosecution of a Sponsored Plan; |
|  | (iii) the Event of Default titled "Challenge;" |
|  | (iv) any Person shall obtain a section 506(a) judgment or similar determination with respect to the Existing Senior Secured Note Obligations (as defined in the Oaktree Facility Agreement) that is unacceptable to the Existing Senior Secured Note Collateral Agent (as defined in the Oaktree Facility Agreement) and the Required Existing Senior Secured Noteholders (as defined in the Oaktree Facility Agreement); and |
|  | (v) entry of an order by the Bankruptcy Court authorizing or directing payment of any claim or claims under section 552(b) of the Bankruptcy Code against or with respect to any of the collateral. |
|  | (B) The following Events of Default shall be modified: |
|  | (i) all milestones listed under the Event of Default titled "Chapter 11 Cases Milestones" in the Oaktree Facility Agreement shall be replaced with the New Milestones; and |

8

| | |
|---|---|
| | (ii) under the Event of Default titled "Chief Restructuring Officer," the Debtors shall have thirty (30) calendar days (in lieu of five (5) Business Days) to engage a replacement Acceptable Chief Restructuring Officer (as defined in the Oaktree Facility Agreement) following his or her resignation. |
| **Remedies Upon Event of Default:** | The Final Order and DIP Term Documents shall contain provisions regarding remedies upon an Event of Default substantially similar to those set forth in the Interim Order and Oaktree Facility Agreement, with such modifications as may be required to incorporate the terms set forth herein and otherwise as may be mutually agreed between the Required Lenders and the Debtors. |
| **Expenses and Indemnification:** | The Final Order and DIP Term Documents shall contain provisions regarding the payment of the expenses of the DIP Term Agent and the indemnification of the DIP Term Agent and the DIP Term Lenders substantially similar to those set forth in the Interim Order and Oaktree Facility Agreement, with such modifications as may be required to incorporate the terms set forth herein and otherwise as may be mutually agreed between the Required Lenders and the Debtors. |
| **Assignments:** | The DIP Term Documents shall contain provisions regarding assignments of the DIP Term Loans substantially similar to those set forth in the Oaktree Facility Agreement, with such modifications as may be required to incorporate the terms set forth herein and otherwise as may be mutually agreed between the Required Lenders and the Debtors. |
| **Voting:** | "<u>Required Lenders</u>" means, as of any date of determination, the DIP Term Lenders holding more than fifty percent (50%) of the aggregate commitments then in effect and the aggregate unpaid principal amount of DIP Term Loans then outstanding or if the commitments of each DIP Term Lender to make the DIP Term Loans have been terminated, the DIP Term Lenders holding in the aggregate more than 50% of the aggregate unpaid principal amount of the DIP Term Loans then outstanding; provided that there shall be minority lender protections and 100% voting rights over customary matters consistent with the Oaktree Facility Agreement or otherwise acceptable to the Initial DIP Lenders. |

9

| | |
|---|---|
| **Adequate Protection for the Secured Notes Parties:** | The Secured Notes Parties (as defined in the Interim Order) shall receive adequate protection for use of cash collateral and for priming on the same terms as set forth in the Interim Order, with the following modifications: <br><br> (i) the Secured Notes Replacement Liens (as defined in the Interim Order) shall <u>not</u> attach to or encumber the Avoidance Actions or the Unencumbered Foreign Equity; <br><br> (ii) the Secured Notes Superpriority Claims (as defined in the Interim Order) shall <u>not</u> attach to the Avoidance Actions or the Unencumbered Foreign Equity; <br><br> (iii) the Secured Notes Parties shall be entitled to adequate protection in the form of periodic cash payments in an amount equal to the interest that accrues from and after September 9, 2015 (the "<u>Petition Date</u>") under the Secured Notes Documents (as defined in the Interim Order), calculated based on the applicable contract non-default rate set forth in the Secured Notes Documents, which shall be payable on a monthly basis in equal installments on the last business day of each calendar month (the "<u>Adequate Protection Payments</u>"); <u>provided</u>, <u>however</u>, that in addition to permitting the application of the Adequate Protection Payments to interest on the Senior Secured Notes (as defined in the Interim Order) (subject to recharacterization in the event and to the extent that the Secured Notes Parties are determined to have been undersecured), the Secured Notes Parties shall be entitled to use the Adequate Protection Payments to pay all reasonable and documented fees and expenses incurred in accordance with the Budget and the Secured Notes Documents, subject to the same notice and objection procedures as the fees and expenses of the DIP Term Agent and DIP Term Lenders. |
| **Adequate Protection for ABL Secured Parties:** | Because the ABL Facility (as defined in the Interim Order) has rolled into the DIP ABL Facility, no adequate protection for the ABL Secured Parties (as defined in the Interim Order) is required. |
| **Automatic Stay:** | The Final Order shall contain the same provisions regarding modification of the automatic stay as set forth in the Interim Order. |
| **Carve-Out:** | The Final Order and the DIP Term Documents shall contain the same provisions for the Carve-Out as set forth in the Interim Order. |
| **Investigation:** | The Committee may use any proceeds of the DIP Term Facility to investigate the Prepetition Secured Parties (as defined in the Interim Order). <br><br> There shall be no deadline for the Committee or any other party in interest to raise |

10

| | |
|---|---|
| | a Challenge with respect to the claims of the Secured Notes Parties under the Secured Notes Documents or otherwise with respect to any matter relating to the Secured Notes Parties. With respect to the ABL Secured Parties, the Final Order shall contain the same provisions providing for a Challenge Period with respect to the claims of the ABL Secured Parties under the ABL Documents (as defined in the Interim Order). |
| **Releases:** | The Final Order shall contain the same provisions regarding releases of the DIP ABL Agent, the DIP ABL Lenders, the ABL Agent, and the ABL Lenders as set forth in the Interim Order. There shall be no other releases in the Final Order. |
| **Section 506(c):** | The Final Order shall contain the same provisions providing for waiver of all claims under section 506(c) of the Bankruptcy Code for the DIP Agents and the DIP Lenders (as each is defined in the Interim Order) as set forth in the Interim Order. No Prepetition Secured Parties shall be entitled to any waivers of claims under section 506(c) of the Bankruptcy Code. |
| **Section 552:** | The Final Order shall contain the same provisions providing for waiver of the "equities of the case" exception under section 552 of the Bankruptcy Code for the DIP Agents and the DIP Lenders. No Prepetition Secured Parties shall be entitled to any waivers of the "equities of the case" exception under section 552 of the Bankruptcy Code. |
| **Supplemental Reporting Requirements:** | The Final Order shall contain the same supplemental reporting requirements as set forth in the Interim Order; <u>provided</u>, <u>that</u> such reporting requirements shall continue until both the DIP ABL Obligations and the obligations under the DIP Term Facility are paid in full. |
| **Taxes:** | The DIP Term Documents shall contain provisions regarding tax withholdings and deductions substantially similar to those set forth in the Oaktree Facility Agreement, with such modifications as may be required to incorporate the terms set forth herein and otherwise as may be mutually agreed between the Required Lenders and the Debtors. |
| **Governing Law and Forum:** | The laws of the State of New York. Each party to the DIP Term Facility will waive the right to trial by jury and will consent to jurisdiction of the United States Bankruptcy Court for the District of Delaware. |

# **EXHIBIT A**

Designees of Brigade Capital Management

Designees of CVI Opportunities Fund I, LLLP

53071346_9