## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| QUIKSILVER, INC., *et al.*, | : | Case No. 15-11880 (BLS) |
|  | : |  |
|  | : | Jointly Administered |
| Debtors.[1] | : |  |
|  | : | **Hrg. Date: Nov. 17, 2015 at 10:30 a.m. (Eastern)** |
|  | : | **Obj. Due: Nov. 10, 2015 at 4:00 p.m. (Eastern)** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEBTORS' APPLICATION FOR ENTRY OF ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 327(a) AND 328(a), BANKRUPTCY RULES 2014 AND 2016, AND LOCAL BANKRUPTCY RULES 2014-1 AND 2016-2(h) (I) AUTHORIZING EMPLOYMENT AND RETENTION OF A&G REALTY PARTNERS, LLC AS THEIR REAL ESTATE ADVISOR, *NUNC PRO TUNC* TO THE PETITION DATE, (II) WAIVING CERTAIN INFORMATION REQUIREMENTS OF LOCAL BANKRUPTCY RULE 2016-2(d), AND (III) GRANTING RELATED RELIEF**

Quiksilver, Inc. ("ZQK") and certain of its affiliates, the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors" and, together with their non-Debtor affiliates, "Quiksilver" or the "Company") hereby apply (the "Application") to the Court for entry of an order, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-2(h) of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), (i) authorizing the Debtors to retain and employ A&G Realty Partners, LLC ("A&G Realty" or "A&G") as their real estate advisor, *nunc pro tunc* to the Petition Date (as defined below), in accordance with the terms and conditions set forth in the Services Agreement (as defined below),

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599).  The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

(ii) approving the provisions of the Services Agreement, including, but not limited to, the proposed compensation arrangement and its indemnification provisions, under section 328(a) of the Bankruptcy Code, (iii) waiving certain information requirements of Local Bankruptcy Rule 2016-2(d), and (iv) granting related relief.  In support of this Application, the Debtors rely upon and incorporate by reference the Declaration Of Andrew Graiser In Support Of The Debtors' Application For Entry Of Order Pursuant To Bankruptcy Code Sections 327(a) And 328(a), Bankruptcy Rules 2014 And 2016, And Local Bankruptcy Rules 2014-1 And 2016-2(h) (I) Authorizing Employment And Retention Of A&G Realty Partners, LLC As Their Real Estate Advisor, *Nunc Pro Tunc* To The Petition Date, (II) Waiving Certain Information Requirements Of Local Bankruptcy Rule 2016-2(d), And (III) Granting Related Relief (the "Graiser Declaration"), attached hereto as Exhibit A.  In further support of the Application, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Application under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Application in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code.  The relief is further warranted under Bankruptcy Rules 2014(a) and 2016, as well as Local Bankruptcy Rules 2014-1 and 2016-2(h).

3.      Pursuant to Local Bankruptcy Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to this Application if it is determined that this Court would lack Article III jurisdiction to enter such final order or judgment absent the consent of the parties.

## BACKGROUND

4.        On September 9, 2015 (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").  These Chapter 11 Cases are jointly administered.

5.        The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.        On September 22, 2015, the Office of the United States Trustee for the District of Delaware (the "United States Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee").  On September 28, 2015, the United States Trustee filed an Amended Notice of Appointment of Creditors' Committee.  No trustee or examiner has been appointed in the Debtors' Chapter 11 Cases.

7.        Quiksilver is one of the world's leading outdoor sports lifestyle companies.   The Company designs, develops and distributes branded apparel, footwear, accessories and related products.   The Company began operations in 1976 making boardshorts for surfers in the United States under a license agreement with the *Quiksilver* brand founders in Australia.  Today, the Company's business is rooted in the strong heritage and authenticity of its core brands, *Quiksilver*, *Roxy*, and *DC*, each of which caters to the casual, outdoor lifestyle associated with surfing, skateboarding, snowboarding, BMX, and motocross, among other activities.  The Company's products are sold in over 115 countries through a wide range of distribution points, including wholesale accounts (surf shops, skate shops, snow shops, sporting goods stores, discount centers, specialty stores, select department stores, and licensed stores), Company-owned retail stores, and its e-commerce websites.  The Debtors comprise each of the

Company's U.S. entities, including parent, ZQK, as well as QS Wholesale, Inc., QS Retail, Inc., DC Shoes, Inc. and seven inactive entities.

