## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| In re: | :   Chapter 11 |
|  | : |
| QUIKSILVER, INC., *et al.*, | :   Case No. 15-11880 (BLS) |
|  | : |
| Debtors.[1] | :   Jointly Administered |
|  | : |
|  | :   **Hrg. Date: Nov. 17, 2015 at 10:30 a.m. (Eastern)** |
|  | :   **Obj. Due: Nov. 10, 2015 at 4:00 p.m. (Eastern)** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEBTORS' APPLICATION FOR ENTRY OF ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 327(a) AND 328(a), BANKRUPTCY RULES 2014 AND 2016, AND LOCAL BANKRUPTCY RULES 2014-1 AND 2016-2 AUTHORIZING EMPLOYMENT AND RETENTION OF DELOITTE & TOUCHE LLP AS THEIR INDEPENDENT AUDITOR, *NUNC PRO TUNC* TO THE PETITION DATE

Quiksilver, Inc. ("ZQK") and certain of its affiliates, the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors" and, together with their non-Debtor affiliates, "Quiksilver" or the "Company") hereby apply (the "Application") to the Court for entry of an order, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-2 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), authorizing the Debtors to retain and employ Deloitte & Touche LLP ("Deloitte & Touche") as their independent auditor, *nunc pro tunc* to the Petition Date (as defined below), in accordance with the terms and conditions set forth in the Engagement Letter (as defined below). In support of this Application, the Debtors rely upon and incorporate by reference the Declaration of Gregory

---

[1]   The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

Palme in Support of the Application (the "Palme Declaration"), attached hereto as Exhibit A. In further support of the Application, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction to consider this Application under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Application in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.    The statutory predicates for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code. The relief is further warranted under Bankruptcy Rules 2014(a) and 2016, as well as Local Bankruptcy Rules 2014-1 and 2016-2.

3.    Pursuant to Local Bankruptcy Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to this Application if it is determined that this Court would lack Article III jurisdiction to enter such final order or judgment absent the consent of the parties.

## BACKGROUND

4.    On September 9, 2015 (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). These Chapter 11 Cases are jointly administered.

5.    The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.    On September 22, 2015, the Office of the United States Trustee for the District of Delaware (the "United States Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee"). On September 28, 2015, the United States Trustee filed

an Amended Notice of Appointment of Creditors' Committee.  No trustee or examiner has been

appointed in the Debtors' Chapter 11 Cases.

       7.     Quiksilver is one of the world's leading outdoor sports lifestyle

companies.   The Company designs, develops and distributes branded apparel, footwear,

accessories and related products.   The Company began operations in 1976 making boardshorts

for surfers in the United States under a license agreement with the *Quiksilver* brand founders in

Australia.  Today, the Company's business is rooted in the strong heritage and authenticity of its

core brands, *Quiksilver*, *Roxy*, and *DC*, each of which caters to the casual, outdoor lifestyle

associated with surfing, skateboarding, snowboarding, BMX, and motocross, among other

activities.  The Company's products are sold in over 115 countries through a wide range of

distribution points, including wholesale accounts (surf shops, skate shops, snow shops, sporting

goods stores, discount centers, specialty stores, select department stores, and licensed stores),

Company-owned retail stores, and its e-commerce websites.  The Debtors comprise each of the

Company's U.S. entities, including parent, ZQK, as well as QS Wholesale, Inc., QS Retail, Inc.,

DC Shoes, Inc. and seven inactive entities.

       8.     Additional factual background information regarding the Debtors,

including their business operations, their corporate and capital structure, and the events leading

to these Chapter 11 Cases, is set forth in detail in the Declaration of Andrew Bruenjes, Americas

Chief Financial Officer of Quiksilver, Inc., in Support of Chapter 11 Petitions and First Day

Pleadings [Docket No. 20].

### RELIEF REQUESTED

       9.     By this Application, the Debtors seek entry of an order, pursuant to

Bankruptcy Code sections 327(a) and 328(a), Bankruptcy Rules 2014(a) and 2016, and Local

Bankruptcy Rules 2014-1 and 2016-2, authorizing the Debtors to employ and retain Deloitte & Touche as their independent auditor,[2] *nunc pro tunc* to the Petition Date, on the terms and conditions set forth in the Engagement Letter (defined below).

