**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>Quiksilver, Inc., *et al.,*[1]<br><br>                              Debtors. | Chapter 11<br><br>Case No. 15-11880 (BLS)<br><br>(Jointly Administered)<br><br>**Hearing Date: November 17, 2015 at 10:30 a.m.**<br>**Objection Deadline: November 10, 2015 at 4:00 p.m.** |

**APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS FOR ENTRY OF AN ORDER AUTHORIZING RETENTION
AND EMPLOYMENT OF BAYARD, P.A. AS CO-COUNSEL TO THE
OFFICIAL COMMITTEE OF UNSECURED CREDITORS,
*NUNC PRO TUNC* TO SEPTEMBER 22, 2015 THROUGH
AND INCLUDING SEPTEMBER 28, 2015**

The Official Committee of Unsecured Creditors (the "Committee"), appointed on

September 22, 2015 [D.I. 129] in the above-captioned chapter 11 cases of the above-

captioned debtors (collectively, the "Debtors"), hereby submits this application (the

"Application"), pursuant to sections 328, 330 and 1103 of title 11 of the United States

Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 2014, 2016(a), and 5002

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1

of the Local Rules of Practice and Procedure for the United States Bankruptcy Court for

the District of Delaware (the "Local Rules"), for an order authorizing the retention and

employment of Bayard, P.A. ("Bayard") as co-counsel to the Committee *nunc pro tunc* to

September 22, 2015 through and including September 28, 2015.  The Declaration of

Justin R. Alberto in support of this Application is attached hereto as Exhibit A (the

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

"Alberto Declaration").    In further support of this Application, the Committee respectfully represents as follows:

## Background

1.    On September 9, 2015 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").    The Debtors' chapter 11 cases are jointly administered under Case No. 15-11880.

2.    The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.    No trustee or examiner has been appointed in these cases.    Further information regarding the Debtors' business operations and capital structure is set forth in the *Declaration of Andrew Bruenjes, Americas Chief Financial Officer Of Quiksilver, Inc., in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 20].

3.    On September 21, 2015 (the "Formation Date"), the Office of the United States Trustee (the "U.S. Trustee") selected a five (5) member Committee pursuant to Section 1102(a)(1) of the Bankruptcy Code [D.I. 129], including: (i) U.S. Bank National Association, as Indenture Trustee; (ii) New Generation Advisors, LLC.; (iii) Samil Tong Sang, Co.; (iv) Simon Property Group, Inc.; and (v) Global Brands Group.    Ronald M. Tucker of Simon Property Group, Inc. was designated as chair of the Committee.

4.    On the Formation Date, the Committee selected Cooley LLP ("Cooley") as its lead counsel in these cases.    On September 22, 2015, the Committee selected Bayard as its co-counsel and Province as its financial advisor.

5. On September 28, 2015, six days after the Formation Date, the U.S. Trustee added T. Rowe Price Credit Opportunities Fund and Wilfrid Global Opportunity Fund L.P. to the Committee. Within hours thereafter, the Committee terminated Cooley and Bayard and hired Akin Gump Strauss Hauer & Feld LLP and Pepper Hamilton LLP as its replacement counsel.

## Jurisdiction and Venue

6. The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7. The statutory predicates for the relief sought herein are sections 328, 330 and 1103 of the Bankruptcy Code, Bankruptcy Rules 2014, 2016(a) and 5002 and Local Rule 2014-1.

## Relief Requested

8. By this Application, and pursuant to sections 328, 330 and 1103 of the Bankruptcy Code, the Committee respectfully requests the entry of an order approving the employment and retention of Bayard as its co-counsel to perform the services described more thoroughly herein in connection with the Debtors' chapter 11 cases, *nunc pro tunc* to September 22, 2015, through and including September 28, 2015.

## Basis for Relief

9.     Section 328(a) of the Bankruptcy Code empowers a committee appointed under section 1102 of the Bankruptcy Code to employ attorneys under section 1103 of the Bankruptcy Code under any reasonable terms and conditions with the Court's approval. 11 U.S.C. § 328(a).  Pursuant to section 1103(b) of the Bankruptcy Code, an attorney employed to represent a committee may not, while employed by such committee, represent any other entity having an adverse interest in connection with the case. 11 U.S.C. § 1103(b). For the reasons that follow, the Committee respectfully submits that Bayard is appropriately eligible and capable to have served as its co-counsel in these cases.

### A.     Bayard's Eligibility to Serve as Co-Counsel Under Section 1103

10.     In connection with its proposed retention by the Committee in these cases, Bayard researched its computer client database to determine whether it has any relationships with any of the entities in the categories on the "Conflicts Check List" attached to the Alberto Declaration.  Bayard's conflict database includes the names of: (i) current and former clients and where practical, the known affiliates of those clients, (ii) current and former adverse parties, and (iii) certain current and former related parties in matters upon which Bayard has been or is currently engaged.

