# EXHIBIT A

**EXHIBIT A**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>Quiksilver, Inc., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 15-11880 (BLS)<br><br>(Jointly Administered)<br><br>Hearing Date: November 17, 2015 at 10:30 a.m.<br>Objection Deadline: November 10, 2015 at 4:00 p.m. |

**DECLARATION OF JUSTIN R. ALBERTO IN SUPPORT OF APPLICATION
OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR
ENTRY OF AN ORDER AUTHORIZING RETENTION AND EMPLOYMENT
OF BAYARD, P.A. AS CO-COUNSEL TO THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS, *NUNC PRO TUNC* TO SEPTEMBER 22, 2015
THROUGH AND INCLUDING SEPTEMBER 28, 2015**

I, Justin R. Alberto, hereby declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury as follows:

1. I am an associate at Bayard, P.A. ("Bayard"), which maintains offices for the practice of law at 222 Delaware Avenue, Suite 900, Wilmington, Delaware 19801. I am an attorney-at-law, duly admitted and in good standing to practice in the State of Delaware, as well as the United States District Court for the District of Delaware.

2. I submit this declaration in connection with the application (the "Application") of the Official Committee of Unsecured Creditors (the "Committee") appointed in the cases of the above-captioned debtors (collectively, the "Debtors") for an order approving the retention of Bayard as its co-counsel, *nunc pro tunc* to September 22, 2015 through and including September 28, 2015, and to provide the disclosures required under section 1103 of title 11 of the United States Code 11 U.S.C. §§ 101-1532 (the

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

{BAY:02778013v2}

"Bankruptcy Code"), Rules 2014, 2016(a) and 5002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Rules of Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

3. All terms not otherwise defined herein have the meanings ascribed to such terms in the Application. Except as otherwise indicated herein, I have personal knowledge of the matters set forth herein and, if called as a witness, would testify competently thereto. To the extent that any information disclosed herein requires amendment or modification upon Bayard's completion of further analysis or as additional information becomes available to Bayard, a supplemental declaration will be submitted to the Court.

4. In preparing this affidavit and the Application, we have used a set of procedures established by Bayard to ensure compliance with the requirements of the Bankruptcy Code and the Bankruptcy Rules regarding retention of professionals by an official committee under the Bankruptcy Code. In that regard, Bayard requested and obtained a list of names and entities who may be parties in interest in the chapter 11 cases. A list of those parties is attached hereto as Schedule A.

5. In connection with its proposed retention by the Committee in these cases, Bayard researched its computer client database to determine whether it has any relationships with any of the entities in the categories on the "Conflicts Check List" attached hereto as Schedule A. Bayard's conflict database includes the names of: (i) current and former clients and where practical, the known affiliates of those clients, (ii)

current and former adverse parties, and (iii) certain current and former related parties in matters upon which Bayard has been or is currently engaged.

6. Bayard maintains and systematically updates its conflict check system in the regular course of its business, and it is the regular practice of Bayard to make and maintain these records. It is the policy of Bayard that no new matter be accepted or opened within the firm without completing and submitting to those charged with maintaining the conflict check system the information necessary to check each such matter for conflicts, including the identity of the prospective client, the matter and the related and adverse parties. Accordingly, it is Bayard's regular practice to update its database for every new matter undertaken by Bayard.

7. Moreover, through a firm-wide email, Bayard solicited information from its attorneys to determine whether any attorneys employed by Bayard are related to any of the Bankruptcy Judges in this District, the U.S. Trustee for Region 3, or any attorney known by Bayard to be employed in the Wilmington Office of the U.S. Trustee. Bayard also solicited information from its attorneys to determine if any attorneys employed by Bayard (i) are investors of any of the Debtors, or (ii) were, within two years of the Petition Date, a director, officer, or employee of any of the Debtors. No such connections were discovered.

8. Insofar as I have been able to ascertain, neither I, Bayard, nor any director or associate at Bayard, represented or had any connection with any of the parties in interest listed on Schedule A, except as otherwise disclosed in Schedules B and C attached hereto. Bayard was a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code, and neither represented nor held an interest adverse to

the interests of the Committee, the Debtors or their estates with respect to the matters on which Bayard was employed.[2] Finally, Bayard did not, while employed by the Committee, represent any other entity having an adverse interest in connection with these cases.

9. Bayard and certain of its directors and associates may have in the past represented or opposed, may currently represent or oppose, and may in the future represent or oppose, parties in interest in these cases. I do not believe that any single matter is a major engagement that, alone or in the aggregate with other engagements for the same entity, involves the billing of fees in excess of 1% of Bayard's annual fees billed.

10. As part of its practice, Bayard appears in many cases, proceedings, and transactions involving many different attorneys, counsel, accountants, financial consultants, and investment bankers, some of which now or may in the future represent claimants and parties in interest in this case. Bayard did not represent any such entities in relation to the Debtors' chapter 11 cases and Bayard did not have any relationship with any such entities that was adverse to the Committee or its interests in the matters upon which Bayard was employed.

