# EXHIBIT C

**Tucker Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------------- x
:
In re:                                                           :   Chapter 11
                                                                 :
QUIKSILVER, INC., *et al.*,[1]                                   :   Case No. 15-11880 (BLS)
                                                                 :
                            Debtors.                             :   Jointly Administered
                                                                 :
                                                                 :
---------------------------------------------------------------- x

**DECLARATION OF RONALD TUCKER IN SUPPORT OF THE APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF QUIKSILVER, INC., *ET AL.* TO RETAIN AND EMPLOY AKIN GUMP STRAUSS HAUER & FELD LLP AS CO-COUNSEL, *NUNC PRO TUNC* TO SEPTEMBER 28, 2015**

Under 28 U.S.C. § 1746, I, Ronald Tucker, declare as follows under penalty of perjury:

1.      I am the Vice President of Simon Property Group, Inc. and the chairperson of the Official Committee of Unsecured Creditors (the "Committee") of Quiksilver, Inc., *et al.*, (collectively, the "Debtors"). Accordingly, I am in all respects competent to make this declaration in support of the *Application of the Official Committee of Unsecured Creditors of Quiksilver, Inc., et al. To Retain and Employ Akin Gump Strauss Hauer & Feld LLP as Co-Counsel*, Nunc Pro Tunc *to September 28, 2015* (the "Application"),[2] filed October 27, 2015.

2.      I submit this declaration (the "Declaration") in support of the Application, pursuant to Section D.2. of the Revised UST Guidelines, which were adopted by the Executive Office for United States Trustees under 28 U.S.C. § 586(a)(3). Except as otherwise noted, all

---

[1]   The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Application.

facts in this Declaration are based on my personal knowledge of the matters set forth herein, information gathered from my review of relevant documents and information supplied to me by Akin Gump.

3. I am informed by counsel that the Revised UST Guidelines request that any application for employment of an attorney under 11 U.S.C. §§ 327 or 1103 be accompanied by a verified statement from the client that addresses the following:

(i) The identity and position of the person making the verification. The person ordinarily should be the general counsel of the debtor or another officer responsible for supervising outside counsel and monitoring and controlling legal costs.

(ii) The steps taken by the client to ensure that the applicant's billing rates and material terms for the engagement are comparable to the applicant's billing rates and terms for other non-bankruptcy engagements and to the billing rates and terms of other comparably skilled professionals.

(iii) The number of firms the client interviewed.

(iv) If the billing rates are not comparable to the applicant's billing rates for other nonbankruptcy engagements and to the billing rates of other comparably skilled professionals, the circumstances warranting the retention of that firm.

(v) The procedures the client has established to supervise the applicant's fees and expenses and to manage costs. If the procedures for the budgeting, review and approval of fees and expenses differ from those the client regularly employs in nonbankruptcy cases to supervise outside counsel, explain how and why. In addition, describe any efforts to negotiate rates, including rates for routine matters, or in the alternative to delegate such matters to less expensive counsel.

### The Committee's Selection of Counsel

4. Following its formation, the Committee interviewed four (4) law firms to represent the Committee as lead bankruptcy counsel in these chapter 11 cases. After interviewing each of these firms, the Committee initially selected Cooley LLP to represent its interests in these chapter 11 cases. Following the filing of the Amended Notice, however, the Committee determined that Akin Gump was uniquely qualified to represent the Committee as reconstituted, and selected Akin Gump as its counsel. First, during the Pre-Retention Period,

2

Akin Gump gained valuable insight into, and knowledge of, the Debtors and their operations by virtue of their work for an hoc committee of certain unaffiliated holders of the Debtors' 10% senior unsecured notes due 2020.  Further, Akin Gump has a long history of representing official committees in chapter 11 proceedings, and has particular expertise in matters related to the retail industry.  Therefore, on the basis of both the past experience of certain individual Committee members with Akin Gump in other bankruptcy cases and Akin Gump's broad based, deep, and directly applicable skill set, the Committee has decided to retain Akin Gump.

### Rate Structure

5.  Akin Gump has informed the Committee that its rates for bankruptcy representations are comparable to the rates Akin Gump charges for non-bankruptcy representations.  The Committee has approved Akin Gump's proposed hourly rates as set forth in the Application.  Akin Gump has informed the Committee that its hourly rates are subject to periodic adjustments (typically in January of each year) to reflect economic and other conditions.  The Committee has consented to such ordinary course rate increases.

### Cost Supervision

6.  The Committee recognizes its responsibility to closely monitor the billing practices of their counsel to ensure that the fees and expenses paid by the estate remain consistent with the Committee's expectations and the exigencies of these chapter 11 cases.  Akin Gump expects to develop a prospective budget and staffing plan to reasonably comply with the U.S. Trustee's request for information and additional disclosures, as to which Akin Gump reserves all rights.  In addition, the Committee will review the monthly fee applications that Akin Gump regularly submits.  Akin Gump's fees and expenses will be subject to periodic review on a monthly, interim, and final basis during the course of the Debtors' chapter 11 cases by the

Committee, the Office of the United States Trustee for the District of Delaware and the Debtors, as well as the Committee.

I declare under penalty of perjury that the foregoing is true and correct on this 27th day of October, 2015.

                                        */s/ Ronald Tucker*
                                        Name: Ronald Tucker