## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------------- x

In re:                                                      :      Chapter 11
                                                            :
QUIKSILVER, INC., *et al.*,[1]                              :      Case No. 15-11880 (BLS)
                                                            :
                              Debtors.                      :      Jointly Administered
                                                            :
                                                            :      **Hearing Date: November 17, 2015 at 10:30 a.m. (ET)**
------------------------------------------------------------------- x     **Objection Deadline: November 10, 2015 at 4:00 p.m. (ET)**

## APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF QUIKSILVER, INC., *ET AL.* FOR AN ORDER (I) AUTHORIZING THE COMMITTEE TO RETAIN AND EMPLOY PJT PARTNERS INC. AS ITS INVESTMENT BANKER *NUNC PRO TUNC* TO SEPTEMBER 29, 2015 AND (II) WAIVING CERTAIN REQUIREMENTS OF LOCAL RULE 2016-2

The Official Committee of Unsecured Creditors (the "Committee") of Quiksilver Inc., *et al.* (collectively, the "Debtors"), respectfully submits this application (the "Application"), pursuant to sections 328(a) and 1103(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an order (the "Order"), substantially in the form attached hereto as Exhibit A, (a) authorizing the Committee to retain and employ PJT Partners Inc. ("PJT") as investment banker, *nunc pro tunc* to September 29, 2015, pursuant to that certain engagement letter attached hereto as Exhibit B (the "Engagement Letter") and (b) waiving certain of the information requirements of Local Rule 2016-2. In support of this Application, the Committee submits the declaration of Michael J.

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

Genereux, a Partner in the Restructuring and Special Situations Group at PJT (the "Genereux Declaration") attached hereto as Exhibit C and the Declaration of Annah Kim-Rosen (the "Kim-Rosen Declaration"), attached hereto as Exhibit D.  In further support of this Application, the Committee respectfully represents as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory and rule predicates for the relief requested herein are Bankruptcy Code sections 328(a) and 1103, Bankruptcy Rule 2014 and Local Rule 2014-1.[2]

**BACKGROUND**

4.      On September 9, 2015 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtors have continued in possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  On September 10, 2015, the Court entered an order providing for the joint administration of the Debtors' chapter 11 cases for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

5.      On September 21, 2015, pursuant to Bankruptcy Code section 1102, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the initial five

---

[2]      Pursuant to Local Rule 9013(f), the Committee hereby consents to the entry of final orders or judgments by the Court on this Application if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

members of the Committee [Dkt. No. 129].[3]  On September 28, 2015, the U.S. Trustee filed the

*Amended Notice of Appointment of Committee of Unsecured Creditors* [Dkt. No. 163] (the

"Amended Notice"), appointing two additional creditors to the Committee.[4]  Following the filing

of the Amended Notice, the Committee selected Akin Gump to serve as lead co-counsel to the

Committee and Pepper Hamilton LLP ("Pepper Hamilton") to serve as Delaware co-counsel.  On

September 29, 2015, the Committee selected PJT to serve as its investment banker.

6.    On September 11, 2015, an ad hoc group of certain unaffiliated holders of the

Debtors' 10% senior unsecured notes due 2020 was formed (the "Ad Hoc Group") and retained

Akin Gump as its counsel.  Upon the filing of the Amended Notice and subsequent retention of

Akin Gump as counsel to the Committee, the Ad Hoc Group disbanded and released Akin Gump

to represent the Committee.  Committee members New Generation Advisors, LLC, T. Rowe

Price Credit Opportunities Fund, Inc. and Wilfrid Global Opportunity Fund were also members

of the Ad Hoc Group.

7.    From September 11, 2015 until September 28, 2015 (the "Pre-Retention Period"),

Akin Gump and PJT rendered professional services to the Ad Hoc Group as requested, necessary

and appropriate in furtherance of the interests of the members of the Ad Hoc Group, including,

but not limited to, the review of the Debtors' debtor-in-possession financing motion [Dkt. No.

17], motion to assume the plan sponsor agreement [Dkt. No. 25] and motion to pay certain

critical vendors [Dkt. No. 15].  Akin Gump and PJT were not compensated for any services

rendered during the Pre-Retention Period to the Ad Hoc Group, and each reserves the right to file

---

[3]    The initial Committee was comprised of the following entities:  (i) U.S. Bank National Association; (ii) New Generation Advisors, LLC; (iii) Samil Tong Sang, Co.; (iv) Simon Property Group, Inc.; and (v) Global Brands Group.

