## EXHIBIT C

**Genereux Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------------- x
:
In re:                                                               :   Chapter 11
:
QUIKSILVER, INC., *et al.*,[1]                                       :   Case No. 15-11880 (BLS)
:
                    Debtors.                                         :   Jointly Administered
:
:
------------------------------------------------------------------- x

**DECLARATION OF MICHAEL J. GENEREUX IN SUPPORT OF THE
APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
OF QUIKSILVER, INC., *ET AL.* FOR AN ORDER (I) AUTHORIZING THE
COMMITTEE TO RETAIN AND EMPLOY PJT PARTNERS INC. AS ITS
INVESTMENT BANKER *NUNC PRO TUNC* TO SEPTEMBER 29, 2015
AND (II) WAIVING CERTAIN REQUIREMENTS OF LOCAL RULE 2016-2**

Under 28 U.S.C. § 1746, I, Michael J. Genereux, declare as follows under the penalty of perjury:

1.  I am a Partner in the Restructuring and Special Situations Group at PJT Partners ("PJT"), an investment banking firm listed on the New York Stock Exchange that maintains offices at 280 Park Avenue, New York, New York 10017.

2.  I am familiar with the matters set forth herein and make this declaration (the "Declaration") in support of the application (the "Application")[2] of the Official Committee of Unsecured Creditors (the "Committee") of Quiksilver, Inc., *et al.* (collectively, the "Debtors") seeking approval to retain and employ PJT, *nunc pro tunc* to September 29, 2015, as investment banker to the Committee.

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Application.

3.  Except as otherwise stated in this Declaration, I have personal knowledge of or have relied upon the knowledge of others employed by PJT with respect to the matters set forth herein.[3] If called to testify, I could and would testify competently to the facts set forth herein.

4.  On September 21, 2015, pursuant to Bankruptcy Code section 1102, the U.S. Trustee appointed the initial five members of the Committee [Dkt. No. 129].[4] On September 28, 2015, the U.S. Trustee filed the *Amended Notice of Appointment of Committee of Unsecured Creditors* [Dkt. No. 163] (the "Amended Notice"), appointing two additional creditors to the Committee.[5] Following the filing of the Amended Notice, the Committee selected Akin Gump to serve as lead co-counsel to the Committee and Pepper Hamilton LLP to serve as Delaware co-counsel. On September 29, 2015, the Committee selected PJT to serve as its investment banker.

5.  PJT has agreed to provide investment banking services to the Committee in the above-captioned chapter 11 cases pursuant to the terms and conditions set forth in that certain engagement letter between the Committee and PJT dated as of October 20, 2015 (the "Engagement Letter"), a true and correct copy of which is attached to the Application as Exhibit B.

A.  **PJT's Qualifications**

6.  PJT's restructuring and reorganization advisory operation is one of the leading advisors to companies and creditors in restructurings and bankruptcies. PJT was spun off from

---

[3] Certain information set forth herein relates to matters (i) contained in PJT's books and records and (ii) within the knowledge of other PJT employees, and is based on information provided by them.

[4] The initial Committee was comprised of the following entities: (i) U.S. Bank National Association; (ii) New Generation Advisors, LLC; (iii) Samil Tong Sang, Co.; (iv) Simon Property Group, Inc.; and (v) Global Brands Group.

[5] The U.S. Trustee appointed T. Rowe Price Credit Opportunities Fund, Inc. and Wilfrid Global Opportunity Fund to the Committee on September 28, 2015. Also on September 28, 2015, Global Brands Group resigned from the Committee.

Blackstone effective October 1, 2015.[6] Upon the consummation of the spin-off, Blackstone's restructuring and reorganization advisory group became a part of PJT, and Blackstone's restructuring professionals became employees of PJT. The former Blackstone restructuring professionals, in their capacity as PJT employees, have been conducting business at and providing their clients with the same high-quality restructuring services that Blackstone had itself provided since the formation of its restructuring advisory practice 24 years ago. PJT's restructuring and special situations group has approximately 55 employees, 54 of whom were formerly employees of the restructuring and reorganization group of Blackstone. PJT professionals have extensive experience working with financially troubled companies in complex financial restructurings. Since 1991, PJT professionals have advised on more than 400 distressed situations, both in and out of court, involving more than $1.5 trillion of total liabilities.

