**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re:

QUIKSILVER, INC., *et al.*,

                    Debtors.[1]
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

: Chapter 11
:
: Cases No. 15-11880 (BLS)
:
: Jointly Administered
:
: Hrg. Date: Nov. 17, 2015 at 10:30 a.m. (Eastern)
: Obj. Due: Nov. 10, 2015 at 4:00 p.m. (Eastern)

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER PURSUANT TO
BANKRUPTCY CODE SECTIONS 327(a) AND 328(a), BANKRUPTCY
RULES 2014 AND 2016, AND LOCAL BANKRUPTCY RULES 2014-1
AND 2016-2 AUTHORIZING EMPLOYMENT AND RETENTION
OF DELOITTE TAX LLP AS TAX ADVISOR TO THE DEBTORS
<u>*NUNC PRO TUNC*</u> TO OCTOBER 1, 2015**

Quiksilver, Inc. ("ZQK") and certain of its affiliates, the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors" and, together with their non-Debtor affiliates, "Quiksilver" or the "Company") hereby apply (the "Application") to the Court for entry of an order, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-2 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), authorizing the Debtors to retain and employ Deloitte Tax LLP ("Deloitte Tax") as their tax advisor *nunc pro tunc* to October 1, 2015 in accordance with the terms and conditions set forth in the Engagement Letters (as defined below), as modified by the proposed order hereto. In support of this

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

Application, the Debtors rely upon and incorporate by reference the Declaration of Scott Ecker in Support of the Application (the "Ecker Declaration"), attached hereto as Exhibit A. In further support of the Application, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Application under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Application in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code. The relief is further warranted under Bankruptcy Rules 2014(a) and 2016, as well as Local Bankruptcy Rules 2014-1 and 2016-2.

3. Pursuant to Local Bankruptcy Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to this Application if it is determined that this Court would lack Article III jurisdiction to enter such final order or judgment absent the consent of the parties.

## BACKGROUND

4. On September 9, 2015 (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). These Chapter 11 Cases are jointly administered.

5. The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. On September 22, 2015, the Office of the United States Trustee for the District of Delaware (the "United States Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee"). On September 28, 2015, the United States Trustee filed

2

an Amended Notice of Appointment of Creditors' Committee. No trustee or examiner has been appointed in the Debtors' Chapter 11 Cases.

7. Quiksilver is one of the world's leading outdoor sports lifestyle companies. The Company designs, develops and distributes branded apparel, footwear, accessories and related products. The Company began operations in 1976 making boardshorts for surfers in the United States under a license agreement with the *Quiksilver* brand founders in Australia. Today, the Company's business is rooted in the strong heritage and authenticity of its core brands, *Quiksilver*, *Roxy*, and *DC*, each of which caters to the casual, outdoor lifestyle associated with surfing, skateboarding, snowboarding, BMX, and motocross, among other activities. The Company's products are sold in over 115 countries through a wide range of distribution points, including wholesale accounts (surf shops, skate shops, snow shops, sporting goods stores, discount centers, specialty stores, select department stores, and licensed stores), Company-owned retail stores, and its e-commerce websites. The Debtors comprise each of the Company's U.S. entities, including parent, ZQK, as well as QS Wholesale, Inc., QS Retail, Inc., DC Shoes, Inc. and seven inactive entities.

8. Additional factual background information regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to these Chapter 11 Cases, is set forth in detail in the Declaration of Andrew Bruenjes, Americas Chief Financial Officer of Quiksilver, Inc., in Support of Chapter 11 Petitions and First Day Pleadings [Docket No. 20].

**RELIEF REQUESTED**

1. By this Application, the Debtors seek entry of an order: (i) authorizing the Debtors to employ and retain Deloitte Tax as tax advisor to the Debtors, *nunc pro tunc* to October 1, 2015, to provide tax advisory services to the Debtors related to the Chapter 11 Cases in accordance with the terms and conditions set forth in the engagement letter dated as of October 8, 2015, attached as <u>Exhibit B</u> (the "Tax Consulting Engagement Letter"), and continue to provide tax compliance services in accordance with the terms and conditions set forth in the engagement letter dated as of January 29, 2015, attached as <u>Exhibit C</u> (the "Tax Compliance Engagement Letter") (and together with the Tax Consulting Engagement Letter, the "Engagement Letters"),[2] as modified by the proposed order hereto; and (ii) granting related relief, as more fully described below.

2. For the reasons set forth below, the Debtors submit that the relief requested herein is in the best interest of the Debtors, their estates, creditors, and other parties in interest, and therefore, should be granted.

