## **EXHIBIT B**

**Tax Consulting Engagement Letter**

# Deloitte.

**Deloitte Tax, LLP**
695 Town Center Drive
Suite 1200
Costa Mesa, CA 92626
USA

Tel: +1 714 436 7100
Fax: +1 714 436 7200
www.deloitte.com

October 8, 2015

Mr. Joe Novarro
Global Vice President of Tax
Quiksilver, Inc.
5600 Argosy Circle #100
Huntington Beach, CA 92694

Dear Mr. Novarro:

Thank you for choosing Deloitte Tax LLP ("Deloitte Tax") to provide federal, state and local income tax advisory services ("Services") to Quiksilver, Inc. and its subsidiaries and /or affiliates ("Client") in connection with Client's restructuring, which include its Chapter 11 filing. This engagement letter ("Engagement Letter") describes the scope of Deloitte Tax Services, the respective responsibilities of Deloitte Tax and Client, and the fees associated with such Services.

## SCOPE OF SERVICES

Client and Deloitte Tax agree that the terms of this Engagement Letter will apply to all Services provided by Deloitte Tax to Client during the period beginning October 8, 2015 through the earlier of (i) December 31, 2016, or (ii) the date Client emerges from bankruptcy, unless such services are the subject of a separate written agreement entered into between Deloitte Tax and Client.

Deloitte Tax has agreed to perform the Services related to debt discharge, Internal Revenue Code ("IRC") section 382, and other tax issues arising in connection with Client's restructuring and/or Chapter 11 filing of which Client is the subject. The Deloitte Tax Services may include the following:

(i)     Advise Client as it consults with its counsel and financial advisors on the cash tax effects of restructuring and bankruptcy and the post-restructuring tax profile, including plan of reorganization tax costs. This will include gaining an understanding of Client's financial advisors' valuation model and disclosure model to consider the tax assumptions contained therein;

(ii)    Advise Client regarding the restructuring and bankruptcy emergence process from a tax perspective, including the tax work plan;

(iii)   Advise Client on the cancellation of debt income for tax purposes under IRC section 108;

(iv)    Advise Client on post-bankruptcy tax attributes (tax basis in assets, tax basis in subsidiary stock and net operating loss carryovers) available under the applicable tax regulations and the reduction of such attributes based on Client's operating projections; including a technical analysis of the effects of Treasury Regulation Section 1.1502-28 and the interplay with IRC sections 108 and 1017;

(v)     Advise Client on potential effect of the alternative minimum tax in various post-emergence scenarios;

(vi)    Advise Client on the application of IRC Section 382 to historic Section 382 ownership changes or ownership shifts;

Member of
Deloitte Touche Tohmatsu Limited

Mr. Joe Novarro
October 8, 2015
Page 2

(vii)   Advise Client on the effects of tax rules under IRC sections 382(l)(5) and (l) (6) pertaining to the post-bankruptcy net operating loss carryovers and limitations on their utilization, including Client's ability to qualify for IRC section 382(l)(5);

(viii)  Advise Client on net built-in gain or net built-in loss position at the time of "ownership change" (as defined under IRC section 382), including limitations on use of tax losses generated from post-restructuring or post-bankruptcy asset or stock sales;

(ix)    Assist Client with U.S. federal income tax observations in connection with any NOL protective orders (i.e., orders designed in order to help mitigate the risk of any further ownership changes) recommended or drafted by legal counsel or Client's financial advisors;

(x)     Advise Client in its evaluation and modeling of the effects of liquidation, merging, or converting entities as part of the restructuring, including the effects on federal and state tax attributes and state apportionment;

(xi)    Advise Client as to the treatment of post-petition interest for state and federal income tax purposes;

(xii)   Advise Client as to the state and federal income tax treatment of pre-petition and post-petition reorganization costs including restructuring-related professional fees and other costs, the categorization and analysis of such costs, and the technical positions related thereto;

(xiii)  Advise Client in Client's evaluation and modeling of the tax effects of liquidating, disposing of assets, merging or converting entities as part of the restructuring, including the effects on federal and state tax attributes, state incentives, apportionment and other tax planning;

(xiv)   Advise Client on state income tax treatment and planning for restructuring or bankruptcy provisions in various jurisdictions, including cancellation of indebtedness calculation, adjustments to tax attributes and limitations on tax attribute utilization;

(xv)    Advise Client on responding to tax notices and audits from various taxing authorities;

(xvi)   Assist Client with identifying potential tax refunds and advise Client on procedures for tax refunds from tax authorities;

(xvii)  Advise Client on income tax return reporting of bankruptcy issues and related matters;

(xviii) Advise Client with its efforts to calculate tax basis in the stock in each of Client's subsidiaries or other entity interests;

(xix)   Assist in documenting as appropriate, the tax analysis, development of Client's opinions, recommendations, observations, and correspondence for any proposed restructuring alternative tax issue or other tax matter described above; and

(xx)    Advise Client regarding other state or federal income tax questions that may arise in the course of this engagement, as requested by Client, and as may be agreed to by Deloitte Tax.

