# **EXHIBIT C**

**Tax Compliance Engagement Letter**

# Deloitte.

Deloitte Tax LLP
695 Town Center Drive,
Suite 1200
Costa Mesa, CA 92626
USA

Tel:+1 714 436 7100
Fax:+1 714 436 7200
www.deloitte.com

January 29, 2015

Mr. Scott Fullerton
Senior Vice President of Tax- Global
Quiksilver, Inc.
15202 Graham Street
Huntington Beach, CA 92649

Dear Scott:

Thank you for choosing Deloitte Tax LLP ("Deloitte Tax" or "our") to review and sign the 2014 federal and state and local income tax returns ("tax returns") ("Services") for the year ended October 31, 2014 for **Quiksilver Inc.** and its subsidiaries and/or affiliates ("Client") identified in Exhibit A, Listing of Federal and State and Local Income Tax Returns Included in Engagement, attached to this engagement letter ("Engagement Letter") and incorporated herein by reference. This Engagement Letter describes the scope of the Deloitte Tax Services, the respective responsibilities of Deloitte Tax and Client relating to this engagement and the fees Deloitte Tax expects to charge.

## SCOPE OF SERVICES

Deloitte Tax will input the tax information prepared by Client, and then review and process the federal and state returns and Forms 5471, 8858, and 8865. Deloitte Tax will rely on all information provided by Client in connection with the Services as being accurate and complete and will not verify the information or undertake any procedures to discover errors or inaccuracies with respect to such information, but Deloitte Tax may ask Client representatives to clarify or supplement such information. The Scope of Services involves a review of Client's returns identified in Exhibit A. The review procedures that Deloitte Tax will perform in connection with the Services are limited to those described in Exhibit B, Listing of the Specific Review Procedures to be Performed, and attached to this Engagement Letter and incorporated herein by reference.

Since the returns will reflect information that is under Client's exclusive control, Client has the ultimate responsibility for the accuracy of the tax returns; therefore, Client should review each tax return carefully before signing and filing. Client acknowledges that the review of the tax returns under this Engagement Letter does not constitute an engagement to provide audit, compilation, review or attest services as described in the pronouncements on professional standards issued by the American Institute of Certified Public Accountants or the U.S. Public Company Accounting Oversight Board. **Deloitte Tax does not warrant or represent to Client that the Deloitte Tax review steps will enable Deloitte Tax to identify every error, potential issue, disclosure, election, filing, or notice requirement in Client's tax returns.** Upon completion of the Deloitte Tax review, Deloitte Tax will report to Client our findings, issues, and questions.

Member of
Deloitte Touche Tohmatsu Limited

Quiksilver, Inc.
January 29, 2015
Page 2

**Electronic Return Filing**
Internal Revenue Service ("IRS") regulations and administrative guidance exist that require certain large corporations and tax-exempt organizations to electronically file their federal income tax returns. As a result, Client will likely be required to electronically file its federal income tax returns. Under separate state mandates, Client may also be required to electronically file in various other states. Client agrees to electronically file its returns if either Client or Deloitte Tax is required by Federal or state law to electronically file such return. Client retains responsibility for compliance with any electronic funds transfer requirements that may apply to the payment of applicable taxes.

As part of this engagement, Deloitte Tax will advise Client on the requirements necessary to electronically file the federal income tax return (and applicable state income tax returns as requested by Client). This engagement will also include certain procedures as set forth in Exhibit B that will assist the Client to comply with certain aspects of the electronic tax return filing requirements. However, for purposes of this Engagement Letter, Deloitte Tax assumes no responsibility with respect to electronically transmitting Client's federal and state tax returns to the IRS or applicable states.

**Reportable Transactions**
The IRS and some states have promulgated rules that require taxpayers to disclose their participation in reportable transactions by attaching a disclosure form to their federal and/or state income tax returns and, when necessary, by filing a copy with the IRS and/or the applicable state agency. These rules impose significant requirements to disclose certain transactions and such disclosures may encompass many transactions entered into in the normal course of business. Client is responsible for ensuring that it has properly disclosed all reportable transactions; failure to make such disclosures will result in substantial penalties. Deloitte Tax will not be responsible for any penalties resulting from Client's failure to accurately and timely file any required reportable transaction disclosure.

**Uncertain Tax Positions**
The IRS has issued guidance that requires certain large corporations to report uncertain tax positions on their tax returns. As a result, Client is required to include Schedule UTP, Uncertain Tax Positions Statement, in its 2014 federal income tax return. Client is responsible for ensuring that it has properly reported items on Schedule UTP.

**Tangible Property Regulations**
The Final Tangible Property Regulations ("Final Regulations") are generally effective for taxable years beginning on or after January 1, 2014. For taxable years beginning on or after January 1, 2012 and before January 1, 2014, taxpayers may apply the Final Regulations, the 2013 Proposed Regulations, or the 2011 Temporary Regulations (T.D. 9564), generally referred to as the "Tangible Property Regulations". Alternatively, taxpayers may wait to comply with the Final Regulations with their first tax year beginning on or after January 1, 2014.

There are numerous accounting method changes potentially required by the Tangible Property Regulations depending on Client's facts and circumstances. Accordingly, Client's adoption or implementation of such regulations could result in additional compliance burden and cost.

