IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
: 
In re: : Chapter 11
:
QUIKSILVER, INC., *et al.*, : Case No. 15-11880 (BLS)
:
Debtors.[1] : Jointly Administered
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x Related Docket Nos. 15, 83, 286, 287, 290

**FINAL ORDER GRANTING DEBTORS' MOTION FOR ORDER
PURSUANT TO BANKRUPTCY CODE SECTION 105(a), 363(b), 1107(a), AND 1108
AND BANKRUPTCY RULES 6003 AND 6004 AUTHORIZING
PAYMENT OF CRITICAL VENDORS**

Upon the motion (the "Motion")[2] of the Debtors for interim and final orders, pursuant to sections 105(a), 363(b), 1107(a), and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing, but not directing, the Debtors (i) to pay, in the ordinary course of business, the prepetition claims of certain critical vendors and (ii) directing financial institutions to honor all related checks and electronic payment requests; and upon the First Day Declaration; and upon the evidence submitted or proffered at the first interim hearing to consider the relief requested in the Motion held on September 10, 2015 (the "First Interim Hearing") and the second interim hearing to consider the relief requested in the Motion held on October 15, 2015 (the "Second Interim Hearing"); and the Court having entered the *Interim Order Granting Debtors' Motion for Order Pursuant to Bankruptcy Code Sections 105(a), 363(b), 1107(a), and*

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

*1108 and Bankruptcy Rules 6003 and 6004 Authorizing Payment of Critical Vendors* (the "First Interim Order"); and due and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and it appearing that the relief requested by the Motion is in the best interests of the Debtors, their estates, their creditors, their stakeholders, and other parties in interest; and after due deliberation thereon, and sufficient cause appearing therefor, it is hereby

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

    A. On September 10, 2015, the Court held the First Interim Hearing. Upon the arguments during the First Interim Hearing, the Motion, and the First Day Declaration, the Court found that the Debtors had established that cause existed to authorize certain payments on account of the Critical Vendor Claims under, among other things, the doctrine of necessity and the applicable provisions of the Bankruptcy Code. The Court provided authorization for the Debtors to make certain payments on account of Critical Vendor Claims, with such payments not to exceed $30 million in the aggregate.

    B. On October 15, 2015, the Court held the Second Interim Hearing. During the Second Interim Hearing, the Debtors provided further evidence, including testimony, with respect to specific classifications of Critical Vendors, including vendors within the "tier 1" classification (the "Tier 1 Vendors")[3] and vendors within the "tier 2" classification (the "Tier 2 Vendors")[4]. The Court provided the Debtors with further authority to make payments on account of Critical Vendor Claims, with such payments not to exceed an incremental $10

---

[3]   For the avoidance of doubt, Tier 1 Vendors shall include merchandise vendors who will supply Spring 2016 products, and shall also include certain non-merchandise vendors.

[4]   For the avoidance of doubt, apart from the "tier 2" classification, the definition of "Tier 2 Vendors" shall also include Tier 1 Vendors who will not supply Spring 2016 products."

million, in the aggregate, in addition to the previously authorized amounts. The Court provided such authorization without prejudice to the Debtors' ability to request further amounts.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:**

    1.    The Motion is GRANTED to the extent set forth herein.

    2.    The Debtors are hereby authorized but not required to pay, without further order of the Court, the Critical Vendor Claims in an amount not to exceed, in the aggregate, $55 million (inclusive of any amounts paid pursuant to the Interim Order and/or pursuant to this Court's ruling during the Second Interim Hearing) (the "Aggregate Permitted Amount"), as follows:

        (a)    The Debtors shall allocate $9.7 million of the Aggregate Permitted Amount (the "Tier 1 Amount") solely to pay Tier 1 Vendors. For the avoidance of doubt, the Debtors are hereby authorized but not required to distribute the allocated funds to the Tier 1 Vendors without further order of this Court and without consent from any other party.

        (b)    The Debtors shall allocate $5.3 million of the Aggregate Permitted Amount (the "Tier 2 Amount") solely to pay Tier 2 Vendors; provided, however, that the Debtors are authorized to make such payments only with the consent of the Official Committee of Unsecured Creditors as to both (i) the amount of such payments and (ii) the specific Critical Vendors to be paid.

    3.    The Debtors shall undertake appropriate efforts to cause the Critical Vendors to enter into Trade Agreements with the Debtors substantially in the form of the letter annexed as Exhibit A to the Motion as a condition to payment of their Critical Vendor Claims.

    4.    Except as otherwise set forth herein, the Debtors are authorized to make payment on account of Critical Vendor Claims in the absence of a Trade Agreement after the Debtors have undertaken appropriate efforts to cause the Critical Vendor to execute a Trade Agreement and if the Debtors determine that failure to pay the Critical Vendor Claim presents a

material risk of irreparable harm to the Debtors' business and the Debtors and the Critical Vendor mutually agree on trade terms.

