## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:

QUIKSILVER, INC., *et al.*,

                       Debtors.[1]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

:   Chapter 11
:
:
:   Case No. 15-11880 (BLS)
:
:   Jointly Administered
:
:   **Hrg. Date: Dec. 1, 2015 at 10:30 a.m. (Eastern)**
:   **Obj. Due: Nov. 30, 2015 at 12:00 p.m. (Eastern)**

## DEBTORS' MOTION FOR ENTRY OF AN ORDER (A) APPROVING THE ADEQUACY OF THE DEBTORS' DISCLOSURE STATEMENT, (B) APPROVING SOLICITATION AND NOTICE PROCEDURES WITH RESPECT TO CONFIRMATION OF THE DEBTORS' PROPOSED PLAN OF REORGANIZATION, (C) APPROVING THE FORM OF VARIOUS BALLOTS AND NOTICES IN CONNECTION THEREWITH, AND (D) SCHEDULING CERTAIN DATES WITH RESPECT THERETO

Quiksilver, Inc. ("ZQK") and certain of its affiliates, the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors" and, together with their non-Debtor affiliates, the "Company"), hereby move (the "Motion"), for entry of an order, substantially in the form annexed hereto, (a) approving the adequacy of the *Disclosure Statement With Respect to the Joint Chapter 11 Plan of Reorganization of Quiksilver, Inc. and its Affiliated Debtors and Debtors in Possession* (as may be amended from time to time and including all exhibits and supplements thereto, the "Disclosure Statement") filed in support of the *Joint Chapter 11 Plan of Reorganization of Quiksilver, Inc. and its Affiliated Debtors and Debtors in Possession* (as may be amended from time to time and including all exhibits and supplements, the "Plan"); (b) approving solicitation and notice procedures with respect to confirmation of the

---

[1]   The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

Debtors' proposed Plan; (c) approving the forms of various ballots and notices in connection therewith; and (d) scheduling certain dates with respect thereto.  In support of this Motion, the Debtors respectfully state as follows.[2]

## PRELIMINARY STATEMENT

1.    The Debtors seek this Court's approval of (i) the adequacy of information in their Disclosure Statement pursuant to section 1125(b) of the Bankruptcy Code and (ii) related solicitation procedures, so that they may begin soliciting votes on the Plan.  Additionally, as set forth below, the Debtors seek this Court's approval of a proposed schedule to allow for the Debtors' pursuit of the Plan's confirmation consistent with the milestones (as amended from time to time by order of the Court or agreement of the parties, the "DIP Milestones") under the Debtors' post-petition debtor-in-possession financing facilities (the "DIP Facilities") and that certain Plan Sponsor Agreement, dated as of September 9, 2015 (the "Plan Sponsor Agreement"), between the Debtors and certain funds managed by affiliates of Oaktree Capital Management (collectively, "Oaktree" or the "Plan Sponsor").

2.    Pursuant to the Plan Sponsor Agreement, the Plan is supported and sponsored by Oaktree, which holds more than two-thirds of the Debtors' prepetition senior secured notes (the "Secured Notes").  The Plan is the product of extensive negotiations between the Debtors and Oaktree and provides for a substantial deleveraging of the Company's prepetition capital structure through a combination of new debt and equity issuances to certain creditors.

---

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Disclosure Statement, Plan, or Solicitation Procedures (as defined below), as applicable.

3.      In particular, pursuant to the Plan, the Debtors will enter into a new $120 million asset-based revolving credit facility (the "Exit Facility").  The Debtors' existing Secured Notes will be converted to new common stock of ZQK (the "New Quiksilver Common Stock") and their existing senior unsecured notes (the "Unsecured Notes" and together with the Secured Notes, the "Prepetition Notes") will receive their pro rata share of the $7.5 Unsecured Cash Consideration, along with other general unsecured creditors.  Upon the Effective Date, the Prepetition Notes, which have a total principal amount of over $500 million, will be cancelled.

4.      In addition, concurrent with the solicitation described herein, the Debtors will offer Eligible Holders of the Secured Notes who vote in favor of the Plan and do not opt out of the third-party release in the Plan, and their Eligible Affiliates, the right to participate in two rights offerings (the "Exit Rights Offering" and the "Euro Notes Rights Offering" and, together, the "Rights Offerings"),[3] each of which will be backstopped by the Plan Sponsor.  Pursuant to the Exit Rights Offering, each Eligible Holder of Secured Notes will be given the opportunity to exercise subscription rights for the purchase of up to $122.5 million of New Quiksilver Common Stock.  Pursuant to the Euro Notes Rights Offering, and each Eligible Holder of Secured Notes will be given the opportunity to exercise subscription rights for the purchase of up to €50 million of New Quiksilver Common Stock.  The proceeds of the Euro Notes Rights Offering will be used to effectuate an exchange offer (the "Euro Notes Exchange") for holders of the senior unsecured notes issued by a non-Debtor European affiliate and guaranteed by certain of the Debtors (the "Euro Notes"), the terms and conditions of which will be set forth in the Plan Supplement.

---

[3]    The procedures with respect to the Rights Offerings (the "Rights Offering Procedures"), including the election by which Eligible Holders of Secured Notes may participate in the Rights Offerings, are set forth in a separate motion (the "Rights Offering Motion"), filed concurrently herewith.

5.       As a result of the cancellation of the Prepetition Notes and the Euro Notes Exchange, the Reorganized Debtors will emerge from the Chapter 11 Cases with substantially less leverage and, due to the Exit Facility and the Rights Offerings, will have ample liquidity to repay their postpetition debtor-in-possession financing facilities (the "DIP Facilities"), satisfy Administrative and other Unimpaired Claims, fund the Unsecured Cash Consideration, and operate their global business post-emergence.

6.       In summary, the Debtors seek to capitalize on the momentum generated by entry into the Plan Support Agreement and the filing of the Chapter 11 Cases to pursue a confirmable Plan that positions the Company to emerge as a healthy and thriving enterprise on a go-forward basis.

