## EXHIBIT A

**Plan**

# QUIKSILVER, INC.

## KEY EMPLOYEE INCENTIVE AND RETENTION PLAN (U.S.)

### SECTION 1.  PURPOSE

The purposes of the Key Employee Incentive and Retention Plan (U.S.) (the "Plan") of Quiksilver, Inc. and its subsidiaries (the "Company") are (a) to provide selected key U.S. employees of the Company with certain payments upon the achievement of specified goals in connection with certain restructuring events of the Company, and (b) to provide selected key U.S. non-insider employees of Company with retention payments in connection with certain restructuring events of the Company.  The awards payable under the Plan are intended to provide an incentive to ensure the continued, collective efforts of the participating key employees.  The Company shall implement a separate Plan for other key non-U.S. employees.

### SECTION 2.  DEFINITIONS

For the purposes of this Plan, the following terms shall have the meanings indicated, unless the context clearly indicates otherwise:

"Bankruptcy Case" means the cases commenced by the Debtors under the Bankruptcy Code on the Filing Date, jointly administered under case number 15-11880 (BLS).

"Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended from time to time.

"Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware.

"Board" means the Company's Board of Directors.

"Bonus Amounts" shall mean Incentive Bonus Amounts and Retention Bonus Amounts, collectively.

"Cause" shall exist where, in the Company's sole reasonable discretion, the Company determines that (i) the Participant has been insubordinate or refused or failed to carry out the instructions of the Company or the Board relating to the Company's business and strategic plans for the Company; (ii) the Participant has engaged in misconduct or negligence in performing the Participant's duties and responsibilities; (iii) the Participant has engaged in conduct which is dishonest, criminal, fraudulent, or otherwise involves moral turpitude, or which is materially injurious to the Company; and/or (iv) the Participant has engaged in activity prohibited by any other agreement between Employee and the Company.  For the avoidance of doubt, this definition of Cause shall apply only to this Plan and shall have no effect on any other agreement, plan

or policy of the Company that may apply to the Participant and the definition of "cause" contained in such agreement, plan or policy shall control.

"Code" means the Internal Revenue Code of 1986, as amended from time to time.

"Creditors' Committee" means the Official Committee of Unsecured Creditors.

"Debtors" means the Company and its affiliates who have filed voluntary petitions for relief under the Bankruptcy Code and whose cases are jointly administered with that of the Company.

"DIP Credit Agreements" shall mean, collectively, (a) that certain Second Amended and Restated Senior Secured Super-Priority Debtor-In-Possession Credit Agreement, dated as of September 10, 2015, by and among certain of the Debtors, Bank of America, N.A., in its capacity as administrative agent, and the lenders party thereto, as amended, supplemented, or otherwise modified from time to time, and all documents executed in connection therewith, and (b) that certain Senior Secured Super-Priority Debtor-In-Possession Credit Agreement, dated as of September 10, 2015, by and among certain of the Debtors, OCM FIE, LLC, in its capacity as administrative agent, and the lenders party thereto, as amended, supplemented, or otherwise modified from time to time, and all documents executed in connection therewith.

"Disability" shall have the meaning as provided under Section 409A of the Code.

"Emergence Amount" shall have the meaning specified in Section 4.2.

"Emergence Date" shall mean the date on which the Debtors consummate the Plan of Reorganization or a Qualifying Sale.

"Filing Date" shall mean September 9, 2015.

"Incentive Bonus Amount" shall have the meaning specified in Section 4.1.

"Incentive Bonus Payment Date" shall have the meaning specified in Section 4.1.

"Participant" means each person identified on Exhibits A and B hereto.

"Plan of Reorganization" means a plan under chapter 11 of the Bankruptcy Code specifying the treatment of claims and interests and providing for the reorganization or liquidation of each Debtor.

"Qualifying Sale" means the sale or disposition by the Debtors of all or substantially all of their assets in an asset sale transaction authorized under section 363 of the Bankruptcy Code approved by the Bankruptcy Court either prior to or in connection with a Plan of Reorganization.

