IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------
In re:                                     )    Chapter 11
                                           )
QUIKSILVER, INC., *et al.*,                )    Case No. 15-11880 (BLS)
                                           )    Jointly Administered
                                           )
                    Debtors.               )    Re: D.I. 339
------------------------------------------------------------

**LIMITED OBJECTION OF REGENCY CENTERS, L.P. TO
DEBTORS' MOTION TO EXTEND DEADLINE TO ASSUME OR REJECT
UNEXPIRED LEASES OF NON-RESIDENTIAL REAL PROPERTY**

Regency Centers, L.P. ("Landlord" or "Regency"), the landlord or managing agent for the landlords of several Quiksilver stores, by and through its undersigned counsel, Kelley Drye & Warren LLP, hereby objects (the "Objection") to the motion (D.I. 339) (the "Motion") of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") for entry of an order, pursuant to 11 U.S.C. § 365(d)(4), extending the Debtors' time to assume or reject their unexpired leases of non-residential real property. In support of the Objection, the Landlord respectfully states as follows:

**PRELIMINARY STATEMENT**

1. Regency normally does not object to a debtor's motion to obtain the additional 90 days contemplated by the Bankruptcy Code to decide whether to assume or reject its leases; and indeed, Regency does not object to the Debtors' present request except with respect to one lease for an already dark store, curiously still filled with inventory but not undergoing a GOB sale, located in Anastasia Plaza in St. Augustine Beach, Florida (the "Anastasia Store").

2. With respect to only the Anastasia Store, the Landlord objects to an extension of the Debtors' deadline to assume or reject that lease because (i) the Debtors have

failed to demonstrate that cause exists to justify an extension under section 365(d)(4) of the Bankruptcy Code, and (ii) the Landlord has been and continues to be prejudiced by the Debtors' failure to operate or pay rent and related charges as required by the lease and section 365(d)(3) of the Bankruptcy Code.

3.  In light of the unique circumstances of the Anastasia Store, and after applying the relevant factors to the facts of this case, the Debtors have failed to establish cause to extend the deadline to assume or reject the Anastasia Store lease for an additional 90 days.

## BACKGROUND

4.  On September 9, 2015 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with this Court. Since the Petition Date, the Debtors have continued to operate and manage its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5.  Debtor QS Retail Inc. leases retail space in Anastasia Plaza (the "Leased Premises") from RCFL Anastasia, LLC, a subsidiary of the Landlord, pursuant to an Occupancy and Indemnification Agreement (the "Lease"). The Leased Premises is located in a shopping center as that term is defined in section 365(b)(3) of the Bankruptcy Code. *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081 (3d Cir. 1990).

6.  The Lease contemplates short-term use and occupancy of the Leased Premises from August 28, 2015 through July 27, 2016, and requires continuous operation at the Leased Premises during the period of occupancy.

7.  One (1) day after opening for business at the Leased Premises, with the store still fully stocked with inventory, the Debtors suddenly terminated retail operations without

2

explanation. Since that time, the store has remained dark (in violation of the continuous use clause in the Lease) with the inventory still in place, and the Debtors have failed to pay rent.

8. In mid-September 2016, counsel for Landlord contacted counsel for the Debtors to discuss the Anastasia Store, as Landlord has another party potentially interested in leasing the dark Leased Premises. After several inquiries without response, Landlord also contacted the Debtors' real estate advisor and liquidation consultant in an attempt to obtain additional information and move forward with reclaiming the Leased Premises, which clearly is not part of the Debtors' long-term retail plan.

9. The Landlord has now spoken with Debtors' counsel, real estate advisor and liquidation consultant about the situation, but has not received a definitive answer about what the Debtors plan to do with their dark Anastasia Store, and the inventory located therein.

10. Since the Petition Date, in addition to being in breach of the continuous operations clause of the Lease, the Debtors have also failed to pay post-petition rent and other Lease obligations totaling approximately $7,865, including unpaid rent and taxes for October 2015 of approximately $4,452.

