# EXHIBIT B

## SUB-SUBLEASE AGREEMENT

This Sub-Sublease Agreement (this "Sub-Sublease") is executed as of January 14, 2013 by and between QS RETAIL, INC., a California corporation ("Sub-Sublandlord") and CISCO BROS. CORP., a California corporation ("Sub-Subtenant"), with reference to the following facts:

A.     By Lease dated as of June 10, 2004 (the "Master Lease") by and between RED SAIL REAL ESTATE LOS ANGELES INC., as Landlord ("Master Landlord"), and PRADA USA CORP., a Delaware corporation having an office at 610 West 52nd Street, New York, New York 10019, as Tenant ("Sublandlord"), Master Landlord leased to Sublandlord in accordance with the terms therein, the land and building known as and located at 8025 Melrose Avenue, Los Angeles, California, as more particularly described therein (the "Premises") in accordance with the terms of the Master Lease.

B.     By Sublease dated as of June 4, 2007 (the "Master Sublease") by and between Sublandlord and Sub-Sublandlord, Sublandlord subleased the Premises to Sub-Sublandlord, under and subject to the terms of the Master Lease and Master Sublease. A redacted copy of the Master Sublease (which includes a redacted copy of the Master Lease) is attached hereto as Exhibit A.

C.     Sub-Subtenant desires to sub-sublease from Sub-Sublandlord the Premises under and subject to the terms set forth herein.

NOW, THEREFORE, in consideration of the premises and covenants herein contained, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Sub-Sublandlord and Sub-Subtenant agree as follows:

1.     Sub-Sublease.   Subject to Section 14 below, Sub-Sublandlord subleases the Premises to Sub-Subtenant, and Sub-Subtenant subleases the Premises from Sub-Sublandlord, upon and subject to all of the terms, covenants, and conditions provided for herein.

2.     Commencement Date and Term.   This Sub-Sublease shall be effective and enforceable as an agreement between Sub-Sublandlord and Sub-Subtenant as of the date first

1

written above. However, the term of this Sub-Sublease (the "Term") shall commence on the date (the "Commencement Date") that the consents required by Section 14 below are obtained, and shall expire on June 9, 2019 (the "Expiration Date") or the earlier termination of the Master Sublease.

      3.     Use of Premises; Condition of Premises.  The Premises shall be used and occupied only for the retail sale of furniture, home accessories, and other products commonly sold in Cisco Home stores in the continental United States, all in compliance with all applicable federal, state and local laws, rules, ordinances, codes, covenants, conditions and restrictions, and for no other use or purpose without Sub-Sublandlord's prior written consent, which may be withheld in Sub-Sublandlord's sole discretion. Sub-Sublandlord shall deliver the Premises to Sub-Subtenant on the Commencement Date in broom clean condition, with Sub-Sublandlord's trade fixtures removed, and with all Building systems in good working order ("Sub-Sublandlord's Work"). Except for Sub-Sublandlord's Work, Sub-Subtenant acknowledges that Sub-Subtenant is sub-subleasing the Premises in its "AS IS", condition, and that neither Sub-Sublandlord nor any agent or representative of Sub-Sublandlord has made any representations, warranties or assurances with respect to or related in any manner to the Premises. Sub-Subtenant shall be solely responsible for obtaining, delivering and installing in the Premises all necessary and desired alterations and improvements (subject to the terms and conditions set forth herein with respect thereto), furniture, trade fixtures, equipment and other similar items, and the Commencement Date shall not be delayed for any period of time in connection as a result thereof.

      4.     Rent.

      (a)     Monthly Fixed Rent. Sub-Subtenant shall pay the following base monthly rent to Sub-Sublandlord throughout the Sub-Sublease Term, commencing on the Commencement Date, without notice or demand and without abatement, deduction or offset, in lawful money of the United States, in advance on or before the first day of each month, monthly fixed rent ("Fixed Rent") in the amount set forth below. Fixed Rent shall be paid to Sub-Sublandlord at Quiksilver, Inc., 15362 Graham St., Huntington Beach, California 92649 Attn: Director of Accounting, or to such other person or entity and/or at such other place as Sub-

2

Sublandlord shall designate from time to time by notice to Sub-Subtenant.

| Months of Sub-Sublease Term | Monthly Base Rent |
|---|---|
| Months 1-2 | $0 |
| Months 3-12 | $22,800 per month |
| Months 13-24 | $25,650 per month |
| Months 25-36 | $26,676 per month |
| Months 37-48 | $27,743 per month |
| Months 49-60 | $28,853 per month |
| Months 61-72 | $30,007 per month |
| Months 73-Expiration Date | $31,207 per month |

