**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------- x

In re:                                                              :     Chapter 11
                                                                    :
QUIKSILVER, INC., *et al.*,[1]                                      :     Case No. 15-11880 (BLS)
                                                                    :
               Debtors.           :     Jointly Administered
                                                                    :
                                                                    :
                                                                    :     **Hearing Date: Only if an objection is filed**
------------------------------------------------------------- x    **Objection Deadline: December 8, 2015 at 4:00 p.m.**
                                                                **(ET)**

**FIRST MONTHLY APPLICATION OF AKIN GUMP
STRAUSS HAUER & FELD LLP, CO-COUNSEL FOR THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS OF QUIKSILVER, INC.,
ET AL., FOR INTERIM ALLOWANCE OF COMPENSATION AND
FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED
<u>DURING THE PERIOD SEPTEMBER 28, 2015 THROUGH OCTOBER 31, 2015</u>**

This is an __x__ interim          ____ final application

| | |
|---|---|
| Name of Applicant: | <u>Akin Gump Strauss Hauer & Feld LLP</u> |
| Authorized to Provide Professional Services to: | <u>Official Committee of Unsecured Creditors of Quiksilver, Inc., *et al.*</u> |
| Date of Retention: | <u>November 13, 2015 (*nunc pro tunc* to September 28, 2015)</u> |
| Period for which Compensation and Reimbursement Is Sought: | <u>September 28, 2015 through October 31, 2015</u> |
| Amount of Compensation Sought as Actual, Reasonable and Necessary: | <u>$972,896.40 (80% of $1,216,120.50)</u> |
| Amount of Reimbursement Sought as Actual, Reasonable and Necessary: | <u>$39,007.73</u> |

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

**SUMMARY OF PROFESSIONALS AND PARAPROFESSIONALS
RENDERING SERVICES DURING THE PERIOD
SEPTEMBER 28, 2015 THROUGH OCTOBER 31, 2015**

| Name of Professional/ Paraprofessional Person | Position of the Applicant, Number of Years in that Position at Current or Prior Firms, Year of Obtaining License to Practice, Area of Expertise | Hourly Billing Rate | Total Hours Billed | Total Compensation Requested |
|---|---|---|---|---|
| Joseph Sorkin | Partner for 4 years; Admitted in 2001; Litigation Department | $865.00 | 156.50 | $135,372.50 |
| Howard Jacobson | Partner for 17 years; Admitted in 1979; Tax Department | $865.00 | 2.40 | $2,076.00 |
| Michael Stamer | Partner for 17 years; Admitted in 1989; Financial Restructuring Department | $1,250.00 | 80.30 | $100,375.00 |
| Stephen Kuhn | Partner for 15 years; Admitted in 1991; Corporate Department | $975.00 | 37.70 | $36,757.50 |
| Abid Qureshi | Partner for 7 years; Admitted in 1995; Financial Restructuring Department | $1,095.00 | 99.10 | $108,514.50 |
| Frederick Lee | Partner for 2 years; Admitted in 2005; Corporate Department | $850.00 | 7.30 | $6,205.00 |
| Meredith Lahaie | Partner for 1 year; Admitted in 2007; Financial Restructuring Department | $850.00 | 147.80 | $125,630.00 |
| Carlos Villota | Senior Counsel for 5 years; Admitted in 1997; Corporate Department | $680.00 | 5.10 | $3,468.00 |

#36435500 v1

| Name of Professional/ Paraprofessional Person | Position of the Applicant, Number of Years in that Position at Current or Prior Firms, Year of Obtaining License to Practice, Area of Expertise | Hourly Billing Rate | Total Hours Billed | Total Compensation Requested |
|---|---|---|---|---|
| Angeline Koo | Senior Counsel for 2 years; Admitted in 2005; Litigation Department | $695.00 | 1.90 | $1,320.50 |
| Michael Cooley | Senior Counsel for 5 years; Admitted in 2000; Financial Restructuring Department | $800.00 | 41.30 | $33,040.00 |
| Ashley Beane | Counsel for 2 years; Admitted in 2008; Financial Restructuring Department | $750.00 | 258.90 | $194,175.00 |
| Antonio Delgado | Counsel for 1 year; Admitted in 2009; Litigation Department | $675.00 | 138.10 | $93,217.50 |
| Rachel Presa | Associate for 5 years; Admitted in 2011; Litigation Department | $630.00 | 63.50 | $40,005.00 |
| William Mongan | Associate for 4 years; Admitted in 2012; Litigation Department | $610.00 | 63.10 | $38,491.00 |
| Lech Wilkiewicz | Associate for 2 years; Admitted in 2013; Corporate Department | $430.00 | 4.70 | $2,021.00 |
| Jacob Itzkowitz | Associate for 1 year; Admitted in 2015; Litigation Department | $430.00 | 7.20 | $3,096.00 |

