# EXHIBIT C

**Liquidation Analysis**

**Exhibit C**

**LIQUIDATION ANALYSIS**

**General Assumptions**

Hypothetical chapter 7 recoveries were determined through multiple steps, as set forth below. The basis of the Liquidation Analysis is the Debtors' projected cash balance and assets as of January 31, 2016 (the "Conversion Date") and the net costs to execute the administration of the wind-down of the Estates. The Liquidation Analysis assumes that the Debtors would commence a chapter 7 liquidation on or about the Conversion Date under the supervision of a court-appointed chapter 7 trustee. The Liquidation Analysis reflects the wind-down and liquidation of substantially all of the Debtors' remaining assets; a quick sale of their non-Debtor subsidiaries; and the distribution of available proceeds to Holders of Allowed Claims during the period after the Conversion Date.

THE DEBTORS BELIEVE THAT ANY ANALYSIS OF A HYPOTHETICAL LIQUIDATION IS NECESSARILY SPECULATIVE. THERE ARE A NUMBER OF ESTIMATES AND ASSUMPTIONS UNDERLYING THE LIQUIDATION ANALYSIS THAT ARE INHERENTLY SUBJECT TO SIGNIFICANT UNCERTAINTIES AND CONTINGENCIES BEYOND THE CONTROL OF THE DEBTORS OR A CHAPTER 7 TRUSTEE. NEITHER THE ANALYSIS, NOR THE FINANCIAL INFORMATION ON WHICH IT IS BASED, HAS BEEN EXAMINED OR REVIEWED BY INDEPENDENT ACCOUNTANTS IN ACCORDANCE WITH STANDARDS PROMULGATED BY THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS. THERE CAN BE NO ASSURANCE THAT ACTUAL RESULTS WOULD NOT VARY MATERIALLY FROM THE HYPOTHETICAL RESULTS PRESENTED IN THE LIQUIDATION ANALYSIS.

**Summary Notes to Liquidation Analysis**

1. *Dependence on assumptions.* The Liquidation Analysis depends on a number of estimates and assumptions. Although developed and considered reasonable by the management and the advisors of the Debtors, the assumptions are inherently subject to significant economic, business, regulatory and competitive uncertainties and contingencies beyond the control of the Debtors or their management. The Liquidation Analysis is also based on the Debtors' best judgment of how numerous decisions in the liquidation process would be resolved. Accordingly, there can be no assurance that the values reflected in the Liquidation Analysis would be realized if the Debtors were, in fact, to undergo such a liquidation and actual results could vary materially and adversely from those contained herein.

2. *Dependence on a forecasted balance sheet.* This Liquidation Analysis contains numerous estimates that are still under review and it remains subject to further legal and accounting analysis.

3. *DIP Facility Recovery Assumptions.* The Liquidation Analysis assumes that upon conversion of the chapter 11 case to chapter 7, the DIP Agents will seek relief from the automatic stay to foreclose on Debtor assets under the jurisdiction of the Bankruptcy Court to recover on the outstanding DIP Claims. For purposes of this analysis, it is assumed that the conversion from chapter 11 to chapter 7 would take place on the Conversion Date.  The DIP Agents, on behalf of the DIP Lenders, would have the ability to recover on the DIP Facilities' first lien position on all Debtor assets.  Only after the DIP Facilities are fully satisfied, would any recoveries be realized by the holders of Secured Notes with respect to: i) the Debtors' intellectual property, and ii) any equity value in the Non-Debtor subsidiaries, through either a) the Secured Notes' first lien on 65% of the equity in the Non-Debtor subsidiaries or b) the Secured Notes

Replacement Liens granted pursuant to the DIP Order, with respect to 35% of the equity in the Non-Debtor subsidiaries.

*4. Recovery from the Foreign Subsidiaries ("Non-Debtor Subsidiaries")*. The Liquidation Analysis assumes that the U.S. chapter 7 conversion will trigger acceleration of foreign debt obligations including factoring facilities / lines of credit (the "Euro Factor Facility") and the Euro Notes and further would result in violations of the Euro Note Waiver executed prior to the chapter 11 filing. In light of these complicating factors, it is assumed that access to working capital funding would be limited, and that Deutsche Bank (as Euro Note Indenture Trustee) would move quickly to complete a going-concern sale of the Non-Debtor Subsidiaries no later than three months following the Conversion Date. Further, since the worldwide DC Shoes trademark (the "DC Shoes Marks") is an asset of the Debtors, it is assumed that the DC Shoes Mark is marketed separately to a third-party buyer (the "DC Shoes Buyer"), with corresponding sale proceeds used to pay down the DIP Facilities (first lien) and the Secured Notes (second lien). Therefore, the Non-Debtor Subsidiaries would need to enter into new license agreements with the DC Shoes Buyer to ensure uninterrupted access to DC Shoes products.

