## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In re:                                                    :    Chapter 11
                                                          :
QUIKSILVER, INC., *et al.*,                               :    Case No. 15-11880 (BLS)
                                                          :
                              Debtors.[1]                 :    Jointly Administered
                                                          :
                                                          x    **Obj. Due:  Dec. 16,  2015 at 4:00 p.m. (Eastern)**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## FIRST MONTHLY FEE APPLICATION OF
## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
## FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT
## OF EXPENSES AS COUNSEL TO THE DEBTORS FOR THE PERIOD FROM
## SEPTEMBER 9, 2015 THROUGH AND INCLUDING OCTOBER 31, 2015

| | |
|---|---|
| Name of Applicant: | Skadden, Arps, Slate, Meagher & Flom LLP |
| Authorized to Provide Professional Services to: | Quiksilver, Inc., et al. |
| Date of Retention: | October 6, 2015 *nunc pro tunc* to September 9, 2015 |
| Period for which compensation and reimbursement is sought: | September 9, 2015 through and including October 31, 2015 |
| Amount of Compensation sought as actual, reasonable and necessary: | $1,905,647.40 (80% of which is $1,524,517.92) |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary: | $113,228.45 |

This is a/an:  x  monthly __ interim __ final application.

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599).  The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

The Application does not request compensation at this time for services rendered in preparing this Application. The Applicant intends to seek such compensation at a later date.

This is the first fee application filed by Skadden, Arps, Slate, Meagher & Flom LLP.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**SUMMARY OF FIRST MONTHLY APPLICATION**
**COMPENSATION BY PROFESSIONAL PERSON**
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
**SEPTEMBER 9, 2015 THROUGH AND INCLUDING OCTOBER 31, 2015**

| Timekeeper | Year of Admission | Hourly Rate | Total Hours | Total Compensation |
|---|---|---|---|---|
| **Partner** | | | | |
| Kenneth J. Betts | 1991 | $1,098.00 | 41.2 | $45,237.60 |
| Mark S. Chehi | 1990 | $1,098.00 | 135.8 | $149,108.40 |
| | | $549.00* | 10.2 | $5,599.80 |
| Van C. Durrer II | 1993 | $1,098.00 | 221.8 | $243,536.40 |
| | | $549.00 | 30.9 | $16,964.10 |
| David Kitchen | 1997 | $1,098.00 | 34.0 | $37,332.00 |
| Jonathan Ko | 1998 | $1,098.00 | 25.1 | $27,559.80 |
| John K. Lyons | 1989 | $1,098.00 | 5.2 | $5,709.60 |
| Brian J. McCarthy | 1979 | $1,215.00 | 5.4 | $6,561.00 |
| Jason D. Russell | 1993 | $1,098.00 | 54.4 | $59,731.20 |
| | | $549.00 | 2.0 | $1,098.00 |
| | | **Total Partner** | **566.0** | **$598,437.90** |
| **Associate** | | | | |
| GianCarlo Canaparo | 2014 | $491.00 | 15.7 | $7,700.85 |
| Dain A. De Souza | 2011 | $698.00 | 144.4 | $100,719.00 |
| Stephen J. Della Penna | 2015 | $491.00 | 19.1 | $9,368.55 |
| Nicole A. DiSalvo | 2005 | $783.00 | 113.5 | $88,870.50 |
| | | $392.00 | 4.3 | $1,683.45 |
| Heather M. Hammond | 2006 | $756.00 | 54.4 | $41,126.40 |
| Ana Lucia Hurtado | 2014 | $662.00 | 216.5 | $143,214.75 |
| Sean H. Jeong | 2014 | $491.00 | 26.7 | $13,096.35 |
| Nicole Kim | 2013 | $576.00 | 32.6 | $18,777.60 |
| Jessica S. Kumar | 2007 | $783.00 | 278.5 | $218,065.50 |
| | | $392.00 | 15.1 | $5,911.65 |
| Annie Z. Li | 2010 | $729.00 | 206.7 | $150,684.30 |
| | | $365.00 | 52.7 | $19,209.15 |
| Kate E. Mangels | 2014 | $491.00 | 9.8 | $4,806.90 |

| Timekeeper | Year of Admission | Hourly Rate | Total Hours | Total Compensation |
|---|---|---|---|---|
| Adithya Mani | 2014 | $491.00 | 259.2 | $127,137.60 |
| Ryan A. Miller | Not yet admitted** | $342.00 | 19.8 | $6,771.60 |
| Leila B. Sayegh | 2007 | $783.00 | 14.8 | $11,588.40 |
| Renu Shah | 2010 | $729.00 | 275.8 | $201,058.20 |
| Carly E. Shainker | 2012 | $698.00 | 37.1 | $25,877.25 |
| | | **Total Associate** | **1,796.7** | **$1,195,668.00** |
| **Paraprofessional** | | | | |
| Rebeka M. Burr | N/A | $315.00 | 66.5 | $20,947.50 |
| Shannon Cooper | N/A | $315.00 | 19.0 | $6,268.50 |
| Christopher M. Heaney | N/A | $315.00 | 171.1 | $53,896.50 |
| Wendy K. LaManna | N/A | $315.00 | 51.3 | $16,159.50 |
| Simone L. Srinivasan | N/A | $315.00 | 9.3 | $2,929.50 |
| Sarah Steigler Graham | N/A | $315.00 | 26.5 | $8,347.50 |
| Kevin Wells | N/A | $315.00 | 9.5 | $2,992.50 |
| | | **Total Paraprofessional** | **354.1** | **$111,541.50** |
| **Grand Total** | | | **2,716.8** | **$1,905,647.40** |
| **Blended Rate:** | | | | **$701.43** |
| **Blended Rate Excluding Paraprofessionals:** | | | | **$759.35** |
| | | | | |
| | | | | |

\* Nonworking travel time is billed at 50% of the applicable regular billing rate.
\** Law clerks are law school graduates who are not presently admitted to practice.

**SUMMARY OF FIRST MONTHLY APPLICATION
COMPENSATION BY PROJECT CATEGORY
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
SEPTEMBER 9, 2015 THROUGH AND INCLUDING OCTOBER 31, 2015**

| Project Category | Total Hours | Total Fees |
|---|---|---|
| Asset Dispositions (General) | 36.4 | $26,212.50 |
| Asset Dispositions (Inventory) | 45.8 | $34,214.85 |
| Automatic Stay (Relief Actions) | 3.1 | $3,403.80 |
| Business Operations / Strategic Planning | 11.8 | $11,001.15 |
| Case Administration | 281.8 | $155,592.90 |
| Claims Admin. (General) | 22.9 | $13,573.80 |
| Claims Admin. (Reclamation/Trust Funds) | 1.2 | $784.35 |
| Credit Card Agreements | 0.1 | $109.80 |
| Creditor Meetings / Statutory Committees | 52.8 | $45,710.10 |
| Disclosure Statement / Voting Issues | 307.7 | $223,444.35 |
| Employee Matters (General) | 8.3 | $6,131.70 |
| Executory Contracts (Personalty) | 17.9 | $11,682.90 |
| Financing (DIP and Emergence) | 622.6 | $527,013.45 |
| General Corporate Advice | 25.9 | $22,937.85 |
| Insurance | 15.6 | $7,726.50 |
| Intellectual Property | 4.4 | $3,352.95 |
| Leases (Real Property) | 104.8 | $68,304.60 |
| Liquidation / Feasibility | 1.4 | $1,537.20 |
| Litigation (General) | 313.6 | $184,306.50 |
| Nonworking Travel Time* | 115.2 | $50,466.15 |
| Regulatory and SEC Matters | 49.4 | $44,765.55 |
| Reorganization Plan / Plan Sponsors | 107.1 | $72,365.85 |
| Reports and Schedules | 99.8 | $65,029.05 |
| Retention / Fee Matters (SASM&F) | 82.0 | $41,132.70 |
| Retention / Fee Matters / Objections (Other) | 199.4 | $125,071.20 |
| Rights Offering / Exchange Offer | 72.2 | $59,337.00 |
| Secured Claims | 0.1 | $109.80 |
| Tax Matters | 60.9 | $59,454.00 |

