# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

---

In re:

QUIKSILVER, INC., *et al.*,[1]

         Debtors.

    Chapter 11

    Case No. 15-11880 (BLS)

    Jointly Administered

    Related Doc. 397

---

## STATEMENT AND RESERVATION OF RIGHTS OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS REGARDING DEBTORS' MOTION FOR ENTRY OF AN ORDER (A) APPROVING THE ADEQUACY OF THE DEBTORS' DISCLOSURE STATEMENT, (B) APPROVING SOLICITATION AND NOTICE PROCEDURES WITH RESPECT TO CONFIRMATION OF THE DEBTORS' PROPOSED PLAN OF REORGANIZATION, (C) APPROVING THE FORM OF VARIOUS BALLOTS AND NOTICES IN CONNECTION THEREWITH, AND (D) SCHEDULING CERTAIN DATES WITH RESPECT THERETO

| | |
|---|---|
| **AKIN GUMP STRAUSS HAUER & FELD LLP**<br>One Bryant Park<br>New York, New York 10036<br>Michael S. Stamer (admitted *pro hac vice*)<br>Abid Qureshi (admitted *pro hac vice*)<br>Meredith A. Lahaie (admitted *pro hac vice*)<br>Telephone: (212) 872-1000<br>Facsimile: (212) 872-1002<br><br>*Co-Counsel to the Official Committee of Unsecured Creditors* | **PEPPER HAMILTON LLP**<br>Hercules Plaza, Suite 5100<br>1313 N. Market Street<br>Wilmington, Delaware 19899<br>David B. Stratton (DE No. 960)<br>David M. Fournier (DE No. 2812)<br>John H. Schanne II (DE No. 5260)<br>Telephone: (302) 777-6500<br>Facsimile: (302) 421-8390<br><br>*Co-Counsel to the Official Committee of Unsecured Creditors* |

Date: November 30, 2015
      Wilmington, Delaware

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

The Official Committee of Unsecured Creditors (the "Committee") of Quiksilver, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors"), by and through its undersigned counsel, hereby submits this statement and reservation of rights (the "Statement") regarding the *Debtors' Motion for Entry of an Order (A) Approving the Adequacy of the Debtors' Disclosure Statement, (B) Approving Solicitation and Notice Procedures With Respect to Confirmation of the Debtors' Proposed Plan of Reorganization, (C) Approving the Form of Various Ballots and Notices in Connection Therewith, and (D) Scheduling Certain Dates With Respect Thereto* [Docket No. 397] (the "Disclosure Statement Motion").[2] In support of this Statement, the Committee respectfully represents as follows:

## PRELIMINARY STATEMENT

1. Subsequent to the filing of the Amended Disclosure Statement and cognizant of this Court's views regarding the purpose of the disclosure statement process, the Committee has worked cooperatively with the Debtors to attempt to resolve its concerns regarding the adequacy of the information contained in the Amended Disclosure Statement. The Committee expects to resolve fully its disclosure-related concerns through the inclusion of three inserts that broadly address the validity of the Debtors':  (i) conclusion regarding Total Enterprise Value; (ii) assumption as to the value allocable to the Unencumbered Foreign Equity; and (iii) assumption as to the amount of any diminution claim that may be asserted by the holders of Secured Notes and granted by this Court.  Upon the inclusion in the Amended Disclosure Statement of the requested inserts as set forth herein, the Committee does not intend to object to the adequacy of the Amended Disclosure Statement.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Disclosure Statement Motion or the Amended Disclosure Statement (as defined below).

2.      Resolution of the Committee's concerns regarding the adequacy of the Amended Disclosure Statement does not, of course, resolve the underlying issues for purposes of confirmation, and the Committee believes that the Plan in its current form is not confirmable. The Committee therefore also files this Statement to advise the Court and parties in interest that, based on the current facts and circumstances, the Committee anticipates a heavily contested confirmation process that will require this Court to determine, among other things, the appropriate Total Enterprise Value of the Reorganized Debtors, the value of the Unencumbered Foreign Equity and the amount of any diminution claim that may be properly asserted by holders of Secured Notes.

## RELEVANT BACKGROUND

3.      On October 13, 2015, the Debtors filed the *Joint Chapter 11 Plan of Reorganization of Quiksilver, Inc. and Its Affiliated Debtors and Debtors in Possession* [Docket No. 292] (as amended from time to time, the "Plan").

