## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| In re: | :    Chapter 11 |
| | : |
| QUIKSILVER, INC., *et al.*, | :    Case No. 15-11880 (BLS) |
| | : |
| | :    Jointly Administered |
| Debtors.[1] | : |
| | :    **Hrg. Date: Jan. 13, 2016 at 11:30 a.m. (Eastern)** |
| | :    **Obj. Due: Jan. 6, 2016 at 4:00 p.m. (Eastern)** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### DEBTORS' MOTION FOR ORDER UNDER BANKRUPTCY
### CODE SECTION 105 AND BANKRUPTCY RULE 9019
### FOR ORDER APPROVING SETTLEMENT AGREEMENT
### BY AND AMONG CERTAIN OF THE DEBTORS AND
### ROX VOLLEYBALL, INC. AND FIRST PLACE TEAM SALES, INC.

Quiksilver, Inc. ("ZQK") and certain of its affiliates, the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors" and, together with their non-Debtor affiliates, "Quiksilver" or the "Company") hereby move (the "Motion") this Court for entry of an order (the "Order"), pursuant to section 105 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving the settlement agreement (the "Settlement Agreement") dated December 10, 2015, attached hereto as Exhibit A, by and among Rox Volleyball, Inc. and First Place Team Sales, Inc. (together, the "Defendants") and certain of the Debtors regarding the Litigation (as defined below). In support of this Motion, the Debtors respectfully represent as follows:

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

## JURISDICTION AND VENUE

1.        This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.        The statutory predicate for the relief requested herein is section 105 of the Bankruptcy Code.  The relief is further warranted under Bankruptcy Rule 9019.

3.        Pursuant to Rule 9013-1(f) of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that this Court would lack Article III jurisdiction to enter such final order or judgment absent the consent of the parties.

## BACKGROUND

4.        On September 9, 2015 (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").  These Chapter 11 Cases are jointly administered.

5.        The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.        On September 22, 2015, the Office of the United States Trustee for the District of Delaware (the "United States Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee").  On September 28, 2015, the United States Trustee filed an Amended Notice of Appointment of Creditors' Committee.  No trustee or examiner has been appointed in the Debtors' Chapter 11 Cases.

7.     Quiksilver is one of the world's leading outdoor sports lifestyle companies.  The Company designs, develops and distributes branded apparel, footwear, accessories and related products.  The Company began operations in 1976 making boardshorts for surfers in the United States under a license agreement with the *Quiksilver* brand founders in Australia. Today, the Company's business is rooted in the strong heritage and authenticity of its core brands, *Quiksilver*, *Roxy*, and *DC*, each of which caters to the casual, outdoor lifestyle associated with surfing, skateboarding, snowboarding, BMX, and motocross, among other activities. The Company's products are sold in over 115 countries through a wide range of distribution points, including wholesale accounts (surf shops, skate shops, snow shops, sporting goods stores, discount centers, specialty stores, select department stores, and licensed stores), Company-owned retail stores, and its e-commerce websites.  The Debtors comprise each of the Company's U.S. entities, including parent, ZQK, as well as QS Wholesale, Inc., QS Retail, Inc., DC Shoes, Inc. and seven inactive entities.

8.     Additional factual background information regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to these Chapter 11 Cases, is set forth in detail in the *Declaration of Andrew Bruenjes, Americas Chief Financial Officer of Quiksilver, Inc., in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 20].

## RELIEF REQUESTED

9.     By this Motion, the Debtors seek entry of an order under Bankruptcy Code section 105 and Bankruptcy Rule 9019 approving the Settlement Agreement.

