**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
----------------------------------------------------------  x
                                                            :
In re:                                                      :   Chapter 11
                                                            :
QUIKSILVER, INC., et al.,                                   :   Case No. 15-11880 (BLS)
                                                            :
                              Debtors.¹                     :   Jointly Administered
                                                            :
----------------------------------------------------------  x
```

**AFFIDAVIT OF SERVICE**

On December 7, 2015, employees of KCC caused the following documents to be served 1) via Overnight mail to the parties on the service list attached hereto as **Exhibit A** for subsequent distribution to beneficial holders of the 7.875% Senior Secured Notes, CUSIPs 74840D AA 8 and U7484D AA 3; 2) via First Class mail to the parties on the service list attached hereto as **Exhibit B**; and 3) via Email to the parties attached hereto as **Exhibit C**:

- Rights Offering Procedures [attached hereto as **Exhibit D**]
- Instructions to Secured Notes Eligibility Certificate for the Secured Component of the Exit Rights Offering and the Euro Notes Rights Offering in Connection with the Second Amended Joint Chapter 11 Plan of Reorganization of Quiksilver, Inc. and Its Affiliated Debtors and Debtors in Possession [attached hereto as **Exhibit E**]
- Instructions to Secured Notes Certification Period Transfer Notice [attached hereto as **Exhibit F**]

Further, on December 7, 2015, employees of KCC caused the following documents to be served 1) via First Class mail to the parties on the service list attached hereto as **Exhibit G** for subsequent distribution to beneficial holders of the 10% Senior Unsecured Notes, CUSIP 74840D AB 6; 2) via First Class mail to the parties on the service list attached hereto as **Exhibit H**; and 3) via Email to the parties attached hereto as **Exhibit C**:

- Rights Offering Procedures [attached hereto as **Exhibit D**]
- Instructions to Unsecured Notes Eligibility Certificate for the Unsecured Component of the Exit Rights Offering in Connection with the Second Amended Joint Chapter 11 Plan of

---

¹　The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

Reorganization of Quiksilver, Inc. and Its Affiliated Debtors and Debtors in Possession [attached hereto as **Exhibit I**]

- Instructions to Unsecured Notes Certification Period Transfer Notice [attached hereto as **Exhibit J**]

Dated: December 15, 2015

David Hartie

State of New York

County of New York City

Subscribed and sworn to (or affirmed) before me on this 15th day of December, 2015, by David Hartie, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Signature:

ERIKA HERNANDEZ
Notary Public - State of New York
NO. 01HE6287212   12/10/15
Qualified in Bronx County
My Commission Expires Aug 5, 2017

# EXHIBIT A

| NameID | CreditorName | CreditorNoticeName | Address1 | Address2 | City | State | Zip |
|--------|--------------|--------------------|----------|----------|------|-------|-----|
| BDRG | Broadridge | Receiving Dept | 51 Mercedes Way | | Edgewood | NY | 11717 |
| DTC | The Depository Trust Co | Robert Giordano | 570 Washington Blvd | | Jersey City | NJ | 07310 |

# EXHIBIT B

Exhibit B

| NameID | CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip |
|---|---|---|---|---|---|---|---|---|
| 0005 | Goldman Sachs & Co | Gloria Lio | 30 Hudson St | | | Jersey City | NJ | 07302-4699 |
| 0010 | Brown Brothers Harriman & Co | Michael Lerman | 525 Washington Blvd | New Port Towers | | Jersey City | NJ | 07302-0000 |
| 0161 | Bank of America Merrill Lynch | Corp Actions Notifications Jax | Corporate Action Dept | 4804 Deer Lake Drive East | 4th Fl Bldg 3 | Jacksonville | FL | 32246 |
| 0187 | JP Morgan Securities Inc Fixed | Corporate Actions | 14201 North Dallas Tollway | 12 th Fl | | Dalls | TX | 75254 |
| 0274 | Citigroup Global Markets Inc Salomon | Maneth Chap | 3800 Citibank Center B3 12 | | | Tampa | FL | 33610 |
| 0352 | J P Morgan Clearing Corp | Proxy Dept Manager | 14201 Dallas Parkway | | | Dallas | TX | 75254 |
| 0355 | Credit Suisse Securities USA LLC | Reorg Department | 1 Madison Ave | 2nd Fl | | New York | NY | 10010 |
| 0642 | UBS Securities LLC | Gregory Contaldi | 1200 Harbor Blvd | | | Weehawken | NJ | 07086-0000 |
| 0773 | Bank of America/Merrill Lynch | Catherine Changco | 4804 Deer Lake Dr East | | | Jacksonville | FL | 32246 |
| 0901 | BNY Mellon | Enis Suljic | 525 William Penn Pl | Rm 300 | | Pittsburgh | PA | 15259 |
| 0902 | JPMorgan Chase Bank NA | Reorg Dept | 14201 Dallas Parkway | | | Dallas | TX | 75254 |
| 0908 | Citibank NA | Sandra Hernandez | 3800 Citibank Center B3 12 | | | Tampa | FL | 33610 |
| 0954 | The Bank of New York Mellon | Beth Stiffler | 525 William Penn Pl | Rm 300 | | Pittsburgh | PA | 15259 |
| 0997 | State Street Bank and Trust Co | Sandra Polizio | Corp Actions JAB5E | 1776 Heritage Dr | | North Quincy | MA | 02171-0000 |
| 2027 | Wells Fargo Bank, National Association | Kevin St. Louis | 733 Marquette Ave | MAC N9306 057 5th Fl | | Minneapolis | MN | 55402 |
| 2108 | Comerica Bank | Gloria Imhoff | 411 West Lafayette | Mail Code 3530 | | Detroit | MI | 48226 |
| 2209 | The Bank of New York Mellon/SPDR | Michael Kania | 525 William Penn Pl | Rm 300 | | Pittsburgh | PA | 15259 |
| 2251 | Bank of America/Lasalle Bank NA | George Earl | 135 South LaSalle St | Ste 1860 | | Chicago | IL | 60603 |
| 2669 | Northern Trust Co | Stella Castaneda | 801 S Canal St | Attn Capital Structures C1N | | Chicago | IL | 60607 |
| 2941 | Goldman Sachs Bank USA | Reorg Dept | 30 Hudson St | | | Jersey City | NJ | 07302-4699 |

# EXHIBIT C

| Company | Email |
|---|---|
| Bank of America DTC #773 #5198 | cpactionslitigation@ml.com |
| Bank of America DTC #773 #5198 | bascorporateactions@bofasecurities.com |
| Bank of America DTC #773 #5198 | corpactionsproxy@ml.com |
| Bank of America DTC #2251 | tss.corporate.actions@bankofamerica.com |
| Barclays #229 | nyvoluntary@barclays.com |
| BNP Paribas | NYK_DG_CORPORATE_ACTION@US.BNPPARIBAS.COM |
| BNY Mellon #954 | Beth.Stiffler@bnymellon.com |
| BNY Mellon #954 | jason.wolney@bnymellon.com |
| Bloomberg | release@bloomberg.net |
| Broadridge | BBTRProxyOps@broadridge.com |
| Brown Brothers #10 | shannon.leung@bbh.com |
| Brown Brothers #10 | michael.lerman@bbh.com |
| Citi #908 | gts.caec.tpa@citi.com |
| Clearstream International SA | ca_luxembourg@clearstream.com |
| Clearstream International SA | CA_general.events@clearstream.com |
| Credit Suisse Securities (USA) LLC #355 | list.nyevtintgrp@credit-suisse.com |
| Credit Suisse Securities (USA) LLC #355 | raequel.packenham@credit-suisse.com |
| Credit Suisse Securities (USA) LLC #355 | asset.servnotification@credit-suisse.com |
| Deutsche Bank Securities Inc #573 | jaxca.notifications@db.com |
| Euroclear Bank S.A./N.V. | drit@euroclear.com |
| Euroclear Bank S.A./N.V. | kent.s.roddy@jpmchase.com |
| Euroclear Bank S.A./N.V. | kent.s.roddy@jpmorgan.com |
| Foliofn Investments | proxyservices@folioinvesting.com |
| Goldman Sachs & Co | GS-as-ny-proxy@ny.email.gs.com |
| Goldman Sachs & Co | NewYorkAnncHub@gs.com |
| Goldman Sachs & Co | Gs-as-ny-reorg@ny.email.gs.com |
| Inveshare | Reorg@inveshare.com |
| Inveshare | operations@inveshare.com |
| JPMorgan Chase Bank | JPMorganInformation.Services@JPMChase.com |
| JPMorgan Clearing #352 | Christine.Fahey@jpmorgan.com |
| JPMorgan Clearing #352 | Nimeh.Barakat@jpmorgan.com |
| JPMorgan Clearing #352 | ibdvr.materials@jpmorgan.com |
| JPMorgan Clearing #352 | IB_Domestic_Voluntary_Corporate_Actions@jpmorgan.com |
| Mediant Communications | documents@mediantonline.com |
| Mitsubishi UFJ Trust & Banking Corp #2932 | corporateactions-dl@us.tr.mufg.jp |
| Morgan Stanley #15 | usproxies@morganstanley.com |
| Morgan Stanley #15 | proxy.balt@morganstanley.com |
| Morgan Stanley #15 | cavsdom@morganstanley.com |
| Morgan Stanley #15 | Raquel.Del.Monte@morganstanley.com |

Exhibit C

| Company | Email |
|---|---|
| Morgan Stanley #15 | john.falco@morganstanley.com |
| Morgan Stanley #15 | robert.cregan@morganstanley.com |
| Northern Trust Company #2669 | cs_notifications@ntrs.com |
| PNC Bank NA #2616 | caspr@pnc.com |
| Royal Bank of Canada | donald.garcia@rbc.com |
| SEI PV/GWP #2663 | gwsusopscaincome@seic.com |
| SIS SegaInterSettle AG | corpactionsoverseas.group@sisclear.com |
| Southwest Securities | proxy@swst.com |
| Southwest Securities | vallwardt@swst.com |
| State Street Bank and Trust Co #997 | rjray@statestreet.com |
| State Street Bank and Trust Co #997 | jkkyan@statestreet.com |
| State Street Bank and Trust Co #997 | USCAResearch@statestreet.com |
| The Bank of New York Mellon #901 | pgheventcreation@bnymellon.com |
| The Bank of New York Mellon #901 | justin.whitehouse@bnymellon.com |
| The Bank of New York Mellon #901 | brian.marnell@bnymellon.com |
| The Bank of New York Mellon #901 | matthew.bartel@bnymellon.com |
| The Canadian Depository | sies-cainfo@cds.ca |
| The Canadian Depository | fabrahim@cds.ca |
| UBS Securities LLC #642 | OL-EVENTMANAGEMENT@ubs.com |
| Wells Fargo Securities | corporate.actiongroup@wellsfargo.com |
| Wells Fargo Advisors | corpactionsvoluntary.ops@firstclearing.com |
| The Depository Trust Co | MK-CorporateActionsAnnouncements@markit.com |
| The Depository Trust Co | cscotto@dtcc.com |
| The Depository Trust Co | lensnotices@dtcc.com |
| The Depository Trust Co | mandatoryreorgannouncements@dtcc.com |
| The Depository Trust Co | voluntaryreorgannouncements@dtcc.com |

# EXHIBIT D

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                    :

In re:                    :     Chapter 11
                    :

QUIKSILVER, INC., *et al.*,    :     Case No. 15-11880 (BLS)
                    :

        Debtors.[1]      :     (Jointly Administered)
                    :

                    :     **Related Docket Nos. 398, 530**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## RIGHTS OFFERING PROCEDURES

On December 4, 2015, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered the *Order (A) Approving the Adequacy of the Debtors' Disclosure Statement, (B) Approving Solicitation and Notice Procedures with respect to Confirmation of the Debtors' Proposed Plan of Reorganization, (C) Approving the Form of Various Ballots and Notices in Connection Therewith, and (D) Scheduling Certain Dates with Respect Thereto* [Docket No. 529] (the "Disclosure Statement Order") that, among other things, (a) approved the adequacy of the *Second Amended Disclosure Statement With Respect to the Second Amended Joint Chapter 11 Plan of Reorganization of Quiksilver, Inc. and its Affiliated Debtors and Debtors in Possession* [Docket No. 533] (as hereafter amended or modified, and including all appendices, exhibits, schedules and supplements thereto, the "Disclosure Statement") filed in support of the *Second Amended Joint Plan of Reorganization of Quiksilver, Inc. and its Affiliated Debtors and Debtors in Possession* [Docket No. 532] (as hereafter amended or modified, and including all appendices, exhibits, schedules and supplements thereto, the "Plan"),[2] and (b) authorized the above-captioned debtors and debtors in possession (collectively, the "Debtors") to solicit acceptances or rejections of the Plan from certain holders of Impaired Claims who are (or may be) entitled to receive distributions under the Plan.

On December 4, 2015, the Bankruptcy Court entered the *Order Authorizing and Approving (I)(A) Entry into the Backstop Commitment Letter and (B) Payment of Related Fees and (II) the Rights Offering Procedures and Related Forms* [Docket No. 530] (the "Rights Offering Order") that, among other things, approved these Rights Offering Procedures and the

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), Quiksilver Wetsuits, Inc. (9599).  The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan.

1

forms annexed hereto (the "<u>Rights Offering Materials</u>") for the conduct of, and participation in, the Rights Offerings.

**It shall be a condition precedent to participation by Eligible Secured Notes Offerees in either of the Rights Offerings that the Eligible Secured Notes Offeree (or the Holder of the applicable Allowed Secured Notes Claim) shall have voted in favor the Plan and not opted out of the releases provided therein**.  Any exercise of Rights by Secured Notes Subscription Form that cannot be matched to a vote to accept the Plan on a ballot submitted in compliance with the Disclosure Statement Order will be rejected and deemed invalid, and the purported exercise of the Rights by such Eligible Secured Notes Offeree shall be null and void. For the avoidance of doubt, such condition precedent shall not apply to participation by Eligible Unsecured Notes Offerees in the Unsecured Component of the Exit Rights Offering.

In the event of an inconsistency between these Rights Offering Procedures, on the one hand, and the Plan and the Disclosure Statement, on the other hand, the Plan and the Disclosure Statement shall control.  In the event of an inconsistency between the Plan and the Disclosure Statement, on the one hand, and the Backstop Commitment Letter (as defined below), on the other hand, the Backstop Commitment Letter shall control.

## I.    DEFINITIONS.

a.    "**Allowed**" has the meaning set forth in the Plan.

b.    "**Backstop Commitment Letter**" means the Backstop Commitment Letter by and among the Debtors and the Backstop Parties (as may be amended, supplemented, restated, or otherwise modified from time to time in accordance with the terms therewith), attached as **Exhibit 1** to the Rights Offering Order.

c.    "**Backstop Commitments**" has the meaning ascribed to such term in the Backstop Commitment Letter.

d.    "**Backstop Parties**" means, collectively, those parties making the Backstop Commitments pursuant to the Backstop Commitment Letter, each solely in its capacity as provider of such Backstop Commitments.

e.    "**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as may be amended from time to time.

f.    "**Certification Period**" means the period commencing on the day following the Rights Offering Record Date and ending at the Eligibility Certificate Deadline.

g.    "**Certification Period Transfer Notice**" means a notice delivered to the Subscription Agent notifying the Subscription Agent of the transfer of an Allowed Secured Notes Claim or an Allowed Unsecured Notes Claim during the Certification Period, which indicates (i) the name of the transferor, (ii) the name and participant number of the transferor's Nominee that held the transferred Secured Notes Claim or Unsecured Notes Claim, as applicable, on the Rights Offering Record Date, (iii) the name, address and other required information of

2

the Transferee Holder, and (iv) the principal amount of such Claim, in substantially the forms attached hereto as **Annexes C-1 and C-2**.

h.  "**Claim**" means any interests or claims against the Debtors, whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

i.  "**Class**" means a category of Holders of Claims or Interests classified together pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code, as described in the Plan.

j.  "**Closing Date**" means the date on which the Rights Offerings and the transactions contemplated by the Backstop Commitment Letter close in accordance with their terms.  For the avoidance of doubt, the Closing Date is expected to occur on the Effective Date.

k.  "**Effective Date**" means the date on which the Plan shall take effect in accordance with its terms.

l.  "**Eligibility Certificate**" means a Secured Notes Eligibility Certificate or an Unsecured Notes Eligibility Certificate, as applicable.

m.  "**Eligibility Certificate Deadline**" means December 28, 2015 at 4:00 p.m. (prevailing Eastern Time) or such later time as determined by the Debtors with the consent of the Backstop Parties.

n.  "**Eligible Affiliate**" means an Eligible Secured Notes Affiliate or an Eligible Unsecured Notes Affiliate, as applicable.

o.  "**Eligible Secured Notes Affiliate**" means an affiliate of an Eligible Secured Notes Holder that is an Eligible Secured Notes Holder or would be an Eligible Secured Notes Holder if such affiliate were a holder of an Allowed Secured Notes Claim.

p.  "**Eligible Unsecured Notes Affiliate**" means an affiliate of an Eligible Unsecured Notes  Holder that is an Eligible Unsecured Notes Holder or would be an Eligible Unsecured Notes Holder if such affiliate were a holder of an Allowed Unsecured Notes Claim.

q.  "**Eligible Holder**" means Eligible Secured Notes Holder or an Eligible Unsecured Notes Holder, as applicable.

r.  "**Eligible Secured Notes Holder**" means any Holder of an Allowed Secured Notes Claim as of the Rights Offering Record Date that is either (i) certified as an "accredited investor" as defined in Rule 501(a)(1), (2), (3), or (7) under the Securities Act, which, for the avoidance of doubt, shall exclude any natural person, or (ii) a "qualified institutional buyer" as defined in Rule 144A of the Securities Act.

s.      "**Eligible Unsecured Notes Holder**" means any Holder of an Allowed Unsecured Notes Claim as of the Rights Offering Record Date that is either (i) certified as an "accredited investor" as defined in Rule 501(a)(1), (2), (3), or (7) under the Securities Act, which, for the avoidance of doubt, shall exclude any natural person, or (ii) a "qualified institutional buyer" as defined in Rule 144A of the Securities Act.

t.      "**Eligible Offeree**" means an Eligible Secured Notes Offeree or an Eligible Unsecured Notes Offeree.

u.      "**Eligible Secured Notes Offeree**" means an Eligible Secured Notes Holder or an Eligible Secured Notes Affiliate that timely and properly submits an Eligibility Certificate.

v.      "**Eligible Unsecured Notes Offeree**" means an Eligible Unsecured Notes Holder or an Eligible Unsecured Notes Affiliate that timely and properly submits an Eligibility Certificate.

w.      "**Entity**" means an entity as defined in section 101(15) of the Bankruptcy Code.

x.      "**Euro Notes Exchange Offer**" means the exchange offer proffered by the Debtors or certain Affiliates thereof to holders of Euro Notes, the terms and conditions of which shall be set forth in a document contained in the Plan Supplement.

y.      "**Euro Notes Rights Offering**" means the rights of Eligible Offerees to purchase, on a Pro Rata basis and in accordance with these Rights Offering Procedures, up to €50.0 million of New Common Stock at the Rights Equity Exercise Price.

z.      "**Euro Notes Rights Offering Subscription Proceeds**" means the aggregate Subscription Purchase Price provided by Rights Offering Participants through the Euro Notes Rights Offering, which shall be, after taking into account the Backstop Commitments, €50.0 million.

aa.     "**Exchange Act**" means the Securities Exchange Act of 1934 (as amended from time to time).

bb.     "**Exit Rights Offering**" means (i) the Rights of Eligible Unsecured Notes Offerees to purchase, on a Pro Rata basis and in accordance with these Rights Offering Procedures, up to $12.5 million of New Common Stock at the Rights Equity Exercise Price; and (ii) the Rights of Eligible Secured Notes Offerees to purchase, on a Pro Rata basis and in accordance with these Rights Offering Procedures, up to $115.0 million of New Common Stock at the Rights Equity Exercise Price.

cc.     "**Exit Rights Offering Subscription Proceeds**" means the aggregate Subscription Purchase Price provided by Rights Offering Participants through the

Exit Rights Offering, which shall be, after taking into account the Backstop Commitments, $127.5 million.

dd.   "**Holder**" means any Entity that is a holder of an Allowed Claim against the Debtors.

ee.   "**Holding Company Restructuring"** means the restructuring transactions described in Article 6.9 of the Plan.

ff.   "**Holdings**" means, in connection with a Holding Company Restructuring, an entity, which may be a limited liability company, a limited partnership or other comparable alternative, established at the direction of the Plan Sponsor to hold directly 100% of the equity securities of Quiksilver on and after the Effective Date.

gg.   "**New Common Stock**" means the shares of new common stock, limited liability company membership units, or the functional equivalent thereof, as applicable, of Reorganized Quiksilver, authorized and issued pursuant to the Plan.

hh.   "**New Common Stock Rights**" means subscription rights to purchase the New Common Stock through the Rights Offerings pursuant to these Rights Offering Procedures.

ii.   "**New Money Investment**" means the $127.5 million and €50.0 million gross new money investment in Reorganized Quiksilver to be funded pursuant to the Exit Rights Offering and Euro Notes Rights Offering, respectively, and backstopped by the Backstop Parties.

jj.   "**New Shareholders Agreement**" means the shareholders agreement, limited liability company agreement, or the functional equivalent thereof, as applicable, of Reorganized Quiksilver with respect to the New Common Stock, substantially in the form to be included in the Plan Supplement, in form and substance acceptable to the Plan Sponsor.

kk.   "**Nominee**" means the bank, brokerage house, or other financial institution that holds the Secured Notes underlying a Holder's Secured Notes Claim or the Unsecured Notes underlying a Holder's Unsecured Notes Claim, as applicable.

ll.   "**Plan Supplement**" means the supplement or supplements to the Plan containing certain exhibits and documents relevant to the implementation of the Plan, to be filed with the Bankruptcy Court.

mm.   "**Pro Rata**" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

nn.    "**Reorganized Debtors**" means the Debtors or any successors thereto, by merger, consolidation, or otherwise, on and after the Effective Date, but excluding specifically any of the Debtors who are dissolved pursuant to the Plan.

oo.    "**Reorganized Quiksilver**" means the Reorganized Debtors' ultimate parent company upon consummation of the Plan on the Effective Date, which, if after the completion of a Holding Company Restructuring, will be Holdings.

pp.    "**Rights**" means a Rights Offering Participant's share of the New Common Stock Rights pursuant to these Rights Offering Procedures.

qq.    "**Rights Equity Exercise Price**" means the purchase price per share or membership unit, as applicable, of New Common Stock, which shall give rise to (x) a 20% discount to the anticipated equity value of Reorganized Quiksilver of $276 million, in the event the Euro Notes Exchange Offer is fully consummated, or (y) a 25% discount to the anticipated equity value of Reorganized Quiksilver of $221 million, in the event the Euro Notes Exchange Offer is not consummated.

rr.    "**Rights Offerings**" means, collectively, the Exit Rights Offering and the Euro Notes Rights Offering.

ss.    "**Rights Offering Documents**" means, collectively, the complete description of the Rights Offerings as contained in the Plan, the Disclosure Statement, the Plan Supplement (including the New Shareholders Agreement), and these Rights Offering Procedures and the forms annexed hereto.

tt.    "**Rights Offering Participant**" means (i) an Eligible Offeree, or (ii) a Transferee Holder.

uu.    "**Rights Offering Procedures**" shall mean these procedures, as may be modified by the Debtors, with the consent of the Backstop Parties.

vv.    "**Rights Offering Record Date**" means the Voting Record Date, which is December 1, 2015.

ww.    "**Rights Offering Subscription Proceeds**" means, collectively, the Exit Rights Offering Subscription Proceeds and the Euro Notes Rights Offering Subscription Proceeds.

xx.    "**Secured Component of the Exit Rights Offering**" means up to $115.0 million of the Exit Rights Offering.

yy.    "**Secured Notes**" means the 7.875% Senior Secured Notes due 2018 issued by certain Debtors.

zz.    "**Secured Notes Claim**" means any claim on account of the Secured Notes.

6

aaa. "**Secured Notes Eligibility Certificate**" means the eligibility form sent to each Holder of an Allowed Secured Notes Claim, in substantially the form attached hereto as **Annex A-1**.

bbb. "**Secured Notes Subscription Form**" means the subscription form(s) and applicable instructions sent to each Eligible Secured Notes Offeree on which such Eligible Secured Notes Offeree may exercise their Rights, substantially in the form attached hereto as **Annex B-1**.

ccc. "**Securities Act**" means the Securities Act of 1933, as amended and the rules and regulations promulgated thereunder.

