## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| In re: | :   Chapter 11 |
|  | : |
| QUIKSILVER, INC., *et al.*, | :   Case No. 15-11880 (BLS) |
|  | : |
|  | :   Jointly Administered |
| Debtors.[1] | : |
|  | :   **Hrg. Date: Jan. 13, 2015 at 11:30 a.m. (Eastern)** |
|  | :   **Obj. Due: Jan. 6, 2015 at 4:00 p.m. (Eastern)** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEBTORS' APPLICATION FOR ENTRY OF ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 327(a) AND 328(a), BANKRUPTCY RULES 2014 AND 2016, AND LOCAL BANKRUPTCY RULES 2014-1 AND 2016-2 AUTHORIZING EMPLOYMENT AND RETENTION OF KPMG LLP AS THEIR ACCOUNTING AND INTERNAL AUDIT ADVISORS, *NUNC PRO TUNC* TO THE PETITION DATE**

Quiksilver, Inc. ("ZQK") and certain of its affiliates, the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors" and, together with their non-Debtor affiliates, "Quiksilver" or the "Company") hereby apply (the "Application") to the Court for entry of an order, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-2 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), authorizing the Debtors to retain and employ KPMG LLP ("KPMG") as their accounting and internal audit advisors, *nunc pro tunc* to the Petition Date (as defined below), in accordance with the terms and conditions set forth in the Engagement Letters (as defined below). In support of this Application, the Debtors rely upon and incorporate by reference the Declaration of Pierre Kahn

---

[1]  The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

in Support of the Application (the "Kahn Declaration"), attached hereto as Exhibit A.  In further

support of the Application, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Application under 28 U.S.C. §§

157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and

this Application in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are sections 327(a)

and 328(a) of the Bankruptcy Code.  The relief is further warranted under Bankruptcy Rules

2014(a) and 2016, as well as Local Bankruptcy Rules 2014-1 and 2016-2.

3.      Pursuant to Local Bankruptcy Rule 9013-1(f), the Debtors consent to the

entry of a final judgment or order with respect to this Application if it is determined that this

Court would lack Article III jurisdiction to enter such final order or judgment absent the consent

of the parties.

## BACKGROUND

4.      On September 9, 2015 (the "Petition Date"), the Debtors each commenced

a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the

"Chapter 11 Cases").  These Chapter 11 Cases are jointly administered.

5.      The Debtors continue to operate their businesses and manage their

properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.

6.      On September 22, 2015, the Office of the United States Trustee for the

District of Delaware (the "United States Trustee") appointed an official committee of unsecured

creditors (the "Creditors' Committee").  On September 28, 2015, the United States Trustee filed

an Amended Notice of Appointment of Creditors' Committee.  No trustee or examiner has been appointed in the Debtors' Chapter 11 Cases.

7.     Quiksilver is one of the world's leading outdoor sports lifestyle companies.   The Company designs, develops and distributes branded apparel, footwear, accessories and related products.   The Company began operations in 1976 making boardshorts for surfers in the United States under a license agreement with the *Quiksilver* brand founders in Australia.  Today, the Company's business is rooted in the strong heritage and authenticity of its core brands, *Quiksilver*, *Roxy*, and *DC*, each of which caters to the casual, outdoor lifestyle associated with surfing, skateboarding, snowboarding, BMX, and motocross, among other activities.  The Company's products are sold in over 115 countries through a wide range of distribution points, including wholesale accounts (surf shops, skate shops, snow shops, sporting goods stores, discount centers, specialty stores, select department stores, and licensed stores), Company-owned retail stores, and its e-commerce websites.  The Debtors comprise each of the Company's U.S. entities, including parent, ZQK, as well as QS Wholesale, Inc., QS Retail, Inc., DC Shoes, Inc. and seven inactive entities.

8.     Additional factual background information regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to these Chapter 11 Cases, is set forth in detail in the Declaration of Andrew Bruenjes, Americas Chief Financial Officer of Quiksilver, Inc., in Support of Chapter 11 Petitions and First Day Pleadings [Docket No. 20].

