# **EXHIBIT C**

**Accounting Advisory Engagement Letter**



KPMG LLP
Suite 1500
550 South Hope Street
Los Angeles, CA 90071-2629

Telephone  +1 213 972 4000
Fax        +1 213 622 1217
Internet   www.us.kpmg.com

November 10, 2015

**PRIVATE & CONFIDENTIAL**

Laurie Blanton
VP, Financial Reporting
Quiksilver, Inc.
15202 Graham Street
Huntington Beach, CA 92649

Dear Laurie:

We appreciate the opportunity for KPMG LLP ("KPMG") to assist Quiksilver, Inc. ("Quiksilver", the "Company", or "you") in addressing various accounting, financial reporting, and tax accounting needs arising from your anticipated emergence from Chapter 11. This letter, which serves as our engagement letter, and the attached Standard Terms and Conditions for Advisory and Tax Services (the "ST&C"), set forth the terms of our engagement. Our engagement is subject to completion of our normal engagement acceptance process and execution of this engagement letter.

<u>Scope</u>

KPMG's professional services will support management in addressing various technical accounting and reporting, data management and tax accounting services for the Company's Chapter 11 bankruptcy in accordance with the United States Bankruptcy Code. KPMG will, at all times, work under the direction of management and provide services as requested. To the extent those services requested are not included in the scope below, we will discuss these with the Company and consider issuing an addendum to this engagement letter to reflect the expansion of the initial scope.

**Accounting advisory, financial reporting and tax support**

We will assist management with planning an approach, consideration of alternatives, research, analysis, implementation and documentation related to accounting and reporting the emergence from Chapter 11 and related bankruptcy transactions. We will assist in the preparation of the financial statements and footnotes. As part of our services, we will provide support to management in the following areas:

- Assistance with the preparation of whitepapers that document the Company's conclusions on accounting issues, key assumptions, methodologies and outcomes;

- Assistance with your assessment of historical accounting for stock compensation expenses, particularly as it relates to historical forfeiture assumptions;

KPMG LLP is a Delaware limited liability partnership, the U.S. member firm of KPMG International Cooperative ("KPMG International"), a Swiss entity.



Laurie Blanton
Quiksilver, Inc.
November 10, 2015
Page 2

- Assistance with the assembly and documentation of support to facilitate the financial statement audit effort;

- Identification of differences between book and tax balances and determination of deferred tax assets and liabilities that arise from the reorganization; and

- Assistance with the push down of valuation results and plan effects into the Company's sub-ledgers, books and records.

Our advice will generally be communicated to you via oral discussions, and, at your direction, supplemented by written materials to document/clarify salient matters and/or the results of our research. You acknowledge that your financial statements are your responsibility in conjunction with your external auditors.

Professional standards

KPMG will perform their services under the Statements on Standards for Consulting Services issued by the American Institute of Certified Public Accountants. The sufficiency of the procedures is solely the responsibility of the specified users of our advice and/or discussion documents. Consequently, KPMG makes no representation regarding the sufficiency of the procedures either for the purpose for which our advice and/or discussion documents is being prepared or for any other purpose.

The scope of our services involved in providing accounting and financial advisory services to management does not satisfy the requirements of an audit in accordance with generally accepted auditing standards, or a review in accordance with Statements on Standards for Accounting and Review Services issued by the American Institute of Certified Public Accountants. Accordingly, we will not express an opinion or any other form of assurance on any of your financial statements.

During this engagement KPMG assumes no responsibility for auditing information provided by the Company or its advisors or for expressing an opinion, on any part, of the Company's financial statements, or for management's analysis or decision-making with respect to accounting positions taken, related financial statement disclosures or balance sheet accounts.

Except as otherwise set forth in the Engagement Letter, in accepting this engagement, Company acknowledges that completion of this engagement or acceptance of deliverables resulting from this engagement will not constitute a basis for Company's assessment or evaluation of internal control over financial reporting and disclosure controls and procedures, or its compliance with its principal officer certification requirements under Section 302 of the Sarbanes-Oxley Act of 2002 (the "Act"). This engagement shall not be construed to support Company's responsibilities under Section 404 of the Act requiring each annual report filed under Section 13(a) or 15(d) of the Securities Exchange Act of 1934 to contain an internal control report from management.



Laurie Blanton
Quiksilver, Inc.
November 10, 2015
Page 3

### Accounting Advisory Deliverables

KPMG will work as part of a collaborative team that will include Quiksilver personnel. The output from this collaborative team will be considered an internal Quiksilver work product for which management will take full responsibility. The collaboratively developed work product may be distributed as management determines to be appropriate for its needs. However, such work product will not be prepared on KPMG letterhead or contain the KPMG logo or other references to KPMG. The work product may be prepared by KPMG on Quiksilver letterhead or contain the Quiksilver logo, if so instructed by the project sponsor. KPMG may attach a transmittal letter to each work product, or provide a periodic transmittal letter referring to the work product that has been provided previously. Neither this KPMG transmittal letter, nor a copy thereof, should accompany any work product shared outside the Company. Should the Company attach its own transmittal letter when such collaboratively developed work product is shared externally, such transmittal letter may not indicate that the work product was prepared by KPMG or that the findings were based on input or test work provided by KPMG.

In addition, we will provide the Company with status updates as reasonably requested, in a format acceptable to and agreed upon by KPMG and Quiksilver.

