IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
In re:                                                         :    Chapter 11
                                                               :
QUIKSILVER, INC., *et al.*                                     :    Case No. 15-11880 (BLS)
                                                               :
                                    Debtors.[1]                :    (Jointly Administered)
                                                               :
                                                               :    Hrg. Date: January 27, 2016 at 9:30 a.m.
                                                               :    (Eastern)
                                                               :
---------------------------------------------------------------x    Related Docket Nos. 532, 625

## LIMITED OBJECTION BY FORMER EMPLOYEES TO CONFIRMATION OF SECOND PLAN OF REORGANIZATION OF QUIKSILVER, INC. AND ITS AFFILIATED DEBTORS AND DEBTORS IN POSSESSION

Nicholas Drake, Christina G. Rice, Liam Devoy, Anda Druva, Steve Finney, Scott Fullerton, Pamela Gobright, John Graham, Kelley C. Graham, Brad Holman, Kristina Kastelan, Kelley Ketner, Jennifer Kutsch, Viki Love, Kerstin N. Mazzone, Andrew P. Mooney, Carol Nielsen, Robert Oberschelp, Joe O'Neil, Natalie Rigolet, Chris Schreiber, Lance Stern, Steve Swokowski, Roberta Turchi, Alan Vickers, and Thomas Webster, on their own behalf and on behalf of all similarly-situated terminated former employees ("**Former Employees**") of the above-captioned debtors, Quiksilver, Inc. and its affiliated debtors and debtors in possession (the "**Debtors**"), hereby submit their limited Objection ("**Objection**") to the Second Plan of Reorganization, *Dkt. No. 532*, (including the plan supplement, *Dkt. No. 625*, filed late on January 7, 2016) (collectively, the "**Plan**"). In support of the Objection, Former Employees submit the Declarations of Nicholas Drake ("**Drake Decl.**"), and respectfully state as follows:

### PRELIMINARY STATEMENT

1. The Former Employees submit this limited objection to confirmation of the Plan, and request that their claims totaling at minimum, $7,291,946.65, are held in a segregated reserve

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599).

pending adjudication of their claims. The last date for Former Employees to file proofs of claim or administrative claims is February 1, 2016 (*Dkt. No. 513*). Many Former Employees have already filed precautionary claims (through counsel) that have stated their intention to be treated as administrative claimants, and a group request for administrative expense will be filed in advance of the last day to file Former Employees' claims as specified in the Court's order at *Dkt No. 513*.

2.   While the Debtors' Plan has classified the claim of Former Employees as general unsecured claims, the Former Employees have asserted that their claims are administrative claims in connection with the Debtors' motion to reject their separation agreements. Pursuant to the rejection proceedings, the issue as to whether the separation agreements were executory, and whether the claims should be classified as administrative or general unsecured claims was reserved for further proceedings. The Debtors have not sought to estimate the claims of Former Employees in connection with their confirmation proceedings.

3.   For these reasons, and those more fully set forth herein, the Court should not confirm the Plan unless a plan reserve is established in the amount owed to Former Employees, but no less than $7,291.946.65.

## FACTUAL BACKGROUND

**A.   Debtor Terminates Former Employees And In Consideration For Many Concessions Made By Former Employees, Debtor Agrees To Make Separation Payments To Former Employees Through At Least March of 2016**

4.   On or around 2014, and thereafter, the Debtor terminated Former Employees. On or around October of 2014, Mr. Drake and the Debtor, through Executive Vice President Carol E. Scherman, executed a separation agreement (the "Drake SA"). (Drake Decl., ¶ 2, Ex. "A").

5.   The Drake SA provides that the Debtor would pay "severance pay in the total amount of $750,000…as follows: Eighteen (18) monthly checks, each in the amount of $41,666.67…." (Drake SA, ¶ 2.A). Payments were to commence to Mr. Drake on October of 2014. (*Id.*) The Drake SA further provides: "You [Drake] will not be required to perform any duties following the Separation Date [September 30, 2014] or during the Severance Pay Period." (Drake SA, ¶ 2.B). Mr. Drake provided Debtor a "release", a relinquishment of certain stock rights, and other valuable

concessions. The Drake SA provides for an arbitration clause in the event of the dispute to be decided by JAMS in Orange County, California. (Drake SA, ¶ 10). The Debtor has not availed itself of arbitration.

B. **Debtor Fails To Live Up To Its End Of The Bargain With Mr. Drake After Inducing Him To Accept Separation Payments Over An Extended Payment Term; Debtor Owes Drake A Substantial Administrative Claim Of At Least $291,666.69**

6. The Debtor made payments to Drake through the first half of August 2015. The Debtor has breached the Drake SA by failing to make the first post-petition payment due to Mr. Drake under the Drake SA. The Drake SA does not provide for a liquidated damage clause, or a clause providing for a "total amount due and owing clause" upon breach. Therefore, each missed payment constitutes a separate breach of the Drake SA.

