# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x    :
          :  Chapter 11

In re:          :

          :  Case No. 15-11880 (BLS)

QUIKSILVER, INC., et. al.,    :  Jointly Administered

          :

     Debtors[1].    :  **Objection Deadline: February 3, 2016, at 4:00 p.m.**

          :  **Hearing Date: February 10, 2016, at 11:30 a.m.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x    :

## MOTION OF GENERAL ELECTRIC CAPITAL CORPORATION FOR THE ENTRY OF AN ORDER, PURSUANT TO (I) 11 U.S.C. § 365(D)(5) COMPELLING THE DEBTOR TO IMMEDIATELY PAY IN FULL POSTPETITION AMOUNTS DUE UNDER PERSONAL PROPERTY LEASE AND (II) 11 U.S.C. § 503(B)(1) FOR THE ALLOWANCE AND PAYMENT OF AN ADMINISTRATIVE EXPENSE

General Electric Capital Corporation ("GECC"), a creditor of and equipment lessor to Quiksilver, Inc. (the "Debtor"), through its undersigned counsel, submits this motion (the "Motion") for the entry of an order substantially in the form attached hereto as **Exhibit B**, pursuant to (i) section 365(d)(5) of title 11 of the United States Code (as amended, the "Bankruptcy Code"), compelling the Debtor to immediately pay in full certain post-petition amounts due under the Lease (defined below) and (ii) section 503(b)(1) of the Bankruptcy Code allowing and directing payment of an administrative expense in favor of GECC in connection with the Debtor's post-petition use of the Equipment (as defined below).  In support of the Motion, GECC respectfully states as follows:

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the Motion and the Debtor's bankruptcy case pursuant to 28 U.S.C. §§ 157(b)(2) and 1334.  The Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief sought in the Motion are sections 365(d)(5) and 503(b)(1) of the Bankruptcy Code.

## RELEVANT BACKGROUND

3.      On or about September 9, 2015, (the "Petition Date") the Debtor filed a voluntary petition seeking relief under Chapter 11 of the Bankruptcy Code.

4.      The Debtor and Quiksilver Americas, Inc., as lessees, and GECC (as successor in interest to/assignee of Banc of America Leasing & Capital, LLC), as lessor, are parties to that certain Lease Agreement (the "Lease") dated as of April 28, 2006 and in particular Schedule Number 003 ("Schedule 3") thereto. A copy of the Lease, including Schedule 3 thereto is attached as **Exhibit 1** to the Declaration of Christopher Smyth ("Smyth Decl."), which is attached hereto as **Exhibit A**.

5.      Pursuant to paragraph 1 of Schedule 3 of the Lease, the Debtor leases from GECC certain warehouse distribution equipment, including certain conveying systems, a pick engine, lift trucks, and certain additional systems, equipment, and accessories (collectively, the "Equipment"). *See* Exh. 1, to Exh. A, schedule 3, at ¶ 3.

6.      The Lease provides that the base term (the "Base Term") was for 84 months beginning on March 14, 2008, and running through March 14, 2015.  *See* Exh. 1, to Exh. A, schedule 3, at ¶ 3.

7.      Pursuant to the Lease, the Debtor is obligated to pay GECC during the Base Term monthly payments of no less than $94,069.07 (the "Monthly Lease Payments").  *See id*. at ¶ 1,  ¶ 4.

8.      Pursuant to paragraph 8 of the Lease, upon the expiration of the Base Term, at Lender's election, the Debtor is required to either surrender or return the Equipment to GECC. *See* Exh. 1, to Exh. A, Lease, at ¶ 8.

9.      If the Debtor does not so surrender or return the Equipment to GECC, in "addition to all of the rights and remedies available at [GECC's] election, **such [Equipment] shall continue to be subject to all the terms and conditions of the Lease, with rent and other charges continuing to accrue and be payable under the Lease with respect to such [Equipment] until it is so surrendered or returned to [GECC], except that Base Rent shall accrue, payable on demand, at a rate of 150% of the rate applicable in the last period for which Base Rent was payable."** *Id*. (emphasis added).

