**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| | Case No. 15-11880 (BLS) |
| QUIKSILVER, INC., et al., | (Jointly Administered) |
| | Hrg. Date: Jan. 28, 2016 at 11:00 a.m. (ET) |
| Debtors. | Object. Due: N/A[1] |
| | Related to D.I. 292, 476, and 526 |

**LIMITED OBJECTION OF BOULEVARD INVEST, LLC TO SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF QUICKSILVER, INC. AND ITS AFFILIATED DEBTORS AND DEBTORS IN POSSESSION (CURE AMOUNTS)**

Boulevard Invest, LLC (hereinafter, "Landlord") hereby files this objection (the "Cure Objection") to the Second Amended Joint Chapter 11 Plan of Reorganization of Quicksilver, Inc. and its Affiliated Debtors and Debtors in Possession (the "Plan")[2] with respect to cure amounts, and respectfully represents as follows:

**I.    BACKGROUND FACTS**

1.    Quicksilver, Inc., and its affiliated co-debtors (collectively, the "Debtors"), filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code on September 9, 2015.  The Debtors continue to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[3]

---

[1]  Landlord lists the objection deadline at N/A because Landlord has never been served with any plan supplement or other document that includes the Lease, and it has never been provided with a proposed cure amount from the Debtors.

[2]  Terms not otherwise defined herein shall have the meanings ascribed to them in the Plan and Disclosure Statement and accompanying documents.

[3]  Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

1

2.      The Debtors lease space (the "Premises") from the Landlord pursuant to an unexpired lease of nonresidential real property (the "Lease") between Landlord and one of the Debtors, which Premises is located at the Miracle Mile Shops (the "Center"), in Las Vegas, Nevada.

3.      The Lease is a lease "of real property in a shopping center" as that term is used in Section 365(b)(3).  See In re Joshua Slocum, Ltd., 922 F.2d 1081, 1086-87 (3d Cir. 1990).

4.      On December 4, 2015, the Debtors filed the Second Amended Joint Chapter 11 Plan of Reorganization of Quicksilver, Inc. and its Affiliated Debtors and Debtors in Possession (the "Plan") [D.I. 532].

## II.    THE DEBTORS MUST PROVIDE FOR PAYMENT OF ALL OBLIGATIONS UNDER THE LEASE.

5.      The Plan provided that the Debtors would file a list of leases to be assumed, along with proposed cure amounts, within 14 days of the Confirmation Hearing.  On January 7, 2016 , 2015, the Debtors filed a supplement to the Plan, which purports to include executory contracts and unexpired leases that the Debtors intend to assume as part of the Plan (the "Plan Supplement") [D.I. 625].  The Plan Supplement did not include Debtors' nonresidential real property leases.  In light of the pending confirmation hearing, Landlord files this Cure Objection despite the Debtors having yet to identify whether they will assume or reject the Lease. The Landlord's cure is summarized below, and those charges comprising Landlord's cure are more fully detailed in Exhibit A, which is attached hereto and incorporated into the Objection by this reference:

| **Landlord** | **Center** | **Store No.** | **Debtors' Cure** | **Landlord Cure[4]** |
|---|---|---|---|---|
| Boulevard Invest, LLC | Miracle Mile Shops | Unknown | Unknown | **$27,320.59** |

---

[4]  The Landlord's Cure does not include charges arising since the filing of this Objection, or charges which have not been directly billed to the Landlord as of the filing of this Objection. The Landlord's Cure also does not include charges that are billed directly to the Debtors.  To the extent Landlord is later billed for any amount due to the Debtors' failure to pay, or to the extent that there are other charges that come due under the Lease after the date of this Objection, the Landlord retains and reserves the right to payment of these amounts when billed in the ordinary course under the Lease (and to amend this Objection to the extent necessary for any amounts that come due under the Leases through the date of any cure payment).

6. In addition to the current outstanding rent and other monthly charges due under the Lease, in determining what must be paid as cure pursuant to Section 365(b), the charges referenced below must also be taken into consideration and paid by the Debtors or assignee, either as cure or when properly billed under the Lease.

