**EXHIBIT 2**
**Redline Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - x
- - - - -                                 :
                                          :   Chapter 11
                                          :
In re:                                    :
                                          :   Case No. 15-11880 (BLS)
QUIKSILVER, INC., et al.,                 :
                                          :   Jointly Administered
                  Debtors.¹               :
                                          :
                                          :   Related Docket Nos. ___
                                          x
- - - - - - - - - - - - - - - - - - - - - - - - - -
- - - - -
```

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER
## CONFIRMING PLAN OF REORGANIZATION OF THE DEBTORS

Upon the October 30, 2015 motion (the "Disclosure Statement and Solicitation

Motion") [Docket No. 397] of Quiksilver, Inc. ("Quiksilver") and the debtors and debtors in

possession in the above-captioned cases (collectively, the "Debtors" or, as applicable after the

Effective Date, the "Reorganized Debtors") filed with the Bankruptcy Court for the District of

Delaware (this "Court"), for entry of an order (A) approving the adequacy of the Disclosure

Statement With Respect to the Joint Chapter 11 Plan of Reorganization of Quiksilver, Inc. and

its Affiliated Debtors and Debtors in Possession (as amended from time to time and including

all exhibits and supplements thereto, the "Disclosure Statement") filed in support of the Joint

Chapter 11 Plan of Reorganization of Quiksilver, Inc. and its Affiliated Debtors and Debtors in

Possession (as may be amended from time to time, including by this Confirmation Order, and

---

¹ The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

including all exhibits and supplements, the "Plan"),[2] (B) approving solicitation and notice procedures with respect to confirmation of the Debtors' proposed Plan, (C) approving the form of various ballots and notices in connection therewith; and (D) scheduling certain dates with respect thereto; and upon the order entered on December 4, 2015 granting the Disclosure Statement and Solicitation Motion [Docket No. 529]  (the "Disclosure Statement Order"); and upon the order entered on December 4, 2015 approving, among other things, the Backstop Commitment Letter and certain procedures associated with the Rights Offerings (the "Rights Offering Procedures") and the distribution of materials in connection therewith [Docket No. 530] (the "Backstop and Rights Offering Procedures Approval Order"); and the Debtors having filed with the Court certain exhibits and supplements to the Plan; and the Court on January 27, 28 and 29, 2016 having held a hearing pursuant to section 1129 of the Bankruptcy Code to consider confirmation (the "Confirmation Hearing"); and the Court having considered the Debtors' Memorandum of Law (i) in Support of Confirmation of the Plan of Reorganization of the Debtors and (ii) in Response to Objections Thereto, filed by the Debtors on January 25, 2016 [Docket No. 711] (the "Confirmation Brief"), the Declaration of Steven Coulombe Inin Support of Confirmation of the Plan of Reorganization of the Debtors [Docket No. 713] (the "Coulombe Declaration"), the Declaration of Andrew Bruenjes Inin Support of Confirmation of the Plan of Reorganization of the Debtors [Docket No. 714] (the "Bruenjes Declaration"), the Declaration of Durc A. Savini in Support of Confirmation of the Plan of Reorganization of the Debtors [Docket No. 713] (the "Savini Declaration"), the Declaration of Michael J. Hill

---

[2]    Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to such terms in the Plan, a copy of which is annexed hereto as Exhibit A.

Regarding Analysis of Ballots for Accepting or Rejecting Second Amended Joint Chapter 11 Plan of Reorganization of Quiksilver, Inc. and ~~its~~Its Affiliated Debtors and Debtors in Possession [Docket No. 709] (the "Voting Certification"), and the Declaration of Peter Walsh Regarding Subscription to Rights Offerings as Set Forth in the Second Amended Joint Chapter 11 Plan of Reorganization of Quiksilver, Inc. and ~~its~~Its Affiliated Debtors ~~And~~and Debtors ~~In~~in Possession [Docket No. 710] (the "Rights Offering Certification"), each filed by the Debtors in advance of the Confirmation Hearing; the Court having admitted into the record and considered evidence at the Confirmation Hearing; the Court having overruled any and all unresolved objections to confirmation of the Plan; the Court having taken judicial notice of the contents of the docket of the Chapter 11 Cases (defined below) maintained by the clerk of the Bankruptcy Court of the District of Delaware (the "Clerk of the Court") and/or its duly-appointed agent, including all pleadings and other documents filed, all orders entered thereon, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the applicable court during the pendency of the Chapter 11 Cases; and after due deliberation thereon and good and sufficient cause appearing therefor,

It hereby is DETERMINED, FOUND, ADJUDGED, DECREED AND ORDERED THAT:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[3]

---

[3]  Each finding of fact set forth or incorporated herein, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law. Each conclusion of law set forth or incorporated herein, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

3

A.    <u>Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a))</u>. This Court has jurisdiction over the above-captioned chapter 11 cases (the "<u>Chapter 11 Cases</u>") pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and this Court has jurisdiction to determine whether the Plan complies with the applicable provisions of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and should be confirmed.

B.    <u>Eligibility for Relief</u>. The Debtors were and are Entities eligible for relief under section 109 of the Bankruptcy Code.

C.    <u>Commencement and Administration of the Chapter 11 Case</u>. On September 9, 2015, the Debtors commenced the Chapter 11 Cases (the "<u>Petition Date</u>"). The Debtors have operated their businesses and managed their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code. No trustee has been appointed in the Chapter 11 Cases.

D.    <u>Filing of Plan and Plan Exhibits</u>.  On October 13, 2015, the Debtors filed the Joint Chapter 11 Plan of Reorganization of Quiksilver, Inc. and Its Affiliated Debtors and Debtors ~~In~~in Possession [Docket No. 292]. On October 30, 2015, the Debtors filed the Disclosure Statement ~~With~~with Respect ~~To The~~to the Joint Chapter 11 Plan of Reorganization of Quiksilver, Inc. and ~~its~~Its Affiliated Debtors and Debtors in Possession [Docket No. 396]. On November 17, 2015, the Debtors filed the First Amended Joint Chapter 11 Plan of Reorganization of Quiksilver, Inc. and ~~its~~Its Affiliated Debtors and Debtors in Possession [Docket No. 476] and the First Amended Disclosure Statement with Respect to the First

4

Amended Joint Chapter 11 Plan of Reorganization of Quiksilver, Inc. and Its Affiliated Debtors and Debtors In~in Possession [Docket No. 477]. On December 4, 2015, the Debtors filed the Second Amended Joint Chapter 11 Plan of Reorganization of Quiksilver, Inc. and its~Its Affiliated Debtors and Debtors in Possession [Docket No. 532] and the Second Amended Disclosure Statement with Respect to the Second Amended Joint Chapter 11 Plan of Reorganization of Quiksilver, Inc. and its~Its Affiliated Debtors and Debtors in Possession [Docket No. 533]. On January 7, 2016, the Debtors filed the Plan Supplement to the Plan [Docket No. 625]. On January [•]25, 2016, the Debtors filed the First Amendment to the Plan Supplement [Docket No. [•]720], which amended the Schedule of Assumed Contracts and Unexpired Leases.  On January [•]28, 2016 the Debtors filed the Third Amended Joint Chapter 11 Plan of Reorganization of Quiksilver, Inc. and its~Its Affiliated Debtors and Debtors in Possession [Docket No. [•]].731]. On January 28, 2016, the Debtors filed the Second Amendment to the Plan Supplement [Docket No. 735], which amended certain of the New Corporate Governance Documents.

       E.     The Plan Supplement, as amended, complies with the terms of the Plan, and the filing and notice of the Plan Supplement materials were good and proper, and in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order, and no other or further notice is or shall be required. Following entry of this Confirmation Order, and prior to substantial consummation of the Plan, the Debtors are authorized, with the consent of the Plan Sponsor, under section 1127(b) of the Bankruptcy Code, to institute proceedings in the Bankruptcy Court to remedy any defect or omission or

reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan.

F.    Transmittal of Solicitation Package. On or before December 9, 2015, the Debtors, through their solicitation agent, Kurtzman Carson Consultants, LLC (the "Claims and Solicitation Agent"), caused the applicable forms of ballots, substantially in the forms attached to the Disclosure Statement Order (collectively, the "Ballots"), and the Solicitation Packages (as set forth in the Disclosure Statement Order) to be served and distributed as required by the Disclosure Statement Order, section 1125 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the local rules for this Court (the "Local Rules"), all other applicable provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations applicable to such solicitation, all as set forth in the Affidavit of Service of Michael J. Hill regarding service of solicitation materials filed on December 15, 2015 [Docket No. 569] (the "Hill Solicitation Affidavit"). The Solicitation Packages were transmitted to all creditors entitled to vote on the Plan and sufficient time was prescribed for creditors to accept or reject the Plan. The Debtors were excused from mailing Solicitation Packages to those Entities to whom the Debtors mailed a notice regarding the Disclosure Statement Hearing and received a notice from the United States Postal Service or other carrier that such notice was undeliverable unless such Entity provided the Debtors, through the Claims and Solicitation Agent, with an accurate address not less than ten (10) days prior to the Solicitation Mailing Deadline. If an Entity changed its mailing address after the Petition Date, the burden was on such Entity, and not the Debtors, to advise the Debtors and the Claims and Solicitation Agent of the new address. The transmittal

and service of the Solicitation Packages and Ballots was adequate and sufficient under the circumstances and no other or further notice is or shall be required.

G.      The Rights Offering Procedures and materials for distribution in connection therewith approved by this Court in the Backstop and Rights Offering Procedures Approval Order were transmitted to and served on all Holders that were entitled to participate in the Rights Offerings in accordance with the Rights Offering Procedures as set forth in the Affidavit of Service of Peter Walsh regarding service of Rights Offering materials filed on January 20, 2016 [Docket No. 693]. The transmittal and service of such documents was adequate and sufficient, and no further notice is or shall be required.

H.      <u>Mailing and Publication of Notice</u>. As described herein and as evidenced by the Hill Solicitation Affidavit, due, adequate and sufficient notice of the Plan and the Confirmation Hearing, together with all deadlines for voting on or objecting to the Plan was given in compliance with the Bankruptcy Code and the Bankruptcy Rules. The Debtors, through the Claims and Solicitation Agent, caused the Confirmation Hearing Notice (as defined in the Disclosure Statement Order) to be mailed to all (a) known Holders of Claims and Interests, (b) parties that requested notice in accordance with Bankruptcy Rule 2002, and (c) all other parties included in the Debtors' creditor and notice party matrix. The Debtors also published the Confirmation Hearing Notice in: (i) the New York Times (National Edition), the Los Angeles Times and the Orange County Register on December 9, 2015, and (ii) the New York Times (International Edition) on December 10, 2015, in compliance with the Disclosure Statement Order and Bankruptcy Rule 2002(l). <u>See</u> Affidavit of Publication filed on December

7

17, 2015 [Docket No. 577]. Thus, the Debtors have given proper, adequate and sufficient notice of the Confirmation Hearing and no other or further notice is or shall be required.

      I.      <u>Solicitation</u>. Votes on the Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Disclosure Statement Order, the Local Rules, all other applicable provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations applicable to such solicitation.

      J.      <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>. All persons within the definition of Exculpated Parties who solicited votes on the Plan are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code as well as the exculpation and limitation of liability provisions set forth in Article 10.6 of the Plan.

