## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------------- x

In re:

QUIKSILVER, INC., *et al.*, [1]

                        Debtors.

------------------------------------------------------------------- x

:      Chapter 11

:      Case No. 15-11880 (BLS)

:      Jointly Administered

:      **Hearing Date: Only if an objection is filed**
:      **Objection Deadline: March 1, 2016 at 4:00 p.m. (ET)**

## THIRD MONTHLY APPLICATION OF AKIN GUMP STRAUSS HAUER & FELD LLP, CO-COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF QUIKSILVER, INC., ET AL., FOR INTERIM ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD DECEMBER 1, 2015 THROUGH DECEMBER 31, 2015

This is an __x__ interim         ____ final application

| | |
|---|---|
| Name of Applicant: | Akin Gump Strauss Hauer & Feld LLP |
| Authorized to Provide Professional Services to: | Official Committee of Unsecured Creditors of Quiksilver, Inc., *et al.* |
| Date of Retention: | November 13, 2015 (*nunc pro tunc* to September 28, 2015) |
| Period for which Compensation and Reimbursement Is Sought: | December 1, 2015 through December 31, 2015 |
| Amount of Compensation Sought as Actual, Reasonable and Necessary: | $383,739.50 |
| Amount of Reimbursement Sought as Actual, Reasonable and Necessary: | $12,648.21 |

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

**SUMMARY OF PROFESSIONALS AND PARAPROFESSIONALS
RENDERING SERVICES DURING THE PERIOD
DECEMBER 1, 2015 THROUGH DECEMBER 31, 2015**

| Name of Professional/ Paraprofessional Person | Position of the Applicant, Number of Years in that Position at Current or Prior Firms, Year of Obtaining License to Practice, Area of Expertise | Hourly Billing Rate | Total Hours Billed | Total Compensation Requested |
|---|---|---|---|---|
| Joseph Sorkin | Partner for 4 years; Admitted in 2001; Litigation Department | $865.00 | 23.60 | $20,414.00 |
| Michael Stamer | Partner for 17 years; Admitted in 1989; Financial Restructuring Department | $1,250.00 | 13.20 | $16,500.00 |
| Abid Qureshi | Partner for 7 years; Admitted in 1995; Financial Restructuring Department | $1,095.00 | 21.50 | $23,542.50 |
| Stephen Kuhn | Partner for 15 years; Admitted in 1991; Corporate Department | $975.00 | 1.20 | $1,170.00 |
| Frederick Lee | Partner for 2 years; Admitted in 2005; Corporate Department | $850.00 | 1.20 | $1,020.00 |
| Meredith Lahaie | Partner for 1 year; Admitted in 2007; Financial Restructuring Department | $850.00 | 56.40 | $47,940.00 |
| Carlos Villota | Senior Counsel for 5 years; Admitted in 1997; Corporate Department | $680.00 | 7.10 | $4,828.00 |
| Angeline Koo | Senior Counsel for 2 years; Admitted in 2005; Litigation Department | $695.00 | 34.80 | $24,186.00 |

i

| Name of Professional/ Paraprofessional Person | Position of the Applicant, Number of Years in that Position at Current or Prior Firms, Year of Obtaining License to Practice, Area of Expertise | Hourly Billing Rate | Total Hours Billed | Total Compensation Requested |
|---|---|---|---|---|
| Manuel Mungia | Counsel for 2 years; Admitted in 2008; Litigation Department | $675.00 | 0.30 | $202.50 |
| Ashley Beane | Counsel for 2 years; Admitted in 2008; Financial Restructuring Department | $750.00 | 93.70 | $70,275.00 |
| Katie Dinett | Associate for 1 year; Admitted in 2014; Corporate Department | $410.00 | 12.20 | $5,002.00 |
| William Mongan | Associate for 4 years; Admitted in 2012; Litigation Department | $610.00 | 4.40 | $2,684.00 |
| Lauren Lifland | Associate for 4 years; Admitted in 2012; Financial Restructuring Department | $650.00 | 120.60 | $78,390.00 |
| John Kane | Associate for 4 months; Bar Admission Pending; Litigation Department | $430.00 | 4.40 | $1,892.00 |
| Elizabeth Rosen | Associate for 4 months; Bar Admission Pending; Litigation Department | $430.00 | 8.90 | $3,827.00 |
| Rachelle Rubin | Associate for 4 months; Bar Admission Pending; Financial Restructuring Department | $430.00 | 83.80 | $36,034.00 |

