# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------------- x
:
In re: : Chapter 11
:
QUIKSILVER, INC., *et al.*,[1] : Case No. 15-11880 (BLS)
:
        Debtors. : (Jointly Administered)
:
: **Hearing Date: March 31, 2016 at 10:30 a.m. (ET)**
---------------------------------------------------------------------- x **Objection Deadline: March 28, 2016 at 4:00 p.m. (ET)**

## FIRST AND FINAL APPLICATION OF PJT PARTNERS INC. AS INVESTMENT BANKER TO THE OFFICIAL OF COMMITTEE UNSECURED CREDITORS FOR ALLOWANCE OF COMPENSATION FOR NECESSARY SERVICES RENDERED AND FOR THE REIMBURSEMENT OF ALL ACTUAL AND NECESSARY EXPENSES INCURRED FOR THE PERIOD SEPTEMBER 29, 2015 THROUGH JANUARY 29, 2016

## SUMMARY SHEET

| | |
|---|---|
| Name of Applicant: | PJT Partners Inc. |
| Authorized To Provide Professional Services to: | Official Committee of Unsecured Creditors |
| Period for Which Compensation and Reimbursement Is Sought: | September 29, 2015 through January 29, 2016 |
| Amount of Compensation Sought as Actual, Reasonable, and Necessary: | $2,600,322.58 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable, and Necessary: | $24,844.74 |
| Amount of Cash Payment Sought: | 2,625,167.32 |

The total time expended for the preparation of this fee application was 4 hours and the corresponding compensation requested is $0.00.

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington beach, California 92649.

Prior Monthly Applications Filed:

| Period(s) | Date Filed | Period Covered | Requested Fees | Requested Expenses | Approved Fees | Approved Expenses |
|---|---|---|---|---|---|---|
| First [Docket No. 613][2] | 01/04/16 | 09/29/15 – 10/31/15 | $160,000.00 | $6,120.00 | $128,000.00 | $6,120.00 |
| Second [Docket No. 823] | 02/22/16 | 11/01/15 – 12/31/15 | $300,000.00 | $0.00 | Pending | Pending |

---

[2] Certificate of No Objection filed on 02/08/16. *See* Docket No. 760.

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| QUIKSILVER, INC., *et al.*,[1] | Case No. 15-11880 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: March 31, 2016 at 10:30 a.m. (ET)** |
| | **Objection Deadline: March 28, 2016 at 4:00 p.m. (ET)** |

**FIRST AND FINAL APPLICATION OF PJT PARTNERS INC.
AS INVESTMENT BANKER TO THE OFFICIAL OF COMMITTEE
UNSECURED CREDITORS FOR ALLOWANCE OF COMPENSATION
FOR NECESSARY SERVICES RENDERED AND FOR THE
REIMBURSEMENT OF ALL ACTUAL AND NECESSARY
EXPENSES INCURRED FOR THE PERIOD
SEPTEMBER 29, 2015 THROUGH JANUARY 29, 2016**

PJT Partners Inc. ("PJT") respectfully represents as follows:

### I. Background

1. PJT is acting as investment banker to the Official Committee of Unsecured Creditors (the "Committee") of Quiksilver, Inc and its affiliated debtors and debtors in possession (collectively, the "Debtors").

2. On September 9, 2015 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Since the Petition Date, the Debtors have continued to operate their businesses and manage their properties as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington beach, California 92649.

3. On September 21, 2015 (the "Formation Date"), the Office of the United States Trustee for the District of Delaware appointed five of the Debtors' unsecured creditors to serve as members of the Committee. On September 28, 2015, the Committee was expanded to include two additional members. The Committee is presently comprised of the following six members: (i) U.S. Bank National Association, as Indenture Trustee, (ii) New Generation Advisors, LLC, (iii) Samil Tong Sang, Co., (iv) Simon Property Group, Inc., (v) T. Rowe Price Credit Opportunities Fund, Inc. and (vi) Wilfrid Global Opportunity Fund.[2]

4. On October 27, 2015, the Committee applied to the Court for an order authorizing the Committee to retain PJT as its investment banker *nunc pro tunc* to September 29, 2015 [Docket No. 369] pursuant to that certain engagement agreement (the "Agreement") dated October 20, 2015. A copy of the Agreement is attached hereto as Appendix A.

