**APPENDIX A**

October 20, 2015

Members of the Official Committee of
Unsecured Creditors of Quiksilver, Inc. et al.
as listed in Exhibit A

Dear Members:

This letter confirms the understanding and agreement (the "Agreement") between PJT Partners L.P. ("PJT Partners") and the Official Committee of Unsecured Creditors (the "Committee") of Quiksilver, Inc. (together with any affiliates and subsidiaries, the "Company"), in cooperation with Akin Gump Strauss Hauer & Feld LLP ("Counsel" and, collectively with PJT Partners, the Committee, and the Company, the "Parties") as counsel to the Committee, regarding the retention of PJT Partners on an exclusive basis by the Committee effective as of September 29, 2015 (the "Effective Date") as its investment banker for the purposes set forth herein.

Under this Agreement, PJT Partners will provide investment banking services to the Committee in connection with a possible restructuring of certain liabilities of the Company and will assist the Committee in analyzing, structuring, negotiating and effecting a Restructuring pursuant to the terms and conditions of this Agreement. As used in this Agreement, the term "Restructuring" shall mean, collectively, (i) any restructuring, reorganization (whether or not pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code")) and/or recapitalization of the Company and/or sale or other disposition of substantially all of the assets of the Company (a "Sale") affecting existing or potential debt obligations or other claims, including, without limitation, senior debt, junior debt, trade claims, general unsecured claims, and preferred stock (collectively, the "Obligations") and/or (ii) any complete or partial repurchase, refinancing, extension or repayment by the Company of any of the Obligations.

The investment banking services to be rendered by PJT Partners may include, but are not limited to, the following:

(a) Assist in the evaluation of the Company's businesses and prospects;

(b) Assist in the evaluation of the Company's long-term business plan and related financial projections;

(c) Assist in the development of financial data, analyses and presentations to the Committee;

(d) Analyze the Company's financial liquidity and evaluate alternatives to improve such liquidity;

(e) Analyze various restructuring scenarios and the potential impact of these scenarios on the recoveries of unsecured creditors;

(f) Evaluate the Company's debt capacity and alternative capital structures;

(g) Participate in negotiations among the Committee, the Company and its other creditors, suppliers, lessors, and other interested parties;

(h) Value consideration offered by the Company to the unsecured creditors in connection with a Restructuring;

(i) Provide expert witness testimony concerning any of the subjects encompassed by the other investment banking services; and

(j) Provide such other advisory services as are customarily provided in connection with the analysis and negotiation of a Restructuring as requested and mutually agreed.

Notwithstanding anything contained in this Agreement to the contrary, PJT Partners shall have no responsibility for designing or implementing any initiatives to improve the Company's operations, profitability, cash management or liquidity. PJT Partners makes no representations or warranties about the Company's ability to (i) successfully improve its operations, (ii) maintain or secure sufficient liquidity to operate its business, or (iii) successfully complete a Restructuring. PJT Partners is retained under this Agreement solely to provide advice regarding a Restructuring and is not being retained to provide "crisis management" services.

It is agreed, subject to the approval of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), that the Company will pay the following fees to PJT Partners for its investment banking services:

(i) a monthly advisory fee (the "Monthly Fee") in the amount of $150,000 in cash, with the first Monthly Fee payable upon the execution of this Agreement by the Parties and additional installments of such Monthly Fee payable in advance on each monthly anniversary of the Effective Date;

(ii) an additional fee (the "Restructuring Fee") equal to $2,000,000. Fifty percent (50%) of all Monthly Fees beginning after the fourth Monthly Fee paid shall be credited against the Restructuring Fee. Except as otherwise provided herein, the Restructuring Fee shall be earned and payable, in cash, either (a) upon emergence from chapter 11 pursuant to a plan of reorganization confirmed in connection with any case or cases commenced by the Company under the Bankruptcy Code, or (b) in the case of a Sale, upon the closing date of such Sale; and

(iii) reimbursement of all reasonable out-of-pocket expenses incurred during this engagement, including, but not limited to, travel and lodging, direct identifiable data processing, document production, publishing services and communication charges, courier services, working meals, reasonable fees and expenses of PJT Partners' counsel and other necessary expenditures, payable upon rendition of invoices setting forth in reasonable detail the nature and amount of such expenses. In connection therewith, the Company shall pay PJT Partners on the Effective

2

Date and maintain thereafter a $50,000 expense advance for which PJT Partners shall account upon termination of this Agreement.

