# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Quicksilver Resources Inc., et al.,[1] | Case No. 15-10585 (LSS) |
| Debtors. | Jointly Administered |
| | **Hearing Date: Dec. 14, 2015 at 10:00 a.m. (ET)** |
| | **Obj. Deadline: Dec. 7, 2015 at 4:00 p.m. (ET)** |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER EXTENDING THE TERMS, AS MODIFIED, OF THE "FINAL ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 363 AND 507, AND BANKRUPTCY RULES 2002, 4001 AND 9014 (I) AUTHORIZING DEBTORS TO USE CASH COLLATERAL AND (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES"

The debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") seek entry of an amended final order, substantially in the form attached hereto as **Exhibit A** (the "Amended Final Order"),[2] extending the terms, as modified, of the *Final Order Under 11 U.S.C. §§ 105, 361, 362, 363 and 507, and Bankruptcy Rules 2002, 4001 and 9014 (I) Authorizing Debtors to Use Cash Collateral and (II) Granting Adequate Protection to Prepetition Secured Parties* [D.I. 307] (the "Final Order"). In support of this motion, the Debtors respectfully state:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Quicksilver Resources Inc. ("Quicksilver") [6163]; Barnett Shale Operating LLC [0257]; Cowtown Drilling, Inc. [8899]; Cowtown Gas Processing L.P. [1404]; Cowtown Pipeline Funding, Inc. [9774]; Cowtown Pipeline L.P. [9769]; Cowtown Pipeline Management, Inc. [9771]; Makarios Resources International Holdings LLC [1765]; Makarios Resources International Inc. [7612]; QPP Holdings LLC [0057]; QPP Parent LLC [8748]; Quicksilver Production Partners GP LLC [2701]; Quicksilver Production Partners LP [9129]; and Silver Stream Pipeline Company LLC [9384]. The Debtors' address is 801 Cherry Street, Suite 3700, Unit 19, Fort Worth, Texas 76102.

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed in the Amended Final Order.

## JURISDICTION

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).[3]

2.      Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The predicates for the relief requested herein are sections 105, 361, 362, 363, 503, 507(b) and 552 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 4001(b), 6004(h), and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 4001-2.

## BACKGROUND

**A.      General Background**

4.      On March 17, 2015 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.  The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  These chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to rule 1015 of the Federal Rules of Bankruptcy Procedure and Local Rule 1015-1.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.  On March 25, 2015, the Acting United States Trustee, Region 3 (the "U.S. Trustee") appointed the statutory committee of unsecured creditors (the "Committee").  *See* D.I. 119.

---

[3] Under rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors hereby confirm their consent to the entry of a final order by this Court in connection with this motion if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection therewith consistent with Article III of the United States Constitution.

207521835RLF1 13437998v.1

5.      A description of the Debtors and their business is set forth in greater detail in the *Declaration of Vanessa Gomez LaGatta in Support of First Day Pleadings* filed on the Petition Date. *See* D.I. 19.

**B.      The Final Order and Continued Access to Prepetition Collateral**

6.      On May 1, 2015, the Court entered the Final Order, which, among other things, (i) authorized the Debtors to utilize Cash Collateral (as that term is defined in Bankruptcy Code section 363(a)), and (ii) granted adequate protection to the First Lien Parties and the Second Lien Parties (collectively, the "Prepetition Secured Parties").  By its terms, the Final Order will terminate (the date of any such termination, the "Termination Date") on the earlier to occur of (x) December 17, 2015 or (y) certain Termination Events described therein but not currently applicable.

