## <u>EXHIBIT D – MOELIS RETENTION ORDER</u>

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Quicksilver Resources Inc., et al.,[1] | ) Case No. 15-10585 (LSS) |
| | ) |
| | ) Jointly Administered |
| | ) |
| Debtors. | ) |
| | ) Re: Docket No. 246 , 326 |

## ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF
## MOELIS & COMPANY LLC AS INVESTMENT BANKER TO THE COMMITTEE,
## EFFECTIVE *NUNC PRO TUNC* TO MARCH 30, 2015, AND WAIVING CERTAIN
## INFORMATION REQUIREMENTS IMPOSED BY LOCAL RULE 2016-2

Upon the application (the "*Application*")[2] of the Committee for employment and

retention of Moelis & Company LLC ("*Moelis*") as investment banker to the Committee,

effective *nunc pro tunc* to March 30, 2015, and requesting a waiver of the time keeping

requirements of Local Rule 2016-2 and the U.S. Trustee Guidelines, all as more fully described

in the Application; and the Court having found that Moelis has the capability and experience to

provide the services described in the Application; and the Court having found based on the

representations made in the Application and the Flachs Declaration that (a) Moelis does not hold

or represent an interest adverse to the Debtors' estates and (b) Moelis is a "disinterested person"

as defined in section 101(14) of the Bankruptcy Code as required by section 327(a) of the

Bankruptcy Code, Bankruptcy Rule 2014(a) and Local Rule 2014-1; and the Court having found

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Quicksilver Resources Inc. [6163]; Barnett Shale Operating LLC [0257]; Cowtown Drilling, Inc. [8899]; Cowtown Gas Processing L.P. [1404]; Cowtown Pipeline Funding, Inc. [9774]; Cowtown Pipeline L.P. [9769]; Cowtown Pipeline Management, Inc. [9771]; Makarios Resources International Holdings LLC [1765]; Makarios Resources International Inc. [7612]; QPP Holdings LLC [0057]; QPP Parent LLC [8748]; Quicksilver Production Partners GP LLC [2701]; Quicksilver Production Partners LP [9129]; and Silver Stream Pipeline Company LLC [9384]. The Debtors' address is 801 Cherry Street, Suite 3700, Unit 19, Fort Worth, Texas 76102.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

that it has jurisdiction to consider the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order; and the Court having found that consideration of the Application and the relief requested therein is a core proceeding in accordance with 28 U.S.C. §§ 157(b)(2) on which the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the Committee provided due and proper notice of the Application that is adequate and appropriate under the particular circumstances; and a hearing having been held to consider the relief requested in the Application; and upon the Flachs Declaration, the record of the hearing, and all proceedings had before the Court; and the Court having found and determined that the relief sought in the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest, and that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED:

1.      The Application is approved as set forth herein.  All objections to the relief requested in the Application, whether filed or not, are hereby overruled.

2.      The Committee is authorized to retain and employ Moelis as its investment banker in these chapter 11 cases, pursuant to the terms and conditions set forth in the Application and the Engagement Letter, effective *nunc pro tunc* to March 30, 2015.

3.      Except to the extent set forth herein, the Engagement Letter (together with all annexes thereto), a copy of which is attached hereto as **Exhibit 1**, including without limitation the Fee Structure, is approved pursuant to sections 328(a), 1103(a), and 1103(b) of the Bankruptcy Code, and the Debtors are authorized and directed to perform their payment,

reimbursement, contribution and indemnification obligations and their non-monetary obligations in accordance with the terms and conditions, and at the times specified, in the Engagement Letter. Subject to paragraph six of this Order, all compensation, reimbursement of expenses, indemnification, contribution and reimbursement to Moelis and any Indemnified Person (as defined in the Engagement Letter) under the Engagement Letter shall be subject to review only pursuant to the standards set forth in section 328(a) of the Bankruptcy Code, and shall not be subject to any other standard of review including but not limited to that set forth in section 330 of the Bankruptcy Code.

4.     The Debtors are authorized to pay Moelis' fees and to reimburse Moelis for its reasonable, documented, out-of-pocket costs and expenses as provided in the Engagement Letter, including, but not limited to, in-sourced document production costs, travel costs, meals, and the reasonable, actual, documented, out-of-pocket costs, fees, disbursements, and other charges of Moelis' external legal counsel (without the need for such legal counsel to be retained as a professional in these chapter 11 cases). In the event that Moelis seeks reimbursement from the Debtors for attorneys' fees and expenses pursuant to the Application and the Engagement Letter, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Moelis' own applications, both interim and final, and these invoices and time records shall be subject to the U.S. Trustee Guidelines and the approval of the Bankruptcy Court pursuant to sections 330 and 331 of the Bankruptcy Code, but without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code.

