**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) ) ) | Chapter 11 |
| Quicksilver Resources Inc., <u>et al.</u>,[1] | ) ) ) | Case No. 15-10585 (LSS) |
| Debtors. | ) ) | Jointly Administered |

**DEBTORS' REPLY IN FURTHER SUPPORT OF DEBTORS' MOTION
REGARDING EXTENSION OF THE FINAL CASH COLLATERAL
ORDER AND RESPONSE TO THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS' OBJECTION THERETO**

The debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "<u>Debtors</u>") hereby submit this reply (the "<u>Reply</u>") in support of the *Debtors' Motion for Entry of an Order Extending the Terms, as Modified, of the "Final Order Under 11 U.S.C. §§ 105, 361, 362, 363 and 507, and Bankruptcy Rules 2002, 4001 and 9014 (I) Authorizing Debtors to Use Cash Collateral and (II) Granting Adequate Protection to Prepetition Secured Parties"* [D.I. 890] (the "<u>Motion</u>")[2] and in response to the *Limited Objection of The Official Committee of Unsecured Creditors to Debtors' Motion for Entry of An Order Extending The Terms, As Modified, of The "Final Order Under 11 U.S.C. §§ 105, 361, 362, 363 and 507, and Bankruptcy Rules 2002, 4001 and 9014 (I) Authorizing Debtors to Use Cash Collateral and (II) Granting Adequate Protection to Prepetition Secured Parties"* [D.I. 922] (the "<u>Objection</u>") filed by the Official Committee of Unsecured Creditors (the "<u>Committee</u>"). In

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Quicksilver Resources Inc. [6163]; Barnett Shale Operating LLC [0257]; Cowtown Drilling, Inc. [8899]; Cowtown Gas Processing L.P. [1404]; Cowtown Pipeline Funding, Inc. [9774]; Cowtown Pipeline L.P. [9769]; Cowtown Pipeline Management, Inc. [9771]; Makarios Resources International Holdings LLC [1765]; Makarios Resources International Inc. [7612]; QPP Holdings LLC [0057]; QPP Parent LLC [8748]; Quicksilver Production Partners GP LLC [2701]; Quicksilver Production Partners LP [9129]; and Silver Stream Pipeline Company LLC [9384]. The Debtors' address is 801 Cherry Street, Suite 3700, Unit 19, Fort Worth, Texas 76102.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed in the Motion.

RLF1 13510528v.1

support of this Reply, the Debtors incorporate by reference the various declarations filed in support of the *Debtors' Motion for Entry of Interim and Final Orders (A) Authorizing the Use of Cash Collateral, (B) Granting Prepetition Secured Parties Adequate Protection, (C) Scheduling a Final Hearing, and (D) Granting Related Relief* [D.I. 250, 251 and 252] (the "LaGatta Declaration," "Page Declaration," and "First Hanson Declaration," respectively and, collectively, the "First Declarations"); and (ii) the *Debtors' Reply in Further Support of Debtors' Cash Collateral Motion and Response to the Official Committee of Unsecured Creditors' Objection Thereto* [D.I. 253] (the "First Reply"); and rely upon the *Declaration of John-Paul Hanson in Support of Debtors' Motion Regarding Extension of the Final Cash Collateral Order* (to be filed contemporaneous herewith) (the "Second Hanson Declaration" and, together with the First Declarations, the "Declarations"). In further support of this Reply, the Debtors respectfully state as follows:

## PRELIMINARY STATEMENT[3]

1.   By its Objection, the Committee seeks to rewrite both the law governing the provision of adequate protection to a secured party and the facts of these cases. Although the Committee does not dispute the Debtors' need to access the Prepetition Collateral, including Cash Collateral, the Committee argues that the Adequate Protection Payments to the Second Lien Parties are inappropriate solely because the Second Lien Parties have not sought to lift the automatic stay and pursue a state law foreclosure with respect to the Prepetition Collateral. The Committee's argument perverts applicable law and effectively challenges the Second Lien Parties to take actions that would serve only to deprive the constituency represented by the

---

[3] Capitalized terms used but not otherwise defined in this Preliminary Statement shall have the meaning ascribed to them elsewhere in the Reply.

Committee of the possibility of maximizing the value of all of the Debtors' assets, including unencumbered property, and thus reduce the recovery available to unsecured creditors.

