## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Quicksilver Resources Inc., *et al.*,[1] | Case No. 15-10585 (LSS) |
| Debtors. | Jointly Administered |
| | **Re:  D.I. 890, 922** |
| | **Hearing Date: Dec. 14, 2015, at 10:00 a.m. (ET)** |

## REPLY OF THE AD HOC GROUP OF SECOND LIEN HOLDERS AND THE SECOND LIEN AGENT TO THE LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DEBTORS' MOTION FOR ENTRY OF AN ORDER EXTENDING THE TERMS OF THE FINAL CASH COLLATERAL ORDER, AS MODIFIED

The Ad Hoc Group of the Second Lien Holders and Credit Suisse AG, Cayman Islands Branch (f/k/a Credit Suisse AG), as administrative agent for the Second Lien Lenders (the "**Agent**" and, together with the Ad Hoc Group of the Second Lien Holders, the "**Second Lien Parties**"), hereby file this reply (the "**Reply**") to the limited objection [D.I. 922] (the "**Objection**") of the Official Committee of Unsecured Creditors appointed in these cases (the "**Committee**") to the *Debtors' Motion for Entry of an Order Extending the Terms, as Modified, of the "Final Order Under 11 U.S.C. §§ 105, 361, 362, 363, and 507, and Bankruptcy Rules 2002, 4001 and 9014 (I) Authorizing Debtors to Use Cash Collateral and (II) Granting Adequate*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Quicksilver Resources Inc. [6163]; Barnett Shale Operating LLC [0257]; Cowtown Drilling, Inc. [8899]; Cowtown Gas Processing L.P. [1404]; Cowtown Pipeline Funding, Inc. [9774]; Cowtown Pipeline L.P. [9769]; Cowtown Pipeline Management, Inc. [9771]; Makarios Resources International Holdings LLC [1765]; Makarios Resources International Inc. [7612]; QPP Holdings LLC [0057]; QPP Parent LLC [8748]; Quicksilver Production Partners GP LLC [2701]; Quicksilver Production Partners LP [9129]; and Silver Stream Pipeline Company LLC [9384].  The Debtors' address is 801 Cherry Street, Suite 3700, Unit 19, Fort Worth, Texas 76102.

*Protection to Prepetition Secured Parties*" [D.I. 890] (the "**Motion**"),[2] and, in support of the

Reply, state as follows:

## PRELIMINARY STATEMENT

1.      The Committee is attempting to rewrite both the legal standards for

providing adequate protection to secured creditors' interests in their collateral and the history of

these cases.  Simultaneously, the Committee is asking this Court to overrule the Debtors'

business judgment and force the Debtors (presumably with the Committee's "assistance") to

engage in a costly fight with the Second Lien Parties over continued use of their cash collateral.

The Objection should be overruled in its entirety.

2.      This Court has already established (and the Committee has agreed) that

(i) the Debtors need to use the Second Lien Parties' Prepetition Collateral (including Cash

Collateral) to fund the administration of these cases and to preserve their going concern value,

(ii) the terms on which the Debtors may use Prepetition Collateral (including the Second Lien

Adequate Protection Payments and the cash sweep) were the result of extensive negotiations

conducted in good faith and at arm's length, (iii) the terms on which the Debtors may use

Prepetition Collateral memorialized in the Cash Collateral Order (including the Second Lien

Adequate Protection Payments and the cash sweep) are fair and reasonable and reflect the

Debtors' exercise of prudent business judgment consistent with the Debtors' fiduciary duties,[3]

and (iv) the interests of the Second Lien Parties in the Prepetition Collateral, including the Cash

Collateral, are entitled to adequate protection in an amount equal to the aggregate post-petition

---

[2]      All capitalized terms used herein but not defined have the meanings given such terms either in the Motion or in the *Final Order Under 11 U.S.C. §§ 105, 361, 362, 363, and 507, and Bankruptcy Rules 2002, 4001 and 9014 (I) Authorizing Debtors to Use Cash Collateral and (II) Granting Adequate Protection to Prepetition Secured Parties* [D.I. 307] (the "**Cash Collateral Order**").

