IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| QUIKSILVER, INC., *et al.*, | ) | Case No. 15-11880 (BLS) |
| | ) | |
| Reorganized Debtors.[1] | ) | Jointly Administered |
| | ) | |
| | ) | **Docket Ref. Nos. 719 & 933** |

**Objection Date: April 21, 2016, at 4:00 p.m.**
**Hearing Date: April 28, 2016, at 11:00 a.m.**

## REORGANIZED DEBTORS' OBJECTION TO MOTION OF FORMER EMPLOYEES FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS

Quiksilver, Inc., and certain of its affiliates, the reorganized debtors in the above-captioned cases (the "Debtors"), submit this objection (the "Objection") to the *Motion of Former Employees for Allowance and Payment of Administrative Expense Priority Claim Pursuant to 11 U.S.C. § 503(b)(1)(A)* (the "Motion") [Docket No. 719] and respectfully assert the following:

### Preliminary Statement

1.    By the Motion, twenty-six former employees of the Debtors who were terminated prior to the Petition Date (as defined below) (the "Former Employees")[2] seek administrative claims for severance payments under certain pre-petition agreements. The Former Employees' request for administrative priority for separation payments is allegedly justified by 11 U.S.C. § 503(b)(1)(A) and associated case law. Neither the law nor the facts support the

---

[1]  The Reorganized Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

[2]  For purposes of this Objection, the Former Employees include only those persons named in the Motion and the attached declaration of counsel to the Former Employees, Blake J. Lindemann. The Debtors reserve all rights to object to any claims submitted by persons alleging to be former employees not named in the Motion.

relief sought by the Motion, and the Motion and the associated claims should be denied for multiple reasons.

2.      First, there is no basis in existing Third Circuit law to grant administrative status to a pre-petition claim. The Former Employees rely solely upon section 503(b)(1)(A) for statutory support for the Motion. The two subsections of section 503(b)(1)(A), however, only apply to claims for wages or other similar employment-related services provided after the petition date. Section 503(b)(1)(A)(i) allows administrative claims for "services rendered after the commencement of the case" and section 503(b)(1)(A)(ii) alternatively allows claims for wages and benefits awarded as "back pay attributable to any period of time occurring after commencement of the case." The post-termination severance provided to the Former Employees meets neither of these standards. No case law cited by the Former Employees contradicts the principle that an administrative claim for wages must be attributable to services provided to the estate and not to the pre-petition debtor.

3.      Second, in addition to the lack of statutory support, the Former Employees' administrative claim is unsupportable because it fails to provide proof of either a post-petition transaction with the estate or a demonstrable benefit to the estate, both of which are required elements for an administrative claim in the Third Circuit. The claims are based wholly upon pre-petition agreements between Quiksilver and the Former Employees, and none of those agreements has been assumed. Further, the Former Employees' contention that the relevant separation agreements are non-executory because no material obligations remain is tantamount to an admission that they have not provided (and do not intend to provide) any benefit to the

2

estate.  No administrative claim can be allowed based upon the employment or separation agreements.

4.    Third, whether the Debtors rejected the separation agreements with the Former Employees is irrelevant to the request for an administrative priority claim.  In each case, the Former Employees' request for payment of an administrative claim related to the pre-petition agreement fails.  No legal basis exists to compel a Debtor to continue honoring its obligations under a pre-petition agreement that provides no benefit to the estate.

5.    Finally, the Motion must be denied because it also suffers from numerous procedural deficiencies, including:

    a.  the Former Employees ignore the limitations of section 503(c) with regard to the payment of severance claims and the limitation of section 502(b)(7) with regard to the allowance of any claim based upon an employment agreement;

    b.  the Motion implies that the administrative claim is filed on behalf of unnamed "class claimants" although counsel to the purported claimants has filed no motion to certify a class, nor have the claimants commenced an adversary proceeding in connection with class certification, pursuant to Bankruptcy Rule 7023; and

    c.  numerous Former Employees named as claimants fail to attach supporting documentation to their proofs of claim.  As detailed below, although the Motion implies that each Former Employee executed a separation agreement providing severance payments post-termination, this is only accurate for 14 of the 26 named

claimants. The other claimants have facts that do not match or support the relief requested by the Motion.

Each of these procedural deficiencies independently support the denial of the claims asserted in the Motion, none of which were addressed by the Motion.

6.    The Former Employees' request for an administrative expense is not based upon any applicable law and ignores long-held Third Circuit precedent. The Motion should be denied.

### Background

7.    On September 9, 2015 (the "Petition Date"), the Debtors each commenced a voluntary case (together, the "Chapter 11 Cases") by filing a petition for relief under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

8.    Prior to the Effective Date, as defined below, the Debtors continued to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1109 of the Bankruptcy Code.

9.    On September 22, 2015, the Office of the United States Trustee for the District of Delaware (the "United States Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee"). On September 28, 2015, the United States Trustee filed an Amended Notice of Appointment of Creditors' Committee. No trustee or examiner has been appointed in the Chapter 11 Cases.

4

10.     The Debtors are one of the world's leading outdoor sports lifestyle companies. The Debtors design, develop, and distribute branded apparel, footwear, accessories, and related products. The Debtors began operations in 1976 making boardshorts for surfers in the United States under a license agreement with the *Quiksilver* brand founders in Australia. Today, the Debtors' business is rooted in the strong heritage and authenticity of its core brands, *Quiksilver*, *Roxy*, and *DC*, each of which caters to the casual, outdoor lifestyle associated with surfing, skateboarding, snowboarding, BMX, and motocross, among other activities. The Debtors' products are sold in over 115 countries through a wide range of distribution points, including wholesale accounts (surf shops, skate shops, snow shops, sporting goods stores, discount centers, specialty stores, select department stores, and licensed stores), Debtor-owned retail stores, and their e-commerce websites.

