**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re | ) ) | Chapter 11 |
| QUIKSILVER, INC., *et al.*,[1] | ) ) ) | Case No. 15-11880 (BLS) |
| Debtors. | ) ) ) | (Jointly Administered) **Related Docket Nos.: 883, 949** |

**REPLY TO OBJECTION OF THE
REORGANIZED DEBTORS TO APPLICATION OF CERTAIN
UNSECURED NOTEHOLDERS PURSUANT TO 11 U.S.C. §§ 503(b)(3) AND
503(b)(4) FOR ALLOWANCE OF FEES AND EXPENSES INCURRED IN MAKING
A SUBSTANTIAL CONTRIBUTION AS AN ADMINISTRATIVE EXPENSE CLAIM**

Brigade Capital Management, LP ("Brigade"), as investment manager for certain holders of the 10.000% senior unsecured notes due August 1, 2020 (the "Unsecured Notes"), and CVI Opportunities Fund I, LLLP, a holder of the Unsecured Notes (together with Brigade, the "Applicants"), by and through their undersigned counsel, hereby submit this reply (the "Reply") to the objection (the "Reorganized Debtors' Objection")[2] by the reorganized debtors in the above-captioned cases (the "Reorganized Debtors") to the *Application of Certain Unsecured Noteholders Pursuant to 11 U.S.C. §§ 503(b)(3) and 503(b)(4) for Allowance of Fees and Expenses Incurred in Making a Substantial Contribution as an Administrative Expense Claim*, Mar. 11, 2016, ECF No. 883.[3] In support of the Reply, the Applicants respectfully represent and set forth as follows:

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), QS Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

[2] *Objection of the Reorganized Debtors to Appl. of Certain Unsecured Noteholders Pursuant to 11 U.S.C. §§ 503(b)(3) and 503(b)(4) for Allowance of Fees and Expenses Incurred in Making a Substantial Contribution as an Administrative Expense Claim*, Apr. 11, 2016, ECF No. 949.

[3] Capitalized terms not otherwise defined herein have the meanings ascribed thereto in the Application.

**PRELIMINARY STATEMENT**

1.      By offering the Alternative DIP Facility, the Applicants made a unique and substantial contribution in the Chapter 11 Cases that led directly to material improvements to the Oaktree DIP Facility, unlocked value for unsecured creditors, and set the stage for productive and beneficial negotiations throughout the remainder of the cases. The Applicants' efforts resulted in direct and demonstrable benefits for the estate as a whole, and went well beyond those of self-interested creditors merely trying to protect their own recoveries. With the support of the Committee, the Applicants put their own money on the table – even upsizing the loan availability by nearly 15% at the hearing in response to the Debtors' concerns – in a concerted endeavor to provide postpetition financing to the Debtors' estates on superior economic terms, which no other creditor was willing to do. Most significantly, the Alternative DIP Facility did not require a lien on the Unencumbered Foreign Stock. As discussed more fully in the Application, the Alternative DIP resulted in substantial changes to the Oaktree DIP Facility that ultimately provided value to unsecured creditors. Accordingly, the Applicants request that the Court overrule the Reorganized Debtors' Objection and grant the Application.

**REPLY**

**A.    A Causal Connection Exists Between the Applicants' Development, Proposal, and Negotiation of the Alternative DIP Facility and the Improved Recoveries for Unsecured Creditors Under the Confirmed Plan.**

2.      The Reorganized Debtors' Objection is predominantly based upon the premise that no causal connection exists between the Applicants' efforts and the increased creditor recoveries in the Confirmed Plan. Reorganized Debtors' Objection ¶ 13-17. On the contrary, the Alternative DIP Facility offered by the Applicants served as the "special ingredient" in the Chapter 11 Cases, which compelled Oaktree to agree to material concessions to the Oaktree DIP Facility and PSA. *See In re RS Legacy Corp.*, No. 15-10197, 2016 WL 1084400, *5 (Mar. 17,

2016). These material improvements unlocked value for the unsecured creditors, significantly strengthened the Committee's negotiation position in the Valuation Dispute, and set the stage for productive and beneficial negotiations regarding creditor recoveries under the Debtors' plan.

