IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------x
:
In re:                              :  Chapter 11
                                    :
QUIKSILVER, INC., *et al.*,         :  Case No. 15-11880 (BLS)
                                    :
                  Debtors.[1]       :  Jointly Administered
                                    :
                                    :
                                    :
                                    :
------------------------------------x

Hearing Date: May 26, 2016, at 10:00 a.m. prevailing Eastern time
Objection Deadline: May 19, 2016, at 4:00 p.m. prevailing Eastern time

**REORGANIZED DEBTORS' (A) MOTION FOR AN ORDER AUTHORIZING THE ENTRY INTO TERMINATION AGREEMENT WITH DANE REYNOLDS PURSUANT TO BANKRUPTCY RULE 9019 AND (B) OBJECTION TO CLAIM NO. 616**

The above-captioned reorganized debtors (collectively, the "Reorganized Debtors" and before the date of the Plan (as defined below), the "Debtors"), by and through their undersigned counsel, hereby (A) move this Court (the "Motion") for an order authorizing the entry into a settlement agreement with Dane Reynolds ("Reynolds") pursuant to Rule 9019 of the Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules"), and (B) object to Reynolds' proof of claim (the "Objection"), designated claim number 616 ("Reynolds' Claim"). The Reorganized Debtors request that the Court enter an order disallowing and expunging Reynolds' Claim. The Objection involves substantive objections. The facts and circumstances supporting the Motion and the Objection are set forth below and in the *Declaration of Linnsey Caya in Support of Reorganized Debtors' (A) Motion for the an Order Authorizing the Entry Into*

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

*Termination Agreement Pursuant to Bankruptcy Rule 9019 and (B)Objection to Claim No. 616* ("Caya Declaration" or "Caya Dec."), and the exhibits annexed thereto. In support of the Motion and the Objection, the Reorganized Debtors respectfully state as follows:

## PRELIMINARY STATEMENT[2]

1. Reynolds is an athlete. Prior to the Petition Date, Quiksilver and Reynolds were parties to the Sponsorship Agreement pursuant to which, among other things, Quiksilver could use Reynolds' likeness in certain Promotional Materials, and Reynolds was required to market Quiksilver's products in exchange for financial compensation.

2. After the Petition Date, Quiksilver offered to amend the Sponsorship Agreement but informed Reynolds that Quiksilver would otherwise reject the Agreement. When the parties were unable to agree on an amendment, lawyers for Quiksilver and Reynolds negotiated the Termination Agreement. The Termination Agreement was the product of arms'-length negotiations that resulted in Quiksilver severely curtailing its post-termination rights under the Sponsorship Agreement in exchange for a mutual, general release of all claims. With a fully executed Termination Agreement in hand, Quiksilver rightfully believed that the Sponsorship Agreement would be terminated and any disputes with Reynolds would be fully and finally resolved.

3. Whether by design or mistake, Reynolds took a different approach. Just one week after signing the Termination Agreement, a different lawyer for Reynolds filed ten (10) different proofs of claim, including Reynolds' Claim. Despite having signed the Termination Agreement (which resolved all issues between the parties), Reynolds' Claim is based on the

---

[2] Capitalized terms not defined herein shall have the meanings ascribed in the Caya Declaration.

2

DOCS_DE:206711.1 72779/001

Sponsorship Agreement itself. Quiksilver understands that Reynolds intends to pursue Reynolds' Claim, thus necessitating the Objection.

4. The Court should authorize entry into the Termination Agreement, effective as of October 31, 2015, as a sound exercise of the Debtors' business judgment. The court should also prevent Reynolds from having a "second bite at the apple" by enforcing the Termination Agreement, sustaining the Objection, and disallowing Reynolds' Claim on the ground that Reynolds waived and released all claims against Quiksilver in the Termination Agreement.3

## JURISDICTION AND VENUE

5. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

6. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

3 The Debtors admittedly did not move for approval of the Termination Agreement under Bankruptcy Rule 9019 during the seven days between the date it was signed (November 11, 2015) and the date Reynolds' Claim was filed (November 18, 2015). Quiksilver brings the Motion now in the ordinary course of its claims resolution process; while post-confirmation debtors can generally enter into agreements of this type without court approval, the Reorganized Debtors bring the Motion to ratify entry into the Termination Agreement *nunc pro tunc* to October 31, 2015.

3

7.      The statutory bases for the relief requested herein are section 105(a), 363, 502(b), 1106(a), and 1107(a) of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"), Rules 3003, 3007, and 9019 of the Bankruptcy Rules, and Rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## GENERAL BACKGROUND

8.      On September 9, 2015 (the "Petition Date"), each of the Debtors filed a petition with the Bankruptcy Court under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases (the "Chapter 11 Cases") were consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015 (b) and Local Rule 1015-1.

9.      On January 29, 2016, this Court entered an order [Docket No. 740] confirming the *Third Amended Joint Chapter 11 Plan of Reorganization of Quiksilver, Inc. and its Affiliated Debtors and Debtors in Possession* (the "Plan"). On February 11, 2016, the Debtors successfully consummated the Plan and emerged from chapter 11 as the Reorganized Debtors.

