# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - x

In re:

QUIKSILVER, INC., *et al.*,

                       Debtors.[1]

- - - - - - - - - - - - - - - - - - - - - - - - - x

Chapter 11

Case No. 15-11880 (BLS)

Jointly Administered

### DECLARATION OF LINNSEY CAYA IN SUPPORT OF REORGANIZED DEBTORS' (A) MOTION FOR AN ORDER AUTHORIZING THE ENTRY INTO TERMINATION AGREEMENT WITH DANE REYNOLDS PURSUANT TO BANKRUPTCY RULE 9019, AND (B) OBJECTION TO CLAIM NO. 616

I, Linnsey Caya, hereby declare under penalty of perjury that the following is true to the best of my knowledge, information and belief:

1.     I am the General Counsel of Quiksilver, Inc., and its affiliated debtor entities (collectively, the "Reorganized Debtors" and before the date of the Plan (as defined below), the "Debtors"), and I submit this Declaration in support of the *Reorganized Debtors' (A) Motion for an Order Authorizing the Entry Into Termination Agreement with Dane Reynolds Pursuant to Bankruptcy Rule 9019, and (B) Objection to Claim No. 616* (the "Motion"). Unless noted otherwise, I have personal knowledge of the facts set forth herein and could, and would, testify to these facts if called as a witness at trial.

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

A.    **SUMMARY OF FACTS AND REQUESTED RELIEF**

2.    Dane Reynolds ("Reynolds") is an athlete. In 2006, Quiksilver and Reynolds entered into a marketing agreement known as a "Quiksilver Sponsorship Agreement" (the "Sponsorship Agreement"). After filing for bankruptcy, Quiksilver and Reynolds, through his representatives at Wasserman Media Group, LLC ("Wasserman"), attempted to negotiate an amendment to the Sponsorship Agreement. When those efforts failed, Quiksilver and Scott Lindley ("Lindley"), a lawyer at Wasserman who represented Reynolds, negotiated an agreement terminating the Sponsorship Agreement (the "Termination Agreement"). Exhibit A.

3.    As set forth in detail below, the Termination Agreement was the product of arms' length negotiations. Mr. Lindley was Reynolds' legal counsel and in that capacity he made demands, offered comments, and provided at least two black-lined versions of the Termination Agreement to Quiksilver. The Termination Agreement was fully executed on November 11, 2015, and included mutual, unconditional general releases.

4.    Nevertheless, on November 18, 2015, another lawyer, Joseph A. Eisenberg, filed proofs of claim on behalf of ten (10) different individuals, including Reynolds. Exhibit B. The proof of claim filed on Reynolds' behalf ("Reynolds' Claim") was assigned Claim No. 616, and asserted a general unsecured claim in the approximate amount of $3.6 million for amounts allegedly due under the Sponsorship Agreement. Exhibit C.

5.    Upon information and belief, neither Reynolds nor Lindley nor Wasserman informed Mr. Eisenberg that Quiksilver and Reynolds had executed the Termination Agreement before Mr. Eisenberg filed the Reynolds Claim. Regrettably, Quiksilver recently learned that Reynolds will not stand by the Termination Agreement and will not withdraw the Reynolds Claim, thereby necessitating this Motion.

6.      As set forth below, the Termination Agreement was negotiated in good faith and the entry into that Agreement is a proper exercise of the Debtors' business judgment. Reynolds should not be permitted a "second bite at the apple" and should be held to the deal that his lawyer negotiated, and that he voluntarily signed, before Reynolds' claim was filed.

7.      The Reorganized Debtors therefore seek an order (a) authorizing them to enter into the Termination Agreement, and (b) sustaining their Objection to Reynolds' Claim on the ground that the Termination Agreement resolved any claim Reynolds may have had against the Debtors.

## B.      THE PARTIES' LAWYERS NEGOTIATE THE TERMINATION AGREEMENT

8.      Quiksilver Americas, Inc. and Reynolds entered into the Sponsorship Agreement as of November 1, 2006.[2] In general terms, the Sponsorship Agreement required Reynolds to promote the Quiksilver brand in exchange for financial remuneration. Exhibit D. The Sponsorship Agreement was amended on April 7, 2011 to, among other things, extend the term through October 31, 2017. Exhibit E.

9.      On September 9, 2015 (the "Petition Date"), each of the Debtors filed a petition with the Bankruptcy Court under chapter 11 of the Bankruptcy Code.[3]

10.      On September 21, 2015, Miky Picon, a member of Quiksilver's marketing staff, wrote to Blair Marlin, Vice President, Action Sports & Olympics, at Wasserman, and, among other things, reiterated Quiksilver's prior offer to amend the Sponsorship Agreement with Reynolds. Mr. Picon noted that the offer would remain open until November 1, 2015, but that if

---

[2]      Quiksilver Americas, Inc. was a California subsidiary of Quiksilver, Inc. that was merged into debtor QS Wholesale, Inc. in 2012. On March 1, 2012, Quiksilver Americas, Inc. assigned the Sponsorship Agreement to QS Wholesale, Inc. in connection with the merger.

[3]      On January 29, 2016, this Court confirmed the *Third Amended Joint Plan of Reorganization of Quiksilver, Inc., and Its Affiliated Debtors and Debtors in Possession* (the "Plan"). On February 11, 2016, the Debtors successfully consummated the Plan and emerged from chapter 11 as the Reorganized Debtors.

it was not accepted, the "next step would be to ask the court to 'reject' [Reynolds'] agreement."

In response, Mr. Marlin said he would speak with Reynolds "as well as speak to our lawyer Scott

and be back in touch with you shortly." Exhibit F.

    11.    On or about October 29, 2015, Mr. Marlin informed Quiksilver that

Reynolds rejected Quiksilver's offer. The parties then agreed to terminate the Sponsorship

Agreement effective October 31, 2015, although Mr. Marlin again said he needed to "sit with our

lawyer" to address questions he had about the termination. Exhibit G.

    12.    On November 5, 2015, Francesca Koscielak, an in-house attorney at

Quiksilver who works under my direction, sent a draft termination agreement to Scott Lindley,

an in-house lawyer at Wasserman; this exchange marked the beginning of the negotiation of the

termination agreement, a negotiation that was handled exclusively by lawyers for Quiksilver

(Ms. Koscielak and me) and Reynolds (Mr. Lindley). In response, Mr. Lindley noted, among

other things, that "[o]ur only issue is that we need to remove the non-disparagement provision."

Mr. Lindley sent a black-lined copy of the draft termination agreement to Ms. Koscielak and me

the next day with proposed modifications. Exhibit H.

    13.    We responded the next business day (November 9, 2015) and sent Mr.

Lindley another black-lined draft termination agreement that (a) accepted Mr. Lindley's

requested changes, and (b) extended to one month the proposed deadline by which Quiksilver

was to remove certain Internet content that contain Reynolds' likeness. Exhibit I.

    14.    Mr. Lindley then sent another black-lined version of the agreement to Ms.

Koscielak and me, emphasizing that "[i]t is really important to [Reynolds] to have the Internet

content removed ASAP so I have moved that reference back to 2 weeks, rather than 1 month. I

also did some word-smith edits to the libel/slander provision." Exhibit J. We subsequently agreed to split the difference by agreeing to three weeks. Exhibit K.

15.     After we sent Mr. Lindley a clean copy of the Termination Agreement for execution, he asked for "confirmation that this last expense reimbursement from [Reynolds] is in process and scheduled for payment." After we provided the confirmation that Mr. Lindley sought, he sent Blair Marlin, Ms. Koscielak and me a copy of the Termination Agreement signed by Reynolds. Exhibit L. We returned a fully executed copy to Mr. Lindley later that day. Exhibit M.

16.     Notably, the Termination Agreement contains an express and unconditional mutual release (the "Release") of "all claims, known and unknown, which it/he has or might otherwise have had against the other Party . . . arising prior to and including" October 31, 2015. In addition, because Quiksilver and Reynolds are each located in California, the Termination Agreement also includes an express wavier of rights under section 1542 of the California Civil Code (the "Waiver"). Exhibit A.

17.     The foregoing facts show that (a) Quiksilver offered to amend the Sponsorship Agreement, with the understanding that Quiksilver would otherwise "ask the court to `reject'" that Agreement, (b) Reynolds declined Quiksilver's offer, (c) the parties' lawyers then negotiated the Termination Agreement, (d) as part of that process, Reynolds' lawyer, Mr. Lindley, made several substantive requests, and provided at least two black-lined versions of the Agreement, (e) the parties negotiated in good faith and reached certain compromises that ultimately led them to sign the Termination Agreement (which contains the Release and the Waiver), and (f) Reynolds' Claim was filed after all of the foregoing facts occurred.

C.    **ENTRY INTO THE TERMINATION AGREEMENT IS A SOUND EXERCISE OF THE REORGANIZED DEBTORS' BUSINESS JUDGMENT**

18.    After the Petition Date, the Debtors carefully considered their options with respect to the Sponsorship Agreement and other similar marketing agreements.

19.    Ideally, the Reorganized Debtors wanted to lock Reynolds up for a long-term package; with that in mind, Quiksilver made an offer to Reynolds that it believed was "strong for the market," explaining to Mr. Marlin that "[w]e all love Dane we want Dane to stay, everyone want to work with him so hopefully we will continue." Exhibit F. Regrettably, Reynolds rejected the offer. Exhibit G.

20.    Quiksilver was then left with two choices: either move to reject the Sponsorship Agreement, or try to consensually terminate that Agreement. Quiksilver decided that, on balance, entering into the Termination Agreement was the better option for the Debtors.

21.    As set forth above, the Termination Agreement was the product of arms' length negotiations. In essence, Quiksilver substantially curtailed its post-termination rights under the Sponsorship Agreement in exchange for a general release. Thus, while Quiksilver agreed to limit its contractual right to continue to exploit Reynolds' image, it also avoided what could have been costly and time-consuming litigation.

22.    In particular, if Quiksilver and Reynolds had been unable to reach an agreement on the termination of the Sponsorship Agreement, Quiksilver would have been forced to reject the executory contract and engage in litigation over Reynolds' rejection damage claim. Instead, Reynolds waived any monetary claim in exchange for Quiksilver's agreement to use its "best efforts" to cease using Promotion Materials bearing his likeness in the truncated time periods set forth in the Termination Agreement (at Reynolds' request, Quiksilver also deviated from its standard practice by replacing its customary "non-disparagement" clause to an

agreement whereby the parties would not knowingly or intentionally libel or slander one

another).  Exhibit H.

**D.     REYNOLDS' CLAIM SHOULD BE DISALLOWED AND EXPUNGED**

23.     Reynolds' Claim should be disallowed and expunged on the ground that

Quiksilver and Reynolds entered into the Termination Agreement and fully and finally resolved

their disputes before Reynolds' Claim was filed.

24.     As set forth above, the Termination Agreement was negotiated by

experienced counsel, executed before Reynolds' Claim was filed, and contains the Release and

Waiver that expressly bar the assertion of any "claims" arising prior to October 31, 2015.  Since

Reynolds' Claim is based on the Sponsorship Agreement, as amended, and exclusively on facts

occurring prior to October 31, 2015, Reynolds' Claim is barred by the Termination Agreement.

Reynolds' Claim should therefore be disallowed and expunged.

1.     Quiksilver Complied With The Termination Agreement

25.     Notably, Quiksilver has already complied with the substantive terms of the

Termination Agreement.

26.     Section 11.3 of the Sponsorship Agreement, as amended, granted to

Quiksilver the right to use Promotional Materials (as defined therein) in certain circumstances

for a period of twelve (12) months following termination.  *See* Exhibit D § 11.3.  The

Termination Agreement, however, reduced substantially the time periods set forth in Section

11.3, including concessions made by Quiksilver in response to Mr. Lindley's specific requests.

*See* Exhibits H, I, J and K.

27.     Since the Termination Date (as defined), Quiksilver has, among other

things, eschewed to its detriment the rights it had under the Sponsorship Agreement, ceased

exploiting the Promotional Materials, and otherwise complied with the terms of the Termination Agreement.

28. It would be grossly inequitable to allow the Reynolds' Claim when Quiksilver detrimentally relied on the Termination Agreement.

2. Reynolds was Ably Represented

29. Any assertion by Reynolds that he was not properly advised, or that he did not understand the terms or implications of the Termination Agreement, would be untenable. Consistent with our experience, Wasserman and Messrs. Marlin and Lindley provided Reynolds with experienced and able representation and counsel.

30. According to his Linked-In profile, Mr. Lindley graduated from Northwestern University School of Law in 2003, and has spent his entire career providing legal services, including six-years as a corporate associate at Sheppard Mullin Richter & Hampton LLP, and a short stint as Legal Counsel for Red Bull.

31. Since January 2011, Mr. Lindley has served as Vice President, Legal Affairs (Action Sport and Olympics) at Wasserman.

32. Wasserman is a sports marketing and talent management company based in Los Angeles. According to its website, Wasserman is a "full-service, culture-centric agency built to serve the best talent, brands and properties in the world" and that specifically provides legal services to its clients. Wasserman and Mr. Lindley lived up to their billing and ably represented Reynolds in negotiating the Termination Agreement.

33. And this came as no surprise. Many of Quiksilver's athletes are represented by Wasserman, and Mr. Lindley has worked with our group frequently and is known within Quiksilver as one of Wasserman's in-house counsel.

34.     In light of (a) the good-faith nature of the negotiations; (b) the able representation provided to Reynolds by Wasserman, Mr. Marlin, and Mr. Lindley; (c) the express terms of the Termination Agreement, including the Waiver and the Release, and (d) Quiksilver's detrimental reliance on the Termination Agreement, the Court should sustain Quiksilver's objection to Reynolds' Claim, and Reynolds' Claim should be disallowed and expunged.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  April 26, 2016
      Los Angeles, California

By:    /s/ Linnsey Caya
Name: Linnsey Caya
Title:  General Counsel

**EXHIBIT A**



November 5, 2015

*VIA E-MAIL*

Dane Reynolds
c/o Wasserman Media Group, LLC
2251 Faraday Avenue, Suite 200
Carlsbad, California 92008

Re:    Termination of Quiksilver Sponsorship Agreement

Dear Dane:

Reference is made to that certain Quiksilver Sponsorship Agreement by and between you, Dane
Reynolds ("Athlete"), and QS Wholesale, Inc. ("Sponsor") dated November 1, 2006, as amended
(the "Agreement"). Athlete and Sponsor may hereinafter be referred to together as the "Parties"
and individually as a "Party." This correspondence shall serve as confirmation of the Parties'
mutual agreement to terminate the Agreement effective as of October 31, 2015 (the "Termination
Date"). Capitalized terms not defined herein shall have the meaning ascribed to them in the
Agreement.

