IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| QUICKSILVER, INC., *et al.*, | Case No. 15-11880 (BLS) |
| Reorganized Debtors.[1] | Jointly Administered |
| | Hearing: August 11, 2016 at 10:00 a.m. |

**AFFIDAVIT OF BILL JACKSON IN SUPPORT OF
DISPLAY IT, INC.'S OBJECTION TO THE REORGANIZED
DEBTOR'S SIXTH OMNIBUS CLAIM OBJECTION RE CLAIM NO. 841**

I, Bill Jackson, declare and state as follows:

1. I am the Vice President of Finance for claimant DisplayIt, Inc. ("DisplayIt"). The following facts are true to the best of my own personal knowledge, except where stated on information and belief, and as to those facts, I believe them to be true. If called as a witness, I could and would testify competently to the facts set forth herein. I am over 18 years of age.

2. I submit this affidavit in support of DisplayIt's objection to the *Reorganized Debtors' Sixth Omnibus Objection, Pursuant to Sections 105 and 50s of the Bankruptcy Code* [D.I. 1034] (the "Claim Objection") filed by Quiksilver, Inc., et al., the reorganized debtors in the above-captioned chapter 11 bankruptcy case ("Quiksilver").

3. I have been employed by DisplayIt as its Vice President of Finance since October 2007. In my position, I am responsible for the financial planning and budget management

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

functions of DisplayIt, and to ensure company accounting procedures and reporting conform to general accepted accounting principles. I am responsible for DisplayIt's accounting functions, including the payment of vendors and collection of accounts receivable. I oversee the custodians of the books, records, and files of DisplayIt (the "Records") as they pertain to Quiksilver and its affiliated debtors, and the transactions at issue. I am familiar with the manner in which the Records are prepared and maintained.

4. I am informed and believe that (i) the Records constitute writings taken or made and kept in the course of the regularly conducted business activity of DisplayIt; (ii) it is the regular practice of DisplayIt to have these Records made, kept, and preserved; (iii) such Records are made at or near the time of the acts or events recorded, by employees or contractors of DisplayIt with a business duty to do so; and (iv) are made by, or are made from information transmitted by employees or contractors of DisplayIt with personal knowledge of the acts and events recorded therein and with a business duty to so record such acts and events. DisplayIt operates in reliance upon these procedures. In my position I have knowledge of the Records and how DisplayIt records and accounts transactions with the Debtor.

5. DisplayIt designs and manufactures for its clients custom-made structural branding solutions, including retail storefronts, displays, fixtures, furniture, wall sections, cash wraps, tables, gondolas, point of purchase displays, branding aesthetics, signs, cabinets, merchandise hardware, interactive audio-visual displays, company branding & logo design. Quiksilver was one of DisplayIt's retail clients.

6. Periodically, Quiksilver would order a custom-designed retail display from DisplayIt for one of Quiksilver's retail locations. Upon receipt of an order from Quiksilver for a new display for a particular location, DisplayIt would begin designing and fabricating the display

2

unit. Prior to the completion of the display unit, DisplayIt would send an invoice to Quicksilver, specifically QS Retail, Inc. Upon completion of the display unit, Quiksilver would arrange for the unit to be transported via a bulk item shipping carrier to the location selected by Quiksilver.

7. Attached hereto as Exhibit 1 is a true and complete copy of an accounting report that I prepared from DisplayIt's Records which shows Quiksilver's outstanding invoices, the date and amount of the open balance for the particular invoice, and the shipping address for the display unit tied to that particular invoice. The report also indicates whether the display unit had been shipped or whether the display unit was still a work in progress.

8. Exhibit 1 indicates that DisplayIt's total claim against Quiksilver is $1,098,672.83 consisting of (i) a claim for $559,408.67 for display units that were completed and shipped to Quiksilver's designated locations, and (ii) a claim for $539,264.16 for display units that were in the middle of production and had not yet been either completed or shipped to Quiksilver. Of the $559,408.67 in total claims related to shipped units, $420,839.39 of that amount related to units shipped and received by Quiksilver within 20 days of the September 9, 2015 petition date (the "Petition Date").

9. The delivery dates on the report is based upon my review of the Records and the projected shipping time for such display unit. Based on those delivery dates, I annotated the report to set forth whether the display unit was delivered to Quiksilver within the 20 day period prior to Quiksilver's Petition Date. Attached hereto as Exhibit 2 is a true and complete copy of a chart that I prepared indicating the respective delivery dates for each of Quiksilver's retail locations.

10. Attached hereto as Exhibit 3 are true and complete copies of shipping documents that I obtained from DisplayIt's Records indicating that certain display units were either shipped

3

by or received within the applicable 20 day period. Attached hereto as Exhibit 4 is a true and complete copy of a report that I prepared summarizing the documents included in Exhibit 3 and tying those display units to the outstanding invoices due from Quiksilver. I am in the process of obtain further documentation through DisplayIt and its shipping partners to further substantiate DisplayIt's $420,839.39 administrative claim.

11.    Attached hereto as Exhibit 5 is a true and complete copy of a letter that I received from John Jackson, the former Vice President of Retail Design and Construction for Quiksilver, indicating that DisplayIt had delivered retail displays to designated Quiksilver stores between August 21, 2015 and September 9, 2015.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct based on my review of Claimant's records, and if called as a witness I could and would testify competently thereto.

Executed on August 3, 2016 at Irvine, California.

_____
BILL JACKSON