# EXHIBIT 1

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release ("Agreement") is entered into as of this 15th day of January 2017 by and between (i) Quiksilver, Inc., *et al.*[1] (collectively, the "Reorganized Debtors" and, prior to the Effective Date, as defined below, the "Debtors"), and (ii) (a) Liam Devoy ("Devoy"); (b) Nicholas Drake ("Drake"); (c) Anda Druva ("Druva"); (d) Steve Finney ("Finney"); (e) Scott Fullerton ("Fullerton"); (f) Pamela Gobright ("Gobright"); (g) John Graham ("J. Graham"); (h) Kelley C. Graham ("K. Graham"); (i) Brad Holman ("Holman"); (j) Kristina Kastelan ("Kastelan"); (k) Kelly Ketner ("Ketner"); (l) Jennifer Kutsch ("Kutsch"); (m) Viki Love ("Love"); (n) Kerstin N. Mazzone ("Mazzone"); (o) Andrew P. Mooney ("Mooney"); (p) Carol Nielsen ("Nielsen"); (q) Robert Oberschelp ("Oberschelp"); (r) Joe O'Neil ("O'Neil"); (s) Christina G. Rice ("Rice"); (t) Natalie Rigolet ("Rigolet"); (u) Chris Schreiber ("Schreiber"); (v) Lance Stern ("Stern"); (w) Steve Swokowski ("Swokowski"); (x) Roberta Turchi ("Turchi"); (y) Alan Vickers ("Vickers"); and (z) Thomas Webster ("Webster," and, collectively with Devoy, Drake, Durva, Finney, Fullerton, Gobright, J. Graham, K. Graham, Holman, Kastelan, Ketner, Kutsch, Love, Mazzone, Mooney, Nielsen, Oberschelp, O'Neil, Rice, Rigolet, Schreiber, Stern, Swokowski, Turchi, and Vickers the "Former Employees"). The Reorganized Debtors and the Former Employees may be jointly referred to as the "Parties" and individually as a "Party."

WHEREAS, prior to the Petition Date (as defined below), the Debtors employed each of the Former Employees in various capacities; and

WHEREAS, each of the Former Employees was terminated prior to the Petition Date (as defined below); and

WHEREAS, on September 9, 2015 (the "Petition Date"), the Debtors each commenced a case by filing a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), Case No. 15-11880 (the "Bankruptcy Case"); and

WHEREAS, on the Petition Date the Debtors filed the *Debtors' First Omnibus Motion for Order Pursuant to Bankruptcy Code Sections 105(a) and 365(a) and Bankruptcy Rules 6006 and 9014 Authorizing Rejection of Certain Executory Contracts* (the "Rejection Motion") [Docket No. 27], which sought the rejection of certain separation agreements (the "Separation Agreements" and, individually, a "Separation Agreement") with Devoy (dated 12/9/14); Drake (dated 10/8/14); Fullerton (dated 3/20/15); J. Graham (dated 4/1/15); K. Graham (dated 5/1/15); Holman (dated 10/16/14); Ketner (dated 7/21/15); Kutsch (dated 3/20/15); Love (dated 7/22/15); Mazzone (dated 10/16/14); Mooney (dated 3/26/15); Schreiber (dated 6/2/15); Stern (dated 2/24/15); Vickers (dated 4/1/15); and Webster (dated 1/16/15);  the Rejection

---

[1]  The Reorganized Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Quiksilver, Inc. (9426), QS Wholesale, Inc. (8795), DC Direct, Inc. (8364), DC Shoes, Inc. (0965), Fidra, Inc. (8945), Hawk Designs, Inc. (1121), Mt. Waimea, Inc. (5846), Q.S. Optics, Inc. (2493), QS Retail, Inc. (0505), Quiksilver Entertainment, Inc. (9667), and  Quiksilver Wetsuits, Inc. (9599). The address of the Debtors' corporate headquarters is 5600 Argosy Circle, Huntington Beach, California 92649.