8.      Additional factual background information regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to these Chapter 11 Cases, is set forth in detail in the Declaration of Andrew Bruenjes, Americas Chief Financial Officer of Quiksilver, Inc., in Support of Chapter 11 Petitions and First Day Pleadings [Docket No. 20].

## RELIEF REQUESTED

9.      By this Application, the Debtors seek entry of an order (i) authorizing the Debtors to employ and retain A&G Realty as their real estate advisor, *nunc pro tunc* to the Petition Date, on the terms and conditions set forth in the Services Agreement (defined below), (ii) approving the provisions of the Services Agreement, including, but not limited to, its proposed compensation arrangement and indemnification provisions, (iii) waiving certain time keeping requirements of Local Bankruptcy Rule 2016-2(d), and (iv) granting related relief, as more fully described below.

## A&G REALTY'S QUALIFICATIONS

10.     A&G Realty is a diversified real estate consulting and advisory firm with offices located throughout the country.  A&G Realty evaluates, restructures, facilities the acquisition of, and disposes of all types of real estate.  The Debtors have chosen A&G Realty to serve as their real estate advisor and consultant because of A&G Realty's wealth of experience in providing services regarding the review, analysis, restructuring, disposition and negotiation of real property lease agreements and because of A&G Realty's extensive knowledge of the Debtors and their real property Leases.

4

11.    A&G Realty's principals have over fifty years of commercial real estate experience.  A&G Realty has significant experience in the disposition and renegotiation of leases in bankruptcy.  Indeed, A&G Realty's professionals been retained as real estate consultants in a variety of bankruptcy cases involving issues relating to the review, analysis, and renegotiation of key real property lease agreements, including, but not limited to, the following: In re Caché, Inc., Case No. 15-10172 (MFW) (Bankr. D. Del. Mar. 3, 2015); In re Event Rentals, Inc., Case No. 14-10282 (PJW) (Bankr. D. Del. April 15, 2014); Orchard Supply Hardware Stores Corp., Case No. 13-11565 (CSS) (Bankr. D. Del. July 11, 2013); In re Bakers Footwear Group, Inc., Case No. 12-49658-705 (Bankr. E.D. Mo. Feb. 5, 2013).

12.    The Debtors have selected A&G Realty as their real estate advisor based upon, among other things, (i) the Debtors' need to retain a skilled and experienced real estate advisor to provide services relating to the Debtors' Leases, (ii) A&G Realty's extensive knowledge of the Debtors' Leases, including Leases targeted for modification and/or termination, and (iii) A&G Realty's extensive experience and excellent reputation in providing real estate consulting services in complex chapter 11 cases such as these. Accordingly, the Debtors believe the engagement of A&G Realty is critical to their efforts to navigate successfully through Chapter 11 and provide a maximum recovery to their creditors. Furthermore, A&G Realty is well qualified to perform all Services contemplated by the Services Agreement and to represent the Debtors' interests in these Chapter 11 Cases in a cost-effective, efficient, and timely manner.

**A&G REALTY'S PREPETITION AND POSTPETITION SERVICES
PROVIDED TO DATE**

13.     In early September 2015, the Debtors retained A&G Realty as their real estate advisor to provide them with Lease analysis and other Lease-related services during these Chapter 11 Cases.  Accordingly, on September 4, 2015, A&G Realty and ZQK entered into a Real Estate Services Agreement (the "Services Agreement"),[2] a copy of which is attached hereto as Exhibit B, to provide certain real estate services in connection with the Debtors' Leases.

14.     A&G Realty has been extensively involved in the Company's Lease-related efforts.  As a result of A&G Realty's prepetition work performed on behalf of the Debtors, as well as its postpetition services provided to date, A&G has acquired significant knowledge of the Debtors' Leases and the Debtors' goals and objectives with respect to the Leases.  During A&G Realty's engagement, A&G has provided the following services, among others, in connection with the Debtors' Leases:

- consulting services;

- review and analysis of the Debtors' Leases;

- negotiation of the Leases; and

- marketing of the Leases.