## DELOITTE & TOUCHE'S QUALIFICATIONS

10.     Deloitte & Touche is a public accounting firm with offices across the United States.  Deloitte & Touche has a wealth of experience in acting as independent auditor and has performed such services in large and complex chapter 11 cases on behalf of debtors throughout the United States, including in numerous large chapter 11 cases in this District.  See, e.g., In re Energy Future Holdings Corp., Case No. 14-10979 (CSS) (Bankr. D. Del. Oct. 29, 2014) (approving retention of Deloitte & Touche as independent auditor); In re Neb. Book Co., Case No. 11-12005 (PJW) (Bankr. D. Del. Oct. 18, 2011) (same); In re Atrium Corp., Case No. 10-10150 (BLS) (Bankr. D. Del. Feb. 25, 2010) (same); In re Local Insight Media Holdings, Inc., Case No. 10-13677 (KG) (Bankr. D. Del. Jan. 24, 2011) (same); In re Freedom Communications Holdings, Inc., Case No. 09-13046 (BLS) (Bankr. D. Del. Oct. 1, 2009) (same).[3]

11.     Additionally, since 1981, Deloitte & Touche has provided the Debtors many of the Services (defined below) contemplated under the Engagement Letter.  In providing such prepetition professional services to the Debtors, Deloitte & Touche has become familiar with the Debtors and their business, including the Debtors' financial affairs, debt structure,

---

[2]     As further discussed below, the Debtors intend to file a separate application seeking to retain an affiliate of Deloitte & Touche, Deloitte Tax LLP, as tax advisors to the Debtors.

[3]     Because of the voluminous nature of the orders cited herein, they are not attached to the Application.  Copies of these orders are available on request.

operations, and related matters, and has worked closely with the Debtors' management.

Therefore, in the course of performing the Services, Deloitte & Touche has developed relevant

experience and knowledge regarding the Debtors that will assist it in continuing to provide the

Services to the Debtors.  Accordingly, Deloitte & Touche is well-qualified and able to serve as

the Debtors' independent auditor, pursuant to the terms of the Engagement Letter and this

Application, in a cost-effective, efficient, and timely manner.

## SERVICES TO BE PROVIDED

12.     In early October 2015, in the midst of a decades-long relationship through

which Deloitte & Touche has provided auditing services for the Company, the Debtors retained

Deloitte & Touche to serve as their independent registered accounting firm.  Accordingly, on

October 13, 2015, the Company executed an engagement letter (the "Engagement Letter"),[4] a

copy of which is attached hereto as Exhibit B, memorializing the engagement.

13.     As set forth more fully in the Engagement Letter, Deloitte & Touche has

provided and will continue to provide the following services (the "Services") as the Debtors'

independent auditor:[5]

> (a)    Perform an integrated audit of financial statements in accordance
>        with the standards established by the Public Company Accounting
>        Oversight Board (United States) (the "PCAOB Standards");
>
> (b)    Provide opinions on the fairness of the presentation of the
>        Company's financial statements for the year ending October 31,

---

[4]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Engagement
Letter.

[5]    Any summary of the terms of the Engagement Letter contained herein is provided for convenience purposes
only.  In the event of any inconsistency between the summary of Services as set forth herein and the
Engagement Letter, the Engagement Letter shall control.

2015, in conformity with generally accepted accounting principles;

(c) Provide opinions on the effectiveness of the Company's internal control over financial reporting as of October 31, 2015, based on the criteria established by the Committee of Sponsoring Organizations of the Treadway Commission; and

(d) Review the Company's condensed interim financial information in accordance with the PCAOB Standards for each of the quarters in the year ending October 31, 2015, prepared for submission to the Securities and Exchange Commission.

14.    Additionally, the Services may also include accounting and financial reporting research and consultation related to, among other things, the restructuring and related financing activities customarily provided by the independent auditor as may be required in large and complex chapter 11 cases like these Chapter 11 Cases that were not specifically referenced in the Engagement Letter (the "Out of Scope Services").  The Out of Scope Services are customarily performed by an independent auditor in this context.  Any additional services beyond the scope of the Engagement Letter, other than the Out of Scope Services, would be subject to mutual agreement of the Debtors and Deloitte & Touche at that time.

15.    The Services contemplated under the Engagement Letter are necessary to enable the Debtors to properly fulfill their duties as debtors in possession.  To date, Deloitte & Touche has committed significant effort and resources toward providing such Services for the Debtors.  Accordingly, the Debtors believe that Deloitte & Touche has the necessary background to effectively and efficiently serve as the independent auditor for the Debtors in these Chapter 11 Cases.  In light of the foregoing, the Debtors have requested that Deloitte & Touche perform the Services set forth in the Engagement Letter, subject to the Court's approval of this Application,

and Deloitte & Touche has stated its desire, willingness, and ability to act as the Debtors'

independent auditor in these Chapter 11 Cases.