11.     Bayard maintains and systematically updates its conflict check system in the regular course of its business, and it is the regular practice of Bayard to make and maintain these records. It is the policy of Bayard that no new matter be accepted or opened within the firm without completing and submitting to those charged with maintaining the conflict check system the information necessary to check each such

matter for conflicts, including the identity of the prospective client, the matter and the related and adverse parties.  Accordingly, it is Bayard's regular practice to update its database for every new matter undertaken by Bayard.

12.     Moreover, through a firm-wide email, Bayard solicited information from its attorneys to determine whether any attorneys employed by Bayard are related to any of the Bankruptcy Judges in this District, the U.S. Trustee for Region 3, or any attorney known by Bayard to be employed in the Wilmington Office of the U.S. Trustee.  Bayard also solicited information from its attorneys to determine if any attorneys employed by Bayard (i) are investors of any of the Debtors, or (ii) were, within two years of the Petition Date, a director, officer, or employee of any of the Debtors.  No such connections were discovered.

13.     To the best of the Committee's knowledge, based upon the Alberto Declaration, and except as otherwise set forth herein, (i) Bayard did not hold or represent any interest adverse to the Debtors or their chapter 11 estates, their creditors or any other party in interest in connection with these cases, and (ii) neither Bayard nor any of its directors or associates had any connections with the Debtors or any other party listed on the Conflicts Check List attached to the Alberto Declaration.  During its engagement, Bayard was a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code, and neither represented nor held an interest adverse to the interests of the Committee, the Debtors or their estates with respect to the matters on which Bayard was employed.[2]  Finally, Bayard did not, while employed by the Committee, represent any other entity having an adverse interest in connection with these cases.

---

[2] Section 1103(b) of the Bankruptcy Code provides that proposed counsel to an official committee of unsecured creditors may not represent any other entity having an adverse interest in connection with the

14. Bayard advised the Committee that Bayard and certain of its directors and associates may have in the past represented or opposed, may currently represent or oppose, and may in the future represent or oppose, in matters wholly unrelated to the Debtors, parties in interest in these cases.  Bayard did not (except as disclosed in the Alberto Declaration) represent any such parties, or any of their affiliates or subsidiaries, in relation to the Committee, the Debtors, or these chapter 11 cases.

15. Bayard further advised the Committee that it appears in many cases, proceedings, and transactions involving may different attorneys, counsel, accountants, financial consultants, and investment bankers, some of which now or may in the future represent parties in interest in these cases.  Bayard did not represent any such entities in relation to the Debtors' cases and Bayard did not have any relationship with any such entities that was adverse to the Committee or its interests in the matters upon which Bayard was employed.  For the avoidance of doubt, Bayard did not represent any entity other than the Committee in connection with the Debtors' chapter 11 cases.

16. The Committee therefore respectfully submits that Bayard satisfies the applicable standards to represent the Committee as co-counsel in the Debtors' chapter 11 cases for the period from September 22, 2015 through September 28, 2015.

**B.      Bayard's Qualifications**

17. The Committee selected Bayard because of its attorneys' experience and knowledge and because of the absence of any conflict of interest.  Bayard was particularly well suited for the type of representation that the Committee required during Bayard's engagement because of its substantial experience appearing before courts in this

---

cases.  Bayard has made this disclosure with respect to its disinterestedness out of an abundance of caution and to the extent required by section 328(c) of the Bankruptcy Code.

District and its substantial experience representing committees and other interested parties in complex bankruptcy cases. Bayard's recent experience representing creditors' committees in other large chapter 11 bankruptcy cases before this Court includes Frederick's of Hollywood, Inc., Caché, Inc., Altegrity, Inc., Endeavour Operating Corporation, AbitibiBowater, Inc. and Capmark Financial Group.

**C.     Bayard's Scope of Employment as Co-Counsel to the Committee**

18.     To specifically disclose the division of labor and to avoid unnecessary duplication of services, subject to the Court's approval of the Application, Cooley and Bayard held organizational meetings to discuss the appropriate scope of services of both firms and the firms developed a working plan to ensure that there was no duplication of services rendered on behalf of the Committee.

19.     The services Bayard rendered include, without limitation, the following:

(a)     in conjunction with Cooley, provided legal advice where necessary with respect to the Committee's powers and duties and strategic advice on how to accomplish the Committee's goals, bearing in mind that the Court relies on Delaware counsel such as Bayard to be involved in all aspects of the bankruptcy proceedings;

(b)     drafted, reviewed and commented on drafts of documents to ensure compliance with local rules, practices, and procedures;

(c)     assisted and advised the Committee in its consultation with the Debtors and the U.S. Trustee relative to the administration of these cases;

(d)     drafted, filed, and served documents as requested by Cooley and the Committee;

(e)     assisted the Committee and Cooley, as necessary, in the investigation (including through discovery) of the acts, conduct, assets, liabilities and financial condition of the Debtors, the operation of the Debtors' businesses, and any other matter

relevant to these cases or to the formulation of a plan or plans of reorganization;

(f)    compiled and coordinated delivery to the Court and the U.S. Trustee information required by the Bankruptcy Code, Bankruptcy Rules, Local Rules, and any applicable U.S. Trustee guidelines and/or requests;

(g)    monitored the case docket and coordinated with Cooley and Province on matters impacting the Committee;

(h)    participated in calls with the Committee;

(i)    prepared, updated and distributed critical dates memoranda and working group lists;

(j)    provided additional support to Cooley, Province, and the Committee, as requested, including the drafting and circulation of Committee bylaws and other organizational and/or disclosure documents.