11. Bayard intends to apply to the Court for compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any order entered in these cases governing the compensation of professionals, and any applicable U.S. Trustee guidelines.

---

[2] Section 1103(b) of the Bankruptcy Code provides that proposed counsel to an official committee of unsecured creditors may not represent any other entity having an adverse interest in connection with the cases. I make this disclosure with respect to Bayard's disinterestedness out of an abundance of caution and to the extent required by section 328(c) of the Bankruptcy Code.

{BAY:02778013v2}                                       4

12. Bayard will seek compensation on an hourly basis for the services it rendered, plus reimbursement of actual and necessary expenses and other charges that it incurred. Attorneys and paraprofessionals of Bayard billed their time in one-tenth hour increments. Bayard advised the Committee that Bayard's standard hourly rates range from $500 to $950 per hour for directors, from $350 to $450 per hour for associates and senior counsel, and from $240 to $295 per hour for paraprofessionals. The primary attorney and paralegal that worked on this representation, and their respective hourly rates are:

    (a)    Justin R. Alberto                    $450 per hour

    (b)    Larry Morton (paralegal)        $295 per hour

Other attorneys and paralegals rendered services to the Committee as needed.

13. The hourly rates set forth in the ranges disclosed above are Bayard's standard hourly rates for work of this nature both inside and outside of the bankruptcy context.[3]

14. The rates indicated in the Application and this Declaration are set at a level designed to fairly compensate Bayard for the work of its attorneys and paralegals, to cover fixed and routine overhead expenses, and are subject to periodic adjustment to reflect economic and other conditions. Bayard advised the Committee, and the Committee understood, that the hourly rates set forth above are subject to periodic adjustments.

---

[3] Bayard has national practices in commercial bankruptcy, corporate litigation, intellectual property litigation, entity law and commercial transactions. The hourly rates reflected in the ranges disclosed in the body of paragraph 12 and in the Application are Bayard's standard hourly rates for engagements in those practice areas. In addition, Bayard has a full service regional-based practice in areas including, among others, insurance law, and personal services such as familial and estate matters. While Bayard generally charges its standard hourly rates in its regional practice areas, occasionally certain Bayard attorneys will agree to reduced rates for those representations. Bayard also occasionally accepts representations with alternative fee structures, such as contingent, mixed-contingent, flat fee and blended-hourly.

15. In addition to the hourly billing rates set forth above, Bayard customarily charges its clients for all costs and expenses incurred, including telephone and telecopier charges, mail and express mail charges, hand delivery charges, document processing, photocopying and print copy charges, travel expenses, expenses for "working meals," computerized research and transcription costs. Bayard advised the Committee that it would charge such costs and expenses in accordance, and only to the extent consistent, with the Local Rules.

16. Bayard has not received any retainer from the Debtors, the Committee, or any other entity in these cases. Other than set forth herein, there is no proposed arrangement to compensate Bayard. Bayard has not shared, nor agreed to share, (a) any compensation it has received or may receive with any other party or person, other than with the partners and associates of Bayard, or (b) any compensation another person or party has received or may receive.

17. The U.S. Trustee has recently adopted the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* (the "2013 UST Guidelines"). By their terms, the 2013 UST Guidelines apply to professionals retained in these cases. Bayard intends to make reasonable efforts to comply with the 2013 UST Guidelines. Bayard also intends to work cooperatively with the U.S. Trustee to address any concerns with Bayard's Application and to respond to any further information requests.

18. Pursuant to Part D.1 of the 2013 UST Guidelines, Bayard is seeking employment as Delaware co-counsel to the Committee and hereby provides the following responses set forth below:

| Question | Answer | Further Explanation |
|---|---|---|
| Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement? | No. | N/A |
| Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case? | No. | N/A |
| If you represented the client in the 12 months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition. If your billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference. | Not applicable. Bayard did not represent the Committee during the prepetition period. | N/A |
| Has your client approved your prospective budget and staffing plan, and, if so, for what budget period? | No. | Six days after Bayard was engaged as counsel to the Committee, the U.S. Trustee changed the Committee's composition on September 28, 2015. Immediately upon the change in the Committee's composition, the Committee terminated Bayard and Cooley and hired replacement counsel. Accordingly, Bayard does not intend to prepare a prospective budget in connection with its representation of the Committee, which has concluded. |

19. Pursuant to Part F of the 2013 UST Fee Guidelines, Bayard is proposed to serve as Delaware co-counsel for the Committee with primary counsel, Cooley, for the period from September 22, 2015 through September 28, 2015. Cooley had primary

{BAY:02778013v2}                                                        7

responsibility for the services disclosed in its retention application. To disclose the division of labor and to avoid unnecessary duplication of services, subject to the Court's approval of the Application, Bayard provided the following services for the Committee in these cases:

    (a)    (a)    in conjunction with Cooley, provided legal advice where necessary with respect to the Committee's powers and duties and strategic advice on how to accomplish the Committee's goals, bearing in mind that the Court relies on Delaware counsel such as Bayard to be involved in all aspects of the bankruptcy proceedings;

    (b)    drafted, reviewed and commented on drafts of documents to ensure compliance with local rules, practices, and procedures;

    (c)    assisted and advised the Committee in its consultation with the Debtors and the U.S. Trustee relative to the administration of these cases;

    (d)    drafted, filed, and served documents as requested by Cooley and the Committee;

    (e)    assisted the Committee and Cooley, as necessary, in the investigation (including through discovery) of the acts, conduct, assets, liabilities and financial condition of the Debtors, the operation of the Debtors' businesses, and any other matter relevant to these cases or to the formulation of a plan or plans of reorganization;

    (f)    compiled and coordinated delivery to the Court and the U.S. Trustee information required by the Bankruptcy Code, Bankruptcy Rules, Local Rules, and any applicable U.S. Trustee guidelines and/or requests;

    (g)    monitored the case docket and coordinated with Cooley and Province on matters impacting the Committee;

    (h)    participated in calls with the Committee;

    (i)    prepared, updated and distributed critical dates memoranda and working group lists;

   (j)  provided additional support to Cooley, Province, and the Committee, as requested, including the drafting and circulation of Committee bylaws and other organizational and/or disclosure documents.

20. By reason of the foregoing, I believe Bayard is eligible for employment and retention by the Committee pursuant to section 1103 of the Bankruptcy Code and the applicable Bankruptcy Rules, for the period from September 22, 2015 through September 28, 2015.

I certify under penalty of perjury under the laws of the United States that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Dated: October 26, 2015

             */s/ Justin R. Alberto*
             Justin R. Alberto (No. 5126)

**Schedule A**

**Conflict Check List**

2QK
3 Times
404 West
Bank of America
Bourdriders
C & K
Carmichael
Coins
CPG
DC DIRECT
DC SHOES
Deltina
Deutsche Bank
Dragon Crowd
Dubhe
Eastman
Emerald Coast
Fidra
Full Creative
General Electric Capital
HAWK
Hong Kong
Kavai Gmbb
McKnight
Merry Link
Mooney
Mountain & Wave
Mountain and Wave
MT. WAIMEA
Newtimes
Ningbo
Northstar
Oaktree
O'Melveny
Original JY&T
Putian
Q.S.
QS
QTNP

Quiksilver
Roxy
Samil
Srinivasa
Sumbawa
Sumec
U.S. Bank
U.S. Bank National Association
Weihai
World Marketing
Xiamen
Zhejiang

**Schedule B**

**Parties (or affiliates thereof) who are current or past clients of Bayard, or with whom Bayard has a professional relationship in matters unrelated to the Debtors, whose names include the following:**

1) Bank of Montreal – prior representation in unrelated non-bankruptcy matters.

2) Bank of America – prior representation in unrelated bankruptcy and non-bankruptcy matters.

3) Deutsche Bank – prior representation in unrelated bankruptcy and non-bankruptcy matters.

4) GE Capital – prior representation in unrelated bankruptcy matter.

5) Manulife Asset Management – prior representation in unrelated non-bankruptcy matter.

6) Morgan Stanley Dean Witter – prior representation in unrelated bankruptcy matter.

7) Prudential – prior representation in unrelated non-bankruptcy matters.

8) U.S. Bank National Association – previous and current representation of affiliate in unrelated non-bankruptcy matters.

9) Wells Fargo – previous representation in unrelated bankruptcy and non-bankruptcy matters

**Schedule C**

**Parties (or affiliates thereof) to whom Bayard may currently, or in the past may have been, adverse in matters unrelated to the Debtors, whose names include the following:**

1) Simon Property Group – previously adverse in non-bankruptcy matters unrelated to the Debtors.

2) Bank of Montreal – previously adverse in bankruptcy matters unrelated to the Debtors
.

3) Bank of America – previously adverse in bankruptcy and non-bankruptcy matters unrelated to the Debtors.

4) Deutsche Bank – previously adverse in bankruptcy and non-bankruptcy matters unrelated to the Debtors.

5) GE Capital – previously adverse in bankruptcy matters unrelated to the Debtors.

6) Morgan Stanley Dean Witter –previously adverse in unrelated bankruptcy and non-bankruptcy matters.

7) Prudential – previously adverse in unrelated bankruptcy and non-bankruptcy matters.

8) U.S. Bank National Association – previously adverse in unrelated bankruptcy and non-bankruptcy matters.

9) Wells Fargo – adverse in unrelated non-bankruptcy matters and previously adverse in unrelated bankruptcy matters.