[4]    The U.S. Trustee appointed T. Rowe Price Credit Opportunities Fund, Inc. and Wilfrid Global Opportunity Fund to the Committee on September 28, 2015.  Also on September 28, 2015, Global Brands Group resigned from the Committee.

an application with the Court seeking allowance and payment of compensation for any services rendered during the Pre-Retention Period pursuant to Bankruptcy Code section 503(b).

## RELIEF REQUESTED

8.     The Committee seeks entry of an order (a) authorizing the Committee to retain and employ PJT as investment banker pursuant to Bankruptcy Code sections 328(a) and 1103(a), *nunc pro tunc* to September 29, 2015, pursuant to the terms and subject to the conditions of the Engagement Letter attached hereto as <u>Exhibit B</u> and (b) waiving certain of the information requirements of Local Rule 2016-2.   The Engagement Letter describes (i) the various services that the Committee seeks PJT to perform on its behalf during these chapter 11 cases and (ii) the terms and conditions of PJT's proposed engagement by the Committee.   PJT's provision of services to the Committee is conditioned upon, and subject to, the Court's approval of the Engagement Letter.

## THE NEED FOR PJT'S SERVICES AND PJT'S QUALIFICATIONS

9.     The Committee believes that it is necessary and appropriate to employ an investment banker to render the professional services described herein to allow the Committee to, among other things, fully evaluate the Debtors' current financial condition and prospects and to assist in the negotiation, promulgation and evaluation of any proposed transaction involving the assets of the Debtors, including any sale transaction(s) and/or plan of reorganization.   The Debtors are a large and complex family of companies and the Committee requires the services of an experienced investment banker such as PJT to guide the Committee through the Debtors' sale and/or reorganization efforts.

10.     As set forth in the Genereux Declaration, PJT's restructuring and reorganization advisory operation is one of the leading advisors to companies and creditors in restructurings and bankruptcies.   PJT was spun off from The Blackstone Group L.P. ("<u>Blackstone</u>") effective

October 1, 2015.[5]   Upon the consummation of the spin-off, Blackstone's restructuring and reorganization advisory group became a part of PJT, and Blackstone's restructuring professionals became employees of PJT.  The former Blackstone restructuring professionals, in their capacity as PJT employees, have been conducting business at and providing their clients with the same high-quality restructuring services that Blackstone had itself provided since the formation of its restructuring advisory practice 24 years ago.  PJT's restructuring and special situations group has approximately 55 employees, 54 of whom were formerly employees of the restructuring and reorganization group of Blackstone.  PJT professionals have extensive experience working with financially troubled companies in complex financial restructurings.   Since 1991, PJT professionals have advised on more than 400 distressed situations, both in and out of court, involving more than $1.5 trillion of total liabilities.

11.     The partners and members of PJT's restructuring and reorganization practice have assisted and advised numerous chapter 11 debtors and creditors' committees.  In particular, the partners and members of PJT's restructuring and reorganization practice have provided services to debtors, creditors' committees and other constituencies in numerous chapter 11 cases, including, among others:  *In re A123 Systems Inc.; In re Allen Systems Group, Inc., et al.; In re Allied Holdings, Inc., et al.; In re Bally Total Fitness of Greater New York, Inc., et al.; In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.; In re Caesars Entertainment Operating Co., Inc., et al.; In re Calpine Corporation, et al.; In re Delta Air Lines, Inc., et al.; In re Dynegy Holdings, LLC, et al.; In re Eastman Kodak Company, et al.,; In*

---

[5]   On October 7, 2014, the board of directors of Blackstone's general partner approved a plan to spin off its financial and strategic advisory services, restructuring and reorganization advisory services and Park Hill fund placement businesses, and to combine these businesses with an independent financial advisory firm founded by Paul J. Taubman, to form an independent, publicly traded company called PJT Partners Inc.  PJT is a wholly-owned subsidiary of PJT Partners Holdings LP, a holding partnership that is controlled by PJT Partners Inc., as general partner.  PJT Partners Inc. is led by Paul J. Taubman, as chairman and chief executive officer.  This spinoff was effected via a multi-step transaction.

*re Edison Mission Energy, et al.; In re Evergreen Solar, Inc.; In re Fleming Companies; In re Hawkeye Renewables, LLC, et al.; In re Harry & David Holdings, Inc., et al.; In re Hawker Beechcraft, Inc., et al.; In re Hostess Brands, Inc.; In re Interstate Bakeries Corp., et al.; In re Legend Parent, Inc., et al.; In re Molycorp, Inc., et al.; In re R.H. Donnelley Corp., et al.; In re Spansion, Inc., et al.; In re Station Casinos Inc., et al.; In re Smurfit-Stone Container Corporation, et al.; and In re Vitro America, LLC, et al.* In addition, the restructuring group has provided general restructuring advice to major companies such as Ford Motor Company, The Goodyear Tire & Rubber Company and Xerox Corporation.