7. PJT's professionals have extensive experience in reorganization cases and have an excellent reputation for services they have rendered in large and complex chapter 11 cases on behalf of debtors, creditors and creditors' committees throughout the United States. PJT professionals have advised on the following chapter 11 cases, among others: *In re A123 Systems Inc.; In re Allen Systems Group, Inc., et al.; In re Allied Holdings, Inc., et al.; In re Bally Total Fitness of Greater New York, Inc., et al.; In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.; In re Caesars Entertainment Operating Co., Inc., et al.; In re Calpine Corporation, et al.; In re Delta Air Lines, Inc., et al.; In re Dynegy Holdings, LLC, et al.; In re Eastman Kodak Company, et al.,; In re Edison Mission Energy, et al.; In re Evergreen*

---

[6] On October 7, 2014, the board of directors of Blackstone's general partner approved a plan to spin off its financial and strategic advisory services, restructuring and reorganization advisory services and Park Hill fund placement businesses, and to combine these businesses with an independent financial advisory firm founded by Paul J. Taubman, to form an independent, publicly traded company called PJT Partners Inc. PJT is a wholly-owned subsidiary of PJT Partners Holdings LP, a holding partnership that is controlled by PJT Partners Inc., as general partner. PJT Partners Inc. is led by Paul J. Taubman, as chairman and chief executive officer. This spinoff was effected via a multi-step transaction.

*Solar, Inc.; In re Fleming Companies; In re Hawkeye Renewables, LLC, et al.; In re Harry & David Holdings, Inc., et al.; In re Hawker Beechcraft, Inc., et al.; In re Hostess Brands, Inc.; In re Interstate Bakeries Corp., et al.; In re Legend Parent, Inc., et al.; In re Molycorp, Inc., et al.; In re R.H. Donnelley Corp., et al.; In re Spansion, Inc., et al.; In re Station Casinos Inc., et al.; In re Smurfit-Stone Container Corporation, et al.;* and *In re Vitro America, LLC, et al.* In addition, the restructuring group has provided general restructuring advice to major companies such as Ford Motor Company, The Goodyear Tire & Rubber Company and Xerox Corporation.

### B. Services to be Provided by PJT

8. If the Application is approved, PJT, in its capacity as the Committee's investment banker, will render the following investment banking services pursuant to the Engagement Letter and as requested by the Committee:

(a) Assist in the evaluation of the Debtors' businesses and prospects;

(b) Assist in the evaluation of the Debtors' long-term business plan and related financial projections;

(c) Assist in the development of financial data, analyses and presentations to the Committee;

(d) Analyze the Debtors' financial liquidity and evaluate alternatives to improve such liquidity;

(e) Analyze various restructuring scenarios and the potential impact of these scenarios on the recoveries of unsecured creditors;

(f) Evaluate the Debtors' debt capacity and alternative capital structures;

(g) Participate in negotiations among the Committee, the Debtors and their other creditors, suppliers, lessors, and other interested parties;

(h) Value consideration offered by the Debtors to the unsecured creditors in connection with a Restructuring (as defined in the Engagement Letter);

(i) Provide expert witness testimony concerning any of the subjects encompassed by the other investment banking services; and

(j) Provide such other advisory services as are customarily provided in connection with the analysis and negotiation of a Restructuring as requested and mutually agreed.

9.  To perform these services in a cost-effective manner, PJT will endeavor to coordinate all of its services to the Committee with the other professionals retained in these chapter 11 cases so as to minimize (and, wherever possible, avoid) any unnecessary duplication of services.

C.  **PJT's Disclosures Concerning Connections with Potential Parties-In-Interest**

10.  PJT has performed a conflict search and based on the results, to the best of my knowledge, neither I, PJT, nor any member or employee thereof, insofar as I have been able to ascertain, is an insider of the Debtors, nor has any connection with the Debtors, their creditors, or other parties-in-interest as reasonably known to us prior to completion of our more detailed conflict search, except as described further in the Kim-Rosen Declaration.

11.  As part of its diverse practice, PJT appears in numerous cases, proceedings and transactions involving many different professionals, including attorneys, accountants, investment bankers and financial consultants, some of which may represent claimants and parties-in-interest in the Debtors' chapter 11 cases.  In addition, PJT has in the past and will likely in the future be working with or against other professionals involved in this case in matters unrelated to this case.  Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of these business relations constitute interests materially adverse to the Debtors' estates herein, and none are in connection with these cases.