**DELOITTE TAX'S QUALIFICATIONS**

3. Deloitte Tax is a large tax services provider with offices across the United States. Deloitte Tax has a wealth of experience in providing tax services and has performed such services in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States. Deloitte Tax is well-qualified and able to perform tax services for the Debtors in a cost-effective, efficient, and timely manner. Deloitte Tax's services fulfill important needs that are not provided by any of the Debtors' other professionals.

---

[2] Any references to or summaries of the Engagement Letters in the Application are qualified by the express terms of the Engagement Letters, which shall govern if there is any conflict between the Engagement Letters and the summaries provided herein. Additionally, any capitalized terms used in the Application and not otherwise defined herein shall have the meanings ascribed to such terms in the Engagement Letters.

4. In addition, since 1985, Deloitte Tax has provided various services to the Debtors. In providing such prepetition professional services to the Debtors, Deloitte Tax has become familiar with the Debtors and their business, including the Debtors' financial affairs, debt structure, operations, and related matters. Having worked with the Debtors' management and their other advisors, Deloitte Tax has developed relevant experience and knowledge regarding the Debtors that will assist it in providing effective and efficient services during these Chapter 11 Cases. Accordingly, Deloitte Tax is both well-qualified and able to provide services for the Debtors in these Chapter 11 Cases in an efficient and timely manner.

## SERVICES TO BE PROVIDED

5. The parties have entered into the Engagement Letters, which govern the relationship between the Debtors and Deloitte Tax. The terms and conditions of the Engagement Letters were negotiated at arm's length between the Debtors and Deloitte Tax and reflect the parties' mutual agreement as to substantial efforts that will be required in this engagement. Under the Engagement Letters, in consideration for the compensation contemplated thereby, Deloitte Tax has provided and has agreed to provide the services described herein, to the extent necessary, appropriate, and feasible.

6. <u>Tax Consulting Engagement Letter</u>. Pursuant to the Tax Consulting Engagement Letter, Deloitte Tax has provided and has agreed to continue to provide assistance to the Debtors in accordance with the terms and conditions set forth therein. In particular, Deloitte Tax is expected to perform the following services under the Tax Consulting Engagement Letter:

   a. Advising the Debtors as they consult with the Debtors' counsel and financial advisors on the cash tax effects of restructuring and bankruptcy and the post-restructuring tax profile, including plan of reorganization tax costs;

b.  Advising the Debtors regarding the restructuring and bankruptcy emergence process from a tax perspective, including the tax work plan;

c.  Advising the Debtors on the cancellation of debt income for tax purposes under Internal Revenue Code ("IRC") section 108;

d.  Advising the Debtors on post-bankruptcy tax attributes (tax basis in assets, tax basis in subsidiary stock and net operating loss carryovers) available under the applicable tax regulations and the reduction of such attributes based on the Debtors' operating projections, including a technical analysis of the effects of Treasury Regulation Section 1.1502-28 and the interplay with IRC sections 108 and 1017;

e.  Advising the Debtors on the alternative minimum tax in various post-emergence scenarios;

f.  Advising the Debtors on the application of IRC section 382 to historic section 382 ownership changes or ownership changes or ownership shifts;

g.  Advising the Debtors on the effects of tax rules under IRC sections 382(l)(5) and (l)(6) pertaining to the post-bankruptcy net operating loss carryovers and limitations on their utilization and the Debtors' ability to qualify for IRC section 382(l)(5);

h.  Advising the Debtors on net built-in gain or net built-in loss position at the time of "ownership change" (as defined under IRC section 382), including limitations on use of tax losses generated from post-restructuring or post-bankruptcy asset or stock sales;

i.  Assisting the Debtors with U.S federal income tax observations in connection with any NOL protective orders recommended or drafted by the Debtors' counsel or financial advisors;

j.  Advising the Debtors in their evaluation and modeling of the effects of liquidation, merging or converting entities as part of the restructuring, including the effects on federal and state tax attributes, state incentives and state apportionment;

k.  Advising the Debtors as to the treatment of post-petition interest for state and federal income tax purposes;

l.  Advising the Debtors as to the state and federal income tax treatment of pre-petition and post-petition reorganization costs including restructuring-related professional fees and other costs, the categorization and analysis of such costs, and the technical positions related thereto;

m.  Advising the Debtors in their evaluation and modeling of the tax effects of liquidating, disposing of assets, merging or converting entities as part of the