Mr. Joe Novarro
October 8, 2015
Page 3

From time to time additional Deloitte Tax services may be requested by Client, at which point, and to the extent agreed to by Deloitte Tax, an addendum ("Addendum") setting forth the scope of such services and the effective date of the performance thereof shall be executed as an addition to this Engagement Letter. The Addendum shall be executed by authorized representatives of Client and Deloitte Tax and shall become a part of this Engagement Letter. In the event of any inconsistency in the terms set forth in this Engagement Letter and the attached General Business Terms and Privacy Notice, the terms of this Engagement Letter shall control.

## ECONOMIC SUBSTANCE PENALTY

Federal law imposes a strict liability penalty of 20% (or 40% for transactions not adequately disclosed) of the portion of any underpayment attributable to the disallowance of claimed tax benefits by reason of a transaction failing to meet the requirements of the codified economic substance doctrine (IRC section 7701(o)) or any similar rule of law. Where Deloitte Tax advises whether the codified doctrine is relevant to any of Client's transaction(s), such analysis will be based on existing judicial, regulatory and administrative guidance. Client should understand that, because the Internal Revenue Service ("IRS") has not provided substantive guidance regarding the relevance of the codified doctrine or when the associated penalty will be asserted, the IRS could assert that Client's transaction fails the requirements of the codified doctrine and assert the associated penalty notwithstanding Deloitte Tax's analysis or conclusion that the codified doctrine is not relevant. Due to the strict liability nature of the penalty, Client cannot show reasonable cause by establishing reliance upon any advice received from Deloitte Tax.

## REPORTABLE TRANSACTIONS

The IRS and several states have promulgated rules that require taxpayers to disclose their participation in reportable transactions by attaching a disclosure form to their Federal and/or state income tax returns and, when necessary, by filing a copy of that disclosure form with the IRS and/or the applicable state authority. These rules impose a significant disclosure obligations that may encompass transactions entered into in the normal course of business. The services that are the subject of this Engagement Letter do not include any obligation by Deloitte Tax to identify any reportable transactions or disclosure obligations. Any services regarding reportable transactions will be provided under the terms of a separate engagement letter. Client is responsible for ensuring that it has properly disclosed all reportable transactions; failure to make required disclosure will result in substantial penalties. Deloitte Tax will not be liable for any penalties resulting from Client's failure to accurately and timely file any required reportable transaction disclosure.

## TAX POSITIONS AND POTENTIAL PENALTIES

Deloitte Tax will discuss with Client tax positions that Deloitte Tax is aware of as a result of the Services and for which Client or Deloitte Tax could be subject to potential penalties. With respect to those tax positions, Deloitte Tax will discuss any opportunity to avoid such penalties through adequate disclosure, if relevant, and the requirements for adequate disclosure. Client should be aware that in certain instances, the standards to avoid a potential penalty applicable to Deloitte Tax, as a tax return preparer, may exceed the accuracy related penalty standards applicable to Client.

## ACKNOWLEDGEMENTS AND AGREEMENTS

The Services will be performed in accordance with the *Statement on Standards for Consulting Services* established by the American Institute of Certified Public Accountants ("AICPA"). Services to be performed by Deloitte Tax will be established by mutual agreement and can be changed or modified in

Mr. Joe Novarro
October 8, 2015
Page 4

the same manner. Deloitte Tax will promptly inform Client of any circumstances that warrant a change in the scope of the specific Services to be provided, and similarly, Client agrees to notify Deloitte Tax promptly if modifications to the Services are requested.

It is contemplated that the Services requested from Deloitte Tax may include oral and written opinions, consulting, recommendations and other communications rendered in response to specific tax questions posed by Client. Deloitte Tax's analysis and response to these tax questions may be based upon an analysis of various documentation including, but not limited to, legal opinions, books and records (collectively, "books and records") relevant to Client's transactions and business activity that Client provides to Deloitte Tax. With respect to such Services, Deloitte Tax is entitled to assume without independent verification the accuracy of all representations, assumptions, information and data provided by Client and its representatives. Deloitte Tax may ask Client to clarify or supplement information provided in this context.