The Deloitte Tax return preparation Services that are the subject of this Engagement Letter do not include any services related to Client's adoption or implementation of the Tangible Property Regulations. However, if requested, Deloitte Tax would be available to advise Client on its adoption or implementation of the Tangible Property Regulations under the terms of a separate engagement letter. Our approach to advising clients on adoption or implementation of the Tangible Property

Quiksilver, Inc.
January 29, 2015
Page 3

Regulations typically involves a phased approach. The initial phase would involve gaining an understanding of Client's current book and tax fixed asset policies and procedures and analyzing which of Client's existing tax accounting methods may be impacted by the Tangible Property Regulations. Client management can then determine what actions to undertake in order to comply with the Tangible Property Regulations, including whether to change certain of its existing tax accounting methods by filing Form(s) 3115, *Application for Change in Accounting Method* or by filing elections under the regulations. If requested, Deloitte Tax would be pleased to prepare a separate engagement letter describing in more detail our available services, and related fees, to advise Client on its adoption or implementation of the Tangible Property Regulations.

**FATCA**
On February 20, 2014, the IRS issued final and temporary regulations under the Foreign Account Tax Compliance Act ("FATCA"); certain provisions of FATCA and related Intergovernmental Agreements (collectively "FATCA") took effect July 1, 2014. While FATCA will be phased in through calendar year 2017, there are certain aspects of the legislation that may require annual reporting to the IRS and Non US authorities beginning in 2015. The Deloitte Tax return preparation Services that are the subject of this Engagement Letter do not include any services related to Client's compliance with the FATCA regulations. However, if requested, Deloitte Tax would be available to advise Client on its obligations under the FATCA regulations under the terms of a separate engagement letter.

**TAX POSITIONS AND POTENTIAL PENALTIES**

Deloitte Tax will discuss with Client tax positions that Deloitte Tax is aware of and for which Client or Deloitte Tax could be subject to potential penalties. With respect to those tax positions, Deloitte Tax will discuss any opportunity to avoid such penalties through adequate disclosure, if relevant, and the requirements for adequate disclosure. Client should be aware that in certain instances, the standards to avoid a potential penalty applicable to Deloitte Tax, as a tax return preparer, may exceed the accuracy related penalty standards applicable to Client. With respect to positions known to Deloitte Tax, Deloitte Tax will include in the tax returns reviewed by Deloitte Tax disclosures required in order for Client to avoid accuracy-related penalties under Internal Revenue Code ("IRC") section 6662 (or comparable state provisions), and disclosures in order for Deloitte Tax to avoid tax return preparer penalties under IRC section 6694 (or comparable state provisions).

Client returns may be selected for review by taxing authorities, who may not agree with Client's positions. Any adjustments proposed by taxing authorities are subject to certain rights of appeal. Client representation in administrative taxing authority proceedings is not contemplated within the scope of this Engagement Letter. Deloitte Tax would generally be willing to represent Client in such proceedings for an additional fee that is mutually agreed upon. Because of the lack of clarity in the law, Deloitte Tax cannot provide assurances that the positions asserted by taxing authorities will not ultimately be sustained, which could result in the assessment of potential penalties.

**ECONOMIC SUBSTANCE PENALTY**

Federal law imposes a strict liability penalty of 20% (or 40% for transactions not adequately disclosed) of the portion of any underpayment attributable to the disallowance of claimed tax benefits by reason of a transaction failing to meet the requirements of the codified economic substance doctrine (IRC section 7701(o)) or any similar rule of law. Client is responsible for informing Deloitte Tax of any transactions that are potentially subject to the strict liability penalty for failing to meet these requirements if applicable. Unless provided under the terms of a separate engagement letter, the Services do not include

Quiksilver, Inc.
January 29, 2015
Page 4

any obligation by Deloitte Tax to analyze or otherwise conclude regarding the relevance of the economic substance doctrine or the application of any similar rule of law to any of Client's transactions. Deloitte Tax assumes no responsibility for any penalties resulting from Client's failure to meet the requirements of the economic substance doctrine or similar rule of law.

**CONSENT FOR DISCLOSURE AND USE OF TAX RETURN INFORMATION**

Client authorizes that any and all information (i) furnished to Deloitte Tax for or in connection with the review of Client's tax returns under this Engagement Letter, (ii) derived or generated by Deloitte Tax from the information described in (i) above, or (iii) associated with prior years' tax return information in the possession of Deloitte Tax may, for a period of up to eight (8) years from the date of this Engagement Letter, be disclosed to and considered and used by any Deloitte Tax affiliate, related entity (or its affiliate) or subcontractor, in each case, whether located within or outside the United States, engaged directly or indirectly in providing Services under this Engagement Letter, tax planning or preparation of tax returns, audited financial statements, or other financial statements or financial information as required by a government authority, municipality or regulatory body. Disclosures under this paragraph may consist of all information contained in Client's tax returns; if Client wishes to request a more limited disclosure of tax return information, Client must inform Deloitte Tax. Client acknowledges that Client's tax return information may be disclosed to Deloitte Tax affiliates, related entities (or their affiliates) or subcontractors located outside of the United States.

**FEES AND EXPENSES**

The Deloitte Tax fees for the review of the tax returns are based on the amount of professional time incurred and our agreed-upon hourly rates, which vary depending upon the experience level of the professionals involved. Deloitte Tax will also bill you (i) reasonable out-of-pocket expenses and (ii) an allocation of estimated administrative and technology costs incurred (e.g., tax technology and processing support activities, research materials, etc.) equal to four (4) percent of professional fees.

Deloitte Tax will work closely with Client to keep Client informed of our progress and professional time incurred. Deloitte Tax currently estimates that Client fees for the review will be approximately $275,000 as follows:

| | |
|---|---:|
| Federal and California Returns | $ 83,300 |
| Other State Returns (49 @ $ 1,300 each) | 63,700 |
| Forms 5471, 8858, 8865 and 5713 (72 @ $ 1,500 each) | 108,000 |
| Foreign Tax Credit | 10,000 |
| Out of Pocket Expenses | 10,000 |
| Total Estimated Fees for Quiksilver Consolidated Return and States | $ 275,000 |

Deloitte Tax will bill 50% of the fees for the Services referred to above upon commencement of the Services, and the remainder will be billed every four weeks as the Services progress. Deloitte Tax expectation is that 90% of our fees will be collected before final delivery of your federal return. The fees and expenses are not dependent upon the findings or results of the Services or the ultimate resolution of any items with the tax authorities, nor are those amounts contingent or refundable.