5. If a Critical Vendor refuses to supply goods and/or services to the Debtors on Temporary Trade Terms following receipt of payment on its Critical Vendor Claim or fails to comply with any Trade Agreement entered into by such Critical Vendor and the Debtors, the Debtors may, without further order of the Court, (i) declare that any Trade Agreement between the Critical Vendor and the Debtors is terminated and (ii) declare that payments made to the Critical Vendor on account of its Critical Vendor Claim be deemed to have been made in payment of then-outstanding postpetition claims of such Critical Vendor without further order of this Court or action by any person or entity. In the event that such events occur, a Critical Vendor shall then immediately repay to the Debtors any payment made to it on account of its Critical Vendor Claim to the extent that payments on account of such Critical Vendor Claim exceed the postpetition claims of such Critical Vendor then outstanding without giving effect to any rights of setoff, claims, provision for payment of reclamation or section 503(b)(9) claims, or otherwise.

6. The Debtors may reinstate a terminated Trade Agreement if (i) such determination is subsequently reversed by this Court after notice and a hearing following a motion by the Critical Vendor, for good cause shown, that the determination was materially incorrect; (ii) the underlying default under the Trade Agreement was fully cured by the Critical Vendor not later than five (5) business days following the Debtors' notification to the Critical Vendor that a default had occurred; or (iii) the Debtors, in their discretion, reach a favorable alternative agreement with the Critical Vendor.

7. All applicable banks and other financial institutions are hereby authorized, when requested by the Debtors, to receive, process, honor, and pay all prepetition and postpetition checks, drafts and other forms of payment, including fund transfers, on account of the Critical Vendor Claims, whether such checks or other requests were submitted prior to or after the Petition Date.

8. The Debtors' banks and other financial institutions shall rely on the direction and representations of the Debtors as to which checks and fund transfers should be honored and paid pursuant to this order, and any such bank shall not have any liability to any party for relying on such direction and representations by the Debtors as provided for in this order or for inadvertently honoring or dishonoring any check or fund transfer.

9. The Debtors' banks shall, at the direction of the Debtors, receive, process, honor and pay all prepetition and postpetition checks and fund transfers on account of the Critical Vendor Claims that had not been honored and paid as of the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments and any such bank shall not have any liability to any party for relying on such direction by the Debtors as provided for in this order or for inadvertently failing to follow such direction.

10. To the extent the Debtors have not yet sought to remit payment on account of the Critical Vendor Claims, the Debtors are authorized, but not directed, to issue checks or provide for other means of payment of the Critical Vendor Claims.

11. The Debtors shall be and hereby are authorized to issue new postpetition checks or effect new postpetition fund transfers on account of the Critical Vendor Claims to replace any prepetition checks or fund transfer requests that may be dishonored or rejected.

12. Notwithstanding anything to the contrary contained herein, the relief granted in this order and any payment to be made hereunder shall be subject to the terms of any orders approving entry into debtor-in-possession financing and authorizing the use of cash collateral approved by this Court in these chapter 11 cases (including with respect to any budgets or other covenants governing or relating to such debtor-in-possession financing and/or use of cash collateral), and to the extent there is any inconsistency between the terms of such orders and any action taken or proposed to be taken hereunder, the terms of such orders shall control.

13. The provisions contained herein shall not be construed to limit, or in any way affect, the Debtors' or the Committee's ability to contest any claims, including any Critical Vendor Claims, on any ground permitted by applicable law, and neither the provisions contained herein, nor any actions or payments made by the Debtors pursuant to this order, shall be deemed an admission as to the validity of the underlying obligation or a waiver of any rights the Debtors or the Committee may have to subsequently dispute such obligation on any ground that applicable law permits.

14. Nothing in this order supersedes or shall be deemed to supersede any limitations, restrictions, covenants, or other obligations of the Debtors under any interim or final order authorizing and approving any postpetition debtor-in-possession financing.

15. Nothing in this order or the Motion shall be deemed to constitute postpetition assumption or adoption of any agreement under Bankruptcy Code section 365. Notwithstanding the relief granted herein and any actions taken hereunder, nothing herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any person.

16. The Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested is necessary to avoid immediate and irreparable harm.

17. Notwithstanding Bankruptcy Rule 6004(h), this order shall be effective and enforceable immediately upon entry hereof.

18. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this order.

Dated: Wilmington, Delaware
       Oct 28, 2015

_____
HONORABLE BRENDAN L. SHANNON
CHIEF UNITED STATES BANKRUPTCY JUDGE