7.       Consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, the Debtors also seek this Court's approval of the following timeline to pursue confirmation of the Plan in compliance with the DIP Milestones:

| PROPOSED TIMETABLE | |
|---|---|
| EVENT | DATE |
| Disclosure Statement Objection Deadline | November 30, 2015 at 12:00 p.m. (Eastern) |
| Disclosure Statement Hearing | December 1, 2015 at 10:30 a.m. (Eastern) |
| Voting Record Date | December 1, 2015 |
| Solicitation Mailing Deadline | December 7, 2015 |
| Claims Voting Objection Deadline | December 31, 2015 |
| Plan Supplements Filing Deadline | January 7, 2016 |
| Voting Deadline | January 14, 2016 at 4:00 p.m. (Eastern) |
| Plan Objection Deadline | January 14, 2016 at 4:00 p.m. (Eastern) |
| Confirmation Hearing | On or about January 25, 2016 |

## JURISDICTION AND VENUE

8.      This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of the case and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

9.      The statutory bases for the relief requested herein are sections 502, 1123(a), 1125, 1126, and 1128 of the Bankruptcy Code, Rules 2002, 3003, 3016, 3017, 3018, and 3020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3017-1 of the Local Bankruptcy Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules").

10.     Pursuant to Local Bankruptcy Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to the Motion if it is determined that this Court would lack Article III jurisdiction to enter such final order or judgment absent the consent of the parties.

## BACKGROUND

11.     On September 9, 2015 (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").  These Chapter 11 Cases are jointly administered.

12.     The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

13.     On September 22, 2015, the Office of the United States Trustee for the District of Delaware (the "United States Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee"). On September 28, 2015, the United States Trustee filed

an Amended Notice of Appointment of Creditors' Committee.  No trustee or examiner has been

appointed in the Debtors' Chapter 11 Cases.

14.    Quiksilver is one of the world's leading outdoor sports lifestyle

companies.  The Company designs, develops and distributes branded apparel, footwear,

accessories and related products.  The Company began operations in 1976 making boardshorts

for surfers in the United States under a license agreement with the *Quiksilver* brand founders in

Australia. Today, the Company's business is rooted in the strong heritage and authenticity of its

core brands, *Quiksilver*, *Roxy*, and *DC*, each of which caters to the casual, outdoor lifestyle

associated with surfing, skateboarding, snowboarding, and motocross, among other activities.

The Company's products are sold in over 115 countries through a wide range of distribution

points, including wholesale accounts (surf shops, skate shops, snow shops, sporting goods stores,

discount centers, specialty stores, select department stores, and licensed stores), Company-owned

retail stores, and its e-commerce websites.  The Debtors comprise each of the Company's U.S.

entities, including parent, ZQK, as well as QS Wholesale, Inc., QS Retail, Inc., DC Shoes, Inc.

and seven inactive entities.

15.    Additional factual background information regarding the Debtors,

including their business operations, their corporate and capital structure, and the events leading

to these Chapter 11 Cases, is set forth in detail in the Declaration of Andrew Bruenjes, Americas

Chief Financial Officer of Quiksilver, Inc., in Support of Chapter 11 Petitions and First Day

Pleadings [Docket No. 20].

## RELIEF REQUESTED

16.    By this Motion, the Debtors respectfully request that this Court enter an

order (the "Disclosure Statement Order"), in substantially the form attached hereto:

(a) approving the adequacy of the Disclosure Statement; (b) approving the solicitation

procedures, in substantially the form attached as <u>Exhibit 5</u> to the proposed Disclosure Statement Order (the "<u>Solicitation Procedures</u>"); (c) approving the forms of various ballots and notices in connection therewith; and (d) scheduling certain dates with respect thereto.[4]

**BASIS FOR RELIEF**

I.    **APPROVAL OF THE DISCLOSURE STATEMENT AND NOTICE OF THE DISCLOSURE STATEMENT HEARING**

    A.    **The "Adequate Information" Standard**

        17.    The Debtors seek to commence solicitation of acceptances of the Plan. Pursuant to section 1125 of the Bankruptcy Code, the proponent of a proposed chapter 11 plan must provide holders of impaired claims and interests entitled to vote on the plan "adequate information" regarding that plan.  Section 1125(a)(1) of the Bankruptcy Code states, in relevant part, as follows:

> '[A]dequate information' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan... .

11 U.S.C. § 1125(a)(1).

        18.    The primary purpose of a disclosure statement is to provide all material information that creditors and interest holders affected by a proposed plan need to make an informed decision whether to vote for or against the plan. See <u>Century Glove, Inc. v. First Am. Bank of N.Y.</u>, 860 F.2d 94, 100 (3rd Cir. 1988) ("§ 1125 seeks to guarantee a minimum amount

---

[4]    To the extent there is any inconsistency between this Motion and the Solicitation Procedures, the Solicitation Procedures shall govern.

of information to the creditor asked for its vote."); see also In re A. H. Robins Co., Inc., No. 98-1080, 1998 WL 637401, at *3 (4th Cir. Aug. 31, 1998) ("The disclosure statement must contain 'adequate information,' i.e. sufficient information to permit a reasonable, typical creditor to make an informed judgment about the merits of the proposed plan. Moreover, the court must assess the disclosure statement's adequacy and approve it before transmittal.") (internal citations omitted).

19.    The determination of whether the disclosure statement includes adequate information is made on a case-by-case basis, and courts exercise broad discretion when evaluating whether a disclosure statement contains adequate information.  See Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 417 (3d Cir. 1988); see also In re A.H. Robins Co., Inc., 880 F.2d 694, 696 (4th Cir. 1989).  This discretion provides flexibility and facilitates the effective reorganization of chapter 11 debtors by accommodating the variations among chapter 11 cases.  See H.R. Rep. No. 595, 95th Cong., 1st Session 408-09 (1977); see also A.H. Robins Co., 880 F.2d at 696.  This determination should take account of expertise and resources, including outside advisors and relevant information already possessed or publicly available, of the hypothetical investor in each class of claims or interests from which acceptance or rejection of the plan is solicited. See Zenith Elecs. Corp., 241 B.R. 92, 99-100 (Bankr. D. Del. 1999).

20.    In making a determination as to whether a disclosure statement contains adequate information as required by section 1125 of the Bankruptcy Code, courts typically look for disclosures related to topics such as:

a)    the events which led to the filing of a bankruptcy petition;

b)    the relationship of the debtors with its affiliates;

c)    a description of the available assets and their value;

d)    the anticipated future of the companies;

e)      the source of information stated in the disclosure statement;

f)      the present condition of the debtors while in chapter 11;

g)      claims asserted against the debtors;

h)      the estimated return to creditors under a chapter 7 liquidation;

i)      the chapter 11 plan or a summary thereof;

j)      financial information, valuations, and projections relevant to the creditors' decision to accept or reject the chapter 11 plan;

k)      information relevant to the risks posed to creditors under the plan;

l)      the actual or projected realizable value from recovery of preferential or otherwise avoidable transfers;

m)     litigation likely to arise in a non-bankruptcy context; and

n)      tax attributes of the debtors.