"Retention Bonus Amount" shall have the meaning specified in Section 5.1.

"Retention Bonus Payment Date" shall have the meaning specified in Section 5.1.

## SECTION 3.  ADMINISTRATION

The Board shall have the exclusive right, power and authority, in its sole, full and absolute discretion, to interpret any and all of the provisions of the Plan, to supervise the administration and operation of the Plan, to consider and decide conclusively any questions (whether of fact or otherwise) arising in connection with the administration of the Plan or any claim for benefits arising under the Plan, to correct any defect or omission or reconcile any inconsistency in the Plan or any payment to be made hereunder, and to make any other determinations that it believes necessary or advisable in the administration of the Plan.  Any decision or action of the Board shall be conclusive and binding on all Participants.  The Board may elect to delegate some or all of its administrative responsibilities under the Plan to such person(s) or entities as it shall determine in its sole and absolute discretion.  Notwithstanding the foregoing, nothing in this Plan shall be deemed to vary the terms of any order of the Bankruptcy Court approving the Plan.

## SECTION 4.  PAYMENT OF INCENTIVE BONUSES

4.1    In General.  The Company shall pay to each Participant listed on Exhibit A hereto an incentive bonus amount (the "Incentive Bonus Amount") in a cash lump sum no later than the fifteenth (15th) calendar day following the Emergence Date (the "Incentive Bonus Payment Date").   A Participant must be employed by the Company or its affiliates as of the Incentive Bonus Payment Date in order to be entitled to receive any earned Incentive Bonus Amount.  In no event may aggregate Incentive Bonus Amounts exceed $1,470,000.00.

4.2    Calculation of Earned Payment Amount.  The maximum Incentive Bonus Amount for each Participant shall be determined in accordance with the schedule set forth on Exhibit A hereto. Each Participant shall earn up to the maximum Incentive Bonus Amount utilizing the following metrics: (a) one-third of the maximum Incentive Bonus Amount shall be earned upon the Debtors' emergence from the Bankruptcy Cases (the "Emergence Amount"), provided that (i) if the Emergence Date occurs on or before February 15, 2016, the Emergence Amount shall be fully earned, (ii) if the Emergence Date occurs on or between February 16, 2016 and March 15, 2016, 85% of the Emergence Amount shall be earned, (iii) if the Emergence Date occurs on or between March 16, 2016 and April 15, 2016, 70% of the Emergence Amount shall be earned; (b) one-third of the maximum Incentive Bonus Amount shall be earned upon the Emergence Date if the Debtors remain in compliance with the DIP Credit Agreements for the pendency of the Bankruptcy Cases; and (c) one-third of the maximum Incentive Bonus Amount shall be earned upon the Emergence Date if such Participant achieves pre-determined personal goals as determined by a designated superior.

4.3    Termination of Employment.  In the event that a Participant's employment with the Company is terminated by the Company without Cause or due to the Participant's death or Disability at any time prior to the Incentive Bonus Payment

3

Date, the Company shall pay such Participant an Incentive Bonus Amount, pro-rated based on a fraction, the numerator of which will be the number of days the Participant was employed by the Company from the Filing Date through the date of such termination of employment and the denominator of which will be the number of days from the Filing Date through the Emergence Date, on the Incentive Bonus Payment Date. If a Participant's employment with the Company is terminated other than as described in the preceding sentence prior to the Incentive Bonus Payment Date, the Participant shall forfeit any right to an Incentive Bonus Amount. Finally, if a Participant voluntarily terminates his or her employment with the Company or if a Participant is terminated by the Company with Cause, in each case on or before the forty-fifth (45th) calendar day after the date on which the Incentive Bonus Amount is earned, then such Participant shall return the Incentive Bonus Amount previously paid to the Company within five (5) calendar days of such termination.