11. On October 22, 2015, the Debtors filed the Motion seeking to extend their deadline to assume or reject leases for 90 days from January 7, 2016, through and including April 6, 2016. The Landlord objects to the Motion as it relates to the Lease.

**ARGUMENT**

I. **CAUSE DOES NOT EXIST TO EXTEND THE PERIOD WITHIN WHICH THE DEBTORS MAY ASSUME OR REJECT THE LEASE**

12. To obtain an extension of the deadline to assume or reject the Lease, the Debtors must demonstrate "cause" pursuant to the requirements of section 365(d)(4)(B)(i) of the Bankruptcy Code. "Cause" is not defined in the Bankruptcy Code and, therefore, the Court has

3

discretion to grant or deny a request for an extension. *South St. Seaport Ltd. P'ship v. Burger Boys, Inc. (In re Burger Boys, Inc.)*, 94 F. 3d 755, 761 (2d Cir. 1996). The factors that a Court should consider include:

>   (i) whether the debtor is paying for the use of the property;
>
>   (ii) whether the debtor's continued occupation could damage the lessor beyond the compensation available under the Bankruptcy Code;
>
>   (iii) whether the debtor has had sufficient time to formulate a plan of reorganization;
>
>   (iv) whether the case is complex; and
>
>   (v) whether the lease is the debtor's primary asset.

*See id.*; *see also In re Monahan Ford Corp. of Flushing*, 309 B.R. 493, 500 (Bankr. E.D.N.Y. 2008). As discussed below, these factors weigh in favor of the Court denying the Motion; therefore, the Landlord respectfully requests that the Court deny the Motion.

### A. The Debtors are Not Paying for the Use of the Premises

13. The Debtors have failed to pay for its post-petition use of the Leased Premises in violation of section 365(d)(3) of the Bankruptcy Code. The post-petition obligations outstanding under the Lease are approximately $7,865, including unpaid rent and taxes for October 2015 of approximately $4,452.

14. The Debtors' failure to pay this amount violates both the Lease and section 365(d)(3) of the Bankruptcy Code. As each day passes, penalties, interest, and attorneys' fees continue to accrue on these amounts. The Landlord hereby demands that the Debtors pay these amounts and asks the Court to compel the Debtors to do so.

15. The Debtors' failure to pay post-petition rent pursuant to section 365(d)(3) of the Bankruptcy Code and other post-petitions obligations due under the Lease, including stub rent, weighs in favor of the Court denying the Motion.

**B.    The Debtors' Continued Occupation of the Leased Premises Could Damage the Landlord Beyond the Compensation Available Under the Bankruptcy Code**

16.    As discussed above, the Debtors have failed to pay its post-petition obligations as required by section 365(d)(3) of the Bankruptcy Code.  The administrative solvency of the Debtors' estates is unknown and the Landlord's damages continue to accrue.  It would be inequitable to allow the Debtors to remain in the Leased Premises beyond the 120-day deadline imposed by section 365(d)(4) of the Bankruptcy Code because there is no guarantee that the Landlord will be compensated for their post-petition losses if the estate is administratively insolvent.

17.    Additionally, because the Debtors are still occupying the Leased Premises, the Landlord is unable to mitigate its damages by reletting the Leased Premises.  It appears nearly certain that the Debtors will eventually reject the Lease and surrender the Leased Premises to the Landlord.  Following such rejection, at best, the Debtors will have an unsecured lease rejection claim for the remainder of the term.  However, the Debtors' continued occupancy of the dark Leased Premises could further harm the Landlord by preventing the Landlord from reclaiming the Leased Premises and *re-leasing the Leased Premises to another tenant who has already expressed interest in the Leased Premises*.  If the Debtors' continued occupancy (while failing to operate and failing to pay rent) causes the Landlord to lose this future tenant who would not only occupy the Leased Premises, but presumably also operate and pay rent, such continued occupancy by the Debtors could damage the Landlord far in excess of the compensation available under the Bankruptcy Code, as the Leased Premises could remain dark indefinitely, while Landlord is limited to a statutorily determined lease rejection claim.  This factor also weighs in favor of the Court denying the Motion.