        (b)   Operating Expenses.   Sub-Sublandlord shall be responsible for the payment of (i) real property taxes and assessments against the Premises in accordance with the terms of the Master Sublease, and (ii) premium reimbursements for Lessor's Insurance (as defined in the Master Lease) in accordance with the terms of the Master Sublease. From and after the Commencement Date, Sub-Subtenant shall be responsible for all other charges and items of additional rent under the Master Sublease, including, without limitation, all utilities, janitorial and maintenance and repair charges. Notwithstanding the foregoing, Sub-Sublessor shall be responsible for structural repairs and capital (non-ordinary) repairs of the roof, structural elements of exterior walls, foundation, all load bearing structural members and the heating, ventilating and air-conditioning system (HVAC), except that Sub-Subtenant at its expense shall make all repairs which Sub-Sublandlord deems reasonably necessary as a result of the act or negligence of Sub-Subtenant, its agents, employees, invitees, subtenants or contractors. Sub-Sublandlord shall have the right to employ or designate any reputable person or firm, including any employee or agent of Sub-Sublandlord or any of Sub-Sublandlord's affiliates or divisions, to perform any service, repair or maintenance function of Sub-Sublandlord under this Sub-Sublease.   Sub-Sublandlord need not make any other improvements or repairs except as specifically required under this Lease. Sub-Subtenant understands that it shall not make repairs at Sub-Sublandlord's expense or by rental offset, except as expressly provided hereinbelow, and

3

there shall be no liability of Sub-Sublandlord by reason of any injury to or interference with Sub-Subtenant's business arising from the making of any repairs to any portion of Premises, nor shall any related activity by Sub-Sublandlord constitute an actual or constructive eviction; provided, however, that in making repairs, alterations or improvements, Sub-Sublandlord shall interfere as little as reasonably practicable with the conduct of Sub-Subtenant's business in the Premises. Sub-Subtenant further understands that Sub-Sublandlord shall not be required to make any repairs to the roof, structural elements of exterior walls, foundation, load bearing structural members or HVAC unless and until Sub-Subtenant has notified Sub-Sublandlord in writing of the need for such repair and Sub-Sublandlord shall have a reasonable period of time thereafter to commence said repair (in cases of an emergency where personal injury or damage to Sub-Subtenant's property is imminent, or where Sub-Subtenant is unable to open for business to the public, the parties agree that a reasonable period for Sub-Sublandlord to commence the cure is within 48 hours after notice from Sub-Subtenant) and thereafter diligently prosecute the same to completion. If Sub-Sublandlord fails to timely make the repairs as required hereunder, then Sub-Subtenant may, at Sub-Subtenant's option, after giving Sub-Sublandlord written notice ("Repair Notice"), perform the repair covenant or agreement that Sub-Sublandlord failed to perform and bill Sub-Sublandlord the reasonable cost thereof which sets forth a reasonably itemized breakdown of its costs and expenses in connection with such repair (a "Repair Invoice"). If Sub-Subtenant takes such action, Sub-Subtenant shall use only those contractors used by Sub-Sublandlord for similar work unless such contractors are unwilling or unable to perform such work, in which event Sub-Subtenant may utilize the services of any other qualified contractor which normally and regularly performs similar work in comparable buildings. Promptly following completion of any work taken by Sub-Subtenant pursuant to the terms of this Section 4(b), Sub-Subtenant shall deliver a detailed invoice of the work completed and the reasonable costs relating thereto. If the work was required under the terms of this Sublease to be taken by Sub-Sublandlord, and Sub-Subtenant provided a proper Repair Notice, Sub-Sublandlord shall pay Sub-Subtenant the amount set forth in the Repair Invoice within 30 days after receipt of the same. If Sub-Sublandlord does not reimburse Sub-Subtenant for a properly presented Repair Invoice within 30 days of receipt and if Sub-Sublandlord has not timely delivered to Sub-Subtenant an Objection Notice as described below, then Sub-Subtenant may deduct from the future installment(s) of Base Rent next payable by Sub-Subtenant under this Sublease, the

4

amount set forth in the Repair Invoice (the "Offset Right"). Notwithstanding the foregoing, if Sub-Sublandlord delivers to Sub-Subtenant, within 30 days after receipt of the Repair Invoice, a written objection to the payment of such Repair Invoice, setting forth with reasonable particularity Sub-Sublandlord's good faith reasons for its claim that such action did not have to be taken by Sub-Sublandlord pursuant to the terms of this Sublease or that the charges are excessive (in which case Sub-Sublandlord shall pay the amount it contends would not have been excessive) (an "Objection Notice"), then Sub-Subtenant shall not be entitled to an Offset Right but shall be entitled to bring a claim against Sub-Sublandlord for reimbursement of such unpaid amounts.