#36435500 v1

| Name of Professional/ Paraprofessional Person | Position of the Applicant, Number of Years in that Position at Current or Prior Firms, Year of Obtaining License to Practice, Area of Expertise | Hourly Billing Rate | Total Hours Billed | Total Compensation Requested |
|---|---|---|---|---|
| Lauren Lifland | Associate for 2 years; Admitted in 2012; Financial Restructuring Department | $650.00 | 202.10 | $131,365.00 |
| Rachelle Rubin | Associate for 2 months; Bar Admission Pending; Financial Restructuring Department | $430.00 | 73.30 | $31,519.00 |
| Carolyn Mattus Cornell | Associate for 1 year; Admitted in 2011; Litigation Department | $615.00 | 103.80 | $63,837.00 |
| Dmitry Iofe | EDiscovery Project Coordinator for 3 years | $280.00 | 9.70 | $2,716.00 |
| Kwan Koehler | Trademark Specialist for 1 year; Intellectual Property Department | $270.00 | 3.00 | $810.00 |
| Risa Slavin | Legal Assistant for 20 years; Litigation Department | $275.00 | 4.50 | $1,237.50 |
| Brenda Kemp | Legal Assistant for 12 years; Financial Restructuring Department | $255.00 | 3.40 | $867.00 |
| Tracy Southwell | Legal Assistant for 22 years; Financial Restructuring Department | $275.00 | 84.90 | $23,347.50 |

#36435500 v1

| Name of Professional/ Paraprofessional Person | Position of the Applicant, Number of Years in that Position at Current or Prior Firms, Year of Obtaining License to Practice, Area of Expertise | Hourly Billing Rate | Total Hours Billed | Total Compensation Requested |
|---|---|---|---|---|
| Dagmara Krasa-Berstell | Legal Assistant for 25 years; Financial Restructuring Department | $275.00 | 55.20 | $15,180.00 |
| Ezekiel Pariser | Legal Assistant for 2 years; Litigation Department | $210.00 | 10.90 | $2,289.00 |
| Sarah D'Addese | Legal Assistant for 3 years; Financial Restructuring Department | $210.00 | 33.80 | $7,098.00 |
| Francisco Alvarez | Legal Assistant for 6 months; Financial Restructuring Department | $195.00 | 21.10 | $4,114.50 |
| Madeline Perez | Legal Assistant for 4 months; Litigation Department | $195.00 | 40.90 | $7,975.50 |

Total Amount of Fees:           $1,216,120.50
Total Number of Hours:                1761.50
Blended Hourly Rate:                  $690.38

#36435500 v1

**COMPENSATION BY PROJECT CATEGORY**
**SEPTEMBER 28, 2015 THROUGH OCTOBER 31, 2015**

| Project Category | Total Hours Billed This Period | Total Fees Billed This Period |
|---|---|---|
| General Case Administration (0002) | 72.30 | $43,778.00 |
| Akin Gump Fee Application/Monthly Billing Reports (0003) | 16.20 | $10,530.00 |
| Analysis of Other Professional Fee Applications/Reports (0004) | 5.90 | $4,035.00 |
| Retention of Professionals (0006) | 231.20 | $89,452.00 |
| Committee Meetings (0007) | 45.60 | $36,275.50 |
| Court Hearings (0008) | 162.60 | $140,641.00 |
| Financial Reports and Analysis (0009) | 0.50 | $325.00 |
| DIP, Cash Collateral Usage and Exit Financing (0010) | 1,006.30 | $741,315.50 |
| Executory Contracts/License Agreements (0011) | 0.60 | $450.00 |
| General Claims Analysis/Claims Objections (0012) | 64.90 | $44,407.00 |
| Analysis of Pre-Petition Transactions (0013) | 16.60 | $9,162.00 |
| Lift Stay Litigation (0016) | 12.10 | $7,463.00 |
| General Adversary Proceedings (0017) | 0.30 | $255.00 |
| Tax Issues (0018) | 3.40 | $2,716.50 |
| Labor Issues/Employee Benefits (0019) | 1.10 | $855.00 |
| Real Estate Issues/Leases (0020) | 0.40 | $300.00 |
| Plan, Disclosure Statement and Plan-Related Documentation (0022) | 78.50 | $45,534.50 |
| Asset/Stock Transaction/Business Liquidations (0024) | 6.20 | $5,355.00 |

v

| | | |
|---|---|---|
| Travel (0025) | 36.80 | $33,270.50 |
| **TOTAL FEES REQUESTED** | **1761.50** | **$1,216,120.50** |

#36435500 v1

**DISBURSEMENT SUMMARY**
**SEPTEMBER 28, 2015 THROUGH OCTOBER 31, 2015**

| | |
|---|---|
| Computerized Legal Research | $6,126.42 |
| Courier Service/Messenger Service – Off Site | $14.75 |
| Duplication – In House | $4,281.60 |
| Meals – Business | $235.46 |
| Meals (100%) | $1,066.21 |
| Photographs/Video | $688.63 |
| Transcripts | $8,577.22 |
| Travel – Airfare | $13,106.80 |
| Travel – Ground Transportation | $1,476.05 |
| Travel – Lodging (Hotel, Apt, Other) | $1,448.70 |
| Travel – Parking | $82.00 |
| Travel – Telephone & Fax | $4.95 |
| Travel – Train Fare | $776.00 |
| Committee Chair Expenses | $1,122.94 |
| **TOTAL** | **$39,007.73** |

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x

In re:

QUIKSILVER, INC., *et al.*,[1]

                   Debtors.