For purposes of estimating standalone value of the Non-Debtor Subsidiaries, FY16 Non-Debtor Subsidiary EBITDA levels were adjusted downward for i) annual DC Shoes Mark royalty payments to the DC Shoes Buyer, and ii) global SG&A costs, currently incurred by the Debtors for which the related activities would need to be maintained by the Non-Debtors Subsidiaries to support ongoing operations ("Adjusted Non-Debtor EBITDA"). Based on the resulting Adjusted Non-Debtor EBITDA levels, it is unlikely that a going concern sale would result in total enterprise value sufficient to fully satisfy the Euro Factor Facility and Euro Note outstandings, (estimated to be a combined $271 million at the Conversion Date). Thus, no residual equity value is available for distribution from the going-concern sale of the Non-Debtor Subsidiaries.

*5. Chapter 7 liquidation process*. The liquidation of the Debtors' U.S. assets is assumed to be completed over a twelve-month period. During the first two months, the Debtors would complete going-out-of-business sales for all remaining U.S. store inventory, furniture, fixtures, and equipment, along with the sale of all U.S intellectual property, including the DC Shoes Marks. During months 3 – 6, the Debtors would primarily focus on collecting remaining customer accounts receivable. Activities during months 7 – 12 would include administrative activities, such as final creditor distributions needed to complete the wind-down of the Estates.

6. *Claims Estimates*. In preparing this Liquidation Analysis, the Debtors have preliminarily estimated an amount of Allowed Claims for each Class based upon a review of the Debtors' estimated balance sheet. DIP Claims were estimated based on the preliminary Revised DIP Budget as of the Conversion Date. Additional Claims were estimated to include certain chapter 7 administrative obligations incurred after the Conversion Date as well as unsecured deficiency claims for the shortfall of Secured Note recoveries relative to Secured Note claims. The estimate of all allowed claims in this Liquidation Analysis is based on the book value of those claims. No order or finding has been entered or made by the Bankruptcy Court estimating or otherwise fixing the amount of Claims at the projected amounts of Allowed Claims set forth in this Liquidation Analysis. The estimate of the amount of Allowed Claims set forth in this Liquidation Analysis should not be relied upon for any other purpose, including, without limitation, any determination of the value of any distribution to be made on account of Allowed Claims under the Plan. The actual amount of Allowed Claims could be materially different from the amount of Claims estimated in this Liquidation Analysis.

The following Liquidation Analysis should be reviewed with the accompanying notes.

| $'s in millions | Notes | Estimated Net Book Value | Total Estimated Recovery $'s Low | High |
|---|---|---|---|---|
| **Summary of Assets & Gross Liquidation Proceeds** | | | | |
| Cash | 1 | $ 5 | $ 5 | $ 5 |
| Customer Receivables | 2 | 64 | 55 | 61 |
| Other Receivables and Prepaid | 3 | 24 | 1 | 2 |
| Inventory | 4 | 106 | 72 | 78 |
| PP&E | 5 | 68 | 1 | 1 |
| IP / Trademarks | 6 | 54 | 46 | 72 |
| Investment in Non-U.S. Subsidiaries | 7 | - | - | - |
| Avoidance Actions/Other Preference Actions | 8 | TBD | TBD | TBD |
| **Gross Liquidation Proceeds** | | **322** | **180** | **219** |
| **Less: Chapter 7 Liquidation Costs** | | | | |
| Operating Expenses | 9 | | (9) | (9) |
| Professional Fees | 9 | | (3) | (3) |
| Trustee Fees (3% of Proceeds) | 9 | | (5) | (7) |
| Incentive Plan | | | (1) | (1) |
| **Total Chapter 7 Liquidation Costs** | | | **(18)** | **(19)** |
| **Total Net Assets Liquidation Proceeds** | | | **162** | **200** |
| **Accrued / Unpaid Chapter 11 Professional Fees** | 10 | **8** | **8** | **8** |
| **Net Proceeds Available for DIP Facility Claims** | | | **154** | **192** |
| **DIP Facility Claims** | | | | |
| DIP ABL Facility | 11 | 55 | 55 | 55 |
| DIP Term Loan Facility | 11 | 115 | 115 | 115 |
| **Total DIP Facility Claims** | | **170** | **170** | **170** |
| *Recovery %* | | | **90%** | **100%** |
| **Net Proceeds Available for Secured Claims** | | | **-** | **22** |
| **U.S. Senior Secured Notes** | 12 | **282** | **-** | **22** |
| *Recovery %* | | | **0%** | **8%** |
| **Net Proceeds Available for Admin and Priority Claims** | | | **-** | **-** |
| **Total Administrative & Priority Claims** | 13 | **72** | **-** | **-** |
| *Recovery %* | | | **0%** | **0%** |
| **Net Proceeds Available for Unsecured Claims** | | | **-** | **-** |
| **Total Unsecured Claims** | 14 | **576** | **-** | **-** |
| *Recovery %* | | | **0%** | **0%** |

**Specific Assumptions and Notes**

1. **Cash**

    Amount represents 100% recovery of estimated cash balances available to the Debtors on the Conversion Date.