| Project Category | Total Hours | Total Fees |
|---|---|---|
| U.S. Trustee Matters | 15.3 | $9,371.25 |
| Utilities | 17.3 | $12,691.35 |
| Vendor Matters | 20.0 | $18,812.25 |
| **TOTAL** | **2716.8** | **$1,905,647.40** |

* Nonworking travel time is billed at 50% of the applicable regular billing rate.

**SUMMARY OF FIRST MONTHLY APPLICATION**
**EXPENSE SUMMARY**
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
**SEPTEMBER 9, 2015 THROUGH AND INCLUDING OCTOBER 31, 2015**

| Expense Category | Total Expenses |
|---|---|
| Computer Legal Research* | $24,140.75 |
| Long Distance Telephone | $1,295.84 |
| In-House Reproduction (@$.15 per page)** | $5,368.00 |
| Reproduction-color (@$1.00 per page)*** | $953.50 |
| Outside Reproduction | $6,594.14 |
| Outside Research | $1,791.18 |
| Filing/Court Fees | $3,437.40 |
| Court Reporting | $12,142.40 |
| Local Travel | $2,778.02 |
| Out-Of-Town Travel | $40,905.30 |
| Business Meals | $4,465.14 |
| Courier & Express Carriers (e.g., Federal Express) | $1,285.44 |
| Electronic Document Management | $8,071.34 |
| **TOTAL** | $113,228.45 |

* Computer-assisted legal research charges are billed at actual cost.
** The requested rate for copying charges is $0.15 per page.
*** The requested rate for color reproduction is $1.00 per page.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In re:                                               :        Chapter 11
:
QUIKSILVER, INC., *et al.*,                          :        Case No. 15-11880 (BLS)
:
Debtors.[1]                   :        Jointly Administered
:
x        **Obj. Due: Dec. 16, 2015 at 4:00 p.m. (Eastern)**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**FIRST MONTHLY FEE APPLICATION OF
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
FOR COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT
OF EXPENSES AS COUNSEL TO THE DEBTORS FOR THE PERIOD FROM
SEPTEMBER 9, 2015 THROUGH AND INCLUDING OCTOBER 31, 2015**

Skadden, Arps, Slate, Meagher & Flom LLP and affiliates (collectively,

"Skadden" or the "Firm"), counsel to the debtors and debtors in possession in the above-

captioned cases (collectively, the "Debtors"), submit this application (the "Application"),

seeking compensation for services rendered and reimbursement of expenses incurred as counsel

to the Debtors, for the period from September 9, 2015 through and including October 31, 2015

(the "Application Period"), under sections 330 and 331 of title 11 of the United States Code (the

"Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"), Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United

States Bankruptcy Court for the District of Delaware (the "Local Rules"), and the Order Pursuant

to Bankruptcy Code Sections 105(a) and 331 Establishing Interim Compensation Procedures,

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599).  The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

dated October 28, 2015 [Docket No. 379] (the "ICP Order"), and the exhibit attached thereto (together with the ICP Order, the "Interim Compensation Procedures").[2] Skadden represents as follows:

## JURISDICTION

1.      This Court has jurisdiction to consider this Application under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Application in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The legal predicates for the relief requested herein are Bankruptcy Code sections 330 and 331, Bankruptcy Rule 2016 and Local Rule 2016-2.

3.      The Debtors consent to this Court's authority to enter final orders on this matter.

## BACKGROUND

4.      On September 9, 2015 (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").  These Chapter 11 Cases are jointly administered.

5.      The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      On September 22, 2015, the Office of the United States Trustee for the District of Delaware (the "United States Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee").  On September 28, 2015, the United States Trustee filed

---

[2]      Capitalized terms not otherwise defined herein shall have the meanings assigned to them in the Interim Compensation Procedures.

an Amended Notice of Appointment of Creditors' Committee.  No trustee or examiner has been

appointed in the Debtors' Chapter 11 Cases.

       7.     Quiksilver is one of the world's leading outdoor sports lifestyle

companies.  The Company designs, develops and distributes branded apparel, footwear,

accessories and related products.  The Company began operations in 1976 making boardshorts

for surfers in the United States under a license agreement with the Quiksilver brand founders in

Australia.  Today, the Company's business is rooted in the strong heritage and authenticity of its

core brands, Quiksilver, Roxy, and DC, each of which caters to the casual, outdoor lifestyle

associated with surfing, skateboarding, snowboarding, and motocross, among other activities.

The Company's products are sold in over 115 countries through a wide range of distribution

points, including wholesale accounts (surf shops, skate shops, snow shops, sporting goods stores,

discount centers, specialty stores, select department stores, and licensed stores), Company-owned

retail stores, and its e-commerce websites.  The Debtors comprise each of the Company's U.S.

entities, including parent, ZQK, as well as QS Wholesale, Inc., QS Retail, Inc., DC Shoes, Inc.

and seven inactive entities.

       8.     Prior to the Petition Date, the Debtors entered into that certain Plan

Sponsor Agreement (the "PSA") with certain funds managed by affiliates of Oaktree Capital

Management (collectively, the "Plan Sponsor").  In accordance with the PSA, on October 13,

2015, the Debtors filed the Joint Chapter 11 Plan of Reorganization of Quiksilver, Inc. and its

Affiliated Debtors and Debtors in Possession [Docket No. 292] (the "Plan").  On October 30,

2015, the Debtors filed their Disclosure Statement With Respect to the Joint Chapter 11 Plan of

Reorganization of Quiksilver, Inc. and its Affiliated Debtors and Debtors in Possession [Docket

No. 396] (the "Disclosure Statement") and the Debtors' Motion for Entry of an Order (A)

Approving the Adequacy of the Debtors' Disclosure Statement, (B) Approving Solicitation and

Notice Procedures With Respect to Confirmation of the Debtors' Proposed Plan of

Reorganization, (C) Approving the Form of Various Ballots and Notices in Connection

Therewith, and (D) Scheduling Certain Dates With Respect Thereto [Docket No. 397] (the

"Solicitation Procedures Motion").  On November 17, 2015, the Debtors filed their first amended

rights offering procedures [Docket No. 474] (the "Amended Rights Offering Procedures"), their

first amended Plan [Docket No. 476] (the "First Amended Plan"), and the first amended

Disclosure Statement [Docket No. 477] (the "Amended Disclosure Statement").