4.      On October 30, 2015, the Debtors filed (i) the *Disclosure Statement with Respect to the Joint Chapter 11 Plan of Reorganization of Quiksilver, Inc. and Its Affiliated Debtors and Debtors in Possession* [Docket No. 396] (the "Disclosure Statement") and (ii) the Disclosure Statement Motion.

5.      On November 17, 2015, the Debtors filed amended versions of the Plan [Docket No. 476] and the Disclosure Statement [Docket No. 477] (the "Amended Disclosure Statement").

6.      The Debtors assert in the Amended Disclosure Statement that the Total Enterprise Value of the Reorganized Debtors is within the range of $499 million to $602 million, with a midpoint estimate of $546 million. *See* Amended Disclosure Statement, Art. VII(D). To support this conclusion, the Debtors rely on the valuation analysis (the "Valuation Analysis") prepared by their investment banker Peter J. Solomon Company ("PJSC"), which is set forth in the

Amended Disclosure Statement. *See id.* As currently drafted, the Amended Disclosure Statement does not include any disclosure regarding the Debtors' assumptions as to the value allocable to the Unencumbered Foreign Equity or the amount of any diminution claim that may be asserted by the holders of the Secured Notes.

## STATEMENT

### A.     The Estimated Total Enterprise Value of the Reorganized Debtors

7.     The Amended Disclosure Statement contains the Debtors' views as to the Total Enterprise Value of the Reorganized Debtors as of the anticipated Effective Date. In light of the fact that the Committee's preliminary value conclusions indicate that the Debtors have materially undervalued their businesses, the Committee requested, and the Debtors have agreed, to amend Article VII(D) of the Amended Disclosure Statement to include the following statement with respect to the estimated Total Enterprise Value of the Reorganized Debtors:

> As set forth herein, based on PJSC's analysis, the Debtors estimate that the midpoint range of the Total Enterprise Value of the Reorganized Debtors on the Effective Date (assumed to be February 1, 2016) would be $546 million. The Creditors' Committee believes that such Total Enterprise Value estimated by the Debtors may be materially lower than the enterprise value of the Reorganized Debtors that the Bankruptcy Court may determine following the presentation of evidence at the hearing to consider confirmation of the Plan. Among other things, the Creditors' Committee believes that the Debtors' Valuation Analysis undervalues the Debtors' equity interests in the Non-Debtor Foreign Subsidiaries (including the Unencumbered Foreign Equity). In addition, the Creditors' Committee contends that the Debtors' estimated midpoint Total Enterprise Value of the Reorganized Debtors of $546 million has an adverse impact on the Debtors' ongoing sales process, as such amount is lower than the overbid (described in the Debtors' bid procedure letter as $735 million). The resolution of any of these disputes may have a material impact on the recoveries to unsecured creditors.
>
> Nothing contained herein shall be deemed to be the Creditors' Committee's or its advisors' acceptance of or acquiescence to any methodology utilized by the Debtors or PJSC in preparing the Valuation Analysis or business plan or the acceptance or acquiescence by the Creditors' Committee or its advisors to any proposed value for the

Reorganized Debtors. The Creditors' Committee and its advisors reserve their rights to set forth their own estimates of the enterprise value of the Reorganized Debtors in connection with the consideration of any plan of reorganization and/or related disclosure statement in these Chapter 11 Cases. Further, nothing contained herein shall be deemed to be the Creditors' Committee's or its advisors' acceptance of or acquiescence to any assumptions or analysis by the Debtors or PJSC with respect to the existence or extent of any diminution in value of the collateral securing the Secured Notes.

**B.    The Debtors' Assumptions Underlying the Valuation Analysis Regarding Diminution Claim**

8.    The Committee also requested that the Debtors amend the Amended Disclosure Statement to provide additional disclosure regarding the Debtors' assumptions as to whether and to what extent the Prepetition Secured Parties are entitled to a diminution in value claim in accordance with the Final DIP Order (notwithstanding the fact that the Prepetition Secured Parties have not yet sought a diminution claim). Specifically, the Debtors made, but previously failed to disclose, two critical assumptions in their Valuation Analysis regarding the hypothetical diminution in value claim of the Prepetition Secured Parties: (i) that the Prepetition Secured Parties' collateral has in fact diminished in value during, and as a result of, the Chapter 11 Cases; and (ii) that the diminution in value claim of the Prepetition Secured Parties equals or exceeds the value of the Unencumbered Foreign Equity.