**BASIS FOR RELIEF**

10.     The Litigation that is the subject of the Settlement Agreement arose out of the Defendants' sale and marketing of "Rox" and "Rox Volleyball" labeled products. The Debtors assert that the Defendants' actions infringe and dilute the Plaintiff's federally-registered and famous *Roxy* trademarks. On March 29, 2013, the Debtors filed a complaint (the "Complaint") against the Defendants alleging federal and common law trademark infringement, federal false designation of origin, federal, common law, and state law trademark dilution, and statutory and common law unfair competition in the United States District Court for the Central District of California (the "District Court"), commencing litigation (the "District Court Litigation") captioned as QS Wholesale, Inc., et al. v. Rox Volleyball, Inc. et al., No. 13-cv-00512-AG-JPR (C.D. Cal. filed March 29, 2013).[2] Pursuant to the Complaint, the Debtors sought, among other things, (i) injunctive relief enjoining Defendants from any further sale or marketing of "Rox" labeled and/or branded products, as well as products labeled and/or branded "Rox Volleyball" in a manner likely to cause confusion with Quiksilver's *Roxy* trademarks, (ii) damages, including treble damages, resulting from Defendants' wrongful actions, and (iii) costs, attorneys' fees, and expenses. On August 1, 2013, the Defendants filed an answer (the "Answer") asserting several affirmative defenses, including failure to state a claim, that the claims are time barred, laches, estoppel, waiver, abandonment, unclean hands, and lack of standing.[3] In addition, the Defendants requested costs, attorneys' fees, and expenses.

---

[2]     QS Wholesale, Inc., et al. v. Rox Volleyball, Inc. et al., No. 13-cv-00512-AG-JPR (C.D. Cal. Mar. 29, 2013) (No. 1).

[3]     Rox Volleyball, No. 13-cv-00512-AG-JPR (C.D. Cal. Aug. 1, 2013) (No. 7).

11.     On November 10, 2014, the Defendants filed a motion for summary judgment.[4] Following briefing, on December 31, 2014, the District Court entered an order (the "December 31 Order") denying Defendants' motion for summary judgment and holding that ZQK lacked standing to bring claims of federal trademark infringement, federal trademark dilution, and California trademark dilution.[5] At trial, the Debtors voluntarily dismissed the common law trademark infringement claim and the common law unfair competition claim.[6] In January 2015, the District Court held an eight-day jury trial on the remaining counts. At the conclusion of the trial, the jury found in favor of the Debtors.[7]

12.     Post-trial briefing included, among other things, a motion by the Defendants for judgment as a matter of law and alternatively, for a new trial, and a motion by the Debtors for a permanent injunction and enhanced damages.[8]  On July 19, 2015, the District Court entered an order denying the Defendants' motion for judgment as a matter of law and granting in part and denying in part the Debtors' motion for a permanent injunction and enhanced damages ("July 19 Order").[9] Pursuant to the July 19 Order, the District Court held that a permanent injunction should issue but denied the Debtors' request for enhanced damages.[10] On July 23, 2015, the District Court issued a judgment (the "Judgment") in favor of the Debtors and against

---

[4]     Rox Volleyball, No. 13-cv-00512-AG-JPR (C.D. Cal. Nov. 10, 2014) (No. 71).

[5]     Rox Volleyball, No. 13-cv-00512-AG-JPR (C.D. Cal. Dec. 31, 2014) (No. 256).

[6]     See Rox Volleyball, No. 13-cv-00512-AG-JPR at 2 (C.D. Cal. July 19, 2015) (No. 329)

[7]     Rox Volleyball, No. 13-cv-00512-AG-JPR (C.D. Cal. Jan. 23, 2015) (No. 290).

[8]     Rox Volleyball, No. 13-cv-00512-AG-JPR (C.D. Cal. Feb. 20, 2015) (No. 312); Rox Volleyball, No. 13-cv-00512-AG-JPR (C.D. Cal. Feb. 20, 2015) (No. 313).

[9]     Rox Volleyball, No. 13-cv-00512-AG-JPR (C.D. Cal. July 19, 2015) (No. 329).

[10]    Id. at 17-19.

the Defendants for $204,151 (the "Damages Award").[11] In addition to the Damages Award, the court permanently enjoined the Defendants and their affiliates, directors, officers, employees, and agents from engaging in certain conduct related to the use of "Rox" (as set forth in the Judgment, the "Permanent Injunction"). On September 12, 2015, in accordance with the Judgment, the Defendants filed a declaration providing notice of compliance with the Permanent Injunction (the "Compliance Declaration").[12]

   13. The Defendants appealed the December 31 Order, the July 19 Order, and the Judgment to the Ninth Circuit Court of Appeals (the "Appeals Court").[13] The appeal (the "Appeal," and together with the District Court Litigation, the "Litigation") is docketed as QS Wholesale, Inc., et al v. Rox Volleyball, Inc., et al., No. 15-56435 (9th Cir. filed Sept. 21, 2015). The Appeals Court, at the request of the Defendants by stipulated motion, has stayed the Appeal pending the negotiation and approval of the settlement. The Appeal is currently stayed until February 22, 2016.[14]