ddd. "**Subscription Accounts**" means one or more trust accounts, escrow accounts, treasury accounts, or similar segregated accounts established by the Subscription Agent to receive and hold payments of the Subscription Purchase Price.

eee. "**Subscription Agent**" means Kurtzman Carson Consultants LLC, solely in its capacity as such.

fff. "**Subscription Deadline**" means the Voting Deadline, which is January 14, 2016 at 4:00 p.m. (prevailing Eastern Time), or such later time as determined by the Debtors with the consent of the Backstop Parties.

ggg. "**Subscription Form**" means a Secured Notes Subscription Form or an Unsecured Notes Subscription Form, as applicable.

hhh. "**Subscription Purchase Price**" means the purchase price for Rights acquired by a Rights Offering Participant pursuant to the Rights Offerings and as calculated in accordance with such Rights Offering Participant's Subscription Form.

iii. "**Transferee Holder**" means a Holder of an Allowed Secured Notes Claim or Unsecured Notes Claim that is a direct or indirect transferee of an Allowed Secured Notes Claim or Unsecured Notes Claim and which has properly notified the Debtors of such transfer through a Certification Period Transfer Notice.

jjj. "**Unsecured Component of the Exit Rights Offering**" means up to $12.5 million of the Exit Rights Offering.

kkk. "**Unsecured Notes**" means the 10.000% Senior Unsecured Notes due 2020 issued by certain Debtors.

lll. "**Unsecured Notes Claim**" means any claim on account of the Unsecured Notes.

mmm. "**Unsecured Notes Eligibility Certificate**" means the eligibility form sent to each Holder of an Allowed Unsecured Notes Claim, in substantially the form attached hereto as **Annex A-2**.

nnn.    "**Unsecured Notes Subscription Form**" means the subscription form(s) and applicable instructions sent to each Eligible Unsecured Notes Offeree on which such Eligible Unsecured Notes Offeree may exercise their Rights, substantially in the form attached hereto as **Annex B-2**.

## II.    RIGHTS OFFERINGS.

The Plan includes the Rights Offerings, subject to the Backstop Commitments, in order to raise an aggregate amount of cash equal to the New Money Investment in the form of:

- a maximum amount of $127.5 million in New Common Stock under the Exit Rights Offering; and

- a maximum amount of €50.0 million in New Common Stock under the Euro Notes Rights Offering.

The Backstop Parties will backstop the New Money Investment to the extent the amount subscribed for through the Exit Rights Offering and the Euro Notes Rights Offering, in either case, is less than the New Money Investment with respect to the applicable Rights Offering, in accordance with the terms and conditions of the Backstop Commitment Letter.

Participation in the Exit Rights Offering is voluntary and is limited to Holders of Allowed Secured Notes Claims and Holders of Allowed Unsecured Notes Claims, and, in each case, Transferee Holders that are Eligible Holders, or their Eligible Affiliates, who so certify by means of a timely filed and properly completed Eligibility Certificate. Participation in the Euro Notes Rights Offering is voluntary and is limited to Holders of Allowed Secured Notes Claims and Transferee Holders that are Eligible Secured Notes Holders, or their Eligible Secured Notes Affiliates, who so certify by means of a timely filed and properly completed Eligibility Certificate.

It is a condition precedent to participation in the Rights Offerings by Eligible Secured Notes Offerees that the Eligible Secured Notes Offeree (or the Holder of the applicable Allowed Secured Notes Claims) timely submit a ballot in compliance with the Disclosure Statement Order accepting the Plan and consenting to the releases thereunder.

Rights Offering Participants will receive Rights in accordance with the Plan and these Rights Offering Procedures. The Rights entitle each Eligible Secured Notes Offeree to acquire New Common Stock, issued at the Rights Equity Exercise Price, in a total amount up to its Pro Rata share of the Euro Notes Rights Offering—€50.0 million—and the Secured Component of the Exit Rights Offering—$115.0 million. The Rights entitle each Eligible Unsecured Notes Offeree to acquire New Common Stock, issued at the Rights Equity Exercise Price, in a total amount up to its Pro Rata share of the Unsecured Component of the Exit Rights Offering—$12.5 million. To exercise its Rights, an Eligible Offeree must timely submit a properly completed Subscription Form.

Even if a Holder of an Allowed Secured Notes Claim elects not to participate in the Rights Offerings, such Holder will be entitled to receive its Pro Rata share of certain distributions of New Common Stock on account of its Allowed Secured Notes Claims under

Article 4.4 of the Plan.  Even if a Holder of an Allowed Unsecured Notes Claim elects not to participate in the Unsecured Component of the Exit Rights Offering, such Holder will be entitled to receive the recovery provided under Article 4.5 of the Plan.

Participation in the Rights Offerings will be subject to the following procedures:

a.   Eligibility Certificate.  Each Holder of an Allowed Secured Notes Claim and Allowed Unsecured Notes Claim as of the Rights Offering Record Date will receive, through its Nominee, an Eligibility Certificate to determine if such Holder is an Eligible Holder permitted to participate in the Rights Offerings. Each Eligible Holder of an Allowed Secured Notes Claim or Allowed Unsecured Notes Claim, or its Eligible Affiliate (but excluding each of the Backstop Parties), seeking to participate in the Rights Offerings is required to return the Eligibility Certificate to the Subscription Agent so as to be actually received by the Subscription Agent by the Eligibility Certificate Deadline (December 28, 2015 at 4:00 p.m. (prevailing Eastern Time)) and is required to certify therein to the ownership of an Allowed Secured Notes Claim or an Allowed Unsecured Notes Claim, as applicable.  Only those Holders of Allowed Secured Notes Claims and Allowed Unsecured Notes Claims and Transferee Holders that certify that they are Eligible Holders or Eligible Affiliates will receive the applicable Subscription Form and have the opportunity to participate in the Rights Offerings.  Those Holders of Allowed Secured Notes Claims and Allowed Unsecured Notes Claims that do not return the Eligibility Certificate will be deemed to relinquish and waive any right to participate in the Rights Offerings.

Each Holder of an Allowed Secured Notes Claim or Allowed Unsecured Notes Claim, including a Transferee Holder, that is an Eligible Holder, or its Eligible Affiliate, must forward its Eligibility Certificate to its Nominee with sufficient time for the Nominee to complete the "Nominee Certification" in section 4 of the Eligibility Certificate (including providing the Nominee's medallion guarantee or list of authorized signatories) and for the Nominee to deliver the Eligibility Certificate to the Subscription Agent on or before the Eligibility Certificate Deadline.  To expedite delivery of completed Eligibility Certificates, the Subscription Agent will accept delivery via email at QuiksilverInfo@kccllc.com.

Notwithstanding anything to the contrary contained herein, no Backstop Party (or its Eligible Affiliate) shall be required to return the Eligibility Certificate to the Subscription Agent as described herein, and the funding (and timing thereof) of the Subscription Purchase Price by each Backstop Party (or its Eligible Affiliate) shall be governed by the Backstop Commitment Letter.

b.   Transfers of Allowed Secured Notes Claims and Unsecured Notes Claims before the Eligibility Certificate Deadline.  In order for a Transferee Holder of an Allowed Secured Notes Claim or an Allowed Unsecured Notes Claim  to receive Rights with respect to a Claim transferred to it during the Certification Period, such transfer and all preceding transfers, if any, beginning with the transfer by the Holder holding such Allowed Secured Notes Claim or Allowed Unsecured Notes

Claim as of the Rights Offering Record Date, must be evidenced by a Certification Period Transfer Notice delivered to the Subscription Agent by the Eligibility Certificate Deadline; *provided*, *however*, that, in the event of a conflict, transfers by Backstop Parties shall be governed by the Backstop Commitment Letter.

c.    <u>Subscription Form and Rights Offering Materials</u>.  Each Eligible Offeree will receive a Subscription Form as soon as reasonably practicable after the Eligibility Certificate Deadline.  The Subscription Form will advise Eligible Offerees that they may obtain the Rights Offering Documents by (i) calling the Debtors' restructuring hotline at (877) 833-4150 (toll free U.S. and Canada) or 917-281-4800; (ii) emailing the Subscription Agent at <u>QuiksilverInfo@kccllc.com</u>; and/or (iii) visiting the Debtors' restructuring website at: <u>http://www.kccllc.net/quiksilver</u>.  Eligible Offerees may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER at: <u>http://www.deb.uscourts.gov</u>.

d.    <u>Exercise of Rights</u>.  In order to exercise the Rights, each Eligible Offeree must (i) return a duly completed and executed Subscription Form to the Subscription Agent and the other documents referenced therein, including a W-8 or W-9, as applicable, and (ii) pay an amount equal to the Subscription Purchase Price (as calculated pursuant to the Subscription Form) by wire transfer as set forth in the Subscription Form.  All of such forms, documents, and payment must be actually received by the Subscription Agent on or before the Subscription Deadline (January 14, 2016 at 4:00 p.m. (prevailing Eastern Time)).  Each Eligible Offeree that elects to exercise its Rights must fund one hundred percent (100%) of its Subscription Purchase Price.  If the Subscription Agent for any reason does not receive from a given Eligible Offeree both a timely and duly completed Subscription Form and timely payment of such Eligible Offeree's Subscription Purchase Price, then such Eligible Offeree will be deemed to have relinquished and waived its right to participate in the Rights Offerings.

Eligible Offerees must submit to the Subscription Agent Subscription Forms with original signatures.  Subscription Forms submitted by email, facsimile, or other electronic means will not be accepted.

e.    <u>Transferability of Subscription Rights; Election Irrevocable; Representations and Warranties</u>.  The Rights are not detachable or separately transferable from the Allowed Secured Notes Claims or the Allowed Unsecured Notes Claims.  The Rights of Eligible Offerees may not be sold, transferred, or assigned except in connection with the transfer of all or a portion of the underlying Claim prior to the Eligibility Certificate Deadline for which a Certification Period Transfer Notice has been properly submitted.  To the extent any Secured Notes Claims or Unsecured Notes Claims are transferred subsequent to the Eligibility Certificate Deadline, the attached Rights with respect to those Claims may no longer be exercised.  Once an Eligible Offeree has exercised its Rights in accordance with these Rights Offering Procedures, such exercise will be irrevocable.  Each

Eligible Offeree that has properly exercised its Rights represents and warrants to the Debtors and to the Bankruptcy Court, in addition to the acknowledgements set forth in the Subscription Form, that (i) to the extent applicable, it is duly formed, validly existing, and in good standing under the laws of the jurisdiction of its formation, (ii) it has the requisite power and authority to enter into, execute, and deliver the Subscription Form and to perform its obligations thereunder and has taken all necessary action required for the due authorization, execution, delivery, and performance thereunder, (iii) it is an Eligible Holder or an Eligible Affiliate, and (iv) it agrees that the Subscription Form constitutes a valid and binding obligation, enforceable against it in accordance with its terms, subject to applicable bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium, and similar laws affecting creditors' rights and remedies generally, and subject, as to enforceability, to general principles of equity, including principles of commercial reasonableness, good faith, and fair dealing (regardless of whether enforcement is sought in a proceeding at law or in equity).

f.    <u>Payment of the Subscription Purchase Price; No Interest; Return of Subscription Purchase Price</u>.  For Eligible Offerees that exercise their Rights in conformity with these Rights Offering Procedures, the Subscription Purchase Price will be deposited and held in one or more Subscription Accounts, which accounts will be non-interest bearing.  The Subscription Accounts will be maintained by the Subscription Agent for the purpose of holding the money for administration of the Rights Offerings in accordance with these Rights Offering Procedures.  The Subscription Agent will not use such funds for any other purpose prior to consummation of the Rights Offerings and will not encumber or permit such funds to be encumbered with any Lien or similar encumbrance.  No interest will be paid to Eligible Holders exercising Rights on account of amounts paid in connection with such exercise.  The funds shall be disbursed to Reorganized Quiksilver on the Effective Date of the Plan.  Any funds held in the Subscription Accounts and not utilized in the Rights Offerings will be returned to the applicable Eligible Offeree in accordance with the return information provided in Item 5 of such Eligible Offeree's Subscription Form.

g.    <u>Distribution of New Common Stock</u>.  On or as soon as practicable after the Effective Date, the Subscription Agent will distribute to each Eligible Offeree that exercises its Rights an acknowledgement of Reorganized Quiksilver of the amount of the New Common Stock acquired by such Eligible Offeree through the Rights Offerings.  Depending on the corporate structure of, and/or choice of entity for, Reorganized Quiksilver, Eligible Offerees participating in the Rights Offerings will receive shares of new common stock, limited liability company membership units, or the functional equivalent thereof in Reorganized Quiksilver.

h.    <u>Fractional Rights of New Common Stock</u>.  No fractional amounts of the New Common Stock will be issued.  The amount of the New Common Stock available for purchase will be rounded down (*i.e.*, truncated) to the nearest whole number of shares, membership units, or the functional equivalent thereof of New Common Stock.

i.    <u>Validity of Exercise of Rights</u>.  All questions concerning the timeliness, viability, form, and eligibility of any exercise of Rights will be determined by the Debtors, with the consent of the Backstop Parties, whose good faith determinations absent manifest error or disproportionate treatment of any participant will be final and binding.  The Debtors, in their discretion reasonably exercised in good faith, and with the consent of the Backstop Parties, may waive any defect or irregularity, or permit a defect or irregularity to be corrected within such times as it may determine, or reject the purported exercise of any Rights that does not comply with the provisions of the Rights Offerings as set forth herein and in the Plan and Disclosure Statement.  Subscription Forms will be deemed not to have been received or accepted until all irregularities have been waived or corrected on or before the Subscription Deadline or within such time as the Debtors or the Reorganized Debtors, as applicable, and the Backstop Parties determine in their discretion.  None of the Debtors or the Subscription Agent will be under any duty to give notification of any defect or irregularity in connection with the exercise of Rights or the submission of Subscription Forms or incur any liability for failure to give such notification.

j.    <u>Reorganized Quiksilver Will Not Be a Reporting Company</u>.  On the Effective Date, none of the New Common Stock will be registered under the Securities Act or listed on a national securities exchange, the Reorganized Debtors will not be reporting companies under the Exchange Act, the Reorganized Debtors shall not be required to and will not file reports with the Securities and Exchange Commission or any other entity or party, and the Reorganized Debtors shall not be required to file monthly operating reports with the Bankruptcy Court after the Effective Date.  In order to prevent the Reorganized Debtors from becoming subject to the reporting requirements of the Exchange Act, except in connection with a public offering, the New Corporate Governance Documents may impose certain trading restrictions, and the New Common Stock will be subject to certain transfer and other restrictions pursuant to the New Corporate Governance Documents designed to maintain the Reorganized Debtors as private, non-reporting companies.  Notwithstanding the foregoing, the Reorganized Debtors shall continue to comply with any reporting or other requirements under the Euro Notes Indenture.

Notwithstanding anything to the contrary contained herein, in the event the Debtors, with the consent of the Plan Sponsor, determine that the number of Eligible Offerees that have subscribed to the Rights Offerings is such that—when combined with the number of Secured Noteholders that will receive New Common Stock under the Plan on account of Allowed Class 4 Claims—Reorganized Quiksilver would potentially be required to be (i) a reporting company under the Exchange Act, or (ii) registered on any public exchange, the Debtors are authorized to rescind the subscription for Rights exercised by that certain Eligible Offeree subscribing for the lowest number of shares, membership units or the functional equivalent thereof, of New Common Stock and, if necessary, continuing such rescission with respect to the Eligible Offeree subscribing for the next lowest number of shares, membership units, or the

functional equivalent thereof of New Common Stock (and so on) to the extent necessary or appropriate to ensure Reorganized Quiksilver is not required to be a reporting company under the Exchange Act or registered on any public exchange (taking into account, for these purposes, the Debtors' estimate of shares, membership units, or the functional equivalent thereof of New Common Stock to be issued in respect of management incentive packages, other issuances contemplated under the Plan, or otherwise).

k.  <u>Conditions Precedent to Consummation of the Rights Offerings</u>.  Consummation of the Rights Offerings is subject to the satisfaction of each of the following conditions precedent:  (a) the Bankruptcy Court enters a Final Order, which shall be in form and substance acceptable to the Plan Sponsor, confirming the Plan; (b) all conditions precedent to the Plan shall have been satisfied or waived in accordance with the Plan; (c) the Effective Date under the Plan shall have occurred or shall occur substantially simultaneously with the funding of the Backstop Commitments pursuant to the Backstop Commitment Letter; and (d) with regard to the Euro Notes Rights Offering, the Euro Notes Exchange Offer shall be consummated in accordance with the Plan Sponsor Agreement (including the term sheets attached thereto) and the Plan; <u>provided</u>, <u>however</u>, that the Debtors, with the consent of the Plan Sponsor, may waive any of the foregoing conditions precedent.

l.  <u>Reservation of Rights</u>.  Notwithstanding anything to the contrary herein, the Debtors reserve the right, with the consent of the Backstop Parties, to alter, amend, modify, or supplement these Rights Offering Procedures where doing so would better facilitate the Rights Offerings.

**<u>Annex A-1</u>**

**Secured Notes Eligibility Certificate**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In re: : Chapter 11
:
QUIKSILVER, INC., *et al.*, : Case No. 15-11880 (BLS)
:
Debtors.[1] : Jointly Administered
:
: **Related Docket Nos. 398, 530**
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**INSTRUCTIONS TO SECURED NOTES ELIGIBILITY CERTIFICATE FOR THE
SECURED COMPONENT OF THE EXIT RIGHTS OFFERING AND THE EURO
NOTES RIGHTS OFFERING IN CONNECTION WITH THE SECOND AMENDED
JOINT CHAPTER 11 PLAN OF REORGANIZATION OF QUIKSILVER, INC. AND ITS
AFFILIATED DEBTORS AND DEBTORS IN POSSESSION**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR
COMPLETING THE SECURED NOTES ELIGIBILITY CERTIFICATE CAREFULLY
BEFORE COMPLETING THE SECURED NOTES ELIGIBILITY CERTIFICATE.**

**IF YOU ARE AN ELIGIBLE HOLDER (INCLUDING A TRANSFEREE HOLDER) AND
WISH TO PARTICIPATE IN THE RIGHTS OFFERINGS, THIS ELIGIBILITY
CERTIFICATE MUST BE RETURNED TO YOUR NOMINEE IN SUFFICIENT TIME
FOR YOUR NOMINEE TO SEND IT TO THE SUBSCRIPTION AGENT SO AS TO BE
ACTUALLY RECEIVED BY THE SUBSCRIPTION AGENT NO LATER THAN 4:00
P.M. (PREVAILING EASTERN TIME) ON DECEMBER 28, 2015 (THE "ELIGIBILITY
CERTIFICATE DEADLINE").**

**IF YOU ARE NOT AN ELIGIBLE HOLDER, DO NOT RETURN THIS FORM. YOU
ARE NOT ELIGIBLE TO PARTICIPATE IN THE RIGHTS OFFERINGS
CONTEMPLATED BY THE PLAN.**

---

On December 4, 2015, the United States Bankruptcy Court for the District of Delaware
(the "Bankruptcy Court") entered the *Order (A) Approving the Adequacy of the Debtors'
Disclosure Statement, (B) Approving Solicitation and Notice Procedures with respect to
Confirmation of the Debtors' Proposed Plan of Reorganization, (C) Approving the Form of*

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:
Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc.
(8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505),
Quiksilver Entertainment, Inc. (9667), Quiksilver Wetsuits, Inc. (9599).  The address of the Debtors' corporate
headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

*Various Ballots and Notices in Connection Therewith, and (D) Scheduling Certain Dates with Respect Thereto* [Docket No. 529] (the "Disclosure Statement Order") that, among other things, (a) approved the adequacy of the *Second Amended Disclosure Statement With Respect to the Second Amended Joint Chapter 11 Plan of Reorganization of Quiksilver, Inc. and its Affiliated Debtors and Debtors in Possession* [Docket No. 533] (as hereafter amended or modified, and including all appendices, exhibits, schedules and supplements thereto, the "Disclosure Statement") filed in support of the *Second Amended Joint Plan of Reorganization of Quiksilver, Inc. and its Affiliated Debtors and Debtors in Possession* [Docket No. 532] (as hereafter amended or modified, and including all appendices, exhibits, schedules and supplements thereto, the "Plan"), and (b) authorized the above-captioned debtors and debtors in possession (collectively, the "Debtors") to solicit acceptances or rejections of the Plan from certain holders of Impaired Claims who are (or may be) entitled to receive distributions under the Plan.

On December 4, 2015, the Bankruptcy Court entered the *Order Authorizing and Approving (I)(A) Entry into the Backstop Commitment Letter and (B) Payment of Related Fees and (II) the Rights Offering Procedures and Related Forms* [Docket No. 530] (the "Rights Offering Order") that, among other things, approved the procedures (the "Rights Offering Procedures")[2] for the conduct of, and participation in, the Rights Offerings.

The Plan, the Disclosure Statement, the Disclosure Statement Order, the Rights Offering Procedures, the Rights Offering Order, and all Rights Offering Documents[3] are or, upon filing, will be available by (i) calling the Debtors' restructuring hotline at (877) 833-4150 (toll free U.S. and Canada) or (917) 281-4800; (ii) emailing the Subscription Agent at QuiksilverInfo@kccllc.com; and/or (iii) visiting the Debtors' restructuring website at: http://www.kccllc.net/quiksilver.  Parties may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER at:  http://www.deb.uscourts.gov.  **You are advised to read the Plan, the Disclosure Statement and the Rights Offering Documents prior to making a determination with respect to participation in the Rights Offerings.**

Eligible Holders of Allowed Secured Notes Claims, which vote in favor of the Plan and do not opt out of the releases therein, or their Eligible Affiliates are entitled to participate in the Secured Component of the Exit Rights Offering and the Euro Notes Rights Offering, as further described in the Rights Offering Procedures.  A Holder of an Allowed Secured Notes Claim is an "Eligible Holder" and an affiliate thereof is an "Eligible Affiliate" if such entity is either (i) certified as an "accredited investor" as defined in Rule 501(a)(1), (2), (3), or (7) under the Securities Act, which, for the avoidance of doubt, shall exclude any natural person, or (ii) a "qualified institutional buyer" as defined in Rule 144A of the Securities Act.

---

[2]    Capitalized terms used but not otherwise defined herein are used as defined in the Plan or the Rights Offering Procedures, as applicable.  The Plan and the Rights Offering Procedures can be accessed as set forth herein.

[3]    The Plan Supplement will be filed with the Court on or prior to seven (7) days before the Voting Deadline, or such later date as may be approved by the Bankruptcy Court without further notice, and will include, among other things, forms of: (a) the New Shareholders Agreement and (b) the New Corporate Governance Documents.  The Debtors shall have the right to amend the documents contained in, and appended as exhibits to, the Plan Supplement through the Effective Date with the consent of the Plan Sponsor.

You have received the attached Secured Notes Eligibility Certificate because you are a Holder of an Allowed Secured Notes Claim as of the Rights Offering Record Date, or the transferee of such Allowed Claim.

<u>Transfer of Claims:</u> If, prior to the Eligibility Certificate Deadline, you transfer your Allowed Secured Notes Claim to an Eligible Holder, (i) such Transferee Holder may have the opportunity to participate in the Rights Offerings on account of such transferred Claim and (ii) you do not need to return this Secured Notes Eligibility Certificate in respect of such transferred Claim.  In order for a Transferee Holder to be offered Rights with respect to such Claim, (i) such Transferee Holder must submit a Secured Notes Eligibility Certificate by the Eligibility Certificate Deadline and (ii) such transfer and all preceding transfers, if any, beginning with the transfer by the Holder of such Secured Notes Claim as of the Rights Offering Record Date, must be evidenced by a Certification Period Transfer Notice delivered to the Subscription Agent prior to the Eligibility Certificate Deadline.

Holders with questions regarding transferring their Claims may contact the Subscription Agent by email at <u>QuiksilverInfo@kccllc.com</u> or by phone at (877) 833-4150 (toll free U.S. and Canada) or (917) 281-4800.

**To properly complete and submit this Secured Notes Eligibility Certificate:**

1. <u>Review and confirm</u> the amount of your Allowed Secured Notes Claim set forth below in Section 1.

2. <u>Complete</u> the Eligibility Certification in Section 2.

3. <u>Initial</u> next to the applicable paragraph in Section 3a (Accredited Investor Certification) or 3b (Qualified Institutional Buyer Certification).

4. <u>Return</u> the Secured Notes Eligibility Certificate to your Nominee by mail, electronic mail, or otherwise in accordance with the instructions of your Nominee <u>in sufficient time for your Nominee to complete this certificate and then return it to the Subscription Agent by the Eligibility Certificate Deadline (December 28, 2015 at 4:00 p.m. (prevailing Eastern Time))</u>.