**RELIEF REQUESTED**

9.     By this Application, the Debtors seek entry of an order, pursuant to Bankruptcy Code sections 327(a) and 328(a), Bankruptcy Rules 2014(a) and 2016, and Local

Bankruptcy Rules 2014-1 and 2016-2, authorizing the Debtors to employ and retain KPMG as their accounting and internal audit advisor, *nunc pro tunc* to the Petition Date, on the terms and conditions set forth in the Engagement Letters (defined below).

## KPMG'S QUALIFICATIONS

10.     KPMG is an independent public accounting firm with offices across the United States.  KPMG has a wealth of experience in acting as internal auditor and accounting advisor and has performed such services in large and complex chapter 11 cases on behalf of debtors throughout the United States, including in numerous large chapter 11 cases in this District.

11.     Additionally, since 2012, KPMG has provided the Debtors certain of the Services (as defined below) contemplated under the Engagement Letters.  In providing such prepetition professional services to the Debtors, KPMG has become familiar with the Debtors and their business, including the Debtors' books, records, financial information and other data maintained by the Debtors.  Therefore, in the course of performing the Services, KPMG has developed relevant experience and knowledge regarding the Debtors that will assist it in continuing to provide the Services (as defined below) to the Debtors.  Accordingly, KPMG is well-qualified and able to serve as the Debtors' accounting and  internal audit advisor, pursuant to the terms of the Engagement Letters and this Application, in a cost-effective and efficient manner.

## SERVICES TO BE PROVIDED

12.     On April 27, 2015, ZQK executed an engagement letter with KPMG (the "April 27 Letter"), and on November 19, 2015, ZQK executed an addendum to the April 27 Letter (together with the April 27 Letter, the "Internal Audit Engagement Letter," attached hereto

as <u>Exhibit B</u>), which together memorialize the internal audit engagement.  On November 10, 2015, ZQK executed an engagement letter with KPMG (the "<u>Accounting Advisory Engagement Letter</u>," attached hereto as <u>Exhibit C</u>, and together with the Internal Audit Engagement Letter, the "<u>Engagement Letters</u>") memorializing the accounting engagement.

        13.     As set forth more fully in the Engagement Letters and  the Kahn Declaration, KPMG has provided and will continue to provide the following services (the "<u>Services</u>"):[2]

**Accounting Advisory Services:**

     (a)     Assistance with planning an approach, consideration of alternatives, research, analysis, implementation and documentation related to accounting and report the emergence from chapter 11 and related bankruptcy transactions;

     (b)     Assistance in the preparation of the financial statements and footnotes;

     (c)     Assistance with the preparation of whitepapers that document the Debtors' conclusions on accounting issues, key assumptions, methodologies and outcomes;

     (d)     Assistance with ZQK's assessment of historical accounting for stock compensation expenses, particularly as it relates to historical forfeiture assumptions;

     (e)     Assistance with the assembly and documentation of support to facilitate the financial statement audit effort;

     (f)     Identification of differences between book and tax balances and determination of deferred tax assets and liabilities that arise from the reorganization;

---

[2]    Any summary of the terms of the Engagement Letters contained herein is provided for convenience purposes only.  In the event of any inconsistency between the summary of Services as set forth herein and the Engagement Letters, the Engagement Letters shall control.

(g)    Assistance with the push down of valuation results and plan effects into ZQK's sub-ledgers, books, and records (parts (a) – (g), collectively, the "Accounting Advisory Services");

**Internal Audit Services:**

(a)    Testing of the Debtors' Information Technology General Controls ("ITGC") for roll-forward and year-end in the United States and Russia, including documentation planning assistance, indirect entity-level control documentation assistance, and direct entity and transaction level control documentation assistance;

(b)    Assistance with performing tests of the design and operating effectiveness of the Debtors' Internal Control over Financial Reporting  ("ICOFR");

(c)    Assistance to the Debtors' personnel in a loan staff capacity in supporting its ICOFR services (the "Loan Staff Services") (parts (a) – (c), collectively, the "Internal Audit Services"); and

14.    In addition to the foregoing, KPMG will provide such other consulting, advice, research, planning, and analysis regarding accounting advisory and internal audit services as may be necessary, desirable, or requested from time to time.[3]

15.    Finally, prior to the Petition Date KPMG provided certain data-hosting services on behalf of the Debtors, which were terminated shortly after the filing of these bankruptcy cases (the "Data Hosting Services").  The Debtors do not seek authorization for KPMG to continue to provide the Data Hosting Services.