### Timing and Professional Fees

Our professional fees are based upon the skill level of the professionals providing the services and the amount of time and materials required to complete the engagement. Our fees and expenses are not contingent upon the final results, nor do we guarantee any result or resolution in the above referenced matter. The following table represents our hourly rates by level for this engagement.

| Professional | Advisory Hourly Rate |
| --- | --- |
| Partner | $710 |
| Managing Director | $600 |
| Director/Senior Manager | $560 |
| Manager | $460 |
| Senior Associate | $350 |
| Associate | $295 |

Billing will only include actual time spent and reasonable, documented expenses incurred in performing the work. In addition to professional fees, KPMG will be reimbursed for out-of-pocket expenses. Throughout the engagement, we will submit frequent invoices (weekly or semi-monthly) at the Company's discretion for fees and expenses incurred in accordance with the Agreement, with payment due within thirty (30) days of receipt.

KPMG acknowledges that the Bankruptcy Court must approve its fees in order to be compensated. In that regard, KPMG intends to file applications with the Court for allowance of compensation and reimbursement of expenses in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local



Laurie Blanton
Quiksilver, Inc.
November 10, 2015
Page 4

Bankruptcy Rules, and any order of the Bankruptcy Court establishing procedures for monthly compensation and reimbursement of expenses for professionals. The Company acknowledges that professional time required to prepare detailed applications in accordance with the Bankruptcy Code, applicable rules and guidelines differs from KPMG's normal billing procedures and, as a result, requires significant effort by KPMG to comply therewith. As a result, the Company agrees that, subject to Bankruptcy Court approval, KPMG shall be reimbursed for such professional time incurred.

### Management's Roles & Responsibilities

While KPMG will make every attempt to gather the required data and coordinate data-gathering efforts, management is ultimately responsible for providing the necessary financial and tax information to KPMG. Quiksilver's management is also responsible for establishing and supporting its income statement and balance sheet accounts and financial statement disclosures and maintaining adequate internal controls and procedures necessary to prepare such information. In addition, Quiksilver will:

a) Provide KPMG, on a timely basis, all information, documentation and materials relating to Quiksilver's operations necessary for KPMG to perform the services described in this letter;

b) Establish that all information provided to KPMG is materially accurate and complete, and is updated on a timely basis. KPMG will not be held responsible for Quiksilver information that has not been rendered in accordance with the provisions of paragraphs (a) and (b); and

Provide KPMG with reasonable access to all employees and personnel necessary to assist in performing the services described in this letter and cooperate with KPMG in arranging meetings as appropriate.

### Terms and Conditions

All services performed under the Engagement Letter will be subject to the attached Standard Terms and Conditions for Advisory and Tax Services dated October 1, 2011 and the Accounting Advice Standards and Tax Advice Standards (collectively, the "Standard Terms and Conditions").

All oral and written communications by KPMG to you with respect to this engagement, including drafts and those communications occurring prior to the execution of this engagement letter (collectively, "Reports"), will be subject to the terms and conditions of this engagement letter and the Standard Terms and Conditions.

### Reporting

Should you request written or oral advice on the application of accounting principles to transactions involving facts and circumstances specific to the Company or its related parties that will be included in any set of financial statements subject to external audit by an auditor other than KPMG, we will evaluate your request. If we are able to accept such a request, our advice will be provided subject to the terms and professional standards described in Appendix 2.



Laurie Blanton
Quiksilver, Inc.
November 10, 2015
Page 5

You have advised, and we acknowledge, that we are not being asked to prepare report(s), written or oral, on the application of accounting principles to specified transactions, either completed or proposed, nor on the type of opinion that may be rendered on the financial statements of other third parties. Additionally, you acknowledge the decision on the ultimate application of the accounting standards to third-party financial statements is the responsibility of third-party management in conjunction with their external auditors.

**Other matters**

The report provided under this engagement letter is not intended to be used, and cannot be used, in connection with any federal or state tax matter unless, in advance of such use, you request such use in writing and we agree to such use.

**Additional Engagement Letter Information**

Several appendices are attached to this engagement letter:

- Appendix I contains the Standard Terms and Conditions for Advisory and Tax Services (STCs) and the Limiting Assumptions Addendum to the STCs that are made part of this engagement letter.

- Appendix II includes KPMG's Accounting Advice Standards

**Tax Advice Standards**

We do not anticipate that the written tax advice provided under this engagement letter will rise to the level of a Covered Opinion as defined in §10.35 of Circular 230 ("Covered Opinion"). Therefore, all the written tax advice provided under this engagement letter will contain the following legend:

> ANY TAX ADVICE IN THIS COMMUNICATION IS NOT INTENDED OR WRITTEN BY KPMG TO BE USED, AND CANNOT BE USED, BY A CLIENT OR ANY OTHER PERSON OR ENTITY FOR THE PURPOSE OF (i) AVOIDING PENALTIES THAT MAY BE IMPOSED ON ANY TAXPAYER OR (ii) PROMOTING, MARKETING OR RECOMMENDING TO ANOTHER PARTY ANY MATTERS ADDRESSED HEREIN.

However, if our services will rise to the level of a Covered Opinion, we will issue a separate engagement letter. We will also issue separate engagement letters for discrete tax services such as tax compliance, tax examination assistance, tax private letter ruling requests or tax opinion letters on completed or proposed transactions.