7. On September 9, 2015, the Debtor filed its chapter 11 Petition. Payments under the Drake SA have accrued post petition for the months of September 2015 through January of 2016, and will continue to accrue to March 2016, entitling Mr. Drake to an administrative claim in the amount of $291,666.69. Mr. Drake is further entitled to a priority claim pursuant to 11 U.S.C. Section 507(a)(4) in the amount of $12,475.00.

C. **The Represented Former Employees And Other Similarly Situated Former Employees Are Owed A Substantial Administrative Claim**

8. Upon information and belief, all Separation Agreements were executed by the affected former employee of Debtor and Debtor, through Executive Vice President Carol E. Scherman. Upon information and belief, each Separation Agreement is substantially similar in form to the Drake SA.

9. Upon information and belief, on or about August of 2015, the Debtor ceased making payments to all Former Employees under the Separation Agreements, as it did to Drake.

10. The Debtor has breached each of the Separation Agreements by failing to make the first post-petition payment due under each of the Separation Agreements to the Former Employees and all payments that have accrued post-petition. The Separation Agreements do not provide for a liquidated damage clause, nor a clause indicating that "total amount due and owing clause" upon

breach. Therefore, each missed payment constitutes a separate breach of each of the Separation Agreements.

11. A list of the minimum administrative claims asserted is annexed to the Declaration of Blake J. Lindemann ("Lindemann Decl.") filed in connection with this objection.

## ARGUMENT

12. Former Employees file this Limited Objection to request that the plan proponent reserve the total amount of Former Employees' claims, pending adjudication of the parties' claim proceedings, which is at minimum $7,291.946.65.

Section 1129 of the Bankruptcy Code requires as follows:

> (9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that--
> (B) with respect to a claim of a kind specified in section 507(a)(1), 507(a)(4)….. of this title, the holder of such claim will receive-…
> (ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim.

11 U.S.C. § 1129(a)(9); 7 COLLIER ON BANKRUPTCY, ¶ 1129.03 [9][a] (16th ed. 2010).

13. Priority creditors opposing the Plan must be paid in full, in cash, on the Effective Date of the Plan. *In re Armstrong World Industries, Inc.*, 348 B.R. 136, 166 (D. Del. 2006); *In re Hechinger Inv. Co. of Delaware*, 298 F.3d 219, 224 (3d Cir. 2002). Former Employees' assert that their claims are comprised primarily of administrative and priority claims. The Debtors believe and assert, that the Former Employees Claims hold general unsecured claims.

14. This Court has held that confidentiality provisions do not arise to the materiality necessary to render such an agreement an executory contract, and thus, such contracts are not capable of rejection. *LG Philips Displays U.S.A, Inc.*, 2006 WL 1748671 (Bankr. D. Del. June 21, 2006) (Hon. Brendan Shannon). If the Former Employees' separation agreements are not executory, the claim continues to accrue in full, and the Class Claimants are not limited to "rejection damage" claims. Given there is no rejection of Former Employees' separation agreements, the only issue becomes the status of the claims.

15. 11 U.S.C. § 503(b)(1)(A) provides an administrative claim includes the "actual, necessary costs and expenses of preserving the estate including:

> (i) wages, salaries, and commissions for services rendered after the commencement of the case; and

> (ii) <u>wages and benefits</u> awarded pursuant to a judicial proceeding or a proceeding of the National Labor Relations Board as back pay attributable to any period of time occurring after commencement of the case under this title, as a result of a violation of Federal or State law by the debtor, without regard to the time of the occurrence of unlawful conduct on which such award is based or to whether any services were rendered, if the court determines that payment of wages and benefits by reason of the operation of this clause will not substantially increase the probability of layoff or termination of current employees, or of nonpayment of domestic support obligations, during the case under this title

U.S.C. § 503(b)(1)(A) (emphasis added).

15. Courts have ruled that sub-sections (i) and (ii) of Section 503(b)(1)(A) are not disjunctive and that an administrative claimant need *not* meet both subsections. *In re Powermate Holding Corp.*, 394 B.R.765, 776 n.66 (Bankr. D. Del. 2008); *In re Philadelphia Newspapers, LLC*, 433 B.R. 164, 173–74 (Bankr. E.D. Pa. 2010).

16. Given the amendment in BAPCPA to add sub-section (ii) and thus, add a species of claims in addition to claims for "services rendered after the commencement of the case," Congress had the intent to expand allowable administrative claims for services rendered <u>prior to</u> the petition date. In addition, the term "includes" in the preamble of Section 503(b)(1)(A) implies that such actual, necessary costs and expense are <u>not</u> the totality of claims that may be deemed an administrative claim under this statute. The inclusion of the term "benefits" in subsection (ii) also implies a broader import and greater scope to the BAPCPA amendments, and additional claims that may be classified as administrative claims.