10.      At the expiration of the Base Term on or about March 14, 2015, and notwithstanding the terms of the Lease, the Debtor failed to return or surrender the Equipment to GECC. *See* Exh. A, Smyth Decl. ¶ 5, 6.

11.      The Debtor has never indicated that it is no longer using the Equipment, that there is a technical, functional or operational issue with the Equipment or that the Equipment is defective or is otherwise not working in any way, either before or after the expiration of the Base Term.  Exh. A, Smyth Decl., ¶ 6.

12.     Thus, notwithstanding the expiration of the Base Term, and due to the Debtor's failure to return or surrender the Equipment to GECC, the terms and conditions of the Lease remain in full force and effect. *See* Exh. 1, to Exh. A, Lease, at ¶ 8.

13.     Accordingly, during this "holdover" period, the Debtor remains obligated to make monthly lease payments to GECC at 150% of the Monthly Lease Payment rate.  *See* Exh. 1, to Exh. A, Lease, at ¶ 8.

14.     Since the expiration of the Base Term and the Debtor's failure to surrender or return the Equipment to GECC, the Debtor has not disputed that it is obligated to make the Monthly Lease Payments. *See* Exh. A, Smyth Decl. ¶ 9.  Indeed, the Debtor made Monthly Lease Payments to GECC subsequent to the end of the Base Term and has also made certain post-petition Monthly Lease Payments for part of September 2015 and October 2015. Exh. A, Smyth Decl., ¶ 8, 10(a).

15.     However, notwithstanding the fact that the Lease remains in effect, the Debtor has failed to make the full post-petition Monthly Lease Payments for September 2015 and November 2015 through January 2016. Exh. A, Smyth Decl., ¶ 10. In addition, such failure has resulted in late charges being assessed. *Id*.

16.     On January 7, 2016, the Debtor filed the Plan Supplement with respect to the Second Amended Joint Chapter 11 Plan of Reorganization of Quiksilver, Inc. and its Affiliated Debtors and Debtors in Possession [D.I. 625] (the "Plan Supplement). The Lease was not listed on Exhibit I to the Plan Supplement as a lease that the Debtor intends to assume. Accordingly, pursuant to Article VII of the Second Amended Joint Chapter 11 Plan of Reorganization of Quiksilver, Inc. and its Affiliated Debtors and Debtors in Possession (the "Plan"), the Lease will be deemed rejected as of the Plan's Effective Date.

4

## RELIEF REQUESTED

17.     GECC respectfully requests the entry of an order (i) pursuant to section 365(d)(5) of the Bankruptcy Code, compelling the Debtor immediately to pay in full unpaid Lease Payments and late charges first arising sixty days after the Petition Date and requiring the Debtor to continue performing all obligations arising under the Lease until the Lease is rejected, including, without limitation, the payment of any lease charges accruing under the Lease prior to the rejection of the Lease; (ii) allowing an administrative expense pursuant to 11 U.S.C. § 503(b) in favor of GECC with respect to an unpaid portion of Monthly Lease Payments and certain late charges for the Lease of the Equipment relating to period of Petition Date through the sixty days thereafter (the "60 Day Period"); and (iii) in the alternative, allowing an administrative expense claim under 11 U.S.C. § 503(b) in favor of GECC for the entire post-petition of time in which the Debtor has used the Equipment prior to returning or surrender possession of the Equipment to GECC. [2]

## BASIS FOR RELIEF REQUESTED

### A.     The Bankruptcy Code Requires the Debtor to Continue to Make Post-Petition Payments

18.     Section 365(a) of the Bankruptcy Code allows a debtor to decide which of its unexpired leases it wants to keep and which it wants to reject.  11 U.S.C. § 365(a).  Until it makes that decision and formally assumes or rejects a given lease, however, it is required to comply with the terms of the lease.  11 U.S.C. § 365(d).  Section 365(d)(5) of the Bankruptcy Code provides in pertinent part:

> ***The trustee shall timely perform all of the obligations of the debtor***, except those specified in section 365(b)(2), first arising