*i.*   *Year-end adjustments and reconciliations*

7. In addition to rent and related monthly charges, attorneys' fees, costs, and interest, some charges for which Debtors bear responsibility under the Lease has not yet been reconciled and/or adjusted from pre-petition (or even post-petition) periods. By way of example, the Debtors occupy retail space at the Center pursuant to a triple-net lease, where they typically pay rent and related lease charges in advance for each month. The Debtors pay fixed minimum rent, along with a pro-rata share of expenses such as real property taxes, insurance, common area maintenance ("CAM") fees, annual percentage rent, and the like. Certain charges, such as CAM and property taxes are estimated prospectively, billed to and paid by the tenant during the year, and then reconciled after year-end. The reconciliation compares the amounts estimated and paid against actual charges incurred at the Center. To the extent the estimated payments exceed actual charges, the result is a credit to the tenant. To the extent the estimated payments do not cover actual charges incurred under the Lease, the result is an additional amount (or debit) for which the tenant is liable. In some instances, year-end reconciliations and adjustments for previous years for the Premises may not yet be complete (i.e. - year-end reconciliations and adjustments that accrued through 2015 may not have been billed, and such charges for 2016 will not be billed until 2017). In other instances, certain charges may be paid in arrears, and cannot be calculated (in some cases) until a year or more after year-end. Since these accrued, but unbilled, charges are not yet due under the Leases, they do not create a current default that gives rise to a requirement to cure by the Debtors at this time.

8. Nevertheless, Debtors (or successor) remain responsible for all accrued or accruing charges under the Lease, and must pay such charges when they come due under the Lease. The Debtors (or successor) assume the Lease subject to its terms, and must assume all

obligations owing under the Lease, including obligations that have accrued but may not yet have been billed under the Lease. Any final sale order should clearly state that the Debtors (or successor) will assume these lease obligations and pay them when due, regardless of whether they relate to the period prior to, or after, the closing of any sale and assignment. In addition, any provision in a sale order that purports to release the Debtors (or successor) of further liability based upon a payment of cure amounts, must specify that such release does not apply to obligations to pay accrued or accruing, but unbilled, charges that come due under the Lease.

9. Finally, the Lease requires Debtors to indemnify and hold Landlord harmless with respect to any existing claims which may not become known until after the assumption and assignment of the Leases, examples of which may include such claims as personal injuries at the Premises and damage to the Premises or Centers by the Debtors or their agents. Any assumption of the Lease must be subject to the terms of the Lease, including the continuation of all indemnification obligations, regardless of when they arose.[5] In the alternative, the Debtors must provide (by insurance or otherwise) that they can satisfy the indemnification obligations under the Lease for any claims that relate to the period prior to assumption and assignment of the Lease. Nothing should preclude Landlord from pursuing Debtors, their insurance, or any other party that may be liable under the Lease, and Landlord requests that any order specifically preserve their right to pursue such rights irrespective of any resolution of cure amounts herein.

ii.     *Attorneys' fees, costs, and interest*

10. The Lease contains provisions for recovery of attorneys' fees, costs, and interest in the event the Landlord is required to take legal action to protect its interests. The Debtors are obligated to cure all defaults under the Leases, and compensate the Landlord for its actual pecuniary losses as a result of defaults under the Lease. See 11 U.S.C. § 365(b)(1)(A) and (B). The principle is well-recognized. In re LCO Enterprises, 12 F.3d 938, 941 (9th Cir. 1993);

---

[5] Any ability to assume and assign the Lease is subject to the protections provided by Section 365(b) and (f). Therefore, any assumption must be in accordance with all provisions of the Lease.

Elkton Associates v. Shelco Inc. (Matter of Shelco), 107 B.R. 483, 487 (Bankr. D. Del. 1989) (debtors allowed to assume lease provided it cured *all pre-petition defaults*).

11. The Debtors (or successor) take the Leases *cum onere* – subject to existing burdens. The Debtors cannot assume the favorable portions, and reject the unfavorable provisions, of the Lease. In re Washington Capital Aviation & Leasing, 156 B.R. 167,172 (Banks. E.D. Va. 1993). If forced to continue in the performance of the Lease, the Landlord is entitled to the full benefit of the bargain under its Lease with the Debtors. *See* Matter of Superior Toy and Mfg. Co., Inc., 78 F.3d 1169 (7th Cir. 1996). The "full benefit of the bargain" principle has been held to require payment of interest. "The cure of a default under an unexpired lease pursuant to 11 U.S.C. § 365 is more akin to a condition precedent to the assumption of a contract obligation than it is to a claim in bankruptcy. One of the purposes of Section 365 is to permit the debtors to continue in a beneficial contract; provided, however, that the other party to the contract is made whole at the time of the debtor's assumption of the contract." In re Entertainment, Inc., 223 B.R. 141, 151 (Bankr. N.D. Ill. 1998) (citation omitted; bankruptcy court allowed interest at 18%). Interest on pre-petition lease charges continues to run from the filing of the Debtors' petition and must be paid as a condition of the assumption of the Leases. *See* In re Skylark Travel, Inc., 120 B.R. 352055 (Bankr. S.D.N.Y. 1990). Interest calculations are therefore not cut short by the automatic stay, and payment of such interest is required to fully compensate Landlord for the Debtors' default under the Lease, and thus to properly assume the Lease. Finally, post-petition interest is allowable where such interest is provided for under the terms of the Lease. Cukierman v. Uecker (In re Cukierman), 265 F.3d 846, 853 (9th Cir. 2001).