      K.      <u>Voting Certification</u>. On January 25, 2016, the Claims and Solicitation Agent filed the Voting Certification, certifying the method and results of the ballot tabulation for each of the Classes entitled to vote under the Plan—Classes 4, 5-A and 5-B (the "<u>Voting Classes</u>"). As evidenced by the Voting Certification, Classes 4 and, other than with respect to Debtor QS Wholesale, Inc., 5-B have accepted or been deemed to have accepted the Plan in accordance with section 1126 of the Bankruptcy Code.

      L.      <u>Rights Offering Certification</u>. On January 25, 2016, the Subscription Agent (as defined in the Backstop and Rights Offering Approval Order) filed the Rights Offering Certification, certifying the results of the Rights Offerings. As set forth in the Rights Offering Certification, Secured Noteholders subscribed for $14,087,500.00 of the Exit Rights

Offering and €2,926,428.57 of the Euro Notes Rights Offering.  Unsecured Noteholders subscribed for $527,722.22 of the Exit Rights Offering.

M.      Plan Modifications.  Subsequent to solicitation, the Debtors made certain modifications to the Plan, including, without limitation, to implement the settlement of the objection of the Creditors' Committee to confirmation of the Plan (the "Committee Settlement Modifications"). All such modifications since the entry of the Disclosure Statement Order are consistent with all of the provisions of the Bankruptcy Code, including sections 1122, 1123, 1125, and 1127 of the Bankruptcy Code.  None of the aforementioned modifications materially adversely affects the treatment of any Holder of a Claim or Interest under the Plan. Accordingly, pursuant to section 1127(a) of the Bankruptcy Code, none of the modifications require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code. The filing of the Plan, as modified, with the Bankruptcy Court, and the disclosure of the Plan modifications on the record at or prior to the Confirmation Hearing, constitute due and sufficient notice of any and all such modifications. Further, in accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims or Interests who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as modified by the Plan modifications. No Holder of a Claim or Interest shall be permitted to change its vote as a consequence of the Plan modifications unless otherwise agreed to by the Holder of the Claim or Interest and the Debtors. The modifications to the Plan are hereby approved, pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019. The Plan as modified shall constitute the Plan submitted for confirmation.

N.      Bankruptcy Rule 3016. The Plan is dated and identifies the Entities

submitting it, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure

Statement with the Clerk of the Court satisfied Bankruptcy Rule 3016(b).

O.      Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)). The

Plan satisfies section 1129(a)(1) of the Bankruptcy Code because it complies with the

applicable provisions of the Bankruptcy Code, including, but not limited to: (a) the proper

classification of Claims and Interests (11 U.S.C. §§ 1122, 1123(a)(1)); (b) the specification of

Unimpaired Classes (11 U.S.C. § 1123(a)(2)); (c) the specification of treatment of Impaired

Classes (11 U.S.C. § 1123(a)(3)); (d) provision for the same treatment of each Claim or

Interest within a Class (11 U.S.C. § 1123(a)(4)); (e) provision for adequate and proper means

for implementation (11 U.S.C. § 1123(a)(5)); (f) the prohibition against the issuance of non-

voting equity securities (11 U.S.C. § 1123(a)(6)); (g) adequate disclosure of the procedures for

determining the identities and affiliations of the members and officers with respect to the

Reorganized Debtors (11 U.S.C. § 1123(a)(7)); and (h) additional plan provisions permitted to

effectuate the restructuring of the Chapter 11 Cases (11 U.S.C. § 1123(b)).

(a)      Proper Classification (11 U.S.C. §§1122 and 1123(a)(1)). The

classification of Claims and Interests under the Plan is proper under the Bankruptcy Code. In

accordance with sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the

Plan adequately and properly identifies and classifies all Claims and Interests (other than

Administrative Claims, DIP ABL Facility Claims, DIP Term Loan Facility Claims, Professional

Claims and Priority Tax Claims, which are addressed in Article II of the Plan, and which are

not required to be designated as separate Classes pursuant to section 1123(a)(1) of the

Bankruptcy Code). The Plan provides for the separate classification of Claims and Interests into nine (9) Classes, based on differences in the legal nature or priority of such Claims and Interests. Each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims and Interests within that Class, and such classification therefore satisfies section 1122 of the Bankruptcy Code. Valid business, factual, and legal reasons exist for the separate classification of the various Classes of Claims and Interests under the Plan, the classifications were not made for any improper purpose, and the creation of such Classes does not unfairly discriminate between or among Holders of Claims or Interests. Accordingly, the requirements of section 1123(a)(1) of the Bankruptcy Code are satisfied.

(b)    Specified Treatment of Unimpaired Classes (11 U.S.C. § 1123(a)(2)). The Plan specifies in Article III that Classes 1, 2, 3, 6, and 7 are Unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(c)    Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). The Plan specifies in Article III that Classes 4, 5-A, 5-B, 8, and 9 are Impaired under the Plan, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(d)    No Discrimination (11 U.S.C. § 1123(a)(4)). Article III of the Plan provides for the same treatment for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest. Accordingly the Plan satisfies section 1123(a)(4) of the Bankruptcy Code.

(e)    Implementation of the Plan (11 U.S.C. § 1123(a)(5)). Article VI of the Plan provides for adequate and proper means for implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

11

(f)     Nonvoting Equity Securities (11 U.S.C. § 1123(a)(6)). Article 6.12
of the Plan provides that the organizational documents of the Reorganized Debtors shall be
amended as may be required so that they are consistent with the provisions of the Plan and
otherwise comply with section 1123(a)(6) of the Bankruptcy Code. The Certificates of
Incorporation of the Reorganized Debtors provide for the prohibition of the issuance of non-
voting equity securities pursuant to and to the extent required by section 1123(a)(6) of the
Bankruptcy Code, as set forth in Exhibit D-1 of the Plan Supplement. Accordingly, the Plan
satisfies section 1123(a)(6) of the Bankruptcy Code.

(g)     Selection of Officers and Directors (11 U.S.C. § 1123(a)(7)).
Articles 6.13 and 6.16 of the Plan set forth the manner of selection of the directors and officers
of the Reorganized Debtors. The Debtors have properly and adequately disclosed or otherwise
identified the procedures for determining the identity and affiliations of all individuals proposed
to serve on or after the Effective Date as officers or directors of the Reorganized Debtors. The
appointment, employment, or manner of selection of such individuals or entities and the
proposed compensation and indemnification arrangements for officers and directors are
consistent with the interests of Holders of Claims and Interests and with public policy. Thus,
section 1123(a)(7) of the Bankruptcy Code is satisfied.

(h)     Additional Plan Provisions (11 U.S.C. §1123(b)). The Plan's
additional provisions are appropriate and consistent with the applicable provisions of the
Bankruptcy Code, including, without limitation, provisions for (i) the general settlement of
Claims and Interests, (ii) distributions to Holders of Claims, (iii) the disposition of Executory
Contracts and Unexpired Leases, (iv) the retention of, and the right to enforce, sue on, settle,

or compromise (or refuse to do any of the foregoing with respect to) certain claims or causes of action against third parties, to the extent not waived and released under the Plan or this Confirmation Order, (v) the issuance of New Quiksilver Common Stock, (vi) the dissolution of DC Direct, Inc., Fidra, Inc., Mt. Waimea, Inc., Q.S. Optics, Inc., Quiksilver Entertainment, Inc., and Quiksilver Westsuits, Inc., (vii) vesting of assets in the Reorganized Debtors, (viii) implementation of the MIP, (ix) authorization for entering into the restructuring transactions, (x) indemnification obligations, (xi) releases by the Debtors of the Released Parties, (xii) releases by the  Holders of Claims and Interests, as approved herein, of the Released Parties, and (xiii) the exculpation of the Exculpated Parties.

P.       Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Order, and other orders of this Court, thereby satisfying section 1129(a)(2) of the Bankruptcy Code.

Q.       Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). The Debtors and the Plan Sponsor have proposed the Plan in good faith and not by any means forbidden by law. In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the formulation and negotiation of the Plan and all modifications thereto. The Chapter 11 Cases were filed, and the Plan and all modifications thereto were proposed, with the legitimate and honest purpose of reorganizing and maximizing the value of the Debtors and the recovery to Claim Holders. Therefore, the Debtors and the Plan Sponsor have proposed the Plan in good faith and not by

13

any means forbidden by law, and section 1129(a)(3) of the Bankruptcy Code is satisfied with respect to the Plan.

        R.      <u>Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>. Any payment made or to be made by the Debtors for services or for costs and expenses in connection with the Chapter 11 Cases, including administrative expenses and substantial contribution claims under sections 503 and 507 of the Bankruptcy Code, or in connection with the Plan and incident to the Chapter 11 Cases, either has been approved by or is subject to the approval of the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

        S.      <u>Board of Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>. The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code. Specifically, the Debtors have disclosed (a) the identity and the affiliation of certain individuals proposed to serve on or after the Effective Date as directors or officers of the Reorganized Debtors and (b) that such directors and officers were selected by the Plan Sponsor in consultation with the Debtors. Additionally, the Debtors filed Exhibit G to the Plan Supplement (Maximum Percentage of New Quiksilver Common Stock to be Issued on Account of Management Incentive Plan).  Accordingly, section 1129(a)(5) of the Bankruptcy Code is satisfied with respect to the Plan.

        T.      <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>. Section 1129(a)(6) of the Bankruptcy Code is satisfied because the Plan does not provide for any change in rates over which a governmental regulatory commission has jurisdiction.

14

U.     Best Interests Test (11 U.S.C. § 1129(a)(7)). The liquidation analysis attached as Exhibit C to the Disclosure Statement, the Coulombe Declaration, and other evidence proffered or adduced at the Confirmation Hearing (1) are persuasive and credible, (2) are based upon reasonable and sound assumptions, (3) provide a reasonable estimate of the liquidation values of the Debtors upon hypothetical conversion to a case under chapter 7 of the Bankruptcy Code, and (4) establish that each Holder of a Claim or Interest in an Impaired Class that has not accepted the Plan will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on such date. Therefore, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

V.     Acceptance By Certain Classes (11 U.S.C. § 1129(a)(8)). Classes 1, 2, 3, 6 and 7 are Unimpaired by the Plan and, therefore, under section 1126(f) of the Bankruptcy Code, such Classes are conclusively presumed to have accepted the Plan. Class 4 and, other than with respect to QS Wholesale, Inc., Class 5-B have voted or been deemed to have voted to accept the Plan. Classes 5-A, with respect to QS Wholesale, Inc., 5-B, 8 and 9 have voted to reject or have been deemed to reject the Plan and, therefore, section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to these Classes. Accordingly, Confirmation is sought pursuant to section 1129(b) of the Bankruptcy Code.

W.     Treatment of Administrative Claims, Priority Tax Claims and Other Priority Claims (11 U.S.C. § 1129(a)(9)). The treatment of Administrative Claims and Other Priority Claims under the Plan satisfies the requirements of section 1129(a)(9)(A) and (B) of

15

the Bankruptcy Code, and the treatment of Priority Tax Claims under the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.  On the Effective Date, except as set forth in the Plan (i) the Holders of DIP ABL Facility Claims will be paid in full in Cash from the proceeds of the Exit Revolver Facility and (ii) Holders of DIP Term Loan Facility Claims will be paid in full in Cash from the proceeds of the Exit Revolver Facility (after satisfying the DIP ABL Facility Claims) and the Exit Rights Offering.  Other Administrative Claims and Priority Tax Claims will be paid in full in Cash at the time set forth in the Plan from the Reorganized Debtors' cash on hand from the Exit Facilities and operations.  This treatment satisfies section 1129(a)(9) of the Bankruptcy Code.