#37724282 v1

| Name of Professional/ Paraprofessional Person | Position of the Applicant, Number of Years in that Position at Current or Prior Firms, Year of Obtaining License to Practice, Area of Expertise | Hourly Billing Rate | Total Hours Billed | Total Compensation Requested |
|---|---|---|---|---|
| Sophie G. Syed | Associate for 4 months; Bar Admission Pending; Litigation Department | $430.00 | 8.00 | $3,440.00 |
| Carolyn Mattus Cornell | Associate for 1 year; Admitted in 2011; Litigation Department | $615.00 | 48.80 | $30,012.00 |
| Dmitry Iofe | EDiscovery Project Coordinator for 3 years | $280.00 | 4.50 | $1,260.00 |
| Kwan Koehler | Trademark Specialist for 1 year; Intellectual Property Department | $270.00 | 2.00 | $540.00 |
| Massai Leonard | EDiscovery Project Coordinator for 8 years | $270.00 | 3.40 | $918.00 |
| Daniel Chau | EDiscovery Project Coordinator for 10 years | $280.00 | 4.60 | $1,288.00 |
| Tracy Southwell | Legal Assistant for 22 years; Financial Restructuring Department | $275.00 | 0.30 | $82.50 |
| Dagmara Krasa-Berstell | Legal Assistant for 25 years; Financial Restructuring Department | $275.00 | 24.30 | $6,682.50 |
| Lynn Hausner | Legal Assistant for 8 years; Corporate Department | $245.00 | 0.60 | $147.00 |
| Francisco Alvarez | Legal Assistant for 7 months; Financial Restructuring Department | $195.00 | 7.50 | $1,462.50 |

Total Amount of Fees:          **$383,739.50**
Total Number of Hours:         **591.30**
Blended Hourly Rate:           **$648.97**

iii

## COMPENSATION BY PROJECT CATEGORY
### DECEMBER 1, 2015 THROUGH DECEMBER 31, 2015

| Project Category | Total Hours Billed This Period | Total Fees Billed This Period |
|---|---|---|
| General Case Administration (0002) | 42.80 | $18,805.50 |
| Akin Gump Fee Application/Monthly Billing Reports (0003) | 71.50 | $38,146.50 |
| Analysis of Other Professional Fee Applications/Reports (0004) | 11.40 | $4,007.50 |
| Retention of Professionals (0006) | 1.10 | $825.00 |
| Committee Meetings (0007) | 29.70 | $22,116.50 |
| Court Hearings (0008) | 22.30 | $19,329.00 |
| Financial Reports and Analysis (0009) | 0.20 | $150.00 |
| DIP, Cash Collateral Usage and Exit Financing (0010) | 2.40 | $2,130.00 |
| Executory Contracts/License Agreements (0011) | 7.50 | $5,495.00 |
| General Claims Analysis/Claims Objections (0012) | 6.80 | $4,363.00 |
| Analysis of Pre-Petition Transactions (0013) | 69.30 | $46,512.00 |
| Lift Stay Litigation (0016) | 1.50 | $1,062.50 |
| Plan, Disclosure Statement and Plan-Related Documentation (0022) | 318.30 | $214,984.00 |
| Asset/Stock Transaction/Business Liquidations (0024) | 1.80 | $1,230.00 |
| Travel (0025) | 4.70 | $4,583.00 |
| **TOTAL** | **591.30** | **$383,739.50** |

#37724282 v1

**DISBURSEMENT SUMMARY**
**DECEMBER 1, 2015 THROUGH DECEMBER 31, 2015**

| | |
|---|---:|
| Computerized Legal Research | $6,070.66 |
| Courier Service/Messenger Service – Off Site | $87.53 |
| Document Production – In House | $4,939.00 |
| Meals – Business | $117.00 |
| Meals (100%) | $761.25 |
| Travel – Ground Transportation | $277.77 |
| Travel – Lodging (Hotel, Apt, Other) | $25.00 |
| Travel – Train Fare | $370.00 |
| **TOTAL** | **$12,648.21** |

#37724282 v1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------- x

In re:

QUIKSILVER, INC., *et al.*, [1]

                     Debtors.