5. On October 28, 2015, this Court entered an order (the "Compensation Procedures Order") establishing procedures for interim compensation and reimbursement of expenses of professionals [Docket No. 379].

6. On November 13, 2015, this Court entered an order (the "Retention Order") authorizing the Committee to employ PJT as their investment banker *nunc pro tunc* to September 29, 2015 [Docket No. 443]. A copy of the Retention Order is attached hereto as Appendix B.

7. On January 29, 2016, this Court entered an order [Docket No. 740] (the "Confirmation Order") confirming the Debtors' *Third Amended Joint Chapter 11 Plan of Reorganization of Quiksilver, Inc. and Its Affiliated Debtors and Debtors In Possession* under chapter 11 of the Bankruptcy Code (the "Plan") [Docket No. 731].

---

[2] On September 28, 2015, Global Brands Group resigned from the Committee. New Generation Advisors, LLC resigned from the Committee on January 28, 2016, and T. Rowe Price Credit Opportunities Fund, Inc. and Wilfrid Global Opportunity Fund resigned from the Committee on January 29, 2016.

8. On February 11, 2016 (the "Effective Date"), the Debtors consummated the Plan. *See Notice of (A) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Reorganization of Quiksilver, Inc., and Its Affiliated Debtors and Debtors in Possession, (B) Occurrence of Effective Date, and (C) Certain Deadlines* [Docket No. 789].

9. On February 19, 2016, the Court entered the *Final Decree and Order Closing Certain Bankruptcy Cases Pursuant to the Plan* [Docket No. 815], which closed, as of the Effective Date, the chapter 11 cases of Debtors DC Direct, Inc., Fiora, Inc., Mt. Naimea, Inc., Quiksilver Entertainment, Inc., and Quiksilver Wetsuits, Inc.

10. PJT submits this first and final application (the "First and Final Application") requesting: (i) the allowance (and final approval) of compensation for actual and necessary professional services rendered as investment banker to the Committee during the period of September 29, 2015 through January 29, 2016 (the "Compensation Period"); (ii) the allowance (and final approval) of the Restructuring Fee (as herein defined); (iii) and for the reimbursement of all actual and necessary out-of-pocket expenses incurred during the Compensation Period.

11. Professional services and out-of-pocket expenses for which compensation and reimbursement are sought were rendered and expended on behalf of the Committee pursuant to chapter 11 of the Bankruptcy Code.

## II. The Committee's Engagement of PJT

12. Pursuant to the Agreement, PJT was retained to provide the following services to the Committee:

(a) assist in the evaluation of the Debtors' businesses and prospects;

(b) assist in the evaluation of the Debtors' long-term business plan and related financial projections;

(c) assist in the development of financial data, analyses and presentations to the Committee;

3

(d) analyze the Debtors' financial liquidity and evaluate alternatives to improve such liquidity;

(e) analyze various restructuring scenarios and the potential impact of these scenarios on the recoveries of unsecured creditors;

(f) evaluate the Debtors' debt capacity and alternative capital structures;

(g) participate in negotiations among the Committee, the Debtors and their other creditors, suppliers, lessors, and other interested parties;

(h) value consideration offered by the Debtors to the unsecured creditors in connection with a Restructuring (as defined in the Agreement);

(i) provide expert witness testimony concerning any of the subjects encompassed by the investment banking services; and

(j) provide such other advisory services as are customarily provided in connection with the analysis and negotiation of a Restructuring as requested and mutually agreed.