For the avoidance of doubt, all fees and expenses payable to PJT Partners pursuant to this Agreement shall be payable solely by the Company. None of Counsel, the Committee or any individual members of the Committee shall have any obligation to pay any of PJT Partners' fees or expenses.

The Committee shall use its best efforts to promptly apply to the Bankruptcy Court for the approval pursuant to sections 328 and 1103 of the Bankruptcy Code of (A) this Agreement, including the attached indemnification agreement, and (B) PJT Partners' retention by the Committee under the terms of this Agreement and subject to the standard of review provided in section 328(a) of the Bankruptcy Code and not subject to any other standard of review under section 330 of the Bankruptcy Code, provided that PJT Partners' retention may be subject to review by the U.S. Trustee under section 330. The Committee shall supply PJT Partners with a draft of such application and any proposed order authorizing PJT Partners' retention sufficiently in advance of the filing of such application and proposed order to enable PJT Partners and its counsel to review and comment thereon. PJT Partners shall have no obligation to provide any services under this Agreement unless PJT Partners' retention under the terms of this Agreement is approved under section 328(a) of the Bankruptcy Code by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is acceptable to PJT Partners in all respects. PJT Partners acknowledges that in the event that the Bankruptcy Court approves its retention, PJT Partners' fees and expenses shall be subject to the jurisdiction and approval of the Bankruptcy Court under section 328(a) of the Bankruptcy Code and any applicable fee and expense guideline orders; provided, however, that PJT Partners shall only be required to maintain daily records which shall indicate total hours incurred by each professional for each day and a brief description of the nature of the work performed each day and, provided further, that PJT Partners shall not be required to maintain receipts for expenses in amounts less than $75.

The Parties acknowledge and agree that PJT Partners' restructuring expertise as well as its capital markets knowledge, financing skills and mergers and acquisitions capabilities, some or all of which may be required by the Committee during the term of PJT Partners' engagement hereunder, were important factors in determining the amount of the various fees set forth herein, and that the ultimate benefit to the Committee of PJT Partners' services hereunder could not be measured merely by reference to the number of hours to be expended by PJT Partners' professionals in the performance of such services. The Committee also acknowledges and agrees that the various fees set forth herein have been agreed upon by the Parties in anticipation that a substantial commitment of professional time and effort will be required of PJT Partners and its professionals hereunder over the life of the engagement, and in light of the fact that such commitment may foreclose other opportunities for PJT Partners and that the actual time and commitment required of PJT Partners and its professionals to perform its services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for the

3

firm. In addition, given the numerous issues which PJT Partners may be required to address in the performance of its services hereunder, PJT Partners' commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for PJT Partners' services for engagements of this nature in an in-court context, the Committee acknowledges and agrees that the fee arrangements hereunder (including the Monthly Fee and the Restructuring Fee) are reasonable.

The advisory services and compensation arrangement set forth in this Agreement do not encompass other investment banking services or the arranging of debt or equity capital (except as provided above), issuing fairness opinions or any other specific services not set forth in this Agreement. The terms and conditions of any such investment banking services, including compensation arrangements, would be set forth in a separate written agreement between PJT Partners and the appropriate party.

Except as contemplated by the terms hereof or as required by applicable law, regulation or legal process, for a period of one year from the date hereof, PJT Partners shall keep confidential all material non-public information provided to it by or at the request of the Committee, and shall not disclose such information to any third party or to any of its employees or advisors except to those persons who have a need to know such information in connection with PJT Partners' performance of its responsibilities hereunder and who are advised of the confidential nature of the information and who agree to keep such information confidential.

The Company will furnish or cause to be furnished to PJT Partners such information as PJT Partners reasonably believes appropriate to its assignment (all such information so furnished being the "Information"). The Company further agrees that it will provide PJT Partners with reasonable access to the Company and its directors, officers, employees and advisers. The Company shall inform PJT Partners promptly upon becoming aware of any material developments relating to the Company which the Company reasonably expects may impact on the proposed Restructuring or if the Company becomes aware that any Information provided to PJT Partners is, or has become, untrue, unfair, inaccurate or misleading in any way. Furthermore, the Company represents and warrants to PJT Partners in respect of all Information supplied by the Company, that, to the Company's knowledge, the Company has not obtained any such Information other than by lawful means and that disclosure to PJT Partners will not breach any agreement or duty of confidentiality owed to third parties. Counsel recognizes and confirms that PJT Partners (a) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having independently verified the same, (b) does not assume responsibility for the accuracy or completeness of the Information and such other information, (c) is entitled to rely upon the Information without independent verification, and (d) will not make an appraisal of any assets in connection with its assignment.