7.      Despite the approaching Termination Date, the Debtors continue to require access to Prepetition Collateral, including Cash Collateral, in the ordinary course of business to avoid irreparable harm to their estates.  As discussed at length in the *Debtors' Motion for Entry of Interim and Final Orders (A) Authorizing the Use of Cash Collateral, (B) Granting Prepetition Secured Parties Adequate Protection, (C) Scheduling a Final Hearing, and (D) Granting Related Relief* [D.I. 16] (the "Cash Collateral Motion"), the orderly continuation of the Debtors' business and the preservation of its going concern value is largely predicated upon the Debtors' ability to convert encumbered hydrocarbon assets into Cash Collateral and use it (as well as other cash) to fund, among other things, operations, capital expenditures, working capital, employee payroll, and overhead.  If access to Cash Collateral were allowed to lapse, the Debtors' ability to operate

their business and maintain their assets for any significant period of time would effectively be cut-off.[4]

8.      Moreover, as the Court is acutely aware and was discussed in the *Debtors' Motion for Entry of an Order Further Extending the Exclusive Periods During Which Only the Debtors May File a Chapter 11 Plan and Solicit Acceptances Thereof* [D.I. 693] (the "Second Exclusivity Motion"), a number of tasks remain to be accomplished before these chapter 11 cases can come to a conclusion.   Indeed, the Court granted the Second Exclusivity Motion and extended the Debtors' exclusive periods to file and solicit a chapter 11 plan through February 1, 2016 and April 13, 2016, respectively, to afford the Debtors time to accomplish precisely these tasks, including the sale of some or substantially all of their assets (which sale process is presently scheduled to conclude in late-January 2016, with a potential closing late in the first quarter of 2016).   Extending the use of Prepetition Collateral (including Cash Collateral) in accordance with the terms of the Amended Final Order as requested herein will align the expiration of Cash Collateral usage with the Debtors' exclusive periods and conclusion of the significant open issues in these cases.   Terminating access to Prepetition Collateral (including Cash Collateral), however, would jeopardize the Debtors' ability to bring these cases to a value-maximizing close

---

[4] If the Final Order terminates, the Debtors will also be forced to segregate their encumbered operating revenue (i.e. Cash Collateral) from their unencumbered cash and other unencumbered property.  As set forth in detail in the *Declaration of Vanessa Gomez LaGatta in Further Support of (1) Debtors Motion for Entry of Interim and Final Orders (A) Authorizing the Use of Cash Collateral, (B) Granting Prepetition Secured Parties Adequate Protection, (C) Scheduling a Final Hearing, and (D) Granting Related Relief and (2) Debtors Motion for (A) Authority to (I) Continue Using Existing Cash Management System, (II) Honor Certain Pre-Petition Obligations Related to the Use of the Cash Management System, and (III) Maintain Existing Bank Accounts and Business Forms; and (B) An Extension of Time to Comply with Bankruptcy Code Section 345(b) and Local Rule 4001-3* [D.I. 250], this task— while daunting for any business—is particularly burdensome for the Debtors.  Indeed, given the nature of the Debtors' cash management system and their operations, to segregate Cash Collateral would require the Debtors to establish twin cash management systems—one each for their encumbered and unencumbered assets and operations—and to make material alterations in how the Debtors conduct their business operations.  To effect these changes would require significant time, additional employees, contractors or consultants all of which would result in material additional administrative cost to the estates.

4

by stunting the sale process, depressing sale proceeds realized by the estates, and ultimately reducing recoveries available to the Debtors' creditors and stakeholders.

**C.      The Amended Final Order**

9.      While the Debtors will endeavor to achieve an agreed form of Amended Final Order among all parties in these cases before the hearing on this motion, the Debtors are filing this motion out of an abundance of caution and to provide regular notice of the modifications in the Amended Final Order to the Prepetition Secured Parties, the Committee, and all other parties in interest in these cases in advance of the December 14, 2015 hearing.  The Amended Final Order, as attached hereto, is substantially identical to the Final Order, including with respect to the adequate protection afforded to the Prepetition Secured Parties.    The few material modifications reflected in the Amended Final Order are as follows:

- Termination.    The Debtors' right to use Cash Collateral pursuant to the Amended Final Order will instead terminate without further notice or court proceeding on the earlier to occur of (i) April 30, 2016 and (ii) any of the Termination Events specified in the Amended Final Order.