5.     Moelis shall file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any

applicable orders of the Court; *provided, however,* that the requirements of the Bankruptcy Code, the Bankruptcy Rules, the U.S. Trustee Guidelines, and Local Rule 2016-2 and any other orders and procedures of this Court are hereby modified such that Moelis' restructuring professionals shall be required only to keep summary time records in half-hourly increments, Moelis' non-restructuring professionals and personnel in administrative departments (including legal) shall not be required to keep any time records, Moelis' restructuring professionals shall not be required to keep time records on a project category basis, and Moelis shall not be required to provide or conform to any schedule of hourly rates.

6.     Moelis shall be compensated in accordance with the terms of the Engagement Letter and, in particular, all of Moelis' fees and expenses in these chapter 11 cases are hereby approved pursuant to section 328(a) of the Bankruptcy Code.  Notwithstanding anything to the contrary herein, the fees and expenses payable to Moelis pursuant to the Engagement Letter shall be subject to review only pursuant to the standards set forth in section 328(a) of the Bankruptcy Code and shall not be subject to the standard of review set forth in section 330 of the Bankruptcy Code, except by the U.S. Trustee.  This Order and the record relating to the Court's consideration of the Application shall not prejudice or otherwise affect the rights of the U.S. Trustee to challenge the reasonableness of Moelis' compensation and expense reimbursements under sections 330 and 331 of the Bankruptcy Code.  Accordingly, nothing in this Order or the record shall constitute a finding of fact or conclusion of law binding on the U.S. Trustee, on appeal or otherwise, with respect to the reasonableness of Moelis' compensation.

7.     The indemnification, contribution, and reimbursement provisions included in **Annex A** to the Engagement Letter are approved, subject during the pendency of these cases to the following modifications:

a.     Moelis shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Letter, unless the indemnification, contribution, or reimbursement is approved by the Court.

b.     Notwithstanding any provision of the Engagement Letter to the contrary, the Debtors shall have no obligation to indemnify any Indemnified Person (as defined in the Engagement Letter), or provide contribution or reimbursement to any Indemnified Person, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from the Indemnified Person's gross negligence, willful misconduct, bad faith, or self-dealing to which the Debtors have not consented; (ii) for a contractual dispute in which the Debtors allege breach of the Indemnified Person's obligations to maintain the confidentiality of non-public information, unless the Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled without the Debtors' consent prior to a judicial determination as to the Indemnified Person's gross negligence, willful misconduct, bad faith, or unconsented self-dealing, but determined by this Court, after notice and a hearing, to be a claim or expense for which such Indemnified Person should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Letter, as modified by this Order.

c.     If, before the earlier of: (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal); and (ii) the entry of an order closing these chapter 11 cases, any Indemnified Person believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Engagement Letter (as modified by this Order), including, without limitation, the advancement of defense costs, such Indemnified Person must file an application therefor in this Court, and the Debtors may not pay any such amounts to the Indemnified Person before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses for indemnification, contribution, and/or reimbursement by any Indemnified Persons, and not a provision limiting the duration of the Debtors' obligation to indemnify, or make contributions or reimbursements to, the Indemnified Persons. All parties in interest shall retain the right to object to any demand by any Indemnified Person for indemnification, contribution, and/or reimbursement.

d.     Any limitations on any amounts to be contributed by the parties to the Engagement Letter shall be eliminated. The Indemnified Persons shall retain any rights they may have to contribution at common law.

8.      Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, or

9014, the terms and conditions of this Order shall be immediately effective and enforceable upon

its entry.

9.      To the extent that there may be any inconsistency between the terms of the

Application, the Engagement Letter, and this Order, the terms of this Order shall govern.

10.     Notice of the Application satisfies the requirements of Bankruptcy Rule 6004(a).

11.     The Debtors are authorized to take all actions necessary to effectuate the relief

granted in this Order in accordance with the Application.