2.      The terms of the Debtors' use of the Prepetition Collateral, including Cash Collateral, embodied by the Final Order and agreed to by all parties in these cases (including the Committee) reflected a carefully crafted balance between affording the Debtors the critical use of the Prepetition Collateral necessary to operate, secured creditor protections, and the interests of unsecured creditors. Despite the Committee's bald assertions to the contrary, nothing in the facts and circumstances of these chapter 11 cases has sufficiently changed to justify upsetting the balance achieved by the Final Order and continued by the Amended Final Order. Instead, the deteriorating price of natural gas—and therefore the potential value of the Debtors' assets—since the entry of the Final Order undermines the Committee's Objection and further underscores the reasonableness of the adequate protection package afforded the Prepetition Secured Parties in the Final Order to guard against the diminution in value of the Prepetition Collateral and the need for the continuation of those provisions in the Amended Final Order.

3.      For all of the reasons set forth below and in the Motion, the adequate protection package, including the Adequate Protection Payments afforded to the Second Lien Parties, is supported by applicable law and the Committee's Objection is without merit and should be overruled in its entirety.

## **REPLY**

4.      By its Objection, the Committee curiously asserts that the Second Lien Parties are not entitled to adequate protection solely because there is no harm to such parties by virtue of the imposition of the automatic stay. *See* Obj. ¶¶ 3-4 ("Since the Debtors are doing the same thing that the Secured Lien Parties would do if there were no bankruptcy—but in a way designed to

3

achieve greater value for the Second Lien Parties and with the Second Lien Parties' consent—the Second Lien Parties do not need to be adequately protected against anything.")[4]  In so doing, the Committee flatly misstates applicable law and ignores the well-settled purpose of adequate protection, the standard applicable to a Debtors' grant of such protections, and the facts and circumstances of these cases.

A.   **The Protections Afforded to the Second Lien Parties is Consistent with the Underlying Purpose of Adequate Protection and the Diminution in Value Experienced to Date.**

5.   By its objection, the Committee would have this Court adopt a new standard for the approval of adequate protection provided in exchange for consensual use of a lender's cash collateral—namely that a secured party must seek (and arguably be denied) court approval to lift the automatic stay to pursue a state law foreclosure before being entitled to adequate protection. *See* Obj. ¶ 3-4, 10-11.  Although creative, the Committee's argument is without merit in the face of the well-settled law in this Circuit.  Indeed, it is beyond refute that adequate protection is intended "to insure that the creditor receives the value for which he bargained prebankruptcy." *Resolution Trust Corp. v. Swedeland Dev. Grp., Inc. (In re Swedeland Dev. Group, Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994) (citation and internal quotation marks omitted) ("[A] determination of whether there is adequate protection is made on a case by case basis."); *see also Shaw Indus., Inc. v. First Nat'l Bank of PA (In re Shaw Indus., Inc.)*, 300 B.R. 861, 865 (Bankr. W.D. Pa. 2003) ("The purpose of providing 'adequate protection' is to insure that a secured creditor receives in value essentially what he bargained for.") (citations omitted); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986) (noting that the application of adequate protection "is left to the vagaries of each case, but its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process") (citation

---

[4] Neither the Debtors nor the Second Lien Parties concede this point.

omitted). Further, in *Swedeland*, the Third Circuit explained that the adequacy of the form(s) of protection provided to a secured creditor "depends directly on how effectively it compensates the secured creditor for loss of value." 16 F.3d at 564 (quoting *Crocker Nat'l Bank v. Am. Mariner Indus., Inc. (In re Am. Mariner Inds., Inc.)*, 734 F.2d 426, 432 (9th Cir. 1984)). Stated differently, these cases stand for the unremarkable proposition that secured parties are entitled to protection against the diminution in value of their collateral during the chapter 11 process.

6. As the Debtors discussed at length in the First Reply, the forms of adequate protection included in the Final Order—and now in the Amended Final Order—including the cash adequate protection payments (the "<u>Adequate Protection Payments</u>"),[5] were negotiated among the Debtors and the Prepetition Secured Parties to ensure that the Prepetition Secured Parties are adequately protected against the potential diminution in value of the Prepetition Collateral. The facts underpinning the Debtors' determination to negotiate with the Prepetition Secured Parties to obtain consensual use of the Prepetition Collateral, including Cash Collateral, and to provide the forms of adequate protection included in the Final Order are of equal weight today with respect to the request for entry of the Amended Final Order.