[3]      See ¶ 5 of the Cash Collateral Order.

01:18060345.1

diminution in the value of such interests.[4]  The Committee does not even attempt to claim (because it cannot) that an extension of the term of the Cash Collateral Order the Debtors are seeking changes any of the facts underlying these findings or warrants changing any of the findings themselves.

3.       Instead, the Committee claims that a significant change in the carefully negotiated, fair, reasonable, and customary adequate protection package memorialized in the Cash Collateral Order is warranted because the Debtors' cash reserves have declined. Ironically, this "change" only underscores the need for adequate protection and the appropriateness of the Second Lien Adequate Protection Payments as one of the forms of the Second Lien Parties' adequate protection package.  Indeed, as the Court is well aware, the bulk of the Second Lien Parties' collateral consists of hydrocarbon assets which the Debtors have been using to fund these cases.  These assets are finite and, once exhausted, cannot be replenished, and the price of these assets has been decreasing.  See *Declaration of John-Paul Hanson in Support of Debtors' Motion for Entry of an Order Extending the Terms, As Modified, of the "Final Order Under 11 U.S.C.  §§ 105, 361, 362, 363 and 507, and Bankruptcy Rules 2002, 4001 and 9014 (I) Authorizing Debtors to Use Cash Collateral and (II) Granting Adequate Protection to Prepetition Secured Parties"* [D.I. 927], ¶¶ 10, 12.

4.       On the Petition Date, the spot price of natural gas was $2.82.  By December 7, 2015 – the day prior to the filing of the Objection – the spot price of natural gas was $2.06, *i.e.*, an approximately 27% decline has occurred postpetition.[5]  Thus, there is no doubt that the value of the Second Lien Parties' interest in the Prepetition Collateral has been steadily diminishing.  Accordingly, while the Court has previously found that such interest is in

---

[4]       See ¶ 8 of the Cash Collateral Order.

[5]       See https://www.eia.gov/dnav/ng/hist/rngwhhdD.htm.

need of adequate protection, such need has only increased and become more manifest since that finding was made.

5.      The Committee's other "justification" for asking the Court to revisit its adequate protection determinations is that the Second Lien Parties are not attempting to lift the automatic stay and foreclose on their collateral.  What the Committee appears to suggest is that, had the security interest of the Second Lien Parties been really diminishing in value while the automatic stay is in effect, the Second Lien Parties would have surely chosen this course of action.  Needless to say, that is not the law, and the Committee has cited no authority to the contrary.  To avoid a fight over lifting the automatic stay (which presumably would have been contested by both the Debtors and the Committee), the Second Lien Parties consented to the use of their Cash Collateral solely on the terms memorialized in the Cash Collateral Order.  In any event, the Cash Collateral Order clearly states that the Second Lien Parties are deemed to have sought to lift the stay.

6.      The Motion seeks very limited relief – to extend the terms of the Cash Collateral Order to allow the Debtors to bring to conclusion these now nine-month-long cases. The couple of other minor, ministerial modifications to the Cash Collateral Order the Debtors wish to make leave all of the Court's findings and all of the adequate protection arrangements previously approved by the Court undisturbed.  Yet, the Committee is attempting to get a completely unwarranted second bite at the apple, objecting yet again to the Second Lien Adequate Protection Payments and seizing the opportunity to expound on its distorted perception of Third Circuit law.

7.      Finally, the Cash Collateral Order already sufficiently protects the interests of the Debtors' general unsecured creditors as it provides that, to the extent it is later

01:18060345.1

determined that the Second Lien Adequate Protection Payments are not allowed under Section

506(b) of the Bankruptcy Code (or on any other basis), such payments will be recharacterized

and applied to reduce the principal amount of the Second Lien Parties' secured claim (subject,

of course, to any setoff for the Second Lien Parties' diminution claim).[6]

## **REPLY**

I.    **The Second Lien Parties' Adequate Protection Package is Fully
      Warranted and Reflects the Debtors' Sound Business Judgment**

8.    Secured creditors are entitled to adequate protection as a matter of law.

See 11 U.S.C. § 361; United States v. Whiting Pools, Inc., 462 U.S. 198, 203-04 (1983) ("At the

secured creditor's insistence, the bankruptcy court ***must*** place such limits or conditions on the

trustee's power to sell, use, or lease property as are necessary to protect the creditor.")