11.     On January 14, 2016, the Former Employees filed a limited objection to confirmation of the Plan (the "Plan Objection") [Docket No. 657], requesting that a reserve of $7,291,946.65 be created to pay the employees for the amount of their alleged administrative claims. The Debtors filed a reply to the Plan Objection in their brief in support of confirmation (the "Confirmation Brief") [Docket No. 711] on January 25, 2016. The Confirmation Brief noted, in relevant part, that the Former Employees "have made no effort to request that this Court (a) determine that their claims do, in fact, merit any priority treatment," despite having had over three months to make such a request. Confirmation Brief at 60. The Former Employees submitted the Motion later the same day.

5

12.     The Court overruled the Plan Objection during the confirmation hearing on January 28, 2016. On January 29, 2016, the Court entered its *Findings of Fact, Conclusions of Law and Order Confirming Plan of Reorganization of the Debtors* (the "Confirmation Order") [Docket No. 740], confirming the *Third Amended Joint Chapter 11 Plan of Reorganization of Quiksilver, Inc. and its Affiliated Debtors and Debtors in Possession* (as appended to the Confirmation Order, and including all supplements and amendments, the "Plan"). The Plan became effective on February 11, 2016 (the "Effective Date") [Docket No. 789].

### The Former Employees' Administrative Claims

13.     According to the Motion, prior to the Petition Date, the Debtors terminated each of the Former Employees, and each such Former Employee executed an agreement establishing certain terms and conditions related to the end of employment (each, a "Separation Agreement"). Motion ¶¶ 13-14.   The Separation Agreements, among other things, established periodic schedules of payments to the Former Employees as severance.  The Debtors made all payments to each Former Employee according to the established schedule prior to the Petition Date.  The Debtors have made no payments to the Former Employees pursuant to the Separation Agreements since the Petition Date.

14.     On the Petition Date, the Debtors moved to reject numerous employment-related agreements, including certain of the Separation Agreements.[3]  Former Employee

---

[3]  *See* Debtors' *First Omnibus Motion for Order Pursuant to Bankruptcy Code Sections 105(a) and 365(a) and Bankruptcy Rules 6006 and 9014 Authorizing Rejection of Certain Executory Contracts*, Docket No. 27 (the "Rejection Motion").  The Rejection Motion sought the rejection of Separation Agreements with the following Former Employees: Liam Devoy (dated 12/9/14); Nicholas Drake (dated 10/8/14); Scott Fullerton (dated 3/20/15); John Graham (dated 4/1/15); Kelley Graham (dated 5/1/15); Brad Holman (dated 10/16/14); Kelly Ketner (dated 7/21/15); Jennifer Kutsch (dated 3/20/15); Viki Love (dated 7/22/15); Kerstin Mazzone (dated 10/16/14); Andrew Mooney (dated 3/26/15); Chris Schreiber (dated 6/2/15); Lance Stern (dated 2/24/15); Alan Vickers (dated 4/1/15); and Thomas Webster (dated 1/16/15).

6

Nicholas Drake objected to the rejection of his Separation Agreement arguing, among other things, that the Separation Agreement was not executory and not capable of rejection by the Debtors.[4]  Certain of the other Former Employees joined the Objection to the Rejection Motion.[5] On December 1, 2015, the Court entered an order approving the rejection of certain of the Separation Agreements but reserving the determination as to whether the agreements are executory "in connection with the claims allowance or adjudication process . . . ."[6]  The Rejection Order also established a bar date for any claims related to the rejected agreements.

  15. The Former Employees each filed a proof of claim in these cases. Although each proof of claim alleges that the Former Employees are entitled to administrative claims based, in part, on a Separation Agreement, only 14 of the 26 named Former Employees attached their executed Separation Agreement to the filed claim.  Of the other twelve claimants, five attached a prepetition employment agreement as support for the requested severance,[7] one attached an unexecuted Separation Agreement,[8] and six attached an "Employee Separation Report" that makes no mention of any severance to be paid after termination.  Thus, of the 26 named Former Employees, only 14 supplied facts that allegedly support the claims in the Motion and the filed proofs of claim.

---

[4] *See Objection to Debtors' First Omnibus Motion for Order Pursuant to Bankruptcy Code Sections 105(a) and 365(a) and Bankruptcy Rules 6006 and 9014 Authorizing Rejection of Certain Executory Contracts*, Docket No. 195 (the "Objection to Rejection Motion").

[5] *See* Docket No. 222.

[6] *See Amended First Order Pursuant to Bankruptcy Code Sections 105(a) and 365(a) and Bankruptcy Rules 6006 and 9014 Authorizing Rejection of Certain Executory Contracts*, Docket No. 513 (the "Rejection Order").

[7] The Rejection Motion sought the rejection of prepetition employment agreements with the following Former Employees: Steve Finney (dated 4/15/13); Pamela Gobright (dated 3/24/14); Robert Oberschelp (dated 10/2/13); Joe O'Neil (dated 3/27/14); and Steve Swarkowski (dated 9/26/11).  Each employment agreement provides for severance based upon length of service for termination without cause, but requires the execution of a "general release of claims in a form reasonably acceptable to the Company" before payment of such severance.  Only the Former Employees who executed Separation Agreements provided the general release of claims.

[8] *See* POC No. 766 filed by Nicholas Drake.