3. Both the Committee and the Debtors used the Alternative DIP Facility as the key bargaining chip in their negotiations with Oaktree. Hr'g Tr. 15:1-3, Oct. 14, 2015, ECF No. 297. By offering superior economic terms, the Alternative DIP Facility induced Oaktree to make material concessions to the Oaktree DIP Facility and led this Court to find that the record did not satisfactorily demonstrate that a lien on the Unencumbered Foreign Stock was "necessary as a lien, [or] part of the collateral package." *See* Hr'g Tr. 143:14-24, Oct. 15, 2015, ECF No. 299. As a result, the final Oaktree DIP Facility was improved by, among other things, (i) eliminating Oaktree's $20 million break-up fee under the PSA, (ii) limiting Oaktree's lien on the Unencumbered Foreign Stock to the diminution in value of the prepetition collateral, (iii) extending the time available for the Debtors to meaningfully market their assets to entities other than Oaktree, and (iv) removing the requirement for the lenders to provide their consent in order for the Debtors to make the last draw of $25 million in loan availability.

4. These material improvements to the Oaktree DIP Facility led directly to greater recoveries for unsecured creditors. Most significantly, the elimination of the DIP lien on the Unencumbered Foreign Stock ensured that key unencumbered assets remained available for distribution to unsecured creditors. Had Oaktree retained a DIP lien on the Unencumbered Foreign Stock, Oaktree would have been allowed to soak up the entire value of the Unencumbered Foreign Stock through the Oaktree DIP Facility, reducing the chances for a substantial recovery for the unsecured creditors. Ultimately, the Committee's ability to look to the Unencumbered Foreign Stock for distributions resulted in an increase in recoveries for

unsecured creditors (both trade creditors and bondholders), who received $6.5 million more in the Confirmed Plan than the amount proposed in the PSA Plan.[4]

5. There is no similarity between the Applicants to those in *In re RS Legacy Corp.*, 2016 WL 1084400, at *5 (finding no evidence of what "special ingredient" the applicant added to galvanize the parties to reach a settlement). In *RS Legacy Corp.*, the applicant's efforts were largely "duplicative of other paid professionals" and if successful would have "reallocated distributions under the Plan to the detriment of the general unsecured creditors." 2016 WL 1084400 at *4-5. In contrast, in proposing the Alternative DIP Facility, the Applicants engaged in efforts that the Committee was not capable of doing and no other party was willing to do. Far from having a detrimental impact on general unsecured creditors, the Applicants' efforts resulted in a substantially enhanced recovery for general unsecured creditors under the Confirmed Plan.

6. In addition, as discussed more fully in the Application, the Delaware district court has recognized that a party that enhances a debtor's negotiation position through the proposal of an alternative DIP facility has made a substantial contribution in the case. *See In re FF Holdings Corp.*, 343 B.R. 84, 87 (D. Del. 2006) (finding that the applicant's efforts related to the proposal of an alternative DIP had "undoubtedly assisted the Debtors in its negotiations with other parties"). In that case, the court found that it was "persuaded that [the applicant] has demonstrated a benefit to the estate by its work to negotiate alternate DIP financing for the Debtors," separate and apart from the applicant's role in plan confirmation process. *Id.* The Reorganized Debtors' attempts to distinguish *FF Holdings* on the basis that the Applicants did not actively participate in plan negotiations is therefore without merit.

---

[4] The $112,084.50 in fees and expenses sought in the Application represent just 1.7% of the increase in recovery for unsecured creditors that resulted from the Applicants' efforts.

7. The fact that the Applicants limited their involvement after the approval of the final Oaktree DIP Facility should not diminish the substantial contribution of the Applicants to the Chapter 11 Cases. Indeed, after the Alternative DIP Facility was denied, it was entirely appropriate for the Applicants to step back and allow the Committee to take the lead in negotiations to avoid duplication of efforts. Nonetheless, the direct benefits resulting from the Alternative DIP Facility demonstrably strengthened the Committee's position from the outset and set the tone and the stage for the remaining negotiations in the Chapter 11 Cases. *See id.*