## STATEMENT OF FACTS

A.  **The Parties Negotiate the Termination Agreement
    and it is Fully Executed On November 11, 2015**

10.     Quiksilver and Reynolds entered into the Sponsorship Agreement as of November 1, 2006. In 2011, the parties amended the Sponsorship Agreement to, among other things, extend the term through October 31, 2017. Caya Dec. ¶ 8, Exhibits D and E.

11.     Following the Petition Date, Quiksilver offered to amend the Sponsorship Agreement but told Reynolds' representative at Wasserman, Blair Marlin that, if an agreement could not be reached, the "next step would be to ask the court to 'reject' [Reynolds'] agreement."

4

After conferring with counsel, Mr. Marlin told Quiksilver that Reynolds rejected Quiksilver's offer, and the parties agreed to terminate the Sponsorship Agreement as of October 31, 2015. Caya Dec. ¶¶ 10-11, Exhibits F and G.

12. Lawyers for Quiksilver (Linnsey Caya and Francesca Koscielak) and Reynolds (Scott Lindley) then negotiated the Termination Agreement and settled any disputes between them. At least four iterations were exchanged, with Mr. Lindley providing substantive comments, including issues that he deemed "really important" to Reynolds. By November 11, 2015, Quiksilver and Reynolds had signed the Termination Agreement, effective as of October 31, 2015. Caya Dec. ¶¶ 12-15, Exhibits H through M.

B. **Settlement Details**[4]

13. The Termination Agreement confirmed the parties' mutual agreement to terminate the Sponsorship Agreement and to resolve all disputes between them. The key terms of the Termination Agreement are as follows:

    a. Quiksilver agreed to reduce the post-termination period where it could continue to exploit Reynolds' likeness in Promotional Materials (pursuant to section 11.3 of the Sponsorship Agreement) from twelve (12) months to six (6) months;

    b. Quiksilver further agreed that, notwithstanding the foregoing, it would use its "best efforts to remove substantially all Promotional Materials" in digital media that was controlled by Quiksilver within

---

[4] The terms of the settlement summarized in this Motion in no way alter, change, or amend the actual terms set forth in the Termination Agreement. In the event that there are any inconsistencies between this summary and the actual terms of the Termination Agreement, the language set forth in the Termination Agreement shall control.

three weeks of the Termination Date (*i.e.*, October 31, 2015), and "all other material" within three months; and

  c. The Parties exchanged unconditional and mutual general releases.

Caya Dec. ¶¶ 16, 22, Exhibit A.[5]

  14. Notably, the Termination Agreement contained an express and unconditional mutual release (the "Release") of "all claims, known and unknown, which it/he has or might otherwise have had against the other Party . . . arising prior to and including" October 31, 2015. In addition, because Quiksilver and Reynolds are each located in California, the Termination Agreement also included an express wavier of rights under section 1542 of the California Civil Code (the "Waiver"). Caya Dec. ¶ 16, Exhibit A.

### C. Reynolds' Claim is filed on November 18, 2015

  15. On November 18, 2015, one week after Reynolds signed the Termination Agreement, another lawyer, Joseph Eisenberg, filed proofs of claim on behalf of ten (10) individuals, including Reynolds. Reynolds' Claim was designated "Claim No. 616" and asserted an unsecured claim for approximately $3.6 million for amounts allegedly due under the Sponsorship Agreement. Caya Dec. ¶ 4, Exhibits B and C.

### ARGUMENT

  16. Lawyers for Quiksilver and Reynolds negotiated an agreement that addressed Reynolds' stated concerns and that contained, among other things, unconditional and mutual general releases. For the reasons set forth below, the Court should (A) grant the Motion and authorize entry into the Termination Agreement pursuant to Bankruptcy Rule 9019, effective

---

[5] A copy of the Termination Agreement is also attached to this Motion as Exhibit A.

as of October 31, 2015, and (B) enforce the Termination Agreement, sustain the Objection, and disallow Reynolds' Claim.

## I.
## THE MOTION SHOULD BE GRANTED

17. The Reorganized Debtors seek authority to enter into the Termination Agreement, effective as of October 31, 2015, the agreed-upon effective date. *See* Caya Dec. Exhibit A.

18. Bankruptcy Rule 9019 provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." *See In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996). In deciding whether to approve a settlement pursuant to Bankruptcy Rule 9019, the court should determine whether "the compromise is fair, reasonable, and in the interests of the estate." *In re Marvel Entertainment Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998). The court must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *In re Martin*, 91 F.3d at 393.

19. Moreover, settlements should be approved if they fall above the lowest point on the continuum of reasonableness. "[The] responsibility of the bankruptcy judge . . . is not to decide the numerous questions of law and fact raised by the appellants but rather to canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness." *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983); *In re Planned Protective Servs., Inc.*, 130 B.R. 94, 99 n.7 (Bankr. C.D. Cal. 1991); *see generally In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976) (court should not conduct a "mini-trial" on the merits of a proposed settlement). Thus, the question is not whether a better settlement might have been achieved or a better result reached if litigation pursued. Instead, the court should approve

settlements that meet a minimal threshold of reasonableness. *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994); *In re Tech. for Energy Corp.*, 56 B.R. 307, 311-312 (Bankr. E.D. Tenn. 1985); *In re Mobile Air Drilling Co., Inc.*, 53 B.R. 605, 608 (Bankr. N.D. Ohio 1985).