As of the Termination Date, and except as set forth herein, neither Party shall have any rights or
obligations to the other Party with respect to the Agreement. The Parties acknowledge and agree
no further payments or other consideration is owed or will become due to Athlete in connection
with the Agreement.

Sponsor hereby agrees that references to twelve (12) months under Section 11.3 of the Agreement
shall be revised to six (6) months from the Termination Date. Notwithstanding the foregoing,
Sponsor will use best efforts to remove substantially all Promotional Materials that feature
Athlete in the form of digital media content that is controlled by Sponsor (i.e. website profiles
and other content displayed via the Internet) within three weeks of the Termination Date, and all
other materials within three (3) months of the Termination Date. For the avoidance of doubt, this
will not require Sponsor to remove past posts on Sponsor's social media pages which may
include Athlete. The Parties acknowledge and agree that nothing herein shall be construed as in
any way limiting or diminishing Sponsor's other rights upon termination as set forth in Section
11.4 of the Agreement and such other provisions which survive termination.

For good and valuable consideration, the receipt and sufficiency of which are hereby
acknowledged, each Party agrees, on behalf of itself/himself, its/his heirs, executors and
administrators, successors and assigns, to waive and release all claims, known and unknown,
which it/he has or might otherwise have had against the other Party, its parent, affiliates and their
respective officers, directors, agents, employees, stockholders, insurers, attorneys and successors
arising prior to and including the Termination Date, including without limitation, all claims
relating in any way to any aspect of any federal, state or local law, regulation or ordinance or
public policy, contract, tort or property law, theory or any other cause of action whatsoever that
arose on or before the Termination Date.

In giving the above releases, which include claims which may be unknown to the Parties at
present, each Party acknowledges that it/he has read and understands Section 1542 of the
California Civil Code which reads as follows:

Quiksilver, Inc.
5600 Argosy Circle, Bldg. 100
Huntington Beach, CA 92649

"A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

Each Party hereby expressly waives and relinquishes all rights and benefits under that section and any law of any jurisdiction of similar effect with respect to its/his release of any unknown or unsuspected claims it/he may have against the other Party.

Each Party agrees that it shall not knowingly and/or intentionally slander or libel the other Party. For sake of clarity and avoidance of doubt, any disclosure of true or factual information, statements or accounts of events shall not breach this provision or the Agreement.

Please acknowledge your agreement to the terms of this letter by signing below and returning to the undersigned.

Sincerely,

**QS WHOLESALE, INC.**

By: _____

Name:
Title: AGNES – CEO

Acknowledged and agreed to this 10TH day of November , 2015

**ATHLETE**

By: _____
   DANE REYNOLDS

**EXHIBIT B**



Joseph A. Eisenberg P.C.
Direct: (310) 785-5375
Fax: (310) 785-5357
jae@jmbm.com

1900 Avenue of the Stars, 7th Floor
Los Angeles, California 90067-4308
(310) 203-8080  (310) 203-0567 Fax
www.jmbm.com

November 18, 2015

VIA MESSENGER

Quiksilver, Inc. Claims Processing Center
c/o KCC
2335 Alaska Avenue
El Segundo, CA 90245

  Re: Quiksilver, Inc., et al.; Case No. 15-11880 – Jointly Administered

Dear Sir or Madame:

  In connection with the above-referenced bankruptcy case, attached are the following Proofs of Claim:

1. In re:  DC Shoes, Inc.; Case No. 15-11883-BLS
 Proof of Claim  -  Claimant:  Nate Adams

2. In re:  DC Shoes, Inc.; Case No. 15-11883-BLS
 Proof of Claim  -  Claimant:  Iikka Backstrom

3. In re:  DC Shoes, Inc.; Case No. 15-11883-BLS
 Proof of Claim  -  Claimant:  Ken Block

4. In re:  DC Shoes, Inc.; Case No. 15-11883-BLS
 Proof of Claim  -  Claimant:  Travis Pastrana

5. In re:  QS Wholesale, Inc.; Case No. 15-11881-BLS
 Proof of Claim  -  Claimant:  Craig Anderson

6. In re:  QS Wholesale, Inc.; Case No. 15-11881-BLS
 Proof of Claim  -  Claimant:  Dara Howell

7. In re:  QS Wholesale, Inc.; Case No. 15-11881-BLS
 Proof of Claim  -  Claimant:  Kelia Moniz

Quiksilver, Inc. Claims Processing Center
c/o KCC
November 18, 2015
Page 2

8.    In re: Quiksilver, Inc.; Case No. 15-11880-BLS
      Proof of Claim  -  Claimant:  Torah Bright

9.    In re: Quiksilver, Inc.; Case No. 15-11880-BLS
      Proof of Claim  -  Claimant:  Dane Reynolds

10.   In re: Quiksilver, Inc.; Case No. 15-11880-BLS
      Proof of Claim  -  Claimant:  Travis Rice

      I have attached an extra copy of the original Proof of Claim, along with a self-addressed,
stamped envelope for the return of our conformed copy.

                        Very truly yours,

                        JOSEPH A. EISENBERG P.C. for
                        Jeffer Mangels Butler & Mitchell LLP

JAE:bt
Enclosures

JMBM  Jeffer Mangels
      Butler & Mitchell LLP
      jmbm.com

**EXHIBIT C**

Claim #616  Date Filed: 11/18/2015

ORIGINAL

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

```
------------------------------------------x    CHAPTER 11
In re:                                   :
                                         :     Case No. 15-11880-BLS
Quiksilver, Inc.,                        :
                                         :     Jointly Administered
                    Debtor.              :
------------------------------------------x
```

**PROOF OF CLAIM**

1.   <u>Name and Address of Claimant</u>:

Dane Reynolds

c/o Wasserman Media Group
2251 Faraday Avenue
Suite 200
Carlsbad, CA 92008

RECEIVED

NOV 18 2015

KURTZMAN CARSON CONSULTANTS

2.   <u>Amount of Claim</u>:

$3,599,381.75.

3.   <u>Basis of Claim</u>:

    Claimant is a party to a Quiksilver Sponsorship Agreement, as amended (the "<u>Agreement</u>"), with Quiksilver America's, Inc. [a copy of which Agreement will be made available to any party in interest entitled thereto upon written request addressed to counsel for Claimant at the address indicated in Paragraph 5 hereof], pursuant to which;

    A.    For each year from April 1, 2011 through and including October 31, 2017, Claimant is to receive Base Compensation in the amount of $291,666.67 per month. As of the Petition Date, Claimant had failed to receive the sum of $369,444.45, and thereafter Claimant failed to receive Base Compensation of $21,603.93 of such minimum guaranteed compensation. Accordingly, Claimant is entitled to Base Compensation due and to become due Claimant in the aggregate sum of $3,599,381.75.

    B.    Claimant is entitled to receive Incentive Compensation in amounts not presently determinable. This Proof of Claim will be amended to include such amounts as and when determinable.

    C.    Claimant is entitled to receive Royalty Compensation equal to three per cent (3%) of Net Sales of products by Debtor and its affiliates bearing the name or likeness of Claimant. The amount of such Royalty Compensation is not presently determinable, and this Proof of Claim will be amended to include such amounts as and when determined.

☒ Date Stamped Copy Returned
☐ No self addressed stamped envelope
☐ No copy to return



1511880151118000000000050

4.    <u>This Claim is a general unsecured claim.</u>

5.    All correspondence, pleadings and other materials appertaining to this Proof of Claim and the Claims asserted herein and hereby should also be addressed to:

Joseph A. Eisenberg P.C.
Jeffer Mangels Butler & Mitchell LLP
1900 Avenue of the Stars
7th Floor
Los Angeles, CA 90067

6.    All rights in respect of this Claim, however arising, including the right to amend, supplement and otherwise revise this Proof of Claim are expressly reserved.

DATED:  November 16, 2015          JEFFER MANGELS BUTLER & MITCHELL LLP
                                   JOSEPH A. EISENBERG P.C.


                                   By:  <u>/s/ Joseph A. Eisenberg</u>
                                        JOSEPH A. EISENBERG P.C.
                                        Attorneys for Claimant


RECEIVED

NOV 1 8 2015

KURTZMAN CARSON CONSULTANTS

**EXHIBIT D**



**QUIKSILVER SPONSORSHIP AGREEMENT**

ORIGINAL

**SPONSORSHIP DETAILS**

| | |
|---|---|
| **Sponsor** | Quiksilver Americas, Inc. |
| **Athlete** | Dane Reynolds |
| **Athlete's Address** | Dane Reynolds, Inc.<br>1545 Faraday Ave, suite 101, Carlsbad, CA, 92008<br><br>Phone No. +1 760 602 6200 · Fax No. 1 760 602 9800 |
| **Start Date** | 1 November 2006 |
| **End Date** | 31 October 2011 |
| **Remuneration Package** | See next page |
| **Minimum Commitment** | In each year of sponsorship the Athlete will:<br><br>1. participate in reviews with Team Managers to identify goals and evaluate achievements at a meeting arranged by Team Managers with at least two weeks prior notice to Athlete;<br><br>2. undertake at least one promotional activity at each Competition in which the Athlete participates;<br><br>3. attend at least one product photo shoot;<br><br>4. attend at least two editorial photo shoots;<br><br>5. always ensure the exposure of the Quiksilver brand, particularly on the Media Podium, by holding a surfboard, snowboard or other hardware with the logo prominently displayed, by wearing a cap or by wearing clothing marked with the brand; and<br><br>6. promptly report any injury that could affect performance to Team Managers and be guided in respect of rehabilitation. |
| **Minimum Annual Promotional Days** | 20 |
| **Products** | The following products manufactured by or for a Licensee, Sponsor or Quiksilver, Inc., or distributed or sold by a Licensee, Sponsor or Quiksilver, Inc. on or in relation to which the Trade Marks are used: apparel, hats, eyewear, watches, bags and wetsuits. |
| **Other Permitted Sponsorships** | Channel Islands for surfboards; Boost Mobile for phones; DC for shoes; OAM for traction and leashes; Ventura Surf Shop for core surf shops; Monster Energy Drinks for energy drinks (but only until the initial expiration of Athlete's anticipated one-year endorsement agreement with Monster) |
| **Sponsorship Terms & Conditions** (insert date) | The Agreement between the parties to which these Sponsorship Details apply and form part of also incorporates the Sponsorship Terms and Conditions signed by the parties on or around the same date as these Sponsorship Details. |
| **Special Conditions** | Athlete will not place any other word, logo, device or advertisement on the top or bottom of the Surfboard closer to the nose than the Quiksilver logo. The Quiksilver logo will be in the most prominent location on the surfboard (nose), and no other logo shall be placed on the top half of the Surfboard. For example, if Athlete's surfboard is six feet long, no other logo, word, device or advertisement will be placed on the top three feet of such surfboard. |

**REMUNERATION PACKAGE (* SEE NOTES)**

| Fiscal Year (from 11/1 through 10/31) | Base Remuneration ** | Performance Rating Component** | Potential Total (A) + (B) | Incentive Payments | | | | | Potential Total Remuneration Package |
|---|---|---|---|---|---|---|---|---|---|
| | | | | WCT World Champion Bonus | Annual USA Surfer Poll #1 | Special Promo's x 10 | Special Territory Assists x6 | Potential Total Incentive Payments | |
| | (A) | (B) | (A) + (B) | (C) | (D) | (E) | (F) | (C) to (F) | (A) to (F) |
| 2007 | 325,000 | 30,000 | 355,000 | 150,000 | 70,000 | 30,000 | 30,000 | 280,000 | 645,000 |
| 2008 | 500,000 | 50,000 | 550,000 | 150,000 | 70,000 | 30,000 | 30,000 | 280,000 | 780,000 |
| 2009 | 600,000 | 75,000 | 675,000 | 150,000 | 70,000 | 30,000 | 30,000 | 280,000 | 955,000 |
| 2010 | 700,000 | 125,000 | 825,000 | 150,000 | 70,000 | 30,000 | 30,000 | 280,000 | 1,105,000 |
| 2011 | 800,000 | 200,000 | 1,000,000 | 150,000 | 70,000 | 30,000 | 30,000 | 280,000 | 1,280,000 |
| | | | | | | | | | 4,765,000 |

** If Athlete becomes the World Champion of the WCT Tour in any fiscal year during the Term, his Base Renumeration will increase based on the following:

If Athlete becomes the WCT World Champion by January 1, 2008, his Base Renumeration for the 2008 fiscal year will increase from $500,000 to $800,000. In such event, Athlete will not be eligible to receive any Performance Rating Component.

If Athlete becomes the WCT World Champion by January 1, 2009, his Base Renumeration for the 2009 fiscal year will increase from $600,000 to $900,000. In such event, Athlete will not be eligible to receive any Performance Rating Component.

If Athlete becomes the WCT World Champion by January 1, 2010, his Base Renumeration for the 2010 fiscal year will increase from $700,000 to $1,000,000.

If Athlete becomes the WCT World Champion by January 1, 2011, his Base Renumeration for the 2011 fiscal year will increase from $800,000 to $1,000,000.

Notwithstanding the foregoing, in the event Athlete becomes the WCT World Champion in any year during the Term and his Base Renumeration increases as set forth above, he must maintain a top 10 year end ranking (by the WCT) in each of the following fiscal years during the Term. If Athlete fails to maintain such ranking, his Base Renumeration will revert back to the original amounts (set forth in the table above) for the applicable fiscal year.

Athlete must verbally recognize the Quiksilver Brand on podium, during interviews, movies, radio & TV and any other appearances.

In Addition, athlete will be entitled to receive:

1. One time sign-on bonus of $100,000 payable May 1, 2006 if this Agreement is signed before April 30, 2006 (notwithstanding that the term of this Agreement commences November 1, 2006); and

2. On or about December 2006, Quiksilver will grant Athlete 10,000 Quiksilver, Inc. stock options to purchase Quiksilver, Inc. common stock based on the fair market price of such common stock on the actual date of grant by the Quiksilver Board of Directors. Such stock option grant will vest over a three (3) year period and be subject to the terms and conditions of the Quiksilver 2000 Stock Incentive Plan.

**\* NOTES**

A.   **Base Remuneration:** In each Year, the Base Remuneration for that Year will be paid by 12 equal payments in respect of each month and payment will be made on or before the seventh day of the following month.