Motion also sought rejection of prepetition employment agreements with Finney (dated 4/15/13); Gobright (dated 3/24/14); Oberschelp (dated 10/2/13); O'Neil (dated 3/27/14); and Swokowski (dated 9/26/11); and

WHEREAS, Drake filed the *Objection to Debtors' First Omnibus Motion for Order Pursuant to Bankruptcy Code Sections 105(a) and 365(a) and Bankruptcy Rules 6006 and 9014 Authorizing Rejection of Certain Executory Contracts* (the "Rejection Objection") [Docket No. 195], objecting to the Rejection Motion and arguing that his Separation Agreement was not executory and not subject to rejection, which Rejection Objection was joined by certain other Former Employees [Docket No. 222]; and

WHEREAS, on December 1, 2015, the Bankruptcy Court entered the *Amended First Order Pursuant to Bankruptcy Code Sections 105(a) and 365(a) and Bankruptcy Rules 6006 and 9014 Authorizing Rejection of Certain Executory Contracts* (the "Rejection Order") [Docket No. 513] granting the relief requested in the Rejection Motion, but reserving the determination as to whether the agreements with the Former Employees are executory to be made "in connection with the claims allowance or adjudication process . . . ."; and

WHEREAS, on November 23, 2015, Devoy filed that proof of claim assigned claim number 737 ("Claim 737") asserting an administrative claim on account of unpaid wages in the amount of $323,338.24, plus certain other amounts; and

WHEREAS, on November 23, 2015, Drake filed that proof of claim assigned claim number 766 ("Claim 766") asserting an administrative claim on account of unpaid wages in the amount of $354,166.70, plus certain other amounts; and

WHEREAS, on November 23, 2015, Druva filed that proof of claim assigned claim number 765 ("Claim 765") asserting an administrative claim on account of unpaid wages in the amount of $131,381.00, plus certain other amounts; and

WHEREAS, on November 23, 2015, Finney filed that proof of claim assigned claim number 764 ("Claim 764") asserting an administrative claim on account of unpaid wages in the amount of $296,071.42, plus certain other amounts; and

WHEREAS, on November 23, 2015, Fullerton filed that proof of claim assigned claim number 762 ("Claim 762") asserting an administrative claim on account of unpaid wages in the amount of $175,000.05, plus certain other amounts; and

WHEREAS, on November 23, 2015, Gobright filed that proof of claim assigned claim number 738 ("Claim 738") asserting an administrative claim on account of unpaid wages in the amount of $120,858.34, plus certain other amounts; and

WHEREAS, on November 23, 2015, J. Graham filed that proof of claim assigned claim number 743 ("Claim 743") asserting an administrative claim on account of unpaid wages in the amount of $307,666.70, plus certain other amounts; and

WHEREAS, on November 23, 2015, K. Graham filed that proof of claim assigned claim number 739 ("Claim 739") asserting an administrative claim on account of unpaid wages in the amount of $81,784.84, plus certain other amounts; and

WHEREAS, on November 23, 2015, Holman filed that proof of claim assigned claim number 736 ("Claim 736") asserting an administrative claim on account of unpaid wages in the amount of $72,916.67, plus certain other amounts; and

WHEREAS, on November 23, 2015, Kastelan filed that proof of claim assigned claim number 763 ("Claim 763") asserting an administrative claim on account of unpaid wages in the amount of $181,775.00, plus certain other amounts; and

WHEREAS, on November 23, 2015, Ketner filed that proof of claim assigned claim number 761 ("Claim 761") asserting an administrative claim on account of unpaid wages in the amount of $138,465.34, plus certain other amounts; and

WHEREAS, on November 23, 2015, Kutsch filed that proof of claim assigned claim number 758 ("Claim 758") asserting an administrative claim on account of unpaid wages in the amount of $33,750.00, plus certain other amounts; and

WHEREAS, on November 23, 2015, Love filed that proof of claim assigned claim number 741 ("Claim 741") asserting an administrative claim on account of unpaid wages in the amount of $93,678.10, plus certain other amounts, which Claim 741 was amended by that proof of claim assigned claim number 879 ("Claim 879"), filed on January 29, 2016, and asserting an administrative claim on account of unpaid wages in the amount of $92,256.70, plus certain other amounts; and

WHEREAS, on November 23, 2015, Mazzone filed that proof of claim assigned claim number 757 ("Claim 757") asserting an administrative claim on account of unpaid wages in the amount of $314,749.95, plus certain other amounts; and