15.     In providing these services to the Debtors, A&G Realty has committed significant effort and resources toward analyzing the Debtors' Leases and Lease-related matters. Accordingly, the Debtors believe that A&G Realty has the necessary background to deal effectively and efficiently with the many issues that may arise in these Chapter 11 Cases in connection with the Debtors' Leases.

---

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Services Agreement.

**SERVICES TO BE PROVIDED**

16.     As set forth more fully in the Services Agreement, A&G Realty will

perform the following services for the Debtors (the "<u>Services</u>"):[3]

> (a)     consult with the Debtors to discuss the Debtors' goals, objectives, and financial parameters in relation to the Leases;
>
> (b)     negotiate with the landlords of the Lease properties on behalf of the Debtors to assist the Debtors in obtaining Lease modifications for the Leases set forth on Schedule A to the Services Agreement;
>
> (c)     negotiation with the landlords of the Lease properties and other third parties on behalf of the Debtors to assist the Debtors in obtaining Lease terminations, sales, and/or assignments for the Leases set forth in Schedule B to the Services Agreement;
>
> (d)     negotiate with the landlords of the Lease properties and other third parties on behalf of the Debtors to assist the Debtors in obtaining Lease claim mitigations for the Leases set forth in Schedules A or B to the Services Agreement, as applicable; and
>
> (e)     report periodically to the Debtors regarding the status of negotiations and performance of the Services.[4]

17.     The Services are necessary to enable the Debtors to maximize the value of

their estates.  Therefore, the Debtors have requested that A&G Realty perform the Services set

forth in the Services Agreement and summarized herein, subject to the Court's approval of this

---

[3]     Any description of the terms of the Services Agreement contained herein is a summary provided for convenience purposes only.  In the event of any inconsistency between the summary of Services as set forth herein and the Services Agreement, the Services Agreement shall control.  Capitalized terms used but not otherwise defined in this summary shall have the meanings ascribed to them in the Services Agreement.

[4]     A&G Realty may provide additional services requested by the Debtors that are not otherwise specifically provided for in the Services Agreement, but any additional services would be mutually agreed to by the Debtors and A&G Realty and documented in a separate agreement.

Application, and A&G Realty has stated its desire, willingness, and ability to act in these Chapter

11 Cases as the Debtors' real estate advisor.[5]

### PROFESSIONAL COMPENSATION

18.    Subject to the Court's approval, the Debtors will compensate A&G in

accordance with the terms and conditions set forth in the Services Agreement, including

Schedule C of such agreement, which provides that the Debtors will pay to A&G Realty the

following fixed fees (collectively, the "Fixed Fee Services"), as applicable Services are

performed by A&G Realty on a Lease-by-Lease basis in these Chapter 11 Cases:[6]

(a)    Monetary Lease Modifications – For each Monetary Lease
Modification attained by A&G Realty on behalf of the Debtors,
A&G Realty shall be paid the greater of seven hundred and fifty
dollars ($750.00) or four percent (4%) of the Occupancy Cost
Savings per Lease.

(b)    Lease Terminations/Sales/Assignments – For each Lease
Termination/Sale/Assignment attained by A&G Realty on behalf of
the Debtors, A&G Realty shall earn and be paid four percent (4%) of
the Gross Proceeds received by the Debtors.  Additionally, A&G
shall be paid a one hundred dollar ($100.00) administrative fee per
Lease.

(c)    Lease Claim Mitigations – For Lease Claim Mitigations negotiated
by A&G Realty on behalf of the Debtors, A&G Realty shall earn and
be paid a fee of four and one half percent (4.5%) of the Gross
Proceeds per claim.  Reductions of 502(b)(6) claims will be
calculated based upon the dividend paid to unsecured creditors.

(d)    Early Termination Rights – For each acceptable Early Termination
Right obtained by A&G Realty on behalf of the Debtors, A&G

---

[5]    Additionally, the Debtors have agreed to not engage any other professional except for A&G Realty to perform
the services provided under the Services Agreement.