## PROFESSIONAL COMPENSATION

16.     Deloitte & Touche's decision to accept this engagement to advise and

assist the Debtors is conditioned upon its ability to be retained in accordance with the terms of

the Engagement Letter and compensated for its services and reimbursed for the out-of-pocket

expenses it incurs also in accordance with the terms thereof.

17.     Subject to the Court's approval, Deloitte & Touche will charge the "base

audit" hourly rates set forth in the table below for the Services other than the Out of Scope

Services, and the Out of Scope Services will be billed at the "consultation" hourly rates set forth

below:

| Personnel Classification | Hourly Rates (Base Audit) | Hourly Rates (Consultation) |
|---|---|---|
| Partner/Principal/Director | $ 260 | $ 650 |
| Senior Manager | $ 215 | $ 450 |
| Manager | $ 190 | $ 400 |
| Senior Staff | $ 160 | $ 325 |
| Staff | $125 | $ 250 |

18.     As set forth in the Engagement Letter, Deloitte & Touche estimates that its

fees for the Services other than the Out of Scope Services will be between $1,581,000 and

$1,632,000.  Fees for the Out of Scope Services are expected to be between $55,000 and

$132,000.

19.     In addition to any fees payable by the Debtors to Deloitte & Touche, the Debtors have agreed to reimburse Deloitte & Touche for its reasonable engagement-related expenses, including travel, report production, delivery services, and other expenses incurred in providing the Services.  Such expenses will be included in the total amount billed but shall be billed separately on Deloitte & Touche's invoices.

20.     Deloitte & Touche intends to apply to the Court for allowance of compensation and reimbursement of expenses incurred in connection with these Chapter 11 Cases, subject to the Court's approval and in compliance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules, United States Trustee Guidelines, and any other applicable procedures and orders of this Court.  Subject to such compliance, Deloitte & Touche requests that it be permitted to submit monthly invoices for services rendered and expenses incurred in these Chapter 11 Cases.  Deloitte & Touche requests that after appropriate review, the monthly invoices be paid in a manner consistent with the payment of other retained professionals in these Chapter 11 Cases and consistent with any orders of this Court, if any, that would apply to such interim payments.  Deloitte & Touche recognizes that all payments made pursuant to its retention by the Debtors must be approved by this Court and shall be based upon Deloitte & Touche's filing of appropriate interim and final applications for allowance of compensation and reimbursement of expenses in these Chapter 11 Cases.

21.     The Debtors believe that the compensation structure described above and set forth in the Engagement Letter is consistent with the compensation generally charged by independent auditors of similar stature to Deloitte & Touche for comparable engagements, both in and out of bankruptcy.  Furthermore, the Debtors believe that the compensation structure is consistent with Deloitte & Touche's normal and customary billing practices for cases of

8

comparable size and complexity requiring the level and scope of services to be provided in these Chapter 11 Cases.

## EFFORTS TO AVOID DUPLICATION OF SERVICES

22.     The Debtors believe that the services Deloitte & Touche will provide to the Debtors will be complementary, rather than duplicative, of the services to be performed by other professionals in these Chapter 11 Cases.  The Debtors will coordinate with Deloitte & Touche and the Debtors' other professionals to minimize unnecessary duplication of efforts among the Debtors' professionals.

## DELOITTE & TOUCHE'S DISINTERESTEDNESS

23.     In connection with the proposed retention by the Debtors in these Chapter 11 Cases, Deloitte & Touche received a list of potential parties in interest from the Debtors. Deloitte & Touche has reviewed the parties in interest list and, as more fully described in the Palme Declaration, undertook a search to determine whether Deloitte & Touche or any of its affiliates is or has been employed by, or has other relationships with, any of the Debtors or their affiliates, subsidiaries, directors or officers, or any of the Debtors' significant creditors, customers, equity security holders, professionals, or other significant parties in interest.

24.     To the best of the Debtors' knowledge, information, and belief, and except to the extent disclosed herein and in the Palme Declaration, including Schedule 1 thereto, Deloitte & Touche (i) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code (as modified by section 1107(b) of the Bankruptcy Code), (ii) does not hold or represent any interest materially adverse to the Debtors' estates, and (iii) has no connection with the Debtors or their creditors, equity security holders, or related parties.  The Debtors'

knowledge, information, and belief regarding the matters set forth herein are based, and made in reliance, upon the Palme Declaration.