The services described in this paragraph were designed to limit any unnecessary duplication of services with Cooley and the Committee's other professionals.

**D.**    **Bayard's Professional Compensation**

20.    Section 328(a) of the Bankruptcy Code authorizes the employment of a professional person on any reasonable terms and conditions of employment, including on an hourly basis. 11 U.S.C. § 328(a).  Subject to this Court's approval and in accordance with section 330(a) of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, the Committee requests that Bayard be compensated on an hourly basis for the work it performed, plus reimbursement of the actual and necessary expenses that Bayard incurred.

21.    Bayard advised the Committee that its ordinary hourly rates range from $500 to $950 per hour for directors, from $350 to $450 per hour for associates, and from

$240 to $295 per hour for paraprofessionals.  The primary attorney and paralegal that worked on this representation and their respective hourly rates are:

|     |     |     |
| --- | --- | --- |
| (a) | Justin R. Alberto | $450 per hour |
| (b) | Larry Morton (paralegal) | $295 per hour |

Other attorneys and paralegals rendered services to the Committee as needed.

22.    The ranges of hourly rates set forth above are Bayard's standard hourly rates for work of this nature.  These rates are set at a level designed to fairly compensate Bayard for the work of its attorneys and paralegals, to cover fixed and routine overhead expenses, and are subject to periodic adjustment to reflect economic and other conditions. Bayard advised the Committee, and the Committee understood, that the hourly rates set forth above are subject to periodic adjustments.

23.    In addition to the hourly billing rates set forth above, Bayard customarily charges its clients for all costs and expenses incurred, including telephone and telecopier charges, mail and express mail charges, hand delivery charges, document processing, photocopying and print copy charges, travel expenses, expenses for "working meals," computerized research and transcription costs.  Bayard advised the Committee that it would charge such costs and expenses in accordance, and only to the extent consistent, with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable U.S. Trustee guidelines.

24.    Bayard did not receive any retainer from the Debtors, the Committee, or any other entity in these cases.  Other than set forth herein, there is no proposed arrangement to compensate Bayard.  Bayard has not shared, nor agreed to share, (a) any compensation it has received or may receive with any other party or person, other than

with the partners and associates of Bayard, or (b) any compensation another person or party has received or may receive.  Bayard advised the Committee that it intends to apply to the Court for compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any order entered in these cases governing the compensation of professionals, and any applicable U.S. Trustee guidelines.

25.     The Committee believes the compensation arrangements with Bayard are consistent with, and typical of, arrangements entered into by Bayard and other law firms with respect to rendering similar services for clients such as the Committee.   The Committee, therefore, respectfully requests entry of an order, substantially in the form submitted herewith, authorizing the retention and employment of Bayard as co-counsel to the Committee for the period from September 22, 2015 through and including September 28, 2015.

**E.**     *Nunc Pro Tunc* **Relief**

26.     The Committee requests that Bayard's retention be made effective as of September 22, 2015 and run through September 28, 2015, in order to allow Bayard to be compensated for the work it performed for the Committee as of and following the date it was retained and prior to the Court's consideration and approval of this Application.  Due to the size and complex nature of these chapter 11 cases, as well as the significant relief sought by the Debtors during the early stages of these chapter 11 cases, there was an immediate need for Bayard to perform services for the Committee upon its retention. The Committee submits that under the circumstances, and to avoid the irreparable harm to the Debtors' estates that may occur if Bayard is not immediately retained, retroactive

approval to September 22, the date of Bayard's retention, is warranted.  See, e.g., F/S Airlease II, Inc. v. Simon (In re F/S Airlease II, Inc.), 844 F.2d 99, 103 (3d Cir. 1988), cert denied, 488 U.S. 852 (1988); Indian River Homes, Inc. v. Sussex Trust Co., 108 B.R. 46, 51 (D. Del. 1989).

### Notice

27.    Notice of this Application has been given to: (a) counsel to the Debtors; (b) the U.S. Trustee; and (c) those parties requesting notice pursuant to Bankruptcy Rule 2002, in accordance with Local Rule 2002-1(b).  The Committee submits that, in light of the nature of the relief requested herein, no other or further notice is necessary.  No previous application for the relief requested herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Committee respectfully requests that the Court enter an order substantially in the form submitted herewith and grant such other and further relief as is just and proper.

Respectfully submitted,

The Official Committee of Unsecured Creditors of Quiksilver, Inc., et al.

Dated: October 26, 2015

**Simon Property Group, Inc.**
solely in its capacity as Committee Chairperson and not in its individual capacity

*/s/ Ronald M. Tucker*
Ronald M. Tucker