12.    Based on the foregoing and PJT's vast experience and expertise, the Committee believes that the employment and retention of PJT as the investment banker to the Committee in these chapter 11 cases is in the best interests of the Committee and the Debtors' unsecured creditors.

## **RETENTION OF PJT**

13.    The Committee respectfully submits that it is necessary and appropriate for it to employ and retain PJT to, among other things:[6]

(a)    Assist in the evaluation of the Debtors' businesses and prospects;

(b)    Assist in the evaluation of the Debtors' long-term business plan and related financial projections;

(c)    Assist in the development of financial data, analyses and presentations to the Committee;

(d)    Analyze the Debtors' financial liquidity and evaluate alternatives to improve such liquidity;

(e)    Analyze various restructuring scenarios and the potential impact of these scenarios on the recoveries of unsecured creditors;

(f)    Evaluate the Debtors' debt capacity and alternative capital structures;

---

[6]    To the extent there is any inconsistency between the above summary of the services set forth in the Engagement Letter and the terms of the Engagement Letter, the terms of the Engagement Letter shall control.  In addition, capitalized terms not otherwise defined herein shall have the meanings set forth in the Engagement Letter.

(g)     Participate in negotiations among the Committee, the Debtors and their other creditors, suppliers, lessors, and other interested parties;

(h)     Value consideration offered by the Debtors to the unsecured creditors in connection with a Restructuring (as defined in the Engagement Letter);

(i)     Provide expert witness testimony concerning any of the subjects encompassed by the other investment banking services; and

(j)     Provide such other advisory services as are customarily provided in connection with the analysis and negotiation of a Restructuring as requested and mutually agreed.

14.     The Committee does not believe that the services to be rendered by PJT will be duplicative of the services performed by any other professional and PJT will work together with any other professionals retained by the Committee to minimize and avoid duplication of services. The Committee firmly believes that PJT will provide these necessary services in a cost-effective, efficient and timely manner.

## PROFESSIONAL COMPENSATION

15.     As set forth more fully in the Engagement Letter, and subject to the terms thereof and the Court's approval, the Committee and PJT have agreed to the following compensation and expense reimbursement (the "Fee and Expense Structure"):[7]

(i)     A monthly advisory fee (the "Monthly Fee") in the amount of $150,000 in cash, with the first Monthly Fee payable upon the execution of the Engagement Letter and additional installments of such Monthly Fee payable in advance on each monthly anniversary of September 29, 2015;

(ii)    An additional fee (the "Restructuring Fee") equal to $2,000,000. Fifty percent (50%) of all Monthly Fees beginning after the fourth Monthly Fee paid shall be credited against the Restructuring Fee. Except as otherwise provided in the Engagement Letter, the Restructuring Fee shall be earned and payable, in cash, either (a) upon emergence from chapter 11 pursuant to a plan of reorganization confirmed in connection with any case or cases commenced by the Debtors under the Bankruptcy Code, or (b) in the case of a Sale (as defined in the Engagement Letter), upon the closing date of such Sale; and

---

[7]     To the extent there is any inconsistency between the summary of the Fee and Expense Structure set forth in this Application and the Fee and Expense Structure as set forth in the Engagement Letter, the terms of the Engagement Letter shall control.

(iii)    Reimbursement of all reasonable out-of-pocket expenses incurred during the engagement, including, but not limited to, travel and lodging, direct identifiable data processing, document production, publishing services and communication charges, courier services, working meals, reasonable fees and expenses of PJT's counsel and other necessary expenditures, payable upon rendition of invoices setting forth in reasonable detail the nature and amount of such expenses.  In connection therewith, the Debtors shall pay PJT on September 29, 2015 and maintain thereafter a $50,000 expense advance for which PJT shall account upon termination of the Engagement Letter.

16.     During the pendency of these chapter 11 cases, PJT shall apply to the Court for the allowance of compensation for professional services rendered and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable procedures and orders of the Court and consistent with the proposed compensation arrangement set forth in the Engagement Letter.