12.  Annah Kim-Rosen, the Chief Compliance Officer of PJT (in such capacity, the "Compliance Manager"), is responsible for, among other things, the day-to-day-operation of the compliance function at PJT.  As part of that job, she maintains, for purposes of monitoring and avoiding conflicts of interest, a list (the "Restricted List") of companies with which PJT is doing business, either as an advisor or with respect to which PJT is in possession of material nonpublic

information or has entered into a confidentiality agreement. The Compliance Manager and her staff have received a list of parties-in-interest provided by the Debtors (the "Parties-In-Interest") attached as Schedule 1 to the Kim-Rosen Declaration, which is attached as Exhibit D to the Application, and has compared this to PJT's Restricted List to determine the existence of any possible conflicts (the "Conflict Check"). The results of this Conflict Check are disclosed in the Kim-Rosen Declaration.

13. PJT does not believe that any of its involvement with any of the parties included in the Parties-In-Interest list will adversely affect the Debtors, the Committee, or the Debtors' unsecured creditors in any way. PJT does not believe that any potential relationship it may have with any of the Parties-In-Interest would interfere with or impair PJT's representation of the Committee.

14. Given the large number of parties in interest in these chapter 11 cases, despite the efforts to identify and disclose PJT's relationships with parties in interest in these chapter 11 cases, I am unable to state with absolute certainty that every client relationship or other connection has been disclosed in this Declaration. PJT, therefore, has informed the Debtors that PJT will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new material facts or relationships are discovered or arise, PJT will promptly file a supplemental declaration with the Court as required by Local Rule 2014-1(a).

D. **Compensation**

15. PJT is willing to be retained by the Committee as its investment banker and will make appropriate applications to this Court pursuant to Bankruptcy Code section 330 for compensation and reimbursement of out-of-pocket expenses, all in accordance with the

provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any orders of this Court.

16. As of the date of this Declaration, PJT has received no compensation for its work on behalf of the Committee.

17. The Fee and Expense Structure set forth in the Application is consistent with PJT's typical fee for work of this nature. The fees are set at a level designed to compensate PJT fairly for the work of its professionals and assistants and to cover fixed and routine overhead expenses. It is PJT's policy to charge its clients for all disbursements and expenses incurred in the rendition of services.

18. It is not the general practice of investment banking firms to keep detailed time records similar to those customarily kept by attorneys. PJT's restructuring professionals, when formally retained in chapter 11 cases, and when required by local rules, do, and in these cases will, keep time records in half-hour increments describing their daily activities and the identity of persons who performed such tasks. PJT will also supplement this information with a list of the non-restructuring professionals who assist the restructuring department on this matter but who do not, as a matter of general practice, keep records in the same manner.

19. The Fee and Expense Structure is comparable to those generally charged by investment banking firms of similar stature to PJT and for comparable engagements, both in and out of court, and reflect a balance between a fixed, monthly fee, and a contingency amount which are tied to the consummation and closing of a Transaction as contemplated in the Engagement Letter.

20. The Engagement Letter was negotiated at arm's length and in good faith, and I believe that the provisions contained therein are reasonable terms and conditions of PJT's

employment by the Committee. With respect to the Engagement Letter's indemnification provisions, unlike the market for other professionals that a debtor or committee may retain, indemnification is a standard term of the market for investment bankers. The indemnity, moreover, is comparable to those generally obtained by investment banking firms of similar stature to PJT and for comparable engagements, both in and out of court.

21. Other than as set forth above, there is no proposed arrangement between the Committee and PJT for compensation to be paid in these cases. PJT has no agreement with any other entity to share any compensation received, nor will any be made, except as permitted under Bankruptcy Code section 504(b)(1).

22. The foregoing constitutes the statement of PJT pursuant to Bankruptcy Code sections 327(a), 329 and 504, Bankruptcy Rules 2014(a) and 2016(b) and Local Rules 2014-1 and 2016-1.

I declare under penalty of perjury that the foregoing is true and correct on this 27th day of October, 2015.

Date: October 27, 2015              /s/ *Michael J. Genereux*
                                    Michael J. Genereux