      restructuring, including the effects on federal and state tax attributes, state incentives, apportionment, and other tax planning;

n. Advising the Debtors on state income tax treatment and planning for restructuring or bankruptcy provisions in various jurisdictions including cancellation of indebtedness calculation, adjustments to tax attributes and limitations on tax attribute utilization;

o. Advising the Debtors on responding to tax notices and audits from various taxing authorities;

p. Advising the Debtors with identifying potential tax refunds and advising the Debtors on procedures for tax refunds from tax authorities;

q. Advising the Debtors on income tax return reporting of bankruptcy issues and related matters;

r. Advising the Debtors in their efforts to calculate tax basis in the stock in each of the Debtors' subsidiaries or other entity interests;

s. Assisting in documenting as appropriate, the tax analysis, development of the Debtors' opinions, recommendation, observations, and correspondence for any proposed restructuring alternative tax issue or other tax matter described above; and

t. Advising the Debtors regarding other state or federal tax questions that may arise in the course of this engagement, as requested by the Debtors, and as may be agreed to by Deloitte Tax.

7.      <u>Tax Compliance Engagement Letter</u>.  Pursuant to the terms of the Tax Compliance Engagement Letter, Deloitte Tax will review and sign the remaining of the Debtors' state and local tax returns specified therein that had not been reviewed and signed prior to the Petition Date (the "<u>Tax Return Preparation Services</u>").

**PROFESSIONAL COMPENSATION**

8.      Pursuant to the terms of the Engagement Letters, Deloitte Tax intends to (i) charge hourly fees for the services to be provided under the Tax Consulting Engagement Letter, (ii) charge a fixed fee for the services provided under the Tax Compliance Engagement Letter, and (iii) charge for its reasonable out-of-pocket expenses (the "<u>Fee Structure</u>").

9. Specifically, for services under the Tax Consulting Engagement Letter, Deloitte Tax will charge the hourly rates set forth in the table below.

| Personnel Classification | Applicable Hourly Rates |
|---|---|
| Partner/Principal/Director | $ 795 |
| Senior Manager | $ 705 |
| Manager | $ 608 |
| Senior Staff | $ 503 |
| Staff | $ 398 |

10. In connection with the Tax Compliance Engagement Letter, in lieu of hourly rates, Deloitte Tax will charge a flat fee for the remaining few tax returns. The fee, given the tax returns remaining to be reviewed and executed, is expected to be $10,000.

11. In addition, reasonable expenses, including travel, report production, delivery services, and other expenses incurred in providing the services, will be included in the total amount billed. Deloitte Tax intends to apply to the Court for allowance of compensation and reimbursement of expenses consistent with the terms of the Engagement Letters, this Application and the Ecker Declaration, the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the United States Trustee Guidelines and the Orders of this Court.

### INDEMNIFICATION PROVISIONS

12. As part of the overall compensation payable to Deloitte Tax under the terms of the Engagement Letters, the Debtors have agreed to certain indemnification and contribution obligations (the "<u>Indemnification Obligations</u>"). Notwithstanding the foregoing, and subject to this Court's approval, the Debtors and Deloitte Tax have agreed to limit the

Indemnification Obligations with respect to the services performed for the Debtors after the inception of the Chapter 11 Cases and prior to the effective date of a plan of reorganization, as follows:

    a.    Deloitte Tax shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Letters for services, unless such services and the indemnification, contribution or reimbursement therefore are approved by the Court;

    b.    The Debtors shall have no obligations to indemnify Deloitte Tax, or provide contribution or reimbursement to Deloitte Tax, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from Deloitte Tax's gross negligence, willful misconduct, breach of fiduciary duty, if any, bad faith or self-dealing; (ii) for a contractual dispute in which the Debtors allege the breach of Deloitte Tax's contractual obligations, unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to In re United Artists Theatre Company, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by this Court, after notice and a hearing to be a claim or expense for which Deloitte Tax should not receive indemnity, contribution or reimbursement under the terms of the Engagement Letters as modified by the Order;

    c.    If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in the Chapter 11 Cases (and that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing the Chapter 11 Cases, Deloitte Tax believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Letters (as modified by the Order), including without limitation the advancement of defense costs, Deloitte Tax must file an application therefor in this Court, and the Debtors may not pay any such amounts to Deloitte Tax before the entry of an order by this Court approving such payments. This subparagraph (iii) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Deloitte Tax for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify Deloitte Tax. All parties in interest shall retain the right to object to any demand by Deloitte Tax for indemnification, contribution or reimbursement; and

  d.  Any limitation of liability or limitation on any amounts to be contributed by the parties to the Engagement Letters under the terms of the Engagement Letters shall be eliminated.