Client acknowledges and agrees that the Services provided pursuant to this Engagement Letter will be based solely upon:

(a) The representations, information, documents and other facts provided to Deloitte Tax by Client, its personnel and any representatives thereof;

(b) Deloitte Tax's assumption that there will be timely execution, delivery and performance as may be required by any representation or documents submitted by Client with respect to the Deloitte Tax Services;

(c) Client's understanding that Client will maintain ultimate responsibility for all management decisions and management functions. Client understands and agrees that the ultimate responsibility, with respect to the appropriate application and interpretation of any oral or written communications, rests with management of Client. Deloitte Tax will not be held liable for any misinterpretations of oral or written communications regarding the application of tax advice.

(d) Client's understanding that Deloitte Tax will only be responsible to provide tax advice with respect to the specific matter, transaction or question actually presented by Client, including the type of tax and the taxing jurisdiction specifically identified by Client (e.g., U.S. federal tax);

(e) Client's understanding that any tax advice provided pursuant hereto will be based upon the law, regulations, cases, rulings, and other tax authority in effect at the time specific tax advice is provided. If there are subsequent changes in or to the foregoing tax authorities (for which Deloitte Tax shall have no specific responsibility to advise Client), Client acknowledges that such changes may result in that tax advice being rendered invalid or necessitate (upon Client's request) a reconsideration of that prior tax advice;

(f) Client's understanding that the results of Deloitte Tax's tax advice may be audited and challenged by the IRS and other tax agencies, who may not agree with our positions. In this regard, Client understands that the result of any tax advice is not binding on the IRS, other tax agencies or the courts and should never be considered a representation, warranty, or guarantee that the IRS, other tax agencies or the courts will concur with our advice or opinion;

(g) Client's understanding that the review of documents [and tax returns] under this Engagement Letter does not constitute an engagement to provide audit, compilation, review or attest services as described in the pronouncements on professional standards issued by the AICPA or the U.S. Public Company Accounting Oversight Board and

Mr. Joe Novarro
October 8, 2015
Page 5

(h)    Client's understanding that Deloitte Tax, as a result of providing such tax advice, is under no obligation to represent Client with respect to any such challenge or an administrative or judicial challenge thereof. Deloitte Tax may be available to represent Client before the appropriate administrative tax authorities, if permissible, for an additional fee that is mutually agreed upon and which is subject to a separate engagement letter.

## CONSENT FOR DISCLOSURE AND USE OF TAX RETURN INFORMATION

Client authorizes that any and all information (i) furnished to Deloitte Tax for or in connection with the Services under this Engagement Letter, (ii) derived or generated by Deloitte Tax from the information described in (i) above, or (iii) associated with prior years' tax return information in the possession of Deloitte Tax may, for a period of up to eight (8) years from the date of this Engagement Letter, be disclosed to Client's shareholders, advisors, and independent accountants, and used by any Deloitte Tax affiliate, related entity (or its affiliate) or subcontractor, in each case, whether located within or outside the United States, engaged directly or indirectly in providing Services under this Engagement Letter, tax planning or preparation of tax returns, audited financial statements, or other financial statements or financial information as required by a government authority, municipality or regulatory body. Additionally, Client authorizes that disclosure of information described in (i) through (iii) of this paragraph may be made to Client's counsel and other Client advisors in connection with the Services under this Engagement Letter. Disclosures under this paragraph may consist of all information contained in Client's tax returns; if Client wishes to request a more limited disclosure of tax return information, Client must inform Deloitte Tax. Client acknowledges that Client's tax return information may be disclosed to Deloitte Tax affiliates, related entities (or their affiliates) or subcontractors located outside of the United States.

## FEES AND EXPENSES

The Deloitte Tax fees for Services are based on the amount of professional time required and the below agreed-upon hourly rates, which vary depending upon the experience level of the professionals involved, plus reasonable out-of-pocket expenses. The fees and expenses are not dependent upon the findings or results of the Services or the ultimate resolution of any items with the taxing authorities, nor are those amounts contingent or refundable.

| | |
|---|---|
| Partner, Principal or Director | $795 |
| Senior Manager | $705 |
| Manager | $608 |
| Senior | $503 |
| Staff | $398 |

In the normal course of business, Deloitte Tax revises its hourly rates to reflect changes in responsibilities, increased experience, geographical differentials and increased costs of doing business. Changes in the foregoing agreed-upon hourly rates will be subject to Client's approval in advance and then noted on the invoices for the first time period in which the revised rates become effective.

Reasonable out-of-pocket expenses, including travel (with air travel based on coach fares), report production, delivery services and other expenses incurred in providing the Services and allocated costs, are reflected as additional amounts on the bills.

Mr. Joe Novarro
October 8, 2015
Page 6

In addition, in connection with the engagement Deloitte Tax will be entitled to compensation for any time and actual reasonable out-of-pocket expenses including, without limitation, reasonable legal fees and expenses that may be incurred in considering or responding to discovery requests or other requests for documents or information, or in participating as a witness or otherwise in any legal, regulatory, or other proceedings relating to the Client, including, without limitation, those relating to Client but arising other than as a result of or in connection with this agreement.