Quiksilver, Inc.
January 29, 2015
Page 5

**ACCEPTANCE**

This Engagement Letter including all exhibits, together with the General Business Terms attached hereto, constitutes the entire agreement between Client and Deloitte Tax with respect to this engagement, supersedes all other oral and written representations, understandings or agreements relating to this engagement, and may not be amended except by the mutual written agreement of the Client and Deloitte Tax.

Please indicate your acceptance of this agreement by signing in the space provided below and returning a copy of this Engagement Letter to our office. Your signature constitutes Client's consent to disclosure and use of Client's tax return information in the manner described above. Your signature also constitutes acknowledgment of receipt of the attached Privacy Notice.

Thank you for giving Deloitte Tax the opportunity to serve you. If you have any questions regarding the tax Services described in this Engagement Letter, or any other assistance that Deloitte Tax may provide to you, please feel free to contact me at (714) 436-7634 or Thanh Fahey (714) 436-7304.

| Very truly yours, | AGREED AND ACCEPTED |
|---|---|
| DELOITTE TAX LLP | Quiksilver, Inc., on behalf of itself and its subsidiaries and/or affiliates. |
| By: _____ Scott A. Ecker | By: _____ Scott Fullerton |
| | Title: SVP of Tax |
| | Date: 1/30/2015 |

Enclosures

**Exhibit A Quiksilver, Inc.**
**Listing of Federal and State and Local Income Tax Returns Included in Engagement**

**Exhibit A**
List of Tax Returns to be reviewed
For the Year Ended October 31, 2014 (except where indicated otherwise)

**FEDERAL AND STATE RETURNS**

1. Quiksilver, Inc. and Subsidiaries U.S. Corporation Income Tax Return
2. Quiksilver, Inc. and Subsidiaries Arizona Corporation Income Tax Return
3. Quiksilver, Inc. and Subsidiaries California Corporation Franchise/Income Tax Return
4. Quiksilver, Inc. and Subsidiaries Colorado C Corporation Income Tax Return
5. Quiksilver, Inc. and Subsidiaries Hawaii Income Tax Return
6. Quiksilver, Inc. and Subsidiaries Idaho Corporation Income Tax Return
7. Quiksilver, Inc. and Subsidiaries Illinois Income and Replacement Tax Return
8. Quiksilver, Inc. and Subsidiaries Maine Corporate Income Tax Return
9. Quiksilver, Inc. and Subsidiaries Massachusetts Business or Manufacturing Corporation Excise Return
10. Quiksilver, Inc. and Subsidiaries Michigan Corporate Income Tax Return
11. Quiksilver, Inc. and Subsidiaries Minnesota Corporation Franchise Tax Return
12. Quiksilver, Inc. and Subsidiaries Nebraska Corporation Income Tax Return
13. Quiksilver, Inc. and Subsidiaries New Hampshire Corporation Business Profits Tax Return
14. Quiksilver, Inc. and Subsidiaries Oregon Corporation Excise Tax Return
15. Quiksilver, Inc. and Subsidiaries Texas Corporation Franchise Tax Report
16. Quiksilver, Inc. and Subsidiaries Utah Corporation Income Tax Return
17. Quiksilver, Inc. and Subsidiaries Vermont Corporate Income Tax Return

18. QS Wholesale, Inc. Delaware Corporation Income Tax Return
19. QS Wholesale, Inc. Florida Corporate Income/Franchise and Emergency Excise Tax
20. QS Wholesale, Inc. Georgia Corporation Income Tax and Net Worth Tax Return
21. QS Wholesale, Inc. Maryland Corporation Income Tax Return
22. QS Wholesale, Inc. Massachusetts Business or Manufacturing Corporation Excise Return
23. QS Wholesale, Inc. New Jersey Corporation Business Tax Return
24. QS Wholesale, Inc. New York State General Business Corporation Franchise Tax Return
25. QS Wholesale, Inc. New York City General Business Corporation Franchise Tax Return
26. QS Wholesale, Inc. North Carolina Corporation Tax Return
27. QS Wholesale, Inc. Pennsylvania Corporate Tax Report
28. QS Wholesale, Inc. Philadelphia Business Privilege Tax Return
29. .QS Wholesale, Inc. Rhode Island Business Corporation Tax Return
30. QS Wholesale, Inc. Virginia Corporation Tax Return

31. QS Retail, Inc. Florida Corporate Income/Franchise and Emergency Excise Tax Return
32. QS Retail, Inc. Georgia Corporation Income Tax and Net Worth Tax Return
33. QS Retail, Inc. Kentucky Corporation Income Tax Return
34. QS Retail, Inc. Maryland Corporation Income Tax Return
35. QS Retail, Inc. Massachusetts Business or Manufacturing Corporation Excise Return
36. QS Retail, Inc. New Jersey Corporation Business Tax Return
37. QS Retail, Inc. New York State General Business Corporation Franchise Tax Return

38. QS Retail, Inc. New York City General Business Corporation Franchise Tax Return
39. QS Retail, Inc. South Carolina C Corporation Income Tax Return
40. QS Retail, Inc. Virginia Corporation Income Tax Return