See In re U.S. Brass Corp., 194 B.R. 420, 424-25 (Bankr. E.D. Tex. 1996); see also In re Phoenix Petroleum Co., 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) (citing factors that courts have considered in determining the adequacy of information provided in a disclosure statement); In re Scioto Valley Mortg. Co., 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988) (listing factors courts have considered in determining the adequacy of information provided in a disclosure statement); In re Metrocraft Pub. Svcs., Inc., 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) (same).  Disclosure regarding all of the aforementioned topics is not necessary in every case. U.S. Brass, 194 B.R. at 425.

21.      The Disclosure Statement contains (or is expected to contain) the pertinent information necessary for Holders of Claims entitled to vote to make an informed decision about whether to vote to accept or reject the Plan, including, among other things, information regarding:

a)    the Plan, including a summary of the classifications and treatment of all Classes of Claims and Interests and the anticipated range of recoveries for each Class;[5]

b)    the history of the Debtors, including the events leading to the commencement of the Chapter 11 Cases;

c)    the operation of the Debtors' business and significant events during the Chapter 11 Cases to date;

d)    the Debtors' corporate structure;

e)    the Debtors' prepetition capital structure and indebtedness;

f)    Claims asserted against the Debtors' estates;[6]

g)    certain risk factors to consider that may affect the Plan;

h)    the treatment of Executory Contracts and Unexpired Leases under the Plan;

i)    certain federal income tax law consequences of the Plan;

j)    securities to be issued under the Plan;

k)    the provisions governing distributions under the Plan;

l)    the means for implementation of the Plan;

m)    the settlement, release, injunctive relief, and exculpation provisions of the Plan;

n)    a liquidation analysis setting forth the estimated return that creditors would receive in a hypothetical chapter 7 case;[7] and

o)    a disclaimer indicating that no statements or information concerning the Debtors or their assets and securities are authorized other than those set forth in the Disclosure Statement.

---

[5]    To the extent not already included, the anticipated range of recoveries for each class will be provided prior to the Disclosure Statement Hearing.

[6]    To the extent not already included, estimates of Claims asserted against the estates will be provided prior to the Disclosure Statement Hearing.

[7]    The liquidation analysis will be filed prior to the Disclosure Statement Hearing.

22.     In light of the foregoing, the Debtors respectfully submit that the Disclosure Statement complies with all of the requirements of section 1125 of the Bankruptcy Code and addresses the information set forth above in a manner that provides Holders of Claims entitled to vote to accept or reject the Plan with "adequate information" within the meaning of section 1125(a) of the Bankruptcy Code.  The Debtors also request that the Court authorize them to make non-material changes to the Disclosure Statement and related documents after Court approval but before distributing Solicitation Packages (as defined herein) to each person in accordance with the Solicitation Procedures, with the consent of the Plan Sponsor.

**B.      The Disclosure Statement Hearing**

23.     The Debtors filed the Plan on October 13, 2015 [Docket No. 292] and the Disclosure Statement on October 30, 2015, concurrently herewith.  Bankruptcy Rule 3017(a) provides that prior to a proposed disclosure statement being approved, service of such disclosure statement shall be made upon the Office of the United States Trustee, any statutorily appointed committee, the Securities and Exchange Commission ("SEC"), and those parties in interest that have made a written request for such service.  See Fed. R. Bankr. P. 3017(a).  In accordance with Bankruptcy Rule 3017(a), the Debtors have served or will serve copies of this Motion, the Disclosure Statement, and the Plan on: (a) the United States Trustee; (b) counsel to the Creditors' Committee; (c) counsel to the agents and lenders under the DIP Facilities; (d) counsel to the indenture trustee for the Debtors' prepetition senior secured notes; (e) the indenture trustee for the Debtors' prepetition senior unsecured notes; (f) the SEC; (g) the Internal Revenue Service; (h) the United States Attorney for the District of Delaware; and (i) all parties entitled to notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").

24.     Although Bankruptcy Rule 3017(a) only requires that the proposed disclosure statement be served upon the parties set forth above, all creditors, equity security

holders, and other parties in interest must be provided with not less than 28 days' notice by mail of the time fixed for filing objections to, and the hearing to consider approval of, the proposed disclosure statement.  See id; Fed. R. Bankr. P. 2002(b).  Accordingly, in compliance with Bankruptcy Rules 3017(a) and 2002(b), with the assistance of the Solicitation Agent (as defined below), the Debtors will serve a copy of the *Notice of Disclosure Statement Hearing,* substantially in the form attached to the proposed Disclosure Statement Order as Exhibit 1 (the "Disclosure Statement Hearing Notice") as soon as reasonably practicable after the date hereof and no later than November 2, 2015, on the: (a) Notice Parties; (b) any party with a filed proof of claim as of such date; and (c) all of the Debtors' known creditors and equity holders – approximately 37,000 parties in total.  The Disclosure Statement Hearing Notice, among other things, will identify: (a) the date, time, and place of the hearing to consider approval of the Disclosure Statement (the "Disclosure Statement Hearing"); (b) the manner in which a copy of the Plan and Disclosure Statement may be obtained; and (c) the deadline and procedures for asserting objections to the approval of the Disclosure Statement.  The foregoing service provides parties in interest with no fewer than 28 days' notice of the time fixed for filing objections, which shall be November 30, 2015 at 12:00 p.m. (Eastern) (the "Disclosure Statement Objection Deadline") and the Disclosure Statement Hearing.

25.    Bankruptcy Rule 2002(l) permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement notice." Fed. R. Bankr. P. 2002(l).  Thus, in addition to the foregoing service of the Disclosure Statement Hearing Notice providing known creditors with actual notice of the Disclosure Statement Hearing, the Debtors will publish the Disclosure Statement Hearing Notice (in a format modified for publication) in *The New York Times* (national and international editions), *The Los Angeles*

*Times*, and the *Orange County Register*.  The Debtors believe that publication of the Disclosure Statement Hearing Notice will provide sufficient notice of the deadline for filing objections to the approval of the Disclosure Statement, the Disclosure Statement Hearing, and other relevant deadlines to unknown creditors and other parties that may not otherwise receive actual notice by mail.