## SECTION 5.  PAYMENT OF RETENTION BONUSES

5.1    In General.  The Company shall pay to each Participant listed on Exhibit B hereto a retention bonus amount (the "Retention Bonus Amount") in a cash lump sum no later than the fifteenth (15th) calendar day following the Emergence Date (the "Retention Bonus Payment Date").  A Participant must be employed by the Company or its affiliates as of the Retention Bonus Payment Date in order to be entitled to receive the Retention Bonus Amount.  Any Participant shall not be eligible to participate in any other incentive plan promulgated by the Company after the Emergence Date to the extent such plan is based upon such participant's performance during the Chapter 11 Cases.  In no event may aggregate Retention Bonus Amounts (including the amounts on Exhibit B and the discretionary amounts described in Section 5.4 below) exceed $859,556.00.

5.2    Calculation of Earned Payment Amount.  The maximum Retention Bonus Amount for each Participant shall be determined in accordance with the schedule set forth on Exhibit B hereto.  Each Participant shall earn up to the maximum Retention Bonus Amount utilizing the following metrics: (a) sixty percent (60%) of the maximum Retention Bonus Amount shall be earned on the forty-fifth (45th) calendar day following the Emergence Date if such Participant remains employed with the Company on such date, and (b) forty percent (40%) of the maximum Retention Bonus Amount shall be earned on the Emergence Date if such Participant achieves pre-determined personal goals as determined by a designated superior.

5.3    Termination of Employment.  If a Participant voluntarily terminates his or her employment with the Company or if a Participant is terminated by the Company with Cause, in each case on or before the forty-fifth (45th) calendar day after the Emergence Date, then such Participant shall return any Retention Bonus Amount previously paid to the Company within five (5) calendar days of such termination, and the Participant shall forfeit any right or claim to any remaining unpaid Retention Bonus Amount.  In the event that a Participant's employment with the Company is terminated by the Company without Cause or due to the Participant's death or Disability at any time prior to the Emergence Date, the Company shall pay such

Participant the maximum Retention Bonus Amount on the Retention Bonus Payment Date.

5.4    Discretionary Pool.  In addition to the Retention Bonus Amounts allocated in Exhibit B hereto, the Company may utilize a further discretionary amount of $200,000.00 to grant additional retention bonuses to non-senior management not listed on Exhibit B if such management are determined by the Board or its designee(s) to be critical to the reorganization process.

## SECTION 6.  AMENDMENT AND TERMINATION OF PLAN

The Board by written instrument may, in its sole discretion, at any time and from time to time amend, modify, suspend or terminate this Plan, in whole or in part, provided that such amendment does not expand any authority granted to the Board in connection with any order of the Bankruptcy Court approving the Plan.

## SECTION 7.  MISCELLANEOUS

7.1    Unfunded Plan / Participant's Rights.  No assets of the Company or its affiliates shall be segregated or earmarked to represent the liability for accrued benefits under the Plan.  The right of a Participant to receive any Bonus Amount hereunder shall be a claim against the general assets of the Company.  All amounts that may be set aside by the Company or its affiliates prior to the distribution of the Bonus Amounts under the terms of the Plan remain the property of the Company and its affiliates.

7.2    Plan is Not a Contract of Employment.  The existence of this Plan, as in effect at any time or from time to time, or any right to a Bonus Amount under the Plan, shall not be deemed to constitute a contract of employment between the Company or any of its affiliates and any employee or Participant, nor shall it constitute a right to remain in the employ of the Company or any of its affiliates.  Nothing in this Plan shall give a Participant the right to be retained in the service of the Company or its affiliates or to interfere with the rights of the Company or its affiliates to discipline or discharge a Participant at any time.  Either party may terminate a Participant's employment at any time, for any reason, with or without cause or notice.

7.3    Successors.  All obligations of the Company under the Plan shall be binding upon and inure to the benefit of any successor to the Company, whether the existence of such successor is the result of a direct or indirect purchase, merger, consolidation or otherwise.