### C. The Debtors Have Had Sufficient Time to Formulate a Plan

18. As the Lease will almost certainly be rejected, this portion of the test is largely inapplicable, however, to the extent it is applicable, it weighs in favor of the Court denying the Motion.

19. On October 13, 2015, the Debtors filed a plan of reorganization (D.I. 292), and on October 30, 2015, the Debtors filed both a disclosure statement related to their plan (D.I. 396), and a plan solicitations procedures motion (D.I. 397). Having already formulated their plan and taken steps toward confirming it, the additional time requested by the Debtors with respect to the Anastasia Store is unnecessary.

### D. The Size and Complexity of this Case Do Not Justify the Requested Relief

20. The Debtors' cases and international corporate structure are undoubtedly complex, however, the Debtors' decision regarding their Anastasia Store is anything but complex. The Debtors have already decided to close the store, they simply need to decide what to do with the inventory, and when to turn over the keys. With a plan and disclosure statement already in place, this is not a complex issue or decision, it is simply one that requires a small amount of attention during the first 120 days of the case – far from an unreasonable request.

### E. The Lease is Not the Debtors' Primary Asset

21. The Lease is only one of the Debtors' many leases and is not the Debtors' primary asset. Indeed, it appears the Debtors have decided that the Lease is an unnecessary asset. Deciding whether to assume or reject the Lease during the first 120 days of these cases will not make or break the Debtors' estates; however, waiting to make that decision will continue to unduly prejudice the Landlord because of the substantial unpaid post-petition obligations, and the danger of losing a potential tenant who has expressed interest in the Leased Premises.

## II. THE RELIEF SOUGHT DOES NOT COMPLY WITH THE REQUIREMENTS OF SECTION 365(d)(4) OF THE BANKRUPTCY CODE

22. In the event that the Debtors satisfy all of the amounts currently outstanding under the Lease or the Court decides to grant the Motion over this Objection, the Motion still fails to comply with the requirements of section 365(d)(4) of the Bankruptcy Code. The deadline for the Debtors to decide whether to assume or reject the leases pursuant to section 365(d)(4)(A) is the earlier of "(i) the date that is 120 days after the date of the order for relief; or (ii) the date of the entry of an order confirming a plan."  Section 365(d)(4)(B)(i) allows the Court to grant a 90-day extension of the 120 days provided for under section 365(d)(4)(A)(i); the Bankruptcy Code does not permit an extension of the requirement of 365(d)(4)(A)(ii). Therefore, if the Motion is granted, the order should state that the extension is through the earlier of "(i) April 6, 2016, or (ii) the date of the entry of an order confirming a plan."

## CONCLUSION

WHEREFORE, the Landlord respectfully requests that this Court enter an order: (i) denying the Motion, (ii) compelling the Debtors to satisfy all of the post-petition amounts currently due under the Lease, and (iii) granting such other and further relief as the Court deems just and proper.

Dated: November 10, 2015
       New York, New York

**KELLEY DRYE & WARREN LLP**

*/s/ Gilbert R. Saydah Jr.*
Robert L. LeHane
Gilbert R. Saydah Jr. (DE Bar No. 4304)
Scott L. Fleischer
101 Park Avenue
New York, New York 10178
Tel: (212) 808-7800
Fax: (212) 808-7897

*Attorneys for Regency Centers, L.P.*

**CERTIFICATE OF SERVICE**

       I, Gilbert R. Saydah Jr., hereby certify I am not less than 18 years old and that today I have caused a true and correct copy of the *Limited Objection Of Regency Centers, L.P. To Debtors' Motion To Extend Deadline To Assume Or Reject Unexpired Leases Of Non-Residential Real Property* to be filed and served via the Court's CM/ECF electronic filing system.

Dated: November 10, 2015
       New York, New York

                                                */s/ Gilbert R. Saydah Jr.*
                                                Gilbert R. Saydah Jr.