(c)     Security Deposit.  Concurrently with the execution of this Sub-Sublease, Sub-Subtenant shall deliver to Sub-Sublandlord the sum of Fifty Thousand Dollars ($50,000) as a security deposit ("Security Deposit"), which Security Deposit shall be held by Sub-Sublandlord as security for the faithful performance by Sub-Subtenant of all of the terms, covenants and conditions of this Sub-Sublease to be kept and performed by Sub-Subtenant during the Term. If Sub-Subtenant fully performs its obligations under this Sub-Sublease, one-half of the Security Deposit shall be applied to the monthly Base Rent due under this Sub-Sublease for the 36th month following the Commencement Date and, thereafter, the term "Security Deposit" as used herein shall mean the sum of Twenty-Five Thousand Dollars ($25,000). If Sub-Subtenant defaults with respect to any provisions of this Sub-Sublease, including, but not limited to, the provisions relating to the payment of any rent due to Sub-Sublandlord under this Sub-Sublease, Sub-Sublandlord may (but shall not be required to) use, apply or retain all or any part of the Security Deposit for the payment of any rent in default, or for the payment of any other amount which Sub-Sublandlord may spend or become obligated to spend by reason of Sub-Subtenant's default or to compensate Sub-Sublandlord for any loss or damage which Sub-Sublandlord may suffer by reason of Sub-Subtenant's default. If any portion of the Security Deposit is so used or applied, Sub-Subtenant agrees, within ten (10) days after Sub-Sublandlord's written demand therefor, to deposit cash with Sub-Sublandlord in an amount sufficient to restore the Security Deposit to its original amount and Sub-Subtenant's failure to do so shall constitute a material default under this Sub-Sublease. If Sub-Subtenant fully performs its obligations under this Sub-Sublease, including, without limitation, surrendering the Sub-Sublease Premises upon the expiration or sooner termination of this Sub-Sublease in compliance with this Sub-Sublease, the

5

Security Deposit or any balance thereof will be returned to Sub-Subtenant (or, at Sub-Sublandlord's option, to the last assignee of Sub-Subtenant's interest hereunder) within thirty (30) days following the expiration of the Sub-Sublease Term.  The Security Deposit is not, and may not be construed by Sub-Subtenant to constitute, rent for the last month or any portion thereof.  Neither the Security Deposit nor the application thereof by Sub-Sublandlord, as provided in this Section shall be a bar or defense to any action in unlawful detainer or to any action which Sub-Sublandlord may at any time commence for a breach of any provision of this Sub-Sublease.  Sub-Sublandlord is not required to keep the Security Deposit separate from its general funds, and Sub-Subtenant is not entitled to interest on such Security Deposit.  The parties agree that the foregoing provisions shall govern with respect to the Security Deposit and, accordingly, Sub-Subtenant hereby waives the provisions of Section 1950.7 of the California Civil Code, or any successor statute.

(d)     Direct Action.  Subject to Sublandlord's prior written approval, Sub-Sublandlord shall have the right, but not the obligation, by written notice to Sub-Subtenant, to have Sub-Subtenant pay all or any portion of sums due and payable by Sub-Subtenant to Sub-Sublandlord under this Sub-Sublease directly to Sublandlord until such time as Sub-Sublandlord directs otherwise by written notice to Sub-Subtenant.  Any such payment made by Sub-Subtenant to Sublandlord shall be deemed to have been made on behalf of Sub-Sublandlord.  In addition, if Sublandlord notifies Sub-Subtenant that Sub-Sublandlord is in default under the Master Sublease and demands that the rents under this Sub-Sublease thereafter be paid to Sublandlord, Sub-Sublandlord hereby expressly authorizes Sub-Subtenant to make such payments to Sublandlord in compliance with Sublandlord's written demand, without inquiry as to whether a default actually exists under the Master Sublease or otherwise, and hereby agrees that rents paid by Sub-Subtenant to Sublandlord in compliance with such demand from Sublandlord shall constitute a release and discharge of all liability of Sub-Subtenant to Sub-Sublandlord for any such payments made to Sublandlord.  However, Sub-Subtenant shall not make any such payments to Sublandlord prior to providing Sub-Sublandlord with a copy of Sublandlord's demand notice.

5.     Surrender of Premises.  Upon the expiration of the Term or earlier termination of this Sub-Sublease, Sub-Subtenant shall (a) surrender the Premises to Sub-Sublandlord in the

6

condition required by the Master Sublease; and (b) repair any damage to the Premises caused by Sub-Subtenant, including, without limitation, damage occasioned by the removal of Sub-Subtenant's trade fixtures, furnishings, equipment and personal property. Notwithstanding anything to the contrary set forth in this Section or elsewhere in this Sub-Sublease to the contrary, Sub-Subtenant shall in no event remove any permanently affixed improvements, fixtures or equipment from the Premises without Sub-Sublandlord's and Sublandlord's prior written consent.