------------------------------------------------------------ x

:
:
:
:
:
:
:
:
:
:

Chapter 11

Case No. 15-11880 (BLS)

Jointly Administered

**Hearing Date: Only if an objection is filed**
**Objection Deadline: December 8, 2015 at 4:00 p.m. (ET)**

### FIRST MONTHLY APPLICATION OF AKIN GUMP STRAUSS HAUER & FELD LLP, CO-COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF QUIKSILVER, INC., ET AL., FOR INTERIM ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD SEPTEMBER 28, 2015 THROUGH OCTOBER 31, 2015

Akin Gump Strauss Hauer & Feld LLP ("Akin Gump"), co-counsel to the Official

Committee of Unsecured Creditors (the "Committee") of Quiksilver, Inc. and its affiliated

debtors and debtors in possession (collectively, the "Debtors"), hereby submits its first monthly

application (the "Application") pursuant to (i) sections 330 and 331 of chapter 11 of title 11 of

the United States Code (the "Bankruptcy Code"), (ii) Rule 2016 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), (iii) Rule 2016-2 of the Local Rules of

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware (the "Local Rules") and (iv) the *Order Pursuant to Bankruptcy Code Sections 105(a)*

*and 331 Establishing Interim Compensation Procedures* [Docket No. 379] (the "Interim

Compensation Order"), for interim allowance of compensation for services rendered in the

aggregate amount of $1,216,120.50 and for reimbursement of expenses incurred in the aggregate

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

amount of $39,007.73 for the period commencing September 28, 2015 through and including October 31, 2015 (the "Compensation Period").  Pursuant to the Interim Compensation Order, Akin Gump is seeking payment of 80% of its fees in the amount of $972,896.40 and 100% of its expenses in the amount of $39,007.73 relating to services rendered to the Committee during the Compensation Period.  In support of this Application, Akin Gump respectfully states as follows:

## BACKGROUND

1.      On September 9, 2015 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtors have continued in possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  On September 10, 2015, the Court entered an order providing for the joint administration of the Debtors' chapter 11 cases (the "Chapter 11 Cases") for procedural purposes only pursuant to Bankruptcy Rule 1015(b).

2.      On September 21, 2015, pursuant to Bankruptcy Code section 1102, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the initial five members of the Committee [Docket No. 129].[2]  On September 28, 2015, the U.S. Trustee filed the *Amended Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 163] (the "Amended Notice"), appointing two additional creditors to the Committee.[3]  Following the filing of the Amended Notice, the Committee selected Akin Gump to serve as lead counsel to the Committee.

---

[2]    The initial Committee was comprised of the following entities:  (i) U.S. Bank National Association; (ii) New Generation Advisors, LLC; (iii) Samil Tong Sang, Co.; (iv) Simon Property Group, Inc.; and (v) Global Brands Group.

[3]    The U.S. Trustee appointed T. Rowe Price Credit Opportunities Fund, Inc. and Wilfrid Global Opportunity Fund to the Committee on September 28, 2015.  Also on September 28, 2015, Global Brands Group resigned from the Committee.

#36435500 v1

3.      On October 27, 2015, the Committee filed its application to retain and employ Akin Gump as co-counsel to the Committee (the "Akin Gump Retention Application"), which retention was approved *nunc pro tunc* to September 28, 2015 by an order of this Court dated November 13, 2015 [Docket No. 444] (the "Retention Order").[4]  The Retention Order authorized Akin Gump to be compensated on an hourly basis and to be reimbursed for actual and necessary out-of-pocket expenses.

## JURISDICTION

4.      This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

5.      The statutory and rule predicates for the relief requested herein are Bankruptcy Code sections 330 and 331, Bankruptcy Rule 2016 and Local Rule 2016-2.

## RELIEF REQUESTED

6.      By this Application, Akin Gump seeks (i) allowance of $1,216,120.50 as compensation for services rendered by Akin Gump as co-counsel to the Committee during the Compensation Period, representing 1,761.50 hours in professional and paraprofessional services, (ii) approval of the payment of $972,896.40 (80% of $1,216,120.50) as compensation for such services during the Compensation Period and (iii) approval of the reimbursement of 100% of the actual and necessary expenses incurred by Akin Gump during the Compensation Period in connection with the rendition of such services in the amount of $39,007.73.