2. **Customer Receivables**

    Customer receivables primarily consist of trade accounts and credit card account receivables. It is assumed that a chapter 7 trustee would retain certain existing staff of the Debtors to lead an aggressive collection effort for outstanding accounts receivable. It is assumed that in the case of liquidation, Quiksilver would be able to collect 85% to 95% of outstanding receivables. Recovery percentages were discounted to reflect potential inability to collect past due receivables and customer charge backs.

3. **Other Receivables and Prepaids**

    Other receivables and prepaids primarily consist of royalty receivables, prepaid expenses, prepaid product purchases and deposits. Assumed recovery on all other receivables and prepaids is 5 to 10%.

4. **Inventory**

    Inventory primarily consists of finished goods. The Liquidation Analysis assumes inventory is sold "as is, where is" as of the Conversion Date. Recovery assumptions are based on a third party inventory appraisal, which reflects the net orderly liquidation value ("NOLV"). NOLV includes selling costs such as liquidator fees, payroll, occupancy, freight, and other store and distribution operating expenses. Total inventory is assumed to have a recovery rate of 68% to 73%.

5. **PP&E**

    Property, plant and equipment ("PP&E") primarily consists of computer software, computer equipment, and furniture and fixtures. PP&E is assumed to be recoverable at approximately $10k to $15k per store location in the U.S. Based on the U.S. retail store count, the resulting range of recoveries were $0.8 million to $1.2 million.

    All of the Company's locations are leased including retail stores, headquarters and distribution centers. Based upon preliminary review of existing lease terms relative to market, it was determined that no existing real property leases contained material value in an assignment scenario.

6. **IP / Trademarks**

Intellectual property owned by the Debtors is comprised of i) the worldwide DC Shoes trademark, ii) the Quiksilver trademarks registered in the U.S. and Mexico and iii) the Roxy trademarks registered in the U.S. and Mexico, collectively the "Debtors' IP". Net recoverable value of the Debtors' IP was assumed to be realized through a marketing process of the trademarks to third-parties, in two scenarios. The first scenario was a rapid or forced sale, while the second scenario was an orderly sale process in the context of the overall liquidation of the Debtors.

The Debtors' IP value is based on work completed in June 2015 for purposes of impairment testing. The fair market value calculations have been updated and adjusted to reflect sales levels assumed in the 2016 Financial Projections and the resulting implied royalty payments. The fair market value has been adjusted for purposes of this hypothetical liquidation analysis to reflect a forced liquidation process (low scenario) and orderly liquidation process (high scenario). The fair market value is discounted by 65% in a forced liquidation process and by 45% in an orderly liquidation process. These discounts reflect i) the accelerated marketing process and ii) uncertainty of go-forward trademark revenues due to combination of a) liquidation of all U.S. stores and b) accelerated sale of the Non-Debtor Subsidiaries.

7. **Investment in Non-U.S. Subsidiaries**

Based on the assumptions used in a quick sale scenario, no recoverable value was available to the Debtors from Investments in Non-Debtor Subsidiaries.

8. **Avoidance Actions / Other Preference Actions**

Potential recoveries from any avoidance actions have not yet been quantified, and thus were not included in this Liquidation Analysis.

9. **Chapter 7 Liquidation Costs**

- Operating Expenses: Operating expenses reflect a 12 month budget, including 2 month sale period, 4 month wind down and 6 month tail period. Expenses are mainly comprised of corporate salaries and wages, and facility costs, not considered in the liquidation of inventory, as discussed in Note 4 regarding NOLV.
- Professional Fees: Represents legal and financial advisor costs in connection with the wind-down of the Estates.
- Trustee Fees: Chapter 7 Trustee fees were estimated at 3% of gross liquidation proceeds.
- Incentive Plan: Employee incentive and/or retention plan during wind down period.

10. **Accrued / Unpaid Chapter 11 Professional Fees**

    Accrued / unpaid Chapter 11 professional fees include estimated professional fees outstanding as of the Conversion Date.

11. **DIP Facility Claims**

    DIP Claims totaling $170 million as of the Conversion Date include i) funded debt and letters of credit (assumed to be drawn in their entirety) outstanding on the DIP ABL Facility and ii) funded debt outstanding on the DIP Term Loan Facility.

12. **Secured Claims**

    Secured claims include balances outstanding on the Secured Notes claims as of the Conversion Date.

13. **Priority and Administrative Claims**

    Priority and administrative claims include Chapter 11 post-petition trade payables outstanding as of the Conversion Date, 503(b)(9) claims, customer claims, employee priority claims and tax claims as of the Conversion Date.

14. **General Unsecured Claims**

    General unsecured claims include the average in the Low and High scenarios of the deficiency claims of the Holders of Secured Notes, outstanding balances on the Unsecured Notes, trade claims, lease rejection claims and other unsecured claims as of the Conversion Date.

In the event of liquidation, the aggregate amount of general unsecured claims and priority claims will likely increase significantly. For example, employees likely will file claims for wages and other benefits, some of which will be entitled to priority. Landlords may file large claims for both unsecured and priority amounts. The resulting increase in both general unsecured and priority claims could significantly dilute the unsecured claims pool included in this Liquidation Analysis.