        9.      Additional factual background information regarding the Debtors,

including their business operations, their corporate and capital structure, and the events leading

to these Chapter 11 Cases, is set forth in detail in the Declaration of Andrew Bruenjes, Americas

Chief Financial Officer of Quiksilver, Inc., in Support of Chapter 11 Petitions and First Day

Pleadings [Docket No. 20].

## RETENTION OF SKADDEN

        10.      On September 9, 2015, the Debtors applied to the Court for an order

authorizing them to retain Skadden pursuant to an amended and restated engagement letter dated

as of July 27, 2015 (the "Engagement Agreement"), as their restructuring counsel, effective *nunc

pro tunc* to the Petition Date [Docket No. 36].  On October 6, 2015, the Court entered an order

[Docket No. 245] (the "Retention Order") authorizing the Debtors to employ Skadden as their

counsel, effective as of the Petition Date, in accordance with the provisions of the Retention

Order and the Engagement Agreement.

**INTERIM COMPENSATION ORDER**

11.      On October 28, 2015, the Court approved the Interim Compensation

Procedures, which set forth the procedures for interim compensation and reimbursement of

expenses for all professionals retained in the Chapter 11 Cases (the "Professionals").

12.      In particular, the Interim Compensation Procedures provide that a

Professional will serve a monthly fee request (the "Monthly Fee Application") on or after the

fifteenth (15th) day of each month following the month for which compensation is sought.

Thereafter, the Professional may file with the Court a certificate of no objection or a certificate

of partial objection, whichever is applicable, after which the Debtors are authorized to pay that

Professional an amount equal to 80% of the fees and 100% of the expenses requested in the

Monthly Fee Application.  If an objection to the Monthly Fee Application is filed by a Notice

Party, then the Debtors are authorized to pay 80% of the fees and 100% of the expenses not

subject to an objection.

**RELIEF REQUESTED**

13.      Skadden is seeking compensation equal to eighty percent (80%) of the

$1,905,647.40 in fees for professional services rendered by Skadden during the Application

Period, for a total of $1,524,517.92.  This amount is derived solely from the applicable hourly

billing rates of the Firm's personnel who rendered such services to the Debtors.  A summary of

charges is attached hereto for the period between September 9, 2015 and September 30, 2015

and the period between October 1, 2015 and October 31, 2015 as Exhibit A-1 and Exhibit A-2,

respectively, and time detail for the same periods is attached hereto as Exhibit B-1 and Exhibit

B-2, respectively.

14.     Skadden also requests reimbursement of 100% of its actual and necessary out-of-pocket disbursements and charges incurred during the Application Period.  Expense detail for the period between September 9, 2015 and September 30, 2015 and the period between October 1, 2015 and October 31, 2015 is attached hereto as Exhibit C-1 and Exhibit C-2, respectively.

15.     The fees and disbursements sought in this Application reflect total client accommodations of $151,871.18, a reduction of 7.5%.  In the event that any objections to this Application are filed, Skadden reserves the right to seek payment for all or any part of these client accommodations.

16.     Skadden has attempted to include in this Application all time and expenses relating to the Application Period.  However, delays in the processing of time entries and in the receipt of expense invoices do occur.  Accordingly, Skadden reserves the right to supplement this Application.  This Application is also made without prejudice to Skadden's right to seek a final allowance of compensation in the future.

17.     Skadden has received no promise of payment for professional services rendered or to be rendered in the Chapter 11 Cases other than in accordance with the provisions of the Bankruptcy Code.

## SUMMARY OF SERVICES RENDERED

18.     During the Application Period, Skadden worked closely with the Debtors and the Debtors' other professionals to satisfy the Debtors' objectives, including (i) the preservation of the Debtors' business, (ii) the restructuring and recapitalization of the Debtors, and (iii) maximization of value.  The services described herein have been directed towards those tasks necessary to fulfill the Debtors' fiduciary and statutory duties and to achieve the Debtors'

objectives.  To meet the Debtors' needs, Skadden has provided multi-disciplinary services on a daily basis, working nights, weekends, and holidays as necessary to research, draft, analyze, negotiate, and resolve numerous issues.  Throughout this process, certain of the principal Skadden attorneys working on the Chapter 11 Cases were required to devote the vast majority of their time to this engagement, often to the exclusion of other clients.  Indeed, Skadden's efforts on behalf of the Debtors have assisted the Debtors in obtaining the prompt and consensual resolution of the vast majority of issues that arose during the Application Period.

19.    At the commencement of the Chapter 11 Cases, Skadden created 40 different matter numbers or subject-matter categories to which its professionals billed their time, all of which are related to the tasks performed by Skadden on behalf of the Debtors.[3]  Skadden kept a contemporaneous record of the time spent rendering services, and separated tasks in billing increments of one-tenth of an hour.  All of the services performed by Skadden have been legal in nature and necessary and appropriate for the effective administration of the Chapter 11 Cases.

20.    Attorneys, legal assistants, and other professionals of Skadden have expended a total of 2,716.80 hours in connection with this case during the Application Period.

21.    Skadden devoted approximately 63.5% of its time to the following matters, fees for each of which were greater than $100,000: (i) Financing (DIP and Emergence), (ii) Disclosure Statement / Voting Issues, (iii) Litigation (General), (iv) Case Administration, and (v) Retention / Fee Matters / Objections (Others).

22.    Skadden devoted approximately 34.7% of its time to the following matters, fees for each of which were between $10,000 and $100,000: (i) Reorganization Plan /

---

[3]    These matters are listed in the Compensation by Project Category table above.

Plan Sponsors, (ii) Leases (Real Property), (iii) Reports and Schedules, (iv) Tax Matters, (v)

Rights Offering / Exchange Offer,(vi) Nonworking Travel Time, (vii) Creditor Meetings /

Statutory Committees,(viii) Regulatory and SEC Matters, (ix) Retention / Fee Matters

(SASM&F), (x) Asset Dispositions (Inventory) , (xi) Asset Dispositions (General), (xii) General

Corporate Advice, (xiii) Vendor Matters , (xiv) Claims Administration (General), (xv) Utilities,

(xvi) Executory Contracts (Personalty), and (xvii) Business Operations / Strategic Planning.

    23.  Skadden devoted the remaining approximately 1.8% of its time to the

following matters, fees for each of which were less than $10,000: (i) U.S. Trustee Matters, (ii)

Insurance, (iii) Employee Matters (General), (iv) Automatic Stay Relief Actions, (v) Intellectual

Property, (vi) Liquidation / Feasibility, (vii) Claims Administration (Reclamation/Trust Funds),

(viii) Credit Cards Agreements, (ix) Secured Claims.

    24.  Further, in the exercise of its business judgment, Skadden has written off

$145,123.87 in professional fees.  In the event that any objections to this Application are filed,

Skadden reserves the right to seek payment for all or any part of the written off professional fees.