9.    To address this lack of disclosure, the Debtors have agreed to amend Article VII(D) of the Amended Disclosure Statement to include the following statement with respect to the Debtors' assumptions in the Valuation Analysis regarding the existence and extent of any diminution in value claim held by the Prepetition Secured Parties:

> PJSC also estimated the amount of diminution in value of the collateral held by the Secured Noteholders and the Secured Notes Indenture Trustee. Factors considered in determining the diminution in value of collateral include a) the value of the DIP Claims, which prime the Secured Noteholders with respect to the collateral securing the Secured Notes and b) the estimated amount of administrative claims and expenses incurred

during the bankruptcy cases including but not limited to professional fees, general administrative expenses and fees and costs associated with obtaining necessary exit financing. Based on PJSC's analysis, the diminution in value of the collateral held by the Secured Noteholders and the Secured Notes Indenture Trustee exceeds PJSC's mid-point estimate of the value of the Unencumbered Foreign Equity.

**C.    The Debtors' Proposed Allocation of Value Among the Debtors and Their Non-Debtor Foreign Subsidiaries**

10.    The Committee further requested that the Debtors provide additional disclosure regarding the proposed allocation of value among the Debtors, on the one hand, and their non-Debtor foreign subsidiaries, on the other hand. Disclosure regarding this proposed allocation is important to unsecured creditors because the Unencumbered Foreign Equity is an unencumbered asset that, in the absence of a substantial allowed diminution in value claim, will be an important source of recovery for unsecured creditors.

11.    To address this lack of disclosure, the Debtors have agreed to amend Article VII(D) of the Amended Disclosure Statement to include the following statement with respect to the allocation of value among the Debtors and their non-Debtor foreign subsidiaries and the Debtors' estimate of the value of the Unencumbered Foreign Equity:

> PJSC also conducted a valuation of certain of the non-Debtor Affiliates (excluding certain non-Debtor Affiliates located in Mexico,[3] the "Non-Debtor Foreign Subsidiaries") in order to determine the value of any unencumbered assets, specifically the value of the 35% equity interests in the Non-Debtor Foreign Subsidiaries (such equity interests, the "Unencumbered Foreign Equity") as of the Effective Date. The estimated value of the Non-Debtor Foreign Subsidiaries is determined on a going-concern basis and takes into account, among other things, relevant intercompany royalty payments and allocation of corporate expenses. PJSC estimates that the Total Enterprise Value of the Non-Debtor Foreign Subsidiaries falls within a range from approximately $340 million to $400 million with a mid-point estimate of $370 million. Based on an estimated net debt balance owing by the Non-Debtor Foreign Subsidiaries (and which debt is not the subject of these Chapter 11 Cases) of approximately

---

[3] Quiksilver Mexico, S. de R.L. de C.V., Con So Horin en Ventas Gama, S. de R.L. de C.V., and Quiksilver Commercial, S. de R.L. de C.V. were excluded from PJSC's valuation of the Non-Debtor Foreign Subsidiaries.

$260 million as of the Effective Date, PJSC's mid-point estimate of the Total Enterprise Value of the Non-Debtor Foreign Subsidiaries implies an equity value of the Non-Debtor Foreign Subsidiaries of approximately $110 million as of the Effective Date. Accordingly, PJSC's mid-point estimate of the Unencumbered Foreign Equity is estimated at $39 million as of the Effective Date.

12. The Committee believes that supplementing the Amended Disclosure Statement to incorporate the additional information set forth above will assist unsecured creditors in evaluating their proposed distribution under the Plan and in making an informed decision regarding whether to accept or reject the Plan.