   14. The District Court has entered several orders regarding joint stipulations extending the deadlines to file a motion for attorney's fees and related objection and reply deadlines. Most recently, on November 18, 2015, the court entered an order extending the Debtors' deadline to file a motion for attorney's fees to December 21, 2015.[15] The Debtors estimate that they have incurred approximately $3.9 million in attorneys' fees and costs with

---

[11] Rox Volleyball, No. 13-cv-00512-AG-JPR (C.D. Cal. July 23, 2015) (No. 330).

[12] Rox Volleyball, No. 13-cv-00512-AG-JPR (C.D. Cal. Sept. 12, 2015) (No. 334).

[13] Rox Volleyball, No. 13-cv-00512-AG-JPR (C.D. Cal. Sept. 18, 2015) (No. 337).

[14] Rox Volleyball, No. 15-56435 (9th Cir. Nov 19, 2015) (No. 9).

[15] Rox Volleyball, No. 13-cv-00512-AG-JPR (C.D. Cal. Nov. 18, 2015) (No. 343).

respect to the District Court Litigation. The Debtors estimate that they would incur approximately $50,000 to $60,000 in attorney's fees and costs on a motion for attorneys' fees and a motion to tax costs. The Debtors further estimate that they will incur an additional $250,000 - $300,000 in attorneys' fees and costs through oral argument should the Appeal go forward.

15.    In order to resolve the Litigation, the Debtors have engaged in arms'-length negotiations with the Defendants periodically through the course of the Litigation. Over the last several weeks, the negotiations have involved numerous telephone conversations and e-mail correspondence between and among in-house and outside counsel for the Debtors, counsel for the Defendants, and the Defendants' insurer, Travelers Indemnity Company ("Travelers"), and have culminated in the Settlement Agreement.

16.    Ultimately, on December 10, 2015, the Debtors and the Defendants agreed to the Settlement Agreement, pursuant to which Travelers shall pay $475,000.00 to the Debtors within 30 days after the Effective Date (as defined below), and the Debtors shall release Defendants from any claims for attorneys' fees, costs, interest, or any other damages or monetary relief in any way related to arising out of the District Court Litigation.[16] The Settlement Agreement resolves the Litigation. Below is a summary of the key terms and provisions of the Settlement Agreement.[17]

---

[16]    The release, however, does not extend to the Permanent Injunction nor the Defendants' obligations provided for therein.

[17]    To the extent any summary of the Settlement Agreement included in this Motion differs in any way from the terms and conditions of the Settlement Agreement, the actual terms of the Settlement Agreement shall control. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Settlement Agreement.

(a)    <u>Payment by Defendants' Insurers</u>: Travelers shall pay a sum total of four hundred seventy-five thousand dollars ($475,000.00) (the "<u>Payment</u>") to the Debtors within thirty (30) days of the Effective Date of the Settlement Agreement. The Debtors agree and acknowledge that the Payment shall satisfy the Damages Award of the Judgment. The Payment will operate as a release from the Parties (including each of their respective successor and assigns, as well as the estate of the Debtors, and its successors and assigns) of Travelers from any and all claims of any kind or nature arising directly or indirectly out of the District Court Litigation, the Chapter 11 Cases, or the Settlement Agreement, except that Travelers is not released from its obligation to pay the costs and attorney fees incurred by Defendants (subject to Travelers' limits on hourly rates) up through the date that Travelers has made the Payment. Nothing in the Parties' release of Travelers shall impair or prejudice the rights of the Debtors to enforce the Permanent Injunction.

(b)    <u>Effectiveness of Settlement Agreement</u>: Except as otherwise provided in the Settlement Agreement, the Settlement Agreement shall become fully effective on the date on which any order of the Bankruptcy Court approving the Settlement Agreement and the express terms thereof (the "<u>Approval Order</u>") becomes Final and Non-Appealable (the "<u>Effective Date</u>"). For purposes of the Settlement Agreement, the term "Final and Non-Appealable" shall mean either (i) the time in which to appeal the Approval Order expires without any appeal having been taken within the time period required by applicable law and rules, or (ii) if an appeal is taken, a disposition affirming the Approval Order from which no further review or appeal is possible, or the expiration of the time in which to seek further review of the Approval Order through appeal, petition for writ of certiorari, or otherwise, without further review having been sought.