5. <u>Instruct your Nominee to complete</u> the Nominee Confirmation of Ownership or DTC Information, as applicable, in Section 4.

6. <u>Instruct your Nominee to return</u> this Secured Notes Eligibility Certificate to the Subscription Agent <u>on or before the Eligibility Certificate Deadline (December 28, 2015 at 4:00 p.m. (prevailing Eastern Time))</u>.  The Secured Notes Eligibility Certificate may be submitted to the Subscription Agent by email to: <u>QuiksilverInfo@kccllc.com</u>, or by mail to:

Kurtzman Carson Consultants LLC
1290 Avenue of the Americas, 9th Floor
New York, NY  10104

7. <u>For Transferee Holders only</u>: <u>Return</u> the Certification Period Transfer Notice to the Subscription Agent by the Eligibility Certificate Deadline.

4

**SECURED NOTES ELIGIBILITY CERTIFICATE FOR THE RIGHTS OFFERINGS IN CONNECTION WITH THE  SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF QUIKSILVER, INC. AND ITS AFFILIATED DEBTORS AND DEBTORS IN POSSESSION**

**Section 1: Confirmation of Ownership**

Your ownership (or affiliate status with respect to such owner) of an Allowed Secured Notes Claim must be confirmed in order to be eligible to receive Rights.

**Amount of Allowed Secured Notes Claim(s)**. I certify that I am the authorized signatory of the holder of the Allowed Secured Notes Claims in the principal amount (upon stated maturity) set forth immediately below or the authorized signatory of an Eligible Affiliate of such holder.  For purposes of this Eligibility Certificate, do not adjust the principal amount for any accrued or unmatured interest or any accretion factor. The Subscription Agent has taken this into account in its calculation of your allocated Rights.

$ _____

**Section 2: Eligibility Certification**

Eligible Offerees: In order to receive Rights under the Plan, the respondent must:

1.  be either (i) a Qualified Institutional Buyer, or (ii) an Accredited Investor;

2.  answer "Yes" to either Question 1 or Question 2 below; and

3.  return this Secured Notes Eligibility Certificate to its Nominee in sufficient time for its Nominee to complete the Nominee Confirmation of Ownership and deliver to the Subscription Agent.

*Question 1.*     Is the respondent an "Accredited Investor"? ___ Yes ___ No

> If Yes, please indicate which category (*e.g.*, 1 through 4) of the definition of Accredited Investor in Item 3a the respondent falls under:  _____

If the answer to this Question 1 is marked "Yes," the respondent shall skip Question 2, complete the certification below, and proceed to Section 3a. If the answer to this Question 1 is marked "No," the respondent shall proceed to Question 2.

*Question 2.*     Is the respondent a "Qualified Institutional Buyer"? ___ Yes ___ No

> If Yes, please indicate which category (*e.g.*, 1 through 14) of the definition of Qualified Institutional Buyer in Item 3b the respondent falls under:  _____

If the answer to this Question 2 is marked "Yes," the respondent shall complete the certification below and proceed to Section 3b.

5

IN WITNESS WHEREOF, I certify that I (i) am an authorized signatory of the Holder (or the authorized signatory of the Eligible Affiliate of such holder) indicated below, (ii) executed this Secured Notes Eligibility Certificate on the date set forth below and (iii) confirm that this Secured Notes Eligibility Certificate (x) contains accurate representations with respect to the undersigned, and (y) is a certification to the Debtors and the Bankruptcy Court.

_____
Name of Entity or Holder

_____
(Signature)

By:_____
(Please Print or Type)

Title: _____
(Please Print or Type)

Address, telephone number and facsimile number:

_____

_____

_____

Certain communications during these Rights Offerings may be performed via e-mail. For that reason, you are required to provide your e-mail address below:

_____
(E-Mail Address)

**Section 3**

**Item 3a. Accredited Investor Certification.**

Please indicate the basis on which you would be deemed an "accredited investor" within the meaning of Rule 501(a)(1), (2), (3), or (7) of the Securities Act by initialing the appropriate line provided below:

"Accredited investor" pursuant to Regulation D promulgated under the Securities Act shall mean any person who comes within any of the following categories, or who the issuer reasonably believes comes within any of the following categories, at the time of the sale of the securities to that person:

1.      Any bank as defined in section 3(a)(2) of the Securities Act, or any savings and loan association or other institution as defined in section 3(a)(5)(A) of the Securities Act

6

whether in its individual or fiduciary capacity; any broker or dealer registered pursuant to section 15 of the Securities Exchange Act of 1934 (as amended from time to time, the "Exchange Act"); any insurance company as defined in section 2(13) of the Securities Act; any investment company registered under the Investment Company Act or a business development company as defined in section 2(a) (48) of that Act; any Small Business Investment Company licensed by the U.S. Small Business Administration under section 301(c) or (d) of the Small Business Investment Act of 1958, as amended; any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000; any employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974, as amended if the investment decision is made by a plan fiduciary, as defined in section 3(21) of such Act, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors; _____initials

2.      Any private business development company as defined in section 202(a)(22) of the Investment Advisers Act; _____ initials

3.      Any organization described in section 501(c)(3) of the Internal Revenue Code of 1986, as amended (the "Code"), corporation, or similar business trust, or partnership, not formed for the specific purpose of acquiring the securities offered, with total assets in excess of $5,000,000; _____ initials

4.      Any trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person as described in ss.230.506(b)(2)(ii); and _____ initials

**Item 3b. Qualified Institutional Buyer Certification.**

Please indicate the basis on which you would be deemed a "qualified institutional buyer" within the meaning of Rule 144A of the Securities Act by initialing the appropriate line provided below:

"Qualified institutional buyer" within the meaning of Rule 144A of the Securities Act means any of the following entities, acting for its own account or the accounts of other qualified institutional buyers, that in the aggregate owns and invests on a discretionary basis at least $100 million in securities of issuers that are not affiliated with the entity:

1.      Any insurance company as defined in section 2(a)(13) of the Securities Act; _____ initials

2.      Any investment company registered under the Investment Company Act or any business development company as defined in section 2(a)(48) of the Investment Company Act; _____ initials

3.     Any small business investment company licensed by the U.S. Small Business Administration under section 301(c) or (d) of the Small Business Investment Act of 1958; _____ initials

4.     Any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees; _____ initials

5.     Any employee benefit plan within the meaning of title I of the Employee Retirement Income Security Act of 1974; _____ initials

6.     Any trust fund whose trustee is a bank or trust company and whose participants are exclusively plans of the types identified in paragraph (1)(D) or (E) above, except trust funds that include as participants individual retirement accounts or H.R. 10 plans; _____ initials

7.     Any business development company as defined in section 202(a)(22) of the Investment Advisers Act; _____ initials

8.     Any organization described in section 501(c)(3) of the Code, corporation (other than a bank as defined in section 3(a)(2) of the Securities Act or a savings and loan association or other institution referenced in section 3(a)(5)(A) of the Securities Act or a foreign bank or savings and loan association or equivalent institution), partnership, or Massachusetts or similar business trust; and _____ initials

9.     Any investment adviser registered under the Investment Advisers Act; _____ initials

10.    Any dealer registered pursuant to section 15 of the Exchange Act acting for its own account or the accounts of other qualified institutional buyers, that in the aggregate owns and invests on a discretionary basis at least $10 million of securities of issuers that are not affiliated with the dealer, provided, that securities constituting the whole or a part of an unsold allotment to or subscription by a dealer as a participant in a public offering shall not be deemed to be owned by such dealer; _____ initials

11.    Any dealer registered pursuant to section 15 of the Exchange Act acting in a riskless principal transaction on behalf of a qualified institutional buyer; _____ initials

12.    Any investment company registered under the Investment Company Act, acting for its own account or for the accounts of other qualified institutional buyers, that is part of a family of investment companies which own in the aggregate at least $100 million in securities of issuers, other than issuers that are affiliated with the investment company or are part of such family of investment companies. "Family of investment companies" means any two or more investment companies registered under the Investment Company Act, except for a unit investment trust whose assets consist solely of shares of one or more registered investment companies, that have the same investment adviser (or, in the case of unit investment trusts, the same depositor), provided that, for purposes of this section: _____ initials

Each series of a series company (as defined in Rule 18f-2 under the Investment Company Act) shall be deemed to be a separate investment company; and

Investment companies shall be deemed to have the same adviser (or depositor) if their advisers (or depositors) are majority-owned subsidiaries of the same parent, or if one investment company's adviser (or depositor) is a majority-owned subsidiary of the other investment company's adviser (or depositor);

13.   Any bank as defined in section 3(a)(2) of the Securities Act, any savings and loan association or other institution as referenced in section 3(a)(5)(A) of the Securities Act, or any foreign bank or savings and loan association or equivalent institution, acting for its own account or the accounts of other qualified institutional buyers, that in the aggregate owns and invests on a discretionary basis at least $100 million in securities of issuers that are not affiliated with it and that has an audited net worth of at least $25 million as demonstrated in its latest annual financial statements, as of a date not more than 16 months preceding the date of sale under the rule in the case of a U.S. bank or savings and loan association, and not more than 18 months preceding such date of sale for a foreign bank or savings and loan association or equivalent institution.; _____ initials

For purposes of the foregoing definition:

In determining the aggregate amount of securities owned and invested on a discretionary basis by an entity, the following instruments and interests shall be excluded: bank deposit notes and certificates of deposit; loan participations; repurchase agreements; securities owned but subject to a repurchase agreement; and currency, interest rate and commodity swaps.

The aggregate value of securities owned and invested on a discretionary basis by an entity shall be the cost of such securities, except where the entity reports its securities holdings in its financial statements on the basis of their market value, and no current information with respect to the cost of those securities has been published. In the latter event, the securities may be valued at market for purposes of the foregoing definition.

In determining the aggregate amount of securities owned by an entity and invested on a discretionary basis, securities owned by subsidiaries of the entity that are consolidated with the entity in its financial statements prepared in accordance with generally accepted accounting principles may be included if the investments of such subsidiaries are managed under the direction of the entity, except that, unless the entity is a reporting company under section 13 or 15(d) of the Exchange Act, securities owned by such subsidiaries may not be included if the entity itself is a majority-owned subsidiary that would be included in the consolidated financial statements of another enterprise.

For purposes of this section, "riskless principal transaction" means a transaction in which a dealer buys a security from any person and makes a simultaneous offsetting sale of such security to a qualified institutional buyer, including another dealer acting as riskless principal for a qualified institutional buyer.

**Section 4**

## <u>NOMINEE'S CONFIRMATION OF OWNERSHIP</u>

<u>Your ownership (or affiliate status with respect to such owner) of Secured Notes must be confirmed to participate in the Rights Offering</u>

The Nominee holding your Secured Notes as of December 1, 2015 (the "<u>Rights Offering Record Date</u>") must complete Box A on your behalf.  Box B is only required if any or all of your Secured Notes were on loan as of the Rights Offering Record Date (as determined by your Nominee).

| Box A<br>For Use Only by the Nominee | Box B<br>Nominee Proxy - Only if Needed |
|---|---|
| DTC Participant Name:<br>_____ | DTC Participant Name:<br>_____ |
| DTC Participant Number:<br>_____ | DTC Participant Number:<br>_____ |
| Principal Amount of Secured Notes (CUSIP 74840D AA 8) held by this account as of December 1, 2015:<br><br>$_____ principal amount | Principal Amount of Secured Notes (CUSIP 74840D AA 8) held on behalf of, and hereby assigned to, the Nominee listed in Box A as of December 1, 2015:<br><br>$_____  principal |
| Principal Amount of Secured Notes (CUSIP U7487D AA 3) held by this account as of December 1, 2015:<br><br>$_____ principal amount | Principal Amount of Secured Notes (CUSIP U7487D AA 3) held on behalf of, and hereby assigned to, the Nominee listed in Box A as of December 1, 2015:<br><br>$_____ principal amount |
| Medallion Guarantee: | Medallion Guarantee: |
| DTC Participant Contact Name:_____ | DTC Participant Contact Name:_____ |
| Contact Telephone Number:<br>_____ | Contact Telephone Number:<br>_____ |
| Contact Email Address:<br>_____ | Contact Email Address:<br>_____ |

## **Annex A-2**

**Unsecured Notes Eligibility Certificate**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In re:                                               :        Chapter 11
:
QUIKSILVER, INC., *et al.*,                          :        Case No. 15-11880 (BLS)
:
Debtors.[1]                            :        Jointly Administered
:
:        **Related Docket Nos. 398, __**
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**INSTRUCTIONS TO UNSECURED NOTES ELIGIBILITY CERTIFICATE FOR THE
UNSECURED COMPONENT OF THE EXIT RIGHTS OFFERING IN CONNECTION
WITH THE SECOND AMENDED JOINT CHAPTER 11 PLAN OF
REORGANIZATION OF QUIKSILVER, INC. AND ITS
AFFILIATED DEBTORS AND DEBTORS IN POSSESSION**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR
COMPLETING THE UNSECURED NOTES ELIGIBILITY CERTIFICATE
CAREFULLY BEFORE COMPLETING THE UNSECURED NOTES ELIGIBILITY
CERTIFICATE.**

**IF YOU ARE AN ELIGIBLE HOLDER (INCLUDING A TRANSFEREE HOLDER) AND
WISH TO PARTICIPATE IN THE UNSECURED COMPONENT OF THE EXIT
RIGHTS OFFERING, THIS ELIGIBILITY CERTIFICATE MUST BE RETURNED TO
YOUR NOMINEE IN SUFFICIENT TIME FOR YOUR NOMINEE TO SEND IT TO
THE SUBSCRIPTION AGENT SO AS TO BE ACTUALLY RECEIVED BY THE
SUBSCRIPTION AGENT NO LATER THAN 4:00 P.M. (PREVAILING EASTERN
TIME) ON DECEMBER 28, 2015 (THE "ELIGIBILITY CERTIFICATE DEADLINE").**

**IF YOU ARE NOT AN ELIGIBLE HOLDER, DO NOT RETURN THIS FORM. YOU
ARE NOT ELIGIBLE TO PARTICIPATE IN THE EXIT RIGHTS OFFERING
CONTEMPLATED BY THE PLAN.**

---

On December 4, 2015, the United States Bankruptcy Court for the District of Delaware
(the "Bankruptcy Court") entered the *Order (A) Approving the Adequacy of the Debtors'
Disclosure Statement, (B) Approving Solicitation and Notice Procedures with respect to*

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:
Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc.
(8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505),
Quiksilver Entertainment, Inc. (9667), Quiksilver Wetsuits, Inc. (9599).  The address of the Debtors' corporate
headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

*Confirmation of the Debtors' Proposed Plan of Reorganization, (C) Approving the Form of Various Ballots and Notices in Connection Therewith, and (D) Scheduling Certain Dates with Respect Thereto* [Docket No. 529] (the "Disclosure Statement Order") that, among other things, (a) approved the adequacy of the *Second Amended Disclosure Statement With Respect to the Second Amended Joint Chapter 11 Plan of Reorganization of Quiksilver, Inc. and its Affiliated Debtors and Debtors in Possession* [Docket No. 533] (as hereafter amended or modified, and including all appendices, exhibits, schedules and supplements thereto, the "Disclosure Statement") filed in support of the *Second Amended Joint Plan of Reorganization of Quiksilver, Inc. and its Affiliated Debtors and Debtors in Possession* [Docket No. 532] (as hereafter amended or modified, and including all appendices, exhibits, schedules and supplements thereto, the "Plan"), and (b) authorized the above-captioned debtors and debtors in possession (collectively, the "Debtors") to solicit acceptances or rejections of the Plan from certain holders of Impaired Claims who are (or may be) entitled to receive distributions under the Plan.

On December 4, 2015, the Bankruptcy Court entered the *Order Authorizing and Approving (I)(A) Entry into the Backstop Commitment Letter and (B) Payment of Related Fees and (II) the Rights Offering Procedures and Related Forms* [Docket No. 530] (the "Rights Offering Order") that, among other things, approved the procedures (the "Rights Offering Procedures")[2] for the conduct of, and participation in, the Rights Offerings.

The Plan, the Disclosure Statement, the Disclosure Statement Order, the Rights Offering Procedures, the Rights Offering Order, and all Rights Offering Documents[3] are or, upon filing, will be available by (i) calling the Debtors' restructuring hotline at (877) 833-4150 (toll free U.S. and Canada) or (917) 281-4800; (ii) emailing the Subscription Agent at QuiksilverInfo@kccllc.com; and/or (iii) visiting the Debtors' restructuring website at: http://www.kccllc.net/quiksilver. Parties may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER at: http://www.deb.uscourts.gov. **You are advised to read the Plan, the Disclosure Statement and the Rights Offering Documents prior to making a determination with respect to participation in the Unsecured Component of the Exit Rights Offering.**

Eligible Holders of Allowed Unsecured Notes Claims or their Eligible Affiliates are entitled to participate in the $12.5 million Unsecured Component of the Exit Rights Offering, as further described in the Rights Offering Procedures. A Holder of an Allowed Unsecured Notes Claim is an "Eligible Holder" and an affiliate thereof is an "Eligible Affiliate" if such entity is either (i) certified as an "accredited investor" as defined in Rule 501(a)(1), (2), (3), or (7) under the Securities Act, which, for the avoidance of doubt, shall exclude any natural person, or (ii) a "qualified institutional buyer" as defined in Rule 144A of the Securities Act.

---

[2]   Capitalized terms used but not otherwise defined herein are used as defined in the Plan or the Rights Offering Procedures, as applicable. The Plan and the Rights Offering Procedures can be accessed as set forth herein.

[3]   The Plan Supplement will be filed with the Court on or prior to seven (7) days before the Voting Deadline, or such later date as may be approved by the Bankruptcy Court without further notice, and will include, among other things, forms of: (a) the New Shareholders Agreement and (b) the New Corporate Governance Documents. The Debtors shall have the right to amend the documents contained in, and appended as exhibits to, the Plan Supplement through the Effective Date with the consent of the Plan Sponsor.

You have received the attached Unsecured Notes Eligibility Certificate because you are a Holder of an Allowed Unsecured Notes Claim as of the Rights Offering Record Date, or the transferee of such Allowed Claim.

Transfer of Claims: If, prior to the Eligibility Certificate Deadline, you transfer your Allowed Unsecured Notes Claim to an Eligible Holder, (i) such Transferee Holder may have the opportunity to participate in the Unsecured Component of the Exit Rights Offering on account of such transferred Claim and (ii) you do not need to return this Unsecured Notes Eligibility Certificate in respect of such transferred Claim.  In order for a Transferee Holder to be offered Rights with respect to such Claim, (i) such Transferee Holder must submit an Unsecured Notes Eligibility Certificate by the Eligibility Certificate Deadline and (ii) such transfer and all preceding transfers, if any, beginning with the transfer by the Holder of such Unsecured Notes Claim as of the Rights Offering Record Date, must be evidenced by a Certification Period Transfer Notice delivered to the Subscription Agent prior to the Eligibility Certificate Deadline.

Holders with questions regarding transferring their Claims may contact the Subscription Agent by email at QuiksilverInfo@kccllc.com or by phone at (877) 833-4150 (toll free U.S. and Canada) or (917) 281-4800.

**To properly complete and submit this Unsecured Notes Eligibility Certificate:**

1.    <u>Review and confirm</u> the amount of your Allowed Unsecured Notes Claim set forth below in Section 1.

2.    <u>Complete</u> the Eligibility Certification in Section 2.

3.    <u>Initial</u> next to the applicable paragraph in Section 3a (Accredited Investor Certification) or 3b (Qualified Institutional Buyer Certification).

4.    <u>Return</u> the Unsecured Notes Eligibility Certificate to your Nominee by mail, electronic mail, or otherwise in accordance with the instructions of your Nominee <u>in sufficient time for your Nominee to complete this certificate and then return it to the Subscription Agent by the Eligibility Certificate Deadline (December 28, 2015 at 4:00 p.m. (prevailing Eastern Time))</u>.

5.    <u>Instruct your Nominee to complete</u> the Nominee Confirmation of Ownership or DTC Information, as applicable, in Section 4.

6.    <u>Instruct your Nominee to return</u> this Unsecured Notes Eligibility Certificate to the Subscription Agent <u>on or before the Eligibility Certificate Deadline (December 28, 2015 at 4:00 p.m. (prevailing Eastern Time))</u>.  The Unsecured Notes Eligibility Certificate may be submitted to the Subscription Agent by email to: <u>QuiksilverInfo@kccllc.com</u>, or by mail to:

Kurtzman Carson Consultants LLC
1290 Avenue of the Americas, 9th Floor
New York, NY  10104

7.    <u>For Transferee Holders only</u>: <u>Return</u> the Certification Period Transfer Notice to the Subscription Agent by the Eligibility Certificate Deadline.

**UNSECURED NOTES ELIGIBILITY CERTIFICATE FOR THE UNSECURED COMPONENT OF THE EXIT RIGHTS OFFERING IN CONNECTION WITH THE SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF QUIKSILVER, INC. AND ITS AFFILIATED DEBTORS AND DEBTORS IN POSSESSION**

**Section 1: Confirmation of Ownership**

Your ownership (or affiliate status with respect to such owner) of an Allowed Unsecured Notes Claim must be confirmed in order to be eligible to receive Rights.

**Amount of Allowed Unsecured Notes Claim(s)**. I certify that I am the authorized signatory of the holder of the Allowed Unsecured Notes Claims in the principal amount (upon stated maturity) set forth immediately below or the authorized signatory of an Eligible Affiliate of such holder.  For purposes of this Eligibility Certificate, do not adjust the principal amount for any accrued or unmatured interest or any accretion factor. The Subscription Agent has taken this into account in its calculation of your allocated Rights.

$ _____

**Section 2: Eligibility Certification**

Eligible Offerees: In order to receive Rights under the Plan, the respondent must:

1. be either (i) a Qualified Institutional Buyer, or (ii) an Accredited Investor;

2. answer "Yes" to either Question 1 or Question 2 below; and

3. return this Unsecured Notes Eligibility Certificate to its Nominee in sufficient time for its Nominee to complete the Nominee Confirmation of Ownership and deliver to the Subscription Agent.

*Question 1.*     Is the respondent an "Accredited Investor"? ___ Yes ___ No

> If Yes, please indicate which category (*e.g.*, 1 through 4) of the definition of Accredited Investor in Item 3a the respondent falls under:  _____

If the answer to this Question 1 is marked "Yes," the respondent shall skip Question 2, complete the certification below, and proceed to Section 3a. If the answer to this Question 1 is marked "No," the respondent shall proceed to Question 2.

*Question 2.*     Is the respondent a "Qualified Institutional Buyer"? ___ Yes ___ No

> If Yes, please indicate which category (*e.g.*, 1 through 14) of the definition of Qualified Institutional Buyer in Item 3b the respondent falls under:  _____

If the answer to this Question 2 is marked "Yes," the respondent shall complete the certification below and proceed to Section 3b.

IN WITNESS WHEREOF, I certify that I (i) am an authorized signatory of the Holder (or the authorized signatory of the Eligible Affiliate of such holder) indicated below, (ii) executed this Unsecured Notes Eligibility Certificate on the date set forth below and (iii) confirm that this Unsecured Notes Eligibility Certificate (x) contains accurate representations with respect to the undersigned, and (y) is a certification to the Debtors and the Bankruptcy Court.