---

[3]    Although, by this Application, the Debtors are seeking to retain KPMG to provide such other consulting, advice, research, planning, analysis regarding accounting advisory services as may be necessary, desirable or requested from time to time, internal KPMG procedures require that KPMG enter into additional engagement letters for additional work under certain circumstances.  To the extent the Debtors request additional services not covered by the Engagement Letters, KPMG and the Debtors may enter into additional engagement letters, as is necessary, and file, for disclosure purposes, such additional engagement letters with the Court.  Unless required by the Court, the Debtors and KPMG do not intend to seek separate retention orders with regard to any additional engagement letters.  Instead, any additional engagement letters will be filed with the Court and served on the applicable notice parties, absent any objections filed within fourteen (14) days after the filing and service of such supplemental declarations or affidavits, KPMG's employment shall continue as authorized pursuant to the proposed order.

16.     The Services contemplated under the Engagement Letters are necessary to enable the Debtors to properly fulfill their duties as debtors in possession.  To date, KPMG has committed significant effort and resources toward providing such Services for the Debtors. Accordingly, the Debtors believe that KPMG has the necessary background to effectively and efficiently serve as the accounting and internal audit advisor for the Debtors in these Chapter 11 Cases.  In light of the foregoing, the Debtors have requested that KPMG perform the Services set forth in the Engagement Letters, subject to the Court's approval of this Application, and KPMG has stated its desire, willingness, and ability to act as the Debtors' accounting and internal audit advisor in these Chapter 11 Cases.

## EFFORTS TO AVOID DUPLICATION OF SERVICES

17.     The Debtors believe that the services KPMG will provide to the Debtors will be complementary, rather than duplicative, of the services to be performed by other professionals in these Chapter 11 Cases.  Deloitte Tax LLP ("Deloitte Tax") will be serving as tax advisors to the Debtors; in contrast, KPMG's tax work conducted as part of the Accounting Advisory Services will be limited to assisting the Debtors in identifying differences between book and tax balances and determination of  deferred tax assets and liabilities that arise from the reorganization – a task that Deloitte Tax will not be performing. Deloitte & Touche LLP ("Deloitte & Touche")  will be serving as independent auditors to the Debtors. In contrast, KPMG's audit work will be limited to its Internal Audit Services. By definition, these functions will not, and cannot, overlap. The Debtors will coordinate with KPMG and the Debtors' other professionals, including Deloitte,  to minimize unnecessary duplication of efforts among the Debtors' professionals.

## PROFESSIONAL COMPENSATION

18.     KPMG's decision to accept this engagement to advise and assist the Debtors is conditioned upon its ability to be retained in accordance with the terms of the Engagement Letters and compensated for its services and reimbursed for the out-of-pocket expenses it incurs also in accordance with the terms thereof.

19.     KPMG's requested compensation for professional services rendered to the Debtors will be based upon the hours actually expended by each assigned staff member at each staff member's hourly billing rate.  In the normal course of KPMG's business, the hourly rates are subject to periodic increase.  To the extent such hourly rates are increased, KPMG requests that, with respect to the work to be performed after such increase, the rates listed below be amended to reflect the increase.  The Debtors have agreed to compensate KPMG for professional services rendered at its normal and customary hourly rates, subject to the reductions discussed below.

20.     Subject to the Court's approval, KPMG  will charge its normal and customary hourly rates, subject to the reductions reflected below. The majority of fees to be charged for Accounting Advisory Services reflect a reduction of approximately 30% - 40% from KPMG's normal and customary rates, depending on the types of services to be rendered.[4] The Accounting Advisory Services will be billed at the hourly rates set forth below:

---

[4]     If in connection with any subsequent engagement letters, KPMG is retained to perform additional services at different rates, such rates will be disclosed in connection with the relevant engagement letters.  As stated above, KPMG and the Debtors do not intend to seek separate retention orders with regard to any such engagement letters.

| Personnel Classification | Discounted Hourly Rate |
|---|---|
| Partners | $710 |
| Managing Directors | $600 |
| Directors/Senior Managers | $560 |
| Managers | $460 |
| Senior Associates | $350 |
| Associates | $295 |