If KPMG is considered to be a tax return preparer under Treasury Regulation §301.7701-15, we will apply elevated standards in providing tax advice. Under these standards, we must be able to determine that any return position on which we advise is "more likely than not" to be upheld (i.e., has a greater than 50 percent likelihood of success if challenged by the IRS) if the position does not involve a



Laurie Blanton
Quiksilver, Inc.
November 10, 2015
Page 6

transaction designated by the IRS as a "listed transaction" within the meaning of Treas. Reg. §1.6011-4, or a transaction with the principal purpose of avoiding or evading any tax imposed by the Internal Revenue Code (a "principal purpose transaction"). If the advice relates to a "principal purpose transaction", we must arrive at a "should" confidence level (i.e., approximately a 70 percent or greater likelihood of success if challenged by the IRS) with respect to the position. In determining whether a position satisfies the "more likely than not" and "should" standards, we will not take into account the possibility that a tax return will not be audited, that an issue will not be raised on audit, or that an issue will be settled. We will inform you as soon as possible if, during our analysis, we determine circumstances exist that prevent us from advising you under these standards.

**Confirmation**

If the terms described herein are acceptable to you, please sign where indicated below and email a signed full copy of this engagement letter to pkahn@kpmg.com. Please contact me at 213-955-8569 with any questions or comments.

Very truly yours,

KPMG LLP

Pierre Kahn, *Partner*



Laurie Blanton
Quiksilver, Inc.
November 10, 2015
Page 7

ACCEPTED:

Quiksilver, Inc.

*Laurie Blanton*
Authorized Signature

VP Financial Reporting
Title

11-12-15
Date



Appendix I

**KPMG LLP Standard Terms and Conditions for Advisory and Tax Services with Valuation Services**
**Limiting Assumptions Addendum to Standard Terms and Conditions for Advisory and Tax Services**

# KPMG LLP
## Standard Terms and Conditions for Advisory and Tax Services

1. **Services; Client Responsibilities.**

   (a) References herein to Client shall refer to the addressee of the Proposal or Engagement Letter to which these Standard Terms and Conditions are attached or incorporated (the "Engagement Letter") and references herein to KPMG shall refer to KPMG LLP, a Delaware registered limited liability partnership and the United States member firm of the KPMG network of independent firms (the "KPMG Network"). Client, its parent company and their affiliates, and their respective directors, officers, employees, and agents are collectively referred to herein as the "Client Parties." KPMG, the other member firms of the KPMG Network and firms and entities controlled by, or under common control with, one or more such member firms (collectively, the "Member Firms"), and their affiliates, and their respective partners, principals, employees, and agents are collectively referred to herein as the "KPMG Parties."

   (b) It is understood and agreed that KPMG's services may include advice and recommendations; but all decisions in connection with the implementation of such advice and recommendations shall be the responsibility of, and made by, Client. KPMG will not perform management functions or make management decisions for Client.

   (c) If KPMG audits the financial statements of Client or provides any other attestation services to Client, the rules of the American Institute of Certified Public Accountants ("AICPA") require Client to agree to the following provisions of this Paragraph 1(c). In connection with KPMG's provision of services under the Engagement Letter, Client agrees that Client, and not KPMG, shall perform the following functions: (i) make all management decisions and perform all management functions; (ii) designate an individual who possesses suitable skill, knowledge and experience, preferably within senior management, to oversee such services, and to evaluate the adequacy and results of such services; (iii) accept responsibility for the results of such services; and (iv) establish and maintain internal controls over the processes with which such services are concerned, including monitoring on-going activities.

   (d) Subsequent to the completion of this engagement, KPMG will not update its advice, recommendations or work product for changes or modifications to the law and regulations, or to the judicial and administrative interpretations thereof, or for subsequent events or transactions, unless Client separately engages KPMG to do so in writing after such changes or modifications, interpretations, events or transactions.

2. **Tax on Services.** All fees, charges and other amounts payable to KPMG under the Engagement Letter do not include any sales, use, excise, value added or other applicable taxes, tariffs or duties, payment of which shall be Client's sole responsibility, excluding any applicable taxes based on KPMG's net income or taxes arising from the employment or independent contractor relationship between KPMG and its personnel.

3. **Termination.** Either party may terminate the Engagement Letter at any time by giving written notice to the other party not less than 30 calendar days before the effective date of termination.

4. **Ownership and Use of Deliverables.**

   (a) KPMG has created, acquired, owns or otherwise has rights in, and may, in connection with the performance of services under the Engagement Letter, use, provide, modify, create, acquire or otherwise obtain rights in, (i) concepts, ideas, methods, methodologies, procedures, processes, know-how, techniques, models, templates and software and (ii) the general elements of style, design, art work and graphics and content of general applicability included in KPMG's Deliverables (as defined below) or work product not specific to Client or the services under the engagement letter (collectively, the "KPMG Property"). KPMG retains all ownership and use rights in the KPMG Property. Client shall acquire no rights or interest in the KPMG Property, except as expressly provided in the next paragraph. KPMG acknowledges that KPMG Property shall not include any of Client's confidential information or tangible or intangible property, and KPMG shall have no ownership rights in such property.

   (b) Except for KPMG Property, and upon full and final payment to KPMG under the Engagement Letter, the tangible items specified as deliverables or work product in the Engagement Letter including any intellectual property rights appurtenant thereto (the "Deliverables") will become the property of Client. If any KPMG Property is contained in any of the Deliverables, KPMG hereby grants Client a royalty-free, paid-up, non-exclusive, perpetual license to use such KPMG Property in connection with Client's use of the Deliverables. Client acknowledges and agrees that KPMG shall have the right to retain for its files copies of each of the Deliverables, subject to the provisions of Paragraph 11 below.