17. Two Courts (in addition to *Philadelphia Newspapers*) have held that the addition of subsection (ii) "vitiates" the emphasis on a benefit to the estate, "allowing for administrative expense claims when the claimant did not necessarily provide a concrete benefit to the estate." In other words, such claimants are entitled to administrative claims even if their employment services were

rendered in the pre-petition period only. *In re Truland*, AP 14-01136 (Bankr. E.D. Vir. November 26, 2014); *Long Ridge Operating Co.*, 505 B.R. 163 (Bankr. D.N.J. 2014). *Truland* held that *Powermate's* focus on vesting cannot be squared with the "**without regard to the time**" language of Section 503(b)(1)(A). Thus, *Philadelphia Newspapers, Long Ridge, and Truland* support the proposition that an employment claim can be asserted based on services that were rendered pre-petition.

18.     Under California law, the law applicable to the Debtors' employment relationship with Former Employees, separation pay is deemed to be a wage. "Any part of a settlement or judgment that is considered compensation for lost income (*i.e.*, backpay, severance, front pay, unpaid overtime compensation constitute **wages**...." *In re Gerbec*, 164 F.3d 1015, 1026 (6th Cir. 1999) (emphasis added); *Chin et al., Cal. Practice Guide: Employment Litigation* (The Rutter Group 2014) ¶ 11:898; *Cifuente v. Costo Wholesale*, B247930 (Cal. App. 2nd Dist 2015).

19.     Simply, the severance payments requested by the Former Employees are "wages or benefits" (severance damages) to be "awarded" (bankruptcy claims proceeding) in a "judicial proceeding" (this bankruptcy Case) as a result of violation of state law (several breaches of contract) by the Debtor without regard to time of occurrence of unlawful conduct (pre or post petition) whether any services were rendered (meaning no other services need be rendered). Finally, the payments to the Former Employees will not lead to the layoff of other employees under that same sub-section. Therefore, under 503(b)(1)(A)(ii), the Class Claimants will be afforded an administrative claim at the claims allowance proceeding.

20.     Former Employees request that the Debtor reserve and segregate the totality of Employees' claims (disputed or otherwise) in an amount equal to at least $7,291.946.65, until such time as Former Employees claims are settled and/or determined, pursuant to 11 U.S.C. Section 1129, as Former Employees currently do not accept the Plan. Sequestration and reservation shall be held for the benefit of Employees exclusively, unless any such claim of Employees is deemed in part, or in whole, to be disallowed. The Plan and related disclosure statement, in fact, provide for such a mechanism to deal with disputed claims. See *First Amended Plan*. That procedure should be implemented for the purposes of Former Employees' claims.

## CONCLUSION

**WHEREFORE**, Former Employees respectfully request that the Confirmation Order provide that Debtor's assets be reserved exclusively for the benefit of Former Employees claims, in the full amount of Former Employees' disputed claims.

Dated: January 14, 2016
                                GELLERT SCALI BUSENKELL & BROWN, LLC

                                Michael Busenkell (DE 3933)
                                1201 N. Orange Street, Suite 300
                                Wilmington, DE 19801
                                Telephone: 302-425-5812
                                Email: mbusenkell@gsbblaw.com

-and-

Blake J. Lindemann – Cal. Bar #255747
(*admitted pro hac vice*)
Lindemann Law Firm
433 N. Camden Drive, 4th Floor
Beverly Hills, CA 90210
Telephone: 310-279-5269
Facsimile: 310-300-0267
E-mail: blake@lawbl.com

-and-

Daren M. Schlecter – Cal. Bar #259537
(*admitted pro hac vice*)
Law Office of Daren M. Schlecter, A Prof. Corp.
1925 Century Park East, Suite 830
Los Angeles, CA 90067
Telephone: 310-553-5747
Facsimile: 310-553-5487
E-mail:    daren@schlecterlaw.com

*Attorneys for Nicholas Drake, Christina G. Rice, Liam Devoy, Anda Druva, Steve Finney, Scott Fullerton, Pamela Gobright, John Graham, Kelley C. Graham, Brad Holman, Kristina Kastelan, Kelley Ketner, Jennifer Kutsch, Viki Love, Kerstin N. Mazzone, Andrew P. Mooney, Carol Nielsen, Robert Oberschelp, Joe O'Neil, Natalie Rigolet, Chris Schreiber, Lance Stern, Steve Swokowski, Roberta Turchi, Alan Vickers, and Thomas Webster on behalf of themselves and those similarly situated*