---

[2]      Currently herewith GECC filed an Administrative Expense Request Form as set forth on Exhibit A to the Plan Supplement.  GECC seeks only a single satisfaction of the amounts owing to it.

from or after 60 days after the order for relief in a case under chapter 11 of this title under an unexpired lease of personal property (other than personal property leased to an individual primarily for personal, family, or household purposes), ***until such lease is assumed or rejected notwithstanding section 503(b)(1) of this title, unless the court, after notice and a hearing and based on the equities of the case, orders otherwise with respect to the obligations or timely performance thereof***.[3]

11 U.S.C. § 365(d)(5) (emphasis added).

19.    During this postpetition/pre-rejection period beginning sixty days after the Petition Date, the Debtor is bound by the terms of its unexpired leases and must comply with all obligations thereunder, regardless of whether compliance with such obligations is necessary or beneficial to the estate.   Section 365(d)(5) makes clear that the Debtor is bound by the Lease terms irrespective of the requirements in section 503(b)(1) that administrative claims must provide a benefit to the Debtor's estate.[4]  *See CIT Commc'ns Fin. Corp. v. Midway Airlines Corp. (In re Midway Airlines Corp.)*, 406 F.3d 229, 235–40 (4th Cir. 2005) (concluding that section 365(d)(5) "imposes on a trustee the duty to perform all obligations under a lease beginning sixty-one days after the entry of an order for relief"); *In re Pettingill Enter., Inc.*, 486 B.R. 524, 531 (Bankr. D. N.M. 2013) ("[S]ections 365(d)(3) and (d)(5) give rise to an automatic administrative expense claim for certain rental obligations accruing under a post-petition lease regardless of whether the rental property provided a benefit to the estate under Section 503(b).") (citations omitted); *In re Double G Trucking of the Arlatex, Inc.*, 442 B.R. 684, 690 (Bankr. W.D. Ark. 2010) ("The language 'notwithstanding section 503(b)(1)' found in § 365(d)(5) eliminates the requirement of § 503(b)(1)(A) and allows the assertion of a claim under the

---

[3]    The "equitable modification" provision in this section permits the Court only to modify the Debtor's obligations under the Lease on a prospective basis, and not to modify the amounts recoverable by Lease due to the Debtor's failure to perform.  *See CIT Commc'ns Fin. Corp. v. Midway Airlines Corp. (In re Midway Airlines Corp.)*, 406 F.3d 229, 240 (4th Cir. 2005).

[4]    As set forth below, the Debtor's use of the Equipment undoubtedly provides a benefit to the estate.

general provisions of § 503(b) for recovery of the payments due under the lease.  Accordingly, a claim under § 365(d)(5) is based on the amount due under the lease and is not limited by the need to show a benefit to the estate as required by § 503(b)(1)(A).") (citations omitted); *In re Stone Barn Manhattan LLC*, 405 B.R. 68, 76 (Bankr. S.D.N.Y. 2009) (noting that "Section 365(d)(5) represents a Congressional determination that lessors of non-consumer personal property should receive current 'payments and the performance of all other obligations that initially become due more than 60 days after the order for relief'") (citations omitted); *In re Hayes Lemmerz Int'l, Inc.*, 340 B.R. 461, 472 (Bankr. D. Del. 2006) ("Section 365(d)(10) [now renumbered as (d)(5)[5]] evinces Congress's intention to provide special protection to personal property lessors . . . .  Unlike parties claiming administrative expense status under section 503(b), lessors claiming under section 365(d)(10) need not prove they conferred any benefit upon the estate."); *In re Rebel Rents, Inc.*, 291 B.R. 520, 532 (Bankr. C.D. Cal. 2003) ("Section 365(d)(10) is intended to give the debtor a breathing period to make an informed decision about assumption or rejection of personal property leases, while assuring the lessor that after 60 days it will receive its lease payments without having to demonstrate actual benefit to the estate.")

20.      The Debtor remains subject to the Lease because the Lease provides that unless the Equipment was surrendered or returned to GECC at the expiration of the Base Term, the Lease would remain in effect. Accordingly, the Debtor remains obligated to make the Monthly Lease Payments to GECC.