12. Attorneys' fees and costs incurred in enforcement of the covenants, obligations, and conditions of a lease are also proper components of a cure claim, and the Debtors (or successor) must satisfy these lease charges as part of the assumption or assumption and assignment of the Leases. Entertainment, Inc., 223 B.R. at 152 (citation omitted). There is no logical distinction for purposes of Section 365 between attorneys' fees incurred in connection with pre-petition defaults and fees incurred with post-petition defaults. Id. 154. The fact that a

5

landlord uses bankruptcy procedures to enforce a lease should not preclude recovery of attorneys' fees and costs for such enforcement activity (particularly where the Bankruptcy Court is the exclusive forum where the landlord can obtain any relief, being foreclosed from state court relief by the automatic stay).  Id., see also, In re Crown Books Corporation, 269 B.R. 12 (Bankr. D. Del. 2001) (Landlords' fees and costs are recoverable as a component of cure under 11 U.S.C. § 365(b)(1)); Urban Retail Properties v. Loews Cineplex Entertainment Corporation, et al., 2002 WL 5355479 (S.D.N.Y. Apr. 9, 2002) (where lease "provides for recovery of attorneys' fees and interest, their receipt deserves the same priority under Section 365(d)(3) as any of the debtors' other obligations that arise postpetition ... ."); Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Incorporated), 167 F.3d 843, 850 (4th Cir. 1999).  The Supreme Court has upheld the enforceability of such attorneys' fees clauses, ruling that pre-petition attorneys' fee clauses were enforceable with respect to issues peculiar to bankruptcy law.  Travelers Casualty & Surety Co. Of America v. Pacific Gas & Electric, 127 S. Ct. 1199, 1206 (2007).

    *iii.*    *The cure amounts serve only as estimates*

13.    Landlord can only provide the information presently available regarding amounts owing by the Debtors, while reserving the right to amend the Objection as necessary to include any additional or unknown charges that arise, including but not limited to subsequent rent defaults, attorney fees, costs, interest, and year-end adjustments and reconciliations.  There is no basis to impose upon the Landlord the equivalent of an administrative bar date, limiting its recourse to recover charges to which it is entitled under the Lease.

**III.**    **IMMEDIATE PAYMENT OF UNDISPUTED CURE AMOUNTS**

14.    Section 365(b)(1)(A) requires that the Debtors promptly cure outstanding balances due under the Lease upon assumption.  To the extent there is a dispute over the total cure obligation for any Lease, all undisputed cure amounts should be paid immediately.  Debtors should escrow disputed amounts, and the Court should set a status conference within thirty (30) days of the assumption or assumption and assignment of the Lease to deal with any disputes that remain unresolved after such period.

## IV. **JOINDER IN OBJECTIONS BY OTHER LANDLORDS**

15. To the extent consistent herewith, the Landlord hereby joins in any opposition raised by other creditors or the Creditors' Committee.

## V. **CONCLUSION**

Landlord incorporates the objections set forth above and requests that the Court require the Debtors to pay all amounts owing under the Lease, assume all obligations that have and continue to accrue under the Lease, and grant such other and further relief that it deems just and proper under the circumstances.

Dated:  January 27, 2016
Wilmington, Delaware

Respectfully submitted,

*/s/ Leslie C. Heilman*
Leslie C. Heilman, Esquire (No. 4716)
Matthew G. Summers, Esquire (No. 5533)
BALLARD SPAHR LLP
919 Market Street, 11th Floor
Wilmington, DE  19801
Telephone: (302) 252-4465
Facsimile: (302) 252-4466
E-mail:  heilmanl@ballardspahr.com
          summersm@ballardspahr.com

and

KATTEN MUCHIN ROSENMAN LLP
Dustin P. Branch, Esquire (Cal. Bar No. 174909)
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone: (310) 788-4400
Facsimile: (310) 788-4471
E-mail:  dustin.branch@kattenlaw.com

Attorneys for Boulevard Invest, LLC