X.     Acceptance By Impaired Class (11 U.S.C. § 1129(a)(10)). At least one Impaired Class of Claims in the Chapter 11 Cases voted to accept the Plan determined without including any acceptance of the Plan by any "insiders."  Therefore, section 1129(a)(10) of the Bankruptcy Code is satisfied with respect to the Plan.

Y.     Feasibility (11 U.S.C. § 1129(a)(11)). The Plan does not provide for the liquidation of all or substantially all of the property of the Debtors. The Coulombe Declaration, the financial projections in Exhibit B to the Disclosure Statement, and the evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other credible evidence or sufficiently challenged in any of the objections to the Plan, and (iii) establish that the Plan is feasible and that confirmation is not likely to be followed by the liquidation of the Reorganized Debtors or the need for further financial reorganization of the Reorganized Debtors. Therefore, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

16

Z.    <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>. The Debtors have paid or, pursuant to the Plan, will pay by the Effective Date, fees payable under 28 U.S.C. § 1930, thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

AA.    <u>Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>. Section 6.16(b) of the Plan provides that, after the Effective Date, subject to the Reorganized Debtors' rights, if any, under applicable non-bankruptcy law, unless otherwise ordered by the Bankruptcy Court, the Reorganized Debtors shall continue to pay all retiree benefits, as that term is defined in section 1114 of the Bankruptcy Code, at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114 of the Bankruptcy Code, at any time prior to confirmation, for the duration of the period the Debtors have obligated themselves to provide such benefits, thereby satisfying section 1129(a)(13) of the Bankruptcy Code.

BB.    <u>Section 1129(b); Confirmation of The Plan Over Nonacceptance of Impaired Classes</u>. Class 5-A, with respect to QS Wholesale, Inc., Class 5-B, and Classes 8 and 9 (collectively, the "<u>Rejecting Classes</u>") have voted to or are deemed to reject the Plan. Pursuant to section 1129(b) of the Bankruptcy Code, the Plan may be confirmed notwithstanding that not all Impaired Classes have voted to accept the Plan. All of the requirements of section 1129(a) of the Bankruptcy Code with respect to such Classes, other than section 1129(a)(8), have been met. With respect to the Rejecting Classes, no Holders of Claims or Interests junior to the ~~Holders of~~<u>Claims or Interests in</u> such Classes will receive or retain any property under the Plan on account of such Claims or Interests. Additionally, no Class of Claims or Interests is receiving property under the Plan having a value more than the Allowed amount of such Claim or Interest. Accordingly, the Plan is fair and equitable.  The

17

Plan does not discriminate unfairly.  Thus, the Plan meets the requirements of section 1129(b) of the Bankruptcy Code, and may be confirmed under Bankruptcy Code section 1129(b) notwithstanding their rejection or deemed rejection of the Plan.

CC.    Principal Purpose of Plan (11 U.S.C. § 1129(d)). The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 (15 U.S.C. § 77e). Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

DD.    Plan Settlements. In accordance with Bankruptcy Rule 9019, the Plan is dependent upon and incorporates the terms of various compromises and settlements (the "Plan Settlements"), including, without limitation, the Committee Settlement Modifications. The Plan Settlements are interrelated and interdependent settlements which, together with the other provisions of the Plan, constitute a global settlement of certain issues and disputes between and among the Debtors and their major constituents. The Plan Settlements are fair, equitable, reasonable, and appropriate in light of the facts and circumstances, and are in the best interests of the Debtors, their Estates, and the Holders of Claims and Interests.

EE.    Issuance of New Quiksilver Common Stock.  Issuance of the New Quiksilver Common Stock and allocation thereof pursuant to the New Quiksilver Common Stock Allocation is an essential element of the Plan and is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests. The Debtors are authorized, without further approval of this Court or any other party, to issue the New Quiksilver Common Stock in accordance with the Plan, including the New Quiksilver Common Stock Allocation, and to execute and deliver all agreements, documents, instruments and certificates relating thereto.

18

FF.    <u>Rights Offerings</u>.  Consummation of the Rights Offerings is an essential element of the Plan and is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests. The Debtors are authorized, without further approval of this Court or any other party, to consummate the Rights Offerings in accordance with the Plan, as modified by the Committee Settlement Modifications, and the procedures approved by the Backstop and Rights Offering Procedures Approval Order, and to execute and deliver all agreements, documents, instruments and certificates relating thereto.

GG.    <u>Exit Facilities</u>. The Exit Revolver Facility and the Exit Term Loan Facility are essential elements of the Plan, and entry into the Exit Facilities is fair and reasonable and in the best interests of the Debtors, their Estates, and the Holders of Claims and Interests. The Debtors have exercised sound business judgment in determining to enter into the Exit Facilities and have provided adequate notice thereof. The Exit Revolver Facility and the Exit Term Loan Facility have each been negotiated in good faith and at arm's length among the Debtors and the Exit Revolver Lenders and the Exit Term Loan Lenders (collectively, the "<u>Exit Lenders</u>"), respectively, and any credit extended and loans made to the Reorganized Debtors by the Exit Lenders pursuant to the Exit Facilities, and any fees paid thereunder, are deemed to have been extended, issued, and made in good faith.

HH.    <u>Distributions of Securities Are Subject to Exemptions</u>. The offering, issuance, and distribution of any securities pursuant to the Plan, including the offering, issuance, and distribution of the New Quiksilver Common Stock, are subject to or made in good faith and in reliance upon exemptions from the requirements of section 5 of the Securities Act and any state or local laws requiring registration for offer or sale of a security or

19

registration or licensing of an issuer of, underwriter of, or broker dealing in, a security pursuant to section 1145(a) of the Bankruptcy Code ("Section 1145"), section 4(a)(2) of the Securities Act ("Section 4(a)(2)"), or any other available exemption from registration under the Securities Act, as applicable.

II.    Executory Contracts. The Debtors have exercised reasonable business judgment in determining whether to assume or reject their executory contracts and unexpired leases (including licenses) pursuant to Article VII of the Plan. Each assumption or rejection of an executory contract or unexpired lease (including licenses) pursuant to Article VII of the Plan and the Schedule of Assumed Contracts and Unexpired Leases included in the Plan Supplement, as amended, shall be legal, valid and binding upon the Debtors or Reorganized Debtors and their assignees or successors and all non-debtor parties (and their assignees or successors) to such executory contract or unexpired lease, all to the same extent as if such assumption or rejection had been effectuated pursuant to an order of the Court entered before the Confirmation Date under section 365 of the Bankruptcy Code.

JJ.    Adequate Assurance. The Debtors have cured, or provided adequate assurance that the Reorganized Debtors or their successors or assignees will cure, defaults (if any) under or relating to each of the executory contracts and unexpired leases that are being assumed by the Debtors pursuant to the Plan. In addition, the Debtors have provided adequate assurance of future performance regarding the executory contracts and unexpired leases that are being assumed by the Debtors as contemplated pursuant to section 365(b)(1)(C) of the Bankruptcy Code.

KK.    <u>Substantive Consolidation.</u> The deemed substantive consolidation of the Debtors' Estates and Chapter 11 Cases for distribution purposes only contemplated by Section 6.1 of the Plan, which is unopposed, is consistent with, and permissible under, applicable law in the Third Circuit. No party has objected to the deemed substantive consolidation for distribution purposes only, and voting parties by both dollar amount and number have voted in favor of the Plan, which is predicated upon entry of an order substantively consolidating the Estates and Chapter 11 Cases for distribution purposes only.

LL.    <u>Releases and Discharges.</u> The discharge, release, indemnification and exculpation provisions described in Article X of the Plan, including Sections 10.2, 10.4, 10.5, 10.6, 10.7, and 10.8, constitute good faith compromises and settlements of the matters covered thereby, are otherwise approved by this Court as appropriate pursuant to applicable law, and/or are consensual. Such compromises and settlements are (i) made in exchange for adequate consideration, (ii) in the best interests of the Debtors, their Estates, Claim Holders and other parties in interest, (iii) fair, equitable and reasonable, and (iv) integral elements of the restructuring and resolution of the Chapter 11 Cases in accordance with the Plan. Each of the discharge, release, injunction, indemnification and exculpation provisions set forth in the Plan: (a) is within the jurisdiction of the Court under 28 U.S.C. §§ 1334(a), (b), and (d); (b) is an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (c) is an integral element of the transactions incorporated into the Plan; (d) confers a material benefit on, and is in the best interests of, the Debtors, their Estates, and the Holders of Claims; (e) is important to the overall objectives of the Plan to finally resolve all Claims and Interests among or against the parties-in-interest in the Chapter 11 Cases with respect to the

Debtors, their organization, capitalization, operation, and reorganization; and (f) is consistent with sections 105, 1123, 1129, and other applicable provisions of the Bankruptcy Code. The failure to effect the discharge, releases, and exculpation provisions set forth in the Plan, as approved by this Confirmation Order, would seriously impair the Debtors' ability to confirm and implement the Plan.

MM.    Consummation of the Backstop Commitment Letter and the Rights Offerings. Without limiting, impairing, or modifying any previous order of this Court approving or governing the Rights Offerings, the Backstop Commitment Letter, or the rights of the Backstop Parties, the proposed terms and conditions of the Rights Offerings and Backstop Commitment Letter, as amended by the Committee Settlement Modifications, are fair and reasonable and are in the best interests of the Debtors, their Estates, and the Holders of Claims and Interests, and do not conflict with applicable law. The Backstop Commitment Letter and the Rights Offerings were negotiated at arm's length and in good faith, including in connection with the offer, issuance and sale of New Quiksilver Common Stock pursuant thereto and to the Plan.

NN.    Plan Conditions to Confirmation. Any and all conditions to confirmation set forth in the Plan have been satisfied or waived in accordance with the terms of the Plan.

OO.    Plan Conditions to Consummation. Each of the conditions to the Effective Date, as set forth in Section 11.1 of the Plan, is reasonably likely to be satisfied or waived in accordance with the terms of the Plan.

PP.    Judicial Notice. The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court and/or its duly-appointed agent,

including, without limitation, all pleadings and other documents filed, all orders entered, and all

evidence and arguments made, proffered, or adduced at the hearings held before the Court

during the pendency of the Chapter 11 Cases.

QQ.    <u>Burden of Proof</u>. The Debtors, as proponents of the Plan, have met their

burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a

preponderance of the evidence, which is the applicable evidentiary standard. This Court also

finds that the Debtors have satisfied the elements of sections 1129(a) and (b) of the

Bankruptcy Code under the clear and convincing standard of proof.

RR.    <u>Retention of Jurisdiction</u>. This Court properly may retain jurisdiction

over the matters set forth in Article XII of the Plan.

SS.    <u>Waiver of Stay</u>. Under the circumstances, it is appropriate that the 14-

day stay imposed by Bankruptcy Rules 3020(e) and 7062(a) be waived.

**DECREES**

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.    <u>Findings of Fact and Conclusions of Law</u>.  The above-referenced findings

of fact and conclusions of law are hereby incorporated by reference as though fully set forth

herein and constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule

7052, made applicable herein by Bankruptcy Rule 9014.  To the extent that any finding of fact

is determined to be a conclusion of law, it is deemed so, and vice versa.