---------------------------------------------------------------- x

Chapter 11

Case No. 15-11880 (BLS)

Jointly Administered

**Hearing Date: Only if an objection is filed**
**Objection Deadline: March 1, 2016 at 4:00 p.m. (ET)**

### THIRD MONTHLY APPLICATION OF AKIN GUMP
### STRAUSS HAUER & FELD LLP, CO-COUNSEL FOR THE OFFICIAL
### COMMITTEE OF UNSECURED CREDITORS OF QUIKSILVER, INC.,
### ET AL., FOR INTERIM ALLOWANCE OF COMPENSATION AND
### FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED
### <u>DURING THE PERIOD DECEMBER 1, 2015 THROUGH DECEMBER 31, 2015</u>

Akin Gump Strauss Hauer & Feld LLP ("<u>Akin Gump</u>"), co-counsel to the Official

Committee of Unsecured Creditors (the "<u>Committee</u>") of Quiksilver, Inc. and its affiliated

debtors and debtors in possession (collectively, the "<u>Debtors</u>"), hereby submits its third monthly

application (the "<u>Application</u>") pursuant to (i) sections 330 and 331 of chapter 11 of title 11 of

the United States Code (the "<u>Bankruptcy Code</u>"), (ii) Rule 2016 of the Federal Rules of

Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), (iii) Rule 2016-2 of the Local Rules of

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware (the "<u>Local Rules</u>") and (iv) the *Order Pursuant to Bankruptcy Code Sections 105(a)*

*and 331 Establishing Interim Compensation Procedures* [Docket No. 379] (the "<u>Interim</u>

<u>Compensation Order</u>"), for interim allowance of compensation for services rendered in the

aggregate amount of $383,739.50 and for reimbursement of expenses incurred in the aggregate

---

[1]    The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

amount of $12,648.21 for the period commencing December 1, 2015 through and including

December 31, 2015 (the "Compensation Period"). Pursuant to the Interim Compensation Order,

Akin Gump is seeking payment of 80% of its fees in the amount of $306,991.60 and 100% of its

expenses in the amount of $12,648.21 relating to services rendered to the Committee during the

Compensation Period. In support of this Application, Akin Gump respectfully states as follows:

## BACKGROUND

1. On September 9, 2015 (the "Petition Date"), each of the Debtors filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors

have continued in possession of their property and have continued to operate and manage their

businesses as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. On

September 10, 2015, the Court entered an order providing for the joint administration of the

Debtors' chapter 11 cases (the "Chapter 11 Cases") for procedural purposes only pursuant to

Bankruptcy Rule 1015(b).

2. On September 21, 2015, pursuant to Bankruptcy Code section 1102, the United

States Trustee for the District of Delaware (the "U.S. Trustee") appointed the initial five

members of the Committee [Docket No. 129].[2] On September 28, 2015, the U.S. Trustee filed

the *Amended Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 163] (the

"Amended Notice"), appointing two additional creditors to the Committee.[3] Following the filing

of the Amended Notice, the Committee selected Akin Gump to serve as lead counsel to the

Committee.

---

[2]    The initial Committee was comprised of the following entities: (i) U.S. Bank National Association; (ii) New Generation Advisors, LLC; (iii) Samil Tong Sang, Co.; (iv) Simon Property Group, Inc.; and (v) Global Brands Group.

[3]    The U.S. Trustee appointed T. Rowe Price Credit Opportunities Fund, Inc. and Wilfrid Global Opportunity Fund to the Committee on September 28, 2015. Also on September 28, 2015, Global Brands Group resigned from the Committee. New Generation Advisors, LLC resigned from the Committee on January 28, 2016, and T. Rowe Price Credit Opportunities Fund, Inc. and Wilfrid Global Opportunity Fund resigned from the Committee on January 29, 2016.

#37724282 v1

3.       On October 27, 2015, the Committee filed its application to retain and employ

Akin Gump as co-counsel to the Committee (the "Akin Gump Retention Application"), which

retention was approved *nunc pro tunc* to September 28, 2015 by an order of this Court dated

November 13, 2015 [Docket No. 444] (the "Retention Order").[4]  The Retention Order authorized

Akin Gump to be compensated on an hourly basis and to be reimbursed for actual and necessary

out-of-pocket expenses.