13. Pursuant to the Agreement, as approved by the Retention Order, the Debtors will pay PJT as follows in consideration for the services to be rendered:[3]

(a) a monthly advisory fee (the "Monthly Fee") in the amount of $150,000 in cash;

(b) an additional fee (the "Restructuring Fee") equal to $2,000,000. Fifty percent (50%) of all Monthly Fees beginning after the fourth Monthly Fee paid shall be credited against the Restructuring Fee. Except as otherwise provided in the Agreement, the Restructuring Fee shall be earned and payable, in cash, either (a) upon emergence from chapter 11 pursuant to a plan of reorganization confirmed in connection with any case or cases commenced by the Debtors under the Bankruptcy Code, or (b) in the case of a sale, upon the closing date of such sale; and

(c) reimbursement of all reasonable out-of-pocket expenses incurred during PJT's engagement, including, but not limited to, travel and lodging, direct identifiable data processing, document production, publishing services and communication charges, courier services, working meals, reasonable fees and expenses of PJT's counsel and other necessary expenditures, payable upon rendition of invoices setting forth in reasonable detail the nature and amount of such expenses in accordance with the terms of the Compensation Procedures Order.

---

[3] This description of PJT's compensation structure is for summary and illustrative purposes only. The terms of the Agreement and the Retention Order shall apply to any such compensation awarded to PJT.

4

### III. Services Provided by PJT During the Compensation Period

14. The nature of the work performed by PJT during the Compensation Period included the following:

(a) reviewing and performing diligence on financial projections and the business plan prepared by the Debtors and their advisors;

(b) reviewing and negotiating improvements to the Debtors' debtor-in-possession financing;

(c) reviewing and negotiating alternative debtor-in-possession financing;

(d) preparing and reviewing declarations related to the debtor-in-possession financing;

(e) analyzing comps relevant to the Debtors' debtor-in-possession financing and plan sponsor agreement;

(f) performing valuation work regarding the Debtors and their foreign subsidiaries, including the preparation of an expert report;

(g) reviewing and negotiating improvements to the Debtors' critical vendor strategy;

(h) preparing for mediation between the Debtors, Oaktree Capital Management LP ("Oaktree"), and the Committee;

(i) performing analysis related to diminution in value of the collateral of the Debtors' pre-petition secured creditors;

(j) supporting litigation efforts of the Committee in connection with confirmation of the Debtors' plan of reorganization;

(k) conducting diligence and providing input on all motions filed by the Debtors and preparing related analyses;

(l) participating in teleconferences with the Committee to facilitate review of each motion filed by the Debtors;

(m) monitoring the sale process conducted by the Debtors and their advisors;

(n) identifying and contacting potential investors in the reorganized Debtors;

(o) attending diligence sessions with the Debtors and their advisors;

(p) preparing for and attending depositions in connection with the Debtors' debtor-in-possession financing and critical vendors;

(q) monitoring the Debtors' financial results and liquidity position;

(r) supporting litigation efforts of the Committee in connection with the Debtors' debtor-in-possession financing and critical vendors; and

(s) preparing other financial diligence and analyses at the request of the Committee.

### IV. The PJT Team

15. The financial services set forth above were performed primarily by: Michael Genereux, Partner; Jamie Baird, Managing Director; Josh Abramson, Vice President; and Samuel Rappaport, Analyst. Details of the background and experience of these professionals are provided in Appendix C.

### V. PJT's Request for Allowance (and Final Approval) of Compensation and Reimbursement of Expenses

16. For the Compensation Period, PJT seeks (a) allowance (and final approval) of Monthly Fees in the amount of $600,322.58[4], (b) payment in the amount of $600,322.58, and (c) the reimbursement of out-of-pocket expenses incurred in the amount of $24,844.74.