In the event that the Information belonging to the Company or the Committee is stored electronically on PJT Partners' computer systems, PJT Partners shall not be liable for any damages resulting from unauthorized access, misuse or alteration of such information by persons

4

not acting on its behalf, provided that PJT Partners exercises the same degree of care in protecting the confidentiality of, and in preventing unauthorized access to, the Company's or Counsel's information that it exercises with regard to its own most sensitive proprietary information.

Except as required by applicable law, regulation, regulatory ruling or court order, any advice to be provided by PJT Partners under this Agreement shall not be disclosed publicly or made available to third parties (other than the Committee's other professional advisors or, if appropriate in Counsel's reasonable judgment, in any filings in a Chapter 11 proceeding) without the prior written consent of PJT Partners. All services, advice and information and reports provided by PJT Partners to Counsel in connection with this assignment shall be for the sole benefit of the Counsel and shall not be relied upon by any other person. For the avoidance of doubt, PJT Partners will not provide the Committee with any material non-public information on any public companies other than the Company in connection with this assignment.

In consideration of PJT Partners' agreement to provide investment banking services to the Company in connection with this Agreement, it is agreed that the Company will indemnify PJT Partners and its agents, representatives, members and employees. A copy of our standard form of indemnification agreement is attached to this Agreement as Attachment A. None of PJT Partners nor its affiliates and its and their respective partners (both general and limited), members, officers, directors, employees and agents and each other person, if any, controlling PJT Partners or any of its affiliates shall have any liability (whether direct or indirect, in contract or tort or otherwise) to Counsel, the Committee and their respective successors, agents, personal representatives, affiliates, officers, partners, employees and assigns for or in connection with the engagement except for any such liability for losses, claims, damages or liabilities incurred by PJT Partners that are finally judicially determined by a court of competent jurisdiction to have primarily resulted from the gross negligence or willful misconduct of PJT Partners.

PJT Partners' engagement hereunder may be terminated upon 30 days' written notice without cause by either the Committee or PJT Partners; termination for cause by either party will occur immediately upon notice by the other party. Notwithstanding the foregoing, (a) the provisions relating to the payment of fees and expenses accrued through the date of termination, the status of PJT Partners as an independent contractor and the limitation as to whom PJT Partners shall owe any duties will survive any such termination, (b) any such termination shall not affect the Company's obligations under the indemnification agreement attached as Attachment A or PJT Partners' confidentiality obligations hereunder and (c) PJT Partners shall be entitled to the Restructuring Fee in the event that at any time prior to the expiration of 12 months following the termination of this Agreement a definitive agreement with respect to a Restructuring is executed and a Restructuring is thereafter consummated.

The Company represents that neither it nor any of its affiliates under common control, nor, to the knowledge of the Company, any of their respective directors or officers, is an individual or entity ("Person") that is, or is owned or controlled by a Person that is: (i) a Person

5

with whom dealings are restricted or prohibited under U.S. economic sanctions (including those administered or enforced by the U.S. Department of Treasury's Office of Foreign Assets Control) or similar sanctions imposed by another relevant sanctions authority (collectively, "Sanctions"); or (ii) to the knowledge of the Company, not in compliance in all material respects with all applicable anti-money laundering laws and Sanctions.

The Company should be aware that PJT Partners and/or its affiliates may be providing or may in the future provide financial or other services to other parties with conflicting interests. However, consistent with PJT Partners' policy to hold in confidence the affairs of its customers, PJT Partners will not use confidential information obtained from the Company except in connection with PJT Partners' services to Counsel, and PJT Partners' relationship with, the Company, nor will PJT Partners use on either Counsel's or the Company's behalf any confidential information obtained from any other customer.

This Agreement (including the attached indemnification agreement) embodies the entire agreement and understanding between the Parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof. If any provision of this Agreement is determined to be invalid or unenforceable in any respect, such determination will not affect the Agreement in any other respect, which will remain in full force and effect. No waiver, amendment or other modification of this Agreement shall be effective unless in writing and signed by each Party to be bound thereby. This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts executed in and to be performed in that state.