- Cash Sweep.  The requirement that the Debtors deposit into the U.S. Operating Account on the first business day of each month cash that does not constitute Cash Collateral in an amount equal to no less than $15 million has been modified, effective January 1, 2016, to reduce the amount of the sweep to an amount equal to no less than $7.5 million.

- Reporting.  The requirement that a list of all Swap Agreements of Quicksilver and the Canadian Borrower in place as of the first business day of the month and any information on any such Swap Agreements terminated or unwound during the prior month be provided by the 10th business day of the following month to the First Lien Parties has been eliminated.

- Effect of Stipulations on Third Parties.    The provisions regarding the effect of the stipulations on third parties have been revised to reflect the filing of the Committee's complaint against the Second Lien Parties.

207521835RLF1 13437998v.1

In addition to the foregoing, there are additional immaterial changes to the Amended Final Order, made to update certain provisions for events that have transpired to date in these cases. For the convenience of the Court and parties in interest, a redline comparing the Amended Final Order against the Final Order is attached hereto as **Exhibit B**.

## RELIEF REQUESTED

10.     By this motion, the Debtors request entry of the Amended Final Order, substantially in the form attached hereto as **Exhibit A**, extending the terms, as modified, of the Final Order.

## SUPPORTING AUTHORITY

### A.     The Court Should Authorize Continued Use of Cash Collateral and Adequate Protection to the Prepetition Secured Parties

11.     A debtor's use of property of the estate, including cash collateral, is governed by Bankruptcy Code section 363.  Pursuant to Bankruptcy Code section 363(c)(2), a debtor may use cash collateral if "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of [section 363]."  11 U.S.C. § 363(c)(2).  Bankruptcy Code section 363(e) further provides that "on request of an entity that has an interest in property . . .  to be used, sold or leased, by the trustee, the court  . . .  shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest."  11 U.S.C. § 363(e).

12.     Although the Bankruptcy Code does not expressly define "adequate protection," Bankruptcy Code section 361 provides a non-exhaustive list of examples of adequate protection including: (i) a lump sum or periodic cash payments; (ii) replacement liens; and (iii) administrative priority claims.  *See* 11 U.S.C. § 361.  Generally, courts decide what constitutes adequate protection on a case-by-case basis.  *See Resolution Trust Corp. v. Swedeland Dev.*

*Group, Inc. (In re Swedeland Dev. Group, Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994) ("[A] determination of whether there is adequate protection is made on a case by case basis."); *In re N.J. Affordable Homes Corp.*, No. 05-60442, 2006 WL 2128624, at *14 (Bankr. D.N.J. June 29, 2006) ("The term 'adequate protection' is intended to be a flexible concept."); *In re Columbia Gas Sys., Inc.*, Nos. 91-803, 91-804, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992) (emphasizing that "the varying analyses and results contained in the . . . slew of cases demonstrate that what interest is entitled to adequate protection and what constitutes adequate protection must be decided on a case-by-case basis"); *see also In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993) (*citing* 2 Collier on Bankruptcy ¶ 361.01 [1] at 361-66 (15th ed. 1993) (explaining that adequate protection can take many forms and "must be determined based upon equitable considerations arising from the particular facts of each proceeding").

13.    In *Swedeland*, the Third Circuit pointedly noted that the purpose of adequate protection "is to insure that the creditor receives the value for which he bargained prebankruptcy." *In re Swedeland*, 16 F.3d at 564; *see also Shaw Indus., Inc. v. First Nat'l Bank of PA (In re Shaw Indus., Inc.)*, 300 B.R. 861, 865 (Bankr. W.D. Pa. 2003) ("The purpose of providing 'adequate protection' is to insure that a secured creditor receives in value essentially what he bargained for."); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986) (noting that the application of adequate protection "is left to the vagaries of each case, but its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process") (citation omitted), *rev'd on other grounds*, 89 B.R. 336 (S.D.N.Y. 1988). Adequacy, held the Third Circuit, "depends directly on how effectively it compensates the secured creditor for loss of value" caused by the priming lien granted to the new lender. *In re*

*Swedeland*, 16 F.3d at 564 (quoting *In re Am. Mariner Inds., Inc.*, 734 F.2d 426, 435 (9th Cir. 1984)).