12.     This Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Order.

Dated: _____, 2015
Wilmington, Delaware

THE HONORABLE LAURIE S. SILVERSTEIN
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT 1

399 PARK AVENUE
5th FLOOR
NEW YORK, NEW YORK 10022

T 212.880.3800
T 212.880.3800

M O E L I S  &  C O M P A N Y

April 21, 2015

<u>PRIVILEGED AND CONFIDENTIAL</u>

The Official Committee of Unsecured Creditors of Quicksilver Resources, Inc., et al.
c/o Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019

Ladies & Gentlemen:

We are pleased to confirm that since March 30, 2015, the Official Committee of Unsecured Creditors (the "Committee" or "you") appointed in the chapter 11 cases (the "Bankruptcy Cases") of Quicksilver Resources, Inc. ("Quicksilver") and its affiliates and subsidiaries that are or later become debtors in the Bankruptcy Cases (collectively, the "Company" or the "Debtors")[1] which Bankruptcy Cases are pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), has engaged Moelis & Company LLC ("Moelis", "we", "our" or "us") to act as its exclusive financial advisor in connection with a potential Restructuring (as defined below).

"Restructuring" means any restructuring, reorganization, rescheduling, recapitalization or repayment of all or any material portion of the amounts outstanding, as of the date hereof, under the Combined Credit Agreements, Second Lien Credit Agreement, Second Lien Notes, 2019 Senior Notes, 2021 Senior Notes and Senior Subordinated Notes (each as defined in the *Declaration of Vanessa Gomez Lagatta in Support of First Day Pleadings* [D.I. 19] (the "First Day Declaration")) (together, the "Indebtedness"), however such result is achieved, including, without limitation, through a plan or plans of reorganization or liquidation (a "Plan") confirmed in the Bankruptcy Cases, an exchange offer or consent solicitation, material covenant relief, material rescheduling of the maturity date for the Indebtedness, material change in interest rates, settlement or forgiveness of debt, conversion of debt into equity, other material amendments to the Indebtedness, repayment of the Indebtedness, issuance of new securities, raising of new debt or equity capital, or the sale or other transfer of equity, assets or other interests of the Company (for avoidance of doubt a sale of all or substantially all of the Company's assets shall be a Restructuring).

1.    As part of our engagement we will, if appropriate and requested:

(a)    assist the Committee in conducting a financial analysis of the Company's balance sheet and its associated liabilities;

(b)    assist the Committee in evaluating the Company's debt capacity and in the determination of an appropriate capital structure for the Company;

---

[1]    It is expressly understood and agreed that all references to obligations of the Company under the terms of this agreement, including all attachments hereto, shall be obligations of the Company pursuant to the order entered by the Bankruptcy Court pursuant to and in accordance with the Committee's application to retain Moelis.

-1-

399 PARK AVENUE
5th FLOOR
NEW YORK, NEW YORK 10022

T 212.880.3800
T 212.880.3800

MOELIS & COMPANY

(c)    assist the Committee in reviewing and analyzing proposals for any Restructuring, and, to the extent requested, assist the Committee in soliciting and developing alternative proposals for a Restructuring in conjunction with the Committee's Financial Advisor, Capstone Advisory Group, LLC ("Capstone");

(d)    advise and assist the Committee and, if the Committee requests, participate in negotiations of any Restructuring;

(e)    be available to meet with the Committee, the Company's management, the Company's board of directors and other creditor groups, equity holders or other parties in interest (in each case who are institutional parties or represented by an advisor) to discuss any Restructuring;

(f)    participate in hearings before the Bankruptcy Court and provide testimony on matters mutually agreed upon in good faith; and

(g)    such other investment banking services in connection with a Restructuring as Moelis and the Committee may agree.

Please note that Moelis does not provide, and will not be providing, legal, tax, accounting or actuarial advice to the Committee or any other party.

2.    (a)    As compensation for our services hereunder, the Company and its bankruptcy estates will pay us the fees set forth below. We acknowledge that neither the Committee, nor any of its individual members, nor any of the Committee's advisors or professionals (including, but not limited to, counsel to the Committee), shall have any obligation to pay our fees or expenses or any indemnity amounts. The payment of these fees shall be subject to the applicable procedures of Title 11 of the United States Code (the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and applicable local rules, guidelines and all applicable Bankruptcy Court orders, including the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [D.I. 195] (the "Compensation Order").