7. At the outset of these cases the Debtors believed that there was a significant risk of diminution in the value of the Prepetition Collateral from both the use of the Prepetition Collateral, including, without limitation, the extraction and production of hydrocarbons, and the nature and volatility of commodity prices. *See* First Reply ¶¶ 14-19. As was discussed at length in the First Reply, and as the Court is aware, the Prepetition Collateral consists primarily of the Debtors' hydrocarbon assets, which are both (i) finite resources that if extracted during the

---

[5] For the avoidance of doubt, the Adequate Protection Payments as it relates to the Second Lien Parties include cash payments intended to protect against diminution in value of the Prepetition Collateral and serve as a proxy for the same calculated in an amount equal to non-default interest on the Second Lien debt and the Second Lien Parties' professional fees and expenses.

ordinary operation of the Debtors' business will eventually be exhausted, and (ii) subject to a volatile commodities market that is currently in a state of prolonged downturn. *See id.* In the First Reply, the Debtors noted that although natural gas prices were very low in April, they had not reached the historical low point. *See* First Reply ¶ 19; First Hanson Decl., Exh. A. That statement unfortunately proved prescient as natural gas prices have materially declined by more than 22% since April. *Compare* First Hanson Decl., Exh. A (natural gas at $2.68) *with* Second Hanson Decl., Exh. Exh. A (natural gas at $2.07). Notwithstanding the dramatic decline in prices since entry of the Final Order, natural gas prices still have not yet reached the historical low point. *See* Second Hanson Decl., Exh. A.

        8.      As demonstrated by this decline, the Prepetition Collateral has been, and remains, at real risk for diminution in value. As such and based on the mandate of the Bankruptcy Code and applicable law, the Prepetition Secured Parties are entitled to adequate protection to protect against that diminution. The Committee has not cited—and cannot cite—any evidence to support an argument to the contrary. Further, as set forth below, the adequate protection package provided by the Debtors to the Prepetition Secured Parties—including the Adequate Protection Payments to the Second Lien Parties and the cash sweep—in exchange for their consent to use Cash Collateral is measured by the Debtors' reasonable business judgment. The Committee has not and cannot submit any evidence to contradict the Debtors' business judgment with respect to the terms of the Amended Final Order.

**B.**      **Continued Adequate Protection to the Second Lien Parties Reflects a Reasonable Exercise of the Debtors' Business Judgment and Is Appropriate Under the Circumstances.**

        9.      Despite the Committee's attempt to create a new standard conditioned upon a secured creditor's attempt (and a court's denial) to foreclose on collateral outside of chapter 11, a debtor's negotiated use of cash collateral is measured by its reasonable business judgment.

6

*Aurelius Capital Master, Ltd. v. Tousa Inc.*, Nos. 08-61317-CIV, 08-61335-CIV 2009 WL 6453077, at *16 (S.D. Fla. Feb. 6, 2009) ("[T]here is significant case law to support the use of the business judgment standard in approving a consensual Cash Collateral Order.") (collecting cases)). Courts routinely defer to a debtor's business judgment in determining how to finance its business in bankruptcy, whether that is through DIP financing or the use of cash collateral. *See, e.g.*, *In re L.A. Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011) ("[C]ourts will almost always defer to the business judgment of a debtor in the selection of the [DIP] lender."); *In re YL W. 87th Holdings I LLC*, 423 B.R. 421, 441 (Bankr. S.D.N.Y. 2010) ("Courts have generally deferred to a debtor's business judgment in granting section 364 financing"); *In re Am. Mariner Indus.*, 734 F.2d at 435 ("Consistent with the policies behind sections 361 and 362, the debtor should be permitted maximum flexibility in structuring a proposal for adequate protection.").

10. Moreover, courts consistently refuse "to substitute the judgment of . . . objecting creditors, over the business judgment of [a] [d]ebtor[]." *U.S. Bank Nat'l Ass'n v. Wilmington Trust Co. (In re Spansion, Inc.)*, 426 B.R. 114, 140 (Bankr. D. Del. 2010). As such, courts give great latitude to the business judgment of a debtor as a tacit acknowledgement that a debtor is in a much more informed and educated position to make sound business decisions. *See Asher Candy Co. v. MAFCO Holdings, Inc. (In re Marvel Entm't Grp., Inc.)*, 273 B.R. 58, 78 (D. Del. 2002) ("'[U]nder the business judgment rule, a board's 'decisions will not be disturbed if they can be attributed to any rational purpose' and a court 'will not substitute its own notions of what is or is not sound business judgment.'" (internal citations omitted)); *cf. Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC)*, 423 F.3d 166, 176-177, 180 (2d Cir. 2005) (indicating that the Bankruptcy Code concentrates authority in the estate-minded debtor because, "[a]s a general matter, other parties to a bankruptcy proceeding have interests that differ from those of the estate . . . .").