(emphasis added).  This entitlement "is derived from the Fifth Amendment protection of

property interests" and "is based as much on policy grounds as on constitutional grounds.

Secured creditors should not be deprived of the benefit of their bargain."  H.R. Rep. No. 95-595,

at 339 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963, 6295 (citing Wright v. Union Central

Life Ins. Co., 311 U.S. 273 (1940), and Louisville Joint Stock Land Bank v. Radford, 295 U.S.

555 (1935)).  See also Resolution Trust Corp. v. Swedeland Dev. Group, Inc. (In re Swedeland

Dev. Group, Inc.), 16 F.3d 552, 564 (3d Cir. 1994) (stating that adequate protection is intended

to "insure that the creditor receives the value for which he bargained prebankruptcy").

9.    Undersecured creditors, the value of whose security interests are

demonstrably at risk of further diminution due to the debtor's use of their collateral or the

imposition of the automatic stay, are ***especially*** entitled to adequate protection.  See, e.g., United

Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 370 (1988) ("Thus, it is

---

[6]    See ¶ 17 of the Cash Collateral Order.

agreed that if the [collateral] in this case had been declining in value [the undersecured creditor] would have been entitled, under § 362(d)(1), to cash payments or additional security in the amount of the decline, as § 361 describes."); <u>Bank of N.Y. v. Epic Resorts-Palm Springs Marquis Villas, LLC (In re Epic Capital Corp.)</u>, 290 B.R. 514, 526 (Bankr. D. Del. 2003), <u>aff'd in part</u>, 307 B.R. 767 (D. Del. 2004) ("[T]he Supreme Court has held that an undersecured creditor whose collateral is decreasing in value is entitled to adequate protection payments.") (citing <u>Timbers</u>).

10.    The Committee cannot legitimately dispute the massive diminution of the value of the Second Lien Parties' collateral during the pendency of these cases.[7]  As discussed at length in connection with the litigation surrounding the *Objection of the Official Committee of Unsecured Creditors to Debtors' Motion for Entry of Interim and Final Orders (A) Authorizing the Use of Cash Collateral, (B) Granting the Prepetition Secured Lenders Adequate Protection, (C) Scheduling a Final Hearing, and (D) Granting Related Relief* [D.I. 16], the Second Lien Parties' hydrocarbon collateral is finite and is not replenished as the Debtors extract it, convert it to cash and expend such cash on the general needs of the Debtors' estates, which are being administered for the benefit of all parties in interest.  As a result, rather than being excessive, the adequate protection package previously granted to the Second Lien Parties may prove to be woefully inadequate to compensate them for the massive diminution of the value of their security interests.

11.    Furthermore, given the volatility of the nature and prices of hydrocarbon assets constituting the bulk of the Second Lien Parties' collateral, and the continuing downturn in the relevant market, the replacement liens alone are not sufficient to give the Second Lien

---

[7]    In fact, the Committee does not appear to do so – despite citing <u>First Federal Bank v. Weinstein (In re Weinstein)</u>, 227 B.R. 284 (B.A.P. 9th Cir. 1998), in support of its argument, where the bankruptcy panel expressly found that no diminution in the value of the secured creditor's security interest had occurred.

Parties the benefit of their bargain, and periodic cash payments are the most appropriate form of adequate protection in the circumstances of these cases.  See Swedeland, 16 F.3d at 564 (stating that the form of adequate protection to a secured creditor "depends directly on how effectively it compensates the secured creditor for loss of value").[8]  In fact, the specific form (as well as the quantum) of adequate protection to which a secured creditor is entitled is a matter of the debtor's reasonable business judgment, which a creditors' committee is not entitled to second-guess.