16.     The Former Employees provided no services during the pendency of these Chapter 11 Cases, and the Motion does not contend otherwise. The Motion seeks an administrative claim of $7,291,946.65 "for the value of services provided by Former Employees **pre-petition** for negotiated separation benefits." Motion ¶ 3 (emphasis added). The Former Employees do not—and cannot—contend that they provided any services or benefit to the Debtors after the Petition Date. In fact, in the Objection to the Rejection Motion, the Former Employees admit they provided no services to the Debtors' estates. *See* Objection to Rejection Motion ¶ 25 ("Mr. Drake and Class Claimants admittedly did not provide any services to the Debtor post-petition . . . .").[9]

### **Argument**

17.     The Former Employees present several futile and unsupportable theories in support of the Motion. First, the Former Employees confuse their prepetition severance claims with wages earned after the Petition Date as described in 11 U.S.C. § 503(b)(1)(A). Second, the Former Employees imply that their administrative claim is proper because 11 U.S.C. § 503(b)(1) authorizes payment of pre-petition wages without evidence of post-petition ratification or benefit to the estate. Third, the Former Employees contend that, because the Separation Agreements were non-executory on the Petition Date, the Debtors must continue to perform these pre-petition contracts and grant administrative priority to all their remaining obligations. No law exists to support the Former Employees' theories.

---

[9] Contrary to the facts presented in the Motion, Former Employees Anda Druva and Steve Swarkowski both worked for the Debtors after the Petition Date. Both employees were paid in full for the services provided to the estates due to post-petition employment. Neither Druva nor Swarkowski executed a Separation Agreement, so the bases of any remaining administrative claims are unknown.

## A.     The Prepetition Severance Claims Do Not Qualify for Administrative Priority

18.     The Former Employees rely upon 11 U.S.C. § 503(b)(1)(A) as the sole basis for their administrative claim.  Section 503(b)(1)(A) provides:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including –
>
> (1)(A) the actual, necessary costs and expenses of preserving the estate including –
>
> (i) wages, salaries, and commissions for **services rendered after the commencement of the case**; and
>
> (ii) wages and benefits awarded pursuant to a judicial proceeding or a proceeding of the National Labor Relations Board as **back pay attributable to any period of time occurring after commencement of the case** under this title, **as a result of a violation of Federal or State law by the debtor**, without regard to the time of the occurrence of unlawful conduct on which such award is based or to whether any services were rendered, if the court determines that payment of wages and benefits by reason of the operation of this clause will not substantially increase the probability of layoff or termination of current employees, or of nonpayment of domestic support obligations, during the case under this title; . . . .

11 U.S.C. § 503(b)(1)(A) (emphasis added).

19.     Both parts of section 503(b)(1)(A) require that the employee provide services after the petition date to qualify for an administrative claim.  *See, e.g., In re Trump Entm't Resorts, Inc.*, 2015 Bankr. LEXIS 726, 12 (Bankr. D. Del. Mar. 9, 2015) (finding that administrative claim under 503(b)(1)(A)(ii) must be attributable to sometime after the petition date); *In re Powermate Holding Corp.*, 394 B.R. 765, 775 (Bankr. D. Del. 2008) (finding that an administrative claim for severance pay must be based on post-petition services and determining that "if a claim vests pre-petition, then the back pay is attributable to the time occurring prior to the commencement of the case and therefore it is not an administrative expense claim").

20.     Here, the Former Employees do not even contend, let alone offer proof, that they rendered services after the commencement of the case.  In fact, each Separation Agreement expressly provides "You will not be required to perform any duties following the Separation Date or during the Severance Pay Period." *See, e.g.,* Separation Agreement between Quiksilver and Nicholas Drake § 2.B at 2.[10]  Moreover, the Former Employees previously asserted that the Separation Agreements should not be considered executory precisely because no material obligations remained to be performed by the Former Employees.  *See* Objection to Rejection Motion ¶ 14.  Thus, pursuant to the plain language of the Bankruptcy Code and the Former Employees' admissions, the Former Employees' claims under section 503(b)(1)(A) fail because no services were rendered after the Petition Date.

21.     Although their claims fail based upon the plain meaning of the statute, the Former Employees attempt to bang the square peg of their prepetition severance claims into the round hole of administrative wage claims.  These efforts rely in large part upon a logical fallacy equating the Debtors' prepetition severance obligations with wages earned when services are provided.  While both types of claims relate to the employer-employee relationship, the Bankruptcy Code and resulting case law treat differently each of these categories of claims. Wage claims are based upon services rendered to an employer and accrue at the time such services are delivered.  If services are rendered after the petition date, wage claims are likely to receive administrative priority.  If rendered prior to the petition date, then either unsecured or priority treatment is warranted.  *See, e.g.*, 11 U.S.C. § 507(a)(4) (providing priority treatment,

---

[10]  Attached as Exhibit A to Objection to Rejection Motion, Docket No. 195.

subject to a cap, for services earned within 180 days of before the date of filing of the petition). Severance claims, on the other hand, are typically based upon an agreement executed by employee at termination and accrues at the time of the agreement's execution. Where, as here, the severance agreement is executed prior to the petition date, the request for payments or benefits pursuant to the agreement does not justify administrative treatment.

22.     Claims arising pursuant to a severance agreement are not claims for "wages and benefits" permitted under section 503(b)(1)(A)(ii). The Bankruptcy Code does not define "wages" or "benefits." In the absence of a statutory definition, the Court should give "the words used [in a statute] their ordinary meaning." *United States v. Diallo*, 575 F.3d 252, 257 (3d Cir. 2009). Narrowly construed, the phrase "wages and benefits" as used in 11 U.S.C. § 503(b)(1)(A)(ii) can only refer to the compensation an employee receives in return for services rendered. *See, e.g., In re Trump Entm't Resorts, Inc.*, 2015 Bankr. LEXIS 726, 7-8 (Bankr. D. Del. Mar. 9, 2015). The Former Employees' confusion seems reasonable in that, when determining an employee's right to seek priority treatment for its wage claims per section 507(a)(4), the Bankruptcy Code permits employee claims based on the expansive definition of "wages, salaries or commissions, including vacation, severance, and sick leave pay earned by an individual." 11 U.S.C. § 507(a)(4)(A). No such expansive treatment is provided by section 503(b)(1) which limits employee administrative claims to "wages, salaries and commissions" in section 503(b)(1)(A)(i) and "wages and benefits" in section 503(b)(1)(A)(ii). In the Motion, the Former Employees point to the word "including" in the introduction to section 503(b)'s list of nine different categories of administrative claims as evidence of Congress' intent to account for