**B.    The Applicants' Efforts Went Well Beyond Their Own Self-Interest.**

8. The Applicants' efforts went far "beyond what is expected from a general unsecured creditor trying to enhance his recovery and have his counsel fees paid." *See In re RS Legacy Corp.*, 2016 WL 1084400 at *4 (citing *In re Essential Therapeutics, Inc.*, 308 B.R. 170, 174 (Bankr. D. Del. 2004). The benefit conferred on the Debtors' estates through the Alternative DIP Facility was "more than an incidental one that arises from the creditor protecting its own interests." See *id.* at *4 (citing *Lebron v. Mechem Fin. Inc.*, 27 F.3d 937, 944 (3d Cir. 1994)). Rather, the Applicants committed to providing postpetition financing "on significantly better economic and non-economic terms" while assuming all of the risks related thereto. *See Joint Objection of the Official Committee of Unsecured Creditors to Debtors' (I) Mot. for Authorization to Obtain Postpetition Financing and (II) Mot. for Authority to Assume Plan Sponsor Agreement and Pay Related Break-Up Fee and Transaction Expenses*, ¶ 2, Oct. 9, 2015, ECF No. 269. Moreover, the Applicants' efforts were made at the Committee's request and with the full support of the Committee as estate representatives. *See also In re Worldwide Direct, Inc.*, 334 B.R. 112, 124 (Bankr. D. Del. 2005) (noting that to the extent the applicant-creditor performed services at the request of the Committee, it made a substantial contribution).

#39072814 v1

9.      Contrary to the Reorganized Debtors' assertions, a showing that the Applicants expected reimbursement from the estate is not required to overcome the presumption of self-protection.  *See* Reorganized Debtors' Objection ¶ 23 (quoting *In re Tropicana Entm't LLC*, 498 F. App'x 150, 152 (3d Cir. 2012)).[5]  While the Third Circuit has considered this as one factor in determining whether an applicant's "efforts transcended self-protection," this factor is not dispositive.[6]  *See In re RS Legacy Corp.*, 2016 WL 1084400 at *4.  Indeed, such a requirement would ignore the well established principle that "the existence of a self-interest cannot in and of itself preclude reimbursement."  *See Lebron*, 27 F.3d at 944.  Another bankruptcy court has highlighted the analytical flaw in requiring an expectation of reimbursement, noting that such a statement might confirm rather than negate an applicant's self-interest.  *See In re Geriatrics Nursing Home, Inc.*, 195 B.R. 34 (Bankr. D. N.J. 1996).

10.     Finally, the Third Circuit's decision in *Tropicana* is distinguishable from the facts of this case.  In *Tropicana*, the applicants sought reimbursement for fees and expenses incurred in connection with a motion to appoint a chapter 11 trustee, filed in an attempt to wrest control from the debtors' management and prevent a potential regulatory shutdown of the debtors' operations as a going concern.  498 F. App'x at 151.  In that case, the Third Circuit found that the applicants filed the motion to protect their own financial interests.  The Applicants' efforts, on the other hand, were not a protective response to a dire risk to their individual economic interests; they were a successful attempt to obtain better postpetition financing for the benefit of the Debtors and all creditors, leading to increased creditor recoveries.

---

[5] *Tropicana* was not a published opinion and the court noted at the outset of the opinion that it was written "solely for the benefit of the parties."

[6] Even if such a requirement did exist, the Reorganized Debtors' Objection ignores the fact that postpetition lenders, unlike other creditors in bankruptcy, typically receive reimbursement for fees and expenses incurred in connection with the postpetition financing.  Thus, in calculating its decision to lend, any lender proposing postpetition financing has taken into account the likelihood that their fees and expenses would be reimbursed.

**CONCLUSION**

    For the foregoing reasons, the Applicants respectfully request that this Court overrule the Reorganized Debtors' Objection and enter an order, substantially in the form attached as <u>Exhibit D</u> to the Application, allowing as an administrative expense claim the reimbursement of professional fees and expenses incurred in connection with the Applicants' substantial contribution in these cases.


Dated:  April 25, 2016
Wilmington, Delaware

                        PEPPER HAMILTON LLP

                        /s/  David B. Stratton
                        David B. Stratton (DE No. 960)
                        David M. Fournier (DE No. 2812)
                        John H. Schanne II (DE No. 5260)
                        Hercules Plaza, Suite 5100
                        1313 N. Market Street
                        Wilmington, Delaware 19899-1709
                        Telephone: (302) 777-6500
                        Facsimile: (302) 421-8390
                        strattod@pepperlaw.com
                        fournierd@pepperlaw.com
                        schannej@pepperlaw.com

                            --and--

                        ROPES & GRAY LLP
                        Mark R. Somerstein
                        1211 Avenue of the Americas
                        New York, NY 10036-8704
                        Telephone: 212-596-9000
                        Facsimile:  212-596-9090
                        Mark.Somerstein@ropesgray.com

                        *Attorneys for Brigade Capital Management, LP and CVI Opportunities Fund I, LLLP*