20. The Termination Agreement easily meets the applicable legal standard. Once Reynolds rejected Quiksilver's offer to amend the Sponsorship Agreement, Quiksilver had only two options: try to negotiate a settlement agreement on what it perceived to be favorable terms or reject the Sponsorship Agreement and potentially face litigation over Reynolds' rejection damage claim.

21. After weighing the costs and benefits of each option, Quiksilver determined that the entry into the Termination Agreement was in the best interests of Quiksilver and its estate. While Quiksilver would surrender certain rights, it also avoided potentially contentious and costly litigation concerning Reynolds' rejection damages, and any monetary claim by Reynolds. Caya Dec. ¶¶ 18-22.

22. The Termination Agreement was negotiated by the parties' attorneys, and the terms are reasonable. The Court should authorize entry into the Termination Agreement pursuant to Bankruptcy Rule 9019.

## II.
## THE OBJECTION SHOULD BE SUSTAINED

23. If the Motion is granted, the Court should also sustain the Objection and disallow and expunge Reynolds' Claim.

24. A creditor has a claim against a debtor's estate only to the extent such creditor has a "right to payment" for the asserted liability as of the Petition Date and such claim is otherwise allowable. 11 U.S.C. §§ 101(5), 101(10), and 502(a).

25. Section 502 of the Bankruptcy Code, and other applicable non-bankruptcy law set forth below, provide the bases for the relief sought in this Blehm Objection. Section 502(b) states in relevant part that:

> [T]he court, after notice and a hearing, shall determine the amount of [a] claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that –
>
> (1) such claim is unenforceable against the debtor or property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured . . . .

U.S.C. § 502(b).

26. Reynolds' Claim must be disallowed because Reynolds waived any and all claims against these estates when he executed the Termination Agreement.

27. Under Delaware law, "[waiver] is the voluntary and intentional relinquishment of a known right. It implies knowledge of all material facts and an intent to waive, together with a willingness to refrain from enforcing those contractual rights. The facts relied upon to prove waiver must be unequivocal." *AeroGlobal Capital Management, LLC v. Cirrus Indus.*, 871 A.2d 428, 444 (Del. 2005) (internal footnotes and citations omitted). The standard under California law is the same. Waiver is "the intentional relinquishment of a known right after knowledge of the facts." *In re Geisenheimer*, 530 B.R. 747, 750 (Bankr. E.D.Ca. 2015) *citing Roesch v. De Mota*, 24 Cal. 2d 563, 572 (1944) "The pivotal issue in a claim of waiver is the intention of the party who allegedly relinquished the known legal right." *Id. citing DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Café & Takeout III, Ltd.*, 30 Cal.App.4th 54, 60 (1994). The party asserting waiver must make a "clear showing" that the party against whom waiver is asserted intended to give up that right. *Id. citing Pacific Valley Bank v. Schwenke*, 189 Cal.App.3d 135, 145 (1987).

28. The criteria for waiver are met here. The Termination Agreement contained the Release and the Waiver. By executing the Termination Agreement, Reynolds knowingly, intentionally, voluntarily, and with the advice of counsel, relinquished any and all claims against Quiksilver, including any rights under the Sponsorship Agreement.

29. Accordingly, the Court should hold Reynolds to the deal he bargained for, as reflected in the Termination Agreement, and sustain the Objection, on the basis of the Termination Agreement, and the Release and Waiver.

## NO PRIOR REQUEST

30. No prior motion for the relief requested herein has been made to this or any other Court.

## NOTICE

31. The Reorganized Debtors have served this Motion and Objection on: (a) the Office of the United States Trustee; (b) Scott Lindley, Wasserman Media Group, LLC, 2251 Faraday Avenue, Suite 200, Carlsbad, California 92008; (c) Joseph A. Eisenberg P.C., Jeffer Mangels Butler & Mitchell LLP, 1900 Avenue of the Stars, 7th Floor, Los Angeles, California 90067; and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Reorganized Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

DOCS_DE:206711.1 72779/001

## CONCLUSION

WHEREFORE, the Reorganized Debtors respectfully request that this court enter the attached Order granting the Motion, sustaining the Objection, disallowing Reynolds' Claim, and granting such other and further relief as the Court deems just and equitable.

Dated: April 26, 2016

PACHULSKI STANG ZIEHL & JONES LLP

_/s/ Laura Davis Jones_

Laura Davis Jones (DE Bar No. 2436)
Michael R. Seidl (DE Bar No. 3889)
John A. Morris (admitted *pro hac vice*)
Colin R. Robinson (DE Bar No. 5524)
919 North Market Street, 17th Floor
Wilmington, DE 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@pszjlaw.com
       mseidl@pszjlaw.com
       jmorris@pszjlaw.com
       crobinson@pszjlaw.com

*Co-Counsel for the Reorganized Debtors*

DOCS_DE:206711.1 72779/001