B.   **Performance Rating Component:** the Performance Rating Component will be paid to Athlete within 30 days following the end of the Year to which the payment relates, provided Athlete achieves an average score of not less than 11 out of 20 across all four Quarterly Quiksilver Pro Staff reviews concluded during that Year.

C-F   **Incentive Payments:** the Incentive Payments will be paid to Athlete within 30 days following the end of the Year in which Athlete's entitlement to an Incentive Payment arose, as follows:

C.   **WCT World Champ Bonus:** payable if Athlete is WCT World Champion in that Year.

D.   **Annual USA Surfer Poll #1:** payable if Athlete is ranked first in the annual USA Surfer magazine poll in that Year.

E.   **Special Promotions:** payable if Athlete participates in 10 or more special Promotional Activities as requested by Quiksilver in that Year. If Athlete participates in less then 10 special Promotional Activities in any Year the Incentive Payment (if any) for that Year will be calculated on a pro-rata basis.

F.   **Special Territory Assist:** payable if Athlete attends and participates as a special guest at 6 or more marketing or promotional initiatives specifically designed to address a special or unusual need in a Quiksilver Licensee Territory, above and beyond the scope of normal Promotional Activities, as reasonably requested by Quiksilver. If Athlete attends and participates in less then 6 "Special Assist Territory" in any Year the Incentive Payment (if any) for that Year will be calculated on a pro-rata basis.

Athlete hereby authorizes and agrees that Sponsor shall pay any compensation payable under this Agreement to Dane Reynolds, Inc.

**DATED:**

**EXECUTED** as an agreement:

By **QUIKSILVER AMERICAS, INC.** before me:

Name: ........................................................

Title:

**SIGNED** by **THE ATHLETE** before me:

............................................................

Signature of Athlete

............................................................

Signature of Parent/Guardian
(If Athlete is under 18)

**SIGNED** by **DANE REYNOLDS**, Inc. before me:

............................................................

Name:

Title:



**QUIKSILVER SPONSORSHIP AGREEMENT**

**SPONSORSHIP TERMS & CONDITIONS**

The Sponsor is a wholly owned subsidiary of Quiksilver, Inc., which is well known internationally as a designer and licensor of a large and highly regarded range of products, including sport related clothing and associated accessories using its trade marks.

The Sponsor provides promotional services and support to Quiksilver and is authorised to enter into sponsorship agreements with sporting identities to promote Quiksilver, its trade marks and its Licensees' products.

The Athlete is a well known sports person and has agreed to promote Quiksilver, its trade marks and its Licensee's products by undertaking certain activities and by allowing the Athlete's person, likeness, name, voice, picture and sports performance to be advertised and promoted in connection with Quiksilver and its Licensees' Products.

**1.    DEFINITIONS AND INTERPRETATION**

1.1    **Definitions:** Unless otherwise stated in this Agreement, the terms set out in the Sponsorship Details have the meanings given to them there and the following terms have the following meanings:

| | |
|---|---|
| **Affiliate** | in relation to Quiksilver, any person that controls, is controlled by or is under common control with Quiksilver. For the purpose of this definition "control" in relation to a person means direct control of the management of policies of that person. |
| **Agreement** | the agreement between the Athlete and the Sponsor comprising these Sponsorship Terms and Conditions and the Sponsorship Details. The Sponsorship Details override these Terms & Conditions to the extent of any inconsistency. |
| **Competition** | any competition or event in which the Athlete is able or required to compete. |
| **Direct Competitor** | any person, company, firm or business in any way directly or indirectly engaged in the business of making, marketing, selling or distributing clothing, equipment or accessories for, or marketed as being associated with, any board riding sport including but not limited to surfing, skiing, snowboarding, windsurfing and skateboarding. |
| **GST** | a tax on the supply of anything, a goods and services tax or a value added tax. |
| **Intellectual Property** | any industrial and intellectual property, including but not limited to any patents, copyright, rights in circuit layouts, registered and unregistered designs, registered and unregistered trade marks, know how, the right to have confidential information kept confidential, and any application or right to apply for registration of any of the foregoing. |
| **Licensee** | a person licensed by Quiksilver, Inc. or an Affiliate to manufacture, have manufactured, distribute and sell products bearing the Trade Marks and for the purpose of this Agreement also includes Affiliates. |
| **Merchandise** | any Product, film, or videotape, program or other recording made during the Term and which incorporates the name, likeness, photograph, endorsement or signature of the Athlete or which |

|  | otherwise incorporates any reference to or association with the Athlete or the Athlete's person, likeness, name, voice, picture or sports performance. |
|---|---|
| **Minimum Commitment** | the standard minimum commitment required of each Quiksilver Sponsored Athlete as set out in the Sponsorship Details. |
| **Promotional Activities** | photographic, film and video sessions as nominated by the Sponsor and promotional activities including, but not restricted to, board riding with accounts, shop visits, surfing/product clinics, "In-Store" promotions and generally liaising with photographers and other athletes and models sponsored by the Sponsor, Quiksilver or Licensees. |
| **Promotional Material** | all advertising material, posters, television, radio and cinema commercials, point of sale promotions and material, press and magazine advertisements, outdoor advertising signs, bill boards, packaging, labels and hang tags, swing tags and other attachments for products. |
| **Services** | the Minimum Commitment and the other services to be performed by the Athlete as set out in **clause 3.1.** |
| **Sponsorship Details** | the Sponsorship Details signed by the parties and attached to these Sponsorship Terms and Conditions as amended or replaced by any further Sponsorship Details signed by the parties from time to time, which include any Special Conditions. |
| **Team Manager** | the representatives of the Sponsor, Quiksilver, an Affiliate or Licensee responsible for liaising with their respective sponsored athletes from time to time. |
| **Term** | the term of this Agreement determined in accordance with **clause 2** and includes any renewal. |
| **Trade Marks** | the registered and unregistered trade marks of Quiksilver, Inc. which it uses or permits any Licensee to use from time to time, and also includes any corresponding trade marks owned by an Affiliate. |

1.2    **Construction**

In this Agreement, unless the context otherwise requires:

(a)    headings are for ease of reference only and do not affect interpretation;

(b)    words importing the singular include the plural and vice versa;

(c)    words importing any gender include the other gender;

(d)    a reference to a party includes that party's legal personal representatives, successors and permitted assigns;

(e)    a reference to a document, contract or agreement includes that document, contract or agreement as novated, altered or replaced;

(f)    words implying natural persons include partnerships, bodies corporate, unincorporated bodies (including an unincorporated joint venture, society or association), governments and governmental and local authorities and agencies;

(g)    references to "Dollars" and "$" means the lawful currency of the United States of America; and

(h)    references to years mean calendar years ending 31 October.

**2.    TERM**

This Agreement commences on the Start Date and continues until the End Date, unless terminated earlier under clause 10.

**3.    ATHLETES OBLIGATIONS**

3.1    **Services:** The Athlete will at all times during the Term:

(a)    fulfil the Minimum Commitment;

(b)    in addition to the Minimum Commitment perform Promotional Activities on not less than the Minimum Number of Promotional Days in each year, on dates and at locations as reasonably directed by the Sponsor;

(c)    use the Athlete's best endeavours to promote, endorse and acknowledge the Products, Quiksilver and Quiksilver's sponsorship of the Athlete in media interviews, personal appearances and conversational situations and to confirm the Athlete's use of the Products when requested by the Sponsor to do so;

(d)    wear Products or promotional clothing and accessories endorsing the Products at Promotional Activities, media appearances, when attending any events and, whenever possible, when competing in Competitions;

(e)    allow the Athlete's person, image, likeness, name, voice, picture and sports performance to be used throughout the Term in advertising, endorsing and promoting the Products at such reasonable times, dates or places as requested by the Sponsor;

(f)    allow photographs, film or digital footage, and any other form of audio and video recordings of the Athlete to be taken for use by the Sponsor, Quiksilver or a Licensee or any person authorized by them;

(g)    allow the photographs, footage or recordings referred to in paragraph (f) or arising from the Promotional Activities to be used by the Sponsor, Quiksilver or a Licensee, or any person authorized by them, in Promotional Material;

(h)    permit the production of Merchandise;

(i)    comply with any directions given by the Sponsor in respect of the marking of any board. Without limiting the foregoing, all boards, including but not limited to surfboards, snowboards, and skateboards, used by the Athlete in any Competition or in association with any Promotional Activity shall be marked prominently and appropriately with the Quiksilver logo, as notified by the Team Managers from time to time, placed on the top and the bottom of the board and as close as reasonably practical to the nose and may also be marked with the word "Quiksilver" and Quiksilver art; and

(j)    provide the Sponsor, when requested, with written reports not less than once every 3 months setting out the number of days the Athlete has devoted to Promotional Activities, the Athletes observations, comments and suggestions in respect of the Products, trends and developments generally that could affect the sale of products, and such other information as the Sponsor may reasonably require from time to time.    The Athlete acknowledges that these reports are the valuable and confidential property of the Sponsor subject to clause 9, and may not be disclosed to any other person without the Sponsor's prior written consent.

3.2    **Provision of Services:** The Athlete will provide the Services and carry out the reasonable instructions given to it by the Sponsor punctually, in good faith and to the best of the Athlete's skills and abilities.

**3.3**   **Other Conditions:** It is a condition of this Agreement that the Athlete will at all times during the Term:

    (a)   use the Athlete's best endeavours to remain in good health and peak physical condition, and will undertake such training as is reasonably necessary to achieve this;

    (b)   use the Athlete's best endeavours to maintain or improve the Athlete's competitive standing and to remain favourably associated with the Athlete's sport;

    (c)   compete in at least 75% of all Competitions reasonably specified by the Sponsor as Competitions in which the Athlete should compete; provided however, that Sponsor and Athlete may mutually agree to modify such competition requirement in writing;

    (d)   not knowingly or consciously be involved in or advocate any illegal activity or be obscene, defamatory or otherwise violate the rights of any person;

    (e)   not knowingly or consciously do anything which will or is likely to bring the name of the Sponsor, Quiksilver, a Licensee or the Products into disrepute; and

    (f)   not enter into any agreement or make any commitment which interferes with the Athlete's provision of the Services or performing Promotional Activities.

**3.4**   [Intentionally Omitted]

**3.5**   **Limitation on Provision of Services:** The Sponsor acknowledges that the provision of the Services are subject to the Athlete's availability and in particular will not conflict with the Athlete's training and competition commitments.

**3.6**   **Warranties:** The Athlete represents and warrants that the Athlete:

    (a)   has full authority and ability to enter into this Agreement and perform each of the Athlete's obligations under this Agreement; and

    (b)   has disclosed any and all physical injuries and/or disabilities, including any pre-existing medical conditions or injuries which may have a material effect on the Athlete's ability to provide the Services, and that the Athlete suffers from no condition or disability that would in any way pre-dispose the Athlete to any risk by performing the Services or participating in the Athlete's chosen sport.

**4.**   **THE SPONSOR'S OBLIGATIONS**

**4.1**   Subject to the performance by the Athlete of its obligations under this Agreement, the Sponsor will pay the Remuneration Package in accordance with the Sponsorship Details. Unless otherwise specified in this Agreement, the Remuneration Package will be paid quarterly in each year in arrears.

**4.3**   Neither the Sponsor, Quiksilver, an Affiliate or a Licensee shall be obliged to provide the Athlete, if the Athlete is a surfer, with any surfboards.

**4.4**   Nothing under this agreement obliges the Sponsor, Quiksilver, an Affiliate or Licensee to exercise any of the rights and entitlements granted to the Sponsor by the Athlete.

**5.**   **COSTS AND EXPENSES**

**5.1**   Subject to clause 5.2, the Athlete, whether or not participating in any Competition, shall pay all costs and expenses, including air fares, hotels and other incidental expenses arising from attendances at any Competition which are required by the Sponsor or otherwise incurred in the course of providing the Services under the terms of this Agreement.

5.2     If the Sponsor requires the Athlete to provide the Services to a Licensee or make a promotional appearance on a Licensee's behalf, the Athlete and the Licensee shall agree in advance the additional and reasonable travel expenses including economy air fares and hotel accommodation, incurred by the Athlete as a result of providing the Services to the Licensee and which shall be paid by the Licensee.

6.      **GST**

If any supply made under this Agreement is subject to GST, the recipient of the supply ("**Recipient**") must pay the person making the supply ("**Supplier**") in respect of that supply an amount equal to the GST payable on or before the same day as the GST is payable, provided the Supplier must first give the Recipient a GST tax invoice.

7.      **OTHER SPONSORSHIPS**

7.1     The Athlete must not perform any services similar to the Services, or grant or provide any other sponsorship or promotional rights, to any third party, except for the Other Permitted Sponsorships or in accordance with **clause 7.2**.

7.2     The Athlete may enter into other sponsorship or promotional contracts in respect of products or services that are not products or services associated with any Direct Competitor and which do not compete with the Products, provided that the Athlete:

   (a)     gives the Sponsor 30 days prior written notice; and

   (b)     first obtains the Sponsor's prior written consent, which will not be unreasonably withheld.

7.3     The Athlete will not without the Sponsor's prior written approval:

   (a)     publicly use or endorse the products or services of a Direct Competitor (as defined herein);

   (b)     display or endorse any signs, posters, badges or advertising of any kind which include the name or brand name of any Direct Competitor marketed by persons or companies other than the Sponsor, Quiksilver, an Affiliate or a Licensee; and

   (c)     grant any other party any right or entitlement to use the Athlete's person, image, likeness, name, voice, picture or sports performance in relation to the products of any Direct Competitor (as defined herein).

8.      **RELEASE FROM LIABILITY**

8.1     **Acknowledgements and Representations:** The Athlete acknowledges and represents that:

   (a)     the Athlete may be participating in dangerous activities from time to time in the course of the Athlete's chosen sport and in performing the Services, including but not limited to inherently dangerous surf, skate or snow activities ("Activities");

   (b)     the Athlete understands the risk of injury from the Activities is significant, including the potential for permanent paralysis and death; and

   (c)     the Sponsor, Quiksilver, Affiliates, Licensees and any other sponsors or co-sponsors, promoters and hosts of the Activities (together the "Releasees"), have not and do not assume any liability for any injury, death, damage or loss of any nature whatsoever which may occur as a result of any reason during the Activities.