WHEREAS, on November 23, 2015, Mooney filed that proof of claim assigned claim number 755 ("Claim 755") asserting an administrative claim on account of unpaid wages in the amount of $2,296,066.52, plus certain other amounts; and

WHEREAS, on November 23, 2015, Nielsen filed that proof of claim assigned claim number 753 ("Claim 753") asserting an administrative claim on account of unpaid wages in the amount of $93,451.26, plus certain other amounts; and

WHEREAS, on November 23, 2015, Oberschelp filed that proof of claim assigned claim number 752 ("Claim 752") asserting an administrative claim on account of unpaid wages in the amount of $315,841.16, plus certain other amounts; and

WHEREAS, on November 23, 2015, O'Neil filed that proof of claim assigned claim number 747 ("Claim 747") asserting an administrative claim on account of unpaid wages in the amount of $187,500.00, plus certain other amounts; and

3

WHEREAS, on November 23, 2015, Rice filed that proof of claim assigned claim number 754 ("Claim 754") asserting an administrative claim on account of unpaid wages in the amount of $71,829.65, plus certain other amounts; and

WHEREAS, on November 23, 2015, Rigolet filed that proof of claim assigned claim number 746 ("Claim 746") asserting an administrative claim on account of unpaid wages in the amount of $216,474.00, plus certain other amounts; and

WHEREAS, on November 23, 2015, Schreiber filed that proof of claim assigned claim number 742 ("Claim 742") asserting an administrative claim on account of unpaid wages in the amount of $352,641.98, plus certain other amounts; and

WHEREAS, on November 23, 2015, Stern filed that proof of claim assigned claim number 740 ("Claim 740") asserting an administrative claim on account of unpaid wages in the amount of $17,293.77, plus certain other amounts; and

WHEREAS, on November 23, 2015, Swokowski filed that proof of claim assigned claim number 745 ("Claim 745") asserting an administrative claim on account of unpaid wages in the amount of $250,000, plus certain other amounts; and

WHEREAS, on November 23, 2015, Turchi filed that proof of claim assigned claim number 748 ("Claim 748") asserting an administrative claim on account of unpaid wages in the amount of $178,162.76, plus certain other amounts; and

WHEREAS, on November 23, 2015, Vickers filed that proof of claim assigned claim number 749 ("Claim 749") asserting an administrative claim on account of unpaid wages in the amount of $562,499.91, plus certain other amounts; and

WHEREAS, on November 23, 2015, Webster filed that proof of claim assigned claim number 750 ("Claim 750") asserting an administrative claim on account of unpaid wages in the amount of $124,583.29, plus certain other amounts; and

WHEREAS, on January 14, 2016, the Former Employees filed a limited objection to confirmation of the Plan (as defined below) (the "Plan Objection") [Docket No. 657], which the Debtors opposed in their brief in support of confirmation [Docket No. 711];

WHEREAS, on January 26, 2016, the Former Employees filed the *Motion of Former Employees for Allowance and Payment of Administrative Expense Priority Claim Pursuant to 11 U.S.C. § 503(b)(1)(A)* [Docket No. 719] (the "Administrative Claim Motion," and, together with Claim 737, Claim 766, Claim 765, Claim 764, Claim 762, Claim 738, Claim 743, Claim 739, Claim 736, Claim 763, Claim 761, Claim 758, Claim 741, Claim 879, Claim 757, Claim 755, Claim 753, Claim 752, Claim 747, Claim 754, Claim 746, Claim 742, Claim 740, Claim 745, Claim 748, Claim 749, and Claim 750, the "Former Employee Administrative Claims"), seeking, *inter alia*, and administrative claim on behalf of the Former Employees in the amount of not less than $7,291,946.65; and

4

WHEREAS, on January 29, 2016, the Bankruptcy Court overruled the Plan Objection and entered an order (the "Confirmation Order") [Docket No. 740] confirming *The Third Amended Joint Chapter 11 Plan of Reorganization of Quiksilver, Inc. and its Affiliated Debtors and Debtors in Possession* (including all supplements and amendments thereto, the "Plan"); and