[6]    The summary provided herein is for illustrative purposes only and is subject to the Services Agreement in all
respects.  In the event of any inconsistency between the summary of the Fixed Fee Services set forth herein and
the Services Agreement, the Services Agreement shall control.  Capitalized terms used but not otherwise
defined in this summary shall have the meanings ascribed to them in Schedule C of the Services Agreement.

Realty shall earn and be paid a fee of two thousand five hundred dollars ($2,500.00) per Lease.

(e) <u>Non-Monetary Lease Modification.</u> – For each acceptable Non-Monetary Lease Modification (excluding Early Termination Rights) obtained by A&G Realty on behalf of the Debtors, A&G shall earn and be paid a fee of one thousand two hundred fifty dollars ($1,250.00) per Lease, regardless of the aggregate number of Non-Monetary Lease Modifications.

19.     Additionally, the Debtors have paid A&G Realty a non-refundable retainer fee in the amount of twenty five thousand dollars ($25,000.00), which is to be applied to the fees due under the Services Agreement.

20.     In addition to any fees payable by the Debtors to A&G Realty, the Debtors will reimburse A&G Realty for its transactional costs and/or legal expenses incurred by it or the Debtors in connection with A&G Realty's retention and Services provided by A&G.  The Debtors will also reimburse A&G for its reasonable out-of-pocket expenses (including, but not limited to, legal, marketing, mailing, and travel expenses) incurred in connection with its retention and provision of Services.  Any reimbursable expenses shall be paid to A&G Realty within ten (10) days of the Debtors' receipt of an invoice for such expenses.  All expenses in excess of five hundred dollars ($500.00) must be pre-approved by the Debtors.

21.     The Debtors believe that the compensation structure described above and set forth in the Services Agreement is comparable to compensation generally charged by real estate advisors of similar stature to A&G Realty for comparable engagements, both in and out of bankruptcy.  Furthermore, the Debtors believe that the compensation structure is consistent with A&G Realty's normal and customary billing practices for cases of comparable size and complexity that require the level and scope of services to be provided in these Chapter 11 Cases.

**RECORD KEEPING AND APPLICATIONS FOR COMPENSATION**

22.     Local Bankruptcy Rule 2016-2(d) imposes certain information requirements on professionals' compensation requests, including that professionals report their billed activities in one-tenth of an hour increments, that all activity descriptions be divided into general project categories, that each activity include a time allotment, and certain billing requirements tied to an assumed schedule of hourly rates, among others.  Local Bankruptcy Rule 2016-2(h), however, provides that "[a]n employed professional person or entity within the scope of this Local Rule may request that the Court waive, for cause, one or more of the information requirements of this Local Rule" in the motion seeking to court approval for the retention of such professional entity.

23.     Pursuant to Local Rule 2016-2(h), the Debtors and A&G Realty submit that there exists cause to waive the information and reporting requirements imposed by Local Bankruptcy Rule 2016-2(d) with respect to A&G Realty.  As set forth in the Graiser Declaration, A&G Realty believes that it would be unduly burdensome and time-consuming for A&G Realty to record their activities in compliance with the information requirements set forth in Local Bankruptcy Rule 2016-2(d).  It is standard in A&G Realty's industry for professionals providing services relating to lease concessions to be compensated on a fixed fee percentage basis, rather than on an incremental hourly basis, for such services.  As described above, A&G Realty and the Debtors have agreed that, consistent with industry practice, A&G Realty will be primarily compensated on a fixed fee percentage basis for its Services.

24.     The Debtors propose that for compensation paid for all Services, and for all expenses incurred in connection with the Services, A&G Realty be paid one-hundred

percent (100%) of the amount due upon submission of an acceptable invoice to the Debtors.

Upon completion of its work for the Debtors, A&G Realty will file a final fee application for

review by the Court and parties in interest pursuant to section 328(a) of the Bankruptcy Code for

all Services.