25.     Given the large number of parties in interest in these Chapter 11 Cases, and despite Deloitte & Touche's effort to identify and disclose its relationships with any such parties in interest, Deloitte & Touche is unable to state with certainty that every client relationship or other connection has been disclosed in the Palme Declaration and Schedule 1 thereto.  If any new material facts or relationships are discovered or arise, Deloitte & Touche shall promptly file a supplemental declaration, as required by Local Bankruptcy Rule 2014-1(a).

26.     With respect to the prepetition services provided by Deloitte & Touche, the Debtors have paid Deloitte & Touche approximately $228,700, including certain retainers in the amount of $128,700, in the ninety (90) days prior to the Petition Date.  As of the Petition Date, approximately $35,000 of the retainer amounts remained.  As of the Petition Date, approximately $164,000 was outstanding with respect to invoices issued by Deloitte & Touche to the Debtors prior to the Petition Date.  Deloitte & Touche will not seek any recovery from the Debtors with respect to this amount, contingent upon approval of the Application.

27.     Deloitte LLP, Deloitte & Touche's parent, has completed a reorganization of some of its businesses, including its financial advisory services, tax services, solutions, human capital, and outsourcing businesses.  This reorganization is intended to align the organizational structure more closely with the manner in which business is conducted.  These businesses are now being conducted by entities affiliated with Deloitte & Touche, including Deloitte Financial Advisory Services LLP, Deloitte Tax LLP, Deloitte Transactions and Business Analytics LLP, and Deloitte Consulting LLP.  Some services incidental to the tasks to be performed by Deloitte & Touche in these Chapter 11 Cases may be performed by personnel now employed by or

associated with these affiliates of Deloitte & Touche or their respective subsidiaries, including

subsidiaries located outside of the United States.  The fees and expenses with respect to such

audit-related services will be included on the fee applications of Deloitte & Touche.

28.     One such affiliate of Deloitte & Touche, Deloitte Tax LLP ("Deloitte

Tax"), also provided prepetition tax advisory services to the Debtors.  Deloitte Tax expects to

continue performing services for the Debtors after the Petition Date, and the Debtors intend to

file a separate application seeking court approval of its retention.  In the ninety (90) days prior to

the Petition Date, the Debtors paid Deloitte Tax approximately $155,000.  As of the Petition

Date, approximately $100,000 remained outstanding with respect to invoices issued to the

Debtors by Deloitte Tax prior to the Petition Date.  The Debtors understand that Deloitte Tax

will not seek any recovery from the Debtors with respect to this amount, contingent upon

approval of the application to retain Deloitte Tax.

29.     As set forth in the Palme Declaration, Deloitte & Touche has not shared or

agreed to share any of its compensation from the Debtors with any unaffiliated or unrelated

person or entity.

30.     Except as described herein, no commitments have been made or received

by Deloitte & Touche as to compensation or payment in connection with these Chapter 11 Cases.

**DISPUTE RESOLUTION PROCEDURES**

31.     By this Application, the Debtors seek approval of the dispute resolution

procedures set forth in the Engagement Letter, as found in paragraph 7 of Appendix D and the

full Appendix E to the Engagement Letter.  The Debtors respectfully submit that the dispute

resolution procedures in the Engagement Letter are appropriate and reasonable for independent

auditor engagements of this nature.  Indeed, similar dispute resolution procedures have been

approved in this district.  See, e.g., In re Energy Future Holdings Corp., Case No. 14-10979

(CSS) (Bankr. D. Del. Oct. 29, 2014) (approving similar dispute resolution procedures for the

retention and employment of Deloitte & Touche); In re Rotech Healthcare, Case No. 13-10741

(PJW) (Bankr. D. Del. June 13, 2013) (same).

### REQUEST FOR APPROVAL OF DELOITTE & TOUCHE'S RETENTION *NUNC PRO TUNC* AS OF THE PETITION DATE

32.     Additionally, by this Application, the Debtors request approval of the

retention and employment of Deloitte & Touche *nunc pro tunc* to the Petition Date.  Such relief

is warranted by the extraordinary circumstances presented by these cases.  The Third Circuit has

identified "time pressure to begin service" and absence of prejudice as factors favoring *nunc pro*

*tunc* retention.  See Matter of Arkansas Co., 798 F.2d 645, 650 (3d Cir. 1986); see also In re

Indian River Homes, Inc., 108 B.R. 46, 52 (D. Del. 1989).  The complexity, intense activity, and

speed that have characterized these Chapter 11 Cases has necessitated that Deloitte & Touche

focus its immediate attention on time-sensitive matters and promptly devote substantial resources

to the affairs of the Debtors pending submission and approval of this Application.