17.     The Committee believes that the Fee and Expense Structure set forth in the Engagement Letter includes reasonable terms and conditions of employment and should be approved under Bankruptcy Code section 328(a).  The Fee and Expense Structure appropriately reflects the nature of the services to be provided by PJT and the fee structures typically utilized by leading investment banking firms of similar stature to PJT for comparable engagements, both in and out of court.  The Fee and Expense structure is consistent with PJT's normal and customary billing practices for cases of this size and complexity that require the level of scope and services outlined herein.  In particular, the Committee believes that the Fee and Expense Structure creates a proper balance between fixed monthly fees and contingency fees.  Moreover, similar fixed and contingency fee arrangements have been approved and implemented in other recent large chapter 11 cases in this District.  *See Cal Dive Int'l Inc.*, No. 15-10458 (CSS) (Bankr. D. Del. May 26, 2015); *KiOR, Inc.*, No. 14-12514 (CSS) (Bankr. D. Del. Dec. 5, 2014); *Energy Future Holdings Corp.*, No. 14-10979 (CSS) (Bankr. D. Del. Oct. 20, 2014); *Brookstone Holdings Corp.*, No. 14-10752 (BLS) (Bankr. D. Del. Apr. 23, 2014); *Event Rentals, Inc.*, No.

8

14-10282 (PJW) (Bankr. D. Del. Mar. 14, 2014); *Velti Inc.*, No. 13-12878 (PJW) (Bankr. D. Del. Dec. 2, 2013); *Exide Techs.*, No. 13-11482 (KJC) (Bankr. D. Del. Aug. 8, 2013); and *OnCure Holdings, Inc.*, No. 13-11540 (KG) (Bankr. D. Del. June 14, 2013).   Notwithstanding the foregoing, PJT agrees that the U.S. Trustee may review PJT's compensation under Bankruptcy Code section 330.

18.   The Committee further believes that the Fee and Expense Structure includes reasonable terms and conditions of employment in light of (a) industry practice, (b) market rates charged for comparable services both in and out of the chapter 11 context, (c) PJT's experience with respect to investment banking services and (d) the nature and scope of work to be performed by PJT in these cases.

19.   Consistent with its ordinary practice and the practice of investment bankers in other chapter 11 cases whose fee arrangements are not hours-based, PJT does not maintain contemporaneous time records or provide or conform to a schedule of hourly rates for its professionals.   Given the foregoing and that PJT's compensation is based on fixed fees, the Committee requests that, pursuant to Local Rule 2016-2(h), PJT's professionals be excused from the information requirements set forth in Local Rule 2016-2(d).   PJT will nonetheless maintain reasonably detailed summary time records in one-half hour increments, which records shall indicate the total hours incurred by each professional for each day and provide a brief description of the nature of the work performed.

## THE INDEMNIFICATION OBLIGATIONS OF PJT[8]

20.     As part of the overall compensation payable to PJT under the terms of the Engagement Letter, the Engagement Letter provides for certain indemnification obligations to PJT and its affiliates and each of their respective partners (both general and limited), members, officers, directors, employees and agents and each other person, if any, controlling PJT or any of PJT's affiliates, from and against any losses, claims, damages, expenses and liabilities whatsoever, whether they be joint or several, related to, arising out of or in connection with PJT's services.  Such terms of indemnification, as modified by the proposed order authorizing PJT's retention, reflect the qualifications and limits on such terms that are customary in this jurisdiction and are in substantially the same form as terms that have been approved by this Court in other recent cases.  *See Cal Dive Int'l Inc.*, No. 15-10458 (CSS) (Bankr. D. Del. May 26, 2015); *KiOR, Inc.*, No. 14-12514 (CSS) (Bankr. D. Del. Dec. 5, 2014); *Energy Future Holdings Corp.*, No. 14-10979 (CSS) (Bankr. D. Del. Oct. 20, 2014); *Brookstone Holdings Corp.*, No. 14-10752 (BLS) (Bankr. D. Del. Apr. 23, 2014); *Event Rentals, Inc.*, No. 14-10282 (PJW) (Bankr. D. Del. Mar. 14, 2014); *Velti Inc.*, No. 13-12878 (PJW) (Bankr. D. Del. Dec. 2, 2013); *Exide Techs.*, No. 13-11482 (KJC) (Bankr. D. Del. Aug. 8, 2013); and *OnCure Holdings, Inc.*, No. 13-11540 (KG) (Bankr. D. Del. June 14, 2013).