  13.  The Debtors and Deloitte Tax believe that the Indemnification Obligations are customary and reasonable for accounting and tax advisor engagements, both out-of-court and in chapter 11 cases, and, as would be modified by the proposed order, reflect the qualifications and limitations on indemnification provisions that are customary in this and other districts. See, e.g., In re Overseas Shipholding Group, Inc., Case No. 12-20000 (PJW) (Bankr. D. Del. Mar. 5, 2013); In re Delta Petroleum Corporation, Case No. 11-14006 (KJC) (Bankr. D. Del. Feb. 14, 2012); In re NewPage Corporation, Case No. 11-12804 (KG) (Bankr. D. Del. Dec. 11, 2011); In re Charter Commc'ns, Inc., Cases No. 09-11435 (JMP) (Bankr. S.D.N.Y. Apr. 15, 2009); In re Tropicana Entm't, LLC, Case No. 08-10856 (KJC) (Bankr. D. Del. June 5, 2008).

  14.  The terms and conditions of the Engagement Letters, including the Indemnification Obligations contained therein, were negotiated by the Debtors and Deloitte Tax at arm's length and in good faith. The Debtors respectfully submit that the Indemnification Obligations, viewed in conjunction with the other terms of Deloitte Tax's proposed retention, are reasonable and in the best interests of the Debtors, their estates, and all parties in interest in light of the fact that the Debtors require Deloitte Tax's services to maximize the value of their assets for all stakeholders in these Chapter 11 Cases. Accordingly, as part of the Application, the Debtors request that this Court approve the Indemnification Obligations, as modified by the proposed order attached to this Application.

## EFFORTS TO AVOID DUPLICATION OF SERVICES

15. The Debtors believe that the services Deloitte Tax will provide will be complementary, rather than duplicative, of the services to be performed by other professionals in these Chapter 11 Cases. The Debtors will coordinate with Deloitte Tax and the Debtors' other professionals to minimize unnecessary duplication of efforts amongst the Debtors' professionals.

## DELOITTE TAX'S DISINTERESTEDNESS

16. In connection with the proposed retention of Deloitte & Touche LLP ("Deloitte & Touche"), an affiliate of Deloitte Tax, by the Debtors,[3] Deloitte & Touche received a list of potential parties in interest from the Debtors. Deloitte & Touche has reviewed the parties in interest list and, as more fully described in the Ecker Declaration, undertook a search to determine whether Deloitte & Touche or any of its affiliates, including Deloitte Tax, is or has been employed by, or has other relationships with, any of the Debtors or their affiliates, subsidiaries, directors or officers, or any of the Debtors' significant creditors, customers, equity security holders, professionals or other entities with significant relationships with the Debtors.

17. To the best of the Debtors' knowledge, information, and belief, and except to the extent disclosed herein and in the Ecker Declaration, including Schedule 1 thereto, Deloitte Tax (i) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code (as modified by section 1107(b) of the Bankruptcy Code), (ii) does not hold or represent any interest materially adverse to the Debtors' estates, and (iii) has no connection with the Debtors or their creditors, equity security holders, or related parties. The Debtors'

---

[3] As further set forth below, on October 22, 2015, the Debtors filed the Deloitte & Touche Retention Application (defined below).

knowledge, information, and belief regarding the matters set forth herein are based, and made in reliance, upon the Ecker Declaration.

18. Given the large number of parties in interest in these Chapter 11 Cases, and despite Deloitte & Touche's and Deloitte Tax's effort to identify and disclose Deloitte Tax's relationships with any such parties in interest, Deloitte Tax is unable to state with certainty that every client relationship or other connection has been disclosed in the Ecker Declaration and Schedule 1 thereto. If any new material facts or relationships are discovered or arise, Deloitte Tax shall promptly file a supplemental declaration, as required by Local Bankruptcy Rule 2014-1(a).

19. With respect to the prepetition services provided by Deloitte Tax, the Debtors have paid Deloitte Tax approximately $155,000 in the ninety (90) days prior to the Petition Date. As of the Petition Date, approximately $100,000 remained outstanding with respect to invoices issued to the Debtors by Deloitte Tax prior to the Petition Date. Deloitte Tax will not seek any recovery from the Debtors with respect to this amount, contingent upon approval of the Application.