As a result of the commencement of a Chapter 11 proceeding, Deloitte Tax shall apply for compensation for professional services rendered and for reimbursement of expenses incurred, in accordance with applicable provisions of Title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure, the applicable local rules of bankruptcy procedure (the "Local Rules") and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under Bankruptcy Code § 330. Payment of fees and reimbursement of expenses will be subject to ultimate allowance and approval by the Bankruptcy Court (as defined below). However, in the interim, Client will ask the Bankruptcy Court for approval to allow Deloitte Tax to submit invoices to Client for prompt payment in accordance with the Local Rules or practices of the Bankruptcy Court regarding monthly payment of professional fees and expenses. Accordingly, Deloitte Tax will provide Client with an invoice on a periodic basis, with the invoice due and payable pursuant to the payment procedures adopted by the Bankruptcy Court in Client's Chapter 11 proceeding. Payment of these invoices will be made by Client on an interim basis subject to approval and allowance upon application to and order by the Bankruptcy Court.

Client agrees that Client will promptly seek the Bankruptcy Court's approval of this engagement and the Engagement Letter. The application, proposed order and other supporting documents (collectively, the "Application") submitted to the Bankruptcy Court seeking its approval of this engagement must be satisfactory to Deloitte Tax in all respects. In addition to Deloitte Tax's other rights or remedies hereunder, Deloitte Tax may, in its sole discretion and without any liability arising there from, terminate this engagement in the event that (a) a third party objects or threatens to object, or Deloitte tax reasonably believes that a third party may object, in the form of an objection or otherwise, to Deloitte Tax's retention by Client on the terms and conditions set forth in this Engagement Letter, (b) a final order authorizing the employment of Deloitte Tax is not issued by the Bankruptcy Court on or before sixty (60) days from the date hereof on the terms and conditions set forth herein, or on such other terms and conditions as are satisfactory to Deloitte Tax, or (c) the Application is denied by the Bankruptcy Court. In such event, Client hereby agrees to withdraw or amend, promptly upon Deloitte Tax's request, any Application filed or to be filed with the Bankruptcy Court to retain Deloitte Tax's services in the Chapter 11 proceeding.

For purposes of this Engagement Letter, together with the General Business Terms and Appendix A attached hereto, "Bankruptcy Court" shall mean the United States Bankruptcy Court with which Client has filed a Chapter 11 petition.

## ACCEPTANCE

This Engagement Letter together with the General Business Terms attached hereto, constitutes the entire agreement between Client and Deloitte Tax with respect to this engagement, supersedes all other oral and written representations, understandings or agreements relating to this engagement, and may not be amended except by the mutual written agreement of the Client and Deloitte Tax.

Please indicate your acceptance of this agreement by signing in the space provided below and returning a copy of this Engagement Letter to our office. Your signature constitutes Client's consent to disclosure

Mr. Joe Novarro
October 8, 2015
Page 7


and use of Client's tax return information in the manner described above. Your signature also constitutes acknowledgment of receipt of the attached Privacy Notice.

Thank you for providing Deloitte Tax the opportunity to serve you. If you have any questions regarding the Services described in this Engagement Letter, or any other advice that Deloitte Tax may provide to you, please feel free to contact me at (714) 436-7634 or secker@deloitte.com.


Very truly yours,

DELOITTE TAX LLP

By: _____
    Scott Ecker


AGREED AND ACCEPTED:

**Quiksilver, Inc. on behalf of itself and its subsidiaries and/or affiliates**

By: _____
    Signature

    Joseph Navarro
    Name

    Global VP of Tax
    Title

    10/8/15
    Date

## DELOITTE TAX LLP GENERAL BUSINESS TERMS

**1.      Services.**  It is understood and agreed that services (the "Services") provided by Deloitte Tax, (as defined in paragraph 12 below), under the engagement letter to which these terms are attached (the "Engagement Letter") may include advice and recommendations, but all decisions in connection with the implementation of such advice and recommendations shall be the responsibility of, and made by, the Client. For purposes of these terms and the Engagement Letter, the "Client" shall mean Quiksilver, Inc. and its subsidiaries and/or affiliates.  Quiksilver, Inc. represents and warrants that it has the power and authority to execute the Engagement Letter on behalf of, and to bind, itself and its subsidiaries and/or its affiliates.

**2.      Payment.**  Deloitte Tax's invoices are due upon receipt subject to any applicable Bankruptcy Court orders, rules or procedures.  Without limiting its rights or remedies, Deloitte Tax shall have the right to halt or terminate the Services entirely if payment is not received as set forth above.  The Client shall be responsible for all taxes imposed on the Services or on the transaction, other than Deloitte Tax's income taxes imposed on a net basis or by employment withholding, and other than taxes imposed on Deloitte Tax's property.