41. DC Shoes, Inc. Connecticut Corporation Business Tax Return
42. DC Shoes, Inc. Massachusetts Business or Manufacturing Corporation Excise Return
43. DC Shoes, Inc. New Jersey Corporation Business Tax Return
44. DC Shoes, Inc. New York State General Business Corporation Franchise Tax Return
45. DC Shoes, Inc. New York City General Business Corporation Franchise Tax Return
46. DC Shoes, Inc. North Carolina Corporation Tax Return
47. DC Shoes, Inc. Oklahoma Corporation Income Tax Return
48. DC Shoes, Inc. Pennsylvania Corporation Income Tax Return
49. DC Shoes, Inc. Philadelphia Business Privilege Tax Return
50. DC Shoes, Inc. Tennessee Franchise, Excise Tax Return

51. Mervin Manufacturing, Inc. Philadelphia Business Privilege Tax Return.

## INTERNATIONAL TAX FORMS

### Na Pali Group

52. Form 8858 Na Pali, SAS
53. Form 5471 Kokolo SARL
54. Form 8858 Lanai, Ltd.
55. Form 8858 Kauai GmbH
56. Form 8858 Sumbawa SL
57. Form 8858 Molokai, Ltd.
58. Form 8858 Haapiti, SRL
59. Form 8858 Cariboo, EURL
60. Form 8858 Pukalani, BV
61. Form 8858 Emerald Coast, SAS
62. Form 8858 Namotu, Ltd.
63. Form 8858 Na Pali Europe SARL
64. Form 8858 Tavarua SCI
65. Form 5471 Drop In SARL
66. Form 5471 Estacade, Ltd.
67. Form 5471 Sunshine Diffusion SA
68. Form 8858 Rawaki SP Zoo
69. Form 8858 Echo Beach Cafe SARL (FK.A DC Shoes SARL)
70. Form 8858 Zebraska SARL
71. Form 8858 Tarawa Lda.
72. Form 5471 Hanalei NV

73. Form 8858 New Pier Trading Ltd.
74. Form 5471 Marina Travels SARL
75. Form 5471 Vanuatu GmbH
76. Form 5471 1. Distribution Sro
77. Form 5471 Boardriders Club Bratislava Sro
78. Form 5471 Santocha Ltd
79. Form 5471 Uluwatu ApS
80. Form 8865 Surfdome Shop Ltd
81. Form 5471 Fistral OY
82. Form 5471 QS Sourcing India Private Ltd

Asia Pac Group

83. Form 8858 Caribbean BRC, Pty Ltd
84. Form 8858 DC Shoes Australia Pty Ltd.
85. Form 8858 Pavilion Productions Pty Ltd.
86. Form 8858 PT Quiksilver Indonesia
87. Form 8858 QS Retail Pty Ltd.
88. Form 5471 QSJ Holdings Pty Ltd.
89. Form 8858 Quiksilver Australia Pty Ltd.
90. Form 8858 Quiksilver International Pty Ltd.
91. Form 5471 Quiksilver Japan KK
92. Form 5471 QS Australia Sourcing Ltd. (HK)
93. Form 8865 UG Manufacturing Co. Pty Ltd
94. Form 8858 UG Manufacturing Co. (NZ) Ltd
95. Form 8858 UMTT Pty Ltd.
96. Form 8858 QS Retail (NZ) Ltd.
97. Form 8858 Quiksilver Singapore Ltd.
98. Form 5471 QS Retail Taiwan Ltd.
99. Form 5471 QS Retail Thailand Ltd.
100. Form 5471 Quiksilver Roxy Korea Ltd.
101. Form 5471 DC Shoes (NZ) Limited
102. Form 5471 DC Shoes (Hong Kong) Limited
103. Form 5471 DC (Shanghai) Commercial Co. Ltd.
104. Form 5471 Quiksilver Foundation Australia Pty Ltd.

Corp Ops Group

105. Form 8858 Meribel SAS
106. Form 8858 Pilot S.A.S.
107. Form 5471 QS Holdings SARL
108. Form 8858 Quiksilver Deluxe SARL
109. Form 5471 Mountain & Wave SARL
110. Form 8858 Biarritz Holdings SARL
111. Form 8858 54th Street Holdings SARL
112. Form 8858 Quiksilver Canada Corp.
113. Form 8858 QS Retail Canada Corp.

114. Form 5471 Chloelys Investment Ltd.
115. Form 5471 Boardriders SA
116. Form 5471 Quiksilver Greater China, Ltd.
117. Form 5471 QS Asia Sourcing Ltd.
118. Form 5471 Quiksilver Asia Sourcing (Shanghai) Co. Ltd
119. Form 8858 QS Industria E Comercio De Artigos Esportivos LTDA
120. Form 5471 Quiksilver Mexico S. de R.L. de C.V.
121. Form 5471 Consultoria En Ventas Gama, S. De R.L. De C.V.
122. Form 5471 Quiksilver Comercial, S. De R.L. De C.V.

## Other Form

123. Form 5713, International Boycott Report

**Exhibit B**
**Quiksilver, Inc.**
**Listing of Specific Review Procedures to be performed:**

1. Reference and reconcile taxable income and the balance sheet reported in the returns to the income and balance sheet reported by Client on Client's financial statements.

2. Compare prior year return with current year return.

3. Read supporting statements and schedules.

4. Read the provision to return reconciliation.

5. Read elections made for the year. Deloitte Tax will not determine if all potential elections are included in the returns.

6. Read disclosure of transactions identified by Client and provided to Deloitte Tax.

7. Read disclosure of uncertain tax positions identified by Client as reflected on Schedule UTP, Uncertain Tax Positions. Deloitte Tax will not determine if all potential uncertain tax positions are reported on Schedule UTP.

8. Analyze book/tax differences (M-1's or M-3's) for reasonableness.

   (a). With respect to fixed assets and the related depreciation M-1 or M-3, the scope of Services is limited to a "reasonableness" check of schedules, which reconcile to the prior year return. Deloitte Tax will not perform a detailed analysis of the depreciation schedules.