26.    Accordingly, the Debtors submit that the above notice procedures provide adequate notice of the Disclosure Statement Hearing and, therefore, request that the Court approve such notice as appropriate and in compliance with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.

## II.    APPROVAL OF SOLICITATION AND NOTICE PROCEDURES

27.    To solicit acceptances or rejections of the Plan, the Debtors seek approval of the Solicitation Procedures. The Solicitation Procedures will allow the Debtors to distribute solicitation materials and tabulate votes to accept or reject the Plan effectively and consistently with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.  Furthermore, the Solicitation Procedures, in conjunction with the Debtors' proposed Disclosure Statement Hearing Notice and the *Notice of (A) Approval of Adequacy of Disclosure Statement, (B) Solicitation and Notice Procedures, (C) Objection and Voting Deadlines, and (D) the Hearing to Confirm the Plan of Reorganization of Quiksilver, Inc. and its Affiliated Debtors and Debtors in Possession* (the "Confirmation Hearing Notice"), substantially in the form attached to the Disclosure Statement Order as Exhibit 2, provide adequate notice to all Holders of Claims regarding the solicitation process and the relevant dates associated therewith.[8]

---

[8]    To the extent that circumstances require further modifications of, or amendments to, the Solicitation Procedures, the Debtors reserve the right to supplement or amend the Solicitation Procedures, including the classes entitled to vote, to further facilitate the Plan solicitation process.

A.      **Duties of the Solicitation Agent**

28.      Pursuant to an order entered on October 6, 2015, the Court has authorized the Debtors to employ and retain Kurtzman Carson Consultants LLC (the "Solicitation Agent") to act, among other things, as solicitation agent[9] in connection with the solicitation of votes to accept any chapter 11 plan of reorganization [Docket No. 243] (the "Voting Agent Retention Order"). The Debtors respectfully request that the Court confirm the authority of the Solicitation Agent pursuant to the Voting Agent Retention Order to assist the Debtors in: (a) distributing Solicitation Packages; (b) soliciting, receiving, tabulating, and reporting on Ballots cast on the Plan, and certifying to the Court the results of such balloting; (c) responding to inquiries from Holders of Claims and Interests and other parties in interest relating to the Disclosure Statement, the Plan, the Ballots, the Solicitation Procedures, the procedures for electing to opt-out of the third party release provisions set forth in Article 10.5 of the Plan, and for objecting to the Plan; and (d) if necessary, contacting parties in interest and Holders of Claims and Interests regarding the Plan.

B.      **Approval of the Form of Ballots**

29.      Bankruptcy Rule 3018(c) provides that an "acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent, and conform to the appropriate Official Form." See Fed. R. Bankr. P. 3018(c). Additionally, pursuant to Bankruptcy Rule 3017(d), a debtor must mail a form of ballot conforming to the appropriate Official Form to creditors and equity security holders entitled to vote on the plan. See Fed. R. Bankr. P. 3017(d).

---

[9]      Kurtzman Carson Consultants LLC will also act as Subscription Agent in connection with the Rights Offerings, as will be set forth in further detail in the Rights Offering Motion.

30.    In accordance with Bankruptcy Rule 3018(c), the Debtors have prepared and will customize Ballots for Holders of Claims, substantially in the forms of the ballots attached as Exhibits 3-A, 3-B and 3-C to the Disclosure Statement Order (the "Ballots"), to tabulate acceptances and rejections of the Plan. The forms of the Ballots are based on Official Form No. 14 and have been modified to: (a) address the particular circumstances of this case and (b) include certain additional information that the Debtors believe to be relevant and appropriate for each Class of Claims entitled to vote on the Plan.  Pursuant to the Solicitation Procedures, the Solicitation Agent will distribute (or in the case of Claims arising from the holding of Voting Securities, cause to be distributed) the appropriate Ballots to Holders of Claims in the Class 4 – Secured Notes Claims, Class 5A – Unsecured Notes Claims, and Class 5B – General Unsecured Claims (collectively, the "Voting Classes") in accordance with the requirements of Bankruptcy Rule 3017(d).

31.    The Plan is a single plan of reorganization for the jointly administered Chapter 11 Cases, but does not constitute a substantive consolidation of the Debtors' Estates for voting purposes.  The Plan, though proposed jointly, constitutes a separate plan for each of the Debtors for voting purposes.  Therefore, all Claims against and Interests in a particular Debtor are placed in the Classes set forth below with respect to such Debtor.  Classes that are not applicable as to a  particular Debtor or group of Debtors shall be eliminated as set forth more fully in the Plan.[10]

32.    All other Classes either are: (a) conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code because they are unimpaired (*i.e.*,

---

[10]    As set forth in the Solicitation Procedures, each Ballot shall be counted solely with respect to the Debtor or Debtors against which the underlying Claim is asserted or scheduled.

Class 1 – Other Priority Claims, Class 2 – Other Secured Claims, Class 3 – Euro Notes Guaranty Claims, Class 6 – Intercompany Claims, and Class 7 – Intercompany Interests) or (b) conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code because no distributions will be made on account of Claims or Interests in such Classes (*i.e.*, Class 8 – Subordinated Claims and Class 9 – Interests in Quiksilver, Inc.). Thus, Holders of Claims and Interests in these non-voting Classes will receive the applicable notice of non-voting status in lieu of the Solicitation Package, as discussed below.

33.    The Debtors submit that the Ballots forms comply with Bankruptcy Rule 3018(c) and, therefore, should be approved.

### C.    Approval of the Solicitation Package and Distribution Thereof

34.    The Debtors propose to distribute the solicitation package (the "Solicitation Package") required by Bankruptcy Rule 3017(d) to those parties entitled to vote on the Plan in the form and manner described herein and set forth in Paragraph C of the Solicitation Procedures. The following materials shall comprise the Solicitation Package:

a)    the Confirmation Hearing Notice (substantially in the form attached to the Disclosure Statement Order as Exhibit 2);

b)    the appropriate Ballot(s) and applicable voting instructions, together with a pre-addressed, postage pre-paid return envelope (substantially in the form attached to the Disclosure Statement Order as Exhibit 3-A, 3-B or 3-C, as applicable);

c)    a CD-ROM containing the Plan, the Disclosure Statement and the Disclosure Statement Order;[11] and

---

[11]    The Debtors reserve the right to send paper copies of any documents, if preferred. Moreover, any entity that receives the Solicitation Package in CD-ROM format but that desires a paper copy of any documents provided therein may request a paper copy of such documents from the Solicitation Agent by: (a) emailing QuiksilverInfo@kccllc.com or (b) calling the Debtors' restructuring hotline at (877) 709-4757, within the U.S. or Canada, or (424) 236-7235, outside of the U.S. or Canada.

d)    any supplemental solicitation materials the Debtors may file with the Court.