7.4    No Guarantee of Benefits.  Nothing contained in the Plan shall constitute a guaranty by the Company or any other person or entity that the assets of the Company will be sufficient to pay any benefit hereunder.

7.5    Non-Alienation Provision; Third Party Rights.  Subject to the provisions of applicable law, no interest of any person or entity in, or right to receive a benefit or distribution under, the Plan shall be subject in any manner to sale, transfer,

assignment, pledge, attachment, garnishment, or other alienation or encumbrance of any kind; nor may such interest or right to receive a distribution be taken, either voluntarily or involuntarily, for the satisfaction of the debts of, or other obligations or claims against, such person or entity, including without limitation claims for alimony, support, separate maintenance and claims in bankruptcy proceedings. Nothing express or implied in the Plan is intended or may be construed to give any person other than eligible Participants any rights or remedies under the Plan.

7.6     Applicable Law. The Plan shall be construed and administered under the laws of the state of Delaware without regard to its principles of conflicts of laws.

7.7     Taxes. The Company (or such entities delegated by the Company) shall withhold from any Bonus Amounts made pursuant to the Plan such amounts as may be required by federal, state or local law.

7.8     No Impact on Other Benefits. Amounts paid or accrued under the Plan shall not be included in a Participant's compensation for purposes of calculating benefits under any other plan, program or arrangement sponsored by the Company or any of its affiliates, unless such plan, program or arrangement so provides by express reference to the Plan.

7.9     No Limitation on Corporate Actions. Nothing contained in the Plan shall be construed to prevent the Company or any of its affiliates from taking any corporate action which is deemed by it to be appropriate or in its best interest, whether or not such action would have an adverse effect on the Plan or any rights under the Plan. No Participant, employee or other person shall have any claim against the Company or any of its affiliates as a result of any such action.

7.10     Limitation on Liability. The liability of the Company and its affiliates under the Plan is limited to the obligations expressly set forth in the Plan, and no term or provision of this Plan may be construed to impose any further additional duties, obligations, or costs on the Company or its affiliates or the Board or any other person or entity except as expressly set forth in the Plan.

7.11     Severability. If any provisions of the Plan is held unenforceable, the remainder of the Plan shall continue in full force and effect without regard to such unenforceable provision and shall be applied as though the unenforceable provision were not contained in the Plan.

7.12     Usage of Terms and Headings. Words in the masculine gender shall include the feminine and the singular shall include the plural, and vice versa, unless qualified by the context. Any headings are included for ease of reference only and are to be ignored in the interpretation of the Plan.

7.13     Section 409A. It is the intention of the Company that awards under the Plan not result in taxation under Section 409A of the Code. Notwithstanding anything to the contrary herein, to the extent that any provision of this Plan would

otherwise result in taxation under Section 409A of the Code, such provision shall be deemed null and void.  Notwithstanding anything in the Plan to the contrary, the Board shall have the authority to amend the Plan to the extent necessary to avoid the imposition of tax under Section 409A of the Code.  Notwithstanding anything contained herein to the contrary, a Participant shall not be considered to have terminated employment with the Company for purposes of this Plan, such Participant would be considered to have incurred a "separation from service" from the Company within the meaning of Section 409A of the Code.  Each amount to be paid or benefit to be provided under this Plan shall be construed as a separate identified payment for purposes of Section 409A of the Code, and any payments described in this Plan that are due within the "short-term deferral period" as defined in Section 409A of the Code shall not be treated as deferred compensation unless applicable law requires otherwise.

    7.14 <u>Condition Precedent to Plan Effectiveness</u>.  The Company's obligations under the Plan, including any obligations to pay any Bonus Amounts, are contingent upon approval by the Bankruptcy Court.  In the event that such approval is not obtained, the Plan shall be null and void, and no party shall be entitled to enforce any rights against the Company thereunder.

## EXHIBIT A

**DOCUMENT TO BE FILED UNDER SEAL**

# EXHIBIT B

**DOCUMENT TO BE FILED UNDER SEAL**