6.      Master Sublease.

(a)      Incorporation of Master Sublease Provisions. All terms and conditions of the Master Sublease are incorporated into and made a part of this Sub-Sublease as if Sub-Sublandlord were the "Sub-Sublandlord" thereunder, Sub-Subtenant the "Sub-Subtenant" thereunder, Sublandlord the "Landlord" thereunder, the Commencement Date the "Commencement Date" thereunder, the Master Sublease the "Master Lease" thereunder, and so on, except where the context clearly requires otherwise, and except that the following terms and conditions of the Master Sublease shall not be deemed incorporated in this Sub-Sublease: Section 2.1, that portion of Section 2.3 commencing with the word "Notwithstanding", Section 3.1(a), Section 3.1(b), Section 4.1, Section 5.5, Section 7.3, Section 9.3, Section 13.1, Section 14, Section 16, Section 18.6, Section 18.7, Section 18.8 and all Exhibits (other than the depiction of the Premises). Notwithstanding the incorporation of the terms of the Master Sublease as provided above, in the event of a direct conflict between such incorporated terms and the express terms of this Sub-Sublease, such express terms shall control.

(b)      Master Sublease Superior. This Sub-Sublease is subject and subordinate to the Master Sublease; provided that as between Sub-Sublandlord and Sub-Subtenant only, in the event of a direct conflict between the terms of the Master Sublease and the express terms of this Sub-Sublease, the terms of this Sub-Sublease will control. Sub-Subtenant covenants not to take any action or do or perform any act or fail to perform any act which would result in the breach or default of any of the covenants, agreements, terms, provisions or conditions of the Master Sublease. If the Master Sublease terminates, this Sub-Sublease shall terminate and the parties shall be relieved of any further liability or obligation under this Sub-Sublease; provided,

7

however, that if the Master Sublease terminates as a result of a default or breach by Sub-Sublandlord or Sub-Subtenant under the Master Sublease or this Sub-Sublease, the defaulting party shall be liable to the non-defaulting party for all actual damages suffered as a result of such termination, not including any special damages, punitive damages or so-called consequential damages (except with respect to environmental contamination caused by Sub-Subtenant or its agent, employees, contractors or invitees, and except to the extent future rent damages might be considered "consequential" damages). So long as Sub-Subtenant is not in default (which default is of a material term, continuing beyond any applicable cure period) under this Sub-Sublease, Sub-Sublandlord shall not enter into an agreement with Sublandlord to terminate (or amend the Sublease to Sub-Subtenant's detriment) the Master Sublease and/or take any action that would result in the termination (or amendment to Sub-Subtenant's detriment) of the Master Sublease (except a termination contemplated under the Master Sublease following a casualty or condemnation) without the prior written consent of Sub-Subtenant. In the event Sub-Sublandlord is prepared to enter into an agreement which would modify the Master Sublease in any regards, Sub-Sublandlord shall provide to Sub-Subtenant a copy of such agreement not less than five (5) business days prior to the execution thereof.

(c)     Obligations of Sub-Sublandlord.     Sub-Sublandlord shall not take any action or fail to perform any act which would result in a breach or default by Sub-Sublandlord of any of the terms or conditions of the Master Sublease, except to the extent arising or resulting from a breach or default by Sub-Subtenant of the terms of this Sub-Sublease, if Sub-Subtenant default is not cured within any applicable cure period.

7.     No Liability for Performance by Master Landlord or Sublandlord.

(a)     No Assumption of Master Landlord or Sublandlord Obligations.     Sub-Sublandlord does not assume the obligations of Master Landlord or Sublandlord under any of the provisions of the Master Lease or Master Sublease, whether or not incorporated into this Sub-Sublease, and shall not be liable to Sub-Subtenant for the performance of Master Landlord under the Master Lease or Sublandlord under the Master Sublease or for any other act or omission by Master Landlord or Sublandlord or any officers, agents, employees, contractors, invitees or licensees of either such party, and Sub-Sublandlord shall have no obligation to cure any default

8

by Master Landlord under the Master Lease or by Sublandlord under the Master Sublease. Without limitation on the foregoing, and notwithstanding the incorporation of any of the Master Sublease provisions (including any of the Master Lease provisions incorporated into the Master Sublease) into this Sub-Sublease, Sub-Sublandlord shall have no obligation or liability to Sub-Subtenant with respect to (i) matters that are the obligation of Master Landlord under the Master Lease or Sublandlord under the Master Sublease but that are not Sub-Sublandlord's obligation under the Master Sublease (e.g., the obligation of Master Landlord to rebuild following a casualty), or (ii) Sub-Sublandlord's failure to perform any obligation under this Sub-Sublease to the extent such failure is caused by the breach of Sub-Subtenant under this Sub-Sublease or by any breach of the Master Lease or wrongful act or omission of Master Landlord or Sublandlord.