---

[4]      On September 28, 2015, the Committee selected Pepper Hamilton LLP ("Pepper Hamilton") as co-counsel.  On November 13, 2015, the Court entered an order approving the Committee's retention of Pepper Hamilton *nunc pro tunc* to September 28, 2015 [Docket No. 442].  On September 29, 2015, the Committee selected PJT Partners L.P. ("PJT") as its investment banker.  On November 13, 2015, the Court entered an order approving the Committee's retention of PJT *nunc pro tunc* to September 29, 2015 [Docket No. 443].

7.     Pursuant to the Interim Compensation Order, if no objections to this Application are filed within 21 days of the date hereof, Akin Gump may be paid 80% of the fees and reimbursed for 100% of the expenses requested in this Application.

8.     Akin Gump has received no payment and no promises for payment from any source for services rendered in connection with these Chapter 11 Cases.  There is no agreement or understanding between Akin Gump and any other person (other than members of Akin Gump) for the sharing of compensation to be received for the services rendered in the Chapter 11 Cases.

9.     As stated in the Affirmation of Michael S. Stamer, Esq., annexed hereto as Exhibit A, (i) all of the services for which compensation is sought herein were rendered for or on behalf of the Committee solely in connection with the Chapter 11 Cases and (ii) Akin Gump has reviewed the requirements of Local Rule 2016-2 and respectfully submits that this Application complies therewith.

## SUMMARY OF SERVICES RENDERED

10.     Since September 28, 2015, Akin Gump has rendered services to the Committee as requested and as necessary and appropriate in furtherance of the interests of the Debtors' unsecured creditors.  The variety and complexity of the issues in the Chapter 11 Cases and the need to act or respond to issues on an expedited basis in furtherance of the Committee's needs have required the expenditure of substantial time by Akin Gump personnel from several legal disciplines on an as-needed basis.

11.     Akin Gump maintains written records of the time expended by professionals and paraprofessionals in the rendition of their services.  A compilation showing the name of the professional or paraprofessional, the date on which the services were performed, a description of the services rendered and the amount of time spent in performing services for the Committee during the Compensation Period is annexed hereto as Exhibit B.

4

12.     Akin Gump also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its services to and on behalf of the Committee, all of which are available for inspection.  A schedule of the categories of expenses and amounts for which reimbursement is requested in this Application is annexed hereto as Exhibit C.  A detailed summary of the expenses is annexed hereto as Exhibit D.

13.     Akin Gump respectfully submits that the professional and paraprofessional services that it rendered on behalf of the Committee during the Compensation Period were necessary and appropriate and have directly contributed to the effective administration of the Chapter 11 Cases.

14.     The following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit B.  Rather, it is merely an attempt to highlight certain of those areas in which services were rendered to the Committee, as well as to identify some of the problems and issues that Akin Gump was required to address during the Compensation Period.

**(a)     General Case Administration**

(Fees: $43,778.00; Hours: 72.30)

15.     A portion of the services rendered during the Compensation Period related to the organization of the Committee and matters related thereto.  Akin Gump's attention to the Committee's organizational and general administrative needs during the Compensation Period enabled the Committee to begin to function as a coordinated group and to acquit its statutory and fiduciary duties to the Debtors' unsecured creditors.  These tasks included, among other things: (i) the preparation of bylaws; (ii) oversight of the financial advisor selection process for the

5

Committee; and (iii) assisting members of the Committee with understanding their role in these Chapter 11 Cases.

16.    During the Compensation Period, Akin Gump also reviewed and analyzed all pleadings filed by the Debtors and other parties in interest in the Chapter 11 Cases.  In connection therewith, Akin Gump, in conjunction with the Committee's other professionals, conducted diligence on the subject matter of each motion and application in order to, among other things, ascertain the effect the requested relief would have on the Debtors, their businesses and the administration of the Chapter 11 Cases.  Akin Gump's diligence efforts included reviewing all documentation related to the applicable pleading, communicating with the Debtors' representatives and professionals to attempt to resolve any issues amicably, and working with PJT to ensure that the Committee had a complete understanding of the effect the relief requested in each pleading would have on the Chapter 11 Cases.

        **(b)**      **<u>Retention Applications</u>**

        (Fees: $89,452.00; Hours: 231.20)

17.    During the Compensation Period, Akin Gump prepared the Akin Gump Retention Application and the declaration of Michael S. Stamer in support thereof.  In addition, Akin Gump prepared the retention application of PJT and the declaration of Michael J. Genereux in support thereof.  Akin Gump also reviewed the Committee's application to retain Pepper Hamilton.