<b>MATTERS OVER $100,000</b>

    25.  During the Application Period, Skadden professionals devoted significant

time to various key matters, each of which had a time value of more than $100,000. These

matters were as follows:

**A.  Financing (DIP and Emergence)**
   **Amount Sought: $527,013.45**

    26.  This category relates to work completed by Skadden professionals in

relation to efforts to assist the Debtors in obtaining postpetition debtor in possession financing

("DIP Financing").  During the Application Period, Skadden professionals devoted substantial

time to this category, including, but not limited to, the following:

15

a.  negotiating the terms of the postpetition DIP Financing;

b.  participating in numerous telephone conferences with the Debtors, Debtors' professionals, lenders, and United States Trustee regarding postpetition financing issues;

c.  responding to the United States Trustee's comments to the DIP Financing order;

d.  revising the order authorizing the DIP Financing on an interim and final basis;

e.  reviewing, analyzing, and responding to the objections filed to the DIP Financing Motion, including the objection of the Creditors' Committee [Docket No. 286] (the "Committee DIP Objection");

f.  researching and drafting the Debtors' reply to the Committee DIP Objection [Docket No. 281];

g.  negotiating resolutions to certain DIP Financing objections;

h.  reviewing voluminous documents in response to the Committee's document requests relating to the postpetition DIP Financing;

i.  preparing for and attending numerous depositions requested by the Committee relating to the postpetition Financing;

j.  preparing for and conducting a two-day final hearing on the DIP Financing Motion on October 15 and October 16, 2015, which included testimony from the officers and professionals of the Debtors;

k.  revising the final order approving the DIP Financing Motion; and

l.    preparing for and conducting a final hearing on the DIP Financing

Motion on October 28, 2015, where the final DIP order was entered

[Docket No. 382].

27.    In connection with this matter, Skadden professionals devoted a total of

622.6 hours, for which compensation is sought in the amount of $527,013.45.

**B.    Disclosure Statement / Voting Issues**
     **Amount Sought: $223,444.35**

28.    During the Application Period, Skadden professionals worked diligently to

draft a proposed plan of reorganization and an accompanying disclosure statement that would

allow the Debtors' businesses to continue as a going concern and maximize value for the

Debtors' estates and creditors.  As set forth above, on October 13, 2015, the Debtors filed the

Plan.  On October 30, 2015, the Debtors filed their Disclosure Statement.  Skadden professionals

from multiple practice areas devoted substantial time to drafting and revising the Disclosure

Statement.  In addition, Skadden professionals participated in teleconferences and corresponded

with the Debtors, the Debtors' other professionals, and professionals representing the debtor-in-

possession financing lenders (the "DIP Lenders") and the Plan Sponsor to finalize the Disclosure

Statement.

29.    Concurrently with the preparation of the Disclosure Statement, Skadden

professionals researched and developed solicitation and notice procedures with respect to the

proposed Plan.  In conjunction therewith, Skadden professionals worked with the Debtors' other

professionals, including Kurtzman Carson Consultants LLC ("KCC"), the Debtors' claims and

noticing agent, to draft the Debtors' Motion For Entry Of An Order (A) Approving The

Adequacy Of The Debtors' Disclosure Statement, (B) Approving Solicitation And Notice

Procedures With Respect To Confirmation Of The Debtors' Proposed Plan Of Reorganization,

(C) Approving The Form Of Various Ballots And Notices In Connection Therewith, And (D)

Scheduling Certain Dates With Respect Thereto [Docket No. 397] (the "Solicitation Motion").

       30.     In connection with this matter, Skadden professionals devoted a total of

307.70 hours, for which compensation is sought in the amount of $223,444.35.

**C.    Litigation (General)**
       **Amount Sought: $184,306.50**

       31.     On September 25, 2015, the Official Committee of Unsecured Creditors

served its First Request to the Debtors for Production of Documents.  Skadden professionals and

paraprofessionals from various departments collaborated to respond to these requests, on an

expedited timeline, through the review, analysis, and production of voluminous documents and

the preparation of different witnesses for depositions.

       32.     In connection with this matter, Skadden professionals devoted a total of

313.6 hours, for which compensation is sought in the amount of $184,306.50.

**D.    Case Administration**
       **Amount Sought: $155,592.90**

       33.     During the Application Period, Skadden professionals devoted substantial

resources to case administration matters and worked with the Debtors' management and

professionals to ensure that the Debtors conducted their affairs in accordance with the

Bankruptcy Code and applicable non-bankruptcy law.  Moreover, Skadden professionals held

regularly scheduled teleconferences with the Debtors' management and professionals in order to

stay coordinated and reduce expenses by ensuring that professional efforts were not duplicated.

       34.     Therefore, this matter reflects time spent by Skadden professionals on a

variety of tasks that were necessary to facilitate the efficient administration of the Chapter 11

Cases' day-to-day activities, including: (a) preparing case calendars and task lists; (b) conferring

with the Debtors to track the status of pending case matters, and address case developments; and (c) general communications with creditors and parties in interest with respect to case matters.

35.    Furthermore, Skadden professionals prepared for, participated in, and represented the Debtors at hearings, including the "first day" hearing, which occurred on September 10, 2015 and involved multiple complex issues.  In advance of hearings, Skadden professionals spent significant time (i) preparing materials for the Court and for parties in interest, including agendas, draft orders, and notices, (ii) consensually resolving numerous issues raised by the United States Trustee, the Committee, and other parties in interest, thereby minimizing issues needing to be resolved by hearing, (iii) communicating with, and addressing concerns of, numerous parties in interest, (iv) preparing and coordinating mailing and service of notices, (v) working with the Debtors' management team and their professionals, and (vi) monitoring the Court's docket.

36.    In connection with this matter, Skadden professionals devoted a total of 281.8 hours, for which compensation is sought in the amount of $155,592.90.

**E.    Retention / Fee Matters / Objections (Others)**
     **Amount Sought: $125,071.20**

37.    Skadden professionals assisted the Debtors with various matters related to the retention of the Debtors' other restructuring and non-restructuring professionals.  For example, the Debtors, with Skadden's assistance, filed an application seeking to retain PJSC to provide investment banking services and advice [Docket No. 117].  Skadden also assisted the Debtors in retaining Kurtzman Carson Consultants LLC as claims and noticing agent [Docket No. 10] and to provide administrative services in connection with the Chapter 11 Cases [Docket No. 102].  Skadden assisted the Debtors by preparing and filing an application to retain FTI Consulting, Inc. [Docket No. 118], which provided the Debtors with Stephen Coulombe as their

designated Chief Restructuring Officer and other temporary employees providing restructuring support services.  Skadden has further assisted the Debtors in filing applications to retain, among others, Deloitte Tax LLP as their tax advisor [Docket No. 371], ICR, LLC as their corporate communications and public relations consultant [Docket No. 343], Deloitte & Touche LLP as their independent auditor [Docket No. 342], and A&G Realty Partners, LLC as their real estate advisor [Docket No. 341].

38.    Each application required significant preparatory time, including dialogue with the involved professionals, drafting and revision of the applications and accompanying declarations, and, in certain cases, addressing comments from the United States Trustee and other objections.  In addition, Skadden assisted the Debtors in addressing and resolving the Committee's objection to the retention of PJSC as the Debtors' investment banker [Docket No. 286], and obtaining Court authorization therefor.

39.    Skadden also assisted the Debtors with the filing of a motion to approve procedures for retention and payment of ordinary course professionals and, in certain cases, assisted ordinary course professionals with the filing of their required notices and declarations pertaining to retention, pursuant to such procedures.

40.    In connection with this matter, Skadden professionals devoted a total of 199.4 hours, for which compensation is sought in the amount of $125,071.20.