## **RESERVATION OF RIGHTS**

13. The Committee continues to analyze and review the Plan and Amended Disclosure Statement. As such, this Statement is submitted without prejudice to, and with a full and express reservation of, the Committee's rights to object to the adequacy of the Amended Disclosure Statement in connection with the hearing to consider the Amended Disclosure Statement, including on the grounds that one or more of the requested disclosures identified in this Statement have not been incorporated into the Amended Disclosure Statement. In addition, the Committee reserves its rights to object to confirmation of the Plan or any other plan of reorganization proposed in these Chapter 11 Cases on any and all grounds.

| | |
|---|---|
| Dated: November 30, 2015<br>Wilmington, Delaware | **PEPPER HAMILTON LLP**<br><br>/s/ David B. Stratton<br>David B. Stratton (DE No. 960)<br>David M. Fournier (DE No. 2812)<br>John H. Schanne II (DE No. 5260)<br>Hercules Plaza, Suite 5100<br>1313 N. Market Street<br>Wilmington, Delaware  19899-1709<br>Telephone:   (302) 777-6500<br>Facsimile:   (302) 421-8390<br>E-mail:   strattod@pepperlaw.com<br>   fournierd@pepperlaw.com<br>   schannej@pepperlaw.com<br><br>-AND-<br><br>**AKIN GUMP STRAUSS HAUER & FELD LLP**<br>Michael S. Stamer (admitted *pro hac vice*)<br>Abid Qureshi (admitted *pro hac vice*)<br>Meredith A. Lahaie (admitted *pro hac vice*)<br>One Bryant Park<br>Bank of America Tower<br>New York, New York  10036-6745<br>Telephone:   (212) 872-1000<br>Facsimile:   (212) 872-1002<br>E-mail:   mstamer@akingump.com<br>   aqureshi@akingump.com<br>   mlahaie@akingump.com |

## **CERTIFICATE OF SERVICE**

I, David B. Stratton, hereby certify that on the 30th day of November, 2015, I caused the foregoing *Statement and Reservation of Rights of The Official Committee of Unsecured Creditors Regarding Debtors' Motion for Entry of an Order (A) Approving the Adequacy of the Debtors' Disclosure Statement, (B) Approving Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Proposed Plan of Reorganization, (C) Approving the Form of Various Ballots and Notices in Connection Therewith, and (D) Scheduling Certain Dates with Respect Thereto* to be served upon the parties on the attached service by first-class mail, postage prepaid, or in the manner indicated.

      /s/ David B. Stratton
David B. Stratton (DE No. 960)

#36723263 v2

Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue
Suite 3400
Los Angeles, California 90071
Attn: Van C. Durrer, II, Esq.
**Email: van.durrer@skadden.com**

Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois 60654
Attn: Patrick J. Nash, Jr., Esq.
**Email: patrick.nash@kirkland.com**

Reimer & Braunstein LLP
Times Square Tower
Seven Times Square
Suite 2506
New York, New York 10036
Attn: Steven E. Fox, Esq.
**Email: sfox@riemerlaw.com**

Womble Carlyle Sandridge & Rice, LLP
222 Delaware Avenue
Suite 1501
Wilmington, Delaware 19801
Attn: Steven K. Kortanek, Esq.
**Hand Deliver**
**Email: skortanek@wcsr.com**

Foley & Lardner, LLP
321 N. Clark Street
Suite 2800
Chicago, Illinois 60654
Attn: Mark L. Prager, Esq.
**Email: mprager@foley.com**

Mark S. Kenney, Esq.
Office of the United States Trustee
844 King Street, Room 2207
Wilmington, DE 19801
**Hand Deliver**
**Email: mark.kenney@usdoj.gov**

Skadden, Arps, Slate, Meagher & Flom LLP
155 North Wacker Drive
Chicago, Illinois 60606
Attn: John K. Lyons, Esq.
**Email: john.lyons@skadden.com**

Morris Nichols Arsht & Tunnell LLP 1201 North Market Street
16th Floor, P.O. Box 1347
Wilmington, Delaware 19899-1347 Attn: Robert J. Dehney, Esq.
**Hand Deliver**
**Email: rdehney@mnat.com**

Reimer & Braunstein LLP
Three Center Plaza
Boston, Massachusetts 02108
Attn: David S. Berman, Esq.
**Email: dberman@riemerlaw.com**

Seward & Kissel LLP
One Battery Park Plaza
New York, New York 10004
Attn: John Ashmead, Esq.
**Email: ashmead@sewkis.com**

U.S. Bank National Association
Global Corporate Trust Services
100 Wall Street
New York, New York 10005
Attn: Justin L. Shearer, Vice President
**Email: justin.shearer@usbank.com**

#36723263 v2