(c)    <u>Satisfaction of Damages Award</u>: The Debtors will notify Defendants immediately upon receipt of the Payment. Within ten days of the Debtors receiving payment, the Debtors agree to file an Acknowledgment of Satisfaction of the Damages Award of the Judgment in the form attached as Exhibit A to the Settlement Agreement (the "<u>Satisfaction of Judgment</u>").

(d)    <u>Dismissal of Civil Claims and Appeal</u>: Within ten (10) days after the Debtors file the Satisfaction of Judgment, the Defendants shall file a dismissal of the Appeal in the form attached as Exhibit B to the Settlement Agreement.

(e)     <u>Release of Defendants</u>: The Debtors agree to fully, finally and forever release, acquit and discharge the Defendants and each of their past or present affiliates, related entities, parents, subsidiaries, funds, trusts, and insurers, and collectively, each and all of their past or present successors, assigns, predecessors, owners, shareholders, members, officers, directors, employees, partners, trustees, agents, attorneys, representatives, professionals, experts, and/or any other person or entity acting on behalf of the foregoing (the "<u>Released Parties</u>") from and against any and all claims for attorneys' fees, costs, interest, or any other damages or monetary relief in any way related to or arising out of the District Court Litigation. For the sake of clarity, the release also includes the Damages Award of the Judgment and any potential right to recovery of attorneys' fees, costs, or interest in the District Court Litigation, but shall not extend to the Permanent Injunction nor to obligations or Defendants provided for therein, which shall remain fully effective and enforceable.

(f)     <u>Defendants' Compliance with Injunction</u>: The Debtors agree that they will not contest the adequacy of the actions taken by the Defendants to comply with the Permanent Injunction through the date of filing of the Compliance Declaration. However, the Debtors reserve all rights to enforce the Permanent Injunction based upon any acts or omissions of Defendants not described in the Compliance Declaration that occurred in the past or that may occur in the future, including without limitation any usage of the "rox" mark by Defendants which is materially different or materially inconsistent with the Defendants' usage of the "rox" mark described in the Compliance Declaration.

(g)     <u>Fees and Costs</u>: Each of the Parties will bear its own costs and attorneys' fees in connection with the Settlement Agreement, the District Court Litigation, and the Appeal. The Debtors agree and acknowledge that they are waiving any right they may have to recovery of costs and attorneys' fees incurred in connection with the District Court Litigation.

(h)     <u>Governing Law</u>: The Settlement Agreement shall be governed and construed in accordance with the law of the State of California applicable to agreements to be performed wholly within that state.

(i)     <u>Bankruptcy Court Approval</u>: Among other things, the Parties are required to exercise in good faith all best efforts to cooperate with one another in connection with obtaining an order in the Chapter 11 Cases in form and substance satisfactory to the Parties approving the Settlement Agreement.

(j)     <u>Binding Effect</u>: The Parties agree that every release, waiver, representation, covenant, warranty, and agreement made in the Settlement Agreement shall be binding upon and injure to the benefit of their respective successors and assigns, any trustee appointed in the Chapter 11 Cases, and the Released Parties.

17.     In deciding whether to enter into the Settlement Agreement, the Debtors exercised their business judgment and compared the cost of the settlement (i.e., the release of the Defendants from any claims for attorney's fees, costs, interest or any other damages in any way related to or arising out of the Litigation) with the benefits that they will obtain from the settlement (i.e., the Payment, the finality and certainty of the favorable judgment in favor of the Debtors, and avoiding the incurrence of additional attorneys' fees and costs related to the Litigation). The Debtors are releasing claims for attorneys' fees and costs and any additional potential damages beyond the Damages Award against the Defendants. In return, they will obtain $475,000.00. In addition, the certainty and finality of the resolution of the issues underlying the Litigation will, among other things, avoid the risk that the Judgment is overturned or the Damages Award reduced through the Appeal. Settling the Litigation will provide the Debtors with greater assurance that the intellectual property at issue in the Litigation will not be further infringed upon or diluted by the Defendants. Finally, the settlement will prevent the Debtors from incurring further attorneys' fees and costs as they relate to the Appeal and to litigation in the District Court regarding the allowance of attorneys' fees and costs related to the District Court Litigation – amounts which the District Court may not award to the Debtors.