_____

Name of Entity or Holder

_____

(Signature)

By:_____

(Please Print or Type)

Title: _____

(Please Print or Type)

Address, telephone number and facsimile number:

_____

_____

_____

Certain communications during the Exit Rights Offering may be performed via e-mail. For that reason, you are required to provide your e-mail address below:

_____

(E-Mail Address)

**Section 3**

**Item 3a. Accredited Investor Certification.**

Please indicate the basis on which you would be deemed an "accredited investor" within the meaning of Rule 501(a)(1), (2), (3), or (7) of the Securities Act by initialing the appropriate line provided below:

"Accredited investor" pursuant to Regulation D promulgated under the Securities Act shall mean any person who comes within any of the following categories, or who the issuer reasonably believes comes within any of the following categories, at the time of the sale of the securities to that person:

1.    Any bank as defined in section 3(a)(2) of the Securities Act, or any savings and loan association or other institution as defined in section 3(a)(5)(A) of the Securities Act whether in its individual or fiduciary capacity; any broker or dealer registered pursuant to section 15 of the Securities Exchange Act of 1934 (as amended from time to time, the "Exchange Act"); any insurance company as defined in section 2(13) of the Securities Act; any investment company registered under the Investment Company Act or a business development company as defined in section 2(a) (48) of that Act; any Small Business Investment Company licensed by the U.S. Small Business Administration under section 301(c) or (d) of the Small Business Investment Act of 1958, as amended; any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000; any employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974, as amended if the investment decision is made by a plan fiduciary, as defined in section 3(21) of such Act, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors; _____initials

2.    Any private business development company as defined in section 202(a)(22) of the Investment Advisers Act; _____ initials

3.    Any organization described in section 501(c)(3) of the Internal Revenue Code of 1986, as amended (the "Code"), corporation, or similar business trust, or partnership, not formed for the specific purpose of acquiring the securities offered, with total assets in excess of $5,000,000; _____ initials

4.    Any trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person as described in ss.230.506(b)(2)(ii); and _____ initials

**Item 3b. Qualified Institutional Buyer Certification.**

Please indicate the basis on which you would be deemed a "qualified institutional buyer" within the meaning of Rule 144A of the Securities Act by initialing the appropriate line provided below:

"Qualified institutional buyer" within the meaning of Rule 144A of the Securities Act means any of the following entities, acting for its own account or the accounts of other qualified institutional buyers, that in the aggregate owns and invests on a discretionary basis at least $100 million in securities of issuers that are not affiliated with the entity:

1.    Any insurance company as defined in section 2(a)(13) of the Securities Act; _____ initials

2.    Any investment company registered under the Investment Company Act or any business development company as defined in section 2(a)(48) of the Investment Company Act; _____ initials

3.      Any small business investment company licensed by the U.S. Small Business Administration under section 301(c) or (d) of the Small Business Investment Act of 1958; _____ initials

4.      Any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees; _____ initials

5.      Any employee benefit plan within the meaning of title I of the Employee Retirement Income Security Act of 1974; _____ initials

6.      Any trust fund whose trustee is a bank or trust company and whose participants are exclusively plans of the types identified in paragraph (1)(D) or (E) above, except trust funds that include as participants individual retirement accounts or H.R. 10 plans; _____ initials

7.      Any business development company as defined in section 202(a)(22) of the Investment Advisers Act; _____ initials

8.      Any organization described in section 501(c)(3) of the Code, corporation (other than a bank as defined in section 3(a)(2) of the Securities Act or a savings and loan association or other institution referenced in section 3(a)(5)(A) of the Securities Act or a foreign bank or savings and loan association or equivalent institution), partnership, or Massachusetts or similar business trust; and _____ initials

9.      Any investment adviser registered under the Investment Advisers Act; _____ initials

10.     Any dealer registered pursuant to section 15 of the Exchange Act acting for its own account or the accounts of other qualified institutional buyers, that in the aggregate owns and invests on a discretionary basis at least $10 million of securities of issuers that are not affiliated with the dealer, provided, that securities constituting the whole or a part of an unsold allotment to or subscription by a dealer as a participant in a public offering shall not be deemed to be owned by such dealer; _____ initials

11.     Any dealer registered pursuant to section 15 of the Exchange Act acting in a riskless principal transaction on behalf of a qualified institutional buyer; _____ initials

12.     Any investment company registered under the Investment Company Act, acting for its own account or for the accounts of other qualified institutional buyers, that is part of a family of investment companies which own in the aggregate at least $100 million in securities of issuers, other than issuers that are affiliated with the investment company or are part of such family of investment companies. "Family of investment companies" means any two or more investment companies registered under the Investment Company Act, except for a unit investment trust whose assets consist solely of shares of one or more registered investment companies, that have the same investment adviser (or, in the case of unit investment trusts, the same depositor), provided that, for purposes of this section: _____ initials

Each series of a series company (as defined in Rule 18f-2 under the Investment Company Act) shall be deemed to be a separate investment company; and

Investment companies shall be deemed to have the same adviser (or depositor) if their advisers (or depositors) are majority-owned subsidiaries of the same parent, or if one investment company's adviser (or depositor) is a majority-owned subsidiary of the other investment company's adviser (or depositor);

13.   Any bank as defined in section 3(a)(2) of the Securities Act, any savings and loan association or other institution as referenced in section 3(a)(5)(A) of the Securities Act, or any foreign bank or savings and loan association or equivalent institution, acting for its own account or the accounts of other qualified institutional buyers, that in the aggregate owns and invests on a discretionary basis at least $100 million in securities of issuers that are not affiliated with it and that has an audited net worth of at least $25 million as demonstrated in its latest annual financial statements, as of a date not more than 16 months preceding the date of sale under the rule in the case of a U.S. bank or savings and loan association, and not more than 18 months preceding such date of sale for a foreign bank or savings and loan association or equivalent institution.; _____ initials

For purposes of the foregoing definition:

In determining the aggregate amount of securities owned and invested on a discretionary basis by an entity, the following instruments and interests shall be excluded: bank deposit notes and certificates of deposit; loan participations; repurchase agreements; securities owned but subject to a repurchase agreement; and currency, interest rate and commodity swaps.

The aggregate value of securities owned and invested on a discretionary basis by an entity shall be the cost of such securities, except where the entity reports its securities holdings in its financial statements on the basis of their market value, and no current information with respect to the cost of those securities has been published. In the latter event, the securities may be valued at market for purposes of the foregoing definition.

In determining the aggregate amount of securities owned by an entity and invested on a discretionary basis, securities owned by subsidiaries of the entity that are consolidated with the entity in its financial statements prepared in accordance with generally accepted accounting principles may be included if the investments of such subsidiaries are managed under the direction of the entity, except that, unless the entity is a reporting company under section 13 or 15(d) of the Exchange Act, securities owned by such subsidiaries may not be included if the entity itself is a majority-owned subsidiary that would be included in the consolidated financial statements of another enterprise.

For purposes of this section, "riskless principal transaction" means a transaction in which a dealer buys a security from any person and makes a simultaneous offsetting sale of such security to a qualified institutional buyer, including another dealer acting as riskless principal for a qualified institutional buyer.

9

**Section 4**

## NOMINEE'S CONFIRMATION OF OWNERSHIP

<u>Your ownership (or affiliate status with respect to such owner) of Unsecured Notes must be confirmed to participate in the Rights Offering</u>

The Nominee holding your Unsecured Notes as of December 1, 2015 (the "<u>Rights Offering Record Date</u>") must complete Box A on your behalf.  Box B is only required if any or all of your Unsecured Notes were on loan as of the Rights Offering Record Date (as determined by your Nominee).

| Box A<br>For Use Only by the Nominee | Box B<br>Nominee Proxy - Only if Needed |
|---|---|
| DTC Participant Name:<br>_____ | DTC Participant Name:<br>_____ |
| DTC Participant Number:<br>_____ | DTC Participant Number:<br>_____ |
| Principal Amount of Unsecured Notes (CUSIP 74840D AB 6) held by this account as of December 1, 2015:<br><br>$_____ principal amount | Principal Amount of Unsecured Notes (CUSIP 74840D AB 6) held on behalf of, and hereby assigned to, the Nominee listed in Box A as of December 1, 2015:<br><br>$_____   principal |
| Medallion Guarantee: | Medallion Guarantee: |
| DTC Participant Contact Name:_____ | DTC Participant Contact Name:_____ |
| Contact Telephone Number:<br>_____ | Contact Telephone Number:<br>_____ |
| Contact Email Address:<br>_____ | Contact Email Address:<br>_____ |

10

## **Annex B-1**

**Secured Notes Subscription Form**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In re:                                            :         Chapter 11
                                                  :
QUIKSILVER, INC., *et al.*,                       :         Case No. 15-11880 (BLS)
                                                  :
             Debtors.[1]                          :         Jointly Administered
                                                  :
                                                  :         **Related Docket Nos. 398, __**
                                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**INSTRUCTIONS TO SUBSCRIPTION FORM FOR ELIGIBLE SECURED NOTES
OFFEREES FOR THE SECURED COMPONENT OF THE EXIT RIGHTS OFFERING
AND THE EURO NOTES RIGHTS OFFERING IN CONNECTION WITH THE
SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF
QUIKSILVER, INC. AND ITS AFFILIATED DEBTORS AND DEBTORS IN
POSSESSION**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR
COMPLETING THE SUBSCRIPTION FORM CAREFULLY BEFORE COMPLETING
THE SUBSCRIPTION FORM.**

**IN ORDER FOR YOU TO PARTICIPATE IN THE RIGHTS OFFERINGS, THIS
SUBSCRIPTION FORM AND PAYMENT OF THE SUBSCRIPTION PURCHASE
PRICE MUST BE ACTUALLY RECEIVED BY THE SUBSCRIPTION AGENT BY THE
SUBSCRIPTION DEADLINE.**

**THE SUBSCRIPTION DEADLINE IS JANUARY 14, 2016. AT 4:00 P.M. (PREVAILING
EASTERN TIME)**

---

On December 4, 2015, the United States Bankruptcy Court for the District of Delaware
(the "Bankruptcy Court") entered the *Order (A) Approving the Adequacy of the Debtors'
Disclosure Statement, (B) Approving Solicitation and Notice Procedures with respect to
Confirmation of the Debtors' Proposed Plan of Reorganization, (C) Approving the Form of
Various Ballots and Notices in Connection Therewith, and (D) Scheduling Certain Dates with
Respect Thereto* [Docket No. 529] (the "Disclosure Statement Order") that, among other things,
(a) approved the adequacy of the *Second Amended Disclosure Statement With Respect to the*

---

[1]     The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:
        Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc.
        (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505),
        Quiksilver Entertainment, Inc. (9667), Quiksilver Wetsuits, Inc. (9599).  The address of the Debtors' corporate
        headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

*Second Amended Joint Chapter 11 Plan of Reorganization of Quiksilver, Inc. and its Affiliated Debtors and Debtors in Possession* [Docket No. 533] (as hereafter amended or modified, and including all appendices, exhibits, schedules and supplements thereto, the "Disclosure Statement") filed in support of the *Second Amended Joint Plan of Reorganization of Quiksilver, Inc. and its Affiliated Debtors and Debtors in Possession* [Docket No. 532] (as hereafter amended or modified, and including all appendices, exhibits, schedules and supplements thereto, the "Plan"), and (b) authorized the above-captioned debtors and debtors in possession (collectively, the "Debtors") to solicit acceptances or rejections of the Plan from certain holders of Impaired Claims who are (or may be) entitled to receive distributions under the Plan.

On December 4, 2015, the Bankruptcy Court entered the *Order Authorizing and Approving (I)(A) Entry into the Backstop Commitment Letter and (B) Payment of Related Fees and (II) the Rights Offering Procedures and Related Forms* [Docket No. 530] (the "Rights Offering Order") that, among other things, approved the procedures (the "Rights Offering Procedures")[2] for the conduct of, and participation in, the Rights Offerings. The Rights Offering Procedures are hereby incorporated by reference as if fully set forth herein.

The Plan, the Disclosure Statement, the Disclosure Statement Order, the Rights Offering Procedures, the Rights Offering Order, and all Rights Offering Documents[3] are or, upon filing, will be available by (i) calling the Debtors' restructuring hotline at (877) 833-4150 (toll free U.S. and Canada) or (917) 281-4800; (ii) emailing the Subscription Agent at QuiksilverInfo@kccllc.com; and/or (iii) visiting the Debtors' restructuring website at: http://www.kccllc.net/quiksilver. Parties may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER at: http://www.deb.uscourts.gov. **You are advised to read the Plan, the Disclosure Statement and the Rights Offering Documents prior to making a determination with respect to participation in the Rights Offerings.**

You have received the attached Subscription Form because you are an Eligible Secured Notes Offeree as of the Rights Offering Record Date. Please utilize the attached Subscription Form to participate in the Secured Component of the Exit Rights Offering and/or the Euro Notes Rights Offering. To elect to participate in the Rights Offerings, you must (a) complete and return this Subscription Form and any other documents referenced herein to the Subscription Agent so as to be received by the Subscription Agent no later than the Subscription Deadline, and (b) submit the appropriate Subscription Purchase Price (as calculated in Item 5a below) by wire transfer so as to be received by the Subscription Agent no later than the Subscription Deadline (collectively, the "Rights Offering Deliveries"). Your election to participate in the Rights Offerings is irrevocable.

---

[2] Capitalized terms used but not otherwise defined herein are used as defined in the Plan or the Rights Offering Procedures, as applicable. The Plan and the Rights Offering Procedures can be accessed as set forth herein.

[3] The Plan Supplement will be filed with the Court on or prior to seven (7) days before the Voting Deadline, or such later date as may be approved by the Bankruptcy Court without further notice, and will include, among other things, forms of: (a) the New Shareholders Agreement and (b) the New Corporate Governance Documents. The Debtors shall have the right to amend the documents contained in, and appended as exhibits to, the Plan Supplement through the Effective Date with the consent of the Plan Sponsor.

Your subscription will be processed by the Subscription Agent in accordance with the Rights Offering Procedures, including but not limited to the procedures set forth below. Your payment of your Subscription Purchase Price will be deposited and held in one or more Subscription Accounts. The Subscription Accounts will be maintained by the Subscription Agent for the purpose of holding the money for administration of the Rights Offerings in accordance with the Rights Offering Procedures. The Subscription Agent will not use such funds for any other purpose prior to such date and will not encumber or permit such funds to be encumbered with any claims, liens, encumbrances, or other liabilities. No interest will be paid to Entities exercising Rights on account of amounts paid in connection with such exercise.

**Questions**. If you have any questions about this Subscription Form or the subscription procedures described herein, please contact the Subscription Agent by (i) calling the Debtors' restructuring hotline at (877) 833-4150 (toll free U.S. and Canada) or (917) 281-4800; or (ii) emailing the Subscription Agent at QuiksilverInfo@kccllc.com.

**Important Transfer Restriction**. An Eligible Offeree's Rights shall not be transferable subsequent to the Eligibility Certificate Deadline.

**Participation by Eligible Secured Notes Offerees in the Secured Component of the Exit Rights Offering and/or the Euro Notes Rights Offering hereunder is voluntary and is limited to Holders of Allowed Secured Notes Claims and Transferee Holders that are Eligible Holders, or their Eligible Affiliates.**

**It is a condition precedent to participation in the Rights Offerings by Eligible Secured Notes Offerees that the Eligible Secured Notes Offeree (or the Holder of the applicable Allowed Secured Notes Claims) timely submit a ballot in compliance with the Disclosure Statement Order accepting the Plan and consenting to the releases thereunder. Rights Offering Participants will receive Rights in accordance with the Plan and the Rights Offering Procedures. The Rights will entitle Holders of Allowed Secured Notes Claims to acquire New Common Stock, issued at the Rights Equity Exercise Price.**

**If the Rights Offering Deliveries are not received by the Subscription Agent by the Subscription Deadline, your unexercised Rights will automatically be relinquished, and you shall have no further interest in the Rights.**

To subscribe for the New Common Stock pursuant to the Rights Offerings:

1. Review the amount of your Allowed Secured Notes Claim as set forth in Items 1a and the amount of your subscription rights as set forth in Items 1b and 1c.

2. Complete your subscription amount of New Common Stock in Items 2a and 2b.

3. Complete your Subscription Purchase Price in Items 3a and 3b with the amounts in 2a and 2b, respectively.

4. Complete the wire instructions in Item 5.

5. Complete the registration information in Item 6.

3

6.      <u>Read</u> and complete the certification, representations, warranties, and covenants in Item 7.

7.      <u>Complete</u> the certification in Item 9.

8.      <u>Return</u> the Subscription Form to the Subscription Agent with an original signature so that it is **actually** **received** on or before the Subscription Deadline of **January 14, 2016 at 4:00 p.m. (prevailing Eastern Time)** to:

Kurtzman Carson Consultants LLC
1290 Avenue of the Americas, 9th Floor
New York, NY  10104

Subscription Forms submitted by email, facsimile, or other electronic means will not be accepted.

9.      <u>Pay</u> the Subscription Purchase Price in Items 3a and 3b to the Subscription Agent in accordance with the instructions in Items 4a and 4b so that it is **actually** **received** on or before the Subscription Deadline of **January 14, 2016 at 4:00 p.m.** (prevailing Eastern Time).

10.     <u>Return</u> your W-8 or W-9, as applicable, to the Subscription Agent so that it is **actually** **received** on or before the Subscription Deadline of **January 14, 2016 at 4:00 p.m.** (prevailing Eastern Time) pursuant to Item 8.

**SUBSCRIPTION FORM FOR THE SECURED COMPONENT OF THE EXIT RIGHTS OFFERING AND THE EURO NOTES RIGHTS OFFERING IN CONNECTION WITH THE SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF QUIKSILVER, INC. AND ITS AFFILIATED DEBTORS AND DEBTORS IN POSSESSION**

**SUBSCRIPTION DEADLINE**

**The Subscription Deadline is 4:00 p.m. (prevailing Eastern Time) on January 14, 2016.**

**Please consult the Rights Offering Documents for additional information with respect to this Subscription Form.**

Eligible Secured Notes Offerees are entitled to participate in the Rights Offerings, as further described in the Rights Offering Procedures.  To subscribe, read and complete Items 1 to 9 below.

**Item 1.  Amount of Eligible Claim(s)**

Pursuant to the Rights Offering Procedures, each Eligible Secured Notes Offeree is entitled to participate in the Rights Offerings to the extent of such Eligible Secured Notes Holder's Secured Notes Claims or, in the case of an Eligible Affiliate, its affiliate's Secured Notes Claims.

**1a.**    As of the Rights Offering Record Date, the aggregate amount of your Allowed Secured Notes Claims is:

$ _____

*[PRE-PRINTED]*

**1b.**    For purposes of the Secured Component of the Exit Rights Offering, you have the right to subscribe for New Common Stock offered in the Exit Rights Offering up to:

$ _____ [1]

*[PRE-PRINTED]*

**1c.**    For purposes of the Euro Notes Rights Offering, you have the right to subscribe for New Common Stock offered in the Euro Notes Rights Offering up to:

---

[1]    Equal to the fraction that your Secured Notes Claims represent of the total aggregate amount Secured Notes Claims times $115,000,000.

€ _____ [2]

*[PRE-PRINTED]*

## Item 2.  Rights Offering Election

As Eligible Secured Notes Offeree, you irrevocably agree to purchase:

**2a.  Amount of New Common Stock under the Secured Component of the Exit Rights Offering (not to exceed the amount set forth in Item 1b):**

Participation Rate _____% x $ _____ = $_____

*[PRE-PRINTED]*

**2b.  Amount of New Common Stock under the Euro Notes Rights Offering (not to exceed the amount set forth in Item 1c):**

Participation Rate _____% x € _____ = €_____

*[PRE-PRINTED]*

## Item 3.  Subscription Purchase Price; Final Allocation.

**3a.  Subscription Purchase Price—Secured Component of the Exit Rights Offering (from Item 2a):**

$_____

Notwithstanding anything herein or in the Rights Offering Documents to the contrary, your final allocation of the New Common Stock shall be finally determined by the Debtors in accordance with the Rights Offering Procedures and the Plan.  Any funds held in the Subscription Accounts pursuant to the Plan and not utilized pursuant to the Rights Offering Procedures, the Plan, or otherwise, shall be returned to you in accordance with the terms of the Rights Offering Procedures and the return information provided in Item 5 below.

**3b.  Subscription Purchase Price—Euro Notes Rights Offering (from Item 2b):**

€_____

Notwithstanding anything herein or in the Rights Offering Documents to the contrary, your final allocation of the New Common Stock shall be finally determined by the Debtors in accordance with the Rights Offering Procedures and the Plan.  Any funds held in the Subscription Accounts pursuant to the Plan and not utilized pursuant to the Rights Offering Procedures, the Plan, or

---

[2]  Equal to the fraction that your Secured Notes Claims represent of the total aggregate amount Secured Notes Claims times €50,000,000.

otherwise, shall be returned to you in accordance with the terms of the Rights Offering Procedures and the return information provided in Item 5 below.

**Item 4a. Payment Instruction - Exit Rights Offering.**

Pursuant to your irrevocable election to exercise your Rights under the Exit Rights Offering, you must make your payment of the Subscription Purchase Price set forth in Item 3a above by wire transfer so that it is actually received by the Subscription Agent on or before the Subscription Deadline.

Please have wire transfers delivered to:

| | |
|---|---|
| Account Name: | Computershare AAF for KCC Rights Offering |
| Account No.: | 4426942285 |
| CCY: | USD |
| ABA/Routing No.: | 026 009 593 |
| Swift Code: | BOFAUS3N |
| Bank Name: | Bank of America |
| Bank Address: | 100 West 33rd Street |
| | New York, NY |
| Ref: | Quiksilver Exit Rights Offering – [Insert Name of Eligible Offeree and  Last 4 Digits of Eligible Offeree's TIN] |

**Item 4b. Payment Instruction - Euro Notes Rights Offering.**

Pursuant to your irrevocable election to exercise your Rights under the Euro Notes Rights Offering, you must make your payment of the Subscription Purchase Price set forth in Item 3b above, denominated in Euros, by wire transfer so that it is actually received by the Subscription Agent on or before the Subscription Deadline.

Please have wire transfers delivered to:

| | |
|---|---|
| Account Name: | Computershare Inc. aaf Clients |
| Account No.: | 0013083187 |
| CCY: | EUR |
| IBAN No.: | GB70CITI18500813083187 |
| Swift Code: | CITIGB2L |
| Bank Name: | Citibank |
| Bank Address: | Canada Square |
| | Canary Wharf |
| | London, E14 5LB, United Kingdom |
| Ref: | Quiksilver Euro Notes Rights Offering – [Insert Name of Eligible Offeree and Last 4 Digits of Eligible Offeree's TIN] |

**Item 5.  Wire Instructions for Receiving Refund (If Applicable)**

Please provide wire instructions for any refund or return of the Subscription Purchase Price to which the Eligible Offeree is entitled:

Account Name:    _____

                                    _____

Account No.:    _____

ABA/Routing No.:    _____

Bank Name:    _____

Bank Address:    _____

                                    _____

Ref:    _____

**Item 6.  Registration Information for New Common Stock**

Please indicate below the Eligible Holder's name and address as you would like it to be reflected on the Debtors' records for the New Common Stock:

Registration Line 1:_____

Registration Line 2:_____
(if needed)

Address 1:_____

Address 2:_____

Address 3:_____

Address 4:_____

Telephone:_____

Email:_____

**Item 7.  Subscription Certifications, Representations, Warranties, and Agreements.**

By returning the Subscription Form, you agree, acknowledge, and certify the following:

1.       I certify that (a) I am the holder, the Eligible Affiliate of a holder, or the authorized signatory of the holder of the Allowed Secured Notes Claim identified in Item 1 (or the authorized signatory of the Eligible Affiliate of such holder); (b) I agree, or such holder or Eligible Affiliate agrees, to be bound by all the terms and conditions described in the Instructions and as set forth in this Subscription Form; (c) I have, or such holder has, obtained a copy of the Rights Offering Documents and all related documents and agreements and understand that the exercise of Rights pursuant to the Rights Offerings are subject to all the terms and conditions set forth in such documents; and (d) I acknowledge, or such holder or Eligible Affiliate acknowledges, that the Debtors, the Reorganized Debtors, the Backstop Parties, the Subscription Agent, and their respective affiliates and each of their (and their affiliates') respective officers, directors, equity holders, employees, members, managers, agents, attorneys, representatives, and advisors

shall have no liability to any other party in interest arising from, or related to such parties' participation in, the transactions contemplated by the Rights Offerings and hereby are exculpated from any and all claims, obligations, suits, judgments, damages, rights, liabilities, or causes of action as set forth in <u>Article X</u> of the Plan.

2.  I certify that the holder of the Secured Notes Claim set forth in Item 1a. as of the Eligibility Certificate Deadline submitted a timely and properly completed ballot to accept the Plan and did not opt out of the releases set forth in <u>Article 10.5</u> of the Plan.

3.  The holder or Eligible Affiliate represents and warrants that (a) to the extent applicable, it is duly formed, validly existing, and in good standing under the laws of the jurisdiction of its formation; and (b) it has the requisite power and authority to enter into, execute and deliver this Subscription Form and to perform its obligations hereunder and has taken all necessary action required for due authorization, execution, delivery and performance hereunder.

4.  The holder or Eligible Affiliate acknowledges and understands that this Subscription Form shall not be binding on the Debtors until the terms and conditions set forth in the Plan are satisfied and the Debtors execute a counterpart hereof.  The New Common Stock issued to the holder or Eligible Affiliate shall be the number set forth on the Debtors' acknowledgement signature page below.