21.     The majority of fees to be charged for Internal Audit Services reflect a reduction of approximately 50%-60% from KPMG's normal and customary rates, depending on the types of services to be rendered. For Loan Staff Services, KPMG will provide the Debtors with a senior associate to be billed at the senior associate rate noted below; for all other services, the hourly rates for Internal Audit Services will be billed at the hourly rates set forth below:

| Personnel Classification | Discounted Hourly Rate |
|---|---|
| Partners | $365 |
| Directors | $350 |
| Managers | $290 |
| Senior Associates | $250 |
| Associates | $150 |
| Para-professionals | $100 |

22.     In addition, the fee to be charged for Russia personnel in supporting the Debtors' ICOFR services will be billed at a senior associate rate of $200/hour.

23.     KPMG estimates that its fees for the Internal Audit Services through January of 2016 will be approximately $366,000.

24.     In addition to any fees payable by the Debtors to KPMG, the Debtors have agreed to reimburse KPMG for its reasonable and necessary engagement-related expenses, including meals, lodging, travel, photocopying, third-party database fees, VAT charge by member firm used to assist KPMG with ICOFR services, delivery, service, postage, vendor charges, and other out-of-pocket expenses incurred in providing the Services.  Such expenses will be included in the total amount billed but shall be billed separately on KPMG's invoices.

25.     Finally, although the Debtor and KPMG do not believe the Data Hosting Services were professional services that require court approval, out of an excess of caution, KPMG will include in its first fee application the amount of $7,448.70, representing the postpetition costs incurred in connection with maintaining and terminating this service.

26.     KPMG intends to apply to the Court for allowance of compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases, subject to the Court's approval and in accordance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules, United States Trustee Guidelines, and any other applicable procedures and orders of this Court.  KPMG recognizes and has agreed to accept as compensation such sums as may be allowed by the Court and understands that interim and final fee awards are subject to approval by the Court.

27.     The Debtors believe that the compensation structure described above and set forth in the Engagement Letters is consistent with the compensation generally charged by accounting and internal audit advisors of similar stature to KPMG for comparable engagements, both in and out of bankruptcy.  Furthermore, the Debtors believe that the

compensation structure is consistent with KPMG's normal and customary billing practices for cases of comparable size and complexity requiring the level and scope of services to be provided in these Chapter 11 Cases.

### KPMG'S DISINTERESTEDNESS

28.     In connection with the proposed retention by the Debtors in these Chapter 11 Cases, KPMG received a list of potential parties in interest (the "Potential Parties-In-Interest") from the Debtors.  KPMG has reviewed the Potential Parties-In-Interest, and, as more fully described in the Kahn Declaration, undertook a search to determine whether KPMG or some of its affiliates have any connection or relationship with the Debtors or their affiliates, subsidiaries, directors or officers, or any of the Debtors' significant creditors, customers, equity security holders, professionals, or other significant parties in interest. KPMG's review consisted of queries of an internal computer database containing names of individuals and entities that are present or recent and former clients of KPMG in order to identify potential relationships.[5]  This database includes engagement activity or potential engagement activity from May 2, 2005 forward.

29.     To the best of the Debtors' knowledge, information, and belief, and except to the extent disclosed herein and in the Kahn Declaration, including Schedule 2 thereto, KPMG (i) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code (as

---

[5]    As set forth in the Kahn Declaration, KPMG is the United States member firm of KPMG International, a Swiss cooperative of independent member firms.  While KPMG is a separate and distinct legal entity from all other member firms of KPMG International, in an attempt to identify conflicts among or between KPMG International member firms, KPMG International has a global conflict internal computer database related to the engagement activity or potential engagement activity of a majority of such member firms since May 2, 2005 that allows KPMG International member firms to identify potential conflicts between other KPMG International member firms.  Financial information pertaining to engagement activity is the proprietary and confidential information of each individual member firm and KPMG does not have any legal right to access, or if accessed, disclose, such information relating to other KPMG International member firms.

modified by section 1107(b) of the Bankruptcy Code), (ii) is not a creditor, an equity security holder, or an insider of the Debtors, (iii) is not and was not, within two years before the Petition Date, a director, officer, or employee of the Debtors, and (iv) does not hold or represent any interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors or for any other reason.  The Debtors' knowledge, information, and belief regarding the matters set forth herein are based, and made in reliance, upon the Kahn Declaration.