   (c) Client acknowledges and agrees that any advice, recommendations, information, Deliverables or other work product provided to Client by KPMG in connection with the services under the Engagement Letter is intended for Client's sole benefit and KPMG does not authorize any other party to rely upon such advice, recommendations, information, Deliverables or other work product and any such reliance shall be at such party's sole risk. Client agrees that if it makes such advice, recommendations, information or work product available to any third party other than as expressly permitted by the Engagement Letter the provisions of Paragraph 8(b) shall apply unless Client provides the written notice to the third party in substantially the form of Appendix A hereto (the "Notice"), which Notice shall be acknowledged in writing by such third party and returned to Client. Upon request, Client shall provide KPMG with a copy of the foregoing Notice and acknowledgement and any notice and acknowledgement sent to Client by such third party as contemplated by the Notice. Client may only make a Deliverable bearing the "KPMG" name or logo available to a third party in its entirety. Notwithstanding the foregoing, (i) in the event of a disclosure made by Client that is required by law, that is made to a regulatory authority having jurisdiction over Client or that is made pursuant to Paragraph 18(a) below, no acknowledgement of the Notice shall be required and (ii) no Notice or acknowledgement shall be required with respect to disclosures expressly authorized by the Engagement Letter.

**KPMG LLP**
**Standard Terms and Conditions for Advisory and Tax Services**

5. **Warranties.** KPMG's services under the Engagement Letter are subject to and will be performed in accordance with AICPA and other professional standards applicable to the services provided by KPMG under the Engagement Letter and in accordance with the terms thereof. KPMG disclaims all other warranties, either express or implied.

6. **Limitation on Damages.** Except for the respective indemnification obligations of Client and KPMG set forth herein, the liability of the Client Parties and the KPMG Parties to one another, on account of any actions, damages, claims, liabilities, costs, expenses or losses in any way arising out of or relating to the services performed under the Engagement Letter shall be limited to the amount of fees paid or owing to KPMG under the Engagement Letter. In no event shall any of the Client Parties or any of the KPMG Parties be liable for consequential, special, indirect, incidental, punitive or exemplary damages, costs, expenses, or losses (including, without limitation, lost profits and opportunity costs). For avoidance of doubt, any damages awarded against any of the Client Parties or the KPMG Parties based on a third party claim subject to indemnification hereunder shall not be subject to the disclaimer in the previous sentence. The provisions of this Paragraph shall apply regardless of the form of action, damage, claim, liability, cost, expense, or loss asserted, whether in contract, statute, tort (including but not limited to negligence) or otherwise.

7. **Infringement.**

(a) KPMG hereby agrees to indemnify, hold harmless and defend the Client Parties from and against any and all claims, liabilities, losses, expenses (including reasonable attorneys' fees), fines, penalties, taxes or damages (collectively "Liabilities") asserted by a third party against any of the Client Parties to the extent such Liabilities result from the infringement by the Deliverables (including any KPMG Property contained therein) of such third party's patents issued as of the date of the Engagement Letter, trade secrets, trademarks or copyrights. The preceding indemnification shall not apply to any infringement to the extent arising out of (i) use of the Deliverables other than in accordance with applicable documentation or instructions supplied by KPMG or other than for Client's internal business purposes; (ii) any alteration, modification or revision of the Deliverables not expressly agreed to in writing by KPMG; or (iii) the combination of the Deliverables with materials not supplied or approved by KPMG.

(b) In case any of the Deliverables (including any KPMG Property contained therein) or any portion thereof is held, or in KPMG's reasonable opinion is likely to be held, to constitute infringement, KPMG may, within a reasonable time, at its option either: (i) secure for Client the right to continue the use of such infringing item; or (ii) replace, at KPMG's sole expense, such item with a substantially equivalent non-infringing item or modify such item so that it becomes non-infringing. In the event KPMG is, in its reasonable discretion, unable to perform either of the options described in clauses (i) or (ii) above, Client shall return the allegedly infringing item to KPMG, and KPMG's sole liability shall be to refund to Client the amount paid to KPMG for such item; provided that the foregoing shall not be construed to limit KPMG's indemnification obligation set forth in Paragraph 7(a) above.

(c) The provisions of this Paragraph 7 state KPMG's entire liability and Client's sole and exclusive remedy with respect to any infringement or claim of infringement.

8. **Indemnification.**

(a) KPMG agrees to indemnify, hold harmless and defend the Client Parties from and against any and all Liabilities for physical injury to, or illness or death of, any person regardless of status, and damage to or destruction of any tangible property, which any of the Client Parties may sustain or incur, to the extent such Liabilities result from the negligence or willful misconduct of the KPMG Parties. Client agrees to indemnify, hold harmless and defend the KPMG Parties from and against any and all Liabilities for physical injury to, or illness or death of, any person regardless of status, and damage to or destruction of any tangible property, which any of the KPMG Parties may sustain or incur, to the extent such Liabilities result from the negligence or willful misconduct of the Client Parties.

(b) In accordance with Paragraph 4(c), Client agrees to indemnify, defend and hold harmless the KPMG Parties from and against any and all Liabilities incurred or suffered by or asserted against any of the KPMG Parties in connection with a third party claim to the extent resulting from such party's reliance upon KPMG's advice, recommendations, information, Deliverables or other work product as a result of Client's disclosure of such advice, recommendations, information or work product without adhering to the notice requirements of Paragraph 4(c) above. The foregoing indemnification obligation shall apply regardless of whether the third party claim alleges a breach of contract, violation of statute or tort (including without limitation negligence) by KPMG.