---

[5]      Congress amended section 365 of the Bankruptcy in 2005 in part by renumbering former section 365(d)(10) as section 365(d)(5).  The 2005 amendments "did not alter or amend the language of former § 365(d)(10)" (*In re Double G Trucking of the Arlatex, Inc.*, 442 B.R. at 690 n.3) and courts "look to decisions construing Section 365(d)(10) in interpreting Section 365(d)(5)" (*In re Pettingill Enter., Inc.*, 486 B.R. at 531 n.6).

21.     Since the Petition Date, the Debtor has failed to make in full all of the Monthly Lease Payments[6] required under the Lease. *See* Exh. A, Smyth Decl., ¶ 10. Debtor's failure to make post-petition payments under the Lease is in contravention of the unambiguous language of section 365(d)(5) requiring payment pursuant to the terms of the Lease at the Monthly Lease Payments subsequent to the 60 Day Period.

22.     GECC is entitled to be paid by the Debtor at the Monthly Lease Payments rate and late charges following the 60 Day Period until the Effective Date of the Plan (i.e., the time of rejection of the Lease). After such time, the Debtor must deliver the Equipment to GECC or surrender the Equipment to GECC. Accordingly, the Debtor must pay GECC the post-petition amounts due pursuant to section 365(d)(5) in the total amount of $291,614.11 (Exh. A, Smyth Decl., ¶ 10(c). In addition, GECC is entitled to the payment of all additional amounts that accrue under the Lease (including Monthly Lease payments) through the date the Lease is rejected.

**B.      GECC is Entitled to an Administrative Expense Pursuant to 11 U.S.C. § 503(b) for the 60 Day Period**

23.     In connection with the 60 Day Period, GECC is entitled to payment of an administrative expense claim equal to $29,822.88 for unpaid rent and a late charge arising during such period pursuant to 11 U.S.C. § 503(b).

24.     11 U.S.C. § 503(b)(1)(A) provides that "after notice and a hearing there shall be allowed, administrative expenses . . . including—the actual, necessary costs and expenses of preserving the estate . . . ." 11 U.S.C. § 503(b)(1)(A). Thus, prior to the time 11 U.S.C. § 365(d)(5) is applicable (i.e., during the 60 Day Period) GECC is entitled to an administrative expense pursuant to 11 U.S.C. § 503(b)(1)(A) for its use of the Equipment.

---

[6]      GECC reserves its right to seek lease payments equal to 150% of the Monthly Lease Payment rate as provided in ¶ 8 of the Lease.

25.    A party may be entitled to an administrative expense claim if it can demonstrate that the debt arose from a transaction with the debtor-in-possession and "the consideration supporting the claimant's right to payment [must be] beneficial to the debtor-in-possession in the operation of the business." *In re Hayes Lemmerz Int'l, Inc.*, 340 B.R. 461, 472 (Bankr. D. Del. 2006) (quoting *Cramer v. Mammoth Mart, Inc.* (*In re Mammoth Mart, Inc.),* 536 F.2d 950, 954 (1st Cir. 1976)); *see also In re Grubb & Ellis Co.*, 478 B.R. 622, 624 (Bankr. S.D.N.Y. 2012) ("Courts in the Second Circuit use a two-part test to determine whether a specific claim qualifies as an administrative expense under section 503(b)(1)(A): first, there must be a post-petition transaction, making it a transaction between the debtor-in-possession and the creditor; and second, the estate must receive a benefit from the transaction.") *citing   Trustees of the Amalgamated Ins. Fund v. McFarlin's, Inc.,* 789 F.2d 98, 101 (2d Cir.1986).

26.    Here, GECC is entitled to payment of an administrative expense in the amount of $29,822.88 for unpaid rent in connection with the Debtor's use of the Equipment during the 60 Day Period. Exh. A, Smyth Decl., ¶ 10(b).  *First*, the Debtor's use of the Equipment during the 60 Day Period occurred subsequent to the Petition Date which thus qualifies as a transaction by the Debtor-in-Possession arising post-petition. *Second*, the Debtor and its estate undoubtedly benefited from the use of the Equipment, which is used in connection with the management of its inventory and to fill customer orders. Without it, the Debtor would be unable to effectively fill orders and deliver products to the Debtor's customers, jeopardizing its attempts to stabilize its operations and generate funds to pay its creditors.