**Confirmation of Plan**

2.    <u>Confirmation</u>. The Plan, attached hereto as <u>Exhibit A</u>, including all

Exhibits attached thereto or included in the Plan Supplement, is approved and confirmed under

section 1129 of the Bankruptcy Code. The terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order.

3.      <u>Notice</u>. Notice of the Plan, its exhibits, and all amendments and modifications thereto, the Disclosure Statement and the Solicitation Packages was proper and adequate.

4.      <u>Objections</u>. All Objections and all reservations of rights that have not been withdrawn, waived, or settled, pertaining to the confirmation of the Plan are overruled on the merits.

5.      <u>Binding Effect</u>.  Upon the occurrence of the Effective Date, the terms of the Plan are immediately effective and enforceable and deemed binding on the Debtors, the Reorganized Debtors, and any and all holders of Claims or Interests (regardless of whether such holders of Claims or Interests have, or are deemed to have, accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan or the Rights Offerings, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

6.      <u>Effectiveness of All Actions</u>. All actions contemplated by the Plan, including in connection with the Backstop Commitment Letter and the Rights Offerings, are hereby authorized and approved in all respects (subject to the provisions of the Plan). The approvals and authorizations specifically set forth in this Confirmation Order are nonexclusive and are not intended to limit the authority of the Debtors or the Reorganized Debtors or any officer or director thereof to take any and all actions necessary or appropriate to implement,

effectuate and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order. Pursuant to this Confirmation Order and applicable law and consistent with the Plan, the Debtors and the Reorganized Debtors are authorized and empowered, without action of their respective stockholders or further action of the members or boards of directors or managers, to take any and all such actions as any of their executive officers may determine are necessary or appropriate to implement, effectuate and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order.

7.    <u>Vesting of Assets and Operation as of the Effective Date</u>. Except as otherwise explicitly provided in the Plan, on the Effective Date, all property comprising the Estates, including Causes of Action that are not released pursuant to the Plan (including, without limitation, pursuant to Article 10.4 or 10.6 thereof) or an order of the Bankruptcy Court, whether arising before or after the Petition Date, including any actions or categories of actions specifically enumerated in Exhibit J to the Plan Supplement, shall vest in the Reorganized Debtors which, as Debtors, owned such property or interest in property as of the Effective Date, free and clear of all Claims, Liens, charges, encumbrances, rights, and Interests. As of and following the Effective Date, the Reorganized Debtors may operate their businesses and use, acquire, and dispose of property and settle and compromise Claims, Interests, or Causes of Action without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or this Confirmation Order.  Notwithstanding the foregoing, pursuant to Article 6.17 of the Plan, solely with respect to Avoidance Actions, only those Avoidance Actions specifically enumerated in a list of retained Causes of Action contained in the Plan Supplement shall vest in

the Reorganized Debtors, and all other Avoidance Actions shall be waived and otherwise released

8.      Substantive Consolidation. In light of the fact that deemed substantive consolidation for distribution purposes will not prejudice any party and is appropriate given the structure of the Plan and the treatment of creditors thereunder, the substantive consolidation of the Chapter 11 Cases and Estates that comprise the Debtors is in the best interests of the Debtors' stakeholders and is appropriate under Bankruptcy Code section 105(a) and is hereby approved.

9.      Exit Facilities.  The Exit Facilities are hereby authorized and approved in all respects (subject to the provisions of the Plan). The Debtors, with the consent of the Plan Sponsor, and the Reorganized Debtors are authorized in all respects, without further approval of the Bankruptcy Court or any other party, to (a) execute and deliver, or cause to be executed and delivered, all agreements, documents, instruments, and certificates relating to the Exit Facilities (the "Exit Facility Documents"), and to perform its their obligations thereunder (including additional syndication of the Exit Financing (if any)), including but, not limited to, any documents related to the loans and other extensions of credit contemplated by the Exit Facilities, any guarantees thereof and any other documents executed in connection therewith;, (b) to grant Liens to secure such loans, other extensions of credit, and guarantees;, (c) borrow under such Exit Facility Documents and use the proceeds of such borrowings for any purpose permitted thereunder, and (d) perform all of their obligations under the Exit Facility Documents, including the payment of all fees, expenses, losses, damages, indemnities and other amounts (including any applicable refinancing premiums and applicable exit fees) provided

26

under the Exit Facility Documents. As of the Effective Date, without any further action by the Court or the directors, officers, managers, members, or stockholders of the Reorganized Debtors, the Liens and security interests granted pursuant to the Exit Facility Documents will constitute legal, valid and enforceable Liens and security interests in the collateral (as defined in the Exit Facility Documents and any other documents to be executed and delivered pursuant thereto) and such Liens and security interests will constitute legal, valid and binding obligations of the Reorganized Debtors. The holder(s) of Liens under the Exit Facility Documents are authorized to file, with the appropriate authorities, financing statements and other documents (the "Exit Facility Perfection Documents") or to take possession of or control over, or to take any other action in order to evidence, validate and perfect such Liens or security interests. Subject in all cases to the terms and provisions of the Exit Facility Documents, the Debtors and the Reorganized Debtors (or their affiliates) are authorized to execute and deliver to the Exit Lenders any such agreements, financing statements, instruments and other documents, or obtain all governmental approvals and consents the Exit Lenders may reasonably request or that are required to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and this Confirmation Order, and are authorized to cooperate to make all other filings and recordings that otherwise would be reasonably necessary under applicable law to perfect and/or give notice of such Liens and security interests to third parties. Whether the Exit ~~Financing~~Facility Perfection Documents are filed prior to, on or after the Effective Date (i) such Exit ~~Financing~~Facility Perfection Documents will be valid, binding, enforceable and in full force and effect as of the Effective Date, and (ii) the Liens and

27

security interests granted under or in connection with the Exit Facility Documents will become valid, binding and enforceable obligations of the Reorganized Debtors as of the Effective Date. The granting of such Liens, the making of such loans and other extensions of credit and such guarantees, the payment of fees contemplated thereunder, and the execution and consummation of the Exit Facilities have been and are being undertaken in good faith, for legitimate business purposes, for reasonably equivalent value, and will be deemed not to constitute a fraudulent conveyance or fraudulent transfer, will not otherwise be subject to avoidance, or subject to recharacterization or subordination (including equitable subordination) for any purpose whatsoever under the Bankruptcy Code or any other applicable non-bankruptcy law, and the priorities of such Liens and security interests will be as set forth in the Exit Facility Documents.

      10.   <u>New Corporate Governance Documents</u>.  The terms of the New Corporate Governance Documents as amended by the Second Amendment to the Plan Supplement and all related documents are approved in all respects.  Notwithstanding anything to the contrary herein or in the Plan, prior to the Effective Date, the New Corporate Governance Documents shall not be amended from the versions filed on January 28, 2016 in the Chapter 11 Cases in any way adversely affecting the rights of Holders of Class 5-A Allowed Unsecured Notes Claims thereunder without the consent of the Creditors' Committee, such consent not to be unreasonably withheld, conditioned, or delayed. On the Effective Date, without any further action by the Court or the directors, officers, or equity holders of any of the Reorganized Debtors, each Reorganized Debtor, as applicable, will be and is authorized to enter into and/or execute the New Corporate Governance Documents and any other documents

Redline Quiksilver - Confirmation Order 939197v4B and Quiksilver - Confirmation Order 939197v10C 1/29/2016 8:36:11 AM

or agreements related thereto, perform all of its obligations thereunder, and take such other actions as any of the responsible officers of such Reorganized Debtor may determine are necessary, appropriate, or desirable in connection with the consummation of the transactions contemplated by, or related to, the New Corporate Governance Documents.  As of the Effective Date, all holders of Claims that receive New Quiksilver Common Stock under the Plan or the Rights Offerings will be deemed to have executed the foregoing documents, as applicable, regardless of whether any party actually executes the applicable document.

11.    <u>Issuance of New Quiksilver Common Stock</u>. Issuance of the New Quiksilver Common Stock in accordance with the Plan or the Rights Offerings, including the New Quiksilver Common Stock Allocation is approved. The Debtors and the Reorganized Debtors, as applicable, are authorized and empowered, without further approval of this Court or any other party, to take such actions and to perform such acts as may be necessary, desirable, or appropriate to implement the issuance of the New Quiksilver Common Stock in accordance with the Plan and the Rights Offerings and to execute and deliver all agreements, documents, securities, instruments, and certificates relating thereto. The New Quiksilver Common Stock to be issued is hereby deemed issued as of the Effective Date regardless of the date on which it is actually distributed. All New Quiksilver Common Stock issued by the Reorganized Debtors pursuant to the provisions of the Plan and the Rights Offerings is hereby deemed to be duly authorized, validly issued, fully paid, and non-assessable. The terms of the Plan Transaction Documents shall not result in any further issuance of New Quiksilver Common Stock or any dilution to New Quiksilver Common Stock issued pursuant to the Plan in accordance with the New Quiksilver Common Stock Allocation.

29

12.     <u>Consummation of the Backstop Commitment Letter and the Rights Offerings</u>.  To the extent not authorized by previous order of this Court, the Debtors and the Reorganized Debtors are hereby authorized, without further notice to or action, order, or approval of this Court or any other person or Entity, to (a) perform under the Backstop Commitment Letter, (b) execute and deliver any agreements, documents, instruments, and certificates relating to the Rights Offerings and the Backstop Commitment Letter that may be necessary or appropriate, including in connection with the offer, issuance, or sale of New Quiksilver Common Stock pursuant thereto, and (c) consummate the transactions contemplated by the Backstop Commitment Letter and the Rights Offering Procedures in accordance with the terms thereof.

13.     <u>Cancellation of Notes, Instruments, Certificates, and Other Documents</u>. On the Effective Date, except as otherwise provided in the Plan or any Plan Transaction Document, any document evidencing any notes, instruments, certificates, bond, indenture, purchase right, option, warrant, or other instrument or document, directly or indirectly, evidencing any Claim or Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligations of the Debtors that are specifically reinstated or otherwise Unimpaired under the Plan) shall be deemed cancelled and the obligations of the Debtor or the Reorganized Debtors and any non-Debtor Affiliates thereunder or in any way related thereto shall be discharged.

14.     <u>Exemptions from Registration</u>. The Debtors are offering, issuing, and distributing Securities pursuant to the Plan, including offering, issuing, and distributing New Quicksilver Common Stock in good faith reliance upon exemption from the registration

30

requirements of the Securities Act and similar state statutes pursuant to and subject to Section 1145 and Section 4(a)(2).

15.    <u>Restructuring Transactions</u>. The Debtors, with the consent of the Plan Sponsor, or the Reorganized Debtors, as applicable, are authorized to enter into and effectuate the restructuring transactions contemplated by the Plan, including, without limitation, the entry into and consummation of the transactions contemplated by, or related to, the Rights Offerings, the Exit Facilities, the New Corporate Governance Documents, any other Plan Transaction Document, and those contemplated under Article 6.9 thereof, and may take any actions as may be necessary or appropriate to effect a corporate restructuring of the overall corporate structure of the Reorganized Debtors, and may take other actions on or after the Effective Date, as and to the extent provided in the Plan.  Any transfers of assets, stock, or equity interests effected through the Plan or the Rights Offerings are hereby approved and shall not constitute fraudulent conveyances or fraudulent transfers or otherwise be subject to avoidance. Except as otherwise provided in the Plan, each Reorganized Debtor, as applicable, shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, under the applicable law in the jurisdiction in which such applicable Debtor is incorporated or formed.