4.       On November 17, 2015, Akin Gump filed its *First Monthly Application of Akin*

*Gump Strauss Hauer & Feld LLP, Co-Counsel for the Official Committee of Unsecured*

*Creditors of Quiksilver, Inc., et al., for Interim Allowance of Compensation and for*

*Reimbursement of Expenses for Services Rendered During the Period September 28, 2015*

*Through October 31, 2015* [Docket No. 475], seeking approval of fees in the amount of

$1,216,120.50 and reimbursement of expenses in the amount of $39,007.73 (the "First Monthly

Fee Statement").  No objections were received with respect to the First Monthly Fee Statement,

and on December 10, 2015, Akin Gump filed a certificate of no objection with respect thereto

[Docket No. 558].  On December 28, 2015, Akin Gump received payment of 80% of the fees and

100% of the expenses requested in the First Monthly Fee Statement.

5.       On January 4, 2016, Akin Gump filed its *Second Monthly Application of Akin*

*Gump Strauss Hauer & Feld LLP, Co-Counsel for the Official Committee of Unsecured*

*Creditors of Quiksilver, Inc., et al., for Interim Allowance of Compensation and for*

*Reimbursement of Expenses for Services Rendered During the Period November 1, 2015*

*Through November 30, 2015* [Docket No. 612], seeking approval of fees in the amount of

---

[4]     On September 28, 2015, the Committee selected Pepper Hamilton LLP ("Pepper Hamilton") as co-counsel.  On November 13, 2015, the Court entered an order approving the Committee's retention of Pepper Hamilton *nunc pro tunc* to September 28, 2015 [Docket No. 442].  On September 29, 2015, the Committee selected PJT Partners L.P. ("PJT") as its investment banker.  On November 13, 2015, the Court entered an order approving the Committee's retention of PJT *nunc pro tunc* to September 29, 2015 [Docket No. 443].

#37724282 v1

$464,042.00 and reimbursement of expenses in the amount of $18,580.07 (the "Second Monthly Fee Statement").  No objections were received with respect to the Second Monthly Fee Statement, and on February 8, 2016, Akin Gump filed a certificate of no objection with respect thereto [Docket No. 759].

## JURISDICTION

6.      This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

7.      The statutory and rule predicates for the relief requested herein are Bankruptcy Code sections 330 and 331, Bankruptcy Rule 2016 and Local Rule 2016-2.

## RELIEF REQUESTED

8.      By this Application, Akin Gump seeks (i) allowance of $383,739.50 as compensation for services rendered by Akin Gump as co-counsel to the Committee during the Compensation Period, representing 591.3 hours in professional and paraprofessional services, (ii) approval of the payment of $306,991.60 (80% of $383,739.50) as compensation for such services during the Compensation Period and (iii) approval of the reimbursement of 100% of the actual and necessary expenses incurred by Akin Gump during the Compensation Period in connection with the rendition of such services in the amount of $12,648.21.

9.      Pursuant to the Interim Compensation Order, if no objections to this Application are filed within 21 days of the date hereof, Akin Gump may be paid 80% of the fees and reimbursed for 100% of the expenses requested in this Application.

10.     Except with respect to anticipated payments pursuant to the Interim Compensation Order, Akin Gump has received no payment and no promises for payment from any source for services rendered in connection with these Chapter 11 Cases.  There is no

4

agreement or understanding between Akin Gump and any other person (other than members of Akin Gump) for the sharing of compensation to be received for the services rendered in the Chapter 11 Cases.

11.     As stated in the Affirmation of Michael S. Stamer, Esq., annexed hereto as Exhibit A, (i) all of the services for which compensation is sought herein were rendered for or on behalf of the Committee solely in connection with the Chapter 11 Cases and (ii) Akin Gump has reviewed the requirements of Local Rule 2016-2 and respectfully submits that this Application complies therewith.

## SUMMARY OF SERVICES RENDERED

12.     Since September 28, 2015, Akin Gump has rendered services to the Committee as requested and as necessary and appropriate in furtherance of the interests of the Debtors' unsecured creditors.  The variety and complexity of the issues in the Chapter 11 Cases and the need to act or respond to issues on an expedited basis in furtherance of the Committee's needs have required the expenditure of substantial time by Akin Gump personnel from several legal disciplines on an as-needed basis.