17. In addition to the Monthly Fees earned during the Compensation Period, PJT has earned a Restructuring Fee of $2,000,000.00. Pursuant to the terms of the Agreement, as approved by the Retention Order, PJT shall receive a Restructuring Fee upon the confirmation of the Debtors' Plan. On January 29, 2016, this Court entered the Confirmation Order confirming the Plan. PJT seeks (a) allowance (and final approval) of the Restructuring Fee in the amount of $2,000,000.00, and (b) payment in the amount of $2,000,000.00.

---

[4] Amount includes PJT's Monthly Fee pro-rated for the period of January 1, 2016 through January 29, 2016 in the amount $140,322.58 which was not previously invoiced in connection with a prior monthly fee application.

18. A summary of all fees earned and out-of-pocket expenses incurred during the Compensation Period is outlined below:

| Compensation Period | Advisory Fees | Out-of-Pocket Expenses | Subtotal | Payments Received[5] | Amount Due |
|---|---|---|---|---|---|
| September 29 – 30, 2015[6] | $10,000.00 | $-- | $10,000.00 | $-- | **$10,000.00** |
| October 1 – 31, 2015 | 150,000.00 | 6,120.00 | 156,120.00 | -- | **156,120.00** |
| November 1 – 30, 2015 | 150,000.00 | -- | 150,000.00 | -- | **150,000.00** |
| December 1 – 31, 2015 | 150,000.00 | -- | 150,000.00 | -- | **150,000.00** |
| January 1 – 29, 2016[7] | 140,322.58 | 18,724.74 | 159,047.32 | -- | **159,047.32** |
| Restructuring Fee | 2,000,000.00 | -- | 2,000,000.00 | -- | **2,000,000.00** |
| **Totals** | **$2,600,322.58** | **$24,844.74** | **$2,625,167.32** | **$--** | **$2,625,167.32** |

19. PJT respectfully submits that the compensation requested for the services rendered by PJT to the Committee during the Compensation Period is fully justified and reasonable based upon (a) the complexity of the issues presented, (b) the skill necessary to perform the financial advisory services properly, (c) the preclusion of other employment, (d) the customary fees charged to clients in non-bankruptcy situations for similar services rendered, (e) time constraints required by the exigencies of the case, and (f) the experience, reputation and ability of the professionals rendering services.

20. PJT respectfully submits that the services it has rendered to the Committee have been necessary and in the best interests of the Committee and the Debtors' estates. PJT respectfully submits that under the criteria normally examined in chapter 11 reorganization cases, the compensation requested by PJT is reasonable in light of the work performed by PJT to date in this case.

21. The amount of the fees sought in this application and PJT's billing practices are consistent with market practices in a bankruptcy context. PJT has never billed its clients based on the number of hours expended by its professionals. Accordingly, PJT does not have hourly rates for its professionals, and PJT's professionals generally do not maintain detailed time records of

---

[5] As of the date of this First and Final Application, PJT has not received payment for the invoiced fees and out-of-pocket expenses.
[6] Pro-rated Monthly Fee calculated as follows: 2 days out of 30 days multiplied by $150,000.00.
[7] Pro-rated Monthly Fee calculated as follows: 29 days out of 31 days multiplied by $150,000.00.

the work performed for its clients. However, PJT has maintained contemporaneous time records in the Debtors' cases in one-half hour increments. Time records of the 1,328.0 hours expended by PJT professionals in providing financial advisory services to the Debtors during the Compensation Period are provided in Appendix D.

22. Out-of-pocket expenses incurred by PJT are charged to a client if out-of-pocket expenses are incurred for the client or are otherwise necessary in connection with services rendered for such particular client. PJT does not factor general overhead expenses into any disbursements charged to its clients in connection with chapter 11 cases. PJT has followed its general internal policies with respect to out-of-pocket expenses billed to the Debtors as set forth below, with any exceptions specifically explained.

(a) All cross-country airfare charges are based upon coach class rates.