The Parties hereby agree that any action or proceeding based hereon or arising out of PJT Partners' engagement hereunder shall be brought and maintained exclusively in the Bankruptcy Court. The Parties irrevocably submit to the jurisdiction of the Bankruptcy Court appellate courts thereof for the purpose of any action or proceeding based hereon or arising out of PJT Partners' engagement hereunder and irrevocably agree to be bound by any judgment rendered thereby in connection with such action or proceedings. The Parties hereby irrevocably waive, to the fullest extent permitted by law, any objection they may have or hereafter may have to the laying of venue of any such action or proceeding brought in any such court referred to above and any claim that such action or proceeding has been brought in an inconvenient forum and agrees not to plead or claim the same.

Please confirm that the foregoing correctly sets forth our agreement by signing and returning to PJT Partners the duplicate copy of this Agreement and the indemnification agreement attached hereto as Attachment A.

Very truly yours,
PJT PARTNERS L.P.

By: _____
Name:   Michael J. Genereux
Title:    Partner

Accepted and Agreed to as
of the date first written above:

Quiksilver, Inc.

By: _____
Name:
Title:

Akin Gump Strauss Hauer & Feld LLP

By: _____
Name: Michael S. Stamer
Title:   Partner

The Unofficial Committee of Unsecured Creditors of Quiksilver, Inc., et al.

By: _____
Solely in its capacity as Chair of the Committee and not in its individual capacity
Name: Ronald M. Tucker
Title:   Chairman

7

ATTACHMENT A

As of October 20, 2015

PJT Partners L.P.
280 Park Avenue
New York, NY 10017

INDEMNIFICATION AGREEMENT

Ladies and Gentlemen:

     We acknowledge that pursuant to the letter of agreement dated as of October 1, 2015 (the "Engagement Letter"), the Committee (as defined in the Engagement Letter) has engaged PJT Partners L.P. ("PJT Partners") to advise and assist the Committee in connection with the matters referred to in the Engagement Letter. We agree to indemnify and hold harmless you and your affiliates and your and their respective partners (both general and limited), members, officers, directors, employees and agents and each other person, if any, controlling you or any of your affiliates (you and each such other person being an "Indemnified Party") from and against any losses, claims, damages, expenses and liabilities whatsoever, whether they be joint or several, related to, arising out of or in connection with the engagement under the Engagement Letter, including without limitation, any related services and activities prior to the date of the Engagement Letter (the "Engagement") and will reimburse each Indemnified Party for all expenses (including fees, expenses and disbursements of counsel) as they are incurred in connection with investigating, preparing, pursuing, defending, or otherwise responding to, or assisting in the defense of any action, claim, suit, investigation or proceeding related to, arising out of or in connection with the Engagement or this agreement, whether or not pending or threatened, whether or not any Indemnified Party is a party, whether or not resulting in any liability and whether or not such action, claim, suit, investigation or proceeding is initiated or brought by us. We also agree to cooperate with PJT Partners and to give, and so far as it is able to procure the giving of, all such information and render all such assistance to PJT Partners as PJT Partners may reasonably request in connection with any such action, claim, suit, proceeding, investigation or judgment and not to take any action which might reasonably be expected to prejudice the position of PJT Partners or its affiliates in relation to any such action, claim, suit, proceeding, investigation or judgment without the consent of PJT Partners (such consent not to be unreasonably withheld). In the event that PJT Partners is requested or authorized by us or required by government regulation, subpoena or other legal process to produce documents, or to make its current or former personnel available as witnesses at deposition or trial, arising as a result of or in connection with the Engagement, we will, so long as PJT Partners is not a party to

the proceeding in which the information is sought, pay PJT Partners the fees and expenses of its counsel incurred in responding to such a request. We will not, however, be liable under the foregoing indemnification provision for any losses, claims, damages or liabilities (or expenses relating thereto) that are finally judicially determined by a court of competent jurisdiction to have primarily resulted from the gross negligence, willful misconduct or fraud of PJT Partners. We also agree that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to us or our owners, parents, affiliates, security holders or creditors for or in connection with the Engagement except for any such liability for losses, claims, damages or liabilities incurred by us that are finally judicially determined by a court of competent jurisdiction to have primarily resulted from the gross negligence, willful misconduct or fraud of PJT Partners.