14.     As set forth above, consistent with the Court's findings in the Final Order, the Debtors have a real and pressing need to continue to access Prepetition Collateral, including Cash Collateral, to operate their business in the ordinary course and preserve its going concern value.  The terms and conditions on which the Debtors may use Cash Collateral have been carefully designed to meet the dual goals of Bankruptcy Code sections 361 and 363.  If the Amended Final Order is entered, the Debtors will continue to have ample working capital to operate their businesses and provide an opportunity to maximize value for the benefit of their stakeholders through the sale process and conclusion of these cases.  Continued use of Cash Collateral will also allow the Debtors to escape the increased costs and administrative burdens that would follow if the Debtors were required to segregate and not utilize their Prepetition Collateral, including Cash Collateral.

15.     Moreover, the Debtors propose to continue to provide adequate protection to the Prepetition Secured Parties on the terms and conditions approved by the Court and memorialized in the Final Order.  Thus, and as previously concluded by the Court in the Final Order, the replacement liens, cash payments and other protections offered to the Prepetition Secured Parties will sufficiently protect their interests.  Accordingly, the adequate protection proposed here is fair and reasonable and sufficient to satisfy the requirements of the Bankruptcy Code and the Debtors submit that the Prepetition Secured Parties remain adequately protected.

16.     For all the foregoing reasons, the Debtors submit that the use of Cash Collateral on the terms set forth in the Amended Final Order is in the best interests of the Debtors, their estates, their creditors and any parties in interest, and should be authorized by this Court.

207521835RLF1 13437998v.1

## WAIVER OF BANKRUPTCY RULE 6004 (A) AND 6004 (H)

17.    Given the nature of the relief requested herein, the Debtors respectfully request a waiver of (a) the notice requirements under Bankruptcy Rule 6004(a) and (b) the fourteen-day stay under Bankruptcy Rule 6004(h), to the extent that either rule is applicable.

## NOTICE

18.    No trustee or examiner has been appointed in the Debtors' chapter 11 cases.  The Debtors have provided notice of this motion to (a) the U.S. Trustee, Attn: Jane Leamy, Esq.; (b) counsel to the Committee; (c) counsel to the agents under the Debtors' pre-petition credit facilities; (d) counsel to the Ad Hoc Group of Second Lienholders; (e) counsel to the Ad Hoc Group of Senior Noteholders; (f) counsel to the indenture trustees under the Debtors' pre-petition indentures; (g) the SEC; (h) the Internal Revenue Service; and (i) any parties entitled to notice pursuant to Local Rule 2002-1(b).  In view of the nature of the relief requested in this motion, the Debtors respectfully submit that no further notice is necessary.

[Remainder of Page Intentionally Left Blank]

207521835RLF1 13437998v.1

**WHEREFORE**, the Debtors respectfully request that the Court (a) enter the Amended Final Order, substantially in the form annexed hereto as **Exhibit A**, granting the relief requested in the motion and (b) grant such other and further relief as may be just and proper.

Wilmington, Delaware
Date: November 24, 2015

/s/ Amanda R. Steele

**RICHARDS, LAYTON & FINGER, P.A.**
Paul N. Heath (DE 3704)
Amanda R. Steele (DE 5530)
Rachel L. Biblo (DE 6012)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

– and –

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Charles R. Gibbs (admitted *pro hac vice*)
Sarah Link Schultz (admitted *pro hac vice*)
Travis A. McRoberts (DE 5274)
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone:  (214) 969-2800
Facsimile:  (214) 969-4343

Ashleigh L. Blaylock (admitted *pro hac vice*)
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, DC 20036-1564
Telephone:  (202) 887-4000
Facsimile:  (202) 887-4288

**COUNSEL FOR DEBTORS AND DEBTORS IN POSSESSION**