Monthly Fee

(i)    During the term of this agreement, a non-refundable cash fee of $150,000 per month (the "Monthly Fee") for the first three full Monthly Fees, and $125,000 per month for each Monthly Fee thereafter. Whether or not a Restructuring has taken place or will take place, we shall earn and be paid the Monthly Fee beginning on March 30, 2015 until the expiration or termination of this agreement. For the month of March 2015, Moelis' Monthly Fee shall be pro-rated to reflect that Moelis began providing services hereunder on March 30, 2015. The first payment for the pro rated portion of March 2015 and for April 2015 shall be payable on the first Thursday following the entry of any Bankruptcy Court order approving Moelis' engagement under this agreement and each subsequent payment shall be payable upon the first Thursday of each subsequent month, if a business day; provided that any such payments shall only be made in accordance with the

-2-

399 PARK AVENUE
5th FLOOR
NEW YORK, NEW YORK 10022

T 212.880.3800
T 212.880.3800

# MOELIS & COMPANY

Compensation Order.

Restructuring Fee

(ii)    Upon the consummation of any Restructuring, a non-refundable cash fee (the "Restructuring Fee") of $3,000,000. Fifty percent (50%) of all Monthly Fees, beginning with the seventh, full Monthly Fee to become payable, shall be credited against the Restructuring Fee, up to a maximum such credit of $750,000.

If at any time during the 9 months following the expiration or termination of this agreement, either (a) a Restructuring is consummated or (b) the Company or any entity formed or invested in to consummate a Restructuring enters into an agreement for a Restructuring, or a plan of reorganization is filed, and a Restructuring is subsequently consummated at any time, and if the Company (or any entity formed or invested in to consummate the Restructuring) and its bankruptcy estates had not at such time paid to us the Restructuring Fee in full and in cash, then the Company and its bankruptcy estates shall pay us the Restructuring Fee in full and in cash immediately upon consummation of the Restructuring (the "Tail Provision").

No fee payable to any other person, whether by the Company, the Committee or any other person or entity, shall reduce or otherwise affect the Restructuring Fee payable hereunder. The Committee further agrees not to object to our request to the Bankruptcy Court and any appellate court for allowance and payment of Moelis' fees that are consistent with this agreement.

(b)    Whether or not the Company consummates a Restructuring, the Company and its bankruptcy estates will reimburse us for all of our reasonable, actual, documented, and customary expenses, including the costs of our legal counsel (without the need for such legal counsel to be retained as a professional in the Bankruptcy Cases), as they are incurred in entering into this agreement, becoming retained in the Bankruptcy Cases and receiving payment of Moelis' fees and expenses, and in connection with the performance of services pursuant to this agreement. We agree to provide the Company with reasonable support for our expenses at the Company's request or at the Bankruptcy Court's direction, including detailed time statements for Moelis' legal counsel to the extent such costs are sought to be paid hereunder, redacted for privilege and confidentiality. The Committee agrees not to object to our request to the Bankruptcy Court and any appellate court for allowance and payment of Moelis' reasonable out-of-pocket expenses that are reimbursable under the terms set forth above.

(c)    The obligation of the Company and its bankruptcy estates (subject to any necessary Bankruptcy Court approval) to pay any fee, expense or indemnity set forth herein is not subject to any reduction by way of setoff, recoupment or counterclaim.

(d)    Notwithstanding the obligations of the Company and its bankruptcy estates hereunder, including, but not limited to, their obligation to pay the fees and expenses of Moelis, and to indemnify Moelis, it is understood and agreed that Moelis' sole and exclusive client is the Committee. Moelis will in no circumstance be deemed to be a financial advisor or investment banker to, or have any obligation whatsoever to, the Company or any other party, including, without limitation, any individual member of the Committee, whether in its capacity as a member of the Committee or otherwise. All advice (written or oral)

399 PARK AVENUE
5th FLOOR
NEW YORK, NEW YORK 10022

T 212.880.3800
T 212.880.3800

# MOELIS & COMPANY

provided by Moelis in connection with this engagement (i) is intended solely for the benefit and use of the Committee in considering matters to which this agreement relates, (ii) is not and will not be deemed to constitute a recommendation to the Company's board of directors (or any similar governing body) or the Company with respect to any Restructuring or any other matter and (iii) is not intended for the benefit or use by the Company, its stockholders, its members, its other creditors or any other person or entity.