11. As the Court is aware, before the Petition Date, the Debtors engaged in arm's-length negotiations with the Prepetition Secured Parties regarding the use of Prepetition Collateral, including Cash Collateral. Following the Petition Date, those negotiations included the Committee and ultimately resulted in a carefully crafted balance between affording the Debtors the critical use of the Prepetition Collateral necessary to operate, secured creditor protections, and the interests of unsecured creditors. The balance achieved with the Debtors' stakeholders through these arm's-length negotiations reflects a valid exercise of the Debtors' business judgment in view of the facts of these chapter 11 cases. The Court concluded as much in the Final Order when it found, among other things, that the use of Prepetition Collateral pursuant to the terms of the Final Order "reflect[s] the Debtors' exercise of prudent business judgment consistent with their fiduciary duties" and was "subject to extensive negotiations conducted in good faith and at arm's length". *See* Final Order, ¶¶ 5(c), 5(d).

12. As was the case with the Final Order, the balance of the parties' various interests achieved under Amended Final Order reflects a valid exercise of the Debtors' business judgment and should be approved. Importantly, despite the Committee's bald assertions to the contrary, nothing in the facts and circumstances of these chapter 11 cases has sufficiently changed to justify upsetting the balance achieved by the Final Order and continued under the Amended Final Order.[6] Instead, the deteriorating price of natural gas—and therefore the potential value of the Debtors' assets—undermines the Committee's Objection and further supports the reasonableness of the adequate protection package afforded the Prepetition Secured Parties in the Final Order to guard against the diminution in value of the Prepetition Collateral and the need for the continuation of those provisions in the Amended Final Order.

---

[6] *See generally*, Motion, First Reply, Declarations.

13. Moreover, the forms of adequate protection other than the Adequate Protection Payments provided to the Prepetition Secured Parties may be insufficient to guard against the diminution in value of the Prepetition Collateral. *First*, as set forth at length in the First Reply and the First Declarations, the Debtors' hydrocarbon assets comprise substantially all of the Prepetition Collateral and are a ***finite resource*** that if developed and extracted from the ground will eventually be depleted. Every molecule of natural gas that has flowed from one of the Debtors' wells during this case means that there is one less molecule than existed in that well pre-petition and, as such, one less molecule that constitutes Prepetition Collateral. The Debtors have continued to extract and produce hydrocarbons following entry of the Final Order, and under the proposed Amended Final Order the Debtors would remain authorized to extract hydrocarbons, convert the extracted hydrocarbons to cash and use that cash to fund their operations. In other words, if the Amended Final Order is entered, the Debtors will continue to deplete the Prepetition Collateral and use the resulting Cash Collateral to fund operations. The Committee cannot simply dismiss the impact of continued operations on the Second Lien Parties' collateral base or terminate adequate protection payments with respect to the same because the Second Lien Parties support a sale process under Bankruptcy Code section 363 designed to maximize value for all of the Debtors' creditors. *Second*, as discussed at length in the First Reply, the First Hanson Declaration and the Second Hanson declaration, given the volatility of the market and current depressed commodity price environment, the future value of the Prepetition Collateral is, at best, uncertain such that replacement liens alone are insufficient to adequately protect the Second Lien Parties. Accordingly, terminating the Adequate Protection Payments to the Second Lien Parties would ignore the basic realities of the market, the Debtors' asset base, and the Prepetition Collateral.

**C.    The Adequate Protection Payments Are Subject to Recharacterization and Therefore Do Not Harm the Debtors' Estates or Unsecured Creditors.**

14.    The Committee also complains that continued Adequate Protection Payments to the Second Lien Parties result in these chapter 11 cases being run solely for their benefit and to the detriment of the Debtors' unsecured creditors. *See* Obj., ¶¶ 5, 10.  These imagined injustices, however, are inconsistent with the clear terms of the Amended Final Order and the history of these chapter 11 cases.[7]  The Adequate Protection Payments are meant to be a proxy for diminution in value, not interest on the Second Lien Parties' secured claims, and are subject to recharacterization as principal payments if it is determined that such payments exceed the amount of any diminution in value of the Prepetition Collateral and, if the Second Lien Parties are in fact undersecured.  Specifically, the Amended Final Order provides as follows:

> [s]ubject to the Prepetition Intercreditor Agreements, and as further clarified on the record at the Final Hearing, all parties reserve their rights to argue that, to the extent that any cash payment of interest, fees and expenses as adequate protection to the Prepetition Secured Parties is not allowed under Bankruptcy Code section 506(b) and not allowed on any other basis (including, without limitation, on account of the Debtors' use of Prepetition Collateral), such payments should be recharacterized and applied as payments of principal owed under the applicable Prepetition Secured Debt Documents in a manner consistent with the discussion on the record at the Final Hearing; provided, however, that the Prepetition Secured Parties reserve their rights to assert defenses to any such arguments and to otherwise oppose any such recharacterization or application.