12.    Courts provide great deference to a debtor's business judgment in determining how to finance its business, whether the issue is debtor-in-possession financing or use of cash collateral.  See, e.g., In re L.A. Dodgers LLC, 457 B.R. 308, 313 (Bankr. D. Del. 2011) ("[C]ourts will almost always defer to the business judgment of a debtor in the selection of the [DIP] lender."); In re YL W. 87th Holdings I LLC, 423 B.R. 421, 441 (Bankr. S.D.N.Y. 2010) ("Courts have generally deferred to a debtor's business judgment in granting section 364 financing").  See also Crocker Nat'l Bank v. Am. Mariner Indus., Inc. (In re Am. Mariner Indus., Inc.), 734 F.2d 426, 435 (9th Cir. 1984) ("Consistent with the policies behind sections 361 and 362, the debtor should be permitted maximum flexibility in structuring a proposal for adequate protection.").

13.    The Court has already determined that the terms of the Cash Collateral Order reflect the "Debtors' exercise of prudent business judgment consistent with the Debtors' fiduciary duties."[9]  If that determination was true at the time the Cash Collateral Order was entered, it is no less true now, and the Committee has failed to put forth any legitimate reason to warrant the substitution of its judgment for that of the Debtors.  Yet, the Committee appears to believe that the

---

[8]    See also Weinstein, 227 B.R. at 296 ("If the value of the collateral decreases, the creditor is entitled to cash payments so that the value of its interest in the collateral remains constant.").

[9]    See ¶ 5(c) of the Cash Collateral Order.

01:18060345.1

Debtors should jettison the consensual Cash Collateral Order and instead seek to use the Second

Lien Parties' Cash Collateral on a non-consensual basis by demonstrating that the Second Lien

Parties are somehow adequately protected despite the steady, continuing diminution in the value of

their interest in their collateral.  The Debtors have determined not to pursue that unnecessary and

hopeless course of action, which would have depleted the remaining cash (if any) that is even

arguably unencumbered by the liens of the Second Lien Parties.

<strong>II.    <u>There is No Requirement for Seeking to Lift the Stay as Condition to<br>Receiving Adequate Protection Payments</u></strong>

14.    The most novel (and absurd) argument the Committee makes in its

Objection is that the Second Lien Parties are not entitled to adequate protection because the

Debtors are pursuing a sale of their assets "at the insistence and for the primary benefit" of the

Second Lien Parties,[10] and that the Second Lien Parties must either seek to lift the stay and

foreclose on their collateral or forego their right to adequate protection payments.[11]  Not only is

this argument entirely wrong, it also attempts to rewrite history.

15.    First, as the Committee acknowledges in its Objection,[12] concerned with

the continuing deterioration of the value of their collateral, the Second Lien Parties have favored

the sale scenario from the very commencement of their prepetition negotiations with the

Debtors.  Thus, if the Debtors were truly merely doing the Second Lien Parties' bidding (which

they clearly are not), they would have filed a Section 363 motion together with their petition for

relief or very shortly thereafter.  Instead, the Debtors determined, in their business judgment,

that they should explore different scenarios before committing to a particular course of action.

The Debtors have explored these different scenarios and have, in the end, determined that the

---

[10]    <u>See</u> ¶ 10 of the Objection.

[11]    <u>See</u> ¶¶ 3, 4, 10, 11 of the Objection.

[12]    <u>See</u> ¶ 3 of the Objection.

01:18060345.1

sale of substantially all of their assets presents them with the best opportunity to maximize value of their estates for the benefit of all parties in interest. The Committee's assertion that the sale process is being conducted primarily for the benefit of the Second Lien Parties is belied by the fact that the Debtors' unencumbered assets – the sole source of the future potential recovery by unsecured creditors – are also being sold in the same robust sale process.