11

other administrative claims not mentioned. It strains credibility, however, to think that Congress

would expressly include severance when describing employee-related priority claims and fail to

include it when describing employee-related administrative claims. *See, e.g., In re Phones for*

*All*, 249 B.R. 426, 429 (Bankr. N.D. Tex. 2000) (holding section 503(b)(1)(A) does not include

severance pay within wages, salaries and commissions entitled to an administrative expense)

(*aff'd Lasky v. Phones for All (in Re Phones for All, Inc.)*, 288 F.3d 730 (5th Cir. 2002)).[11]

Furthermore, abbreviating section 507(a)(4) to "wages . . . including . . .severance" is only

logical if Congress considered wages and severance to have distinct meanings under the

Bankruptcy Code.

   23.  Furthermore, severance claims of the type presented by Former

Employees are not claims for back pay permitted under section 503(b)(1)(A)(ii). The

Bankruptcy Code does not define the phrase "back pay" but courts must give the phrase its

ordinary meaning. *See, e.g., United States v. Diallo*, 575 F.3d 252, 257 (3d Cir. 2009). The U.S.

Department of Labor defines "back pay" as "the difference between what the employee was paid

and the amount he or she should have been paid" if not for some wage violation by an

employer.[12] Courts have typically provided the term a similar meaning when considering

---

[11] The Former Employees allege knowledge regarding the purpose behind BAPCPA's addition of section 503(b)(1)(A)(ii) by proclaiming "Congress had the intent to expand allowable administrative claims for services rendered prior to the petition date." Motion ¶ 12 (emphasis in original). No such explanation or interpretation of intent appears in any of the cases cited in the Motion. In fact, nearly every Court that has examined the purpose behind the BAPCPA amendment has failed to find any evidence of Congressional intent. *See, e.g., In re Trump Entm't Resorts, Inc.*, 2015 Bankr. LEXIS 726 at 7 ("The legislative history of Section 503(b)(1)(A)(ii), to the extent it would be relevant, is essentially non-existent."); *In re Powermate Holding Corp.*, 349 B.R. at 778 n. 73 ("The legislative history on this section is extremely sparse, more of a restatement of the language than an explanation."), *In re Philadelphia Newspapers, LLC*, 433 B.R. 164, 170 (Bankr. E.D. Pa. 2010) (" In the absence of legislative history on the provision in dispute, there is no record revealing Congress' purpose in amending §503(b)(1) to include it").

[12] *See* https://www.dol.gov/general/topic/wages/backpay.

whether to allow an administrative claim for back pay pursuant to section 503(b)(1)(A)(ii). *See, e.g., In re* Trump *Entm't Resorts, Inc.*, LEXIS 726 at *10 (defining back pay as "employee compensation for services which would have been rendered but for the employer's illegal conduct"); *In re 710 Long Ridge Rd. Operating Co., II, LLC*, 505 B.R. 163, 177 (Bankr. D.N.J. 2014) (back pay defined as "wages which a workman has constructively earned by reason of his continued status as an employee"). A key component of each definition of back pay is the concept that an award of wages as back pay incorporates some redress of a grievance for employer misconduct. *See, e.g., United Steelworkers of Am., AFL-CIO-CLC v. N. Star Steel Co., Inc.*, 5 F.3d 39, 43 (3d Cir. 1993) (back pay defined "as a label to describe the daily rate of damages payable").

24.    Severance claims, on the other hand, are based upon a contractual agreement between employee and employer whereby the parties agree to compensate a former employee in lieu of requiring any services from the employee in the future.[13] Section 503(b)(1)(A)(ii) expressly requires that the "wages and benefits" awarded as "back pay" be "as a result of a violation of Federal or State law by the debtor . . . ." 11 U.S.C. § 503(b)(1)(A)(ii). The Motion alleges broadly only "several breaches of contract" as the alleged violation (Motion ¶ 16) and therefore wholly fails to demonstrate how the alleged claims fall within the ambit of the statute. Unlike a claim for wrongful termination, or a claim for back pay arising from a statutory obligation, a claim for severance arises from a contract for payment of severance between employer and employee entered into on a consensual basis. *See In re Philadelphia*

---

[13] See https://www.dol.gov/general/topic/wages/severancepay ("Severance pay is a matter of agreement between an employer and an employee (or the employee's representative)").

*Newspapers, LLC*, 433 B.R. 164, 176-77 (Bankr. E.D. Pa. 2010) (holding that application for

503(b)(1)(A)(ii) claim was unsustainable as a matter of law where claim arose under a breach of

contract—i.e., *not* "as a result of a violation of Federal or State law" for purposes of the statute).

That is the case here. Each of the Former Employees who executed a Separation Agreement

willingly agreed to terminate their employment and release claims against their employer in

return for payment of severance. The Debtors' failure to pay severance as and when due on a

post-petition basis under a Separation Agreement—as well as the rejection of a Separation

Agreement—is simply a breach of contract. *See id.*; 11. U.S.C. § 365(g). There is no "violation

of Federal or State law" or "illegal conduct" to support a claim for back pay in this matter.