8.2     **Assumption of Risk:** The Athlete KNOWINGLY AND FREELY ASSUMES ALL SUCH RISKS, both known and unknown, EVEN IF ARISING FROM THE NEGLIGENCE OF THE RELEASEES or others, and assumes full responsibility for the Athlete's participation, and willingly agrees to comply with any stated and customary terms and conditions for participation.

**8.3**    **Release:** The Athlete releases the Releasees from any and all claims, demands, causes of action, losses, expenses, costs and liability of any nature whatsoever which the Athlete may have had against any of them, but for this clause, arising out of or in connection with the Activities.

**9.**    **CONFIDENTIALITY AND INTELLECTUAL POPERTY**

**9.1**    **Confidentiality:** The Athlete will keep secret and confidential all details of this Agreement and all knowledge or information relating to Quiksilver, its Affiliates and Licensees, other than information which at the time of receipt or subsequently has passed into the public domain other than by the fault of the Athlete.

**9.2**    **Intellectual Property:** All rights in and relating to any Intellectual Property arising directly or indirectly out of the provision of the Services are the exclusive property of Quiksilver, including without limitation any special form of the Athlete's name, and the Athlete assigns all rights it otherwise may have had in or in relation to such Intellectual Property to Quiksilver. The Athlete waives any moral or like rights associated with any Intellectual Property contemplated by this clause.

**10.**    **TERMINATION**

**10.1**    **Termination by the Athlete:** The Athlete may terminate this Agreement immediately by notice in writing if the Sponsor:

    (a)    breaches any provision of this Agreement not capable of being remedied;

    (b)    fails to make the payments due under **clause 4** within 14 days after notice in writing from the Athlete requiring payment;

    (c)    breaches any other provision of this Agreement which is capable of being remedied, and fails to remedy the breach within 30 days of a notice in writing from the Athlete requiring the breach to be remedied;

    (d)    has a receiver, a trustee in bankruptcy, a liquidator, administrator or other like person appointed over the whole or any part of its assets or business; or

    (d)    ceases to carry on business.

**10.2**    **Termination by the Sponsor:** the Sponsor may terminate this Agreement immediately by notice in writing if the Athlete:

    (a)    dies or is otherwise prevented from fully rendering the Services for a continuous period of 6 months or more by any mental or physical incapacity or other disability; provided however that if Sponsor terminates this Agreement pursuant to this Section 10.2(a) and Athlete's death or incapacity is the direct result of his performance of Services under this Agreement, then Sponsor will continue to pay Athlete's Base Renumeration for a period of time equal to the lesser of (i) twelve months, or (ii) the number of months remaining until the original expiration date of this Agreement;

    (b)    the Athlete commits any act or becomes directly involved in a situation which in the reasonable judgment of the Sponsor brings the Athlete into public disrepute, contempt, scandal or ridicule, offends public opinion or the sensibilities of any substantial class or group, or reflects unfavourably upon the reputation of the Sponsor, Quiksilver, a Licensee, an Affiliate or the Products;

    (c)    the Athlete breaches any provision of this Agreement which is fundamental, including but not restricted to the conditions in **clauses 3.3** and **7.3**, or any other provision not capable of being remedied, provided that if any fundamental provision is capable of being remedied by the Athlete, he must do so within 5 days of a notice from the Sponsor requiring the breach to be remedied;

(d)      the Athlete breaches any provision of this Agreement which is capable of being remedied and fails to remedy the breach within 30 days of a notice from the Sponsor requiring the breach to be remedied; or

## 11    RIGHTS ON TERMINATION

**11.1**    **Other rights not prejudiced:** Termination or expiration of this Agreement will not prejudice the rights or remedies of either party.

**11.2**    **No further payment by the Sponsor:** Upon termination or expiration of this Agreement, the Sponsor will have no obligation to make any further payment of the Sponsorship Fee or Incentive Payment unless such Incentives were actually earned prior to the effective date of termination.

**11.3**    **Ceasing use of Promotional Material:** Subject to **clause 11.4**, upon termination or expiration of this Agreement the Sponsor will, and will ensure that Quiksilver and the Licensees also will, cease using any Promotional Materials which incorporate the Athlete's person, image, likeness, name, voice or picture, provided that the Sponsor, Quiksilver and the Licensees may for a period of twelve (12) months from the date of termination or expiry:

(a)      use, broadcast and display such Promotional Material in advertisements, broadcasts or any other public displays as have been booked, arranged or agreed by the Sponsor or a Licensee prior to termination or expiry; and

(b)      sell Products incorporating such Promotional Material which the Sponsor or a Licensee may have in its possession or control at the date of termination or expiry.

**11.4**    **Continuing use of Materials, Merchandise and Footage:** After the termination or expiration of this Agreement for any reason whatsoever, the Sponsor, Quiksilver and the Licensees will be entitled to:

(a)      use the Promotional Material in advertisements, broadcasts or other public displays in an historical context;

(b)      use, broadcast, sell and display the Merchandise; and

(c)      edit and use any photographs, images, footage and any other visual or audio recordings of the Athlete that were made during the Term in any program, feature, film or news item, which may be distributed, broadcast, transmitted and communicated in any media, existing or yet to be invented, provided the Sponsor will ensure that any such use will not involve or amount to a representation of any ongoing relationship of sponsorship or affiliation between the Athlete and the Sponsor, Quiksilver or a Licensee which no longer exists.

## 12.    MISCELLANEOUS

**12.1**    **Severability:** The whole or any part of any clause of this Agreement that is illegal or unenforceable will be severed and will not affect the continued operation of the remaining provisions.

**12.2**    **Entire Agreement:** This Agreement constitutes the entire agreement between the parties with respect to its subject matter and supersedes all such prior agreements and any representations between them.

**12.3**    **Disputes:** The parties will use their best endeavours to resolve any disputes arising in relation to this Agreement by discussions in good faith between them.

**12.4**    **Variations:** This Agreement may only be varied in writing signed by both parties.

**12.5**    **Assignment:** Neither party may assign, sub-license or otherwise deal with any right or obligation arising out of this Agreement without the prior written consent of the other

party, except that the Sponsor may assign this Agreement in whole or in part to Quiksilver or any of its Affiliates.

**12.6    Relationship:** The Athlete is an independent contractor.   Nothing in this Agreement constitutes any relationship of employer and employee, principal and agent or partnership between any of the Sponsor, Quiksilver, an Affiliates or a Licensee and the Athlete.

**12.7    Waiver:** The delay or failure by either party to insist upon a strict performance by the other of any of the provisions of this Agreement shall not be deemed a waiver of any such breach or default.

**12.8    Further action:** Each party must do all things necessary or desirable to give effect to, and must refrain from doing anything that might hinder performance of this Agreement.

**12.9    Notices:** A party notifying or giving notice under this Agreement must do so by notice:

   (a)    in writing;

   (b)    addressed to the recipient as specified in the Agreement Details or as altered by notice given in accordance with this clause; and

   (c)    left at or sent by prepaid post or facsimile to that address.

A notice given in accordance with this clause will be deemed received:

   (d)    on the date of delivery, if left at the recipient's address;

   (e)    5 days after the date of posting if sent by prepaid post; or

   (f)    if sent by facsimile, when the sender's facsimile system generates a message confirming successful transmission of the total number of pages of the notice.

**12.10    Governing Law:** This Agreement is governed by and construed in accordance with the laws of California and each party submits to the non-exclusive jurisdiction of the courts of the County of Orange, California and any courts that may hear appeals from those courts.

**12.11    Counterparts:** This Agreement may be executed in any number of counterparts and the counterparts taken together constitute one and the same instrument.

**12.12    Arbitration:** In the event of any dispute hereunder, the parties hereto agree to submit such dispute to binding and final arbitration in Orange County, California pursuant to the commercial arbitration rules and regulations of the American Arbitration Association The prevailing party in any such dispute will be entitled to recover from the non-prevailing party its reasonable costs and attorneys' fees.

**DATED:**

**EXECUTED** as an agreement:

By **QUIKSILVER AMERICAS, INC.** before me:

Name:
Title:

**SIGNED** by **THE ATHLETE** before me:

Signature of Athlete

Signature of Parent/Guardian
(if Athlete is under 18)

**SIGNED** by **DANE REYNOLDS, Inc.** before me:

Name:
Title:

**EXHIBIT E**

April 7, 2011

Dane Reynolds
2052 Corte Del Nogal, Ste 150
Carlsbad, CA 92011

    RE:    Amendment to Quiksilver Sponsorship Agreement

Dear Dane:

    Reference is made to that certain Quiksilver Sponsorship Agreement dated November 1, 2006 (the "Agreement") by and between you and Quiksilver Americas, Inc. ("Sponsor"). Capitalized terms used in this letter and not defined herein shall have the meaning ascribed to them in the Agreement.

    Effective as of the date hereof, the parties hereby agree to amend the Agreement as follows:

1.  The "End Date" as set forth in the Sponsorship Details shall be extended to October 31, 2017.

2.  The "Minimum Commitment" as set forth in the Sponsorship Details shall be amended and restated as follows:

"In each year of the Term, the Athlete will:

    1.    participate in reviews with the Quiksilver Liaisons to identify goals and evaluate achievements. Such review meetings will be arranged by Sponsor with at least two weeks prior notice to Athlete and shall be subject to Athlete's professional commitments;

    2.    compete in at least two (2) ASP World Tour events sponsored by Sponsor or its Affiliates each year during the Term. If in any year during the Term Athlete is not on the ASP World Tour, Athlete will accept a wildcard position for at least two (2) of such events;

    3.    participate in at least two (2) global film/photo shoots and three (3) "Quiksilver" brand specific photos shoots each year during the Term. Sponsor will inform Athlete of the proposed location and plan for such shoots at least one (1) month in advance for Athlete's approval, which shall not be unreasonably withheld or delayed;

    4.    always ensure the exposure of the Quiksilver brand, particularly on the media podium, by wearing apparel prominently marked with the Quiksilver logo; and

    5.    promptly report any injury that could affect performance to a Quiksilver Liaison and be guided in respect of rehabilitation.

3.  "Other Permitted Sponsorships" as set forth in the Sponsorship Details shall be amended and restated as follows: "Channel Islands for surfboards, traction and leashes; Vans for footwear; Ventura Surf Shop for core surf shops; and Summer Teeth for certain apparel and accessories, but only as set forth in Section 3.1(d)".

4. The Remuneration Package as set forth in the Sponsorship Details shall be amended and restated in its entirety as follows:

Base Compensation

Commencing on April 1, 2011, and continuing through the End Date, Sponsor shall pay Athlete $291,666.67 per month on the first day of each month (except the first payment due hereunder which shall be paid within 10 business days of the execution of this letter), except as set forth below. The parties may mutually agree in writing to reduce the cash compensation paid to Athlete to $250,000.00 per month at any point during the Term. In such event, Sponsor shall cause Quiksilver, Inc. to use its commercially reasonable efforts to obtain the necessary corporate and shareholder approvals, as necessary, to provide Athlete with a one-time equity award in consideration for the cash compensation forfeited by Athlete. The number of Quiksilver, Inc. stock options or shares of restricted stock subject to such equity award will be mutually agreed by the parties.

Incentive Compensation

Sponsor will pay Athlete the following amounts upon achievement of the following:

| | |
|---|---|
| ASP World Title: | $250,000 |
| First place in any WCT World Tour Event: | $25,000 |
| First place overall in the Surfer Poll Awards: | $100,000 |
| Surfer Poll video part of the year: | $25,000 |

Royalty Compensation

Sponsor will pay Athlete a royalty equal to three percent (3%) of the Net Sales of Products sold by Sponsor that (i) bear the name or likeness of Athlete, or (ii) utilize the designs or artwork created and owned solely by Athlete (the "Signature Products").

Athlete hereby authorizes and agrees that Sponsor shall pay any compensation payable under this Agreement to Dane Reynolds, Inc."

5. The following definition shall be added to Section 1.1 of the Sponsorship Terms and Conditions:

"Net Sales: "Net Sales" for wholesale sales, means the gross sales of Signature Products less returns, any distributor, promotional, employee or close out discounts, freight, postage, packing, insurance, sales and use taxes and other reasonably customary governmental taxes or charges (except income taxes) imposed on or at the time of the production, importation, use or sale of such Signature Products, including any value added tax. Any sales that are discounted more than 25% off the regular wholesale price will be excluded from the royalty calculation and no royalty will be paid thereon. For Signature Products sold at retail stores owned by Sponsor or its Affiliates, "Net Sales" shall be

2

calculated as the wholesale price such Signature Products would have been sold to a third party. All royalties will be paid to Athlete on a quarterly basis in arrears."

6. The term "Team Managers" shall be deleted from the Agreement and be replaced in all instances with "Quiksilver Liaisons". Section 1.1 of the Sponsorship Terms and Conditions shall be amended to add the following definition:

"**Quiksilver Liaisons:** Craig Stevenson, Michael Crawley, Stephen Bell, Shea Perkins, Ryan Scanlon, Simon Buttonshaw or any additional representative that may be added to this Agreement by mutual agreement of Athlete and Sponsor."

7. Section 3.1(d) as set forth in the Sponsorship Terms and Conditions shall be amended and restated as follows:

"(d) with the exception of headwear, which is not required, during post heat interviews, Athlete will at all times during the Term, wear the Products at Promotional Activities, media appearances, when attending any events and at all other times when reasonable and appropriate, including, when competing in Competitions; provided that, Athlete may also wear and use "Summer Teeth" branded apparel and accessories as reasonably approved by Sponsor, but only for so long as Sponsor or one of its Affiliates is the exclusive licensee and manufacturer of the "Summer Teeth" brand;"

8. Section 3.1(i) as set forth in the Sponsorship Terms and Conditions shall be amended and restated as follows:

"(i) include a prominent, clearly visible and readily recognizable depiction of the Quiksilver "mountain and wave" logo, the word "Quiksilver", or other Quiksilver art, each as approved by Sponsor in its reasonable discretion, as close as possible to the nose, and in any event higher than any other artwork or sticker, on any and all boards, including but not limited to surfboards, snowboards and skateboards, used by Athlete, including without limitation, during any Competition or in association with any Promotional Activity;"

9. The following Section (k) shall be added to Section 3.1 of the Sponsorship Terms and Conditions:

"(k) Athlete and Sponsor will work together to develop and design Signature Products including the packaging, merchandising and other creative elements associated with the marketing, promotion and sales of such Signature Products. Sponsor shall seek Athlete's approval for Signature Products and related marketing and promotional materials, provided that if Athlete does not respond to Sponsor's request for approval within five (5) business days, such approval shall be deemed given. Once Athlete's approval is given or is deemed given, Sponsor will not materially alter the approved Signature Products or related marketing and promotional materials"

10. Section 3.3(c) of the Sponsorship Terms and Conditions shall be deleted in its entirety.

11. The following subsections shall be added to Section 4 of the Sponsorship Terms and Conditions:

3

4.5 Sponsor shall engage Marine Layer Productions to produce Athlete's global video shoots (the "Production Services") provided that such Production Services shall be subject to the terms and conditions of a separate agreement in which all fees and expenses are pre-approved in writing by Sponsor in its reasonable discretion and are comparable to the fees and expenses that would be charged by similarly situated production companies; and provided further, that such Production Services shall be performed in a professional, workman-like manner comparable to other production companies engaged by Sponsor or its Affiliates. Subject to sections 11.3 and 11.4, Sponsor shall own all rights in perpetuity in and to all footage that results from the Production Services provided that Sponsor shall grant Athlete and/or Marine Layer Productions a royalty-free, non-exclusive, perpetual license to use video footage that is not used by Sponsor or its Affiliates in a manner reasonably approved by Sponsor.