WHEREAS, the effective date of the Plan was February 11, 2016 (the "Plan Effective Date"); and

WHEREAS, on February 12, 2016, the Former Employees filed the *Notice of Appeal* [Docket No. 795] appealing the Confirmation Order, which matter is pending as Civil Action Number 16-cv-00090-LPS (the "Appeal"); and

WHEREAS, the Parties dispute the allowable amount and the priority of the Former Employee Administrative Claims, dispute any further relief in connection with the Rejection Order, and dispute the merits of the Appeal; and

WHEREAS section 8.2 of the Plan authorizes the Reorganized Debtors (as defined in the Plan) to settle or compromise Disputed Claims (as defined in the Plan) without any further notice to or action, order, or approval by the Bankruptcy Court and to administer and adjust the claims register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court; and

WHEREAS, the Parties desire to resolve all issues with respect to the Rejection Order, Former Employee Administrative Claims, and the Appeal without admission as to any claims or defenses and solely to avoid the costs and uncertainty of litigation; and

WHEREAS, each of the Parties to this Agreement expects to benefit from the settlement as herein provided; and

NOW, THEREFORE, in consideration of the above premises and for valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.      Effective Date:  The effective date of this Agreement (the "Effective Date") shall be the date on which an order of the Bankruptcy Court approving the Agreement shall become final and unappealable.  Promptly after execution of this Agreement by all Parties, the Reorganized Debtors shall submit an order under certification of counsel seeking approval of the Agreement by the Bankruptcy Court.

2.      Allowed Administrative, Priority Claim, and Unsecured Claims: The Former Employee Administrative Claims are fixed as follows: (a) the Former Employees shall be entitled to a single Allowed Administrative Claim under the Plan in the amount of $20,000.00 (the "Allowed Administrative Claim"), to be paid within ten business days after the Effective Date to the attention of counsel for the Former Employees, Blake J. Lindemann, Lindemann Law Firm, APC, 433 N. Camden Drive, 4th Floor, Beverly Hills, CA 90210 and apportioned as determined by the Former Employees in their sole discretion; (b) the Former Employees shall be entitled to a single Allowed Other Priority Claim, Class 1 under the Plan, in the amount of

5

$112,275.00 (the "Allowed Priority Claim"), to be paid within ten business days after the Effective Date to the attention of counsel for the Former Employees, Blake J. Lindemann, Lindemann Law Firm, APC, 433 N. Camden Drive, 4th Floor, Beverly Hills, CA 90210 and apportioned as determined by the Former Employees in their sole discretion; and (c) the Former Employees shall be entitled to a single Allowed General Unsecured Claim, Class 5-B under the Plan, in the amount of $6,854,811.03 (the "Allowed Unsecured Claim," and, with the Allowed Administrative Claim and the Allowed Priority Claim, the "Allowed Claims"), which shall be satisfied in accordance with and pursuant to the treatment provided under the Plan, with distribution on such claim to be paid within ten business days after the Effective Date to the attention of counsel for the Former Employees, Blake J. Lindemann, Lindemann Law Firm, APC, 433 N. Camden Drive, 4th Floor, Beverly Hills, CA 90210 and apportioned as determined by the Former Employees in their sole discretion. The Parties shall cooperate to inform the Debtors' claims agent (the "Claims Agent") of the Allowed Claims upon the Effective Date, and the Reorganized Debtors shall take all action necessary as appropriate to ensure that the Allowed Claims are recognized by the Claims Agent such that it is entitled to receive the distributions to which it would have been entitled had the Allowed Claims been allowed as of the Plan Effective Date.

        3.     Dismissal of Appeal.  Promptly after the payments of the amounts called for under paragraph 2 of this Agreement, the Former Employees shall dismiss the Appeal with prejudice.