25.    The Debtors further propose that A&G Realty be required to submit

monthly, interim, and final fee applications with regard to the Additional Services on an hourly

basis only, and that the time detail provided with such fee applications be provided in summary

format.  Specifically, A&G Realty will submit time records setting forth the hours spent on each

activity and a description of the services provided, but will not break out their time into one-tenth

of an hour increments.

26.    The Debtors submit that applications submitted in the manner set forth

above will provide the Court and other parties in interest with sufficient information to monitor

the amount and types of services rendered to the Debtors by A&G Realty.  See, e.g., In re

Caché, Inc., Case No. 15-10172 (MFW) (Bankr. D. Del. Mar. 3, 2015) (approving similar fee

procedures and modifications from Local Bankruptcy Rule 2016-2(d)); In re Event Rentals,

Inc., Case No. 14-10282 (PJW) (Bankr. D. Del. April 15, 2014) (same).  Accordingly, the

Debtors request that the Court modify the requirements set forth in Local Rule 2016-2(d) and

permit A&G Realty to receive compensation and submit monthly, interim, and final fee

applications in the manner set forth herein.

### REQUEST FOR APPROVAL OF A&G REALTY'S RETENTION
### *NUNC PRO TUNC* AS OF THE PETITION DATE

27.    Additionally, by this Application, the Debtors request approval of the

retention and employment of A&G Realty *nunc pro tunc* to the Petition Date.  Such relief is

warranted by the extraordinary circumstances presented by these cases.  The Third Circuit has

identified "time pressure to begin service" and absence of prejudice as factors favoring *nunc pro tunc* retention.  See Matter of Arkansas Co., 798 F.2d 645, 650 (3d Cir. 1986); see also In re Indian River Homes, Inc., 108 B.R. 46, 52 (D. Del. 1989).  The complexity, intense activity, and speed that have characterized these Chapter 11 Cases has necessitated that A&G Realty focus its immediate attention on time-sensitive matters and promptly devote substantial resources to the affairs of the Debtors pending submission and approval of this Application.

## INDEMNIFICATION

28.    The Services Agreement includes a provision indemnifying A&G Realty and its respective affiliates, officers, directors, employees, agents and independent contractors (collectively, the "Indemnified Parties").  The indemnification provision governing the Debtors' and A&G Realty's indemnification rights and obligations (the "Indemnification Provision"), see Exhibit B, Services Agreement ¶ 23, was fully negotiated between the Debtors and A&G Realty at arm's length and in good faith.  The Debtors and A&G Realty believe that, subject to the modifications set forth in the proposed order attached to this Application, the Indemnification Provision is customary and reasonable for similar real estate advisor engagements in chapter 11 cases and reflect the qualifications and limitations on indemnification provisions that are customary in this district.  See, e.g., In re Caché, Inc., Case No. 15-10172 (MFW) (Bankr. D. Del. Mar. 3, 2015); In re Event Rentals, Inc., Case No. 14-10282 (PJW) (Bankr. D. Del. April 15, 2014).

29.    Moreover, the modifications to the Indemnification Provision conform to the procedures approved in *United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003). Accordingly, the Debtors believe that the Indemnification Provision, as modified under the proposed order, is reasonable and in the best interests of the Debtors, their estates, and creditors

in light of the fact that the Debtors require A&G Realty's services for a successful

reorganization.

## EFFORTS TO AVOID DUPLICATION OF SERVICES

30.    The Debtors believe that the services A&G Realty will provide will be

complementary, rather than duplicative, of the services to be performed by other professionals in

these Chapter 11 Cases.  The Debtors will coordinate with A&G Realty and the Debtors' other

professionals to minimize unnecessary duplication of efforts among the Debtors' professionals.

## A&G REALTY'S DISINTERESTEDNESS

31.    A&G Realty has reviewed the list of parties in interest provided by the

Debtors.  To the best of the Debtors' knowledge, information, and belief, and except to the extent

disclosed herein and in the Graiser Declaration, A&G (i) does not hold any interest materially

adverse to the Debtors' estates, (ii) has no connection with the Debtors, their creditors, equity

security holders, or related parties herein, and (iii) is a "disinterested person" within the meaning

of section 101(14) of the Bankruptcy Code (as modified by section 1107(b) of the Bankruptcy

Code).  The Debtors' knowledge, information, and belief regarding the matters set forth herein

are based, and made in reliance, upon the Graiser Declaration.