### BASIS FOR RELIEF

33.     The Debtors seek approval of the retention and employment of Deloitte &

Touche as their independent auditor pursuant to sections 327(a) and 328(a) of the Bankruptcy

Code.  Section 327(a) of the Bankruptcy Code provides that the debtor in possession "may

employ one or more attorneys, accountants, appraisers, auctioneers, or other professional

persons, that do not hold or represent an interest adverse to the estate, and that are disinterested

persons, to represent or assist" the debtor in possession in carrying out its duties.  11 U.S.C. §

327(a).

34.     The Debtors seek approval of the Engagement Letter, including the compensation structure contemplated therein and the dispute resolution provisions, pursuant to section 328(a) of the Bankruptcy Code.  Section 328(a) of the Bankruptcy Code provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis" subject to later re-evaluation by the Court.  11 U.S.C. § 328(a).

35.     Moreover, Bankruptcy Rule 2014 requires that an application for retention include "specific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee."  Fed. R. Bankr. P. 2014.  This Application, the Palme Declaration, and the Engagement Letter set forth the information required under Bankruptcy Rule 2014.

36.     The Debtors respectfully submit that they should be authorized to retain and employ Deloitte & Touche in accordance with the terms and conditions of the Engagement Letter.  As discussed above and in the Palme Declaration, Deloitte & Touche satisfies the disinterestedness standard in section 327(a) of the Bankruptcy Code.  Furthermore, the Debtors believe that the Services fulfill an important need that is not provided by any of the Debtors' other professionals.  Moreover, during the course of its lengthy engagement, Deloitte & Touche has worked closely with the Debtors' management in performing the Services for the

Debtors.  In so doing, Deloitte & Touche has become familiar with the Debtors and their

business and has developed relevant experience and knowledge of the Debtors' financial

affairs, debt structure, operations, and related matters.  Accordingly, the Debtors believe that

Deloitte & Touche is well-qualified to provide the Services to the Debtors in a cost-

effective, efficient, and timely manner.

   37. The terms and conditions of the Engagement Letter were negotiated by the

Debtors and Deloitte & Touche at arm's-length and in good faith.  Furthermore, the Debtors

believe that the compensation structure set forth in the Engagement Letter appropriately

reflects the nature and scope of services to be provided by Deloitte & Touche, its significant

experience providing the Services thus far, prior to and during these Chapter 11 Cases, and

the fee and expense structure typically utilized by Deloitte & Touche and other leading public

accounting firms for engagements of a similar nature.  The Debtors further submit that the

dispute resolution procedures are appropriate and reasonable for independent auditor

engagements.  In light of the foregoing, the Debtors believe that the terms and conditions of the

Engagement Letter are fair, reasonable, and market-based under the standards set forth in section

328(a) of the Bankruptcy Code.

   38. The Debtors submit that the employment and retention of Deloitte &

Touche, *nunc pro tunc* to the Petition Date and on the terms and conditions set forth herein

and in the Engagement Letter, is in the best interest of the Debtors, their estates, creditors,

stakeholders and other parties in interest, and therefore, should be approved.

**NOTICE**

   39. Notice of this Application will be given to: (i) the Office of the United

States Trustee for the District of Delaware; (ii) counsel to the agent for the Debtors' postpetition

secured loan facilities; (c) counsel to the agent for the Debtors' prepetition revolving loan facility; (d) the agent for the Debtors' prepetition senior secured notes; (e) the agent for the Debtors' prepetition senior unsecured notes; (f) counsel to the Creditors' Committee; and (g) all parties entitled to notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PREVIOUS REQUEST

40.    No previous request for the relief sought herein has been made by the Debtors to this Court or any other court.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto, granting the relief requested in this Application and such other and further relief as may be just and proper.

Dated:    October 22, 2015
          Huntington Beach, California

                              QUIKSILVER, INC.

                              (on behalf of itself and the other Debtors)


                              By:    _/s/ Andrew Bruenjes_____
                              Name: Andrew Bruenjes
                              Title:   Americas Chief Financial Officer