## PJT'S DISCLOSURES CONCERNING ITS CONNECTIONS WITH THE DEBTORS AND OTHER PARTIES IN INTEREST

21.     PJT has informed the Committee that as of the date hereof, except as set forth in the Genereux Declaration and the Kim-Rosen Declaration: (a) it has no connections with the Debtors, their creditors or other parties in interest in these chapter 11 cases; (b) it does not have

---

[8]     To the extent there is any inconsistency between the summary of the indemnification provisions set forth in this Application and the indemnifications set forth in Attachment A to the Engagement Letter, the terms of the Engagement Letter shall control.

an interest adverse to the interests of the Debtors' estates or of any class of creditors or equity security holders; and (c) neither PJT nor any employee of PJT (i) is a creditor, equity security holder or an insider of the Debtors or (ii) is or was, within two years before the Petition Date, a director, officer, or employee of any of the Debtors.  In addition, none of the PJT professionals expected to assist the Committee in these chapter 11 cases are related or connected to any United States Bankruptcy Judge for the District of Delaware, the U.S. Trustee, or any person employed in the office of the U.S. Trustee.

22.     The Committee has been advised that PJT has agreed not to share with any other person or firm the compensation to be paid for professional services rendered in connection with these chapter 11 cases in accordance with Bankruptcy Code section 504(a).

## BASIS FOR RELIEF

23.     The Committee seeks entry of an order authorizing the Committee to retain and employ PJT pursuant to Bankruptcy Code sections 328(a) and 1103(a).  Bankruptcy Code section 1103(a) provides, in relevant part, that the Committee, with the Court's approval, "may select and authorize the employment by such committee of one or more attorneys, accountants, or other agents, to represent or perform services for such committee."  11 U.S.C. § 1103(a). Bankruptcy Code section 328(a), moreover, provides, in relevant part, that the Committee, "with the court's approval, may employ or authorize the employment of a professional person under section . . . 1103 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis . . ." 11 U.S.C. § 328(a).

24.     Given the numerous issues that PJT may be required to address in performing its services for the Committee pursuant to the Engagement Letter, PJT's commitment to the variable time requirements and effort necessary to address all such issues as they arise, and the market

11

prices for PJT's services for engagements of this nature, the Committee submits that the terms and conditions of the Engagement Letter are fair, reasonable and market-based under the standards set forth in Bankruptcy Code section 328(a).

25.     As set forth above, and notwithstanding approval of the Engagement Letter under Bankruptcy Code section 328(a), PJT intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of this Court, with certain limited modifications as set forth herein.

26.     In light of the foregoing, the Committee submits that the retention of PJT is in the best interests of the Debtors, their creditors and all parties in interest in this these chapter 11 cases.  As noted above, PJT has extensive experience in matters involving complex financial restructurings and an excellent reputation for the services that it has rendered in chapter 11 cases on behalf of debtors and creditor constituencies throughout the United States.  The Committee therefore submits that it has satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules to support entry of an order authorizing the Committee to retain and employ PJT in these chapter 11 cases on the terms described herein and in the Engagement Letter.

## NOTICE

27.     Notice of this Application has been provided to the following parties:  (i) the Office of the U.S. Trustee for the District of Delaware; (ii) counsel to the Debtors; (iii) counsel to the agent for the Debtors' postpetition secured loan facilities; (iv) counsel to the agent for the Debtors' prepetition revolving loan facility; (v) the agent for the Debtors' prepetition senior secured notes; (vi) the agent for the Debtors' prepetition senior unsecured notes; (vii) the lenders

under the Debtors' debtor-in-possession credit facilities and (viii) any such other party entitled to notice pursuant to Local Rule 9013-1.  The Committee submits that, in light of the nature of the relief requested, no other or further notice need be given.

[*Concluded on the following page.*]

## <u>CONCLUSION</u>

WHEREFORE, the Committee respectfully requests entry of an order, in substantially the form attached hereto as <u>Exhibit A</u>, (a) approving the employment and retention of PJT as investment banker to the Committee, *nunc pro tunc* to September 29, 2015, pursuant to Bankruptcy Code sections 328(a) and 1103(a), Rule 2014 of the Bankruptcy Rules, and Rule 2014-1 of the Local Rules and in accordance with the terms and conditions reflected in the Engagement Letter, (b) approving the terms of PJT's employment, including the Fee and Expense Structure, (c) waiving certain of the information requirements of Local Rule 2016-2 and (d) granting the Committee such other and further relief as the Court may deem just, proper and equitable.

Dated: October 27, 2015

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF QUIKSILVER, INC., *ET AL.***

By: Simon Property Group, Inc., solely in its capacity as Chair of the Committee and not in its individual capacity

By:   /s/ *Ronald Tucker*                
Name:  Ronald Tucker
Title:   Chair of the Committee