20. Deloitte LLP, Deloitte Tax's parent, has completed a reorganization of some of its businesses, including its financial advisory services, tax services, solutions, human capital and outsourcing businesses. This reorganization is intended to align the organizational structure more closely with the manner in which business is conducted. These businesses are now being conducted by entities affiliated with Deloitte Tax, including Deloitte Financial Advisory Services LLP, Deloitte & Touche, Deloitte Transactions and Business Analytics LLP and Deloitte Consulting LLP. Some services incidental to the tasks to be performed by Deloitte Tax in these Chapter 11 Cases may be performed by personnel now employed by or associated

with these affiliates of Deloitte Tax or their respective subsidiaries, including subsidiaries located outside of the United States. The fees and expenses with respect to such services will be included on the fee applications of Deloitte Tax.

21. One such affiliate of Deloitte Tax, Deloitte & Touche, also provided pre-petition services to the Debtors. Deloitte & Touche expects to continue performing services for the Debtors as their independent auditor after the Petition Date, and the Debtors have filed a separate application seeking court approval of its retention [Docket No. 342] (the "Deloitte & Touche Retention Application"). In the ninety (90) days prior to the Petition Date, the Debtors paid Deloitte & Touche approximately $228,700, including certain retainers in the amount of $128,700. As of the Petition Date, approximately $35,000 of the retainer remained. As of the Petition Date, approximately $164,000 was outstanding with respect to invoices issued by Deloitte & Touche to the Debtors prior to the Petition Date. The Debtors understand that Deloitte & Touche will not seek any recovery from the Debtors with respect to this amount, contingent upon approval of the Deloitte & Touche Retention Application.

22. As set forth in the Ecker Declaration, Deloitte Tax has not shared or agreed to share any of its compensation from the Debtors with any unaffiliated or unrelated person or entity. Moreover, except as described in the Ecker Declaration, no commitments have been made or received by Deloitte Tax as to compensation or payment in connection with these Chapter 11 Cases.

## REQUEST FOR APPROVAL OF DELOITTE TAX'S RETENTION
### *NUNC PRO TUNC* AS OF OCTOBER 1, 2015

23. By this Application, the Debtors request approval of the retention and employment of Deloitte Tax *nunc pro tunc* to October 1, 2015. Such relief is warranted by the extraordinary circumstances presented by these Chapter 11 Cases. The Third Circuit has

identified "time pressure to begin service" and absence of prejudice as factors favoring *nunc pro tunc* retention.  See Matter of Arkansas Co., 798 F.2d 645, 650 (3d Cir. 1986); see also In re Indian River Homes, Inc., 108 B.R. 46, 52 (D. Del. 1989).  The complexity, intense activity, and speed that have characterized these Chapter 11 Cases has necessitated that Deloitte Tax focus their immediate attention on time-sensitive matters and promptly devote substantial resources to the affairs of the Debtors pending submission and approval of this Application.

## BASIS FOR RELIEF

24.     The Debtors desire to retain and employ Deloitte Tax as tax advisor pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, as well as the terms of the Engagement Letters, because a capable and experienced tax advisor such as Deloitte Tax will enable the Debtors to carry out their duties and focus their attention on the reorganization of their estates.

25.     Section 327(a) of the Bankruptcy Code provides that the debtor in possession "may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist" the debtor in possession in carrying out its duties. 11 U.S.C. § 327(a).

26.     Section 328(a) of the Bankruptcy Code, in turn, provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis" subject to later re-evaluation by the Court.  11 U.S.C. § 328(a).

27.     Moreover, Bankruptcy Rule 2014 requires that an application for retention include "specific facts showing the necessity for the employment, the name of the [firm] to be

employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." Fed. R. Bankr. P. 2014. Local Bankruptcy Rule 2014-1 further requires that "[a]ny entity seeking approval of a professional person pursuant to 11 U.S.C. § 327 . . . shall file with the Court a motion, a supporting affidavit or verified statement of the professional person and a proposed order for approval." Del. Bankr. L.R. 2014-1(a). The Debtors respectfully submit that this Application, the Ecker Declaration, and the Engagement Letters set forth the information required under Bankruptcy Rule 2014 and Local Bankruptcy Rule 2014-1(a).