**3.      Term.**  Unless terminated sooner in accordance with its terms, this engagement shall terminate on the completion of the Services.  This engagement may be terminated by either party at any time, with or without cause, by giving written notice to the other party not less than thirty (30) days before the effective date of termination; provided that, in the event of a termination for cause, the breaching party shall have the right to cure the breach within the notice period.  Deloitte Tax may terminate this engagement upon written notice to the Client if Deloitte Tax determines that (a) a governmental, regulatory or professional entity (including, without limitation, the American Institute of Certified Public Accountants, the Public Company Accounting Oversight Board (the "PCAOB") or the Securities and Exchange Commission) or an entity having the force of law has introduced a new, or modified an existing, law, rule, regulation, interpretation or decision, the result of which would render Deloitte Tax's performance of any part of the engagement illegal or otherwise unlawful or in conflict with independence or professional rules, or (b) circumstances change (including, without limitation, changes in ownership of the Client or any of its affiliates) such that Deloitte Tax's performance of any part of the engagement would be illegal or otherwise unlawful or in conflict with independence or professional rules.  Upon termination of the engagement, the Client will compensate Deloitte Tax under the terms of the Engagement Letter for the Services performed and expenses incurred through the effective date of termination.

**4.      Ownership of Deloitte Tax Property.**  To the extent that Deloitte Tax utilizes any of its property (whether tangible or intangible) in connection with this engagement, such property shall remain the property of Deloitte Tax, and the Client shall not acquire any right or interest in such property.  Deloitte Tax shall have ownership (including, without limitation, copyright ownership) and all rights to use and disclose its ideas, concepts, know-how, methods, techniques, processes and skills, and adaptations thereof in conducting its business, and the Client shall not assert or cause to be asserted against Deloitte Tax or its personnel any prohibition or restraint from so doing.  In the course of performing the Services, Deloitte Tax may provide to Client, solely for its convenience, spread sheets, models or other software tools.  Such items are provided to the Client in "as is" condition without warranty of any kind and Deloitte Tax assumes no responsibility for results obtained by anyone other than Deloitte Tax from the use of such items.

**5.      Limitation on Warranties.  THIS IS A SERVICES ENGAGEMENT.  DELOITTE TAX WARRANTS THAT IT SHALL PERFORM THE SERVICES IN GOOD FAITH AND WITH DUE PROFESSIONAL CARE.  DELOITTE TAX DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.**

6.     **Limitation on Damages.**   [Omitted.]

7.     **Client Responsibilities.**  The Client shall cooperate with Deloitte Tax in the performance by Deloitte Tax of the Services, including, without limitation, providing Deloitte Tax with reasonable facilities and timely access to data, information and personnel of the Client.  The Client shall be responsible for the performance of its personnel and agents and for the accuracy and completeness of all data and information provided to Deloitte Tax for purposes of the performance by Deloitte Tax of the Services.  The Client acknowledges and agrees that Deloitte Tax's performance is dependent upon the timely and effective satisfaction of the Client's responsibilities hereunder and timely decisions and approvals of the Client in connection with the Services.  Deloitte Tax shall be entitled to rely on all decisions and approvals of the Client.  With respect to the data and information provided by Client to Deloitte Tax or its subcontractors for the performance of the Services, Client shall have the rights required to provide such data and information, and shall do so only in accordance with applicable law and with any procedures agreed upon in writing. The Client shall be solely responsible for, among other things: (a) making all management decisions and performing all management functions; (b) designating an individual who possesses suitable skill, knowledge, and/or experience, preferably within senior management, to oversee the Services;  (c) evaluating the adequacy and results of the Services performed; (d) accepting responsibility for the results of the Services; and (e) establishing and maintaining internal controls, including, without limitation, monitoring ongoing activities.

8.     **Force Majeure.**  Except for the payment of money, neither party shall be liable for any delays or nonperformance directly or indirectly resulting from circumstances or causes beyond its reasonable control, including, without limitation, acts or omissions or the failure to cooperate by the other party (including, without limitation, entities or individuals under its control or any of their respective officers, directors, employees, other personnel and agents), acts or omissions or the failure to cooperate by any third party, fire, epidemic or other casualty, act of God, strike or labor dispute, war or other violence or any law, order or requirement of any governmental agency or authority.

9.     **Limitation on Actions.**  No action, regardless of form, relating to this engagement, may be brought by either party more than one year after the cause of action has accrued, except that an action for nonpayment may be brought by a party not later than one year following the date of the last payment due to the party bringing such action.