9. Analyze federal and state tax credit calculations for reasonableness. Deloitte Tax will not analyze or verify supporting data.

10. Read tax credit and net operating loss carry forward schedules.

11. Analyze foreign tax credit calculation for reasonableness. Deloitte Tax will not analyze items such as earnings and profits calculations of the foreign entities.

12. Read Forms 5471, Information Return of U.S. Persons with Respect to Certain Foreign Corporations (as listed in Exhibit A), disclosures. Deloitte Tax will not analyze and verify supporting data or include the determination of earnings and profits of controlled foreign subsidiaries.

13. Analyze any new or changed tax accounting methods.

14. Discuss any significant or unusual transactions that occurred during the year.

15. Upon completion of our review procedures we expect to sign the federal and state income tax returns.

Exhibit B: Quiksilver, Inc.
Listing of Specific Review Procedures to be performed
Page 2

16. Input tax information prepared by the Client into tax return processing software.

17. Assist Client in converting Client's tax return data and related PDF files into an electronic XML file package for transmission by the Client to the IRS and applicable states pursuant to IRS rules and guidelines.

18. Analyze Client's return and supporting statements/attachments in an effort to assist Client in its compliance with the IRS electronic filing requirements.

19. Review any electronic filing errors generated by the Client's licensed software or the IRS. Assist Client in modifying tax return information and as appropriate recreate the XML file package, as necessary, for transmission by the Client to the IRS and applicable states pursuant to IRS rules and guidelines.

**The procedures that Deloitte Tax specifically will not perform are:**

1. Deloitte Tax will not perform a detailed analysis of Client uniform cost capitalization ("UNICAP") calculation.

2. Deloitte Tax will not analyze the regular tax, alternative minimum tax and adjusted current earnings depreciation calculations. Deloitte Tax will rely on Client depreciation schedules.

3. Deloitte Tax will not analyze your state and city filing requirement in the United States.

4. Deloitte Tax will not analyze your transfer pricing.

5. Deloitte Tax will not analyze Client Workpapers supporting state apportionment.

6. Deloitte Tax will not analyze or verify any information on Client's Forms 5471 or 8858.

# DELOITTE TAX LLP GENERAL BUSINESS TERMS

1. **Services.** It is understood and agreed that services (the "Services") provided by Deloitte Tax (as defined in paragraph 12 below) under the engagement letter to which these terms are attached (the "Engagement Letter") may include advice and recommendations, but all decisions in connection with the implementation of such advice and recommendations shall be the responsibility of, and made by, the Client. For purposes of these terms and the Engagement Letter, the "Client" shall mean **Quiksilver, Inc.** and its subsidiaries and/or affiliates. **Quiksilver, Inc.** represents and warrants that it has the power and authority to execute the Engagement Letter on behalf of, and to bind, itself and its subsidiaries and/or its affiliates.

2. **Payment of Invoices.** Deloitte Tax's invoices are due within thirty (30) days of the invoice date. Without limiting its rights or remedies, Deloitte Tax shall have the right to halt or terminate the Services entirely if payment is not received within thirty (30) days of the invoice date. The Client shall be responsible for all taxes imposed on the Services or on the transaction, other than Deloitte Tax's income taxes imposed on a net basis or by employment withholding, and other than taxes imposed on Deloitte Tax's property.

3. **Term.** Unless terminated sooner in accordance with its terms, this engagement shall terminate on the completion of the Services. This engagement may be terminated by either party at any time, with or without cause, by giving written notice to the other party not less than thirty (30) days before the effective date of termination; provided that, in the event of a termination for cause, the breaching party shall have the right to cure the breach within the notice period. Deloitte Tax may terminate this engagement upon written notice to the Client if Deloitte Tax determines that (a) a governmental, regulatory or professional entity (including, without limitation, the American Institute of Certified Public Accountants, the Public Company Accounting Oversight Board (the "PCAOB") or the Securities and Exchange Commission) or an entity having the force of law has introduced a new, or modified an existing, law, rule, regulation, interpretation or decision, the result of which would render Deloitte Tax's performance of any part of the engagement illegal or otherwise unlawful or in conflict with independence or professional rules, or (b) circumstances change (including, without limitation, changes in ownership of the Client or any of its affiliates) such that Deloitte Tax's performance of any part of the engagement would be illegal or otherwise unlawful or in conflict with independence or professional rules. Upon termination of the engagement, the Client will compensate Deloitte Tax under the terms of the Engagement Letter for the Services performed and expenses incurred through the effective date of termination.

4. **Ownership of Deloitte Tax Property.** To the extent that Deloitte Tax utilizes any of its property (whether tangible or intangible) in connection with this engagement, such property shall remain the property of Deloitte Tax, and the Client shall not acquire any right or interest in such property. Deloitte Tax shall have ownership (including, without limitation, copyright ownership) and all rights to use and disclose its ideas, concepts, know-how, methods, techniques, processes and skills, and adaptations thereof in conducting its business, and the Client shall not assert or cause to be asserted against Deloitte Tax or its personnel any prohibition or restraint from so doing. In the course of performing the Services, Deloitte Tax may provide to Client, solely for its convenience, spread sheets, models or other software tools. Such items are provided to the Client in "as is" condition without warranty of any kind and Deloitte Tax assumes no responsibility for results obtained by anyone other than Deloitte Tax from the use of such items.