35.    Through the Solicitation Agent, the Debtors intend to distribute copies of the Solicitation Package on or before December 7, 2015 (the "Solicitation Mailing Deadline"), approximately six days after of entry of the Disclosure Statement Order, if the Disclosure Statement Order is entered on the date of hearing.  The Debtors submit that distribution of copies of the Solicitation Package in this manner will provide the requisite materials to Holders of Claims entitled to vote on the Plan in compliance with Bankruptcy Rules 3017(d) and 2002(b). See Fed. R. Bankr. P. 3017(d) (providing that after approval of a disclosure statement, a debtor must transmit the plan, the approved disclosure statement, a notice of the time within which acceptances and rejections of such plan may be filed and any other information that the court may require); see also Fed. R. Bankr. P. 2002(b) (requiring not less than 28 days' notice by mail of the time for filing objections and the hearing to consider the confirmation of a chapter 11 plan).

**D.    Notice Procedures for Holders of Secured Notes and Unsecured Notes**

36.    Cede & Co., as nominee for The Depository Trust Company ("DTC"), is the only registered holder of the Secured Notes and Unsecured Notes (collectively, the "Voting Securities").  DTC holds all Voting Securities on behalf of banks, brokers, dealers, trust companies, or other nominees (collectively, the "Nominees") that are DTC participants and that, in turn, hold the Voting Securities in brokerage accounts on behalf of beneficial owners (collectively, the "Beneficial Owners"), often through several layers of ownership.  As is typical of such securities, the Debtors are unable to identify the vast majority of the Beneficial Owners. Thus, the Debtors, with the assistance of the Solicitation Agent, will serve the Solicitation

Packages in a manner customary in the securities industry so as to maximize the likelihood that the Beneficial Owners receive the materials in a timely fashion.

37.     Specifically, the Solicitation Agent will transmit the appropriate Solicitation Packages by first class mail, overnight courier or hand delivery, and electronic mail to Nominees that are identified by DTC as entities through which Beneficial Owners hold the Voting Securities as of the Voting Record Date, in addition to the known mailing agents of the Nominees (collectively, the "Master Ballot Agents").   Each Master Ballot Agent will be instructed to promptly distribute the appropriate Solicitation Packages to the Beneficial Owners for which the Nominees held the Voting Securities as of the Voting Record Date.

38.     The Solicitation Agent will provide appropriate Solicitation materials via electronic mail to the DTC with instructions to post such materials on the DTC's Legal Notice System and announce the information to Nominees.

39.     The Beneficial Owners will be instructed to relay their decision to accept or reject the Plan to their Master Ballot Agents in accordance with the terms of each Beneficial Owner's Ballot included in the Solicitation Packages, and substantially in the forms attached to the Disclosure Statement Order in Exhibits 3-A and 3-B (the "Beneficial Ballots"), and any instructions provided by the applicable Nominee.[12]

40.     The Master Ballot Agents must summarize the individual votes of the Beneficial Owners on a master ballot substantially in the forms attached to the Disclosure Statement Order in Exhibit 3-A and 3-B (the "Master Ballots").   The Master Ballot Agents will

---

[12]   The Debtors are seeking the Court's approval to send Solicitation Packages to Nominees in paper format and/or via electronic transmission in accordance with the customary requirements of each Master Ballot Agent.   Each Master Ballot Agent will then distribute the Solicitation Packages to Beneficial Owners, as appropriate, in accordance with its customary practices.   It is requested that Master Ballot Agents be authorized to collect votes to accept or to reject the Plan from Beneficial Owners in accordance with their customary practices.

be instructed to complete and return their Master Ballots to the Solicitation Agent by the Voting Deadline (as defined below).

41.     Votes cast by Beneficial Owners through a Nominee shall be applied against the positions held by the applicable Nominee in the Voting Securities as of the Voting Record Date, as evidenced by the record and depository listings at the DTC (the "Record Amount").  Votes submitted by a Nominee will not be counted in excess of the Record Amount of the Voting Securities held by such Nominee.

42.     To the extent that conflicting votes or "over votes" are submitted by a Nominee, the Solicitation Agent shall attempt to reconcile such discrepancies with the Nominee.

43.     To the extent that over votes on a Master Ballot are not reconcilable prior to the preparation of the vote certification, the Solicitation Agent shall apply the votes to accept and to reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballot that contained the over vote, but only to the extent of the applicable Nominee's position in the Voting Securities.

44.     All communications with the Beneficial Owners of the Voting Securities, the relevant depositories, and the Master Ballot Agents with respect to the voting options in connection with the Plan will be consistent with the Ballot, so that Holders clearly understand the options.  The instructions provided in the Ballots provide contact information for the Solicitation Agent so that such agent can respond to any questions of Beneficial Owners or their Master Ballot Agents.  The Debtors submit that the foregoing solicitation process adequately recognizes the complex structure of the securities industry and satisfies Bankruptcy Rule 3017(e).

E. **Approval of the Form of Notices to Unclassified Claims and Unimpaired Class Presumed to Accept and Impaired Classes Deemed to Reject the Plan**

45.    In compliance with section 1123(a)(1) of the Bankruptcy Code and as reflected in Article II of the Plan, Administrative Claims, DIP Claims, Professional Claims, and Priority Tax Claims are not classified under the Plan (collectively, the "Unclassified Claims"). See 11 U.S.C. §1123(a)(1) (providing for classification of claims other than administrative and priority tax claims). As such, Holders of Unclassified Claims are not entitled to vote on the Plan.

46.    Article III of the Plan also provides that Class 1 – Other Priority Claims, Class 2 – Other Secured Claims, Class 3 – Euro Notes Guaranty Claims, Class 6 – Intercompany Claims, and Class 7 – Intercompany Interests, which are Unimpaired, are presumed to accept the Plan and, therefore, Holders of such Claims are not entitled to vote on the Plan (collectively, the "Unimpaired Classes").