(b)     Reasonable Efforts Obligations.  Notwithstanding the foregoing, within a reasonable period after Sub-Subtenant gives Sub-Sublandlord written notice of the occurrence of any breach or failure by Sublandlord, Sub-Sublandlord shall undertake commercially reasonable efforts to attempt to cause Sublandlord to perform its obligations under the Master Sublease (the "Reasonable Efforts Obligations").  If Sublandlord fails to do so in a timely manner, Sub-Sublandlord shall, if requested by Sub-Subtenant and if Sub-Sublandlord is provided with adequate security and determines, in its reasonable discretion, that the same will be without prejudice to Sub-Sublandlord's rights and will not increase Sub-Sublandlord's obligations or risk of liability under the Master Sublease, either pursue its rights against Sublandlord or assign to Sub-Subtenant any claim it may have against Sublandlord on account of any such default. Except to the extent that Sub-Sublandlord fails to discharge its Reasonable Efforts Obligations hereunder, Sub-Subtenant hereby waives any action, claim or rights it may have or acquire at law or in equity against Sub-Sublandlord arising out of the failure of Master Landlord to fulfill its obligations under the Master Lease or of Sublandlord under the Master Sublease or any act or omission of Master Landlord or Sublandlord or their agents, employees, contractors, representatives, licensees or invitees.

(c)     During the Term, Sub-Sublandlord shall provide to Sub-Subtenant, within two (2) business days after delivery or receipt, as the case may be, copies of any written notice of default or other material notice that it may give to or receive from Sublandlord under the Master Sublease or Master Landlord under the Master Lease pertaining to the Sublease or the Sublease

9

Premises.

      (d)      Without limiting the last sentence in Section 7(b) above, if Sub-Sublandlord has a right to terminate the Master Sublease as a result of any damage, destruction, condemnation or similar event affecting the Premises, then Sub-Subtenant shall be entitled (by delivery of written notice to Sub-Sublandlord at least 10 days prior to the last day in which Sub-Sublandlord has the right to terminate the Master Sublease) to terminate this Sub-Sublease. In addition, to the extent that Sub-Sublandlord's obligation to pay rent under the Master Sublease is abated under the Master Sublease following damage, destruction, condemnation or similar event affecting the Premises casualty, then Sub-Subtenant's obligation to pay Monthly Basic Rent shall be concurrently proportionately abated.

      8.      Alterations.  Sub-Subtenant shall make no alterations, installations, additions or improvements, including Sub-Subtenant's initial leasehold improvements, (collectively, "Alterations") in or about the Premises without the prior written consent of Sub-Sublandlord and Landlord in each instance, which consent shall not be unreasonably withheld, conditioned or delayed by Sub-Sublandlord as to nonstructural Alterations which do not affect building systems provided any required consent of Master Landlord (to the extent required under the Master Lease) and Sublandlord (to the extent required under the Master Sublease) shall have first been obtained.  Any Alterations consented to by Sub-Sublandlord shall be performed by Sub-Subtenant, at its sole cost and expense, and in compliance with the requirements of Section 7 of the Master Sublease incorporated herein.

      9.      Insurance.  Sub-Subtenant, at Sub-Subtenant's sole expense, shall maintain for the benefit of Sub-Subtenant, Sub-Sublandlord and Master Landlord such policies of insurance required to be maintained by the "Tenant" under the Master Lease or reasonably satisfactory to Sub-Sublandlord as to coverage and insurer (who shall be licensed to do business in the State of California), provided that such insurance shall at a minimum include comprehensive general liability insurance protecting and indemnifying Sub-Sublandlord, Sublandlord, Master Landlord and Sub-Subtenant against any and all claims and liabilities for injury or damage to persons or property or for the loss of time or of property occurring upon, in or about the Premises, and the public portions of the Premises, caused by or resulting from or in connection with any act or

10

omission of Sub-Subtenant or Sub-Subtenant's employees, agents or invitees. Sub-Subtenant shall furnish to Sub-Sublandlord, Sublandlord and Master Landlord certificates of insurance evidencing such coverage prior to the Commencement Date. Subject to the terms of the Master Lease and Master Sublease with respect thereto, Sub-Subtenant may satisfy its insurance requirements hereunder by a separate policy(ies) or under one or more blanket policies, provided the coverage applicable to the Premises is not diminished thereby.

10.     Assignment, Subletting and Encumbrances.  In addition to needing to obtain Sublandlord's prior written consent to a proposed assignment, sublease, encumbrance or other transfer by Subtenant pursuant to the provisions of the Master Sublease incorporated into this Sub-Sublease as provided above (which consent shall not be unreasonably withheld by Sub-Sublandlord as provided therein), Sub-Subtenant shall obtain the consent of Master Landlord and Sublandlord to any assignment, sublease, encumbrance or other transfer in accordance with the terms of the Master Sublease, and Sub-Sublandlord shall have no obligation or liability with respect to Sublandlord's or Master Landlord's consent or the lack thereof or actions taken by Sublandlord or Master Landlord in response thereto.  Any attempted assignment, license, franchise, transfer, mortgage, encumbrance, subletting, limited liability company or other entity dissolution or change of ownership without the consent of Sub-Sublandlord, Sublandlord and Master Landlord shall confer no rights upon any third parties and shall be a material default hereunder.  If Sub-Subtenant shall assign this Sub-Sublease or further sublease the Premises, Sub-Subtenant shall pay to Sub-Sublandlord as additional rent, a sum equal to 75% of any fixed rent, additional rent and other consideration (less the reasonable documented cost of brokerage commissions, tenant improvement allowances and abated rental actually paid or provided by Sub-Subtenant as part of such assignment) paid to Sub-Sublandlord by any assignee or subtenant, which is in excess of the Fixed Rent and additional rent then being paid by Sub-Subtenant to Sub-Sublandlord pursuant to the terms hereof.