18.    During the Compensation Period, Akin Gump also reviewed the professional retention applications for the Debtors' professionals and the declarations and/or affidavits in support of such applications and negotiated with Debtors' counsel regarding certain of those applications.  Specifically, on September 17, 2015, the Debtors filed the *Debtors' Application Pursuant to Bankruptcy Code Sections 105(a), 327(a), and 328(a), Bankruptcy Rules 2014 and*

*2016, and Local Bankruptcy Rules 2014-1 and 2016-2 (A) Authorizing Employment and Retention of Peter J. Solomon Company as Investment Banker for the Debtors and Debtors in Possession,* Nunc Pro Tunc *to the Petition Date, (B) Waiving Certain Timekeeping Requirements Pursuant to Local Bankruptcy Rule 2016-2(h), and (C) Granting Related Relief* [Docket No. 117] (the "PJSC Retention Application"), seeking authority to retain Peter J. Solomon Company ("PJSC") and to pay PJSC, among other things, a restructuring transaction fee or sale transaction fee equal to the lesser of (i) $7.5 million or (ii) 1.5% of the total consideration received by the Debtors in connection with the sale of the Debtors' assets.  Akin Gump carefully reviewed the terms of the PJSC Retention Application, conducted research in connection therewith together with PJT and had numerous discussions regarding the requested relief with the Debtors' professionals.

19.     After analyzing the relief requested by the PJSC Retention Application, Akin Gump engaged in discussions with the Debtors' professionals regarding certain concerns raised by the PJSC Retention Application and requested modifications to the proposed order approving the PJSC Retention Application to ensure that the Debtors' professionals were conducting the Chapter 11 Cases in a value-maximizing manner while protecting the interests of all unsecured creditors.  Despite such discussions, Akin Gump and the Debtors' professionals were unable to resolve all issues with respect to the relief sought by the PJSC Retention Application prior to the objection deadline, and the Committee filed a combined objection [Docket No. 286] (the "Critical Vendor/PJSC Objection") to the PJSC Retention Application and the Critical Vendor Motion (as discussed and defined below) on October 13, 2015.  Ultimately, the Committee and the Debtors were able to successfully negotiate certain modifications to the proposed form of order approving the PJSC Retention Application, and an order approving the PJSC Retention Application, as modified, was entered by the Court on October 28, 2015 [Docket No. 381].

7

      **(c)**      **Committee Meetings**

      (Fees: $36,275.50; Hours: 45.60)

20.      The Committee played an active role in the Chapter 11 Cases during the Compensation Period.  In connection therewith, Akin Gump, together with the Committee's other professionals, held weekly telephonic meetings with the full Committee and had additional telephonic and e-mail communications with the full Committee on an as-needed basis during the Compensation Period.  In addition, Akin Gump had telephonic conferences and e-mail communications with individual Committee members.

21.      Prior to each Committee meeting, Akin Gump reviewed each pending matter requiring the Committee's attention and all underlying documentation in connection therewith. Thereafter, Akin Gump discussed each of these matters with the Committee.  During these discussions, Akin Gump assisted the Committee in formulating a position with respect to each pending matter.  In addition, Akin Gump prepared and/or assisted PJT in preparing detailed presentations or other materials for the Committee discussing certain legal, business and financial issues related to the Chapter 11 Cases and the status of other pertinent matters.  Further, during the Compensation Period, Akin Gump had numerous telephonic conferences with the Debtors and their professionals to discuss and address pending issues and proposed actions with the Debtors.  Through telephonic conferences and correspondence, Akin Gump has assisted the Committee in fulfilling its statutory duties to make informed decisions regarding the various issues that have arisen in the Chapter 11 Cases, to monitor closely the Debtors' management of the Chapter 11 Cases and to reach independent conclusions on the merits of specific matters.

#36435500 v1

(d)    **Court Hearings**

(Fees: $140,641.00; Hours: 162.60)

22.    During the Compensation Period, Akin Gump prepared for and participated in
(i) a hearing held on October 6, 2015 to consider certain "second-day relief," (ii) hearings held
on October 14 and 15, 2015 to consider, among other things, approval of the relief requested in
the DIP Motion, PSA Motion and Critical Vendor Motion (each as defined below) and (iii) a
hearing held on October 28, 2015, at which the Debtors, the Committee and the DIP Lenders (as
defined below) reached an agreement on the form of final DIP order, following which the Court
entered same as well as revised orders with respect to, among other things, the Critical Vendor
Motion, the PSA and interim compensation.  To prepare for these hearings, Akin Gump
reviewed all applicable motions and applications filed with the Court, including any responses
thereto, and then actively represented and, as necessary and appropriate, advocated on behalf of,
the Committee at the hearings.  After each hearing, Akin Gump provided a summary to the
Committee either in written format or at the following Committee meeting.