## MATTERS BETWEEN $10,000 AND $100,000

41.    During the Application Period, Skadden professionals devoted significant time to various additional key matters, each of which had a time value of between $10,000 and $100,000. These matters were as follows:

**F.      Reorganization Plan / Plan Sponsors**
         <u>**Amount Sought: $72,365.85**</u>

   42. Prior to the Petition Date, Skadden assisted the Debtors in negotiating and entering into the PSA with the Plan Sponsor.  Pursuant to the PSA, the Debtors and the Plan Sponsor agreed to the terms of a restructuring in accordance with the terms of a term sheet attached to the PSA.  In addition, prior to the Petition Date, Skadden assisted the Debtors in finalizing and filing the Debtors' Motion For Entry Of An Order Authorizing And Approving (I) The Debtors' Assumption Of The Plan Sponsor Agreement; And (II) The Payment Of The Break-Up Fee And Related Transaction Expenses [Docket No. 25] (the "<u>PSA Motion</u>").

   43. Following its formation, the Committee raised certain concerns and potential objections to the assumption of the PSA and payment of the break-up fee pursuant to the PSA Motion.  Skadden professionals assisted the Debtors in negotiating in good faith the resolution of those concerns and preparing for and conducting a hearing with respect to the unresolved issues.

   44. Skadden professionals also expended substantial time drafting and revising the Plan, which implemented the terms of the PSA.   Skadden professionals participated in teleconferences and corresponded with the Debtors, the Debtors' other professionals, and professionals representing the DIP Lenders and the Plan Sponsor to finalize the Plan.  On October 13, 2015, the Debtors filed the Plan.

   45. On October 28, 2015, the Court entered an order approving the PSA Motion [Docket No. 377].

   46. In connection with this matter, Skadden professionals devoted a total of 107.1 hours, for which compensation is sought in the amount of $72,365.85.

**G.    Leases**
       **Amount Sought: $68,304.60**

47.    Skadden professionals assisted the Debtors with numerous legal issues that arose from their leases, including (i) drafting a reply [Docket No. 220] to objections to the Debtors' motion to approve procedures for the rejection and assumption of leases [Docket No. 36], and negotiating with objectors, (ii) drafting lease rejection notices pursuant to the approved procedures [Docket Nos. 302 and 392], (iii) reviewing leases and researching issues related to mechanic's liens on the leased properties, (iv) drafting a motion to extend the time for the Debtors to reject or assume their leases [Docket No. 339], and (v) resolving various disputes with and addressing inquiries from lessors.

48.    In connection with this matter, Skadden professionals devoted a total of 104.8 hours, for which compensation is sought in the amount of $68,304.60..

**H.    Reports and Schedules**
       **Amount Sought: $65,029.50**

49.    Skadden, along with the Debtors' other retained professionals, assisted the Debtors with the preparation and filing of various reports and schedules required by the Bankruptcy Code and the Bankruptcy Rules, including schedules of assets and liabilities and statements of financial affairs for each of the Debtors (the "Schedules and Statements").[4]  In particular, among other things, Skadden professionals drafted part of the global notes and revised portions of the global notes prepared by FTI Consulting, Inc. ("FTI") that accompany the Schedules and Statements in preparation for the filing of the Schedules and Statements in

---

[4]    To assist the Debtors in obtaining sufficient time to properly prepare such required schedules and reports, Skadden professionals prepared motions to extend the time for filing the Debtors' schedules and statements [Docket No. 112] and for filing the Debtors' Rule 2015.3 reports [Docket No. 347].  Due to the unnecessary hardships the Debtors would incur associated with filing the Debtors' Rule 2015.3 reports, Skadden professionals also assisted the Debtors with filing the Motion to Waive the 2015.3 requirements [Docket No. 395].

October 2015 and advised FTI and the Debtors with respect to various questions in connection

with the preparation of the Schedules and Statements.

50.     In addition, Skadden professionals spent time assisting the Debtors with

the preparation and filing of their initial and subsequent monthly operating reports.  In particular,

Skadden provided input on the Initial Operating Report filed on September 18, 2015 [Docket No.

123], which contained, *inter alia*, substantial information regarding cash management and

retention issues.

51.     In connection with this matter, Skadden professionals devoted a total of

99.8 hours, for which compensation is sought in the amount of $65,029.05.

**I.     Tax Matters**
        **Amount Sought: $59,454.00**

52.     Skadden worked with the Debtors and other parties in interest to evaluate

issues around the Debtors' net operating losses, both domestically and abroad, cancellation of

debt, and the DIP Financing.  Skadden has considered certain legal rules that apply to the

Debtors' tax attributes.  Skadden has also analyzed the tax consequences of the Plan to parties in

interest and assisted with drafting the tax disclosure for parties in interest in the Disclosure

Statement.

53.     In connection with this matter, Skadden professionals devoted a total of

60.9 hours, for which compensation is sought in the amount of $59,454.00.

**J.     Rights Offering / Exchange Offer**
        **Amount Sought: $59,337.00**

54.     Pursuant to the PSA and the Plan, the Debtors will conduct two rights

offerings (the "Rights Offerings"), concurrent with solicitation of votes on the Plan, the proceeds

of which will be used to fund Plan distributions and fund an exchange offer with respect to the

Debtors' Euro Notes (as defined in the First Day Declaration) (the "Euro Notes Exchange

Offer"). The Rights Offerings will be backstopped by the Plan Sponsor pursuant a backstop

commitment letter (the "Backstop Letter").

55.     In connection with the foregoing, Skadden professionals devoted

significant time to negotiating with the Plan Sponsor with respect to the Backstop Letter and  the

Rights Offerings, including procedures for conducting the Rights Offerings.  Skadden

professionals also assisted the Debtors in drafting the Debtors' Motion For Entry Of An Order

Authorizing And Approving (I) (A) Entry Into The Backstop Commitment Letter And (B)

Payment Of The Commitment Fees And (II) The Rights Offering Procedures And Related Forms

[Docket No. 398].  In addition, Skadden professionals engaged in negotiations regarding the

Euro Notes Exchange Offer.  Finally, Skadden professionals began analyzing the exchange offer

process and communicating with the Plan Sponsor professionals about this process.

56.     In connection with this matter, Skadden professionals devoted a total of

72.2 hours, for which compensation is sought in the amount of $59,337.00.

**K.     Nonworking Travel Time**
        **Amount Sought: $50,466.15**

57.     The Debtors retained an engagement team of Skadden attorneys from

Skadden offices in Wilmington, Los Angeles, and Chicago.  The engagement team drew on the

experience and talent of a number of professionals from Skadden's worldwide organization in

representing the Debtors across a broad range of complex matters.  During the Application

Period, Skadden professionals traveled as necessary to attend Court hearings and to meet with

the Debtors and with certain creditor constituencies.  Skadden professionals who spend time

traveling, but not otherwise working, allocate their time to this billing category.  As reflected in

the tables above, nonworking travel time is billed at 50% of the biller's regular rate.

58.     In connection with this matter, Skadden professionals devoted a total of 115.2 hours, for which compensation is sought in the amount of $50,466.15.