18.     For the reasons set forth herein, the Debtors submit that the relief requested herein is in the best interest of the Debtors, their estates, creditors, stakeholders and other parties in interest, and therefore, should be granted.

## APPLICABLE AUTHORITY

19.     Bankruptcy Rule 9019, which governs the approval of compromises and settlements by a debtor, provides that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019.

20.     The analysis of any proposed settlement starts with the general policy of encouraging settlements and favoring compromises. See Myers v. Martin (In re Martin), 91 F.3d 389, 394 (3d Cir. 1996). To approve a settlement, a bankruptcy court must determine that the settlement is in the best interest of a debtor's estate. Law Debenture Trust Co. of New York v. Kaiser Aluminum Corp. (In re Kaiser Aluminum Corp.), 339 B.R. 91, 95–96 (D. Del. 2006). In addition, a court must:

> assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal" in light of four factors: (1) the probability of success in the litigation, (2) the likely difficulties in collection, (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it, and (4) the paramount interests of the creditors.

Id. at 96 (quoting Martin, 91 F.3d at 393). The United States District Court for the District of Delaware has explained that a court's ultimate inquiry is whether a settlement is fair, reasonable and in the best interest of a debtor's estate. In re Marvel Entm't Grp., Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)).

21.     The decision to approve a particular settlement lies within the sound discretion of the bankruptcy court. In re World Health Alts., Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006). In exercising its discretion, the bankruptcy court must make an independent determination that the settlement is fair and equitable. Protective Comm. for Indep. S'holders of TMT Trailer Ferry Inc., v. Anderson, 390 U.S. 414, 424 (1968). A court need not decide the numerous issues of law and fact raised by the settlement and it need not be convinced that the

11

proposed settlement is the best possible, rather "[t]he court need only conclude that the settlement falls within the reasonable range of litigation possibilities somewhere above the lowest point in the range of reasonableness." In re Nutritional Sourcing Corp., 398 B.R. 816, 833 (Bankr. D. Del. 2008) (quoting In re Coram Healthcare Corp., 315 B.R. 321, 330 (Bankr. D. Del. 2004)). In making its determination, a court should not substitute its own judgment for that of the debtor and should defer to the debtor so long as there is a reasonable business justification.  See Martin, 91 F.3d at 395; In re Jasmine, Ltd., 258 B.R. 119, 123 (D.N.J. 2000). The court should exercise its discretion "in light of the general public policy favoring settlements."  In re Hibbard Brown & Co., Inc., 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998); Nellis v. Shugrue, 165 B.R. 115, 23 (S.D.N.Y. 1994) ("[T]he general rule [is] that settlements are favored and, in fact, encouraged by the approval process outlined above.").

22.    In the Debtors' business judgment, the resolution embodied in the Settlement Agreement is fair and equitable and in the best interests of the Debtors, their estates, and creditors. The Settlement Agreement provides for a prompt and complete resolution of claims related to the Litigation, which, if litigated on appeal, would be costly and distracting to the Debtors, the Debtors' management, and their advisors. In addition, it provides for an immediate cash infusion of $475,000.00 to the Debtors. Moreover, the Settlement Agreement allows the Debtors to avoid the uncertainty and risk of the Appeals Court overturning the District Court's Judgment in favor of the Debtors, complete with the Damages Award and the Permanent Injunction. The Settlement Agreement also allows the Debtors to avoid the uncertainty and risk of being unable to collect on any award of monetary damages. In addition, although the Debtors are releasing claims against the Defendants related to attorneys' fees, costs, or interest related to or arising out of the Litigation, the award of such fees, costs, and interest is by no means certain

and would require additional litigation in the District Court – and as a result, additional attorneys' fees and costs.

23.     The Settlement Agreement is the product of good faith, arm's-length negotiations among the parties. The Settlement Agreement falls well within the range of reasonable litigation outcomes. In addition, as discussed below, each of the <u>Martin</u> factors weighs in favor of approving the Settlement Agreement.