5.  The holder or Eligible Affiliate agrees that this Subscription Form constitutes a valid and binding obligation, enforceable against it in accordance with its terms, subject to applicable bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium, and similar laws affecting creditors' rights and remedies generally, and subject, as to enforceability, to general principles of equity, including principles of commercial reasonableness, good faith, and fair dealing (regardless of whether enforcement is sought in a proceeding at law or in equity).

6.  The holder or Eligible Affiliate hereby understands, represents, warrants, covenants and agrees as follows:

    (a)  The holder or Eligible Affiliate is either (i) certified as an "accredited investor" as defined in Rule 501(a)(1), (2), (3), or (7) under the Securities Act, which, for the avoidance of doubt, shall exclude any natural person, or (ii) a "qualified institutional buyer" as defined in Rule 144A of the Securities Act, in each case as established by the holder's or Eligible Affiliate's responses to the Secured Notes Eligibility Certificate.

    (b)  The New Common Stock is being acquired by the holder or Eligible Affiliate for the account of the holder or Eligible Affiliate for investment purposes only, within the meaning of the Securities Act, and not with a view to the distribution thereof other than as permitted by Reorganized Quiksilver's organizational documents, including, but not limited to, the New Shareholders Agreement, and in compliance with applicable securities laws.  No one other than the holder or

Eligible Affiliate has any right to acquire the New Common Stock being acquired by the holder or Eligible Affiliate.

(c)    The holder's or Eligible Affiliate's financial condition is such that such entity has no need for any liquidity in its investment in Reorganized Quiksilver and is able to bear the risk of holding the New Common Stock for an indefinite period of time and the risk of loss of its entire investment in Reorganized Quiksilver. The holder or Eligible Affiliate (i) is a financial institution or other organization and its representatives are capable of evaluating the merits and risks of acquiring the New Common Stock, or (ii) has knowledge and experience (or the holder has utilized the services of a representative and together they have knowledge and experience) in financial and business matters to be capable of evaluating the merits and risks of holding the New Common Stock and to make an informed decision relating thereto.

(d)    The holder or Eligible Affiliate has been given the opportunity to (i) ask questions and receive satisfactory answers concerning the terms and conditions of the Rights Offerings and (ii) obtain additional information in order to evaluate the merits and risks of an investment in Reorganized Quiksilver, and to verify the accuracy of the information contained in the Rights Offering Documents. No statement, printed material or other information that is contrary to the information contained in any Rights Offering Document has been given or made by or on behalf of the Debtors, Reorganized Debtors, or the Backstop Parties to the holder or Eligible Affiliate.

(e)    The holder or Eligible Affiliate acknowledges and understands that:

(i)    An investment in Reorganized Quiksilver is speculative and involves significant risks.

(ii)    The New Common Stock will be subject to certain restrictions on transferability as described in the Plan and the New Shareholders Agreement and as a result of the foregoing, the marketability of the New Common Stock may be severely limited.

(iii)    The holder or Eligible Affiliate will not transfer, sell, or otherwise dispose of the New Common Stock in any manner that will violate Reorganized Quiksilver's organizational documents (including, but not limited to, the New Shareholders Agreement), the Securities Act or any state or foreign securities laws or subject the Reorganized Debtors or any of its affiliates to regulation under the rules and regulations of the Securities and Exchange Commission or the laws of any other federal, state, or municipal authority or any foreign governmental authority having jurisdiction thereof.

(iv)    The New Common Stock has not been, and will not be, registered under the Securities Act or any state or foreign securities laws, and is being

offered and sold in reliance upon federal, state and foreign exemptions from registration requirements for transactions not involving any public offering. The holder or Eligible Affiliate recognizes that reliance upon such exemptions is based in part upon the representations of the holder contained herein.

(v)      The holder or Eligible Affiliate agrees Reorganized Quiksilver's organizational documents, including, but not limited to, the New Shareholders Agreement, shall become binding upon the holder upon the consummation of the Plan and the receipt by the holder of the New Common Stock. Reorganized Quiksilver's organizational documents and the New Shareholders Agreement will be contained in the Plan Supplement and available from the Subscription Agent as of the Plan Supplement Filing Date.

(vi)     The representations and warranties by the holder or Eligible Affiliate set forth in the Rights Offering Procedures and the Secured Notes Eligibility Certificate are hereby incorporated by reference.

(vii)    Neither the Debtors nor the Reorganized Debtors intend to register as an investment company under the Investment Company Act of 1940, as amended ("Investment Company Act"), and neither the Debtors nor the Reorganized Debtors nor their respective managers, members or partners nor any other person or entity selected to act as an agent of the Debtors or the Reorganized Debtors with respect to managing their affairs, is registered as of the date hereof as an investment adviser under the Investment Advisers Act of 1940, as amended (the "Investment Advisers Act").

(f)      The holder or Eligible Affiliate is aware that: (i) no federal, state, local, or foreign agency has passed upon the New Common Stock or made any finding or determination as to the fairness of this investment and (ii) data set forth in any Rights Offering Documents or in any supplemental letters or materials thereto is not necessarily indicative of future returns, if any, which may be achieved by the Reorganized Debtors.

7.      The holder or Eligible Affiliate hereby acknowledges that the Reorganized Debtors seek to comply with all applicable anti-money laundering laws and regulations.  In furtherance of such efforts, the holder or Eligible Affiliate hereby represents and agrees that:  (i) no part of the funds used by the holder or Eligible Affiliate to acquire the New Common Stock has been, or shall be, directly or indirectly derived from, or related to, any activity that may contravene federal, state, or international laws and regulations, including anti-money laundering laws and regulations; and (ii) no contribution, or payment to the Reorganized Debtors by the holder or Eligible Affiliate shall cause the Reorganized Debtors to be in violation of any applicable anti-money laundering laws and regulations including without limitation, the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT ACT)

11

Act of 2001 and the U.S. Department of the Treasury Office of Foreign Assets Control regulations.  The holder or Eligible Affiliate agrees to provide the Reorganized Debtors all information that may be reasonably requested to comply with applicable U.S. law. The holder or Eligible Affiliate agrees to promptly notify the Reorganized Debtors (if legally permitted) if there is any change with respect to the representations and warranties provided herein.

8.     The holder or Eligible Affiliate hereby agrees to provide such information and to execute and deliver such documents as may reasonably be necessary to comply with any and all laws, rules and regulations to which the Reorganized Debtors are subject.

9.     The representations, warranties, covenants, and agreements of the holder contained in this Subscription Form will survive the execution hereof and the distribution of the New Common Stock to the holder or Eligible Affiliate.

10.    Neither this Subscription Form nor any provision hereof shall be waived, modified, discharged, or terminated except by an instrument in writing signed by the party against whom any such waiver, modification, discharge, or termination is sought except by the Debtors or the Reorganized Debtors in accordance with the Plan and the terms herein.

11.    References herein to a person or entity in either gender include the other gender or no gender, as appropriate.

12.    This Subscription Form may be executed in any number of counterparts, each of which shall be deemed to be an original and all of which taken together shall be deemed to constitute one and the same agreement.

13.    This Subscription Form and its validity, construction, and performance shall be governed in all respects by the laws of the State of Delaware.

14.    This Subscription Form is intended to be read and construed in conjunction with Reorganized Quiksilver's organizational documents, including, but not limited to, the New Shareholders Agreement, as applicable, and the other Rights Offering Documents pertaining to the issuance by Reorganized Quiksilver of the New Common Stock to the holder or Eligible Affiliate.  Accordingly, pursuant to the terms and conditions of this Subscription Form and such related agreements it is hereby agreed that the execution by holder or Eligible Affiliate of this Subscription Form, in the place set forth herein, shall constitute agreement to be bound by the terms and conditions hereof and the terms and conditions of Reorganized Quiksilver's organizational documents, including, but not limited to, the New Shareholders Agreement, with the same effect as if each of such separate but related agreement were separately signed.

## Item 8.  Tax Information

1.     Each holder or Eligible Affiliate that is a U.S. person (i.e., a U.S. citizen or resident, a partnership organized under U.S. law, a corporation organized under U.S. law, a limited liability company organized under U.S. law, or an estate or trust (other than a foreign estate or trust whose income from sources without the U.S. is not includible in the

beneficiaries' gross income)), must provide its taxpayer identification number on a signed IRS form W-9 to the Subscription Agent. This form is necessary for the Debtors and the Reorganized Debtors, as applicable, to comply with tax filing obligations to comply with its tax filing obligations and to establish that the holder or Eligible Affiliate is not subject to certain withholding tax obligations applicable to non-U.S. persons. The enclosed W-9 form contains detailed instructions for furnishing this information.

2.     Each holder or Eligible Affiliate that is not a U.S. person or resident alien is required to provide information about its status for withholding purposes, generally on form W-8BEN or W-8BEN-E (for most foreign beneficial owners), form W-8IMY (for most foreign intermediaries, flow-through entities, and certain U.S. branches), form W-8EXP (for most foreign governments, foreign central banks of issue, foreign tax-exempt organizations, foreign private foundations, and governments of certain U.S. possessions), or form W-8ECI (for most non-U.S. persons receiving income that is effectively connected with the conduct of a trade or business in the United States). Each holder or Eligible Affiliate that is not a U.S. person should provide the Subscription Agent with the appropriate form W-8. Please contact the Subscription Agent if you need further information regarding these forms. Holders or Eligible Affiliates may also access the IRS website (www.irs.gov) to obtain the appropriate form W-8 and its instructions.

**Item 9.  Certification**

By its signature below, the signatory certifies that the information contained in this Subscription Form is true and correct, that he/she read the certification and representations in Item 7, and that the signatory has the authority to execute this Form on behalf of the Eligible Offeree.

Name of
Holder/Eligible
Affiliate: _____
                                    (Print or Type)

Signature: _____

Name of
Signatory: _____

Title: _____

Address: _____

_____

_____

Telephone
Number: _____

Email: _____

Date Completed: _____

**PLEASE COMPLETE, SIGN, AND DATE THIS SUBSCRIPTION FORM AND
RETURN IT (WITH AN ORIGINAL SIGNATURE) PROMPTLY IN THE ENVELOPE
PROVIDED OR VIA FIRST CLASS MAIL, OVERNIGHT COURIER, OR HAND
DELIVERY TO:**

**Kurtzman Carson Consultants LLC
1290 Avenue of the Americas, 9th Floor
New York, New York 10104
(877) 833-4150 (toll free U.S. and Canada) // (917) 281-4800**

---

IF THE SUBSCRIPTION AGENT DOES NOT **ACTUALLY RECEIVE** THIS SUBSCRIPTION FORM AND YOUR PURCHASE PRICE **ON OR BEFORE JANUARY 14, 2016 AT 4:00 P.M. PREVAILING EASTERN TIME**, WILL BE DEEMED TO HAVE RELINQUISHED AND WAIVED YOUR RIGHT TO PARTICIPATE IN THE RIGHTS OFFERINGS

---

**<u>Annex B-2</u>**

**Unsecured Notes Subscription Form**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In re:                                              :    Chapter 11
                                                    :
QUIKSILVER, INC., *et al.*,                          :    Case No. 15-11880 (BLS)
                                                    :
                          Debtors.[1]                :    Jointly Administered
                                                    :
                                                    :    **Related Docket Nos. 398, __**
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### INSTRUCTIONS TO SUBSCRIPTION FORM FOR ELIGIBLE UNSECURED NOTES OFFEREES FOR THE UNSECURED COMPONENT OF THE EXIT RIGHTS OFFERING IN CONNECTION WITH THE SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF QUIKSILVER, INC. AND ITS AFFILIATED DEBTORS AND DEBTORS IN POSSESSION

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THE SUBSCRIPTION FORM CAREFULLY BEFORE COMPLETING THE SUBSCRIPTION FORM.**

**IN ORDER FOR YOU TO PARTICIPATE IN THE UNSECURED COMPONENT OF THE EXIT RIGHTS OFFERING, THIS SUBSCRIPTION FORM AND PAYMENT OF THE SUBSCRIPTION PURCHASE PRICE MUST BE ACTUALLY RECEIVED BY THE SUBSCRIPTION AGENT BY THE SUBSCRIPTION DEADLINE.**

**THE SUBSCRIPTION DEADLINE IS <u>JANUARY 14, 2016. AT 4:00 P.M.</u> (PREVAILING EASTERN TIME)**

---

On December 4, 2015, the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>") entered the *Order (A) Approving the Adequacy of the Debtors' Disclosure Statement, (B) Approving Solicitation and Notice Procedures with respect to Confirmation of the Debtors' Proposed Plan of Reorganization, (C) Approving the Form of Various Ballots and Notices in Connection Therewith, and (D) Scheduling Certain Dates with Respect Thereto* [Docket No. 529] (the "<u>Disclosure Statement Order</u>") that, among other things, (a) approved the adequacy of the *Second Amended Disclosure Statement With Respect to the Second Amended Joint Chapter 11 Plan of Reorganization of Quiksilver, Inc. and its Affiliated*

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

*Debtors and Debtors in Possession* [Docket No. 533] (as hereafter amended or modified, and including all appendices, exhibits, schedules and supplements thereto, the "Disclosure Statement") filed in support of the *Second Amended Joint Plan of Reorganization of Quiksilver, Inc. and its Affiliated Debtors and Debtors in Possession* [Docket No. 532] (as hereafter amended or modified, and including all appendices, exhibits, schedules and supplements thereto, the "Plan"), and (b) authorized the above-captioned debtors and debtors in possession (collectively, the "Debtors") to solicit acceptances or rejections of the Plan from certain holders of Impaired Claims who are (or may be) entitled to receive distributions under the Plan.

On December 4, 2015, the Bankruptcy Court entered the *Order Authorizing and Approving (I)(A) Entry into the Backstop Commitment Letter and (B) Payment of Related Fees and (II) the Rights Offering Procedures and Related Forms* [Docket No. 530] (the "Rights Offering Order") that, among other things, approved the procedures (the "Rights Offering Procedures")[2] for the conduct of, and participation in, the Rights Offerings. The Rights Offering Procedures are hereby incorporated by reference as if fully set forth herein.

The Plan, the Disclosure Statement, the Disclosure Statement Order, the Rights Offering Procedures, the Rights Offering Order, and all Rights Offering Documents[3] are or, upon filing, will be available by (i) calling the Debtors' restructuring hotline at (877) 833-4150 (toll free U.S. and Canada) or (917) 281-4800; (ii) emailing the Subscription Agent at QuiksilverInfo@kccllc.com; and/or (iii) visiting the Debtors' restructuring website at: http://www.kccllc.net/quiksilver. Parties may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER at: http://www.deb.uscourts.gov. **You are advised to read the Plan, the Disclosure Statement and the Rights Offering Documents prior to making a determination with respect to participation in the Rights Offerings.**

You have received the attached Subscription Form because you are an Eligible Offeree as of the Rights Offering Record Date. Please utilize the attached Subscription Form to participate in the Unsecured Component of the Exit Rights Offering. To elect to participate in the Unsecured Component of the Exit Rights Offering, you must (a) complete and return this Subscription Form and any other documents referenced herein to the Subscription Agent so as to be received by the Subscription Agent no later than the Subscription Deadline, and (b) submit the appropriate Subscription Purchase Price (as calculated in Item 5a below) by wire transfer so as to be received by the Subscription Agent no later than the Subscription Deadline (collectively, the "Rights Offering Deliveries"). Your election to participate in the Unsecured Component of the Exit Rights Offering is irrevocable.

---

[2] Capitalized terms used but not otherwise defined herein are used as defined in the Plan or the Rights Offering Procedures, as applicable. The Plan and the Rights Offering Procedures can be accessed as set forth herein.

[3] The Plan Supplement will be filed with the Court on or prior to seven (7) days before the Voting Deadline, or such later date as may be approved by the Bankruptcy Court without further notice, and will include, among other things, forms of: (a) the New Shareholders Agreement and (b) the New Corporate Governance Documents. The Debtors shall have the right to amend the documents contained in, and appended as exhibits to, the Plan Supplement through the Effective Date with the consent of the Plan Sponsor.

Your subscription will be processed by the Subscription Agent in accordance with the Rights Offering Procedures, including but not limited to the procedures set forth below.  Your payment of your Subscription Purchase Price will be deposited and held in one or more Subscription Accounts.  The Subscription Accounts will be maintained by the Subscription Agent for the purpose of holding the money for administration of the Rights Offerings in accordance with the Rights Offering Procedures.  The Subscription Agent will not use such funds for any other purpose prior to such date and will not encumber or permit such funds to be encumbered with any claims, liens, encumbrances, or other liabilities.  No interest will be paid to Entities exercising Rights on account of amounts paid in connection with such exercise.

**Questions**.  If you have any questions about this Subscription Form or the subscription procedures described herein, please contact the Subscription Agent by (i) calling the Debtors' restructuring hotline at (877) 833-4150 (toll free U.S. and Canada) or (917) 281-4800; or (ii) emailing the Subscription Agent at QuiksilverInfo@kccllc.com.

**Important Transfer Restriction**.  An Eligible Offeree's Rights shall not be transferable subsequent to the Eligibility Certificate Deadline.

**Participation by Eligible Unsecured Notes Offerees in the Unsecured Component of the Exit Rights Offering hereunder is voluntary and is limited to Holders of Allowed Unsecured Notes Claims and Transferee Holders that are Eligible Holders, or their Eligible Affiliates.**

**Rights Offering Participants will receive Rights in accordance with the Plan and the Rights Offering Procedures.  The Rights will entitle Holders of Allowed Unsecured Notes Claims to acquire New Common Stock, issued at the Rights Equity Exercise Price.**

**If the Rights Offering Deliveries are not received by the Subscription Agent by the Subscription Deadline, your unexercised Rights will automatically be relinquished, and you shall have no further interest in the Rights.**

To subscribe for the New Common Stock pursuant to the Unsecured Component of the Exit Rights Offering:

1. Review the amount of your Allowed Unsecured Notes Claim and the amount of your subscription rights as set forth in Items 1a and 1b, respectively.

2. Complete your subscription amount of New Common Stock in Item 2.

3. Complete your Subscription Purchase Price in Item 3 with the amount in Item 2.

4. Complete the wire instructions in Item 5.

5. Complete the registration information in Item 6.

6. Read and complete the certification, representations, warranties, and covenants in Item 7.

3

7.      <u>Complete</u> the certification in Item 9.

8.      <u>Return</u> the Subscription Form to the Subscription Agent with an original signature so that it is **<u>actually</u> <u>received</u>** on or before the Subscription Deadline of **January 14, 2016 at 4:00 p.m. (prevailing Eastern Time)** to:

Kurtzman Carson Consultants LLC
1290 Avenue of the Americas, 9th Floor
New York, NY  10104

Subscription Forms submitted by email, facsimile, or other electronic means will not be accepted.

9.      <u>Pay</u> the Subscription Purchase Price in Item 3 to the Subscription Agent in accordance with the instructions in Item 4 so that it is **<u>actually</u> <u>received</u>** on or before the Subscription Deadline of **January 14, 2016 at 4:00 p.m.** (prevailing Eastern Time).

10.     <u>Return</u> your W-8 or W-9, as applicable, to the Subscription Agent so that it is **<u>actually</u> <u>received</u>** on or before the Subscription Deadline of **January 14, 2016 at 4:00 p.m.** (prevailing Eastern Time) pursuant to Item 8.

**SUBSCRIPTION FORM FOR THE UNSECURED COMPONENT OF THE EXIT RIGHTS OFFERING IN CONNECTION WITH THE SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF QUIKSILVER, INC. AND ITS AFFILIATED DEBTORS AND DEBTORS IN POSSESSION**

**SUBSCRIPTION DEADLINE**

**The Subscription Deadline is 4:00 p.m. (prevailing Eastern Time) on January 14, 2016.**

**Please consult the Rights Offering Documents for additional information with respect to this Subscription Form.**

Eligible Unsecured Notes Offerees are entitled to participate in the Unsecured Component of the Exit Rights Offering, as further described in the Rights Offering Procedures. To subscribe, read and complete Items 1 to 9 below.

**Item 1.  Amount of Eligible Claim(s)**

Pursuant to the Rights Offering Procedures, each Eligible Unsecured Notes Offeree is entitled to participate in the Unsecured Component of the Exit Rights Offering to the extent of such Eligible Holder's Unsecured Notes Claims or, in the case of an Eligible Affiliate, its affiliate's Unsecured Notes Claims.

**1a.**    As of the Rights Offering Record Date, the aggregate amount of your Allowed Unsecured Notes Claims is:

$ _____

*[PRE-PRINTED]*

**1b.**    For purposes of the Unsecured Component of the Exit Rights Offering, you have the right to subscribe for New Common Stock offered in the Exit Rights Offering up to:

$ _____ [1]

*[PRE-PRINTED]*

---

[1]    Equal to the fraction that your Unsecured Notes Claims represent of the total aggregate amount Unsecured Notes Claims times $12,500,000.

**Item 2.  Rights Offering Election**

As an Eligible Unsecured Notes Offeree, you irrevocably agree to purchase:

**Amount of New Common Stock under the Exit Rights Offering (not to exceed the amount set forth in Item 1b):**

Participation Rate _____% x $ _____ = $_____
                                       *[PRE-PRINTED]*

**Item 3.  Subscription Purchase Price; Final Allocation.**

                                                                    $_____

Notwithstanding anything herein or in the Rights Offering Documents to the contrary, your final allocation of the New Common Stock shall be finally determined by the Debtors in accordance with the Rights Offering Procedures and the Plan.  Any funds held in the Subscription Accounts pursuant to the Plan and not utilized pursuant to the Rights Offering Procedures, the Plan, or otherwise, shall be returned to you in accordance with the terms of the Rights Offering Procedures and the return information provided in Item 5 below.

**Item 4. Payment Instruction.**

Pursuant to your irrevocable election to exercise your Rights in the Unsecured Component of the Exit Rights Offering, you must make your payment of the Subscription Purchase Price set forth in Item 3 above by wire transfer so that it is actually received by the Subscription Agent on or before the Subscription Deadline.

Please have wire transfers delivered to:

| | |
|---|---|
| Account Name: | Computershare AAF for KCC Rights Offering |
| Account No.: | 4426942285 |
| CCY: | USD |
| ABA/Routing No.: | 026 009 593 |
| Swift Code: | BOFAUS3N |
| Bank Name: | Bank of America |
| Bank Address: | 100 West 33rd Street |
| | New York, NY |
| Ref: | Quiksilver Exit Rights Offering – [Insert Name of Eligible Offeree and Last 4 Digits of Eligible Offeree's TIN] |

**Item 5.  Wire Instructions for Receiving Refund (If Applicable)**

Please provide wire instructions for any refund or return of the Subscription Purchase Price to which the Eligible Unsecured Notes Offeree is entitled:

6

Account Name: _____

_____

Account No.: _____

ABA/Routing No.: _____

Bank Name: _____

Bank Address: _____

_____

Ref: _____

## Item 6.  Registration Information for New Common Stock

Please indicate below the Eligible Holder's name and address as you would like it to be reflected on the Debtors' records for the New Common Stock:

Registration Line 1:_____

Registration Line 2:_____
(if needed)

Address 1:_____

Address 2:_____

Address 3:_____

Address 4:_____

Telephone:_____

Email:_____

## Item 7.  Subscription Certifications, Representations, Warranties, and Agreements.

By returning the Subscription Form, you agree, acknowledge, and certify the following:

1.  I certify that (a) I am the holder, the Eligible Affiliate of a holder, or the authorized signatory of the holder of the Allowed Unsecured Notes Claim identified in Item 1 (or the authorized signatory of the Eligible Affiliate of such holder); (b) I agree, or such holder or Eligible Affiliate agrees, to be bound by all the terms and conditions described in the Instructions and as set forth in this Subscription Form; (c) I have, or such holder has, obtained a copy of the Rights Offering Documents and all related documents and agreements and understand that the exercise of Rights pursuant to the Rights Offerings are subject to all the terms and conditions set forth in such documents; and (d) I acknowledge, or such holder or Eligible Affiliate acknowledges, that the Debtors, the Reorganized Debtors, the Backstop Parties, the Subscription Agent, and their respective affiliates and each of their (and their affiliates') respective officers, directors, equity

7

holders, employees, members, managers, agents, attorneys, representatives, and advisors shall have no liability to any other party in interest arising from, or related to such parties' participation in, the transactions contemplated by the Rights Offerings and hereby are exculpated from any and all claims, obligations, suits, judgments, damages, rights, liabilities, or causes of action as set forth in <u>Article X</u> of the Plan.

2. The holder or Eligible Affiliate represents and warrants that (a) to the extent applicable, it is duly formed, validly existing, and in good standing under the laws of the jurisdiction of its formation; and (b) it has the requisite power and authority to enter into, execute and deliver this Subscription Form and to perform its obligations hereunder and has taken all necessary action required for due authorization, execution, delivery and performance hereunder.