30.     Given the large number of parties in interest in these Chapter 11 Cases, and despite KPMG's effort to identify and disclose its relationships with any such parties in interest, KPMG is unable to state with certainty that every client relationship or other connection has been disclosed in the Kahn Declaration and Schedule 2 thereto.  If any new material facts or relationships are discovered or arise, KPMG shall promptly file a supplemental declaration, as required by Local Bankruptcy Rule 2014-1(a).

31.     With respect to the prepetition services provided by KPMG, the Debtors have paid KPMG approximately $277,177.50, including a retainer in the amount of $50,000, in the ninety (90) days prior to the Petition Date.  As of the Petition Date, $0 of the retainer amount remained.  As of the Petition Date, approximately $82,852  was outstanding with respect to invoices issued by KPMG to the Debtors prior to the Petition Date.  KPMG has agreed to waive amounts owed for professional services rendered prior to the Petition Date, contingent upon approval of the Application.

32.     From time to time, KPMG may use the services of certain professionals from the other member firms of the KPMG network of independent firms and firms and entities

12

controlled by, or under common control with, one or more such member firms (collectively,

"KPMG Parties") when necessary to the performance of its professional duties and services to

the Debtors.  The use of such professionals allows KPMG to maximize resources and minimize

costs to the Debtors' estates.  KPMG will pay such KPMG Parties directly for the use of such

professionals, and will include such amounts in its fee application at KPMG cost without any

mark-up or increase.[6]  In addition, from time to time, KPMG may use independent contractors,

such as software providers.  However, KPMG will not profit from the use of such persons.

33.     Except as set forth in paragraphs 18 and 19 in the Kahn Declaration, (a) no

commitments have been made or received by KPMG with respect to compensation or payment in

connection with these cases other than in accordance with the provisions of the Bankruptcy

Code; and (b) there is no agreement or understanding between KPMG and any other entity, other

than a member, partner or regular associate of KPMG, for the sharing of compensation received

or to be received for services rendered in connection with these proceedings.

34.     Except as described herein, in the Kahn Declaration, and in the

Engagement Letters, no commitments have been made or received by KPMG as to compensation

or payment in connection with these Chapter 11 Cases.

## DISPUTE RESOLUTION PROCEDURES

35.     By this Application, the Debtors seek approval of the dispute resolution

procedures set forth in paragraph 14 of the Standard Terms and Conditions for Advisory and Tax

Services, attached to each of the Engagement Letters.  The Debtors respectfully submit that such

dispute resolution procedures are appropriate and reasonable for internal auditor engagements of

---

[6]     Prior to the Petition Date, through a KPMG International member firm agreement, KPMG utilized the services of KPMG (Russia) in support of KPMG's internal audit services for the Debtors.  KPMG intends to continue to work with KPMG (Russia) to assist in the performance of such internal audit services.

this nature.  Indeed, similar dispute resolution procedures have been approved in this district.

See, e.g., In re Energy Future Holdings Corp., et al., Case No. 14-10979 (CSS) (Bankr. D. Del.

Sept. 16, 2014).

**REQUEST FOR APPROVAL OF KPMG'S RETENTION**
***NUNC PRO TUNC* AS OF THE PETITION DATE**

36.     Additionally, by this Application, the Debtors request approval of the

retention and employment of KPMG *nunc pro tunc* to the Petition Date.  Such relief is warranted

by the extraordinary circumstances presented by these cases.  The Third Circuit has identified

"time pressure to begin service" and absence of prejudice as factors favoring *nunc pro tunc*

retention.  See Matter of Arkansas Co., 798 F.2d 645, 650 (3d Cir. 1986); see also In re Indian

River Homes, Inc., 108 B.R. 46, 52 (D. Del. 1989).  Here, KPMG originally intended to perform

services as an ordinary course professional but the Debtors and KPMG ultimately determined

that the scope and magnitude of the Services warranted a separate retention.  Moreover, the

Engagement Agreements were the subject of intensive arms' length negotiation and were not

finalized until mid-November, although KPMG provided the Services prior to execution of the

Engagement Letters.  Moreover, the complexity, intense activity, and speed that have

characterized these Chapter 11 Cases has necessitated that KPMG focus its immediate attention

on time-sensitive matters and promptly devote substantial resources to the affairs of the Debtors

pending submission and approval of this Application.  In light of the foregoing, retention *nunc*

*pro tunc* to the Petition Date is warranted.