(c) The party entitled to indemnification (the "Indemnified Party") shall promptly notify the party obligated to provide such indemnification (the "Indemnifying Party") of any claim for which the Indemnified Party seeks indemnification. The Indemnifying Party shall have the right to conduct the defense or settlement of any such claim at the Indemnifying Party's sole expense, and the Indemnified Party shall cooperate with the Indemnifying Party. The party not conducting the defense shall nonetheless have the right to participate in such defense at its own expense. The Indemnified Party shall have the right to approve the settlement of any claim that imposes any liability or obligation other than the payment of money damages for which the Indemnifying Party has accepted responsibility.

9. **Cooperation; Use of Information.**

(a) Client agrees to cooperate with KPMG in the performance of the services under the Engagement Letter and shall provide or arrange to provide KPMG with timely access to and use of the personnel, facilities, equipment, data and information necessary for KPMG to perform the services under the Engagement Letter. The Engagement Letter may set forth additional details regarding KPMG's access to and use of personnel, facilities, equipment, data and information.

(b) The Engagement Letter may set forth additional obligations of Client in connection with the services under the Engagement

# KPMG LLP
## Standard Terms and Conditions for Advisory and Tax Services

Letter necessary for KPMG to perform its obligations under the Engagement Letter. Client acknowledges that its failure to satisfy these obligations could adversely affect KPMG's ability to provide the services under the Engagement Letter.

(c) Client acknowledges and agrees that KPMG will, in performing the services under the Engagement Letter, base its conclusions on the facts and assumptions that Client furnishes and that KPMG may use data, material, and other information furnished by or at the request or direction of Client without any independent investigation or verification and that KPMG shall be entitled to rely upon the accuracy and completeness of such data, material and other information. Inaccuracy or incompleteness of such data, material and other information furnished to KPMG could have a material adverse effect on KPMG's conclusions.

10. **Independent Contractor.** It is understood and agreed that each of the parties hereto is an independent contractor and that neither party is or shall be considered an agent, distributor or representative of the other. Neither party shall act or represent itself, directly or by implication, as an agent of the other or in any manner assume or create any obligation on behalf of, or in the name of, the other.

11. **Confidentiality.**

(a) "Confidential Information" means all documents, software, reports, data, records, forms and other materials obtained by one party (the "Receiving Party") from the other party (the "Disclosing Party") or at the request or direction of the Disclosing Party in the course of performing the services under the Engagement Letter: (i) that have been marked as confidential; (ii) whose confidential nature has been made known by the Disclosing Party to the Receiving Party; or (iii) that due to their character and nature, a reasonable person under like circumstances would treat as confidential. Notwithstanding the foregoing, Confidential Information does not include information which: (1) is already known to the Receiving Party at the time of disclosure by the Disclosing Party; (2) is or becomes publicly known through no wrongful act of the Receiving Party; (3) is independently developed by the Receiving Party without benefit of the Disclosing Party's Confidential Information; (4) relates to information provided by KPMG relating to the tax treatment or tax structure of any transaction; (5) the Receiving Party determines is required to be maintained or disclosed by the Receiving Party under sections 6011, 6111 or 6112 of the Internal Revenue Code ("IRC") or the regulations thereunder or under any similar or analogous provisions of the laws of a state or other jurisdiction; or (6) is received by the Receiving Party from a third party without restriction and without a breach of an obligation of confidentiality.

(b) The Receiving Party will deliver to the Disclosing Party or destroy all Confidential Information of the Disclosing Party and all copies thereof when the Disclosing Party requests the same, except for copies retained in work paper files or records, anything that may be stored in back up media or other electronic data storage systems, latent data and metadata. Except as otherwise set forth in this Paragraph 11 or Paragraph 15 below, the Receiving Party shall not disclose to any person, firm or entity any Confidential Information of the Disclosing Party without the Disclosing Party's express, prior written permission; provided,

however, that notwithstanding the foregoing, the Receiving Party may disclose Confidential Information to the extent that it is required or necessary to be disclosed pursuant to a statutory or regulatory provision or court or administrative order, or, subject to appropriate conditions of confidentiality, to fulfill professional obligations and standards (including quality and peer review) or to submit and process an insurance claim.

(c) The KPMG Parties may aggregate Client information with information from other sources in connection with thought leadership projects, to improve the delivery of services to clients and to allow clients to evaluate various business transactions and opportunities. The KPMG Parties will only use this information without attribution to Client and under circumstances where Client will not be identified as the source of the information.

(d) KPMG may also use Client information and information relating to the services rendered under the Engagement Letter for the purpose of permitting the KPMG Parties to access and share knowledge and information solely among the KPMG Parties. The KPMG Parties receiving this information will be obligated to comply with confidentiality obligations with respect to such information in accordance with this Paragraph 11.

(e) Each party shall exercise the same level of care to protect the other's information as it exercises to protect its own confidential information but in no event less than reasonable care, except to the extent that applicable law or professional standards impose a higher requirement.