27.    In instances in which a contract exists between the parties, there is a presumption that the contract rate is the reasonable value of the goods or services provided to the estate. *In re Smurfit-Stone Container Corp.,* 425 B.R. 735, 741 (Bankr. D. Del. 2010) (Shannon, J.).

28.     Accordingly, GECC is entitled to payment as a chapter 11 administrative expense for the 60 Day Period in the amount of $29,822.88, equal to the unpaid portion of the Monthly Rental Payment during the 60 Day Period.

**C.      In the alternative, GECC is Entitled to an Administrative Expense Pursuant to 11 U.S.C. § 503(b) for the Entire Post-Petition Period**

29.     As set forth in Section A above, subsequent to the 60 Day Period through the Effective Date of the Plan, GECC is entitled to payment of Monthly Lease Payments pursuant to 11 U.S.C. § 365(d)(5).

30.     However, if the Court concludes that GECC is not entitled to payment pursuant to 11 U.S.C. § 365(d)(5), GECC is nevertheless entitled to payment of the Monthly Lease Payments for the post-petition period pursuant to 11 U.S.C. § 503(b)(1)(A).

31.     Thus, for the reasons set forth in section B above, GECC is entitled to the outstanding amount of Monthly Lease Payments owed for the Debtor's post-petition use of the Equipment, in an amount equal to the outstanding Monthly Lease Payments, which has a value of not less than $321,436.99, plus any additional amounts that accrue under the Lease (including Monthly Lease payments) through the date the Lease is rejected . *Smurfit*-Stone, 425 B.R. at 741; Exh. A, Smyth Decl., ¶ 10.

**RESERVATION OF RIGHTS**

32.     GECC reserves all of its rights under the Lease and the Bankruptcy Code to seek additional amounts due and owing under the Lease, including without limitation, with respect to that certain secured proof of claim numbered 208 filed on January 10, 2015, by GECC against the Debtor in the amount of $1,888,119.50 and with respect to all rights and remedies GECC has with respect to lessee Quiksilver Americas, Inc.

**NOTICE**

33.    Notice of this Motion will be given to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the agent for the Debtors' postpetition secured loan facilities; (c) counsel to the agent for the Debtors' prepetition revolving loan facility; (d) counsel to the indenture trustee for the Debtors' prepetition senior secured notes; (e) counsel to the indenture trustee for the Debtors' prepetition senior unsecured notes; (f) counsel to the Creditors' Committee; and (g) all parties entitled to notice pursuant to Bankruptcy Rule 2002. GECC submits that, in light of the nature of the relief requested, no other or further notice need be given.

**CONCLUSION**

34.    For the reasons set forth herein, GECC respectfully requests the entry of an order, in the form submitted herewith, compelling the Debtor to immediately pay all unpaid payments under the Lease in full, to continue performing all obligations arising under the Lease until the Lease are rejected and the Equipment returned to GECC, and for such other and further relief as necessary and appropriate.

Dated:  January 20, 2016  
       Wilmington, Delaware

Respectfully submitted,

REED SMITH LLP

By:    /s/ Emily K. Devan
          Kurt F. Gwynne (No. 3951)
          Emily K. Devan (No. 6104)
          1201 Market Street, Suite 1500
          Wilmington, DE 19801
          Telephone: (302) 778-7500
          Facsimile: (302) 778-7575
          Email:  kgwynne@reedsmith.com
                edevan@reedsmith.com

          -and-

Brian I. Swett, Esquire
Paul J. Catanese, Esquire
MCGUIREWOODS LLP
77 W. Wacker Drive, Suite 4100
Chicago, IL 60601
Telephone: (312) 849-8100
Facsimile: (312) 920-3697
E-mail:  bswett@mcguirewoods.com
        pcatanese@mcguirewoods.com

Counsel for General Electric Capital
Corporation