16.    <u>Exemption from Certain Transfer Taxes and Recording Fees</u>. Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan, including without limitation the Exit Facility Documents, or any transfers of property made in connection therewith (whether such transfers are made by the Debtors, Reorganized Debtors,

31

an administrative agent under the Exit Facility Documents, or other Person) shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment to the fullest extent contemplated by section 1146(a) of the Bankruptcy Code, and upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. The Bankruptcy Court shall retain specific jurisdiction with respect to these matters.

17.     Return of Deposits.  All utilities, including any Entity that received a deposit or other form of adequate assurance of performance under section 366 of the Bankruptcy Code during these Chapter 11 Cases, must return such deposit or other form of adequate assurance of performance to the Debtors or the Reorganized Debtors, as the case may be, no later than 14 days after the Effective Date, if not returned earlier.

18.     Continued Effect of Stays and Injunction.  Unless otherwise provided in the Plan or this Confirmation Order, all injunctions or stays in effect in these Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or any order of the Court that is in existence on the date of the entry of this Confirmation Order shall remain in full force and effect until the Effective Date.

**Reservations of Rights**

19.     Notwithstanding any provision to the contrary, nothing in the Plan or Confirmation Order relieves any person or entity from complying with any and all applicable federal securities laws except to the extent contemplated by Section 1125(e) of the Bankruptcy Code.

### Unexpired Leases and Executory Contracts

20.     Rejection and Assumption of Executory Contracts and Unexpired Leases. The Executory Contract and Unexpired Lease provisions of Article VII are approved.

(a)     Automatic Rejection. Except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory Contract or Unexpired Lease: (a) is listed on the Schedule of Assumed Executory Contracts and Unexpired Leases contained in the Plan Supplement; (b) has been previously assumed by the Debtors by Final Order of the Bankruptcy Court or has been assumed by the Debtors by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date; (c) is the subject of a motion to assume or reject pending as of the Effective Date; (d) is an Executory Contract related to any Intercompany Claim; or (e) is otherwise assumed pursuant to the terms of the Plan. This Confirmation Order constitutes an order of the Bankruptcy Court approving such rejections pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

(b)     Counterparties to Executory Contracts or Unexpired Leases that are deemed rejected as of the Effective Date shall have the right to assert any Claim on account of the rejection of such Executory Contracts or Unexpired Leases, including under

section 502(g) of the Bankruptcy Code, subject to compliance with the requirements of the Plan and this Confirmation Order.

(c)    Claims Procedures Related to Rejection of Executory Contracts or Unexpired Leases. Unless otherwise provided by a Bankruptcy Court order, any proofs of Claim asserting Claims arising from the rejection of the Executory Contracts and Unexpired Leases pursuant to the Plan or otherwise must be filed with the Claims and Solicitation Agent no later than 30 days after the later of the Effective Date or the effective date of rejection. Any proofs of Claim arising from the rejection of the Executory Contracts or Unexpired Leases that are not timely filed shall be disallowed automatically and forever barred, estopped, and enjoined from assertion and shall not be enforceable against the Debtors or the Reorganized Debtors, without the need for any objection by the Reorganized Debtors or any further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a proof of Claim to the contrary. All Allowed Claims arising from the rejection of the Executory Contracts and Unexpired Leases shall be classified as General Unsecured Claims.

(d)    Assumption of Executory Contracts and Unexpired Leases.

Notwithstanding section 365(d)(4) of the Bankruptcy Code, the Debtors may assume any Executory Contract or Unexpired Lease by motion prior to the Effective Date of the Plan.

Except as provided in the Plan, on the Effective Date, each Executory Contract or Unexpired Lease listed on the Schedule of Assumed Executory Contracts and Unexpired Leases contained in the Plan Supplement shall be assumed, or assumed and assigned, as applicable, and shall vest

34

in and be fully enforceable by the Reorganized Debtors or its assignee in accordance with its terms, except as modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing or providing for its assumption or applicable federal law. Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Cures, Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

(e)    Cure Procedures and Payments Related to Assumption of Executory Contracts and Unexpired Leases. With respect to each of the Executory Contracts or Unexpired Leases listed on the Schedule of Assumed Executory Contracts and Unexpired Leases, the Debtors, with the consent of the Plan Sponsor, have designated a proposed Cure in accordance with the terms of the Plan, and the assumption of such Executory Contract or Unexpired Lease is conditioned upon the disposition of all issues with respect to the Cure pursuant to the procedures set forth in the Plan, as applicable. Except with respect to Executory Contracts and Unexpired Leases for which the Cure is $0, such Cure shall be satisfied by the Reorganized Debtors or their assignee, if any, by payment of the Cure in Cash within 30 days following the occurrence of the Effective Date or as soon as reasonably practicable thereafter, or on such other terms as may be ordered by the Bankruptcy Court or agreed upon by the parties to the applicable Executory Contract or Unexpired Lease without

35

any further notice to or action, order, or approval of the Bankruptcy Court. Any provisions or terms of the Executory Contracts or Unexpired Leases to be assumed pursuant to the Plan that are, or may be, alleged to be in default, whether known or unknown, monetary or non-monetary, shall be satisfied solely by Cure, or by an agreed-upon waiver of Cure. If there is a dispute regarding such Cure, the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then payment of Cure shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtors, with the consent of the Plan Sponsor, or the Reorganized Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease.

(f)    This Confirmation Order constitutes an order of the Bankruptcy Court approving the assumption of the Executory Contracts and Unexpired Leases listed on the Schedule of Assumed Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, subject to the following subparagraph (g) and Articles 7.2(g) and (h) of the Plan.

(g)    Pursuant to Article 7.2(g) of the Plan, if an objection to the proposed assumption and/or to the Cure of an Executory Contract or Unexpired Lease is timely filed and received in accordance with the procedures set forth in Article 7.2(f) of the Plan, and the applicable parties do not reach a consensual resolution of the objection, then a hearing with respect to such Cure shall be scheduled by the Bankruptcy Court or the Debtors or Reorganized Debtors. Pursuant to Section 7.2(h) of the Plan, if the Cure dispute with

respect to Executory Contracts and/or Unexpired Leases listed on the Schedule of Assumed

Executory Contracts and Unexpired Leases is not resolved by the Effective Date, the Debtors,

with the consent of the Plan Sponsor, or the Reorganized Debtors (as applicable), may

designate any such contract for rejection at any time prior to the payment of the Cure. The

rights of the Debtors or the Reorganized Debtors, as applicable, are reserved either to reject or

nullify the assumption of any Executory Contract or Unexpired Lease after a Final Order

determining the Cure to assume such Executory Contract or Unexpired Lease is made. Any

such rejection shall be deemed to be as of the Effective Date, and the counterparty to such

rejected Executory Contract or Unexpired Lease shall have the right to assert any Claim on

account of such rejection in accordance with the procedures set forth in the Plan.

> (h)    Article 7.3(a) of the Plan is hereby amended and restated in its
entirety to read as follows:

> > Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, the Plan Documents, the Plan Supplement, the Confirmation Order, any other document related to any of the foregoing or any other order of the Bankruptcy Court (including any other provision that purports to be preemptory or supervening or grants an injunction or release, including, but not limited to, those set forth in Article X of the Plan): (i) on the Effective Date, the Reorganized Debtors shall assume all insurance policies, as amended or modified, issued or providing coverage at any time to the Debtors, their affiliates or predecessors of any of the foregoing and all agreements related thereto, as amended or modified (such policies and agreements, collectively, the "Insurance Contracts"); (ii) nothing in the Disclosure Statement, the Plan, the Plan Documents, the Plan Supplement or the Confirmation Order alters, modifies or otherwise amends the terms and conditions of (or the coverage provided by) any of the Insurance Contracts or releases or discharges the security interest and/or liens insurers and third party administrators have on any collateral and/or security, except that as of the Effective Date, the Reorganized Debtors shall become and remain liable for all of the Debtors' obligations and liabilities thereunder regardless of whether such obligations and liabilities arise before or after the Effective Date, provided, however that the Debtors or Reorganized Debtors, as applicable, shall retain the right to challenge any amounts owed under the Insurance Contracts in accordance with their terms, and the rights and

37

obligations under the Insurance Contracts shall remain fully enforceable after the Effective Date of this Plan; (iii) nothing in the Disclosure Statement, the Plan, the Plan Documents, Plan Supplement, the Confirmation Order, any prepetition or administrative claim bar date order (or notice) or claim objection order alters or modifies the duty, if any, that the insurers and/or third party administrators have to pay claims covered by the Insurance Contracts and their right to seek payment or reimbursement from the Debtors (or after the Effective Date, the Reorganized Debtors) or draw on any collateral or security therefor in accordance with the terms of the Insurance Contracts; (iv) insurers and third party administrators shall not need to nor be required to file or serve a Cure dispute or a request, application, claim, proof of claim or motion for payment and shall not be subject to any Bar Date or similar deadline governing Cure Amounts or Claims; (v) the Claims of insurers and/or third party administrators (whether arising before or after the Effective Date) under Insurance Contracts shall be paid in full in the ordinary course by the Debtors (or, after the Effective Date, the Reorganized Debtors), whether as an Allowed Administrative Claim or otherwise regardless of when such amounts are or shall become liquidated, due or paid and shall not be released or discharged by the Plan or the Confirmation Order; and (vi) the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in Article X of the Plan, if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court, solely to permit: (A) claimants with valid claims covered by any of the Insurance Contracts ("Insured Claims") to proceed with their claims; (B) insurers and/or third party administrators to administer, handle, defend, settle, and/or pay, in the ordinary course of business and subject to the terms of the Insurance Contracts, without further order of the Bankruptcy Court, (i) all Insured Claims, and (ii) all costs in relation to each of the foregoing; (C) the insurers and/or third party administrators to draw against any or all of any collateral or security provided by or on behalf of the Debtors (or the Reorganized Debtors, as applicable) at any time and to hold the proceeds thereof as security for the obligations of the Debtors (and the Reorganized Debtors, as applicable) to the applicable insurers and/or third party administrators and/or apply such proceeds to the obligations of the Debtors (and the Reorganized Debtors, as applicable) in accordance with the terms of the Insurance Contracts, and (D) the insurers and/or third party administrators to (i) cancel any policies under the Insurance Contracts, and (ii) take other actions relating thereto, to the extent permissible under applicable non-bankruptcy law, each in accordance with the terms of the Insurance Contracts.

**Bar Dates and Other Deadlines**

21.     The bar dates, deadlines and claims procedures set forth in this

Confirmation Order and in Articles VIII, IX and Article XIII of the Plan are hereby approved,

including but not limited to the following:

(a)     Claims Bar Dates for Administrative Claims. Except as otherwise

provided herein or in the Plan and as set forth in Articles 2.2 or 2.3 of the Plan, all requests

for payment of an Administrative Claim must be filed, in substantially the form of the

Administrative Claim Request Form contained in the Plan Supplement, with the Claims and

Solicitation Agent and served on counsel for the Debtors or the Reorganized Debtors, as

applicable, no later than the Administrative Claims Bar Date. Any request for payment of an

Administrative Claim pursuant to Article 2.1 of the Plan that is not timely filed and served shall

be Disallowed automatically without the need for any objection from the Reorganized Debtors.