13.     Akin Gump maintains written records of the time expended by professionals and paraprofessionals in the rendition of their services.  A compilation showing the name of the professional or paraprofessional, the date on which the services were performed, a description of the services rendered and the amount of time spent in performing services for the Committee during the Compensation Period is annexed hereto as Exhibit B.

14.     Akin Gump also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its services to and on behalf of the Committee, all of which are available for inspection.  A schedule of the categories of expenses

#37724282 v1

and amounts for which reimbursement is requested in this Application is annexed hereto as Exhibit C.  A detailed summary of the expenses is annexed hereto as Exhibit D.[5]

15.     Akin Gump respectfully submits that the professional and paraprofessional services that it rendered on behalf of the Committee during the Compensation Period were necessary and appropriate and have directly contributed to the effective administration of the Chapter 11 Cases.

16.     The following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit B.  Rather, it is merely an attempt to highlight certain of those areas in which services were rendered to the Committee, as well as to identify some of the problems and issues that Akin Gump was required to address during the Compensation Period.

**(a)     General Case Administration**
(Fees: $18,805.50; Hours: 42.8)

17.     A portion of the services rendered during the Compensation Period related to the general administrative needs of the Committee and matters related thereto.  Akin Gump's attention to the Committee's administrative needs during the Compensation Period enabled the Committee to function as a coordinated group and to acquit its statutory and fiduciary duties to the Debtors' unsecured creditors.  These tasks included, among other things: (i) coordination with the Committee's financial advisors to apprise the Committee of the status of pending matters; and (ii) assisting members of the Committee in complying with their duties in the Chapter 11 Cases.

---

[5]     The expenses detailed in Exhibit D include certain expenses from the previous compensation period that were not included in the Second Monthly Fee Statement due to a lag in Akin Gump's accounting system.

#37724282 v1

18.     During the Compensation Period, Akin Gump also reviewed and analyzed all pleadings filed by the Debtors and other parties in interest in the Chapter 11 Cases.  In connection therewith, Akin Gump, in conjunction with the Committee's other professionals, conducted diligence on the subject matter of each motion, application and other pleading in order to, among other things, ascertain the effect the requested relief would have on the Debtors, their businesses and the administration of the Chapter 11 Cases.  Akin Gump's diligence efforts included reviewing all documentation related to the applicable pleading, communicating with the Debtors' representatives and professionals to attempt to resolve any issues amicably, and working with PJT to ensure that the Committee had a complete understanding of the effect the relief requested in each pleading would have on the Chapter 11 Cases.

   **(b)**     <u>**Fee and Retention Applications**</u>

            (Fees: $42,979.00; Hours: 84.0)

19.     During the Compensation Period, Akin Gump prepared its Second Monthly Fee Statement pursuant to the terms of the Interim Compensation Order seeking approval of fees in the amount of $464,042.00 and reimbursement of expenses in the amount of $18,580.07.  The Second Monthly Fee Statement was filed on January 4, 2016 [Docket No. 612].  No objections were received with respect to the Second Monthly Fee Statement, and on February 8, 2016, Akin Gump filed a certificate of no objection with respect thereto [Docket No. 759].

20.     During the Compensation Period, Akin Gump also worked with PJT to prepare the *First Monthly Application of PJT Partners Inc. as Investment Banker to the Official Committee of Unsecured Creditors for Allowance of Compensation for Necessary Services Rendered and for the Reimbursement of All Actual and Necessary Expenses Incurred for the Period September 29, 2015 Through October 31, 2015* [Docket No. 613] (the "<u>PJT Monthly Fee Statement</u>").  No objections were received with respect to the PJT Monthly Fee Statement, and

7

on February 8, 2016, Akin Gump filed a certificate of no objection with respect thereto [Docket No. 760].

21.    Finally, Akin Gump also reviewed, in conjunction with the Committee's other professionals, the Debtors' application to retain KPMG LLP as accounting and internal audit advisors [Docket No. 595] (the "KPMG Retention Application") and advised the Committee with respect thereto.  On January 11, 2016, this Court entered an order approving the KPMG Retention Application [Docket No. 640].

**(c)    Committee Meetings**

(Fees: $22,116.50; Hours: 29.7)

22.    The Committee played an active role in the Chapter 11 Cases during the Compensation Period.  In connection therewith, Akin Gump, together with the Committee's other professionals, held weekly telephonic meetings with the full Committee and had additional telephonic and e-mail communications with the full Committee on an as-needed basis during the Compensation Period.  In addition, Akin Gump had telephonic conferences and e-mail communications with individual Committee members.