(b) With respect to local travel, PJT's general policy enables employees to travel by taxi or, in certain circumstances, private car service to and from meetings while rendering services to a client on a client related matter, for which the client is charged. Further, and primarily for safety reasons, employees are permitted to charge to a client the cost of transportation home if an employee is required to work past 9:00 p.m. on client-specific matters.

(c) PJT's general policy permits its professionals to charge in-office dinner meals 3 hours beyond their regularly scheduled workday if an employee is required to provide services to the client during such dinnertime, and to charge in-office meals on the weekend if an employee is required to provide services to a client on the weekend.

(d) The Document Production category of expenses includes charges from outside service companies that provide, for a fee, high volume photocopying services on an expedited basis to PJT; and charges for internal photocopying services provided by PJT. PJT bills internal Document Production charges at the rate of $0.10 per page for black and white, and color photocopies.

(e) The External Research category of expenses includes charges from outside computer/electronic service companies that supply, for a fee, research and/or financial documents to PJT. The services provided by these companies primarily consist of the retrieval of financial documents from regulatory agencies and/or the retrieval of research that would not otherwise be available to PJT. The Internal Research category of expenses are the charges for time spent by PJT research staff in operating the computer/electronic terminals related to these computer/electronic service companies.

8

(f) The Publishing Services category of expenses includes charges for the production of text-based publications such as research reports and presentations, and printing and binding services.

23. Invoices detailing the Monthly Fees and Restructuring Fee earned, and out-of-pocket expenses incurred during the Compensation Period, are attached hereto as Appendix E.

24. No prior application for the relief requested herein has been made.

25. All services for which PJT requests compensation were performed for and on behalf of the Committee and not on behalf of any other person or stakeholder.

26. No agreement or understanding exists between PJT and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with these proceedings.

## VI. Requested Relief

**WHEREFORE**, PJT respectfully requests that the Court:

(a) allow $600,322.58 as monthly compensation for professional services rendered by PJT as investment banker to the Committee during the Compensation Period;

(b) allow the Restructuring Fee of $2,000,000.00 for professional services rendered by PJT as investment banker to the Committee during the Compensation Period;

(c) approve the reimbursement of 100% of PJT's out-of-pocket expenses incurred in connection with the rendering of professional services to the Committee during the Compensation Period in the amount of $24,844.74; and

(d) grant such other and further relief as this Court deems just and proper.

Dated: March 7, 2016

                                              PJT Partners Inc. Investment Banker to the Official Committee of Unsecured Creditors

                                              By: /s/ Michael Genereux
                                                    Michael Genereux
                                                    Partner
                                                    280 Park Avenue
                                                    New York, NY 10017
                                                    (212) 364-7800

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| QUIKSILVER, INC., *et al.*, | Case No. 15-11880 (BLS) |
| Debtors. | (Jointly Administered) |

### CERTIFICATION OF MICHAEL GENEREUX

Michael Genereux, certifies as follows:

1. I am a Partner of PJT Partners Inc. ("PJT"), a financial advisory firm whose principal address is 280 Park Avenue, New York, New York 10017. I make this certification in accordance with Rule 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") regarding the contents of applications for compensation and expenses.

2. I have read PJT's first and final application for allowance of compensation for services rendered and reimbursement of expenses as investment banker to the Official Committee of Unsecured Creditors (the "Committee") of Quiksilver, Inc. and its affiliated debtors and debtors-in-possession (collectively the "Debtors") for the period of September 29, 2015 through January 29, 2016 (the "First and Final Application").

3. I have reviewed the requirements of the Guidelines For Reviewing Applications For Compensation And Reimbursement of Expenses Filed Under 11 U.S.C. § 330 (the "Guidelines") and the Local Rules, and I believe that the First and Final Application complies with the Guidelines and the Local Rules, except as specifically noted in the First and Final Application.

Dated: March 7, 2016                                  By: /s/ Michael Genereux
                                                                                     Michael Genereux
                                                                                     Partner