If the indemnification provided for in the preceding paragraph is for any reason unavailable to an Indemnified Party in respect of any losses, claims, damages or liabilities referred to herein, then, in lieu of indemnifying such Indemnified Party hereunder, we shall contribute to the amount paid or payable by such Indemnified Party as a result of such losses, claims, damages or liabilities (and expenses relating thereto) in such proportion as is appropriate to reflect not only the relative benefits received (or anticipated to be received) by you, on the one hand, and us, on the other hand, from the Engagement but also the relative fault of each of you and us, as well as any other relevant equitable considerations; provided, however, to the extent permitted by applicable law, in no event shall your aggregate contribution to the amount paid or payable exceed the aggregate amount of fees actually received by you under the Engagement Letter. For the purposes of this agreement, the relative benefits to us and you of the Engagement shall be deemed to be in the same proportion as (a) the total value paid or contemplated to be paid or received or contemplated to be received by us, our security holders and our creditors in the transaction or transactions that are subject to the Engagement, whether or not any such transaction is consummated, bears to (b) the fees paid or to be paid to PJT Partners under the Engagement Letter (excluding any amounts paid as reimbursement of expenses).

Neither party to this agreement will, without the prior written consent of the other party (which consent will not be unreasonably withheld), settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which indemnification may be sought hereunder (a "<u>Judgment</u>"), whether or not we or any Indemnified Party are an actual or potential party to such claim, action, suit or proceeding. In the event that we seek to settle or compromise or consent to the entry of any Judgment, we agree that such settlement, compromise or consent (i) shall include an unconditional release of PJT Partners and each other Indemnified Party hereunder from all liability arising out of such claim, action, suit or proceeding, (ii) shall not include a statement as to, or an admission of, fault, culpability or a failure to act by or on behalf of PJT Partners or each other Indemnified Party, and (iii) shall not impose any continuing obligations or restrictions on PJT Partners or each other Indemnified Party.

2

Promptly after receipt by an Indemnified Party of notice of any complaint or the commencement of any action or proceeding with respect to which indemnification is being sought hereunder, such person will notify us in writing of such complaint or of the commencement of such action or proceeding, but failure to so notify us will not relieve us from any liability which we may have hereunder or otherwise, except to the extent that such failure materially prejudices our rights. If we so elect or are requested by such Indemnified Party, we will assume the defense of such action or proceeding, including the employment of counsel reasonably satisfactory to PJT Partners and the payment of the fees and disbursements of such counsel.

In the event, however, such Indemnified Party reasonably determines in its judgment that having common counsel would present such counsel with a conflict of interest or if we fail to assume the defense of the action or proceeding in a timely manner, then such Indemnified Party may employ separate counsel reasonably satisfactory to us to represent or defend it in any such action or proceeding and we will pay the fees and disbursements of such counsel; provided, however, that we will not be required to pay the fees and disbursements of more than one separate counsel for all Indemnified Parties in any jurisdiction in any single action or proceeding. In any action or proceeding the defense of which we assume, the Indemnified Party will have the right to participate in such litigation and to retain its own counsel at such Indemnified Party's own expense.

The foregoing reimbursement, indemnity and contribution obligations of ours under this agreement shall be in addition to any rights that an Indemnified Party may have at common law or otherwise, and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of ours and such Indemnified Party. We agree that the indemnity and reimbursement obligations of ours set out herein shall be in addition to any liability which we may otherwise have under the Engagement Letter and applicable law and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of ours, PJT Partners and any such Indemnified Party.

3

The provisions of this agreement shall apply to the Engagement, as well as any additional engagement of PJT Partners by us in connection with the matters which are the subject of the Engagement, and any modification of the Engagement or additional engagement and shall remain in full force and effect regardless of any termination or the completion of your services under the Engagement Letter.

This agreement and the Engagement Letter shall be governed by, and construed in accordance with the laws of the State of New York applicable to contracts executed in and to be performed in that state.

Very truly yours,

Quiksilver, Inc.

By:_____
Name:

Title:

Accepted and Agreed
to as of the date first
written above:

PJT PARTNERS L.P.

By: _____
Name: Michael J. Genereux
Title:  Partner

4

# EXHIBIT A

U.S. Bank National Association, as Indenture Trustee
Justin Shearer
100 Wall Street, Suite 1600
New York, NY 10005

New Generation Advisors, LLC.
Baily Dent
13 Elm Street
Manchester MA 01944

Samil Tong Sang, Co.
Ian Im
18-130 Gangdong-Dong
Busan, 13 618-800, South Korea

Simon Property Group, Inc.
Ronald M. Tucker
225 West Washington Street
Indianapolis, IN 46204

T. Rowe Price Credit Opportunities Fund
c/o T. Rowe Price Associates, Inc.
Rodney Rayburn
100 E. Pratt Street
Baltimore, MD 21202

Wilfrid Global Opportunity Fund
c/o Wilfrid Aubrey LLC
Nicholas Walsh
465 Lexington Avenue, Suite 10174
New York, NY 10017