(e)    Moelis will make a substantial commitment of professional time and effort hereunder, which may foreclose other opportunities for us.  Moreover, the actual time and effort required for the engagement may vary substantially from time to time.  In light of the numerous issues that may arise in engagements such as this, Moelis' commitment of the time and effort necessary to address the issues that may arise in this engagement, Moelis' expertise and capabilities that will be required in this engagement, and the market rate for professionals of Moelis' stature and reputation, the parties agree that the fee arrangement provided herein is just and reasonable, fairly compensates Moelis, and provides the requisite certainty to the Committee that Moelis will be available to advise and assist it throughout the Bankruptcy Cases.

3.    (a) In the Bankruptcy Cases, the Committee shall use its reasonable best efforts to seek a final order of the Bankruptcy Court authorizing the employment of Moelis as its financial advisor pursuant to the terms of this agreement (including, without limitation, the fee, expense, and indemnification provisions hereof) pursuant to, and subject to the standards of review set forth in, Section 328(a) of the Bankruptcy Code (and not subject to the standards of review set forth in Section 330 of the Bankruptcy Code), nunc pro tunc to the date first written above.  The retention application and the proposed order(s) authorizing Moelis' retention must be acceptable to Moelis in its sole discretion.  In agreeing to seek Moelis' retention under Section 328(a) of the Bankruptcy Code, the Committee acknowledges that it believes that Moelis' general restructuring experience and expertise, its knowledge of the capital markets and its restructuring capabilities will inure to the benefit of the Company and the Committee, that the value to the Company and the Committee of Moelis' services derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the fees set forth in Section 2 hereof are reasonable, regardless of the number of hours expended by Moelis' professionals in the performance of the services provided hereunder.

(b)    Moelis will have no obligation to provide services unless the Bankruptcy Court approves Moelis' retention in a final non-appealable order acceptable to Moelis under Section 328(a) of the Bankruptcy Code within 60 days following the date first written above.  If such order is not obtained within such 60 day period, or such order is later reversed, vacated, stayed or set aside for any reason, Moelis may terminate this agreement and may seek payment in the Bankruptcy Court for all fees owing and expenses incurred prior to the date of termination.

(c)    Moelis' post-petition compensation, expense reimbursements and payment received pursuant to the provisions of *Annex A* shall be entitled to priority as expenses of administration under Sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code, and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses in effect pursuant to one or more financing or adequate assurance orders entered by the Bankruptcy Court.  Following entry of an order authorizing our retention, the Committee will assist Moelis in preparing, filing and serving fee statements, interim fee applications, and a final fee application.

-4-

399 PARK AVENUE
5th FLOOR
NEW YORK, NEW YORK 10022

T 212.880.3800
T 212.880.3800

# MOELIS & COMPANY

(d)    The Committee shall use its reasonable efforts to ensure that, to the fullest extent permitted by law, any confirmed Plan in the Bankruptcy Cases contains typical and customary releases (both from the Company, its bankruptcy estates and from third parties) and exculpation provisions releasing, waiving, and forever discharging Moelis, its divisions, affiliates, any person controlling Moelis or its affiliates, and their respective current and former directors, officers, partners, members, agents and employees from any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities related to the Company, the Committee, any Plan or the engagement described in this agreement.

The terms of this Section 3 are solely for the benefit of Moelis, and may be waived, in whole or in part, only by Moelis.

4.    Subject in all respects to the Bylaws of the Committee, dated April 7, 2015 (the "Committee Bylaws"), and the Confidentiality Agreement between Moelis and the Company, dated April 2, 2015 (the "Moelis Confidentiality Agreement"), the Committee will, or will use all reasonable efforts to cause the Company to, furnish us with all information concerning the Company that we reasonably deem appropriate (collectively, the "Information") to perform this engagement and the Company will provide us with reasonable access to the officers, directors, employees, accountants, advisors, counsel and other representatives of the Company. To the best of the Company's knowledge, the Information will be true and correct in all material respects and will not contain any material misstatement of fact or omit to state any material fact necessary to make the statements contained therein not misleading.  The Committee understands and agrees that we, in performing our services hereunder, will be entitled to use and rely upon the Information as well as publicly available information without independent verification. We are not required to conduct a physical inspection of any of the properties or assets, or to prepare or obtain any independent evaluation or appraisal of any of the assets or liabilities, of the Company. We will also be entitled to assume that financial forecasts and projections the Company makes available to us have been reasonably prepared on bases reflecting the best currently available estimates and judgments of the management of the Company as to the matters covered thereby.