*See* Amended Final Order, ¶ 17.  This language tracks the language included in the Final Order

---

[7] The Committee's assertion that the ongoing sale process solely benefits the Second Lien Parties is devoid of any basis in fact and should be rejected.  Instead, the sale process has been specifically calibrated to ensure the most robust participation from potential bidders and, as a result, to receive the highest and best offer for the Debtors' assets and increase the likelihood of materially stronger offers for the Debtors' assets and more distributable value for all creditors of the estates.  Indeed, the Committee acknowledges that the Debtors' court-approved sale process will result in more value than a foreclosure or other liquidation.  *See* Obj, ¶ 3.  As such, the Committee appears to assert that the Debtors should risk a litigation over the objection of the Prepetition Secured Parties to obtain use of the Prepetition Collateral, including Cash Collateral—or worse, that the Prepetition Secured Parties should seek to lift the stay to foreclose on the Prepetition Collateral—and risk the potential value to be garnered from the sale process.  Either of the foregoing options would potentially harm the Committee and its constituents more than any other party in these cases.

RLF1 13510528v.1

and gives all parties the right to contest any adequate protection payments as inappropriate under Bankruptcy Code section 506(b) and seek to have such payments recharacterized as principal payments.  If payments are recharacterized as provided in paragraph 17, the net effect is to reduce the Second Lien Parties' secured claim dollar-for-dollar.  *See* 4/27 Hr'g. Trans., pp. 94-95, ln 11-24.  As a result, and despite the Committee's arguments to the contrary, ongoing adequate protection payments to the Second Lien Parties will not harm any party in interest or advantage one constituency over another.  The Debtors do not believe it is necessary or appropriate to litigate the value of the Second Lien Parties' claims through the Motion and the recharacterization provision in the Amended Final Order obviates the need to do so.  Indeed, for all of the reasons stated above and in the First Reply, the Debtors negotiated for consensual use of Cash Collateral and all other Prepetition Collateral to, among other things, avoid just such a fight.

**D.     The Monthly Cash Sweep Is a Necessary Component of the Adequate Protection Package and Should be Approved.**

15.     The Committee also objects to the continued monthly sweep of cash to the Debtors' U.S. Operating Account. *See* Obj., ¶¶ 12–13.  The Committee fails to recognize, however, that the monthly cash sweep is a necessary component of the adequate protection package afforded to the Prepetition Secured Parties and is required to obtain their consent to use Prepetition Collateral and the benefits associated therewith.  *See* Reply ¶ 20 (explaining that the adequate protection package granted to the Prepetition Secured Parties avoids costly litigation on and was part of the consideration for the Canadian Forbearance); *see also* LaGatta Decl. 9-10, 12-14.  As discussed at length above, without Prepetition Secured Parties' consent to use Prepetition Collateral, the Debtors would be unable to operate their business in the ordinary course.  Moreover, under the terms of the Amended Final Order, the sweep has been

substantially reduced from $15 million to $7.5 million. Accordingly, the Debtors submit that the continued cash sweep, as modified, should be approved.

## CONCLUSION

16. For all of the reasons set forth above, the Court should reject the Committee's attempt to supplant a debtor's business judgment in favor of a new standard—that would effectively require all secured creditors to seek and be denied relief from the automatic stay before being entitled to receive adequate protection payments—and overrule the Committee's Objection in its entirety.

*[Remainder of page left intentionally blank]*

WHEREFORE, for all of the foregoing reasons, the Debtors respectfully request that the Court (i) overrule the Objection, (ii) grant the relief requested in the Motion, and (iii) grant such other relief as may be just and proper.

Wilmington, Delaware

Date: December 9, 2015                               /s/ Amanda R. Steele

**RICHARDS, LAYTON & FINGER, P.A.**
Paul N. Heath (DE 3704)
Amanda R. Steele (DE 5530)
Rachel L. Biblo (DE 6012)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

– and –

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Charles R. Gibbs (admitted *pro hac vice*)
Sarah Link Schultz (admitted *pro hac vice*)
Travis A. McRoberts (DE 5274)
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343

Ashleigh L. Blaylock (admitted *pro hac vice*)
Robert S. Strauss Building
1333 New Hampshire Avenue, N.W.
Washington, DC 20036-1564
Telephone: (202) 887-4000
Facsimile: (202) 887-4288

**CO-COUNSEL FOR DEBTORS AND DEBTORS IN POSSESSION**