16.    Furthermore, it is undoubtedly true that the Second Lien Parties could have filed a motion to lift the stay at the very beginning of these cases and pursued a foreclosure of their collateral. Instead, the Second Lien Parties agreed to a compromise reflected in the Cash Collateral Order to allow the Debtors and the Committee to explore different possibilities of maximizing recovery for all constituents. The Second Lien Parties made numerous concessions to avoid having a battle over collateral usage and adequate protection issues at the inception of these cases (such as, *e.g.*, the preservation of the Committee's right to pursue claims under Sections 506(c) and 552 of the Bankruptcy Code). Now, the Committee, having received the benefits of these concessions, wishes to rewrite the bargain struck by all parties and approved by the Court. It is absurd for the Committee to blame the Second Lien Parties for not blowing up these cases at their inception and for choosing to accommodate the Debtors by agreeing to a compromise that the Debtors believed was in the best interests of all parties in interest.

17.    Finally, the Committee's assertion that the Second Lien Parties should be penalized for not seeking to have the stay lifted is precluded by the Cash Collateral Order itself. As part of the settlement reflected in that order, the Committee has already agreed that "[f]or all adequate protection and stay relief purposes throughout the Cases, the Prepetition Secured Parties shall be deemed to have requested relief from the automatic stay . . . as of the Petition

01:18060345.1

Date.  For the avoidance of doubt, such request will survive the termination of this [Cash

Collateral] Order."  Cash Collateral Order ¶ 25.

> ### III.    The Committee's Complaints About Fees and Expenses Are Particularly Inappropriate Given Its Pursuit of Wasteful Litigation Based on Implausible Legal Theories

18.    It is particularly inappropriate for the Committee to complain about the

Second Lien Parties' incurrence of legal fees in this matter.  It is the Committee that has

conducted a lengthy investigation and caused the estates to incur substantial and unnecessary

litigation costs (including at minimum hundreds of thousands of dollars, and more likely

millions, in costs and expenses during the eight and a half months since the Committee's

appointment on March 25, 2015), based largely on implausible legal theories that directly

contradict governing law.[13]  Indeed, just this week, and without any advance notice to the

Second Lien Parties, the Committee chose to waive its surcharge claim under Section 506(c) for

costs incurred by the Debtors through October 31, 2015, which was to be litigated on an

expedited basis at a trial commencing December 14, 2015,[14] because the Committee has

determined that its theory did not warrant pursuit on a cost-benefit basis.[15]

---

[13]    The Committee's "theory" – that the Second Lien Parties' collateral could be surcharged for all or substantially all of the administrative expenses of the estate because the chapter 11 cases have preserved the going concern value of the Debtors' business (notably very close to the same theory that the Committee now supposedly believes would entitle the Debtors to use the Second Lien Parties' cash collateral on a non-consensual basis) – has been dismissed by the Third Circuit, the Second Circuit, the Fifth Circuit, the Ninth Circuit and a multitude of bankruptcy courts over and over again.  See, e.g., Precision Steel Shearing v. Fremont Fin. Corp. (In re Visual Indus., Inc.), 57 F.3d 321 (3d Cir. 1995); see also United Jersey Bank v. Miller (In re C.S. Assocs.), 29 F.3d 903 (3d Cir. 1994); Gen. Elec. Credit Corp. v. Levin & Weintraub (In re Flagstaff Foodservice Corp.), 739 F.2d 73 (2d Cir. 1984); Matter of Delta Towers, Ltd., 924 F.2d 74 (5th Cir. 1991).

[14]    See Order Granting in Party and Denying in Part Motion of the Official Committee of Unsecured Creditors for Leave, Standing and Authority to Prosecute Claims on Behalf of the Debtors' Estates and for Related Relief [D.I. 831].

[15]    Adv. Proc. No. 15-51896 [D.I. 28] ("After extensive expedited discovery and further analysis ... the Committee has determined that net costs and expenses (after application of encumbered cash related to these costs and expenses) incurred from the Petition Date through October 31, 2015, that it maintains may be surcharged against the Second Lien Parties' collateral, do not rise to a level that justifies completion of expert discovery, preparation for and proceeding with a trial on the merits.").  This reflects a marked

19.     Of course, the Second Lien Parties had objected months ago that the Committee's pursuit of the Section 506(c) claims was misguided and would not provide any benefit to the estate.[16]  Nevertheless, the Committee's decision to not pursue this claim came only (i) after extensive document discovery, (ii) after the deposition of the Debtors' chief financial officer, (iii) after the Committee submitted three expert reports prepared by their financial advisors and a geologist, (iv) less than 48 hours after the Second Lien Parties submitted expert reports prepared by their financial advisor and an engineer, and (v) *six days* before the start of the trial.