      25.     Even if the Former Employees' severance claims could be considered

"wages" or "back pay" for purposes of evaluating a potential administrative claim (which they

cannot), section 503(b)(1)(A) does not give administrative priority to wages, salaries, or

commissions for services rendered prepetition but not due to be paid until after the

commencement of the case. Only wages for services rendered post-petition are entitled to

administrative treatment. *See e.g., Former Emples. of Builders Square Retail Stores v.*

*Hechinger Inv. Co. (In re Hechinger Inv. Co.)*, 298 F.3d 219, 225 (3d Cir. 2002) (holding that

court looks to the time when an employee's services were rendered not when they were

scheduled for payment in evaluating claim for administrative priority); *In re Commercial Fin.*

*Servs., Inc.*, 246 F.3d 1291, 1295 (10th Cir. 2001) (to determine administrative priority, courts

look to "when the acts giving rise to a liability took place, not when they accrued") (quotation

omitted); *In re Continental Airlines, Inc.*, 148 B.R. 207, 212 (D. Del. 1992) ("Congress was quite

specific about which wage claims were to receive administrative priority . . . [and] made it clear that the only wages which were to be given priority in § 503(b)(1)(A) were those for services rendered post-petition").

26.    This Court has expressly held that only when severance occurs post-petition can a former employee receive administrative treatment for its severance claims.[14] *See In re Powermate Holding Corp.*, 394 B.R. 765, 775 (Bankr. D. Del. 2008) ("In terms of priority, a claim for severance pay will only have administrative priority to the extent that it is based on post-petition services."). The *Powermate* holding is based upon decisions in the Third Circuit and elsewhere that have considered the type of severance pay claim at issue here and held that these claims only have administrative priority if based on services provided to the bankruptcy estate post-petition. *See In re Hechinger Inv. Co.*, 298 F.3d 219, 227 (3d Cir. 2002) (holding only severance benefits attributable to post-petition services are entitled to administrative expense priority); *In re Roth American, Inc.*, 975 F.2d 949, 957-58 (3d Cir. 1992) (same); *In re Public Ledger*, 161 F.2d 762, 768-69 (3d Cir. 1947); *see also In re Health Maintenance Found.*, 680 F.2d 619, 621 (9th Cir. 1982); *In re Mammoth Mart, Inc.*, 536 F.2d 950, 953 (1st Cir. 1976). The addition of section 503(b)(1)(A)(ii) in the 2005 BAPCPA amendments to Bankruptcy Code did not change the reasoning behind these decisions and, indeed, the post-BAPCPA *Powermate* court expressly held that the legal principal remained intact. *See In re Powermate*, 394 B.R. at 777-78.

---

[14] Such treatment will depend entirely upon the terms of the severance agreement and other relevant factors including the period for which the severance was earned. *See, e.g., In re Harnischfeger*, 270 B.R. 188, 194-95 (D. Del. 2001) (mandating that severance pay claims be divided into three priority classes).

15

27.    None of the cases cited in the Motion support the Former Employees'

theory that a pre-petition severance claim from an employee who did no work for the estate

should receive administrative priority pursuant to section 503(b)(1)(A)(ii).  For example:

- *Powermate*.  The *Powermate* court held that a former employee asserting WARN damages was ***not*** entitled to a section 503(a)(1)(A)(ii) administrative claim because the claimant did not render any services, or otherwise benefit the estate, post-petition.  *Powermate*'s unambiguously held that "a claim for severance pay for a pre-petition termination does not receive administrative expense status." *Id.* at 776.  As set forth herein, *Powermate* actually supports this Objection.

- *In re Philadelphia Newspapers, LLC*, 433 B.R. 164 (Bankr. E.D. Pa. 2010). The *Philadelphia Newspapers* court held that a former employee was ***not*** entitled to a section 503(1)(A)(ii) administrative claim because the claimant's damages arose from a breach of contract, not a violation of federal or state law. *Id.* at 176.  As set forth herein, *Philadelphia Newspapers* actually supports this Objection.

- *In re 710 Long Ridge Road Operating Co., II, LLC*, 505 B.R. 163 (Bankr. D. N.J. 2014).  The *710 Long Ridge Road* court considered only administrative claims arising ***after*** the commencement of chapter 11 proceedings for section 503(b)(1)(A)(ii) purposes.  *Id.* at 174.  Accordingly, *710 Long Ridge Road* is inapposite.

- *Matthews v. Truland Group, Inc. (In re Truland Group, Inc.)*, 520 B.R. 197 (Bankr. E.D. Va. 2014).  On a motion to dismiss, the *Truland* court considered WARN damages claims asserted against chapter 7 debtors that terminated all of their 1,000 employees two days before commencing voluntary liquidation proceedings.  The *Truland* court denied the motion to dismiss, finding that if back pay was awarded to such WARN claimants for any period of time attributable to the post-petition period ***and*** such back pay satisfied the requirements of section 503(b)(1)(A)(ii) of the Bankruptcy Code, then administrative status could be granted.  *Id.* at 204-05.  The *Truland* court did not analyze whether WARN damages claims could constitute back pay, and no court has cited to *Truland* in a published opinion.  *Truland* is an Eastern District of Virginia case, and its findings directly conflict with *Powermate*—a District of Delaware case—and its progeny.  The adversary complaint that was the subject of the motion to dismiss in *Truland* remains pending.

DOCS_DE:205709.7 72779/002

The Chapter 11 Cases could not be more different from *Truland*. The Reorganized Debtors successfully consummated a substantial—and, in the present market, unusual—retail reorganization, saving (not terminating) many jobs. The Debtors ran a transparent, competitive process that maximized value for all parties in interest. They did not terminate an entire workforce 48 hours before commencing chapter 7 liquidation proceedings. As a result, there are no WARN claims in the Chapter 11 Cases. Instead, the Former Employees ask this Court to establish new law in this district and elevate a prepetition breach of contract claim to administrative status. Neither *Truland*, nor any other of the cases cited by the Former Employees, support such an expansive reversal of long-standing precedent.