4.6 If Athlete is required to travel for any Promotional Activity or Competition, Sponsor shall reimburse Athlete for his reasonable expenses for up to fifteen (15) such trips per year. For each such trip, Athlete has the option to book either one (1) business class ticket or two (2) economy class tickets, roundtrip. If Athlete travels to an ASP World Tour Event, Sponsor will arrange and pay for the reasonable costs associated with Athlete's lodging. Athlete must submit proper receipts or other documentation as reasonably requested by Sponsor to document such expenses.

4.7 For so long as the Sponsor has the "Young Guns House" in Pupukea, HI, Athlete may stay in the house during the months of November and December of each year during the Term, provided Athlete gives Sponsor reasonable notice of his intent to stay at the house.

4.8 During the Term, Sponsor will reimburse Athlete up to $72,000 per year for a lease and directly associated insurance costs for a house, apartment, warehouse space or other property mutually agreed by the parties for Athlete's exclusive use. Such payment shall be paid by Sponsor to Athlete within thirty (30) days after Sponsor's receipt of appropriate invoice(s) from Athlete.

4.9 Sponsor will use commercially reasonable efforts to provide Athlete only with custom-fitted wetsuits made from Japanese rubber and all such wetsuits shall be black with any logo and/or artwork colors to be agreed upon by Sponsor and Athlete.

12. Section 8.2 as set forth in the Sponsorship Terms and Conditions shall be amended to strike the phrase "EVEN IF ARISING FROM THE NEGLIGENCE OF THE RELEASES or others".

13. Section 9.2 as set forth in the Sponsorship Terms and Conditions shall be amended and restated as follows:

Intellectual Property: All rights in and relating to any Intellectual Property arising directly or indirectly out of the provision of the Services herein, including without limitation (i) any Intellectual Property related to, or arising out of the Signature Products, and (ii) any and all designs, graphics, molds, innovations or other intellectual property associated with, or derived from, the Services or this Agreement, are the exclusive property of Sponsor. Athlete hereby irrevocably assigns all rights he otherwise may have had in or in relation to such Intellectual Property to Sponsor. Athlete will assist Sponsor and its Affiliates in any manner

4

required to prosecute or protect such Intellectual Property; provided, however, that Athlete shall not be required to provide such assistance if, in the reasonable opinion of Athlete's legal counsel, such assistance is not legally necessary. To the extent that Athlete's Services or otherwise result in works that may be entitled to copyright or other intellectual property protection, Athlete agrees that such works, including without limitation any works related to, or arising out of the Signature Products, are "works for hire" as defined in 17 U.S.C. §101, and that Sponsor owns all such copyrights, patents and other intellectual property rights in connection therewith. To the extent such work may not be deemed a "work for hire" under applicable law, Athlete hereby assigns to Sponsor in perpetuity, coupled with an interest that is irrevocable, any and all rights, title and interest Athlete may have in and to the copyrights, patents and other intellectual property rights related to any intellectual property that results from the Services provided in this Agreement.

14. Section 10.2(a) as set forth in the Sponsorship Terms and Conditions shall be amended by: (i) striking the phrase "6 months" and replacing such phrase with "12 months" in the second line of such provision; and (ii) striking the phrase "or incapacity" contained in the fourth line of such provision.

15. Section 10.2(c) as set forth in the Sponsorship Terms and Conditions shall be amended by striking the phrase "5 days" and replacing such phrase with "14 days".

16. Section 11.3(b) as set forth in the Sponsorship Terms and Conditions shall be amended by adding ", including without limitation the Signature Products," after the word "Products" in the first line of such provision.

17. Section 11.4 as set forth in the Sponsorship Terms and Conditions shall be amended by striking subsection (b) in its entirety from such provision.

Except as expressly amended by this letter, the terms, conditions, covenants and agreements contained in the Agreement remain unaffected by this letter and continue in full force and effect. This letter is intended by the parties to satisfy the requirement in clause 12.4 of the Agreement that any variation to the Agreement be in writing and signed by both parties. This letter and the Agreement constitute the entire agreement between the parties pertaining to the subject matter thereof and supersede all other agreements, proposals, oral or written statements.

Please confirm your agreement by signing and returning one copy of this letter to the undersigned, whereupon this letter will become a binding agreement between the parties.

Very truly yours,

**Quiksilver Americas, Inc.**

By: _____

Name: K.C. STEVENSON

Title: PRESIDENT

Accepted and agreed:

By: _____

Dane Reynolds

**Dane Reynolds, Inc.**

By: _____

Name: DANE REYNOLDS

Title: PRESIDENT.

6

**EXHIBIT F**

**John A. Morris**

| | |
|---|---|
| **From:** | Blair Marlin <bmarlin@wmgllc.com> |
| **Sent:** | Monday, September 21, 2015 5:29 PM |
| **To:** | Miky Picon |
| **Cc:** | Garry Wall; Francesca Koscielak; Scott Lindley |
| **Subject:** | Re: Dane 15-20 |

Thank you for the email Miky. I will get in touch with Dane, as well as speak to our lawyer Scott and be back in touch with you shortly.

Blair Marlin
Vice President, Action Sports & Olympics
Wasserman Media Group
2251 Faraday Ave, Suite 200
Carlsbad, Ca 92008
Cell 760.505.1182

**From:** Miky Picon <miky.picon@quiksilver-europe.com>
**Date:** Monday, September 21, 2015 at 12:48 PM
**To:** Blair Marlin <bmarlin@wmgllc.com>
**Cc:** Garry Wall <Garry.Wall@quiksilver-europe.com>, Quik legal Francesca Koscielak
<Francesca.Koscielak@quiksilver.com>
**Subject:** Dane 15-20

Hi Blair,
I hope you are well.
I try to move as quick as possible for the benefits of everyone here..
We put in place that offer for Dane for the next 5 years. As i already mention, we really want to give our best offer straight a head and not trying to play any games, in the respect of Dane we put one strong offer and you guys give us an answer..
You can shop around and see what you guys will decide. This offer is still strong for the market, and after all those years in the team i hope he will take the right decision to stay with us.. We will let the totally Freedom to Dane to be Dane.. Shoot, surf, all the things he like to do.. We will support any project for the coming 5 years, we will have the budget on the side for that.
I really hope you will take in consideration all the past and looking to end Dane's career with us.. We are very loyal to all our ambassador, today Tom, Mark all those legends are still under contract with us.. Dane will be the same.. He is our ambassador and part of the Family. If he think that Pierre doesn't like him he is totally wrong, he is just waiting to build that relationship! We all love Dane we want Dane to stay, everyone want to work with him so hopefully we will continue..

If Dane does not accept our proposal, the next step would be to ask the court to 'reject' his agreement.
Following our request, it is likely that the court will treat it as though we terminated the agreement.

Let me know if you have any questions..
We are waiting to get an answer before Nov 1st 2015. After that we will consider that you are not accepting our offer.
It will give you plenty of time and hopefully you will come back to us before with a positive return.

Blair i'm open to talk any day any time, i'm here always available for sharing and make this deal happen.
Thank you
Miky

**Miky Picon**
**Quiksilver Global Sports Marketing Surf**

 Please consider the environment before printing this e-mail

**EXHIBIT G**

## John A. Morris

| | |
|---|---|
| **From:** | Garry Wall <Garry.Wall@quiksilver-europe.com> |
| **Sent:** | Monday, November 02, 2015 1:03 AM |
| **To:** | Linnsey Caya; Francesca Koscielak |
| **Subject:** | Fwd: Dane |

Just in

Kind Regards
Garry Wall

Begin forwarded message:

> **From:** Blair Marlin <bmarlin@wmgllc.com>
> **Date:** 2 November 2015 at 4:21:32 AM GMT+1
> **To:** Garry Wall <Garry.Wall@quiksilver-europe.com>
> **Subject: Re: Dane**
>
> Garry-
> Thank you for getting back to me on this. I am going to sit with our lawyer tomorrow and get back to you on a few things that I had questions about with the termination. I believe he will be in the office tomorrow afternoon so I will be in touch as soon as I am able to get with him. Speak to you soon!
>
>
> Blair Marlin
> Vice President, Action Sports & Olympics
> Wasserman Media Group
> 2251 Faraday Ave, Suite 200
> Carlsbad, Ca 92008
> Cell 760.505.1182

> **From:** Garry Wall <Garry.Wall@quiksilver-europe.com>
> **Date:** Friday, October 30, 2015 at 10:12 AM
> **To:** Blair Marlin <bmarlin@wmgllc.com>
> **Subject: Dane**

HI Blair


This email shall confirm the conversation we had yesterday regarding Dane's decision to reject the recent offer Quiksilver made to amend his Sponsorship Agreement dated November 1, 2006 (the "Agreement"). In light of Dane's decision, the parties have mutually agreed that the Agreement shall terminate effective October 31, 2015.  Please confirm that this is also your understanding.

1

Dane has been a significant part of the Quiksilver family for many years and it is our hope that we can mutually agree on a public communication that reflects our mutual respect for each other. Please let me know your thoughts on this point.

Garry Wall

Global Brand Director

Quiksilver

garry.wall@quiksilver-europe.com

162 Rue Belharra

64500 St Jean De Luz

France

**EXHIBIT H**

**John A. Morris**

| | |
|---|---|
| **From:** | Scott Lindley <slindley@wmgllc.com> |
| **Sent:** | Friday, November 06, 2015 7:37 PM |
| **To:** | Francesca Koscielak |
| **Cc:** | Linnsey Caya |
| **Subject:** | RE: Dane Reynolds Termination Agreement |
| **Attachments:** | Termination Agreement (REYNOLDS)(OCT 2015).doc |

Hi Francesca. Attached is a revised draft of the termination agreement with some edits to narrow the non-disparagement provision.

Thanks,
Scott

**From:** Francesca Koscielak [mailto:Francesca.Koscielak@quiksilver.com]
**Sent:** Thursday, November 05, 2015 5:18 PM
**To:** Scott Lindley <slindley@wmgllc.com>
**Cc:** Linnsey Caya <linnsey.caya@quiksilver.com>
**Subject:** RE: Dane Reynolds Termination Agreement

Hi Scott,

Thank you for getting back to us so quickly. I just left you a voicemail; at your convenience, would you mind giving me a call back? You can reach me on my direct line, 714-889-5580.

Thank you,
Francesca

**From:** Scott Lindley [mailto:slindley@wmgllc.com]
**Sent:** Thursday, November 05, 2015 4:15 PM
**To:** Francesca Koscielak
**Cc:** Linnsey Caya
**Subject:** RE: Dane Reynolds Termination Agreement

Hi Francesca. Things are good; thanks for asking.

Our only issue is that we need to remove the non-disparagement provision. Not because Dane intends to go around disparaging QS and its employees, but as you know, Dane has always tried to be an open book with his fans. This is one of his traits that makes him so appealing to everyone in the surf industry, including QS. We don't want to have to quash his personality out of fear that he may cross a toe over the line somewhere.

Happy to discuss further if needed.

**From:** Francesca Koscielak [mailto:Francesca.Koscielak@quiksilver.com]
**Sent:** Thursday, November 05, 2015 1:42 PM
**To:** Scott Lindley <slindley@wmgllc.com>
**Cc:** Linnsey Caya <linnsey.caya@quiksilver.com>
**Subject:** Dane Reynolds Termination Agreement

Hi Scott,

I hope you are well.  Attached please find the Termination Agreement for Dane.  Please let us know if you have any questions or concerns.

Thank you,
Francesca


Francesca Koscielak
Legal Counsel
Quiksilver, Inc.
Direct: 714-889-5580| Mobile: 657-244-7626| 15202 Graham Street, Huntington Beach, CA 92649 | Francesca.Koscielak@Quiksilver.com

PRIVILEGED AND CONFIDENTIAL COMMUNICATION.
This email and any documents attached hereto are legally privileged and may contain confidential information.  If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.



November 5, 2015

**VIA E-MAIL**

Dane Reynolds
c/o Wasserman Media Group, LLC
2052 Corte del Nogal, Suite 150
Carlsbad, California 92011

    Re:    **Termination of Quiksilver Sponsorship Agreement**

Dear Dane:

Reference is made to that certain Quiksilver Sponsorship Agreement by and between you, Dane Reynolds ("Athlete"), and QS Wholesale, Inc. ("Sponsor") dated November 1, 2006, as amended (the "Agreement"). Athlete and Sponsor may hereinafter be referred to together as the "Parties" and individually as a "Party." This correspondence shall serve as confirmation of the Parties' mutual agreement to terminate the Agreement effective as of October 31, 2015 (the "Termination Date"). Capitalized terms not defined herein shall have the meaning ascribed to them in the Agreement.

As of the Termination Date, and except as set forth herein, neither Party shall have any rights or obligations to the other Party with respect to the Agreement. The Parties acknowledge and agree no further payments or other consideration is owed or will become due to Athlete in connection with the Agreement.

Sponsor hereby agrees that references to twelve (12) months under Section 11.3 of the Agreement shall be revised to six (6) months from the Termination Date. Notwithstanding the foregoing, Sponsor will use best efforts to remove substantially all Promotional Materials that feature Athlete in the form of digital media content (i.e. website profiles and other content displayed via the Internet) within two (2) weeks of the Termination Date, and all other materials within three (3) months of the Termination Date. The Parties acknowledge and agree that nothing herein shall be construed as in any way limiting or diminishing Sponsor's other rights upon termination as set forth in Section 11.4 of the Agreement and such other provisions which survive termination.