        4.     Release of the Former Employees by Quiksilver: Upon the Effective Date, Quiksilver, on its own behalf and on behalf of its parent(s), subsidiaries, predecessors, successors, affiliates and assigns (irrespective of whether as debtors or reorganized debtors), and its principals, directors, officers, agents, members, managers and employees (the "Quiksilver Releasors") hereby fully, finally, and forever release and discharge the Former Employees, and their past, present and future parent(s), subsidiaries, predecessors, successors, affiliates, assigns, principals, directors, officers, agents, members, managers and employees (the "Former Employee Releasees") of and from any and all manner of claims, causes of action, suits, bills, and demands whatsoever in law or in equity against the Former Employee Releasees that the Quiksilver Releasors ever had or now have for any action or inaction occurring from the beginning of the world to the date of this Agreement, including any asserted or unasserted claim (the "Quiksilver Released Claims") in connection with or relating to the Rejection Order, the Former Employee Administrative Claims, the Appeal, and/or the employment of any of the Former Employees by the Debtors. For the sake of clarity, no non-compete provision of any rejected employment contract between Former Employees and Quiksilver or that may be found in the Separation Agreements shall survive this Agreement.

        5.     Release of Quiksilver by the Former Employees: Except for the Allowed Claims, upon the Effective Date the Former Employee Releasees hereby fully, finally, and forever release and discharge the Quiksilver Releasors of and from any and all manner of claims, causes of action, suits, bills, and demands whatsoever in law or in equity against the Quiksilver Releasors that the Former Employee Releasees ever had or now have for any action or inaction occurring from the beginning of the world to the date of this Agreement, including any asserted or unasserted claim (the "Former Employee Released Claims") in connection with or relating to

6

the Rejection Order, the Former Employee Administrative Claims, the Appeal, and/or the employment of any of the Former Employees by the Debtors.

6.    Waiver of Civil Code Section 1542: In giving the releases set forth in this Agreement, which includes claims that may be unknown to the Parties at present, the Parties acknowledge that they have read and understand Section 1542 of the California Civil Code which reads as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

The Parties hereby acknowledge that the foregoing waiver of the provisions of Civil Code Section 1542 is the result of separate bargaining and that there are no undisclosed facts that would affect their willingness to make this waiver. The Parties expressly assume the risk of subsequently discovered information, facts or law, which if known or understood by them may have affected this waiver of their decision to execute this Agreement.

7.    Nondisparagement. Each Party agrees not to disparage any other Party, its parent, subsidiaries, affiliates and their respective officers, directors, employees, shareholders and agents, in any manner likely to be harmful to them or their business, business reputation, personal reputation, products, trademarks or employees.

8.    Counterparts: The Parties agree that this Agreement may be executed in one or more counterparts, whether by facsimile or e-mail transmission; each counterpart shall be deemed to be an original; and all such counterparts shall constitute one and the same instrument.

9.    Representations Regarding Authority: Each of the individuals executing this Agreement on behalf of one or more Parties represents and warrants that he or she has the authority to enter into this Agreement on behalf of each such Party, including, but not limited to, the authority to enter into and grant the releases provided herein.

10.    Choice of Law: The interpretation and enforcement of this Agreement shall be governed by the law of the State of California, without regard to its choice-of-law rules.

11.    Agreement Binding Upon Successors: This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, successors and assigns.

12.    Entire Agreement: This Agreement (the "Entire Agreement") constitutes the entire agreement and understanding of the Parties hereto and supersedes any and all prior negotiations and proposed agreements, written and/or oral, between or among the Parties. Except as otherwise contained in the Entire Agreement, the Parties mutually and reciprocally acknowledge that neither they, nor any of their members, directors, employees, investors, or limited partners, nor any agent or attorney of any other Party has made any promise,

7

representation, or warranty whatsoever, expressed or implied, written or oral, concerning the subject matter hereof, to induce it to enter into the Entire Agreement, and each of the Parties hereto acknowledges that it has not executed this Agreement in reliance on any promise, representation, and/or warranty not contained herein.

13.    No Oral Modifications or Waivers: No term or provision of this Agreement may be waived or modified unless such waiver or modification is in writing and signed by a duly authorized representative for each of the Parties.

14.    Headings: The headings of paragraphs and sub-paragraphs contained in this Agreement are merely for convenience of reference and shall not affect the interpretation of any of the provisions of this Agreement.

15.    Drafting and Ambiguity: This Agreement is deemed to have been drafted jointly by the Parties and any uncertainty or ambiguity shall not be construed for or against any Party as an attribution of drafting to any Party.