32.    Given the large number of parties in interest in these Chapter 11 Cases,

despite the efforts to identify and disclose A&G Realty's relationships with parties in interest in

these Chapter 11 Cases, A&G Realty is unable to state with certainty that every client

relationship or other connection has been disclosed in the Graiser Declaration.  The Debtors have

been informed that A&G Realty will conduct an ongoing review of its files to ensure that no

conflicts or other disqualifying circumstances exist or arise.  If any new material facts or

relationships are discovered or arise, A&G Realty will promptly inform the Court, as required by Local Bankruptcy Rule 2014-1(a).

33.    In the 90-day period prior to the Petition Date, A&G Realty received from the Debtors a $25,000.00 prepetition retainer, $0 in fees, and $0 on account of expense reimbursements.  As of the Petition Date, A&G Realty is holding $25,000.00 of the amount of the prepetition retainer.  Although A&G Realty's records indicate that it is not owed any amounts in respect of prepetition services provided to the Debtors, the Debtors understand that A&G Realty's prepetition fees and expenses for the billing period preceding the Petition Date may not have been fully accounted for as of the date hereof.  A&G Realty has informed the Debtors that as promptly as practicable after all fees and charges accrued prior to the Petition Date have finally been posted, A&G Realty will issue a final prepetition bill statement for any unpaid fees and charges for the period prior to the Petition Date (the "Final Prepetition Bill Amount").  Subject to any orders of the Court, A&G Realty will reconcile the Final Prepetition Bill Amount with any remaining prepetition retainer amounts to pay A&G Realty's prepetition invoices.  To the extent that reconciliation of the amount of the prepetition invoices (the "Reconciliation Amount") is less than the remaining retainer, the Debtors and A&G Realty have agreed that A&G Realty will hold the full amount of the difference as a postpetition retainer to be applied against postpetition expenses.  In the event that the Final Prepetition Bill Amount exceeds the remaining retainer amounts, A&G Realty has agreed to waive any resulting prepetition claim against the Debtors for payment with respect to the amount by which the Reconciliation Amount exceeds the retainer.

34.     As set forth in the Graiser Declaration, A&G Realty has not shared or

agreed to share any of its compensation from the Debtors with any other person, other than other

principals and employees of A&G Realty, as permitted by section 504 of the Bankruptcy Code.

35.     Except as described herein, no commitments have been made or received

by A&G Realty, nor any member thereof, as to compensation or payment in connection with

these Chapter 11 Cases.

**BASIS FOR RELIEF**

36.     The Debtors seek approval of the retention and employment of A&G

Realty as their real estate advisor pursuant to sections 327(a) and 328(a) of the Bankruptcy Code.

Section 327(a) of the Bankruptcy Code provides that the debtor in possession "may employ one

or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not

hold or represent an interest adverse to the estate, and that are disinterested persons, to represent

or assist" the debtor in possession in carrying out its duties.  11 U.S.C. § 327(a).

37.     The Debtors seek approval of the Services Agreement (including its

compensation structure and Indemnification Provision) pursuant to section 328(a) of the

Bankruptcy Code, which provides, in relevant part, that the Debtors "with the court's

approval, may employ or authorize the employment of a professional person under section

327 . . . on any reasonable terms and conditions of employment, including on retainer, on an

hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis" subject to later

re-evaluation by the Court.  11 U.S.C. § 328(a).  Accordingly, section 328 of the Bankruptcy

Code permits the compensation of professionals, including real estate advisors, on more flexible

terms that reflect the nature of their services and market conditions.  As the United States Court

of Appeals for the Fifth Circuit recognized in <u>Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l</u>

<u>Gypsum (In re Nat'l Gypsum Co.)</u>:

> Prior to 1978 the most able professionals were often unwilling to
> work for bankruptcy estates where their compensation would be
> subject to the uncertainties of what a judge thought the work was
> worth after it had been done.  That uncertainty continues under the
> present § 330 of the Bankruptcy Code, which provides that the
> court award to professional consultants "reasonable compensation"
> based on relevant factors of time and comparable costs, etc.  Under
> present § 328 the professional may avoid that uncertainty by
> obtaining court approval of compensation agreed to with the
> trustee (or debtor or committee).