28. By this Application, the Debtors request that the Court approve the employment and compensation arrangements described in the Engagement Letters (as modified by the proposed order hereto) pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code. The proposed retention of Deloitte Tax is beneficial to the Debtors' estates, as Deloitte Tax has significant experience providing a variety of tax services to numerous debtors in chapter 11 cases and is well qualified and able to represent the Debtors in a cost-effective, efficient, and timely manner. The tax services that Deloitte Tax will provide the Debtors are necessary to, among other things, enable the Debtors to satisfy their tax reporting obligations, and evaluate their restructuring alternatives from a tax perspective. Accordingly, such services will help maximize the value of the Debtors' estates for the benefit of their creditors.

29. The Debtors respectfully submit that they should be authorized to retain and employ Deloitte Tax in accordance with the terms and conditions of the Engagement Letters. First, as discussed above and in the Ecker Declaration, Deloitte Tax satisfies the

disinterestedness standard in section 327(a) of the Bankruptcy Code.  Moreover, Deloitte Tax has become familiar with the Debtors' business, tax needs, and tax structure during the course of its engagement, during which Deloitte Tax provided the Debtors with tax advisory services related to the Debtors' operations, assisted the Debtors and their affiliates in preparing tax returns, and provided the Debtors with tax advice as required in the normal course of the Debtors' business.  As a result of this familiarity with the Debtors and its business and operations, the Debtors believe that Deloitte Tax can provide the services contemplated by the Engagement Letters more economically than other tax advisors, who would have to familiarize themselves with the Debtors and their books and records.   Therefore, the Debtors seek to continue to retain Deloitte Tax as their tax advisor, but now in the context of these Chapter 11 Cases.

30. Deloitte Tax's services are needed postpetition to continue assisting the Debtors with tax-related advise, as necessary, and to enable the Debtors to discharge their duties as debtors and debtors in possession.  Deloitte Tax has extensive experience and an excellent reputation in providing high-quality tax advisory services to debtors and creditors in bankruptcy reorganizations and other restructurings.  Accordingly, the Debtors believe that Deloitte Tax is well-qualified to provide its services to the Debtors in a cost-effective, efficient, and timely manner.

31. Additionally, the Debtors further believe that the terms and conditions of the Engagement Letters, which were negotiated by the Debtors and Deloitte Tax at arm's-length and in good faith, appropriately reflect the nature and scope of services to be provided by Deloitte Tax, Deloitte Tax's substantial experience as a tax advisor in chapter 11 cases, and the fees and expenses typically utilized by Deloitte Tax and other leading tax advisors and

consultants, both in and out of court. Moreover, the professional compensation arrangements contemplated under the Engagement Letters provide certainty and proper inducement for Deloitte Tax to act expeditiously and prudently with respect to the matters for which it will be employed. Indeed, similar fee arrangements in other large chapter 11 cases have routinely been approved and implemented by this Court. See, e.g., In re Overseas Shipholding Group, Inc., Case No. 12-20000 (PJW) (Bankr. D. Del. Mar. 5, 2013); In re Delta Petroleum Corporation, Case No. 11-14006 (KJC) (Bankr. D. Del. Feb. 14, 2012); In re NewPage Corporation, Case No. 11-12804 (KG) (Bankr. D. Del. Dec. 9, 2011); In re Tropicana Entm't, LLC, Case No. 08-10856 (KJC) (Bankr. D. Del. June 5, 2008).

32.     In light of the foregoing, the Debtors submit that the employment and retention of Deloitte Tax, *nunc pro tunc* to October 1, 2015 and on the terms and conditions set forth herein and in the Engagement Letters (as modified by the proposed order hereto), is in the best interest of the Debtors, their estates, creditors, stakeholders and other parties in interest, and therefore, should be approved.

**NOTICE**

33.     Notice of this Application will be given to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the agent for the Debtors' postpetition secured loan facilities; (c) counsel to the agent for the Debtors' prepetition revolving loan facility; (d) counsel to the indenture trustee for the Debtors' prepetition senior secured notes; (e) counsel to the indenture trustee for the Debtors' prepetition senior unsecured notes; (f) counsel to the Creditors' Committee; and (g) all parties entitled to notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PREVIOUS REQUEST

34. No previous request for the relief sought herein has been made by the Debtors to this Court or any other court.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

## CONCLUSION

WHEREFORE, the Debtors respectfully requests that the Court enter an order, substantially in the form annexed hereto, granting the relief requested in the Application and such other and further relief as may be just and proper.

Dated:   October 27, 2015
         Huntington Beach, California

         QUIKSILVER, INC.

         (on behalf of itself and the other Debtors)

         By:   */s/ Andrew Bruenjes*
         Name: Andrew Bruenjes
         Title:   Americas Chief Financial Officer