10.     **Independent Contractor.**  Nothing contained in these terms shall alter in any way the duties imposed by law on Deloitte Tax in respect of the Services to be provided by Deloitte Tax under this engagement.  It is understood and agreed that each party hereto is an independent contractor and that neither party is, nor shall be considered to be, the other's agent, distributor, partner, joint venturer, co-owner or representative.  Neither party shall act or represent itself, directly or by implication, in any such capacity or in any manner assume or create any obligation on behalf of, or in the name of, the other.

11.     **Confidentiality.**  To the extent that, in connection with this engagement, Deloitte Tax comes into possession of any tax return information, trade secrets or other proprietary or confidential information of the Client, Deloitte Tax will not disclose such information to any third party without the Client's consent.  The Client hereby consents to Deloitte Tax disclosing such information (a) to contractors providing administrative, infrastructure and other support services to Deloitte Tax and subcontractors providing services in connection with this engagement, in each case, whether located within or outside of the United States, provided that such contractors and subcontractors have agreed to be bound by confidentiality obligations similar to those in this paragraph 11; (b) as may be required by law, regulation, judicial or administrative process, or in accordance with applicable professional standards, or in connection with litigation pertaining hereto; or (c) to the extent such information (i) shall have otherwise become publicly available (including, without limitation, any information filed with any governmental agency and available to the public) other than as the result of a disclosure by Deloitte Tax in breach hereof, (ii) becomes available to Deloitte Tax on a nonconfidential basis from a source other than the Client which Deloitte Tax believes is not prohibited from disclosing such information to Deloitte Tax by obligation to the Client, (iii) is known by Deloitte Tax prior to its receipt from the Client without any obligation of confidentiality with respect thereto, or (iv) is developed by Deloitte Tax

independently of any disclosures made by the Client to Deloitte Tax of such information. In satisfying its obligations under this paragraph, Deloitte Tax shall maintain the Client's trade secrets and proprietary or confidential information in confidence using at least the same degree of care as it employs in maintaining in confidence its own trade secrets and proprietary or confidential information, but in no event less than a reasonable degree of care. Notwithstanding anything to the contrary herein, the Client acknowledges that Deloitte Tax, in connection with performing the Services, may develop or acquire experience, skills, knowledge, and ideas that are retained in the unaided memory of its personnel. The Client acknowledges and agrees that Deloitte Tax may use and disclose such experience, skills, knowledge and ideas.

12.     **Survival and Interpretation.** The agreements and undertakings of the Client contained in the Engagement Letter, together with all paragraphs herein relating to payment of invoices, ownership of Deloitte Tax property, limitations on warranties, limitations on damages, limitations on actions, confidentiality, survival and interpretation, assignment and subcontracting, waiver of jury trial, indemnification, governing law, venue, jurisdiction and severability, information and data, and third parties and internal use shall survive the expiration or termination of this engagement. For purposes of these terms, Deloitte Tax shall mean Deloitte Tax LLP and Deloitte Tax Products Company LLC, one of its subsidiaries. The Client acknowledges and agrees that no affiliated or related entity of Deloitte Tax, whether or not acting as a subcontractor (or such entity's personnel) shall have any liability hereunder to the Client or any other person, and the Client will not bring any action against any such affiliated or related entity of Deloitte Tax (or such entity's personnel) in connection with this engagement. Without limiting the foregoing, affiliated and related entities of Deloitte Tax are intended third-party beneficiaries of these terms. Any affiliated or related entity of Deloitte Tax may in its own right enforce such terms, agreements and undertakings. **The provisions of paragraphs 5, 6, 9, 12, 14, 15, 16 and 18, hereof shall apply to the fullest extent of the law, whether in contract, statute, tort (such as *negligence*), or otherwise, notwithstanding the failure of the essential purpose of any remedy.**

13.     **Assignment and Subcontracting.** Except as provided below, neither party may assign, transfer or delegate any of its rights or obligations hereunder (including, without limitation, interests or Claims) without the prior written consent of the other party. The Client hereby consents to Deloitte Tax assigning or subcontracting any of Deloitte Tax's rights or obligations hereunder to (a) any affiliate or related entity, whether located within or outside of the United States, or (b) any entity which acquires all or a substantial part of the assets or business of Deloitte Tax. Services performed by Deloitte Tax subcontractors shall be invoiced as professional fees on the same basis as Services performed by Deloitte Tax personnel, unless otherwise agreed.

14.     **Waiver of Jury Trial. DELOITTE TAX AND THE CLIENT HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM RELATING TO THIS ENGAGEMENT.**

15.     **Indemnification.** The Client shall indemnify and hold harmless Deloitte Tax, its subcontractors and their respective personnel from all Claims, except to the extent finally judicially determined to have resulted primarily from the gross negligence, bad faith or intentional misconduct of Deloitte Tax or its subcontractors. In circumstances where all or any portion of the provisions of this paragraph are finally determined to be unavailable, the aggregate liability of Deloitte Tax, its subcontractors and their respective personnel for any Claim shall not exceed an amount which is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim.