5. **Limitation on Warranties.** THIS IS A SERVICES ENGAGEMENT. DELOITTE TAX WARRANTS THAT IT SHALL PERFORM THE SERVICES IN GOOD FAITH AND WITH DUE PROFESSIONAL CARE. DELOITTE TAX DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. THE CLIENT'S EXCLUSIVE REMEDY FOR ANY BREACH OF THIS WARRANTY SHALL BE FOR DELOITTE TAX, UPON RECEIPT OF WRITTEN NOTICE, TO USE DILIGENT EFFORTS TO CURE SUCH BREACH, OR, FAILING ANY CURE IN A REASONABLE PERIOD OF TIME, THE RETURN OF PROFESSIONAL

FEES PAID TO DELOITTE TAX HEREUNDER WITH RESPECT TO THE SERVICES GIVING RISE TO SUCH BREACH.

6. **Limitation on Damages.** The Client agrees that Deloitte Tax, its subcontractors and their respective personnel shall not be liable to the Client for any claims, liabilities or expenses relating to this engagement ("Claims") for an aggregate amount in excess of the fees paid by the Client to Deloitte Tax pursuant to this engagement, except to the extent finally judicially determined to have resulted primarily from the bad faith or intentional misconduct of Deloitte Tax or its subcontractors. In no event shall Deloitte Tax, its subcontractors or their respective personnel be liable for any loss of use, data, goodwill, revenues or profits (whether or not deemed to constitute direct Claims) or any consequential, special, indirect, incidental, punitive or exemplary loss, damage or expense relating to this engagement. In circumstances where all or any portion of the provisions of this paragraph are finally judicially determined to be unavailable, the aggregate liability of Deloitte Tax, its subcontractors and their respective personnel for any Claim shall not exceed an amount which is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim.

7. **Client Responsibilities.** The Client shall cooperate with Deloitte Tax in the performance by Deloitte Tax of the Services, including, without limitation, providing Deloitte Tax with reasonable facilities and timely access to data, information and personnel of the Client. The Client shall be responsible for the performance of its personnel and agents and for the accuracy and completeness of all data and information provided to Deloitte Tax for purposes of the performance by Deloitte Tax of the Services. The Client acknowledges and agrees that Deloitte Tax's performance is dependent upon the timely and effective satisfaction of the Client's responsibilities hereunder and timely decisions and approvals of the Client in connection with the Services. Deloitte Tax shall be entitled to rely on all decisions and approvals of the Client. The Client shall be solely responsible for, among other things: (a) making all management decisions and performing all management functions; (b) designating an individual who possesses suitable skill, knowledge, and/or experience, preferably within senior management, to oversee the Services; (c) evaluating the adequacy and results of the Services performed; (d) accepting responsibility for the results of the Services; and (e) establishing and maintaining internal controls, including, without limitation, monitoring ongoing activities.

8. **Force Majeure.** Except for the payment of money, neither party shall be liable for any delays or nonperformance directly or indirectly resulting from circumstances or causes beyond its reasonable control, including, without limitation, acts or omissions or the failure to cooperate by the other party (including, without limitation, entities or individuals under its control or any of their respective officers, directors, employees, other personnel and agents), acts or omissions or the failure to cooperate by any third party, fire, epidemic or other casualty, act of God, strike or labor dispute, war or other violence or any law, order or requirement of any governmental agency or authority.

9. **Limitation on Actions.** No action, regardless of form, relating to this engagement, may be brought by either party more than one year after the cause of action has accrued, except that an action for nonpayment may be brought by a party not later than one year following the date of the last payment due to the party bringing such action.

10. **Independent Contractor.** It is understood and agreed that each party hereto is an independent contractor and that neither party is, nor shall be considered to be, the other's agent, distributor, partner, fiduciary, joint venturer, co-owner or representative. Neither party shall act or represent itself, directly or by implication, in any such capacity or in any manner assume or create any obligation on behalf of, or in the name of, the other.

11. **Confidentiality.** To the extent that, in connection with this engagement, Deloitte Tax comes into possession of any tax return information, trade secrets or other proprietary or confidential information of the Client, Deloitte Tax will not disclose such information to any third party without the Client's consent. The Client hereby consents to Deloitte Tax disclosing such information (a) to any affiliate or related entity (including its partners, principals and employees), or to other subcontractors, in each case, whether located within or outside of the United States, that are providing Services in connection with this engagement and that have agreed to be bound by confidentiality obligations similar to those in this paragraph 11; (b) as may be required by law, regulation, judicial or

administrative process, or in accordance with applicable professional standards, or in connection with litigation pertaining hereto; or (c) to the extent such information (i) shall have otherwise become publicly available (including, without limitation, any information filed with any governmental agency and available to the public) other than as the result of a disclosure by Deloitte Tax in breach hereof, (ii) becomes available to Deloitte Tax on a nonconfidential basis from a source other than the Client which Deloitte Tax believes is not prohibited from disclosing such information to Deloitte Tax by obligation to the Client, (iii) is known by Deloitte Tax prior to its receipt from the Client without any obligation of confidentiality with respect thereto, or (iv) is developed by Deloitte Tax independently of any disclosures made by the Client to Deloitte Tax of such information. In satisfying its obligations under this paragraph, Deloitte Tax shall maintain the Client's trade secrets and proprietary or confidential information in confidence using at least the same degree of care as it employs in maintaining in confidence its own trade secrets and proprietary or confidential information, but in no event less than a reasonable degree of care. Notwithstanding anything to the contrary herein, the Client acknowledges that Deloitte Tax, in connection with performing the Services, may develop or acquire experience, skills, knowledge, and ideas that are retained in the unaided memory of its personnel. The Client acknowledges and agrees that Deloitte Tax may use and disclose such experience, skills, knowledge and ideas.