47.    Finally, Article III of the Plan provides that Class 8 – Other Subordinated Claims and Class 9 - Interests in Quiksilver, Inc (collectively, the "Deemed Rejecting Classes"), which are impaired and will not receive any distribution, are conclusively deemed to reject the Plan and, accordingly, are also not entitled to vote to accept or reject the Plan.

48.    The Debtors will not solicit votes from Holders of Unclassified Claims and Holders of Claims and Interests in the Unimpaired Classes and Deemed Rejecting Classes. The Debtors will, however, send the Confirmation Hearing Notice and the *Notice of Non-Voting Status With Respect to Unclassified Claims and Unimpaired Classes Presumed to Accept the Plan* to holders of Claims in the Unclassified Classes and Unimpaired Classes presumed to accept the Plan, substantially in the form attached to the Disclosure Statement Order as Exhibit 4-A (the "Unimpaired Non-Voting Status Notice"), in lieu of the Solicitation Package. The Debtors will also send the Confirmation Hearing Notice and the *Notice of Non-Voting Status*

*With Respect to Classes Deemed to Reject the Plan* to Holders of Claims and Interests in the Deemed Rejecting Classes deemed to reject the Plan, substantially in the form attached to the Disclosure Statement Order as <u>Exhibit 4-B</u> (the "<u>Deemed Rejection Non-Voting Status Notice</u>," and together with the Unimpaired Non-Voting Status Notice, the "<u>Non-Voting Status Notices</u>"), in lieu of the Solicitation Package. The Non-Voting Status Notices will explain to such Holders their non-voting status and that each such Holder may obtain certain materials in the Solicitation Package from the Solicitation Agent.

### F.    Returned Solicitation Packages or Notices

49.    In compliance with Bankruptcy Rules 2002 and 3017, the Debtors will send the Disclosure Statement Hearing Notice to Holders of Claims and Interests; however, the Debtors anticipate that some of the Disclosure Statement Hearing Notices that are sent to Holders of Claims or Interests may be returned by the United States Postal Service or other carrier as undeliverable. The Debtors believe that it would be costly and wasteful to mail Solicitation Packages to the same addresses to which undeliverable Disclosure Statement Hearing Notices were mailed. Therefore, the Debtors seek the Court's approval for a departure from the strict notice rule to excuse the Debtors from mailing the Solicitation Package to those Entities listed at the addresses to which undeliverable Disclosure Statement Hearing Notices were mailed, unless the Debtors, through the Solicitation Agent, are provided with or otherwise locate accurate addresses for such Entities not less than ten days prior to the Solicitation Date. The Debtors submit that if a Holder of a Claim or Interest has changed its mailing address after the Petition Date, the burden should be on the Holder, not the Debtors, to advise the Solicitation Agent of the new address. Additionally, the Debtors seek to waive the requirement to re-mail undelivered Solicitation Packages or other undeliverable solicitation-related notices that were returned marked "undeliverable" or "moved - no forwarding address" or otherwise returned,

unless the Debtors have been informed in writing by such person of that person's new address five days prior to the Voting Deadline.  The Debtors seek the Court's finding that failure to mail Solicitation Packages or other notices to such entities will not constitute inadequate notice of the Confirmation Hearing, the Voting Deadline, or a violation of Bankruptcy Rule 3017(d).

### G.    Executory Contracts and Unexpired Leases

50.    Furthermore, the Debtors will provide all counterparties to executory contracts and unexpired leases listed on Schedule G of the Debtors' Schedule of Assets and Liabilities with the Confirmation Hearing Notice and the *Notice to Contract and Lease Parties*, substantially in the form attached to the Disclosure Statement Order as <u>Exhibit 4-C</u> (the "<u>Executory Contract and Unexpired Lease Notice</u>"), which will notify such parties that the Debtors intend to assume and reject executory contracts and unexpired leases pursuant to Article VII of the Plan.

## III.    VOTING AND GENERAL TABULATION PROCEDURES

51.    The Debtors respectfully request that the Court approve the voting and tabulation procedures described herein and in Part D of the Solicitation Procedures, in accordance with section 1126(c) of the Bankruptcy Code and Bankruptcy Rule 3018(a).

### A.    Establishment of the Voting Record Date

52.    Bankruptcy Rule 3017(d) provides that, for the purposes of soliciting votes in connection with the confirmation of a plan, "creditors and equity security holders shall include holders of stock, bonds, debentures, notes and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing."  Fed. R. Bankr. P. 3017(d).  Additionally, Bankruptcy Rule 3018(a) contains a similar provision regarding determination of the record date for voting purposes.

53.     The Debtors respectfully request that this Court exercise its authority under Bankruptcy Rules 3017(d) and 3018(a) to establish December 1, 2015, as the record date (the "Voting Record Date") for purposes of determining: (a) the Holders of Claims that are entitled to receive the Solicitation Package pursuant to the Solicitation Procedures; (b) the Holders of Claims entitled to vote to accept or reject the Plan; and (c) whether Claims have been properly transferred to an assignee pursuant to Bankruptcy Rule 3001(e) such that the assignee can vote as the Holder of the Claim.[13]

54.     For purposes of the Voting Record Date, no transfer of a Claim pursuant to Bankruptcy Rule 3001 shall be recognized unless: (i) documentation evidencing such transfer was filed with the Court on or before 21 days prior to the Voting Record Date; and (ii) no timely objection with respect to such transfer was filed by the transferor.

**B.      Establishment of the Voting Deadline**

55.     Bankruptcy Rule 3017(c) provides, in relevant part, that "[o]n or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan[.]"  See Fed. R. Bankr. P. 3017 (c).  The Debtors request that the Court set the voting deadline as January 14, 2016 at 4:00 p.m. (Eastern) (the "Voting Deadline"), a date that is 38 days after the Solicitation Mailing Deadline.  To be counted, all Ballots must be properly completed, executed, returned to and received by the Solicitation Agent as specified in the Solicitation Procedures by the Voting Deadline.

---

[13]    The Debtors' request for the establishment of a Voting Record Date is for voting purposes only and shall have no impact with respect to who is entitled to receive distributions under the Plan.

### C.    Approval of the Voting Procedures

56.    The Debtors respectfully request that the Court approve the voting procedures described herein, which are consistent with section 1126(c) of the Bankruptcy Code and Bankruptcy Rule 3018(a).