11.     Indemnification.     Sub-Subtenant shall indemnify, protect, defend and hold harmless Sub-Sublandlord, Sublandlord and Master Landlord (and their respective employees, agents, contractors and licensee) against any (a) negligence of Sub-Subtenant (or anyone claiming by or through Sub-Subtenant) or its or their partners, members, directors, officers or employees; (b) breach of any representation or warranty made by Sub-Subtenant in this Sub-

11

Sublease or default by Sub-Subtenant under this Sub-Sublease; (c) use, occupancy, control, management, operation and possession of the Premises; (d) any work done at the Premises, and any agreements that Sub-Subtenant (or anyone claiming through Sub-Subtenant) makes for such work; (e) the condition of the Premises or any street, curb or sidewalk adjoining the Premises, or any vaults, tunnels, passageways or space under, adjoining or appurtenant to the Premises; and (f) any accident, injury or damage whatsoever caused to any person in or on the Premises or upon or under the sidewalks adjoining the Premises. If any action or proceeding shall be brought against Sub-Sublandlord, Sublandlord or Master Landlord by reason of any such claim, Sub-Subtenant, upon notice from Sub-Sublandlord, Sublandlord or Master Landlord, shall resist and defend such action or proceeding and employ counsel therefor reasonably satisfactory to Sub-Sublandlord, Sublandlord and Master Landlord. Sub-Subtenant's obligations under this Section shall survive the expiration or other termination of this Sub-Sublease. Sub-Subtenant's indemnification obligations pursuant to this Section shall not apply to the extent that the claim, cause of action or liability in question resulted from Sub-Sublandlord's failure to perform in accordance with the terms of this Sub-Sublease or Sub-Sublandlord's negligence or willful misconduct.

12.     Quite Enjoyment. Sub-Sublandlord covenants that as long as Sub-Subtenant shall pay the Monthly Fixed Rent and other amounts due hereunder, and shall observe, perform and comply with all of the terms and conditions of this Sub-Sublease, then Sub-Subtenant shall, subject to the terms of the Master Lease, the Master Sublease and this Sub-Sublease, have the quiet enjoyment and possession of the Premises during the entire term without hindrance by Sub-Sublandlord.

13.     Time Limits.

(a)     Applicable to Sub-Subtenant. Except with respect to actions to be taken by Sub-Subtenant for which shorter time limits are specifically set forth in this Sub-Sublease, which time limits shall control for the purposes of this Sub-Sublease, the time limits provided in those portions of the Master Sublease that are incorporated herein for the giving or making of any Notice (as hereinafter defined) by the subtenant thereunder to Sublandlord, the holder of any leasehold mortgage or any other party, or for the performance of any act, condition or covenant

12

by the subtenant thereunder, or for the exercise of any right, remedy or option by the tenant thereunder, are changed for the purpose of incorporation into this Sub-Sublease, by shortening the same in each instance by (i) fifteen (15) days with respect to all such periods of sixty (60) or more days, (ii) seven (7) days with respect to all such periods of thirty (30) or more days but less than sixty (60) days, (iii) five (5) days with respect to all such periods of twenty (20) or more but less than thirty (30) days and (iv) three (3) days with respect to all such periods of less than twenty (20) days, provided, however, that in no event shall any such period be shortened to less than three (3) days, so that any Notice may be given or made, or any act, condition or covenant performed, or option hereunder exercised, by Sub-Sublandlord within the time limit relating thereto contained in the Master Lease.

(b)     Applicable to Sub-Sublandlord.  Except with respect to actions to be taken by Sub-Sublandlord for which longer time limits are specifically set forth in this Sub-Sublease, which time limits shall control for the purposes of this Sub-Sublease, the time limits provided in the Master Sublease for the giving or making of any Notice by Sublandlord or the performance of any act, covenant or condition by Sublandlord for the exercise of any right, remedy or option by Sublandlord thereunder are changed for the purposes of this Sub-Sublease, by lengthening the same in each instance by (i) ten (10) days with respect to all such periods of sixty (60) or more days, (ii) seven (7) days with respect to all such periods of thirty (30) or more but less than sixty (60) days, (iii) five (5) days with respect to all such periods of twenty (20) or more but less than thirty (30) days and (iv) three (3) days with respect to all such periods of less than twenty (20) days so that any Notice may be given or made, or any act, condition or covenant performed or option hereunder exercised by Sub-Sublandlord within the number of days respectively set forth above, after the time limits relating thereto contained in the Master Sublease.