(e)    **DIP, Cash Collateral Usage and Exit Financing**

(Fees: $741,315.50; Hours: 1,006.30)

23.    On the Petition Date, the Debtors filed the *Debtors' Motion for Entry of Interim
and Final Orders Pursuant to Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code and
Bankruptcy Rules 2002, 4001 and 9014 (I) Authorizing the Debtors To (A) Obtain Postpetition
Financing on a Super-Priority, Senior Secured Basis and (B) Use Cash Collateral, (II) Granting
(A) Liens and Super-Priority Claims and (B) Adequate Protection to Certain Prepetition
Lenders, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting
Related Relief* [Docket No. 17] (the "DIP Motion").  Pursuant to the DIP Motion, the Debtors
sought interim and final authorization to obtain postpetition financing in the aggregate principal

9

amount of up to $175 million, comprised of (i) a super-priority secured term facility of $115 million funded by OCM Big Wave, LLC (together with its affiliates, "Oaktree") and (ii) a roll-up of all of the outstanding obligations under the Debtors' prepetition ABL facility into a super-priority secured asset-based revolving credit facility of $60 million funded by certain of the Debtors' existing secured lenders (collectively and together with Oaktree, the "DIP Lenders"). On September 11, 2015, the Court entered an order [Docket No. 76] approving the relief requested by the DIP Motion on an interim basis.

24.     Also on the Petition Date, the Debtors filed the *Debtors' Motion for Entry of an Order Authorizing and Approving (I) the Debtors' Assumption of the Plan Sponsor Agreement; and (II) the Payment of the Break-Up Fee and Related Transaction Expenses* [Docket No. 25] (the "PSA Motion), pursuant to which the Debtors sought authority to assume a plan sponsor agreement (the "PSA") executed by and between the Debtors, on behalf of themselves and their non-Debtor foreign subsidiaries, and certain funds managed by Oaktree.

25.     During the Compensation Period, Akin Gump carefully reviewed the terms of the DIP Motion and the PSA Motion, conducted research in connection with each, and had numerous discussions regarding the requested relief with PJT and the Debtors' professionals. After evaluating the DIP Motion and the PSA Motion, Akin Gump identified a number of concerns with the relief requested therein and worked closely with PJT to prepare a comprehensive objection to the DIP Motion and the PSA Motion [Docket No. 269] (the "DIP/PSA Objection") on an extremely expedited timeline.  Although Akin Gump engaged in discussions with the Debtors and the DIP Lenders regarding the issues identified in the DIP/PSA Objection, Akin Gump was unable to reach a resolution in advance of the hearing scheduled to consider the DIP Motion on a final basis.  Akin Gump therefore prepared in earnest for a contested evidentiary trial at which four expert witnesses testified, which preparation included

10

participating in six depositions and extensive document discovery on a compressed timeline. The Court ruled on the DIP/PSA Objection at the conclusion of the hearing, sustaining many of the objections raised by the Committee.  Thereafter, the Committee, the Debtors and the DIP Lenders worked to implement the Court's ruling by negotiating revised versions of the final orders approving the DIP Motion and the PSA Motion (the "<u>DIP Order</u>" and the "<u>PSA Order</u>," respectively).  The Court entered the DIP Order and the PSA Order on October 28, 2015 [Docket Nos. 377, 382].

**(f)    General Claims Analysis/Claims Objections**

(Fees: $44,407.00; Hours: 64.90)

26.    Also on the Petition Date, the Debtors filed the *Debtors' Motion for Entry of Interim and Final Orders Pursuant to Sections 105(a), 363(b), 1107(a), and 1108 and Bankruptcy Rules 6003 and 6004 Authorizing Payment of Critical Vendors* [Docket No. 15] (the "<u>Critical Vendor Motion</u>"), pursuant to which the Debtors sought authority to pay the claims of certain vendors and suppliers that the Debtors deemed critical and essential to maintaining the value of the Debtors' assets (the "<u>Critical Vendor Claims</u>").  By the Critical Vendor Motion, the Debtors requested authority to pay the Critical Vendor Claims in an aggregate amount not to exceed $30 million on an interim basis and $62 million on a final basis.  On September 10, 2015, the Court entered an order [Docket No. 70] approving the relief requested by the Critical Vendor Motion on an interim basis and authorizing the Debtors to pay Critical Vendor Claims in an aggregate amount not to exceed $30 million.

27.    During the Compensation Period, Akin Gump carefully reviewed the terms of the Critical Vendor Motion, conducted research in connection with same and had numerous discussions regarding the requested relief with PJT and the Debtors' professionals.  After evaluating the Critical Vendor Motion, Akin Gump engaged in discussions with the Debtors

11

regarding the relief requested therein, which discussions focused on whether the Critical Vendor

Claims sought to be paid were truly critical to maintaining the value of the Debtors' assets.

Despite these discussions, the Committee and the Debtors were unable to resolve certain issues

with respect to the Critical Vendor Motion prior to the objection deadline, and as a result, the

Committee filed the Critical Vendor/PJSC Objection on October 13, 2015.  In connection

therewith, Akin Gump expended significant time and resources researching the various issues

relating to the Critical Vendor Motion.