**L.      Creditor Meetings / Statutory Committees**
        <u>**Amount Sought: $45,710.10**</u>

59.     On September 22, 2015, the United States Trustee filed a Notice of Appointment of Committee of Unsecured Creditors [Docket No. 129] (the "<u>Initial Committee</u>"). The Initial Committee selected Cooley LLP, and Bayard, P.A., as its counsel, and Province, Inc. as its financial advisor.  On September 28, 2015 , the United States Trustee filed an Amended Notice of Appointment of Committee of Unsecured Creditors [Docket No. 163] (the "<u>Committee</u>").  The Committee selected Akin Gump Strauss Hauer & Feld LLP and Pepper Hamilton LLP as its counsel and  PJT Partners Inc. as its investment banker.

60.     Since the appointment of the Initial Committee, Skadden professionals, along with the Debtors' other retained professionals, have held telephonic and in-person meetings with the Initial Committee's and the Committee's professionals as well as meeting telephonically with the Committee's professionals and the members of the Committee, to provide them with information about the Debtors, their capital structure, and the Chapter 11 Cases.  Throughout the Application Period, Skadden professionals, along with the Debtors' other retained professionals, engaged in regular communication with Committee professionals and responded to various information requests.  Skadden professionals reviewed Committee comments to drafts of documents, negotiated provisions of proposed orders, and otherwise worked with the Committee to negotiate and reach consensual resolution on many of the issues in the Chapter 11 Cases.

61.     In addition, Skadden prepared for and assisted the Debtors in their meeting with the United States Trustee and with creditors, convened under Bankruptcy Code section

341(a). That meeting first convened on October 15, 2015 [Docket Nos. 130, 298], and was continued and concluded on October 28, 2015 [Docket No. 394].

62. In connection with this matter, Skadden professionals devoted a total of 52.8 hours, for which compensation is sought in the amount of $45,710.10..

**M. Regulatory and SEC Matters**
**Amount Sought: $44,765.55**

63. Skadden spent significant time assisting the Debtors with various regulatory matters. In particular, Skadden assisted ZQK with its filings with the Securities and Exchange Commission, assisting especially with matters related to the Company's current and periodic reporting requirements under the Securities Exchange Act of 1934. Skadden assisted the Company with the drafting, printing and filing of a Current Report on Form 8-K during the Application Period related to the filing of the Chapter 11 Cases. Additionally, Skadden assisted the Company in the drafting, printing and filing of the Company's Quarterly Report on Form 10-Q for the period ended July 31, 2015. Skadden also provided advice regarding the announcement of the filing of the Chapter 11 Cases, as well as related guidance regarding regulatory and public relations reporting of significant events in the Chapter 11 Cases.

64. Additionally, Skadden provided advice to the Debtors on compliance with the Sarbanes-Oxley Act of 2002 and responding to inquiries from the Financial Industry Regulatory Authority ("FINRA").

65. In connection with this matter, Skadden professionals devoted a total of 49.4 hours, for which compensation is sought in the amount of $44,765.55.

**N. Retention / Fee Matters (SASM&F)**
**Amount Sought: $41,132.70**

66. Skadden professionals devoted significant time to complying with the disclosure requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Retention Order.

Specifically, Skadden queried its client databases and conducted a review of its potential connections with the Debtors and the significant parties-in-interest in these Chapter 11 Cases. Based on this examination, Skadden identified relevant relationships with, or connections to, certain of such parties-in-interest in matters unrelated to the Debtors or the Debtors' Chapter 11 Cases.

67.     Since the filing of the declaration of Van C. Durrer, II (the "Original Declaration") in support of Skadden's retention application [Docket No. 36] (the "Retention Application") on the Petition Date, Skadden engaged in further inquiry through the continued review of its client databases and the promulgation of a special "disinterestedness" questionnaire to each of its nearly 1,550 partners, counsel, and associates. The questionnaire requires Skadden attorneys to identify relevant relationships with, or connections to, the Debtors, their affiliates, and the creditors and other parties-in-interest described in the Original Declaration. On October 1, 2015, in further compliance with Bankruptcy Rule 2014 and Local Bankruptcy Rule 2014-1, Skadden filed the first supplemental declaration of Van C. Durrer, II [Docket No. 199], which set forth additional connections uncovered since filing the Original Declaration. Skadden continues its due diligence and research of its client databases to uncover potential connections for disclosure in these Chapter 11 Cases.

68.     In connection with this matter, Skadden professionals devoted a total of 82.0 hours, for which compensation is sought in the amount of $41,132.70.

**O.     Asset Dispositions (Inventory)**
**Amount Sought: $34,214.85**

69.     On the Petition Date, the Debtors filed a motion [Docket No. 12] (the "Store Closing Motion") seeking authorization and approval of store closing sales at certain specified stores. On September 10, 2015, this Court entered an interim order approving the store

closing sales [Docket No. 72], and on October 7, 2015, this Court entered a final order approving

the store closing sales [Docket No. 253] (together, the "Store Closing Orders"). The store

closing sales have been conducted by a joint venture between Hilco Merchant Resources, LLC

and Gordon Brothers Retail Partners, LLC (the "Agent"). The Store Closing Orders, among

other things, authorized the Agent to conduct the store closing sales in accordance with certain

sale guidelines. In addition, the Store Closing Orders authorized the Agent and the Debtors to

enter into agreements (the "Side Letters") modifying the sale guidelines with landlords or

licensors of the stores.

70.    During the Application Period, Skadden professionals prepared for the

initial hearing on the Store Closing Motion. Skadden professionals also reviewed and revised

the Agent's declarations in support of the Store Closing Motion. In addition, Skadden

professionals drafted, negotiated and/or revised Side Letters with various landlords. Skadden

professionals also drafted a reply [Docket No. 209] to the limited objection [Docket No. 186] to

the Store Closing Motion filed by the Taubman Landlords, prepared for a hearing on the

Taubman Landlords' objection, and revised the proposed final order to address the same.

Furthermore, Skadden professionals worked with the United States Trustee and the Agent to

revise the proposed final order in order to address the objections of the United States Trustee and

the attorneys general of certain states. Finally, Skadden professionals have provided general

advice and guidance related to various store closing matters in the context of the Chapter 11

Cases and have responded to various inquiries from the Agent and landlords.

71.    In connection with this matter, Skadden professionals devoted a total of

45.8 hours, for which compensation is sought in the amount of $34,214.85

**P.**    **Asset Dispositions (General)**
      **Amount Sought: $26,212.50**

72.    On October 26, 2015, ZQK entered into that certain Asset Purchase

Agreement, dated as of October 26, 2015 (the "Ampla Purchase Agreement") with ColEx Inc.,

pursuant to which the Debtors proposed to sell (the "Ampla Sale") certain *de minimis*, non-core

assets related to the Debtors' *Ampla* brand.  During the Application Period, Skadden

professionals aided the Debtors in the negotiation of the Ampla Purchase Agreement.  In

addition, Skadden professionals drafted a motion seeking approval of the Ampla Sale [Docket

No. 372], along with a proposed order and a declaration in support of the motion [Docket No.

374].

73.    In addition, the Debtors, along with Peter J. Solomon Company ("PJSC"),

have been reaching out to potential bidders in conjunction with a potential transaction with the

Debtors.  During the Application Period, Skadden professionals worked with PJSC to draft a bid

process letter to send to potential bidders.

74.    In connection with this matter, Skadden professionals devoted a total of

36.4 hours, for which compensation is sought in the amount of $26,212.50.