24.     First, the probability of the Debtors' success on appeal is uncertain, particularly with respect to attorneys' fees and costs. Had the parties failed to reach the consensual resolution provided for in the Settlement Agreement, the Debtors would have been forced to continue the Litigation on appeal despite the District Court's Judgment in favor of the Debtors. Although the Debtors firmly believe the claims that they have asserted in the District Court Litigation have merit, the Defendants similarly believe in the merit of their affirmative defenses. In addition, the Debtors believe that there is a possibility that their request for attorneys' fees, costs, and expenses may not be granted, given the high standard required in trademark cases for an award of attorneys' fees.[18]

25.     Second, absent the Settlement Agreement, there is no certainty that the Debtors would be able to obtain any recovery on their claims against the Defendants. The Judgment could be overturned by the Appeals Court. If that occurs, then the Debtors could potentially lose both their Damages Award and their Permanent Injunction. Even if the Appeals Court affirms the judgment of the District Court, there is a risk that the Debtors would be unable to collect on the Damages Award. In addition, in order to collect on attorneys' fees and costs

---

[18]   "The court in exceptional [trademark violation] cases may award reasonable attorney fees to the prevailing party." 15 U.S.C.S. § 1117(a).

associated with the District Court Litigation, the Debtors would first need to file a motion for payment of the same.

26.     Third, the Appeal would be protracted, time-consuming, and costly. The Debtors estimate that they would incur approximately $250,000 to $300,000 in additional attorneys' fees and costs through oral argument related to the Appeal. The Debtors also estimate that in connection with a motion for attorney's fees and a motion to tax costs, they would incur approximately $50,000 to $60,000 in additional attorneys' fees and costs. Moreover, the litigation would distract the Debtors, the Debtors' management, and their advisors. The parties believe the Settlement Agreement eliminates the inherent uncertainties, costs, and delays associated with continuing the Litigation.

27.     Lastly, the Settlement Agreement will substantially benefit the Debtors' creditors. The Settlement Agreement provides for a substantial and immediate cash infusion of $475,000.00 to the estates and avoids additional expensive and time-consuming litigation.

28.     Based on the foregoing, the Debtors submit that the proposed Settlement Agreement is beneficial to and in the best interests of their estates and their creditors.  The Settlement Agreement represents a compromise that is fair and equitable, falls well within the range of reasonableness, and satisfies the standards for approval under applicable law. Accordingly, for the reasons detailed herein, approval of the Settlement Agreement is warranted under Bankruptcy Rule 9019.

29.     Finally, Bankruptcy Code section 105 provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  As noted above, approval of the relief requested herein furthers the Debtors' efforts to minimize the risk of litigation and to resolve claims in a

manner that benefits the Debtors and is fair and equitable to other parties in interest.

Accordingly, approval of the Settlement Agreement is further justified under Bankruptcy Code

section 105.

## NOTICE

30.     Notice of this Motion will be given to: (a) the Office of the United States

Trustee for the District of Delaware; (b) counsel to the agent for the Debtors' postpetition

secured loan facilities; (c) counsel to the agent for the Debtors' prepetition revolving loan facility;

(d) counsel to the indenture trustee for the Debtors' prepetition senior secured notes; (e) counsel

to the indenture trustee for the Debtors' prepetition senior unsecured notes; (f) counsel to the

Creditors' Committee; and (g) all parties entitled to notice pursuant to Bankruptcy Rule 2002. In

addition, the Debtors have provided notice to Travelers Indemnity Company and counsel to First

Place Team Sales, Inc. and Rox Volleyball, Inc. Debtors submit that, in light of the nature of the

relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

31.     No previous request for the relief sought herein has been made to this

Court or any other court.


**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto, granting the relief set forth herein and such other and further relief as may be just and proper.

Dated: Wilmington, Delaware
　　　　December 15, 2015

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

/s/  *Van C. Durrer, II*
Van C. Durrer, II (I.D. No. 3827)
Annie Z. Li
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071
Telephone: (213) 687-5000
Fax: (213) 687-5600

- and -

Mark S. Chehi (I.D. No. 2855)
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
Telephone: (302) 651-3000
Fax: (302) 651-3001

- and -

John K. Lyons
Jessica Kumar
155 N. Wacker Dr.
Chicago, Illinois 60606
Telephone: (312) 407-0700
Fax: (312) 407-0411

*Counsel for Debtors and Debtors in Possession*