3. The holder or Eligible Affiliate acknowledges and understands that this Subscription Form shall not be binding on the Debtors until the terms and conditions set forth in the Plan are satisfied and the Debtors execute a counterpart hereof.  The New Common Stock issued to the holder or Eligible Affiliate shall be the number set forth on the Debtors' acknowledgement signature page below.

4. The holder or Eligible Affiliate agrees that this Subscription Form constitutes a valid and binding obligation, enforceable against it in accordance with its terms, subject to applicable bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium, and similar laws affecting creditors' rights and remedies generally, and subject, as to enforceability, to general principles of equity, including principles of commercial reasonableness, good faith, and fair dealing (regardless of whether enforcement is sought in a proceeding at law or in equity).

5. The holder or Eligible Affiliate hereby understands, represents, warrants, covenants and agrees as follows:

   (a) The holder or Eligible Affiliate is either (i) certified as an "accredited investor" as defined in Rule 501(a)(1), (2), (3), or (7) under the Securities Act, which, for the avoidance of doubt, shall exclude any natural person, or (ii) a "qualified institutional buyer" as defined in Rule 144A of the Securities Act, in each case as established by the holder's or Eligible Affiliate's responses to the Unsecured Notes Eligibility Certificate.

   (b) The New Common Stock is being acquired by the holder or Eligible Affiliate for the account of the holder or Eligible Affiliate for investment purposes only, within the meaning of the Securities Act, and not with a view to the distribution thereof other than as permitted by Reorganized Quiksilver's organizational documents, including, but not limited to, the New Shareholders Agreement, and in compliance with applicable securities laws.  No one other than the holder or Eligible Affiliate has any right to acquire the New Common Stock being acquired by the holder or Eligible Affiliate.

(c)      The holder's or Eligible Affiliate's financial condition is such that such entity has no need for any liquidity in its investment in Reorganized Quiksilver and is able to bear the risk of holding the New Common Stock for an indefinite period of time and the risk of loss of its entire investment in Reorganized Quiksilver.  The holder or Eligible Affiliate (i) is a financial institution or other organization and its representatives are capable of evaluating the merits and risks of acquiring the New Common Stock, or (ii) has knowledge and experience (or the holder has utilized the services of a representative and together they have knowledge and experience) in financial and business matters to be capable of evaluating the merits and risks of holding the New Common Stock and to make an informed decision relating thereto.

(d)      The holder or Eligible Affiliate has been given the opportunity to (i) ask questions and receive satisfactory answers concerning the terms and conditions of the Rights Offerings and (ii) obtain additional information in order to evaluate the merits and risks of an investment in Reorganized Quiksilver, and to verify the accuracy of the information contained in the Rights Offering Documents.  No statement, printed material or other information that is contrary to the information contained in any Rights Offering Document has been given or made by or on behalf of the Debtors, Reorganized Debtors, or the Backstop Parties to the holder or Eligible Affiliate.

(e)      The holder or Eligible Affiliate acknowledges and understands that:

(i)       An investment in Reorganized Quiksilver is speculative and involves significant risks.

(ii)      The New Common Stock will be subject to certain restrictions on transferability as described in the Plan and the New Shareholders Agreement and as a result of the foregoing, the marketability of the New Common Stock may be severely limited.

(iii)     The holder or Eligible Affiliate will not transfer, sell, or otherwise dispose of the New Common Stock in any manner that will violate Reorganized Quiksilver's organizational documents (including, but not limited to, the New Shareholders Agreement), the Securities Act or any state or foreign securities laws or subject the Reorganized Debtors or any of its affiliates to regulation under the rules and regulations of the Securities and Exchange Commission or the laws of any other federal, state, or municipal authority or any foreign governmental authority having jurisdiction thereof.

(iv)     The New Common Stock has not been, and will not be, registered under the Securities Act or any state or foreign securities laws, and is being offered and sold in reliance upon federal, state and foreign exemptions from registration requirements for transactions not involving any public offering. The holder or Eligible Affiliate recognizes that reliance upon

9

such exemptions is based in part upon the representations of the holder contained herein.

(v)     The holder or Eligible Affiliate agrees Reorganized Quiksilver's organizational documents, including, but not limited to, the New Shareholders Agreement, shall become binding upon the holder upon the consummation of the Plan and the receipt by the holder of the New Common Stock. Reorganized Quiksilver's organizational documents and the New Shareholders Agreement will be contained in the Plan Supplement and available from the Subscription Agent as of the Plan Supplement Filing Date.

(vi)    The representations and warranties by the holder or Eligible Affiliate set forth in the Rights Offering Procedures and the Unsecured Notes Eligibility Certificate are hereby incorporated by reference.

(vii)   Neither the Debtors nor the Reorganized Debtors intend to register as an investment company under the Investment Company Act of 1940, as amended ("Investment Company Act"), and neither the Debtors nor the Reorganized Debtors nor their respective managers, members or partners nor any other person or entity selected to act as an agent of the Debtors or the Reorganized Debtors with respect to managing their affairs, is registered as of the date hereof as an investment adviser under the Investment Advisers Act of 1940, as amended (the "Investment Advisers Act").

(f)     The holder or Eligible Affiliate is aware that: (i) no federal, state, local, or foreign agency has passed upon the New Common Stock or made any finding or determination as to the fairness of this investment and (ii) data set forth in any Rights Offering Documents or in any supplemental letters or materials thereto is not necessarily indicative of future returns, if any, which may be achieved by the Reorganized Debtors.

6.      The holder or Eligible Affiliate hereby acknowledges that the Reorganized Debtors seek to comply with all applicable anti-money laundering laws and regulations.  In furtherance of such efforts, the holder or Eligible Affiliate hereby represents and agrees that:  (i) no part of the funds used by the holder or Eligible Affiliate to acquire the New Common Stock has been, or shall be, directly or indirectly derived from, or related to, any activity that may contravene federal, state, or international laws and regulations, including anti-money laundering laws and regulations; and (ii) no contribution, or payment to the Reorganized Debtors by the holder or Eligible Affiliate shall cause the Reorganized Debtors to be in violation of any applicable anti-money laundering laws and regulations including without limitation, the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA PATRIOT ACT) Act of 2001 and the U.S. Department of the Treasury Office of Foreign Assets Control regulations.  The holder or Eligible Affiliate agrees to provide the Reorganized Debtors all information that may be reasonably requested to comply with applicable U.S. law.

The holder or Eligible Affiliate agrees to promptly notify the Reorganized Debtors (if legally permitted) if there is any change with respect to the representations and warranties provided herein.

7.    The holder or Eligible Affiliate hereby agrees to provide such information and to execute and deliver such documents as may reasonably be necessary to comply with any and all laws, rules and regulations to which the Reorganized Debtors are subject.

8.    The representations, warranties, covenants, and agreements of the holder contained in this Subscription Form will survive the execution hereof and the distribution of the New Common Stock to the holder or Eligible Affiliate.

9.    Neither this Subscription Form nor any provision hereof shall be waived, modified, discharged, or terminated except by an instrument in writing signed by the party against whom any such waiver, modification, discharge, or termination is sought except by the Debtors or the Reorganized Debtors in accordance with the Plan and the terms herein.

10.    References herein to a person or entity in either gender include the other gender or no gender, as appropriate.

11.    This Subscription Form may be executed in any number of counterparts, each of which shall be deemed to be an original and all of which taken together shall be deemed to constitute one and the same agreement.

12.    This Subscription Form and its validity, construction, and performance shall be governed in all respects by the laws of the State of Delaware.

13.    This Subscription Form is intended to be read and construed in conjunction with Reorganized Quiksilver's organizational documents, including, but not limited to, the New Shareholders Agreement, as applicable, and the other Rights Offering Documents pertaining to the issuance by Reorganized Quiksilver of the New Common Stock to the holder or Eligible Affiliate.  Accordingly, pursuant to the terms and conditions of this Subscription Form and such related agreements it is hereby agreed that the execution by holder or Eligible Affiliate of this Subscription Form, in the place set forth herein, shall constitute agreement to be bound by the terms and conditions hereof and the terms and conditions of Reorganized Quiksilver's organizational documents, including, but not limited to, the New Shareholders Agreement, with the same effect as if each of such separate but related agreement were separately signed.

## Item 8.  Tax Information

1.    Each holder or Eligible Affiliate that is a U.S. person (i.e., a U.S. citizen or resident, a partnership organized under U.S. law, a corporation organized under U.S. law, a limited liability company organized under U.S. law, or an estate or trust (other than a foreign estate or trust whose income from sources without the U.S. is not includible in the beneficiaries' gross income)), must provide its taxpayer identification number on a signed IRS form W-9 to the Subscription Agent.  This form is necessary for the Debtors and the Reorganized Debtors, as applicable, to comply with tax filing obligations to comply with

its tax filing obligations and to establish that the holder or Eligible Affiliate is not subject to certain withholding tax obligations applicable to non-U.S. persons.  The enclosed W-9 form contains detailed instructions for furnishing this information.

2.      Each holder or Eligible Affiliate that is not a U.S. person or resident alien is required to provide information about its status for withholding purposes, generally on form W-8BEN or W-8BEN-E (for most foreign beneficial owners), form W-8IMY (for most foreign intermediaries, flow-through entities, and certain U.S. branches), form W-8EXP (for most foreign governments, foreign central banks of issue, foreign tax-exempt organizations, foreign private foundations, and governments of certain U.S. possessions), or form W-8ECI (for most non-U.S. persons receiving income that is effectively connected with the conduct of a trade or business in the United States).  Each holder or Eligible Affiliate that is not a U.S. person should provide the Subscription Agent with the appropriate form W-8.  Please contact the Subscription Agent if you need further information regarding these forms.  Holders or Eligible Affiliates may also access the IRS website (www.irs.gov) to obtain the appropriate form W-8 and its instructions.

**Item 9.  Certification**

By its signature below, the signatory certifies that the information contained in this Subscription Form is true and correct, that he/she read the certification and representations in Item 7, and that the signatory has the authority to execute this Form on behalf of the Eligible Offeree.

Name of
Holder/Eligible
Affiliate:      _____
                                    (Print or Type)

Signature:      _____

Name of
Signatory:      _____

Title:          _____

Address:        _____

                _____

                _____

Telephone
Number:         _____

Email:          _____

Date Completed: _____

**PLEASE COMPLETE, SIGN, AND DATE THIS SUBSCRIPTION FORM AND RETURN IT (WITH AN ORIGINAL SIGNATURE) PROMPTLY IN THE ENVELOPE PROVIDED OR VIA FIRST CLASS MAIL, OVERNIGHT COURIER, OR HAND DELIVERY TO:**

**Kurtzman Carson Consultants LLC**
**1290 Avenue of the Americas, 9th Floor**
**New York, New York 10104**
**(877) 833-4150 (toll free U.S. and Canada) // (917) 281-4800**

---

IF THE SUBSCRIPTION AGENT DOES NOT **ACTUALLY RECEIVE** THIS SUBSCRIPTION FORM AND YOUR PURCHASE PRICE **ON OR BEFORE JANUARY 14, 2016 AT 4:00 P.M. PREVAILING EASTERN TIME**, WILL BE DEEMED TO HAVE RELINQUISHED AND WAIVED YOUR RIGHT TO PARTICIPATE IN THE RIGHTS OFFERINGS

---

## **Annex C-1**

**Secured Notes Certification Period Transfer Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                   :

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| QUIKSILVER, INC., *et al.*, | : | Case No. 15-11880 (BLS) |
| | : | |
| Debtors.[1] | : | Jointly Administered |
| | : | |
| | : | **Related Docket Nos. 398, ___** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**<u>INSTRUCTIONS TO SECURED NOTES CERTIFICATION PERIOD TRANSFER</u>**
**<u>NOTICE</u>**

**This Certification Period Transfer Notice shall accompany your Secured Notes Eligibility Certificate, which must be returned so as to be actually received by the Subscription Agent no later than <u>4:00 p.m. (prevailing Eastern Time) on December 28, 2015</u>.**

You must submit this Certification Period Transfer Notice[2] if you are the transferee, subsequent to December 1, 2015 but prior to 4:00 p.m. (prevailing Eastern Time) on December 28, 2015, of Allowed Secured Notes Claims against the Debtors along with the corresponding Rights in respect thereof and wish to participate in either or both of the Rights Offerings. In order to exercise such Rights, you must submit this notice, executed by you and by the Transferor (as defined below), so as to be actually received by the Subscription Agent no later than the Eligibility Certificate Deadline (December 28, 2015 at 4:00 p.m. (prevailing Eastern Time)).

**For further information, please refer to the Rights Offering Procedures and**
**the Instructions to the Secured Notes Eligibility Certificate, available (free of charge) at**
**<u>http://www.kccllc.net/quiksilver</u> or by contacting:**

**Kurtzman Carson Consultants LLC**
**1290 Avenue of the Americas, 9th Floor**
**New York, New York 10104**
**(877) 833-4150 (toll free U.S. and Canada) // (917) 281-4800**

---

[1]     The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

[2]     Capitalized terms used by not otherwise defined herein shall have the meaning given to such terms in the rights offering procedures (the "<u>Rights Offering Procedures</u>") attached as <u>Exhibit 2</u> to the *Order Authorizing and Approving (I) (A) Entry into a Backstop Commitment Letter and (B) Payment of Related Fees and (II) the Rights Offering Procedures and Related Forms* [Docket No. 530].

## SECURED NOTES CERTIFICATION PERIOD TRANSFER NOTICE

Please take notice that, pursuant to Article II.b of the Rights Offering Procedures, the undersigned Holder (as such term is defined in the Rights Offering Procedures) of an Allowed Secured Notes Claim (the "Transferor") has transferred to the undersigned transferee named below (the "Transferee"), its Allowed Secured Notes Claim identified herein and any and all rights associated therewith, including the Rights.

The Transferor confirms and certifies that the Claims and Rights transferred to the Transferee were not offered or sold by means of any form of general solicitation or general advertising (within the meaning of Regulation D) and such transfer was made in compliance with all applicable laws.

| | |
|---|---|
| Name of Transferor: | Name of Transferee: |
| Federal Tax I.D. No.: | Federal Tax I.D. No.: |
| Street Address: | Street Address: |
| City, State, Zip Code: | City, State, Zip Code: |
| Telephone Number: | Telephone Number: |
| Fax: | Fax: |
| E-Mail: | E-Mail: |
| Bank , Broker or Other Nominee that  held the Secured Notes transferred by the Transferor: | Bank , Broker or Other Nominee that will hold the Secured Notes transferred to the Transferee: |
| DTC Participant Name: | DTC Participant Name: |
| DTC Participant Number: | DTC Participant Number: |

**Principal Amount of Allowed Secured Notes Claims Transferred to the Transferee:**
$_____

The undersigned certifies that: (i) I am an authorized signatory of the Transferor or Transferee, as applicable, (ii) the Transferor is a Holder of the Claims identified herein (Transferor only) and (iii) I understand that the transfer of Claims and any associated rights is subject to the conditions listed above and all the terms and conditions set forth in the Disclosure Statement, the Plan and the Rights Offering Procedures.

Date: _____, 2015

Name of Transferor: _____      Name of Transferee: _____


_____      _____
By: _____      By: _____
Name:                                     Name:
Title:                                    Title:

2

**<u>Annex C-2</u>**

**Unsecured Notes Certification Period Transfer Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                              :
In re:                                    :        Chapter 11
                                                              :
QUIKSILVER, INC., *et al.*,               :        Case No. 15-11880 (BLS)
                                                              :
                        Debtors.[1]       :        Jointly Administered
                                                              :
                                          :        **Related Docket Nos. 398, ___**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## INSTRUCTIONS TO UNSECURED NOTES CERTIFICATION PERIOD TRANSFER NOTICE

**This Certification Period Transfer Notice shall accompany your Unsecured Notes Eligibility Certificate, which must be returned so as to be actually received by the Subscription Agent no later than <u>4:00 p.m. (Eastern Time) on December 28, 2015</u>.**

You must submit this Certification Period Transfer Notice[2] if you are the transferee, subsequent to December 1, 2015 but prior to 4:00 p.m. (prevailing Eastern Time) on December 28, 2015, of Allowed Unsecured Notes Claims against the Debtors along with the corresponding Rights in respect thereof and wish to participate in either or both of the Rights Offerings. In order to exercise such Rights, you must submit this notice, executed by you and by the Transferor (as defined below), so as to be actually received by the Subscription Agent no later than the Eligibility Certificate Deadline (December 28, 2015 at 4:00 p.m. (prevailing Eastern Time)).

**For further information, please refer to the Rights Offering Procedures and**
**the Instructions to the Unsecured Notes Eligibility Certificate, available (free of charge) at**
**<u>http://www.kccllc.net/quiksilver</u> or by contacting:**

**Kurtzman Carson Consultants LLC**
**1290 Avenue of the Americas, 9th Floor**
**New York, New York 10104**
**(877) 833-4150 (toll free U.S. and Canada) // (917) 281-4800**

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

[2]    Capitalized terms used by not otherwise defined herein shall have the meaning given to such terms in the rights offering procedures (the "<u>Rights Offering Procedures</u>") attached as <u>Exhibit 2</u> to the *Order Authorizing and Approving (I) (A) Entry into a Backstop Commitment Letter and (B) Payment of Related Fees and (II) the Rights Offering Procedures and Related Forms* [Docket No. 530].

**UNSECURED NOTES CERTIFICATION PERIOD TRANSFER NOTICE**

Please take notice that, pursuant to Article II.b of the Rights Offering Procedures, the undersigned Holder (as such term is defined in the Rights Offering Procedures) of an Allowed Unsecured Notes Claim (the "Transferor") has transferred to the undersigned transferee named below (the "Transferee"), its Allowed Unsecured Notes Claim identified herein and any and all rights associated therewith, including the Rights.

The Transferor confirms and certifies that the Claims and Rights transferred to the Transferee were not offered or sold by means of any form of general solicitation or general advertising (within the meaning of Regulation D) and such transfer was made in compliance with all applicable laws.

| | |
|---|---|
| Name of Transferor: | Name of Transferee: |
| Federal Tax I.D. No.: | Federal Tax I.D. No.: |
| Street Address: | Street Address: |
| City, State, Zip Code: | City, State, Zip Code: |
| Telephone Number: | Telephone Number: |
| Fax: | Fax: |
| E-Mail: | E-Mail: |
| Bank , Broker or Other Nominee that held the Unsecured Notes transferred by the Transferor: | Bank , Broker or Other Nominee that will hold the Unsecured Notes transferred to the Transferee: |
| DTC Participant Name: | DTC Participant Name: |
| DTC Participant Number: | DTC Participant Number: |

**Principal Amount of Allowed Unsecured Notes Claims Transferred to the Transferee:**
$_____

The undersigned certifies that: (i) I am an authorized signatory of the Transferor or Transferee, as applicable, (ii) the Transferor is a Holder of the Claims identified herein (Transferor only) and (iii) I understand that the transfer of Claims and any associated rights is subject to the conditions listed above and all the terms and conditions set forth in the Disclosure Statement, the Plan and the Rights Offering Procedures.

Date: _____, 2015

Name of Transferor: _____     Name of Transferee: _____

_____     _____
By: _____     By: _____
Name:                                                        Name:
Title:                                                          Title:

2

# EXHIBIT E

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| QUIKSILVER, INC., *et al.*, | : | Case No. 15-11880 (BLS) |
|  | : |  |
| Debtors.[1] | : | Jointly Administered |
|  | : |  |
|  | : | **Related Docket Nos. 398, 530** |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### INSTRUCTIONS TO SECURED NOTES ELIGIBILITY CERTIFICATE FOR THE SECURED COMPONENT OF THE EXIT RIGHTS OFFERING AND THE EURO NOTES RIGHTS OFFERING IN CONNECTION WITH THE SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF QUIKSILVER, INC. AND ITS AFFILIATED DEBTORS AND DEBTORS IN POSSESSION

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THE SECURED NOTES ELIGIBILITY CERTIFICATE CAREFULLY BEFORE COMPLETING THE SECURED NOTES ELIGIBILITY CERTIFICATE.**

**<u>IF YOU ARE AN ELIGIBLE HOLDER</u> (INCLUDING A TRANSFEREE HOLDER) AND WISH TO PARTICIPATE IN THE RIGHTS OFFERINGS, THIS ELIGIBILITY CERTIFICATE MUST BE RETURNED TO YOUR NOMINEE IN SUFFICIENT TIME FOR YOUR NOMINEE TO SEND IT TO THE SUBSCRIPTION AGENT SO AS TO BE ACTUALLY RECEIVED BY THE SUBSCRIPTION AGENT NO LATER THAN 4:00 P.M. (PREVAILING EASTERN TIME) ON DECEMBER 28, 2015 (THE "<u>ELIGIBILITY CERTIFICATE DEADLINE</u>").**

**<u>IF YOU ARE NOT AN ELIGIBLE HOLDER</u>, DO NOT RETURN THIS FORM. YOU ARE NOT ELIGIBLE TO PARTICIPATE IN THE RIGHTS OFFERINGS CONTEMPLATED BY THE PLAN.**

---

On December 4, 2015, the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>") entered the *Order (A) Approving the Adequacy of the Debtors' Disclosure Statement, (B) Approving Solicitation and Notice Procedures with respect to Confirmation of the Debtors' Proposed Plan of Reorganization, (C) Approving the Form of*

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

FOR CUSIP 74840D AA 8 AND U7487D AA 3

*Various Ballots and Notices in Connection Therewith, and (D) Scheduling Certain Dates with Respect Thereto* [Docket No. 529] (the "Disclosure Statement Order") that, among other things, (a) approved the adequacy of the *Second Amended Disclosure Statement With Respect to the Second Amended Joint Chapter 11 Plan of Reorganization of Quiksilver, Inc. and its Affiliated Debtors and Debtors in Possession* [Docket No. 533] (as hereafter amended or modified, and including all appendices, exhibits, schedules and supplements thereto, the "Disclosure Statement") filed in support of the *Second Amended Joint Plan of Reorganization of Quiksilver, Inc. and its Affiliated Debtors and Debtors in Possession* [Docket No. 532] (as hereafter amended or modified, and including all appendices, exhibits, schedules and supplements thereto, the "Plan"), and (b) authorized the above-captioned debtors and debtors in possession (collectively, the "Debtors") to solicit acceptances or rejections of the Plan from certain holders of Impaired Claims who are (or may be) entitled to receive distributions under the Plan.

On December 4, 2015, the Bankruptcy Court entered the *Order Authorizing and Approving (I)(A) Entry into the Backstop Commitment Letter and (B) Payment of Related Fees and (II) the Rights Offering Procedures and Related Forms* [Docket No. 530] (the "Rights Offering Order") that, among other things, approved the procedures (the "Rights Offering Procedures")[2] for the conduct of, and participation in, the Rights Offerings.

The Plan, the Disclosure Statement, the Disclosure Statement Order, the Rights Offering Procedures, the Rights Offering Order, and all Rights Offering Documents[3] are or, upon filing, will be available by (i) calling the Debtors' restructuring hotline at (877) 833-4150 (toll free U.S. and Canada) or (917) 281-4800; (ii) emailing the Subscription Agent at QuiksilverInfo@kccllc.com; and/or (iii) visiting the Debtors' restructuring website at: http://www.kccllc.net/quiksilver. Parties may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER at: http://www.deb.uscourts.gov. **You are advised to read the Plan, the Disclosure Statement and the Rights Offering Documents prior to making a determination with respect to participation in the Rights Offerings.**

Eligible Holders of Allowed Secured Notes Claims, which vote in favor of the Plan and do not opt out of the releases therein, or their Eligible Affiliates are entitled to participate in the Secured Component of the Exit Rights Offering and the Euro Notes Rights Offering, as further described in the Rights Offering Procedures. A Holder of an Allowed Secured Notes Claim is an "Eligible Holder" and an affiliate thereof is an "Eligible Affiliate" if such entity is either (i) certified as an "accredited investor" as defined in Rule 501(a)(1), (2), (3), or (7) under the Securities Act, which, for the avoidance of doubt, shall exclude any natural person, or (ii) a "qualified institutional buyer" as defined in Rule 144A of the Securities Act.

---

[2]    Capitalized terms used but not otherwise defined herein are used as defined in the Plan or the Rights Offering Procedures, as applicable. The Plan and the Rights Offering Procedures can be accessed as set forth herein.

[3]    The Plan Supplement will be filed with the Court on or prior to seven (7) days before the Voting Deadline, or such later date as may be approved by the Bankruptcy Court without further notice, and will include, among other things, forms of: (a) the New Shareholders Agreement and (b) the New Corporate Governance Documents. The Debtors shall have the right to amend the documents contained in, and appended as exhibits to, the Plan Supplement through the Effective Date with the consent of the Plan Sponsor.