**BASIS FOR RELIEF**

37.     The Debtors seek approval of the retention and employment of KPMG as

their accounting and internal audit advisor pursuant to sections 327(a) and 328(a) of the

Bankruptcy Code.  Section 327(a) of the Bankruptcy Code provides that the debtor in possession

"may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist" the debtor in possession in carrying out its duties.  11 U.S.C. § 327(a).

38.     The Debtors seek approval of the Engagement Letters, including the compensation structure contemplated therein and the dispute resolution provisions, pursuant to section 328(a) of the Bankruptcy Code.  Section 328(a) of the Bankruptcy Code provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis" subject to later re-evaluation by the Court.  11 U.S.C. § 328(a).

39.     Moreover, Bankruptcy Rule 2014 requires that an application for retention include "specific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee."  Fed. R. Bankr. P. 2014.  This Application, the Kahn Declaration, and the Engagement Letters set forth the information required under Bankruptcy Rule 2014.

40.     The Debtors respectfully submit that they should be authorized to retain and employ KPMG in accordance with the terms and conditions of the Engagement Letters.  As discussed above and in the Kahn Declaration, KPMG satisfies the disinterestedness standard in

section 327(a) of the Bankruptcy Code.  Furthermore, the Debtors believe that the Services fulfill

an important need that is not provided by any of the Debtors' other professionals, including

Deloitte.  Moreover, during the course of its lengthy engagement, KPMG has worked closely

with the Debtors' management in performing the Services for the Debtors.  In so doing,

KPMG has become familiar with the Debtors and their business and has developed relevant

experience and knowledge of the Debtors' books, records, financial information and other data

maintained by the Debtors.  Accordingly, the Debtors believe that KPMG is well-qualified to

provide the Services to the Debtors in a cost-effective, efficient, and timely manner.

       41.     The terms and conditions of the Engagement Letters were negotiated by

the Debtors and KPMG at arm's-length and in good faith.  Furthermore, the Debtors believe that

the compensation structure set forth in the Engagement Letters appropriately reflect the nature

and scope of services to be provided by KPMG, its significant experience providing the

Services thus far, prior to and during these Chapter 11 Cases, and the fee and expense

structure typically utilized by KPMG and other leading independent public accounting firms

for engagements of a similar nature.  The Debtors further submit that the dispute resolution

procedures are appropriate and reasonable for internal auditor engagements.  In light of the

foregoing, the Debtors believe that the terms and conditions of the Engagement Letters are fair,

reasonable, and market-based under the standards set forth in section 328(a) of the Bankruptcy

Code.

       42.     The Debtors submit that the employment and retention of KPMG, *nunc*

*pro tunc* to the Petition Date and on the terms and conditions set forth herein and in the

Engagement Letters, is in the best interest of the Debtors, their estates, creditors, stakeholders

and other parties in interest, and therefore, should be approved.

**NOTICE**

43.     Notice of this Application will be given to: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the agent for the Debtors' postpetition secured loan facilities; (c) counsel to the agent for the Debtors' prepetition revolving loan facility; (d) the agent for the Debtors' prepetition senior secured notes; (e) the agent for the Debtors' prepetition senior unsecured notes; (f) counsel to the Creditors' Committee; and (g) all parties entitled to notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**NO PREVIOUS REQUEST**

44.     No previous request for the relief sought herein has been made by the Debtors to this Court or any other court.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto, granting the relief requested in this Application and such other and further relief as may be just and proper.

Dated:    December 23, 2015
          Huntington Beach, California

QUIKSILVER, INC.

(on behalf of itself and the other Debtors)

By:    */s/ Andrew Breunjes*
Name: Andrew Bruenjes
Title:   Americas Chief Financial Officer