(f) If the Receiving Party receives a subpoena or other validly issued administrative or judicial demand requiring it to disclose the Disclosing Party's Confidential Information, the Receiving Party shall, unless prohibited by law, provide prompt written notice to the Disclosing Party of such demand in order to permit it to seek a protective order. So long as the Receiving Party gives notice as provided herein, the Receiving Party shall be entitled to comply with such demand to the extent required by law, subject to any protective order or the like that may have been entered in the matter. In the event the Receiving Party is requested to testify or produce its documents relating to the services under the Engagement Letter pursuant to subpoena or other legal process in judicial or administrative proceedings to which it is not a party, or in connection with an informal inquiry or investigation with the consent of the Disclosing Party, the Disclosing Party shall reimburse the Receiving Party for its time and expenses, including reasonable attorney's fees, incurred in responding to such requests.

12. **Assignment.** Subject to Paragraph 15 below, neither party may assign, transfer or delegate any of its rights or obligations without the prior written consent of the other party, such consent not to be unreasonably withheld.

13. **Governing Law; Severability.** The Engagement Letter and these Standard Terms and Conditions shall be governed by and construed in accordance with the laws of the State of New York, without regard to its conflict of laws provisions. In the event that any term or provision of the Engagement Letter or these terms shall be held to be invalid, void or unenforceable, then the remainder of the Engagement Letter and these terms shall not be

## KPMG LLP
## Standard Terms and Conditions for Advisory and Tax Services

affected, and each such term and provision shall be valid and enforceable to the fullest extent permitted by law.

14. **Alternative Dispute Resolution.**

(a) Any dispute or claim arising out of or relating to the Engagement Letter between the parties or the services provided thereunder shall be submitted first to non-binding mediation (unless either party elects to forego mediation by initiating a written request for arbitration) and if mediation is not successful within 90 days after the issuance by one of the parties of a request for mediation then to binding arbitration in accordance with the Rules for Non-Administered Arbitration of the International Institute for Conflict Prevention and Resolution (the "IICPR"). Any issue concerning the extent to which any dispute is subject to arbitration, or any dispute concerning the applicability, interpretation, or enforceability of these dispute resolution procedures, including any contention that all or part of these procedures is invalid or unenforceable, shall be governed by the Federal Arbitration Act and resolved by the arbitrators. By operation of this provision, the parties agree to forego litigation over such disputes in any court of competent jurisdiction.

(b) Mediation, if selected, may take place at a location to be designated by the parties using the Mediation Procedures of the IICPR, with the exception of paragraph 2 (Selecting the Mediator).

(c) Arbitration shall take place in New York, New York. The arbitration panel shall have no power to award non-monetary or equitable relief of any sort except as provided in IICPR Rule 13 (Interim Measures of Protection). Damages that are inconsistent with any applicable agreement between the parties, that are punitive in nature, or that are not measured by the prevailing party's actual damages shall be unavailable in arbitration or any other forum. In no event, even if any other portion of these provisions is held to be invalid or unenforceable, shall the arbitration panel have power to make an award or impose a remedy that could not be made or imposed by a court deciding the matter in the same jurisdiction.

(d) Either party may seek to enforce any written agreement reached by the parties during mediation, or to confirm and enforce any final award entered in arbitration, in any court of competent jurisdiction.

(e) Notwithstanding the agreement to such procedures, either party may seek equitable relief to enforce its rights in any court of competent jurisdiction.

15 **Use of Member Firms and Third Party Service Providers.**

(a) Client acknowledges and agrees that the services under the Engagement Letter, including any applicable tax advice, may be performed by a Member Firm located outside of the United States. Client understands that each Member Firm is a separate, distinct and independent legal entity and is not a partner, principal, agent or affiliate of KPMG and KPMG is not a partner, principal, agent or affiliate of any other Member Firm.

(b) Client further acknowledges that in connection with the performance of services under the Engagement Letter, KPMG and Member Firms, in their discretion or at Client's direction, may utilize the services of third party service providers within and without the United States to complete the services under the Engagement Letter.

(c) KPMG uses third party service providers within and without the United States to provide at KPMG's direction administrative and clerical services to KPMG. These third party service providers may in the performance of such services have limited access to information, including but not limited to Confidential Information, received by KPMG from or at the request or direction of Client. KPMG represents to Client that each such third party service provider has agreed to conditions of confidentiality with respect to Client's information to the same or similar extent as KPMG has agreed to pursuant to Paragraph 11 above. KPMG has full responsibility to cause these third party service providers to comply with such conditions of confidentiality and KPMG shall be responsible for any consequences of their failure to comply.

(d) Accordingly, Client consents to KPMG's disclosure to a Member Firm or third party service provider and the use by such Member Firm and third party service provider of data and information, including but not limited to Confidential Information, received from or at the request or direction of Client for the purposes set forth in Paragraph 11 and this Paragraph 15.

(e) Any services performed by a Member Firm or third party service provider shall be performed in accordance with the terms of the Engagement Letter and these Standard Terms and Conditions, including Paragraph 11 (Confidentiality), but KPMG shall remain responsible to Client for the performance of such services. Client agrees that any claim relating to the services under the Engagement Letter may only be made against KPMG and not any other Member Firm or third party service provider referred to above.

16. **Miscellaneous.**

(a) **Sarbanes-Oxley.** Except as otherwise set forth in the Engagement Letter, in accepting this engagement, Client acknowledges that completion of this engagement or acceptance of Deliverables resulting from this engagement will not constitute a basis for Client's assessment or evaluation of internal control over financial reporting and disclosure controls and procedures, or its compliance with its principal officer certification requirements under Section 302 of the Sarbanes-Oxley Act of 2002 (the "Act"). The services under the Engagement Letter shall not be construed to support Client's responsibilities under Section 404 of the Act requiring each annual report filed under Section 13(a) or 15(d) of the Securities Exchange Act of 1934 to contain an internal control report from management.