**Settlements, Discharge of the Debtor, Releases, and Injunctions**

22.     Plan Settlements.  The Plan Settlements and the respective terms thereof

as set forth in the Plan are, including the Committee Settlement Modifications, are hereby

approved pursuant to Bankruptcy Rule 9019 as fair, equitable, prudent, reasonable, and

appropriate compromises of the issues and disputes resolved by the Plan Settlements, are in the

best interest of the Debtors, the Reorganized Debtors and their Estates and Holders of Claims

and Interests, are binding upon all Persons affected thereby, and shall be effectuated in

accordance with the terms thereof.  The Debtors and the Reorganized Debtors are authorized

to take all actions necessary to implement the terms of the Plan Settlements.

39

23.    <u>Discharge of Debtors</u>. Article 10.2 of the Plan is incorporated into this Confirmation Order as if set forth in full herein, is found to be fair and reasonable, is hereby approved in its entirety, and shall be, and hereby is effective and binding subject to the terms thereof.

24.    For the avoidance of doubt, nothing in the Plan or in this Confirmation Order shall affect the applicability, if any, of section 1141(d)(6) of the Bankruptcy Code.

25.    <u>Release by Debtors</u>. Article 10.4 of the Plan is incorporated into this Confirmation Order as if set forth in full herein, is found to be fair and reasonable, is hereby approved in its entirety, is so ordered, and shall be immediately effective and binding upon the Effective Date of the Plan without further action or notice by this Court, any of the parties to such release, or any other party.

26.    <u>Release by Holders of Claims and Interests</u>. Article 10.5 of the Plan is incorporated into this Confirmation Order as if set forth in full herein, is found to be fair and reasonable, is hereby approved in its entirety, is so ordered, and shall be immediately effective and binding upon the Effective Date of the Plan without further action or notice by this Court, any of the parties to such release, or any other party. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, none of the liens, mortgages, Existing Letters of Credit (as defined in the DIP ABL Facility Documents[4]), obligations under Bank Products (as defined in the DIP ABL Facility Documents), Excluded DIP Obligations (as defined in the DIP ABL Facility Documents), or other security interests set forth in DIP ABL Facility Documents are

---

[4]    As used herein, the "DIP ABL Facility Documents" means the agreements, documents, instruments, and certificates relating to the DIP ABL Facility.

40

Redline Quiksilver - Confirmation Order 939197v4B and Quiksilver - Confirmation Order 939197v10C 1/29/2016 8:36:11 AM

released, solely to the extent necessary to effectuate the agreements, documents, instruments, and certificates relating to the Exit Revolver Facility.

   27. <u>Exculpation and Limitation of Liability</u>. Article 10.6 of the Plan is incorporated into this Confirmation Order as if set forth in full herein, is found to be fair and reasonable, is hereby approved in its entirety, and shall be, and hereby is, effective and binding subject to the terms thereof.

   28. <u>Injunctions</u>.  Article 10.8 of the Plan is incorporated into this Confirmation Order as if set forth in full herein, is found to be fair and reasonable, is hereby approved in its entirety, and shall be, and hereby is, effective and binding subject to the terms thereof.

   29. <u>Subordination Rights</u>. Article 10.9 of the Plan is incorporated into this Confirmation Order as if set forth in full herein, is found to be fair and reasonable, is hereby approved in its entirety, and shall be, and hereby is, effective and binding subject to the terms thereof.

   30. <u>Release of Liens</u>. Except as otherwise provided in the Plan, (including Articles 4.2 and 4.3), or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, including the Exit Facility Documents or any other document executed in connection therewith, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released (except for such liens as may be retained in favor of the DIP Agents to secure the Excluded DIP Obligations), and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the

41

Reorganized Debtors and its successors and assigns. Without limiting the forgoing, to the extent that any Holder of a DIP Claim that has been satisfied or discharged pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's DIP Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all commercially reasonable steps requested by the Debtor or the Reorganized Debtors, at the expense of the Reorganized Debtors, that are necessary to cancel and/or extinguish such publicly-filed Liens and/or security interests. To the extent that the Secured Notes Indenture Trustee or other Servicer has filed or recorded publicly any Liens and/or security interests or obtained a pledge of assets (whether under domestic or foreign law) to secure the Debtors' obligations under the Secured Notes or otherwise, the Secured Notes Indenture Trustee or such other Servicer, as the case may be, shall take any and all commercially reasonable steps requested by the Debtors the Reorganized Debtors, at the expense of the Debtors, that are necessary to cancel and /or to extinguish such publicly-filed Liens and/or security interests, or release such pledge (whether under domestic or foreign law). The Debtors or other authorized representative are authorized to and may issue, execute, deliver, file or record a power of attorney or any other instrument necessary or appropriate to effectuate and implement the release of such Liens and/or security interests, or release of such pledge (whether under domestic or foreign law) as is necessary to effectuate and implement the Plan and this Order.

### Resolution of Objections

31.     The Texas Comptroller Objection filed by the Texas Comptroller of Public Accounts (the "Texas Comptroller") shall be deemed withdrawn; provided that,

notwithstanding anything to the contrary in the Plan, this Order or any other order of this Court, the following provisions apply to the treatment of the claims of the Texas Comptroller: (i) nothing provided in the Plan or this Confirmation Order shall affect or impair any setoff rights of the Texas Comptroller; (ii) nothing provided in the Plan or this Confirmation Order shall affect or impair any rights of the Comptroller to pursue any non-debtor third parties for tax debts or claims; (iii) interest pursuant to Bankruptcy Code sections 1129(a)(9)(C)(i) and 511 shall be paid on the Texas Comptroller's Allowed Claim that is an Allowed Priority Tax Claim or an Allowed Other Secured Claim from the Effective Date until such Allowed Claim is paid in full; (iv) the Texas Comptroller may amend its claim upon completion of the ongoing sales tax audit; provided, however, any amendment to the Texas Comptroller's claim shall be filed within 21 days of completion of the ongoing sales tax audit; and (v) in the event that any payment on account of an Allowed Claim of the Texas Comptroller is not made in accordance with the Plan, the Texas Comptroller may seek enforcement of the entire amount of its Allowed Claims in the Bankruptcy Court.

32.    In the event that the Debtors reject that certain Sponsorship and Consulting Services Agreement, dated as of June 1, 2014 (the "Delong Agreement"), between Quiksilver Inc. and Robert Delong Touring, Inc. f/s/o Robert Delong, notwithstanding anything to the contrary herein or in the Plan, (i) Mr. Delong will be excused from performing any obligations under the Delong Agreement from and after the date of rejection, (ii) Mr. Delong may assert any Administrative Claim, including, without limitation, for royalties or other amounts allegedly arising under the Delong Agreement after the Petition Date, and the Debtors reserve all rights to object to or otherwise contest such Administrative Claims, and (iii) Mr.

43

Delong may amend any timely filed proof of claim or file an Administrative Claim Request Form before the Administrative Claims Bar Date  solely to reflect that certain portions of the claim have been liquidated, and the Debtors reserve all rights to object to or otherwise contest such amended claim.

33.    Nothing in the Plan or this Order, including any discharge, waivers, releases or injunctions contained therein, shall adversely affect or prevent GGP Limited Partnership, Federal Realty Investment Trust, The Macerich Company, Boulevard Invest, LLC, Regency Centers, Rouse Properties, Turnberry Associates, Jones Lang LaSalle, Heitman, Simon Property Group, Inc., and HP Investors (collectively, the "Landlords") from (a) amending any timely filed proof of claim on account of a known claim for indemnification expressly provided for under the terms of the applicable Unexpired Lease, until the earlier of (x) 30 dayssix months from the Effective Date or (y) the date that final distributions have been made from the GUC Cash Consideration; (b) asserting, within 30 days ofafter the Effective Date, a valid right of setoff or recoupment that itthey may have pursuant to and subject to applicable bankruptcy and/or nonbankruptcy law and the terms of the applicable Unexpired Lease; and (c) asserting, after the Effective Date, any claim made in accordance with the terms of an Unexpired Lease that is assumed under the Plan, including but not limited to claims for year-end adjustments and reconciliations and indemnification claims for any period prior to the Effective Date, provided that such claim is expressly provided for under the Unexpired Lease. The Debtors and the Reorganized Debtors, as applicable, reserve all rights to dispute any claim asserted under subparts (a) through (c) of the foregoing sentence on any grounds, and nothing contained herein shall be construed as an admission as to the validity of any such claim.

44

Nothing in the Plan or this Order shall release the Debtors' insurers from any claims that might be asserted directly against such insurers by any of the Landlords, including any claim for indemnification, solely to the extent of available coverage.

34.    The Objection (the "Oracle Objection") filed by Oracle America, Inc. ("Oracle") shall be deemed resolved with respect to confirmation of the Plan; provided that, notwithstanding anything to the contrary in the Plan, the Plan Supplement, this Order or any other prior order of this Court, Oracle and the Debtors each reserve any and all rights with respect to the assumption or rejection of any Executory Contracts to which Oracle and the Debtors (the "Oracle Agreements") are party, including any and all rights with respect to Cure of any such Oracle Agreements.  To the extent the Debtors and Oracle cannot reach an agreement as to assumption and Cure of any of the Oracle Agreements, the Oracle Objection shall be deemed an objection to assumption and Cure of such agreement, and such objection shall be scheduled for hearing before the Court at a time agreed to by the Debtors and Oracle. Upon a determination as to the assumption or rejection of any Oracle Agreement, whether by agreement of the parties or further Court order, such assumption or rejection shall be deemed to be effective as of the Effective Date of the Plan and contingent upon payment of any related Cure; provided, however, that Oracle shall have 30 days from the date of any determination with respect to rejection to file any claim for rejection damages.

**Notice and Other Provisions**

35.    Notice of Confirmation Order and Occurrence of Effective Date. The Reorganized Debtors shall file with the Bankruptcy Court a notice of the occurrence of the Effective Date within a reasonable period of time after the conditions in Article 11.1 of the

Plan have been satisfied or waived pursuant to Article 11.2 of the Plan. The Debtors shall serve notice of entry of this Confirmation Order and occurrence of the Effective Date pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c), on (a) known Holders of Claims and Interests, (b) parties that requested notice in accordance with Bankruptcy Rule 2002, and (c) all other parties included in the Debtors' creditor and notice party matrix, by causing a notice of this Confirmation Order and the occurrence of the Effective Date in substantially the form of the notice annexed hereto as Exhibit B (the "Notice of Effective Date"), which form is hereby approved, to be delivered to such parties by first class mail, postage prepaid. The Notice of Effective Date shall also be published in (a) the New York Times (National Edition) (b) the New York Times (International Edition), (c) the Los Angeles Times (National Edition) and (d) the Orange County Register.  Notice need not be given or served under the Bankruptcy Code, the Bankruptcy Rules, or this Confirmation Order to any Entity to whom the Debtors mailed a notice of the Bar Date or Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved - left no forwarding address," "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Person of that Person's new address. The notice described herein is adequate and appropriate under the particular circumstances of the Chapter 11 Cases, and no other or further notice is necessary.

36.    Notice to Rights Offering Participants. Within one business day of the entry of this Confirmation Order, the Debtors shall provide notice, substantially in the form annexed hereto as Exhibit C (the "Rights Offering Notice"), to each party that has subscribed to the Rights Offerings that such party may change its election to participate therein.  To the extent a party that has subscribed to the Rights Offerings does not withdraw its election in

46

accordance with the procedures set forth in the Rights Offering Notice before February 5, 2016, such participant shall be deemed to have reaffirmed its prior subscription therein.  The notice and procedures described herein are adequate and appropriate under the particular circumstances of the Chapter 11 Cases, and no other or further notice or procedures are necessary.