23.    Prior to each Committee meeting, Akin Gump reviewed each pending matter requiring the Committee's attention and all underlying documentation in connection therewith, and discussed each pending matter and a recommended response thereto with the Committee's other professionals.  Thereafter, Akin Gump discussed each of these matters with the Committee. During these discussions, Akin Gump assisted the Committee in formulating a position with respect to each pending matter.  In addition, Akin Gump prepared and/or assisted PJT in preparing detailed presentations or other materials for the Committee discussing certain legal, business and financial issues related to the Chapter 11 Cases and the status of other pertinent matters.  Further, during the Compensation Period, Akin Gump had numerous telephonic

8

conferences with the Debtors and their professionals to discuss and address pending issues and proposed actions with the Debtors.  Through telephonic conferences and correspondence, Akin Gump has assisted the Committee in fulfilling its statutory duties to make informed decisions regarding the various issues that have arisen in the Chapter 11 Cases, to monitor closely the Debtors' management of the Chapter 11 Cases and to reach independent conclusions on the merits of specific matters.

24.     In addition, during the Compensation Period, Akin Gump advised the Committee with respect to document requests made by the Debtors and responded to such requests on the Committee's behalf, as discussed in further detail below.

 **(d)** **Court Hearings**

  (Fees: $19,329.00; Hours: 22.3)

25.     During the Compensation Period, Akin Gump prepared for and participated in the hearing to consider the adequacy of the Disclosure Statement (as defined below), which was held on December 1, 2015.  In connection therewith, Akin Gump negotiated with the Debtors regarding the inclusion of certain additional language in the Disclosure Statement, and an order approving the adequacy of the Disclosure Statement, as modified, was entered on December 4, 2015 [Docket No. 529].

26.     Also during the Compensation Period, Akin Gump prepared for and participated in telephonic chambers conferences on December 14 and 15, 2015 to consider, among other things, a proposed discovery schedule and mediation related to the anticipated contested hearing on the confirmation of the Oaktree Plan (as defined below).  The Court entered a scheduling order related thereto on December 17, 2015 [Docket No. 576] (the "Scheduling Order").

27.     To prepare for the hearing and chambers conferences, Akin Gump worked with the Committee's other professionals, engaged in discussions with the Debtors' professionals

9

regarding the requested relief, conducted research in connection with the same and then actively

represented and, as necessary and appropriate, advocated on behalf of, the Committee.  After

each hearing and chambers conference, Akin Gump provided a summary to the Committee either

in written format or at the following Committee meeting.

(e)    **Executory Contracts and License Agreements**

(Fees: $5,495.00; Hours: 7.5)

28.    During the Compensation Period, Akin Gump reviewed, among other things, *E.*

*Gluck Corporation's Objection to Debtors' Motion for Entry of an Order Pursuant to*

*Bankruptcy Code Sections 105(a) and 365(a) and Bankruptcy Rules 6006 and 9014 Authorizing*

*Rejection of License Agreement* Nunc Pro Tunc *to November 25, 2015* [Docket No. 548] (the

"EGC Objection").  A status conference on the EGC Objection was held on December 17, 2015

and an evidentiary hearing is scheduled for March 9, 2016 [Docket No. 637].

29.    Also during the Compensation Period, Akin Gump reviewed the *Debtors' Motion*

*for an Order Under Bankruptcy Code Section 105 and Bankruptcy Rule 9019 for an Order*

*Approving Settlement Agreement by and Among Certain of the Debtors and Rox Volleyball, Inc.*

*and First Place Team Sales, Inc.* (the "Rox Volleyball Motion") and the underlying settlement

agreement.  On January 11, 2016, this Court entered an order approving the Rox Volleyball

Motion [Docket No. 641].

(f)    **Analysis of Pre-Petition Transactions**

(Fees: $46,512.00; Hours: 69.3)

30.    During the Compensation Period, Akin Gump continued to engage with the

Debtors' professionals regarding the Committee's diligence requests, which sought documents

and information relating to the Debtors' corporate organization, business operations and general

corporate matters likely to arise in the Chapter 11 Cases.  In connection therewith, Akin Gump

catalogued and reviewed the materials received in response to such requests and provided updates to the Committee with respect to such diligence.