Subject in all respects to the Committee Bylaws and the Moelis Confidentiality Agreement, we will not disclose to any third party nonpublic Information concerning the Company provided to us in connection with this agreement as long as it remains nonpublic, except (i) as otherwise required by subpoena or court order and for private disclosure to our financial regulatory authorities and (ii) we may provide nonpublic information to other parties that are subject to non-disclosure agreements with the Company. This paragraph shall terminate one year following the date of this agreement.  For the avoidance of doubt, nothing in this paragraph or this agreement shall modify the Moelis Confidentiality Agreement.

5.    Subject in all respects to the Committee Bylaws and the Moelis Confidentiality Agreement, the Committee will not disclose, summarize or refer to any of our advice publicly or to any third party without our prior written consent. Certain communications and correspondence from Moelis, and work product and analyses prepared by Moelis for the Committee in connection with this engagement, will be considered in preparation for litigation over the restructuring of the Company. Subject to the Committee Bylaws and the Moelis Confidentiality Agreement, if Moelis or any of its representatives becomes required (including, without limitation, by deposition, interrogatory, request for documents, subpoena, civil investigative demand or similar process) to disclose any nonpublic Information,

399 PARK AVENUE
5th FLOOR
NEW YORK, NEW YORK 10022

T 212.880.3800
T 212.880.3800

# M O E L I S & C O M P A N Y

Moelis shall provide the Company with notice as promptly as practicable, to the extent allowed by law, rule and regulation, of such requirement. Moelis agrees to disclose only that portion of the nonpublic Information which it is required to disclose and, at the Company's direction, to use reasonable efforts to ensure that any nonpublic Information so disclosed is accorded confidential treatment at the Company's expense. The Committee acknowledges that we may, at our option and expense after announcement of any Restructuring, place announcements and advertisements or otherwise publicize such transaction and our role in it (which may include the reproduction of the Company's logo and a hyperlink to the Company's website) on our website and in such financial and other newspapers and journals as we may choose, stating that we have acted as exclusive financial advisor to the Committee in connection with any Restructuring.

6.      We are an independent contractor with the contractual obligations described herein owing solely to the Committee. We expressly disclaim any obligations whatsoever to any party other than the Committee. As a material part of the consideration for Moelis to furnish its services under this agreement, Moelis requires that the Company, the Committee and the other parties described on *Annex A* agree to the indemnity and other provisions set forth in the attached *Annex A*, which are an integral part of this agreement and are expressly and entirely incorporated by reference herein. The Company's obligations set forth in *Annex A* are in addition to any rights that any Indemnified Person may have at common law or otherwise. Other than the Indemnified Persons, there are no third party beneficiaries of this agreement. The Committee and the Company agree to the acknowledgements and disclosures set forth in *Annex B*.

7.      Our engagement hereunder shall extend until the earliest of (i) the final effective date of a Plan confirmed in the Bankruptcy Cases, (ii) the conversion of the Bankruptcy Cases to Chapter 7 of the Bankruptcy Code, (iii) dismissal of the Bankruptcy Cases and (iv) the dissolution of the Committee; provided, however, that our engagement may be (x) terminated earlier, with or without cause, either by us or by the Committee upon 5 days' prior written notice thereof to the other party or (y) terminated earlier as provided elsewhere herein. Notwithstanding the foregoing, in the event of any expiration or termination of our engagement hereunder, (i) we will continue to be entitled to payment by the Company and its bankruptcy estates of all fees payable prior to such expiration or termination pursuant to Section 2 of this agreement and all fees payable pursuant to the Tail Provision in Section 2(a), (ii) we will be entitled to payment by the Company and its bankruptcy estates of all unreimbursed expenses incurred by us in connection with the services rendered on or prior to the date of expiration or termination, and (iii) (A) the indemnification and other obligations set forth in *Annex A* hereto and (B) the provisions of Sections 4 through 9 hereof, all shall remain operative and in full force and effect regardless of any such termination or expiration.

8.      Moelis is an independent investment bank which is engaged in a range of investment banking activities. Certain affiliates of Moelis are engaged in asset management and other activities for their own account and otherwise. Moelis and its affiliates may have interests that differ from the Company's interests. Moelis and its affiliates have no duty to disclose to the Company, or use for the Company's benefit, any information acquired in the course of providing services to any other party, engaging in any transaction or carrying on any other businesses. Moelis' employees, officers, partners and affiliates may at any time own the Company's securities or those of any other entity involved in any transaction contemplated by this agreement. Moelis recognizes its obligations under applicable securities

-6-

399 PARK AVENUE
5th FLOOR
NEW YORK, NEW YORK 10022

T 212.880.3800
T 212.880.3800

# M O E L I S & C O M P A N Y

laws in connection with the purchase and sale of such securities.