20.     In sum, the length and expense of these cases is the direct result of the Committee's conduct.

## IV.     Adequate Protection Payments are Already Subject to Recharacterization, and the Committee is Not Entitled to Any Other Relief

21.     Finally, the Cash Collateral Order already has all the necessary protections to which the Debtors' general unsecured creditors may be entitled: it provides that, to the extent any of the Second Lien Adequate Protection Payments are later determined not to be allowed under Section 506(b) of the Bankruptcy Code or on any other basis, such payments will be recharacterized and applied to reduce the principal amount of the Second Lien Parties' secured claim.[17]  As a result, despite the Committee's unsupported contentions, the Second Lien

---

change in tone from the Committee's *Reply in Support of the Motion of Official Committee of Unsecured Creditors to Extend the Challenge Period Deadline with Respect to the Second Lien Parties* [D.I. 665], where the Committee claimed that its Section 506(c) claim was a "paramount issue" in these cases.

[16]     See *Limited Objection of the Ad Hoc Group of Second Lien Holders and the Second Lien Agent to the Motion of the Official Committee of Unsecured Creditors for Leave, Standing and Authority to Prosecute Claims* [D.I. 725] at ¶ 35 (explaining that, even if it were the case that some expenditures by the Debtors were for the benefit of the Second Lien Parties, "any such amount . . . is more than offset by the millions of dollars of cash proceeds the Second Lien Collateral has generated since the Petition Date").

[17]     See ¶ 17 of the Cash Collateral Order.

Adequate Protection Payments neither give the Second Lien Parties some unfair advantage nor otherwise prejudice the rights of the Debtors' unsecured creditors.

22.      The above provision of the Cash Collateral Order, which will remain in full force and effect if the Motion is granted, provides the Committee's constituency with complete protection, and the Committee is not entitled to more or different protection simply because it is not happy with the way these cases are proceeding.

## CONCLUSION

WHEREFORE, based on all of the foregoing, the Second Lien Parties respectfully request that the Court (i) overrule the Objection, and (ii) grant the relief sought in the Debtors' Motion and such other and further relief as the Court deems appropriate.

Dated: December 10, 2015       YOUNG CONAWAY STARGATT & TAYLOR, LLP
      Wilmington, DE

                                             */s/ Kara Hammond Coyle*
                                           Michael R. Nestor, Esq. (No. 3526)
                                           Kara Hammond Coyle, Esq. (No. 4410)
                                           Rodney Square
                                           1000 North King Street
                                           Wilmington, DE 19801
                                           Telephone:   (302) 571-6600
                                           Facsimile:    (302) 571-1253

                                           *Attorneys for Second Lien Agent and the Ad Hoc Group of Second Lien Holders*

                                           - and -

                                           MILBANK, TWEED, HADLEY & McCLOY LLP
                                           Dennis F. Dunne
                                           Samuel A. Khalil
                                           Brian Kinney
                                           28 Liberty Street
                                           New York, NY 10005-1413
                                           Telephone:   (212) 530-5000
                                           Facsimile:    (212) 530-5219

01:18060345.1

- and -

Andrew M. Leblanc
Aaron L. Renenger
1850 K Street, N.W., Suite 1100
Washington, DC 20006
Telephone:   (202) 835-7500
Facsimile:   (202) 263-7586

*Attorneys for the Ad Hoc Group of Second Lien Holders*

 - and -

LATHAM & WATKINS LLP
Mitchell A. Seider
Christopher Harris
David A. Hammerman
Matthew L. Warren
885 Third Avenue
New York, New York 10022-4834
Telephone:   (212) 906-1200
Facsimile:   (212) 751-4864

*Attorneys for Second Lien Agent*

01:18060345.1