**B.      The Former Employees Provided No Benefit to the Estate**

28.      In their Motion, the Former Employees ignore the most fundamental basis for seeking an administrative claim to be paid out of limited estate assets—a claim that the services rendered provided a tangible benefit to the estate. Under any circumstances this would be an onerous standard when based upon severance agreements and/or employment contracts that were executed months or years before the Petition Date. The act of terminating an employee and providing severance indicates the employer's intention to clearly define any liability related to the employment at the time of the termination. It is inconceivable that any employee so terminated would continue to provide any tangible benefit to its former employer not expressly required by the agreement. Here, the Former Employees admit that they provided no benefit to the estates, and the record demonstrates that the Former Employees did not intend to provide any benefit to their former employer after their termination.

29.    The allowance or disallowance of an administrative expense claim is determined almost solely by benefit provided to the estate. *See, e.g.*, 11.U.S.C. § 503(b)(1)(A) ("After notice and a hearing, there shall be allowed administrative expenses . . . including – (1)(A) the actual, necessary costs and expenses of preserving the estate . . . ."). The policy "behind granting administrative priority to the types of expenses included under section 503(b)(1)(A) is to provide an incentive for creditors and others to continue or commence doing business with an insolvent entity." 4 COLLIER ON BANKRUPTCY ¶ 503.05[2], at 503-21 (15th ed. 2002); *see also In re Commonwealth of Pennsylvania Dep't of Envtl. Resources*, 178 F.3d 685, 691 (3d. Cir. 1999) ("[T]hose who continue to transact business with the debtor during the Chapter 11 case, and who would suffer financially as a result, are entitled to priority over other creditors who have not affirmatively assumed such risk"); *In re Valley Media, Inc.*, Del. Bankr. 01-11353 (PJW), 2002 Bankr. LEXIS 421, at * 91 (Bankr. D. Del. Apr. 25, 2002) ("The principal purpose of 11 U.S.C. § 503 is to induce entities to do business with a debtor after bankruptcy insuring that those entities receive payment for services rendered").

30.    For a debt to qualify as an administrative expense it must satisfy a two-prong test: "(1) it must have arisen from a transaction with the estate and (2) it must have benefited the estates in some demonstrable way." 4 COLLIER at ¶ 503.06[3], at 503-25; *see also In re Unidigital, Inc.*, 262 B.R. 283, 288 (Bankr. D. Del. 2001) (determining "whether a creditor has an administrative claim is a two-prong test: the expense must have arisen from a post-petition transaction between the creditor and the debtors, and the transaction must have been

'actual and necessary' to preserve the estate"); *In re Valley Media, Inc.*, Del. Bankr. 01-11353

(PJW), 2002 Bankr. LEXIS 421, at * 90 (Bankr. D. Del. Apr. 25, 2002) (same).

     31.    The claimant carries the "heavy burden of demonstrating that the costs and

fees for which it seeks payment provided an actual benefit to the estate and that such costs and

expenses were necessary to preserve the value of the estate assets." *In re O'Brien Environ.*

*Energy, Inc.*, 181 F.3d 527, 533 (3d Cir. 1999) (citations omitted) (holding that the party

requesting the administrative expenses must show that they are actually necessary to preserve the

value of the debtors' estates); *see also In re Valley Media, Inc.*, 2002 Bankr. LEXIS 421, at *90

(finding that the burden to establish an administrative claim is the claimants.). As discussed

below, the Former Employees have not carried their burden of proof.

     32.    The first prong of the administrative priority claim test is that the claim

arises from a post-petition transaction between the Former Employees and the Debtors. In *In re*

*Commonwealth of Pennsylvania Dep't of Envtl. Resources*, 178 F.3d 685, 693 (3d. Cir. 1999),

the Third Circuit stated that "Congress intended only for those 'actual necessary costs and

expenses' that arise in the context of, or compensate for, legitimate business activity, or the

losses resulting therefrom, to be treated as expenses of preserving the estate, and accorded

priority as an administrative expense." In *In re Valley Media, Inc.*, 2002 Bankr. LEXIS 421, at

*91, the Bankruptcy Court held: "Section 503(b) contemplates some quid-pro-quo wherein the

estate accrues debt in exchange for some consideration **necessary to the operation of the**

**estate**." (emphasis added).  Similarly, the Tenth Circuit held: "'It is only when the debtor-in-

possession's actions themselves . . . give rise to a legal liability that the claimant is entitled to the

priority of a cost and expenses of administration.'" *In re Commercial Financial Services, Inc.*,

246 F.3d 1291, 1294 (10th Cir. 2001) (quoting *Cramer v. Mammoth Mart, Inc. (In re Mammoth*

*Mart, Inc.)*, 536 F.2d 950, 954 (1st Cir. 1976)); *accord In re Valley Media, Inc.*, 2002 Bankr.

LEXIS 421, at *91 ("A debt is not entitled to administrative priority merely because the right to

payment arises post-petition. It is the substantial contribution to the estate, not the activity . . .

that incurs the obligation that must occur in the chapter 11 case."); *see also In re Mid-Atlantic*

*Waste Systems, Inc.*, 228 B.R. 816, 821 (Bankr. D. Del. 1999) (same).

      33.    Here, there is no evidence that the Former Employees and Debtors had

any interaction or contact after the Petition Date. It is undisputed that the parties did not ratify or

affirm the existing Separation Agreement and, as reflected in the Motion and the proofs of claim

filed by the Former Employees, the Debtors have not made any severance payments post-

petition. No post-petition transaction exists to support the first prong of the test for an

administrative claim.

      34.    The Former Employees also fail the second prong of the administrative

expenses claim test: a tangible benefit provided to the estate. "An incidental benefit is not

enough to justify administrative priority." 2 NORTON BANKRUPTCY LAW AND PRACTICE §42:16,

at 42-94 (2d. ed. 1997); *see also In re Continental Airlines, Inc.*, 146 B.R. 520, 527 (Bankr. D.