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each Party agrees, on behalf of itself/himself, its/his heirs, executors and administrators, successors and assigns, to waive and release all claims, known and unknown, which it/he has or might otherwise have had against the other Party, its parent, affiliates and their respective officers, directors, agents, employees, stockholders, insurers, attorneys and successors arising prior to and including the Termination Date, including without limitation, all claims relating in any way to any aspect of any federal, state or local law, regulation or ordinance or public policy, contract, tort or property law, theory or any other cause of action whatsoever that arose on or before the Termination Date.

In giving the above releases, which include claims which may be unknown to the Parties at present, each Party acknowledges that it/he has read and understands Section 1542 of the California Civil Code which reads as follows:

                                                        Quiksilver, Inc.
                                                        5600 Argosy Circle, Bldg. 100
                                                        Huntington Beach, CA 92649

> **"A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."**

Each Party hereby expressly waives and relinquishes all rights and benefits under that section and any law of any jurisdiction of similar effect with respect to its/his release of any unknown or unsuspected claims it/he may have against the other Party.

Each Party agrees that it shall not ~~disparage~~ commit any knowing and/or intentional act of slander or libel against the other Party ~~and, in the case of Athlete, Athlete shall not to disparage the trademarks, products or employees of Sponsor~~. For sake of clarity and avoidance of doubt, any disclosure of true and factual statements or accounts of events shall not be a breach of this provision or this Agreement.

Please acknowledge your agreement to the terms of this letter by signing below and returning to the undersigned.

Sincerely,

**QS WHOLESALE, INC.**

By: _____
Name:
Title:

Acknowledged and agreed to this ____ day of _____, 2015

**ATHLETE**

By: _____
   **DANE REYNOLDS**

**EXHIBIT I**

## John A. Morris

| | |
|---|---|
| **From:** | Francesca Koscielak <Francesca.Koscielak@quiksilver.com> |
| **Sent:** | Monday, November 09, 2015 3:49 PM |
| **To:** | 'Scott Lindley' |
| **Cc:** | Linnsey Caya |
| **Subject:** | RE: Dane Reynolds Termination Agreement |
| **Attachments:** | Termination Agreement (REYNOLDS)(OCT 2015) (QS Comments 9 NOV 2015).doc |

Hi Scott,

Thank you again for sending this over, we made just a few revisions in the attached.  Please feel free to give me a call if you would like to discuss further.

Thank you,
Francesca

**From:** Francesca Koscielak
**Sent:** Friday, November 06, 2015 4:41 PM
**To:** 'Scott Lindley'
**Cc:** Linnsey Caya
**Subject:** RE: Dane Reynolds Termination Agreement

Hi Scott,

Thank you for sending, we will review internally and get back to you with any further comments or concerns.

Best,
Francesca

**From:** Scott Lindley [mailto:slindley@wmgllc.com]
**Sent:** Friday, November 06, 2015 4:37 PM
**To:** Francesca Koscielak
**Cc:** Linnsey Caya
**Subject:** RE: Dane Reynolds Termination Agreement

Hi Francesca.  Attached is a revised draft of the termination agreement with some edits to narrow the non-disparagement provision.

Thanks,
Scott

**From:** Francesca Koscielak [mailto:Francesca.Koscielak@quiksilver.com]
**Sent:** Thursday, November 05, 2015 5:18 PM
**To:** Scott Lindley <slindley@wmgllc.com>
**Cc:** Linnsey Caya <linnsey.caya@quiksilver.com>
**Subject:** RE: Dane Reynolds Termination Agreement

Hi Scott,

Thank you for getting back to us so quickly.  I just left you a voicemail; at your convenience, would you mind giving me a call back? You can reach me on my direct line, 714-889-5580.

1

Thank you,
Francesca

---

**From:** Scott Lindley [mailto:slindley@wmgllc.com]
**Sent:** Thursday, November 05, 2015 4:15 PM
**To:** Francesca Koscielak
**Cc:** Linnsey Caya
**Subject:** RE: Dane Reynolds Termination Agreement

Hi Francesca. Things are good; thanks for asking.

Our only issue is that we need to remove the non-disparagement provision. Not because Dane intends to go around disparaging QS and its employees, but as you know, Dane has always tried to be an open book with his fans. This is one of his traits that makes him so appealing to everyone in the surf industry, including QS. We don't want to have to quash his personality out of fear that he may cross a toe over the line somewhere.

Happy to discuss further if needed.

**From:** Francesca Koscielak [mailto:Francesca.Koscielak@quiksilver.com]
**Sent:** Thursday, November 05, 2015 1:42 PM
**To:** Scott Lindley <slindley@wmgllc.com>
**Cc:** Linnsey Caya <linnsey.caya@quiksilver.com>
**Subject:** Dane Reynolds Termination Agreement

Hi Scott,

I hope you are well. Attached please find the Termination Agreement for Dane. Please let us know if you have any questions or concerns.

Thank you,
Francesca

**Francesca Koscielak**
Legal Counsel
Quiksilver, Inc.
Direct: 714-889-5580| Mobile: 657-244-7626| 15202 Graham Street, Huntington Beach, CA 92649 | Francesca.Koscielak@Quiksilver.com

PRIVILEGED AND CONFIDENTIAL COMMUNICATION.
This email and any documents attached hereto are legally privileged and may contain confidential information. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.



November 5, 2015

**VIA E-MAIL**

Dane Reynolds
c/o Wasserman Media Group, LLC
2052 Corte del Nogal, Suite 150
Carlsbad, California 92011

Re:     **Termination of Quiksilver Sponsorship Agreement**

Dear Dane:

Reference is made to that certain Quiksilver Sponsorship Agreement by and between you, Dane Reynolds ("Athlete"), and QS Wholesale, Inc. ("Sponsor") dated November 1, 2006, as amended (the "Agreement"). Athlete and Sponsor may hereinafter be referred to together as the "Parties" and individually as a "Party." This correspondence shall serve as confirmation of the Parties' mutual agreement to terminate the Agreement effective as of October 31, 2015 (the "Termination Date"). Capitalized terms not defined herein shall have the meaning ascribed to them in the Agreement.

As of the Termination Date, and except as set forth herein, neither Party shall have any rights or obligations to the other Party with respect to the Agreement. The Parties acknowledge and agree no further payments or other consideration is owed or will become due to Athlete in connection with the Agreement.

Sponsor hereby agrees that references to twelve (12) months under Section 11.3 of the Agreement shall be revised to six (6) months from the Termination Date. Notwithstanding the foregoing, Sponsor will use best efforts to remove substantially all Promotional Materials that feature Athlete in the form of digital media content that is controlled by Sponsor (i.e. website profiles and other content displayed via the Internet) within one two (12) monthweeks of the Termination Date, and all other materials within three (3) months of the Termination Date. For the avoidance of doubt, this will not require Sponsor to remove past posts on Sponsor's social media pages which may include Athlete. The Parties acknowledge and agree that nothing herein shall be construed as in any way limiting or diminishing Sponsor's other rights upon termination as set forth in Section 11.4 of the Agreement and such other provisions which survive termination.

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each Party agrees, on behalf of itself/himself, its/his heirs, executors and administrators, successors and assigns, to waive and release all claims, known and unknown, which it/he has or might otherwise have had against the other Party, its parent, affiliates and their respective officers, directors, agents, employees, stockholders, insurers, attorneys and successors arising prior to and including the Termination Date, including without limitation, all claims relating in any way to any aspect of any federal, state or local law, regulation or ordinance or public policy, contract, tort or property law, theory or any other cause of action whatsoever that arose on or before the Termination Date.

In giving the above releases, which include claims which may be unknown to the Parties at present, each Party acknowledges that it/he has read and understands Section 1542 of the California Civil Code which reads as follows:

Quiksilver, Inc.
5600 Argosy Circle, Bldg. 100
Huntington Beach, CA 92649

**"A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."**

Each Party hereby expressly waives and relinquishes all rights and benefits under that section and any law of any jurisdiction of similar effect with respect to its/his release of any unknown or unsuspected claims it/he may have against the other Party.

Each Party agrees that it shall not commit any knowing and/or intentional act of slander or libel against the other Party. For sake of clarity and avoidance of doubt, any disclosure of true and factual statements or accounts of events shall not be a breach of this provision or this Agreement.

Please acknowledge your agreement to the terms of this letter by signing below and returning to the undersigned.

Sincerely,

**QS WHOLESALE, INC.**


By: _____
Name:
Title:

Acknowledged and agreed to this ____ day of _____, 2015

**ATHLETE**


By: _____
   **DANE REYNOLDS**

**EXHIBIT J**

**John A. Morris**

| | |
|---|---|
| **From:** | Scott Lindley <slindley@wmgllc.com> |
| **Sent:** | Monday, November 09, 2015 5:19 PM |
| **To:** | Francesca Koscielak |
| **Cc:** | Linnsey Caya |
| **Subject:** | RE: Dane Reynolds Termination Agreement |
| **Attachments:** | Termination Agreement (REYNOLDS)(OCT 2015) (QS Comments 9 NOV 2015).doc |

Hi Francesca:

It is really important to Dane to have the Internet content removed ASAP so I have moved that reference back to 2 weeks, rather than 1 month.  I also did some word-smith edits to the libel/slander provision.

**From:** Francesca Koscielak [mailto:Francesca.Koscielak@quiksilver.com]
**Sent:** Monday, November 09, 2015 12:49 PM
**To:** Scott Lindley <slindley@wmgllc.com>
**Cc:** Linnsey Caya <linnsey.caya@quiksilver.com>
**Subject:** RE: Dane Reynolds Termination Agreement

Hi Scott,

Thank you again for sending this over, we made just a few revisions in the attached.  Please feel free to give me a call if you would like to discuss further.

Thank you,
Francesca

**From:** Francesca Koscielak
**Sent:** Friday, November 06, 2015 4:41 PM
**To:** 'Scott Lindley'
**Cc:** Linnsey Caya
**Subject:** RE: Dane Reynolds Termination Agreement

Hi Scott,

Thank you for sending, we will review internally and get back to you with any further comments or concerns.

Best,
Francesca

**From:** Scott Lindley [mailto:slindley@wmgllc.com]
**Sent:** Friday, November 06, 2015 4:37 PM
**To:** Francesca Koscielak
**Cc:** Linnsey Caya
**Subject:** RE: Dane Reynolds Termination Agreement

Hi Francesca.  Attached is a revised draft of the termination agreement with some edits to narrow the non-disparagement provision.

Thanks,

Scott

**From:** Francesca Koscielak [mailto:Francesca.Koscielak@quiksilver.com]
**Sent:** Thursday, November 05, 2015 5:18 PM
**To:** Scott Lindley <slindley@wmgllc.com>
**Cc:** Linnsey Caya <linnsey.caya@quiksilver.com>
**Subject:** RE: Dane Reynolds Termination Agreement

Hi Scott,

Thank you for getting back to us so quickly. I just left you a voicemail; at your convenience, would you mind giving me a call back? You can reach me on my direct line, 714-889-5580.

Thank you,
Francesca

**From:** Scott Lindley [mailto:slindley@wmgllc.com]
**Sent:** Thursday, November 05, 2015 4:15 PM
**To:** Francesca Koscielak
**Cc:** Linnsey Caya
**Subject:** RE: Dane Reynolds Termination Agreement

Hi Francesca. Things are good; thanks for asking.

Our only issue is that we need to remove the non-disparagement provision. Not because Dane intends to go around disparaging QS and its employees, but as you know, Dane has always tried to be an open book with his fans. This is one of his traits that makes him so appealing to everyone in the surf industry, including QS. We don't want to have to quash his personality out of fear that he may cross a toe over the line somewhere.

Happy to discuss further if needed.

**From:** Francesca Koscielak [mailto:Francesca.Koscielak@quiksilver.com]
**Sent:** Thursday, November 05, 2015 1:42 PM
**To:** Scott Lindley <slindley@wmgllc.com>
**Cc:** Linnsey Caya <linnsey.caya@quiksilver.com>
**Subject:** Dane Reynolds Termination Agreement

Hi Scott,

I hope you are well. Attached please find the Termination Agreement for Dane. Please let us know if you have any questions or concerns.

Thank you,
Francesca

Francesca Koscielak
Legal Counsel
Quiksilver, Inc.
Direct: 714-889-5580| Mobile: 657-244-7626| 15202 Graham Street, Huntington Beach, CA 92649 | Francesca.Koscielak@Quiksilver.com

PRIVILEGED AND CONFIDENTIAL COMMUNICATION.
This email and any documents attached hereto are legally privileged and may contain confidential information. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.



November 5, 2015

*VIA E-MAIL*

Dane Reynolds
c/o Wasserman Media Group, LLC
~~2052 Corte del Nogal, Suite 150~~ 2251 Faraday Avenue, Suite 200
Carlsbad, California 9200~~811~~

Re:      **Termination of Quiksilver Sponsorship Agreement**

Dear Dane:

Reference is made to that certain Quiksilver Sponsorship Agreement by and between you, Dane
Reynolds ("Athlete"), and QS Wholesale, Inc. ("Sponsor") dated November 1, 2006, as amended
(the "Agreement"). Athlete and Sponsor may hereinafter be referred to together as the "Parties"
and individually as a "Party." This correspondence shall serve as confirmation of the Parties'
mutual agreement to terminate the Agreement effective as of October 31, 2015 (the "Termination
Date"). Capitalized terms not defined herein shall have the meaning ascribed to them in the
Agreement.

As of the Termination Date, and except as set forth herein, neither Party shall have any rights or
obligations to the other Party with respect to the Agreement. The Parties acknowledge and agree
no further payments or other consideration is owed or will become due to Athlete in connection
with the Agreement.

Sponsor hereby agrees that references to twelve (12) months under Section 11.3 of the Agreement
shall be revised to six (6) months from the Termination Date. Notwithstanding the foregoing,
Sponsor will use best efforts to remove substantially all Promotional Materials that feature
Athlete in the form of digital media content that is controlled by Sponsor (i.e. website profiles and
other content displayed via the Internet) within ~~one 1month~~two weeks of the Termination Date,
and all other materials within three (3) months of the Termination Date. For the avoidance of
doubt, this will not require Sponsor to remove past posts on Sponsor's social media pages which
may include Athlete. The Parties acknowledge and agree that nothing herein shall be construed
as in any way limiting or diminishing Sponsor's other rights upon termination as set forth in
Section 11.4 of the Agreement and such other provisions which survive termination.