16.    No Admission: The Parties acknowledge that this Agreement has been executed in connection with the compromise and settlement of disputed claims and the Agreement has been entered into solely for the purpose of avoiding costly and time-consuming litigation. Neither this Agreement nor the Payment provided hereunder shall constitute or be construed as an admission of liability on the part of any Party for any matter or precedent upon which liability may be assessed or as a concession as to the strength, weakness, validity or invalidity of any claim or defense asserted in the Litigation or any other litigation.

17.    This agreement reflects the amicable settlement of honest differences between the Parties. The Parties acknowledge and agree that they have read this Agreement in its entirety, that they understand its terms and that its terms are fair and legally enforceable, that they have had ample opportunity to negotiate through their respective counsel with each other with regard to all of its terms, that they have entered into this Agreement freely and voluntarily, that they have consulted with counsel concerning this Agreement, and that they have the full right, power, authority, and capacity to enter into and execute this Agreement.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the day and year first above written.

QUIKSILVER, INC.

By: _____
Name: Greg Healy
Title: President

By: _____
Name:  Liam Devoy

By: _____
Name: Nicholas Drake

By: _____
Name: Anda Druva

By: _____
Name: Steve Finney

By: _____
Name: Scott Fullerton

By: _____
Name: Pamela Gobright

By: _____
Name: John Graham

By: _____
Name: Kelley C. Graham

By: _____
Name: Brad Holman

By: _____
Name: Kristina Kastelan

9

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the day and year first above written.

QUIKSILVER, INC.

By: _____
Name:
Title:

By: _____ JAN 26, 2017
Name: Liam Devoy

By: _____
Name: Nicholas Drake

By: _____
Name: Anda Druva

By: _____
Name: Steve Finney

By: _____
Name: Scott Fullerton

By: _____
Name: Pamela Gobright

By: _____
Name: John Graham

By: _____
Name: Kelley C. Graham

By: _____
Name: Brad Holman

By: _____
Name: Kristina Kastelan

9

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the day and year first above written.

QUIKSILVER, INC.

By: _____
Name:
Title:

By: _____
Name:  Liam Devoy

By: _____
Name:  Nicholas Drake

By: _____
Name:  Anda Druva

By: _____
Name:  Steve Finney

By: _____
Name:  Scott Fullerton

By: _____
Name:  Pamela Gobright

By: _____
Name:  John Graham

By: _____
Name:  Kelley C. Graham

By: _____
Name:  Brad Holman

By: _____
Name:  Kristina Kastelan

9

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the day and year first above written.

QUIKSILVER, INC.

By: _____
Name:
Title:

By: _____
Name:  Liam Devoy

By: _____
Name:  Nicholas Drake

By:  _Anda Druva_____
Name:  Anda Druva

By: _____
Name:  Steve Finney

By: _____
Name:  Scott Fullerton

By: _____
Name:  Pamela Gobright

By: _____
Name:  John Graham

By: _____
Name:  Kelley C. Graham

By: _____
Name:  Brad Holman

By: _____
Name:  Kristina Kastelan

9

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the day and year first above written.

QUIKSILVER, INC.

By: _____
Name:
Title:

By: _____
Name:   Liam Devoy

By: _____
Name:  Nicholas Drake

By: _____
Name:  Anda Druva

By: _____
Name:  Steve Finney

By: _____
Name:  Scott Fullerton

By: _____
Name:  Pamela Gobright

By: _____
Name:  John Graham

By: _____
Name:  Kelley C. Graham

By: _____
Name:  Brad Holman

By: _____
Name:  Kristina Kastelan

9

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the day and year first above written.

QUIKSILVER, INC.

By: _____
Name:
Title:

By: _____
Name:  Liam Devoy

By: _____
Name:  Nicholas Drake

By: _____
Name:  Anda Druva

By: _____
Name:  Steve Finney

By: _____
Name:  Scott Fullerton

By: ___*Pam Gobright*_____
Name:  Pamela Gobright

By: _____
Name:  John Graham

By: _____
Name:  Kelley C. Graham

By: _____
Name:  Brad Holman

By: _____
Name:  Kristina Kastelan

9

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the day and year first above written.

QUIKSILVER, INC.