123 F.3d 861, 862 (5th Cir. 1997) (internal citations and emphasis omitted), <u>cited in</u> <u>Riker,</u>

<u>Danzig, Scherer, Hyland & Perretti LLP v. Official Comm. of Unsecured Creditors (In re Smart</u>

<u>World Techs. LLC)</u>, 383 B.R. 869, 874 (S.D.N.Y. 2008).

      38.     Bankruptcy Rule 2014 requires that an application for retention include

"specific facts showing the necessity for the employment, the name of the [firm] to be employed,

the reasons for the selection, the professional services to be rendered, any proposed arrangement

for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections

with the debtor, creditors, any other party in interest, their respective attorneys and accountants,

the United States trustee, or any person employed in the office of the United States trustee."  Fed.

R. Bankr. P. 2014.  This Application, the Graiser Declaration, and the Services Agreement set

forth the information required under Bankruptcy Rule 2014.

      39.     The Debtors respectfully submit that they should be authorized to retain

and employ A&G Realty in accordance with the terms and conditions of the Services

Agreement.  First, as discussed above and in the Graiser Declaration, A&G Realty satisfies the

disinterestedness standard in section 327(a) of the Bankruptcy Code.  Moreover, during the

course of its engagement, A&G Realty has become familiar with the Debtors' Leases and the

Debtors' goals, objectives, and financial parameters with respect to the Leases, and has already committed a significant amount of time and effort with respect to the Lease-related services contemplated under the Services Agreement.  A&G Realty's Services are needed postpetition to continue assisting with negotiations with landlords and other third parties, as necessary, to provide advice regarding Lease-related matters, and to enable the Debtors to discharge their duties as debtors and debtors in possession.  A&G Realty has extensive experience and an excellent reputation in providing high-quality real estate consulting services to debtors and creditors in bankruptcy reorganizations and other restructurings.  Accordingly, the Debtors believe that A&G Realty is well-qualified to provide its services to the Debtors in a cost-effective, efficient, and timely manner.

40.    Additionally, the terms and conditions of the Services Agreement were negotiated by the Debtors and A&G Realty at arm's-length and in good faith.  In light of the foregoing, and given the numerous landlord and lease-related issues that A&G Realty may be required to address in its performance of the Services, A&G Realty's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for A&G Realty's services for engagements of this nature, the Debtors believe that the terms and conditions of the Services Agreement are fair, reasonable, and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

41.    The Debtors further believe that the compensation structure set forth in the Services Agreement appropriately reflects the nature and scope of Services to be provided by A&G Realty, A&G Realty's substantial experience as a real estate advisor in chapter 11 cases, and the fee and expenses typically utilized by A&G Realty and other leading real estate consultants and advisors.

17

42.     The Debtors submit that the employment and retention of A&G Realty, *nunc pro tunc* to the Petition Date and on the terms and conditions set forth herein and in the Services Agreement, is in the best interest of the Debtors, their estates, creditors, stakeholders and other parties in interest, and therefore, should be approved.

## NOTICE

43.     Notice of this Application will be given to: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the agent for the Debtors' postpetition secured loan facilities; (c) counsel to the agent for the Debtors' prepetition revolving loan facility; (d) the agent for the Debtors' prepetition senior secured notes; (e) the agent for the Debtors' prepetition senior unsecured notes; (f) counsel to the Creditors' Committee; and (g) all parties entitled to notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PREVIOUS REQUEST

44.     No previous request for the relief sought herein has been made by the Debtors to this Court or any other court.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto, granting the relief requested in this Application and such other and further relief as may be just and proper.

Dated:    October 22, 2015
          Huntington Beach, California

                              QUIKSILVER, INC.

                              (on behalf of itself and the other Debtors)


                              By:    _/s/ Andrew Bruenjes_____
                              Name: Andrew Bruenjes
                              Title:   Americas Chief Financial Officer