16.     **Governing Law, Venue, Jurisdiction and Severability.** These terms, the Engagement Letter, including exhibits and all matters relating to this engagement shall be governed by, and construed in accordance with, the laws of the State of New York (without giving effect to the choice of law principles thereof). To the extent the Bankruptcy Court does not have or retain jurisdiction over any action based on or arising out of this engagement or the Services provided or to be provided hereunder, any such action shall be brought and maintained exclusively in any court of the State of New York or any federal court of the United States, in each case located in New York County, the State of New York. Each of the parties hereby expressly and irrevocably submits to the jurisdiction of such courts for the purposes of any such action and expressly

and irrevocably waives, to the fullest extent permitted by law, any objection which it may have or hereafter may have to the laying of venue of any such action brought in any such court and any claim that any such action has been brought in an inconvenient forum. If any provision of such terms or the Engagement Letter is found by a court of competent jurisdiction to be unenforceable, such provision shall not affect the other provisions, but such unenforceable provision shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein.

**17.    Information and Data.** Deloitte Tax shall be entitled to assume, without independent verification, the accuracy of all representations, assumptions, information and data that the Client and its representatives provide to Deloitte Tax. All assumptions, representations, information and data to be supplied by the Client and its representatives will be complete and accurate to the best of the Client's knowledge. Deloitte Tax may use information and data furnished by others; however, Deloitte Tax shall not be responsible for, and Deloitte Tax shall provide no assurance regarding, the accuracy of any such information or data. Except as specifically agreed to in writing, Deloitte Tax shall not provide advice regarding the financial accounting treatment of any transaction implemented from the Services and will not assume any responsibility for any financial reporting with respect to the Services. The Client shall be responsible for all financial information and statements provided by or on behalf of the Client with respect to any of the Services. Deloitte Tax shall have no responsibility to address any legal matters or questions of law, other than tax law.

**18.    Third Parties and Internal Use.** Deloitte Tax acknowledges that Deloitte Tax has not placed any limitations on the Client's disclosure of the tax treatment or tax structure associated with the tax Services or transactions described in the Engagement Letter. Nothing in this paragraph shall be construed as limiting or restricting disclosure of the tax treatment or tax structure of the transaction as described in Rule 3501(c)(i) of PCAOB Release 2005-014 or Internal Revenue Code ("IRC") sections 6011 and 6111 and related Internal Revenue Service ("IRS") guidance. The Client acknowledges that none of its other advisors have imposed or will impose any conditions of confidentiality with respect to the tax treatment or tax structure associated with the tax Services or transactions described in the Engagement Letter. All Services shall be solely for the Client's informational purposes and internal use, and this engagement does not create privity between Deloitte Tax and any person or party other than the Client ("third party"). This engagement is not intended for the express or implied benefit of any third party. Unless otherwise agreed to in writing by Deloitte Tax, no third party is entitled to rely, in any manner or for any purpose, on the advice, opinions, reports or other Services of Deloitte Tax. In the event of any unauthorized reliance, the Client agrees to indemnify and hold harmless Deloitte Tax and its personnel from all third-party claims, liabilities, costs and expenses.

**19.    Certain Tax Disclosures and Reporting.** In accordance with IRC sections 6111 and 6112, Deloitte Tax may be required to report to the IRS or certain state tax authorities the Services including without limitation any related tax transaction(s) described in the Engagement Letter as well as the Client's participation therein. In addition, separate and apart from any reporting by Deloitte Tax, the Client, in accordance with IRC section 6011, may also be required to disclose to a taxing authority its participation in one or more transactions which are the subject of this Engagement Letter. The determination of whether, when and to what extent Deloitte Tax and the Client should comply with their respective federal or state "tax shelter" reporting requirements will be made exclusively and respectively by Deloitte Tax and the Client. Deloitte Tax and the Client further agree that (i) any liability for fines or penalties or any other consequences resulting from non-compliance by one party with applicable tax disclosure or reporting rules will be borne or incurred exclusively by the non-compliant party, and (ii) any request by the Client of Deloitte Tax for services in identifying or otherwise consulting on transactions subject to IRC section 6011 or corresponding state law and the reporting or disclosing thereof will be the subject of a separate engagement letter.