12. **Survival and Interpretation.** The agreements and undertakings of the Client contained in the Engagement Letter, together with all paragraphs herein relating to payment of invoices, ownership of Deloitte Tax property, limitations on warranties, limitations on damages, limitations on actions, confidentiality, survival and interpretation, assignment and subcontracting, waiver of jury trial, indemnification, governing law, venue, jurisdiction and severability, information and data, and third parties and internal use shall survive the expiration or termination of this engagement. For purposes of these terms, Deloitte Tax shall mean Deloitte Tax LLP and Deloitte Tax Products Company LLC, one of its subsidiaries. The Client acknowledges and agrees that no affiliated or related entity of Deloitte Tax, whether or not acting as a subcontractor (or such entity's personnel) shall have any liability hereunder to the Client or any other person, and the Client will not bring any action against any such affiliated or related entity of Deloitte Tax (or such entity's personnel) in connection with this engagement. Without limiting the foregoing, affiliated and related entities of Deloitte Tax are intended third-party beneficiaries of these terms. Any affiliated or related entity of Deloitte Tax may in its own right enforce such terms, agreements and undertakings. **The provisions of paragraphs 5, 6, 9, 12, 14, 15, 16 and 18, hereof shall apply to the fullest extent of the law, whether in contract, statute, tort (such as *negligence*), or otherwise, notwithstanding the failure of the essential purpose of any remedy.**

13. **Assignment and Subcontracting.** Except as provided below, neither party may assign, transfer or delegate any of its rights or obligations hereunder (including, without limitation, interests or Claims) without the prior written consent of the other party. The Client hereby consents to Deloitte Tax assigning or subcontracting any of Deloitte Tax's rights or obligations hereunder to (a) any affiliate or related entity, whether located within or outside of the United States, or (b) any entity which acquires all or a substantial part of the assets or business of Deloitte Tax. Services performed by Deloitte Tax subcontractors shall be invoiced as professional fees on the same basis as Services performed by Deloitte Tax personnel, unless otherwise agreed.

14. **Waiver of Jury Trial. DELOITTE TAX AND THE CLIENT HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM RELATING TO THIS ENGAGEMENT.**

15. **Indemnification.** The Client shall indemnify and hold harmless Deloitte Tax, its subcontractors and their respective personnel from all Claims, except to the extent finally judicially determined to have resulted primarily from the bad faith or intentional misconduct of Deloitte Tax or its subcontractors. In circumstances where all or any portion of the provisions of this paragraph are finally determined to be unavailable, the aggregate liability of Deloitte Tax, its subcontractors and their respective personnel for any Claim shall not exceed an amount which is proportional to the relative fault that their conduct bears to all other conduct giving rise to such Claim.

16. **Governing Law, Venue, Jurisdiction and Severability.** These terms, the Engagement Letter, including exhibits, and all matters relating to this engagement shall be governed by, and construed in accordance with, the laws of the State of New York (without giving effect to the choice of law principles thereof). Any action based on or arising out of this engagement or the Services provided or to be provided hereunder shall be brought and maintained exclusively in any court of the State of New York or any federal court of the United States, in each case located in New York County, the State of New York. Each of the parties hereby expressly and irrevocably submits to the jurisdiction of such courts for the purposes of any such action and expressly and irrevocably waives, to the fullest extent permitted by law, any objection which it may have or hereafter may have to the laying of venue of any such action brought in any such court and any claim that any such action has been brought in an inconvenient forum. If any provision of such terms or the Engagement Letter is found by a court of competent jurisdiction to be unenforceable, such provision shall not affect the other provisions, but such unenforceable provision shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein.

17. **Information and Data.** Deloitte Tax shall be entitled to assume, without independent verification, the accuracy of all representations, assumptions, information and data that the Client and its representatives provide to Deloitte Tax. All assumptions, representations, information and data to be supplied by the Client and its representatives will be complete and accurate to the best of the Client's knowledge. Deloitte Tax may use information and data furnished by others; however, Deloitte Tax shall not be responsible for, and Deloitte Tax shall provide no assurance regarding, the accuracy of any such information or data. Except as specifically agreed to in writing, Deloitte Tax shall not provide advice regarding the financial accounting treatment of any transaction implemented from the Services and will not assume any responsibility for any financial reporting with respect to the Services. The Client shall be responsible for all financial information and statements provided by or on behalf of the Client with respect to any of the Services. Deloitte Tax shall have no responsibility to address any legal matters or questions of law, other than tax law.

18. **Third Parties and Internal Use.** Deloitte Tax acknowledges that Deloitte Tax has not placed any limitations on the Client's disclosure of the tax treatment or tax structure associated with the tax Services or transactions described in the Engagement Letter. Nothing in this paragraph shall be construed as limiting or restricting disclosure of the tax treatment or tax structure of the transaction as described in Rule 3501(c)(i) of PCAOB Release 2005-014 or Internal Revenue Code ("IRC") sections 6011 and 6111 and related Internal Revenue Service ("IRS") guidance. The Client acknowledges that none of its other advisors have imposed or will impose any conditions of confidentiality with respect to the tax treatment or tax structure associated with the tax Services or transactions described in the Engagement Letter. All Services shall be solely for the Client's informational purposes and internal use, and this engagement does not create privity between Deloitte Tax and any person or party other than the Client ("third party"). This engagement is not intended for the express or implied benefit of any third party. Unless otherwise agreed to in writing by Deloitte Tax, no third party is entitled to rely, in any manner or for any purpose, on the advice, opinions, reports or other Services of Deloitte Tax. In the event of any unauthorized reliance, the Client agrees to indemnify and hold harmless Deloitte Tax and its personnel from all third-party claims, liabilities, costs and expenses.