57.    The Debtors propose that only the following Holders of Claims in the Voting Classes, as of the Voting Record Date, shall be entitled to vote:

a)    all Entities that, on or before the Voting Record Date have timely filed a proof of claim (or an untimely proof of claim which has been Allowed as timely by the Court under applicable law on or before the Voting Record Date) that (i) has not been expunged, disallowed, disqualified, or suspended prior to the Voting Record Date; and (ii) is not the subject of an objection pending as of the Voting Record Date, or an objection filed no later than December 31, 2015 (the "Claims Voting Objection Deadline"); provided, however, that the Holder of a Claim that is the subject of a pending objection on a reduce and allow and/or reclassify basis shall receive a Solicitation Package based on such Claim in the amount and/or the classification sought in the objection;

b)    all Entities listed in the Schedules[14] as holding a noncontingent, liquidated, undisputed Claim as of the Voting Record Date, except to the extent that such Claim was paid, expunged, disallowed, disqualified, suspended or superseded by a timely filed proof of claim (or an untimely proof of claim which has been Allowed as timely by the Court under applicable law on or before the Voting Record Date) prior to the Voting Record Date;

c)    all Entities that hold Claims pursuant to an agreement or settlement with the Debtors executed prior to the Voting Record Date, as reflected in a document filed with the Court, in an order entered by the Court, or in a document executed by the Debtors pursuant to authority granted by the Court, regardless of whether a proof of claim has been filed; and

d)    the assignee of any Claim described in subparagraphs a-c above in lieu of the assigning entity; provided that such transfer or assignment has been fully effectuated pursuant to the procedures set forth in Bankruptcy Rule 3001(e) and such transfer is reflected on the Claims Register on the Voting Record Date.

---

[14]    As used herein, "Schedules" means the schedules of assets and liabilities and the statements of financial affairs filed in the Chapter 11 Cases by the Debtors pursuant to section 521 of the Bankruptcy Code.

D.    **Procedures for Temporary Allowance of Claims Pursuant to Bankruptcy Rule 3018 for Voting Purposes**

58.    Bankruptcy Rule 3018(a) provides in relevant part that "[n]otwithstanding objection to a claim or interest, the court after notice and a hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan."  The Debtors propose that the Holder of a claim not entitled to vote on the Plan pursuant to the procedures described above (each such claim, a "Disputed Claim") shall be permitted to vote such claim (or to vote such claim in an amount other than the amount set forth in the Schedules) only pursuant to the procedures set forth in Paragraph D.2 of the Solicitation Procedures.

59.    In particular, the Holder of a Disputed Claim shall be entitled to vote such claim only if one of the following shall have occurred with respect to such claim at least five Business Days prior to the Voting Deadline (the "Voting Resolution Event Deadline"): (a) an order is entered by the Court allowing such Disputed Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing; (b) a creditor files with the Court a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Disputed Claim in a different amount only for purposes of voting to accept to reject the Plan (a "Rule 3018(a) Motion") that is ultimately approved by the Court after notice and a hearing; (c) a stipulation or other agreement is executed between the Holder of the Disputed Claim and the Debtors (and reasonably satisfactory to the Plan Sponsor) resolving such objection and allowing the Holder of such Disputed Claim to vote its Claim in an agreed upon amount; (d) a stipulation or other agreement is executed between the Holder of the Disputed Claim and the Debtors (and reasonably satisfactory to the Plan Sponsor)  temporarily allowing the Holder of such Disputed Claim to vote its Claim in an agreed upon amount; or (e) the pending objection to the Disputed

Claim is voluntarily withdrawn by the Debtors or overruled by the Court (each, a "Resolution Event").

60.     The Debtors request that the Court direct that Rule 3018(a) Motions must (i) be made in writing, (ii) comply with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, (iii) set forth the name of the party asserting the Rule 3018(a) Motion, (iv) state with particularity the legal and factual bases for the Rule 3018(a) Motion, (v) be set for hearing at the Confirmation Hearing and (vi) be served so as to be received by the Notice Parties no later than the Voting Resolution Event Deadline.

61.     No later than two Business Days after a Resolution Event, the Solicitation Agent shall distribute a Ballot and a pre-addressed, postage pre-paid envelope to the relevant Holder of the Disputed Claim, which must be returned to the Solicitation Agent by no later than the Voting Deadline (unless the Debtors extend the deadline, with the consent of the Plan Sponsor, to facilitate a reasonable opportunity for such creditor to vote upon the Plan).  If the Disputed Claim is objected to on a reduce and allow and/or reclassify basis, such entity shall receive a Ballot and be entitled to vote such Claim in the amount and/or classification asserted by the Debtors.  If an objection to a Disputed Claim was filed by the Debtors after the applicable Voting Record Date but on or before the Claims Voting Objection Deadline, the Ballot of the Holder of such Disputed Claim will not be counted absent a Resolution Event taking place prior to the Confirmation Hearing.

62.     The Debtors further request that, in the event that the Debtors and the Holder of the Disputed Claim are unable to resolve any issues raised by the Rule 3018(a) Motion prior to the Confirmation Hearing, (a) the Debtors may object to the Rule 3018(a) Motion at the Confirmation Hearing (without filing a written objection), (b) the Solicitation Agent shall inform

the Court at or prior to the Confirmation Hearing whether including such provisional Ballot would affect the outcome of the voting to accept or reject the Plan in the relevant class in which the provisional Ballot was cast and (c) the Court then shall determine whether the provisional Ballot should be counted as a vote on the Plan.  Such a procedure will help ensure an efficient tabulation of Ballots to be completed by the Confirmation Hearing.

####     E.        Approval of the General Tabulation Procedures

63.     In tabulating votes, the Debtors propose that the hierarchy described in Paragraph D.3 of the Solicitation Procedures shall be used to determine the amount of the Claim associated with the Holder of such Claim's vote.  The amount of the Claim established pursuant to Paragraph D.3 of the Solicitation Procedures shall control for voting purposes only and shall not constitute the Allowed amount of any Claim or the amount of any Claim for any other purpose.

64.     The Debtors also propose to use the voting procedures and standard assumptions in tabulating Ballots set forth in Paragraph D.4 of the Solicitation Procedures. The Debtors believe that the requested Solicitation Procedures and other relief requested herein: (a) are cost-effective, (b) provide Holders of Claims and Interests and all parties in interest with adequate notice and opportunity to be heard, and (c) are in the best interests of the Debtors' estates, Holders of Claims, and other parties in interest.