14.     Notices.  All notices, consents, approvals or other communications (collectively, a "Notice") required to be given under this Sub-Sublease or pursuant to law shall be in writing and, unless otherwise required by law, shall be given by certified mail, return receipt requested, postage prepaid or by nationally recognized overnight courier service, to the parties at their respective addresses set forth below or such other address as either may designate by Notice to the other.

To Sub-Subtenant:   Prior to the Commencement Date:

> Cisco Bros. Corp.
> 5955 S. Western Ave.
> Los Angeles, CA 90047
> Attention: Francisco Pinedo

After the Commencement Date:

> To the Premises,
> Attention: Francisco Pinedo

To Sub-Sublandlord:   QS Retail, Inc. 15202 Graham Street
> Huntington Beach, California 92649
> Attention: Lease Administrator

With a copy to:   O'Neil LLP
> 19900 MacArthur Blvd -- Suite 1050
> Irvine, California 92660
> Attention: Leasing Counsel

To Sublandlord:   PRADA USA CORP.
> 610 West 52nd Street
> New York, New York 10019
> Attention: General Counsel

With a copy to:   Duval & Stachenfeld LLP
> 300 East 42nd Street
> New York, New York, 10017
> Attention: Eric G. Menkes, Esq

Any Notice given pursuant hereto shall be deemed to have been received on the third business day after the mailing thereof if mailed in accordance with the terms hereof or on the following business day after delivery to the overnight courier service. Counsel for Sub-Sublandlord and Sub-Subtenant may give Notices hereunder on behalf of their respective clients.

15.   Consent. When consent or approval of either Sublandlord or Sub-Sublandlord is required by this Sub-Sublease, Sub-Subtenant shall not take or omit to take any action requiring such consent or approval without first obtaining such consent or approval. Upon request of Sub-Subtenant, Sub-Sublandlord will request Sublandlord's consent to any action or omission of Sub-Subtenant for which such consent or approval is required. If Sublandlord grants such consent or approval, Sub-Sublandlord shall also so consent or approve Subtenant's request provided that the

14

matter for which Sub-Subtenant is seeking consent or approval shall not (i) increase the obligations or potential liability of Sub-Sublandlord hereunder or under the Master Sublease, (ii) eliminate or adversely modify the rights and options of Sub-Sublandlord under this Sub-Sublease or the Master Sublease, or (iii) eliminate or reduce the obligations of Sub-Subtenant under this Sub-Sublease. Sub-Sublandlord and Sub-Subtenant acknowledge that the Master Sublease requires that Sub-Sublandlord obtain the written consent of Sublandlord and Master Landlord to any subletting of the Premises. Sub-Sublandlord agrees to diligently pursue obtaining such written consent from Sublandlord and Master Landlord with respect to this Sub-Sublease, and Sub-Subtenant agrees to fully cooperate with Sub-Sublandlord in that regard, including, without limitation, providing such information as Sub-Sublandlord may be required to provide Sublandlord or Master Landlord. If either Sublandlord or Master Landlord fails to provide its written consent to this Sub-Sublease in the form attached hereto as Exhibit B or other form reasonably acceptable to Sub-Subtenant and Sub-Sublandlord (collectively, the "Consent"), by January 31, 2013, Sub-Subtenant shall have the right, at any time after January 31, 2013 (but prior to receipt of the Consent), to terminate this Sub-Sublease by written notice to Sub-Sublandlord. In the event Sub-Subtenant has not given notice to terminate as set out above, in the event Consent is not received by February 10, 2013, then Sub-Sublandlord shall have the right, at any time after February 10, 2013 (but prior to receipt of the Consent) to terminate this Sub-Sublease by delivery of written notice of termination to Sub-Subtenant. In addition, if either Sublandlord or Master Landlord notifies Sub-Sublandlord or Sub-Subtenant that Sublandlord or Master Landlord is unwilling to provide the Consent, then either Sub-Subtenant or Sub-Sublandlord shall have the right, at any time after receipt of such notice (but prior to receipt of the Consent), to terminate this Sublease by delivery of written notice of termination to the other. In the event of a termination of this Sub-Sublease pursuant to the preceding sentences, Sub-Sublandlord shall return any rent and Security Deposit previously paid by Sub-Subtenant to Sub-Sublandlord in connection with this Sub-Sublease and Sub-Sublandlord and Sub-Subtenant shall have no further obligations to the other under this Sub-Sublease (except for obligations relating to time periods prior to the date of such termination). Sub-Sublandlord shall not be liable in any respect if either Sublandlord or Master Landlord fails or is unwilling to provide the Consent.