28.    Following hearings on October 14 and 15, 2015, and in light of the Critical

Vendor/PJSC Objection, the Court declined to grant the relief requested on a final basis and

instead authorized the Debtors to pay, on a further interim basis, an additional $10 million in

Critical Vendor Claims.  Ultimately, the Committee and the Debtors reached an agreement on a

revised version of the final order approving the Critical Vendor Motion (the "Critical Vendor

Order") which granted the Debtors (i) authority to pay $9.7 million in Critical Vendor Claims in

addition to amounts previously authorized and (ii) access to an additional $5.3 million to pay

Critical Vendor Claims, subject to the Committee's consent as to the amount of such payments

and the specific critical vendors to be paid.  The Court entered the Critical Vendor Order on

October 28, 2015 [Docket No. 378].

29.    During the Compensation Period, Akin Gump also reviewed and analyzed other

pleadings filed by the Debtors relating to claims against the Debtors' estates, including, but not

limited to, the Debtors' motion for the establishment of general and governmental bar dates

[Docket No. 116].  Akin Gump reviewed each of these pleadings and, where appropriate, worked

with the Debtors' professionals to resolve any issues with respect to such motions.  Akin Gump

kept the Committee members apprised of all material developments with respect to the foregoing

and all other pleadings filed in the Chapter 11 Cases during the Compensation Period.

12

(g)     **Analysis of Pre-Petition Transactions**

(Fees: $9,162.00; Hours: 16.60)

30.     During the Compensation Period, Akin Gump prepared a comprehensive

diligence request, which request sought documents and information from the Debtors regarding

various issues relating to the Debtors' corporate organization and business operations, and began

to catalogue and review the materials received in response to such request.  Specifically, Akin

Gump requested information related to, among other things, general corporate matters likely to

arise in the Chapter 11 Cases and reviewed the materials received in response to such request.

31.     In addition, Akin Gump began an investigation into the validity, extent and

priority of the liens held by the prepetition secured lenders.  Pursuant to the DIP Order, the

Committee has until December 12, 2015 to commence an adversary proceeding or contested

matter challenging the liens of the prepetition secured lenders, to contest the amount of such

lenders' asserted claims, to seek the avoidance, recharacterization or subordination of such

parties' claims or interests, to seek the avoidance of any transfer to such parties or to otherwise

contest the claims, rights and liens of such parties.

(h)     **Lift Stay Litigation**

(Fees: $7,463.00; Hours: 12.10)

32.     On October 5, 2015, the Debtors filed the *Debtors' Motion for Entry of an Order

Proving for Limited Relief from the Automatic Stay* Nunc Pro Tunc *to the Petition Date for the

Sole Purpose of Permitting Boardriders S.A., To Decelerate Its Obligations Under the Notes*

[Docket No. 223] (the "Boardriders Lift Stay Motion"), pursuant to which the Debtors sought

authority to lift the automatic stay under Bankruptcy Code section 362(a) to permit Boardriders

S.A. to decelerate its obligations under those certain 8.875% senior secured notes with a maturity

date of December 15, 2017.  During the Compensation Period, Akin Gump reviewed the relief

13

requested in the Boardriders Lift Stay Motion and conducted research in connection with same. On October 15, 2015, the Court entered an order approving the Boardriders Lift Stay Motion.

33.     In addition, Akin Gump performed initial due diligence and provided comments to the Debtors regarding the proposed order in connection with the *Debtors' Motion for Entry of an Order Approving Stipulation Modifying Automatic Stay To Allow for Advancement/Payment of Costs and Fees Under Directors and Officers Insurance Policy* [Docket No. 340], which was filed on October 22, 2015.

      **(i)**      **Plan, Disclosure Statement and Plan-Related Documentation**
                (Fees: $45,534.50; Hours: 78.50)

34.     On October 13, 2015, the Debtors filed the *Joint Chapter 11 Plan of Reorganization of Quiksilver, Inc. and Its Affiliated Debtors and Debtors in Possession* [Docket No. 292] (the "Plan").  On October 30, 2015, the Debtors filed the *Disclosure Statement with Respect to the Joint Chapter 11 Plan of Reorganization of Quiksilver, Inc. and Its Affiliated Debtors and Debtors in Possession* [Docket No. 396] (the "Disclosure Statement").  During the Compensation Period, Akin Gump reviewed the Plan and Disclosure Statement and began to research issues implicated by same.  In addition, as discussed above, Akin Gump reviewed and commented on the proposed final form of order approving the PSA, which order was entered by the Court on October 28, 2015 [Docket No. 377].