**Q.**    **General Corporate Advice**
      **Amount Sought: $22,937.85**

75.    Skadden professionals assisted and advised the Debtors on various

corporate governance matters, including matters related to meetings with the Quiksilver, Inc.

board of directors, including assistance with the preparation of board minutes, and board

governance.

76.    In connection with this matter, Skadden professionals devoted a total of

25.9 hours, for which compensation is sought in the amount of $22,937.85.

**R.    Vendor Matters**
       <u>**Amount Sought: $18,812.25**</u>

       77.    The Debtors' operations rely heavily on numerous suppliers, service providers, and vendors for the timely delivery of goods and/or services in support of the Debtors' operations.  Certain of such vendors supply essential goods and services without which the Debtors' businesses either could not operate or would operate at a significantly reduced profitability and whose critical goods and services cannot be replaced without significant harm to the Debtors.  Therefore, one of the Debtors' aims in these Chapter 11 Cases has been to ensure that such critical vendors continue their timely performance of services and/or delivery of goods to ensure supply chain continuity and avoid significant operational interruptions.

       78.    To assist the Debtors in achieving this aim, Skadden professionals sought certain "first day" relief authorizing the Debtors to pay, in the ordinary course of business, the prepetition, fixed, liquidated, and undisputed claims of certain critical vendors and suppliers, the vast majority of which are located overseas and which provide goods or services to the Debtors that the Debtors deem, in the exercise of their business judgment, to be essential to maintaining the value of the Debtors' assets [Docket No. 15].  In addition to the first day hearing on the critical vendors motion, Skadden professionals further assisted the Debtors through preparation for and conduct of a second interim hearing on the motion, which took place on October 15, 2015.  During that hearing, the Debtors, with Skadden's assistance, provided evidence, including testimony, with respect to the critical vendor relief sought in the Debtors' Chapter 11 Cases.  Following that hearing, Skadden assisted the Debtors and their other professionals in negotiations with the Committee regarding the critical vendor relief.

79.    Moreover, throughout the Chapter 11 Cases, Skadden has advised and assisted the Debtors and their other professionals in entering into trade agreements with critical vendors and negotiating with vendors with respect thereto.

80.    Finally, Skadden has provided general advice and guidance related to various vendor matters in the context of the Chapter 11 Cases and has responded to various inquiries from vendors.

81.    In connection with this matter, Skadden professionals devoted a total of 20.0 hours, for which compensation is sought in the amount of $18,812.25.

**S.    Claims Administration**
**     Amount Sought: $13,573.80**

82.    The establishment of a bar date was a necessary component of the Debtors' preparations to solicit votes with respect to the Debtors' proposed plan of reorganization as well as to provide reasonable estimates of allowed claims and potential recoveries in a disclosure statement.  Accordingly, during the Application Period, Skadden professionals worked with the Debtors' other professionals to establish a bar date by which certain proofs of claim against the Debtors had to be filed.  Further, Skadden professionals assisted the Debtors in preparing and filing a motion to set such bar date, establish procedures for filing proofs of claim, and approve the form and manner of notice thereof [Docket No. 116] (the "Bar Date Motion"). Once the Court entered an order granting the Bar Date Motion [Docket No. 247], Skadden professionals coordinated with KCC to serve a notice of the bar date and publish such notice in various national and international publications.

83.    In connection with this matter, Skadden professionals devoted a total of 22.9 hours, for which compensation is sought in the amount of $13,573.80.

**T.**     **Utilities**
          **Amount Sought: $12,691.35**

84.     Skadden worked during the Application Period to maintain the continuity of the Debtors' utility services following the Petition Date.  In particular, Skadden negotiated a settlement to the objection [Docket No. 144] of three of the Debtors' largest electrical utilities to the Debtors' motion for a final order (i) approving the Debtors' proposed form of adequate assurance of payment, (ii) establishing procedures for resolving objections by utility companies and (iii) prohibiting utility companies from altering, refusing or discontinuing service [Docket No. 12].  Further, Skadden has assisted the Debtors in negotiating with, and drafting side letters with, a number of the Debtors' utility providers regarding those providers' requests for adequate assurance.

85.     Further, Skadden has assisted the Debtors in negotiating with, and drafting side letters with, a number of the Debtors' utility providers regarding those providers' requests for adequate assurance.

86.     In connection with this matter, Skadden professionals devoted a total of 17.3 hours, for which compensation is sought in the amount of $12,691.35.

**U.**     **Executory Contracts (Personalty)**
          **Amount Sought: $11,682.90**

87.     Throughout the Application Period, contract counterparties have contacted the Debtors regarding their contracts, with respect to amounts due thereunder and other issues. Skadden professionals worked with the Debtors to review the relevant contracts, respond to all inquiries, and, to the extent necessary, participate in teleconferences with contract counterparties. Skadden professionals also assisted the Debtor in negotiating with counterparties with regards to the terms of such contracts.

88.    In addition, on the Petition Date, the Debtors filed a motion to reject certain severance agreements [Docket No. 27].  Certain counterparties objected to such motion.  Accordingly, Skadden professionals researched and drafted a reply to the objection, held a hearing with respect to the motion and objection, and engaged in negotiations with counsel to the objectors to reach an agreed form of order.

89.    Skadden professionals have also engaged in research and analysis of various of the Debtors' contracts in connection with, among other things, the effect of the filing of the Chapter 11 Cases on the contract, the Debtors' rights under such contract, the Debtors' determination as to whether to assume or reject the contract.

90.    In connection with this matter, Skadden professionals devoted a total of 17.9 hours, for which compensation is sought in the amount of $11,682.90.

**V.    Business Operations / Strategic Planning**
**Amount Sought: $11,001.15**

91.    During the Application Period, Skadden professionals worked with the Debtors' other professionals to advise the Debtors in connection with the preparation of the Debtors' go-forward business plan which provides the foundation for the Debtors' emergence from chapter 11.  In addition, Skadden professionals assisted the Debtors in obtaining approval of the ongoing global cash management system.  Finally, Skadden professionals provided episodic advice on a variety of discrete operational issues.

92.    In connection with this matter, Skadden professionals devoted a total of 11.8 hours, for which compensation is sought in the amount of $11,001.15.

**MATTERS UNDER $10,000**

93.    During the Application Period, Skadden professionals also devoted time to other matters, each of which had a time value of less than $10,000.  These matters were as

33

follows: (i) U.S. Trustee Matters ($9,371.25), (ii) Insurance ($7,726.50), (iii) Employee Matters (General) ($6,131.70), (iv) Automatic Stay (Relief Actions) ($3,403.80), (v) Intellectual Property ($3,352.95), (vi) Liquidation Feasibility ($1,537.20), (vii) Claims Administration (Reclamation / Trust Funds) ($784.35), (viii) Credit Card Agreements ($109.80), and (ix) Secured Claims ($109.80).  In connection with these matters, Skadden professionals devoted a total of 49.5 hours, for which compensation is sought in the amount of $32,527.35.

## REASONABLENESS OF FEES AND DISBURSEMENTS

94.    Bankruptcy Code section 330 authorizes the Court to award "reasonable compensation for actual, necessary services rendered by the . . . professional person . . . ." 11 U.S.C. § 330.  In order to evaluate a request for allowance of fees by a professional person, a court must determine whether the services rendered were actual and necessary and the fees requested reasonable.  Skadden respectfully submits that its request for a monthly award of compensation for the Application Period satisfies that standard.