You have received the attached Secured Notes Eligibility Certificate because you are a Holder of an Allowed Secured Notes Claim as of the Rights Offering Record Date, or the transferee of such Allowed Claim.

Transfer of Claims: If, prior to the Eligibility Certificate Deadline, you transfer your Allowed Secured Notes Claim to an Eligible Holder, (i) such Transferee Holder may have the opportunity to participate in the Rights Offerings on account of such transferred Claim and (ii) you do not need to return this Secured Notes Eligibility Certificate in respect of such transferred Claim.  In order for a Transferee Holder to be offered Rights with respect to such Claim, (i) such Transferee Holder must submit a Secured Notes Eligibility Certificate by the Eligibility Certificate Deadline and (ii) such transfer and all preceding transfers, if any, beginning with the transfer by the Holder of such Secured Notes Claim as of the Rights Offering Record Date, must be evidenced by a Certification Period Transfer Notice delivered to the Subscription Agent prior to the Eligibility Certificate Deadline.

Holders with questions regarding transferring their Claims may contact the Subscription Agent by email at QuiksilverInfo@kccllc.com or by phone at (877) 833-4150 (toll free U.S. and Canada) or (917) 281-4800.

**To properly complete and submit this Secured Notes Eligibility Certificate:**

1.  <u>Review and confirm</u> the amount of your Allowed Secured Notes Claim set forth below in Section 1.

2.  <u>Complete</u> the Eligibility Certification in Section 2.

3.  <u>Initial</u> next to the applicable paragraph in Section 3a (Accredited Investor Certification) or 3b (Qualified Institutional Buyer Certification).

4.  <u>Return</u> the Secured Notes Eligibility Certificate to your Nominee by mail, electronic mail, or otherwise in accordance with the instructions of your Nominee <u>in sufficient time for your Nominee to complete this certificate and then return it to the Subscription Agent by the Eligibility Certificate Deadline (December 28, 2015 at 4:00 p.m. (prevailing Eastern Time))</u>.

5.  <u>Instruct your Nominee to complete</u> the Nominee Confirmation of Ownership or DTC Information, as applicable, in Section 4.

6.  <u>Instruct your Nominee to return</u> this Secured Notes Eligibility Certificate to the Subscription Agent <u>on or before the Eligibility Certificate Deadline (December 28, 2015 at 4:00 p.m. (prevailing Eastern Time))</u>.  The Secured Notes Eligibility Certificate may be submitted to the Subscription Agent by email to: <u>QuiksilverInfo@kccllc.com</u>, or by mail to:

Kurtzman Carson Consultants LLC
1290 Avenue of the Americas, 9th Floor
New York, NY  10104

7.  <u>For Transferee Holders only</u>: <u>Return</u> the Certification Period Transfer Notice to the Subscription Agent by the Eligibility Certificate Deadline.

FOR CUSIP 74840D AA 8 AND U7487D AA 3

**SECURED NOTES ELIGIBILITY CERTIFICATE FOR THE RIGHTS OFFERINGS IN CONNECTION WITH THE SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF QUIKSILVER, INC. AND ITS AFFILIATED DEBTORS AND DEBTORS IN POSSESSION**

**Section 1: Confirmation of Ownership**

Your ownership (or affiliate status with respect to such owner) of an Allowed Secured Notes Claim must be confirmed in order to be eligible to receive Rights.

**Amount of Allowed Secured Notes Claim(s)**. I certify that I am the authorized signatory of the holder of the Allowed Secured Notes Claims in the principal amount (upon stated maturity) set forth immediately below or the authorized signatory of an Eligible Affiliate of such holder. For purposes of this Eligibility Certificate, do not adjust the principal amount for any accrued or unmatured interest or any accretion factor. The Subscription Agent has taken this into account in its calculation of your allocated Rights.

$ _____

**Section 2: Eligibility Certification**

Eligible Offerees: In order to receive Rights under the Plan, the respondent must:

1. be either (i) a Qualified Institutional Buyer, or (ii) an Accredited Investor;

2. answer "Yes" to either Question 1 or Question 2 below; and

3. return this Secured Notes Eligibility Certificate to its Nominee in sufficient time for its Nominee to complete the Nominee Confirmation of Ownership and deliver to the Subscription Agent.

*Question 1.*    Is the respondent an "Accredited Investor"? ___ Yes ___ No

        If Yes, please indicate which category (*e.g.*, 1 through 4) of the definition of Accredited Investor in Item 3a the respondent falls under: _____

If the answer to this Question 1 is marked "Yes," the respondent shall skip Question 2, complete the certification below, and proceed to Section 3a. If the answer to this Question 1 is marked "No," the respondent shall proceed to Question 2.

*Question 2.*    Is the respondent a "Qualified Institutional Buyer"? ___ Yes ___ No

        If Yes, please indicate which category (*e.g.*, 1 through 14) of the definition of Qualified Institutional Buyer in Item 3b the respondent falls under: _____

If the answer to this Question 2 is marked "Yes," the respondent shall complete the certification below and proceed to Section 3b.

IN WITNESS WHEREOF, I certify that I (i) am an authorized signatory of the Holder (or the authorized signatory of the Eligible Affiliate of such holder) indicated below, (ii) executed this Secured Notes Eligibility Certificate on the date set forth below and (iii) confirm that this Secured Notes Eligibility Certificate (x) contains accurate representations with respect to the undersigned, and (y) is a certification to the Debtors and the Bankruptcy Court.

_____
Name of Entity or Holder

_____
(Signature)

By:_____
(Please Print or Type)

Title: _____
(Please Print or Type)

Address, telephone number and facsimile number:

_____

_____

_____

Certain communications during these Rights Offerings may be performed via e-mail. For that reason, you are required to provide your e-mail address below:

_____
(E-Mail Address)

## Section 3

## Item 3a. Accredited Investor Certification.

Please indicate the basis on which you would be deemed an "accredited investor" within the meaning of Rule 501(a)(1), (2), (3), or (7) of the Securities Act by initialing the appropriate line provided below:

"Accredited investor" pursuant to Regulation D promulgated under the Securities Act shall mean any person who comes within any of the following categories, or who the issuer reasonably believes comes within any of the following categories, at the time of the sale of the securities to that person:

1.      Any bank as defined in section 3(a)(2) of the Securities Act, or any savings and loan association or other institution as defined in section 3(a)(5)(A) of the Securities Act

whether in its individual or fiduciary capacity; any broker or dealer registered pursuant to section 15 of the Securities Exchange Act of 1934 (as amended from time to time, the "Exchange Act"); any insurance company as defined in section 2(13) of the Securities Act; any investment company registered under the Investment Company Act or a business development company as defined in section 2(a) (48) of that Act; any Small Business Investment Company licensed by the U.S. Small Business Administration under section 301(c) or (d) of the Small Business Investment Act of 1958, as amended; any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000; any employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974, as amended if the investment decision is made by a plan fiduciary, as defined in section 3(21) of such Act, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors; _____initials

2.    Any private business development company as defined in section 202(a)(22) of the Investment Advisers Act; _____ initials

3.    Any organization described in section 501(c)(3) of the Internal Revenue Code of 1986, as amended (the "Code"), corporation, or similar business trust, or partnership, not formed for the specific purpose of acquiring the securities offered, with total assets in excess of $5,000,000; _____ initials

4.    Any trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person as described in ss.230.506(b)(2)(ii); and _____ initials

**Item 3b. Qualified Institutional Buyer Certification.**

Please indicate the basis on which you would be deemed a "qualified institutional buyer" within the meaning of Rule 144A of the Securities Act by initialing the appropriate line provided below:

"Qualified institutional buyer" within the meaning of Rule 144A of the Securities Act means any of the following entities, acting for its own account or the accounts of other qualified institutional buyers, that in the aggregate owns and invests on a discretionary basis at least $100 million in securities of issuers that are not affiliated with the entity:

1.    Any insurance company as defined in section 2(a)(13) of the Securities Act; _____ initials

2.    Any investment company registered under the Investment Company Act or any business development company as defined in section 2(a)(48) of the Investment Company Act; _____ initials

3. Any small business investment company licensed by the U.S. Small Business Administration under section 301(c) or (d) of the Small Business Investment Act of 1958; _____ initials

4. Any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees; _____ initials

5. Any employee benefit plan within the meaning of title I of the Employee Retirement Income Security Act of 1974; _____ initials

6. Any trust fund whose trustee is a bank or trust company and whose participants are exclusively plans of the types identified in paragraph (1)(D) or (E) above, except trust funds that include as participants individual retirement accounts or H.R. 10 plans; _____ initials

7. Any business development company as defined in section 202(a)(22) of the Investment Advisers Act; _____ initials

8. Any organization described in section 501(c)(3) of the Code, corporation (other than a bank as defined in section 3(a)(2) of the Securities Act or a savings and loan association or other institution referenced in section 3(a)(5)(A) of the Securities Act or a foreign bank or savings and loan association or equivalent institution), partnership, or Massachusetts or similar business trust; and _____ initials

9. Any investment adviser registered under the Investment Advisers Act; _____ initials

10. Any dealer registered pursuant to section 15 of the Exchange Act acting for its own account or the accounts of other qualified institutional buyers, that in the aggregate owns and invests on a discretionary basis at least $10 million of securities of issuers that are not affiliated with the dealer, provided, that securities constituting the whole or a part of an unsold allotment to or subscription by a dealer as a participant in a public offering shall not be deemed to be owned by such dealer; _____ initials

11. Any dealer registered pursuant to section 15 of the Exchange Act acting in a riskless principal transaction on behalf of a qualified institutional buyer; _____ initials

12. Any investment company registered under the Investment Company Act, acting for its own account or for the accounts of other qualified institutional buyers, that is part of a family of investment companies which own in the aggregate at least $100 million in securities of issuers, other than issuers that are affiliated with the investment company or are part of such family of investment companies. "Family of investment companies" means any two or more investment companies registered under the Investment Company Act, except for a unit investment trust whose assets consist solely of shares of one or more registered investment companies, that have the same investment adviser (or, in the case of unit investment trusts, the same depositor), provided that, for purposes of this section: _____ initials

Each series of a series company (as defined in Rule 18f-2 under the Investment Company Act) shall be deemed to be a separate investment company; and

Investment companies shall be deemed to have the same adviser (or depositor) if their advisers (or depositors) are majority-owned subsidiaries of the same parent, or if one investment company's adviser (or depositor) is a majority-owned subsidiary of the other investment company's adviser (or depositor);

13. Any bank as defined in section 3(a)(2) of the Securities Act, any savings and loan association or other institution as referenced in section 3(a)(5)(A) of the Securities Act, or any foreign bank or savings and loan association or equivalent institution, acting for its own account or the accounts of other qualified institutional buyers, that in the aggregate owns and invests on a discretionary basis at least $100 million in securities of issuers that are not affiliated with it and that has an audited net worth of at least $25 million as demonstrated in its latest annual financial statements, as of a date not more than 16 months preceding the date of sale under the rule in the case of a U.S. bank or savings and loan association, and not more than 18 months preceding such date of sale for a foreign bank or savings and loan association or equivalent institution.; _____ initials

For purposes of the foregoing definition:

In determining the aggregate amount of securities owned and invested on a discretionary basis by an entity, the following instruments and interests shall be excluded: bank deposit notes and certificates of deposit; loan participations; repurchase agreements; securities owned but subject to a repurchase agreement; and currency, interest rate and commodity swaps.

The aggregate value of securities owned and invested on a discretionary basis by an entity shall be the cost of such securities, except where the entity reports its securities holdings in its financial statements on the basis of their market value, and no current information with respect to the cost of those securities has been published. In the latter event, the securities may be valued at market for purposes of the foregoing definition.

In determining the aggregate amount of securities owned by an entity and invested on a discretionary basis, securities owned by subsidiaries of the entity that are consolidated with the entity in its financial statements prepared in accordance with generally accepted accounting principles may be included if the investments of such subsidiaries are managed under the direction of the entity, except that, unless the entity is a reporting company under section 13 or 15(d) of the Exchange Act, securities owned by such subsidiaries may not be included if the entity itself is a majority-owned subsidiary that would be included in the consolidated financial statements of another enterprise.

For purposes of this section, "riskless principal transaction" means a transaction in which a dealer buys a security from any person and makes a simultaneous offsetting sale of such security to a qualified institutional buyer, including another dealer acting as riskless principal for a qualified institutional buyer.

**Section 4**

## <u>NOMINEE'S CONFIRMATION OF OWNERSHIP</u>

<u>Your ownership (or affiliate status with respect to such owner) of Secured Notes must be confirmed to participate in the Rights Offering</u>

The Nominee holding your Secured Notes as of December 1, 2015 (the "<u>Rights Offering Record Date</u>") must complete Box A on your behalf.  Box B is only required if any or all of your Secured Notes were on loan as of the Rights Offering Record Date (as determined by your Nominee).

| Box A<br>For Use Only by the Nominee | Box B<br>Nominee Proxy - Only if Needed |
|---|---|
| DTC Participant Name:<br>_____ | DTC Participant Name:<br>_____ |
| DTC Participant Number:<br>_____ | DTC Participant Number:<br>_____ |
| Principal Amount of Secured Notes (CUSIP 74840D AA 8) held by this account as of December 1, 2015:<br><br>$_____ principal amount | Principal Amount of Secured Notes (CUSIP 74840D AA 8) held on behalf of, and hereby assigned to, the Nominee listed in Box A as of December 1, 2015:<br><br>$_____  principal |
| Principal Amount of Secured Notes (CUSIP U7487D AA 3) held by this account as of December 1, 2015:<br><br>$_____ principal amount | Principal Amount of Secured Notes (CUSIP U7487D AA 3) held on behalf of, and hereby assigned to, the Nominee listed in Box A as of December 1, 2015:<br><br>$_____ principal amount |
| Medallion Guarantee:<br><br><br><br>DTC Participant Contact Name:_____ | Medallion Guarantee:<br><br><br><br>DTC Participant Contact Name:_____ |
| Contact Telephone Number:<br>_____ | Contact Telephone Number:<br>_____ |
| Contact Email Address:<br>_____ | Contact Email Address:<br>_____ |

# EXHIBIT F

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
|  |  |
|---|---|
| In re: | : Chapter 11 |
|  | : |
| QUIKSILVER, INC., *et al.*, | : Case No. 15-11880 (BLS) |
|  | : |
| Debtors.[1] | : Jointly Administered |
|  | : |
|  | : **Related Docket Nos. 398, 530** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## INSTRUCTIONS TO SECURED NOTES CERTIFICATION PERIOD TRANSFER NOTICE

**This Certification Period Transfer Notice shall accompany your Secured Notes Eligibility Certificate, which must be returned so as to be actually received by the Subscription Agent no later than <u>4:00 p.m. (prevailing Eastern Time) on December 28, 2015</u>.**

You must submit this Certification Period Transfer Notice[2] if you are the transferee, subsequent to December 1, 2015 but prior to 4:00 p.m. (prevailing Eastern Time) on December 28, 2015, of Allowed Secured Notes Claims against the Debtors along with the corresponding Rights in respect thereof and wish to participate in either or both of the Rights Offerings.  In order to exercise such Rights, you must submit this notice, executed by you and by the Transferor (as defined below), so as to be actually received by the Subscription Agent no later than the Eligibility Certificate Deadline (December 28, 2015 at 4:00 p.m. (prevailing Eastern Time)).

**For further information, please refer to the Rights Offering Procedures and
the Instructions to the Secured Notes Eligibility Certificate, available (free of charge) at
<u>http://www.kccllc.net/quiksilver</u> or by contacting:**

**Kurtzman Carson Consultants LLC
1290 Avenue of the Americas, 9th Floor
New York, New York 10104
(877) 833-4150 (toll free U.S. and Canada) // (917) 281-4800**

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), Quiksilver Wetsuits, Inc. (9599).  The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

[2] Capitalized terms used by not otherwise defined herein shall have the meaning given to such terms in the rights offering procedures (the "<u>Rights Offering Procedures</u>") attached as <u>Exhibit 2</u> to the *Order Authorizing and Approving (I) (A) Entry into a Backstop Commitment Letter and (B) Payment of Related Fees and (II) the Rights Offering Procedures and Related Forms* [Docket No. 530].

**SECURED NOTES CERTIFICATION PERIOD TRANSFER NOTICE**

Please take notice that, pursuant to <u>Article II.b</u> of the Rights Offering Procedures, the undersigned Holder (as such term is defined in the Rights Offering Procedures) of an Allowed Secured Notes Claim (the "<u>Transferor</u>") has transferred to the undersigned transferee named below (the "<u>Transferee</u>"), its Allowed Secured Notes Claim identified herein and any and all rights associated therewith, including the Rights.

The Transferor confirms and certifies that the Claims and Rights transferred to the Transferee were not offered or sold by means of any form of general solicitation or general advertising (within the meaning of Regulation D) and such transfer was made in compliance with all applicable laws.

| | |
|---|---|
| Name of Transferor: | Name of Transferee: |
| Federal Tax I.D. No.: | Federal Tax I.D. No.: |
| Street Address: | Street Address: |
| City, State, Zip Code: | City, State, Zip Code: |
| Telephone Number: | Telephone Number: |
| Fax: | Fax: |
| E-Mail: | E-Mail: |
| Bank , Broker or Other Nominee that  held the Secured Notes transferred by the Transferor: | Bank , Broker or Other Nominee that will hold the Secured Notes transferred to the Transferee: |
| DTC Participant Name: | DTC Participant Name: |
| DTC Participant Number: | DTC Participant Number: |

**Principal Amount of Allowed Secured Notes Claims Transferred to the Transferee:**
$_____

The undersigned certifies that: (i) I am an authorized signatory of the Transferor or Transferee, as applicable, (ii) the Transferor is a Holder of the Claims identified herein (Transferor only) and (iii) I understand that the transfer of Claims and any associated rights is subject to the conditions listed above and all the terms and conditions set forth in the Disclosure Statement, the Plan and the Rights Offering Procedures.

Date: _____, 2015

Name of Transferor: _____          Name of Transferee: _____


By: _____          By: _____
Name:                                        Name:
Title:                                       Title:

CUSIPS 74840D AA 8 AND U7487D AA 3

# EXHIBIT G

| NameID | CreditorName | CreditorNoticeName | Address1 | Address2 | City | State | Zip |
|--------|--------------|--------------------|----------|----------|------|-------|-----|
| BDRG | Broadridge | Receiving Dept | 51 Mercedes Way | | Edgewood | NY | 11717 |
| INVS | INVeSHARE | Corporate Actions | Attn: Receiving | 156 Fernwood Avenue | Edison | NJ | 08837-3857 |
| DTC | The Depository Trust Co | Robert Giordano | 570 Washington Blvd | | Jersey City | NJ | 07310 |

# EXHIBIT H

| NameID | CreditorName | CreditorNoticeName | Address1 | Address2 | Address3 | City | State | Zip | Country |
|--------|--------------|---------------------|----------|----------|----------|------|-------|-----|---------|
| 5008 | NBCN Inc | Louise Normandin | 1010 de la Gauchetiere St West | Mezzanine 100 | | Montreal | QC | H3B 5J2 | Canada |
| 0756 | Ameriprise | Mike Kohler | 2178 Ameriprise Financial Center | | | Minneapolis | MN | 55474 | |
| 0547 | Baird Robert W & Co Incorporated | Dean Markofski | 777 E Wisconsin Ave | | | Milwaukee | WI | 53202 | |
| 0773 | Bank of America/Merrill Lynch | Catherine Changco | 4804 Deer Lake Dr East | | | Jacksonville | FL | 32246 | |
| 0901 | BNY Mellon | Enis Suljic | 525 William Penn Pl | Rm 300 | | Pittsburgh | PA | 15259 | |
| 0010 | Brown Brothers Harriman & Co | Michael Lerman | 525 Washington Blvd | New Port Towers | | Jersey City | NJ | 07302-0000 | |
| 0164 | Charles Schwab & Co Inc | Benjamin Gibson | 2423 E Lincoln Dr | PHX PEAK 01 1B575 | | Phoenix | AZ | 85016 | |
| 0908 | Citibank NA | Sandra Hernandez | 3800 Citibank Center B3 12 | | | Tampa | FL | 33610 | |
| 0274 | Citigroup Global Markets Inc Salomon | Maneth Chap | 3800 Citibank Center B3 12 | | | Tampa | FL | 33610 | |
| 2108 | Comerica Bank | Gloria Imhoff | 411 West Lafayette | Mail Code 3530 | | Detroit | MI | 48226 | |
| 0355 | Credit Suisse Securities USA LLC | Reorg Department | 1 Madison Ave | 2nd Fl | | New York | NY | 10010 | |
| 2424 | Custodial Trust Co | Adriana Laramore | 14201 Dallas Pkwy | | | Dallas | TX | 75254 | |
| 0361 | D A Davidson & Co | Niki Garrity | PO Box 5015 | | | Great Falls | MT | 59403 | |
| 0057 | Edward D Jones & Co | Derek Adams | 12555 Manchester Rd | Corp Actions Dept | | St Louis | MO | 63131 | |
| 0385 | ETrade Clearing LLC | Matt Freifeld | 1981 Marcus Ave | Ste 100 | | Lake Success | NY | 11042 | |
| 0005 | Goldman Sachs & Co | Gloria Lio | 30 Hudson St | | | Jersey City | NJ | 07302-4699 | |
| 0124 | Ingalls & Snyder LLC | Michael Scura | 1325 Avenue of the Americas | 18th Floor | | New York | NY | 10019 | |
| 0534 | Interactive Broker Retail Equity Clearing | Ken Hayden | 2 Pickwick Plz | 2nd Fl | | Greenwich | CT | 06830-0000 | |
| 0352 | J P Morgan Clearing Corp | Proxy Dept Manager | 14201 Dallas Parkway | | | Dallas | TX | 75254 | |
| 8187 | JPM/OPERS | Darrell Watkins | 14201 Dallas Parkway | 10th Floor | | Dallas | TX | 75254-2917 | |
| 0902 | JPMorgan Chase Bank NA | Reorg Dept | 14201 Dallas Parkway | | | Dallas | TX | 75254 | |
| 5198 | Merrill Lynch Pierce Fenner & Smith | Corp Actions Notifications Jax | Corporate Action Dept | 4804 Deer Lake Drive East | 4th Fl Bldg 3 | Jacksonville | FL | 32246 | |
| 0050 | Morgan Stanley & Co Inc | Robert Cregan | One New York Plaza | 7th Fl | | New York | NY | 10004 | |
| 0015 | Morgan Stanley Smith Barney | Suzanne Mundle | Harborside Financial Center | 230 Plaza Three 6th Fl | | Jersey City | NJ | 07311 | |
| 0226 | National Financial Services | Lou Trezza | 200 Liberty St | | | New York | NY | 10281 | |
| 2669 | Northern Trust Co | Stella Castaneda | 801 S Canal St | Attn Capital Structures C1N | | Chicago | IL | 60607 | |
| 0571 | Oppenheimer & Co Inc | Oscar Mazario | 125 Broad St | 15th Fl | | New York | NY | 10004 | |
| 0338 | Optionsxpress Inc | Scott Tortorella | 311 W Monroe St | Ste 1000 | | Chicago | IL | 60606 | |
| 0443 | Pershing LLC Securities Corporation | Al Hernandez | 1 Pershing Plaza | | | Jersey City | NJ | 07399-0000 | |
| 0725 | Raymond James & Associates Inc | Tracey Goodwin | 880 Carillion Pkwy | | | St Petersburg | FL | 33733 | |
| 0235 | RBC Capital Markets Corporation | Tara Olmanson | 60 S 6th Street - P09 | | | Minneapolis | MN | 55402-4400 | |
| 0279 | Southwest Securities Inc | Virginia Allwardt | 1201 Elm St | Ste 3700 | | Dallas | TX | 75270 | |
| 0997 | State Street Bank and Trust Co | Sandra Polizio | Corp Actions JAB5E | 1776 Heritage Dr | | North Quincy | MA | 02171-0000 | |
| 0188 | TD Ameritrade Clearing Inc | Mandi Foster | PO Box 2155 | | | Omaha | NE | 68103-2155 | |
| 0954 | The Bank of New York Mellon | Beth Stiffler | 525 William Penn Pl | Rm 300 | | Pittsburgh | PA | 15259 | |
| 2510 | The Bank of New York Mellon | Sarah Hutchman | 525 William Penn Pl | Rm 300 | | Pittsburgh | PA | 15259 | |
| 0062 | Vanguard Marketing Corporation | Marc Staudenmaier | 455 Devon Park Dr | Attn Corporate Actions | Mailstop 924 | Wayne | PA | 19087-1815 | |
| 0103 | Wedbush Morgan Securities Inc | Hermon Alem | 1000 Wilshire Blvd | | | Los Angeles | CA | 90017 | |
| 2027 | Wells Fargo Bank, National Association | Kevin St. Louis | 733 Marquette Ave | MAC N9306 057 5th Fl | | Minneapolis | MN | 55402 | |

# EXHIBIT I

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In re:                                                 :        Chapter 11
:
QUIKSILVER, INC., *et al.*,                            :        Case No. 15-11880 (BLS)
:
            Debtors.[1]                                :        Jointly Administered
:
                                                       :        **Related Docket Nos. 398, 530**
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**INSTRUCTIONS TO UNSECURED NOTES ELIGIBILITY CERTIFICATE FOR THE**
**UNSECURED COMPONENT OF THE EXIT RIGHTS OFFERING IN CONNECTION**
**WITH THE SECOND AMENDED JOINT CHAPTER 11 PLAN OF**
**REORGANIZATION OF QUIKSILVER, INC. AND ITS**
**AFFILIATED DEBTORS AND DEBTORS IN POSSESSION**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR**
**COMPLETING THE UNSECURED NOTES ELIGIBILITY CERTIFICATE**
**CAREFULLY BEFORE COMPLETING THE UNSECURED NOTES ELIGIBILITY**
**CERTIFICATE.**

**IF YOU ARE AN ELIGIBLE HOLDER (INCLUDING A TRANSFEREE HOLDER) AND**
**WISH TO PARTICIPATE IN THE UNSECURED COMPONENT OF THE EXIT**
**RIGHTS OFFERING, THIS ELIGIBILITY CERTIFICATE MUST BE RETURNED TO**
**YOUR NOMINEE IN SUFFICIENT TIME FOR YOUR NOMINEE TO SEND IT TO**
**THE SUBSCRIPTION AGENT SO AS TO BE ACTUALLY RECEIVED BY THE**
**SUBSCRIPTION AGENT NO LATER THAN 4:00 P.M. (PREVAILING EASTERN**
**TIME) ON DECEMBER 28, 2015 (THE "ELIGIBILITY CERTIFICATE DEADLINE").**

**IF YOU ARE NOT AN ELIGIBLE HOLDER, DO NOT RETURN THIS FORM. YOU**
**ARE NOT ELIGIBLE TO PARTICIPATE IN THE EXIT RIGHTS OFFERING**
**CONTEMPLATED BY THE PLAN.**

---

On December 4, 2015, the United States Bankruptcy Court for the District of Delaware
(the "Bankruptcy Court") entered the *Order (A) Approving the Adequacy of the Debtors'*
*Disclosure Statement, (B) Approving Solicitation and Notice Procedures with respect to*

---

[1]   The Debtors and the last four digits of their respective taxpayer identification numbers are as follows:
Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc.