(b) **Electronic Communications.** KPMG and Client may communicate with one another by electronic mail or otherwise transmit documents in electronic form during the course of this engagement. Each party accepts the inherent risks of these forms of communication (including the security risks of interception of or unauthorized access to such communications, the risks of corruption of such communications and the risks of viruses or other harmful devices). Client agrees that the final hardcopy version of a document, including a Deliverable, or other written

## KPMG LLP
## Standard Terms and Conditions for Advisory and Tax Services

communication that KPMG transmits to Client shall supersede any previous versions transmitted electronically by KPMG to Client unless no such hard copy is transmitted.

(c) **California Accountancy Act.** For engagements where services will be provided by KPMG through offices located in California, Client acknowledges that certain of KPMG's personnel who may be considered "owners" under the California Accountancy Act and implementing regulations (California Business and Professions Code section 5079(a); 16 Cal. Code Regs. sections 51 and 51.1) and who may provide services in connection with this engagement, may not be licensed as certified public accountants under the laws of any of the various states.

(d) **Volume Rebates.** Where KPMG is reimbursed for expenses, it is KPMG's policy to bill clients the amount incurred at the time the good or service is purchased. If KPMG subsequently receives a volume rebate or other incentive payment from a vendor relating to such expenses, KPMG does not credit such payment to Client. Instead, KPMG applies such payments to reduce its overhead costs, which costs are taken into account in determining KPMG's standard billing rates and certain transaction charges that may be charged to clients.

(e) **Use of Names and Logos.** Except as permitted by law or the terms of the Engagement Letter, neither party shall acquire hereunder any right to use the name or logo of the other party or any part thereof. Any such use shall require the express written consent of the owner party.

(f) **Privileged Communications.** Information relating to advice KPMG provides to Client, including communications between KPMG and Client and material KPMG creates in the course of providing advice, may be privileged and protected from disclosure to the IRS or other governmental authority in certain circumstances. As KPMG is not able to assert the privilege on Client's behalf with respect to any communications for which privilege has been waived, Client agrees to promptly notify KPMG of any such waivers, whether resulting from communications with KPMG or third parties in the same or a related matter. Client also understands that privilege may not be available for communications with an audit client and that KPMG personnel providing audit and non-audit services will discuss matters that may affect the audit to the extent required by applicable professional standards. Client agrees that KPMG will not assert on Client's behalf any claim of privilege unless Client specifically instructs KPMG in writing to do so after discussing the specific request and the grounds on which such privilege claim would be made. Notwithstanding the foregoing, Client acknowledges that in no event will KPMG assert any claim of privilege that KPMG concludes, after exercising reasonable judgment, is not valid.

(g) **Active Spreadsheets and Electronic Files.** KPMG may use models, electronic files and spreadsheets with embedded macros created by KPMG to assist KPMG in providing the services under the Engagement Letter. If Client requests a working copy of any such model, electronic file or spreadsheet, KPMG may, at its discretion, make such item available to Client for its internal use only and such item shall be considered a Deliverable subject to Paragraph 4 above; provided that Client is responsible for obtaining the right to use any third party products necessary to use or operate such item.

(h) **Non-Solicitation.** During the term of the Engagement Letter and for one year thereafter, neither party shall solicit for hire as an employee, consultant or otherwise any of the other party's personnel who have had direct involvement with the services under the Engagement Letter, without such other party's express written consent. This prohibition shall not apply to any offers of employment which result from a general solicitation for employment, including without limitation, through the Internet, newspapers, magazines and radio.

17. **Entire Agreement.** The Engagement Letter and these Standard Terms and Conditions, including the Exhibits and Appendices hereto and thereto, constitute the entire agreement between KPMG and Client with respect to the services under the Engagement Letter and supersede all other oral and written representations, understandings or agreements relating thereto.

18. **Additional Terms for Engagements Involving Tax Services.**

(a) Notwithstanding anything to the contrary set forth herein, no provision in the Engagement Letter or these Standard Terms and Conditions is or is intended to be construed as a condition of confidentiality within the meaning of IRC sections 6011, 6111, 6112 or the regulations thereunder, or under any similar or analogous provisions of the laws of a state or other jurisdiction. In particular, Client (and each employee, representative, or other agent of Client) may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of any transaction within the scope of this engagement and all materials of any kind (including opinions and other tax analyses) that are provided to Client relating to such tax treatment and tax structure. Client also agrees to use commercially reasonable efforts to inform KPMG of any conditions of confidentiality imposed by third party advisors with respect to any transaction on which KPMG advice is requested. Such notification must occur prior to KPMG providing any advice with respect to the transaction.

(b) Treasury regulations under IRC section 6011 require taxpayers to disclose to the IRS their participation in reportable transactions and IRC section 6707A imposes strict penalties for noncompliance. Client agrees to use commercially reasonable efforts to inform KPMG if Client is required to disclose any transaction covered by the Engagement Letter as a reportable transaction to the IRS or to any state or other jurisdiction adopting similar or analogous provisions. IRC section 6111 requires a material advisor with respect to a reportable transaction to disclose information on the transaction to the IRS by a prescribed date, and IRC section 6112 requires the material advisor to maintain, and make available to the IRS upon request, a list of persons and other information with respect to the transaction. KPMG will use commercially reasonable efforts to inform Client if KPMG provides Client's identifying information to the IRS under IRC section 6111 or 6112, or to any state or other jurisdiction adopting similar or analogous provisions.

(c) Unless expressly provided for, KPMG's services do not include representing Client in the event of a challenge by the IRS or other tax or revenue authorities.

# KPMG LLP
## Standard Terms and Conditions for Advisory and Tax Services

(d) In rendering tax advice, KPMG may consider, for example, the applicable provisions of the Internal Revenue Code of 1986, and the Employee Retirement Income Security Act of 1974, each as amended, and the relevant state, local and foreign statutes, the regulations thereunder, income tax treaties, and judicial and administrative interpretations, thereof. These authorities are subject to change, retroactively or prospectively, and any such changes could affect the validity of KPMG's advice.

## APPENDIX A

### [FORM OF NOTICE AND ACKNOWLEDGEMENT]

[Name of Third Party]
Address


The advice, recommendations and information in the document included with this notice were prepared for the sole benefit of [Name of Client], based on the specific facts and circumstances of [Name of Client], and its use is limited to the scope of KPMG's engagement for [Name of Client]. It has been provided to you for informational purposes only and you are not authorized by KPMG to rely upon it and any such reliance by you or anyone else shall be at your or their own risk. You acknowledge and agree that KPMG accepts no responsibility or liability in respect of the advice, recommendations or other information in such document to any person or organization other than [Name of Client]. You shall have no right to disclose the advice, recommendations or other information in such document to anyone else without including a copy of this notice and, unless disclosure is required by law or to fulfill a professional obligation required under applicable professional standards, obtaining a signed acknowledgement of this notice from the party to whom disclosure is made and you provide a copy thereof to [Name of Client]. You acknowledge and agree that you will be responsible for any damages suffered by KPMG as a result of your failure to comply with the terms of this notice.

Please acknowledge your acceptance of the foregoing by signing and returning to us a copy of this letter.*

Very truly yours,

[Name of Client]

By: _____
   Name:
   Title:

**Accepted and Agreed to on this ___ day of ____, 20__ by:***

[Name of Third Party]

By: _____
   Name:
   Title:

*Remove in the event of a disclosure made by Client that is required by law, that is made to a regulatory authority having jurisdiction over Client or that is made pursuant to Paragraph 18(a) of the Standard Terms and Conditions in which case an acknowledgement is not required by the terms of Paragraph 4(c).



Appendix II

**Accounting Advice Standards**

There are unique requirements when providing oral or written advice on the application of U.S. GAAP or IFRS. Such an advice is subject to the professional standards we follow in these circumstances, namely Statement of Auditing Standard No. 50, *Reports on the Application of Accounting Principles*, as amended by Statement of Auditing Standard No. 97, *Amendment of SAS 50, Reports on the Application of Accounting Principles* ("SAS 50" requirements), or section 230 of the International Federation of Accountants' Handbook, *Code of Ethics for Professional Accountants* ("IFAC"). The following are types of accounting services that we may provide to you that would generally not be within the scope of SAS 50 or IFAC:

- Researching and summarizing industry practice relating to the application of accounting principles for various types of transactions

- Educational or training sessions regarding the content and potential ramifications of new accounting pronouncements

- Summarizing and discussing the potential ramifications to companies relating to FASB, IASB or other accounting standard-setting bodies meetings as they pertain to proposed and existing accounting literature

- Communications such as position papers prepared for the purpose of presenting views on a general issue (not related to a specific transaction or event that you request) involving the application of accounting principles. Position papers include newsletters, articles, speeches and texts thereof, lectures and other forms of public presentations, and letters for the public record to professional and governmental standard-setting bodies.

However, if any of the services you request are to provide guidance on the application of accounting principles to a specific transaction or event, SAS 50 or IFAC is applicable and we will be required to follow the protocols described below.

Should you ask KPMG to provide written or oral advice on the application of accounting principles to specific transactions involving facts and circumstances specific to the Company or its related parties, any such request that would meet these criteria would fall within the scope of SAS 50 or IFAC since we are not your audit firm. When you request advisory services that fall within the scope of SAS 50 or IFAC, we must consult with your audit firm to ascertain all the relevant available facts that are applicable to the specific request so as to form a professional judgment. We recognize that there is room for legitimate disagreement between KPMG and your audit firm, as well as between you and either your audit or another non-audit firm, but it is not our objective to challenge another accounting firm's professional judgment.



If you request a KPMG opinion letter to be written in accordance with SAS 50 or IFAC, we will issue a separate engagement letter to confirm the scope, extent and terms of that engagement. Because of the requirements of SAS 50, SAS 97, IFAC and KPMG internal policies, we will follow our internal approval process for our involvement on specific transactions as they arise. This process will include the following:

- Obtaining information about the principals' involvement in each transaction and performing our engagement acceptance process

- Communicating with the independent auditors' for one or more of the principals to discuss such matters as
    - The substance of the transaction versus the form of the transaction
    - Whether there is a dispute between you and the continuing accountants
    - Whether the continuing accountants have reached a conclusion that differs from ours

- Obtaining indemnifications and/or hold harmless agreements from one or more of the principals or other third-party users

- Internal investigations within KPMG to determine the presence of potential possible conflicts of interest.