3637.  Authorization to Consummate. Notwithstanding Bankruptcy Rule 3020(e), but subject to Article XI of the Plan, the Debtors are authorized to consummate the Plan upon, or any time after, entry of this Confirmation Order.

3738.  Inactive Debtor Final Decree and Order. Article 6.11 of the Plan is approved and incorporated herein. In furtherance of Article 6.11 of the Plan, the Debtors may submit the Inactive Debtor Final Decree by certification of counsel on the Effective Date, substantially in the form attached hereto as Exhibit CD, or as soon as reasonably practicable after the Effective Date and court shall execute the same.  Upon receipt of a signed copy of the Inactive Debtor Final Decree, the Clerk of the Court is directed to file and docket such signed copy of the Inactive Debtor Final Decree. For the avoidance of doubt, and solely with respect to the Chapter 11 Cases of the Inactive Debtors, the Bankruptcy Court hereby waives (a) any requirement of Local Rule 3022-1(a) that may be construed to require the filing of (i) a written motion seeking entry of a final decree or (ii) a separate order closing each jointly administered or consolidated case, and (b) the requirement of Local Rule 3022-1(c) that the Debtors file a final report and account.

3839. Plan Modifications. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions

47

on modifications set forth in the Plan, after the Confirmation Date and prior to substantial

consummation of the Plan as defined in section 1101(2) of the Bankruptcy Code, the Debtors

may, with consent of the Plan Sponsor, under section 1127(b) of the Bankruptcy Code,

institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile

any inconsistencies in this Plan, the Disclosure Statement, or the Confirmation Order, and such

matters as may be necessary to carry out the purposes and effects of this Plan. Notwithstanding

anything to the contrary herein or in the Plan, prior to the Effective Date, the Plan shall not be

amended from this Third Amended Plan in any way adversely affecting the rights of Holders of

Class 5-A Allowed Unsecured Notes Claims or Class 5-B Allowed General Unsecured Claims

hereunder without the consent of the Creditors' Committee, such consent not to be

unreasonably withheld, conditioned, or delayed.

   3940. Failure to Consummate Plan and Substantial Consummation. If the

Effective Date does not occur, then the Plan, any settlement or compromise embodied in the

Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), the

assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and

any document or agreement executed pursuant to the Plan, shall be null and void. In such

event, nothing contained in the Plan, this Confirmation Order, or the Disclosure Statement, and

no acts taken in preparation for consummation of the Plan, shall, or shall be deemed to, (a)

constitute a waiver or release of any Claims, Interests, or Causes of Action by or against the

Debtors or any other Entity, (b) prejudice in any manner the rights of the Debtors, the Holder

of a Claim or Interest, or any Entity in any further proceedings involving the Debtors, (c)

48

constitute an admission of any sort by the Debtors or any other Entity, or (d) be construed as a finding of fact or conclusion of law with respect thereto.

4041. References to Plan Provisions. The failure to include or specifically reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be confirmed in its entirety.

4142. Exhibits. Each reference in this Confirmation Order or in the Plan to a document, agreement or summary description that is in the form attached as an Exhibit to the Plan or the Plan Supplement shall be deemed to be a reference to such document, agreement or summary description in substantially the form of the latest version of such document, agreement or summary description filed with the Court (whether filed as an attachment to the Plan or filed separately).

4243. Plan and Confirmation Order Mutually Dependent. The provisions of this Confirmation Order and the provisions of the Plan are hereby deemed nonseverable and mutually dependent.

4344. Confirmation Order Supersedes. Except as expressly provided in the Plan or this Confirmation Order, it is hereby ordered that this Confirmation Order shall supersede any orders of this Court issued prior to the Confirmation Date that may be inconsistent with this Confirmation Order.

4445. Conflicts Between Confirmation Order and Plan. The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided, however, solely with respect to the Committee

49

Settlement Modifications, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of ~~this~~the Plan shall control; provided further, however, with respect to all provisions other than the Committee Settlement Modifications, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall control.

~~45~~46.  Retention of Jurisdiction. Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, this Court, except as otherwise provided in the Plan or herein, shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, but not limited to, the matters set forth in Article XII of the Plan.

~~46~~47.  Final Order and Waiver of Stay, Lodgment of Confirmation Order. This Confirmation Order is a final order. The provisions of Federal Rule of Civil Procedure 62(a) and Bankruptcy Rules 7062 and 3020(e) shall not apply to this Confirmation Order, and the Debtors and the Reorganized Debtors are authorized to consummate the Plan at any time. Lodgment of this Confirmation Order is hereby waived.

Dated: Wilmington, Delaware

_____, 2016


_____
HONORABLE BRENDAN L. SHANNON
CHIEF UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT A**

**PLAN OF REORGANIZATION**

**[TO COME]**

## EXHIBIT B

### NOTICE OF EFFECTIVE DATE

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

- - - - - :

                             :    Chapter 11

In re:                        :

                             :    Case No. 15-11880 (BLS)

QUIKSILVER, INC., *et al.*,        :

                             :    Jointly Administered

                Debtors.[1]    :

                             :    **Related Docket Nos. ___**

                             x

- - - - - - - - - - - - - - - - - - - - - - - - - - -

- - - - -

## NOTICE OF (A) ENTRY OF ORDER CONFIRMING THIRD AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF QUIKSILVER, INC. AND ITS AFFILIATED DEBTORS AND DEBTORS IN POSSESSION, (B) OCCURRENCE OF EFFECTIVE DATE, AND (C) CERTAIN DEADLINES

        **PLEASE TAKE NOTICE** that on _____, 2016, the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>") entered an order (the "<u>Confirmation Order</u>") [Docket No. [●]] confirming the Third Amended Joint Chapter 11 Plan of Reorganization of Quiksilver, Inc. and Its Affiliated Debtors and Debtors in Possession [Docket No. [●]] (the "<u>Plan</u>").[2] Copies of the Confirmation Order and the Plan, together with all pleadings and orders of the Bankruptcy Court in the above-captioned chapter 11 cases, are publicly available by accessing the Bankruptcy Court's website, http://www.deb.uscourts.gov, for a nominal charge (a PACER account is required), or by accessing the website of the Debtors' claims, noticing and balloting agent, Kurtzman Carson Consultants, LLC (the "<u>Claims and Solicitation Agent</u>"), https://www.kccllc.net/quiksilver, free of charge.

        **PLEASE TAKE FURTHER NOTICE** that on _____, 2016, the Effective Date of the Plan occurred. All conditions precedent to consummation of the Plan set forth in Article XI have either been satisfied or waived in accordance with the Plan and Confirmation Order.

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

PLEASE TAKE FURTHER NOTICE that, except as set forth in the Plan or the Confirmation Order, all requests for payment of an Administrative Claim  must be filed with the Claims and Solicitation Agent on or before _____, 2016, the date that is 30 days after the Effective Date.

PLEASE TAKE FURTHER NOTICE that all final requests for payment of Professional Claims for services rendered to the Debtors from the Petition Date through and including the Effective Date shall be filed with the Bankruptcy Court on or before _____, 2016, the date that is ~~no later than~~ forty-five (45) days after the Effective Date.

PLEASE TAKE FURTHER NOTICE pursuant to Article VII of the Plan, unless an Executory Contract or Unexpired Lease: (a) is listed on the Schedule of Assumed Executory Contracts and Unexpired Leases contained in the Plan Supplement; (b) has been previously assumed by the Debtors by Final Order of the Bankruptcy Court or has been assumed by the Debtors by order of the Bankruptcy Court as of the Effective Date, which order becomes a Final Order after the Effective Date; (c) is the subject of a motion to assume or reject pending as of the Effective Date; (d) is an Executory Contract related to any Intercompany Claim; or (e) is otherwise assumed pursuant to the terms of the Plan, such Executory Contract or Unexpired Lease, is deemed automatically rejected as of the Effective Date.

PLEASE TAKE FURTHER NOTICE that, unless otherwise provided by a Bankruptcy Court order, any proofs of Claim asserting Claims arising from the rejection of the Executory Contracts and Unexpired Leases pursuant to the Plan or otherwise must be filed with the Claims and Solicitation Agent no later than 30 days after the later of the Effective Date or the effective date of rejection.

PLEASE TAKE FURTHER NOTICE that, pursuant to Article VII, except as otherwise set forth in the Plan or Confirmation Order, each Executory Contract or Unexpired Lease listed on the Schedule of Assumed Executory Contracts and Unexpired Leases in the Plan Supplement are deemed assumed as of the Effective Date, and shall be assumed, or assumed and assigned, as applicable, and shall vest in and be fully enforceable by the Reorganized Debtors or their assignees in accordance with its terms, except as modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing or providing for its assumption or applicable federal law. Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated pursuant to the Plan. The Confirmation Order shall constitute an order of the Bankruptcy Court approving any such assumptions pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

PLEASE TAKE FURTHER NOTICE that, unless a counterparty to an assumed Executory Contract or Unexpired Lease has filed or files a proper and timely objection to the Cure Notice or proposed Cure on or before the deadline set forth in the applicable Cure Notice, such counterparty shall be deemed to have consented to the Cure Amount and shall be forever barred from asserting, collecting, or seeking to collect any additional amounts relating thereto against the Debtors or the Reorganized Debtors, or the property of any of them.

3

Dated: Wilmington, Delaware
    _____, 2016

       SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP


       /s/ DRAFT_____
       Van C. Durrer, II (I.D. No. 3827)
       Annie Z. Li
       300 South Grand Avenue, Suite 3400
       Los Angeles, California 90071
       Telephone: (213) 687-5000
       Fax: (213) 687-5600

       - and -

       Mark S. Chehi (I.D. No. 2855)
       One Rodney Square
       P.O. Box 636
       Wilmington, Delaware 19899-0636
       Telephone: (302) 651-3000
       Fax: (302) 651-3001

       - and -

       John K. Lyons
       Jessica Kumar
       155 N. Wacker Dr.
       Chicago, Illinois 60606
       Telephone: (312) 407-0700
       Fax: (312) 407-0411

       *Counsel for Debtors and Debtors in Possession*

## EXHIBIT C

**FORM OF ~~FINAL DECREE AND ORDER~~<u>NOTICE TO RIGHTS OFFERING PARTICIPANTS</u>**

Redline Quiksilver - Confirmation Order 939197v4B and Quiksilver - Confirmation Order 939197v10C 1/29/2016 8:36:11 AM

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

- - - - - - - - - - - - - - - - - - - - - - - - x
- - - - - :
       :     Chapter 11
In re:         :
       :     Case No. 15-11880 (BLS)
QUIKSILVER, INC., *et al.*,   :
       :     Jointly Administered
         Debtors.[1]   :
       :     **Related Docket Nos.** ___
       :
       X
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**NOTICE OF ENTRY OF ORDER CONFIRMING THIRD**
**AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF**
**QUIKSILVER, INC. AND ITS AFFILIATED DEBTORS AND DEBTORS**
**IN POSSESSION AND GRANTING RELATED RELATED RELIEF**

**TO ALL RIGHTS OFFERING PARTICIPANTS:**

1.    **Entry of Confirmation Order.**  On January [●], 2016, the United States Bankruptcy Court for the District of Delaware (the **"Bankruptcy Court"**) entered an order (the **"Confirmation Order"**) [Docket No. [●]] confirming the Third Amended Joint Chapter 11 Plan of Reorganization of Quiksilver, Inc. and Its Affiliated Debtors and Debtors in Possession [Docket No. [●]] (the "Plan").[2]  Copies of the Confirmation Order and the Plan, together with all pleadings and orders of the Bankruptcy Court in the above-captioned chapter 11 cases, are publicly available by accessing the Bankruptcy Court's website, http://www.deb.uscourts.gov, for a nominal charge (a PACER account is required), or by accessing the website of the Debtors' claims, noticing and balloting agent, Kurtzman Carson Consultants, LLC (the "Claims and Solicitation Agent"), https://www.kccllc.net/quiksilver, free of charge.

---

[1]  The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

2
939197.04B CHISR01A - MSW

2.    **Principal Terms of the UCC Settlement.**    The Plan is predicated on a global resolution of the Committee's objections thereto, the material terms of which are set forth in the Confirmation Order and the Plan attached hereto as **Exhibit 1**, and summarized as follows:[3]

- The Unsecured Cash Consideration has been increased from $12.5 million to $14.0 million, which shall be allocated on a pro rata basis to Holders of Allowed Class 5-A Unsecured Notes Claims and Holders of Allowed Class 5-B General Unsecured Claims;

- Holders of Class 5-A and Class 5-B Allowed Claims shall receive an aggregate amount of 4.75% of New Quiksilver Common Stock, which shall be allocated on a pro rata basis to Holders of Allowed Class 5-A Unsecured Notes Claims and Holders of Allowed Class 5-B General Unsecured Claims, subject to dilution in accordance with the New Quiksilver Common Stock Allocation;

- Holders of Class 5-A and Class 5-B Allowed Claims shall be deemed to participate in the Unsecured Consideration Exchange, projected as follows:[4]

  o    Holders of Class 5-A Claims shall receive, on account of their Allowed Claims, their pro rata share of (a) $[●] million of cash consideration, and (b) New Quiksilver Common Stock valued at $[●] million, for a total estimated recovery of $[●] million.

  o    Holders of Class 5-B Claims shall receive, on account of their Allowed Claims, their pro rata share of $[●] million of cash consideration.

- The New Quiksilver Common Stock Allocation shall be adjusted to reflect, on a fully diluted basis (and excluding any further dilution attributable to the MIP):

  (x) assuming that the Euro Notes Exchange Offer is not consummated, (a) first, 20.28% to Holders of Allowed Secured Claims, (b) second, up to 70.78% to Rights Offering Participants under the Rights Offerings, (c) third, up to 4.75% to Holders of Allowed Unsecured Claims, and (d) fourth, 4.19% to the

---

[3]    The summary of the settlement presented here is qualified in its entirety by the terms and conditions of the Plan and the Confirmation Order.  To the extent of any inconsistency between the terms and conditions presented here and those in the Plan or the Confirmation Order, the terms and conditions of the Confirmation Order will control.  For purposes of this paragraph only, capitalized terms used but not otherwise defined herein have the meanings assigned to them in the Settlement Agreement.

[4]    Revised estimates assume, among other things, that the Euro Notes Exchange Offer and the Euro Notes Rights Offering are fully consummated.

Backstop Parties under the Backstop Commitment Letter; and (y) assuming that the Euro Notes Exchange Offer is fully consummated, (a) first, 15.34% to Holders of Allowed Secured Notes Claims, (b) second, up to 77.76% to Rights Offering Participants under the Rights Offerings, (c) third, up to 3.56% to Holders of Allowed Unsecured Claims, and (d) fourth, 3.34% to the Backstop Parties under the Backstop Commitment Letter.

- The New Corporate Governance Documents shall be amended to provide for additional minority shareholder protections, including certain tag-along, right-of-first-refusal, preemptive, governance, information, and consent rights.

3. **Procedures to Change Your Election to Participate in the Rights Offerings.** If you are an Eligible Offeree that subscribed to the Exit Rights Offering or the Euro Notes Rights Offering, you can change your election to participate in the Rights Offerings by contacting Claims and Solicitation Agent requesting the form necessary to do so. To change your election, your completed form must **actually be received no later than February 5, 2016, 4:00 p.m. prevailing Eastern Time**. If you want to change your election, you may request the appropriate form from the Claims and Solicitation Agent by (a) first-class mail, Kurtzman Carson Consultants LLC, 1290 Avenue of the Americas, 9th Floor, New York, New York 10104, (b) calling the Debtors' restructuring hotline at (877) 833-4150 (toll free U.S. or Canada) or (917) 281-4800, or (c) emailing the Claims and Solicitation Agent at QuiksilverInfo@kccllc.com.

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THIS NOTICE AND THE PLAN AS YOUR RIGHTS MIGHT BE AFFECTED.**

Redline Quiksilver - Confirmation Order 939197v4B and Quiksilver - Confirmation Order 939197v10C 1/29/2016 8:36:11 AM

Dated: Wilmington, Delaware
            _____, 2016

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

/s/  DRAFT_____
Van C. Durrer, II (I.D. No. 3827)
Annie Z. Li
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071
Telephone: (213) 687-5000
Fax: (213) 687-5600

- and -

Mark S. Chehi (I.D. No. 2855)
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
Telephone: (302) 651-3000
Fax: (302) 651-3001

- and -

John K. Lyons
Jessica Kumar
155 N. Wacker Dr.
Chicago, Illinois 60606
Telephone: (312) 407-0700
Fax: (312) 407-0411

*Counsel for Debtors and Debtors in Possession*

**Exhibit 1**

**Confirmation Order**

**EXHIBIT D**

**FORM OF FINAL DECREE**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In re:                                                    : Chapter 11
                                                          :
QUIKSILVER, INC., *et al.*,                               : Case No. 15-11880 (BLS)
                                                          :
                                    Debtors.[1]           : Jointly Administered
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x  **Related Docket Nos. 526, [●]**

**FINAL DECREE AND ORDER CLOSING CERTAIN
BANKRUPTCY CASES PURSUANT TO THE PLAN**

Pursuant to Articles 6.9(d) and 6.11 of the Joint Chapter 11 Plan of

Reorganization of Quiksilver, Inc. and its Affiliated Debtors and Debtors in Possession (as may

be amended from time to time, including by the Confirmation Order (as defined below), and

including all exhibits and supplements, the "Plan")[2] providing that the Inactive Debtors shall be

dissolved and the Chapter 11 Cases of the Inactive Debtors shall be closed as of the Effective

Date; and upon the entry of an order confirming the Plan on [●], 2016 [Docket No. [●]] (the

"Confirmation Order"); and upon the occurrence of the Effective Date with respect to the Plan

on [●], 2016; and due and proper notice of the Plan and of the Confirmation Order having

been given under the circumstances; and the Bankruptcy Court having jurisdiction over the

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

Redline Quiksilver - Confirmation Order 939197v4B and Quiksilver - Confirmation Order
939197v10C 1/29/2016 8:36:11 AM

subject matter of the Plan and of the Confirmation Order; and upon the entire record of these cases;

THE COURT FINDS AND CONCLUDES THAT:[3]

A.    Pursuant to the Confirmation Order, the Bankruptcy Court approved Section 6.11 of the Plan and held that, upon the Effective Date of the Plan it would enter an order closing the Chapter 11 Cases of DC Direct, Inc., Fidra, Inc., Mt. Waimea, Inc., Q.S. Optics, Inc., Quiksilver Entertainment, Inc., and Quiksilver Westsuits, Inc. (the "Completed Cases").

B.    The Effective Date of the Plan occurred on [●], 2016.

C.    Pursuant to the Confirmation Order, the Bankruptcy Court waived, solely with respect to the Completed Cases, the requirements of Rule 3022-1(a) of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to file a written motion seeking entry of a final decree and to file a separate order closing each jointly administered or consolidated case, and the requirement of Local Rule 3022-1(c) that the Debtors file a final report and account.

ACCORDINGLY, THE COURT HEREBY ORDERS THAT:

1.    Pursuant to sections 350 and 105 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3022 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 3022-1, and in accordance with the Plan and

---

[3]    Each finding of fact set forth or incorporated herein, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law. Each conclusion of law set forth or incorporated herein, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

Redline Quiksilver - Confirmation Order 939197v4B and Quiksilver - Confirmation Order 939197v10C 1/29/2016 8:36:11 AM

Confirmation Order, the Completed Cases, as identified in Exhibit 1 attached hereto, are hereby closed, effective as of the Effective Date.

2.      Notwithstanding any other provision or paragraph of this final decree and order (the "Final Decree"), the following cases shall remain open: Quiksilver, Inc., Case No. 15-11880 (BLS), QS Wholesale, Inc., Case No. 15-11881 (BLS), DC Shoes, Inc., Case No. 15-11883 (BLS), Hawk Designs, Inc., Case No. 15-11885 (BLS), and QS Retail, Inc., Case No. 15-11888 (BLS) (the "Remaining Cases").

3.      To the extent not already paid, any outstanding fees due and owing to the United States Trustee pursuant to 28 U.S.C. § 1930 in the Competed Cases shall be paid within ten (10) business days of the date of entry of this Final Decree.

4.      The clerk of the Bankruptcy Court shall enter this Final Decree on the dockets of each of the Completed Cases and such dockets thereafter shall be marked as closed. The closure of the Completed Cases is without prejudice to the rights of any party in interest to seek relief in the Remaining Cases with respect to the allowance or disallowance of Claims or as otherwise provided under the confirmed Plan or permitted by applicable law.

5.      Notwithstanding any other provision or paragraph of this Final Decree, the closure of the Completed Cases pursuant to the Plan and this Final Decree shall be only (i) for procedural purposes and (ii) for purposes of calculating fees payable under 28 U.S.C.§ 1930, and this Final Decree shall in no way prejudice the rights of any creditor with respect to the Debtors or their estates.

6.      This Bankruptcy Court shall retain jurisdiction and authority to hear and determine all matters arising from or related to the interpretation and/or implementation of this Final Decree.

Dated: Wilmington, Delaware

_____, 2016

_____

HONORABLE BRENDAN L. SHANNON
CHIEF UNITED STATES BANKRUPTCY

JUDGE

**EXHIBIT 1**
**(Chapter 11 Cases Closed Pursuant to Final Decree and Order)**

| DEBTOR | CASE NUMBERS |
|---|---|
| DC Direct, Inc. | 15-11882 (BLS) |
| Fidra, Inc. | 15-11884 (BLS) |
| Mt. Waimea, Inc. | 15-11886 (BLS) |
| Q.S. Optics, Inc. | 15-11887 (BLS) |
| Quiksilver Entertainment, Inc. | 15-11889 (BLS) |
| Quiksilver Wetsuits, Inc. | 15-11890 (BLS) |

| Summary report: Litéra® Change-Pro TDC 7.5.0.178 Document comparison done on 1/29/2016 8:36:11 AM | |
|---|---|
| **Style name:** Option 3a Strikethrough Double Score No Moves | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** dm://CHISR01A/939197/4B | |
| **Description:** Quiksilver - Confirmation Order | |
| **Modified DMS:** dm://CHISR01A/939197/10C | |
| **Description:** Quiksilver - Confirmation Order | |
| **Changes:** | |
| Add | 178 |
| Delete | 54 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 5 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 3 |
| **Total Changes:** | 240 |