31.     In addition, Akin Gump completed its investigation into the validity, extent and priority of the liens held by the Debtors' prepetition secured lenders and drafted a memorandum summarizing the results of such diligence and Akin Gump's recommended course of action, which it presented to the Committee on December 15, 2015.  The Committee ultimately determined not to challenge the prepetition liens.

    **(g)**    **Plan, Disclosure Statement and Plan-Related Documentation**

        (Fees: $214,984.00; Hours: 318.3)

32.     On October 13, 2015 and October 30, 2015, respectively, and consistent with the restructuring transaction described in that certain Plan Sponsor Agreement, the Debtors filed initial versions of the *Joint Chapter 11 Plan of Reorganization of Quiksilver, Inc. and Its Affiliated Debtors and Debtors in Possession* [Docket No. 292] (as amended from time to time, the "Oaktree Plan") and the *Disclosure Statement with Respect to the Joint Chapter 11 Plan of Reorganization of Quiksilver, Inc. and Its Affiliated Debtors and Debtors in Possession* [Docket No. 396] (as amended from time to time, the "Disclosure Statement").[6]  On December 4, 2015, the Court entered an order approving the adequacy of the Disclosure Statement and authorizing the Debtors to solicit votes to accept or reject the Oaktree Plan [Docket No. 529].

33.     On December 23, 2015, the Debtors served their expert report prepared by the Debtors' financial advisor, Peter J. Solomon Company ("PJSC"), with respect to the Debtors' total enterprise value and the value of the Debtors' equity in their foreign subsidiaries (the "PJSC Report").  In addition, on December 29, 2015, Oaktree Capital Management, LP ("Oaktree") filed the *Motion of Oaktree Capital Management for Entry of an Order (I) Determining the*

---

[6]     The Debtors filed amended versions of the Oaktree Plan and the Disclosure Statement on November 17, 2015 [Docket Nos. 476, 477] and December 4, 2015 [Docket Nos. 527, 532].

#37724282 v1

*Diminution in Value of the Secured Notes Parties' Collateral, and (II) Granting Related Relief*

[Docket No. 599] (the "<u>Diminution Motion</u>") and its expert report in support thereof (the

"<u>Houlihan Report</u>") prepared by Houlihan Lokey Capital, Inc.  The Diminution Motion sought,

among other things, a determination of the amount of Oaktree's diminution in value claim under

Bankruptcy Code section 507(b).  Diminution Motion at ¶ 35; Houlihan Report at 9.

34.    During the Compensation Period, Akin Gump reviewed the Oaktree Plan, the

Diminution Motion, the PJSC Report and the Houlihan Report, conducted research in connection

with each, and engaged in extensive discussions with the Debtors and Oaktree regarding the

same.  Akin Gump also worked closely with PJT to provide summaries thereof to the

Committee.  Despite ongoing discussions and negotiations with the Debtors, Oaktree, and their

respective professionals regarding the numerous infirmities the Committee identified in

connection with the Diminution Motion and the Oaktree Plan, the parties were unable to fully

resolve their concerns during the Compensation Period.  Accordingly, Akin Gump and the

Committee's other professionals began preparing comprehensive objections to the Diminution

Motion and confirmation of the Oaktree Plan.

35.    In addition, during the Compensation Period, Akin Gump worked closely with

PJT to prepare its expert report on behalf of the Committee, which provided PJT's estimated

value of the Debtors as a going concern, including the value of the Debtors' equity in their non-

Debtor foreign subsidiaries, and rebutted certain conclusions contained in the PJSC Report and

the Houlihan Report.

36.    During the Compensation Period, and pursuant to the terms of the Scheduling

Order, Akin Gump, on behalf of the Committee, also conducted extensive document discovery

regarding valuation and confirmation issues, responded to discovery requests, and provided

updates to the Committee with respect thereto.  Specifically, Akin Gump participated in meet

12

and confers with Debtors' counsel on discovery requests, drafted discovery requests, researched legal issues in connection with responding and objecting to discovery requests and catalogued and reviewed the materials received in response to such requests.  Akin Gump also worked closely with and assisted PJT in responding to document requests propounded by the Debtors and Oaktree to ensure that PJT produced responsive non-privileged documents in response thereto.

## ALLOWANCE OF COMPENSATION

37.    The professional services rendered by Akin Gump during the Compensation Period required a high degree of professional competence and expertise so that the numerous issues requiring evaluation and determination by the Committee could be addressed with skill and expediency and have, therefore, required the expenditure of substantial time and effort. Akin Gump respectfully submits that the services rendered to the Committee were performed efficiently, effectively and economically, and the results obtained to date have benefited not only the Committee, but also the unsecured creditor body as a whole.

38.    The allowance of interim compensation for services rendered and reimbursement of expenses in bankruptcy cases is expressly provided for in Bankruptcy Code section 331:

> [A]ny professional person . . . may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered . . . as is provided under section 330 of this title.

11 U.S.C. § 331.  Moreover, this Court has authorized the filing of this Application in the Interim Compensation Order.

39.    With respect to the level of compensation, Bankruptcy Code section 330(a)(1) provides, in pertinent part, that a bankruptcy court may award to a professional person "reasonable compensation for actual, necessary services rendered."  Section 330(a)(3), in turn, provides that:

13

In determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –

    (A)    the time spent on such services;

    (B)    the rates charged for such services;

    (C)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

    (D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

    (E)    with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

    (F)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).  The clear congressional intent expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.

    40.    The total time expended by Akin Gump professionals and paraprofessionals during the Compensation Period was 591.3 hours.  The work involved and, thus, the time expended, was carefully assigned in light of the experience and expertise required for a particular task.  As demonstrated by this Application and supporting documents, Akin Gump spent its time economically and without unnecessary duplication of services.  Annexed hereto as <u>Exhibit E</u> is a schedule of the hours expended by the professionals and paraprofessionals during the Compensation Period, their hourly rates, and the value of their services.

#37724282 v1

41.     In addition, Akin Gump incurred actual out-of-pocket expenses in connection with the rendition of the services to the Committee in the sum of $12,648.21 for which Akin Gump respectfully requests reimbursement in full.  The expenses have been incurred in accordance with Akin Gump's normal practice of charging clients for expenses clearly related to and required by particular matters.  Akin Gump has endeavored to minimize these expenses to the fullest extent possible.

42.     Akin Gump's billing rates do not include charges for photocopying, telephone and facsimile charges, computerized research, travel expenses, "working meals," secretarial overtime, postage and certain other office services, since the needs of each client for such services differ.  Akin Gump believes that it is fairest to charge each client only for the services actually used in performing services for such clients.  In these cases, Akin Gump charges $0.10 per page for internal duplicating but does not charge for facsimile transmissions.

43.     No prior application has been made in this or in any other court for the relief requested herein for the Compensation Period.

*[Concluded on the following page.]*

#37724282 v1

**WHEREFORE**, Akin Gump respectfully requests:

(a)    allowance of $383,739.50 as compensation for professional and paraprofessional services rendered by Akin Gump as co-counsel to the Committee during the Compensation Period;

(b)    approval of the payment of $306,991.60 (80% of $383,739.50) as compensation for professional and paraprofessional services rendered by Akin Gump as co-counsel to the Committee during the Compensation Period; and

(c)    approval of the reimbursement of 100% of Akin Gump's out-of-pocket expenses incurred in connection with the rendering of professional and paraprofessional services to the Committee during the Compensation Period in the amount of $12,648.21.


Dated: February 9, 2016
   Wilmington, Delaware

          **PEPPER HAMILTON LLP**

          /s/ John H. Schanne, II
          David B. Stratton (DE No. 960)
          David M. Fournier (DE No. 2812)
          John H. Schanne II (DE No. 5260)
          Hercules Plaza, Suite 5100
          1313 N. Market Street
          Wilmington, Delaware  19899-1709
          Telephone: (302) 777-6500
          Facsimile: (302) 421-8390
          E-mail:  strattod@pepperlaw.com
               fournierd@pepperlaw.com
               schannej@pepperlaw.com

              -AND-

          **AKIN GUMP STRAUSS HAUER & FELD LLP**
          Michael S. Stamer (admitted *pro hac vice*)
          Meredith A. Lahaie (admitted *pro hac vice*)
          One Bryant Park
          Bank of America Tower
          New York, New York 10036-6745
          Telephone: (212) 872-1000
          Facsimile: (212) 872-1002
          E-mail:  mstamer@akingump.com
               mlahaie@akingump.com

#37724282 v1