9.    This agreement and any dispute or claim that may arise under this agreement shall be governed by and construed in accordance with the internal laws of the State of New York, and this agreement embodies the entire agreement and supersedes any prior written or oral agreement relating to the subject matter hereof, and may only be amended or waived in writing signed by both the Committee and us (and if the obligations of the Company are adversely affected, the Company). If any part of this agreement is judicially determined to be unenforceable, it shall be interpreted to the fullest extent enforceable so as to give the closest meaning to its intent, and the remainder of this agreement shall remain in full force and effect.   This agreement is the product of arm's length negotiations among sophisticated parties, and each of the parties hereto has consulted (or has had the opportunity to consult) with legal counsel of its own choosing.   Therefore, the parties acknowledge and agree that any otherwise applicable rule of contract construction or interpretation that ambiguities shall be construed against the draftsman (and all similar rules of contract construction or interpretation) shall not apply to this agreement. This agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same agreement.   This agreement shall be binding upon the Committee, the Company and its bankruptcy estates, and us, as well as their and our respective successors and permitted assigns.   All actions and proceedings arising out of or relating to this agreement shall be heard and determined by the Bankruptcy Court or any court having appellate jurisdiction over the Bankruptcy Court.   If the Bankruptcy Court declines to assert jurisdiction over such proceedings or if the reference is withdrawn to the United States District Court, then such proceedings shall be heard and determined in any New York state or federal court of competent jurisdiction sitting in the city and county of New York, to whose jurisdiction we and the Committee hereby irrevocably submit.   The parties agree that the Bankruptcy Court shall have jurisdiction for the pendency of the Company's bankruptcy cases. WE, THE COMMITTEE AND THE COMPANY (ON ITS OWN BEHALF AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW, ON BEHALF OF ITS CREDITORS AND SECURITY HOLDERS) HEREBY AGREE TO WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM, COUNTERCLAIM OR ACTION ARISING OUT OF THE ENGAGEMENT OR OUR PERFORMANCE THEREOF.

*(Signature page follows)*

-7-

399 PARK AVENUE
8th FLOOR
NEW YORK, NEW YORK 10022

T 212 880 3800
T 212 880 3800

# MOELIS & COMPANY

We are delighted to accept this engagement and look forward to working with the Committee.  Please sign and return the enclosed duplicate of this agreement. The individuals signing this agreement each represent that he or she is authorized to execute and deliver it on behalf of the entity whose name appears directly above his or her signature.

Very truly yours,

MOELIS & COMPANY LLC

By: _____

Name:  Barak Klein
Title:  Managing Director

Agreed to as of the date first written above:

MOELIS & COMPANY LLC

By: _____

Barak Klein
Managing Director

-8-

**THE OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS OF QUICKSILVER RESOURCES, INC.,** *et al.*

By:    ARES SPECIAL SITUATIONS FUND IV, L.P.
          solely in its capacity as Co-Chair of the Committee
          and not in its individual capacity,

       By     /s/
       Title            JEFF MOORE
                        VICE PRESIDENT

By:    DELAWARE TRUST COMPANY,
          solely in its capacity as Co-Chair of the Committee
          and not in its individual capacity,

       By     /s/
       Title

Signature Page to Moelis Engagement Letter

**THE OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS OF QUICKSILVER RESOURCES, INC.,** *et al.*

By:    ARES SPECIAL SITUATIONS FUND IV, L.P,
        solely in its capacity as Co-Chair of the Committee
        and not in its individual capacity,

        By:    /s/
        Title:


By:    DELAWARE TRUST COMPANY,
        solely in its capacity as Co-Chair of the Committee
        and not in its individual capacity,

        By:    *[signature]*
        Title:  Managing Director

Signature Page to Moelis Engagement Letter

MOELIS & COMPANY

<u>**ANNEX A**</u>

In connection with our engagement to advise and assist the Official Committee of Unsecured Creditors (the "<u>Committee</u>") appointed in the chapter 11 cases (the "<u>Bankruptcy Cases</u>") of Quicksilver Resources, Inc. ("<u>Quicksilver</u>") and its affiliates and subsidiaries that are or later become debtors in the Bankruptcy Cases (collectively, the "<u>Debtors</u>"), the Debtors and the Committee will be subject to the terms of this Annex.[1] In the event that Moelis & Company LLC or our affiliates or any of our or our affiliates' respective current or former directors, officers, partners, managers, agents, representatives or employees (including any person controlling us or any of our affiliates (collectively, "<u>Indemnified Persons</u>") becomes involved in any capacity in any actual or threatened action, claim, suit, investigation or proceeding (an "<u>Action</u>") arising out of, related to or in connection with the engagement or any matter referred to in this agreement, the Debtors, their bankruptcy estates, the reorganized Debtors and/or their reorganized affiliates and subsidiaries after the consummation of the Restructuring (as defined in the agreement between us and the Committee to which this Annex A is attached), and any entity or entities that may be formed or invested in to consummate a Restructuring (all such entities, the "<u>Company</u>") will reimburse such Indemnified Person for the reasonable out-of-pocket costs and expenses (including counsel fees) of investigating, preparing for and responding to such Action or enforcing this agreement, as they are incurred. The Company will also indemnify and hold harmless any Indemnified Person from and against, and the Company and the Committee agree that no Indemnified Person shall have any liability to any of the Company, the Committee or their respective affiliates, owners, directors, officers, employees, security holders or creditors for any losses, claims, damages or liabilities (collectively, "<u>Losses</u>") (A) related to or arising out of oral or written statements or omissions made or information provided by the Committee, the Company or their respective agents or (B) otherwise arising out of, related to or in connection with the engagement or our performance thereof, except that this clause (B) shall not apply to Losses that are finally judicially determined to have resulted primarily from the bad faith or gross negligence of such Indemnified Person.

If such indemnification or limitation of liability are for any reason not available or insufficient to hold an Indemnified Person harmless, the Company agrees to contribute to the Losses in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by the Company and the Committee, on the one hand, and by us, on the other hand, with respect to the engagement or, if such allocation is judicially determined to be unavailable, in such proportion as is appropriate to reflect the relative benefits and relative fault of the Company or the Committee on the one hand and of us on the other hand, and any other relevant equitable considerations; *provided, however,* that, to the extent permitted by applicable law, in no event shall the Indemnified Persons be responsible for amounts that exceed the fees actually received by us from the Company and its bankruptcy estates in connection with the engagement. Relative benefits to the Company, on the one hand, and us, on the other hand, with respect to the engagement shall be deemed to be in the same proportion as (i) the total value paid or proposed to be paid or received or proposed to be received by the Company or its debt and security holders, as the case may be, pursuant to the transaction(s), whether or not consummated, contemplated by the engagement bears to (ii) the fees actually received by us in connection with the engagement.

The Company and the Committee will not without our prior written consent (not to be unreasonably withheld), settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate (a "<u>Settlement</u>") any Action in respect of which indemnification is or may be sought hereunder unless

---

[1]   It is expressly understood and agreed that all references to obligations of the Company under the terms of this Annex A and the agreement to which it is attached shall be obligations of the Company pursuant to the order entered by the Bankruptcy Court pursuant to and in accordance with the Committee's application to retain Moelis.

MOELIS & COMPANY

such Settlement includes a release of each Indemnified Person from any Losses arising out of such Action. The Company and the Committee will not permit any such Settlement to include a statement as to, or an admission of, fault or culpability by or on behalf of an Indemnified Person without such Indemnified Person's prior written consent.    No Indemnified Person seeking indemnification, reimbursement or contribution under this agreement will, without the Company's or the Committee's prior written consent (not to be unreasonably withheld), agree to the Settlement of any Action.

Prior to effecting any proposed sale or liquidation of all or substantially all of its assets that does not explicitly or by operation of law provide for the assumption of the obligations of the Company set forth herein, the Company will notify us in writing of its arrangements for the Company's obligations set forth herein to be assumed by another creditworthy party (for example, through insurance, surety bonds or the creation of an escrow).

MOELIS & COMPANY

## ANNEX B

**USA Patriot Act**.   Moelis is required to obtain, verify, and record information that identifies the Company in a manner that satisfies the requirements of and in accordance with the USA Patriot Act.

**Business Continuity**.   Moelis maintains a business continuity plan that is reviewed annually and is updated as necessary. Our disclosure statement is available on our website at  www.moelis.com  and a copy can be requested by contacting us at  compliance@moelis.com.

- B-1 -