Del. 1992) ("Movant must establish a benefit to the estate to receive priority payment ahead of

the other general unsecured claims."). The benefit to the debtor's estate must be direct and

substantial. *See In re White Motor Corp.*, 831 F.2d 106, 110 (6th Cir. 1987).

35.    The Former Employees provided no benefit to the Debtors' estates.  In *In re Unidigital, Inc.*, 262 B.R. 283, 289 (Bankr. D. Del. 2001), the Court held: "[I]t is not enough to simply assert that the expense was incurred postpetition with regard to estate property . . . ."  To do so, the [*Allen Care Ctrs.'s*] Court held, would read the words "necessary" and "preserving the estate" out of the statute (quoting *In re Allen Care Ctrs.*, 163 B.R. 180, 186 (Bankr. D. Ore. 1994)).  The transaction between the claimant and the debtor must be both supplied to and beneficial to the debtor in the operation of the debtor's business.  *See In re Commercial Financial Services, Inc.*, 246 F.3d 1291, 1295 (10th Cir. 2001) (holding that the consideration supporting the claimant's right to an administrative payment needed to be both supplied to and beneficial to the debtor-in-possession in the debtor's operation of its business).  "The benefit must run to the debtor in possession and it is typically fundamental to the conduct of its business."  *In re Continental Airlines, Inc.*, 146 B.R. 520, 526-27 (Bankr. D. Del. 1992) ("All is required is a showing that the personality was actually used by the debtor post-petition in the ordinary course of the debtor's business.").

36.    The Former Employees have not and cannot provide any evidence of benefit to the estate.  None of the Former Employees with executed Separation Agreements worked for the Debtors during the post-petition period and none provided services to Quiksilver after the date of termination.  Moreover, the terms of the Separation Agreements themselves provide that the terminated employees "will not be required to perform any duties following the

21

Separation Date or during the Severance Pay Period." *See, e.g.*, Separation Agreement Between

Quiksilver, Inc. and Nicholas Drake (Revised October 8, 2014) ¶ 2.B.[15]

37.     Moreover, the Former Employees have argued consistently that the

Separation Agreements should be considered non-executory because the terminated employees

have no material obligations remaining pursuant to the terms of the Agreement. *See* Objection to

Rejection Motion ¶ 14, Docket No. 195 ("Given Class Claimants had no materials [sic] duties

left to perform under the Separation Agreements, the Separation Agreements are not 'executory,'

and such contracts are not amenable to rejection by the Debtor.")  In light of these admissions,

the Former Employees cannot now argue that they have made a material contribution to the

estate to support their administrative claim.

C.     **The Separation Agreements Have Each Been Rejected as of the Petition Date**

38.     As described above, the Former Employees have argued that the

Separation Agreements are non-executory and cannot be rejected. *See id.*  Assuming this is true,

for the purposes of this Objection, it does not put the Former Employees in any better position

with regard to their claims against the estate.  Their claims related to the agreements remain

unsecured.  As the Third Circuit observed in *Enterprise Energy Corp. v. United States (In re*

*Columbia Gas Sys.)*, 50 F.3d 233, 239 (3d Cir. 1995), "[i]n cases where the nonbankrupt party

has fully performed, it makes no sense to talk about assumption or rejection.  At that point only a

liability exists for the debtor—a simple claim held by the nonbankrupt against the estate . . .

---

[15]  Attached as Exhibit A to Declaration of Nicholas Drake in Support of Objection to Debtors' First Omnibus
Motion for Order Pursuant to Bankruptcy Code Sections 105(a) and 365(a) and Bankruptcy Rules 6006 and 9014
Authorizing Rejection of Certain Executory Contracts , Docket No. 195.

and the estate has whatever benefit it can obtain from the other party's performance and the

trustee's rejection would neither add to nor detract from the creditor's claim or the estate's

liability. Rejection is meaningless in this context, and assumption would be of no benefit to the

estate, serving only to convert the nonbankrupt's claim into a first priority expense of the estate

at the expense of the other creditors." (citations omitted). *See also In re Waste Sys. Int'l, Inc.*,

280 B.R. 824, 827 (Bankr. D. Del. 2002). Continuing in a footnote, the Third Circuit directly

addressed the Former Employees' implicit argument that the Debtors are compelled to keep

paying separation payments through administrative expenses stating "[in] this circumstance,

elevating the nonbankrupt's claim to administrative expense priority by 'assuming' it would

offend 'the general policy of the bankruptcy laws [which] is equality of distribution among all

creditors . . . .'" *In re Columbia Gas*, 50 F.3d at 239, fn.9 (*citing* H.R. Rep. No. 595, 95th Cong.,

1st Sess. 186 (1977)). Thus, whether the Separation Agreements have been rejected or not, the

Former Employees have, at most, either an unsecured or priority claim (depending upon the date

of termination). Granting the Former Employees an administrative claim based upon pre-

petition agreements would offend the spirit and policy of bankruptcy laws.

**D.      The Motion Ignores Code Sections Applicable to Payment of Severance Claims**

        39.      The Motion does not mention the restrictions of either section 503(c) or

section 507(b)(7) related to the requests for severance payments. Both sections of the

Bankruptcy Code potentially limit the claims of Former Employees in these cases and require

that such limited claims receive non-priority treatment as general unsecured claims.

23

40.    Section 503(c) provides that notwithstanding other bases for allowing an administrative claim, the estate may not pay:

(2) a severance payment to an insider of the debtor, unless—

(A) the payment is part of a program that is generally applicable to all full-time employees; and

(B) the amount of the payment is not greater than 10 times the amount of the mean severance pay given to nonmanagement employees during the calendar year in which the payment is made....

11 U.S.C. § 503(c).  The restriction on payment of severance claims clearly applies to the Former Employees' claims at issue in the Motion.  The Former Employees have presented no evidence or statement to address (a) insider versus non-insider status as to any Former Employee, (b) whether the requirement for a generally applicable severance program for all employees was met with respect to any insider, or (c) whether the limitation on the the amount of individual claims was met with respect to any insider.

41.    The Former Employees also ignore the requirements of section 502(b)(7) that prohibits the allowance of any claim:

(7) if such claim is the claim of an employee for damages resulting from the termination of an employment contract, such claim exceeds—

(A) the compensation provided by such contract, without acceleration, for one year following the earlier of—

(i) the date of the filing of the petition; or

(ii) the date on which the employer directed the employee to terminate, or such employee terminated, performance under such contract; plus

(B) any unpaid compensation due under such contract, without acceleration, on the earlier of such dates;

DOCS_DE:205709.7 72779/002

11 U.S.C. § 502(b)(7).  The limitation on damages resulting from the rejection of employment

contracts applies to the Former Employees' claims.  For the employees who base their severance

claims directly upon the severance provisions in their employment contracts, the amounts

requested must be limited to the single-year restriction.  Alternatively, for employees who

executed separation agreements, such agreements are also "employment contracts" that must be

limited by section 502(b)(7).  *See, e.g., In re VeraSun Energy Corp.*, 467 B.R. 757, 765 (Bankr.

D. Del. 2012) (holding that subsequent agreement detailing severance provisions modifies earlier

employment contract and is subject to section 502(b)(7) limits).

### Objection to Claims of Unnamed Class Members

42.     The Debtors object to the Motion to the extent it seeks payment of

administrative claims for unnamed class members.  The Motion purports to submit the claims of

both the named Former Employees and "on behalf of all similarly situated terminated former

employees."  *See* Motion p. 1.  The Former Employees efforts to submit a proof of claim on

behalf of unidentified additional claimants does not meet any of the requirements for filing

claims provided by applicable bankruptcy rules.

43.     As provided in detail in the Debtors' reply to the Objection to Rejection

Motion, the Former Employees have not met any of the requirements for class certification under

the applicable rules of bankruptcy and civil procedure.[16]  In fact, the Former Employees do not

even attempt to clear the procedural hurdles or to use definitions in their filed papers such as

---

[16] See *Debtors' Reply to Objection to Debtors' First Omnibus Motion for Order Pursuant to Bankruptcy Code Sections 105(a) and 365(a) and Bankruptcy Rules 6006 and 9014 Authorizing Rejection of Certain Executory Contracts*, Docket No. 217, pp. 2-4.

"Class Claimants" without the courtesy of the term "putative" to indicate to this Court that a certification has not yet been completed.[17]  Among the many potential hurdles to class certification, the Former Employees would need to convince this Court that the number of former employees who had executed separation agreements are "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1).  Because the Debtors have conveniently listed a number of potential class claimants in their filed Rejection Motion, it can hardly be described as "impracticable" for the joinder of all these former employees.[18]

### Objection to Claims Without Supporting Documentation

44.    The Debtors object to the Motion to the extent it seeks payment of administrative claims for Former Employees who fail to provide an executed separation agreement as described by the Motion or fail to provide any other written agreement that supports the payment of the requested severance.  Pursuant to Bankruptcy Rule 3001(c)(1), "when a claim . . . is based on a writing, a copy of the writing shall be filed with the proof of claim."  As provided above, only 14 of the 26 named Former Employees attach their executed Separation Agreement to the filed claim.  Of the other twelve claimants, five attach a prepetition employment agreement as support for the requested severance, one attaches an unexecuted Separation Agreement, and six attach an "Employee Separation Report" that makes no mention

---

[17] In addition to the Bankruptcy Rule 7023 disclosure deficiencies, counsel to the Former Employees have also not filed a statement for their representation of multiple creditors in these cases pursuant to Bankruptcy Rule 2019.

[18] The Third Circuit has never expressly authorized the filing of a class claim on behalf of unnamed claimants. *See, e.g., In re Allegheny Int'l*, 94 B.R. 877, 881 (W.D. Pa. 1988) (detailing reasons why class claims are "an inherently bad idea").

of any severance to be paid after termination.  The Debtors object to any claim that does not

provide the writing upon which the claim is based.

### Reservation of Rights

45.    Nothing herein shall be considered to be an admission regarding the facts

as related in the Motion or in the accompanying declaration of Blake J. Lindemann or a waiver

of the Debtors' rights to object to any claim filed by the Former Employees.  This Objection

addresses solely the claim for administrative priority by the Former Employees and does not

concede that the amounts asserted in the proofs of claim filed by the Former Employees should

necessarily be permitted in the amounts demanded as unsecured claims.  The Debtors reserve all

rights to respond further to any other claim filed by the Former Employees seeking payment of

severance as requested in the Motion.  The Debtors further reserve all rights to bring any cause

of action against the Former Employees including but not limited to: (a) an action to recover

preferential payments made to the Former Employees pursuant to section 547; (b) an action to

set aside all payments made to the Former Employees under any prepetition employment

agreement as a fraudulent transfer not returning reasonably equivalent value to the estates

pursuant to section 548(a)(1)(B)(ii)(IV); and (c) an action to disallow all claims made by the

Former Employees pursuant to section 502(d) unless and until the Former Employees turnover

all amounts due to the estate.

**WHEREFORE,** for the reasons stated herein, the Debtors respectfully request that the Court deny the Former Employees' administrative claims.

Dated: April 21, 2016

PACHULSKI STANG ZIEHL & JONES LLP

Laura Davis Jones (DE Bar No. 2436)
Michael R. Seidl (DE Bar No. 3889)
Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 4662)
919 North Market Street, 17th Floor
Wilmington, DE  19801
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email:    ljones@pszjlaw.com
          mseidl@pszjlaw.com
          jpomerantz@pszjlaw.com
          jmorris@pszjlaw.com

Co-Counsel for the Debtors and Debtors in Possession

DOCS_DE:205709.7 72779/002