For good and valuable consideration, the receipt and sufficiency of which are hereby
acknowledged, each Party agrees, on behalf of itself/himself, its/his heirs, executors and
administrators, successors and assigns, to waive and release all claims, known and unknown,
which it/he has or might otherwise have had against the other Party, its parent, affiliates and their
respective officers, directors, agents, employees, stockholders, insurers, attorneys and successors
arising prior to and including the Termination Date, including without limitation, all claims
relating in any way to any aspect of any federal, state or local law, regulation or ordinance or
public policy, contract, tort or property law, theory or any other cause of action whatsoever that
arose on or before the Termination Date.

In giving the above releases, which include claims which may be unknown to the Parties at
present, each Party acknowledges that it/he has read and understands Section 1542 of the
California Civil Code which reads as follows:

                                        **Quiksilver, Inc.**
                                        **5600 Argosy Circle, Bldg. 100**
                                        **Huntington Beach, CA 92649**

"**A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.**"

Each Party hereby expressly waives and relinquishes all rights and benefits under that section and any law of any jurisdiction of similar effect with respect to its/his release of any unknown or unsuspected claims it/he may have against the other Party.

Each Party agrees that it shall not ~~commit any~~ knowingly and/or intentional~~ly~~ ~~act of~~ slander or libel ~~against~~ the other Party. For sake of clarity and avoidance of doubt, any disclosure of true ~~and~~ or factual information, statements or accounts of events shall not ~~be a~~ breach of this provision or this Agreement.

Please acknowledge your agreement to the terms of this letter by signing below and returning to the undersigned.

Sincerely,

**QS WHOLESALE, INC.**

By: _____
Name:
Title:

Acknowledged and agreed to this _____ day of _____, 2015

**ATHLETE**

By: _____
   **DANE REYNOLDS**

**EXHIBIT K**

## John A. Morris

| | |
|---|---|
| **From:** | Scott Lindley <slindley@wmgllc.com> |
| **Sent:** | Monday, November 09, 2015 5:25 PM |
| **To:** | Linnsey Caya; Francesca Koscielak |
| **Subject:** | RE: Dane Reynolds Termination Agreement |

Ok, I can accept that.

**From:** Linnsey Caya [mailto:linnsey.caya@quiksilver.com]
**Sent:** Monday, November 09, 2015 2:25 PM
**To:** Scott Lindley <slindley@wmgllc.com>; Francesca Koscielak <Francesca.Koscielak@quiksilver.com>
**Subject:** RE: Dane Reynolds Termination Agreement

Can we get 3 weeks (which will account for about 2 weeks from the date of execution of the agreement)? We've already started removing, but haven't communicated to the far reaches of the Quiksilver universe and didn't want to until we were fully agreed.

**From:** Scott Lindley [mailto:slindley@wmgllc.com]
**Sent:** Monday, November 09, 2015 2:19 PM
**To:** Francesca Koscielak
**Cc:** Linnsey Caya
**Subject:** RE: Dane Reynolds Termination Agreement

Hi Francesca:

It is really important to Dane to have the Internet content removed ASAP so I have moved that reference back to 2 weeks, rather than 1 month.  I also did some word-smith edits to the libel/slander provision.

**From:** Francesca Koscielak [mailto:Francesca.Koscielak@quiksilver.com]
**Sent:** Monday, November 09, 2015 12:49 PM
**To:** Scott Lindley <slindley@wmgllc.com>
**Cc:** Linnsey Caya <linnsey.caya@quiksilver.com>
**Subject:** RE: Dane Reynolds Termination Agreement

Hi Scott,

Thank you again for sending this over, we made just a few revisions in the attached.  Please feel free to give me a call if you would like to discuss further.

Thank you,
Francesca

**From:** Francesca Koscielak
**Sent:** Friday, November 06, 2015 4:41 PM
**To:** 'Scott Lindley'
**Cc:** Linnsey Caya
**Subject:** RE: Dane Reynolds Termination Agreement

Hi Scott,

Thank you for sending, we will review internally and get back to you with any further comments or concerns.

Best,
Francesca

**From:** Scott Lindley [mailto:slindley@wmgllc.com]
**Sent:** Friday, November 06, 2015 4:37 PM
**To:** Francesca Koscielak
**Cc:** Linnsey Caya
**Subject:** RE: Dane Reynolds Termination Agreement

Hi Francesca. Attached is a revised draft of the termination agreement with some edits to narrow the non-disparagement provision.

Thanks,
Scott

**From:** Francesca Koscielak [mailto:Francesca.Koscielak@quiksilver.com]
**Sent:** Thursday, November 05, 2015 5:18 PM
**To:** Scott Lindley <slindley@wmgllc.com>
**Cc:** Linnsey Caya <linnsey.caya@quiksilver.com>
**Subject:** RE: Dane Reynolds Termination Agreement

Hi Scott,

Thank you for getting back to us so quickly. I just left you a voicemail; at your convenience, would you mind giving me a call back? You can reach me on my direct line, 714-889-5580.

Thank you,
Francesca

**From:** Scott Lindley [mailto:slindley@wmgllc.com]
**Sent:** Thursday, November 05, 2015 4:15 PM
**To:** Francesca Koscielak
**Cc:** Linnsey Caya
**Subject:** RE: Dane Reynolds Termination Agreement

Hi Francesca. Things are good; thanks for asking.

Our only issue is that we need to remove the non-disparagement provision. Not because Dane intends to go around disparaging QS and its employees, but as you know, Dane has always tried to be an open book with his fans. This is one of his traits that makes him so appealing to everyone in the surf industry, including QS. We don't want to have to quash his personality out of fear that he may cross a toe over the line somewhere.

Happy to discuss further if needed.

**From:** Francesca Koscielak [mailto:Francesca.Koscielak@quiksilver.com]
**Sent:** Thursday, November 05, 2015 1:42 PM
**To:** Scott Lindley <slindley@wmgllc.com>
**Cc:** Linnsey Caya <linnsey.caya@quiksilver.com>
**Subject:** Dane Reynolds Termination Agreement

Hi Scott,

I hope you are well.  Attached please find the Termination Agreement for Dane.  Please let us know if you have any questions or concerns.

Thank you,
Francesca


Francesca Koscielak
Legal Counsel
Quiksilver, Inc.
Direct: 714-889-5580| Mobile:  657-244-7626| 15202 Graham Street, Huntington Beach, CA 92649 | Francesca.Koscielak@Quiksilver.com

PRIVILEGED AND CONFIDENTIAL COMMUNICATION.
This email and any documents attached hereto are legally privileged and may contain confidential information.  If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.

**EXHIBIT L**

## John A. Morris

| | |
|---|---|
| **From:** | Scott Lindley <slindley@wmgllc.com> |
| **Sent:** | Tuesday, November 10, 2015 8:43 PM |
| **To:** | Francesca Koscielak |
| **Cc:** | Linnsey Caya; Blair Marlin |
| **Subject:** | RE: Dane Reynolds Termination Agreement |
| **Attachments:** | Termination Agreement (REYNOLDS)(OCT 2015) (FINAL)-signed.pdf |

Great. Attached is Dane's signed copy. Please circulate your counter-signed copy.

Thanks,
Scottt

**From:** Francesca Koscielak [mailto:Francesca.Koscielak@quiksilver.com]
**Sent:** Tuesday, November 10, 2015 5:36 PM
**To:** Scott Lindley <slindley@wmgllc.com>
**Cc:** Linnsey Caya <linnsey.caya@quiksilver.com>
**Subject:** RE: Dane Reynolds Termination Agreement

Hi Scott,

We confirmed that the invoice you circulated yesterday is being processed for payment.

Thank you,
Francesca

**From:** Scott Lindley [mailto:slindley@wmgllc.com]
**Sent:** Tuesday, November 10, 2015 6:00 AM
**To:** Francesca Koscielak; Linnsey Caya
**Subject:** RE: Dane Reynolds Termination Agreement

Yes, I believe so.

**From:** Francesca Koscielak [mailto:Francesca.Koscielak@quiksilver.com]
**Sent:** Monday, November 09, 2015 7:20 PM
**To:** Scott Lindley <slindley@wmgllc.com>; Linnsey Caya <linnsey.caya@quiksilver.com>
**Subject:** RE: Dane Reynolds Termination Agreement

Hi Scott,

Thank you for sending this over – has WMG already submitted this invoice to either our AP department or to our surf team manager?

Thank you,
Francesca

**From:** Scott Lindley [mailto:slindley@wmgllc.com]
**Sent:** Monday, November 09, 2015 3:14 PM
**To:** Francesca Koscielak; Linnsey Caya
**Subject:** RE: Dane Reynolds Termination Agreement

1

Thank you. I will get this signed. In the meantime, can we get confirmation that this last expense reimbursement from Dane is in process and scheduled for payment?

**From:** Francesca Koscielak [mailto:Francesca.Koscielak@quiksilver.com]
**Sent:** Monday, November 09, 2015 2:56 PM
**To:** Linnsey Caya <linnsey.caya@quiksilver.com>; Scott Lindley <slindley@wmgllc.com>
**Subject:** RE: Dane Reynolds Termination Agreement

Hi Scott,

Attached please find an updated agreement; if everything appears to be in order, I have also attached a clean copy for signature.

Thank you,
Francesca

**From:** Linnsey Caya
**Sent:** Monday, November 09, 2015 2:55 PM
**To:** Scott Lindley; Francesca Koscielak
**Subject:** RE: Dane Reynolds Termination Agreement

Thanks.
Francesca will send you a final version for signature.

**From:** Scott Lindley [mailto:slindley@wmgllc.com]
**Sent:** Monday, November 09, 2015 2:25 PM
**To:** Linnsey Caya; Francesca Koscielak
**Subject:** RE: Dane Reynolds Termination Agreement

Ok, I can accept that.

**From:** Linnsey Caya [mailto:linnsey.caya@quiksilver.com]
**Sent:** Monday, November 09, 2015 2:25 PM
**To:** Scott Lindley <slindley@wmgllc.com>; Francesca Koscielak <Francesca.Koscielak@quiksilver.com>
**Subject:** RE: Dane Reynolds Termination Agreement

Can we get 3 weeks (which will account for about 2 weeks from the date of execution of the agreement)? We've already started removing, but haven't communicated to the far reaches of the Quiksilver universe and didn't want to until we were fully agreed.

**From:** Scott Lindley [mailto:slindley@wmgllc.com]
**Sent:** Monday, November 09, 2015 2:19 PM
**To:** Francesca Koscielak
**Cc:** Linnsey Caya
**Subject:** RE: Dane Reynolds Termination Agreement

Hi Francesca:

It is really important to Dane to have the Internet content removed ASAP so I have moved that reference back to 2 weeks, rather than 1 month. I also did some word-smith edits to the libel/slander provision.

**From:** Francesca Koscielak [mailto:Francesca.Koscielak@quiksilver.com]
**Sent:** Monday, November 09, 2015 12:49 PM
**To:** Scott Lindley <slindley@wmgllc.com>
**Cc:** Linnsey Caya <linnsey.caya@quiksilver.com>
**Subject:** RE: Dane Reynolds Termination Agreement

Hi Scott,

Thank you again for sending this over, we made just a few revisions in the attached.  Please feel free to give me a call if you would like to discuss further.

Thank you,
Francesca

**From:** Francesca Koscielak
**Sent:** Friday, November 06, 2015 4:41 PM
**To:** 'Scott Lindley'
**Cc:** Linnsey Caya
**Subject:** RE: Dane Reynolds Termination Agreement

Hi Scott,

Thank you for sending, we will review internally and get back to you with any further comments or concerns.

Best,
Francesca

**From:** Scott Lindley [mailto:slindley@wmgllc.com]
**Sent:** Friday, November 06, 2015 4:37 PM
**To:** Francesca Koscielak
**Cc:** Linnsey Caya
**Subject:** RE: Dane Reynolds Termination Agreement

Hi Francesca.  Attached is a revised draft of the termination agreement with some edits to narrow the non-disparagement provision.

Thanks,
Scott

**From:** Francesca Koscielak [mailto:Francesca.Koscielak@quiksilver.com]
**Sent:** Thursday, November 05, 2015 5:18 PM
**To:** Scott Lindley <slindley@wmgllc.com>
**Cc:** Linnsey Caya <linnsey.caya@quiksilver.com>
**Subject:** RE: Dane Reynolds Termination Agreement

Hi Scott,

Thank you for getting back to us so quickly.  I just left you a voicemail; at your convenience, would you mind giving me a call back? You can reach me on my direct line, 714-889-5580.

Thank you,
Francesca

3

**From:** Scott Lindley [mailto:slindley@wmgllc.com]
**Sent:** Thursday, November 05, 2015 4:15 PM
**To:** Francesca Koscielak
**Cc:** Linnsey Caya
**Subject:** RE: Dane Reynolds Termination Agreement

Hi Francesca. Things are good; thanks for asking.

Our only issue is that we need to remove the non-disparagement provision. Not because Dane intends to go around disparaging QS and its employees, but as you know, Dane has always tried to be an open book with his fans. This is one of his traits that makes him so appealing to everyone in the surf industry, including QS. We don't want to have to quash his personality out of fear that he may cross a toe over the line somewhere.

Happy to discuss further if needed.

**From:** Francesca Koscielak [mailto:Francesca.Koscielak@quiksilver.com]
**Sent:** Thursday, November 05, 2015 1:42 PM
**To:** Scott Lindley <slindley@wmgllc.com>
**Cc:** Linnsey Caya <linnsey.caya@quiksilver.com>
**Subject:** Dane Reynolds Termination Agreement

Hi Scott,

I hope you are well. Attached please find the Termination Agreement for Dane. Please let us know if you have any questions or concerns.

Thank you,
Francesca

Francesca Koscielak
Legal Counsel
Quiksilver, Inc.
Direct: 714-889-5580| Mobile:  657-244-7626| 15202 Graham Street, Huntington Beach, CA 92649 | Francesca.Koscielak@Quiksilver.com

PRIVILEGED AND CONFIDENTIAL COMMUNICATION.
This email and any documents attached hereto are legally privileged and may contain confidential information.  If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.

4



November 5, 2015

*VIA E-MAIL*

Dane Reynolds
c/o Wasserman Media Group, LLC
2251 Faraday Avenue, Suite 200
Carlsbad, California 92008

     Re:    **Termination of Quiksilver Sponsorship Agreement**

Dear Dane:

Reference is made to that certain Quiksilver Sponsorship Agreement by and between you, Dane Reynolds ("Athlete"), and QS Wholesale, Inc. ("Sponsor") dated November 1, 2006, as amended (the "Agreement"). Athlete and Sponsor may hereinafter be referred to together as the "Parties" and individually as a "Party." This correspondence shall serve as confirmation of the Parties' mutual agreement to terminate the Agreement effective as of October 31, 2015 (the "Termination Date"). Capitalized terms not defined herein shall have the meaning ascribed to them in the Agreement.

As of the Termination Date, and except as set forth herein, neither Party shall have any rights or obligations to the other Party with respect to the Agreement. The Parties acknowledge and agree no further payments or other consideration is owed or will become due to Athlete in connection with the Agreement.

Sponsor hereby agrees that references to twelve (12) months under Section 11.3 of the Agreement shall be revised to six (6) months from the Termination Date. Notwithstanding the foregoing, Sponsor will use best efforts to remove substantially all Promotional Materials that feature Athlete in the form of digital media content that is controlled by Sponsor (i.e. website profiles and other content displayed via the Internet) within three weeks of the Termination Date, and all other materials within three (3) months of the Termination Date. For the avoidance of doubt, this will not require Sponsor to remove past posts on Sponsor's social media pages which may include Athlete. The Parties acknowledge and agree that nothing herein shall be construed as in any way limiting or diminishing Sponsor's other rights upon termination as set forth in Section 11.4 of the Agreement and such other provisions which survive termination.

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each Party agrees, on behalf of itself/himself, its/his heirs, executors and administrators, successors and assigns, to waive and release all claims, known and unknown, which it/he has or might otherwise have had against the other Party, its parent, affiliates and their respective officers, directors, agents, employees, stockholders, insurers, attorneys and successors arising prior to and including the Termination Date, including without limitation, all claims relating in any way to any aspect of any federal, state or local law, regulation or ordinance or public policy, contract, tort or property law, theory or any other cause of action whatsoever that arose on or before the Termination Date.

In giving the above releases, which include claims which may be unknown to the Parties at present, each Party acknowledges that it/he has read and understands Section 1542 of the California Civil Code which reads as follows:

                                              **Quiksilver, Inc.**
                                              **5600 Argosy Circle, Bldg. 100**
                                                **Huntington Beach, CA 92649**

"A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

Each Party hereby expressly waives and relinquishes all rights and benefits under that section and any law of any jurisdiction of similar effect with respect to its/his release of any unknown or unsuspected claims it/he may have against the other Party.

Each Party agrees that it shall not knowingly and/or intentionally slander or libel the other Party. For sake of clarity and avoidance of doubt, any disclosure of true or factual information, statements or accounts of events shall not breach this provision or the Agreement.

Please acknowledge your agreement to the terms of this letter by signing below and returning to the undersigned.

Sincerely,

**QS WHOLESALE, INC.**


By: _____
Name:
Title:

Acknowledged and agreed to this ____ day of _____, 2015

**ATHLETE**

By: _____
    **DANE REYNOLDS**

**EXHIBIT M**

**John A. Morris**

| | |
|---|---|
| **From:** | Francesca Koscielak <Francesca.Koscielak@quiksilver.com> |
| **Sent:** | Wednesday, November 11, 2015 1:39 PM |
| **To:** | 'Scott Lindley' |
| **Cc:** | Linnsey Caya; 'Blair Marlin' |
| **Subject:** | RE: Dane Reynolds Termination Agreement |
| **Attachments:** | FULLY EXECUTED TERMINATION AGREEMENT (REYNOLDS).pdf |

Hi Scott,

Attached please find a fully executed copy of Dane's Termination Agreement.

Please let me know if you have any questions or concerns.

Thank you,
Francesca

**From:** Scott Lindley [mailto:slindley@wmgllc.com]
**Sent:** Tuesday, November 10, 2015 5:43 PM
**To:** Francesca Koscielak
**Cc:** Linnsey Caya; Blair Marlin
**Subject:** RE: Dane Reynolds Termination Agreement

Great. Attached is Dane's signed copy. Please circulate your counter-signed copy.

Thanks,
Scottt

**From:** Francesca Koscielak [mailto:Francesca.Koscielak@quiksilver.com]
**Sent:** Tuesday, November 10, 2015 5:36 PM
**To:** Scott Lindley <slindley@wmgllc.com>
**Cc:** Linnsey Caya <linnsey.caya@quiksilver.com>
**Subject:** RE: Dane Reynolds Termination Agreement

Hi Scott,

We confirmed that the invoice you circulated yesterday is being processed for payment.

Thank you,
Francesca

**From:** Scott Lindley [mailto:slindley@wmgllc.com]
**Sent:** Tuesday, November 10, 2015 6:00 AM
**To:** Francesca Koscielak; Linnsey Caya
**Subject:** RE: Dane Reynolds Termination Agreement

Yes, I believe so.

**From:** Francesca Koscielak [mailto:Francesca.Koscielak@quiksilver.com]
**Sent:** Monday, November 09, 2015 7:20 PM

**To:** Scott Lindley <slindley@wmgllc.com>; Linnsey Caya <linnsey.caya@quiksilver.com>
**Subject:** RE: Dane Reynolds Termination Agreement

Hi Scott,

Thank you for sending this over – has WMG already submitted this invoice to either our AP department or to our surf team manager?

Thank you,
Francesca

**From:** Scott Lindley [mailto:slindley@wmgllc.com]
**Sent:** Monday, November 09, 2015 3:14 PM
**To:** Francesca Koscielak; Linnsey Caya
**Subject:** RE: Dane Reynolds Termination Agreement

Thank you. I will get this signed. In the meantime, can we get confirmation that this last expense reimbursement from Dane is in process and scheduled for payment?

**From:** Francesca Koscielak [mailto:Francesca.Koscielak@quiksilver.com]
**Sent:** Monday, November 09, 2015 2:56 PM
**To:** Linnsey Caya <linnsey.caya@quiksilver.com>; Scott Lindley <slindley@wmgllc.com>
**Subject:** RE: Dane Reynolds Termination Agreement

Hi Scott,

Attached please find an updated agreement; if everything appears to be in order, I have also attached a clean copy for signature.

Thank you,
Francesca

**From:** Linnsey Caya
**Sent:** Monday, November 09, 2015 2:55 PM
**To:** Scott Lindley; Francesca Koscielak
**Subject:** RE: Dane Reynolds Termination Agreement

Thanks.
Francesca will send you a final version for signature.

**From:** Scott Lindley [mailto:slindley@wmgllc.com]
**Sent:** Monday, November 09, 2015 2:25 PM
**To:** Linnsey Caya; Francesca Koscielak
**Subject:** RE: Dane Reynolds Termination Agreement

Ok, I can accept that.

**From:** Linnsey Caya [mailto:linnsey.caya@quiksilver.com]
**Sent:** Monday, November 09, 2015 2:25 PM
**To:** Scott Lindley <slindley@wmgllc.com>; Francesca Koscielak <Francesca.Koscielak@quiksilver.com>
**Subject:** RE: Dane Reynolds Termination Agreement

Can we get 3 weeks (which will account for about 2 weeks from the date of execution of the agreement)? We've already started removing, but haven't communicated to the far reaches of the Quiksilver universe and didn't want to until we were fully agreed.

**From:** Scott Lindley [mailto:slindley@wmgllc.com]
**Sent:** Monday, November 09, 2015 2:19 PM
**To:** Francesca Koscielak
**Cc:** Linnsey Caya
**Subject:** RE: Dane Reynolds Termination Agreement

Hi Francesca:

It is really important to Dane to have the Internet content removed ASAP so I have moved that reference back to 2 weeks, rather than 1 month. I also did some word-smith edits to the libel/slander provision.

**From:** Francesca Koscielak [mailto:Francesca.Koscielak@quiksilver.com]
**Sent:** Monday, November 09, 2015 12:49 PM
**To:** Scott Lindley <slindley@wmgllc.com>
**Cc:** Linnsey Caya <linnsey.caya@quiksilver.com>
**Subject:** RE: Dane Reynolds Termination Agreement

Hi Scott,

Thank you again for sending this over, we made just a few revisions in the attached. Please feel free to give me a call if you would like to discuss further.

Thank you,
Francesca

**From:** Francesca Koscielak
**Sent:** Friday, November 06, 2015 4:41 PM
**To:** 'Scott Lindley'
**Cc:** Linnsey Caya
**Subject:** RE: Dane Reynolds Termination Agreement

Hi Scott,

Thank you for sending, we will review internally and get back to you with any further comments or concerns.

Best,
Francesca

**From:** Scott Lindley [mailto:slindley@wmgllc.com]
**Sent:** Friday, November 06, 2015 4:37 PM
**To:** Francesca Koscielak
**Cc:** Linnsey Caya
**Subject:** RE: Dane Reynolds Termination Agreement

Hi Francesca. Attached is a revised draft of the termination agreement with some edits to narrow the non-disparagement provision.

Thanks,
Scott

**From:** Francesca Koscielak [mailto:Francesca.Koscielak@quiksilver.com]
**Sent:** Thursday, November 05, 2015 5:18 PM
**To:** Scott Lindley <slindley@wmgllc.com>
**Cc:** Linnsey Caya <linnsey.caya@quiksilver.com>
**Subject:** RE: Dane Reynolds Termination Agreement

Hi Scott,

Thank you for getting back to us so quickly. I just left you a voicemail; at your convenience, would you mind giving me a call back? You can reach me on my direct line, 714-889-5580.

Thank you,
Francesca

---

**From:** Scott Lindley [mailto:slindley@wmgllc.com]
**Sent:** Thursday, November 05, 2015 4:15 PM
**To:** Francesca Koscielak
**Cc:** Linnsey Caya
**Subject:** RE: Dane Reynolds Termination Agreement

Hi Francesca. Things are good; thanks for asking.

Our only issue is that we need to remove the non-disparagement provision. Not because Dane intends to go around disparaging QS and its employees, but as you know, Dane has always tried to be an open book with his fans. This is one of his traits that makes him so appealing to everyone in the surf industry, including QS. We don't want to have to quash his personality out of fear that he may cross a toe over the line somewhere.

Happy to discuss further if needed.

**From:** Francesca Koscielak [mailto:Francesca.Koscielak@quiksilver.com]
**Sent:** Thursday, November 05, 2015 1:42 PM
**To:** Scott Lindley <slindley@wmgllc.com>
**Cc:** Linnsey Caya <linnsey.caya@quiksilver.com>
**Subject:** Dane Reynolds Termination Agreement

Hi Scott,

I hope you are well. Attached please find the Termination Agreement for Dane. Please let us know if you have any questions or concerns.

Thank you,
Francesca

Francesca Koscielak
Legal Counsel
Quiksilver, Inc.
Direct: 714-889-5580| Mobile: 657-244-7626| 15202 Graham Street, Huntington Beach, CA 92649 | Francesca.Koscielak@Quiksilver.com

PRIVILEGED AND CONFIDENTIAL COMMUNICATION.
This email and any documents attached hereto are legally privileged and may contain confidential information. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.

4



November 5, 2015

*VIA E-MAIL*

Dane Reynolds
c/o Wasserman Media Group, LLC
2251 Faraday Avenue, Suite 200
Carlsbad, California 92008

Re:    **Termination of Quiksilver Sponsorship Agreement**

Dear Dane:

Reference is made to that certain Quiksilver Sponsorship Agreement by and between you, Dane
Reynolds ("Athlete"), and QS Wholesale, Inc. ("Sponsor") dated November 1, 2006, as amended
(the "Agreement"). Athlete and Sponsor may hereinafter be referred to together as the "Parties"
and individually as a "Party." This correspondence shall serve as confirmation of the Parties'
mutual agreement to terminate the Agreement effective as of October 31, 2015 (the "Termination
Date"). Capitalized terms not defined herein shall have the meaning ascribed to them in the
Agreement.

As of the Termination Date, and except as set forth herein, neither Party shall have any rights or
obligations to the other Party with respect to the Agreement. The Parties acknowledge and agree
no further payments or other consideration is owed or will become due to Athlete in connection
with the Agreement.

Sponsor hereby agrees that references to twelve (12) months under Section 11.3 of the Agreement
shall be revised to six (6) months from the Termination Date. Notwithstanding the foregoing,
Sponsor will use best efforts to remove substantially all Promotional Materials that feature
Athlete in the form of digital media content that is controlled by Sponsor (i.e. website profiles
and other content displayed via the Internet) within three weeks of the Termination Date, and all
other materials within three (3) months of the Termination Date. For the avoidance of doubt, this
will not require Sponsor to remove past posts on Sponsor's social media pages which may
include Athlete. The Parties acknowledge and agree that nothing herein shall be construed as in
any way limiting or diminishing Sponsor's other rights upon termination as set forth in Section
11.4 of the Agreement and such other provisions which survive termination.

For good and valuable consideration, the receipt and sufficiency of which are hereby
acknowledged, each Party agrees, on behalf of itself/himself, its/his heirs, executors and
administrators, successors and assigns, to waive and release all claims, known and unknown,
which it/he has or might otherwise have had against the other Party, its parent, affiliates and their
respective officers, directors, agents, employees, stockholders, insurers, attorneys and successors
arising prior to and including the Termination Date, including without limitation, all claims
relating in any way to any aspect of any federal, state or local law, regulation or ordinance or
public policy, contract, tort or property law, theory or any other cause of action whatsoever that
arose on or before the Termination Date.

In giving the above releases, which include claims which may be unknown to the Parties at
present, each Party acknowledges that it/he has read and understands Section 1542 of the
California Civil Code which reads as follows:

Quiksilver, Inc.
5600 Argosy Circle, Bldg. 100
Huntington Beach, CA 92649

> **"A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."**

Each Party hereby expressly waives and relinquishes all rights and benefits under that section and any law of any jurisdiction of similar effect with respect to its/his release of any unknown or unsuspected claims it/he may have against the other Party.

Each Party agrees that it shall not knowingly and/or intentionally slander or libel the other Party. For sake of clarity and avoidance of doubt, any disclosure of true or factual information, statements or accounts of events shall not breach this provision or the Agreement.

Please acknowledge your agreement to the terms of this letter by signing below and returning to the undersigned.

Sincerely,

**QS WHOLESALE, INC.**

By: _____

Name:
Title: AGNES - CEO

Acknowledged and agreed to this 10TH day of November , 2015

**ATHLETE**

By: _____
**DANE REYNOLDS**