By: _____
Name:
Title:

By: _____
Name:  Liam Devoy

By: _____
Name: Nicholas Drake

By: _____
Name: Anda Druva

By: *Stephen Finney*
Name: Steve Finney

By: _____
Name: Scott Fullerton

By: _____
Name: Pamela Gobright

By: _____
Name: John Graham

By: _____
Name: Kelley C. Graham

By: _____
Name: Brad Holman

By: _____
Name: Kristina Kastelan

9

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the day and year first above written.

QUIKSILVER, INC.

By: _____
Name:
Title:

By: _____
Name:  Liam Devoy

By: _____
Name:  Nicholas Drake

By: _____
Name:  Anda Druva

By: _____
Name:  Steve Finney

By: _____
Name:  Scott Fullerton

By: _____
Name:  Pamela Gobright

By: _____
Name:  John Graham

By: _____
Name:  Kelley C. Graham

By: _____
Name:  Brad Holman

By: _____
Name:  Kristina Kastelan

9

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the day and year first above written.

QUIKSILVER, INC.

By: _____
Name:
Title:

By: _____
Name:  Liam Devoy

By: _____
Name:  Nicholas Drake

By: _____
Name:  Anda Druva

By: _____
Name:  Steve Finney

By: _____
Name:  Scott Fullerton

By: _____
Name:  Pamela Gobright

By: _____
Name:  John Graham

By: _____
Name:  Kelley C. Graham

By: _____
Name:  Brad Holman

By: _____
Name:  Kristina Kastelan

9

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the day and year first above written.

QUIKSILVER, INC.

By: _____
Name:
Title:

By: _____
Name:  Liam Devoy

By: _____
Name:  Nicholas Drake

By: _____
Name:  Anda Druva

By: _____
Name:  Steve Finney

By: _____
Name:  Scott Fullerton

By: _____
Name:  Pamela Gobright

By: _____
Name:  John Graham

By: _____
Name:  Kelley C. Graham

By: _____
Name:  Brad Holman

By: _____
Name:  Kristina Kastelan

9

By: _____
Name: Kelly Ketner

By: _____
Name: Jennifer Kutsch

By: _____
Name: Viki Love

By: _____
Name: Kerstin N. Mazzone

By: _____
Name: Andrew P. Mooney

By: _____
Name: Carol Nielsen

By: _____
Name: Robert Oberschelp

By: _____
Name: Joe O'Neil

By: _____
Name: Christina G. Rice

By: _____
Name: Natalie Rigolet

By: _____
Name: Chris Schreiber

10

By: _____
Name: Kelly Ketner

By: _____
Name: Jennifer Kutsch

By: _____
Name: Viki Love

By: _____
Name: Kerstin N. Mazzone

By: _____
Name: Andrew P. Mooney

By: _____
Name: Carol Nielsen

By: _____
Name: Robert Oberschelp

By: _____
Name: Joe O'Neil

By: _____
Name: Christina G. Rice

By: _____
Name: Natalie Rigolet

By: _____
Name: Chris Schreiber

10

By: _____
Name: Kelly Ketner


By: _____
Name: Jennifer Kutsch


By: *[signature]*  1/26/2017
Name: Viki Love


By: _____
Name: Kerstin N. Mazzone


By: _____
Name: Andrew P. Mooney


By: _____
Name: Carol Nielsen


By: _____
Name: Robert Oberschelp


By: _____
Name: Joe O'Neil


By: _____
Name: Christina G. Rice


By: _____
Name: Natalie Rigolet


By: _____
Name: Chris Schreiber


10

By: _____
Name: Kelly Ketner

By: _____
Name: Jennifer Kutsch

By: _____
Name: Viki Love

By: _____
Name: Kerstin N. Mazzone

By: _____
Name: Andrew P. Mooney

By: _____
Name: Carol Nielsen

By: _____
Name: Robert Oberschelp

By: _____
Name: Joe O'Neil

By: _____
Name: Christina G. Rice

By: _____
Name: Natalie Rigolet

By: _____
Name: Chris Schreiber

DOCS_DE 208669.5 72779/002

By:      _____
Name:  Kelly Ketner


By:      _____
Name:  Jennifer Kutsch


By:      _____
Name:  Viki Love


By:      _____
Name:  Kerstin N. Mazzone


By:      _____
Name:  Andrew P. Mooney


By:      _____
Name:  Carol Nielsen


By:      _____
Name:  Robert Oberschelp


By:      _____
Name:  Joe O'Neil


By:      _____
Name:  Christina G. Rice


By:      _____
Name:  Natalie Rigolet


By:      _____
Name:  Chris Schreiber


10



By: _____
Name:  Kelly Ketner

By: _____
Name:  Jennifer Kutsch

By: _____
Name:  Viki Love

By: _____
Name:  Kerstin N. Mazzone

By: _____
Name:  Andrew P. Mooney

By: _____
Name:  Carol Nielsen

By: _____
Name:  Robert Oberschelp

By: _____
Name:  Joe O'Neil

By: _____
Name:  Christina G. Rice

By: _____
Name:  Natalie Rigolet

By: _____
Name:  Chris Schreiber

10

By: _____
Name: Kelly Ketner

By: _____
Name: Jennifer Kutsch

By: _____
Name: Viki Love

By: _____
Name: Kerstin N. Mazzone

By: _____
Name: Andrew P. Mooney

By: _____
Name: Carol Nielsen

By: _____
Name: Robert Oberschelp

By: _____
Name: Joe O'Neil

By: _____
Name: Christina G. Rice

By: _____
Name: Natalie Rigolet

By: _____
Name: Chris Schreiber

DOCS_DE:208669.5 72779/002

By: _____
Name: Kelly Ketner

By: _____
Name: Jennifer Kutsch

By: _____
Name: Viki Love

By: _____
Name: Kerstin N. Mazzone

By: _____
Name: Andrew P. Mooney

By: _____
Name: Carol Nielsen

By: _____
Name: Robert Oberscheip

By: _____
Name: Joe O'Neil

By: _____
Name: Christine G. Rice

By: _____
Name: Natalie Rigolet

By: _____
Name: Chris Schreiber

10

By: _____
Name: Kelly Ketner

By: _____
Name: Jennifer Kutsch

By: _____
Name: Viki Love

By: _____
Name: Kerstin N. Mazzone

By: _____
Name: Andrew P. Mooney

By: _____
Name: Carol Nielsen

By: _____
Name: Robert Oberschelp

By: _____
Name: Joe O'Neil

By: _____
Name: Christina G. Rice

By: _____
Name: Natalie Rigolet

By: _____
Name: Chris Schreiber

10

By: _____
Name: Kelly Ketner

By: _____
Name: Jennifer Kutsch

By: _____
Name: Viki Love

By: _____
Name: Kerstin N. Mazzone

By: _____
Name: Andrew P. Mooney

By: _____
Name: Carol Nielsen

By: _____
Name: Robert Oberschelp

By: _____
Name: Joe O'Neil

By: _____
Name: Christina G. Rice

By: _____
Name: Natalie Rigolet

By: _____
Name: Chris Schreiber

DOCS_DE:208669.5 72779/002

By: _____
Name: Lance Stern


By: _____
Name: Steve Swokowski


By: _____
Name: Roberta Turchi


By: _____
Name: Alan Vickers


By: _____
Name: Thomas Webster

11

By: _____
Name: Lance Stern


By: *Steve Swokowski*
Name: Steve Swokowski


By: _____
Name: Roberta Turchi


By: _____
Name: Alan Vickers


By: _____
Name: Thomas Webster

11

By: _____
Name:  Lance Stern


By: _____
Name:  Steve Swokowski

By:  *Roberta Turli*
Name:  Roberta Turchi


By: _____
Name:  Alan Vickers


By: _____
Name:  Thomas Webster

By: _____
Name: Lance Stern


By: _____
Name: Steve Swokowski


By: _____
Name: Roberta Turchi


By: _____   01.30.2017
Name: Alan Vickers


By: _____
Name: Thomas Webster


11

By: _____
Name: Lance Stern


By: _____
Name: Steve Swokowski


By: _____
Name: Roberta Turchi


By: _____
Name: Alan Vickers


By: _____
Name: Thomas Webster

11