**20.    Account / Client Privilege – IRC §7525.** The Client should be aware that certain information discussed with personnel of Deloitte Tax who are Federally Authorized Tax Practitioners or their agents for the purpose of obtaining Deloitte Tax's advice on tax matters may be privileged from disclosure in any non-criminal tax matters before the IRS and in non-criminal proceedings in Federal court that stem from matters before the IRS, if the United States is a party to the proceedings. The Client is solely responsible for managing the recognition, establishment and maintenance of the confidentiality privilege. The Client must notify Deloitte Tax if the Client wishes to invoke the confidentiality privilege, and Deloitte Tax will cooperate with

the Client's reasonable instructions relating to the confidentiality privilege. Circumstances may arise under which the Client may wish to divulge or have Deloitte Tax divulge privileged information to other parties. The Client should be aware that such disclosure might result in a waiver of the confidentiality privilege. Accordingly, if the Client wishes Deloitte Tax to divulge such information, Deloitte Tax shall require the Client to provide Deloitte Tax in advance with written authority to make such disclosures. In addition, if it is ultimately determined that a significant purpose of the tax matter was to avoid or evade any U.S. federal income tax, the Client should be aware that the confidentiality privilege under §7525 of the Internal Revenue Code will not apply to any communications between the Client and Deloitte Tax.

In the event that Deloitte Tax receives a request from a third party (including a subpoena, summons or discovery demand in litigation) calling for the production of privileged information, Deloitte Tax will promptly notify the Client and will follow the Client's reasonable instructions regarding any third party requests or needs for such material before Deloitte Tax would disclose same as may be required under applicable law or rules. The Client agrees to hold Deloitte Tax harmless from, and also assumes responsibility for, any expenses (including attorney's fees, court costs, costs incurred by outside advisors and any other cost imposed whether by way of penalty or otherwise) incurred by Deloitte Tax as a result of the Client's assertion of the confidentiality privilege or the Client's direction to Deloitte Tax to assert the confidentiality privilege on behalf of the Client.

**Privacy Notice**

Quiksilver, Inc.

**Introduction**
This privacy notice applies to clients who obtain services from Deloitte Tax. Deloitte Tax refers to Deloitte Tax LLP as defined in paragraph 12 of the General Business Terms.

**Information Collection**
Deloitte Tax may collect personally identifiable information ("PII") from you such as:
- Home address
- Home telephone number
- Date of birth
- Government identifiers (such as social security number)

In connection with our client acceptance process, Deloitte Tax may collect PII about you that may be considered sensitive. This could include, for example, history of any criminal activity.
Deloitte Tax may also collect PII about you from, among other places:
- Information you provide directly to us
- Information regarding the services that Deloitte Tax provides or has previously provided to you
- Information Deloitte Tax receives from our affiliated entities or third parties relating to the establishment of our relationship or the provision of services to you

This information can be received in any manner, including in in-person discussions, telephone conversations, and electronic or other written communications.

**Information Use**
Deloitte Tax collects PII about you to:
- Establish or maintain our relationship with you
- Provide you with services you have requested
- Keep you informed of services we think may be of interest to you

Without PII, Deloitte Tax may be unable to provide you with the services you have requested.

**Disclosure of Information**
Deloitte Tax may share PII about you with others as permitted by contractual agreement or as required by law, such as:
- Our affiliates
- Third parties in connection with the provision of services to you
- Government entities and regulatory bodies
- Those with whom you have requested us to share information

Deloitte Tax requires third parties who perform services for us to agree to treat PII about you confidentially and securely. Unless restricted by law, regulation, contract or professional standards, Deloitte Tax may transfer PII about you outside the United States to other countries for the purposes described in this privacy notice.
Deloitte Tax will provide notice and obtain your consent before:
- Sharing PII about you with an unaffiliated third party who is not performing services for us, except if such sharing is otherwise permitted by this privacy notice, or
- Using sensitive PII about you for purposes not described in this privacy notice

Deloitte Tax does not sell or lease PII about you to others.

**Access**
You may request access to the PII that Deloitte Tax has about you. You may also request the correction, amendment or deletion of PII about you that is inaccurate. Deloitte Tax will treat requests for access, correction, amendment or deletion of PII about you in accordance with its internal policies and applicable legal requirements.

**Information Security**
Deloitte Tax maintains reasonable physical, administrative and technical safeguards to protect PII from loss, misuse, or unauthorized access, disclosure, alteration or destruction. Our personnel and the personnel of our affiliates are provided access to PII about you only if they have a need to know the information in connection with a legitimate business purpose, such as (i) the provision of services to you or (ii) to help identify other services that Deloitte Tax and its affiliates offer that may be of interest or use to you.

**Changes to This Privacy Notice**
Deloitte Tax reserves the right to change this privacy notice. Deloitte Tax will provide you with a revised privacy notice that reflects such changes as required by law.

**Questions**
If you have any questions or concerns regarding this notice, please contact your engagement partner/principal/director.