19. **Certain Tax Disclosures and Reporting.** In accordance with IRC sections 6111 and 6112, Deloitte Tax may be required to report to the IRS or certain state tax authorities the Services including without limitation any related tax transaction(s) described in the Engagement Letter as well as the Client's participation therein. In addition, separate and apart from any reporting by Deloitte Tax, the Client, in accordance with IRC section 6011, may also be required to disclose to a taxing authority its participation in one or more transactions which are the subject of this Engagement Letter. The determination of whether, when and to what extent Deloitte Tax and the Client should comply with their respective federal or state "tax shelter" reporting requirements will be made exclusively and respectively by Deloitte Tax and the Client. Deloitte Tax and the Client further agree that (i) any liability for fines or penalties or any other consequences resulting from non-compliance by one party with applicable tax disclosure or reporting rules will be borne or incurred exclusively by the non-compliant party, and (ii) any request by the Client of Deloitte Tax for services in identifying or otherwise consulting on transactions subject to IRC section 6011 or corresponding state law and the reporting or disclosing thereof will be the subject of a separate engagement letter.

20.    **Accountant / Client Privilege – IRC §7525.** The Client should be aware that certain information discussed with personnel of Deloitte Tax who are Federally Authorized Tax Practitioners or their agents for the purpose of obtaining Deloitte Tax's advice on tax matters may be privileged from disclosure in any non-criminal tax matters before the IRS and in non-criminal proceedings in Federal court that stem from matters before the IRS, if the United States is a party to the proceedings. The Client is solely responsible for managing the recognition, establishment and maintenance of the confidentiality privilege. The Client must notify Deloitte Tax if the Client wishes to invoke the confidentiality privilege, and Deloitte Tax will cooperate with the Client's reasonable instructions relating to the confidentiality privilege. Circumstances may arise under which the Client may wish to divulge or have Deloitte Tax divulge privileged information to other parties. The Client should be aware that such disclosure might result in a waiver of the confidentiality privilege. Accordingly, if the Client wishes Deloitte Tax to divulge such information, Deloitte Tax shall require the Client to provide Deloitte Tax in advance with written authority to make such disclosures. In addition, if it is ultimately determined that a significant purpose of the tax matter was to avoid or evade any U.S. federal income tax, the Client should be aware that the confidentiality privilege under §7525 of the Internal Revenue Code will not apply to any communications between the Client and Deloitte Tax.

In the event that Deloitte Tax receives a request from a third party (including a subpoena, summons or discovery demand in litigation) calling for the production of privileged information, Deloitte Tax will promptly notify the Client and will follow the Client's reasonable instructions regarding any third party requests or needs for such material before Deloitte Tax would disclose same as may be required under applicable law or rules. The Client agrees to hold Deloitte Tax harmless from, and also assumes responsibility for, any expenses (including attorney's fees, court costs, costs incurred by outside advisors and any other cost imposed whether by way of penalty or otherwise) incurred by Deloitte Tax as a result of the Client's assertion of the confidentiality privilege or the Client's direction to Deloitte Tax to assert the confidentiality privilege on behalf of the Client.

## Deloitte Tax Privacy Notice
## Quiksilver, Inc.

**Introduction**

This privacy notice applies to clients who obtain services from Deloitte Tax. Deloitte Tax refers to Deloitte Tax LLP as defined in paragraph 12 of the General Business Terms.

**Information Collection**

Deloitte Tax may collect personally identifiable information ("PII") from you such as:
- Home address
- Home telephone number
- Date of birth
- Government identifiers (such as social security number)

In connection with our client acceptance process, Deloitte Tax may collect PII about you that may be considered sensitive. This could include, for example, history of any criminal activity.

Deloitte Tax may also collect PII about you from, among other places:
- Information you provide directly to us
- Information regarding the services that Deloitte Tax provides or has previously provided to you
- Information Deloitte Tax receives from our affiliated entities or third parties relating to the establishment of our relationship or the provision of services to you

This information can be received in any manner, including in in-person discussions, telephone conversations, and electronic or other written communications.

**Information Use**

Deloitte Tax collects PII about you to:
- Establish or maintain our relationship with you
- Provide you with services you have requested
- Keep you informed of services we think may be of interest to you

Without PII, Deloitte Tax may be unable to provide you with the services you have requested.

**Disclosure of Information**

Deloitte Tax may share PII about you with others as permitted by contractual agreement or as required by law, such as:
- Our affiliates
- Third parties in connection with the provision of services to you
- Government entities and regulatory bodies
- Those with whom you have requested us to share information

Deloitte Tax requires third parties who perform services for us to agree to treat PII about you confidentially and securely.

Unless restricted by law, regulation, contract or professional standards, Deloitte Tax may transfer PII about you outside the United States to other countries for the purposes described in this privacy notice.

Deloitte Tax will provide notice and obtain your consent before:
- Sharing PII about you with an unaffiliated third party who is not performing services for us, except if such sharing is otherwise permitted by this privacy notice, or
- Using sensitive PII about you for purposes not described in this privacy notice

Deloitte Tax does not sell or lease PII about you to others.

**Access**

You may request access to the PII that Deloitte Tax has about you. You may also request the correction, amendment or deletion of PII about you that is inaccurate. Deloitte Tax will treat requests for access, correction, amendment or deletion of PII about you in accordance with its internal policies and applicable legal requirements.

**Information Security**

Deloitte Tax maintains reasonable physical, administrative and technical safeguards to protect PII from loss, misuse, or unauthorized access, disclosure, alteration or destruction. Our personnel and the personnel of our affiliates are provided access to PII about you only if they have a need to know the information in connection with a legitimate business purpose, such as (i) the provision of services to you or (ii) to help identify other services that Deloitte Tax and its affiliates offer that may be of interest or use to you.

**Changes to This Privacy Notice**

Deloitte Tax reserves the right to change this privacy notice. Deloitte Tax will provide you with a revised privacy notice that reflects such changes as required by law.

**Questions**

If you have any questions or concerns regarding this notice, please contact your engagement partner/principal/director.