### IV.    ESTABLISHING NOTICE AND OBJECTION PROCEDURES RELATING TO CONFIRMATION

####     A.        Establishment of the Confirmation Hearing Date

65.     The Debtors request that the Court set a date on or around January 25, 2016 as the date for the hearing to consider confirmation of the Plan (the "Confirmation Hearing") in accordance with Bankruptcy Rule 3017(c) and section 1128 of the Bankruptcy

Code (requiring a confirmation hearing with respect to any chapter 11 plan). If the Confirmation Hearing is scheduled for January 25, 2016, it will be approximately 11 days after the Voting Deadline and approximately 49 days after the Solicitation Mailing Deadline. The Debtors propose that the Confirmation Hearing may be continued from time to time upon request of the Debtors or otherwise at the Court's direction, either by notice or by announcing the continuance in open court without further notice. The Debtors submit that the date to be requested for the Confirmation Hearing will be in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules and will enable the Debtors to pursue confirmation of the Plan in a timely fashion.

### B.      Approval of the Form of the Confirmation Hearing Notice

66.      Bankruptcy Rule 2002(b) and (d) require no less than 28 days' notice to all Holders of Claims or Interests of the time fixed for filing objections and the hearing on confirmation of a chapter 11 plan. To satisfy this requirement, the Debtors intend to send the Confirmation Hearing Notice as part of the Solicitation Package and along with the Non-Voting Status Notices, such that it will be served well in excess of 28 days prior to the hearing. In accordance with Bankruptcy Rules 2002 and 3017(d), the Confirmation Hearing Notice shall contain, among other things: (a) instructions to Holders of Claims and Interests and parties in interest on how such Entities may view or obtain copies of the Court-approved Disclosure Statement (with all appendices thereto, including the Plan), the Disclosure Statement Order, the Solicitation Procedures and materials in the Solicitation Package (excluding Ballots); (b) a disclosure regarding the settlement, third party release, exculpation, and injunction language in Article X of the Plan; (c) the Voting Record Date; (d) the Voting Deadline; (e) the Plan Objection Deadline; and (f) the Confirmation Hearing date and time.

28

67.    The Debtors respectfully request that the Court find that the Confirmation Hearing Notice complies with the requirements of Bankruptcy Rule 2002(b), (c)(3), and (d).  The Debtors further request that the Court determine that the Confirmation Hearing Notice contains sufficient disclosure regarding the settlement, third party release, exculpation, and injunction language in Article X of the Plan.

68.    As described above, Bankruptcy Rule 2002(1) permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement notice." In addition to mailing the Confirmation Hearing Notice along with the Solicitation Packages, the Non-Voting Status Notices and the Executory Contract and Unexpired Lease Notice, and as soon as practical after the Disclosure Statement Hearing, the Debtors shall publish the Confirmation Hearing Notice one time in each of the following publications in order to provide notification to those Entities who may not receive notice by mail: *The New York Times* (national and international editions), *The Los Angeles Times*, and the *Orange County Register.*

69.    The Debtors believe that publication of the Confirmation Hearing Notice will provide sufficient notice of the approval of the Disclosure Statement, the Confirmation Hearing, the Voting Record Date, the Voting Deadline, and the Plan Objection Deadline (as defined below) to entities that will not otherwise receive notice by mail as provided in the Solicitation Procedures.

**C.    Establishing Procedures for Filing Objections to Confirmation of the Plan**

70.    The Debtors request that the Court direct the manner in which objections to confirmation of the Plan shall be made.  Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court." As such, the Debtors requests that the Court establish January 14, 2016 at 4:00 p.m. (Eastern), a date that

is 11 days prior to the proposed Confirmation Hearing, as the deadline to file objections to confirmation of the Plan (the "Plan Objection Deadline").

71.     Moreover, in the Confirmation Hearing Notice, the Debtors intend to explain that any objection to Confirmation of the Plan or request for modifications to the Plan must:

a)      be in writing;

b)      conform to the Bankruptcy Rules and the Local Bankruptcy Rules;

c)      state the name and address of the objecting party and the amount and nature of the Claim or Interest of such entity;

d)      state with particularity the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and

e)      be filed, contemporaneously with a proof of service, with the Court and served so that it is actually received by the notice parties identified in the Confirmation Hearing Notice on or prior to the Plan Objection Deadline.

72.     The Debtors also propose that they, or any party supporting the Plan, be afforded an opportunity to file a response to any objection to confirmation of the Plan by no later than the date that is two days before the Confirmation Hearing.

73.     The Debtors believe that the proposed timing for filing and service of objections, proposed modifications and responses, if any, will afford the Court, the Debtors, and other parties in interest reasonable time to consider the objections and proposed modifications prior to the Confirmation Hearing.

## NOTICE

74.     Notice of this Motion will be given to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the agent for the Debtors' postpetition secured loan facilities; (c) counsel to the agent for the Debtors' prepetition revolving loan facility;

(d) counsel to the indenture trustee for the Debtors' prepetition senior secured notes; (e) counsel to the indenture trustee for the Debtors' prepetition senior unsecured notes; (f) counsel to the Creditors' Committee; (g) the SEC; (h) the Internal Revenue Service; (i) the United States Attorney for the District of Delaware; and (j) all parties entitled to notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested and the service of the Disclosure Statement Hearing Notice, as set forth above, no other or further notice need be given.

## NO PRIOR REQUEST

75.    No prior Motion for the relief requested herein has been made to this or any other court.

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter the proposed

Disclosure Statement Order, substantially in the form annexed hereto, granting the relief set forth

in the Motion and such further relief as is equitable and just.


Dated:    Wilmington, Delaware
          October 30, 2015


SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

*/s/ Van C. Durrer, II*
Van C. Durrer, II (I.D. No. 3827)
Annie Z. Li
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071
Telephone: (213) 687-5000
Fax: (213) 687-5600

- and -

Mark S. Chehi (I.D. No. 2855)
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
Telephone: (302) 651-3000
Fax: (302) 651-3001

- and -

John K. Lyons
Jessica S. Kumar
155 N. Wacker Dr.
Chicago, Illinois 60606
Telephone: (312) 407-0700
Fax: (312) 407-0411

*Counsel for Debtors and Debtors in Possession*