16.      Brokers. Sub-Subtenant and Sub-Sublandlord represent and warrant to each other that they have not dealt with any broker in connection with this Sub-Sublease other than Urban

15

Retail Real Estate Group, representing Sub-Sublandlord, and Innovative Retail Partners, Inc., representing Sub-Subtenant (collectively, "Broker"), to whom Sub-Sublandlord shall pay a commission pursuant to separate written agreement (and subject to the Consent being obtained), Sub-Sublandlord and Sub-Subtenant know of no other real estate broker, agent or finder who is or might be entitled to a commission or compensation in connection with this Sub-Sublease. Sub-Subtenant and Sub-Sublandlord shall indemnify and hold each other harmless from and against any and all loss, claims, liabilities, damages and expenses, including, without limitation, attorneys' fees and expenses and court costs, arising out of or in connection with any breach or alleged breach of the above representations or any claim by any person or entity other than Broker for brokerage commissions or other compensation in connection with the consummation of this Sub-Sublease. The provisions of this Article 15 shall survive the expiration or sooner termination of this Sub-Sublease.

17.    Waiver of Rights to Jury and Counterclaim.  Sub-Sublandlord and Sub-Subtenant each hereby waive to the fullest extent permitted by law, trial by jury in any action, proceeding or counterclaim brought by either of the parties against the other on any matters whatsoever arising out of or in any way connected with this Sub-Sublease, the relationship of Sub-Sublandlord and Sub-Subtenant, Sub-Subtenant's use or occupancy of the Premises, and/or any claim of injury or damage, or for the enforcement of any remedy under any statute, emergency or otherwise. Sub-Sublandlord and Sub-Subtenant further agree that in the event Sub-Sublandlord commences any summary proceeding for non-payment of rent, Sub-Subtenant will not interpose any counterclaim (other than compulsory counterclaims) of whatever nature or description in any such proceeding.  Sub-Subtenant hereby waives its right to interpose or counterclaim (other than compulsory counterclaims) in any summary proceeding instituted to remove Sub-Subtenant from the Premises or in any action or proceeding instituted for the collection of Fixed Rent, Additional Rent or other amounts Sub-Subtenant is obligated to pay Sub-Sublandlord hereunder.

18.    Miscellaneous.

(a)    This Sub-Sublease shall be governed by and construed in accordance with the laws of the State of California.

(b)    The section headings in this Sub-Sublease are inserted only as a matter of

16

convenience for reference and are not to be given any effect in construing this Sub-Sublease.

(c)     If any of the provisions of this Sub-Sublease or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Sub-Sublease, or the application of such provision or provisions to persons or circumstances other than those as to whom or which it is held invalid or unenforceable, shall not be affected thereby, and every provision of this Sub-Sublease shall be valid and enforceable to the fullest extent permitted by law.

(d)     All of the terms and provisions of this Sub-Sublease shall be binding upon and inure to the benefit of the parties hereto and, subject to the provisions of Section 10 hereof, their respective successors and assigns.

(e)     Sub-Sublandlord has made no representations, warranties or covenants to or with Sub-Subtenant with respect to the subject matter of this Sub-Sublease except as expressly provided herein and all prior negotiations and agreements relating thereto are merged into this Sub-Sublease.  This Sub-Sublease may not be amended or terminated, in whole or in part, nor may any of the provisions be waived, except by a written instrument executed by the party against whom enforcement of such amendment, termination or waiver is sought and unless the same is permitted under the terms and provisions of the Master Sub-Sublease.

(f)     After the execution and delivery hereof, Sub-Sublandlord and Sub-Subtenant shall from time to time at the reasonable request of the other and at the cost and expense of the requesting party, execute and deliver such other instruments and take such other actions as the requesting party may reasonably request in order to fully consummate the transactions contemplated by this Sub-Sublease.

(g)     Sub-Sublandlord represents, warrants and covenants to Sub-Subtenant that (a) the copy of the Master Sublease which is attached hereto as Exhibit A (and the redacted Master Lease attached thereto) is to Sub-Sublandlord's actual knowledge a true and correct copy of the Master Sublease and redacted Master Lease, including all amendments and modifications thereto, and that both the Master Sublease and Master Lease are in full force and effect as of the date of this Sub-Sublease; (b) to Sub-Sublandlord's actual knowledge, Sub-Sublandlord is not in

17

default under or breach of any of the provisions of the Master Sublease that would materially adversely affect Sub-Subtenant's use or enjoyment of the Sub-Sublease Premises; and (c) Sub-Sublandlord has not, other than under the provisions of this Sub-Sublease, sublet or assigned its right to occupancy of the Sub-Sublease Premises

Executed as of the date first above written.

Sub-Sublandlord:

QS RETAIL, INC.

By: _____

Name: Brad L. Holman

Title: CFO - QUIKSILVER Americas

Sub-Subtenant:

CISCO BROS. CORP.

By: _____

Name: Terry Shope

Title: President

By: _____

Name: _____

Title: _____

18