## ALLOWANCE OF COMPENSATION

35.     The professional services rendered by Akin Gump during the Compensation Period required a high degree of professional competence and expertise so that the numerous issues requiring evaluation and determination by the Committee could be addressed with skill and expediency and have, therefore, required the expenditure of substantial time and effort. Akin Gump respectfully submits that the services rendered to the Committee were performed

14

efficiently, effectively and economically, and the results obtained to date have benefited not only

the Committee, but also the unsecured creditor body as a whole.

36.    The allowance of interim compensation for services rendered and reimbursement

of expenses in bankruptcy cases is expressly provided for in Bankruptcy Code section 331:

> [A]ny professional person . . . may apply to the court not more than
> once every 120 days after an order for relief in a case under this
> title, or more often if the court permits, for such compensation for
> services rendered . . . as is provided under section 330 of this title.

11 U.S.C. § 331.  Moreover, this Court has authorized the filing of this Application in the Interim

Compensation Order.

37.    With respect to the level of compensation, Bankruptcy Code section 330(a)(1)

provides, in pertinent part, that a bankruptcy court may award to a professional person

"reasonable compensation for actual, necessary services rendered."  Section 330(a)(3), in turn,

provides that:

> In determining the amount of reasonable compensation to be
> awarded . . . the court shall consider the nature, the extent, and the
> value of such services, taking into account all relevant factors,
> including –
>
> (A)    the time spent on such services;
>
> (B)    the rates charged for such services;
>
> (C)    whether the services were necessary to the
> administration of, or beneficial at the time at which the
> service was rendered toward the completion of, a case
> under this title;
>
> (D)    whether the services were performed within a
> reasonable amount of time commensurate with the
> complexity, importance, and nature of the problem,
> issue, or task addressed;
>
> (E)    with respect to a professional person, whether the
> person is board certified or otherwise has demonstrated
> skill and experience in the bankruptcy field; and

15

(F)  whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3). The clear congressional intent expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.

38.     The total time expended by Akin Gump professionals and paraprofessionals during the Compensation Period was 1,761.50 hours. The work involved and, thus, the time expended, was carefully assigned in light of the experience and expertise required for a particular task. As demonstrated by this Application and supporting documents, Akin Gump spent its time economically and without unnecessary duplication of services. Annexed hereto as Exhibit E is a schedule of the hours expended by the professionals and paraprofessionals during the Compensation Period, their hourly rates, and the value of their services.

39.     In addition, Akin Gump incurred actual out-of-pocket expenses in connection with the rendition of the services to the Committee in the sum of $39,007.73 for which Akin Gump respectfully requests reimbursement in full. The expenses have been incurred in accordance with Akin Gump's normal practice of charging clients for expenses clearly related to and required by particular matters. Akin Gump has endeavored to minimize these expenses to the fullest extent possible.

40.     Akin Gump's billing rates do not include charges for photocopying, telephone and facsimile charges, computerized research, travel expenses, "working meals," secretarial overtime, postage and certain other office services, since the needs of each client for such services differ. Akin Gump believes that it is fairest to charge each client only for the services actually used in performing services for such clients. In these cases, Akin Gump charges $0.10 per page for internal duplicating but does not charge for facsimile transmissions.

#36435500 v1

41.     No prior application has been made in this or in any other court for the relief requested herein for the Compensation Period.

*[Concluded on the following page.]*

**WHEREFORE**, Akin Gump respectfully requests:

(a)  allowance of $1,216,120.50 as compensation for professional and paraprofessional services rendered by Akin Gump as co-counsel to the Committee during the Compensation Period;

(b)  approval of the payment of $972,896.40 (80% of $1,216,120.50) as compensation for professional and paraprofessional services rendered by Akin Gump as co-counsel to the Committee during the Compensation Period; and

(c)  approval of the reimbursement of 100% of Akin Gump's out-of-pocket expenses incurred in connection with the rendering of professional and paraprofessional services to the Committee during the Compensation Period in the amount of $39,007.73.

Dated: November 17, 2015
       Wilmington, Delaware

PEPPER HAMILTON LLP

 /s/ John H. Schanne, II
David B. Stratton (DE No. 960)
David M. Fournier (DE No. 2812)
John H. Schanne II (DE No. 5260)
Hercules Plaza, Suite 5100
1313 N. Market Street
Wilmington, Delaware  19899-1709
Telephone:    (302) 777-6500
Facsimile:    (302) 421-8390
E-mail:       strattod@pepperlaw.com
              fournierd@pepperlaw.com
              schannej@pepperlaw.com

-AND-

AKIN GUMP STRAUSS HAUER & FELD LLP
Michael S. Stamer (admitted *pro hac vice*)
Meredith A. Lahaie (admitted *pro hac vice*)
One Bryant Park
Bank of America Tower
New York, New York 10036-6745
Telephone:    (212) 872-1000
Facsimile:    (212) 872-1002
E-mail:       mstamer@akingump.com
              mlahaie@akingump.com

18