95.    In accordance with the factors enumerated in 11 U.S.C. § 330, the amount requested herein by Skadden is fair and reasonable in light of (i) the nature and complexity of the Chapter 11 Cases, (ii) the time and labor required to effectively represent the Debtors, (iii) the nature and extent of the services rendered, (iv) Skadden's experience, reputation, and ability, (v) the value of Skadden's services, and (vi) the cost of comparable services other than in a case under the Bankruptcy Code.

## I.    Nature and Complexity of the Chapter 11 Cases

96.    As should be evident from the summary of Skadden's services described above, the Chapter 11 Cases are large and complex.  Their characteristics have required Skadden to develop case management and staffing solutions to enhance efficiency, and to employ a streamlined case management structure that generally consists of small, core teams and assigns

discrete tasks to other attorneys, all with the goal of avoiding duplicative and unnecessary work. Moreover, Skadden's efforts have been important in promptly and consensually resolving the vast majority of disputes that arose during the Application Period and in preserving enterprise value.

97.    Given the size of the Chapter 11 Cases, the expedited timetable involved, the dual-track nature of the Debtors' potential sale or recapitalization, and the variety of issues that have arisen in the Chapter 11 Cases, many of which have needed to be addressed simultaneously, there have been circumstances where a number of Skadden attorneys have had to be present at, and to participate in, discussions, negotiations, team meetings, and Court hearings. Skadden believes that it has, through the narratives herein and the time entries attached hereto, articulated satisfactory reasons for attendance and participation by multiple attorneys under those circumstances.

## II.    Experience of Skadden

98.    Skadden's experience has also benefited the Debtors' estates.  Skadden is among the largest law firms in the world, and has one of the most experienced restructuring groups.  As more fully set forth in the Retention Application, Skadden's restructuring and other attorneys have extensive experience with similar large and fast-moving bankruptcy cases. Accordingly, Skadden's depth of experience ensured that pressing issues were addressed promptly.

## III.    Comparable Services

99.    An award of compensation must be based on the cost of comparable services other than in a bankruptcy case.  Skadden's rate structure for the Chapter 11 Cases is consistent with its rate structure charged to other clients in non-bankruptcy matters. Additionally, Skadden's rate structure was disclosed clearly in the Retention Application, which

35

the Court approved.  Finally, the amounts sought by Skadden are consistent with the fees,

charges, and disbursements incurred in other chapter 11 cases of similar size, complexity, and

expected duration.  Accordingly, the cost of comparable service supports this Application, and

the services performed during the Application Period more than warrant the allowance of

compensation.

### ALLOWANCE OF COMPENSATION

100.    Because of the benefits realized by the Debtors, the nature of the Chapter

11 Cases, the standing at the bar of the attorneys who have rendered services, the amount of

work done, the time consumed, the skill required, and the contingent nature of the compensation,

Skadden requests that it be allowed at this time compensation for 80% of the value of the

professional services rendered during the Application Period.

101.    Skadden will return to the Court to seek reimbursement for the remaining

20% of the value of professional services rendered during the Application Period.  Skadden

reserves the right to seek payment for work performed or expenses incurred during the

Application Period but not yet reflected in its time records or to amend the amounts listed herein

to correct any bookkeeping errors.  In the event that a subsequent review reveals that additional

professional services have been rendered or expenses incurred on behalf of the Debtors during

the Application Period, which were not processed by Skadden's accounting system in time to be

included in this Application, Skadden reserves the right to seek those additional fees and

expenses by subsequent application to the Court.[5]

102.    Other than among Skadden and its affiliated law practices and their

members, no agreements or understandings exist between Skadden and any other person or

---

[5]    Skadden further reserves the right to request additional compensation at a later date for time spent preparing this Application.

persons for the sharing of compensation received, or to be received, for professional services

rendered in or in connection with the Chapter 11 Cases, nor will any such agreements or

understandings be made except as permitted pursuant to Bankruptcy Code section 504(b)(1).

**REIMBURSEMENT OF EXPENSES**

103.    As stated above, a complete description of each expense incurred during

the Chapter 11 Cases is attached hereto as <u>Exhibit C-1</u> and <u>Exhibit C-2</u>.  Additionally, a table

summarizing the expenses for the Application Period is included at the front of this Application.

Skadden's policies require all attorneys to retain and submit for review receipts and invoices for

all disbursements incurred through outside vendors.  Skadden maintains all receipts and invoices

related to each client's disbursement account in a central storage facility, and these records can

be produced upon request.  In the exercise of its business judgment, Skadden has written off

$6,747.31 in expenses.  In the event that any objections to this Application are filed, Skadden

reserves the right to seek payment for all or any part of the written off expenses.  Skadden has

disbursed, and requests reimbursement of, $113,228.45, which represents actual and necessary

expenses incurred in the rendition of professional services in the Chapter 11 Cases.

**NOTICE**

104.    Notice of this Motion will be given to: (a) the Office of the United States

Trustee for the District of Delaware; (b) counsel to the agent for the Debtors' postpetition

secured loan facilities; (c) counsel to the agent for the Debtors' prepetition revolving loan

facility; (d) counsel to the indenture trustee for the Debtors' prepetition senior secured notes; (e)

counsel to the indenture trustee for the Debtors' prepetition senior unsecured notes; (f) counsel to

the Creditors' Committee; (g) the SEC; (h) the Internal Revenue Service; (i) the United States

Attorney for the District of Delaware; and (j) all parties entitled to notice pursuant to Bankruptcy

37

Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

105.     No previous Motion for the relief sought herein has been made to this Court or any other court.

## CERTIFICATE OF COMPLIANCE AND WAIVER

106.     The undersigned representative of Skadden certifies that he has reviewed the requirements of Local Rule 2016-2 and that this Application substantially complies with that Local Rule.  To the extent that this Application does not comply in all respects with the requirements of Local Rule 2016-2, Skadden believes that such deviations are not material and respectfully requests that any such requirement be waived.


**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**CONCLUSION**

WHEREFORE, Skadden respectfully requests approval and payment of (i)

monthly compensation for professional services rendered as attorneys for the Debtors in the sum

of $1,524,517.92 or 80% of the fees incurred during the Application Period, (ii) reimbursement

of actual and necessary expenses incurred in the sum of $113,228.45 and (iii) such other and

further relief as may be just and proper.


Dated: Wilmington, Delaware
       November 25, 2015

                              SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

                              */s/ Van C. Durrer, II*
                              Van C. Durrer, II (I.D. No. 3827)
                              Annie Z. Li
                              300 South Grand Avenue, Suite 3400
                              Los Angeles, California 90071
                              Telephone: (213) 687-5000
                              Fax: (213) 687-5600

                              - and -

                              Mark S. Chehi (I.D. No. 2855)
                              One Rodney Square
                              P.O. Box 636
                              Wilmington, Delaware 19899-0636
                              Telephone: (302) 651-3000
                              Fax: (302) 651-3001

                              - and -

                              John K. Lyons
                              Jessica S. Kumar
                              155 N. Wacker Dr.
                              Chicago, Illinois 60606
                              Telephone: (312) 407-0700
                              Fax: (312) 407-0411

                              *Counsel for Debtors and Debtors in Possession*