(8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505),
Quiksilver Entertainment, Inc. (9667), Quiksilver Wetsuits, Inc. (9599).  The address of the Debtors' corporate
headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

*Confirmation of the Debtors' Proposed Plan of Reorganization, (C) Approving the Form of Various Ballots and Notices in Connection Therewith, and (D) Scheduling Certain Dates with Respect Thereto* [Docket No. 529] (the "Disclosure Statement Order") that, among other things, (a) approved the adequacy of the *Second Amended Disclosure Statement With Respect to the Second Amended Joint Chapter 11 Plan of Reorganization of Quiksilver, Inc. and its Affiliated Debtors and Debtors in Possession* [Docket No. 533] (as hereafter amended or modified, and including all appendices, exhibits, schedules and supplements thereto, the "Disclosure Statement") filed in support of the *Second Amended Joint Plan of Reorganization of Quiksilver, Inc. and its Affiliated Debtors and Debtors in Possession* [Docket No. 532] (as hereafter amended or modified, and including all appendices, exhibits, schedules and supplements thereto, the "Plan"), and (b) authorized the above-captioned debtors and debtors in possession (collectively, the "Debtors") to solicit acceptances or rejections of the Plan from certain holders of Impaired Claims who are (or may be) entitled to receive distributions under the Plan.

On December 4, 2015, the Bankruptcy Court entered the *Order Authorizing and Approving (I)(A) Entry into the Backstop Commitment Letter and (B) Payment of Related Fees and (II) the Rights Offering Procedures and Related Forms* [Docket No. 530] (the "Rights Offering Order") that, among other things, approved the procedures (the "Rights Offering Procedures")[2] for the conduct of, and participation in, the Rights Offerings.

The Plan, the Disclosure Statement, the Disclosure Statement Order, the Rights Offering Procedures, the Rights Offering Order, and all Rights Offering Documents[3] are or, upon filing, will be available by (i) calling the Debtors' restructuring hotline at (877) 833-4150 (toll free U.S. and Canada) or (917) 281-4800; (ii) emailing the Subscription Agent at QuiksilverInfo@kccllc.com; and/or (iii) visiting the Debtors' restructuring website at: http://www.kccllc.net/quiksilver. Parties may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER at: http://www.deb.uscourts.gov. **You are advised to read the Plan, the Disclosure Statement and the Rights Offering Documents prior to making a determination with respect to participation in the Unsecured Component of the Exit Rights Offering.**

Eligible Holders of Allowed Unsecured Notes Claims or their Eligible Affiliates are entitled to participate in the $12.5 million Unsecured Component of the Exit Rights Offering, as further described in the Rights Offering Procedures. A Holder of an Allowed Unsecured Notes Claim is an "Eligible Holder" and an affiliate thereof is an "Eligible Affiliate" if such entity is either (i) certified as an "accredited investor" as defined in Rule 501(a)(1), (2), (3), or (7) under the Securities Act, which, for the avoidance of doubt, shall exclude any natural person, or (ii) a "qualified institutional buyer" as defined in Rule 144A of the Securities Act.

---

[2]   Capitalized terms used but not otherwise defined herein are used as defined in the Plan or the Rights Offering Procedures, as applicable. The Plan and the Rights Offering Procedures can be accessed as set forth herein.

[3]   The Plan Supplement will be filed with the Court on or prior to seven (7) days before the Voting Deadline, or such later date as may be approved by the Bankruptcy Court without further notice, and will include, among other things, forms of: (a) the New Shareholders Agreement and (b) the New Corporate Governance Documents. The Debtors shall have the right to amend the documents contained in, and appended as exhibits to, the Plan Supplement through the Effective Date with the consent of the Plan Sponsor.

CUSIP 74840D AB 6

You have received the attached Unsecured Notes Eligibility Certificate because you are a Holder of an Allowed Unsecured Notes Claim as of the Rights Offering Record Date, or the transferee of such Allowed Claim.

<u>Transfer of Claims:</u> If, prior to the Eligibility Certificate Deadline, you transfer your Allowed Unsecured Notes Claim to an Eligible Holder, (i) such Transferee Holder may have the opportunity to participate in the Unsecured Component of the Exit Rights Offering on account of such transferred Claim and (ii) you do not need to return this Unsecured Notes Eligibility Certificate in respect of such transferred Claim.  In order for a Transferee Holder to be offered Rights with respect to such Claim, (i) such Transferee Holder must submit an Unsecured Notes Eligibility Certificate by the Eligibility Certificate Deadline and (ii) such transfer and all preceding transfers, if any, beginning with the transfer by the Holder of such Unsecured Notes Claim as of the Rights Offering Record Date, must be evidenced by a Certification Period Transfer Notice delivered to the Subscription Agent prior to the Eligibility Certificate Deadline.

Holders with questions regarding transferring their Claims may contact the Subscription Agent by email at <u>QuiksilverInfo@kccllc.com</u> or by phone at (877) 833-4150 (toll free U.S. and Canada) or (917) 281-4800.

CUSIP 74840D AB 6

**To properly complete and submit this Unsecured Notes Eligibility Certificate:**

1.  <u>Review and confirm</u> the amount of your Allowed Unsecured Notes Claim set forth below in Section 1.

2.  <u>Complete</u> the Eligibility Certification in Section 2.

3.  <u>Initial</u> next to the applicable paragraph in Section 3a (Accredited Investor Certification) or 3b (Qualified Institutional Buyer Certification).

4.  <u>Return</u> the Unsecured Notes Eligibility Certificate to your Nominee by mail, electronic mail, or otherwise in accordance with the instructions of your Nominee <u>in sufficient time for your Nominee to complete this certificate and then return it to the Subscription Agent by the Eligibility Certificate Deadline (December 28, 2015 at 4:00 p.m. (prevailing Eastern Time))</u>.

5.  <u>Instruct your Nominee to complete</u> the Nominee Confirmation of Ownership or DTC Information, as applicable, in Section 4.

6.  <u>Instruct your Nominee to return</u> this Unsecured Notes Eligibility Certificate to the Subscription Agent <u>on or before the Eligibility Certificate Deadline (December 28, 2015 at 4:00 p.m. (prevailing Eastern Time))</u>.  The Unsecured Notes Eligibility Certificate may be submitted to the Subscription Agent by email to: <u>QuiksilverInfo@kccllc.com</u>, or by mail to:

Kurtzman Carson Consultants LLC
1290 Avenue of the Americas, 9th Floor
New York, NY  10104

7.  <u>For Transferee Holders only</u>: <u>Return</u> the Certification Period Transfer Notice to the Subscription Agent by the Eligibility Certificate Deadline.

4

CUSIP 74840D AB 6

**UNSECURED NOTES ELIGIBILITY CERTIFICATE FOR THE UNSECURED COMPONENT OF THE EXIT RIGHTS OFFERING IN CONNECTION WITH THE SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF QUIKSILVER, INC. AND ITS AFFILIATED DEBTORS AND DEBTORS IN POSSESSION**

**Section 1: Confirmation of Ownership**

Your ownership (or affiliate status with respect to such owner) of an Allowed Unsecured Notes Claim must be confirmed in order to be eligible to receive Rights.

**Amount of Allowed Unsecured Notes Claim(s)**. I certify that I am the authorized signatory of the holder of the Allowed Unsecured Notes Claims in the principal amount (upon stated maturity) set forth immediately below or the authorized signatory of an Eligible Affiliate of such holder.  For purposes of this Eligibility Certificate, do not adjust the principal amount for any accrued or unmatured interest or any accretion factor. The Subscription Agent has taken this into account in its calculation of your allocated Rights.

$ _____

**Section 2: Eligibility Certification**

Eligible Offerees: In order to receive Rights under the Plan, the respondent must:

1.  be either (i) a Qualified Institutional Buyer, or (ii) an Accredited Investor;

2.  answer "Yes" to either Question 1 or Question 2 below; and

3. return this Unsecured Notes Eligibility Certificate to its Nominee in sufficient time for its Nominee to complete the Nominee Confirmation of Ownership and deliver to the Subscription Agent.

*Question 1.*    Is the respondent an "Accredited Investor"? \_\_\_ Yes \_\_\_ No

> If Yes, please indicate which category (*e.g.*, 1 through 4) of the definition of Accredited Investor in Item 3a the respondent falls under:  _____

If the answer to this Question 1 is marked "Yes," the respondent shall skip Question 2, complete the certification below, and proceed to Section 3a. If the answer to this Question 1 is marked "No," the respondent shall proceed to Question 2.

*Question 2.*    Is the respondent a "Qualified Institutional Buyer"? \_\_\_ Yes \_\_\_ No

> If Yes, please indicate which category (*e.g.*, 1 through 14) of the definition of Qualified Institutional Buyer in Item 3b the respondent falls under:  _____

If the answer to this Question 2 is marked "Yes," the respondent shall complete the certification below and proceed to Section 3b.

CUSIP 74840D AB 6

IN WITNESS WHEREOF, I certify that I (i) am an authorized signatory of the Holder (or the authorized signatory of the Eligible Affiliate of such holder) indicated below, (ii) executed this Unsecured Notes Eligibility Certificate on the date set forth below and (iii) confirm that this Unsecured Notes Eligibility Certificate (x) contains accurate representations with respect to the undersigned, and (y) is a certification to the Debtors and the Bankruptcy Court.

_____
Name of Entity or Holder

_____
(Signature)

By:_____
(Please Print or Type)

Title: _____
(Please Print or Type)

Address, telephone number and facsimile number:

_____

_____

_____

Certain communications during the Exit Rights Offering may be performed via e-mail. For that reason, you are required to provide your e-mail address below:

_____
(E-Mail Address)

**Section 3**

**Item 3a. Accredited Investor Certification.**

Please indicate the basis on which you would be deemed an "accredited investor" within the meaning of Rule 501(a)(1), (2), (3), or (7) of the Securities Act by initialing the appropriate line provided below:

"Accredited investor" pursuant to Regulation D promulgated under the Securities Act shall mean any person who comes within any of the following categories, or who the issuer reasonably believes comes within any of the following categories, at the time of the sale of the securities to that person:

CUSIP 74840D AB 6

1.   Any bank as defined in section 3(a)(2) of the Securities Act, or any savings and loan association or other institution as defined in section 3(a)(5)(A) of the Securities Act whether in its individual or fiduciary capacity; any broker or dealer registered pursuant to section 15 of the Securities Exchange Act of 1934 (as amended from time to time, the "Exchange Act"); any insurance company as defined in section 2(13) of the Securities Act; any investment company registered under the Investment Company Act or a business development company as defined in section 2(a) (48) of that Act; any Small Business Investment Company licensed by the U.S. Small Business Administration under section 301(c) or (d) of the Small Business Investment Act of 1958, as amended; any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000; any employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974, as amended if the investment decision is made by a plan fiduciary, as defined in section 3(21) of such Act, which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors; _____initials

2.   Any private business development company as defined in section 202(a)(22) of the Investment Advisers Act; _____ initials

3.   Any organization described in section 501(c)(3) of the Internal Revenue Code of 1986, as amended (the "Code"), corporation, or similar business trust, or partnership, not formed for the specific purpose of acquiring the securities offered, with total assets in excess of $5,000,000; _____ initials

4.   Any trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person as described in ss.230.506(b)(2)(ii); and _____ initials

**Item 3b. Qualified Institutional Buyer Certification.**

Please indicate the basis on which you would be deemed a "qualified institutional buyer" within the meaning of Rule 144A of the Securities Act by initialing the appropriate line provided below:

"Qualified institutional buyer" within the meaning of Rule 144A of the Securities Act means any of the following entities, acting for its own account or the accounts of other qualified institutional buyers, that in the aggregate owns and invests on a discretionary basis at least $100 million in securities of issuers that are not affiliated with the entity:

1.   Any insurance company as defined in section 2(a)(13) of the Securities Act; _____ initials

2.   Any investment company registered under the Investment Company Act or any business development company as defined in section 2(a)(48) of the Investment Company Act; _____ initials

CUSIP 74840D AB 6

3.  Any small business investment company licensed by the U.S. Small Business Administration under section 301(c) or (d) of the Small Business Investment Act of 1958; _____ initials

4.  Any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees; _____ initials

5.  Any employee benefit plan within the meaning of title I of the Employee Retirement Income Security Act of 1974; _____ initials

6.  Any trust fund whose trustee is a bank or trust company and whose participants are exclusively plans of the types identified in paragraph (1)(D) or (E) above, except trust funds that include as participants individual retirement accounts or H.R. 10 plans; _____ initials

7.  Any business development company as defined in section 202(a)(22) of the Investment Advisers Act; _____ initials

8.  Any organization described in section 501(c)(3) of the Code, corporation (other than a bank as defined in section 3(a)(2) of the Securities Act or a savings and loan association or other institution referenced in section 3(a)(5)(A) of the Securities Act or a foreign bank or savings and loan association or equivalent institution), partnership, or Massachusetts or similar business trust; and _____ initials

9.  Any investment adviser registered under the Investment Advisers Act; _____ initials

10. Any dealer registered pursuant to section 15 of the Exchange Act acting for its own account or the accounts of other qualified institutional buyers, that in the aggregate owns and invests on a discretionary basis at least $10 million of securities of issuers that are not affiliated with the dealer, provided, that securities constituting the whole or a part of an unsold allotment to or subscription by a dealer as a participant in a public offering shall not be deemed to be owned by such dealer; _____ initials

11. Any dealer registered pursuant to section 15 of the Exchange Act acting in a riskless principal transaction on behalf of a qualified institutional buyer; _____ initials

12. Any investment company registered under the Investment Company Act, acting for its own account or for the accounts of other qualified institutional buyers, that is part of a family of investment companies which own in the aggregate at least $100 million in securities of issuers, other than issuers that are affiliated with the investment company or are part of such family of investment companies. "Family of investment companies" means any two or more investment companies registered under the Investment Company Act, except for a unit investment trust whose assets consist solely of shares of one or more registered investment companies, that have the same investment adviser (or, in the case of unit investment trusts, the same depositor), provided that, for purposes of this section: _____ initials

Each series of a series company (as defined in Rule 18f-2 under the Investment Company Act) shall be deemed to be a separate investment company; and

Investment companies shall be deemed to have the same adviser (or depositor) if their advisers (or depositors) are majority-owned subsidiaries of the same parent, or if one investment company's adviser (or depositor) is a majority-owned subsidiary of the other investment company's adviser (or depositor);

13. Any bank as defined in section 3(a)(2) of the Securities Act, any savings and loan association or other institution as referenced in section 3(a)(5)(A) of the Securities Act, or any foreign bank or savings and loan association or equivalent institution, acting for its own account or the accounts of other qualified institutional buyers, that in the aggregate owns and invests on a discretionary basis at least $100 million in securities of issuers that are not affiliated with it and that has an audited net worth of at least $25 million as demonstrated in its latest annual financial statements, as of a date not more than 16 months preceding the date of sale under the rule in the case of a U.S. bank or savings and loan association, and not more than 18 months preceding such date of sale for a foreign bank or savings and loan association or equivalent institution.; _____ initials

For purposes of the foregoing definition:

In determining the aggregate amount of securities owned and invested on a discretionary basis by an entity, the following instruments and interests shall be excluded: bank deposit notes and certificates of deposit; loan participations; repurchase agreements; securities owned but subject to a repurchase agreement; and currency, interest rate and commodity swaps.

The aggregate value of securities owned and invested on a discretionary basis by an entity shall be the cost of such securities, except where the entity reports its securities holdings in its financial statements on the basis of their market value, and no current information with respect to the cost of those securities has been published. In the latter event, the securities may be valued at market for purposes of the foregoing definition.

In determining the aggregate amount of securities owned by an entity and invested on a discretionary basis, securities owned by subsidiaries of the entity that are consolidated with the entity in its financial statements prepared in accordance with generally accepted accounting principles may be included if the investments of such subsidiaries are managed under the direction of the entity, except that, unless the entity is a reporting company under section 13 or 15(d) of the Exchange Act, securities owned by such subsidiaries may not be included if the entity itself is a majority-owned subsidiary that would be included in the consolidated financial statements of another enterprise.

For purposes of this section, "riskless principal transaction" means a transaction in which a dealer buys a security from any person and makes a simultaneous offsetting sale of such security to a qualified institutional buyer, including another dealer acting as riskless principal for a qualified institutional buyer.

CUSIP 74840D AB 6

**Section 4**

## <u>NOMINEE'S CONFIRMATION OF OWNERSHIP</u>

<u>Your ownership (or affiliate status with respect to such owner) of Unsecured Notes must be confirmed to participate in the Rights Offering</u>

The Nominee holding your Unsecured Notes as of December 1, 2015 (the "<u>Rights Offering Record Date</u>") must complete Box A on your behalf.  Box B is only required if any or all of your Unsecured Notes were on loan as of the Rights Offering Record Date (as determined by your Nominee).

| **Box A** <br> **For Use Only by the Nominee** | **Box B** <br> **Nominee Proxy - Only if Needed** |
|---|---|
| DTC Participant Name: <br> _____ <br><br> DTC Participant Number: <br> _____ <br><br> Principal Amount of Unsecured Notes (CUSIP 74840D AB 6) held by this account as of December 1, 2015: <br><br> $_____ principal amount <br><br><br> Medallion Guarantee: <br><br><br><br><br><br><br><br> DTC Participant Contact Name:_____ <br><br> Contact Telephone Number: <br> _____ <br><br> Contact Email Address: <br> _____ | DTC Participant Name: <br> _____ <br><br> DTC Participant Number: <br> _____ <br><br> Principal Amount of Unsecured Notes (CUSIP 74840D AB 6) held on behalf of, and hereby assigned to, the Nominee listed in Box A as of December 1, 2015: <br><br> $_____  principal <br><br><br> Medallion Guarantee: <br><br><br><br><br><br><br><br> DTC Participant Contact Name:_____ <br><br> Contact Telephone Number: <br> _____ <br><br> Contact Email Address: <br> _____ |

CUSIP 74840D AB 6

# EXHIBIT J

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| QUIKSILVER, INC., *et al.*, | : | Case No. 15-11880 (BLS) |
|  | : |  |
| Debtors.[1] | : | Jointly Administered |
|  | : |  |
|  | : | **Related Docket Nos. 398, 530** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## INSTRUCTIONS TO UNSECURED NOTES CERTIFICATION PERIOD TRANSFER NOTICE

**This Certification Period Transfer Notice shall accompany your Unsecured Notes Eligibility Certificate, which must be returned so as to be actually received by the Subscription Agent no later than <u>4:00 p.m. (Eastern Time) on December 28, 2015</u>.**

You must submit this Certification Period Transfer Notice[2] if you are the transferee, subsequent to December 1, 2015 but prior to 4:00 p.m. (prevailing Eastern Time) on December 28, 2015, of Allowed Unsecured Notes Claims against the Debtors along with the corresponding Rights in respect thereof and wish to participate in either or both of the Rights Offerings. In order to exercise such Rights, you must submit this notice, executed by you and by the Transferor (as defined below), so as to be actually received by the Subscription Agent no later than the Eligibility Certificate Deadline (December 28, 2015 at 4:00 p.m. (prevailing Eastern Time)).

**For further information, please refer to the Rights Offering Procedures and the Instructions to the Unsecured Notes Eligibility Certificate, available (free of charge) at <u>http://www.kccllc.net/quiksilver</u> or by contacting:**

**Kurtzman Carson Consultants LLC
1290 Avenue of the Americas, 9th Floor
New York, New York 10104
(877) 833-4150 (toll free U.S. and Canada) // (917) 281-4800**

---

[1]  The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

[2]  Capitalized terms used by not otherwise defined herein shall have the meaning given to such terms in the rights offering procedures (the "Rights Offering Procedures") attached as Exhibit 2 to the *Order Authorizing and Approving (I) (A) Entry into a Backstop Commitment Letter and (B) Payment of Related Fees and (II) the Rights Offering Procedures and Related Forms* [Docket No. 530].

## UNSECURED NOTES CERTIFICATION PERIOD TRANSFER NOTICE

Please take notice that, pursuant to Article II.b of the Rights Offering Procedures, the undersigned Holder (as such term is defined in the Rights Offering Procedures) of an Allowed Unsecured Notes Claim (the "Transferor") has transferred to the undersigned transferee named below (the "Transferee"), its Allowed Unsecured Notes Claim identified herein and any and all rights associated therewith, including the Rights.

The Transferor confirms and certifies that the Claims and Rights transferred to the Transferee were not offered or sold by means of any form of general solicitation or general advertising (within the meaning of Regulation D) and such transfer was made in compliance with all applicable laws.

| | |
|---|---|
| Name of Transferor: | Name of Transferee: |
| Federal Tax I.D. No.: | Federal Tax I.D. No.: |
| Street Address: | Street Address: |
| City, State, Zip Code: | City, State, Zip Code: |
| Telephone Number: | Telephone Number: |
| Fax: | Fax: |
| E-Mail: | E-Mail: |
| Bank , Broker or Other Nominee that held the Unsecured Notes transferred by the Transferor: | Bank , Broker or Other Nominee that will hold the Unsecured Notes transferred to the Transferee: |
| DTC Participant Name: | DTC Participant Name: |
| DTC Participant Number: | DTC Participant Number: |

**Principal Amount of Allowed Unsecured Notes Claims Transferred to the Transferee:**
$_____

The undersigned certifies that: (i) I am an authorized signatory of the Transferor or Transferee, as applicable, (ii) the Transferor is a Holder of the Claims identified herein (Transferor only) and (iii) I understand that the transfer of Claims and any associated rights is subject to the conditions listed above and all the terms and conditions set forth in the Disclosure Statement, the Plan and the Rights Offering Procedures.

Date: _____, 2015

Name of Transferor: _____          Name of Transferee: _____


By: _____          By: _____
Name:                                         Name:
Title:                                        Title: